1   DANIEL M. PETROCELLI (S.B. #097802)
      dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
      mkline@omm.com
3   CASSANDRA L. SETO (S.B. #246608)
      cseto@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA  90067-6035
    Telephone:  (310) 553-6700
6   Facsimile:   (310) 246-6779

7   Attorneys for Plaintiff DC Comics

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  DC COMICS,                          Case No. CV 10-3633 ODW (RZx)

12           Plaintiff,                 **DISCOVERY MATTER**

13       v.                             **DECLARATION OF MATTHEW
                                        T. KLINE IN SUPPORT DC
14  PACIFIC PICTURES                    COMICS' MOTION FOR A
    CORPORATION, IP WORLDWIDE,          PROTECTIVE ORDER**
15  LLC, IPW, LLC, MARC TOBEROFF,
    an individual, MARK WARREN          **Judge**:        Hon. Otis D. Wright II
16  PEARY, as personal representative of **Magistrate**:   Hon. Ralph Zarefsky
    the ESTATE OF JOSEPH SHUSTER,
17  JEAN ADELE PEAVY, an individual,
    LAURA SIEGEL LARSON, an             **Hearing Date**:      Jan. 7, 2012
18  individual and as personal          **Hearing Time**:      10:00 a.m.
    representative of the ESTATE OF      **Courtroom**:         540
19  JOANNE SIEGEL, and DOES 1-10,       **Discovery Cutoff**:  None Set
    inclusive,                          **Pretrial Conference**: None Set
20                                       **Trial**:             None Set
             Defendants.
21

22

23

24

25

26

27

28

## <u>DECLARATION OF MATTHEW T. KLINE</u>

I, Matthew T. Kline, declare and state:

1.      I am an attorney licensed to practice in the State of California and admitted to the Central District of California.  I am a partner at O'Melveny & Myers LLP, counsel of record for plaintiff DC Comics ("DC") in this case.  I make this declaration in support of DC Comics' Motion For A Protective Order.  I have personal knowledge of the matters set forth herein.

2.      In 2010, DC filed its complaint in the above-entitled case and served document requests on defendants.  Attached hereto as Exhibit 1 is a true and correct copy of a letter from my partner Daniel M. Petrocelli to Richard Kendall and Marc Toberoff dated August 17, 2010, attaching DC's initial requests.  Thereafter, the parties began negotiating a stipulation governing, among other things, the parties' obligations to log certain privileged documents.  While many of these discussions took place orally, the parties also exchanged numerous written proposals and drafts of privilege-logging agreements.  Some of this correspondence (which is attached hereto) includes:

   a. Exhibit 2, a true and correct copy of an email from Nicholas Williamson to Mr. Petrocelli, me, and my colleague Cassandra Seto dated September 16, 2010, which attaches a proposed stipulation from defendants.  Defendants' proposed stipulation states, in relevant part:

   > Except [communications relating to DC's receipt of the Toberoff Timeline and accompanying documents], no party shall be required to list on their privilege logs the following documents created on or after October 8, 2004, when the complaint was filed in *Siegel v. Warner Bros. Ent. Inc.*, Case No. 04-CV-08400 ODW (RZx):
   >
   > Attorney-client communications, attorney work product, and/or documents protected by the joint defense privilege, common interest privilege, mediation privilege, or the May 1, 2008 JAMS

-1-

Confidentiality Agreement regarding settlement discussions.

Ex. 2 at 13.

b.  Exhibit 3, a true and correct copy of an email from Mr. Toberoff to Mr. Petrocelli dated October 5, 2010, which attaches a proposed stipulation from defendants.  Defendants' proposal contains the same language quoted above from the September 16, 2010, proposed stipulation.  Ex. 3 at 18.

c.  Exhibit 4, a true and correct copy of an email from Mr. Petrocelli to Mr. Toberoff dated December 1, 2010, which attaches a proposed stipulation DC.

d.  Exhibit 5, a true and correct copy of an email from Mr. Toberoff to Mr. Petrocelli dated December 2, 2010, which attaches a proposed stipulation from defendants.

e.  Exhibit 6, a true and correct copy of an email from Mr. Toberoff to Mr. Petrocelli dated December 3, 2010, which attaches a proposed stipulation from defendants.

3.    Given the exigency in finalizing a stipulation, the parties ultimately reached a "placeholder" stipulation.  Ex. 4 (Mr. Petrocelli's email to Mr. Toberoff: "This is a placeholder pending later agreement on an overall privilege log stipulation.").  This "placeholder" stipulation provided that defendants would not be required to log certain privileged communications created after October 2004, when the related *Siegel* cases commenced, in responding to DC's then-pending discovery requests.  The parties agreed to enter into an "overall" stipulation extending the same courtesy to DC after defendants served discovery requests.  Exs. 5 at 37 (Mr. Toberoff's email to Mr. Petrocelli:  "I trimmed back your addition of a logging exclusion as to communications between DC's outside counsel and in-house counsel because this goes into the attorney-client communications realm and gets

- 2 -

into sticky issues which should best be dealt with in the negotiation of a full logging agreement …. [The parties should] not try to expand this stip relating to DC's Requests into a full-fledged logging agreement.  We also need not do this at the moment because Defendants have not yet even served DC with any requests for production."); 6 at 43 (Mr. Toberoff's email to Mr. Petrocelli:  "[W]e can address further logging aspects in negotiating a logging agreement, but should not hold this up for that.").

4.    The parties submitted their "placeholder" stipulation to the Court, and the Court so-ordered the stipulation on December 7, 2010 (the "December 2010 Order").  That Order can be found at Docket No. 133.

5.    In an April 2011 ruling, the Court noted it "will not foreclose the parties from reaching agreement themselves, as they appeared near to doing, on a [privilege log] protocol that both sides will follow."  Docket No. 209 at 13.  Thereafter, the parties discussed finalizing a permanent logging stipulation.  Key examples of the parties' correspondence include:

    a.  Exhibit 7, a true and correct copy of a letter from Mr. Petrocelli to Mr. Toberoff dated April 14, 2011.

    b.  Exhibit 8, a true and correct copy of a letter from me to Mr. Kendall dated April 25, 2011.

    c.  Exhibit 9, a true and correct copy of a letter from Mr. Toberoff to me dated May 6, 2011.

    d.  Exhibit 10, a true and correct copy of a letter from me to Mr. Toberoff dated May 11, 2011.

6.    Many other events in this case intervened (*e.g.*, hundreds of court filings—as the docket in this case, two related cases, and several related appellate matters attest)—and, as a result, the parties never agreed upon a final stipulation to replace the December 2010 Order.  It was not until defendants first served discovery requests in this case in late 2011 that the matter seriously arose again.  In

KLINE DECL. ISO DC'S
MOT. FOR PROTECTIVE ORDER

DC's written objections to defendants' first round of discovery requests, in various telephonic and in-person meet-and-confer discussions (including on May 2, 2011, March 16, 2012, and June 4, 2012), and over a long course of written correspondence, DC sought to engage defendants on how to resolve the impasse. Key examples of the parties' correspondence include:

    a. Exhibit 11, a true and correct copy of relevant excerpts from Plaintiff DC Comics' Objections and Responses to Defendant Mark Warren Peary's First Set of Requests for Production, dated February 17, 2012.

    b. Exhibit 12, a true and correct copy of an email from me to Mr. Toberoff dated June 12, 2012.

    c. Exhibit 13 (at pages 92 and 93), a true and correct copy of a letter from me to Mr. Kendall dated August 7, 2012.

    d. Exhibit 14 (at page 103), a true and correct copy of a letter from me to Mr. Kendall dated August 30, 2012.

    e. Exhibit 15, a true and correct copy of an email from Ms. Seto to defense counsel dated October 5, 2012 (with attachments).

    f. Exhibit 16, a true and correct copy of a letter from Keith Adams to my colleague Jason Tokoro dated October 16, 2012.

    g. Exhibit 17, a true and correct copy of a letter from Mr. Tokoro to defense counsel dated October 22, 2012.

    h. Exhibit 18 (at page 261), a true and correct copy of a letter from Mr. Adams to me dated October 25, 2012.

    i. Exhibit 19, a true and correct copy of a letter from my colleague Molly Lens to defense counsel dated October 31, 2012.

    7.    Attached hereto as Exhibit 20 is a true and correct copy of a transcript of the November 5, 2012, oral argument before the Ninth Circuit in *Larson v. Warner Bros. Entm't Inc.*, Appeal Nos. 11-55863, 11-56034.

KLINE DECL. ISO DC'S
MOT. FOR PROTECTIVE ORDER

8.    DC repeatedly invited defendants to meet and confer on ways to address defendants' privilege-logging concerns. *See* Exs. 13 at 93 ("If defendants want to finalize the privilege logging stipulation that we completed only in part in 2010, we are happy to do so."); 15 at 114 ("As noted during the parties' many discussions on this subject, DC is willing to meet and confer with defendants concerning this proposed stipulation, though if the parties are unable to reach an agreement, DC will seek all appropriate relief."); 17 at 254-55 ("Since [February 2012], contrary to defendants' claim that DC 'did absolutely nothing' to finalize the stipulation, DC has repeatedly invited the defendants to meet and confer to complete the privilege logging stipulation.").

9.    DC looked for ways to compromise, such as providing defendants with details they requested regarding DC's receipt of the Toberoff Timeline document— even though DC reminded defendants that, in DC's view, such information was irrelevant. On June 4, 2012, Mr. Tokoro and I had a lengthy, in-person meet-and-confer discussion with Mr. Kendall and Mr. Toberoff about various discovery issues. During this meeting, Mr. Kendall stated that DC had not produced privilege logs in this case. I reminded Mr. Kendall that DC designated its privilege logs from the *Siegel* case, as was permitted by the December 2010 Order. Mr. Toberoff argued that defendants wanted to know when Warner Bros. received the Toberoff Timeline document. I asked defendants how this timing issue was relevant to any claim in this case, and reminded them the Court had already noted in *Siegel* that DC had acted "reasonably" and "professionally" in its handling of the Timeline documents. But to moot this one issue defendants raised as justifying logging and to reach an overall privilege logging agreement, DC agreed to tell defendants the earliest date any reference to the Timeline appears in DC's files. On August 7, 2012, I wrote:

> We understand from our meeting that Marc seeks further log entries from DC flagging any communications regarding the Toberoff

KLINE DECL. ISO DC'S
MOT. FOR PROTECTIVE ORDER

Timeline. Defendants already possess Wayne Smith's declaration in *Siegel* setting forth the precise circumstances of DC's receipt and handling of the Timeline documents, and Judge Zarefsky's ruling finding that Mr. Smith acted appropriately and professionally.  Case No. CV 04-8400, Docket Nos. 108; 177 at 19:3-7.  Moreover, to put this issue to rest, there are no documents or communications that relate to the Timeline that predate June 28, 2006.

Ex. 13 at 92; *see also* Exs. 17 at 255 (Mr. Tokoro:  "This is a non-issue .... For further details on Warner Bros. and DC's receipt of the Timeline documents, defendants need look no further than Wayne Smith's declaration in *Siegel*, which Judge Zarefsky found demonstrated that Mr. Smith acted appropriately and professionally."); 19 at 263 (Ms. Lens:  "DC has already stated—several times— that it does not possess any documents concerning the Timeline that predate June 28, 2006 .... defendants' 60 Requests on this topic are not only irrelevant, but also moot.").  DC's repeated requests to meet and confer further on these issues were largely rebuffed.  Defendants would accuse DC of not logging documents, *e.g.*, Exs. 16 at 252; 18 at 261, but not follow up on DC's requests to discuss such accusations and a way to resolve them, *e.g.*, Exs. 17 at 255; 19 at 262.

10.     When the pace of the case (including successful summary judgment briefing by DC on its First and Third Claims) and preparation for Ninth Circuit arguments in this case and *Siegel*, Docket Nos. 458, 468, 507, 521-2 at 8-37; Ex. 20, finally relented (albeit slightly), DC took its hand at drafting a new privilege log stipulation and sent it to defendants for comment, Ex. 15.  DC tried to make the stipulation simple and bilateral.  The terms DC proposed are below:

NOW THEREFORE, the parties stipulate and agree to the following:
        1.  DC and defendant Laura Siegel Larson shall not be required to list on their respective privilege logs any Privileged Documents created on or after October 8, 2004, when the first complaint was filed in the *Siegel* Actions.
        2.  DC and Defendants shall not be required to list on their respective privilege logs any Privileged Documents created on or after

KLINE DECL. ISO DC'S
MOT. FOR PROTECTIVE ORDER

May 14, 2010, when DC filed its complaint in the above-entitled action.

      3.  This stipulation is without prejudice or waiver to any party's right in the future to request or move to compel the identification or logging of Privileged Documents, and is without prejudice or waiver to any party's right in the future to seek a protective order in response to any such request or motion to compel.

      IT IS SO STIPULATED.

Ex. 15 at 107-08.

      11.      Defendants did not provide any comment to DC's draft stipulation for 11 days.  Ex. 16.  When defendants did respond, they declined to negotiate the language of the proposed agreement, suggest any edits, or raise any specific concerns regarding its language.  *Id.* at 252-53 (Mr. Adams rejecting DC's proposed stipulation because "'[w]hat's good for the goose is good for the gander'").  DC said it would be forced to file this motion, and during the parties' October 25, 2012, meet-and-confer, defendants said they would not agree to a stipulation.  DC said it would move for a protective order, and if its motion was denied, would log documents.  Defendants said they would oppose DC's motion, and insisted that all documents be logged.  While in previous discussions and letters, defendants claimed that DC waived privilege by failing to log the documents, they never raised that waiver argument during the October 25 discussion, and instead merely asserted that DC should log all relevant documents. DC told defendants that this would be extremely costly and burdensome, and the relevant documents consisted almost entirely of correspondence among and between in-house counsel and clients or outside counsel.  Defendants insisted that they thought it better for the case if everything is logged.  When we asked for any further bases for their position, defendants declined to provide any.  Had they raised any further bases, we would have tried to address them through the meet-and-confer process, or in DC's accompanying motion.

KLINE DECL. ISO DC'S
MOT. FOR PROTECTIVE ORDER

1    12.    Attached hereto as Exhibit 21 is a true and correct copy of relevant

2    excerpts from Defendant Marc Toberoff's Supplemental Response to Plaintiff DC

3    Comics' First Set of Interrogatories, dated June 26, 2012.

4    I declare under penalty of perjury under the laws of the State of California

5    and the United States that the foregoing is true and correct.  Executed this 30th day

6    of November 2012, at Los Angeles, California.

7                                                            /s/ Matthew T. Kline

8                                                            Matthew T. Kline

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLINE DECL. ISO DC'S
MOT. FOR PROTECTIVE ORDER

# EXHIBIT 1

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

August 17, 2010

OUR FILE NUMBER
905,900-321

WRITER'S DIRECT DIAL
(310) 246-6750

WRITER'S E-MAIL ADDRESS
dpetrocelli@omm.com

## VIA E-MAIL AND U.S. MAIL

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 2720
Los Angeles, California 90067

Richard Kendall
Kendall Brill & Klieger LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067

Re:   *DC Comics v. Pacific Pictures Corp. et al.*, **CV-10-3633 (ODW) (RZx)**

Dear Counsel:

Enclosed please find Notices of Deposition and Requests for Production of Documents for Joanne Siegel, Jean Peavy, Laura Siegel Larson, and Mark Warren Peary, as well as a Subpoena to Testify at a Deposition in a Civil Action for Ms. Peavy. Please confirm that you are authorized to accept service on behalf of Ms. Peavy and that you agree to produce her for deposition—if not, we will proceed to serve her with the attached Subpoena.

Very truly yours,

Daniel M. Petrocelli
of O'MELVENY & MYERS LLP

Enclosures

**EXHIBIT 1**
**9**

# EXHIBIT 2

-----Original Message-----
From: nwilliamson@ipwla.com [mailto:nwilliamson@ipwla.com]
Sent: Thursday, September 16, 2010 8:35 PM
To: Petrocelli, Daniel; Kline, Matthew; Seto, Cassandra
Cc: kgadams@ipwla.com; nwilliamson@ipwla.com; lbrill@kbkfirm.com; ndaum@kbkfirm.com
Subject: DC v. PPC- Stipulation Re Privilege Logs

Counsel:

Attached please find for your review defendants' draft of the proposed stipulation regarding the logging of post-litigation communications.

Regards,

Nicholas C. Williamson
Toberoff & Associates, P.C.
2049 Century Park East, Suite 2720
Los Angeles , CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101
Email: nwilliamson@ipwla.com


This message and any attached documents may contain information from Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

1

EXHIBIT 2
10

Marc Toberoff (S.B. #188547)
 MToberoff@ipwla.com
Nicholas C. Williamson (S.B. #231124)
 NWilliamson@ipwla.com
Keith G. Adams (S.B. #240497)
 KGadams@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 2720
Los Angeles, California 90067
Telephone:   (310) 246-3333
Facsimile:    (310) 246-3101

Attorneys for Defendants Mark Warren Peary,
as personal representative of the Estate of Joseph
Shuster,  Jean Adele Peavy, Joanne Siegel, and
Laura Siegel Larson

(continued on next page)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DC COMICS, | Case No. CV 10-3633 ODW (RZx) |
| Plaintiff, | **STIPULATION RE: PRIVILEGE LOGS** |
| v. | |
| PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, JOANNE SIEGEL, an individual, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive, | **Judge:** Hon. Otis D Wright, II **Magistrate:** Hon. Ralph Zarefsky

Complaint Filed:  May 14, 2010 |
| Defendants. | |

1  (continued from previous page)

2  RICHARD B. KENDALL (S.B. #90072)
     rkendall@kbkfirm.com
3  LAURA W. BRILL (S.B. #195889)
     lbrill@kbkfirm.com
4  NICHOLAS F. DAUM (S.B. #236155)
     ndaum@kbkfirm.com
5  NATHALIE E. COHEN (S.B. #258222)
     ncohen@kbkfirm.com
6  KENDALL BRILL & KLIEGER LLP
   10100 Santa Monica Blvd., Suite 1725
7  Los Angeles, California 90067
   Telephone: (310) 556-2700
8  Facsimile: (310) 556-2705

9  Attorneys for Defendants Marc Toberoff,
   Pacific Pictures Corporation, IP
10 Worldwide, LLC, and IPW, LLC

11

12 DANIEL M. PETROCELLI (S.B. #097802)
     dpetrocelli@omm.com
13 MATTHEW T. KLINE (S.B. #211640)
     mkline@omm.com
14 CASSANDRA L. SETO (S.B. #246608)
     cseto@omm.com
15 O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
16 Los Angeles, CA 90067-6035
   Telephone: (310) 553-6700
17 Facsimile: (310) 246-6779

18 Attorneys for Plaintiff DC Comics

19

20 PATRICK T. PERKINS (admitted *pro hac vice*)
     pperkins@ptplaw.com
21 PERKINS LAW OFFICE, P.C.
   1711 Route 9D
22 Cold Spring, NY 10516
   Telephone: (845) 265-2820
23 Facsimile: (845) 265-2819

24 Attorneys for Plaintiff DC Comics

25

26

27

28

STIPULATION RE: PRIVILEGE LOGS

**EXHIBIT 2**
**12**

## STIPULATION

WHEREAS, plaintiff DC Comics ("Plaintiff"), and defendants Pacific Pictures Corporation, IP Worldwide, LLC, IPW, LLC, Marc Toberoff, Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, Joanne Siegel, and Laura Siegel Larson (collectively, "Defendants") held their Federal Rule of Civil Procedure 26(f) conference of counsel on August 16, 2010;

WHEREAS, the parties have commenced formal discovery in this matter;

WHEREAS, Plaintiff and Defendants hereby agree that to list all post-litigation attorney-client communications responsive to Federal Rules of Civil Procedure, Rule 34 and Rule 45 document requests in privilege logs would be burdensome, duplicative and unnecessary;

NOW THEREFORE, the parties stipulate and jointly agree to the following:

1) Except as set forth in paragraph 2 below, no party shall be required to list on their privilege logs the following documents created on or after October 8, 2004, when the complaint was filed in *Siegel v. Warner Bros. Ent. Inc.*, Case No. 04-CV-08400 ODW (RZx):

> Attorney-client communications, attorney work product, and/or documents protected by the joint defense privilege, common interest privilege, mediation privilege, or the May 1, 2008 JAMS Confidentiality Agreement regarding settlement discussions.

2) Notwithstanding the above, the parties shall be required to list on their respective privilege logs, documents relating to the receipt by DC Comics, Warner Bros. Entertainment, Inc., or any related entity, of the cover letter (a.k.a. "Toberoff Timeline") attached as "Exhibit A" to the Complaint filed in *DC Comics v. Pacific Pictures Corp.*, Case No. 10-CV-03633 ODW (RZx) and/or the documents (Bates nos. Q001-839) enclosed by such cover letter.

1

1  IT IS SO STIPULATED

2

3  Dated:  September 16, 2010          TOBEROFF & ASSOCIATES, P.C.

4

5                                     By: _____

6                                         Marc Toberoff
7                                         Attorneys for Defendants Mark Warren
                                          Peary as personal representative of the
8                                         Estate of Joseph Shuster, Jean Adele
                                          Peavy, Joanne Siegel, and Laura Seigel
9                                         Larson

10

11  Dated:  September 16, 2010         KENDALL BRILL & KLIEGER LLP

12

13

14                                     By: _____

15                                         Richard B. Kendall
                                          Attorneys for Defendants Mark Toberoff,
16                                        Pacific Pictures Corporation, IP
                                          Worldwide, LLC, and IPW, LLC

17

18

19  Dated:  September 16, 2010         O'MELVENY & MYERS L.L.P.

20

21                                     By: _____

22                                         Daniel M. Petrocelli
                                          Attorneys for Plaintiff DC Comics
23

24

25

26

27

28

# EXHIBIT 3

**Subject:**
**Attachments:**

---

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Tuesday, October 05, 2010 1:31 PM
**To:** Petrocelli, Daniel; Kline, Matthew; Seto, Cassandra
**Cc:** Laura Brill; Nicholas Daum; Keith Adams; Nicholas Williamson
**Subject:** DC v. PPC 10-CV-3633 ODW (RZx)


Dan:


My clients will be serving supplemental discovery responses by Friday at noon. It would be more productive to have the meet and confer after you have had the chance to review those. If you let us know of any problems you have with the supplements on October 11, I would be available to meet and confer the next day, October 12. Please let me know if this works for you.


In the meantime, we have not heard back from you regarding the proposed stipulation regarding logging of post-litigation documents in this case, which we sent you on September 16. A copy is attached for your convenience. It would be helpful to know your thinking in advance of the meet and confer. All sides have said they would like an agreement on this issue, and it would obviously save us all a great deal of unnecessary effort in trying to log years of privileged communications.


Regards,


Marc


--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

1

**EXHIBIT 3**
**15**

1  Marc Toberoff (S.B. #188547)
    MToberoff@ipwla.com
2  Nicholas C. Williamson (S.B. #231124)
    NWilliamson@ipwla.com
3  Keith G. Adams (S.B. #240497)
    KGadams@ipwla.com
4  TOBEROFF & ASSOCIATES, P.C.
5  2049 Century Park East, Suite 2720
   Los Angeles, California 90067
6  Telephone:  (310) 246-3333
7  Facsimile:  (310) 246-3101

8  Attorneys for Defendants Mark Warren Peary,
   as personal representative of the Estate of Joseph
9  Shuster,  Jean Adele Peavy, Joanne Siegel, and
   Laura Siegel Larson
10

11  (continued on next page)
12

13              UNITED STATES DISTRICT COURT
14      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

15  DC COMICS,                         Case No. CV 10-3633 ODW (RZx)

16              Plaintiff,             **STIPULATION RE: PRIVILEGE LOGS**

17        v.

18  PACIFIC PICTURES CORPORATION,      **Judge:**  Hon. Otis D Wright, II
    IP WORLDWIDE, LLC, IPW, LLC,       **Magistrate:**  Hon. Ralph Zarefsky
19  MARC TOBEROFF, an individual,
    MARK WARREN PEARY, as personal     Complaint Filed:  May 14, 2010
20  representative of the ESTATE OF
    JOSEPH SHUSTER, JEAN ADELE
21  PEAVY, an individual, JOANNE
    SIEGEL, an individual, LAURA
22  SIEGEL LARSON, an individual, and
    DOES 1-10, inclusive,
23
                Defendants.
24

25

26

27

28

1  (continued from previous page)

2  RICHARD B. KENDALL (S.B. #90072)
     rkendall@kbkfirm.com
3  LAURA W. BRILL (S.B. #195889)
     lbrill@kbkfirm.com
4  NICHOLAS F. DAUM (S.B. #236155)
     ndaum@kbkfirm.com
5  NATHALIE E. COHEN (S.B. #258222)
     ncohen@kbkfirm.com
6  KENDALL BRILL & KLIEGER LLP
   10100 Santa Monica Blvd., Suite 1725
7  Los Angeles, California  90067
   Telephone:  (310) 556-2700
8  Facsimile:   (310) 556-2705

9  Attorneys for Defendants Marc Toberoff,
   Pacific Pictures Corporation, IP
10 Worldwide, LLC, and IPW, LLC

11

12 DANIEL M. PETROCELLI (S.B. #097802)
     dpetrocelli@omm.com
13 MATTHEW T. KLINE (S.B. #211640)
     mkline@omm.com
14 CASSANDRA L. SETO (S.B. #246608)
     cseto@omm.com
15 O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
16 Los Angeles, CA  90067-6035
   Telephone:  (310) 553-6700
17 Facsimile:   (310) 246-6779

18 Attorneys for Plaintiff DC Comics

19

20 PATRICK T. PERKINS (admitted *pro hac vice*)
     pperkins@ptplaw.com
21 PERKINS LAW OFFICE, P.C.
   1711 Route 9D
22 Cold Spring, NY 10516
   Telephone:  (845) 265-2820
23 Facsimile:   (845) 265-2819

24 Attorneys for Plaintiff DC Comics

25

26

27

28

STIPULATION RE: PRIVILEGE LOGS

**EXHIBIT 3**
**17**

## **STIPULATION**

1                             

WHEREAS, plaintiff DC Comics ("Plaintiff"), and defendants Pacific Pictures Corporation, IP Worldwide, LLC, IPW, LLC, Marc Toberoff, Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, Joanne Siegel, and Laura Siegel Larson (collectively, "Defendants") held their Federal Rule of Civil Procedure 26(f) conference of counsel on August 16, 2010;

WHEREAS, the parties have commenced formal discovery in this matter;

WHEREAS, Plaintiff and Defendants hereby agree that to list all post-litigation attorney-client communications responsive to Federal Rules of Civil Procedure, Rule 34 and Rule 45 document requests in privilege logs would be burdensome, duplicative and unnecessary;

NOW THEREFORE, the parties stipulate and jointly agree to the following:

1) Except as set forth in paragraph 2 below, no party shall be required to list on their privilege logs the following documents created on or after October 8, 2004, when the complaint was filed in *Siegel v. Warner Bros. Ent. Inc.*, Case No. 04-CV-08400 ODW (RZx):

> Attorney-client communications, attorney work product, and/or documents protected by the joint defense privilege, common interest privilege, mediation privilege, or the May 1, 2008 JAMS Confidentiality Agreement regarding settlement discussions.

2) Notwithstanding the above, the parties shall be required to list on their respective privilege logs, documents relating to the receipt by DC Comics, Warner Bros. Entertainment, Inc., or any related entity, of the cover letter (a.k.a. "Toberoff Timeline") attached as "Exhibit A" to the Complaint filed in *DC Comics v. Pacific Pictures Corp.*, Case No. 10-CV-03633 ODW (RZx) and/or the documents (Bates nos. Q001-839) enclosed by such cover letter.

IT IS SO STIPULATED

Dated:  September 16, 2010          TOBEROFF & ASSOCIATES, P.C.


                                   By: _____
                                       Marc Toberoff
                                       Attorneys for Defendants Mark Warren
                                       Peary as personal representative of the
                                       Estate of Joseph Shuster, Jean Adele
                                       Peavy, Joanne Siegel, and Laura Seigel
                                       Larson

Dated:  September 16, 2010          KENDALL BRILL & KLIEGER LLP


                                   By: _____
                                       Richard B. Kendall
                                       Attorneys for Defendants Mark Toberoff,
                                       Pacific Pictures Corporation, IP
                                       Worldwide, LLC, and IPW, LLC

Dated:  September 16, 2010          O'MELVENY & MYERS L.L.P.


                                   By: _____
                                       Daniel M. Petrocelli
                                       Attorneys for Plaintiff DC Comics

# EXHIBIT 4

**From:** Seto, Cassandra
**Sent:** Wednesday, December 01, 2010 10:18 PM
**To:** Marc Toberoff; Nicholas Williamson; Keith Adams
**Cc:** Petrocelli, Daniel; Kline, Matthew
**Subject:** DC Comics v. PPC

Dear Counsel.

The e-mail below is sent on behalf of Dan Petrocelli.

---

Marc, here is a further revised stipulation and order, plus a redline against your last
draft.  The revisions are aimed at sharpening the meaning of some of the provisions,
including those discussed in our call. For example, I deleted the reference to  "immunity or
protection" in paragraph 1 because I don't know what that means and by its terms goes beyond
recognized privileges.  Also, and on further reflection after our call, I have revised the
"logging" exclusion  to include all privileged documents created after the May 14, 2010
filing of this case, for the reason that neither side should have to log such items; and all
privileged documents exchanged between outside counsel and in-house counsel on our side
because they fall in the same limited  category as those you seek to exclude -- documents
solely by and between lawyers working on the case.   I have also included a provision that
the logging exclusions in our  stipulation are without waiver of any party's right to seek in
the future identification of documents not required to be logged.  This is a placeholder
pending later agreement on an overall privilege log stipulation.  Lastly, I changed the dates
of our meet and confers following your production of the privilege log.


Dan

1

**EXHIBIT 4**
**20**

1  DANIEL M. PETROCELLI (S.B. #97802)
     dpetrocelli@omm.com
2  MATTHEW T. KLINE (S.B. #211640)
     mkline@omm.com
3  CASSANDRA L. SETO (S.B. #246608)
     cseto@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, CA 90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:   (310) 246-6779

7  PATRICK T. PERKINS (admitted *pro hac vice*)
     pperkins@ptplaw.com
8  PERKINS LAW OFFICE, P.C.
   1711 Route 9D
9  Cold Spring, NY 10516
   Telephone:  (845) 265-2820
10 Facsimile:   (845) 265-2819

11 Attorneys for Plaintiff DC Comics

12
                **UNITED STATES DISTRICT COURT**
13
        **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**
14

15 DC COMICS,                              Case No: CV 10-03633 ODW (RZx)
                      Plaintiff,
16        vs.                             Hon. Otis D. Wright II, U.S.D.J.
                                          Hon. Ralph Zarefsky, U.S.M.J.
17 PACIFIC PICTURES CORPORATION;
18 IP WORLDWIDE, LLC; IPW, LLC;           **DISCOVERY MATTER**
   MARC TOBEROFF, an individual;          **STIPULATION RE:**
19 MARK WARREN PEARY, as personal         **DEFENDANTS' PRODUCTION**
   representative of the ESTATE OF        **OF DOCUMENTS AND**
20 JOSEPH SHUSTER; JEAN ADELE             **PRIVILEGE LOGS**
21 PEAVY, an individual; JOANNE           **[Proposed] Order Filed Herewith**
   SIEGEL, an individual; LAURA
22 SIEGEL LARSON, an individual,          Complaint filed:  May 14, 2010
23 and DOES 1-10, inclusive,              Trial Date:       None Set
                      Defendants.
24

25

26

27

28

STIPULATION RE: DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

**EXHIBIT 4**
**21**

1   Marc Toberoff (State Bar No. 188547)
      *mtoberoff@ipwla.com*
2   Nicholas C. Williamson (State Bar No. 231124)
      *nwilliamson@ipwla.com*
3   Keith G. Adams (State Bar No. 240497)
      *kgadams@ipwla.com*
4   TOBEROFF & ASSOCIATES, P.C.
    2049 Century Park East, Suite 2720
5   Los Angeles, California, 90067
    Telephone:  (310) 246-3333
6   Fax:        (310) 246-3101

7   Attorneys for Defendants Mark Warren
    Peary, as personal representative of the
8   Estate of Joseph Shuster, Jean Adele
    Peavy, Joanne Siegel and Laura Siegel
9   Larson

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION RE: DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

**EXHIBIT 4**
**22**

Plaintiff DC Comics together with its corporate affiliates ("DC") and the relevant Defendants Mark Warren Peary, as Personal Representative of the Estate of Joseph Shuster, Jean Adele Peavy, Joanne Siegel, and Laura Siegel Larson ("Defendants") (collectively, "the Parties"), by and through their respective counsel of record, hereby stipulate and agree as follows:

WHEREAS, after a dispute the Parties have reached an agreement as to the timing and nature of Defendants' production of documents and privilege logs in response to DC's August 17, 2010 requests for production ("Requests");

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, that:

(1) By 6:00 p.m. PST on December 3, 2010, Defendants will produce, by personal service on DC's counsel at its Century City offices, all documents and other materials responsive to each and every one of DC's Requests, except for documents that are subject to a claim of attorney-client privilege, the attorney work-product doctrine, another privilege available under law, or under the parties' May 1, 2008 JAMS Confidentiality Agreement (collectively, "Privilege" or "Privileged").  Aside from documents and materials subject to such a claim of Privilege or falling under the exception set forth in sections (4) and (5) below, Defendants will not refuse to produce or refuse to log any documents or materials based on the objections Defendants previously asserted in their responses to DC's Requests.

(2) By 6:00 p.m. PST on December 15, 2010, Defendants will furnish, by personal service on DC's counsel at its Century City offices, complete Privilege logs identifying any and all Privileged documents and other materials for which Defendants assert a claim of Privilege in response to DC's Requests.

(3) In making their document production on December 3, Defendants will reference by their Bates numbers documents already produced to DC in the cases *Siegel v. Warner Bros. Ent. Inc.*, C.D. Cal. Case No. 04-8400 ODW (RZx), and *Siegel v. Time Warner Inc.*, C.D. Cal. Case No. 04-8776 ODW (RZx) (the "*Siegel* Cases"), rather than re-copy and re-produce such documents.  DC reserves the right

1

STIPULATION RE: DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

**EXHIBIT 4**
**23**

1    to request an inspection of the original documents or any metadata and any other

2    information associated with documents produced in this manner.  With respect to any

3    request for production of documents served on DC in this case, DC may likewise

4    reference documents already produced in the *Siegel* Cases by their Bates numbers,

5    rather than re-copy and re-produce such documents.

6        (4)  Defendants need not produce in this case, nor will DC be required to

7    produce in this case, pleadings filed in the *Siegel* Cases or this case.

8        (5)  The Parties are not required to list on their respective privilege logs in this

9    case any Privileged documents created on or after May 14, 2010.  As to Privileged

10   documents created prior to May 14, 2010:  (a) Defendants and their counsel need not

11   log internal communications between or among Defendants' counsel or between or

12   among Defendants' counsel and anyone at the law firm of Kendall, Brill and Klieger,

13   in either this case or the *Siegel* Cases; (b) DC and its counsel need not log internal

14   communications between or among DC's in-house counsel and/or outside counsel, in

15   either this case or the *Siegel* Cases; however, and for the avoidance of doubt, (c) if a

16   non-lawyer is an author or recipient of any of the communications in subsections (a)

17   and/or (b), such communications must be logged.  This Stipulation is also without

18   prejudice or waiver to any party's right in the future to request or compel the

19   identification or logging of Privileged documents otherwise covered by subsections

20   (a) and (b) above.

21       (6)  By 6:00 p.m. PST on December 20, 2010, DC will inform Defendants in

22   writing of any issues DC has regarding Defendants' Privilege logs.

23       (7)  The Parties will thereafter meet and confer on December 21, 2010, at

24   2:00pm PST regarding any such issues.  DC reserves all rights after this conference

25   to bring a motion challenging Defendants' privilege logs and document production,

26   and DC and Defendants reserve all their respective rights and arguments with respect

27   to any such motion.  Notwithstanding this reservation of rights, DC hereby agrees

28

**EXHIBIT 4**
**24**

1    that Defendants have not waived any Privilege by virtue of serving their privilege

2    logs on December 15, 2010.

3

Dated: December ___, 2010      O'MELVENY & MYERS LLP

4

5

6                          By: _____

7                              Daniel M. Petrocelli

8                              Attorneys for Plaintiff DC Comics

9 Dated: December ___, 2010      TOBEROFF & ASSOCIATES, P.C.

10

11                         By _____

12                          Marc Toberoff

                               Attorneys for Defendants Mark Warren Peary,

13                              as personal representative of the Estate of

                               Joseph Shuster, Jean Adele Peavy, Joanne

14                              Siegel and Laura Siegel Larson

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION RE: DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

**EXHIBIT 4**

1  DANIEL M. PETROCELLI (S.B. #97802)
     dpetrocelli@omm.com
2  MATTHEW T. KLINE (S.B. #211640)
     mkline@omm.com
3  CASSANDRA L. SETO (S.B. #246608)
     cseto@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, CA 90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:   (310) 246-6779

7  PATRICK T. PERKINS (admitted *pro hac vice*)
     pperkins@ptplaw.com
8  PERKINS LAW OFFICE, P.C.
   1711 Route 9D
9  Cold Spring, NY 10516
   Telephone:  (845) 265-2820
10 Facsimile:   (845) 265-2819

11 Attorneys for Plaintiff DC Comics

12

13                    UNITED STATES DISTRICT COURT

14         CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

15 DC COMICS,                          Case No: CV 10-03633 ODW (RZx)

16              Plaintiff,

17       vs.                           Hon. Otis D. Wright II, U.S.D.J.
                                       Hon. Ralph Zarefsky, U.S.M.J.
18 PACIFIC PICTURES CORPORATION;
   IP WORLDWIDE, LLC; IPW, LLC;        **DISCOVERY MATTER**
19 MARC TOBEROFF, an individual;
   MARK WARREN PEARY, as personal      **STIPULATION RE:
20 representative of the ESTATE OF      DEFENDANTS' PRODUCTION
   JOSEPH SHUSTER; JEAN ADELE          OF DOCUMENTS AND
21 PEAVY, an individual; JOANNE        PRIVILEGE LOGS**
   SIEGEL, an individual; LAURA
22 SIEGEL LARSON, an individual,       **[Proposed] Order Filed Herewith**
   and DOES 1-10, inclusive,
23                                     Complaint filed:  May 14, 2010
                Defendants.            Trial Date:    None Set
24

25

26

27

28

STIPULATION RE: DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

**EXHIBIT 4**
**26**

Marc Toberoff (State Bar No. 188547)
  *mtoberoff@ipwla.com*
Nicholas C. Williamson (State Bar No. 231124)
  *nwilliamson@ipwla.com*
Keith G. Adams (State Bar No. 240497)
  *kgadams@ipwla.com*
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 2720
Los Angeles, California, 90067
Telephone:  (310) 246-3333
Fax:        (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele
Peavy, Joanne Siegel and Laura Siegel
Larson

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STIPULATION RE: DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

**EXHIBIT 4**
27

1      Plaintiff DC Comics together with its corporate affiliates ("DC"), and the

2  relevant Defendants Mark Warren Peary, as Personal Representative of the Estate of

3  Joseph Shuster, Jean Adele Peavy, Joanne Siegel, and Laura Siegel Larson

4  ("Defendants") (collectively, "the Parties"), by and through their respective counsel

5  of record, hereby stipulate and agree as follows:

6      WHEREAS, after a dispute the partiesParties have reached an agreement as to

7  the timing and nature of Defendants' production of documents and privilege logs in

8  response to DC's August 17, 2010 requests for production ("Requests");

9      NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, that:

10      (1) By 6:00 p.m. PST on December 3, 2010, Defendants will produce, by

11  personal service on DC's counsel at its Century City offices, all documents and other

12  materials responsive to each and every one of DC's Requests, except for documents

13  that are subject to a claim of attorney-client privilege, the attorney- work -product

14  doctrine or any other, another privilege, immunity or protection available under law,

15  or under the parties' May 1, 2008 JAMS Confidentiality Agreement (collectively,

16  "Privilege" or "Privileged"). Aside from documents and materials subject to such a

17  claim of Privilege or falling under the exception set forth in sections (4) and (5)

18  below, Defendants will not refuse to produce or refuse to log any documents or

19  materials based on the objections Defendants previously asserted in their responses to

20  DC's Requests.

21      (2) By 6:00 p.m. PST on December 15, 2010, Defendants will furnish, by

22  personal service on DC's counsel at its Century City offices, complete Privilege logs

23  identifying any and all Privileged documents and other materials for which

24  Defendants, assert a claim of Privilege in response to DC Comics' Requests, are

25  asserting Privilege.(3) To the extent responsive to DC's Requests,.

26      (3) In making their document production on December 3, Defendants will

27  reference by their Bates numbers documents already produced to DC in the cases

28  *Siegel v. Warner Bros. Ent. Inc.*, C.D. Cal. Case No. 04-8400 ODW (RZx), and

1

STIPULATION RE: DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

EXHIBIT 4

28

1    *Siegel v. Time Warner Inc.*, C.D. Cal. Case No. 04-8776 ODW (RZx) (the "*Siegel*

2    Cases") ~~by their Bates numbers~~, rather than re-copy and re-produce such documents.

3    DC reserves the right to request an inspection of the original documents or any

4    metadata and any other information associated with documents produced in this

5    manner. With respect to any request for production of documents served on DC in

6    this case, DC may likewise reference documents already produced in the *Siegel* Cases

7    by their Bates numbers, rather than re-copy and re-produce such documents.

8    ~~However, neither Defendants nor DC will be required to produce or designate by~~

9    ~~Bates numbers documents produced by the other side in the *Siegel* Cases.~~

10        (4)  Defendants need not produce in this case, nor will DC be required to

11    produce in this case, pleadings filed in the *Siegel* Cases or this case.

12    ~~(5)  Defendants or~~ (5)  The Parties are not required to list on their respective

13    privilege logs in this case any Privileged documents created on or after May 14,

14    2010. As to Privileged documents created prior to May 14, 2010: (a) Defendants

15    and their counsel need not log internal communications between or among

16    Defendants' counsel or ~~communications~~ between or among Defendants' counsel and

17    anyone at the law firm of Kendall, Brill and ~~Krieger~~Klieger, in either this case or the

18    *Siegel* Cases~~.~~; (b) DC ~~or~~and its ~~outside~~ counsel need not log internal

19    communications between or among DC's in-house counsel and/or outside counsel, in

20    either this case or the *Siegel* Cases; however, and for the avoidance of doubt, (c) if a

21    non-lawyer is an author or recipient of any of the communications in subsections (a)

22    and/or (b), such communications must be logged.  This Stipulation is also without

23    prejudice or waiver to any party's right in the future to request or compel the

24    identification or logging of Privileged documents otherwise covered by subsections

25    (a) and (b) above.

26        (6)  By ~~no later than~~ 6:00 p.m. PST on December ~~16, 2010~~20, 2010, DC will

27    inform Defendants in writing of any issues DC has regarding Defendants' Privilege

28    logs.

2

STIPULATION RE: DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

EXHIBIT 4
29

1    (7)  The Parties will thereafter meet and confer on December ~~17, 2010,~~ 21,

2    2010, at 2:00pm PST regarding any such issues.  DC reserves all rights after this

3    conference to bring a motion challenging Defendants' privilege logs and document

4    production, and DC and Defendants reserve all their respective rights and arguments

5    with respect to any such motion.  Notwithstanding this reservation of rights, DC

6    hereby agrees that Defendants have not waived any Privilege ~~due to the timing of~~

7    ~~Defendants' service of its~~ by virtue of serving their privilege logs~~.~~ on December 15,

8    2010.

9    Dated:  December __, 2010        O'MELVENY & MYERS LLP

10

11

12                                         By: _____

13                                                Daniel M. Petrocelli
                                                  Attorneys for Plaintiff DC Comics
14

15    Dated:  December __, 2010        TOBEROFF & ASSOCIATES, P.C.

16

17                                         By _____
                                                  Marc Toberoff
18                                                Attorneys for Defendants Mark Warren Peary,
                                                  as personal representative of the Estate of
19                                                Joseph Shuster, Jean Adele Peavy, Joanne
                                                  Siegel and Laura Siegel Larson
20

21

22

23

24

25

26

27

28

3

STIPULATION RE: DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

EXHIBIT 4
30

Document comparison by Workshare Professional on Wednesday, December 01, 2010 8:53:19 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:/Users/cls14982/Desktop/12.1 Defendants Version.doc |
| Description | 12.1 Defendants Version |
| Document 2 ID | file://C:/Users/cls14982/Desktop/12.1 Stipulation.doc |
| Description | 12.1 Stipulation |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | Count |
|---|---|
| Insertions | 34 |
| Deletions | 22 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 56 |

**EXHIBIT 4**

**31**

1    DANIEL M. PETROCELLI (S.B. #97802)
        dpetrocelli@omm.com
2    MATTHEW T. KLINE (S.B. #211640)
        mkline@omm.com
3    CASSANDRA L. SETO (S.B. #246608)
        cseto@omm.com
4    O'MELVENY & MYERS LLP
     1999 Avenue of the Stars, 7th Floor
5    Los Angeles, CA 90067-6035
     Telephone:  (310) 553-6700
6    Facsimile:   (310) 246-6779

7    PATRICK T. PERKINS (admitted *pro hac vice*)
        pperkins@ptplaw.com
8    PERKINS LAW OFFICE, P.C.
     1711 Route 9D
9    Cold Spring, NY 10516
     Telephone:  (845) 265-2820
10   Facsimile:   (845) 265-2819

11   Attorneys for Plaintiff DC Comics

12

13                    UNITED STATES DISTRICT COURT

         CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION
14
     DC COMICS,                          Case No: CV 10-03633 ODW (RZx)
15                       Plaintiff,
                                         Hon. Otis D. Wright II, U.S.D.J.
16         vs.                           Hon. Ralph Zarefsky, U.S.M.J.

17   PACIFIC PICTURES CORPORATION;
     IP WORLDWIDE, LLC; IPW, LLC;        **DISCOVERY MATTER**
18   MARC TOBEROFF, an individual;
     MARK WARREN PEARY, as personal      **[PROPOSED] ORDER**
19   representative of the ESTATE OF      **GRANTING STIPULATION RE:**
     JOSEPH SHUSTER; JEAN ADELE         **DEFENDANTS' PRODUCTION**
20   PEAVY, an individual; JOANNE        **OF DOCUMENTS AND**
     SIEGEL, an individual; LAURA       **PRIVILEGE LOGS**
21   SIEGEL LARSON, an individual,
     and DOES 1-10, inclusive,
22                       Defendants.     Complaint filed:  May 14, 2010
                                         Trial Date:       None Set
23

24

25

26

27

28

**EXHIBIT 4**
**32**

1   Marc Toberoff (State Bar No. 188547)
      *mtoberoff@ipwla.com*
2   Nicholas C. Williamson (State Bar No. 231124)
      *nwilliamson@ipwla.com*
3   Keith G. Adams (State Bar No. 240497)
      *kgadams@ipwla.com*
4   TOBEROFF & ASSOCIATES, P.C.
    2049 Century Park East, Suite 2720
5   Los Angeles, California, 90067
    Telephone:  (310) 246-3333
6   Fax:        (310) 246-3101

7   Attorneys for Defendants Mark Warren
    Peary, as personal representative of the
8   Estate of Joseph Shuster, Jean Adele
    Peavy, Joanne Siegel and Laura Siegel
9   Larson

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING STIPULATION RE:
DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

**EXHIBIT 4**
33

1      Based on the stipulation of plaintiff DC Comics together with its corporate

2  affiliates ("DC") and the relevant Defendants Mark Warren Peary, as Personal

3  Representative of the Estate of Joseph Shuster, Jean Adele Peavy, Joanne Siegel,

4  and Laura Siegel Larson ("Defendants") (collectively, "the Parties"), and for good

5  cause shown, IT IS HEREBY ORDERED that:

6      (1) By 6:00 p.m. PST on December 3, 2010, Defendants will produce, by

7  personal service on DC's counsel at its Century City offices, all documents and

8  other materials responsive to each and every one of DC's Requests, except for

9  documents that are subject to a claim of attorney-client privilege, the attorney work-

10  product doctrine, another privilege available under law, or under the parties' May 1,

11  2008 JAMS Confidentiality Agreement (collectively, "Privilege" or "Privileged").

12  Aside from documents and materials subject to such a claim of Privilege or falling

13  under the exception set forth in sections (4) and (5) below, Defendants will not

14  refuse to produce or refuse to log any documents or materials based on the

15  objections Defendants previously asserted in their responses to DC's Requests.

16      (2) By 6:00 p.m. PST on December 15, 2010, Defendants will furnish, by

17  personal service on DC's counsel at its Century City offices, complete Privilege

18  logs identifying any and all Privileged documents and other materials for which

19  Defendants assert a claim of Privilege in response to DC's Requests.

20      (3) In making their document production on December 3, Defendants will

21  reference by their Bates numbers documents already produced to DC in the cases

22  *Siegel v. Warner Bros. Ent. Inc.*, C.D. Cal. Case No. 04-8400 ODW (RZx), and

23  *Siegel v. Time Warner Inc.*, C.D. Cal. Case No. 04-8776 ODW (RZx) (the "*Siegel*

24  Cases"), rather than re-copy and re-produce such documents.  DC reserves the right

25  to request an inspection of the original documents or any metadata and any other

26  information associated with documents produced in this manner.  With respect to

27  any request for production of documents served on DC in this case, DC may

28

<p align="center">- 1 -</p>

**EXHIBIT 4**
**34**

1  likewise reference documents already produced in the *Siegel* Cases by their Bates

2  numbers, rather than re-copy and re-produce such documents.

3      (4)  Defendants need not produce in this case, nor will DC be required to

4  produce in this case, pleadings filed in the *Siegel* Cases or this case.

5      (5)  The Parties are not required to list on their respective privilege logs in

6  this case any Privileged documents created on or after May 14, 2010.  As to

7  Privileged documents created prior to May 14, 2010:  (a) Defendants and their

8  counsel need not log internal communications between or among Defendants'

9  counsel or between or among Defendants' counsel and anyone at the law firm of

10 Kendall, Brill and Klieger, in either this case or the *Siegel* Cases; (b) DC and its

11 counsel need not log internal communications between or among DC's in-house

12 counsel and/or outside counsel, in either this case or the *Siegel* Cases; however, and

13 for the avoidance of doubt, (c) if a non-lawyer is an author or recipient of any of the

14 communications in subsections (a) and/or (b), such communications must be

15 logged.  This Stipulation is also without prejudice or waiver to any party's right in

16 the future to request or compel the identification or logging of Privileged

17 documents otherwise covered by subsections (a) and (b) above.

18     (6)  By 6:00 p.m. PST on December 20, 2010, DC will inform Defendants in

19 writing of any issues DC has regarding Defendants' Privilege logs.

20     (7)  The Parties will thereafter meet and confer on December 21, 2010, at

21 2:00pm PST regarding any such issues.  DC reserves all rights after this conference

22 to bring a motion challenging Defendants' privilege logs and document production,

23 and DC and Defendants reserve all their respective rights and arguments with

24 respect to any such motion.  Notwithstanding this reservation of rights, DC hereby

25 //

26 //

27 //

28 //

- 2 -

[PROPOSED] ORDER GRANTING STIPULATION RE:
DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

**EXHIBIT 4**

**35**

1    agrees that Defendants have not waived any Privilege by virtue of serving their

2    privilege logs on December 15, 2010.

3

4    IT IS SO ORDERED.

5

6    Dated: _____          _____

7                                       Honorable Ralph Zarefsky
                                        Magistrate Judge, United States District Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -

[PROPOSED] ORDER GRANTING STIPULATION RE:
DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

EXHIBIT 4
36

# EXHIBIT 5

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Thursday, December 02, 2010 3:10 PM
**To:** Petrocelli, Daniel
**Cc:** Kline, Matthew; Seto, Cassandra; Nicholas Williamson; Keith Adams
**Subject:** DC Comics v. PPC

Dan:

Attached is a redline of the last stip you sent.

The reference to "immunity or protection" in paragraph 1 needs to stay, because the negotiated JAMS Confidentiality Agreement offers contractual protections that go beyond privileges such as the attorney-client or the mediation privilege that exists notwithstanding an agreement.

I trimmed back your addition of a logging exclusion as to communications between DC's outside counsel and in-house counsel because this goes into the attorney-client communications realm and gets into sticky issues which should best be dealt with in the negotiation of a full logging agreement. If we start getting into the logging agreement issues here, it will bog down and prevent the timely completion of this stipulation, given the specificity with which both sides appear to approach such stipulations. I also took out the reference to DC "affiliates" as it is too open ended, and if it means Warner Bros., we don't need it here if we do not try to expand this stip relating to DC's Requests into a full-fledged logging agreement. We also need not do this at the moment because Defendants have not yet even served DC with any requests for production. I kept in your safety net provision however.

The dates as to an expedited meet and confer seem OK, but I want to make sure we are not left having to oppose a motion regarding the logs etc. Christmas week when I will be on vacation skiing with my family (leaving 12/24/10, returning 1/2/11). I suspect you and Matt will be on vacation at that time as well.

I will be in most of the day. Feel free to call me to discuss any of the above.

Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

1

**EXHIBIT 5**
**37**

1  DANIEL M. PETROCELLI (S.B. #97802)
     dpetrocelli@omm.com
2  MATTHEW T. KLINE (S.B. #211640)
     mkline@omm.com
3  CASSANDRA L. SETO (S.B. #246608)
     cseto@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, CA 90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:   (310) 246-6779

7  PATRICK T. PERKINS (admitted *pro hac vice*)
     pperkins@ptplaw.com
8  PERKINS LAW OFFICE, P.C.
   1711 Route 9D
9  Cold Spring, NY 10516
   Telephone:  (845) 265-2820
10 Facsimile:   (845) 265-2819

11 Attorneys for Plaintiff DC Comics

12

13                 UNITED STATES DISTRICT COURT

14       CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

15 | DC COMICS,                          | Case No: CV 10-03633 ODW (RZx)
16 |                  Plaintiff,          |
   |       vs.                            | Hon. Otis D. Wright II, U.S.D.J.
   |                                      | Hon. Ralph Zarefsky, U.S.M.J.
17 | PACIFIC PICTURES CORPORATION;        |
18 | IP WORLDWIDE, LLC; IPW, LLC;         | **DISCOVERY MATTER**
   | MARC TOBEROFF, an individual;        |
19 | MARK WARREN PEARY, as personal       | **STIPULATION RE:**
   | representative of the ESTATE OF      | **DEFENDANTS' PRODUCTION**
20 | JOSEPH SHUSTER; JEAN ADELE           | **OF DOCUMENTS AND**
   | PEAVY, an individual; JOANNE         | **PRIVILEGE LOGS**
21 | SIEGEL, an individual; LAURA         |
22 | SIEGEL LARSON, an individual,        | **[Proposed] Order Filed Herewith**
   | and DOES 1-10, inclusive,            |
23 |                                      | Complaint filed:  May 14, 2010
24 |                  Defendants.         | Trial Date:        None Set

25

26

27

28

   STIPULATION RE: DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

**EXHIBIT 5**
38

Marc Toberoff (State Bar No. 188547)
  *mtoberoff@ipwla.com*
Nicholas C. Williamson (State Bar No. 231124)
  *nwilliamson@ipwla.com*
Keith G. Adams (State Bar No. 240497)
  *kgadams@ipwla.com*
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 2720
Los Angeles, California, 90067
Telephone:   (310) 246-3333
Fax:         (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele
Peavy, Joanne Siegel and Laura Siegel
Larson

STIPULATION RE: DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

EXHIBIT 5
39

1    Plaintiff DC Comics ~~together with its corporate affiliates~~ ("DC") and the
2 relevant Defendants Mark Warren Peary, as Personal Representative of the Estate of
3 Joseph Shuster, Jean Adele Peavy, Joanne Siegel, and Laura Siegel Larson
4 ("Defendants") (collectively, "the Parties"), by and through their respective counsel
5 of record, hereby stipulate and agree as follows:

6    WHEREAS, ~~after a dispute~~ the Parties have reached an agreement as to the
7 timing and nature of Defendants' production of documents and privilege logs in
8 response to DC's August 17, 2010 requests for production ("Requests");

9    NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, that:

10    (1) By 6:00 p.m. PST on December ~~3~~7, 2010, Defendants will produce, by
11 personal service on DC's counsel at its Century City offices, all documents and other
12 materials responsive to each and every one of DC's Requests, except for documents
13 that are subject to a claim of attorney-client privilege, the attorney work-product
14 doctrine, ~~an~~ or any other privilege, immunity or protection available under law, or
15 under the parties' May 1, 2008 JAMS Confidentiality Agreement (collectively,
16 "Privilege" or "Privileged"). Aside from documents and materials subject to such a
17 claim of Privilege or falling under the exception set forth in sections (4) and (5)
18 below, Defendants will not refuse to produce or refuse to log any documents or
19 materials based on the objections Defendants previously asserted in their responses to
20 DC's Requests, except pursuant to a Court order.

21    (2) By 6:00 p.m. PST on December 15, 2010, Defendants will furnish, by
22 personal service on DC's counsel at its Century City offices, complete Privilege logs
23 identifying any and all Privileged documents and other materials for which
24 Defendants assert a claim of Privilege in response to DC's Requests.

25    (3) In making their document production ~~on December 3~~, Defendants will
26 reference by their Bates numbers documents already produced to DC in the cases
27 *Siegel v. Warner Bros. Ent. Inc.*, C.D. Cal. Case No. 04-8400 ODW (RZx), and
28 *Siegel v. Time Warner Inc.*, C.D. Cal. Case No. 04-8776 ODW (RZx) (the "*Siegel*

1
STIPULATION RE: DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

EXHIBIT 5
40

1  Cases"), rather than re-copy and re-produce such documents. ~~DC reserves the right~~
2  ~~to request an inspection of the original documents or any metadata and any other~~
3  ~~information associated with documents produced in this manner.~~ With respect to any
4  request for production of documents served on DC in this case, DC ~~may~~in making
5  their document production will likewise reference documents already produced in the
6  *Siegel* Cases by their Bates numbers, rather than re-copy and re-produce such
7  documents.  However, the Parties will not be required to produce or designate by
8  Bates numbers documents produced by the other side in the *Siegel* Cases.  The
9  Parties reserve the right to request an inspection of the original documents or any
10  metadata and any other information associated with documents produced in this
11  manner.
12      (4)  Defendants need not produce in this case, nor will DC be required to
13  produce in this case, pleadings filed in the *Siegel* Cases or this case.
14      ——(5)  The Parties are not required to list on their respective privilege logs
15  in this case any Privileged documents created on or after May 14, 2010.  As to
16  Privileged documents created prior to May 14, 2010:  (a) Defendants and their
17  counsel need not log internal communications between or among Defendants'
18  counsel or between or among Defendants' counsel and anyone at the law firm of
19  Kendall, Brill and Klieger, in either this case or the *Siegel* Cases; (b) DC and its
20  outside counsel need not log internal communications between or among DC's ~~in-~~
21  ~~house counsel and/or~~ outside counsel, in either this case or the *Siegel* Cases;
22  however, and for the avoidance of doubt, (c) if a non-lawyer is an author or recipient
23  of any of the communications in subsections (a) and/or (b), such communications
24  must be logged.  This Stipulation is also without prejudice or waiver to any party's
25  right in the future to request or compel the identification or logging of Privileged
26  documents otherwise covered by subsections (a) and (b) above, and is without
27  prejudice or waiver to any party's right in the future to seek a protective order in
28  response to any such a request or motion to compel.

2

STIPULATION RE: DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

Formatted: Indent: First line:  0.5"

Formatted: Font: Times New Roman

**EXHIBIT 5**
**41**

1    (6) By 6:00 p.m. PST on December 20, 2010, DC will inform Defendants in

2  writing of any issues DC has regarding Defendants' Privilege logs.

3    (7) The Parties will thereafter meet and confer on December 21, 2010, at

4  2:~~00pm~~00 p.m. PST regarding any such issues.  DC reserves all rights after this

5  conference to bring a motion challenging Defendants' privilege logs and document

6  production, and DC and Defendants reserve all their respective rights and arguments

7  with respect to any such motion.  However, DC shall not serve any such motion prior

8  to January 3, 2011, due to the intervening holidays. Notwithstanding this reservation

9  of rights, DC hereby agrees that Defendants have not waived any Privilege by virtue

10  of not serving their privilege logs ~~on~~until December 15, 2010 in response to DC's

11  Requests.

12    (8) DC's Motion to Compel the Production of Documents and Privilege Logs

13  shall be withdrawn forthwith.

14
     Dated: December __, 2010        O'MELVENY & MYERS LLP
15

16

17                                   By:_____
18                                        Daniel M. Petrocelli
                                          Attorneys for Plaintiff DC Comics
19
     Dated: December __, 2010        TOBEROFF & ASSOCIATES, P.C.
20

21

22                                   By_____
                                        Marc Toberoff
23                                      Attorneys for Defendants Mark Warren Peary,
                                        as personal representative of the Estate of
24                                      Joseph Shuster, Jean Adele Peavy, Joanne
                                        Siegel and Laura Siegel Larson
25

26

27

28

                                        3
          STIPULATION RE: DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

**EXHIBIT 5**
**42**

# EXHIBIT 6

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Friday, December 03, 2010 12:16 PM
**To:** Petrocelli, Daniel
**Cc:** Kline, Matthew; Seto, Cassandra; Keith Adams; Nicholas Williamson
**Subject:** Stip

Dan:

I've attached a red-line and clean version of the Stipulation with very minor final revisions.

We kept in the reference to Warner Bros. in the DC definition as requested.

We took out your addition of the upfront recital of DC's Motion to Compel because in your words it is "unnecessary" (as the motion is referenced in the last paragraph and was filed) and to me featuring it has a negative connotation that Defendants did something wrong when in fact they plainly offered in their Amended Responses dated October 8 (before Judge Wright's stay) to produce all non-privileged responsive documents and privilege logs, and it has always been our position that this motion was not necessary.

The other minor revisions are for clarification of what is already intended by the parties.

1. The JAMS Confidentiality Agreement sentence is for our clients and we prefer the word "protected."

2. Regarding the non-logging of internal law firm communications we added the word "solely" to both the provision applicable to us and DC's counsel, to be clearer; and regarding subparagraph (c) added "or in-house counsel" to "non-lawyer." I take it that the reason you added (c), to begin with, was to maintain the obligation for Defendants' counsel to log an internal communication that is "cc'ed" to the client (e.g., Joanne Siegel). This is fine, but as the same is intended to apply to DC's counsel, and the clients are WB's in-house "lawyers," we want to avoid the ambiguity, implication or argument that such a communication need not be logged as that would not be fair.

Again, we can address further logging aspects in negotiating a logging agreement, but should not hold this up for that.

I have taken great pains to describe the rationale for each of these minor changes so that you see their purpose without unnecessary suspicion. We are ready to sign the attached Stipulation and feel that there should be no further noodling with the language unless absolutely necessary.   If any real issues remain please call me directly to work them out.

Regards

Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333

1

**EXHIBIT 6**
**43**

Fax: (310) 246-3101
MToberoff@ipwla.com

2

**EXHIBIT 6**
**44**

1  DANIEL M. PETROCELLI (S.B. #97802)
     dpetrocelli@omm.com
2  MATTHEW T. KLINE (S.B. #211640)
     mkline@omm.com
3  CASSANDRA L. SETO (S.B. #246608)
     cseto@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, CA 90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:   (310) 246-6779

7  PATRICK T. PERKINS (admitted *pro hac vice*)
     pperkins@ptplaw.com
8  PERKINS LAW OFFICE, P.C.
   1711 Route 9D
9  Cold Spring, NY 10516
   Telephone:  (845) 265-2820
10 Facsimile:   (845) 265-2819

11 Attorneys for Plaintiff DC Comics

12

13                    UNITED STATES DISTRICT COURT

14        CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

15 DC COMICS,                          | Case No: CV 10-03633 ODW (RZx)

16              Plaintiff,             | Hon. Otis D. Wright II, U.S.D.J.
        vs.                           | Hon. Ralph Zarefsky, U.S.M.J.

17 PACIFIC PICTURES CORPORATION;       | **DISCOVERY MATTER**
18 IP WORLDWIDE, LLC; IPW, LLC;        |
   MARC TOBEROFF, an individual;       | **STIPULATION RE:
19 MARK WARREN PEARY, as personal      | DEFENDANTS' PRODUCTION
20 representative of the ESTATE OF      | OF DOCUMENTS AND
   JOSEPH SHUSTER; JEAN ADELE          | PRIVILEGE LOGS**
21 PEAVY, an individual; JOANNE         |
   SIEGEL, an individual; LAURA         | **[Proposed] Order Filed Herewith**
22 SIEGEL LARSON, an individual,        |
23 and DOES 1-10, inclusive,           | Complaint filed:  May 14, 2010
                                        | Trial Date:       None Set
24              Defendants.

25

26

27

28

Marc Toberoff (State Bar No. 188547)
  *mtoberoff@ipwla.com*
Nicholas C. Williamson (State Bar No. 231124)
  *nwilliamson@ipwla.com*
Keith G. Adams (State Bar No. 240497)
  *kgadams@ipwla.com*
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 2720
Los Angeles, California, 90067
Telephone:   (310) 246-3333
Fax:         (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele
Peavy, Joanne Siegel and Laura Siegel
Larson

STIPULATION RE: DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

**EXHIBIT 6**

**46**

1    Plaintiff DC Comics together with those corporate affiliates named as

2  defendants in *Siegel v. Warner Bros. Ent. Inc.*, C.D. Cal. Case No. 04-8400 ODW

3  (RZx) and *Siegel v. Time Warner Inc.*, C.D. Cal. Case No. 04-8776 ODW (RZx)

4  ("DC") and the relevant Defendants Mark Warren Peary, as Personal Representative

5  of the Estate of Joseph Shuster, Jean Adele Peavy, Joanne Siegel, and Laura Siegel

6  Larson ("Defendants") (collectively, "the Parties"), by and through their respective

7  counsel of record, hereby stipulate and agree as follows:

8    WHEREAS, the Parties have reached an agreement as to the timing and nature

9  of Defendants' production of documents and privilege logs in response to DC's

10  August 17, 2010 requests for production ("Requests");

11    NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, that:

12    (1) By 6:00 p.m. PST on December 7, 2010, Defendants will produce, by

13  personal service on DC's counsel at its Century City offices, all documents and other

14  materials responsive to each and every one of DC's Requests, except for documents

15  that are subject to a claim of attorney-client privilege, the attorney work-product

16  doctrine or any other privilege available under law, or to a claim that such responsive

17  documents and other materials are protected under the parties' May 1, 2008 JAMS

18  Confidentiality Agreement (collectively, "Privilege" or "Privileged").  Aside from

19  documents and materials subject to such a claim of Privilege or falling under the

20  exception set forth in sections (4) and (5) below, Defendants will not refuse to

21  produce or refuse to log any documents or materials based on the objections

22  Defendants previously asserted in their responses to DC's Requests.

23    (2) By 6:00 p.m. PST on December 15, 2010, Defendants will furnish, by

24  personal service on DC's counsel at its Century City offices, complete Privilege logs

25  identifying any and all Privileged documents and other materials for which

26  Defendants assert a claim of Privilege in response to DC's Requests.

27    (3)  In making their document production on December 7, Defendants will

28  reference by their Bates numbers documents already produced to DC in the cases

1

STIPULATION RE: DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

**EXHIBIT 6**

**47**

1  *Siegel v. Warner Bros. Ent. Inc.*, C.D. Cal. Case No. 04-8400 ODW (RZx), and

2  *Siegel v. Time Warner Inc.*, C.D. Cal. Case No. 04-8776 ODW (RZx) (the "*Siegel*

3  Cases"), rather than re-copy and re-produce such documents.  With respect to any

4  request for production of documents served on DC in this case, DC in making their

5  document production will likewise reference documents already produced in the

6  *Siegel* Cases by their Bates numbers, rather than re-copy and re-produce such

7  documents.  However, the Parties will not be required to produce or designate by

8  Bates numbers documents they obtained solely as a result of a document production

9  by the other side in the *Siegel* Cases.  The Parties reserve the right to request an

10  inspection of the original documents or any metadata and any other information

11  associated with documents produced in this manner.

12       (4)  Defendants need not produce in this case, nor will DC be required to

13  produce in this case, pleadings filed in the *Siegel* Cases or this case.

14       (5)  The Parties are not required to list on their respective privilege logs in this

15  case any Privileged documents created on or after May 14, 2010.  As to Privileged

16  documents created prior to May 14, 2010:  (a) Defendants and their counsel need not

17  log internal communications solely between or among Defendants' counsel or

18  between or among Defendants' counsel and anyone at the law firm of Kendall, Brill

19  and Klieger, in either this case or the *Siegel* Cases; (b) DC and its outside counsel

20  need not log internal communications solely between or among DC's outside

21  counsel, in either this case or the *Siegel* Cases; however, and for the avoidance of

22  doubt, (c) if a non-lawyer or in-house counsel is an author or recipient of any of the

23  communications in subsections (a) and/or (b), such communications must be logged.

24  This Stipulation is also without prejudice or waiver to any party's right in the future

25  to request or compel the identification or logging of Privileged documents otherwise

26  covered by subsections (a) and (b) above, and is without prejudice or waiver to any

27  party's right in the future to seek a protective order in response to any such a request

28  or motion to compel.

1       (6)  By 6:00 p.m. PST on December 20, 2010, DC will inform Defendants in

2   writing of any issues DC has regarding Defendants' Privilege logs.

3       (7)  The Parties will thereafter meet and confer on December 21, 2010, at 2:00

4   p.m. PST regarding any such issues.  DC reserves all rights after this conference to

5   bring a motion challenging Defendants' privilege logs and document production, and

6   DC and Defendants reserve all their respective rights and arguments with respect to

7   any such motion.  However, DC shall not serve any such motion prior to January 3,

8   2011, due to the intervening holidays. Notwithstanding this reservation of rights, DC

9   hereby agrees that Defendants have not waived any Privilege by virtue of not serving

10  their privilege logs until December 15, 2010 in response to DC's Requests.

11      (8)  DC's Motion to Compel the Production of Documents and Privilege Logs

12  shall be withdrawn forthwith.

13  Dated:  December __, 2010          O'MELVENY & MYERS LLP

14

15

16                                      By: _____

17                                          Daniel M. Petrocelli
                                            Attorneys for Plaintiff DC Comics
18

19  Dated:  December __, 2010          TOBEROFF & ASSOCIATES, P.C.

20

21                                      By_____
                                          Marc Toberoff
22                                        Attorneys for Defendants Mark Warren Peary,
                                          as personal representative of the Estate of
23                                        Joseph Shuster, Jean Adele Peavy, Joanne
                                          Siegel and Laura Siegel Larson
24

25

26

27

28

                                         3

1  DANIEL M. PETROCELLI (S.B. #97802)
    dpetrocelli@omm.com
2  MATTHEW T. KLINE (S.B. #211640)
    mkline@omm.com
3  CASSANDRA L. SETO (S.B. #246608)
    cseto@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, CA 90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:  (310) 246-6779

7  PATRICK T. PERKINS (admitted *pro hac vice*)
    pperkins@ptplaw.com
8  PERKINS LAW OFFICE, P.C.
   1711 Route 9D
9  Cold Spring, NY 10516
   Telephone:  (845) 265-2820
10 Facsimile:  (845) 265-2819

11 Attorneys for Plaintiff DC Comics

12                    UNITED STATES DISTRICT COURT

13        CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

14 DC COMICS,                          | Case No: CV 10-03633 ODW (RZx)
15              Plaintiff,
                                        | Hon. Otis D. Wright II, U.S.D.J.
16      vs.                            | Hon. Ralph Zarefsky, U.S.M.J.

17 PACIFIC PICTURES CORPORATION;       | **DISCOVERY MATTER**
18 IP WORLDWIDE, LLC; IPW, LLC;
   MARC TOBEROFF, an individual;       | **STIPULATION RE:**
19 MARK WARREN PEARY, as personal      | **DEFENDANTS' PRODUCTION**
                                        | **OF DOCUMENTS AND**
20 representative of the ESTATE OF      | **PRIVILEGE LOGS**
   JOSEPH SHUSTER; JEAN ADELE
21 PEAVY, an individual; JOANNE        | **[Proposed] Order Filed Herewith**
   SIEGEL, an individual; LAURA
22 SIEGEL LARSON, an individual,        | Complaint filed:  May 14, 2010
23 and DOES 1-10, inclusive,           | Trial Date:       None Set
24              Defendants.

25

26

27

28

STIPULATION RE: DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

**EXHIBIT 6**

**50**

1
Marc Toberoff (State Bar No. 188547)
  *mtoberoff@ipwla.com*
2
Nicholas C. Williamson (State Bar No. 231124)
  *nwilliamson@ipwla.com*
3
Keith G. Adams (State Bar No. 240497)
  *kgadams@ipwla.com*
4
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 2720
5
Los Angeles, California, 90067
Telephone:   (310) 246-3333
6
Fax:         (310) 246-3101

7
Attorneys for Defendants Mark Warren
Peary, as personal representative of the
8
Estate of Joseph Shuster, Jean Adele
Peavy, Joanne Siegel and Laura Siegel
9
Larson

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION RE: DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

**EXHIBIT 6**
**51**

1    Plaintiff DC Comics together with those corporate affiliates named as

2  defendants in *Siegel v. Warner Bros. Ent. Inc.*, C.D. Cal. Case No. 04-8400 ODW

3  (RZx) and *Siegel v. Time Warner Inc.*, C.D. Cal. Case No. 04-8776 ODW (RZx)

4  ("DC") and the relevant Defendants Mark Warren Peary, as Personal Representative

5  of the Estate of Joseph Shuster, Jean Adele Peavy, Joanne Siegel, and Laura Siegel

6  Larson ("Defendants") (collectively, "the Parties"), by and through their respective

7  counsel of record, hereby stipulate and agree as follows:

8    WHEREAS, ~~DC has filed a Motion to Compel the Production of Documents~~

9  ~~and Privilege Logs, and~~ the Parties have reached an agreement as to the timing and

10  nature of Defendants' production of documents and privilege logs in response to

11  DC's August 17, 2010 requests for production ("Requests");

12    NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, that:

13    (1) By 6:00 p.m. PST on December 7, 2010, Defendants will produce, by

14  personal service on DC's counsel at its Century City offices, all documents and other

15  materials responsive to each and every one of DC's Requests, except for documents

16  that are subject to a claim of attorney-client privilege, the attorney work-product

17  doctrine or any other privilege available under law, or to a claim that such responsive

18  documents and other materials are ~~exempt from production~~protected under the

19  parties' May 1, 2008 JAMS Confidentiality Agreement (collectively, "Privilege" or

20  "Privileged").  Aside from documents and materials subject to such a claim of

21  Privilege or falling under the exception set forth in sections (4) and (5) below,

22  Defendants will not refuse to produce or refuse to log any documents or materials

23  based on the objections Defendants previously asserted in their responses to DC's

24  Requests.

25    (2) By 6:00 p.m. PST on December 15, 2010, Defendants will furnish, by

26  personal service on DC's counsel at its Century City offices, complete Privilege logs

27  identifying any and all Privileged documents and other materials for which

28  Defendants assert a claim of Privilege in response to DC's Requests.

1     (3)  In making their document production on December 7, Defendants will

2  reference by their Bates numbers documents already produced to DC in the cases

3  *Siegel v. Warner Bros. Ent. Inc.*, C.D. Cal. Case No. 04-8400 ODW (RZx), and

4  *Siegel v. Time Warner Inc.*, C.D. Cal. Case No. 04-8776 ODW (RZx) (the "*Siegel*

5  Cases"), rather than re-copy and re-produce such documents.  With respect to any

6  request for production of documents served on DC in this case, DC in making their

7  document production will likewise reference documents already produced in the

8  *Siegel* Cases by their Bates numbers, rather than re-copy and re-produce such

9  documents.  However, the Parties will not be required to produce or designate by

10  Bates numbers documents they obtained solely as a result of a document production

11  by the other side in the *Siegel* Cases.  The Parties reserve the right to request an

12  inspection of the original documents or any metadata and any other information

13  associated with documents produced in this manner.

14     (4)  Defendants need not produce in this case, nor will DC be required to

15  produce in this case, pleadings filed in the *Siegel* Cases or this case.

16     (5)  The Parties are not required to list on their respective privilege logs in this

17  case any Privileged documents created on or after May 14, 2010.  As to Privileged

18  documents created prior to May 14, 2010:  (a) Defendants and their counsel need not

19  log internal communications solely between or among Defendants' counsel or

20  between or among Defendants' counsel and anyone at the law firm of Kendall, Brill

21  and Klieger, in either this case or the *Siegel* Cases; (b) DC and its outside counsel

22  need not log internal communications solely between or among DC's outside

23  counsel, in either this case or the *Siegel* Cases; however, and for the avoidance of

24  doubt, (c) if a non-lawyer or in-house counsel is an author or recipient of any of the

25  communications in subsections (a) and/or (b), such communications must be logged.

26  This Stipulation is also without prejudice or waiver to any party's right in the future

27  to request or compel the identification or logging of Privileged documents otherwise

28  covered by subsections (a) and (b) above, and is without prejudice or waiver to any

1  party's right in the future to seek a protective order in response to any such a request
2  or motion to compel.

3      (6)  By 6:00 p.m. PST on December 20, 2010, DC will inform Defendants in
4  writing of any issues DC has regarding Defendants' Privilege logs.

5      (7)  The Parties will thereafter meet and confer on December 21, 2010, at 2:00
6  p.m. PST regarding any such issues.  DC reserves all rights after this conference to
7  bring a motion challenging Defendants' privilege logs and document production, and
8  DC and Defendants reserve all their respective rights and arguments with respect to
9  any such motion.  However, DC shall not serve any such motion prior to January 3,
10  2011, due to the intervening holidays. Notwithstanding this reservation of rights, DC
11  hereby agrees that Defendants have not waived any Privilege by virtue of not serving
12  their privilege logs until December 15, 2010 in response to DC's Requests.

13      (8)  DC's Motion to Compel the Production of Documents and Privilege Logs
14  shall be withdrawn forthwith.

15  Dated:  December __, 2010        O'MELVENY & MYERS LLP
16

17

18                                     By: _____
19                                         Daniel M. Petrocelli
                                           Attorneys for Plaintiff DC Comics
20

21  Dated:  December __, 2010        TOBEROFF & ASSOCIATES, P.C.
22

23                                     By _____
24                                         Marc Toberoff
                                           Attorneys for Defendants Mark Warren Peary,
25                                         as personal representative of the Estate of
                                           Joseph Shuster, Jean Adele Peavy, Joanne
26                                         Siegel and Laura Siegel Larson
27

28

                                     3
STIPULATION RE: DEFENDANTS' PRODUCTION OF DOCUMENTS AND PRIVILEGE LOGS

**EXHIBIT 6**

**54**

# EXHIBIT 7



# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

April 14, 2011

OUR FILE NUMBER
905900-321

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6850

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 2720
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
dpetrocelli@omm.com

Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Marc:

DC will move to review Magistrate Zarefsky's April 11, 2011 Order. For the reasons DC explained in its briefing and oral argument before the Magistrate, *e.g.*, Docket Nos. 160, 173, and in response to the Magistrate's ruling, DC will seek review on Issues No. 1 (Consent Agreements), 3 (Non-Privileged Documents Conveyed to Counsel), and 7 (Privilege Logs). As certain other issues remain in flux (*e.g.*, on Issue No. 2 (Retainer Agreements)), while defendants comply with the Court's order to produce certain documents, DC reserves all rights to further challenge defendants' production with the Magistrate and/or the Magistrate's rulings on these still-open questions. When and if these issues become ripe, DC reserves all rights to challenge such rulings.

Assuming you do not consent to the relief DC seeks, DC is ready to meet and confer with you on its motion to review this week. Magistrate Zarefsky, moreover, invited the parties to discuss a mutually acceptable privilege-log protocol, and DC remains ready and willing to do so. We can have that discussion this week or next week.

All of DC's rights are hereby reserved.

Very truly yours,

Daniel M. Petrocelli
of O'MELVENY & MYERS LLP

**EXHIBIT 7**

**55**

# EXHIBIT 8



# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

April 25, 2011

**VIA E-MAIL**

Richard Kendall
Kendall Brill & Klieger LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California 90067

OUR FILE NUMBER
905900-321

WRITER'S DIRECT DIAL
(310) 246-6840

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Re:   *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Counsel:

Because revelations in the recently-produced May 13, 2003, letter from Michael Siegel to Laura Siegel Larson, Bates No. LSL 00211-00212, bear directly on DC's claims and, particularly, on statements made by defendants in their SLAPP motion, DC will file a motion for leave to supplement its briefing in opposition to that motion. Pursuant to Local Rule 7-3, we request a conference with you to discuss DC's motion. Also, as mentioned in Dan Petrocelli's April 14 letter and based upon Magistrate Zarefsky's invitation to the parties, we would like to discuss a mutually acceptable privilege-log protocol.

At the end of today's hearing, Keith Adams mentioned that Mr. Toberoff would be available tomorrow to meet and confer regarding the issues raised in my April 22 letter concerning defendants' most recent production. We propose discussing all of these issues at the same time, and are available to do so tomorrow at 10:00 a.m.

Very truly yours,

Matthew T. Kline
of O'MELVENY & MYERS LLP

cc:   Daniel M. Petrocelli

**EXHIBIT 8**
**56**

# EXHIBIT 9

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 3630
LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

mtoberoff@ipwla.com

May 6, 2011

<u>Via E-Mail</u>

Matthew Kline
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:    *DC Comics v. Pacific Pictures Corp., et al.*, Case No. 10-CV-03633 ODW (RZx)

Dear Matt:

I write in response to your April 22, 2011 letter and our May 2, 2011 meet-and-confer, on behalf of defendants Laura Siegel Larson, Mark Warren Peary, and Jean Adele Peavy.

<u>May 13, 2002 Letter:</u>  As I stated during the meet and confer, the letter is irrelevant and inadmissible, and defendants properly produced the letter in accordance with the Court's April 11, 2011 order.  Nothing was redacted from the "May 13, 2002 letter" itself; the redactions were of minor underlining and notations by an attorney on our office's copy of the document.  If DC insists on bringing a motion on this subject, please be advised that the issue will be "much ado about nothing," in the words of both Shakespeare and Magistrate Zarefsky in his May 5, 2011 order.

DC also claims that defendants' redactions make it difficult to determine which pages are redacted.  Defendants marked as "redacted" any document produced in this litigation that contains redactions.

<u>November 2, 2002 Letter:</u>  As I stated during the call, we were unable to locate a November 2, 2002 letter, from Laura Siegel to Michael Siegel or otherwise.  We were able to locate a non-substantive November 1, 2002 letter from Laura Siegel and Joanne Siegel to Don Bulson and Michael Siegel, which defendants produce herewith.

<u>Siegel and Shuster Retainer Agreements:</u>  As I further stated on the call, defendants redacted these agreements in accordance with the Court's April 11, 2011 order.  As Mr. Adams stated on the call, nothing was specifically redacted from the page with the Bates No. MWP00057; rather, it was simply marked "redacted" because it was part of a redacted document as set forth above.

**EXHIBIT 9**
**57**

**TOBEROFF & ASSOCIATES, P.C.**

May 6, 2011
Re:     *DC Comics v. Pacific Pictures Corp.*
Page:   2 of 3

Dennis Larson Documents:  As I stated on the call, in the letters between the parties as well as in the briefing before Magistrate Zarefsky, both DC and defendants consistently referred to requests for "communications," which defendants understood to be requests for correspondence, and based on this understanding defendants expressed a willingness to produce "communications" between Laura Siegel Larson and Dennis Larson.  We believe that Magistrate Zarefsky understood "communications" between Laura Siegel Larson and Dennis Larson to mean the same, and not to refer to discovery requests, motions and other pleadings in their prolonged divorce proceedings.  We thus produced on behalf of Ms. Siegel the responsive correspondence that Ms. Siegel located in her files.

You informed us that DC's position is that *anything* "communicated" between the parties during the divorce proceedings, including all discovery requests and responses, all motion papers and pleadings, is a "communication" which must be produced (but that you currently did not require pleadings).

Such an overbroad and unnecessarily burdensome production regarding lengthy and marginally relevant divorce proceedings is neither contemplated by Magistrate Zarefsky's order, nor warranted.  Nonetheless, in the interests of compromise, Ms. Siegel offers:  (i) to contact her divorce attorneys in search of any additional responsive correspondence to be produced; and (ii) to produce any discovery requests and/or responses from the divorce proceedings in Ms. Siegel's possession, custody or control that are responsive to DC's requests and not privileged.  This offer would be contingent on DC agreeing that:  (i) no privilege log is necessary for communications between Ms. Larson and her divorce attorney(s); and (ii) documents filed in her divorce proceedings need not be produced.  If this is not acceptable and DC brings yet another wasteful motion to compel, this offer shall be deemed withdrawn.

Privilege Logs:  You informed us during the call that you would soon provide us with a proposed stipulation regarding "subject matter" descriptions on privilege logs.  We made clear, as we did previously, that we seek DC and Warner Bros.' agreement to note in the subject matter column of their logs all communications with inside and outside counsel that reference the so-called Timeline and Warner's receipt of privileged documents stolen from our firm's legal files.  You promised to get back to us regarding this request.  We have not yet received a response, and reserve all rights as to any proposed stipulation.

Responsive Joanne Siegel Estate Documents:  As stated on the call, our intention was to provide you with these documents in one production, rather than piecemeal.  However, we produce herewith the documents we have, as well as privilege logs.

Nothing in this letter should be construed as a waiver or limitation of any of defendants' rights or remedies, all of which are reserved.

**EXHIBIT 9**
**58**

**TOBEROFF & ASSOCIATES, P.C.**

May 6, 2011
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:   3 of 3

Very truly yours,

Marc Toberoff

Enclosures

**EXHIBIT 9**
**59**

# EXHIBIT 10



## O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
HONG KONG
LONDON
LOS ANGELES
NEWPORT BEACH
NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO
SHANGHAI
SILICON VALLEY
SINGAPORE
TOKYO
WASHINGTON, D.C.

OUR FILE NUMBER
905,900-321

May 11, 2011

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California 90067

Re:    ___DC Comics v. Pacific Pictures Corp. et al., CV-10-3633 (ODW) (RZx)___

Dear Marc:

We write in response to your May 6, 2011, letter. We dispute the factual assertions in your letter, and will need to move forward with our motion to compel.

With respect to your proposal regarding the Dennis Larson Documents, in the interest of sparing the Court from further motion practice, we may be able to agree to your proposal, assuming defendants stipulate to the terms below.

First, of the Dennis Larson Documents, DC seeks everything requested during discovery with one exception. DC seeks all non-privileged correspondence between or among Ms. Larson and her representatives, including attachments such as discovery responses and court filings. As we said during our call, we are willing, for now, not to insist that you produce publicly available court filings.

Second, defendants must produce all such documents by Friday, May 13, 2011, so that DC may review them before the deposition of Laura Siegel Larson scheduled for May 20. The proposed timeframe is fair, as defendants were required to search the files of Ms. Larson's attorneys and representatives and produce responsive documents in their possession well before *December 2010.* In its August 2010 discovery requests, DC sought from Ms. Larson "all DOCUMENTS … in YOUR 'possession, custody, or control'" and defined "YOU" to include "Laura Siegel Larson and, as applicable, any PERSON acting on her behalf, including but not limited to her agents, employees, attorneys, and representatives." Docket No. 161-15 ¶¶ 5, 16.

DC disputes any definition of "communications" that defendants now assert they "understood" or "believe that Magistrate Zarefsky understood" during the previous motion cycle. Any such understanding is contradicted by DC's discovery requests, which broadly

**EXHIBIT 10**
60

O'MELVENY & MYERS LLP
May 11, 2011 - Page 2

defined "COMMUNICATIONS" to encompass:

> [A]ll written, electronic, oral, telephonic, gesture, or other transmission or exchange of information, including without limitation any inquiry, request, dialogue, discussion, conversation, interview, correspondence, letter, note, consultation, negotiation, agreement, understanding, meeting, e-mail, and all DOCUMENTS evidencing any verbal or nonverbal interaction between any individuals or entities.

Docket No. 161-15 ¶ 2.

Defendants' newly-asserted understanding that "communications" encompassed only "correspondence" is belied by the definition above, which expressly lists correspondence as one category among a wide range of responsive communications. Moreover, defendants' newly-asserted objections to providing these documents on grounds of relevance, overbreadth, and burden are themselves irrelevant, as defendants waived all such objections in a stipulation signed by the Court on December 7, 2010. Docket No. 133 ¶ 1 ("Defendants will not refuse to produce or refuse to log any documents or materials based on the objections Defendants previously asserted in their responses to DC's Requests.").

Please let us know if you will enter into a stipulation to be submitted to the Court this week, pursuant to the terms above.

On your other points, we have discussed the issue of a privilege-log protocol and are working on a proposed stipulation; we will send you a draft when it is available.

All of DC's rights and remedies are reserved.

Very truly yours,

Matthew T. Kline
of O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli, Esq.

CC1:849570

**EXHIBIT 10**
**61**

# EXHIBIT 11

1   DANIEL M. PETROCELLI (S.B. #097802)
       dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
       mkline@omm.com
3   CASSANDRA L. SETO (S.B. #246608)
       cseto@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA  90067-6035
    Telephone:  (310) 553-6700
6   Facsimile:   (310) 246-6779

7   PATRICK T. PERKINS (admitted *pro hac vice*)
       pperkins@ptplaw.com
8   PERKINS LAW OFFICE, P.C.
    1711 Route 9D
9   Cold Spring, NY 10516
    Telephone:  (845) 265-2820
10  Facsimile:   (845) 265-2819

11  Attorneys for Plaintiff DC Comics

12              UNITED STATES DISTRICT COURT

13            CENTRAL DISTRICT OF CALIFORNIA

14  DC COMICS,                        | Case No. CV 10-3633 ODW (RZx)

15            Plaintiff,              | **PLAINTIFF DC COMICS'**
                                       **OBJECTIONS AND RESPONSES**
16        v.                          **TO DEFENDANT MARK**
                                       **WARREN PEARY'S FIRST SET**
17  PACIFIC PICTURES                  **OF REQUESTS FOR**
    CORPORATION, IP WORLDWIDE,         **PRODUCTION**
18  LLC, IPW, LLC, MARC TOBEROFF,
    an individual, MARK WARREN         Hon. Otis D. Wright II
19  PEARY, as personal representative of
    the ESTATE OF JOSEPH SHUSTER,      Complaint Filed:  May 14, 2010
20  JEAN ADELE PEAVY, an individual,   Trial Date:         None Set
    LAURA SIEGEL LARSON, an
21  individual and as personal
    representative of the ESTATE OF
22  JOANNE SIEGEL, and DOES 1-10,
    inclusive,
23
              Defendants.
24

25  PROPOUNDING PARTY:     Mark Warren Peary
26
    RESPONDING PARTY:      DC Comics
27
    SET NUMBER:            One (Nos. 1-68)
28

1    Pursuant to Federal Rule of Civil Procedure 34, plaintiff DC Comics ("DC")

2    hereby objects and responds to defendant Mark Warren Peary's ("Peary") First

3    Request for Production of Documents and Things (the "Requests").

4                              **PRELIMINARY STATEMENT**

5           DC's Objections and Responses to Defendant Mark Warren Peary's First Set

6    of Requests for Production ("Responses") are based on the information reasonably

7    and currently known to DC.  These Requests for Production, along with Mr.

8    Peary's contemporaneously served Interrogatories, represent the first discovery

9    served by defendants in this action, and defendants have only recently served their

10   Answer in this case.  Responses to many of the requests can be addressed by

11   defendants' referencing to DC's complaint (Docket No. 49; *id.* Ex. A Docket No.

12   49 Ex. A), all the briefing to date in this action—including, but not limited to, the

13   briefing and exhibits filed in connection with defendants' Rule 12 and SLAPP

14   motions (Docket Nos. 30, 30-1 to 30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-

15   1, 34-2, 35, 36, 75, 75-1 to 75-5, 76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1

16   to 80-4, 81, 89, 90, 91, 92, 93, 94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2,

17   100, 100-1 to 100-3, 102, 102-1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4,

18   147, 147-1 to 147-3, 148, 148-1 to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1

19   to 182-40, 183, 183-1 to 183-4, 184, 185, 186, 191, 191-1, 192, 192-1 to 192-3,

20   193, 193-1 to 193-2, 194, 195, 195-1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-

21   1 to 305-59, 306 (errata), 307, 308, 312, 312-1 to 312-2, 313, 314, 314-1 to 314-3,

22   333, 333-1 to 333-3, 334, 334-1 to 334-13, 335, 338, 338-1)—and all discovery in

23   this action and the *Siegel* action (*e.g.*, DCC00000001-154435 and WB000001-

24   149488)—including, but not limited to, all deposition testimony in those cases and

25   here.  All of these sources are incorporated by reference herein.

26          In making this document production pursuant to the parties' December 7,

27   2010 stipulation in this case, DC will reference by Bates number documents already

28   produced in the *Siegel* litigations and this case, rather than re-copy and reproduce

                                          - 1 -                    DC'S OBJS. & RESPS. TO
                                                                  PEARY'S REQS. FOR PROD. 1-68

**EXHIBIT 11**
**63**

1   such documents. Given that discovery is ongoing, expert discovery has not yet

2   begun, third-party discovery still needs to be taken, and defendants continue their

3   efforts to stymie DC's discovery in this case, DC reserves all rights to supplement

4   these Responses as more information becomes available.

5        Consistent with the parties' December 7, 2010 stipulation, DC will not log

6   documents subject to a claim of attorney-client privilege, work-product privilege, or

7   any other privilege available under law that were created on or after May 14, 2010.

8   As to documents created prior to May 14, 2010, DC will not log work product or

9   privileged communications solely between or among DC's counsel, including

10  outside and in-house counsel. Logging such documents would constitute an

11  unreasonable and undue burden.

12       By these Responses, DC does not intend to waive, and does not waive, any

13  objection at trial to the admission into evidence of these Responses, in whole or in

14  part, or the documents produced in connection with it. Rather, DC intends to

15  preserve, and does preserve, all objections to the admission into evidence of these

16  Responses, in whole or in part, and the documents produced in connection with

17  them, including, without limitation, objections based on relevance, foundation,

18  authenticity, or privilege, as well as any and all objections based on the Federal

19  Rules of Evidence or otherwise. As noted below, DC also reserves all privilege

20  objections, and directs defendants to its privilege logs previously produced.

21                    **SPECIFIC OBJECTIONS AND RESPONSES**

22  **Request No. 1**

23       All COMMUNICATIONS between YOU AND Mark Warren Peary.

24  **Response to Request No. 1**

25       DC objects to this Request on the grounds that it is indefinite as to time and

26  not reasonably limited in scope. DC further objects to the extent this Request calls

27  for irrelevant information and calls for a search for documents that is unduly

28  expensive, overbroad, unduly burdensome, and oppressive. DC further objects to

DC'S OBJS. & RESPS. TO
PEARY'S REQS. FOR PROD. 1-68

**EXHIBIT 11**
**64**

1    Subject to and without waiving all foregoing objections, DC has conducted a

2   reasonably diligent search of the documents in the possession, custody, or control

3   of relevant custodians and produces herewith by designation or otherwise all non-

4   privileged, responsive documents.  Given that discovery is ongoing in this case, DC

5   expressly reserves its right to supplement these Responses, if need be, as more

6   information becomes available, and to use in discovery and at trial any information

7   omitted from these Responses as a result of mistake, inadvertence, or oversight.

8

9        Dated:  February 17, 2012              Respectfully submitted,

10                                              By:  /s/ Daniel M. Petrocelli

11                                                   Daniel M. Petrocelli

12                                              Attorneys for Plaintiff DC Comics

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DC'S OBJS. & RESPS. TO
PEARY'S REQS. FOR PROD. 1-68

**EXHIBIT 11**
**65**

# EXHIBIT 12

**From:** Tokoro, Jason
**Sent:** Tuesday, June 12, 2012 5:42 PM
**To:** 'Marc Toberoff'
**Cc:** Petrocelli, Daniel; Kline, Matthew; Seto, Cassandra; Richard B. Kendall; Laura Brill; Nicholas Daum; Pablo Arredondo; David Harris; Keith Adams
**Subject:** RE: DC Comics v. Pacific Pictures

Please see below correspondence sent on behalf of Matthew T. Kline.

\*        \*        \*

Marc,

1. With regard to the rulings we are referencing, you can start by looking here: *In re Pacific Pictures Corp.*, 2012 WL 1640627, at \*1, \*5 (9th Cir. May 10, 2012). Then you can look at the district courts' orders (in Ohio, issued by Judge Zarefsky, issued by Judge Wright) compelling you to produce the trove of Michael-Laura Siegel documents that were wrongly withheld and that support our fraud and tort claims. Then we can talk about your deficient production of the Timeline and USAO documents.

2. *More than one year ago*, Judge Zarefsky held that defendants shared no common-interest with the USAO, and that any other privileges had been waived. Dick's firm signed the interrogatories at issue (you do not represent yourself in pro per), met and conferred with us on the responses last year, and, like you, Dick and his firm have had an obligation to supplement the responses. The recent stay orders that you and he sought were rejected. You and Dick must supplement the interrogatories and do it now, especially given that Dick is refusing to produce his notes. You and Dick must also address the unanswered document issues raised below, as well as the ethics ones. Your excuses about other Ninth Circuit briefing obligations getting in the way, when you already obtained a three-week extension to address them, are without merit. We will move to compel Dick's and your responses and move for discovery sanctions, as needed. As for your claims regarding "frivolous" filings, that is exactly the same empty rhetoric we heard from you and your counsel that led to the writ ruling as well as the SLAPP ruling you are now appealing.

3. Your claims about DC's discovery responses are false. DC provided you with documents and privilege logs and, despite our meet-and-confer with Keith, you have done nothing about this issue except to make hollow assertions like those below.

All of DC's rights are reserved,

Matt

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Tuesday, June 12, 2012 10:55 AM
**To:** Kline, Matthew

**EXHIBIT 12**
**66**

**Cc:** Tokoro, Jason; Seto, Cassandra; Petrocelli, Daniel; Richard B. Kendall; Pablo Arredondo; David Harris
**Subject:** Re: DC Comics v. Pacific Pictures

Matt:

What ruling concerning what purported misconduct are you referring to exactly?

We are in the midst of responding to your frivolous motion to supplement the record on appeal which knowingly flouts the rules of appellate procedure and abuses the doctrine of judicial notice. We will thereafter review DC's interrogatories and defendants' responses to see if there is anything that should be updated and, if so, provide you with supplementary responses in due course.

In the meantime, you have never provided us with proper responses or any responsive documents to defendants' first set of requests for production served six months ago. Instead, as to nearly every particular request you evasively designated the entire Bates nos. range of every document produced in the *Siegel* case. In six months you have also failed to provide a privilege log, waiving privilege as to your clients.

Marc

On Mon, Jun 11, 2012 at 9:41 PM, Kline, Matthew <MKline@omm.com> wrote:
Marc:

The courts' rulings--including concerning your misconduct--speak for themselves. So does the record concerning Mr. Marks, where we have done nothing untoward. Notably absent from your email is the discovery information to which we are entitled. You and Dick need to provide it, now.

All of DC's rights are reserved.

Matt

**From:** marc.toberoff@gmail.com [mailto:marc.toberoff@gmail.com] **On Behalf Of** Marc Toberoff
**Sent:** Monday, June 11, 2012 7:07 PM
**To:** Kline, Matthew
**Cc:** Richard B. Kendall; Petrocelli, Daniel; Seto, Cassandra; Tokoro, Jason; Pablo Arredondo
**Subject:** Re: DC Comics v. Pacific Pictures

Matt:

Your repeated *ad hominem* attacks and false accusations of purported discovery misconduct has been shown time and again to be empty hyperbole, just as it will in any motion you attempt to justify with your fabricated rhetoric.

We will bring your abusive and inappropriate conduct both as to us and third party witnesses such as Kevin Marks to the Court's attention.

Marc

On Mon, Jun 11, 2012 at 5:19 PM, Kline, Matthew <MKline@omm.com> wrote:

**EXHIBIT 12**
**67**

Dick,

The issues are joined now, and you are not providing us with answers.

1. You've not addressed how we will discover your oral communications with the government other than to say Marc Toberoff will be addressing that issue at some unnamed point in time. Marc Toberoff, your client, has not done so, and saying he will do so at some point in time is not a response. We need to know from you what you and the USAO said to one another, and you can certainly provide that detail in amended interrogatory responses, especially given the work you and your firm did on the original responses—both signing them and meeting and conferring on their substance. Moreover, despite our conversation last week, you have provided us with no authority justifying your relegating your discovery duties to your client in this way, and we are aware of none, especially in light of the discovery misconduct by your client here. Please provide us with any authority on which you are relying to assign your duties in this way.

2. The claims of sloppiness are not well taken. SD 924 and 925 contain a series of emails in a chain, but not the earliest email standing alone. The earlier email has not been produced. Why is that? Are you saying it has been? Are you saying it no longer exists as a stand-alone email? Or are you saying you eliminated copies of earlier emails in chains? Last week, you said you did no de-duplication—now are you saying you did? Also, what was the "non-repeated human error" and why are you sure it was "non-repeated"?

As discussed last week, we need and are entitled to precision here, especially given the original and inadequate production that you let your client provide.

Thanks,

Matt

---

**From:** Richard Kendall [mailto:rkendall@kbkfirm.com]
**Sent:** Monday, June 11, 2012 4:38 PM
**To:** Kline, Matthew
**Cc:** Petrocelli, Daniel; Seto, Cassandra; Tokoro, Jason; 'mtoberoff@ipwla.com'; Nicholas Daum; kgadams@ipwla.com; Pablo Arredondo; Pearson, Ashley; Laura Brill

**Subject:** RE: DC Comics v. Pacific Pictures

Matt:

Your reply to my email is not constructive, and this correspondence is becoming a waste of time.

First, you have not disputed that my notes are protectable work product. The question of whether you are entitled to obtain the contents of my communications with the USAO through means other than disclosure my work product-privileged notes is of course a different one, as I pointed out in my below email. As discussed during our "meet and confer," I disagree with the other comments in your first paragraph.

**EXHIBIT 12**

**68**

Second, you are being sloppy and are absolutely wrong in persisting with your
accusation that the copy of the "October 21, 2010, email from you to Mr. Klein, copying
Mr. Toberoff, [misdated] September 13, 2010" that resided in KBK's files was not
produced to you. Again, please see SD 924 and 925, referenced in my prior email. The
September 14 email that resided in our "sent" file was not produced because of a non-
repeated human error.

As to the remainder of your rhetoric, I will simply disagree and let it go at that for
now.

Kind regards,

Dick


**Richard B. Kendall**
Kendall Brill & Klieger LLP
Direct: (310) 272-7900

PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any
distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be
unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your
system. Thank you.


**From:** Pearson, Ashley [mailto:APearson@OMM.com]
**Sent:** Monday, June 11, 2012 3:35 PM
**To:** Richard Kendall; Laura Brill
**Cc:** Petrocelli, Daniel; Kline, Matthew; Seto, Cassandra; Tokoro, Jason; 'mtoberoff@ipwla.com'; Nicholas
Daum; kgadams@ipwla.com; Pablo Arredondo
**Subject:** FW: DC Comics v. Pacific Pictures

Counsel,

Please see the email below sent on behalf of Matt Kline.

*          *          *

Dick:

I have been out of the office, and I write in response to your email below.

1. Whether your notes contain verbatim, or near verbatim, recitations of your conversations
with Mr. Kim or Mr. Klein does not absolve you of the obligation to disclose to DC the
substance of those communications, including what you told the USAO or what the USAO
told you. Such information is not privileged or shielded by work-product protections, as the
courts have held. As we made clear in our prior email, DC does not seek your work-product

**EXHIBIT 12**
**69**

notes about your strategy calls, and defendants may redact and log that information, but DC is entitled to know what communications you exchanged in those non-privileged discussions. In addition, it is plain that Mr. Toberoff's interrogatory responses require updating based not only upon the courts' decisions, but also these recently disclosed conversations between you and the USAO, which have never before been disclosed or logged. Neither you nor your firm can avoid its obligations to meaningfully participate in this case and ensure that your clients' discovery responses are accurate and complete by claiming you have an "agreement" with Mr. Toberoff regarding a division of labor that allows him to control all aspects of the discovery process—especially here, where it has been proven time and time again that Mr. Toberoff's discovery responses have been incomplete, and he has made untrue claims concerning the contents and substance of documents.

2. Jason did inadvertently describe the October 21, 2010, email from you to Mr. Klein, copying Mr. Toberoff, as being dated September 13, 2010, but that is beside the point. The point is that your firm never produced this document to DC, and you still have provided no explanation for why that is the case, given the allegedly exhaustive nature of your document searches. Nor did your firm produce a redacted or unredacted copy of the September 14, 2010, email from you to Mr. Toberoff, which Mr. Toberoff produced from his personal Gmail account. You state that Mr. Toberoff's office will produce redacted versions of this document from Mr. Toberoff's email account and the Kendall Brill firm's "sent" file, but that response avoids the broader issue at hand—why neither you nor your firm produced these documents? Did your search not capture them? Do they not exist in your firm's files? It can't be the latter as to the September 14 email, because you seem to be saying that you will now produce a copy your firm's "sent" file. In sum, we need to why these documents were not picked up by your search, and whether other similar documents exist. Too much time and effort has been expended, as it is, trying to get defendants and their counsel to comply with the courts' recent orders.

Best and thanks,

Matt

From: Richard Kendall [mailto:rkendall@kbkfirm.com]
Sent: Thursday, June 07, 2012 1:33 PM
To: Kline, Matthew
Cc: Petrocelli, Daniel; Seto, Cassandra; Laura Brill; Nicholas Daum; Keith Adams; Pablo Arredondo; Marc Toberoff; Tokoro, Jason
Subject: RE: DC Comics v. Pacific Pictures

Matt:

1. I do not believe you are entitled to know the contents of my work product, except to know that it does not contain either a verbatim, or near verbatim, of my conversations with either Mr. Kim or Mr. Klein. Your contention that Mr. Toberoff's interrogatory responses require updating based on the Ninth Circuit's decision that the attorney-client privilege was waived as to the stolen documents provided to the USAO presents different issues, and Mr. Toberoff is reviewing those.

2. The copy of the "September 13, 2010" email in the KBK files to which you refer (you

**EXHIBIT 12**
**70**

have misread the date: it is actually an October 21, 2010 email whose subject is "Grand Jury subpoena dated September 13, 2010") has already been produced to you twice by Mr. Toberoff's office. See SD 924 and 925. The September 14, 2010 email residing in Mr. Toberoff's gmail account was inadvertently produced by Mr. Toberoff without redacting the portion of the document reflecting my attorney-client communication to Mr. Toberoff. Mr. Toberoff's office will be producing a redacted version of this email, from both his gmail account and duplicate thereof that resides in the KBK "sent" file, and will be supplementing the privilege log to assert the attorney-client privilege in the redacted portion of this document. In the meantime, please return the inadvertently produced document and destroy all copies of same, and make no further use of the document in any correspondence, motion practice, pleadings, briefs, or otherwise. The attachment (the September 10, 2010 email from Mr. Klein to me, denominated as such in the September 14 email) was produced to you long ago, and is already part of the record in the litigation over the stolen documents in the District Court and the Ninth Circuit.

All rights are reserved.

Kind regards,

Dick

**Richard B. Kendall**
Kendall Brill & Klieger LLP
Direct: (310) 272-7900

PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

---

**From:** Tokoro, Jason [mailto:jtokoro@OMM.com]
**Sent:** Wednesday, June 06, 2012 9:26 PM
**To:** Richard Kendall
**Cc:** Petrocelli, Daniel; Kline, Matthew; Seto, Cassandra; Laura Brill; Nicholas Daum; Keith Adams; Pablo Arredondo; Marc Toberoff
**Subject:** RE: DC Comics v. Pacific Pictures

Counsel,

Please see the below correspondence sent on behalf of Matthew T. Kline.

*       *       *

**EXHIBIT 12**
71

Dick,

1. Thank you for your letter and checking your computer for notes. Some follow-up questions: Do any of the notes record what you told the USAO or what the office told you? If so, the substance of those communications must be disclosed, as they are not privileged. If there are work-product notes about your strategy calls, we do not want to see those. But we are entitled to know is what communications you exchanged in those non-privileged discussions. If the notes need to be redacted, that is fine. You should also report on the contents of the communications in amended Interrogatory Responses to DC's Requests Nos. 9-19 served on December 10, 2011, on defendant Marc Toberoff. *E.g.,* Interrogatory No. 9 ("DESCRIBE in detail any and all COMMUNICATIONS between YOU and any law enforcement official, including anyone employed by the United States Attorney's Office for the Central District of California and/or the Federal Bureau of Investigation, regarding the TOBEROFF TIMELINE AUTHOR and/or the TOBEROFF TIMELINE."). We expect to get those communications this week or early next. If you want to discuss the matter further in a Rule 37 call, let's have it this Friday.

2. During our meet-and-confer on Monday, we discussed the fact that defendants have not produced documents in the possession, custody or control of the Kendall Brill firm responsive to the Court's orders. Specifically, your firm has not produced its copies of correspondence with the U.S. Attorney's Office—on which you are an author or recipient— that have been produced by Mr. Toberoff from his personal Gmail account. We have attached two examples that Jason identified—a September 13, 2010, email from you to Mr. Klein and copying Mr. Toberoff, and a September 14, 2010, email from you to Mr. Toberoff forwarding an email to you from Mr. Klein. Please confirm why you did not produce these documents; do they not exist among your files? Did your search not capture them? Either way, please check again to see that your firm's production was fully complete. We want to follow up on these issues and the others raised in our call.

Thanks,

Matt

**From:** Dawn Mancil [mailto:dmancil@kbkfirm.com]
**Sent:** Tuesday, June 05, 2012 11:44 AM
**To:** Kline, Matthew
**Cc:** mtoberoff@jpwla.com; Richard Kendall
**Subject:** DC Comics v. Pacific Pictures

**Dawn F. Mancil**
**Assistant to Richard B. Kendall, Esq.**
Kendall Brill & Klieger LLP
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067

Tel: (310) 556-2700
Fax: (310) 556-2705
E-mail: dmancil@kbkfirm.com
Web: www.kbkfirm.com

**EXHIBIT 12**
**72**

PLEASE NOTE:  This message, including any attachments, may include privileged, confidential and/or inside information.  Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful.  If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system.  Thank you.

--
**Marc Toberoff**
Toberoff & Associates, PC
22337 Pacific Coast Highway, # 348
Malibu, CA 90265
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

--
**Marc Toberoff**
Toberoff & Associates, PC
22337 Pacific Coast Highway, # 348
Malibu, CA 90265
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

**EXHIBIT 12**
**73**

# EXHIBIT 13



# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

August 7, 2012

OUR FILE NUMBER
905900-321

**VIA EMAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

Richard Kendall
Kendall Brill & Klieger LLP
10110 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Re:  *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Dick:

  We write in response to your July 20 letter and your firm's offer to review a limited number of your clients' files and re-log and produce documents, if DC promises not to file its special-master motion with the District Court. While we appreciate that your firm has taken a small step in the right direction, there are several shortcomings in the proposal, chief among them: (1) your firm's and your clients' failure to acknowledge the seriousness of the discovery problems at issue (or the significant cost and delay caused by defendants' actions); (2) your firm's and your clients' failure meaningfully to address many of the issues we raised during our lengthy in-person meet-and-confer on these issues; and (3) your firm's and your clients' assertion that appointment of a special master is unnecessary. Also unacceptable is your firm's offer to do work required of it by law as a quid pro quo to avoid DC's motion. In short, based on the present record, DC is not prepared to accept your offer, and will file its motion shortly, unless there is a significant change in defendants' position.

## I. TOBEROFF'S DISCOVERY MISCONDUCT MUST BE ACKNOWLEDGED.

  Your July 20 letter begins by staking out the following factual and legal position:

> Defendants disagree strongly with DC's contention that there has been any material error (other than a very small number of inadvertent errors of no consequence that are common in complex litigation) concerning Defendants' privilege logs. In fact, both the form and content of the logs have been repeatedly upheld both in this action and in the *Siegel* case, over the course of active litigation spanning nearly eight years. We also believe, as stated in prior correspondence to you, that your other accusations of discovery misconduct in this litigation by Toberoff & Associates are

**EXHIBIT 13**
**74**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 2

without basis, and nothing in this offer of compromise should be deemed to suggest otherwise.

Each claim you make above is in error, improperly minimizes fundamental discovery misconduct that cannot be swept away, *cf. Hester v. Vision Airlines, Inc.*, 2012 WL 2914108, at *5-7 (9th Cir. July 18, 2012), and pays no heed either to the significant prejudice DC has suffered or the needless costs defendants have imposed on the courts. We discussed many examples of your clients' discovery misconduct at our recent in-person meeting, and while you claimed to be unaware of many of the issues we discussed, your letter does nothing to address the points we raised or the further diligence you said your firm would conduct in response.

A. Toberoff's Conduct Was Intentional And The Heaviest Sanctions Are Warranted.
Toberoff's pattern of obstructing the discovery process has prejudiced DC's ability to litigate its claims in this case.[1]  Just last month, the Ninth Circuit issued an opinion re-affirming the propriety of the most grave sanctions (default) where a party withholds relevant evidence, redacts information that is not legitimately privileged, and obfuscates efforts to uncover it. *Hester*, 2012 WL 2914108, at *5-7.  In *Hester*, plaintiffs alleged that their employer was wrongfully retaining hazard pay, and issued interrogatories and requests for production asking for "all communications and documents that relate to hazard pay." *Id.* at *2.  Defendant refused to cooperate with plaintiff's requests by first asserting the documents did not exist, and later making an incomplete production that only included select pages of some documents, and heavily redacted copies of others. *Id.* at *2-3.  The district court found that defendant "infentionally delayed production of documents, misrepresented its current and past production ... and otherwise engaged in bad faith conduct." *Id.* at *5.  As a sanction, the court struck defendant's answer. *Id.*  The Ninth Circuit affirmed and recommended other possible sanctions. *Id.* at *9; *accord, e.g., Connecticut Gen.*, 482 F.3d at 1097 (defendant's "pattern of deception and discovery abuse .... so damage[d] the integrity of the discovery process that there [could] never be assurance of proceeding on the true facts"); *Valley Eng'rs*, 158 F.3d at 1054-58 (terminating sanctions warranted where party suppressed smoking-gun document by denying it existed and through false privilege claims; plaintiffs "probably would never have seen [it], had [their] lawyer not been sharp enough to spot what was not there"; defendant's "discovery violations ma[de] it impossible for [the] court to be confident that the parties [would] ever have access to the true facts").

---

[1] *See* FED. R. CIV. P. 37; *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007); *In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1236-1237 (9th Cir. 2006); *Computer Task Grp., Inc. v. Brotby*, 364 F.3d 1112 (9th Cir. 2004); *Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1057-1058 (9th Cir. 1998); *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 349 (9th Cir. 1995); *Adriana Intl. Corp. v. Lewis & Co.*, 913 F.2d 1406, 1412 (9th Cir. 1990); *N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1450-1451 (9th Cir. 1986); *G-K Props. v. Redevelopment Agency of San Jose*, 577 F.2d 645, 647 (9th Cir. 1978); *Rates Tech., Inc. v. Mediatrix Telecom, Inc.*, 2012 WL 3036481, at *4 (Jul. 26, 2012).

**EXHIBIT 13**

**75**

Toberoff's pattern of withholding non-privileged documents, redacting non-privileged information, falsely claiming that requested documents do not exist, and knowingly manipulating his privilege logs is equally improper. So, too, is his and his counsel's refusal fully and finally to remedy the situation. As we will show the Court, Toberoff's "willful halting [of] the discovery process" has prejudiced DC's ability to litigate its claims, *Barbieri v. Rio Suites Hotel & Casino*, 45 Fed. Appx. 652, 653 (9th Cir. 2002); wasted the courts' limited resources, *G-K Props.*, 577 F.2d at 647; and "damage[d] the integrity of the discovery process," *Conn. Gen. Life Ins.*, 482 F.3d at 1097. Many documents central to DC's case have been produced only after DC has "spot[ted] what was not there," *Valley Engr's*, 158 F.3d at 1058—and then had to fight through false denials that such documents did not exist, purposefully opaque privilege logs, and costly motion practice. The Ninth Circuit not only permits sanctions in such circumstances, it "encourage[s]" them, *G-K Props.*, 577 F.2d at 647, and both sanctions and a special master are needed to get to the full depths of Toberoff's misconduct.

Discussed below are a few examples (not exhaustive) showing that Toberoff's actions have been "deliberate," "material," and prejudicial, despite your claims in your July 20 letter to the contrary, and Toberoff's recent denials, *see* Docket No. 466, which your firm notably did not sign off on our join.

*1. The May 13, 2003, Letter.* The Toberoff Timeline identifies a May 13, 2003, letter from Michael Siegel to Laura Siegel Larson that had never been produced or logged in this case or in *Siegel*—despite its being directly responsive to document requests in both cases. The Timeline describes the May 2003 letter as documenting Michael's many concerns about Toberoff's misconduct, including his efforts to secure the Superman copyrights for himself.

After defendants failed to produce the document by the court-ordered date for defendants to make their document production in December 2010, DC requested during a meet-and-confer that month that Toberoff confirm whether the May 2003 letter existed and, if so, to produce it. Toberoff refused to confirm the letter's existence, instead stating only that DC should not rely on the Timeline. Given Toberoff's non-answer, DC sent a follow-up letter on December 29 concerning documents identified in the Timeline that defendants had never produced or logged, including (1) the May 2003 letter; (2) a December 16, 2002, letter from Toberoff to the Siegel heirs; (3) a July 5, 2003, letter from Michael to Laura; and (4) a September-October 2003 letter regarding Ari Emanuel's fee for representing the Siegel heirs. Toberoff responded in a letter a few days later that "the ranting anonymous 'Timeline' [is] inaccurate and untrustworthy," he claimed that the December 2002 and September-October 2003 letters did not exist, and he evaded DC's questions as to the May 2003 and July 5 letters. Docket Nos. 162-9, 162-10.

DC pressed Toberoff again, requesting on January 5 that defendants produce several documents, *including specifically the May 2003 letter from Michael to Laura*. Docket No. 162-11. Your claims that Toberoff did not intentionally obstruct discovery (stated in your July 20 letter and elsewhere) are belied by Toberoff's letter of January 8, 2011, in which he stated:

> *As to your claims that we have not produce documents alluded to in the ranting, anonymous Timeline, we have repeatedly stated that the inadmissible Timeline is*

**EXHIBIT 13**
**76**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 4

*extremely untrustworthy. **To the extent that relevant documents exist, they have
either been produced or designated as privileged.***

Nonetheless, in the interest of clarity: …

- *There are no documents related to an offer by a "billionaire investor"
  to purchase the Siegels' Superman rights, because no such offer was
  ever conveyed, and the sworn testimony of the relevant witnesses is
  consistent on this point. The Timeline itself, states that this supposed
  offer was made at the August 2002 meeting between Kevin Marks, Ari
  Emanuel, and [Mr. Toberoff]. Docket No. 98 at 4:21-6:3. As Kevin
  Marks testified, "[a]t no time during that conversation did either Mr.
  Toberoff or Mr. Emanuel say anything about a 'billionaire investor.'
  The world 'billionaire' was never used in the conversation by any of
  its participants." Docket No. 98-3 at 1:16-2:7.*

*DC's overzealous quest to find non-existent documents based on frivolous
allegations in an anonymous incoherent "hit piece" is unworthy of DC and its
counsel.*

Docket No. 162-12 at 589 (emphases added).

   a. While you, Mr. Daum, and Toberoff (in our in-person meeting) and Ms. Brill (in her
letter that preceded it) all tried to downplay Toberoff's failure to produce the May 2003 letter in
late 2010 or early 2011, every one of the defenses offered is without merit. During our meeting,
Toberoff argued that DC's discovery requests were blunderbuss and he innocently did not locate
the May 2003 letter during his searches. But as you and he know, DC's December 2010 and
January 2011 letters—which we discussed during our meeting—asked Toberoff to confirm the
existence of the May 2003 letter based on a search of the documents in defendants' possession,
which would include the Timeline documents. Docket No. 162-9 at 574-78; 162-11 at 583-86.
The letters confirm we also specifically raised the letter during our lengthy meet-and-confer call.

   Mr. Daum argued that any failure to find the document was inadvertent, but when we
pressed him on the any factual basis he had to make this claim, he conceded that he and your
firm played *no role* in trying to discern why Toberoff had not produced the document in 2010 or
2011, much less any role in searching for the document in 2010. In any event, Mr. Daum's
suggestion that Toberoff innocently could not locate the May 2003 letter cannot be taken
seriously: the May 2003 letter appears no fewer than *four* times among the Toberoff Timeline
documents at Q0032-33, Q0139-40, Q0317-18, Q0590-91. Both Toberoff and your firm had to
have reviewed this document on numerous occasions in making the representations you did in
numerous briefs to the Court in 2010 about the accuracy of the Timeline and DC's reliance on
the allegations contained therein.

   We pressed Toberoff in December 2010 and January 2011 to look among the Timeline
documents for the May 2003 letter, and his response was: the Timeline is "untrustworthy" and

**EXHIBIT 13**
**77**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 5

"to the extent relevant documents exist, they have either been produced or designated as privileged." Docket No. 162-12 at 589. These were direct, knowing misrepresentations and not inadvertent errors, as you now describe them. Nowhere among any of defendants' logs in *Siegel* or this case was or is the May 2003 letter from Michael to Laura ever listed. And as of January 2011, never had it been produced.

Your letter notably makes no mention of any of these facts or any follow-up investigation your firm has done into why Toberoff did not produce the May 2003 letter in 2010 or early 2011. Nor does your letter grapple with the fact that Toberoff made numerous affirmative misstatements to DC and the Court about the Timeline, the May 2003 letter, and otherwise, including the following, false statement in Toberoff's January 8, 2011, letter that: "There are *no documents* related to an offer by a 'billionaire investor' to purchase the Siegels' Superman rights, because no such offer was ever conveyed...." Docket No. 162-12 at 589.

As both Toberoff and your firm well knew in 2010 and 2011, the May 2003 letter existed among the Toberoff Timeline documents, it had never been produced or logged, and that letter expressly mentioned the "billionaire" investor. *See* Docket No. 225-4 at 3 ("Marc [Toberoff] had a mysterious *billionaire* who wanted to invest in the Superman copyright. When you signed with Marc the *billionaire* invested elsewhere."). As Toberoff and your firm also knew, defendants were under a court order, issued in December 2010, to produce all responsive, non-privileged documents—having waived all other objections to DC's document requests—and yet they failed to do either with respect to the May 2003 letter. Docket No. 133. Nor did your firm ever produce or log the document among the productions made for the Toberoff defendants, and even though Toberoff and your firm have possessed the May 2003 letter since at least mid-2010, in possessing the Toberoff Timeline documents.

At our recent in-person meeting, you said that said Toberoff's January 8 letter—and the representations he made therein—were a revelation to you, and you wanted to look into them. Yet, your July 20 letter only makes further blanket denials of misconduct and does nothing to grapple with Toberoff's January 8 statements, or your firm's or defendants' failure to produce this non-privileged, obviously responsive, relevant document, which directly belied statements your firm was making in court filings.

b. Your July 20 letter argues no harm, no foul—going so far as to say Toberoff's suppression of this evidence was "of no consequence." But as we explained at our in-person meeting, defendants' and their counsels' efforts to minimize the impropriety, cost, and impact of the discovery misconduct at issue here is not well-taken. Defendants and their counsel have knowingly caused DC to spend hundreds of thousands of dollars and to waste months of precious time to obtain documents like the May 2003 letter, which defendants were under court order to produce in December 2010. And as we will discuss below, Toberoff's misconduct—which your firm has permitted—has allowed defendants to present a skewed evidentiary record to the courts, including in the SLAPP appeal papers your firm recently filed and has done nothing to correct. These record issues, akin to those raised in Rule 28(j) letter after the oral argument in the *Pacific Pictures* case are troubling, to say the least.

**EXHIBIT 13**
**78**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 6

    And the prejudice DC has suffered under cannot be undersold.  Toberoff did not turn over the May 2003 letter in December 2010, as he was required.  Rather, he rather represented to DC in January 2011, when DC pressed on why the May 2003 document had not been produced: "DC's overzealous quest to find non-existent documents based on frivolous allegations in an anonymous incoherent 'hit piece' is unworthy of DC and its counsel." Docket No. 162-12 at 589.  In his court filings (with which your firm was served), he did not disclose that the May 2003 letter was among the Timeline documents.  Instead, he chastised DC for relying on the Timeline as proof that the letter existed, insisting the Timeline was "unreliable" and "grossly inaccurate." Docket No. 160 at 5, 71-72.  Nowhere did Toberoff disclose that the May 2003 letter was among the Timeline documents, or that he had never specifically logged the letter.  Worse, he took deliberate steps to hid the letter's existence.  And, in fact, by their own later admission, defendants conceded they had *never* claimed *any* privilege over the May 2003 letter, but only other communications that DC sought.  Docket No. 412 at 10.

    Toberoff's deceptions were not "inadvertent errors … common in complex litigation," as your July 20 letter asserts.  They were sanctionable acts of deliberately misleading DC and the courts.  *E.g.*, *Hester*, 2012 WL 2914108, at *5-7.  Fortunately, DC spotted the gap in defendants' production, pressed the issue despite Toberoff's bellicose claims that DC's suspicions were "unworthy" of counsel, and Judge Zarefsky ultimately granted DC's motion and ordered defendants to either (a) produce the May 2003 letter, or (b) provide a verified response that it did not exist.  Docket No. 209 at 12.  Only then did Toberoff produce the May 2003 letter.

    Mr. Daum's recent suggestion—based on no evidence submitted by Toberoff in 2011 or now—that Toberoff only found the May 2003 letter after Judge Zarefsky issued his order is incredible.  It also directly belied by the fact that the document appears no fewer than *four times* among the Toberoff Timeline documents that DC asked Toberoff to search in December 2010 and January 2011, and with which your firm has long been intimately familiar.  It is also belied by the fact that Toberoff had to review all of the Timeline documents in preparing his court-ordered declaration in May 2007—and yet he not only failed to produce this document then, he later denied its existence.  And it is belied by the fact that both your firm and Toberoff must have reviewed the Timeline documents before producing them to the U.S. Attorney's Office in September 2010—and yet neither he nor your firm volunteered to produce the document when DC served its motion on all parties and counsel seeking it.  Toberoff (and your firm) also had to review the logs (and logged documents) in producing privilege logs for all defendants in late December 2010 and early 2011.  If you have any basis to support Mr. Daum's claim of an innocent discovery of this document after Judge Zarefsky's order—based on an actual investigation into actual facts—please provide it without delay.  Otherwise, we can only assume you have no facts to support your claim that the failure to produce this document was an "inadvertent error." That Mr. Daum made this statement—with no basis to support it, and when the plain evidence so clearly contradicts it—causes us even deeper concern.

    Still another reason we know no inadvertent error occurred are the steps Toberoff took after producing the document to cover his tracks.  Not only did he refuse to produce the document in December 2010, as required by court order, he also refused to produce all Q-Bates

**EXHIBIT 13**
**79**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 7

stamped versions of the May 2003 letter when DC requested it. Docket Nos. 160 at 71-72; 296-1 at 4-6; 296-8 at 76; 296-9 at 77-79. Producing the Q-Bates stamped versions of the documents would have shown (a) that non-privileged, non-produced documents existed among the Timeline documents, and (b) that Toberoff's privilege logs, as discussed further below, were a sham. Yet he successfully refused to produce the Q-Bates stamp version, calling DC's claimed need to obtain the documents baseless. He also objected successfully to orders that would have compelled him to produce all Michael-Laura Siegel-related correspondence, and that would have compelled him to update and re-scrub his privilege logs. Docket Nos. 160 at 68-71; 209 at 11-12. As we would learn, and is discussed below, the May 2003 letter was not the only document Toberoff suppressed. Many more existed, and many more were buried among the Timeline documents and false privilege entries that neither Toberoff nor your firm did anything to correct.

        c. The production of May 2003 letter—and the recent production of the Toberoff Timeline documents—also show what a sham defendants' privilege logs have been, and why the modest corrective action you propose falls well short. Defendants' production of the Timeline documents in May 2012 show that *four versions* of the May 2003 letter existed among the Timeline documents, and that Toberoff repeatedly misled DC and the courts with false, overbroad privilege log entries that claim no privilege over letters like the May 2003 letter, but instead lump and hide them behind other specific logged documents. This is not an isolated mistake; this intentionally deceptive and sanctionable practice repeats itself time and again. To take one example (among many), a copy of the May 2003 letter included among the Timeline documents bears Bates stamps Q0139-40. In his court-ordered May 2007 declaration in *Siegel*, Toberoff said that these pages corresponded with Siegel Supplemental Privilege Log Entry 79:

        Q 0138-45        Plaintiffs' supplemental privilege log # 79

        As shown below, Entry No. 79 only identifies a July 5, 2003, transmittal from Laura to Toberoff—and makes utterly no mention of a May 2003 letter from Michael to Laura. Indeed, the log entry makes no mention of a *May* 2003 communication. It makes no mention of *Michael Siegel*. And it makes no mention of a *letter*—just a July "Facsimile" from Laura to Toberoff.

| Log # | Date of Document | Identity of Recipient(s) | Identity of Author(s) | Document Type | Privilege Claim | Present Location |
|-------|------------------|--------------------------|-----------------------|---------------|-----------------|------------------|
| 79 | 7/5/2003 | Atty Marc Toberoff | Laura Siegel | Facsimile | Atty/Client | Plaintiffs' Counsel |

        You cannot claim this a simple mistake, or that Toberoff's failure to address and correct this issue in late 2010 or early 2011 was an innocent error. DC pressed Toberoff repeatedly to identify and produce the May 2003 letter. DC also pressed Toberoff to look at and for July 2003 correspondence involving Laura Siegel—including on July 5, 2003, specifically. Docket No. 162-9 at 577 ("We raised that there are certain communications listed on the Toberoff Timeline documents that neither appear on defendants' logs nor have been produced. We provided the following document as an example, a May 13, 2003 letter from Michael Siegel to Laura Siegel Larson discussed in the last paragraph of page 3 on the Timeline, … [and a] July 5, 2003 letter from Laura Siegel Larson to Michael Siegel discussed on page 4… You said that DC should not rely on the accuracy of the Timeline, but took under advisement our request that you verify

**EXHIBIT 13**

**80**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 8

whether such documents exist—and, if so, to either produce them, or list them on defendants' privilege logs."). So not only did Toberoff have the Timeline documents to go through and find the May 2003 letter among them—and to produce all versions of it—he had DC asking him to look at documents from July 2003 for Michael-Laura Siegel correspondence. This included the July 5 letter at log entry No. 79. Again, rather than producing the May 2003 letter—which Toberoff *never* asserted was privileged, Docket No. 412 at 10—he lied and dissembled. He and your firm said the Timeline was a ranting "hit piece" that could not be believed. He said DC had all the documents to which it was entitled and that his logs needed no correcting and did nothing to obscure the existence of relevant, responsive, or non-privileged documents. And he and your firm said that DC's "billionaire investor" claim was a "mockery."[2]

Not only did Toberoff repeatedly and deliberately lie in his logs, he did not correct his misstatements (a) when Judge Zarefsky ordered him in 2007 to go through all the Timeline documents once again; or (b) when DC repeatedly challenged the logs in this case. While Toberoff claimed in our meeting the other day that a paralegal went through the underlying documents to create his 2007 declaration, that is not what his declaration states, and it is not what Judge Zarefsky ordered him to do. *Cf.* May 21, 2007, Toberoff Decl. at 1 (Toberoff declaring: "Pursuant to the Order, *I have accounted for each of the Documents....*") (emphasis added). Worse still, DC raised repeated complaints with Toberoff's logs and filed motions seeking to require defendants to update them to ensure that non-privileged documents were not being hidden behind opaque, incomplete, and false log entries. Docket Nos. 160 at 40-44; 162-8 at 571-73; 162-9 at 574-78; 162-11 at 583-86; 205 at 3, 18-19; 207-10 at 472-75; 207-12 at 488; 225 at 13-20; 243 at 10-12; 253 at 6-10; 274 at 7-8. Time and again, Toberoff rejected DC's claims of impropriety, arguing that his logs were fully proper and that he was hiding nothing. Docket Nos. 160 at 66-68, 74-78; 162-10 at 579-82; 162-12 at 587-90; 207-11 at 481-82; 207-13 at 494; 210 at 12-13, 15-16; 231 at 16-22; 269 at 11-15. The production of the May 2003 letter and the recent production of the Toberoff Timeline documents—with full Q-Bates stamping finally exposed—show just how badly Toberoff misled DC and the courts in claiming his logs were proper and did not need to be updated in any way.

Toberoff's knowing, deliberate, and repeated suppression of the May 2003 letter is reason alone to justify terminating sanctions in this case. *See Valley Eng'rs*, 158 F.3d at 1054-58; *supra* at 2-3. But there are many other acts in which defendants have engaged to justify this relief and that show that Toberoff's failure to produce the May 2003 letter was far from an innocent error. As shown below, Toberoff played the same games in hiding Laura's July 2003 response to Michael—first suggesting it did not exist, and then being caught hiding the document behind yet another fax-cover-sheet privilege log entry, listing only Laura and himself as recipients.

---

[2] How your firm could make such representations about the accuracy of the Timeline and DC's allegations when you possessed and had reviewed the Timeline documents is an issue that must be fully explored. So, too, is your firm's failure to fulfill its duty of candor when Toberoff falsely told DC and the courts the documents it sought did not exist.

**EXHIBIT 13**
**81**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 9

d. Finally, as for your repeated claims that Toberoff's failure to produce this and other smoking-gun documents were not "material," your own briefs and letters in this case, as do Toberoff's, refute this. As you know, before defendants produced the May 2003 letter, they and your firm argued repeatedly and vociferously that DC's and the Timeline's "mysterious billionaire" investor claim, Docket Nos. 181 at 23-24; 201 at 3-7; 205 at 17-20; 215 at 8-10; 225-4 at 3, was a "mockery," "contrary to all the evidence," and "based entirely on the untrustworthy, inadmissible Timeline," *e.g.,* Docket No. 196 at 1-5, 10. Yet Michael's May 2003 letter supports this claim and corroborates the Timeline:

> Marc had a *mysterious billionaire* who wanted to invest in the Superman copyright, put 15 million dollars up front plus participation. When you signed with Marc the *billionaire* invested elsewhere. Marc has his own production company, he was going to team with Emanuel and make a [Superman] movie. This has not happened. Docket No. 225-4 at 3 (emphases added).

The May 2003 letter also contradicts Toberoff's representation in his January 8 letter to DC that "[t]here are no documents related to an offer by a 'billionaire investor' to purchase the Siegels' Superman rights." Docket No. 162-12 at 589. As shown below, DC has obtained—at great expense, and only after overcoming significant deception and stonewalling—still other documents that corroborate its "billionaire investor" claim, including from Larson herself. While Toberoff, Larson, and you may all now try to explain key evidence like the May 2003 letter away, those explanations are for the jury—and not for defendants and their counsel to use as a basis improperly to withhold discovery. Such skewing of the facts, especially when defendants and their counsel were taking such strident positions in their briefs about such issues, require the stiffest and fullest sanctions.

    2. *July 2003 Letter And Drafts.* As noted above, Toberoff's pattern of burying smoking-gun documents behind fax cover sheets to him was repeated when it came to Laura's July 2003 response to Michael's May 2003 letter. Like the May 2003 letter, the Timeline identifies a July 5, 2003, letter from Laura to Michael that had never been produced or logged in this case or in *Siegel*. DC requested that defendants (1) confirm whether the July 5 letter existed and, if so, to produce it; and (2) to review Entry Nos. 715 and/or 716 to the Siegel Privilege Log in this case—both listed as facsimiles from Laura to Marc—and confirm whether the logged documents included a July 11, 2003, letter from Laura to Michael, which DC believed could be the non-privileged July 2003 letter referenced in the Timeline. Docket Nos. 162-9 at 576-577; 162-11 at 583-84. In any event, Toberoff was under court order, as of December 2010, to produce or log responsive documents—and he did neither for the July 2003 letter that would only finally emerge in late 2011, and pursuant to court order issued by Judge Wright.

    a. Ms. Brill's claim in her recent letter that three potential "July 2003" letters are at issue and that Toberoff made no misrepresentations as to any one is false. She ignores Toberoff's and your firm's obligation to produce or log the document in late 2010 and/or early 2011—neither of which ever occurred.

**EXHIBIT 13**
**82**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 10

As for Ms. Brill's three asserted categories, the first is the July 11 letter. Despite DC's simple and straightforward requests, and the court's December 2010 order mandating the production or logging of responsive documents, Toberoff refused to review Log Entry Nos. 715 and 716 or to confirm DC's understanding that the July 11 letter from Laura to Michael was included as an attachment to the fax cover sheet but not separately logged. Docket Nos. 162-10 at 580-82; 162-12 at 588-89. Toberoff asserted that privilege as to the documents identified at Entry Nos. 715 and 716 had been repeatedly upheld by the courts in this case and in *Siegel*, but would not state whether the July 11 letter existed, or whether his logs accurately depicted what documents were hidden behind them. Docket Nos. 160 at 66-68; 231 at 19-20. Based on Toberoff's representations that DC was not entitled to the documents, Judge Zarefsky and the District Court rejected DC's motions to obtain the July 11 correspondence from Laura to Michael, though Judge Zarefsky did note that Toberoff's responses about the document were "cryptic." Docket Nos. 209, 248.

During Larson's July 22, 2011, deposition, she testified that she responded to Michael's May 2003 letter, that Toberoff made factual edits to the letter (via faxes to her), that she believed she sent the response in July 2003, and that she gave Toberoff a copy of the final letter. Docket No. 316-5 at 314:12-15, 316:11-12, 323:11-14, 325:22-327:22, 328:3-330:3. Despite these clear admissions, Toberoff again refused to produce a copy of the letter; confirm whether defendants' possessed a copy; address whether it was defendants' position that the letter was privileged, and, if so, why; or confirm whether the letter appears on defendants' logs, and, if so, at what entry number. Docket No. 361-2 at 216-18.

It was not until DC filed its second motion to compel production of the July 11 letter in September 2011, that Toberoff finally conceded defendants did not separately log the July 11 letter, as the law requires them to do. Toberoff conceded the July 11 letter appeared at Siegel Privilege Log Entry No. 82 in the *Siegel* case. Docket Nos. 316 at 21-24; 317 at 1-5. Again, Log Entry No. 82 does not identify Laura's July 11 letter; nor does any other entry. Entry No. 82 logs a "Facsimile" from "Laura Siegel" to "Marc Toberoff." It says nothing about a letter from Laura to Michael, and does not specify the alleged "common interest" privilege claim that defendants now newly asserted:

| Log# | Date | Identity of Recipient(s) | Identity of Author(s) | Document Description | Privilege Claim | Present Location |
|------|------|--------------------------|------------------------|---------------------|-----------------|------------------|
| 82 | 7/11/2003 | Atty Marc Toberoff | Laura Siegel | Facsimile | Atty/Client | Plaintiff's Counsel |

Docket No. 317-2 at 8.

Clearly, none of the rulings in *Siegel*—which Toberoff argued precluded DC from obtaining the July 11 letter—conceivably could have dealt with the discoverability of the July 11 letter, since its existence was only confirmed by Toberoff in September 2011. Toberoff's suppression of Laura's letter behind a false privilege entry was not an "inadvertent" mistake as

**EXHIBIT 13**
83

O'MELVENY & MYERS LLP
August 7, 2012 - Page 11

you claim.  Toberoff used this same calculated, illegal devise to hide evidence in burying the May 2003 letter.  Both your firm and Toberoff knew this critically important letter existed in the Timeline documents, was directly responsive to DC's requests, related closely to DC's claims in this case (and arguments defendants were making to the contrary, including whether DC had a "deal" with the Siegel family in 2001, with which Toberoff interfered).  DC asked Toberoff to review the Timeline documents for this July 2003 letter.  And Toberoff—despite knowing the exact location of the July 11 letter, knowing he had never separately logged it, and knowing it was responsive to DC's requests—dissembled to both DC and the courts about its existence, all while your firm looked on in silence.  As for the privilege claim that was asserted in Log Entry No. 82, it did not reach or even embrace the Michael to Laura letter—only attorney-client privilege was asserted, and yet where common-interest privilege had been claimed over Michael-Laura communications, that specific claim, not an attorney-client privilege claim, had been made.  *E.g.*, Docket No. 162-6 at 416-17 (Entry Nos. 495, 507-09, 512, 516-19).  Toberoff's representations to the courts that his privilege claims to this document had been upheld was, thus, false—and, at best—horribly misleading.  Courts in the Ninth Circuit do not permit such games.  *Supra* at 2-3.

b.  The second "July 2003" letter at issue, according to Ms. Brill's letter, is the July 5 letter identified in the Timeline that defendants had never produced or logged.  Toberoff refused to confirm whether the July 5 letter existed and instead, like the May 2003 letter, chastised DC for relying on the "inadmissible" and "untrustworthy" Timeline and represented that "[t]o the extent that relevant documents exist, they have either been produced or designated as privileged."  Docket No. 162-12 at 589.  When DC moved to compel, Toberoff for the first time claimed that defendants were "unable to identify a document that *matched*" the description of the July 5 letter—a representation Judge Zarefsky found meant "the document does not in fact exist so far as Defendants know."  Docket Nos. 160 at 71-72 & n.2; 209 at 11-12 & n.2.  DC requested that defendants conduct a diligent review of all files in their possession, custody, or control (including any files obtained from Michael or Don Bulson, Michael's attorney) for any unproduced documents from June or July 2003, since the July 5 letter could be misdated in the Timeline or be found in a different form, such as a draft letter.  Docket Nos. 253 at 9; 253-17.  Toberoff continued to claim the July 5 letter, in whatever form, did not exist.  Docket No. 269 at 12-13.

Defendants' recent production of the Timeline documents refutes Marc's claims that he could not "match" any documents in defendants' possession, custody, or control to the July 5 letter:  the July 5 letter appears no fewer than *nine* times among the Timeline documents at Q0141-45, Q0147-51, Q0153-57, Q0319-23, Q0389-93, Q0478-82, Q0592-96, Q0661-65, and Q0750-54.  As DC suggested to defendants, the July 5 letter appears to be a draft of Laura's July 11 letter.  Toberoff's clear misrepresentation is recklessly repeated in Ms. Brill's recent letter and reinforces why DC is saying you cannot rely on his representations or the review he has purportedly conducted of defendants' documents.

c.  The third category of "July 2003" letters identified by Ms. Brill are the drafts that DC learned about during Laura's July 2011 deposition, which defendants had never

**EXHIBIT 13**
**84**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 12

logged or produced in this case or in *Siegel*. Docket No. 316-5 at 314:12-15, 316:11-12, 323:11-14, 325:22-327:22, 328:3-330:3. Ms. Brill claims without citation to anything that defendants representations about these drafts have been "entirely consistent, as reflected in nearly five years of pleadings on this issue." This means nothing, other than that Toberoff consistently has made entirely false misrepresentations about this evidence. When DC requested that defendants produce all drafts of the July 11 letter, Toberoff represented that the drafts had been logged and upheld as privileged in this case and in *Siegel*. Like the May 2003 and July 11 letters, however, defendants never separately logged the drafts, as they were obligated to do. And as discussed below, defendants' recent production of the Timeline documents (yet again) shows that the drafts were hidden behind fax cover sheets, instead of being separately logged. No court could have ruled on the discoverability of the July 11 drafts since their existence was not confirmed until May 2012. Toberoff knew this, but he continued to make contrary representations to DC and the courts, with no acts of intervention by your firm.

    d. Defendants' production of the July 11, 2003, letter fully revealed that defendants had lied to the courts about its contents—and the veracity of the Timeline. Among many other important revelations, the document confirms that Kevin Marks, the Siegels' prior attorney, who negotiated the October 2001 settlement between DC and the heirs, told Toberoff and the Siegels that the Siegels "had a deal with DC"—which directly refuted arguments Toberoff and defendants and their counsel had made in this case. Docket No. 362-2 at 286-90.

    Again, failing to produce this document or to log it properly, so that any privilege claim over it could have been litigated years ago, was not an "inadvertent error[] of no consequence," as your July 20 letter asserts. Laura's admissions in the letter to her brother go to core issues in the *Siegel* case—and the letter should have been produced years ago, when she, Michael, and Marks could have been deposed using the document. But now Michael is dead, summary judgment was entered in *Siegel* without access to this evidence, and a Rule 54 motion was granted in *Siegel* (again without access to this evidence)—all to DC's great prejudice. Equally harmful, Toberoff and his counsel have had the audacity in this case to make arguments directly contrary to the letter, knowing the letter was suppressed and being kept from DC. And only further adding to the harm defendants suppressed the letter long enough to keep DC from using it in its briefs on defendants' SLAPP motion (both in the district court and before the Ninth Circuit), and in Larson's deposition.

    Indeed, only after a year of delay and Judge Wright's rejection of Toberoff's belated and baseless claim of privilege in the July 11 letter did defendants finally produce it in November 2011. While Ms. Brill and Toberoff now argues (wrongly) that the letter somehow actually supports defendants' defenses in this case, such self-serving claims have never been a basis to suppress evidence, nor are they an after-the-fact excuse for having done so. *Supra* at 2-3 (collecting cases).

**EXHIBIT 13**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 13

    e. The production of the Timeline documents, including the Q-Bates versions of the July 11, July 5, and July 11 draft letters, confirm how deliberately misleading defendants' privilege logs have been. A copy of the July 11 letter included in the Timeline documents bears Bates stamps Q0484-88. In his court-ordered May 21, 2007, declaration in *Siegel*, Toberoff said that these pages corresponded with Siegel Supplemental Privilege Log Entry Nos. 82 and 83:

        **Q 0483-88**      **Plaintiffs' supplemental privilege log # 82, 83**

Entry Nos. 82 and 83 identify two July 11, 2003, transmittals from Laura to Toberoff—and makes no mention of a July 11 letter from Laura to Michael:

| Log # | Date of Document | Identity of Recipient(s) | Identity of Author(s) | Document Type | Privilege Claim | Present Location |
|---|---|---|---|---|---|---|
| 82 | 7/11/2003 | Atty Marc Toberoff | Laura Siegel | Facsimile | Atty/Client | Plaintiffs' Counsel |
| 83 | 7/11/2003 | Atty Marc Toberoff | Laura Siegel | Facsimile | Atty/Client | Plaintiffs' Counsel |

Listing the document in this manner allowed Toberoff to suppress the July 11 letter for years by hiding it behind an allegedly privileged facsimile from Laura.

    f. DC spent tens of thousands of dollars—sending numerous letters, participating in several meet-and-confers, filing five sets of briefs, and appearing at oral arguments on the issue of the July 2003 letter—over a period of ten months. Your blithe assurances that DC has not been harmed by defendants' and their counsels' actions are not well taken. This is especially true give defendants' and their counsels' recent efforts to keep record evidence from the Ninth Circuit that directly refutes key factual positions they are taking before that Court.

    *3. November 2, 2002, Letter.* When DC received the May 2003 letter, it disclosed yet another communication between Michael and Laura that defendants had never produced, logged, or disclosed in this case or the *Siegel* case—a November 2, 2002, letter from Laura to Michael. DC requested that defendants produce the November 2 letter immediately after learning of its existence in April 2011. Docket No. 267-3 at 8. Toberoff represented that defendants could not "locate" the November 2 letter. Docket Nos. 267-2 ¶¶ 4-5; 267-7 at 18. DC pressed defendants to conduct a diligent search of all files in their possession, including Michael's files, which were in Toberoff's possession since 2006 when he handled the production of documents and preparation of privilege logs for *both* Bulson and Melvin Banchek, Michael's estate administrator. Docket No. 267-1 at 9. Toberoff again said the letter could not be found, and Judge Zarefsky denied DC's motion to compel it based on Toberoff's representation that he "perform[ed] a diligent search of [defendants'] record, all of [defendants'] records." Docket No. 288 at 38:23-39:1; *see also* Docket No. 267-16 ¶ 4 ("After DC asked for a November 2, 2002 letter from Laura Siegel to Michael Siegel, I caused my office to re-check our relevant case files.").

    a. While you and Toberoff (in our in-person meeting) and Ms. Brill (in her recent letter) suggested that Toberoff did not obtain a copy of the November 2 letter until 2011, the facts show

**EXHIBIT 13**
**86**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 14

otherwise. As you know, in late 2011—after all SLAPP briefing had been closed, and after DC had to send four letters and hold multiple meet-and-confers on the subject—defendants finally produced a privilege log for the electronic archive of Michael's files that we only months earlier learned that the Renner Otto firm possessed. Among the new entries on the Bulson Archive Log that appear nowhere in the Michael Siegel-related logs in *Siegel*—which Toberoff prepared—was the November 2, 2002, letter from Laura to Michael. Docket No. 362-2 at 313 (Entry 399).

Toberoff refused to produce the November 2 letter to DC, claiming he had not logged the document six years earlier because it was not part of Michael's files he received in 2006, and claiming that the document was subject to attorney-client and common-interest privilege. Docket No. 412 at 7-11. Both these claims were specious. Judge Zarefsky rejected Toberoff's privilege claims after an *in camera* review, Docket No. 451 at 5, and Renner Otto confirmed:

> I appreciate you making us aware of Mr. Toberoff's 5/7/12 filing. I've spoken to Don Bulson and consulted the "Renner Otto [electronic] archive" referenced in [Toberoff's] brief. To the best of my knowledge, *the "Renner Otto archive" was the product of scanning Mr. Siegel's paper files* before they were forwarded to the attorneys for Mr. Siegel's estate, *and the documents in the "Renner Otto archive" and the paper file should be the same.*

Docket No. 427-2 at 4 (Renner Otto partner J. Ryland) (emphasis added); *see also* Docket No. 362-2 at 319 (Renner Otto told DC that the electronic archive is an exact replica of the documents returned to defendants).

At our recent meeting, and in the days after, you, Toberoff, and one of his associates have speculated—based on no hard evidence or facts—that somehow the November 2 letter, which is devastating for defendants, did not make it into the hard copy file that Toberoff received in 2006. Your July 20 letter says and does nothing to justify this speculation. As the facts all show, and as Judge Wright recently ruled in ordering Toberoff to produce another document from the Bulson log based on DC's arguments of waiver, Docket No. 457, Toberoff possessed the November 2002 letter in 2006, and he chose first neither to produce it or log it in *Siegel*, next neither to produce it or log it in this case, and finally to lie about whether he possessed the document in briefing and oral argument before the Court. Toberoff's recent motion for reconsideration on this issue, Docket No. 466, may assert that he engaged in no misconduct, but his words and actions in the *Siegel* case, including handling the document production for Mr. Banchek, all refute his current arguments. Again, notably, your firm did not join that recent brief that Toberoff filed.

b. Defendants' suggestion that the November 2 letter somehow supports defendants' positions in this case, and thus DC was not harmed by its suppression, are equally without merit. The November 2 letter not only directly contradicts factual assertions made by defendants in their briefing in this case, it directly supports DC's claim that Toberoff used false promises of a "mysterious billionaire" investor to induce the Siegels to end their business relationship with DC and to do business with him instead. Docket No. 225-4 at 3; *see also* Docket Nos. 181 at 23-24; 201 at 3-7; 205 at 17-20; 215 at 8-10. In the long-suppressed November 2, 2002, letter, Laura

**EXHIBIT 13**
**87**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 15

herself writes: "My mother and I have had extensive meetings with Toberoff and Emanuel in the past few weeks. We learned that due to the delays and the misinformation Kevin had given them that *there was a deal with DC, the billionaire investor who was offering $15 million up front plus participation thought it was a hopeless situation and invested his money elsewhere.*" (Emphases added.) This (empty) $15 million offer by an alleged billionaire investor (who Toberoff's discovery responses in this case show never existed) matches exactly the $15 million offer Kevin Marks said that Toberoff and Emanuel made to the Siegels in 2002. Docket No. 427-3 at 333-34. While Kevin Marks, in a narrowly crafted declaration, denied that Toberoff invoked the "billionaire investor" with him, this November 2002 letter from Larson is stunning, contemporaneous proof that Toberoff invoked this fake investor with her and her family. Laura's recent denial that Toberoff invoked the "billionaire investor" with her, Docket No. 466, is directly belied by her own words in 2002, and casts her credibility, in general, in even greater doubt.

Despite the November 2002 letter, which Toberoff has had in his possession since 2006 (and Laura herself knows she wrote), defendants filed one brief after another in this case saying there was no proof—none—of DC's billionaire-investor claims. You said this in your SLAPP briefs. Ms. Brill said this to us. And Toberoff said on January 8, 2011: "There are no documents related to an offer by a "billionaire investor" to purchase the Siegels' Superman rights, because no such offer was ever conveyed.... DC's overzealous quest to find non-existent documents based on frivolous allegations in an anonymous incoherent 'hit piece' is unworthy of DC and its counsel." Docket No. 162-12 at 589. The prejudice here is palpable—your SLAPP brief on file with the Ninth Circuit right now disputes DC's billionaire investor claim. Appeal No. 11-56934, Docket No. 8 at 53-54. And you have resisted any efforts to get evidence like the November 2002 letter before the Court. *Id.*, Docket Nos. 25, 26. Defendants' discovery misconduct has not only deprived the courts of key evidence, but it flouts Toberoff's and his counsels' duty of candor to the courts to make such arguments when you know such evidence was withheld. Indeed, Toberoff was well aware of this document well before the district court denied defendants' SLAPP motion, and well before defendants' filed their SLAPP appeal. Even under his false submission, Docket Ni. 466, he received the electronic archive from Bulson *last year*—and *before* Judge Wright ruled on the SLAPP motion, and before you and he filed your SLAPP briefs in the Ninth Circuit.

c. Again, Ms. Brill's and Toberoff's efforts to argue how the document should be interpreted—and to (preview the false testimony Laura will proffer (were Toberoff not refusing to allow her to be deposed again)—do nothing to justify defendants' discovery misconduct. Your claim now that Laura was using the term "billionaire investor" to "placate" Michael, who was "very confused," is not only implausible on its face, but should have been the subjects of Laura's depositions in *Siegel* and this case—which defendants prevented by not producing these documents, and now are seeking to prevent further by not allowing her to be examined about this document or her recent declaration.

*4. November 17, 2001, Email and the Renner Otto Bills.* Toberoff's production in late 2011 of the Bulson Privilege Log listed for the first time another critical document: a November

**EXHIBIT 13**
**88**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 16

17, 2001, email from Toberoff to Michael. That email showed that Toberoff had contacted the Siegel family well before he claimed to have done so in SLAPP briefs you filed. Docket No. 145-1 at 23-24. Like the November 2, 2002, letter, Toberoff claimed the November 17, 2001, email had not previously been logged because it was not a part of Michael's hard copy file returned to Toberoff in 2006. Docket No. 412. DC showed in its motion before the District Court that this claim was false, Docket No. 455, and Judge Wright ordered defendants to produce the November 17 email. Docket No. 457.

Toberoff also forced us to incur needless costs to obtain Renner Otto's bills—which also show that he contacted Michael Siegel well before he claimed. A Renner Otto billing entry from November 17, 2001—which took us months of effort and yet another motion, Docket No. 394 at 10-13—confirm that Toberoff spoke to Bulson in November *2001*.



Docket No. 455-2 at 5. And as before, defendants' recent efforts to explain away these harmful documents miss the point. Such explanations are no excuse for failing to produce responsive evidence.

*5. Other Defects In Toberoff's and Defendants' Privilege Logs.* DC has successfully shown, again and again, that defendants' privilege logs have been used to hide key, non-privileged documents by excluding important identifying information. And as the Ninth Circuit noted, Toberoff has also abused his position as a lawyer to assert privilege over business communications. *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1124, 1129, 1127 n.4 (9th Cir. 2012).

Yet another stark example of Toberoff manipulating the contents of his privilege logs to hide key facts—and to harm DC—is his failure to list Ari Emanuel as a recipient of communications with the U.S. Attorney's Office. You claim that the failure to list Emanuel was inadvertent—and, in any event, inconsequential because these were "scheduling emails" that contain "absolutely nothing of any substance."

To begin, as Mr. Daum acknowledged during our meet-and-confer, this was not a one-time oversight or mistake. Both times Emanuel's name should have appeared—on two separate entries, Docket Nos. 163-17 at 1038 (Entry Nos. 3158, 3159); 427-11 at 1137-41—Toberoff omitted Emanuel's name. This is exactly the same pattern and practice of omitting damaging details that one sees when you look at Toberoff's log entries for the May and July 2003 letters discussed above (buried and never listed), the November 2002 letter and November 2001 email (never listed), and other documents.

**EXHIBIT 13**
**89**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 17

As for the notion that Emanuel's inclusion in these discussions was unimportant, that is a farce. You represented to the Ninth Circuit that defendants and the USAO formed a common-interest agreement, documented by a letter you sent the USAO. Appeal No. 11-71844, Docket No. 1-1 at 9-11, 26-29. That letter never mentioned Emanuel, Docket No. 212 at 12-13, and had we obtained real privilege logs from defendants that showed that Toberoff had included Emanuel (not his or your client, and not part of your defense team) as part of the discussions with the USAO, we could have shown only how much more baseless defendants' common-interest claims were.

6. *Toberoff's Privilege Claims Made In Bad Faith.* In *Siegel*, DC sought to discover communications between Michael, Bulson, Toberoff, and Laura relating to Toberoff's efforts to secure Michael's rights for the mysterious "investor" he claimed to represent. Toberoff asserted a common interest privilege over all communications with Michael—whether they resided in the files of the Siegels, their agents, or with Bulson. DC challenged this broad assertion of privilege. The district court in Ohio conducted an *in camera* review of 15 communications and ordered defendants to produce all 15 after rejecting Toberoff's position that these documents were "clearly protected under the doctrine of the 'common interest'" and were "<u>classic</u> *privileged* subject matter." Docket No. 161-4 at 26, 27. The district court found:

> After reviewing all of the 15 documents, and the claimed joint interest privilege which has been asserted, the court finds that none of the 15 documents are subject to the attorney/client privilege based on the joint interest exception. First, the court finds that none of the 15 communications … are for the purpose of giving legal advice. Second, the court finds [that 13] communications … are not made in regard to the joint and common legal or defense strategy relative to ongoing or upcoming litigation. Finally, *the court finds that the interest of Michael Siegel, as reflected in the 13 communications, is separate and apart from those of Joanne and Laura Siegel.* These documents relate to the offers back and forth between Mike [*sic*] Toberoff, on behalf of an investor who wishes to purchase Michael Siegel's interest and Bulson on behalf of Michael Siegel. Docket No. 161-5 at 30-31 (emphasis added).

Toberoff had no basis to assert privilege over these 15 documents, much less to claim that they were "clearly" protected and "classic" privileged material. We urge you, read each of these documents and please tell us if you can truly claim that Toberoff's privilege claims are within bounds of reason. Each discusses a business deal over which attorney-client privilege does not remotely extend. For example, Bulson wrote to Toberoff in a June 18, 2003, letter: "I have discussed with Michael the offer you passed on from a potential investor who is interest in purchasing Michael's interest in the Superman copyright. The amount offered is not acceptable to Michael." Docket No. 161-8 at 57. Toberoff responded on August 6 stating he had a "high-end accountant get quotes for an annuity paying out the sums as set forth in Michael Siegels' long-awaited June 18, 2003, counter-offer regarding buy-out." Toberoff went on to write that Michael's counter-offer was "well over twice (230%) of the last Warner Bros. offer and nearly five times the investor's original offer which I believe was based in large part on the last WB

**EXHIBIT 13**
**90**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 18

offer, rejected by the Siege's [*sic*]." *Id.* at 61. Toberoff then walked through all the reasons why Michael should accept his unnamed investor's offer, and why Michael's claims to the contrary were without merit. *Id.* at 61-62.

Is it really your position that the objection to producing such documents was made in good faith? Or that the common-interest privilege claims Toberoff belatedly made over the November 2002 or July 2003 letters were made in good faith—and not intended to delay and deny DC discovery?[3] As we will discuss below, your present positions on these questions (*i.e.*, that Toberoff did nothing wrong) make your compromise offer (*i.e.*, let your firm, rather than a special master, make similar privilege calls in its sole discretion), an illusory one.

## II.    YOUR FIRM'S "COMPROMISE" PROPOSAL FALLS WELL SHORT.

Your compromise proposal includes three parts—each of which is somewhat hard to follow, and none of which meets or satisfies DC's concerns.

A.    Part 1. Your July 20 letter begins:

*First*, counsel from [KBK] will independently review each document created prior to October 8, 2004 (the date the *Siegel* litigation commenced) that *is listed* on the privilege logs submitted in this action. If, *in the independent judgment of KBK*, privilege does not apply to any logged document, that document will be produced promptly to DC. (Emphases added.)

There are three significant problems with this proposal.

*First*, it confines itself to documents "*listed* on the privilege logs submitted in this action." As shown above, none of the May 2003, July 2003, November 2002, or November 2001 correspondence was ever "listed" on logs. The May and July 2003 documents were hidden behind other entries. The November 2002 and November 2001 documents appeared nowhere—they were not even buried behind other entries—until after (a) we uncovered that the Renner Otto firm kept an electronic copy of the Michael Siegel documents; and (b) Renner Otto itself agreed to create new logs (at DC's expense) that listed each and every document in its possession. You have given us no express assurances that your review would include documents like the May and July 2003 letters (which were buried, but not "listed" on logs) and you have come up with no protocol to make sure documents like the November 2001 and November 2002 correspondence do not exist. Again, it is your duty as counsel in this case to make sure that your

---

[3] For example, Toberoff asserted the November 2 letter from Laura to Michael was protected by a common-interest privilege, Docket No. 412 at 7-11, chastised DC for engaging in "self-serving speculation" about its contents, and asserted that the letter concerned "legal and settlement strategies vis-à-vis DC/Warner that is squarely within the common interest privilege," *id.* at 10. Judge Zarefsky rejected those claims, and for good reason: the November 2 letter is yet again Laura trying to get Michael to do business with Toberoff—the very same non-privileged subject matter rejected by the Ohio court.

**EXHIBIT 13**
**91**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 19

clients are fulfilling their discovery obligations. (Our previous letters on these issues make that plain.) We will not make trades that alleviate your firm of this duty—which is only heightened in this case, given the extensive misconduct in which your clients have engaged.

*Second*, the October 2004 cut-off you propose is unworkable. Toberoff has shown a propensity to bury privileged documents in time-periods other than those listed on the face of his logs, *supra*, and the October 2004 cut-off excludes several critical categories of documents—among them, communications involving David Michaels starting in 2006; with Michael before his death in 2006; regarding the 2008 Consent Agreement and related conflict disclosures and waivers; and regarding the USAO-related issues from 2010.

*Third*, with all respect, we cannot rely on KBK's "independent judgment" about what is privileged or not, given the positions you have taken so far in this case—and particularly in defending (often blindly, and based on no hard facts) Toberoff's conduct. *See supra* Part I.

B. Part 2. The next part of your proposal is:

*Second*, KBK will prepare amended privilege logs. If DC Comics agrees to provide subject-matter descriptions in the privilege logs it is to submit in this action, Defendants will also provide subject-matter descriptions on their privilege logs, even though the Court ruled that it need not do so. *See* Docket No. 209 at 13. Regardless of whether or not the subject matter descriptions are included, if any *logged entry* fails to list any recipient of a privileged document, the logs will be appropriately amended. (Emphasis added.)

There are four significant problems with this proposal.

*First*, you again focus on amending "logged entries"—not amending the logs to include any and all documents whether previously logged or not, and providing full and complete bibliographic information for each.. This may be a drafting issue with your recent letter, but given the way defendants have improperly parsed words to deny DC documents in the past, we can permit no ambiguity.

*Second*, DC's discovery responses are not remotely an issue here—and as was revealed by your comments at our recent meeting, and by your letter, you are not even aware of the substance of DC's discovery responses. Each already provides a "subject matter" line-item entry; defendants provide *none*, and never have.

We understand from our meeting that Marc seeks further log entries from DC flagging any communications regarding the Toberoff Timeline. Defendants already possess Wayne Smith's declaration in *Siegel* setting forth the precise circumstances of DC's receipt and handling of the Timeline documents, and Judge Zarefsky's ruling finding that Mr. Smith acted appropriately and professionally. Case No. CV 04-8400, Docket Nos. 108; 177 at 19:3-7. Moreover, to put this issue to rest, there are no documents or communications that relate to the Timeline that predate June 28, 2006.

**EXHIBIT 13**
**92**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 20

If defendants want to finalize the privilege logging stipulation that we completed only in part in 2010, we are happy to do so. To be clear, however, defendants cannot use that stipulation as a chit to avoid the full relief DC now seeks from defendants, in the form of a full document production, fully redone privilege logs, and special master both to police that process and to make recommendations about the appropriate sanctions to impose on defendants given the grave prejudice they have cause.

*Third*, defendants and their counsel are already under a legal obligation to amend their logs, and every day they fail to do so, the need for and propriety of the fullest sanctions becomes all the more appropriate. That the court in *Siegel*—without any close examination of the logs, the documents contained therein, or the many examples of discovery abuse exposed in this case—held that defendants' privilege logs were consistent with the Ninth Circuit default standards is irrelevant. As you know, the *Siegel* court issued its rulings before the Ninth Circuit called Toberoff out for failing to produce non-privileged business documents that he falsely claimed were privileged. *Pacific Pictures*, 679 F.3d at 1129, 1127 n.4. Moreover, the Rutter section on which defendants and the *Siegel* court relied says that more details are needed, including that "[a]ny attachment to an allegedly privileged document should be listed separately from the document to which it is attached." W. SCHWARZER, ET AL., RUTTER GROUP PRACTICE GUIDE: FED. CIV. PROC. BEFORE TRIAL § 11:1921 (2012) ("*Rutter*"). Finally, the record plainly shows that Toberoff has violated this rule (and other rules) time and again—the May and July 2003 letters, and July 5, 2003, draft letters are all examples of this, as are the Emanuel log entries.

*Fourth*, "if any logged entry fails to list any recipient of a privileged document, the logs will be *appropriately amended*." It is unclear what you mean by "appropriately amended." And Toberoff's misconduct in preparing defendants' privilege logs is, as you know, not limited to his failure to list all recipients. He has also failed to log certain documents *at all*, and has improperly grouped multiple documents together and listed them as one. At a bare minimum, any log would need to comport with the Rutter Guide format set forth at, *e.g.*, *Rutter* §§ 11:1914-21 (*e.g.*, "Listing each e-mail separately is crucial where different e-mails in the strand potentially raise different privilege grounds."; "Any attachment to an allegedly privileged document should be listed separately from the document to which it is attached.").

C. Part 3. You lastly say:

*Third*, KBK will conduct a reasonable, independent search concerning documents in the second "bucket": that is, documents identified by DC that are referred to in other communications but which have not been located and produced, such as the October 2, 2002 letter, and KBK will confirm to DC the records searched and the results of this search. If any such documents are found following this search, they will promptly be produced or, if privileged, appropriately logged. To date, the October 2, 2002 letter is the only such document identified by DC. However, if there are other such documents sought by DC, please let us know at once, and we will look for them as well.

There are a number of problems with this proposal as well.

**EXHIBIT 13**

**93**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 21

*First*, it ignores the "third bucket" of documents that we discussed at our meeting, as does the thrust of your letter. This third bucket is defendants' Superman-related files in general. It is comprised of documents over which defendants or their agents have possession, custody, or control, and have not produced or logged, no matter the reason—be it claims the documents are not responsive to DC's requests in this case and/or in *Siegel*, Toberoff wanted to suppress them, etc. Your firm has never conducted a review of these materials, yet, as you know, Toberoff has withheld documents in the past on a number of improper grounds. This includes the Don Bulson-related materials. It also includes his withholding clearly relevant documents as non-responsive, based on intentionally narrow interpretations of DC's requests. One example of this—and one that caused us to have to re-open the deposition of a witness—was Jean Peavy's will. Docket Nos. 360, 377.

While you say that KBK will conduct a search for further responsive documents, you qualify this by saying it will do *only if* KBK finds in its review "information suggesting that any other responsive documents exist." Both your firm's normal legal obligations that apply in any case, as well as all of the misconduct that has occurred here, is more than enough to "suggest[]" that any other responsive documents exist." KBK must review all documents in defendants' possession, custody, and control in conducting this review, to ensure documents are not omitted—including files held by Toberoff, his entertainment companies, and the documents Toberoff has obtained from third parties. This includes, among other sources, the boxes of documents Laura found after Joanne's death and gave to Toberoff; the file cabinet or safe where Mark Peary keeps "important documents, including the 2008 Consent Agreement"; and the "boxes of divorce, copyright and financial paperwork" referenced in Laura's November 2 letter. This must be a comprehensive review and cannot in any way rely on Toberoff's representations regarding his purported prior searches for documents.

*Second*, there are a number of documents that your firm can and should be looking for and producing. This includes the:

- October 2, 2002, Michael letter to Laura: The November 2, 2002, letter disclosed yet another document defendants had never produced or log in this case or in *Siegel*—an October 2, 2002, letter from Michael to Laura. Toberoff claims defendants do not possess the October 2 letter, but similar claims have consistently proven to be false. KBK must conduct an independent search for this document and cannot rely on Toberoff's representations. As you start your search, we note from Don Bulson's billing entries (only recently produced) that on September 4, 2002, Bulson was working on a "draft letter." See below:

**EXHIBIT 13**
**94**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 22



Toberoff redacted the subject matter of the letter on which Bulson was working and all work that Bulson did that followed on September 20, 2002. This very well could be a draft of the October 2, 2002, letter, and if Bulson helped work on it, it very well exists in his files—either in draft or final form. We assume defendants have no objection to the Renner Otto firm searching for and producing this October 2002 letter if they can find it, or even drafts if the final does not exist. Please let us know immediately. We also note that the Bulson privilege log finally produced in 2011 mentions communications between Michael and Bulson during this September-October 2002 time period, including two communications on October 1.

| Log # | Date of Document | Identity of Author(s) | Identity of Recipient(s) | Document Type | Privilege Claim | Present Location |
|---|---|---|---|---|---|---|
| 636 | 9/2/2002 | Michael Siegel | Atty Don Bulson | E-mail | Atty/Client | Defendants' Counsel |
| 637 | 9/2/2002 | Michael Siegel | Atty Don Bulson | E-mail | Atty/Client | Defendants' Counsel |
| 638 | 9/3/2002 | Michael Siegel | Atty Don Bulson | E-mail | Atty/Client | Defendants' Counsel |
| 641 | 9/4/2002 | Atty Don Bulson | Michael Siegel | E-mail | Atty/Client | Defendants' Counsel |
| 642 | 9/10/2002 | Michael Siegel | Atty Don Bulson | E-mail | Atty/Client | Defendants' Counsel |
| 643 | 9/19/2002 | Atty Don Bulson | Michael Siegel | E-mail | Atty/Client | Defendants' Counsel |
| 645 | 9/22/2002 | Michael Siegel | Atty Don Bulson | E-mail | Atty/Client | Defendants' Counsel |
| 646 | 9/23/2002 | Atty Don Bulson | Michael Siegel | E-mail | Atty/Client | Defendants' Counsel |
| 647 | 9/23/2002 | Atty Don Bulson | Michael Siegel | E-mail | Atty/Client | Defendants' Counsel |
| 649 | 9/24/2002 | Michael Siegel | Atty Don Bulson | E-mail | Atty/Client | Defendants' Counsel |
| 650 | 9/24/2002 | Atty Don Bulson | Michael Siegel | E-mail | Atty/Client | Defendants' Counsel |
| 651 | 9/24/2002 | Atty Don Bulson | Michael Siegel | E-mail | Atty/Client | Defendants' Counsel |
| 653 | 9/28/2002 | Michael Siegel | Atty Don Bulson | E-mail | Atty/Client | Defendants' Counsel |
| 654 | 9/28/2002 | Michael Siegel | Atty Don Bulson | E-mail | Atty/Client | Defendants' Counsel |
| 655 | 10/1/2002 | Atty Don Bulson | Michael Siegel | E-mail | Atty/Client | Defendants' Counsel |
| 656 | 10/1/2002 | Michael Siegel | Atty Don Bulson | E-mail | Atty/Client | Defendants' Counsel |

So, too, do later billing entries, which mention Bulson reviewing a "Letter from Laura" on September 29, 2002, and doing fully redacted work on October 1, 2002, the day before the October 2 letter was sent. Bulson also had a long meeting with Michael on October 5.

EXHIBIT 13
95

O'MELVENY & MYERS LLP
August 7, 2012 - Page 23

| Date ID | Lawyer Task | Rate Markup % | Hours DNB Time | Amount DNB Amt | Total |
|---|---|---|---|---|---|
| 9/24/2002 59767 | DWB Service | 290.00 | 0.40 | 116.00 | Billable |
| | Email to Marks re status, review email from Mike Siegel | | | | |
| 9/26/2002 59800 | DWB Service | 290.00 | 1.10 | 319.00 | Billable |
| | Tel. conf. with Kevin Marks, tel. conf. with Mike Siegel | | | | |
| 9/27/2002 59803 | DWB Service | 290.00 | (1.30) | 377.00 | Billable |
| | Review letters from Joanne Siegel, tel. conf. with Mike Siegel | | | | |
| 9/28/2002 59831 | DWB Service | 290.00 | 0.35 | 101.50 | Billable |
| | Review letter from Laura Siegel | | | | |
| Total September 2002 | | | 6.05 | | $1,754.50 |
| Date: October 2002 | | | | | |
| 10/1/2002 62797 | ███████████████ | | | | |
| 10/5/2002 62831 | DWB Service | 290.00 | 2.25 | 652.50 | Billable |
| | Meeting with Mike Siegel | | | | |

- 2008 Consent Agreement and Drafts:  KBK can and must review the 2008 consent agreement and any drafts.  The only basis for defendants not producing the 2008 consent agreement was Toberoff's self-serving and unsubstantiated claim to Judge Larson that the entire document was privileged (which must be contrasted with Toberoff's recent claims that he was not a party to the agreement at all).  Judge Larson accepted this representation at face value, neither he nor Judge Zarefsky ever review the document in camera, and Judge Zarefsky held he was bound by Judge Larson's ruling absent new facts.  Those new facts have emerged.  Larson and Peary have openly discussed certain contents of the consent agreement in depositions since Judge Zarefsky's ruling, and their testimony confirms that the consent agreement—at least in part—documents business agreements about when and how the Siegel and Shuster family can deal with DC.  Docket Nos. 163-11 at 722:2-10; 160 at 25-26, 50-52; 147-1 at 2.  Since Judge Zarefsky's ruling, Toberoff's claims of privilege have also proven to be highly unreliable at best, *supra* Part I, and the Ninth Circuit specifically recognized that he was suppressing non-privileged business documents claiming they were privileged, *Pacific Pictures*, 679 F.3d at 1129.  The emergence of documents like the May and July 2003 letters, and November 2002 letter all confirm this is the case—as do the Ohio court's rulings.

KBK must review the consent agreement and either produce the document (redacted if necessary) or represent to DC or a special master that in its view as well the document is privileged in its entirety—meaning, that no part of the 2008 consent agreement contains business terms or agreements between the Siegels, Shusters, and/or Toberoff or his entertainment companies.

EXHIBIT 13
96

.O'MELVENY & MYERS LLP
August 7, 2012 - Page 24

- Documents identified in Timeline that Have Never Been Produced or Logged: DC requested in December 2010 that defendants produce two additional documents identified in the Timeline: (1) a December 16, 2002, letter from Marc and Mr. Emanuel to Joanne and Laura; and (2) a September-October 2003 letter with Mr. Emanuel. Docket No. 162-9 at 577 n.1. Marc claimed defendants were unable to identify a document that "matched" either of these descriptions. Docket No. 162-10 at 581-82. It has been shown over and over that the Timeline accurately describes documents. While Toberoff has played games about what documents "match" or not, we need a reasonable and diligent search for all documents described in the Timeline. This means looking both at the date of the documents, as well as their contents to see if they fairly match.

- Conflict Disclosures, Waivers, and Similar Documents Addressing the Conflict of interest between Toberoff and the Siegel and/or Shuster heirs: Defendants have represented that Toberoff disclosed potential and actual conflicts of interest to the Siegels and the Shusters at various times in their relationships and the heirs executed conflict waivers. This includes at the time of entering into the Pacific Pictures agreements, the IP Worldwide agreements, and the 2008 consent agreement. Defendants have never produced these documents and refuse to identify where they are listed (if at all) on their logs. This is a whole category of documents that needs carefully to be reviewed to ensure Toberoff is not hiding business communications among them. And as you know, the terms of retention are not privileged and must be produced—even if documents need to be redacted to do that.

- Drafts of the Pacific Pictures Agreements with the Shusters (2001 & 2003): No drafts have ever been produced to DC nor has Toberoff identified where such drafts appear on defendants' privilege logs, if at all.

- Drafts of the IP Worldwide agreements with the Siegels: No drafts have ever been produced to DC nor has Toberoff identified where such drafts appear on defendants' privilege logs, if at all.

- Siegel Retainer Agreement: Defendants produced to DC a heavily redacted copy of the Siegels' October 2004 retainer agreement with Marc (LSL00213-20). Toberoff claims the redactions relate to the provision of legal advice. Yet, Laura testified at her deposition that the initial retainer agreement was amended shortly after it was executed to reflect that Mr. Emanuel's role had come to an end with the filing of the *Siegel* litigation. Docket No. 305-24 at 807:16-814:7. There is no basis to redact this purely business-related information.

In addition, the Siegel agreement is similar to the boilerplate form in *Rutter*. *See* PAUL W. VAPNEK ET AL., CALIFORNIA PRACTICE GUIDE: PROFESSIONAL RESPONSIBILITY FORM 5:C (2010). Assuming that the redacted portions generally correspondence to the boilerplate *Rutter* form, the redactions would appear to be

**EXHIBIT 13**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 25

overbroad. To the extent the redacted material includes provisions between the
Siegels and Shusters, as well as their counsel, setting forth arrangements or
agreements regarding settlement, such material should not have been redacted—such
contractual arrangements are not privileged and are directly relevant to DC's claims
in this case. *See* Docket No. 160 at 11:27-12:18; *Calvert v. Stoner*, 33 Cal.2d 97, 103
(1948) (agreement preventing settlement without attorney consent void); *Nehad v.
Mukasey*, 535 F.3d 962, 970 (9th Cir. 2008) ("Only the client … may decide whether
to make or accept an offer of settlement.").

It is incumbent upon KBK to review the Siegel agreement and verify the propriety of
Toberoff's privilege claims. If the redacted contents do not reflect legal "advice
given," but rather contractual arrangements, limitations on settlement, or other non-
privileged material, such material must be produced to DC.

- Shuster Retainer Agreement: Defendants similarly produced a heavily redacted copy
  of the Shusters' 2004 retainer agreement with Marc (dated "As of November 23,
  2001) (MWP00054-57). For the same reasons, it is incumbent upon KBK to review
  the Shuster agreement and verify the propriety of Toberoff's privilege claims.

- Communications with David Michaels: Toberoff identified for the first time in
  interrogatory responses and privilege logs provided to DC in January 2011, that
  Mr. Michaels communicated with the Siegels in late 2005 in an attempt to "steal"
  them as clients from Toberoff. Toberoff refused to produce the documents, claiming
  the communications were privileged despite that Mr. Michaels was no longer
  employed by Toberoff & Associates when the communications were sent and
  defendants accused Mr. Michaels of "disparaging" Marc in his communications.
  Toberoff represented that the communications were made in connection with Mr.
  Michaels' potential representation of the Siegels, and discussed their case. Judge
  Zarefsky denied DC's motion to compel the Michaels-Siegel communications based
  on Toberoff's representations concerning the privileged nature of the documents.
  Docket No. 262 at 4. As we have seen, Toberoff's representations cannot be trusted
  and you and/or the special master should review them, like the documents above and
  below.

- May 13, 2003, letter: When Toberoff produced the May 13 letter to DC, he redacted
  unidentified portions of it without explaining what had been redacted or why. The
  Court's order did not invite defendants to redact the May 13 letter and defendants
  waived any privilege that might otherwise have existed by not listing the document
  (in whole or as redacted) on a privilege log. *E.g.*, *Burlington N. & Santa Fe Ry. Co.
  v. U.S. Dist. Ct.*, 408 F.3d 1142, 1149-50 (9th Cir. 2005); *Vieste, LLC v. Hill
  Redwood Dev.*, 2010 WL 4807058, at *9 (N.D. Cal. Nov. 18, 2010).

When DC asked Toberoff to clarify the scope and basis for defendants' redactions, he
would say only that the redacted material consisted or marginalia and underlining by

**EXHIBIT 13**
**98**

O'MELVENY & MYERS LLP
August 7, 2012 - Page 26

an unnamed attorney. This does not meet defendants' burden of proving the elements of a privilege claim, given, as they claim , they do not know who made the redacted notations, or when, or why. *See U.S. v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009) ("The party asserting the privilege bears the burden of proving each essential element."); *Martin*, 278 F.3d at 999-1000 (laying out elements); *Williams v. Adams*, 2009 WL 1220311, at *7 (E.D. Cal. May 4, 2009).

KBK must review the unredacted copy of the May 13 letter and verify the redactions made by Marc are appropriate.

- <u>Agreements with Mr. Emanuel</u>:  Defendants keep stating that Mr. Emanuel has no continuing financial interest in any recovery by the Siegel and/or Shuster heirs pursuant to their Superman and/or Superboy termination notices.  What defendants refuse to answer is whether Mr. Emanuel retains an interest in monies received by Toberoff or his entertainment companies from this case, representation of the Siegel and/or Shuster heirs, or any contingent interest Toberoff has in Superman and/or Superboy rights.

  Defendants' recent disclosure that Mr. Emanuel was involved in the grand jury investigation of the Timeline author suggests he continues to retain an interest in Superman and/or this litigation.  DC is entitled to discover what that financial interest is and the business arrangement between Mr. Emanuel and Toberoff.

<div align="center">*     *     *</div>

Given the severity of defendants' discovery misconduct—and your refusal to directly acknowledge or remedy it—DC will have to ask the Court for significant relief.  This includes appointing a special master to make sure all responsive documents are produced without delay, defendants' privilege logs are full and complete, legitimate privilege claims can be fully and fairly ventilated, and that the Court can remedy the significant prejudice defendants have caused.

Your claim that the Court has rejected DC's call for a special master is erroneous—DC has never moved to appoint a special master, and in any event, defendants' discovery misconduct plainly satisfies the "exceptional circumstances" required to appoint one. FED. R. CIV. P. 53(a).

As we have noted, and you have yet to agree to, the Renner Otto firm should also be asked to prepare a complete log of the electronic archive of Michael Siegel's file that lists all bibliographic information for each document in the file.  DC has agreed to pay the reasonable costs for this work, and we can only hope you agree Renner Otto can proceed, since you made no objection in your July 20 letter.

Finally, if your firm makes a significant move in its position shortly, we will consider not filing the motion.  Your July 20 letter and proposal is unacceptable, however, mainly because of its first premise—that no material, intentional, or prejudicial misconduct has occurred here.  That position is neither sustainable under the facts of this case, nor the relevant case law.

<div align="center">**EXHIBIT 13**

**99**</div>

O'MELVENY & MYERS LLP
August 7, 2012 - Page 27

Very truly yours,

/s/ Matthew T. Kline

Matthew T. Kline
of O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli, Esq.
       Marc Toberoff, Esq.
       Defense Counsel

OMM_US:70812504.1

**EXHIBIT 13**
**100**

# EXHIBIT 14



# O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| BEIJING | 1999 Avenue of the Stars, 7th Floor | SAN FRANCISCO |
| BRUSSELS | Los Angeles, California 90067-6035 | SHANGHAI |
| HONG KONG | | SILICON VALLEY |
| LONDON | TELEPHONE (310) 553-6700 | SINGAPORE |
| LOS ANGELES | FACSIMILE (310) 246-6779 | TOKYO |
| NEWPORT BEACH | www.omm.com | WASHINGTON, D.C. |
| NEW YORK | | |

August 30, 2012

**VIA EMAIL**

Richard Kendall
Kendall Brill & Klieger LLP
10110 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067

OUR FILE NUMBER
905900-321

WRITER'S DIRECT DIAL
(310) 246-6840

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Dick:

We write in response to your August 24 letter. All of your points are disputed, but to address the three most salient ones:

1. We note you do not and cannot defend Marc Toberoff's and defendants' years-long pattern of discovery misconduct, which is telling. Their intentional obstruction of discovery has prejudiced DC's ability to litigate its claims in this case and the *Siegel* case by denying DC access to key evidence at critical junctures. Defendants' misconduct justifies the heaviest sanctions in this case and ultimately, if need be, in *Siegel*. This includes terminating sanctions, monetary sanctions, and a finding of complete privilege waiver. *E.g., Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1057-1058 (9th Cir. 1998); *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374-74 (11th Cir. 1999); *Prescott v. Cnty of Stanislaus*, 2012 WL 383387, at *10-11 (E.D. Cal. Feb. 6, 2012); *In re 400 Walnut Assocs., L.P.*, 2012 WL 2839633, at *14-15 (Bkrtcy. E.D. Pa. July 11, 2012); *Ritacca v. Abbott Labs.*, 203 F.R.D. 332, 335 (N.D. Ill. 2001); *Get-A-Grip, II, Inc. v. Hornell Brewing Co., Inc.*, 2000 WL 1201385, at *1 (E.D. Pa. Aug. 8, 2000); *Bankatlantic v. Blyth Eastman Paine Webber, Inc.*, 127 F.R.D. 224, 235-36 (S.D. Fla. 1989).

While you say your firm played no role in defendants' discovery misconduct, our letters pointed out examples of the ways in which it did so. This includes sitting silently by as Toberoff falsely denied in court whether documents existed and falsely claimed privilege. Your firm was in possession of those very same documents and reviewed them in making the repeated claims it did about the Toberoff Timeline memo and its enclosures. *Cf. infra* at 2-3 (collecting cases).

As for your claims regarding Mr. Daum's statements, he made two important claims at our in-person meeting: (1) that Toberoff did not find the May 2003 document *until after Magistrate Judge Zarefsky issued his April 2012 order* (hence Toberoff had no bad intent); and

**EXHIBIT 14**
**101**

O'MELVENY & MYERS LLP
August 30, 2012 - Page 2

(2) when I pressed Mr. Daum on how he knew these asserted facts, he conceded that your firm had done no independent investigation to confirm the facts he and your colleagues asserted.

Mr. Daum's and Toberoff's claims that Toberoff did not have access to the May 2003 letter in 2010 and 2011—when Toberoff made his bellicose denials about the existence of the letter—were patently false, as defendants and their counsel well knew, given their access to the Toberoff Timeline documents. Indeed, as we just learned a few months ago, several copies of the May 2003 letter existed among the Timeline documents that both Toberoff and your firm possessed and reviewed. And, as you know, it was your firm that personally delivered those documents to the USAO in September 2010, and it was your firm that, in disputes with DC, claimed the Timeline documents were privileged and need not be produced.

You fail to address these and other key points, but as you know, Toberoff was under court order to produce the May 2003 document in December 2010; neither you nor he can or do deny it was responsive; and defendants admitted in later court filings that defendants never claimed the May 2003 letter was privileged. Nonetheless, defendants refused to produce the May 2003 letter in 2010 or early 2011, violating that 2010 court order. Instead, defendants insisted to DC that the May 2003 letter did not exist and, in fact, chastised DC for demanding its production. Defendants said all this with your firm's full complicity. Indeed, your firm sat idly by while Toberoff made these false claims—knowing full well that several copies of the May 2003 letter existed among the Timeline documents that your firm possessed, had reviewed, and had delivered to USAO. Worse still, you knew that Toberoff himself had failed to produce this document to DC when he made his own initial document production in January 2011. DC raised numerous concerns about this production with your firm at the time, and your firm defended the production.

2.  Your firm's proposal that DC "permit" it to address DC's concerns by conducting a review of a limited universe of documents—rather than all documents in your clients' possession, custody or control—is incomplete, potentially illusory (if you stick to your overly aggressive stances on privilege and responsiveness), comes months too late, and most importantly, falls well short of your basic legal duties as counsel in this case. *E.g.*, DC's June 13, 2012 Email; DC's July 2, 2012 Letter; DC's Aug. 7, 2012 Letter; *In re Girardi*, 611 F.3d 1027, 1061-62 (9th Cir. 2010) ("willful ignorance" of the plaintiffs' co-counsel of record in the underlying case not a defense); *In re Mitchell*, 901 F.2d 1179, 1188 (3d Cir. 1990) (division of labor among counsel does not diminish attorney's personal responsibility for complying with court rules); *Fund of Funds, Ltd. v. Arthur Anderson & Co.*, 567 F.2d 225, 234 (2d Cir. 1977) ("The principle that a lawyer cannot delegate his fiduciary duties to another in an effort to avoid its strictures or to avoid responsibility for the manner in which they are taken is settled law."); *Hawkins v. Fulton Cnty.*, 96 F.R.D. 416, 420-21 (N.D. Ga. 1982) ("[E]ven if another attorney is now responsible for all discovery matters, [the defense attorney] is still attorney of record for the Defendant and is responsible as such . . . for any failure to provide discovery."); *Cole v. Patricia A. Meyer & Assocs., APC*, 2012 WL 2106364, at *14 (Cal. Ct. App. June 12, 2012) (while California law generally allows co-counsel to divide the duties of conducting a case, an attorney cannot avoid liability for misconduct based on a purported division of labor); *J.M. Cleminshaw*

**EXHIBIT 14**
**102**

O'MELVENY & MYERS LLP
August 30, 2012 - Page 3

*Co. v. City of Norwich*, 93 F.R.D. 338 (D. Conn. 1981) (finding attorney liable for failure of co-counsel to comply with discovery requests; "[t]he fact that an attorney may have engaged co-counsel to assist him in the conduct of a case does not relieve that counsel of record of his duty to supervise all aspects of the litigation").

The law requires your firm to conduct the review DC has demanded and that your recent letter outlines (in part); DC need not "permit" it. DC will not forfeit its legal rights and claims—as you demand that it do—in exchange for a promise to fulfill only a small part of your existing legal obligations. It certainly will not do so when your compromise proposal does nothing to address or remedy the significant prejudice caused DC over the past several years, including legal fees DC expended on improper and needless discovery battles Toberoff invited and caused.

Your no-harm-no-foul arguments also ignore the obvious prejudice DC has suffered and the direct and deliberate lies Toberoff told the courts and DC. It also ignores that his deceptions violated court orders, and that the violation of a court order, in any event, is not a prerequisite for the most serious sanctions, including terminating sanctions.

3. As we have addressed in other correspondence, defendants persist in making baseless claims that DC has provided no privilege logs in this case, when DC has in fact done so, and has offered defendants numerous times to meet and confer on (a) what additional information they reasonably require; and/or (b) to complete the stipulation defendants once said they wished to negotiate on these issues. DC's offers to meet and confer (made, *inter alia*, in letters and emails dated June 12 and August 7) have been ignored by defendants. Defendants' failure to meet and confer on such issues is full grounds to moot any concerns they raise. *E.g.*, Docket No. 467.

*        *        *

In short, your proposal is unworkable and comes nowhere close to addressing DC's concerns. DC will file its motion shortly. As for the *quid pro quo* you demand, your firm should conduct the review and production it has offered—without any of the limitations you suggest on your search and production, and without any impingement on DC's rights. It has long been your firm's duty to conduct this review. You cannot blame your failure to do so on sets of conditions you wish to impose on DC—the party aggrieved by defendants' rampant discovery misconduct.

Again, the remainder of your letter is disputed, and DC reserves all rights.

Very truly yours,

/s/ Matthew T. Kline

Matthew T. Kline
of O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli, Esq.
       Defense Counsel

OMM_US:70828350

**EXHIBIT 14**
**103**

# EXHIBIT 15

**From:** Seto, Cassandra
**Sent:** Friday, October 05, 2012 5:02 PM
**To:** mtoberoff@ipwla.com; kgadams@ipwla.com; Pablo Arredondo (parredondo@ipwla.com); rkendall@kbkfirm.com; lbrill@kbkfirm.com; ndaum@kbkfirm.com
**Cc:** Petrocelli, Daniel; Kline, Matthew
**Subject:** DC Comics v. PPC

Dear Counsel,

Please see the attached documents, hard copies of which were served today.

**Cassandra L. Seto**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars, Suite 700, Los Angeles, California 90067
Telephone: 310.246.6703 | Facsimile: 310.246.6779

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

**EXHIBIT 15**
**104**

1    DANIEL M. PETROCELLI (S.B. #097802)
        dpetrocelli@omm.com
2    MATTHEW T. KLINE (S.B. #211640)
        mkline@omm.com
3    CASSANDRA L. SETO (S.B. #246608)
        cseto@omm.com
4    O'MELVENY & MYERS LLP
     1999 Avenue of the Stars, 7th Floor
5    Los Angeles, CA  90067-6035
     Telephone:  (310) 553-6700
6    Facsimile:    (310) 246-6779

7    (continued on next page)

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10   DC COMICS,                        Case No.  CV 10-3633 ODW (RZx)

11              Plaintiff,             **DISCOVERY MATTER**

12        v.                           **JOINT STIPULATION RE:**
                                       **PRIVILEGE LOGS**
13   PACIFIC PICTURES
14   CORPORATION, IP WORLDWIDE,        **[PROPOSED] ORDER FILED**
     LLC, IPW, LLC, MARC TOBEROFF,     **CONCURRENTLY HEREWITH**
15   an individual, MARK WARREN
     PEARY, as personal representative of   **Judge:**       Hon. Otis D. Wright II
16   the ESTATE OF JOSEPH SHUSTER,     **Magistrate:**  Hon. Ralph Zarefsky
     JEAN ADELE PEAVY, an individual,
17   LAURA SIEGEL LARSON, an
     individual and personal representative
18   of the ESTATE OF JOANNE SIEGEL,
     and DOES 1-10, inclusive,
19
              Defendants.
20

21

22

23

24

25

26

27

28
                                            STIPULATION RE: PRIVILEGE LOGS

**EXHIBIT 15**
**105**

1  (continued from previous page)

2  MARC TOBEROFF (S.B. #188547)
     mtoberoff@ipwla.com
3  KEITH G. ADAMS (S.B. #240497)
     kgadams@ipwla.com
4  PABLO ARREDONDO (S.B. #241142)
     parredondo@ipwla.com
5  TOBEROFF & ASSOCIATES, P.C.
6  22337 Pacific Coast Highway #348
7  Malibu, California 90265
   Telephone:  (310) 246-3333
8  Facsimile:   (310) 246-3101

9  Attorneys for Defendants Mark Warren
10  Peary, Jean Peavy, and Laura Siegel Larson

11  RICHARD B. KENDALL (S.B. #90072)
     rkendall@kbkfirm.com
12  LAURA W. BRILL (S.B. #195889)
     lbrill@kbkfirm.com
13  NICHOLAS F. DAUM (S.B. #236155)
     ndaum@kbkfirm.com
14  KENDALL BRILL & KLIEGER LLP
15  10100 Santa Monica Blvd., Suite 1725
   Los Angeles, California 90067
16  Telephone:  (310) 556-2700
17  Facsimile:   (310) 556-2705

18  Attorneys for Defendants Marc Toberoff,
   Pacific Pictures Corporation, IP
19  Worldwide, LLC, and IPW, LLC

20

21

22

23

24

25

26

27

28

STIPULATION RE: PRIVILEGE LOGS

**EXHIBIT 15**
**106**

1

**STIPULATION**

2        Plaintiff DC Comics, together with those corporate affiliates named as

3 defendants in *Siegel v. Warner Bros. Entm't Inc.* (Case No. 04-8400 ODW (RZx))

4 and *Siegel v. Warner Commc'ns Inc.* (Case No. 04-8776 ODW (RZx)) (the "*Siegel*

5 Actions") and their subsidiaries (collectively, "DC"), and defendants Mark Warren

6 Peary, Jean Adele Peavy, Laura Siegel Larson, Marc Toberoff, Pacific Pictures

7 Corporation, IP Worldwide, LLC, and IPW, LLC (collectively, "Defendants"), by

8 and through their respective counsel of record, hereby stipulate and agree as

9 follows:

10        WHEREAS, the parties have identified certain documents subject to a claim

11 of attorney-client privilege, attorney work-product doctrine, or any other privileges

12 available under law ("Privileged Documents") that would be unduly burdensome to

13 list on their respective privilege logs;

14        WHEREAS, the parties desire to supplement and modify the December 7,

15 2010, Order Granting Stipulation Re: Defendants' Production Of Documents And

16 Privilege Logs (Docket No. 133);

17        NOW THEREFORE, the parties stipulate and agree to the following:

18        1. DC and defendant Laura Siegel Larson shall not be required to list on

19 their respective privilege logs any Privileged Documents created on or after

20 October 8, 2004, when the first complaint was filed in the *Siegel* Actions.

21        2. DC and Defendants shall not be required to list on their respective

22 privilege logs any Privileged Documents created on or after May 14, 2010, when

23 DC filed its complaint in the above-entitled action.

24        3. This stipulation is without prejudice or waiver to any party's right in the

25 future to request or move to compel the identification or logging of Privileged

26

27

28

1   Documents, and is without prejudice or waiver to any party's right in the future to

2   seek a protective order in response to any such request or motion to compel.

3          IT IS SO STIPULATED.

4

5   Dated:  October __, 2012          O'MELVENY & MYERS LLP

6                                     By: _____

7                                         Daniel M. Petrocelli
                                          Attorneys for Plaintiff DC Comics
8

9   Dated:  October __, 2012          TOBEROFF & ASSOCIATES, P.C.

10

11                                    By: _____

12                                        Marc Toberoff
                                          Attorneys for Defendants Mark Warren
13                                        Peary, Jean Adele Peavy, and Laura Siegel
                                          Larson
14

15  Dated:  October __, 2012          KENDALL BRILL & KLIEGER LLP

16

17                                    By: _____

18                                        Richard B. Kendall
                                          Attorneys for Defendants Marc Toberoff,
19                                        Pacific Pictures Corporation, IP
                                          Worldwide, LLC, and IPW, LLC

20

21

22

23

24

25

26

27

28

                              - 2 -          STIPULATION RE: PRIVILEGE LOGS

EXHIBIT 15
108

1  DANIEL M. PETROCELLI (S.B. #097802)
      dpetrocelli@omm.com
2  MATTHEW T. KLINE (S.B. #211640)
      mkline@omm.com
3  CASSANDRA L. SETO (S.B. #246608)
      cseto@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, CA  90067-6035
   Telephone:   (310) 553-6700
6  Facsimile:   (310) 246-6779

7  (continued on next page)

8                   **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | DC COMICS, | Case No.  CV 10-3633 ODW (RZx) |
|---|---|
|           Plaintiff, | **DISCOVERY MATTER** |
|              v. | **[PROPOSED] ORDER GRANTING JOINT STIPULATION RE: PRIVILEGE LOGS** |
| PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive, | **Judge:**       Hon. Otis D. Wright II<br>**Magistrate:**  Hon. Ralph Zarefsky |
|           Defendants. | |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | (continued from previous page)

2 | MARC TOBEROFF (S.B. #188547)
3 |   mtoberoff@ipwla.com
KEITH G. ADAMS (S.B. #240497)
4 |   kgadams@ipwla.com
PABLO ARREDONDO (S.B. #241142)
5 |   parredondo@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
6 | 22337 Pacific Coast Highway #348
7 | Malibu, California 90265
Telephone:  (310) 246-3333
8 | Facsimile:    (310) 246-3101

9 | Attorneys for Defendants Mark Warren
10 | Peary, Jean Peavy, and Laura Siegel Larson

11 | RICHARD B. KENDALL (S.B. #90072)
12 |   rkendall@kbkfirm.com
LAURA W. BRILL (S.B. #195889)
13 |   lbrill@kbkfirm.com
NICHOLAS F. DAUM (S.B. #236155)
14 |   ndaum@kbkfirm.com
KENDALL BRILL & KLIEGER LLP
15 | 10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
16 | Telephone:  (310) 556-2700
17 | Facsimile:    (310) 556-2705

18 | Attorneys for Defendants Marc Toberoff,
Pacific Pictures Corporation, IP
19 | Worldwide, LLC, and IPW, LLC

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

[PROPOSED] ORDER GRANTING
STIPULATION RE: PRIVILEGE LOGS

**EXHIBIT 15**
**110**

1    Based on the stipulation of plaintiff DC Comics, together with those

2    corporate affiliates named as defendants in *Siegel v. Warner Bros. Entm't Inc.*

3    (Case No. 04-8400 ODW (RZx)) and *Siegel v. Warner Commc'ns Inc.* (Case No.

4    04-8776 ODW (RZx)) (the "*Siegel* Actions") and their subsidiaries (collectively,

5    "DC"), and defendants Mark Warren Peary, Jean Adele Peavy, Laura Siegel

6    Larson, Marc Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC, and

7    IPW, LLC (collectively, "Defendants"), and for good cause shown, IT IS HEREBY

8    ORDERED that:

9        (1) DC and defendant Laura Siegel Larson shall not be required to list on

10   their respective privilege logs any documents subject to a claim of attorney-client

11   privilege, attorney work-product doctrine, or any other privileges available under

12   law ("Privileged Documents") created on or after October 8, 2004, when the first

13   complaint was filed in the *Siegel* Actions.

14       (2) DC and Defendants shall not be required to list on their respective

15   privilege logs any Privileged Documents created on or after May 14, 2010, when

16   DC filed its complaint in the above-entitled action.

17       (3) This order is without prejudice or waiver to any party's right in the future

18   to request or move to compel the identification or logging of Privileged Documents,

19   and is without prejudice or waiver to any party's right in the future to seek a

20   protective order in response to any such request or motion to compel.

21       (4) This order modifies the December 7, 2010, Order Granting Stipulation

22   Re: Defendants' Production Of Documents And Privilege Logs (Docket No. 133).

23       IT IS SO ORDERED.

24

25   Dated: _____        _____

26                                 Honorable Ralph Zarefsky
                                    Magistrate Judge, United States District Court

27

28

                                                    [PROPOSED] ORDER GRANTING
                        - 1 -                        STIPULATION RE: PRIVILEGE LOGS

**EXHIBIT 15**
**111**

1   DANIEL M. PETROCELLI (S.B. #097802)
     dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
     mkline@omm.com
3   CASSANDRA L. SETO (S.B. #246608)
     cseto@omm.com
4   O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA 90067-6035
   Telephone: (310) 553-6700
6   Facsimile: (310) 246-6779

7   Attorneys for Plaintiff DC Comics

8          **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10  DC COMICS, | Case No. CV 10-3633 ODW (RZx) |
| 11        Plaintiff, | **PLAINTIFF DC COMICS' OBJECTIONS AND RESPONSES** |
| 12        v. | **TO DEFENDANT LAURA SIEGEL LARSON'S FIRST SET** |
| 13  PACIFIC PICTURES | **OF REQUESTS FOR PRODUCTION** |
|     CORPORATION, IP WORLDWIDE, | |
| 14  LLC, IPW, LLC, MARC TOBEROFF, | **Judge:**       Hon. Otis D. Wright II |
|     an individual, MARK WARREN | **Magistrate:** Hon. Ralph Zarefsky |
| 15  PEARY, as personal representative of | |
|     the ESTATE OF JOSEPH SHUSTER, | Complaint Filed: May 14, 2010 |
| 16  JEAN ADELE PEAVY, an individual, | Trial Date:     None Set |
|     LAURA SIEGEL LARSON, an | |
| 17  individual and as personal | |
|     representative of the ESTATE OF | |
| 18  JOANNE SIEGEL, and DOES 1-10, | |
|     inclusive, | |
| 19 | |
|          Defendants. | |
| 20 | |

21  PROPOUNDING PARTY:    Laura Siegel Larson

22

23  RESPONDING PARTY:     DC Comics

24  SET NUMBER:          One (Nos. 1-125)

25

26

27

28

**EXHIBIT 15**
**112**

1    Pursuant to Federal Rule of Civil Procedure 34, plaintiff DC Comics ("DC")

2    hereby objects and responds to defendant Laura Siegel Larson's ("Larson") First

3    Request for Production of Documents and Things ("Requests").

4    **PRELIMINARY STATEMENT**

5    DC's Objections and Responses to Defendant Laura Siegel Larson's First Set

6    of Requests for Production ("Responses") are based on the information reasonably

7    and currently known to DC.  Responses to many of the requests can be addressed

8    by referencing DC's complaint (Docket No. 49; *id.* Ex. A), all the briefing to date in

9    this action—including, but not limited to, the briefing and exhibits filed in

10   connection with defendants' Rule 12 and SLAPP motions (Docket Nos. 30, 30-1 to

11   30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5,

12   76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93,

13   94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-

14   1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147, 147-1 to 147-3, 148, 148-1

15   to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4,

16   184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-

17   1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308,

18   312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1 to

19   334-13, 335, 338, 338-1), and DC's and defendants' cross-motions for summary

20   judgment (Docket Nos. 458, 458-1, 458-2, 459, 459-1 to 459-6, 460, 460-1 to 460-

21   3, 462, 463, 463-1 to 463-4, 464, 465, 465-1, 468, 469, 469-1, 470, 470-1, 471,

22   472, 473, 474, 478, 478-1, 478-2, 479, 479-1 to 479-7, 491, 491-1, 491-2, 492, 493,

23   493-1 to 493-7, 494, 494-1, 495, 495-1 to 495-5)—and all discovery in this action

24   and the *Siegel* action (*e.g.*, DCC00000001-154435 and WB000001-149488,

25   DC00001-168)—including, but not limited to, all deposition testimony in those

26   cases and here.

27   In making this document production pursuant to the Court's December 7,

28   2010 Order Granting Stipulation Re: Defendants' Production Of Documents And

- 1 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**113**

1    Privilege Logs (Docket No. 133) ("2010 Court-Ordered Stipulation"), DC will

2    reference by Bates number documents already produced in the *Siegel* litigations and

3    this case, rather than re-copy and reproduce such documents.  Given that discovery

4    is ongoing, expert discovery has not yet begun, third-party discovery still needs to

5    be taken, defendants are advancing new arguments to which DC must respond, and

6    defendants continue their efforts to stymie DC's discovery in this case, DC reserves

7    all rights to supplement these Responses as more information becomes available or

8    required.

9        Consistent with the 2010 Court-Ordered Stipulation, DC will not log

10    documents subject to a claim of attorney-client privilege, work-product privilege, or

11    any other privilege available under law that were created on or after May 14, 2010.

12    Consistent with the parties' previous discussions, DC serves concurrently herewith

13    a proposed stipulation providing that DC, its corporate affiliates named as

14    defendants in *Siegel v. Warner Bros. Entm't Inc.* (Case No. 04-8400 ODW (RZx))

15    and *Siegel v. Warner Comm'ns Inc.* (Case No. 04-8776 ODW (RZx)) and their

16    subsidiaries, and Laura Siegel Larson shall not be required to list on their respective

17    privilege logs in this case any privileged documents created on or after October 8,

18    2004, when the first complaint was filed in the *Siegel* actions, as logging such

19    documents would constitute an unreasonable and undue burden on DC.  As noted

20    during the parties' many discussions on this subject, DC is willing to meet and

21    confer with defendants concerning this proposed stipulation, though if the parties

22    are unable to reach an agreement, DC will seek all appropriate relief.

23        By these Responses, DC does not intend to waive, and does not waive, any

24    objection at trial to the admission into evidence of these Responses, in whole or in

25    part, or the documents produced in connection therewith.  Rather, DC intends to

26    preserve, and does preserve, all objections to the admission into evidence of these

27    Responses, in whole or in part, and the documents produced in connection with

28    them, including, without limitation, objections based on relevance, foundation,

- 2 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

**114**

1  authenticity, or privilege, as well as any and all objections based on the Federal

2  Rules of Evidence or otherwise.  As noted  below, DC also reserves all privilege

3  objections, and directs defendants to its previously produced privilege logs.

4  <center>**SPECIFIC OBJECTIONS AND RESPONSES**</center>

5  **Request No. 1**

6       Any STOLEN DOCUMENTS that have not been produced in this case or in

7  the *Siegel* Litigations.

8  **Response to Request No. 1**

9       DC objects to this Request to the extent that it seeks the production of any

10  item, or portion thereof, which is not reasonably calculated to lead to the discovery

11  of relevant and admissible evidence.

12       Subject to and without waiving all foregoing objections, DC responds that to

13  the extent any such documents exist—*e.g.*, if defendants withheld certain

14  documents from their May 11, 2012, production of Toberoff Timeline documents—

15  they are not within DC's possession, custody, or control.

16  **Request No. 2**

17       Any STOLEN DOCUMENTS that were not transmitted to ARNOLD

18  PORTER.

19  **Response to Request No. 2**

20       DC objects to this Request to the extent that it seeks the production of any

21  item, or portion thereof, which is not reasonably calculated to lead to the discovery

22  of relevant and admissible evidence.

23       Subject to and without waiving all foregoing objections, DC responds that no

24  such documents exist.

25  **Request No. 3**

26       All DOCUMENTS that REFER to the date and/or circumstances surrounding

27  WARNER's receipt of the STOLEN DOCUMENTS.

28

<center>- 3 -</center>

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

<center>**EXHIBIT 15**
**115**</center>

**Response to Request No. 3**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21.

DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

- 4 -

1    Subject to and without waiving all foregoing objections, DC agrees to meet-

2    and-confer with defendants regarding the relevance of the requested documents and

3    in an effort to reasonably narrow this Request and to see what, if any, documents

4    should be produced.

5    **Request No. 4**

6    All DOCUMENTS that REFER to the date and/or circumstances surrounding

7    WARNER's receipt of the TOBEROFF TIMELINE.

8    **Response to Request No. 4**

9    DC objects to this Request as seeking the production of documents which are

10    not reasonably calculated to lead to the discovery of relevant and admissible

11    evidence. DC further objects to this Request on the grounds that it is indefinite as

12    to time and not reasonably limited in scope. DC further objects to this Request on

13    the grounds that it calls for a search of documents that is unduly expensive,

14    overbroad, unduly burdensome, and oppressive. DC further objects to the extent

15    that it seeks information protected by the attorney-client privilege, the attorney

16    work product doctrine, or any other applicable privilege or immunity. DC further

17    objects to this Request to the extent that it disregards the Court's binding finding

18    that DC and WARNER "acted professionally" and "reasonably" in receiving and

19    handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21.

20    DC objects to the definition of "WARNER" and responds to that term as

21    limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the

22    extent the Request seeks production of "all DOCUMENTS" on the ground that

23    such request is overly broad, unduly burdensome, oppressive, and not reasonably

24    calculated to lead to the discovery of admissible evidence, as the definition of

25    "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly

26    available documents. As used in these Responses, the phrase "all DOCUMENTS,"

27    or phrases of similar import, should be understood to mean those documents DC

28    and its counsel were able to locate using reasonable diligence and reasonable

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**117**

1    judgment concerning the whereabouts of such documents.  DC does not object to or

2    withhold any document based on the definition of "REFER," as this definition

3    mirrors in large part language that DC employed in its own discovery requests.

4    Defendants previously objected to this same language in DC's requests as

5    impermissibly overbroad.  Based on defendants' use of this same term and tacit

6    acknowledgement that DC's use of these terms is proper, DC will not object on this

7    ground, and DC has confirmed with defendants that they will do the same.

8           Subject to and without waiving all foregoing objections, DC agrees to meet-

9    and-confer with defendants regarding the relevance of the requested documents and

10   in an effort to reasonably narrow this Request and to see what, if any, documents

11   should be produced.

12   **Request No. 5**

13          All DOCUMENTS that REFER to the date and/or circumstances surrounding

14   YOUR receipt of the STOLEN DOCUMENTS.

15   **Response to Request No. 5**

16          DC objects to this Request as seeking the production of documents which are

17   not reasonably calculated to lead to the discovery of relevant and admissible

18   evidence.  DC further objects to this Request on the grounds that it is indefinite as

19   to time and not reasonably limited in scope.  DC further objects to this Request on

20   the grounds that it calls for a search of documents that is unduly expensive,

21   overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

22   that it seeks information protected by the attorney-client privilege, the attorney

23   work product doctrine, or any other applicable privilege or immunity.  DC further

24   objects to this Request to the extent that it disregards the Court's binding finding

25   that DC and WARNER "acted professionally" and "reasonably" in receiving and

26   handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

27          DC objects to the definition of "YOUR" as vague and overbroad and

28   responds to that term as limited to the relevant custodians at DC and Warner Bros.

- 6 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**118**

1    Entertainment Inc. DC objects to the extent the Request seeks production of "all

2    DOCUMENTS" on the ground that such request is overly broad, unduly

3    burdensome, oppressive, and not reasonably calculated to lead to the discovery of

4    admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all

5    court filings in this case and other publicly available documents. As used in these

6    Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

7    understood to mean those documents DC and its counsel were able to locate using

8    reasonable diligence and reasonable judgment concerning the whereabouts of such

9    documents. DC does not object to or withhold any document based on the

10   definition of "REFER," as this definition mirrors in large part language that DC

11   employed in its own discovery requests. Defendants previously objected to this

12   same language in DC's requests as impermissibly overbroad. Based on defendants'

13   use of this same term and tacit acknowledgement that DC's use of these terms is

14   proper, DC will not object on this ground, and DC has confirmed with defendants

15   that they will do the same.

16        Subject to and without waiving all foregoing objections, DC agrees to meet-

17   and-confer with defendants regarding the relevance of the requested documents and

18   in an effort to reasonably narrow this Request and to see what, if any, documents

19   should be produced.

20   **Request No. 6**

21        All DOCUMENTS that REFER to the date and/or circumstances surrounding

22   YOUR receipt of the TOBEROFF TIMELINE.

23   **Response to Request No. 6**

24        DC objects to this Request as seeking the production of documents which are

25   not reasonably calculated to lead to the discovery of relevant and admissible

26   evidence. DC further objects to this Request on the grounds that it is indefinite as

27   to time and not reasonably limited in scope. DC further objects to this Request on

28   the grounds that it calls for a search of documents that is unduly expensive,

- 7 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**119**

1   overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

2   that it seeks information protected by the attorney-client privilege, the attorney

3   work product doctrine, or any other applicable privilege or immunity.  DC further

4   objects to this Request to the extent that it disregards the Court's binding finding

5   that DC and WARNER "acted professionally" and "reasonably" in receiving and

6   handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.  DC

7   further objects on the ground that based on defendants' definition of "YOUR,"

8   there is no one "date" on which the referenced document was received.

9          DC objects to the definition of "YOUR" as vague and overbroad and respond

10   to that term as limited to the relevant custodians at DC and Warner Bros.

11   Entertainment Inc.  DC objects to the extent the Request seeks production of "all

12   DOCUMENTS" on the ground that such request is overly broad, unduly

13   burdensome, oppressive, and not reasonably calculated to lead to the discovery of

14   admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.*, all

15   court filings in this case and other publicly available documents.  As used in these

16   Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

17   understood to mean those documents DC and its counsel were able to locate using

18   reasonable diligence and reasonable judgment concerning the whereabouts of such

19   documents.  DC does not object to or withhold any document based on the

20   definition of "REFER," as this definition mirrors in large part language that DC

21   employed in its own discovery requests.  Defendants previously objected to this

22   same language in DC's requests as impermissibly overbroad.  Based on defendants'

23   use of this same term and tacit acknowledgement that DC's use of these terms is

24   proper, DC will not object on this ground, and DC has confirmed with defendants

25   that they will do the same.

26          Subject to and without waiving all foregoing objections, DC agrees to meet-

27   and-confer with defendants regarding the relevance of the requested documents and

28

- 8 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

EXHIBIT 15
120

1  in an effort to reasonably narrow this Request and to see what, if any, documents

2  should be produced.

3  **Request No. 7**

4      All DOCUMENTS that REFER to WARNER's review of the STOLEN

5  DOCUMENTS.

6  **Response to Request No. 7**

7      DC objects to this Request as seeking the production of documents which are

8  not reasonably calculated to lead to the discovery of relevant and admissible

9  evidence.  DC further objects to this Request on the grounds that it is indefinite as

10  to time and not reasonably limited in scope.  DC further objects to this Request on

11  the grounds that it calls for a search of documents that is unduly expensive,

12  overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

13  that it seeks information protected by the attorney-client privilege, the attorney

14  work product doctrine, or any other applicable privilege or immunity.  DC further

15  objects to this Request to the extent that it disregards the Court's binding finding

16  that DC and WARNER "acted professionally" and "reasonably" in receiving and

17  handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

18      DC objects to the term "review" as vague and ambiguous.  DC objects to the

19  definition of "WARNER" and responds to that term as limited to relevant

20  custodians at Warner Bros. Entertainment Inc.  DC objects to the extent the Request

21  seeks production of "all DOCUMENTS" on the ground that such request is overly

22  broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the

23  discovery of admissible evidence, as the definition of "DOCUMENTS"

24  encompasses, *e.g.,* all court filings in this case and other publicly available

25  documents.  As used in these Responses, the phrase "all DOCUMENTS," or

26  phrases of similar import, should be understood to mean those documents DC and

27  its counsel were able to locate using reasonable diligence and reasonable judgment

28  concerning the whereabouts of such documents.  DC does not object to or withhold

- 9 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**121**

1    any document based on the definition of "REFER," as this definition mirrors in

2    large part language that DC employed in its own discovery requests.  Defendants

3    previously objected to this same language in DC's requests as impermissibly

4    overbroad.  Based on defendants' use of this same term and tacit acknowledgement

5    that DC's use of these terms is proper, DC will not object on this ground, and DC

6    has confirmed with defendants that they will do the same.

7         Subject to and without waiving all foregoing objections, DC agrees to meet-

8    and-confer with defendants regarding the relevance of the requested documents and

9    in an effort to reasonably narrow this Request and to see what, if any, documents

10   should be produced.

11   **Request No. 8**

12        All DOCUMENTS that REFER to WARNER's review of the TOBEROFF

13   TIMELINE.

14   **Response to Request No. 8**

15        DC objects to this Request as seeking the production of documents which are

16   not reasonably calculated to lead to the discovery of relevant and admissible

17   evidence.  DC further objects to this Request on the grounds that it is indefinite as

18   to time and not reasonably limited in scope.  DC further objects to this Request on

19   the grounds that it calls for a search of documents that is unduly expensive,

20   overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

21   that it seeks information protected by the attorney-client privilege, the attorney

22   work product doctrine, or any other applicable privilege or immunity.  DC further

23   objects to this Request to the extent that it disregards the Court's binding finding

24   that DC and WARNER "acted professionally" and "reasonably" in receiving and

25   handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

26        DC objects to the term "review" as vague and ambiguous.  DC objects to the

27   definition of "WARNER" and responds to that term as limited to relevant

28   custodians at Warner Bros. Entertainment Inc.  DC objects to the extent the Request

- 10 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**122**

1    seeks production of "all DOCUMENTS" on the ground that such request is overly

2    broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the

3    discovery of admissible evidence, as the definition of "DOCUMENTS"

4    encompasses, *e.g.,* all court filings in this case and other publicly available

5    documents. As used in these Responses, the phrase "all DOCUMENTS," or

6    phrases of similar import, should be understood to mean those documents DC and

7    its counsel were able to locate using reasonable diligence and reasonable judgment

8    concerning the whereabouts of such documents. DC does not object to or withhold

9    any document based on the definition of "REFER," as this definition mirrors in

10   large part language that DC employed in its own discovery requests. Defendants

11   previously objected to this same language in DC's requests as impermissibly

12   overbroad. Based on defendants' use of this same term and tacit acknowledgement

13   that DC's use of these terms is proper, DC will not object on this ground, and DC

14   has confirmed with defendants that they will do the same.

15          Subject to and without waiving all foregoing objections, DC agrees to meet-

16   and-confer with defendants regarding the relevance of the requested documents and

17   in an effort to reasonably narrow this Request and to see what, if any, documents

18   should be produced.

19   **Request No. 9**

20          All DOCUMENTS which show when WARNER first received the STOLEN

21   DOCUMENTS.

22   **Response to Request No. 9**

23          DC objects to this Request as seeking the production of documents which are

24   not reasonably calculated to lead to the discovery of relevant and admissible

25   evidence. DC further objects to this Request on the grounds that it is indefinite as

26   to time and not reasonably limited in scope. DC further objects to this Request on

27   the grounds that it calls for a search of documents that is unduly expensive,

28   overbroad, unduly burdensome, and oppressive. DC further objects to the extent

- 11 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**123**

1   that it seeks information protected by the attorney-client privilege, the attorney

2   work product doctrine, or any other applicable privilege or immunity.  DC further

3   objects to this Request to the extent that it disregards the Court's binding finding

4   that DC and WARNER "acted professionally" and "reasonably" in receiving and

5   handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

6       DC objects to the definition of "WARNER" and will respond to that term as

7   limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

8   extent the Request seeks production of "all DOCUMENTS" on the ground that

9   such request is overly broad, unduly burdensome, oppressive, and not reasonably

10  calculated to lead to the discovery of admissible evidence, as the definition of

11  "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly

12  available documents.  As used in these Responses, the phrase "all DOCUMENTS,"

13  or phrases of similar import, should be understood to mean those documents DC

14  and its counsel were able to locate using reasonable diligence and reasonable

15  judgment concerning the whereabouts of such documents.

16      Subject to and without waiving all foregoing objections, DC agrees to meet-

17  and-confer with defendants regarding the relevance of the requested documents and

18  in an effort to reasonably narrow this Request and to see what, if any, documents

19  should be produced.

20  **Request No. 10**

21      All DOCUMENTS which show when WARNER first received the

22  TOBEROFF TIMELINE.

23  **Response to Request No. 10**

24      DC objects to this Request as seeking the production of documents which are

25  not reasonably calculated to lead to the discovery of relevant and admissible

26  evidence.  DC further objects to this Request on the grounds that it is indefinite as

27  to time and not reasonably limited in scope.  DC further objects to this Request on

28  the grounds that it calls for a search of documents that is unduly expensive,

- 12 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**124**

1    overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

2    that it seeks information protected by the attorney-client privilege, the attorney

3    work product doctrine, or any other applicable privilege or immunity.  DC further

4    objects to this Request to the extent that it disregards the Court's binding finding

5    that DC and WARNER "acted professionally" and "reasonably" in receiving and

6    handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

7        DC objects to the definition of "WARNER" and will respond to that term as

8    limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

9    extent the Request seeks production of "all DOCUMENTS" on the ground that

10   such request is overly broad, unduly burdensome, oppressive, and not reasonably

11   calculated to lead to the discovery of admissible evidence, as the definition of

12   "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly

13   available documents.  As used in these Responses, the phrase "all DOCUMENTS,"

14   or phrases of similar import, should be understood to mean those documents DC

15   and its counsel were able to locate using reasonable diligence and reasonable

16   judgment concerning the whereabouts of such documents.

17       Subject to and without waiving all foregoing objections, DC agrees to meet-

18   and-confer with defendants regarding the relevance of the requested documents and

19   in an effort to reasonably narrow this Request and to see what, if any, documents

20   should be produced.

21   **Request No. 11**

22       All DOCUMENTS which show when WARNER first became aware of the

23   STOLEN DOCUMENTS.

24   **Response to Request No. 11**

25       DC objects to this Request as seeking the production of documents which are

26   not reasonably calculated to lead to the discovery of relevant and admissible

27   evidence.  DC further objects to this Request on the grounds that it is indefinite as

28   to time and not reasonably limited in scope.  DC further objects to this Request on

- 13 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**125**

1    the grounds that it calls for a search of documents that is unduly expensive,

2    overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

3    that it seeks information protected by the attorney-client privilege, the attorney

4    work product doctrine, or any other applicable privilege or immunity.  DC further

5    objects to this Request to the extent that it disregards the Court's binding finding

6    that DC and WARNER "acted professionally" and "reasonably" in receiving and

7    handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

8         DC objects to the phrase "became aware" as vague and ambiguous.  DC

9    objects to the definition of "WARNER" and responds to that term as limited to

10   relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the extent the

11   Request seeks production of "all DOCUMENTS" on the ground that such request is

12   overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

13   to the discovery of admissible evidence, as the definition of "DOCUMENTS"

14   encompasses, *e.g.,* all court filings in this case and other publicly available

15   documents.  As used in these Responses, the phrase "all DOCUMENTS," or

16   phrases of similar import, should be understood to mean those documents DC and

17   its counsel were able to locate using reasonable diligence and reasonable judgment

18   concerning the whereabouts of such documents.

19        Subject to and without waiving all foregoing objections, DC agrees to meet-

20   and-confer with defendants regarding the relevance of the requested documents and

21   in an effort to reasonably narrow this Request and to see what, if any, documents

22   should be produced.

23   **Request No. 12**

24        All DOCUMENTS which show when WARNER first became aware of the

25   TOBEROFF TIMELINE.

26   **Response to Request No. 12**

27        DC objects to this Request as seeking the production of documents which are

28   not reasonably calculated to lead to the discovery of relevant and admissible

- 14 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**126**

1   evidence.  DC further objects to this Request on the grounds that it is indefinite as

2   to time and not reasonably limited in scope.  DC further objects to this Request on

3   the grounds that it calls for a search of documents that is unduly expensive,

4   overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

5   that it seeks information protected by the attorney-client privilege, the attorney

6   work product doctrine, or any other applicable privilege or immunity.  DC further

7   objects to this Request to the extent that it disregards the Court's binding finding

8   that DC and WARNER "acted professionally" and "reasonably" in receiving and

9   handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

10      DC objects to the phrase "became aware" as vague and ambiguous.  DC

11  objects to the definition of "WARNER" and responds to that term as limited to

12  relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the extent the

13  Request seeks production of "all DOCUMENTS" on the ground that such request is

14  overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

15  to the discovery of admissible evidence, as the definition of "DOCUMENTS"

16  encompasses, *e.g.,* all court filings in this case and other publicly available

17  documents.  As used in these Responses, the phrase "all DOCUMENTS," or

18  phrases of similar import, should be understood to mean those documents DC and

19  its counsel were able to locate using reasonable diligence and reasonable judgment

20  concerning the whereabouts of such documents.

21      Subject to and without waiving all foregoing objections, DC agrees to meet-

22  and-confer with defendants regarding the relevance of the requested documents and

23  in an effort to reasonably narrow this Request and to see what, if any, documents

24  should be produced.

25  **Request No. 13**

26      All DOCUMENTS which show when YOU first received the STOLEN

27  DOCUMENTS.

28

- 15 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**127**

**Response to Request No. 13**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21. DC further objects on the ground that based on defendants' definition of "YOU," there is no one "date" on which the referenced documents were received.

DC objects to the definition of "YOU" and will respond to that term as limited to relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**128**

**Request No. 14**

All DOCUMENTS which show when YOU first received the TOBEROFF
TIMELINE.

**Response to Request No. 14**

DC objects to this Request as seeking the production of documents which are
not reasonably calculated to lead to the discovery of relevant and admissible
evidence. DC further objects to this Request on the grounds that it is indefinite as
to time and not reasonably limited in scope. DC further objects to this Request on
the grounds that it calls for a search of documents that is unduly expensive,
overbroad, unduly burdensome, and oppressive. DC further objects to the extent
that it seeks information protected by the attorney-client privilege, the attorney
work product doctrine, or any other applicable privilege or immunity. DC further
objects to this Request to the extent that it disregards the Court's binding finding
that DC and WARNER "acted professionally" and "reasonably" in receiving and
handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21. DC
further objects on the ground that based on defendants' definition of "YOU," there
is no one "date" on which the referenced document was received.

DC objects to the definition of "YOU" and will respond to that term as
limited to relevant custodians at DC and Warner Bros. Entertainment Inc. DC
objects to the extent the Request seeks production of "all DOCUMENTS" on the
ground that such request is overly broad, unduly burdensome, oppressive, and not
reasonably calculated to lead to the discovery of admissible evidence, as the
definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and
other publicly available documents. As used in these Responses, the phrase "all
DOCUMENTS," or phrases of similar import, should be understood to mean those
documents DC and its counsel were able to locate using reasonable diligence and
reasonable judgment concerning the whereabouts of such documents.

- 17 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**129**

1    Subject to and without waiving all foregoing objections, DC agrees to meet-

2    and-confer with defendants regarding the relevance of the requested documents and

3    in an effort to reasonably narrow this Request and to see what, if any, documents

4    should be produced.

5    **Request No. 15**

6    All DOCUMENTS which show when YOU first became aware of the

7    STOLEN DOCUMENTS.

8    **Response to Request No. 15**

9    DC objects to this Request as seeking the production of documents which are

10    not reasonably calculated to lead to the discovery of relevant and admissible

11    evidence. DC further objects to this Request on the grounds that it is indefinite as

12    to time and not reasonably limited in scope. DC further objects to this Request on

13    the grounds that it calls for a search of documents that is unduly expensive,

14    overbroad, unduly burdensome, and oppressive. DC further objects to the extent

15    that it seeks information protected by the attorney-client privilege, the attorney

16    work product doctrine, or any other applicable privilege or immunity. DC further

17    objects to this Request to the extent that it disregards the Court's binding finding

18    that DC and WARNER "acted professionally" and "reasonably" in receiving and

19    handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21. DC

20    further objects on the ground that based on defendants' definition of "YOU," there

21    is no one "date" on which the referenced documents were received.

22    DC objects to the phrase "became aware" as vague and ambiguous. DC

23    objects to the definition of "YOU" and will respond to that term as limited to

24    relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the

25    extent the Request seeks production of "all DOCUMENTS" on the ground that

26    such request is overly broad, unduly burdensome, oppressive, and not reasonably

27    calculated to lead to the discovery of admissible evidence, as the definition of

28    "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly

- 18 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

**130**

1    available documents. As used in these Responses, the phrase "all DOCUMENTS,"

2    or phrases of similar import, should be understood to mean those documents DC

3    and its counsel were able to locate using reasonable diligence and reasonable

4    judgment concerning the whereabouts of such documents.

5        Subject to and without waiving all foregoing objections, DC agrees to meet-

6    and-confer with defendants regarding the relevance of the requested documents and

7    in an effort to reasonably narrow this Request and to see what, if any, documents

8    should be produced.

9    **Request No. 16**

10       All DOCUMENTS which show when YOU first became aware of the

11   TOBEROFF TIMELINE.

12   **Response to Request No. 16**

13       DC objects to this Request as seeking the production of documents which are

14   not reasonably calculated to lead to the discovery of relevant and admissible

15   evidence. DC further objects to this Request on the grounds that it is indefinite as

16   to time and not reasonably limited in scope. DC further objects to this Request on

17   the grounds that it calls for a search of documents that is unduly expensive,

18   overbroad, unduly burdensome, and oppressive. DC further objects to the extent

19   that it seeks information protected by the attorney-client privilege, the attorney

20   work product doctrine, or any other applicable privilege or immunity. DC further

21   objects to this Request to the extent that it disregards the Court's binding finding

22   that DC and WARNER "acted professionally" and "reasonably" in receiving and

23   handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21. DC

24   further objects on the ground that based on defendants' definition of "YOU," there

25   is no one "date" on which the referenced document was received.

26       DC objects to the phrase "became aware" as vague and ambiguous. DC

27   objects to the definition of "YOU" and will respond to that term as limited to

28   relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the

- 19 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**131**

1   extent the Request seeks production of "all DOCUMENTS" on the ground that

2   such request is overly broad, unduly burdensome, oppressive, and not reasonably

3   calculated to lead to the discovery of admissible evidence, as the definition of

4   "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly

5   available documents.  As used in these Responses, the phrase "all DOCUMENTS,"

6   or phrases of similar import, should be understood to mean those documents DC

7   and its counsel were able to locate using reasonable diligence and reasonable

8   judgment concerning the whereabouts of such documents.  DC does not object to or

9   withhold any document based on the definition of "REFER," as this definition

10  mirrors in large part language that DC employed in its own discovery requests.

11  Defendants previously objected to this same language in DC's requests as

12  impermissibly overbroad.  Based on defendants' use of this same term and tacit

13  acknowledgement that DC's use of these terms is proper, DC will not object on this

14  ground, and DC has confirmed with defendants that they will do the same.

15      Subject to and without waiving all foregoing objections, DC agrees to meet-

16  and-confer with defendants regarding the relevance of the requested documents and

17  in an effort to reasonably narrow this Request and to see what, if any, documents

18  should be produced.

19  **Request No. 17**

20      All DOCUMENTS REFERRING TO the TOBEROFF TIMELINE.

21  **Response to Request No. 17**

22      DC objects to this Request on the grounds that it is indefinite as to time and

23  not reasonably limited in scope.  DC further objects to this Request to the extent

24  that it seeks the production of any item, or portion thereof, which is not reasonably

25  calculated to lead to the discovery of relevant and admissible evidence.  DC further

26  objects to this Request on the grounds that it calls for a search of documents that is

27  unduly expensive, overbroad, unduly burdensome, and oppressive.  DC further

28  objects to the extent that it seeks information protected by the attorney-client

- 20 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

**132**

1  privilege, the attorney work product doctrine, or any other applicable privilege or

2  immunity.

3       DC objects to the extent the Request seeks production of "all

4  DOCUMENTS" on the ground that such request is overly broad, unduly

5  burdensome, oppressive, and not reasonably calculated to lead to the discovery of

6  admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all

7  court filings in this case and other publicly available documents.  As used in these

8  Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

9  understood to mean those documents DC and its counsel were able to locate using

10  reasonable diligence and reasonable judgment concerning the whereabouts of such

11  documents.  DC does not object to or withhold any document based on the

12  definition of "REFER," as this definition mirrors in large part language that DC

13  employed in its own discovery requests.  Defendants previously objected to this

14  same language in DC's requests as impermissibly overbroad.  Based on defendants'

15  use of this same term and tacit acknowledgement that DC's use of these terms is

16  proper, DC will not object on this ground, and DC has confirmed with defendants

17  that they will do the same.

18       Subject to and without waiving all foregoing objections, DC agrees to meet-

19  and-confer with defendants regarding the relevance of the requested documents and

20  in an effort to reasonably narrow this Request and to see what, if any, documents

21  should be produced.

22  **Request No. 18**

23       All DOCUMENTS REFERRING TO the STOLEN DOCUMENTS.

24  **Response to Request No. 18**

25       DC objects to this Request on the grounds that it is indefinite as to time and

26  not reasonably limited in scope.  DC further objects to this Request to the extent

27  that it seeks the production of any item, or portion thereof, which is not reasonably

28  calculated to lead to the discovery of relevant and admissible evidence.  DC further

- 21 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**133**

1    objects to this Request on the grounds that it calls for a search of documents that is

2    unduly expensive, overbroad, unduly burdensome, and oppressive. DC further

3    objects to the extent that it seeks information protected by the attorney-client

4    privilege, the attorney work product doctrine, or any other applicable privilege or

5    immunity. DC further objects to this Request to the extent that it disregards the

6    Court's binding finding that DC and WARNER "acted professionally" and

7    "reasonably" in receiving and handling the Toberoff Timeline documents. *See*

8    Docket No. 163-13 at 21.

9        DC objects to the extent the Request seeks production of "all

10   DOCUMENTS" on the ground that such request is overly broad, unduly

11   burdensome, oppressive, and not reasonably calculated to lead to the discovery of

12   admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all

13   court filings in this case and other publicly available documents. As used in these

14   Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

15   understood to mean those documents DC and its counsel were able to locate using

16   reasonable diligence and reasonable judgment concerning the whereabouts of such

17   documents. DC does not object to or withhold any document based on the

18   definition of "REFER," as this definition mirrors in large part language that DC

19   employed in its own discovery requests. Defendants previously objected to this

20   same language in DC's requests as impermissibly overbroad. Based on defendants'

21   use of this same term and tacit acknowledgement that DC's use of these terms is

22   proper, DC will not object on this ground, and DC has confirmed with defendants

23   that they will do the same.

24       Subject to and without waiving all foregoing objections, DC agrees to meet-

25   and-confer with defendants regarding the relevance of the requested documents and

26   in an effort to reasonably narrow this Request and to see what, if any, documents

27   should be produced.

28

- 22 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

**134**

1  **Request No. 19**

2     All DOCUMENTS REFERRING TO ARNOLD PORTER and the

3  TOBEROFF TIMELINE.

4  **Response to Request No. 19**

5     DC objects to this Request as seeking the production of documents which are

6  not reasonably calculated to lead to the discovery of relevant and admissible

7  evidence.  DC further objects to this Request on the grounds that it is indefinite as

8  to time and not reasonably limited in scope.  DC further objects to this Request on

9  the grounds that it calls for a search of documents that is unduly expensive,

10  overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

11  that it seeks information protected by the attorney-client privilege, the attorney

12  work product doctrine, or any other applicable privilege or immunity.  DC further

13  objects to this Request to the extent that it disregards the Court's binding finding

14  that DC and WARNER "acted professionally" and "reasonably" in receiving and

15  handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

16     DC objects to the extent the Request seeks production of "all

17  DOCUMENTS" on the ground that such request is overly broad, unduly

18  burdensome, oppressive, and not reasonably calculated to lead to the discovery of

19  admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all

20  court filings in this case and other publicly available documents.  As used in these

21  Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

22  understood to mean those documents DC and its counsel were able to locate using

23  reasonable diligence and reasonable judgment concerning the whereabouts of such

24  documents.  DC does not object to or withhold any document based on the

25  definition of "REFER," as this definition mirrors in large part language that DC

26  employed in its own discovery requests.  Defendants previously objected to this

27  same language in DC's requests as impermissibly overbroad.  Based on defendants'

28  use of this same term and tacit acknowledgement that DC's use of these terms is

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**135**

1    proper, DC will not object on this ground, and DC has confirmed with defendants

2    that they will do the same.

3        Subject to and without waiving all foregoing objections, DC agrees to meet-

4    and-confer with defendants regarding the relevance of the requested documents and

5    in an effort to reasonably narrow this Request and to see what, if any, documents

6    should be produced.

7    **Request No. 20**

8        All DOCUMENTS REFERRING TO ARNOLD PORTER and the STOLEN

9    DOCUMENTS.

10   **Response to Request No. 20**

11       DC objects to this Request as seeking the production of documents which are

12   not reasonably calculated to lead to the discovery of relevant and admissible

13   evidence.  DC further objects to this Request on the grounds that it is indefinite as

14   to time and not reasonably limited in scope.  DC further objects to this Request on

15   the grounds that it calls for a search of documents that is unduly expensive,

16   overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

17   that it seeks information protected by the attorney-client privilege, the attorney

18   work product doctrine, or any other applicable privilege or immunity.  DC further

19   objects to this Request to the extent that it disregards the Court's binding finding

20   that DC and WARNER "acted professionally" and "reasonably" in receiving and

21   handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

22       DC objects to the extent the Request seeks production of "all

23   DOCUMENTS" on the ground that such request is overly broad, unduly

24   burdensome, oppressive, and not reasonably calculated to lead to the discovery of

25   admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all

26   court filings in this case and other publicly available documents.  As used in these

27   Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

28   understood to mean those documents DC and its counsel were able to locate using

- 24 -

1    reasonable diligence and reasonable judgment concerning the whereabouts of such

2    documents.  DC does not object to or withhold any document based on the

3    definition of "REFER," as this definition mirrors in large part language that DC

4    employed in its own discovery requests.  Defendants previously objected to this

5    same language in DC's requests as impermissibly overbroad.  Based on defendants'

6    use of this same term and tacit acknowledgement that DC's use of these terms is

7    proper, DC will not object on this ground, and DC has confirmed with defendants

8    that they will do the same.

9          Subject to and without waiving all foregoing objections, DC agrees to meet-

10   and-confer with defendants regarding the relevance of the requested documents and

11   in an effort to reasonably narrow this Request and to see what, if any, documents

12   should be produced.

13   **Request No. 21**

14         All COMMUNICATIONS between YOU and ARNOLD PORTER

15   REFERRING TO the TOBEROFF TIMELINE.

16   **Response to Request No. 21**

17         DC objects to this Request as seeking the production of documents which are

18   not reasonably calculated to lead to the discovery of relevant and admissible

19   evidence.  DC further objects to this Request on the grounds that it is indefinite as

20   to time and not reasonably limited in scope.  DC further objects to this Request on

21   the grounds that it calls for a search of documents that is unduly expensive,

22   overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

23   to the extent that it disregards the Court's binding finding that DC and WARNER

24   "acted professionally" and "reasonably" in receiving and handling the Toberoff

25   Timeline documents.  *See* Docket No. 163-13 at 21.

26         DC objects to the definition of "YOU" and will respond to that term as

27   limited to relevant custodians at DC and Warner Bros. Entertainment Inc.  DC

28   objects to the definition of "COMMUNICATION" as vague and overbroad and will

- 25 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**137**

1    respond to this term as excluding any documents filed in connection with prior and

2    ongoing litigation. DC objects to the extent the Request seeks production of "all

3    COMMUNICATIONS" on the grounds that such request is overly broad, unduly

4    burdensome, oppressive, and not reasonably calculated to lead to the discovery of

5    admissible evidence. As used in these Responses, the phrase "all

6    COMMUNICATIONS," or phrases of similar import, should be understood to

7    mean those documents DC and its counsel were able to locate using reasonable

8    diligence and reasonable judgment concerning the whereabouts of such documents.

9    Such phraseology should not be construed as a representation that each and every

10   document in DC's possession has been examined in connection with these

11   Responses or any production pursuant thereto. DC does not object to or withhold

12   any document based on the definition of "REFER," as this definition mirrors in

13   large part language that DC employed in its own discovery requests. Defendants

14   previously objected to this same language in DC's requests as impermissibly

15   overbroad. Based on defendants' use of this same term and tacit acknowledgement

16   that DC's use of these terms is proper, DC will not object on this ground, and DC

17   has confirmed with defendants that they will do the same.

18        Subject to and without waiving all foregoing objections, DC agrees to meet-

19   and-confer with defendants regarding the relevance of the requested documents and

20   in an effort to reasonably narrow this Request and to see what, if any, documents

21   should be produced.

22   **Request No. 22**

23        All COMMUNICATIONS between YOU and ARNOLD PORTER

24   REFERRING TO any of the STOLEN DOCUMENTS.

25   **Response to Request No. 22**

26        DC objects to this Request as seeking the production of documents which are

27   not reasonably calculated to lead to the discovery of relevant and admissible

28   evidence. DC further objects to this Request on the grounds that it is indefinite as

- 26 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

**138**

1    to time and not reasonably limited in scope.  DC further objects to this Request on

2    the grounds that it calls for a search of documents that is unduly expensive,

3    overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

4    to the extent that it disregards the Court's binding finding that DC and WARNER

5    "acted professionally" and "reasonably" in receiving and handling the Toberoff

6    Timeline documents.  *See* Docket No. 163-13 at 21.

7         DC objects to the definition of "YOU" and will respond to that term as

8    limited to relevant custodians at DC and Warner Bros. Entertainment Inc.  DC

9    objects to the definition of "COMMUNICATION" as vague and overbroad and will

10   respond to this term as excluding any documents filed in connection with prior and

11   ongoing litigation.  DC objects to the extent the Request seeks production of "all

12   COMMUNICATIONS" on the grounds that such request is overly broad, unduly

13   burdensome, oppressive, and not reasonably calculated to lead to the discovery of

14   admissible evidence.  As used in these Responses, the phrase "all

15   COMMUNICATIONS," or phrases of similar import, should be understood to

16   mean those documents DC and its counsel were able to locate using reasonable

17   diligence and reasonable judgment concerning the whereabouts of such documents.

18   Such phraseology should not be construed as a representation that each and every

19   document in DC's possession has been examined in connection with these

20   Responses or any production pursuant thereto.  DC does not object to or withhold

21   any document based on the definition of "REFER," as this definition mirrors in

22   large part language that DC employed in its own discovery requests.  Defendants

23   previously objected to this same language in DC's requests as impermissibly

24   overbroad.  Based on defendants' use of this same term and tacit acknowledgement

25   that DC's use of these terms is proper, DC will not object on this ground, and DC

26   has confirmed with defendants that they will do the same.

27         Subject to and without waiving all foregoing objections, DC agrees to meet-

28   and-confer with defendants regarding the relevance of the requested documents and

- 27 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**139**

1   in an effort to reasonably narrow this Request and to see what, if any, documents

2   should be produced.

3   **Request No. 23**

4       All COMMUNICATIONS between YOU and ARNOLD PORTER

5   REFERRING TO the *Siegel* Litigations.

6   **Response to Request No. 23**

7       DC objects to this Request as seeking the production of documents which are

8   not reasonably calculated to lead to the discovery of relevant and admissible

9   evidence.  DC further objects to this Request on the grounds that it is indefinite as

10  to time and not reasonably limited in scope.  DC further objects to this Request on

11  the grounds that it calls for a search of documents that is unduly expensive,

12  overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

13  to the extent that it disregards the Court's binding finding that DC and WARNER

14  "acted professionally" and "reasonably" in receiving and handling the Toberoff

15  Timeline documents.  *See* Docket No. 163-13 at 21.

16      DC objects to the definition of "YOU" and will respond to that term as

17  limited to relevant custodians at DC and Warner Bros. Entertainment Inc.  DC

18  objects to the definition of "COMMUNICATION" as vague and overbroad and will

19  respond to this term as excluding any documents filed in connection with prior and

20  ongoing litigation.  DC objects to the extent the Request seeks production of "all

21  COMMUNICATIONS" on the grounds that such request is overly broad, unduly

22  burdensome, oppressive, and not reasonably calculated to lead to the discovery of

23  admissible evidence.  As used in these Responses, the phrase "all

24  COMMUNICATIONS," or phrases of similar import, should be understood to

25  mean those documents DC and its counsel were able to locate using reasonable

26  diligence and reasonable judgment concerning the whereabouts of such documents.

27  Such phraseology should not be construed as a representation that each and every

28  document in DC's possession has been examined in connection with these

<div align="center">- 28 -</div>

<div align="right">DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125</div>

<div align="center">**EXHIBIT 15**

**140**</div>

1    Responses or any production pursuant thereto. DC does not object to or withhold

2    any document based on the definition of "REFER," as this definition mirrors in

3    large part language that DC employed in its own discovery requests. Defendants

4    previously objected to this same language in DC's requests as impermissibly

5    overbroad. Based on defendants' use of this same term and tacit acknowledgement

6    that DC's use of these terms is proper, DC will not object on this ground, and DC

7    has confirmed with defendants that they will do the same.

8        Subject to and without waiving all foregoing objections, DC agrees to meet-

9    and-confer with defendants regarding the relevance of the requested documents and

10   in an effort to reasonably narrow this Request and to see what, if any, documents

11   should be produced.

12   **Request No. 24**

13       All receipts, bills, invoices, and equivalent DOCUMENTS from ARNOLD

14   PORTER that RELATE TO the STOLEN DOCUMENTS, the TOBEROFF

15   TIMELINE, or the *Siegel* Litigations.

16   **Response to Request No. 24**

17       DC objects to this Request as seeking the production of documents which are

18   not reasonably calculated to lead to the discovery of relevant and admissible

19   evidence. DC further objects to this Request on the grounds that it is indefinite as

20   to time and not reasonably limited in scope. DC further objects to this Request on

21   the grounds that it calls for a search of documents that is unduly expensive,

22   overbroad, unduly burdensome, and oppressive. DC further objects to this Request

23   to the extent that it disregards the Court's binding finding that DC and WARNER

24   "acted professionally" and "reasonably" in receiving and handling the Toberoff

25   Timeline documents. *See* Docket No. 163-13 at 21.

26       DC objects to the extent the Request seeks production of "all …

27   DOCUMENTS" on the ground that such request is overly broad, unduly

28   burdensome, oppressive, and not reasonably calculated to lead to the discovery of

- 29 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**141**

1    admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all

2    court filings in this case and other publicly available documents.  As used in these

3    Responses, the phrase "all … DOCUMENTS," or phrases of similar import, should

4    be understood to mean those documents DC and its counsel were able to locate

5    using reasonable diligence and reasonable judgment concerning the whereabouts of

6    such documents.  DC does not object to or withhold any document based on the

7    definition of "RELATE," as this definition mirrors in large part language that DC

8    employed in its own discovery requests.  Defendants previously objected to this

9    same language in DC's requests as impermissibly overbroad.  Based on defendants'

10    use of this same term and tacit acknowledgement that DC's use of these terms is

11    proper, DC will not object on this ground, and DC has confirmed with defendants

12    that they will do the same.

13        Subject to and without waiving all foregoing objections, DC agrees to meet-

14    and-confer with defendants regarding the relevance of the requested documents and

15    in an effort to reasonably narrow this Request and to see what, if any, documents

16    should be produced.

17    **Request No. 25**

18        DOCUMENTS sufficient to show when WARNER first hired ARNOLD

19    PORTER with respect to the STOLEN DOCUMENTS.

20    **Response to Request No. 25**

21        DC objects to this Request as seeking the production of documents which are

22    not reasonably calculated to lead to the discovery of relevant and admissible

23    evidence.  DC further objects to this Request on the grounds that it calls for a search

24    of documents that is unduly expensive, overbroad, unduly burdensome, and

25    oppressive.  DC further objects to the extent that it seeks information protected by

26    the attorney-client privilege, the attorney work product doctrine, or any other

27    applicable privilege or immunity.  DC further objects to this Request to the extent

28    that it disregards the Court's binding finding that DC and WARNER "acted

- 30 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

**142**

1  professionally" and "reasonably" in receiving and handling the Toberoff Timeline

2  documents. *See* Docket No. 163-13 at 21.

3       DC objects to the phrase "sufficient to show" as vague and ambiguous. DC

4  objects to the definition of "WARNER" and responds to that term as limited to

5  relevant custodians at Warner Bros. Entertainment Inc. DC objects to the definition

6  of "DOCUMENTS" on the ground that it is overly broad, unduly burdensome,

7  oppressive, and not reasonably calculated to lead to the discovery of admissible

8  evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings

9  in this case and other publicly available documents. As used in these Responses,

10  the term "DOCUMENTS" should be understood to mean those documents DC and

11  its counsel were able to locate using reasonable diligence and reasonable judgment

12  concerning the whereabouts of such documents.

13       Subject to and without waiving all foregoing objections, DC agrees to meet-

14  and-confer with defendants regarding the relevance of the requested documents and

15  in an effort to reasonably narrow this Request and to see what, if any, documents

16  should be produced.

17  **Request No. 26**

18       WARNER'S retainer agreement with ARNOLD PORTER REGARDING the

19  STOLEN DOCUMENTS.

20  **Response to Request No. 26**

21       DC objects to this Request as seeking the production of documents which are

22  not reasonably calculated to lead to the discovery of relevant and admissible

23  evidence. DC further objects to this Request to the extent that it disregards the

24  Court's binding finding that DC and WARNER "acted professionally" and

25  "reasonably" in receiving and handling the Toberoff Timeline documents. *See*

26  Docket No. 163-13 at 21.

27

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**143**

1    DC objects to the definition of "WARNER" and responds to that term as

2    limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

3    phrase "retainer agreement" as vague and ambiguous.

4    Subject to and without waiving all foregoing objections, DC agrees to meet-

5    and-confer with defendants regarding the relevance of the requested document.

6    **Request No. 27**

7    Documents that state WARNER'S protocol or procedures for maintaining,

8    and disposing of records, including electronic records, files and e-mails.

9    **Response to Request No. 27**

10    DC objects to this Request as seeking the production of documents which are

11    not reasonably calculated to lead to the discovery of relevant and admissible

12    evidence.  DC further objects to this Request on the grounds that it is indefinite as

13    to time and not reasonably limited in scope.  DC further objects to the extent that it

14    seeks information protected by the attorney-client privilege, the attorney work

15    product doctrine, or any other applicable privilege or immunity.  DC further objects

16    to this Request to the extent that it disregards the Court's binding finding that DC

17    and WARNER "acted professionally" and "reasonably" in receiving and handling

18    the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

19    DC objects to the definition of "WARNER" and responds to that term as

20    limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

21    phrase "protocol or procedures" as vague and ambiguous.

22    Subject to and without waiving all foregoing objections, DC agrees to meet-

23    and-confer with defendants regarding the relevance of the requested documents and

24    in an effort to reasonably narrow this Request and to see what, if any, documents

25    should be produced.

26    **Request No. 28**

27    All DOCUMENTS reviewed or relied upon in connection with the filing of

28    YOUR complaint and first amended complaint in this case.

- 32 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**144**

1    **Response to Request No. 28**

2         DC objects to this Request on the ground that the discovery rules do not

3    entitle defendants to obtain such documents.  DC objects to this Request on the

4    grounds that it is indefinite as to time and not reasonably limited in scope.  DC

5    further objects to this Request on the grounds that it calls for a search of documents

6    that is unduly expensive, overbroad, unduly burdensome, and oppressive.  DC

7    further objects to the extent that it seeks information protected by the attorney-

8    client privilege, the attorney work product doctrine, or any other applicable

9    privilege or immunity.

10        DC objects to the extent the Request seeks production of "all

11   DOCUMENTS" on the ground that such request is overly broad, unduly

12   burdensome, oppressive, and not reasonably calculated to lead to the discovery of

13   admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all

14   court filings in this case and other publicly available documents.  As used in these

15   Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

16   understood to mean those documents DC and its counsel were able to locate using

17   reasonable diligence and reasonable judgment concerning the whereabouts of such

18   documents.

19        Subject to and without waiving all foregoing objections, DC responds that it

20   will not produce any such documents, as defendants are not entitled to discover

21   documents that DC and its counsel reviewed or relied upon in connection with

22   filing its complaint.

23   **Request No. 29**

24        All complaints or counterclaims filed by YOU and/or WARNER containing a

25   claim for tortious interference with prospective economic advantage and/or a claim

26   for tortious interference with contract.

27

28

- 33 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**145**

1    **Response to Request No. 29**

2        DC objects to this Request as seeking the production of documents which are

3    not reasonably calculated to lead to the discovery of relevant and admissible

4    evidence.  DC further objects to this Request on the grounds that it is indefinite as

5    to time, not reasonably limited in scope, and targets litigation documents that are

6    publicly available.  DC further objects to this Request on the grounds that it calls

7    for a search of documents that is unduly expensive, overbroad, unduly burdensome,

8    and oppressive.  DC further objects to the extent that it seeks information protected

9    by the attorney-client privilege, the attorney work product doctrine, or any other

10    applicable privilege or immunity.

11        DC objects to the definition of "YOU" and will respond to that term as

12    limited to DC.  DC objects to the definition of "WARNER" and will respond to that

13    term as limited to Warner Bros. Entertainment Inc.

14        Subject to and without waiving all foregoing objections, DC responds that it

15    will not produce any such documents, which are publicly available.

16    **Request No. 30**

17        All DOCUMENTS REFERRING TO this case and/or the *Siegel* Litigations,

18    excluding documents produced or filed in this case or the *Siegel* Litigations.

19    **Response to Request No. 30**

20        DC objects to this Request on the grounds that it is indefinite as to time and

21    not reasonably limited in scope.  DC further objects to this Request to the extent

22    that it seeks the production of any item, or portion thereof, which is not reasonably

23    calculated to lead to the discovery of relevant and admissible evidence.  DC further

24    objects to this Request on the grounds that it calls for a search of documents that is

25    unduly expensive, overbroad, unduly burdensome, and oppressive.  DC further

26    objects to the extent that it seeks information protected by the attorney-client

27    privilege, the attorney work product doctrine, or any other applicable privilege or

28    immunity.

- 34 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**146**

1        DC objects to the extent the Request seeks production of "all

2  DOCUMENTS" on the ground that such request is overly broad, unduly

3  burdensome, oppressive, and not reasonably calculated to lead to the discovery of

4  admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all

5  news reports concerning this case and the *Siegel* Litigations. As used in these

6  Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

7  understood to mean those documents DC and its counsel were able to locate using

8  reasonable diligence and reasonable judgment concerning the whereabouts of such

9  documents. DC does not object to or withhold any document based on the

10  definition of "REFERRING," as this definition mirrors in large part language that

11  DC employed in its own discovery requests. Defendants previously objected to this

12  same language in DC's requests as impermissibly overbroad. Based on defendants'

13  use of this same term and tacit acknowledgement that DC's use of these terms is

14  proper, DC will not object on this ground, and DC has confirmed with defendants

15  that they will do the same.

16        Subject to and without waiving all foregoing objections, DC agrees to meet-

17  and-confer with defendants regarding the relevance of the requested documents and

18  in an effort to reasonably narrow this Request and to see what, if any, documents

19  should be produced.

20  **Request No. 31**

21        All minutes of Board of Directors meetings or Directors' resolutions

22  RELATING TO any Defendants in this case and/or the *Siegel* Litigations.

23  **Response to Request No. 31**

24        DC objects to this Request as seeking the production of documents which are

25  not reasonably calculated to lead to the discovery of relevant and admissible

26  evidence. DC further objects to this Request on the grounds that it is indefinite as

27  to time, not reasonably limited in scope, and calls for documents outside DC's

28  possession, custody, or control. DC further objects to this Request on the grounds

- 35 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**147**

1    that it calls for a search of documents that is unduly expensive, overbroad, unduly

2    burdensome, and oppressive.

3        DC objects to the phrases "Board of Directors meetings" and "Directors'

4    resolutions" as vague, ambiguous, and not connected to any specific entity.  DC

5    does not object to or withhold any document based on the definition of

6    "RELATING," as this definition mirrors in large part language that DC employed

7    in its own discovery requests.  Defendants previously objected to this same

8    language in DC's requests as impermissibly overbroad.  Based on defendants' use

9    of this same term and tacit acknowledgement that DC's use of these terms is proper,

10   DC will not object on this ground, and DC has confirmed with defendants that they

11   will do the same.

12       Subject to and without waiving all foregoing objections, DC agrees to meet-

13   and-confer with defendants regarding the relevance of the requested documents and

14   in an effort to reasonably narrow this Request and to see what, if any, documents

15   should be produced.

16   **Request No. 32**

17       All DOCUMENTS that REFER to the person who sent the STOLEN

18   DOCUMENTS to WARNER.

19   **Response to Request No. 32**

20       DC objects to this Request as seeking the production of documents which are

21   not reasonably calculated to lead to the discovery of relevant and admissible

22   evidence.  DC further objects to this Request on the grounds that it is indefinite as

23   to time and not reasonably limited in scope.  DC further objects to this Request on

24   the grounds that it calls for a search of documents that is unduly expensive,

25   overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

26   that it seeks information protected by the attorney-client privilege, the attorney

27   work product doctrine, or any other applicable privilege or immunity.  DC further

28

- 36 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**148**

1  objects to this Request to the extent is suggests DC has knowledge of "the person

2  who sent the STOLEN DOCUMENTS to WARNER."

3    DC objects to the definition of "WARNER" and responds to that term as

4  limited to relevant representatives of Warner Bros. Entertainment Inc. DC objects

5  to the extent the Request seeks production of "all DOCUMENTS" on the ground

6  that such request is overly broad, unduly burdensome, oppressive, and not

7  reasonably calculated to lead to the discovery of admissible evidence. As used in

8  these Responses, the phrase "all DOCUMENTS," or phrases of similar import,

9  should be understood to mean those documents DC and its counsel were able to

10  locate using reasonable diligence and reasonable judgment concerning the

11  whereabouts of such documents. DC does not object to or withhold any document

12  based on the definition of "REFER," as this definition mirrors in large part

13  language that DC employed in its own discovery requests. Defendants previously

14  objected to this same language in DC's requests as impermissibly overbroad.

15  Based on defendants' use of this same term and tacit acknowledgement that DC's

16  use of these terms is proper, DC will not object on this ground, and DC has

17  confirmed with defendants that they will do the same.

18    Subject to and without waiving all foregoing objections, DC agrees to meet-

19  and-confer with defendants regarding the relevance of the requested documents, the

20  definition of "person who sent the STOLEN DOCUMENTS to WARNER," and in

21  an effort to reasonably narrow this Request and to see what, if any, documents

22  should be produced.

23  **Request No. 33**

24    All DOCUMENTS RELATING TO YOUR efforts to locate, identify, and/or

25  communicate with the person who sent the STOLEN DOCUMENTS to WARNER.

26  **Response to Request No. 33**

27    DC objects to this Request as seeking the production of documents which are

28  not reasonably calculated to lead to the discovery of relevant and admissible

<div align="center">- 37 -</div>

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

<div align="center">**EXHIBIT 15**

**149**</div>

1    evidence. DC further objects to this Request on the grounds that it is indefinite as

2    to time and not reasonably limited in scope. DC further objects to this Request on

3    the grounds that it calls for a search of documents that is unduly expensive,

4    overbroad, unduly burdensome, and oppressive. DC further objects to this Request

5    on the ground that it seeks information protected by the attorney-client privilege,

6    the attorney work product doctrine, or any other applicable privilege or immunity.

7         DC objects to the definition of "YOUR" and will respond to that term as

8    limited to relevant representatives of DC and Warner Bros. Entertainment Inc. DC

9    objects to the definition of "WARNER" and responds to that term as limited to

10   relevant representatives of Warner Bros. Entertainment Inc. DC objects to the

11   extent the Request seeks production of "all DOCUMENTS" on the ground that

12   such request is overly broad, unduly burdensome, oppressive, and not reasonably

13   calculated to lead to the discovery of admissible evidence. As used in these

14   Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

15   understood to mean those documents DC and its counsel were able to locate using

16   reasonable diligence and reasonable judgment concerning the whereabouts of such

17   documents. DC does not object to or withhold any document based on the

18   definition of "RELATING," as this definition mirrors in large part language that

19   DC employed in its own discovery requests. Defendants previously objected to this

20   same language in DC's requests as impermissibly overbroad. Based on defendants'

21   use of this same term and tacit acknowledgement that DC's use of these terms is

22   proper, DC will not object on this ground, and DC has confirmed with defendants

23   that they will do the same.

24        Subject to and without waiving all foregoing objections, DC agrees to meet-

25   and-confer with defendants regarding the relevance of the requested documents and

26   in an effort to reasonably narrow this Request and to see what, if any, documents

27   should be produced.

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

1  **Request No. 34**

2      All COMMUNICATIONS between YOU and the person who sent the

3  STOLEN DOCUMENTS to WARNER.

4  **Response to Request No. 34**

5      DC objects to this Request as seeking the production of documents which are

6  not reasonably calculated to lead to the discovery of relevant and admissible

7  evidence.  DC further objects to this Request on the grounds that it is indefinite as

8  to time and not reasonably limited in scope.  DC further objects to this Request on

9  the grounds that it calls for a search of documents that is unduly expensive,

10  overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

11  to the extent is suggests DC has knowledge of "the person who sent the STOLEN

12  DOCUMENTS to WARNER."

13      DC objects to the definition of "YOU" and will respond to that term as

14  limited to relevant custodians at DC and Warner Bros. Entertainment Inc.  DC

15  objects to the definition of "WARNER" and will respond to that term as limited to

16  Warner Bros. Entertainment Inc.  DC objects to the definition of

17  "COMMUNICATION" as vague and overbroad and will respond to this term as

18  excluding any documents filed in connection with prior and ongoing litigation.  DC

19  objects to the extent the Request seeks production of "all COMMUNICATIONS"

20  on the grounds that such request is overly broad, unduly burdensome, oppressive,

21  and not reasonably calculated to lead to the discovery of admissible evidence.  As

22  used in these Responses, the phrase "all COMMUNICATIONS," or phrases of

23  similar import, should be understood to mean those documents DC and its counsel

24  were able to locate using reasonable diligence and reasonable judgment concerning

25  the whereabouts of such documents.  Such phraseology should not be construed as

26  a representation that each and every document in DC's possession has been

27  examined in connection with these Responses or any production pursuant thereto.

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**151**

1    Subject to and without waiving all foregoing objections, DC agrees to meet-

2    and-confer with defendants regarding the relevance of the requested documents, the

3    definition of "person who sent the STOLEN DOCUMENTS to WARNER," and in

4    an effort to reasonably narrow this Request and to see what, if any, documents

5    should be produced.

6    **Request No. 35**

7    All DOCUMENTS that REFER to the author of the TOBEROFF

8    TIMELINE.

9    **Response to Request No. 35**

10    DC objects to this Request as seeking the production of documents which are

11    not reasonably calculated to lead to the discovery of relevant and admissible

12    evidence.  DC further objects to this Request on the grounds that it is indefinite as

13    to time and not reasonably limited in scope.  DC further objects to this Request on

14    the grounds that it calls for a search of documents that is unduly expensive,

15    overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

16    this Request seeks information protected by the attorney-client privilege, the

17    attorney work product doctrine, or any other applicable privilege or immunity.  DC

18    further objects to this Request to the extent is suggests DC has knowledge of who is

19    "the author of the TOBEROFF TIMELINE."

20    DC objects to the extent the Request seeks production of "all

21    DOCUMENTS" on the ground that such request is overly broad, unduly

22    burdensome, oppressive, and not reasonably calculated to lead to the discovery of

23    admissible evidence.  As used in these Responses, the phrase "all DOCUMENTS,"

24    or phrases of similar import, should be understood to mean those documents DC

25    and its counsel were able to locate using reasonable diligence and reasonable

26    judgment concerning the whereabouts of such documents.  DC does not object to or

27    withhold any document based on the definition of "REFER," as this definition

28    mirrors in large part language that DC employed in its own discovery requests.

- 40 -

1  Defendants previously objected to this same language in DC's requests as

2  impermissibly overbroad.  Based on defendants' use of this same term and tacit

3  acknowledgement that DC's use of these terms is proper, DC will not object on this

4  ground, and DC has confirmed with defendants that they will do the same.

5       Subject to and without waiving all foregoing objections, DC agrees to meet-

6  and-confer with defendants regarding the relevance of the requested documents, the

7  definition of "the author of the TOBEROFF TIMELINE," and in an effort to

8  reasonably narrow this Request and to see what, if any, documents should be

9  produced.

10  **Request No. 36**

11       All DOCUMENTS RELATING TO YOUR efforts to locate, identify, and/or

12  communicate with the author of the TOBEROFF TIMELINE.

13  **Response to Request No. 36**

14       DC objects to this Request as seeking the production of documents which are

15  not reasonably calculated to lead to the discovery of relevant and admissible

16  evidence.  DC further objects to this Request on the grounds that it is indefinite as

17  to time and not reasonably limited in scope.  DC further objects to this Request on

18  the grounds that it calls for a search of documents that is unduly expensive,

19  overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

20  on the ground that it seeks information protected by the attorney-client privilege,

21  the attorney work product doctrine, or any other applicable privilege or immunity.

22  DC further objects to this Request to the extent is suggests DC has knowledge of

23  who is "the author of the TOBEROFF TIMELINE."

24       DC objects to the definition of "YOU" and will respond to that term as

25  limited to relevant custodians at DC and Warner Bros. Entertainment Inc.  DC

26  objects to the extent the Request seeks production of "all DOCUMENTS" on the

27  ground that such request is overly broad, unduly burdensome, oppressive, and not

28  reasonably calculated to lead to the discovery of admissible evidence.  As used in

- 41 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**153**

1    these Responses, the phrase "all DOCUMENTS," or phrases of similar import,

2    should be understood to mean those documents DC and its counsel were able to

3    locate using reasonable diligence and reasonable judgment concerning the

4    whereabouts of such documents.  DC does not object to or withhold any document

5    based on the definition of "RELATING," as this definition mirrors in large part

6    language that DC employed in its own discovery requests.  Defendants previously

7    objected to this same language in DC's requests as impermissibly overbroad.

8    Based on defendants' use of this same term and tacit acknowledgement that DC's

9    use of these terms is proper, DC will not object on this ground, and DC has

10   confirmed with defendants that they will do the same.

11        Subject to and without waiving all foregoing objections, DC agrees to meet-

12   and-confer with defendants regarding the relevance of the requested documents, the

13   definition of "the author of the TOBEROFF TIMELINE," and in an effort to

14   reasonably narrow this Request and to see what, if any, documents should be

15   produced.

16   **Request No. 37**

17        All COMMUNICATIONS between YOU and the author of the TOBEROFF

18   TIMELINE.

19   **Response to Request No. 37**

20        DC objects to this Request as seeking the production of documents which are

21   not reasonably calculated to lead to the discovery of relevant and admissible

22   evidence.  DC further objects to this Request on the grounds that it is indefinite as

23   to time and not reasonably limited in scope.  DC further objects to this Request on

24   the grounds that it calls for a search of documents that is unduly expensive,

25   overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

26   to the extent is suggests DC has knowledge of who is "the author of the

27   TOBEROFF TIMELINE."

28

- 42 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**154**

1    DC objects to the definition of "YOU" and will respond to that term as

2    limited to relevant custodians at DC and Warner Bros. Entertainment Inc. DC

3    objects to the definition of "COMMUNICATION" as vague and overbroad and will

4    respond to this term as excluding any documents filed in connection with prior and

5    ongoing litigation. DC objects to the extent the Request seeks production of "all

6    COMMUNICATIONS" on the grounds that such request is overly broad, unduly

7    burdensome, oppressive, and not reasonably calculated to lead to the discovery of

8    admissible evidence. As used in these Responses, the phrase "all

9    COMMUNICATIONS," or phrases of similar import, should be understood to

10    mean those documents DC and its counsel were able to locate using reasonable

11    diligence and reasonable judgment concerning the whereabouts of such documents.

12    Such phraseology should not be construed as a representation that each and every

13    document in DC's possession has been examined in connection with these

14    Responses or any production pursuant thereto.

15    Subject to and without waiving all foregoing objections, DC agrees to meet-

16    and-confer with defendants regarding the relevance of the requested documents, the

17    definition of "the author of the TOBEROFF TIMELINE," and in an effort to

18    reasonably narrow this Request and to see what, if any, documents should be

19    produced.

20    **Request No. 38**

21    All DOCUMENTS that REFER to DAVID MICHAELS.

22    **Response to Request No. 38**

23    DC objects to this Request as seeking the production of documents which are

24    not reasonably calculated to lead to the discovery of relevant and admissible

25    evidence. DC further objects to this Request on the grounds that it is indefinite as

26    to time and not reasonably limited in scope. DC further objects to this Request on

27    the grounds that it calls for a search of documents that is unduly expensive,

28    overbroad, unduly burdensome, and oppressive. DC further objects to the extent

- 43 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**155**

1  this Request seeks information protected by the attorney-client privilege, the

2  attorney work product doctrine, or any other applicable privilege or immunity.

3      DC objects to the extent the Request seeks production of "all

4  DOCUMENTS" on the ground that such request is overly broad, unduly

5  burdensome, oppressive, and not reasonably calculated to lead to the discovery of

6  admissible evidence.  As used in these Responses, the phrase "all DOCUMENTS,"

7  or phrases of similar import, should be understood to mean those documents DC

8  and its counsel were able to locate using reasonable diligence and reasonable

9  judgment concerning the whereabouts of such documents.  DC does not object to or

10  withhold any document based on the definition of "RELATING," as this definition

11  mirrors in large part language that DC employed in its own discovery requests.

12  Defendants previously objected to this same language in DC's requests as

13  impermissibly overbroad.  Based on defendants' use of this same term and tacit

14  acknowledgement that DC's use of these terms is proper, DC will not object on this

15  ground, and DC has confirmed with defendants that they will do the same.

16      Subject to and without waiving all foregoing objections, DC agrees to meet-

17  and-confer with defendants regarding the relevance of the requested documents and

18  in an effort to reasonably narrow this Request and to see what, if any, documents

19  should be produced.

20  **Request No. 39**

21      All DOCUMENTS RELATING TO YOUR efforts to locate, identify, and/or

22  communicate with DAVID MICHAELS.

23  **Response to Request No. 39**

24      DC objects to this Request as seeking the production of documents which are

25  not reasonably calculated to lead to the discovery of relevant and admissible

26  evidence.  DC further objects to this Request on the grounds that it is indefinite as

27  to time and not reasonably limited in scope.  DC further objects to this Request on

28  the grounds that it calls for a search of documents that is unduly expensive,

- 44 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**156**

1  overbroad, unduly burdensome, and oppressive. DC further objects to this Request

2  on the ground that it seeks information protected by the attorney-client privilege,

3  the attorney work product doctrine, or any other applicable privilege or immunity.

4      DC objects to the definition of "YOUR" and will respond to that term as

5  limited to relevant custodians at DC and Warner Bros. Entertainment Inc. DC

6  objects to the extent the Request seeks production of "all DOCUMENTS" on the

7  ground that such request is overly broad, unduly burdensome, oppressive, and not

8  reasonably calculated to lead to the discovery of admissible evidence. As used in

9  these Responses, the phrase "all DOCUMENTS," or phrases of similar import,

10  should be understood to mean those documents DC and its counsel were able to

11  locate using reasonable diligence and reasonable judgment concerning the

12  whereabouts of such documents. DC does not object to or withhold any document

13  based on the definition of "RELATING," as this definition mirrors in large part

14  language that DC employed in its own discovery requests. Defendants previously

15  objected to this same language in DC's requests as impermissibly overbroad.

16  Based on defendants' use of this same term and tacit acknowledgement that DC's

17  use of these terms is proper, DC will not object on this ground, and DC has

18  confirmed with defendants that they will do the same.

19      Subject to and without waiving all foregoing objections, DC agrees to meet-

20  and-confer with defendants regarding the relevance of the requested documents and

21  in an effort to reasonably narrow this Request and to see what, if any, documents

22  should be produced.

23  **Request No. 40**

24      All COMMUNICATIONS between YOU and DAVID MICHAELS.

25  **Response to Request No. 40**

26      DC objects to this Request as seeking the production of documents which are

27  not reasonably calculated to lead to the discovery of relevant and admissible

28  evidence. DC further objects to this Request on the grounds that it is indefinite as

- 45 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

1    to time and not reasonably limited in scope.  DC further objects to this Request on

2    the grounds that it calls for a search of documents that is unduly expensive,

3    overbroad, unduly burdensome, and oppressive.

4            DC objects to the definition of "YOU" and will respond to that term as

5    limited to relevant custodians at DC and Warner Bros. Entertainment Inc.  DC

6    objects to the definition of "COMMUNICATION" as vague and overbroad and will

7    respond to this term as excluding any documents filed in connection with prior and

8    ongoing litigation.  DC objects to the extent the Request seeks production of "all

9    COMMUNICATIONS" on the grounds that such request is overly broad, unduly

10    burdensome, oppressive, and not reasonably calculated to lead to the discovery of

11    admissible evidence.  As used in these Responses, the phrase "all

12    COMMUNICATIONS," or phrases of similar import, should be understood to

13    mean those documents DC and its counsel were able to locate using reasonable

14    diligence and reasonable judgment concerning the whereabouts of such documents.

15    Such phraseology should not be construed as a representation that each and every

16    document in DC's possession has been examined in connection with these

17    Responses or any production pursuant thereto.

18            Subject to and without waiving all foregoing objections, DC agrees to meet-

19    and-confer with defendants regarding the relevance of the requested documents and

20    in an effort to reasonably narrow this Request and to see what, if any, documents

21    should be produced.

22    **Request No. 41**

23            All DOCUMENTS that REFER to former employees of Marc Toberoff,

24    Toberoff & Associates, Pacific Pictures Corporation, IP Worldwide, LLC and IPW,

25    LLC.

26    **Response to Request No. 41**

27            DC objects to this Request as seeking the production of documents which are

28    not reasonably calculated to lead to the discovery of relevant and admissible

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**158**

1  evidence.  DC further objects to this Request on the grounds that it is indefinite as

2  to time and not reasonably limited in scope—*e.g.*, it calls for communications

3  between DC, Marc Toberoff, and Toberoff & Associates attorneys in other

4  litigation entirely unrelated to this case.  DC further objects to this Request on the

5  grounds that it calls for a search of documents that is unduly expensive, overbroad,

6  unduly burdensome, and oppressive.  DC further objects to the extent this Request

7  seeks information protected by the attorney-client privilege, the attorney work

8  product doctrine, or any other applicable privilege or immunity.  DC further objects

9  to this Request to the extent is suggests DC has knowledge of all "former

10  employees of Marc Toberoff, Toberoff & Associates, Pacific Pictures Corporation,

11  IP Worldwide, LLC and IPW, LLC."

12      DC objects to the extent the Request seeks production of "all

13  DOCUMENTS" on the ground that such request is overly broad, unduly

14  burdensome, oppressive, and not reasonably calculated to lead to the discovery of

15  admissible evidence.  As used in these Responses, the phrase "all DOCUMENTS,"

16  or phrases of similar import, should be understood to mean those documents DC

17  and its counsel were able to locate using reasonable diligence and reasonable

18  judgment concerning the whereabouts of such documents.  DC does not object to or

19  withhold any document based on the definition of "REFER," as this definition

20  mirrors in large part language that DC employed in its own discovery requests.

21  Defendants previously objected to this same language in DC's requests as

22  impermissibly overbroad.  Based on defendants' use of this same term and tacit

23  acknowledgement that DC's use of these terms is proper, DC will not object on this

24  ground, and DC has confirmed with defendants that they will do the same.

25      Subject to and without waiving all foregoing objections, DC agrees to meet-

26  and-confer with defendants regarding the relevance of the requested documents, the

27  definition of "former employees of Marc Toberoff, Toberoff & Associates, Pacific

28  Pictures Corporation, IP Worldwide, LLC and IPW, LLC," and in an effort to

- 47 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

1    reasonably narrow this Request and to see what, if any, documents should be

2    produced.

3    **Request No. 42**

4        All DOCUMENTS RELATING TO YOUR efforts to locate, identify, and/or

5    communicate with former employees of Marc Toberoff, Toberoff & Associates,

6    Pacific Pictures Corporation, IP Worldwide, LLC and IPW, LLC.

7    **Response to Request No. 42**

8        DC objects to this Request as seeking the production of documents which are

9    not reasonably calculated to lead to the discovery of relevant and admissible

10    evidence.  DC further objects to this Request on the grounds that it is indefinite as

11    to time and not reasonably limited in scope—*e.g.*, it calls for communications with

12    Marc Toberoff and Toberoff & Associates attorneys in other litigation entirely

13    unrelated to this case.  DC further objects to this Request on the grounds that it calls

14    for a search of documents that is unduly expensive, overbroad, unduly burdensome,

15    and oppressive.  DC further objects to the extent this Request seeks information

16    protected by the attorney-client privilege, the attorney work product doctrine, or

17    any other applicable privilege or immunity.  DC further objects to this Request to

18    the extent is suggests DC has knowledge of all "former employees of Marc

19    Toberoff, Toberoff & Associates, Pacific Pictures Corporation, IP Worldwide, LLC

20    and IPW, LLC."

21        DC objects to the definition of "YOUR" and will respond to that term as

22    limited to relevant custodians at DC and Warner Bros. Entertainment Inc.  DC

23    objects to the extent the Request seeks production of "all DOCUMENTS" on the

24    ground that such request is overly broad, unduly burdensome, oppressive, and not

25    reasonably calculated to lead to the discovery of admissible evidence.  As used in

26    these Responses, the phrase "all DOCUMENTS," or phrases of similar import,

27    should be understood to mean those documents DC and its counsel were able to

28    locate using reasonable diligence and reasonable judgment concerning the

- 48 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**160**

1    whereabouts of such documents.  DC does not object to or withhold any document

2    based on the definition of "RELATING," as this definition mirrors in large part

3    language that DC employed in its own discovery requests.  Defendants previously

4    objected to this same language in DC's requests as impermissibly overbroad.

5    Based on defendants' use of this same term and tacit acknowledgement that DC's

6    use of these terms is proper, DC will not object on this ground, and DC has

7    confirmed with defendants that they will do the same.

8         Subject to and without waiving all foregoing objections, DC agrees to meet-

9    and-confer with defendants regarding the relevance of the requested documents, the

10   definition of "former employees of Marc Toberoff, Toberoff & Associates, Pacific

11   Pictures Corporation, IP Worldwide, LLC and IPW, LLC," and in an effort to

12   reasonably narrow this Request and to see what, if any, documents should be

13   produced.

14   **Request No. 43**

15        All COMMUNICATIONS between YOU and former employees of Marc

16   Toberoff, Toberoff & Associates, Pacific Pictures Corporation, IP Worldwide, LLC

17   and IPW, LLC.

18   **Response to Request No. 43**

19        DC objects to this Request as seeking the production of documents which are

20   not reasonably calculated to lead to the discovery of relevant and admissible

21   evidence.  DC further objects to this Request on the grounds that it is indefinite as

22   to time and not reasonably limited in scope—*e.g.*, it calls for communications with

23   Marc Toberoff and Toberoff & Associates attorneys in other litigation entirely

24   unrelated to this case.  DC further objects to this Request on the grounds that it calls

25   for a search of documents that is unduly expensive, overbroad, unduly burdensome,

26   and oppressive.  DC further objects to this Request to the extent is suggests DC has

27   knowledge of all "former employees of Marc Toberoff, Toberoff & Associates,

28   Pacific Pictures Corporation, IP Worldwide, LLC and IPW, LLC."

- 49 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**161**

1    DC objects to the definition of "YOU" and will respond to that term as

2    limited to relevant custodians at DC and Warner Bros. Entertainment Inc.  DC

3    objects to the definition of "COMMUNICATION" as vague and overbroad and will

4    respond to this term as excluding any documents filed in connection with prior and

5    ongoing litigation.  DC objects to the extent the Request seeks production of "all

6    COMMUNICATIONS" on the grounds that such request is overly broad, unduly

7    burdensome, oppressive, and not reasonably calculated to lead to the discovery of

8    admissible evidence.  As used in these Responses, the phrase "all

9    COMMUNICATIONS," or phrases of similar import, should be understood to

10    mean those documents DC and its counsel were able to locate using reasonable

11    diligence and reasonable judgment concerning the whereabouts of such documents.

12    Such phraseology should not be construed as a representation that each and every

13    document in DC's possession has been examined in connection with these

14    Responses or any production pursuant thereto.

15        Subject to and without waiving all foregoing objections, DC agrees to meet-

16    and-confer with defendants regarding the relevance of the requested documents, the

17    definition of "former employees of Marc Toberoff, Toberoff & Associates, Pacific

18    Pictures Corporation, IP Worldwide, LLC and IPW, LLC," and in an effort to

19    reasonably narrow this Request and to see what, if any, documents should be

20    produced.

21    **Request No. 44**

22        All COMMUNICATIONS between WARNER and GWF RELATING TO

23    the STOLEN DOCUMENTS.

24    **Response to Request No. 44**

25        DC objects to this Request as seeking the production of documents which are

26    not reasonably calculated to lead to the discovery of relevant and admissible

27    evidence.  DC further objects to this Request on the grounds that it is indefinite as

28    to time and not reasonably limited in scope.  DC further objects to this Request on

- 50 -

1   the grounds that it calls for a search of documents that is unduly expensive,

2   overbroad, unduly burdensome, and oppressive.

3        DC objects to the definition of "WARNER" and responds to that term as

4   limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the

5   definition of "COMMUNICATION" as vague and overbroad and will respond to

6   this term as excluding any documents filed in connection with prior and ongoing

7   litigation. DC objects to the extent the Request seeks production of "all

8   COMMUNICATIONS" on the grounds that such request is overly broad, unduly

9   burdensome, oppressive, and not reasonably calculated to lead to the discovery of

10  admissible evidence. As used in these Responses, the phrase "all

11  COMMUNICATIONS," or phrases of similar import, should be understood to

12  mean those documents DC and its counsel were able to locate using reasonable

13  diligence and reasonable judgment concerning the whereabouts of such documents.

14  Such phraseology should not be construed as a representation that each and every

15  document in DC's possession has been examined in connection with these

16  Responses or any production pursuant thereto. DC does not object to or withhold

17  any document based on the definition of "RELATING," as this definition mirrors in

18  large part language that DC employed in its own discovery requests. Defendants

19  previously objected to this same language in DC's requests as impermissibly

20  overbroad. Based on defendants' use of this same term and tacit acknowledgement

21  that DC's use of these terms is proper, DC will not object on this ground, and DC

22  has confirmed with defendants that they will do the same.

23       Subject to and without waiving all foregoing objections, DC agrees to meet-

24  and-confer with defendants regarding the relevance of the requested documents and

25  in an effort to reasonably narrow this Request and to see what, if any, documents

26  should be produced.

27

28

- 51 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**163**

1    **Request No. 45**

2    　　All COMMUNICATIONS between WARNER and GWF RELATING TO

3    the TOBEROFF TIMELINE.

4    **Response to Request No. 45**

5    　　DC objects to this Request as seeking the production of documents which are

6    not reasonably calculated to lead to the discovery of relevant and admissible

7    evidence. DC further objects to this Request on the grounds that it is indefinite as

8    to time and not reasonably limited in scope. DC further objects to this Request on

9    the grounds that it calls for a search of documents that is unduly expensive,

10   overbroad, unduly burdensome, and oppressive.

11   　　DC objects to the definition of "WARNER" and responds to that term as

12   limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the

13   definition of "COMMUNICATION" as vague and overbroad and will respond to

14   this term as excluding any documents filed in connection with prior and ongoing

15   litigation. DC objects to the extent the Request seeks production of "all

16   COMMUNICATIONS" on the grounds that such request is overly broad, unduly

17   burdensome, oppressive, and not reasonably calculated to lead to the discovery of

18   admissible evidence. As used in these Responses, the phrase "all

19   COMMUNICATIONS," or phrases of similar import, should be understood to

20   mean those documents DC and its counsel were able to locate using reasonable

21   diligence and reasonable judgment concerning the whereabouts of such documents.

22   Such phraseology should not be construed as a representation that each and every

23   document in DC's possession has been examined in connection with these

24   Responses or any production pursuant thereto. DC does not object to or withhold

25   any document based on the definition of "RELATING," as this definition mirrors in

26   large part language that DC employed in its own discovery requests. Defendants

27   previously objected to this same language in DC's requests as impermissibly

28   overbroad. Based on defendants' use of this same term and tacit acknowledgement

- 52 -

1    that DC's use of these terms is proper, DC will not object on this ground, and DC

2    has confirmed with defendants that they will do the same.

3         Subject to and without waiving all foregoing objections, DC agrees to meet-

4    and-confer with defendants regarding the relevance of the requested documents and

5    in an effort to reasonably narrow this Request and to see what, if any, documents

6    should be produced.

7    **Request No. 46**

8         All COMMUNICATIONS between WARNER and GWF RELATING TO

9    DAVID MICHAELS.

10   **Response to Request No. 46**

11        DC objects to this Request as seeking the production of documents which are

12   not reasonably calculated to lead to the discovery of relevant and admissible

13   evidence.  DC further objects to this Request on the grounds that it is indefinite as

14   to time and not reasonably limited in scope.  DC further objects to this Request on

15   the grounds that it calls for a search of documents that is unduly expensive,

16   overbroad, unduly burdensome, and oppressive.

17        DC objects to the definition of "WARNER" and responds to that term as

18   limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

19   definition of "COMMUNICATION" as vague and overbroad and will respond to

20   this term as excluding any documents filed in connection with prior and ongoing

21   litigation.  DC objects to the extent the Request seeks production of "all

22   COMMUNICATIONS" on the grounds that such request is overly broad, unduly

23   burdensome, oppressive, and not reasonably calculated to lead to the discovery of

24   admissible evidence.  As used in these Responses, the phrase "all

25   COMMUNICATIONS," or phrases of similar import, should be understood to

26   mean those documents DC and its counsel were able to locate using reasonable

27   diligence and reasonable judgment concerning the whereabouts of such documents.

28   Such phraseology should not be construed as a representation that each and every

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**165**

1    document in DC's possession has been examined in connection with these

2    Responses or any production pursuant thereto.  DC does not object to or withhold

3    any document based on the definition of "RELATING," as this definition mirrors in

4    large part language that DC employed in its own discovery requests.  Defendants

5    previously objected to this same language in DC's requests as impermissibly

6    overbroad.  Based on defendants' use of this same term and tacit acknowledgement

7    that DC's use of these terms is proper, DC will not object on this ground, and DC

8    has confirmed with defendants that they will do the same.

9        Subject to and without waiving all foregoing objections, DC agrees to meet-

10   and-confer with defendants regarding the relevance of the requested documents and

11   in an effort to reasonably narrow this Request and to see what, if any, documents

12   should be produced.

13   **Request No. 47**

14       All DOCUMENTS RELATING TO WARNER'S protocols or procedures in

15   effect between 2005 and 2006 for logging OR recording its receipt of packages,

16   envelopes, and other documents received by mail or other forms of delivery at

17   WARNER'S studio at 4000 Warner Boulevard, Burbank, California 91522.

18   **Response to Request No. 47**

19       DC objects to this Request as seeking the production of documents which are

20   not reasonably calculated to lead to the discovery of relevant and admissible

21   evidence.  DC further objects to this Request on the grounds that it is not

22   reasonably limited in scope.  DC further objects to this Request on the grounds that

23   it calls for a search of documents that is unduly expensive, overbroad, unduly

24   burdensome, and oppressive.  DC further objects to the extent this Request seeks

25   information protected by the attorney-client privilege, the attorney work product

26   doctrine, or any other applicable privilege or immunity.

27       DC objects to the phrase "protocols or procedures" as vague and ambiguous.

28   DC objects to the definition of "WARNER" and responds to that term as limited to

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

1    relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the extent the

2    Request seeks production of "all DOCUMENTS" on the ground that such request is

3    overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

4    to the discovery of admissible evidence.  As used in these Responses, the phrase

5    "all DOCUMENTS," or phrases of similar import, should be understood to mean

6    those documents DC and its counsel were able to locate using reasonable diligence

7    and reasonable judgment concerning the whereabouts of such documents.  DC does

8    not object to or withhold any document based on the definition of "RELATING,"

9    as this definition mirrors in large part language that DC employed in its own

10   discovery requests.  Defendants previously objected to this same language in DC's

11   requests as impermissibly overbroad.  Based on defendants' use of this same term

12   and tacit acknowledgement that DC's use of these terms is proper, DC will not

13   object on this ground, and DC has confirmed with defendants that they will do the

14   same.

15        Subject to and without waiving all foregoing objections, DC agrees to meet-

16   and-confer with defendants regarding the relevance of the requested documents and

17   in an effort to reasonably narrow this Request and to see what, if any, documents

18   should be produced.

19   **Request No. 48**

20        All DOCUMENTS RELATING TO WARNER'S protocols or procedures in

21   effect in between 2005 and 2006 as to the retention of packaging, envelopes or

22   equivalent enclosures for documents received by mail or other forms of delivery at

23   WARNER'S studio, at 4000 Warner Boulevard, Burbank, California 91522.

24   **Response to Request No. 48**

25        DC objects to this Request as seeking the production of documents which are

26   not reasonably calculated to lead to the discovery of relevant and admissible

27   evidence.  DC further objects to this Request on the grounds that it is not

28   reasonably limited in scope.  DC further objects to this Request on the grounds that

- 55 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**167**

1    it calls for a search of documents that is unduly expensive, overbroad, unduly

2    burdensome, and oppressive. DC further objects to the extent this Request seeks

3    information protected by the attorney-client privilege, the attorney work product

4    doctrine, or any other applicable privilege or immunity.

5          DC objects to the phrase "protocols or procedures" as vague and ambiguous.

6    DC objects to the definition of "WARNER" and responds to that term as limited to

7    relevant custodians at Warner Bros. Entertainment Inc. DC objects to the extent the

8    Request seeks production of "all DOCUMENTS" on the ground that such request is

9    overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

10   to the discovery of admissible evidence. As used in these Responses, the phrase

11   "all DOCUMENTS," or phrases of similar import, should be understood to mean

12   those documents DC and its counsel were able to locate using reasonable diligence

13   and reasonable judgment concerning the whereabouts of such documents. DC does

14   not object to or withhold any document based on the definition of "RELATING,"

15   as this definition mirrors in large part language that DC employed in its own

16   discovery requests. Defendants previously objected to this same language in DC's

17   requests as impermissibly overbroad. Based on defendants' use of this same term

18   and tacit acknowledgement that DC's use of these terms is proper, DC will not

19   object on this ground, and DC has confirmed with defendants that they will do the

20   same.

21         Subject to and without waiving all foregoing objections, DC agrees to meet-

22   and-confer with defendants regarding the relevance of the requested documents and

23   in an effort to reasonably narrow this Request and to see what, if any, documents

24   should be produced.

25   **Request No. 49**

26         All DOCUMENTS that REFER to WARNER'S efforts to locate the

27   packaging, envelope, or equivalent enclosure in which the TOBEROFF TIMELINE

28

- 56 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

**168**

1    was sent to WARNER'S studio, at 4000 Warner Boulevard, Burbank, California

2    91522.

3    **Response to Request No. 49**

4        DC objects to this Request as seeking the production of documents which are

5    not reasonably calculated to lead to the discovery of relevant and admissible

6    evidence. DC further objects to this Request on the grounds that it is indefinite as

7    to time and not reasonably limited in scope. DC further objects to this Request on

8    the grounds that it calls for a search of documents that is unduly expensive,

9    overbroad, unduly burdensome, and oppressive. DC further objects to this Request

10    on the ground that it seeks information protected by the attorney-client privilege,

11    the attorney work product doctrine, or any other applicable privilege or immunity.

12        DC objects to the definition of "WARNER" and responds to that term as

13    limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the

14    extent the Request seeks production of "all DOCUMENTS" on the ground that

15    such request is overly broad, unduly burdensome, oppressive, and not reasonably

16    calculated to lead to the discovery of admissible evidence. As used in these

17    Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

18    understood to mean those documents DC and its counsel were able to locate using

19    reasonable diligence and reasonable judgment concerning the whereabouts of such

20    documents. DC does not object to or withhold any document based on the

21    definition of "REFER," as this definition mirrors in large part language that DC

22    employed in its own discovery requests. Defendants previously objected to this

23    same language in DC's requests as impermissibly overbroad. Based on defendants'

24    use of this same term and tacit acknowledgement that DC's use of these terms is

25    proper, DC will not object on this ground, and DC has confirmed with defendants

26    that they will do the same.

27        Subject to and without waiving all foregoing objections, DC agrees to meet-

28    and-confer with defendants regarding the relevance of the requested documents and

- 57 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**169**

1    in an effort to reasonably narrow this Request and to see what, if any, documents

2    should be produced.

3    **Request No. 50**

4         All DOCUMENTS that REFER to WARNER'S efforts to locate the

5    packaging, envelope, or equivalent enclosure in which the STOLEN

6    DOCUMENTS were sent to WARNER'S studio, at 4000 Warner Boulevard,

7    Burbank, California 91522.

8    **Response to Request No. 50**

9         DC objects to this Request as seeking the production of documents which are

10   not reasonably calculated to lead to the discovery of relevant and admissible

11   evidence.  DC further objects to this Request on the grounds that it is indefinite as

12   to time and not reasonably limited in scope.  DC further objects to this Request on

13   the grounds that it calls for a search of documents that is unduly expensive,

14   overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

15   on the ground that it seeks information protected by the attorney-client privilege,

16   the attorney work product doctrine, or any other applicable privilege or immunity.

17        DC objects to the definition of "WARNER" and responds to that term as

18   limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

19   extent the Request seeks production of "all DOCUMENTS" on the ground that

20   such request is overly broad, unduly burdensome, oppressive, and not reasonably

21   calculated to lead to the discovery of admissible evidence.  As used in these

22   Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

23   understood to mean those documents DC and its counsel were able to locate using

24   reasonable diligence and reasonable judgment concerning the whereabouts of such

25   documents.  DC does not object to or withhold any document based on the

26   definition of "REFER," as this definition mirrors in large part language that DC

27   employed in its own discovery requests.  Defendants previously objected to this

28   same language in DC's requests as impermissibly overbroad.  Based on defendants'

- 58 -

1  use of this same term and tacit acknowledgement that DC's use of these terms is

2  proper, DC will not object on this ground, and DC has confirmed with defendants

3  that they will do the same.

4      Subject to and without waiving all foregoing objections, DC agrees to meet-

5  and-confer with defendants regarding the relevance of the requested documents and

6  in an effort to reasonably narrow this Request and to see what, if any, documents

7  should be produced.

8  **Request No. 51**

9      All COMMUNICATIONS RELATING TO WARNER'S efforts to locate the

10  packaging, envelope, or equivalent enclosure in which the TOBEROFF TIMELINE

11  was sent to WARNER'S studio, at 4000 Warner Boulevard, Burbank, California

12  91522.

13  **Response to Request No. 51**

14      DC objects to this Request as seeking the production of documents which are

15  not reasonably calculated to lead to the discovery of relevant and admissible

16  evidence.  DC further objects to this Request on the grounds that it is indefinite as

17  to time and not reasonably limited in scope.  DC further objects to this Request on

18  the grounds that it calls for a search of documents that is unduly expensive,

19  overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

20  on the ground that it seeks information protected by the attorney-client privilege,

21  the attorney work product doctrine, or any other applicable privilege or immunity.

22      DC objects to the definition of "WARNER" and responds to that term as

23  limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

24  definition of "COMMUNICATION" as vague and overbroad and will respond to

25  this term as excluding any documents filed in connection with prior and ongoing

26  litigation.  DC objects to the extent the Request seeks production of "all

27  COMMUNICATIONS" on the grounds that such request is overly broad, unduly

28  burdensome, oppressive, and not reasonably calculated to lead to the discovery of

- 59 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

**171**

1    admissible evidence.  As used in these Responses, the phrase "all

2    COMMUNICATIONS," or phrases of similar import, should be understood to

3    mean those documents DC and its counsel were able to locate using reasonable

4    diligence and reasonable judgment concerning the whereabouts of such documents.

5    Such phraseology should not be construed as a representation that each and every

6    document in DC's possession has been examined in connection with these

7    Responses or any production pursuant thereto.  DC does not object to or withhold

8    any document based on the definition of "RELATING," as this definition mirrors in

9    large part language that DC employed in its own discovery requests.  Defendants

10   previously objected to this same language in DC's requests as impermissibly

11   overbroad.  Based on defendants' use of this same term and tacit acknowledgement

12   that DC's use of these terms is proper, DC will not object on this ground, and DC

13   has confirmed with defendants that they will do the same.

14        Subject to and without waiving all foregoing objections, DC agrees to meet-

15   and-confer with defendants regarding the relevance of the requested documents and

16   in an effort to reasonably narrow this Request and to see what, if any, documents

17   should be produced.

18   **Request No. 52**

19        All COMMUNICATIONS that RELATING TO WARNER'S efforts to

20   locate the packaging, envelope, or equivalent enclosure in which the STOLEN

21   DOCUMENTS were sent to WARNER'S studio, at 4000 Warner Boulevard,

22   Burbank, California 91522.

23   **Response to Request No. 52**

24        DC objects to this Request as seeking the production of documents which are

25   not reasonably calculated to lead to the discovery of relevant and admissible

26   evidence.  DC further objects to this Request on the grounds that it is indefinite as

27   to time and not reasonably limited in scope.  DC further objects to this Request on

28   the grounds that it calls for a search of documents that is unduly expensive,

- 60 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

**172**

1  overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

2  on the ground that it seeks information protected by the attorney-client privilege,

3  the attorney work product doctrine, or any other applicable privilege or immunity.

4  DC objects to the definition of "WARNER" and responds to that term as

5  limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

6  definition of "COMMUNICATION" as vague and overbroad and will respond to

7  this term as excluding any documents filed in connection with prior and ongoing

8  litigation.  DC objects to the extent the Request seeks production of "all

9  COMMUNICATIONS" on the grounds that such request is overly broad, unduly

10  burdensome, oppressive, and not reasonably calculated to lead to the discovery of

11  admissible evidence.  As used in these Responses, the phrase "all

12  COMMUNICATIONS," or phrases of similar import, should be understood to

13  mean those documents DC and its counsel were able to locate using reasonable

14  diligence and reasonable judgment concerning the whereabouts of such documents.

15  Such phraseology should not be construed as a representation that each and every

16  document in DC's possession has been examined in connection with these

17  Responses or any production pursuant thereto.  DC does not object to or withhold

18  any document based on the definition of "RELATING," as this definition mirrors in

19  large part language that DC employed in its own discovery requests.  Defendants

20  previously objected to this same language in DC's requests as impermissibly

21  overbroad.  Based on defendants' use of this same term and tacit acknowledgement

22  that DC's use of these terms is proper, DC will not object on this ground, and DC

23  has confirmed with defendants that they will do the same.

24  Subject to and without waiving all foregoing objections, DC agrees to meet-

25  and-confer with defendants regarding the relevance of the requested documents and

26  in an effort to reasonably narrow this Request and to see what, if any, documents

27  should be produced.

28

- 61 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

**173**

**Request No. 53**

All DOCUMENTS logging, listing, or recording the packages, envelopes, and other documents received between November 1, 2005 and December 25, 2005, by mail or other form of delivery, at WARNER'S studio, at 4000 Warner Boulevard, Burbank, California 91522.

**Response to Request No. 53**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive.

DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents.

**Request No. 54**

DOCUMENTS sufficient to show PERSONS employed between 2005 and 2006 in the mailroom, mail center, or other similar mail department, office or stations, responsible for receiving, sorting, logging, and/or distributing packages,

- 62 -

1    envelopes and other documents received by mail and other forms of delivery at

2    WARNER'S studio, at 4000 Warner Boulevard, Burbank, California 91522.

3    **Response to Request No. 54**

4        DC objects to this Request as seeking the production of documents which are

5    not reasonably calculated to lead to the discovery of relevant and admissible

6    evidence.  DC further objects to this Request on the grounds that it is indefinite as

7    to time and not reasonably limited in scope.  DC further objects to this Request on

8    the grounds that it calls for a search of documents that is unduly expensive,

9    overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

10   that it seeks information protected by the attorney-client privilege, the attorney

11   work product doctrine, or any other applicable privilege or immunity.  DC further

12   objects to this Request to the extent that it seeks information protected by the right

13   to privacy under the California and United States Constitutions.

14       DC objects to the phrase "sufficient to show" as vague and ambiguous.  DC

15   objects to the definition of "DOCUMENTS" on the ground that it is overly broad,

16   unduly burdensome, oppressive, and not reasonably calculated to lead to the

17   discovery of admissible evidence.  As used in these Responses, the term

18   "DOCUMENTS" should be understood to mean those documents DC and its

19   counsel were able to locate using reasonable diligence and reasonable judgment

20   concerning the whereabouts of such documents.

21       Subject to and without waiving all foregoing objections, DC agrees to meet-

22   and-confer with defendants regarding the relevance of the requested documents and

23   in an effort to reasonably narrow this Request and to see what, if any, documents

24   should be produced.

25   **Request No. 55**

26       DOCUMENTS sufficient to show the PERSONS employed between 2005

27   and 2006 as support staff for and/or under Alan Horn, Patti Connolly, Jeff Rabinov

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**175**

1    and John Schulman, including, but not limited to, secretaries, assistants, personal

2    assistants, administrative assistants, executive assistants, and/or gofers.

3    **Response to Request No. 55**

4        DC objects to this Request as seeking the production of documents which are

5    not reasonably calculated to lead to the discovery of relevant and admissible

6    evidence.  DC further objects to this Request on the grounds that it is not

7    reasonably limited in scope.  DC further objects to this Request on the grounds that

8    it calls for a search of documents that is unduly expensive, overbroad, unduly

9    burdensome, and oppressive.  DC further objects to the extent that it seeks

10   information protected by the attorney-client privilege, the attorney work product

11   doctrine, or any other applicable privilege or immunity.  DC further objects to this

12   Request to the extent that it seeks information protected by the right to privacy

13   under the California and United States Constitutions.

14       DC objects to the phrase "sufficient to show" as vague and ambiguous.  DC

15   objects to the definition of "DOCUMENTS" on the ground that it is overly broad,

16   unduly burdensome, oppressive, and not reasonably calculated to lead to the

17   discovery of admissible evidence.  As used in these Responses, the term

18   "DOCUMENTS" should be understood to mean those documents DC and its

19   counsel were able to locate using reasonable diligence and reasonable judgment

20   concerning the whereabouts of such documents.

21       Subject to and without waiving all foregoing objections, DC agrees to meet-

22   and-confer with defendants regarding the relevance of the requested documents and

23   in an effort to reasonably narrow this Request and to see what, if any, documents

24   should be produced.

25   **Request No. 56**

26       All DOCUMENTS that log or list WARNER'S receipt of the STOLEN

27   DOCUMENTS.

28

- 64 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**176**

**Response to Request No. 56**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 57**

All DOCUMENTS that log or list the delivery of the STOLEN DOCUMENTS to the offices of Alan Horn, Patti Connolly, Jeff Rabinov or John Schulman.

- 65 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**177**

1  **Response to Request No. 57**

2      DC objects to this Request as seeking the production of documents which are

3  not reasonably calculated to lead to the discovery of relevant and admissible

4  evidence.  DC further objects to this Request on the grounds that it is indefinite as

5  to time and not reasonably limited in scope.  DC further objects to this Request on

6  the grounds that it calls for a search of documents that is unduly expensive,

7  overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

8  that it seeks information protected by the attorney-client privilege, the attorney

9  work product doctrine, or any other applicable privilege or immunity.

10      DC objects to the definition of "WARNER" and responds to that term as

11  limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

12  extent the Request seeks production of "all DOCUMENTS" on the ground that

13  such request is overly broad, unduly burdensome, oppressive, and not reasonably

14  calculated to lead to the discovery of admissible evidence.  As used in these

15  Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

16  understood to mean those documents DC and its counsel were able to locate using

17  reasonable diligence and reasonable judgment concerning the whereabouts of such

18  documents.

19      Subject to and without waiving all foregoing objections, DC agrees to meet-

20  and-confer with defendants regarding the relevance of the requested documents and

21  in an effort to reasonably narrow this Request and to see what, if any, documents

22  should be produced.

23  **Request No. 58**

24      All DOCUMENTS that log or list the receipt of the STOLEN DOCUMENTS

25  by the office of Alan Horn, Patti Connolly, Jeff Rabinov or John Schulman.

26  **Response to Request No. 58**

27      DC objects to this Request as seeking the production of documents which are

28  not reasonably calculated to lead to the discovery of relevant and admissible

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

1   evidence.  DC further objects to this Request on the grounds that it is indefinite as

2   to time and not reasonably limited in scope.  DC further objects to this Request on

3   the grounds that it calls for a search of documents that is unduly expensive,

4   overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

5   that it seeks information protected by the attorney-client privilege, the attorney

6   work product doctrine, or any other applicable privilege or immunity.

7        DC objects to the definition of "WARNER" and responds to that term as

8   limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

9   extent the Request seeks production of "all DOCUMENTS" on the ground that

10   such request is overly broad, unduly burdensome, oppressive, and not reasonably

11   calculated to lead to the discovery of admissible evidence.  As used in these

12   Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

13   understood to mean those documents DC and its counsel were able to locate using

14   reasonable diligence and reasonable judgment concerning the whereabouts of such

15   documents.

16        Subject to and without waiving all foregoing objections, DC agrees to meet-

17   and-confer with defendants regarding the relevance of the requested documents and

18   in an effort to reasonably narrow this Request and to see what, if any, documents

19   should be produced.

20   **Request No. 59**

21        All DOCUMENTS that log or list the delivery of the STOLEN

22   DOCUMENTS from the office of Alan Horn, Patti Connolly or Jeff Rabinov to the

23   office of John Schulman.

24   **Response to Request No. 59**

25        DC objects to this Request as seeking the production of documents which are

26   not reasonably calculated to lead to the discovery of relevant and admissible

27   evidence.  DC further objects to this Request on the grounds that it is indefinite as

28   to time and not reasonably limited in scope.  DC further objects to this Request on

- 67 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**179**

1   the grounds that it calls for a search of documents that is unduly expensive,

2   overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

3   that it seeks information protected by the attorney-client privilege, the attorney

4   work product doctrine, or any other applicable privilege or immunity.

5       DC objects to the definition of "WARNER" and responds to that term as

6   limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

7   extent the Request seeks production of "all DOCUMENTS" on the ground that

8   such request is overly broad, unduly burdensome, oppressive, and not reasonably

9   calculated to lead to the discovery of admissible evidence.  As used in these

10  Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

11  understood to mean those documents DC and its counsel were able to locate using

12  reasonable diligence and reasonable judgment concerning the whereabouts of such

13  documents.

14      Subject to and without waiving all foregoing objections, DC agrees to meet-

15  and-confer with defendants regarding the relevance of the requested documents and

16  in an effort to reasonably narrow this Request and to see what, if any, documents

17  should be produced.

18  **Request No. 60**

19      All COMMUNICATIONS by or on behalf of Alan Horn that REFER to the

20  TIMELINE or the STOLEN DOCUMENTS.

21  **Response to Request No. 60**

22      DC objects to this Request as seeking the production of documents which are

23  not reasonably calculated to lead to the discovery of relevant and admissible

24  evidence.  DC further objects to this Request on the grounds that it is indefinite as

25  to time and not reasonably limited in scope.  DC further objects to this Request on

26  the grounds that it calls for a search of documents that is unduly expensive,

27  overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

28

- 68 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**180**

1  to the extent that it seeks information protected by the attorney-client privilege the

2  attorney work product doctrine, or any other applicable privilege or immunity.

3      DC objects to the definition of "COMMUNICATION" as vague and

4  overbroad and will respond to this term as excluding any documents filed in

5  connection with prior and ongoing litigation.  DC objects to the extent the Request

6  seeks production of "all COMMUNICATIONS" on the grounds that such request is

7  overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

8  to the discovery of admissible evidence.  As used in these Responses, the phrase

9  "all COMMUNICATIONS," or phrases of similar import, should be understood to

10  mean those documents DC and its counsel were able to locate using reasonable

11  diligence and reasonable judgment concerning the whereabouts of such documents.

12  Such phraseology should not be construed as a representation that each and every

13  document in DC's possession has been examined in connection with these

14  Responses or any production pursuant thereto.  DC does not object to or withhold

15  any document based on the definition of "REFER," as this definition mirrors in

16  large part language that DC employed in its own discovery requests.  Defendants

17  previously objected to this same language in DC's requests as impermissibly

18  overbroad.  Based on defendants' use of this same term and tacit acknowledgement

19  that DC's use of these terms is proper, DC will not object on this ground, and DC

20  has confirmed with defendants that they will do the same.

21      Subject to and without waiving all foregoing objections, DC agrees to meet-

22  and-confer with defendants regarding the relevance of the requested documents and

23  in an effort to reasonably narrow this Request and to see what, if any, documents

24  should be produced.

25  **Request No. 61**

26      All COMMUNICATIONS by or on behalf of Patti Connolly that REFER to

27  the TIMELINE of the STOLEN DOCUMENTS.

28

- 69 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**181**

**Response to Request No. 61**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to this Request to the extent that it seeks information protected by the attorney-client privilege the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the definition of "COMMUNICATION" as vague and overbroad and will respond to this term as excluding any documents filed in connection with prior and ongoing litigation. DC objects to the extent the Request seeks production of "all COMMUNICATIONS" on the grounds that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. Such phraseology should not be construed as a representation that each and every document in DC's possession has been examined in connection with these Responses or any production pursuant thereto. DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

- 70 -

1    Subject to and without waiving all foregoing objections, DC agrees to meet-

2    and-confer with defendants regarding the relevance of the requested documents and

3    in an effort to reasonably narrow this Request and to see what, if any, documents

4    should be produced.

5    **Request No. 62**

6    All COMMUNICATIONS by or on behalf of Jeff Rabinov that REFER to

7    the TIMELINE or the STOLEN DOCUMENTS.

8    **Response to Request No. 62**

9    DC objects to this Request as seeking the production of documents which are

10    not reasonably calculated to lead to the discovery of relevant and admissible

11    evidence. DC further objects to this Request on the grounds that it is indefinite as

12    to time and not reasonably limited in scope. DC further objects to this Request on

13    the grounds that it calls for a search of documents that is unduly expensive,

14    overbroad, unduly burdensome, and oppressive. DC further objects to this Request

15    to the extent that it seeks information protected by the attorney-client privilege the

16    attorney work product doctrine, or any other applicable privilege or immunity.

17    DC objects to the definition of "COMMUNICATION" as vague and

18    overbroad and will respond to this term as excluding any documents filed in

19    connection with prior and ongoing litigation. DC objects to the extent the Request

20    seeks production of "all COMMUNICATIONS" on the grounds that such request is

21    overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

22    to the discovery of admissible evidence. As used in these Responses, the phrase

23    "all COMMUNICATIONS," or phrases of similar import, should be understood to

24    mean those documents DC and its counsel were able to locate using reasonable

25    diligence and reasonable judgment concerning the whereabouts of such documents.

26    Such phraseology should not be construed as a representation that each and every

27    document in DC's possession has been examined in connection with these

28    Responses or any production pursuant thereto. DC does not object to or withhold

- 71 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**183**

1    any document based on the definition of "REFER," as this definition mirrors in

2    large part language that DC employed in its own discovery requests.  Defendants

3    previously objected to this same language in DC's requests as impermissibly

4    overbroad.  Based on defendants' use of this same term and tacit acknowledgement

5    that DC's use of these terms is proper, DC will not object on this ground, and DC

6    has confirmed with defendants that they will do the same.

7         Subject to and without waiving all foregoing objections, DC agrees to meet-

8    and-confer with defendants regarding the relevance of the requested documents and

9    in an effort to reasonably narrow this Request and to see what, if any, documents

10   should be produced.

11   **Request No. 63**

12        All DOCUMENTS that state WARNER'S protocols or procedures in effect

13   between 2005 and 2006 for logging or tracking visitors to WARNER'S studio at

14   4000 Warner Boulevard, Burbank, California 91522.

15   **Response to Request No. 63**

16        DC objects to this Request as seeking the production of documents which are

17   not reasonably calculated to lead to the discovery of relevant and admissible

18   evidence.  DC further objects to this Request on the grounds that it is not

19   reasonably limited in scope.  DC further objects to this Request on the grounds that

20   it calls for a search of documents that is unduly expensive, overbroad, unduly

21   burdensome, and oppressive.  DC further objects to the extent this Request seeks

22   information protected by the attorney-client privilege, the attorney work product

23   doctrine, or any other applicable privilege or immunity.

24        DC objects to the phrase "protocols or procedures" as vague and ambiguous.

25   DC objects to the definition of "WARNER" and responds to that term as limited to

26   relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the extent the

27   Request seeks production of "all DOCUMENTS" on the ground that such request is

28   overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

**184**

1   to the discovery of admissible evidence.  As used in these Responses, the phrase

2   "all DOCUMENTS," or phrases of similar import, should be understood to mean

3   those documents DC and its counsel were able to locate using reasonable diligence

4   and reasonable judgment concerning the whereabouts of such documents.

5          Subject to and without waiving all foregoing objections, DC agrees to meet-

6   and-confer with defendants regarding the relevance of the requested documents and

7   in an effort to reasonably narrow this Request and to see what, if any, documents

8   should be produced.

9   **Request No. 64**

10         DOCUMENTS sufficient to show all visits by DAVID MICHAELS to

11  WARNER'S studio at 4000 Warner Boulevard, Burbank, California 91522.

12  **Response to Request No. 64**

13         DC objects to this Request as seeking the production of documents which are

14  not reasonably calculated to lead to the discovery of relevant and admissible

15  evidence.  DC further objects to this Request on the grounds that it is indefinite as

16  to time and not reasonably limited in scope.  DC further objects to this Request on

17  the grounds that it calls for a search of documents that is unduly expensive,

18  overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

19  that it seeks information protected by the attorney-client privilege, the attorney

20  work product doctrine, or any other applicable privilege or immunity.

21         DC objects to the phrase "sufficient to show" as vague and ambiguous.  DC

22  objects to the definition of "DOCUMENTS" on the ground that it is overly broad,

23  unduly burdensome, oppressive, and not reasonably calculated to lead to the

24  discovery of admissible evidence.  As used in these Responses, the term

25  "DOCUMENTS" should be understood to mean those documents DC and its

26  counsel were able to locate using reasonable diligence and reasonable judgment

27  concerning the whereabouts of such documents.

28

- 73 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**185**

1      Subject to and without waiving all foregoing objections, DC agrees to meet-

2 and-confer with defendants regarding the relevance of the requested documents.

3 **Request No. 65**

4      DOCUMENTS sufficient to show all visitors to WARNER'S studio at 4000

5 Warner Boulevard, Burbank, California 91522, between June 25, 2006 and June 28,

6 2006.

7 **Response to Request No. 65**

8      DC objects to this Request as seeking the production of documents which are

9 not reasonably calculated to lead to the discovery of relevant and admissible

10 evidence. DC further objects to this Request to the extent that it seeks the

11 production of any item, or portion thereof, which is not reasonably calculated to

12 lead to the discovery of relevant and admissible evidence. DC further objects to

13 this Request on the grounds that it calls for a search of documents that is unduly

14 expensive, overbroad, unduly burdensome, and oppressive. DC further objects to

15 the extent that it seeks information protected by the attorney-client privilege, the

16 attorney work product doctrine, or any other applicable privilege or immunity.

17      DC objects to the phrase "sufficient to show" as vague and ambiguous. DC

18 objects to the definition of "DOCUMENTS" on the ground that it is overly broad,

19 unduly burdensome, oppressive, and not reasonably calculated to lead to the

20 discovery of admissible evidence. As used in these Responses, the term

21 "DOCUMENTS" should be understood to mean those documents DC and its

22 counsel were able to locate using reasonable diligence and reasonable judgment

23 concerning the whereabouts of such documents.

24      Subject to and without waiving all foregoing objections, DC agrees to meet-

25 and-confer with defendants regarding the relevance of the requested documents.

26 **Request No. 66**

27      DOCUMENTS sufficient to show when O'Melveny & Myers LLP was first

28 retained as YOUR counsel for this litigation.

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

**186**

1    **Response to Request No. 66**

2        DC objects to this Request as seeking the production of documents which are

3    not reasonably calculated to lead to the discovery of relevant and admissible

4    evidence.  DC further objects to this Request on the grounds that it calls for a search

5    of documents that is unduly expensive, overbroad, unduly burdensome, and

6    oppressive.  DC further objects to the extent that it seeks information protected by

7    the attorney-client privilege, the attorney work product doctrine, or any other

8    applicable privilege or immunity.

9        DC objects to the phrase "sufficient to show" as vague and ambiguous.  DC

10   objects to the definition of "YOUR" and will respond to that term as limited to

11   relevant custodians of DC and Warner Bros. Entertainment Inc.  DC objects to the

12   definition of "DOCUMENTS" on the ground that it is overly broad, unduly

13   burdensome, oppressive, and not reasonably calculated to lead to the discovery of

14   admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all

15   court filings in this case and other publicly available documents.  As used in these

16   Responses, the term "DOCUMENTS" should be understood to mean those

17   documents DC and its counsel were able to locate using reasonable diligence and

18   reasonable judgment concerning the whereabouts of such documents.

19       Subject to and without waiving all foregoing objections, DC agrees to meet-

20   and-confer with defendants regarding the relevance of the requested documents.

21   **Request No. 67**

22       DOCUMENTS sufficient to show when O'Melveny & Myers LLP was first

23   retained as YOUR counsel for the *Siegel* Litigations.

24   **Response to Request No. 67**

25       DC objects to this Request as seeking the production of documents which are

26   not reasonably calculated to lead to the discovery of relevant and admissible

27   evidence.  DC further objects to this Request on the grounds that it calls for a search

28   of documents that is unduly expensive, overbroad, unduly burdensome, and

- 75 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**187**

1  oppressive.  DC further objects to the extent that it seeks information protected by

2  the attorney-client privilege, the attorney work product doctrine, or any other

3  applicable privilege or immunity.

4      DC objects to the phrase "sufficient to show" as vague and ambiguous.  DC

5  objects to the definition of "YOUR" and will respond to that term as limited to

6  relevant custodians of DC and Warner Bros. Entertainment Inc.  DC objects to the

7  definition of "DOCUMENTS" on the ground that it is overly broad, unduly

8  burdensome, oppressive, and not reasonably calculated to lead to the discovery of

9  admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all

10  court filings in this case and other publicly available documents.  As used in these

11  Responses, the term "DOCUMENTS" should be understood to mean those

12  documents DC and its counsel were able to locate using reasonable diligence and

13  reasonable judgment concerning the whereabouts of such documents.

14      Subject to and without waiving all foregoing objections, DC agrees to meet-

15  and-confer with defendants regarding the relevance of the requested documents.

16  **Request No. 68**

17      All retainer agreements between YOU and O'Melveny & Myers LLP that

18  RELATE to this case or the *Siegel* Litigations.

19  **Response to Request No. 68**

20      DC objects to this Request as seeking the production of documents which are

21  not reasonably calculated to lead to the discovery of relevant and admissible

22  evidence.  DC further objects to the extent that it seeks information protected by the

23  attorney-client privilege, the attorney work product doctrine, or any other

24  applicable privilege or immunity.

25      DC objects to the definition of "YOU" and will respond to that term as

26  limited to relevant custodians of DC and Warner Bros. Entertainment Inc.  DC does

27  not object to or withhold any document based on the definition of "RELATE," as

28  this definition mirrors in large part language that DC employed in its own discovery

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

**188**

1    requests. Defendants previously objected to this same language in DC's requests as

2    impermissibly overbroad. Based on defendants' use of this same term and tacit

3    acknowledgement that DC's use of these terms is proper, DC will not object on this

4    ground, and DC has confirmed with defendants that they will do the same.

5         Subject to and without waiving all foregoing objections, DC agrees to meet-

6    and-confer with defendants regarding the relevance of the requested documents.

7    **Request No. 69**

8         All conflict waivers between YOU and O'Melveny & Myers LLP that

9    RELATE to this case or the *Siegel* Litigations.

10   **Response to Request No. 69**

11        DC objects to this Request as seeking the production of documents which are

12   not reasonably calculated to lead to the discovery of relevant and admissible

13   evidence.  DC further objects to the extent that it seeks information protected by the

14   attorney-client privilege, the attorney work product doctrine, or any other

15   applicable privilege or immunity.  DC further objects to this Request on the

16   grounds that it seeks documents that defendants have refused to produce in

17   response to discovery served by DC.

18        DC objects to the definition of "YOU" and will respond to that term as

19   limited to relevant custodians of DC and Warner Bros. Entertainment Inc.  DC does

20   not object to or withhold any document based on the definition of "RELATE," as

21   this definition mirrors in large part language that DC employed in its own discovery

22   requests. Defendants previously objected to this same language in DC's requests as

23   impermissibly overbroad. Based on defendants' use of this same term and tacit

24   acknowledgement that DC's use of these terms is proper, DC will not object on this

25   ground, and DC has confirmed with defendants that they will do the same.

26        Subject to and without waiving all foregoing objections, DC agrees to meet-

27   and-confer with defendants regarding the relevance of the requested documents.

28

- 77 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**189**

**Request No. 70**

All COMMUNICATIONS between YOU and Joanne Siegel.

**Response to Request No. 70**

DC objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope.  DC further objects to the extent this Request calls for irrelevant information and calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive.

DC objects to the definition of "YOU" as vague and overbroad and will respond to this term as limited to the relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague and overbroad and will respond to this term as excluding any documents filed in connection with prior or ongoing litigation. DC objects to the extent the Request seeks production of "all COMMUNICATIONS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC will conduct a reasonably diligent search of the documents in the possession, custody, or control of relevant custodians and will produce by designation or otherwise all non-privileged, responsive documents. Given that discovery is ongoing in this case, DC expressly reserves its right to supplement these Responses, if need be, as more information becomes available, and to use in discovery and at trial any information omitted from these Responses as a result of mistake, inadvertence, or oversight.

**Request No. 71**

All COMMUNICATIONS between YOU and Laura Siegel Larson.

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**190**

1    **Response to Request No. 71**

2        DC objects to this Request on the grounds that it is indefinite as to time and

3    not reasonably limited in scope.  DC further objects to the extent this Request calls

4    for irrelevant information and calls for a search of documents that is unduly

5    expensive, overbroad, unduly burdensome, and oppressive.

6        DC objects to the definition of "YOU" as vague and overbroad and will

7    respond to this term as limited to the relevant custodians at DC and Warner Bros.

8    Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague

9    and overbroad and will respond to this term as excluding any documents filed in

10   connection with prior or ongoing litigation. DC objects to the extent the Request

11   seeks production of "all COMMUNICATIONS" on the ground that such request is

12   overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

13   to the discovery of admissible evidence. As used in these Responses, the phrase "all

14   COMMUNICATIONS," or phrases of similar import, should be understood to

15   mean those documents DC and its counsel were able to locate using reasonable

16   diligence and reasonable judgment concerning the whereabouts of such documents.

17       Subject to and without waiving all foregoing objections, DC will conduct a

18   reasonably diligent search of the documents in the possession, custody, or control

19   of relevant custodians and will produce by designation or otherwise all non-

20   privileged, responsive documents. Given that discovery is ongoing in this case, DC

21   expressly reserves its right to supplement these Responses, if need be, as more

22   information becomes available, and to use in discovery and at trial any information

23   omitted from these Responses as a result of mistake, inadvertence, or oversight.

24   **Request No. 72**

25       All COMMUNICATIONS between YOU and Dennis Larson.

26   **Response to Request No. 72**

27       DC objects to this Request on the grounds that it is indefinite as to time and

28   not reasonably limited in scope.  DC further objects to the extent this Request calls

- 79 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**191**

1  for irrelevant information and calls for a search of documents that is unduly

2  expensive, overbroad, unduly burdensome, and oppressive.

3      DC objects to the definition of "YOU" as vague and overbroad and will

4  respond to this term as limited to the relevant custodians at DC and Warner Bros.

5  Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague

6  and overbroad and will respond to this term as excluding any documents filed in

7  connection with prior or ongoing litigation. DC objects to the extent the Request

8  seeks production of "all COMMUNICATIONS" on the ground that such request is

9  overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

10 to the discovery of admissible evidence. As used in these Responses, the phrase "all

11 COMMUNICATIONS," or phrases of similar import, should be understood to

12 mean those documents DC and its counsel were able to locate using reasonable

13 diligence and reasonable judgment concerning the whereabouts of such documents.

14     Subject to and without waiving all foregoing objections, DC will conduct a

15 reasonably diligent search of the documents in the possession, custody, or control

16 of relevant custodians and will produce by designation or otherwise all non-

17 privileged, responsive documents. Given that discovery is ongoing in this case, DC

18 expressly reserves its right to supplement these Responses, if need be, as more

19 information becomes available, and to use in discovery and at trial any information

20 omitted from these Responses as a result of mistake, inadvertence, or oversight.

21 **Request No. 73**

22     All COMMUNICATIONS between YOU and Michael Siegel.

23 **Response to Request No. 73**

24     DC objects to this Request on the grounds that it is indefinite as to time and

25 not reasonably limited in scope. DC further objects to the extent this Request calls

26 for irrelevant information and calls for a search of documents that is unduly

27 expensive, overbroad, unduly burdensome, and oppressive.

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**192**

1  DC objects to the definition of "YOU" as vague and overbroad and will

2  respond to this term as limited to the relevant custodians at DC and Warner Bros.

3  Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague

4  and overbroad and will respond to this term as excluding any documents filed in

5  connection with prior or ongoing litigation. DC objects to the extent the Request

6  seeks production of "all COMMUNICATIONS" on the ground that such request is

7  overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

8  to the discovery of admissible evidence. As used in these Responses, the phrase "all

9  COMMUNICATIONS," or phrases of similar import, should be understood to

10  mean those documents DC and its counsel were able to locate using reasonable

11  diligence and reasonable judgment concerning the whereabouts of such documents.

12  Subject to and without waiving all foregoing objections, DC will conduct a

13  reasonably diligent search of the documents in the possession, custody, or control

14  of relevant custodians and will produce by designation or otherwise all non-

15  privileged, responsive documents. Given that discovery is ongoing in this case, DC

16  expressly reserves its right to supplement these Responses, if need be, as more

17  information becomes available, and to use in discovery and at trial any information

18  omitted from these Responses as a result of mistake, inadvertence, or oversight.

19  **Request No. 74**

20  All COMMUNICATIONS between YOU and Joshua Ryland.

21  **Response to Request No. 74**

22  DC objects to this Request on the grounds that it is indefinite as to time and

23  not reasonably limited in scope. DC further objects to the extent this Request calls

24  for irrelevant information and calls for a search of documents that is unduly

25  expensive, overbroad, unduly burdensome, and oppressive.

26  DC objects to the definition of "YOU" as vague and overbroad and will

27  respond to this term as limited to the relevant custodians at DC and Warner Bros.

28  Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague

- 81 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**193**

1  and overbroad and will respond to this term as excluding any documents filed in

2  connection with prior or ongoing litigation. DC objects to the extent the Request

3  seeks production of "all COMMUNICATIONS" on the ground that such request is

4  overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

5  to the discovery of admissible evidence. As used in these Responses, the phrase "all

6  COMMUNICATIONS," or phrases of similar import, should be understood to

7  mean those documents DC and its counsel were able to locate using reasonable

8  diligence and reasonable judgment concerning the whereabouts of such documents.

9      Subject to and without waiving all foregoing objections, DC will conduct a

10  reasonably diligent search of the documents in the possession, custody, or control

11  of relevant custodians and will produce by designation or otherwise all non-

12  privileged, responsive documents. Given that discovery is ongoing in this case, DC

13  expressly reserves its right to supplement these Responses, if need be, as more

14  information becomes available, and to use in discovery and at trial any information

15  omitted from these Responses as a result of mistake, inadvertence, or oversight.

16  **Request No. 75**

17      All COMMUNICATIONS between YOU and Don Bulson.

18  **Response to Request No. 75**

19      DC objects to this Request on the grounds that it is indefinite as to time and

20  not reasonably limited in scope.  DC further objects to the extent this Request calls

21  for irrelevant information and calls for a search of documents that is unduly

22  expensive, overbroad, unduly burdensome, and oppressive.

23      DC objects to the definition of "YOU" as vague and overbroad and will

24  respond to this term as limited to the relevant custodians at DC and Warner Bros.

25  Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague

26  and overbroad and will respond to this term as excluding any documents filed in

27  connection with prior or ongoing litigation. DC objects to the extent the Request

28  seeks production of "all COMMUNICATIONS" on the ground that such request is

- 82 -

**EXHIBIT 15**
**194**

1  overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

2  to the discovery of admissible evidence. As used in these Responses, the phrase "all

3  COMMUNICATIONS," or phrases of similar import, should be understood to

4  mean those documents DC and its counsel were able to locate using reasonable

5  diligence and reasonable judgment concerning the whereabouts of such documents.

6      Subject to and without waiving all foregoing objections, DC will conduct a

7  reasonably diligent search of the documents in the possession, custody, or control

8  of relevant custodians and will produce by designation or otherwise all non-

9  privileged, responsive documents. Given that discovery is ongoing in this case, DC

10  expressly reserves its right to supplement these Responses, if need be, as more

11  information becomes available, and to use in discovery and at trial any information

12  omitted from these Responses as a result of mistake, inadvertence, or oversight.

13  **Request No. 76**

14      All COMMUNICATIONS between YOU and RENNER OTTO.

15  **Response to Request No. 76**

16      DC objects to this Request on the grounds that it is indefinite as to time and

17  not reasonably limited in scope.  DC further objects to the extent this Request calls

18  for irrelevant information and calls for a search of documents that is unduly

19  expensive, overbroad, unduly burdensome, and oppressive.

20      DC objects to the definition of "YOU" as vague and overbroad and will

21  respond to this term as limited to the relevant custodians at DC and Warner Bros.

22  Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague

23  and overbroad and will respond to this term as excluding any documents filed in

24  connection with prior or ongoing litigation. DC objects to the extent the Request

25  seeks production of "all COMMUNICATIONS" on the ground that such request is

26  overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

27  to the discovery of admissible evidence. As used in these Responses, the phrase "all

28  COMMUNICATIONS," or phrases of similar import, should be understood to

- 83 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**195**

1    mean those documents DC and its counsel were able to locate using reasonable

2    diligence and reasonable judgment concerning the whereabouts of such documents.

3         Subject to and without waiving all foregoing objections, DC will conduct a

4    reasonably diligent search of the documents in the possession, custody, or control

5    of relevant custodians and will produce by designation or otherwise all non-

6    privileged, responsive documents. Given that discovery is ongoing in this case, DC

7    expressly reserves its right to supplement these Responses, if need be, as more

8    information becomes available, and to use in discovery and at trial any information

9    omitted from these Responses as a result of mistake, inadvertence, or oversight.

10   **Request No. 77**

11        All COMMUNICATIONS between YOU and Susan Allison REGARDING

12   this case or the *Siegel* Litigations.

13   **Response to Request No. 77**

14        DC objects to this Request on the grounds that it is indefinite as to time and

15   not reasonably limited in scope.  DC further objects to the extent this Request calls

16   for irrelevant information and calls for a search of documents that is unduly

17   expensive, overbroad, unduly burdensome, and oppressive.

18        DC objects to the definition of "YOU" as vague and overbroad and will

19   respond to this term as limited to the relevant custodians at DC and Warner Bros.

20   Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague

21   and overbroad and will respond to this term as excluding any documents filed in

22   connection with prior or ongoing litigation. DC objects to the extent the Request

23   seeks production of "all COMMUNICATIONS" on the ground that such request is

24   overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

25   to the discovery of admissible evidence. As used in these Responses, the phrase "all

26   COMMUNICATIONS," or phrases of similar import, should be understood to

27   mean those documents DC and its counsel were able to locate using reasonable

28   diligence and reasonable judgment concerning the whereabouts of such documents.

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**196**

1    DC does not object to or withhold any document based on the definition of

2    "REGARDING," as this definition mirrors in large part language that DC employed

3    in its own discovery requests.  Defendants previously objected to this same

4    language in DC's requests as impermissibly overbroad.  Based on defendants' use

5    of this same term and tacit acknowledgement that DC's use of these terms is proper,

6    DC will not object on this ground, and DC has confirmed with defendants that they

7    will do the same.

8        Subject to and without waiving all foregoing objections, DC will conduct a

9    reasonably diligent search of the documents in the possession, custody, or control

10   of relevant custodians and will produce by designation or otherwise all non-

11   privileged, responsive documents. Given that discovery is ongoing in this case, DC

12   expressly reserves its right to supplement these Responses, if need be, as more

13   information becomes available, and to use in discovery and at trial any information

14   omitted from these Responses as a result of mistake, inadvertence, or oversight.

15   **Request No. 78**

16       All COMMUNICATIONS between YOU and Kevin Marks REGARDING

17   this case or the *Siegel* Litigations.

18   **Response to Request No. 78**

19       DC objects to this Request on the grounds that it is indefinite as to time and

20   not reasonably limited in scope.  DC further objects to the extent this Request calls

21   for irrelevant information and calls for a search of documents that is unduly

22   expensive, overbroad, unduly burdensome, and oppressive.

23       DC objects to the definition of "YOU" as vague and overbroad and will

24   respond to this term as limited to the relevant custodians at DC and Warner Bros.

25   Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague

26   and overbroad and will respond to this term as excluding any documents filed in

27   connection with prior or ongoing litigation. DC objects to the extent the Request

28   seeks production of "all COMMUNICATIONS" on the ground that such request is

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**197**

1    overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

2    to the discovery of admissible evidence. As used in these Responses, the phrase "all

3    COMMUNICATIONS," or phrases of similar import, should be understood to

4    mean those documents DC and its counsel were able to locate using reasonable

5    diligence and reasonable judgment concerning the whereabouts of such documents.

6    DC does not object to or withhold any document based on the definition of

7    "REGARDING," as this definition mirrors in large part language that DC employed

8    in its own discovery requests.  Defendants previously objected to this same

9    language in DC's requests as impermissibly overbroad.  Based on defendants' use

10   of this same term and tacit acknowledgement that DC's use of these terms is proper,

11   DC will not object on this ground, and DC has confirmed with defendants that they

12   will do the same.

13        Subject to and without waiving all foregoing objections, DC will conduct a

14   reasonably diligent search of the documents in the possession, custody, or control

15   of relevant custodians and will produce by designation or otherwise all non-

16   privileged, responsive documents. Given that discovery is ongoing in this case, DC

17   expressly reserves its right to supplement these Responses, if need be, as more

18   information becomes available, and to use in discovery and at trial any information

19   omitted from these Responses as a result of mistake, inadvertence, or oversight.

20   **Request No. 79**

21        All COMMUNICATIONS between YOU and Bruce Ramer REGARDING

22   this case or the *Siegel* Litigations.

23   **Response to Request No. 79**

24        DC objects to this Request on the grounds that it is indefinite as to time and

25   not reasonably limited in scope.  DC further objects to the extent this Request calls

26   for irrelevant information and calls for a search of documents that is unduly

27   expensive, overbroad, unduly burdensome, and oppressive.

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**198**

1    DC objects to the definition of "YOU" as vague and overbroad and will

2    respond to this term as limited to the relevant custodians at DC and Warner Bros.

3    Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague

4    and overbroad and will respond to this term as excluding any documents filed in

5    connection with prior or ongoing litigation. DC objects to the extent the Request

6    seeks production of "all COMMUNICATIONS" on the ground that such request is

7    overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

8    to the discovery of admissible evidence. As used in these Responses, the phrase "all

9    COMMUNICATIONS," or phrases of similar import, should be understood to

10   mean those documents DC and its counsel were able to locate using reasonable

11   diligence and reasonable judgment concerning the whereabouts of such documents.

12   DC does not object to or withhold any document based on the definition of

13   "REGARDING," as this definition mirrors in large part language that DC employed

14   in its own discovery requests.  Defendants previously objected to this same

15   language in DC's requests as impermissibly overbroad.  Based on defendants' use

16   of this same term and tacit acknowledgement that DC's use of these terms is proper,

17   DC will not object on this ground, and DC has confirmed with defendants that they

18   will do the same.

19        Subject to and without waiving all foregoing objections, DC will conduct a

20   reasonably diligent search of the documents in the possession, custody, or control

21   of relevant custodians and will produce by designation or otherwise all non-

22   privileged, responsive documents. Given that discovery is ongoing in this case, DC

23   expressly reserves its right to supplement these Responses, if need be, as more

24   information becomes available, and to use in discovery and at trial any information

25   omitted from these Responses as a result of mistake, inadvertence, or oversight.

26   **Request No. 80**

27        All COMMUNICATIONS between YOU and GANG TYRE REGARDING

28   this case or the *Siegel* Litigations.

- 87 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**199**

**Response to Request No. 80**

DC objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to the extent this Request calls for irrelevant information and calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive.

DC objects to the definition of "YOU" as vague and overbroad and will respond to this term as limited to the relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague and overbroad and will respond to this term as excluding any documents filed in connection with prior or ongoing litigation. DC objects to the extent the Request seeks production of "all COMMUNICATIONS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "REGARDING," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC will conduct a reasonably diligent search of the documents in the possession, custody, or control of relevant custodians and will produce by designation or otherwise all non-privileged, responsive documents. Given that discovery is ongoing in this case, DC expressly reserves its right to supplement these Responses, if need be, as more

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**200**

1    information becomes available, and to use in discovery and at trial any information

2    omitted from these Responses as a result of mistake, inadvertence, or oversight.

3    **Request No. 81**

4        All COMMUNICATIONS between YOU and Ari Emanuel REGARDING

5    this case or the *Siegel* Litigations.

6    **Response to Request No. 81**

7        DC objects to this Request on the grounds that it is indefinite as to time and

8    not reasonably limited in scope. DC further objects to the extent this Request calls

9    for irrelevant information and calls for a search of documents that is unduly

10   expensive, overbroad, unduly burdensome, and oppressive.

11       DC objects to the definition of "YOU" as vague and overbroad and will

12   respond to this term as limited to the relevant custodians at DC and Warner Bros.

13   Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague

14   and overbroad and will respond to this term as excluding any documents filed in

15   connection with prior or ongoing litigation. DC objects to the extent the Request

16   seeks production of "all COMMUNICATIONS" on the ground that such request is

17   overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

18   to the discovery of admissible evidence. As used in these Responses, the phrase "all

19   COMMUNICATIONS," or phrases of similar import, should be understood to

20   mean those documents DC and its counsel were able to locate using reasonable

21   diligence and reasonable judgment concerning the whereabouts of such documents.

22   DC does not object to or withhold any document based on the definition of

23   "REGARDING," as this definition mirrors in large part language that DC employed

24   in its own discovery requests. Defendants previously objected to this same

25   language in DC's requests as impermissibly overbroad. Based on defendants' use

26   of this same term and tacit acknowledgement that DC's use of these terms is proper,

27   DC will not object on this ground, and DC has confirmed with defendants that they

28   will do the same.

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**201**

1    Subject to and without waiving all foregoing objections, DC will conduct a

2    reasonably diligent search of the documents in the possession, custody, or control

3    of relevant custodians and will produce by designation or otherwise all non-

4    privileged, responsive documents. Given that discovery is ongoing in this case, DC

5    expressly reserves its right to supplement these Responses, if need be, as more

6    information becomes available, and to use in discovery and at trial any information

7    omitted from these Responses as a result of mistake, inadvertence, or oversight.

8    **Request No. 82**

9    All COMMUNICATIONS between YOU and WME REGARDING this case

10   or the *Siegel* Litigations.

11   **Response to Request No. 82**

12   DC objects to this Request on the grounds that it is indefinite as to time and

13   not reasonably limited in scope.  DC further objects to the extent this Request calls

14   for irrelevant information and calls for a search of documents that is unduly

15   expensive, overbroad, unduly burdensome, and oppressive.

16   DC objects to the definition of "YOU" as vague and overbroad and will

17   respond to this term as limited to the relevant custodians at DC and Warner Bros.

18   Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague

19   and overbroad and will respond to this term as excluding any documents filed in

20   connection with prior or ongoing litigation. DC objects to the extent the Request

21   seeks production of "all COMMUNICATIONS" on the ground that such request is

22   overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

23   to the discovery of admissible evidence. As used in these Responses, the phrase "all

24   COMMUNICATIONS," or phrases of similar import, should be understood to

25   mean those documents DC and its counsel were able to locate using reasonable

26   diligence and reasonable judgment concerning the whereabouts of such documents.

27   DC does not object to or withhold any document based on the definition of

28   "REGARDING," as this definition mirrors in large part language that DC employed

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

**202**

1    in its own discovery requests. Defendants previously objected to this same

2    language in DC's requests as impermissibly overbroad. Based on defendants' use

3    of this same term and tacit acknowledgement that DC's use of these terms is proper,

4    DC will not object on this ground, and DC has confirmed with defendants that they

5    will do the same.

6        Subject to and without waiving all foregoing objections, DC will conduct a

7    reasonably diligent search of the documents in the possession, custody, or control

8    of relevant custodians and will produce by designation or otherwise all non-

9    privileged, responsive documents. Given that discovery is ongoing in this case, DC

10   expressly reserves its right to supplement these Responses, if need be, as more

11   information becomes available, and to use in discovery and at trial any information

12   omitted from these Responses as a result of mistake, inadvertence, or oversight.

13   **Request No. 83**

14        All agreements between YOU and any private investigator REGARDING

15   this case or the *Siegel* Litigations.

16   **Response to Request No. 83**

17        DC objects to this Request as seeking the production of documents which are

18   not reasonably calculated to lead to the discovery of relevant and admissible

19   evidence. DC further objects to this Request on the grounds that it is indefinite as

20   to time and not reasonably limited in scope. DC further objects to this Request on

21   the grounds that it calls for a search of documents that is unduly expensive,

22   overbroad, unduly burdensome, and oppressive. DC further objects to the extent

23   that it seeks information protected by the attorney-client privilege, the attorney

24   work product doctrine, or any other applicable privilege or immunity.

25        DC does not object to or withhold any document based on the definition of

26   "REGARDING," as this definition mirrors in large part language that DC employed

27   in its own discovery requests. Defendants previously objected to this same

28   language in DC's requests as impermissibly overbroad. Based on defendants' use

<center>- 91 -</center>

<div align="right">DC'S OBJS. &amp; RESPS. TO<br>LARSON'S REQS. FOR PROD. 1-125</div>

<center>**EXHIBIT 15**<br>**203**</center>

1    of this same term and tacit acknowledgement that DC's use of these terms is proper,

2    DC will not object on this ground, and DC has confirmed with defendants that they

3    will do the same.

4         Subject to and without waiving all foregoing objections, DC agrees to meet-

5    and-confer with defendants regarding the relevance of the requested documents and

6    in an effort to reasonably narrow this Request and to see what, if any, documents

7    should be produced.

8    **Request No. 84**

9         All agreements between YOU and any publicist, publicity agent or agency

10   REGARDING this case or the *Siegel* Litigations.

11   **Response to Request No. 84**

12        DC objects to this Request as seeking the production of documents which are

13   not reasonably calculated to lead to the discovery of relevant and admissible

14   evidence.  DC further objects to this Request on the grounds that it is indefinite as

15   to time and not reasonably limited in scope.  DC further objects to this Request on

16   the grounds that it calls for a search of documents that is unduly expensive,

17   overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

18   that it seeks information protected by the attorney-client privilege, the attorney

19   work product doctrine, or any other applicable privilege or immunity.

20        DC objects to the word "agency" as vague and ambiguous.  DC does not

21   object to or withhold any document based on the definition of "REGARDING," as

22   this definition mirrors in large part language that DC employed in its own discovery

23   requests.  Defendants previously objected to this same language in DC's requests as

24   impermissibly overbroad.  Based on defendants' use of this same term and tacit

25   acknowledgement that DC's use of these terms is proper, DC will not object on this

26   ground, and DC has confirmed with defendants that they will do the same.

27        Subject to and without waiving all foregoing objections, DC agrees to meet-

28   and-confer with defendants regarding the relevance of the requested documents and

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**204**

1    in an effort to reasonably narrow this Request and to see what, if any, documents

2    should be produced.

3    **Request No. 85**

4        All COMMUNICATIONS between YOU and any publicist, publicity agent

5    or publicity agency REGARDING this case or the *Siegel* Litigations.

6    **Response to Request No. 85**

7        DC objects to this Request as seeking the production of documents which are

8    not reasonably calculated to lead to the discovery of relevant and admissible

9    evidence. DC further objects to this Request on the grounds that it is indefinite as

10   to time and not reasonably limited in scope. DC further objects to this Request on

11   the grounds that it calls for a search of documents that is unduly expensive,

12   overbroad, unduly burdensome, and oppressive. DC further objects to the extent

13   that it seeks information protected by the attorney-client privilege, the attorney

14   work product doctrine, or any other applicable privilege or immunity.

15       DC objects to the definition of "YOU" as vague and overbroad and will

16   respond to this term as limited to the relevant custodians at DC and Warner Bros.

17   Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague

18   and overbroad and will respond to this term as excluding any documents filed in

19   connection with prior or ongoing litigation. DC objects to the extent the Request

20   seeks production of "all COMMUNICATIONS" on the ground that such request is

21   overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

22   to the discovery of admissible evidence. As used in these Responses, the phrase "all

23   COMMUNICATIONS," or phrases of similar import, should be understood to

24   mean those documents DC and its counsel were able to locate using reasonable

25   diligence and reasonable judgment concerning the whereabouts of such documents.

26   DC does not object to or withhold any document based on the definitions of

27   "REGARDING" or "RELATING," as these definitions mirror in large part

28   language that DC employed in its own discovery requests. Defendants previously

- 93 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**205**

1   objected to this same language in DC's requests as impermissibly overbroad.

2   Based on defendants' use of this same term and tacit acknowledgement that DC's

3   use of these terms is proper, DC will not object on this ground, and DC has

4   confirmed with defendants that they will do the same.

5        Subject to and without waiving all foregoing objections, DC agrees to meet-

6   and-confer with defendants regarding the relevance of the requested documents and

7   in an effort to reasonably narrow this Request and to see what, if any, documents

8   should be produced.

9   **Request No. 86**

10       All DOCUMENTS REGARDING publicity RELATING TO this case or the

11  *Siegel* Litigations.

12  **Response to Request No. 86**

13       DC objects to this Request as seeking the production of documents which are

14  not reasonably calculated to lead to the discovery of relevant and admissible

15  evidence.  DC further objects to this Request on the grounds that it is indefinite as

16  to time and not reasonably limited in scope.  DC further objects to this Request on

17  the grounds that it calls for a search of documents that is unduly expensive,

18  overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

19  that it seeks information protected by the attorney-client privilege, the attorney

20  work product doctrine, or any other applicable privilege or immunity.

21       DC objects to the word "publicity" as vague and ambiguous.  DC objects to

22  the extent the Request seeks production of "all DOCUMENTS" on the ground that

23  such request is overly broad, unduly burdensome, oppressive, and not reasonably

24  calculated to lead to the discovery of admissible evidence, as it would encompass,

25  *e.g.*, all news reports relating to this case or the *Siegel* Litigations.  As used in these

26  Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

27  understood to mean those documents DC and its counsel were able to locate using

28  reasonable diligence and reasonable judgment concerning the whereabouts of such

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**206**

1    documents.  DC does not object to or withhold any document based on the

2    definitions of "REGARDING" or "RELATING," as these definitions mirror in

3    large part language that DC employed in its own discovery requests.  Defendants

4    previously objected to this same language in DC's requests as impermissibly

5    overbroad.  Based on defendants' use of this same term and tacit acknowledgement

6    that DC's use of these terms is proper, DC will not object on this ground, and DC

7    has confirmed with defendants that they will do the same.

8         Subject to and without waiving all foregoing objections, DC agrees to meet-

9    and-confer with defendants regarding the relevance of the requested documents and

10   in an effort to reasonably narrow this Request and to see what, if any, documents

11   should be produced.

12   **Request No. 87**

13        All COMMUNICATIONS between YOU and any person or entity

14   REGARDING internet blogging RELATING TO this case or the *Siegel* Litigations.

15   **Response to Request No. 87**

16        DC objects to this Request as seeking the production of documents which are

17   not reasonably calculated to lead to the discovery of relevant and admissible

18   evidence.  DC further objects to this Request on the grounds that it is indefinite as

19   to time and not reasonably limited in scope.  DC further objects to this Request on

20   the grounds that it calls for a search of documents that is unduly expensive,

21   overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

22   that it seeks information protected by the attorney-client privilege, the attorney

23   work product doctrine, or any other applicable privilege or immunity.

24        DC objects to the definition of "YOU" as vague and overbroad and will

25   respond to this term as limited to the relevant custodians at DC and Warner Bros.

26   Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague

27   and overbroad and will respond to this term as excluding any documents filed in

28   connection with prior or ongoing litigation. DC objects to the extent the Request

- 95 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**207**

1   seeks production of "all COMMUNICATIONS" on the ground that such request is

2   overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

3   to the discovery of admissible evidence. As used in these Responses, the phrase "all

4   COMMUNICATIONS," or phrases of similar import, should be understood to

5   mean those documents DC and its counsel were able to locate using reasonable

6   diligence and reasonable judgment concerning the whereabouts of such documents.

7   DC does not object to or withhold any document based on the definitions of

8   "REGARDING" or "RELATING," as these definitions mirror in large part

9   language that DC employed in its own discovery requests.  Defendants previously

10  objected to this same language in DC's requests as impermissibly overbroad.

11  Based on defendants' use of this same term and tacit acknowledgement that DC's

12  use of these terms is proper, DC will not object on this ground, and DC has

13  confirmed with defendants that they will do the same.

14          Subject to and without waiving all foregoing objections, DC agrees to meet-

15  and-confer with defendants regarding the relevance of the requested documents and

16  in an effort to reasonably narrow this Request and to see what, if any, documents

17  should be produced.

18  **Request No. 88**

19          All COMMUNICATIONS between YOU and any person or entity

20  REGARDING the TIMELINE.

21  **Response to Request No. 88**

22          DC objects to this Request on the grounds that it is indefinite as to time and

23  not reasonably limited in scope.  DC further objects to this Request to the extent

24  that it seeks the production of any item, or portion thereof, which is not reasonably

25  calculated to lead to the discovery of relevant and admissible evidence.  DC further

26  objects to this Request on the grounds that it calls for a search of documents that is

27  unduly expensive, overbroad, unduly burdensome, and oppressive.  DC further

28  objects to the extent that it seeks information protected by the attorney-client

- 96 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**208**

1  privilege, the attorney work product doctrine, or any other applicable privilege or

2  immunity.

3          DC objects to the phrase "person or entity" as vague and ambiguous.  DC

4  objects to the definition of "YOU" as vague and overbroad and will respond to this

5  term as limited to the relevant custodians at DC and Warner Bros. Entertainment

6  Inc. DC objects to the definition of "COMMUNICATION" as vague and overbroad

7  and will respond to this term as excluding any documents filed in connection with

8  prior or ongoing litigation. DC objects to the extent the Request seeks production of

9  "all COMMUNICATIONS" on the ground that such request is overly broad,

10  unduly burdensome, oppressive, and not reasonably calculated to lead to the

11  discovery of admissible evidence. As used in these Responses, the phrase "all

12  COMMUNICATIONS," or phrases of similar import, should be understood to

13  mean those documents DC and its counsel were able to locate using reasonable

14  diligence and reasonable judgment concerning the whereabouts of such documents.

15  DC does not object to or withhold any document based on the definition of

16  "REGARDING," as this definition mirrors in large part language that DC employed

17  in its own discovery requests.  Defendants previously objected to this same

18  language in DC's requests as impermissibly overbroad.  Based on defendants' use

19  of this same term and tacit acknowledgement that DC's use of these terms is proper,

20  DC will not object on this ground, and DC has confirmed with defendants that they

21  will do the same.

22          Subject to and without waiving all foregoing objections, DC agrees to meet-

23  and-confer with defendants regarding the relevance of the requested documents and

24  in an effort to reasonably narrow this Request and to see what, if any, documents

25  should be produced.

26  **Request No. 89**

27          All COMMUNICATIONS between YOU and any person or entity

28  REGARDING Marc Toberoff.

- 97 -

**Response to Request No. 89**

DC objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope—*e.g.*, it calls for all communications concerning Marc Toberoff, who DC has dealt with in other litigation entirely unrelated to this case. DC further objects to this Request to the extent that it seeks the production of any item, or portion thereof, which is not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the phrase "person or entity" as vague and ambiguous. DC objects to the definition of "YOU" as vague and overbroad and will respond to this term as limited to the relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague and overbroad and will respond to this term as excluding any documents filed in connection with prior or ongoing litigation. DC objects to the extent the Request seeks production of "all COMMUNICATIONS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "REGARDING," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper,

- 98 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**210**

1    DC will not object on this ground, and DC has confirmed with defendants that they

2    will do the same.

3          Subject to and without waiving all foregoing objections, DC agrees to meet-

4    and-confer with defendants regarding the relevance of the requested documents and

5    in an effort to reasonably narrow this Request and to see what, if any, documents

6    should be produced.

7    **Request No. 90**

8          All DOCUMENTS that support YOUR contention that "DC Comics and the

9    Siegel heirs reached an agreement providing that DC Comics would retain all rights

10   to Superman and entitling the Siegels to receive a significant portion of the

11   Superman profits," found in paragraph 7 of YOUR COMPLAINT.

12   **Response to Request No. 90**

13         DC objects to this Request to the extent that is requires DC to prove through

14   the discovery process its ultimate legal arguments related to the ramifications of

15   defendants' agreements and communications.  DC objects to the extend the Request

16   seeks information protected by the attorney-client privilege, the attorney work

17   product doctrine, or any other privilege or immunity.

18         DC objects to the definition of "YOUR" and will respond to that term as

19   limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

20   objects to the extent the Request seeks production of "all DOCUMENTS" on the

21   ground that such request is overly broad, unduly burdensome, oppressive, and not

22   reasonably calculated to lead to the discovery of admissible evidence, as the

23   definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

24   other publicly available documents.  As used in these Responses, the phrase "all

25   DOCUMENTS," or phrases of similar import, should be understood to mean those

26   documents DC and its counsel were able to locate using reasonable diligence and

27   reasonable judgment concerning the whereabouts of such documents.

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**211**

1    Subject to and without waiving all foregoing objections, DC will conduct a

2    reasonably diligent search of the documents in the possession, custody, or control

3    of relevant custodians and will produce by designation or otherwise all non-

4    privileged, responsive documents. Given that discovery is ongoing in this case, DC

5    expressly reserves its right to supplement these Responses, if need be, as more

6    information becomes available, and to use in discovery and at trial any information

7    omitted from these Responses as a result of mistake, inadvertence, or oversight.

8    **Request No. 91**

9    All DOCUMENTS that support YOUR contention that "Toberoff presented

10    himself as a film producer and falsely represented to the Siegels that if they

11    repudiated their agreement with DC Comics and entered into an agreement with

12    him instead, a 'billionaire investor' was prepared immediately to pay the Siegels

13    $15 million for their Superman rights, plus a generous back-end profit participation

14    in any future exploitations of the Superman property," found in paragraph 8 of

15    YOUR COMPLAINT.

16    **Response to Request No. 91**

17    DC objects to this Request to the extent that is requires DC to prove through

18    the discovery process its ultimate legal arguments related to the ramifications of

19    defendants' agreements and communications. DC objects to the extend the Request

20    seeks information protected by the attorney-client privilege, the attorney work

21    product doctrine, or any other privilege or immunity.

22    DC objects to the definition of "YOUR" and will respond to that term as

23    limited to relevant representatives of DC and Warner Bros. Entertainment Inc. DC

24    objects to the extent the Request seeks production of "all DOCUMENTS" on the

25    ground that such request is overly broad, unduly burdensome, oppressive, and not

26    reasonably calculated to lead to the discovery of admissible evidence, as the

27    definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

28    other publicly available documents. As used in these Responses, the phrase "all

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**212**

1    DOCUMENTS," or phrases of similar import, should be understood to mean those

2    documents DC and its counsel were able to locate using reasonable diligence and

3    reasonable judgment concerning the whereabouts of such documents.

4         Subject to and without waiving all foregoing objections, DC will conduct a

5    reasonably diligent search of the documents in the possession, custody, or control

6    of relevant custodians and will produce by designation or otherwise all non-

7    privileged, responsive documents.  Given that discovery is ongoing in this case, DC

8    expressly reserves its right to supplement these Responses, if need be, as more

9    information becomes available, and to use in discovery and at trial any information

10   omitted from these Responses as a result of mistake, inadvertence, or oversight.

11   **Request No. 92**

12        All DOCUMENTS that support YOUR contention that "Toberoff also falsely

13   represented that they would help the Siegels produce their own Superman motion

14   picture that would compete successfully with a Superman motion picture that

15   Warner Bros.—DC Comics' licensee—was then developing," found in paragraph 8

16   of YOUR COMPLAINT.

17   **Response to Request No. 92**

18        DC objects to this Request to the extent that is requires DC to prove through

19   the discovery process its ultimate legal arguments related to the ramifications of

20   defendants' agreements and communications.  DC objects to the extend the Request

21   seeks information protected by the attorney-client privilege, the attorney work

22   product doctrine, or any other privilege or immunity.

23        DC objects to the definition of "YOUR" and will respond to that term as

24   limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

25   objects to the extent the Request seeks production of "all DOCUMENTS" on the

26   ground that such request is overly broad, unduly burdensome, oppressive, and not

27   reasonably calculated to lead to the discovery of admissible evidence, as the

28   definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

- 101 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

1   other publicly available documents.  As used in these Responses, the phrase "all

2   DOCUMENTS," or phrases of similar import, should be understood to mean those

3   documents DC and its counsel were able to locate using reasonable diligence and

4   reasonable judgment concerning the whereabouts of such documents.

5        Subject to and without waiving all foregoing objections, DC will conduct a

6   reasonably diligent search of the documents in the possession, custody, or control

7   of relevant custodians and will produce by designation or otherwise all non-

8   privileged, responsive documents.  Given that discovery is ongoing in this case, DC

9   expressly reserves its right to supplement these Responses, if need be, as more

10  information becomes available, and to use in discovery and at trial any information

11  omitted from these Responses as a result of mistake, inadvertence, or oversight.

12  **Request No. 93**

13       All DOCUMENTS that support YOUR contention that "[u]nder these

14  agreements, Toberoff and his company received a 45% interest in any recovery by

15  the Siegels," found in paragraph 8 of YOUR COMPLAINT.

16  **Response to Request No. 93**

17       DC objects to this Request to the extent that is requires DC to prove through

18  the discovery process its ultimate legal arguments related to the ramifications of

19  defendants' agreements and communications.  DC objects to the extend the Request

20  seeks information protected by the attorney-client privilege, the attorney work

21  product doctrine, or any other privilege or immunity.

22       DC objects to the definition of "YOUR" and will respond to that term as

23  limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

24  objects to the extent the Request seeks production of "all DOCUMENTS" on the

25  ground that such request is overly broad, unduly burdensome, oppressive, and not

26  reasonably calculated to lead to the discovery of admissible evidence, as the

27  definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

28  other publicly available documents.  As used in these Responses, the phrase "all

- 102 -

**EXHIBIT 15**
**214**

1    DOCUMENTS," or phrases of similar import, should be understood to mean those

2    documents DC and its counsel were able to locate using reasonable diligence and

3    reasonable judgment concerning the whereabouts of such documents.

4        Subject to and without waiving all foregoing objections, DC will conduct a

5    reasonably diligent search of the documents in the possession, custody, or control

6    of relevant custodians and will produce by designation or otherwise all non-

7    privileged, responsive documents.  Given that discovery is ongoing in this case, DC

8    expressly reserves its right to supplement these Responses, if need be, as more

9    information becomes available, and to use in discovery and at trial any information

10   omitted from these Responses as a result of mistake, inadvertence, or oversight.

11   **Request No. 94**

12       All DOCUMENTS that support YOUR contention that "[i]n 1938, at the

13   instance and expense of DCI and subject to its right of control, Siegel and Shuster

14   adapted the preexisting Superman comic strips they had created and added a new

15   material to create the 13-page comic book story entitled 'Superman.'  This story—

16   like all the Superman works that Siegel and Shuster thereafter created—was created

17   for DC Comics as a work made for hire," found in paragraph 31 of YOUR

18   COMPLAINT.

19   **Response to Request No. 94**

20       DC objects to this Request to the extent that is requires DC to prove through

21   the discovery process its ultimate legal arguments related to the ramifications of

22   defendants' agreements and communications.  DC objects to the extend the Request

23   seeks information protected by the attorney-client privilege, the attorney work

24   product doctrine, or any other privilege or immunity.

25       DC objects to the definition of "YOUR" and will respond to that term as

26   limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

27   objects to the extent the Request seeks production of "all DOCUMENTS" on the

28   ground that such request is overly broad, unduly burdensome, oppressive, and not

- 103 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**215**

1  reasonably calculated to lead to the discovery of admissible evidence, as the

2  definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

3  other publicly available documents.  As used in these Responses, the phrase "all

4  DOCUMENTS," or phrases of similar import, should be understood to mean those

5  documents DC and its counsel were able to locate using reasonable diligence and

6  reasonable judgment concerning the whereabouts of such documents.

7       Subject to and without waiving all foregoing objections, DC will conduct a

8  reasonably diligent search of the documents in the possession, custody, or control

9  of relevant custodians and will produce by designation or otherwise all non-

10  privileged, responsive documents.  Given that discovery is ongoing in this case, DC

11  expressly reserves its right to supplement these Responses, if need be, as more

12  information becomes available, and to use in discovery and at trial any information

13  omitted from these Responses as a result of mistake, inadvertence, or oversight.

14  **Request No. 95**

15       All DOCUMENTS that support YOUR contention that if "Siegel and Shuster

16  created any copyrightable Superman-related works outside their work-for-hire

17  relationship with DC Comics (and DC Comics has disputed that they did), those

18  works consisted solely of certain panels and portions of the Action Comics No. 1

19  comic book and other minor creations in the 1930s," found in paragraph 32 of

20  YOUR COMPLAINT.

21  **Response to Request No. 95**

22       DC objects to this Request to the extent that is requires DC to prove through

23  the discovery process its ultimate legal arguments related to the ramifications of

24  defendants' agreements and communications.  DC objects to the extend the Request

25  seeks information protected by the attorney-client privilege, the attorney work

26  product doctrine, or any other privilege or immunity.

27       DC objects to the definition of "YOUR" and will respond to that term as

28  limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**216**

1   objects to the extent the Request seeks production of "all DOCUMENTS" on the

2   ground that such request is overly broad, unduly burdensome, oppressive, and not

3   reasonably calculated to lead to the discovery of admissible evidence, as the

4   definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

5   other publicly available documents.  As used in these Responses, the phrase "all

6   DOCUMENTS," or phrases of similar import, should be understood to mean those

7   documents DC and its counsel were able to locate using reasonable diligence and

8   reasonable judgment concerning the whereabouts of such documents.

9        Subject to and without waiving all foregoing objections, DC will conduct a

10  reasonably diligent search of the documents in the possession, custody, or control

11  of relevant custodians and will produce by designation or otherwise all non-

12  privileged, responsive documents.  Given that discovery is ongoing in this case, DC

13  expressly reserves its right to supplement these Responses, if need be, as more

14  information becomes available, and to use in discovery and at trial any information

15  omitted from these Responses as a result of mistake, inadvertence, or oversight.

16  **Request No. 96**

17       All DOCUMENTS that support YOUR contention that "[a]s a result of DC

18  Comics' significant and sustained investment in and stewardship of Superman—

19  and 70-plus years of character and story development by some of the most creative

20  and talented minds in the comic-book, radio, television, and motion-picture

21  industries—Superman has remained constantly in the public's eye and has become

22  one of the most famous and beloved fictional characters in the world," found in

23  paragraph 37 of YOUR COMPLAINT.

24  **Response to Request No. 96**

25       DC objects to this Request to the extent that is requires DC to prove through

26  the discovery process its ultimate legal arguments related to the ramifications of

27  defendants' agreements and communications.  DC objects to the extend the Request

28

- 105 -

1  seeks information protected by the attorney-client privilege, the attorney work

2  product doctrine, or any other privilege or immunity.

3      DC objects to the definition of "YOUR" and will respond to that term as

4  limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

5  objects to the extent the Request seeks production of "all DOCUMENTS" on the

6  ground that such request is overly broad, unduly burdensome, oppressive, and not

7  reasonably calculated to lead to the discovery of admissible evidence, as the

8  definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

9  other publicly available documents.  As used in these Responses, the phrase "all

10  DOCUMENTS," or phrases of similar import, should be understood to mean those

11  documents DC and its counsel were able to locate using reasonable diligence and

12  reasonable judgment concerning the whereabouts of such documents.

13      Subject to and without waiving all foregoing objections, DC will conduct a

14  reasonably diligent search of the documents in the possession, custody, or control

15  of relevant custodians and will produce by designation or otherwise all non-

16  privileged, responsive documents.  Given that discovery is ongoing in this case, DC

17  expressly reserves its right to supplement these Responses, if need be, as more

18  information becomes available, and to use in discovery and at trial any information

19  omitted from these Responses as a result of mistake, inadvertence, or oversight.

20  **Request No. 97**

21      All DOCUMENTS that support YOUR contention that "Toberoff knew,

22  however, that the Siegels had reached an agreement with DC Comics in 2001

23  resolving their putative termination claims," found in paragraph 66 of YOUR

24  COMPLAINT.

25  **Response to Request No. 97**

26      DC objects to this Request to the extent that is requires DC to prove through

27  the discovery process its ultimate legal arguments related to the ramifications of

28  defendants' agreements and communications.  DC objects to the extend the Request

- 106 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

1    seeks information protected by the attorney-client privilege, the attorney work

2    product doctrine, or any other privilege or immunity.

3         DC objects to the definition of "YOUR" and will respond to that term as

4    limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

5    objects to the extent the Request seeks production of "all DOCUMENTS" on the

6    ground that such request is overly broad, unduly burdensome, oppressive, and not

7    reasonably calculated to lead to the discovery of admissible evidence, as the

8    definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

9    other publicly available documents.  As used in these Responses, the phrase "all

10   DOCUMENTS," or phrases of similar import, should be understood to mean those

11   documents DC and its counsel were able to locate using reasonable diligence and

12   reasonable judgment concerning the whereabouts of such documents.

13        Subject to and without waiving all foregoing objections, DC will conduct a

14   reasonably diligent search of the documents in the possession, custody, or control

15   of relevant custodians and will produce by designation or otherwise all non-

16   privileged, responsive documents.  Given that discovery is ongoing in this case, DC

17   expressly reserves its right to supplement these Responses, if need be, as more

18   information becomes available, and to use in discovery and at trial any information

19   omitted from these Responses as a result of mistake, inadvertence, or oversight.

20   **Request No. 98**

21        All DOCUMENTS that support YOUR contention that "[o]n October 26,

22   2001, DC Comics sent a return letter confirming the parties' agreed-upon terms,"

23   found in paragraph 69 of YOUR COMPLAINT.

24   **Response to Request No. 98**

25        DC objects to this Request to the extent that is requires DC to prove through

26   the discovery process its ultimate legal arguments related to the ramifications of

27   defendants' agreements and communications.  DC objects to the extend the Request

28

- 107 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**219**

1    seeks information protected by the attorney-client privilege, the attorney work

2    product doctrine, or any other privilege or immunity.

3        DC objects to the definition of "YOUR" and will respond to that term as

4    limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

5    objects to the extent the Request seeks production of "all DOCUMENTS" on the

6    ground that such request is overly broad, unduly burdensome, oppressive, and not

7    reasonably calculated to lead to the discovery of admissible evidence, as the

8    definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

9    other publicly available documents.  As used in these Responses, the phrase "all

10   DOCUMENTS," or phrases of similar import, should be understood to mean those

11   documents DC and its counsel were able to locate using reasonable diligence and

12   reasonable judgment concerning the whereabouts of such documents.

13       Subject to and without waiving all foregoing objections, DC will conduct a

14   reasonably diligent search of the documents in the possession, custody, or control

15   of relevant custodians and will produce by designation or otherwise all non-

16   privileged, responsive documents.  Given that discovery is ongoing in this case, DC

17   expressly reserves its right to supplement these Responses, if need be, as more

18   information becomes available, and to use in discovery and at trial any information

19   omitted from these Responses as a result of mistake, inadvertence, or oversight.

20   **Request No. 99**

21       All DOCUMENTS that support YOUR contention that "Toberoff has

22   admitted that he closely tracked the progress of the Siegel Heirs' termination

23   attempt," found in paragraph 70 of YOUR COMPLAINT.

24   **Response to Request No. 99**

25       DC objects to this Request to the extent that is requires DC to prove through

26   the discovery process its ultimate legal arguments related to the ramifications of

27   defendants' agreements and communications.  DC objects to the extend the Request

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**220**

1    seeks information protected by the attorney-client privilege, the attorney work

2    product doctrine, or any other privilege or immunity.

3        DC objects to the definition of "YOUR" and will respond to that term as

4    limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

5    objects to the extent the Request seeks production of "all DOCUMENTS" on the

6    ground that such request is overly broad, unduly burdensome, oppressive, and not

7    reasonably calculated to lead to the discovery of admissible evidence, as the

8    definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

9    other publicly available documents.  As used in these Responses, the phrase "all

10   DOCUMENTS," or phrases of similar import, should be understood to mean those

11   documents DC and its counsel were able to locate using reasonable diligence and

12   reasonable judgment concerning the whereabouts of such documents.

13       Subject to and without waiving all foregoing objections, DC will conduct a

14   reasonably diligent search of the documents in the possession, custody, or control

15   of relevant custodians and will produce by designation or otherwise all non-

16   privileged, responsive documents.  Given that discovery is ongoing in this case, DC

17   expressly reserves its right to supplement these Responses, if need be, as more

18   information becomes available, and to use in discovery and at trial any information

19   omitted from these Responses as a result of mistake, inadvertence, or oversight.

20   **Request No. 100**

21       All DOCUMENTS that support YOUR contention that "[w]ith knowledge

22   that his actions would interfere with DC Comics' actual and prospective economic

23   advantages under the Siegel-DC Comics Agreement, on or around November

24   29,2001—six days after signing the 2001 Pacific Pictures Agreement with the

25   Shuster Heirs—Toberoff, identifying himself as a film producer—approached the

26   Siegel Heirs, including and/or through their representative Kevin Marks, for the

27   purpose of acquiring their rights," found in paragraph 71 of YOUR COMPLAINT.

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**221**

**Response to Request No. 100**

DC objects to this Request to the extent that is requires DC to prove through the discovery process its ultimate legal arguments related to the ramifications of defendants' agreements and communications. DC objects to the extend the Request seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other privilege or immunity.

DC objects to the definition of "YOUR" and will respond to that term as limited to relevant representatives of DC and Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC will conduct a reasonably diligent search of the documents in the possession, custody, or control of relevant custodians and will produce by designation or otherwise all non-privileged, responsive documents. Given that discovery is ongoing in this case, DC expressly reserves its right to supplement these Responses, if need be, as more information becomes available, and to use in discovery and at trial any information omitted from these Responses as a result of mistake, inadvertence, or oversight.

**Request No. 101**

All DOCUMENTS that support YOUR contention that on February 6, 2002 "Marks informed Toberoff that the Siegel Heirs had already reached a binding agreement with DC Comics, which was in the process of being further documented in a long-form agreement," found in paragraph 72 of YOUR COMPLAINT.

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

**Response to Request No. 101**

DC objects to this Request to the extent that is requires DC to prove through the discovery process its ultimate legal arguments related to the ramifications of defendants' agreements and communications. DC objects to the extend the Request seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other privilege or immunity.

DC objects to the definition of "YOUR" and will respond to that term as limited to relevant representatives of DC and Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC will conduct a reasonably diligent search of the documents in the possession, custody, or control of relevant custodians and will produce by designation or otherwise all non-privileged, responsive documents. Given that discovery is ongoing in this case, DC expressly reserves its right to supplement these Responses, if need be, as more information becomes available, and to use in discovery and at trial any information omitted from these Responses as a result of mistake, inadvertence, or oversight.

**Request No. 102**

All DOCUMENTS that support YOUR contention that "on May 9, 2002, Joanne Siegel sent a letter to DC Comics' affiliate acknowledging the Siegel Heirs had accepted DC Comics' October 16, 2001 offer, but purporting to object to

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**223**

1   certain unspecified portions of the long-form document," found in paragraph 75 of

2   YOUR COMPLAINT.

3   **Response to Request No. 102**

4     DC objects to this Request to the extent that is requires DC to prove through

5   the discovery process its ultimate legal arguments related to the ramifications of

6   defendants' agreements and communications.  DC objects to the extend the Request

7   seeks information protected by the attorney-client privilege, the attorney work

8   product doctrine, or any other privilege or immunity.

9     DC objects to the definition of "YOUR" and will respond to that term as

10  limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

11  objects to the extent the Request seeks production of "all DOCUMENTS" on the

12  ground that such request is overly broad, unduly burdensome, oppressive, and not

13  reasonably calculated to lead to the discovery of admissible evidence, as the

14  definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

15  other publicly available documents.  As used in these Responses, the phrase "all

16  DOCUMENTS," or phrases of similar import, should be understood to mean those

17  documents DC and its counsel were able to locate using reasonable diligence and

18  reasonable judgment concerning the whereabouts of such documents.

19    Subject to and without waiving all foregoing objections, DC will conduct a

20  reasonably diligent search of the documents in the possession, custody, or control

21  of relevant custodians and will produce by designation or otherwise all non-

22  privileged, responsive documents.  Given that discovery is ongoing in this case, DC

23  expressly reserves its right to supplement these Responses, if need be, as more

24  information becomes available, and to use in discovery and at trial any information

25  omitted from these Responses as a result of mistake, inadvertence, or oversight.

26  **Request No. 103**

27    All DOCUMENTS that support YOUR contention that "DC Comics objected

28  to the Siegel Heirs' sudden and unfounded objections expressed in their May 9

- 112 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**224**

1   letter, but continued working with their the Siegels' counsel (Kevin Marks) to

2   finalize the long-form agreement," found in paragraph 76 of YOUR COMPLAINT.

3   **Response to Request No. 103**

4       DC objects to this Request to the extent that is requires DC to prove through

5   the discovery process its ultimate legal arguments related to the ramifications of

6   defendants' agreements and communications.  DC objects to the extend the Request

7   seeks information protected by the attorney-client privilege, the attorney work

8   product doctrine, or any other privilege or immunity.

9       DC objects to the definition of "YOUR" and will respond to that term as

10   limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

11   objects to the extent the Request seeks production of "all DOCUMENTS" on the

12   ground that such request is overly broad, unduly burdensome, oppressive, and not

13   reasonably calculated to lead to the discovery of admissible evidence, as the

14   definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

15   other publicly available documents.  As used in these Responses, the phrase "all

16   DOCUMENTS," or phrases of similar import, should be understood to mean those

17   documents DC and its counsel were able to locate using reasonable diligence and

18   reasonable judgment concerning the whereabouts of such documents.

19       Subject to and without waiving all foregoing objections, DC will conduct a

20   reasonably diligent search of the documents in the possession, custody, or control

21   of relevant custodians and will produce by designation or otherwise all non-

22   privileged, responsive documents.  Given that discovery is ongoing in this case, DC

23   expressly reserves its right to supplement these Responses, if need be, as more

24   information becomes available, and to use in discovery and at trial any information

25   omitted from these Responses as a result of mistake, inadvertence, or oversight.

26   **Request No. 104**

27       All DOCUMENTS that support YOUR contention that "[o]n May 16, 2002,

28   Marks, who had discussed the long-form agreement with the Siegel Heirs, told

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**225**

1  Warner Bros. general counsel John Schulman that his long-form agreement was

2  `aggressive,' but that the Siegels could 'deal with it' and that it was 'not contrary to

3  what had been agreed to,'" found in paragraph 76 of YOUR COMPLAINT.

4  **Response to Request No. 104**

5       DC objects to this Request to the extent that is requires DC to prove through

6  the discovery process its ultimate legal arguments related to the ramifications of

7  defendants' agreements and communications.  DC objects to the extend the Request

8  seeks information protected by the attorney-client privilege, the attorney work

9  product doctrine, or any other privilege or immunity.

10       DC objects to the definition of "YOUR" and will respond to that term as

11  limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

12  objects to the extent the Request seeks production of "all DOCUMENTS" on the

13  ground that such request is overly broad, unduly burdensome, oppressive, and not

14  reasonably calculated to lead to the discovery of admissible evidence, as the

15  definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

16  other publicly available documents.  As used in these Responses, the phrase "all

17  DOCUMENTS," or phrases of similar import, should be understood to mean those

18  documents DC and its counsel were able to locate using reasonable diligence and

19  reasonable judgment concerning the whereabouts of such documents.

20       Subject to and without waiving all foregoing objections, DC will conduct a

21  reasonably diligent search of the documents in the possession, custody, or control

22  of relevant custodians and will produce by designation or otherwise all non-

23  privileged, responsive documents.  Given that discovery is ongoing in this case, DC

24  expressly reserves its right to supplement these Responses, if need be, as more

25  information becomes available, and to use in discovery and at trial any information

26  omitted from these Responses as a result of mistake, inadvertence, or oversight.

27

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**226**

1  **Request No. 105**

2      All DOCUMENTS that support YOUR contention that "[i]n or around

3  August 2002, as Marks was finalizing the Siegels' revisions to the long-form

4  document, Toberoff contacted Marks again regarding the Siegel-DC Comics

5  Agreement," found in paragraph 77 of YOUR COMPLAINT.

6  **Response to Request No. 105**

7      DC objects to this Request to the extent that is requires DC to prove through

8  the discovery process its ultimate legal arguments related to the ramifications of

9  defendants' agreements and communications.  DC objects to the extend the Request

10  seeks information protected by the attorney-client privilege, the attorney work

11  product doctrine, or any other privilege or immunity.

12      DC objects to the definition of "YOUR" and will respond to that term as

13  limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

14  objects to the extent the Request seeks production of "all DOCUMENTS" on the

15  ground that such request is overly broad, unduly burdensome, oppressive, and not

16  reasonably calculated to lead to the discovery of admissible evidence, as the

17  definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

18  other publicly available documents.  As used in these Responses, the phrase "all

19  DOCUMENTS," or phrases of similar import, should be understood to mean those

20  documents DC and its counsel were able to locate using reasonable diligence and

21  reasonable judgment concerning the whereabouts of such documents.

22      Subject to and without waiving all foregoing objections, DC will conduct a

23  reasonably diligent search of the documents in the possession, custody, or control

24  of relevant custodians and will produce by designation or otherwise all non-

25  privileged, responsive documents.  Given that discovery is ongoing in this case, DC

26  expressly reserves its right to supplement these Responses, if need be, as more

27  information becomes available, and to use in discovery and at trial any information

28  omitted from these Responses as a result of mistake, inadvertence, or oversight.

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**227**

1    **Request No. 106**

2        All DOCUMENTS that support YOUR contention that "Toberoff's offer

3    stated that he had found a billionaire investor willing to purchase the Siegel Heirs'

4    Superman rights," found in paragraph 78 of YOUR COMPLAINT.

5    **Response to Request No. 106**

6        DC objects to this Request to the extent that is requires DC to prove through

7    the discovery process its ultimate legal arguments related to the ramifications of

8    defendants' agreements and communications.  DC objects to the extend the Request

9    seeks information protected by the attorney-client privilege, the attorney work

10   product doctrine, or any other privilege or immunity.

11       DC objects to the definition of "YOUR" and will respond to that term as

12   limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

13   objects to the extent the Request seeks production of "all DOCUMENTS" on the

14   ground that such request is overly broad, unduly burdensome, oppressive, and not

15   reasonably calculated to lead to the discovery of admissible evidence, as the

16   definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

17   other publicly available documents.  As used in these Responses, the phrase "all

18   DOCUMENTS," or phrases of similar import, should be understood to mean those

19   documents DC and its counsel were able to locate using reasonable diligence and

20   reasonable judgment concerning the whereabouts of such documents.

21       Subject to and without waiving all foregoing objections, DC will conduct a

22   reasonably diligent search of the documents in the possession, custody, or control

23   of relevant custodians and will produce by designation or otherwise all non-

24   privileged, responsive documents.  Given that discovery is ongoing in this case, DC

25   expressly reserves its right to supplement these Responses, if need be, as more

26   information becomes available, and to use in discovery and at trial any information

27   omitted from these Responses as a result of mistake, inadvertence, or oversight.

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**228**

1  **Request No. 107**

2      All DOCUMENTS that support YOUR contention that "Toberoff claimed

3  the investor would give the Siegel Heirs $ 15 million cash up front, plus generous

4  royalty and "back-end" rights on any properties developed, including a new

5  Superman motion picture," found in paragraph 78 of YOUR COMPLAINT.

6  **Response to Request No. 107**

7      DC objects to this Request to the extent that is requires DC to prove through

8  the discovery process its ultimate legal arguments related to the ramifications of

9  defendants' agreements and communications.  DC objects to the extend the Request

10  seeks information protected by the attorney-client privilege, the attorney work

11  product doctrine, or any other privilege or immunity.

12      DC objects to the definition of "YOUR" and will respond to that term as

13  limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

14  objects to the extent the Request seeks production of "all DOCUMENTS" on the

15  ground that such request is overly broad, unduly burdensome, oppressive, and not

16  reasonably calculated to lead to the discovery of admissible evidence, as the

17  definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

18  other publicly available documents.  As used in these Responses, the phrase "all

19  DOCUMENTS," or phrases of similar import, should be understood to mean those

20  documents DC and its counsel were able to locate using reasonable diligence and

21  reasonable judgment concerning the whereabouts of such documents.

22      Subject to and without waiving all foregoing objections, DC will conduct a

23  reasonably diligent search of the documents in the possession, custody, or control

24  of relevant custodians and will produce by designation or otherwise all non-

25  privileged, responsive documents.  Given that discovery is ongoing in this case, DC

26  expressly reserves its right to supplement these Responses, if need be, as more

27  information becomes available, and to use in discovery and at trial any information

28  omitted from these Responses as a result of mistake, inadvertence, or oversight.

- 117 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**229**

**Request No. 108**

All DOCUMENTS that support YOUR contention that "Toberoff also falsely offered to help the Siegel Heirs produce a movie that would compete directly with the Superman movie in development at the time at Warner Bros., DC Comics' licensee, even though he knew that the Siegels' limited rights in the recaptured copyright, if any, would make such a competing motion picture all but impossible to produce and distribute," found in paragraph 78 of YOUR COMPLAINT.

**Response to Request No. 108**

DC objects to this Request to the extent that is requires DC to prove through the discovery process its ultimate legal arguments related to the ramifications of defendants' agreements and communications. DC objects to the extend the Request seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other privilege or immunity.

DC objects to the definition of "YOUR" and will respond to that term as limited to relevant representatives of DC and Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC will conduct a reasonably diligent search of the documents in the possession, custody, or control of relevant custodians and will produce by designation or otherwise all non-privileged, responsive documents. Given that discovery is ongoing in this case, DC expressly reserves its right to supplement these Responses, if need be, as more

- 118 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**230**

1    information becomes available, and to use in discovery and at trial any information

2    omitted from these Responses as a result of mistake, inadvertence, or oversight.

3    **Request No. 109**

4        All DOCUMENTS that support YOUR contention that "although Marks

5    conveyed Toberoff's offer to the Siegels, he advised them that they had already

6    reached a binding agreement with DC Comics," found in paragraph 79 of YOUR

7    COMPLAINT.

8    **Response to Request No. 109**

9        DC objects to this Request to the extent that is requires DC to prove through

10    the discovery process its ultimate legal arguments related to the ramifications of

11    defendants' agreements and communications. DC objects to the extend the Request

12    seeks information protected by the attorney-client privilege, the attorney work

13    product doctrine, or any other privilege or immunity.

14        DC objects to the definition of "YOUR" and will respond to that term as

15    limited to relevant representatives of DC and Warner Bros. Entertainment Inc. DC

16    objects to the extent the Request seeks production of "all DOCUMENTS" on the

17    ground that such request is overly broad, unduly burdensome, oppressive, and not

18    reasonably calculated to lead to the discovery of admissible evidence, as the

19    definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

20    other publicly available documents. As used in these Responses, the phrase "all

21    DOCUMENTS," or phrases of similar import, should be understood to mean those

22    documents DC and its counsel were able to locate using reasonable diligence and

23    reasonable judgment concerning the whereabouts of such documents.

24        Subject to and without waiving all foregoing objections, DC will conduct a

25    reasonably diligent search of the documents in the possession, custody, or control

26    of relevant custodians and will produce by designation or otherwise all non-

27    privileged, responsive documents. Given that discovery is ongoing in this case, DC

28    expressly reserves its right to supplement these Responses, if need be, as more

- 119 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**231**

1   information becomes available, and to use in discovery and at trial any information

2   omitted from these Responses as a result of mistake, inadvertence, or oversight.

3   **Request No. 110**

4       All DOCUMENTS that support YOUR contention that "as a result of

5   Toberoff's fraudulent inducements, the Siegel Heirs stated that they would

6   repudiate their agreement with DC Comics and accept Toberoff's offer," found in

7   paragraph 79 of YOUR COMPLAINT.

8   **Response to Request No. 110**

9       DC objects to this Request to the extent that is requires DC to prove through

10   the discovery process its ultimate legal arguments related to the ramifications of

11   defendants' agreements and communications.  DC objects to the extend the Request

12   seeks information protected by the attorney-client privilege, the attorney work

13   product doctrine, or any other privilege or immunity.

14       DC objects to the definition of "YOUR" and will respond to that term as

15   limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

16   objects to the extent the Request seeks production of "all DOCUMENTS" on the

17   ground that such request is overly broad, unduly burdensome, oppressive, and not

18   reasonably calculated to lead to the discovery of admissible evidence, as the

19   definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

20   other publicly available documents.  As used in these Responses, the phrase "all

21   DOCUMENTS," or phrases of similar import, should be understood to mean those

22   documents DC and its counsel were able to locate using reasonable diligence and

23   reasonable judgment concerning the whereabouts of such documents.

24       Subject to and without waiving all foregoing objections, DC will conduct a

25   reasonably diligent search of the documents in the possession, custody, or control

26   of relevant custodians and will produce by designation or otherwise all non-

27   privileged, responsive documents.  Given that discovery is ongoing in this case, DC

28   expressly reserves its right to supplement these Responses, if need be, as more

<div align="center">- 120 -</div>

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

<div align="center">**EXHIBIT 15**

**232**</div>

1    information becomes available, and to use in discovery and at trial any information

2    omitted from these Responses as a result of mistake, inadvertence, or oversight.

3    **Request No. 111**

4        All DOCUMENTS that support YOUR contention that "[o]n or around

5    September 21, 2002, based on Toberoff's inducements and other acts of

6    interference described above, the Siegel Heirs sent a letter to DC Comics

7    repudiating the Siegel-DC Comics Agreement," found in paragraph 80 of YOUR

8    COMPLAINT.

9    **Response to Request No. 111**

10        DC objects to this Request to the extent that is requires DC to prove through

11    the discovery process its ultimate legal arguments related to the ramifications of

12    defendants' agreements and communications.  DC objects to the extend the Request

13    seeks information protected by the attorney-client privilege, the attorney work

14    product doctrine, or any other privilege or immunity.

15        DC objects to the definition of "YOUR" and will respond to that term as

16    limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

17    objects to the extent the Request seeks production of "all DOCUMENTS" on the

18    ground that such request is overly broad, unduly burdensome, oppressive, and not

19    reasonably calculated to lead to the discovery of admissible evidence, as the

20    definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

21    other publicly available documents.  As used in these Responses, the phrase "all

22    DOCUMENTS," or phrases of similar import, should be understood to mean those

23    documents DC and its counsel were able to locate using reasonable diligence and

24    reasonable judgment concerning the whereabouts of such documents.

25        Subject to and without waiving all foregoing objections, DC will conduct a

26    reasonably diligent search of the documents in the possession, custody, or control

27    of relevant custodians and will produce by designation or otherwise all non-

28    privileged, responsive documents.  Given that discovery is ongoing in this case, DC

- 121 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**233**

1   expressly reserves its right to supplement these Responses, if need be, as more

2   information becomes available, and to use in discovery and at trial any information

3   omitted from these Responses as a result of mistake, inadvertence, or oversight.

4   **Request No. 112**

5       All DOCUMENTS that support YOUR contention that "Toberoff admitted to

6   the Siegel Heirs that he misled them about the existence of the billionaire investor

7   he used as an inducement to obtain their putative rights," found in paragraph 85 of

8   YOUR COMPLAINT.

9   **Response to Request No. 112**

10      DC objects to this Request to the extent that is requires DC to prove through

11  the discovery process its ultimate legal arguments related to the ramifications of

12  defendants' agreements and communications.  DC objects to the extend the Request

13  seeks information protected by the attorney-client privilege, the attorney work

14  product doctrine, or any other privilege or immunity.

15      DC objects to the definition of "YOUR" and will respond to that term as

16  limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

17  objects to the extent the Request seeks production of "all DOCUMENTS" on the

18  ground that such request is overly broad, unduly burdensome, oppressive, and not

19  reasonably calculated to lead to the discovery of admissible evidence, as the

20  definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

21  other publicly available documents.  As used in these Responses, the phrase "all

22  DOCUMENTS," or phrases of similar import, should be understood to mean those

23  documents DC and its counsel were able to locate using reasonable diligence and

24  reasonable judgment concerning the whereabouts of such documents.

25      Subject to and without waiving all foregoing objections, DC will conduct a

26  reasonably diligent search of the documents in the possession, custody, or control

27  of relevant custodians and will produce by designation or otherwise all non-

28  privileged, responsive documents.  Given that discovery is ongoing in this case, DC

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**234**

1    expressly reserves its right to supplement these Responses, if need be, as more

2    information becomes available, and to use in discovery and at trial any information

3    omitted from these Responses as a result of mistake, inadvertence, or oversight.

4    **Request No. 113**

5        All DOCUMENTS that support YOUR contention that Toberoff "also

6    acknowledged that even if the Siegel Heirs succeeded in recapturing any Superman

7    rights, he could not follow through on his false promise to make a competing

8    Superman movie for them," found in paragraph 85 of YOUR COMPLAINT.

9    **Response to Request No. 113**

10       DC objects to this Request to the extent that is requires DC to prove through

11   the discovery process its ultimate legal arguments related to the ramifications of

12   defendants' agreements and communications.  DC objects to the extend the Request

13   seeks information protected by the attorney-client privilege, the attorney work

14   product doctrine, or any other privilege or immunity.

15       DC objects to the definition of "YOUR" and will respond to that term as

16   limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

17   objects to the extent the Request seeks production of "all DOCUMENTS" on the

18   ground that such request is overly broad, unduly burdensome, oppressive, and not

19   reasonably calculated to lead to the discovery of admissible evidence, as the

20   definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

21   other publicly available documents.  As used in these Responses, the phrase "all

22   DOCUMENTS," or phrases of similar import, should be understood to mean those

23   documents DC and its counsel were able to locate using reasonable diligence and

24   reasonable judgment concerning the whereabouts of such documents.

25       Subject to and without waiving all foregoing objections, DC will conduct a

26   reasonably diligent search of the documents in the possession, custody, or control

27   of relevant custodians and will produce by designation or otherwise all non-

28   privileged, responsive documents.  Given that discovery is ongoing in this case, DC

- 123 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**

1    expressly reserves its right to supplement these Responses, if need be, as more

2    information becomes available, and to use in discovery and at trial any information

3    omitted from these Responses as a result of mistake, inadvertence, or oversight.

4    **Request No. 114**

5        All DOCUMENTS that support YOUR contention that the TOBEROFF

6    TIMELINE "lays out Toberoff's scheme to induce the Siegel Heirs to repudiate the

7    Siegel-DC Comics Agreement with DC Comics," found in paragraph 103 of YOUR

8    COMPLAINT.

9    **Response to Request No. 114**

10       DC objects to this Request to the extent that is requires DC to prove through

11   the discovery process its ultimate legal arguments related to the ramifications of

12   defendants' agreements and communications. DC objects to the extend the Request

13   seeks information protected by the attorney-client privilege, the attorney work

14   product doctrine, or any other privilege or immunity.

15       DC objects to the definition of "YOUR" and will respond to that term as

16   limited to relevant representatives of DC and Warner Bros. Entertainment Inc. DC

17   objects to the extent the Request seeks production of "all DOCUMENTS" on the

18   ground that such request is overly broad, unduly burdensome, oppressive, and not

19   reasonably calculated to lead to the discovery of admissible evidence, as the

20   definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

21   other publicly available documents. As used in these Responses, the phrase "all

22   DOCUMENTS," or phrases of similar import, should be understood to mean those

23   documents DC and its counsel were able to locate using reasonable diligence and

24   reasonable judgment concerning the whereabouts of such documents.

25       Subject to and without waiving all foregoing objections, DC will conduct a

26   reasonably diligent search of the documents in the possession, custody, or control

27   of relevant custodians and will produce by designation or otherwise all non-

28   privileged, responsive documents. Given that discovery is ongoing in this case, DC

- 124 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**236**

1    expressly reserves its right to supplement these Responses, if need be, as more

2    information becomes available, and to use in discovery and at trial any information

3    omitted from these Responses as a result of mistake, inadvertence, or oversight.

4    **Request No. 115**

5        All DOCUMENTS that support YOUR contention that "[m]any of these and

6    other disturbing, salient facts detailed herein have only recently come to light in the

7    past 20 months," found in paragraph 104 of YOUR COMPLAINT.

8    **Response to Request No. 115**

9        DC objects to this Request to the extent that is requires DC to prove through

10   the discovery process its ultimate legal arguments related to the ramifications of

11   defendants' agreements and communications.  DC objects to the extend the Request

12   seeks information protected by the attorney-client privilege, the attorney work

13   product doctrine, or any other privilege or immunity.

14       DC objects to the definition of "YOUR" and will respond to that term as

15   limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

16   objects to the extent the Request seeks production of "all DOCUMENTS" on the

17   ground that such request is overly broad, unduly burdensome, oppressive, and not

18   reasonably calculated to lead to the discovery of admissible evidence, as the

19   definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

20   other publicly available documents.  As used in these Responses, the phrase "all

21   DOCUMENTS," or phrases of similar import, should be understood to mean those

22   documents DC and its counsel were able to locate using reasonable diligence and

23   reasonable judgment concerning the whereabouts of such documents.

24       Subject to and without waiving all foregoing objections, DC will conduct a

25   reasonably diligent search of the documents in the possession, custody, or control

26   of relevant custodians and will produce by designation or otherwise all non-

27   privileged, responsive documents.  Given that discovery is ongoing in this case, DC

28   expressly reserves its right to supplement these Responses, if need be, as more

- 125 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**237**

1   information becomes available, and to use in discovery and at trial any information

2   omitted from these Responses as a result of mistake, inadvertence, or oversight.

3   **Request No. 116**

4       All DOCUMENTS that support YOUR contention that "DC Comics reached

5   a binding, enforceable agreement with the Siegel Heirs," found in paragraph 181 of

6   YOUR COMPLAINT.

7   **Response to Request No. 116**

8       DC objects to this Request to the extent that is requires DC to prove through

9   the discovery process its ultimate legal arguments related to the ramifications of

10  defendants' agreements and communications.  DC objects to the extend the Request

11  seeks information protected by the attorney-client privilege, the attorney work

12  product doctrine, or any other privilege or immunity.

13      DC objects to the definition of "YOUR" and will respond to that term as

14  limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

15  objects to the extent the Request seeks production of "all DOCUMENTS" on the

16  ground that such request is overly broad, unduly burdensome, oppressive, and not

17  reasonably calculated to lead to the discovery of admissible evidence, as the

18  definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

19  other publicly available documents.  As used in these Responses, the phrase "all

20  DOCUMENTS," or phrases of similar import, should be understood to mean those

21  documents DC and its counsel were able to locate using reasonable diligence and

22  reasonable judgment concerning the whereabouts of such documents.

23      Subject to and without waiving all foregoing objections, DC will conduct a

24  reasonably diligent search of the documents in the possession, custody, or control

25  of relevant custodians and will produce by designation or otherwise all non-

26  privileged, responsive documents.  Given that discovery is ongoing in this case, DC

27  expressly reserves its right to supplement these Responses, if need be, as more

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**238**

1    information becomes available, and to use in discovery and at trial any information

2    omitted from these Responses as a result of mistake, inadvertence, or oversight.

3    **Request No. 117**

4        All DOCUMENTS that support YOUR contention that "Marks has

5    confirmed that all parties understood that they had a binding agreement," found in

6    paragraph 181 of YOUR COMPLAINT.

7    **Response to Request No. 117**

8        DC objects to this Request to the extent that is requires DC to prove through

9    the discovery process its ultimate legal arguments related to the ramifications of

10    defendants' agreements and communications.  DC objects to the extend the Request

11    seeks information protected by the attorney-client privilege, the attorney work

12    product doctrine, or any other privilege or immunity.

13        DC objects to the definition of "YOUR" and will respond to that term as

14    limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

15    objects to the extent the Request seeks production of "all DOCUMENTS" on the

16    ground that such request is overly broad, unduly burdensome, oppressive, and not

17    reasonably calculated to lead to the discovery of admissible evidence, as the

18    definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

19    other publicly available documents.  As used in these Responses, the phrase "all

20    DOCUMENTS," or phrases of similar import, should be understood to mean those

21    documents DC and its counsel were able to locate using reasonable diligence and

22    reasonable judgment concerning the whereabouts of such documents.

23        Subject to and without waiving all foregoing objections, DC will conduct a

24    reasonably diligent search of the documents in the possession, custody, or control

25    of relevant custodians and will produce by designation or otherwise all non-

26    privileged, responsive documents.  Given that discovery is ongoing in this case, DC

27    expressly reserves its right to supplement these Responses, if need be, as more

28

- 127 -

**EXHIBIT 15**
**239**

1   information becomes available, and to use in discovery and at trial any information

2   omitted from these Responses as a result of mistake, inadvertence, or oversight.

3   **Request No. 118**

4        All DOCUMENTS that support YOUR contention that "Marks—who

5   negotiated the agreement on behalf of the Siegel Heirs—understood that the 2001

6   agreement was final and binding," and that "Marks communicated his position to

7   the Siegel Heirs in August 2002," found in paragraph 181, fn. 6 of YOUR

8   COMPLAINT.

9   **Response to Request No. 118**

10       DC objects to this Request to the extent that is requires DC to prove through

11  the discovery process its ultimate legal arguments related to the ramifications of

12  defendants' agreements and communications.  DC objects to the extend the Request

13  seeks information protected by the attorney-client privilege, the attorney work

14  product doctrine, or any other privilege or immunity.

15       DC objects to the definition of "YOUR" and will respond to that term as

16  limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

17  objects to the extent the Request seeks production of "all DOCUMENTS" on the

18  ground that such request is overly broad, unduly burdensome, oppressive, and not

19  reasonably calculated to lead to the discovery of admissible evidence, as the

20  definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

21  other publicly available documents.  As used in these Responses, the phrase "all

22  DOCUMENTS," or phrases of similar import, should be understood to mean those

23  documents DC and its counsel were able to locate using reasonable diligence and

24  reasonable judgment concerning the whereabouts of such documents.

25       Subject to and without waiving all foregoing objections, DC will conduct a

26  reasonably diligent search of the documents in the possession, custody, or control

27  of relevant custodians and will produce by designation or otherwise all non-

28  privileged, responsive documents.  Given that discovery is ongoing in this case, DC

- 128 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**240**

1    expressly reserves its right to supplement these Responses, if need be, as more

2    information becomes available, and to use in discovery and at trial any information

3    omitted from these Responses as a result of mistake, inadvertence, or oversight.

4    **Request No. 119**

5    　　All DOCUMENTS that support YOUR contention that "DC Comics had a

6    long-established economic relationship with the Siegel Heirs giving rise to an

7    interference with prospective economic advantage claim," found in paragraph 182

8    of YOUR COMPLAINT.

9    **Response to Request No. 119**

10    　　DC objects to this Request to the extent that is requires DC to prove through

11    the discovery process its ultimate legal arguments related to the ramifications of

12    defendants' agreements and communications.  DC objects to the extend the Request

13    seeks information protected by the attorney-client privilege, the attorney work

14    product doctrine, or any other privilege or immunity.

15    　　DC objects to the definition of "YOUR" and will respond to that term as

16    limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

17    objects to the extent the Request seeks production of "all DOCUMENTS" on the

18    ground that such request is overly broad, unduly burdensome, oppressive, and not

19    reasonably calculated to lead to the discovery of admissible evidence, as the

20    definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

21    other publicly available documents.  As used in these Responses, the phrase "all

22    DOCUMENTS," or phrases of similar import, should be understood to mean those

23    documents DC and its counsel were able to locate using reasonable diligence and

24    reasonable judgment concerning the whereabouts of such documents.

25    　　Subject to and without waiving all foregoing objections, DC will conduct a

26    reasonably diligent search of the documents in the possession, custody, or control

27    of relevant custodians and will produce by designation or otherwise all non-

28    privileged, responsive documents.  Given that discovery is ongoing in this case, DC

- 129 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**241**

1    expressly reserves its right to supplement these Responses, if need be, as more

2    information becomes available, and to use in discovery and at trial any information

3    omitted from these Responses as a result of mistake, inadvertence, or oversight.

4    **Request No. 120**

5         All DOCUMENTS that support YOUR contention that "[a]t the time

6    Toberoff approached the Siegel Heirs in 2001, DC Comics and the Siegel Heirs had

7    finally reached an agreement resolving their claims to the Superman and Superboy

8    rights," found in paragraph 182 of YOUR COMPLAINT.

9    **Response to Request No. 120**

10        DC objects to this Request to the extent that is requires DC to prove through

11   the discovery process its ultimate legal arguments related to the ramifications of

12   defendants' agreements and communications. DC objects to the extend the Request

13   seeks information protected by the attorney-client privilege, the attorney work

14   product doctrine, or any other privilege or immunity.

15        DC objects to the definition of "YOUR" and will respond to that term as

16   limited to relevant representatives of DC and Warner Bros. Entertainment Inc. DC

17   objects to the extent the Request seeks production of "all DOCUMENTS" on the

18   ground that such request is overly broad, unduly burdensome, oppressive, and not

19   reasonably calculated to lead to the discovery of admissible evidence, as the

20   definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

21   other publicly available documents. As used in these Responses, the phrase "all

22   DOCUMENTS," or phrases of similar import, should be understood to mean those

23   documents DC and its counsel were able to locate using reasonable diligence and

24   reasonable judgment concerning the whereabouts of such documents.

25        Subject to and without waiving all foregoing objections, DC will conduct a

26   reasonably diligent search of the documents in the possession, custody, or control

27   of relevant custodians and will produce by designation or otherwise all non-

28   privileged, responsive documents. Given that discovery is ongoing in this case, DC

- 130 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**242**

1    expressly reserves its right to supplement these Responses, if need be, as more

2    information becomes available, and to use in discovery and at trial any information

3    omitted from these Responses as a result of mistake, inadvertence, or oversight.

4    **Request No. 121**

5    . All DOCUMENTS that support YOUR contention that "[t]he economic

6    relationship that the Siegel Heirs and DC Comics had contemplated and agreed to

7    had the probability of future economic benefit to DC Comics," found in paragraph

8    183 of YOUR COMPLAINT.

9    **Response to Request No. 121**

10    DC objects to this Request to the extent that is requires DC to prove through

11    the discovery process its ultimate legal arguments related to the ramifications of

12    defendants' agreements and communications.  DC objects to the extend the Request

13    seeks information protected by the attorney-client privilege, the attorney work

14    product doctrine, or any other privilege or immunity.

15    DC objects to the definition of "YOUR" and will respond to that term as

16    limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

17    objects to the extent the Request seeks production of "all DOCUMENTS" on the

18    ground that such request is overly broad, unduly burdensome, oppressive, and not

19    reasonably calculated to lead to the discovery of admissible evidence, as the

20    definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

21    other publicly available documents.  As used in these Responses, the phrase "all

22    DOCUMENTS," or phrases of similar import, should be understood to mean those

23    documents DC and its counsel were able to locate using reasonable diligence and

24    reasonable judgment concerning the whereabouts of such documents.

25    Subject to and without waiving all foregoing objections, DC will conduct a

26    reasonably diligent search of the documents in the possession, custody, or control

27    of relevant custodians and will produce by designation or otherwise all non-

28    privileged, responsive documents.  Given that discovery is ongoing in this case, DC

- 131 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**243**

1  expressly reserves its right to supplement these Responses, if need be, as more

2  information becomes available, and to use in discovery and at trial any information

3  omitted from these Responses as a result of mistake, inadvertence, or oversight.

4  **Request No. 122**

5  All DOCUMENTS that support YOUR contention that "when Toberoff

6  approached the Siegel Heirs and their representatives in late 2001 and 2002 to

7  express interest in purchasing their Superman rights, he was informed that the

8  Siegel Heirs had already reached an agreement with DC Comics," found in

9  paragraph 184 of YOUR COMPLAINT.

10  **Response to Request No. 122**

11  DC objects to this Request to the extent that is requires DC to prove through

12  the discovery process its ultimate legal arguments related to the ramifications of

13  defendants' agreements and communications.  DC objects to the extend the Request

14  seeks information protected by the attorney-client privilege, the attorney work

15  product doctrine, or any other privilege or immunity.

16  DC objects to the definition of "YOUR" and will respond to that term as

17  limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

18  objects to the extent the Request seeks production of "all DOCUMENTS" on the

19  ground that such request is overly broad, unduly burdensome, oppressive, and not

20  reasonably calculated to lead to the discovery of admissible evidence, as the

21  definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

22  other publicly available documents.  As used in these Responses, the phrase "all

23  DOCUMENTS," or phrases of similar import, should be understood to mean those

24  documents DC and its counsel were able to locate using reasonable diligence and

25  reasonable judgment concerning the whereabouts of such documents.

26  Subject to and without waiving all foregoing objections, DC will conduct a

27  reasonably diligent search of the documents in the possession, custody, or control

28  of relevant custodians and will produce by designation or otherwise all non-

- 132 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**244**

1  privileged, responsive documents.  Given that discovery is ongoing in this case, DC

2  expressly reserves its right to supplement these Responses, if need be, as more

3  information becomes available, and to use in discovery and at trial any information

4  omitted from these Responses as a result of mistake, inadvertence, or oversight.

5  **Request No. 123**

6      All DOCUMENTS that support YOUR contention that "Toberoff knew his

7  actions were substantially certain to interfere with the Siegel Heirs' agreement and

8  ongoing business dealings with DC Comics," found in paragraph 185 of YOUR

9  COMPLAINT.

10  **Response to Request No. 123**

11      DC objects to this Request to the extent that is requires DC to prove through

12  the discovery process its ultimate legal arguments related to the ramifications of

13  defendants' agreements and communications.  DC objects to the extend the Request

14  seeks information protected by the attorney-client privilege, the attorney work

15  product doctrine, or any other privilege or immunity.

16      DC objects to the definition of "YOUR" and will respond to that term as

17  limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

18  objects to the extent the Request seeks production of "all DOCUMENTS" on the

19  ground that such request is overly broad, unduly burdensome, oppressive, and not

20  reasonably calculated to lead to the discovery of admissible evidence, as the

21  definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

22  other publicly available documents.  As used in these Responses, the phrase "all

23  DOCUMENTS," or phrases of similar import, should be understood to mean those

24  documents DC and its counsel were able to locate using reasonable diligence and

25  reasonable judgment concerning the whereabouts of such documents.

26      Subject to and without waiving all foregoing objections, DC will conduct a

27  reasonably diligent search of the documents in the possession, custody, or control

28  of relevant custodians and will produce by designation or otherwise all non-

- 133 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**245**

1  privileged, responsive documents.  Given that discovery is ongoing in this case, DC

2  expressly reserves its right to supplement these Responses, if need be, as more

3  information becomes available, and to use in discovery and at trial any information

4  omitted from these Responses as a result of mistake, inadvertence, or oversight.

5  **Request No. 124**

6      All DOCUMENTS that support YOUR contention that "Toberoff

7  intentionally engaged in independently wrongful conduct to carry out his

8  interference by, among other things: falsely misrepresenting to the Siegel Heirs that

9  he had a billionaire investor ready to purchase their Superman rights if they

10  repudiated their settlement agreement with DC Comics; falsely representing to the

11  Siegels that he would help them produce a competing Superman motion picture;

12  and wrongly inducing the Siegels to repudiate their agreement and business

13  relationship with DC Comics," found in paragraph 185 of YOUR COMPLAINT.

14  **Response to Request No. 124**

15      DC objects to this Request to the extent that is requires DC to prove through

16  the discovery process its ultimate legal arguments related to the ramifications of

17  defendants' agreements and communications.  DC objects to the extend the Request

18  seeks information protected by the attorney-client privilege, the attorney work

19  product doctrine, or any other privilege or immunity.

20      DC objects to the definition of "YOUR" and will respond to that term as

21  limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

22  objects to the extent the Request seeks production of "all DOCUMENTS" on the

23  ground that such request is overly broad, unduly burdensome, oppressive, and not

24  reasonably calculated to lead to the discovery of admissible evidence, as the

25  definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

26  other publicly available documents.  As used in these Responses, the phrase "all

27  DOCUMENTS," or phrases of similar import, should be understood to mean those

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**246**

1    documents DC and its counsel were able to locate using reasonable diligence and

2    reasonable judgment concerning the whereabouts of such documents.

3         Subject to and without waiving all foregoing objections, DC will conduct a

4    reasonably diligent search of the documents in the possession, custody, or control

5    of relevant custodians and will produce by designation or otherwise all non-

6    privileged, responsive documents.  Given that discovery is ongoing in this case, DC

7    expressly reserves its right to supplement these Responses, if need be, as more

8    information becomes available, and to use in discovery and at trial any information

9    omitted from these Responses as a result of mistake, inadvertence, or oversight.

10   **Request No. 125**

11        All DOCUMENTS that support YOUR contention that "As a direct result of

12   Toberoff's misdeeds, the Siegel Heirs repudiated the Siegel-DC Comics Agreement

13   with DC Comics and ended all further discussions, causing DC Comics to lose the

14   value of the agreement, to lose their ongoing business relationship with the Siegels

15   and to incur millions of dollars in subsequent legal fees in dispute with the Siegel

16   Heirs," found in paragraph 186 of YOUR COMPLAINT.

17   **Response to Request No. 125**

18        DC objects to this Request to the extent that is requires DC to prove through

19   the discovery process its ultimate legal arguments related to the ramifications of

20   defendants' agreements and communications.  DC objects to the extend the Request

21   seeks information protected by the attorney-client privilege, the attorney work

22   product doctrine, or any other privilege or immunity.

23        DC objects to the definition of "YOUR" and will respond to that term as

24   limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

25   objects to the extent the Request seeks production of "all DOCUMENTS" on the

26   ground that such request is overly broad, unduly burdensome, oppressive, and not

27   reasonably calculated to lead to the discovery of admissible evidence, as the

28   definition of "DOCUMENTS" encompasses, *e.g.*, all court filings in this case and

- 135 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**247**

1   other publicly available documents.  As used in these Responses, the phrase "all

2   DOCUMENTS," or phrases of similar import, should be understood to mean those

3   documents DC and its counsel were able to locate using reasonable diligence and

4   reasonable judgment concerning the whereabouts of such documents.

5         Subject to and without waiving all foregoing objections, DC will conduct a

6   reasonably diligent search of the documents in the possession, custody, or control

7   of relevant custodians and will produce by designation or otherwise all non-

8   privileged, responsive documents.  Given that discovery is ongoing in this case, DC

9   expressly reserves its right to supplement these Responses, if need be, as more

10   information becomes available, and to use in discovery and at trial any information

11   omitted from these Responses as a result of mistake, inadvertence, or oversight.

12         Dated:  October 5, 2012        Respectfully submitted,

13                              By:  /s/ Daniel M. Petrocelli

14                                Daniel M. Petrocelli

15                        Attorneys for Plaintiff DC Comics

16

17

18

19

20

21

22

23

24

25

26

27

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**EXHIBIT 15**
**248**

1  DANIEL M. PETROCELLI (S.B. #97802)
     dpetrocelli@omm.com
2  MATTHEW T. KLINE (S.B. #211640)
     mkline@omm.com
3  CASSANDRA L. SETO (S.B. #246608)
     cseto@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, CA 90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:   (310) 246-6779

7  Attorneys for Plaintiff DC Comics

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10
   DC COMICS,                          Case No. CV-10-3633 ODW (RZx)
11
                    Plaintiff,         PROOF OF SERVICE
12
          v.
13                                     Judge:  Hon. Otis D. Wright II
   PACIFIC PICTURES                    Magistrate:  Hon. Ralph Zarefsky
14 CORPORATION, IP WORLDWIDE,
   LLC, IPW, LLC, MARC TOBEROFF,
15 an individual, MARK WARREN
   PEARY, as personal representative of
16 the ESTATE OF JOSEPH SHUSTER,
   JEAN ADELE PEAVY, an individual,
17 LAURA SIEGEL LARSON, an
   individual and as personal
18 representative of the ESTATE OF
   JOANNE SIEGEL, and DOES 1-10,
19 inclusive,

20                    Defendants.

21

22

23

24

25

26

27

28

                                                         PROOF OF SERVICE

EXHIBIT 15
249

**PROOF OF SERVICE BY FEDERAL EXPRESS/OVERNIGHT DELIVERY**

I am over the age of eighteen years and not a party to the within action. I am a resident of or employed in the county where the service described below occurred. My business address is 1999 Avenue of the Stars, 7th floor, Los Angeles, California 90067-6035. On October 5, 2011, I served the following :

**PLAINTIFF DC COMICS' OBJECTIONS AND RESPONSES TO DEFENDANT LAURA SIEGEL LARSON'S FIRST SET OF REQUESTS FOR PRODUCTION**

by putting a true and correct copy thereof together with an unsigned copy of this declaration, in a sealed envelope, with delivery fees paid or provided for, for delivery the next business day to:

Marc Toberoff
Toberoff & Associates, P.C.
22337 Pacific Coast Highway #348
Malibu, CA 90265

Attorneys for defendants Laura Siegel Larson; Mark Warren Peary; and Jean Peavy

Richard Kendall
Kendall Brill & Klieger LLP
10100 Santa Monica Blvd., Suite 1725
Los Angeles, CA 90067

Attorneys for defendants Marc Toberoff; Pacific Pictures Corporation; IP Worldwide, LLC; and IPW, LLC

and by placing the envelope for collection today by the overnight courier in accordance with the firm's ordinary business practices. I am readily familiar with this firm's practice for collection and processing of overnight courier correspondence. In the ordinary course of business, such correspondence collected from me would be processed on the same day, with fees thereon fully prepaid, and deposited that day in a box or other facility regularly maintained by Federal Express, which is an overnight carrier.

PROOF OF SERVICE

1

**EXHIBIT 15**
**250**

1        I declare under penalty of perjury under the laws of the United States that the above

2   is true and correct.  Executed on October 5, 2012, at Los Angeles, California.

3                                                         *Sandra L. Watson*

4                                                         Sandra L. Watson

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        PROOF OF SERVICE

                                2

**EXHIBIT 15**
**251**

# EXHIBIT 16

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

22337 PACIFIC COAST HIGHWAY #348

MALIBU, CALIFORNIA 90265

MARC TOBEROFF*
KEITH G. ADAMS
PABLO D. ARREDONDO*
DAVID HARRIS

* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

kgadams@ipwla.com

October 16, 2012

<u>Via E-Mail</u>

Jason Tokoro
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:    *DC Comics v. Pacific Pictures Corp., et al.*, Case No. 10-CV-03633 ODW (RZx)

Dear Jason:

I write in response to the proposed privilege-log stipulation that DC sent on October 5, 2012, and your follow-up October 16, 2012 e-mail.

As DC is well aware, in 2010 the parties were unable to arrive at a mutually-agreeable privilege-log stipulation in this case, in large part due to DC's unreasonable and onerous demands. Whereas Defendants were at that time willing to enter into the same sort of stipulation the parties had in the *Siegel* matter, DC refused. Instead, DC only agreed that Defendants need not log privileged documents created after the start of this litigation (*i.e.*, May 14, 2010). Docket No. 132 at 2. Due to DC's obstinance, Defendants were forced to generate privilege logs covering virtually every privileged document in their possession, custody or control, including thousands of documents from after the start of the *Siegel* litigation that Defendants' counsel laboriously reviewed and logged.

DC's proposed stipulation is an obvious attempt to avoid its reciprocal obligation to log post-2004 communications, including documents which demonstrate when Warner Bros./DC actually received the stolen Timeline documents.

Moreover, DC should have produced its own privilege logs eight months ago – on or before February 17, 2012, when DC produced its responses to Defendants' discovery. Despite Defendants' repeated requests to DC on May 30, 2012 and June 12, 2012 that it provide an updated privilege log DC blankly refused to do so. If DC genuinely felt that the logging of post-2004 *Siegel* communications was unduly burdensome, it could easily have reached an agreement with Defendants in 2010 or sought a protective order nine months ago. Instead, DC did absolutely nothing and, while insisting that Defendants log all post-2004 communications, has not logged a single post-2004 communication. "What's good for the goose is good for the

**EXHIBIT 16**
**252**

**TOBEROFF & ASSOCIATES, P.C.**

October 16, 2012
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:   2 of 2

gander."  Under the authority DC has itself repeatedly relied upon (*e.g.*, Docket No. 125 at 19, No. 267-1 at 2-3), DC's concerted failure to log constitutes a waiver of privilege.  *See, e.g.*, *Eureka Fin. Corp. v. Hartford Accident & Indem. Co.*, 136 F.R.D. 179, 184-85 (E.D. Cal. 1991). DC's untimely request for the very stipulation it rejected in 2010 does nothing to salvage its position.

Lastly, as you are also doubtless aware, DC's October 5, 2012 letter did not request a Local Rule 37 conference.  Thus, DC's complaint that Defendants "have not responded to our privilege-log stipulation" which was sent "over 10 days ago" (the time period set forth in Local Rule 37) is a *non sequitur.*  Nor does DC's conclusory October 16, 2012 e-mail remotely meet the requirements of Local Rule 37, as it does not set forth the grounds for DC's motion.

Nothing in this letter should be construed as a waiver or limitation of any of Defendants' rights or remedies, all of which are reserved.

Very truly yours,

Keith Adams

**EXHIBIT 16**
**253**

# EXHIBIT 17



# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

October 22, 2012

OUR FILE NUMBER
905900-321

WRITER'S DIRECT DIAL
(310) 246-6707

WRITER'S E-MAIL ADDRESS
jtokoro@omm.com

**VIA E-MAIL**

Marc Toberoff
Toberoff & Associates, P.C.
22631 Pacific Coast Highway #348
Malibu, CA 90265

Richard Kendall
Kendall Brill & Klieger LLP
10110 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067

Re:     *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Counsel:

We write in response to defendants' letter of October 16, 2012, concerning DC's proposed October 6 privilege logging stipulation. Needless to say, DC disagrees with your letter and repeats its October 5 and October 16 requests for a meet-and-confer.

1. <u>There Has Been No Waiver</u>. DC's proposed October 6 privilege logging stipulation was not "untimely" as you claim but rather the culmination of the parties' long history on this subject. As you know, in the winter of 2010, the parties began negotiating a stipulation governing, among other things, the logging of privileged documents. Because of the exigency in finalizing a stipulation at that time—created by defendants' failure to even respond to DC's pending discovery requests—the parties entered into an interim stipulation, which the Court so-ordered on December 7, 2010. On February 17, 2012, when DC made its first production of documents in this action, DC advised that, "[a]s to documents created prior to May 14, 2010, DC will not log work product or privileged communications solely between or among DC's counsel, including outside and in-house counsel." *See* DC's Feb. 17, 2012 Responses and Objections. As DC explained, "[l]ogging such documents would constitute unreasonable and undue burden." *Id.* at 2.[1] Since that time, contrary to defendants' claim that DC "did absolutely nothing" to finalize

---

[1] At that time, DC also produced by designation, as permitted by the December 7 order, the privilege logs produced in the *Siegel* action. Why defendants persist with their baseless claims that DC has not produced any privilege logs—when it has in fact done so—defies common sense.

**EXHIBIT 17**
**254**

O'MELVENY & MYERS LLP
October 22, 2012 - Page 2

the stipulation, DC has repeatedly invited the defendants to meet and confer to complete the
privilege logging stipulation. *See, e.g.*, March 17, 2012 meet-and-confer; August 7, 2012 letter
("If defendants want to finalize the privilege logging stipulation that we completed only in part
in 2010, we are happy to do so."); October 5, 2012 Responses and Objections ("As noted, during
the parties' many discussions on this subject, DC is willing to meet and confer with defendants
concerning this proposed stipulation, though if the parties are unable to reach an agreement, DC
will seek all appropriate relief.'). Defendants, however, in an attempt to manufacture purported
"delay" by DC have, to date, refused to meet and confer with DC on this subject. Indeed, your
most recent correspondence underscores this tactic by pretending that DC had not already twice
explicitly requested to meet and confer on its proposed privilege logging stipulation.
Defendants' attempt to drag this process out to gain perceived tactical advantage is as transparent
as it is futile and there has been no waiver by DC.

2. <u>DC's Receipt of the Timeline Documents</u>. As purported justification for imposing the
unreasonable burden on DC of logging its internal *Siegel* litigation documents, you raise, yet
again, your alleged need to determine "when Warner Bros./DC actually received the [ ] Timeline
documents." This is a non-issue. DC has already unequivocally stated that there are no
documents or communications that relate to the Timeline that predate June 28, 2006. *See* August
7, 2012, letter from M. Kline to R. Kendall at 19. For further details on Warner Bros. and DC's
receipt of the Timeline documents, defendants need look no further than Wayne Smith's
declaration in *Siegel*, which Judge Zarefsky found demonstrated that Mr. Smith acted
appropriately and professionally. Case No. CV 04-8400, Docket Nos. 108; 177 at 19:3-7.

3. <u>DC's Motion for a Protective Order</u>. Defendants' feigned ignorance of the grounds for
DC's motion are untenable given the long history on this subject and DC's October 6 Responses
and Objections. To reiterate, if the parties are unable to reach an agreement, DC intends to move
for a protective order on the terms set forth in the stipulation on the grounds that the burden of
logging privileged documents created on or after October 8, 2004—which includes all internal
litigation communications during the *Siegel* case—outweighs any conceivable benefit to
defendants.[2]

DC proposes meeting and conferring on these issues on Tuesday, October 23, at 11:00
a.m. PDT. All of DC's rights are reserved.

Very truly yours,

/s/ Jason H. Tokoro

Jason H. Tokoro
for O'MELVENY & MYERS LLP

cc:    Daniel M Petrocelli, Esq.; Matthew T. Kline, Esq.; Defense Counsel

---

[2] Indeed, the only rationale that defendants can come up with—the timing of the receipt of the Timeline
documents—is baseless as discussed above.

**EXHIBIT 17**
**255**

# EXHIBIT 18

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

22337 PACIFIC COAST HIGHWAY #348

MALIBU, CALIFORNIA 90265

MARC TOBEROFF*
KEITH G. ADAMS
PABLO D. ARREDONDO*
DAVID HARRIS

\* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

kgadams@ipwla.com

October 25, 2012

<u>Via E-Mail</u>

Matthew Kline
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:   <u>*DC Comics v. Pacific Pictures Corp., et al.*, Case No. 10-CV-03633 ODW (RZx)</u>

Dear Matt:

I write in response to Plaintiff DC Comics' Objections and Responses to Defendant Laura Siegel Larson's First Set of Requests for Production ("Responses"), dated October 5, 2012, and to request that the parties meet-and-confer pursuant to L.R. 37-1.

## 1.   <u>DC's Search Efforts and Protocols</u>

As set forth in my letter to you dated October 12, 2012, DC's ongoing pattern of producing non-privileged, highly responsive documents only when it intends to use such documents in its briefing is a gross violation of DC's discovery obligations. Defendants have already been prejudiced by this discovery misconduct with respect to the parties' critical summary judgment motions regarding DC's First Claim.

Unfortunately, the assurances of DC's counsel as to the completeness of DC's search efforts have been shown to be worthless. Ms. Seto represented in March 2012 that all documents relevant to the 1992 Agreement had been produced; Mr. Kline similarly represented in July 2012 that a "comprehensive search" had been done and that all responsive documents had been produced.

In both cases, DC thereafter produced additional documents that expressly referred to the 1992 Agreement and would have been uncovered in any reasonable search. DC's attempt to justify its improper withholding and belated production of obviously responsive documents as done in response to comments made at oral argument (Docket 498 at 2-3; 498-1 at ¶¶8-9) makes it plain that DC conducts a more rigorous search in preparation for its motions than it does in response to Defendants' discovery requests. This is completely unacceptable and in violation of DC's discovery obligations.

**EXHIBIT 18**
**256**

**TOBEROFF & ASSOCIATES, P.C.**

October 25, 2012
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:  2 of 6

Defendants also cannot trust DC to make a good faith selection of document custodians on its own, as evidenced by the fact that it apparently omitted, either deliberately or negligently, such obvious custodians as its Legal and Business Affairs departments, with respect to the 1992 Agreement at issue.

DC's further generic assurances as to its "comprehensive search" (*see, e.g.,* 10/22/2012 Kline Letter to Toberoff and Adams) do nothing to remedy these obvious deficiencies.

Consequently, Defendants require and are entitled to specific and complete information as to DC's search efforts to date and going forward. This includes a list of the authors, recipients and custodians of documents covered by your search, databases searched, and, where applicable, search queries used to cull responsive documents. DC must also produce relevant organization charts so that Defendants can assess whether key custodians are being excluded. *See Sloan Valve Co. v. Zurn Indus., Inc.,* 2012 WL 1886353 at *9 (N.D. Ill. May 23, 2012) (ordering parties to create and file "an agreed-upon list of reasonable search terms, custodians, and proposed date restrictions"); *ArrivalStar S.A. v. United States,* 2012 WL 3590414 at *1 (Fed. Cl. Aug. 20, 2012) ("The parties shall cooperate to identify the proper custodians, proper search terms, and time frame.").

2.    **DC's Deficient Responses To Laura Siegel Larson's First Set of Requests for Production**

DC refused to produce documents absent a meet-and-confer in response to seventy-two (72) of Ms. Larson's requests. DC claimed a meet-and-confer is purportedly required to explain the requests' (i) relevancy (Response to Request Nos. 26, 53, 64-69); (ii) relevancy and scope (Response to Request Nos. 3-25, 27-31, 33, 38-40, 44-52, 54-63, 83-89); or (iii) relevancy, scope and definitions (Response to Request Nos. 32, 34-37, 41-43).

These boilerplate objections are unfounded, and DC's insistence on meeting and conferring to supposedly narrow, define, and/or discuss the relevancy of the majority of Ms. Larson's requests is nothing more than a dilatory tactic to stall the discovery process.

Ms. Larson's requests are relevant to this case, and already appropriately narrow in scope and definition. "Discovery requests are relevant if there is any possibility that the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear that the information sought can have no possible bearing on the subject matter of the action." *In re Toyota Motor Corp. Sec. Litig.,* 2012 WL 3791716 at *4 (C.D. Cal. Mar. 12, 2012) (citation omitted); F.R.C.P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense."). Defendants' pointed requests more than meet this standard.

**EXHIBIT 18**
**257**

**TOBEROFF & ASSOCIATES, P.C.**

October 25, 2012
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:  3 of 6

Moreover, as DC itself has repeatedly stated, a party is required to respond to requests to the extent the requests are non-objectionable. *See* Docket 125 at 23-24; Fed. R. Civ. P. 34(b)(2)(C) ("An objection to part of a requests must specify the part and permit inspection of the rest."); W. Schwarzer, et al., *Federal Civil Procedure Before Trial* § 11:1914 (Rutter 2010) (citing *Aikens v. Deluxe Fin. Servs.*, Inc., 217 F.R.D. 533, 539 (D. Kan. 2003) ("[T]he responding party still has a duty to respond to the extent the request is not objectionable").

**Request Nos. 3-22, 23-27, 32-65, 88**

These requests are aimed at evidence regarding when and how Warner received the stolen privileged documents and the anonymous cover letter enclosing them (the so-called "Timeline"). As DC attached the Timeline to its complaint and rely heavily on it and the stolen documents in this litigation, these requests are obviously relevant. Docket Nos. 1, 49, 459-43, 455 at 8.

DC's boilerplate objections to these requests make no sense. To give but a couple examples:

- Request No. 6 asks for "All DOCUMENTS that REFER to the date and/or circumstances surrounding YOUR receipt of the TOBEROFF TIMELINE." The relevance of this request speaks for itself; to date, DC/Warner has provided absolutely no evidence to support its representation to the Court that it received the anonymous package in June of 2006. Moreover, absolutely no evidence has been provided as to the circumstances surrounding the provision of the stolen documents to DC/Warner. Given that the anonymous package made its way into the office of extremely senior Warner executives and Warner's General Counsel, the absence of any materials is conspicuous.

- Request No. 14 asks for "All DOCUMENTS which show when YOU first received the TOBEROFF TIMELINE." The relevance of this request again speaks for itself, as set forth with respect to Request No. 6 above.

- Request No. 21 asks for "All COMMUNICATIONS between YOU and ARNOLD PORTER REFERRING TO the TOBEROFF TIMELINE." This request is clearly relevant as communications between DC and its purported "neutral escrow agent", to whom it sent the stolen documents will shed light on when and how DC handled the stolen documents. It is quite narrow as it refers to communications with only one entity. DC's objection that the request is not limited in time is disingenuous as the request is clearly limited to the period subsequent to DC's receipt of the Timeline and to communications referencing that document. DC improperly demands a meet-and-confer to discuss relevancy and to "reasonably narrow" the request, when its relevancy is obvious and there is nothing to narrow.

- Request No. 49 asks for "All DOCUMENTS that REFER to WARNER'S efforts to locate the packaging, envelope, or equivalent enclosure in which the TOBEROFF TIMELINE was sent to WARNER'S studio at 4000 Warner Boulevard, Burbank,

**EXHIBIT 18**
**258**

**TOBEROFF & ASSOCIATES, P.C.**

October 25, 2012
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:   4 of 6

California, 91522." This request is directly relevant to the issue of when and how DC
handled the Timeline and stolen documents. To date, DC has produced no evidence
whatsoever in support of its claim that it first received the Timeline and stolen documents
in June 2006. Again, this request is also narrowly targeted to request copies of the
packaging in which the stolen materials were sent to Warner's senior executives,
including its General Counsel. This clearly could confirm the date Warner actually
received the Timeline and stolen documents, and test Warner's critical representations to
the Court as to this fact. In addition, any handwriting on the packaging could be used to
confirm the identity of the thief who authored the Timeline, and be used to question him
at deposition.

**Request No. 29**

Request No. 29 asks for "All complaints or counterclaims filed by YOU and/or WARNER
containing a claim for tortious interference with prospective economic advantage and/or a claim
for tortious interference with contract." This request is plainly relevant for a number of reasons,
including measuring DC's claimed methodologies used to establish damages, and the
methodologies used by DC/Warner to establish the value of intellectual properties. DC responds
that it "will not produce any such documents, which are publicly available." This objection is
improper. *Vera v. O'Keefe*, 2011 WL 4434876 at * 6 (S.D. Cal. Sept. 23, 2011) (ordering
documents produced "regardless of whether they are publicly available"); *Plumbers &
Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, 2005 WL 1459555 (N.D. Cal. June 21,
2005) ("[T]he Court can see no justifiable reason why Plaintiffs should not produce ....
documents ... whether they are in Defendants' possession or in the public domain."); *St. Paul
Reinsurance Co. V. Commercial Fin. Corp.*, 198 F.R.D. 508, 513 (N.D. Iowa 2000) ("It is not
usually a ground for objection that the information is equally available to the interrogator or is a
matter of public record."). Moreover, DC has a much easier ability to obtain these documents.
*Solar Star Sys., LLC v. Bellsouth Telecommunications, Inc.*, 2010 WL 5477757 at *3 (S.D. Fla.
Dec. 30, 2010) (granting motion to compel complaints filed by corporation "even though such
complaints may be publicly available" where corporation "has an even easier ability to obtain
this data, which undoubtedly is tracked and documented within corporation on a regular basis").
Defendants request that DC withdraw this objection.

**Request No. 30**

Request No. 30 asks for "All DOCUMENTS REFERRING TO this case and/or the *Siegel*
Litigations, excluding documents produced or filed in this case or the *Siegel* Litigations." To the
extent DC is in possession of non-privileged documents, such documents would obviously be
relevant within the meaning of F.R.C.P. 26(b)(1).

**EXHIBIT 18**
**259**

**TOBEROFF & ASSOCIATES, P.C.**

October 25, 2012
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:   5 of 6

### Request No. 31

Request No. 31 asks for "All minutes of Board of Directors meetings or Directors' resolutions RELATING TO any Defendants in this case and/or the *Siegel* Litigations." This request is obviously relevant on its face. Nor is the request burdensome, as it is narrowly tailored to two species of corporate documents and further narrowed to only those documents relating to any defendants in this case or in *Siegel,* and thus requests a limited volume of responsive documents. DC's refusal to produce absent a meet-and-confer is baseless.

### Request Nos. 66-69

Request Nos. 66-69 concern the timing of the relationship between Warner/DC and its present litigation counsel, O'Melveny & Myers, LLP. These requests are relevant, especially as Mr. Kline has stated that responsive documents were not produced because O'Melveny was purportedly unable to access the databases used by prior counsel. (7/12/2012 Email from Matt Kline to Marc Toberoff).

### Request No. 83

Request No. 83 asks for "All agreements between YOU and any private investigator REGARDING this case or the *Siegel* Litigations." This request is relevant for a number of reasons, including allowing Defendants to understand what if any efforts DC has made to identify and locate the thief who provided Warner with the stolen documents, and whether DC has additional responsive evidence that it refuses to turn over. The request is also relevant to examining potential communications between Warner/DC and the author of the Timeline and/or between Warner/DC and other former employees or clients of Toberoff & Associates, which DC placed at issue when it attached the "Timeline" to its complaint. The request is reasonably tailored to cover only this case and the *Siegel* Litigations. DC's refusal to produce absent a meet-and-confer is baseless.

### Request Nos. 84-87

Request Nos. 84 through 87 concern DC's communications and agreements concerning publicity in this case. These requests are relevant for a number of reasons, including to discover any contradictions between statements DC has made to third-parties and statements it has made in its filing in this case, and because DC has extensively relied on third-party press articles about Mr. Toberoff in its briefing and filings. Furthermore, such documents would be relevant to establish DC's motivation for bringing this retaliatory suit against its opposing counsel, Mr. Toberoff. For instance, to damage Mr. Toberoff and garner leverage, Warner/DC attached the anonymous defamatory Timeline to its complaint and then encouraged media outlets to post the Timeline in full on the internet. Warner has suffered high-profile defeats in cases Mr. Toberoff litigated and Defendants are entitled to know the extent to which Warner is seeking to use publicity related to this litigation as a deterrent to other artists who might seek Mr. Toberoff's counsel. The request

**EXHIBIT 18**
**260**

**TOBEROFF & ASSOCIATES, P.C.**

October 25, 2012
Re:     *DC Comics v. Pacific Pictures Corp.*
Page:   6 of 6

is reasonably tailored to cover only this case and the *Siegel* Litigations.  Especially as DC
provides no information regarding the volume of responsive documents, DC's refusal to produce
absent a meet-and-confer is baseless.

**Request No. 89**

Request No. 89 asks for "All COMMUNICATIONS between YOU and any person or entity
REGARDING Marc Toberoff."  As Mr. Toberoff is a party to this case, this request is clearly
relevant.  Especially as DC provides no information regarding the volume of responsive
documents, DC's refusal to produce absent a meet-and-confer is baseless.

<div align="center">*     *     *</div>

Finally, it should be noted that DC's refusal to produce materials on the basis of attorney-client
privilege are inappropriate.  Despite having been repeatedly warned by Defendants (*see, e.g.,*
5/30/2012 Letter from Pablo Arredondo to Jason Tokoro; 6/12/2012 Email from Marc Toberoff
to Matt Kline; 10/16/2012 Letter from Adams to Tokoro), DC still has provided no privilege logs
in this case.

Pursuant to L.R. 37-1, defendants request that the parties meet and confer on these matters
anytime on October 26 or October 29, 2012.

Nothing in this letter should be construed as a waiver or limitation of any of Defendants' rights
or remedies, all of which are reserved.

Very truly yours,

Keith Adams

**EXHIBIT 18**
**261**

# EXHIBIT 19

# O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
HONG KONG
LONDON
LOS ANGELES
NEWPORT BEACH
NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO
SHANGHAI
SILICON VALLEY
SINGAPORE
TOKYO
WASHINGTON, D.C.

October 31, 2012

**VIA EMAIL**

Marc Toberoff
Keith G. Adams
Toberoff & Associates, P.C.
22337 Pacific Coast Highway #348
Malibu, CA 90265

OUR FILE NUMBER
905900-321

WRITER'S DIRECT DIAL
(310) 246-8593

WRITER'S E-MAIL ADDRESS
mlens@omm.com

Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Counsel:

We write in response to defendants' letter of October 25, 2012, concerning DC's Objections and Responses to Defendant Laura Siegel Larson's First Set of Requests for Production ("Responses").

1. <u>DC Remains Willing To Meet And Confer</u>.  Defendants expend six paragraphs in their letter asserting their right to meet and confer on DC's search for responsive documents.  As DC first stated seven months ago, and as DC just confirmed in its October 22 letter, DC has been—and remains—willing to meet and confer on its document collection protocol.  However, defendants have never taken DC up on its invitation.  *See, e.g.*, Oct. 22, 2012 letter from M. Kline to M. Toberoff and K. Adams.  Defendants' six-paragraph "demand" for a meet-and-confer on DC's search methodology is a charade, but we are happy to begin that discussion next week after the two Ninth Circuit arguments we have in this case and the *Siegel* case.

2. <u>DC Did Not Serve Boilerplate Objections</u>.  Contrary to your assertions, DC did not serve "boilerplate" objections to defendant Laura Siegel Larson's First Set of Requests for Production (the "Requests").  Given the similar nature of many of the Requests, it is not surprising that many of DC's objections were applicable to numerous requests.  Indeed, your October 25 letter concedes that *60 Requests* were "aimed at evidence regarding when and how Warner received" the Timeline documents, Oct. 25, 2012 letter from K. Adams to M. Kline—an irrelevant issue and source of inquiry in any event, and one on which the *Siegel* court already ruled.  The fact that many of the Requests were objectionable for the same reasons does not render DC's objections "boilerplate."  It means they are consistent.

**EXHIBIT 19**
**262**

O'MELVENY & MYERS LLP
October 31, 2012 - Page 2

3. <u>DC's Objections Are Valid</u>.  Defendants' attempts to justify the objectionable Requests do not assuage DC's concerns and, in fact, reinforce DC's position.  As one example, the fact that DC attached the Timeline to its complaint does not render evidence "regarding when and how Warner received" the Timeline relevant.  In any event, DC has already stated—several times—that it does not possess any documents concerning the Timeline that predate June 28, 2006.  *E.g.*, Oct. 22, 2012 letter from J. Tokoro to M. Toberoff and R. Kendall.  Additionally, defendants have Wayne Smith's declaration that details Warner Bros. and DC's receipt of the Timeline, which, as you'll recall, formed the basis for Judge Zarefsky's opinion that Mr. Smith's actions were professional, reasonable, and appropriate.  Case No. CV 04-8400, Docket Nos., 108; 177 at 19:3-7.  For these reasons, defendants' 60 Requests on this topic are not only irrelevant, but also moot.  Thus, there is no "non-objectionable" portion of these Requests warranting a response.

4. <u>DC Has Not Waived Any Privilege</u>.  In closing, your letter rehashes arguments that have been the subject of separate correspondence between the parties.  As DC explained in its October 22 letter, there has been no waiver of any privilege and DC intends to move for a protective order on the terms set forth in DC's proposed privilege logging stipulation.  Oct. 22 letter from J. Tokoro to M. Toberoff and R. Kendall.  Given that the parties declared an impasse on this issue during the October 25 meet-and-confer, DC does not see the point of repeating its position here.

This is, of course, not a full recitation of the infirmities of defendants' position.  Nor is DC unwilling to meet and confer on sensible ways to narrow or otherwise address or better understand the relevance of defendants' requests.[1]  We can have that conversation next week.  We propose November 6 at 3pm PDT.  All of DC's rights are reserved.

Very truly yours,

/s/ Molly Lens

Molly M. Lens
for O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli, Esq.
Matthew T. Kline, Esq.
Richard Kendall, Esq.
Defense Counsel

---

[1] While you characterize DC's proposal that the parties meet and confer over the objectionable requests as a "dilatory tactic," which it is not, we note that this response mirrors that taken by defendants in response to DC's document requests.  *See, e.g.*, Marc Toberoff's Jan. 24, 2011 Objections and Responses to DC's Request for the Production of Documents (Response to Request 5: "Subject to and without waiving the foregoing general and specific objections, Toberoff is willing to meet and confer with Plaintiff regarding the tailoring of this request.").

**EXHIBIT 19**
**263**

# EXHIBIT 20

CERTIFIED
COPY

# In The Matter Of:

*LAURA SIEGEL LARSON*

*v.*

*WARNER BROS. ENTERTAINMENT INC. AND DC COMICS*

---

## *ORAL ARGUMENT*

*November 5, 2012*

---

**MERRILL CORPORATION**

LegaLink, Inc.    20750 Ventura Boulevard
Suite 205
Woodland Hills, CA 91364
Phone: 818.593.2300
Fax: 818.593.2301

**EXHIBIT 20**
**264**

ORAL ARGUMENT - 11/5/2012

Appeal Nos. 11-56863, 11-56034

CERTIFIED COPY

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————————————

LAURA SIEGEL LARSON,
Plaintiff, Counterclaim-Defendant, Appellant,
and Cross Appellee,

v.

WARNER BROS. ENTERTAINMENT INC. AND DC COMICS,
Defendants, Counterclaimants, Appellees,
and Cross-Appellants.

————————————

ON APPEAL FROM THE UNITIED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
THE HONORABLE OTIS D. WRIGHT II, JUDGE
CASE NO. CV-04-8400 ODW (RZx)

————————————

ORAL ARGUMENT

HEARD BEFORE NINTH CIRCUIT PANEL:

REINHARDT, THOMAS, SEDWICK

NOVEMBER 5, 2012

TRANSCRIBED BY:  MELANIE M. FAULCONER

CSR NO. 6420

ORAL ARGUMENT - 11/5/2012

Page 2

1                    PASADENA, CALIFORNIA

2                    NOVEMBER 5, 2012

3

4                         ---0---

5

6      MARC TOBEROFF, ESQ.:  May it please the Court.  Good

7      morning, your Honors.  My name is Marc Toberoff and I

8      represent the Plaintiff, Laura Siegel Larson.

9           I'd like to reserve 10 minutes of my 20 minutes

10     for rebuttal, if I may.

11          The Copyright Act's termination provisions were

12     designed to remedy the tremendous imbalance of power

13     between author/creators and media companies and to give

14     an author and an author's family an opportunity after a

15     very long waiting period to participate in the increased

16     market value of their works by finally recovering their

17     copyrights for the extended renewal term.

18          This case has become emblematic of the kind of

19     war of attrition an author's family must endure before

20     vindicating those rights.

21          I'm going to first turn to Warner Bros.'s

22     alleged settlement agreement defense.

23          Warner Bros.'s defense is based on a false

24     contract -- construct that it can artificially limit the

25     legal analysis to a single October 19th letter from the

**EXHIBIT 20**
**266**

1    Siegels' attorney and call that a contract, regardless

2    of the differing the terms in Warner Bros.'s October

3    26th counteroffer and vastly different terms in Warner

4    Bros.'s February 1st counteroffer, which were part and

5    parcel of the exact same contract negotiation.

6         The cases Warner Bros. relies on are in the

7    opposite, particularly the Facebook case.

8         In the Facebook case, unlike here, you had a

9    binding contract signed by the parties.  That contract

10    also contained a stipulation saying that it would be

11    binding and enforceable in a court of law.  So the

12    question before the Ninth Circuit was whether the terms

13    of that contract were sufficiently definite to be

14    enforceable.  And of course this Court, since it

15    basically called for the payment of fixed amounts of

16    cash and stock, found that it was enforceable.

17         None of that exists here.  After the

18    termination --

19    JUDGE REINHARDT:  Are you saying there was no

20    contract or that the contract, if it existed, was not --

21    not a contract that could be enforced?

22    MARC TOBEROFF, ESQ.:  There was no contract signed

23    by the parties.

24    JUDGE REINHARDT:  No.  I said -- that's your first

25    contention, that there's no contract.

ORAL ARGUMENT - 11/5/2012

Page 4

1              Is it your second contention or is that the

2    issue, whether there was a contract?

3         MARC TOBEROFF, ESQ.:  In this case --

4         JUDGE REINHARDT:  Yes.

5         MARC TOBEROFF, ESQ.:  -- the issue is whether

6    there's a binding contract.

7         JUDGE REINHARDT:  Okay.

8         MARC TOBEROFF, ESQ.:  So here after the effective

9    date of the settlement -- of the Siegels' termination in

10   April of 1999, on again/off again settlement discussions

11   ensued.

12             And on October 9th, John Schulman on behalf of

13   Warner Bros., their general counsel, and Kevin Marks on

14   behalf of the Siegels held a telephone conference.

15             On October 16th, Marks sends over a letter

16   purporting to set forth the terms that were discussed on

17   October 16th.

18             On October 19th in his letter, he's -- he's

19   going over the terms, but it's an equivocal letter

20   because at the end he says, "John, if I got anything

21   wrong, please let me know."

22        JUDGE THOMAS:  Why do you say that's equivocal?

23        MARC TOBEROFF, ESQ.:  Because it shows at the very

24   beginning it's indefinite because he's unsure of --

25        JUDGE THOMAS:  No.  That's using typical language.

EXHIBIT 20
268

ORAL ARGUMENT - 11/5/2012

Page 5

```
 1    It makes -- "this is what I see."

 2          I mean, the response to it, if they -- if they

 3    had written back and said, "No.  You're right," you'd

 4    have to agree that there's a contract; right?

 5    MARC TOBEROFF, ESQ.:  That could be the case.

 6    JUDGE REINHARDT:  What could be the case?

 7    MARC TOBEROFF, ESQ.:  Well, you said --

 8    JUDGE REINHARDT:  "This is absolutely right.  This

 9    is the contract we agreed to," isn't -- wouldn't that be

10    enough?

11    MARC TOBEROFF, ESQ.:  It's further along than the

12    facts here, but what happened here isn't --

13    JUDGE REINHARDT:  That I know, but that wasn't the

14    question.

15    MARC TOBEROFF, ESQ.:  Okay.

16    JUDGE REINHARDT:  All right.  So this could be the

17    contract if the parties agreed to it?

18    MARC TOBEROFF, ESQ.:  That's correct, if the party

19    agreed to material terms, you could have a contract.

20    JUDGE REINHARDT:  Yeah.

21          So you don't think that it's proper for a

22    lawyer who says, "This is the contract we agreed to.  If

23    you have any question about it" --

24    MARC TOBEROFF, ESQ.:  I don't think it's --

25    JUDGE REINHARDT:  -- "tell me"?
```

ORAL ARGUMENT - 11/5/2012

Page 6

1        MARC TOBEROFF, ESQ.:  -- improper at all, but I

2     don't think that forms --

3        JUDGE REINHARDT:  But, I mean, that shows

4     uncertainty?

5        MARC TOBEROFF, ESQ.:  It's not an unequivocal

6     acceptance of terms, but -- but even that --

7        JUDGE REINHARDT:  No.  It's a statement of the

8     terms.

9        MARC TOBEROFF, ESQ.:  It's a statement of what he

10    perceived the terms as discussed on October 16th.

11         On October 26th, Schulman writes back while

12    he -- Marks then goes off to China.  On October 26th,

13    Schulman writes back and in effect says, "You got it

14    wrong.  Enclosed is a more fulsome outline of what we

15    believe the terms of the deal are."

16         That constitutes a counteroffer because the

17    terms outlined in the October 26th letter from Schulman

18    materially differ from the terms in the October 19th

19    letter from Marks.

20         A counteroffer in the State of California

21    extinguishes Marks' offer.  Marks' offer itself is a

22    counteroffer because he purports to accept an offer on

23    October 16th that Schulman then tells him was never

24    made.  You could stop right there --

25        JUDGE THOMAS:  He didn't say that.  He said that's

ORAL ARGUMENT - 11/5/2012

1    "a more fulsome outline."

2            I mean, we have a -- there are sort of two

3    issues.  One is, did the parties ever agree to the

4    terms?  And -- and, two, were the terms embodied in the

5    first letter and-- and should a court enforce that?

6            And we've had -- there are cases that go a

7    little bit all over the map on that, but, I mean, there

8    are a lot of cases in which you say, "All right.  We

9    know you added some terms, but this is the agreement the

10   Court is going to enforce," and it's the simple

11   agreement as to terms.

12           So what -- what tells you that they're making a

13   true counteroffer as opposed to adding a bunch of

14   conditions that a court could later say, "Well, we're

15   not going to put those in because obviously the parties

16   didn't agree to them"?

17   MARC TOBEROFF, ESQ.:  Well, there's no agreement by

18   Warner Bros. as to the terms set forth in his letter.

19   In fact, there's disagreement.  There's disagreement as

20   to the properties that are being assigned.  There's

21   disagreement as to the essential term of compensation,

22   which you're dealing with a -- you're not dealing here

23   with a payment of cash and stock.  You're dealing with a

24   complex royalty system applicable to multiple media

25   where you're dealing with Marks that says, "We will not

ORAL ARGUMENT - 11/5/2012

Page 8

1    indemnify Warner Bros.  We'll only warrant -- we haven't

2    sold these rights to someone else," and Warner Bros.

3    adding six or seven warranties with indemnifications

4    attached.

5        JUDGE REINHARDT:  Well, both sides agreed that they

6    had agreed to a contract.

7        MARC TOBEROFF, ESQ.:  No.  Both sides perceived that

8    they had a deal in principle.  And the cases have said

9    that a deal in principle does not make a binding

10   contract.

11       What happens is in his October 26th

12   counteroffer Schulman doesn't stop there but he makes

13   reference and incorporates by reference a February 1st

14   draft that then comes in and widens the gap between the

15   parties even further.

16       On -- on May 9th, Joanne Siegel reacts to the

17   new and different terms that are being added by Warner

18   Bros. and -- and rejects those terms and says, "There

19   will -- there is no agreement."

20       And on May 26th -- she wrote a letter to the

21   CEO of Time Warner, Dick Parsons.  On May 26th, 2002

22   Dick Parsons writes back and acknowledges that they had

23   no agreement.  He says, "We hope the parties can arrive

24   at an agreement."

25       From that point on, from October 19th of 2001

ORAL ARGUMENT - 11/5/2012

Page 9

1    until we filed suit in -- in October of 2004, Warner

2    Bros. not once said that, "We have an agreement and we

3    accept the terms in the October 19th letter."  They were

4    totally silent for three years about that.

5        They come up with this concocted defense when

6    we filed suit to enforce the termination rights.  Under

7    cop- --

8    JUDGE THOMAS:  You've described a lot of factual

9    considerations.

10        Why -- why isn't this a matter for trial as

11   opposed to summary judgment?

12   MARC TOBEROFF, ESQ.:  Because contract formation is

13   based on the objective manifestations of the parties'

14   intent.  And here you have that objective manifestation

15   in the form of three or four undisputed documents: the

16   October 19th offer or counteroffer, the October 26th

17   counteroffer, the February 26th counteroffer, the May

18   9th rejection, and the May 26th letter in response

19   acknowledging that there's no agreement.

20        Warner has not come up with anything that

21   creates a genuine issue of material fact.

22        It -- the Court not only was allowed to rule on

23   summary judgment, it was required to rule on summary

24   judgment.

25   JUDGE THOMAS:  Why do you say that, "required"?

**EXHIBIT 20**
**273**

ORAL ARGUMENT - 11/5/2012

Page 10

1          MARC TOBEROFF, ESQ.:  Because -- because based on --

2     based on this undisputed objective manifestation of the

3     parties' intent there, was no meeting of the minds on

4     the material terms.  The Court rightly said, "I can

5     point to no document that contains the parties'

6     agreement."

7          Warner Bros. -- a negotiation is a give and

8     take.  You can't take an offer -- you can't go back

9     freeze in time and take an offer that a party made, a

10    proposal that you eviscerated by the counteroffer,

11    continued to grind the other side in negotiations, and

12    when that fails, reach back and try and resuscitate a

13    offer that has been extinguished by a counteroffer.

14         JUDGE REINHARDT:  Well, an agreement was reached,

15    according to your client's lawyer -- right? -- and he

16    advised the other side on August 9th that, "I must

17    caution.  I believe an agreement was reached last

18    October, albeit subject to documentation."

19         So the issue was whether the documentation

20    reflected the agreement.

21         MARC TOBEROFF, ESQ.:  The contract fell apart, as

22    many contract negotiations, in the attempt to focus on

23    the details of the agreement.

24         JUDGE REINHARDT:  There was an agreement and then

25    there was a dispute over the details, the documentation

**EXHIBIT 20**

**274**

ORAL ARGUMENT - 11/5/2012

1   of it.

2       MARC TOBEROFF, ESQ.:  No.  There was a deal in

3   principle.  But that deal in principle, for instance,

4   involved a 6 percent royalty.  That 6 percent royalty

5   had all sorts of sliding scale reductions.  There were

6   exclusions as to revenues to -- to which that royalty

7   would apply, would not apply.  You had very important

8   issues (unintelligible) studio agreements.  You have a

9   series of warranties that have indemnifications attached

10  to them, and if someone is found that you've breached

11  that warranty, they withhold the money on the royalty.

12      JUDGE THOMAS:  No.  I understand that.

13      MARC TOBEROFF, ESQ.:  The question is not whether

14  that's an unusual term.  The question is whether it

15  had -- it was contained in the October 19th letter.  And

16  here he's saying, "There will be no indemnification from

17  the Siegels."

18          So the question is, does that become a material

19  term of the agreement?

20          And it certainly is a material term.  The fact

21  you have such indemnities customarily in agreements I

22  would submit is not the issue.

23          The question is, did they agree to it on

24  October 19th?  And they didn't.

25          Did Warner Bros. make that the condition of an

ORAL ARGUMENT - 11/5/2012

Page 12

1      agreement?  Yes, they did.

2             And if-- and if these -- you know, people say

3      "a deal is a deal" precisely when they don't have a

4      binding contract.

5             If these terms were not material to Warner

6      Bros., then why did they insist upon them?

7             If a deal is a deal, then why did they go --

8      why didn't they just accept the October 19th recitation

9      of the terms and why did they continue to grind the

10     Siegels in the October 26th outline and in their

11     horrendous contract?

12            If you -- the same attorney, Marks, who sent

13     that attorney-client communication, which ordinarily

14     would have been privileged but for the fact it was

15     stolen from my law offices, the same attorney that wrote

16     that testified at length at deposition why, although he

17     thought there was a deal, there was no binding contract,

18     and he goes term by term by term in sworn testimony

19     comparing the huge gaps between the parties that had

20     developed.

21            You can't form a contract for the parties.  The

22     contract -- the parties have to form a contract

23     themselves.  Nor can you go back and -- and arrest the

24     legal analysis.

25        JUDGE REINHARDT:  I don't understand what that

ORAL ARGUMENT - 11/5/2012

1    means.

2            You can't form a contract between the parties

3    if you're their representative?

4    MARC TOBEROFF, ESQ.:  No.  A court cannot write a

5    contract for the parties when the parties themselves

6    cannot agree upon the terms.

7    JUDGE THOMAS:  No.  The only question is whether

8    they had an agreement in the earlier deal -- that's the

9    question -- and whether then there was a counteroffer

10   made later?  I mean, those are -- those are the two

11   questions.

12           I mean, if they had -- we have all sorts of

13   cases where you -- it happens all the time in

14   mediation.  Parties agree on principle.  They draft up a

15   set of principal points, and then they go draft

16   documents, and then another fight erupts and they say,

17   "Well, we can't agree on this."  It might be

18   indemnity.  It might be something else.  And then the

19   Court says, "All right.  I'm going to enforce the

20   initial agreement that you made, period."

21           Isn't that the question here?

22   MARC TOBEROFF, ESQ.:  No.  Here you don't even have

23   the first point.

24   JUDGE REINHARDT:  Well, that's --

25   MARC TOBEROFF, ESQ.:  Unlike --

ORAL ARGUMENT - 11/5/2012

1        JUDGE THOMAS:  That's why --

2        MARC TOBEROFF, ESQ.:  Unlike in the Facebook case

3    where you have a signed document signed by the parties

4    agreeing to certain terms that are definite and

5    enforceable, you don't even have that here.

6            And the reason we know you don't have that here

7    is because rather than accept -- in your hypothetical

8    you say they would accept the October 19th terms.  They

9    did the opposite.  They didn't accept them.

10        JUDGE THOMAS:  Well, they purported to by saying,

11    "Here's a more fulsome."

12            Now, you -- you would say -- you say that's

13    artifice and they were actually counter- --

14        MARC TOBEROFF, ESQ.:  Of course.

15        JUDGE THOMAS:  -- counterclaiming.

16        MARC TOBEROFF, ESQ.:  In the Valente -- in the

17    Valente-Kritzer case this Court held that congratulatory

18    words as to --

19        JUDGE THOMAS:  Yeah.

20        MARC TOBEROFF, ESQ.:  -- finally arriving at a deal

21    or in our case a monumental accord are meaningless.

22            What you look to is the objective manifestation

23    and you don't have an agreement where you don't have a

24    mutual meeting of the minds on the material terms of an

25    agreement.

**EXHIBIT 20**
**278**

ORAL ARGUMENT - 11/5/2012

1          And here the objective evidence proves that.

2     And that's why in summary judgment the Court was

3     required to find there was no agreement.  And there is

4     nothing that they put forward that raised a genuine

5     issue of fact as to contract formation.

6          I'd like to reserve the remainder for rebuttal.

7     JUDGE REINHARDT:  Thank you.

8     MARC TOBEROFF, ESQ.:  Thanks.

9     DANIEL M. PETROCELLI, ESQ.:  May it please the

10    Court.  Daniel Petrocelli with my colleagues Cassandra

11    Seto and Matt Kline for the DC Comics parties.

12         Turning initially to the issue of the

13    settlement agreement, it's our fundamental position that

14    this was not a matter appropriate for summary judgment

15    and that the Court should have allowed this to go to

16    trial on the lynchpin factual issues of whether or not

17    the parties reached an agreement, and if so, to what?

18         And our position in the Court below and in this

19    appeal was that the parties did reach an agreement with

20    the acceptance letter that the plaintiff's lawyer sent

21    to DC Comics on October 19, 2001 at SER 456.

22         This is a detailed recitation of terms written

23    in powerful legal language of acceptance which says, "We

24    hereby -- the Siegel family has accepted DC Comics'

25    offer," and then it goes on to say, "The terms are as

ORAL ARGUMENT - 11/5/2012

Page 16

1    follows," and this was the culmination of two-and-a-half

2    years of back and forth negotiations, and the record

3    before the District Court was that this letter was

4    written following a phone call between the two principal

5    negotiators where they resolved the last deal point, and

6    the testimony of Mr. Marks, the plaintiff's

7    representative was, "We are closed.  We will send you

8    the document."  Mr. Schulman responded, "Great.  We'll

9    start working on a long form."

10          This document is then sent, and a week later

11   Mr. Schulman responds, and, very importantly, this

12   document is sent by one of the most experienced lawyers

13   in one of the most experienced law firms in the country

14   dealing with entertainment contracts.  This lawyer who

15   knows and probably has written thousands of times a

16   reservation of rights that this document is not binding

17   until and unless a long form or a more formal document

18   is executed says no such thing in this letter.

19     JUDGE REINHARDT:  Now, are you talking about

20   Mr. Schulman's letter?

21     DANIEL M. PETROCELLI, ESQ.:  No.  I'm talking about

22   the acceptance letter, the document that constitutes the

23   contract.  That's the letter of October 19, 2001.

24     JUDGE REINHARDT:  All right.  And then you said -- I

25   thought you said that the reply --

ORAL ARGUMENT - 11/5/2012

1          DANIEL M. PETROCELLI, ESQ.:  Okay.

2          JUDGE REINHARDT:  -- was written by Schulman.

3          DANIEL M. PETROCELLI, ESQ.:  I may have misspoken.

4               But in this document following the conversation

5     with the DC representative, there's no indication in

6     here that the parties do not intend to be bound until

7     some future event.  There's no reservation, and the

8     testimony in the record is, "We are closed."

9               Then a week later, Mr. Schulman, the recipient

10    of Mr. Marks' letter and the other negotiator, responds

11    to it, and he states -- and I won't characterize it as a

12    counteroffer because I think that's begging the issue.

13    He states, "I've received it.  I've reviewed it.  I

14    enclose herewith for you and Bruce a more fulsome

15    outline of what we believe the deal we've agreed to is.

16    We're working on the draft agreement so that by the time

17    you have accomplished something of truly momentous

18    import, we will have this super matter transaction in

19    document form."  And then he goes on and flushes out in

20    more detail the same terms that appear in the October 19

21    letter and adds some things here and there to be sure,

22    like an indemnity or he flushes out a detail on some of

23    these royalty provisions.  These are essentially

24    immaterial variations and differences that are the

25    normal part of a process of commencing a long -- a long

ORAL ARGUMENT - 11/5/2012

1    form document.

2              Now, the error, the fundamental error of

3    analysis here both by the District Court and by

4    Mr. Toberoff is -- is the fact that this process is

5    going on, that there's now an effort to create a long

6    form is dispositive of the -- of conclusion that

7    there is no contract.

8              And that's what the District Court ruled.

9    Simply because the parties after the contract was formed

10   in the -- in the unambiguous acceptance letter, just

11   because of that, the fact that they now endeavor to do a

12   long form, the judge concluded as a matter of law there

13   can be no agreement.

14             And that's just wrong.

15             There are scores of cases.  This is an

16   extremely familiar situation where parties believe

17   they've reached a deal.  They have a confirmatory letter

18   or document.  They go off to prepare the long document.

19   Something happens, things breakdown, and one side then

20   says, "We don't have a deal."

21   JUDGE REINHARDT:  Was there any affidavit or

22   information introduced in the District Court as to the

23   custom and practice in the industry of reaching an

24   agreement, proceeding with it and then having the

25   documents prepared?

ORAL ARGUMENT - 11/5/2012

Page 19

1          DANIEL M. PETROCELLI, ESQ.:  There was no custom and

2    practice evidence in the record, but to be sure, that

3    would be highly relevant on the issue.

4          Mr. Schulman had a direct declaration in the

5    record saying that Mr. Larson's (sic) letter accurately

6    reflected all the terms of the deal and that he wasn't

7    intending to change anything and he was just flushing

8    out the detail.

9          Now the proof is in the pudding.

10         In response to this letter of October 26, which

11   the plaintiffs want to suggest is some material

12   departure, they even go so far as to say this is a

13   counteroffer.  In response to Mr. Schulman's letter,

14   Mr. Marks never objects.  He never reaches out and says,

15   "Wait a second.  You got a problem.  That's not what

16   we've agreed to."

17     JUDGE REINHARDT:  Tell me why, if that's correct, is

18   this matter for trial rather than summary judgment for

19   you?

20     DANIEL M. PETROCELLI, ESQ.:  Well, we did not move

21   for summary judgment in the Court below.

22     JUDGE REINHARDT:  You're not asking for that here?

23     DANIEL M. PETROCELLI, ESQ.:  Well, we think the

24   record evidence that there is an agreement is so strong

25   that we do think it can support a judgment in our favor,

ORAL ARGUMENT - 11/5/2012

```
 1   but we -- at the very minimum we believe that we're
 2   entitled to a trial.
 3          The judge just departed wildly from the summary
 4   judgment standard.  He drew all that adverse inference
 5   against us.  He -- he did not understand that the
 6   question of whether or not the long form process does or
 7   does not negate a prior agreement is a factual
 8   question.
 9          Your Honor dealt with that issue, if I may, in
10   the -- you had a case with Judge Pregerson on -- it was
11   the Best Interior -- the Best Interiors case, the same
12   situation.  The plaintiff was a labor union and they --
13   and they sued this company, and they had an agreement,
14   they had a handshake agreement, and then they went on to
15   do a long form, and things broke down, and the judge
16   concluded there was no deal as a matter of law, and this
17   Court reversed that and this Court said that the
18   question of the intent to contract is a fact issue.  The
19   question of whether the subsequent events undid the
20   prior agreement or didn't undo the prior agreement,
21   that's a fact question.
22      JUDGE THOMAS:  So are there undisputed facts or
23   not?
24          I mean, I -- I'm not sure I -- I understand
25   your answer because Judge Reinhardt was asking you, "Is
```

ORAL ARGUMENT - 11/5/2012

1    there sufficient evidence to -- for summary judgment in

2    your favor?"  And -- and you said, "Well, yes, there are

3    fact issues," so I'm --

4        DANIEL M. PETROCELLI, ESQ.:  There are -- there

5    are --

6        JUDGE THOMAS:  Tell me aside from the documents

7    themselves what genuine issues of material fact you

8    would raise.

9        DANIEL M. PETROCELLI, ESQ.:  The ques- -- the

10    threshold question of whether the parties intended to be

11    bound and by this letter, by this -- by this acceptance

12    letter or whether they intended not to be bound at that

13    time but only upon such time as they agreed to a long

14    form.  We say that they intended to be bound at this

15    time.

16        But that question and all the events that

17    happened, that's evidence that's relevant to the

18    threshold issue of whether or not there was a deal in

19    the first place.  It is not dispositive that there was

20    no deal.

21        And so that's the -- that's the fundamental

22    factual issue.

23        There's a second factual issue, I suppose, and

24    that's what -- what terms the parties agreed to.

25        Well, we -- our position is it's everything in

ORAL ARGUMENT - 11/5/2012

1    this letter, nothing more.  To the extent that

2    Mr. Schulman's letter is perceived to have added terms

3    or suggested new terms, they're not part of the deal.

4    It's that simple.

5        JUDGE THOMAS:  Why isn't that a matter of law that

6    you can decide on the basis of the documents

7    themselves?

8        DANIEL M. PETROCELLI, ESQ.:  You can decide as a

9    matter of law that if the parties reached the contract

10   as of October 19, everything thereafter doesn't matter.

11          What can't be decided as a matter of law is

12   that the parties did not reach an agreement.  That

13   cannot possibly be resolved against us with this record

14   of direct admissions by the plaintiffs that there was an

15   agreement, not only in the acceptance letter, not only

16   in the no response to Mr. Schulman's letter, thereby

17   indicating there was nothing significant or new or

18   different about it, but --

19       JUDGE REINHARDT:  Well, the second one was even more

20   fulsome than the first, I guess.

21       DANIEL M. PETROCELLI, ESQ.:  Excuse me?

22       JUDGE REINHARDT:  The second one was more fulsome

23   than the first.

24       DANIEL M. PETROCELLI, ESQ.:  The second one to be

25   sure was 50 pages of boilerplate, yes, but --

ORAL ARGUMENT - 11/5/2012

1        JUDGE THOMAS:  Well, except -- except perhaps as to

2    royalty rate.

3        DANIEL M. PETROCELLI, ESQ.:  Excuse me?

4        JUDGE THOMAS:  Except perhaps as to royalty rate.

5        DANIEL M. PETROCELLI, ESQ.:  Well, under royalty

6    rate, if you really read the letter between Mr. Schulman

7    and Mr. Marks, they're -- they're flushing out very

8    precise little details about when the royalty rate gets

9    reduced, if multiple characterizes are involved, if it's

10   a cameo appearance, if it's a special project.  I mean,

11   this is why sometimes documents take 50 pages or more.

12        But that's not a material term, the absence of

13   which would negate a contract, and if it were, that

14   itself is a question of fact.  And case after case say

15   the -- the importance to which the parties attach to

16   particular terms is a fact question.

17        There was a question to Mr. Toberoff earlier I

18   think by Judge Reinhardt about whether this document,

19   this -- this contract, this acceptance letter of October

20   19 has sufficient material terms to constitute a

21   contract.

22        It does.  It easily passes the test.  I mean,

23   the threshold, as the Facebook case illustrates, is very

24   low: price, term.  So there's no question that this

25   document contains sufficient terms that a court could

**EXHIBIT 20**
**287**

ORAL ARGUMENT - 11/5/2012

Page 24

1    never look at this document and conclude as a matter of

2    law that it's not sufficient to be a contract.

3         Whether there are new and additional terms that

4    the parties wanted and whether that somehow gets added

5    on here or doesn't get on, that's a fact question that

6    takes testimony about the significance to which parties

7    attach to -- to the point, did they discuss it in their

8    negotiations, did they not discuss it, did they forget

9    to put in something, did they not forget, and that's the

10   subject of testimony.

11        Counsel has conflated this idea of the

12   objective hearing of contracts, which to be sure is how

13   the issue is decided, with the rules of evidence about

14   what kind of testimony is admitted in order to prove up

15   intent.

16        All kinds of testimony is admitted, including

17   custom and practice, including parties' state of mind as

18   to why they did certain things, why they said certain

19   things.

20        So at bottom we think that this case never

21   should have been thrown out, and importantly this has

22   the potential to dispose of this entire dispute.

23        Under this agreement, which took three years to

24   negotiate, the plaintiffs would receive an immediate

25   payment of $20 million, plus substantial future

ORAL ARGUMENT - 11/5/2012

1    consideration for the duration of the copyright term,

2    which is 2033, plus medical benefits for their family

3    and all kinds of other benefits.

4            On the other hand, DC gets the transfer of the

5    copyright interests that were recaptured by the Siegel

6    family.  So they -- they transfer the copyright

7    interests, and they get a lot of money.

8        JUDGE REINHARDT:  Well, that's not -- that's

9    not -- no need to try to persuade us it's a good deal

10   for them.  If they think it's a good deal --

11       DANIEL M. PETROCELLI, ESQ.:  Well --

12       JUDGE REINHARDT:  -- for them, they wouldn't be

13   here.

14       DANIEL M. PETROCELLI, ESQ.:  Well, that's correct,

15   your Honor, because they believed they had a better deal

16   when someone came along and offered them more, and --

17   and they then repudiated this agreement.

18           And one final comment.

19           This question about what we did and did not do

20   afterwards, that's a very incomplete recitation that was

21   received, but all of that is simply more relevant

22   evidence on the question of whether the parties at the

23   inception when they made their deal intended to be bound

24   or not.  That's just evidence of subsequent conduct of

25   the parties.  Whether it bears on the contract formation

**EXHIBIT 20**

**289**

ORAL ARGUMENT - 11/5/2012

1    or not is a relevance issue that's up to the trial judge

2    here.

3        JUDGE SEDWICK:  Let me ask you this question.

4            We had read your papers to suggest you were

5    seeking summary judgment, but assuming that you're

6    either now only seeking a remand for trial or that we

7    should independently decide that that's the most you

8    could get, do you think that this Court needs to decide

9    any of the other issues if we remand this case for trial

10   and whether there was an agreement?

11       DANIEL M. PETROCELLI, ESQ.:  I believe that since

12   this is potentially dispositive, it does not have to

13   because if this contract is proven and this contract is

14   enforced, that ends once and for all this dispute.

15   Every issue that is before your Honors and these very

16   large amount of briefs would all -- would all resolve.

17   That's why it took three years to do.  This wasn't some

18   initial offer.

19       JUDGE REINHARDT:  You may not be the one to answer

20   this question, but just out of curiosity, would it

21   resolve the prior case also?

22       DANIEL M. PETROCELLI, ESQ.:  Well, it would have a

23   significant impact at least on the damages in the prior

24   case and my view is it would go a long way to resolving

25   that one as well, at least insofar as the Siegel side is

**EXHIBIT 20**
**290**

ORAL ARGUMENT - 11/5/2012

```
1    concerned.

2          I don't know if I have any time left.

3          JUDGE REINHARDT:  You have five minutes.

4          DANIEL M. PETROCELLI, ESQ.:  I would like to turn to

5    one other legal issue that's on a totally separate

6    subject, if your Honors don't have any additional

7    questions on this topic, and that has to do with a

8    decision, purely legal decision that the District Court

9    below made.

10         And what the Court decided was that this very

11   first Superman comic book, which is called "Action

12   Comics Number 1," SER 714, the District Court decided

13   that since this was largely created by Mr. Siegel and

14   Mr. Shuster long before DC came into the picture, "this"

15   being the character Superman in black and white

16   sketches, that he awarded the copyrights in the various

17   elements in this action comics book entirely to the

18   Siegels and the Shusters.

19         The error -- we -- we said to the judge, "We

20   don't challenge that in the main, except for this.  We,"

21   DC, "back in 1938 came up with the idea of making a

22   comic book.  Siegel and Shuster had drawn sketches of

23   Superman for newspaper strips in black and white.  We

24   want to create a comic book.  We want to put it in

25   color.  And we then retained them to do so."
```

**EXHIBIT 20**
**291**

ORAL ARGUMENT - 11/5/2012

```
 1              It is undisputed that certain elements of this

 2    were done by DC in concert with Shuster and Siegel but

 3    with other employees and artists.  So we asked the Court

 4    to declare certain parts of this -- certain parts of

 5    this owned by DC, either as a work for hire or as a

 6    joint work or other theories of ownership.

 7              The Court said he was -- the Court concluded it

 8    was precluded from doing so because of a decision back

 9    in the seventies in the Second Circuit by DC's

10    predecessor and Siegel and Shuster called the National

11    case, and the Court believed that the National case was

12    res judicata and/or collateral estoppel and prevented DC

13    from litigating the issue of whether it had ownership

14    interest and admittedly part of the contributions that

15    it made to Action Comics 1.

16              And I only wanted to address the Court's ruling

17    on collateral estoppel.  But it was clearly wrong for

18    the following reason, and this is a purely legal issue.

19              The National case back in the seventies was a

20    lawsuit about who owned the renewal copyright in Action

21    Comics 1, and this was before the new termination

22    legislation came about, the second 28-year renewal

23    term.

24              DC contended that it owned the renewal term for

25    two separate and independent reasons.
```

ORAL ARGUMENT - 11/5/2012

```
 1              One, the Siegel and Shuster parties transferred
 2      full ownership of their Superman elements way back when
 3      when they first met with DC and documented March 1.  So
 4      they said, "We own it by contract."
 5              Second, secondly DC said -- actually it was
 6      National, its predecessor, but I'll just call it "DC."
 7      DC said, "We own it because it was work for hire and we
 8      were the author of it, and so we own the renewal
 9      rights."  So they said, "We own the renewal right for
10      those reasons."
11              The District Court agreed on both counts, and
12      it went up to the Second Circuit.
13              The Second Circuit affirmed on the ground that
14      the conveyance of rights back in 1938 from Siegel and
15      Shuster to Na- -- to DC included the conveyance of the
16      rights to the renewal term, and so the decision below
17      was correct and it was affirmed.
18              The Second Circuit then went on to say,
19      however, that the ruling about work for hire was
20      incorrect, and it made some references to the fact that
21      Superman had been developed before DC came along, so how
22      could the entirety of Action Comics 1 be a work for
23      hire?
24              It's that language that the judge in this case,
25      the District Court, felt was binding on him.
```

**EXHIBIT 20**
**293**

ORAL ARGUMENT - 11/5/2012

```
 1            We pointed out below and pointed out in our

 2    papers, as a matter of law that cannot be res judicata

 3    or collateral estoppel because that was an adverse

 4    determination made in favor of a prevailing party and it

 5    was not necessary to the decision and it was dictum.

 6    We, for example, never could have appealed that

 7    decision.  We won, National did.  It never could have

 8    appealed solely for the purpose of addressing the

 9    alternative statement by the Court of Appeal that was

10    adverse to -- to National.

11            And case after case make this clear, including

12    the Fireman's Fund case in the Ninth Circuit, the --

13        JUDGE REINHARDT:  All right.  We're running out of

14    time.  Let me just ask you.

15            Is this -- is this issue resolved if you win on

16    the summary judgment question?

17        DANIEL M. PETROCELLI, ESQ.:  Yes.  Everything goes

18    away on the summary judgment, everything, your Honor.

19    It's -- it's the end of this case once and for all.

20        JUDGE REINHARDT:  All right.  Thank you very much.

21        DANIEL M. PETROCELLI, ESQ.:  Thank you very much,

22    your Honors.

23        MARC TOBEROFF, ESQ.:  Your Honors, Warner Bros.

24    cannot point to any place in 2001 where they accepted

25    the terms set forth in the October 19th, 2001 letter
```

**EXHIBIT 20**
**294**

ORAL ARGUMENT - 11/5/2012

1    from Marks.

2          I don't know how one can find that a contract

3    exists without mutual agreement of both sides.

4          Instead of agreement from Warner Bros. we have

5    disagreement as reflected in the October 26th letter and

6    as reflected in Warner Bros.'s agreements.

7          It's -- it's insane to say this is purely a

8    question of formal documentation of an agreement of the

9    parties when there is --

10   JUDGE REINHARDT:  The problem -- and maybe you can

11   comment on this, Mr. Toberoff.  The problem is that the

12   October 26th letter doesn't reject the October 19th

13   letter.  It says, "a more ful- -- I'm enclosing a

14   fulsome outline of what we believe the deal we've agreed

15   to is."

16         Now, the argument on the other side is that

17   that says, "We've agreed to a deal but we're giving you

18   a more expansive outline of what that deal is."

19         Now, what's the answer to that?

20   MARC TOBEROFF, ESQ.:  The answer to that is whether

21   or not there's a contract is not based on verbiage such

22   as "a more fulsome outline."  It's based on the

23   comparison of the terms.  And anything less than an

24   unequivocal acceptance of an offer is a counteroffer

25   extinguishing that offer.  It's been that way forever in

EXHIBIT 20
295

ORAL ARGUMENT - 11/5/2012

Page 32

```
 1   California and it's still that way in California.  So
 2   regardless of how you --
 3       JUDGE REINHARDT:  Well, take -- take the example of
 4   a movie distribution deal or a movie production deal
 5   where the parties make -- they agree to the deal.  They
 6   then start with the movie.  Finally in the middle of the
 7   movie they get down to reducing everything to writing
 8   and there's a disagreement but both parties agree that
 9   "we have a deal."
10           Now, is that not an agreement without the
11   written exposition of it?
12       MARC TOBEROFF, ESQ.:  It depends on the terms of the
13   agreement.  Here -- here -- and there have been cases
14   about that where one side has argued, "In California and
15   Hollywood we do lunch.  We don't do contracts," and
16   they've rejected those arguments when it came down to
17   specific contract formation issues like this.
18           They cannot point to an acceptance of the terms
19   of the October 19th letter.  And instead we have --
20       JUDGE THOMAS:  Well, it depends on who is the
21   offerer and who is the-- who is the accepting party.
22           What-- what the October 19th letter says, "This
23   is to confirm our telephone conversation," it goes on to
24   say, "which we accept the DC Comics' offer of October
25   16th."
```

ORAL ARGUMENT - 11/5/2012

1          So if there's a legitimate offer on the 16th

2     and accepted on the 19th, does it really matter what

3     happened after that?

4          MARC TOBEROFF, ESQ.:  Yes, it does because on --

5          JUDGE THOMAS:  I mean, if there's a contract

6     formation as of this and it's reflected in the letter of

7     the 19th, then -- then there's a deal.

8          MARC TOBEROFF, ESQ.:  But this is an ongoing

9     negotiation that continues into 2002.

10         JUDGE THOMAS:  No.  I understand that.

11         MARC TOBEROFF, ESQ.:  And that's acknowledged by all

12    the parties.  So you can't artificially limit the

13    analysis to an oral communication on October 16th and a

14    written communication on October 19th.

15         JUDGE THOMAS:  I'm just saying, to my mind at least,

16    I haven't come to rest on it, but it certainly suggests

17    that it's a more complicated situation, and therefore

18    there's a -- probably a genuine issue of material fact.

19         MARC TOBEROFF, ESQ.:  I -- I can see none.  And I

20    can tell you why.  Because when he refers to the October

21    16th conferen- -- teleconference and -- and asks, "Do

22    you agree that these are the terms?" because that's what

23    he says, he says, "If I got anything wrong, let me

24    know," he's essentially asking, "Do you agree, Warner

25    Bros., that these are the terms?" and all they would

**EXHIBIT 20**
**297**

ORAL ARGUMENT - 11/5/2012

1    have to have done is said, "Yes," then you would have a

2    different situation.

3             And that's not the situation that exists here,

4    and the objective evidence shows that -- the undisputed

5    evidence shows that it's not the situation that exists

6    here.

7             What it shows is that Warner Bros. said,

8    "That's not what I believe" --

9        JUDGE THOMAS:  They didn't say that.

10       MARC TOBEROFF, ESQ.:  Yes, they did.

11       JUDGE THOMAS:  They said, "Here's -- here's a --

12   here's a larger outline."

13            Now today they say, "Well, that's essentially

14   the same terms."  And you can say, "Well, it's not the

15   same terms."

16            And, you know, obviously they didn't agree --

17   the parties did not agree on indemnity, period.  There's

18   no agreement on indemnity.

19            But the question for the Court is not

20   necessarily whether there was -- whether -- the question

21   is whether there was a contract formed before that.

22       MARC TOBEROFF, ESQ.:  Exactly.  This isn't -- well,

23   there's not a contract formed before that if when he

24   says, "This is the terms that we believe were

25   discussed," he doesn't just say, "more fulsome outline,"

ORAL ARGUMENT - 11/5/2012

Page 35

```
 1   he says, "a more fulsome outline of what we believe the

 2   terms are."  They then send over a contract and reserve

 3   the right of Warner Bros. to -- to -- to revise the

 4   terms, and they acknowledge that the Siegels can also

 5   revise the terms.  It's not just a matter of these

 6   indemnity provisions.

 7           I would refer the Court --

 8       JUDGE THOMAS:  No.  I understand that.  I just used

 9   that as an example.

10           I mean, it often happens where you have a deal

11   reached, a deal letter like this, and then the parties

12   add terms, and they say, "Well, that's not part of our

13   deal," and then they may agree or disagree on subsequent

14   terms, but that doesn't alter the original agreement or

15   the fact that it's been made.

16       MARC TOBEROFF, ESQ.:  The problem is you have no

17   acceptance to those original terms.  The hypothetical

18   doesn't apply here.

19       JUDGE THOMAS:  Unless you say that this -- the --

20   the letter of the 19th accepts an offer of the 16th.

21       MARC TOBEROFF, ESQ.:  And -- and we have a letter

22   from October 26th saying that wasn't the offer, "This is

23   what we believe the deals are."

24           Now, I want to draw the Court's attention to a

25   chart in our reply brief below which impressed the
```

ORAL ARGUMENT - 11/5/2012

Page 36

 1    District Court who dealt with this in tremendous

 2    detail.  It's in our reply excerpts at Pages 140 to 149

 3    where we outline the material differences.

 4             Warner acknowledges that the properties being

 5    assigned is an essential term using -- using words from

 6    the -- from the Facebook case.

 7             Well, the properties in the Marks' memo are

 8    limited to three properties: Superman, Superboy and

 9    Spectre.

10             The properties in Schulman's memo and then in

11    the February 1st agreement concern Superman, Superboy,

12    related properties and anything created for DC, whether

13    published or unpublished, by Siegel.  So there's an

14    expansion of what is even being assigned.

15             Secondly, the royalties.  You have a very

16    complex royalty situation here.  It's not like in

17    Facebook with a fixed amount of money and a fixed amount

18    of stock.  You have a 6 percent royalty which was

19    reducible to 3 percent, which is then reducible to 1 1/2

20    percent to 1 percent as an absolute floor.

21             Warner Bros. drills all sorts of holes in that

22    floor rendering them illusory and -- and having

23    situations where they would receive no money whatsoever

24    for the exploitation of Superman.

25             These are material contract terms.  You can't

**EXHIBIT 20**
**300**

ORAL ARGUMENT - 11/5/2012

1    ignore them.  They change the -- the -- the dance

2    between offer and counteroffer.  And that's the way

3    contract formation is analyzed in the State of

4    California.

5         Warner Bros. has a situation where if Superman

6    appears in a -- in another character's contract

7    published by DC, like Green Arrow, for weeks Superman is

8    appearing but the name is not in the title of the comic

9    book, under -- under Schulman's scenario, you would

10   receive a -- excuse me -- under Marks' scenario, you

11   would receive a royalty.  Under Warner Bros.'s scenario,

12   you receive no royalty.

13        It comes as no surprise that all of the changes

14   made by Warner Bros., which they now say are boilerplate

15   and not material, were all decidedly in Warner Bros.'s

16   favor and affect the key terms of the agreement: the

17   scope of the properties, the royalties and

18   compensation.

19        The -- the warranties and indemnifications is

20   not a small matter because what happens with the studios

21   when you enter in a contract and you have substantial

22   contingent compensation and there's any claim by a third

23   party or anything happens which they can claim triggers

24   a warranty, they will withhold your -- they will

25   withhold your royalty payments.

ORAL ARGUMENT - 11/5/2012

1          There are credit provisions where Marks says,

2     "We want credit in paid ads," because that's very

3     important to his clients and he testifies that to

4     effect.

5          Warner Bros.'s October 26th outline and their

6     long form says, "No credit in paid ads."  Warner Bros.

7     requires an elderly Joanne Siegel who is in her late

8     eighties to go on publicity tours promoting Superman.

9     None of this exists.  There's --

10    JUDGE REINHARDT:  Well, that doesn't sound like

11    (unintelligible) form.  As David's (sic) saying, "These

12    are the sort of -- the kind of things we put in our

13    contracts."

14         And, you know, that clause isn't drawn for her

15    individual -- you know, because they're concerned about

16    her.  That's a boilerplate provision.

17    MARC TOBEROFF, ESQ.:  Well, it's not boilerplate to

18    say that the Siegels have to indemnify Warner Bros. for

19    a claim for her ex-husband.

20    JUDGE REINHARDT:  No, no.  I'm talking about that

21    Joanne -- that Joanne Siegel has to go on a tour.  You

22    know, those are the kinds of things that have to be

23    worked out after there's a contract.

24    MARC TOBEROFF, ESQ.:  Well, but the royalty

25    provisions and the scope of the properties assigned go

EXHIBIT 20
302

ORAL ARGUMENT - 11/5/2012

1    to the heart of this.  And under Section 204(a) of the

2    Copyright Act when you have an assignment of a

3    copyright, it has to be in writing signed by the

4    assignee.

5           Marks' letter does not assign any trans- -- any

6    copyrights.  It says, "We will.  We anticipate signing

7    those contracts."

8           Nobody in this exchange viewed the October 19th

9    letter outlining deal terms or the October 26th letter

10   outlining different deal terms as a binding, enforceable

11   contract.  Everybody understood that considering the

12   magnitude of these rights and the complexity of the

13   agreement that was being discussed that you would have a

14   final written agreement signed by both parties.

15   JUDGE THOMAS:  So how do we -- how do we determine

16   that as a matter of summary judgment, that everybody

17   understood?

18   MARC TOBEROFF, ESQ.:  Because -- because --

19   JUDGE THOMAS:  No.  I mean, you can't -- you can't

20   do that without -- without extrinsic evidence of the

21   parties.

22          And you well may be right.  I'm just saying.

23   But if you can't do it on the basis of the documents

24   alone.  If you have to rely on what you say is that

25   everybody understood, then that's extrinsic evidence

**EXHIBIT 20**
**303**

ORAL ARGUMENT - 11/5/2012

Page 40

1    that requires a resolution by a fact-finder.

2        MARC TOBEROFF, ESQ.:  I respectfully disagree, your

3    Honor.  If you look at the October 26th Warner Bros.

4    communication, it specifically refers, "We will have

5    this matter drafted in contract form and we will send it

6    to you."  So right there you know --

7        JUDGE THOMAS:  Well, that's what happens in all

8    cases.  You don't have a -- you always have --

9        MARC TOBEROFF, ESQ.:  But that's not extrinsic

10   evidence.  That's objective evidence saying that --

11   showing that the parties anticipated that the form of

12   agreement would be a written agreement signed by both

13   parties.  And that's what's required by the Copyright

14   Act.  That never happened.  And then they send it over

15   and they reserve the right to --

16       JUDGE THOMAS:  I don't mean to quarrel with you.

17   I'm just -- you know, we're working through these --

18   these cases.

19           But what often happens when you have a

20   situation like this is the Court will say, "If you have

21   enough for specific enforcement of the terms to which

22   you agreed," and therefore you execute the unnecessary

23   assignments and so forth.

24           The fact that they weren't all executed I don't

25   think is dispositive.  /

ORAL ARGUMENT - 11/5/2012

1          Now, you may well be right on it.  I'm just

2     saying that it's a more complicated issue than --

3     MARC TOBEROFF, ESQ.:  Your Honor, I believe if you

4     peel back the veneer of comments like "a deal is a deal"

5     and look at the actual facts of this case carefully, you

6     will see that under every single principle in California

7     law about contract formation this fails as a matter of

8     law and you can make that determination on this

9     objective exchange of undisputed documents.  The parties

10    absolute -- in the State of Calif- --

11    JUDGE REINHARDT:  I think we've explored this

12    fully.  And you're seven minutes are over, so --

13          I mean, you know, these are not simple issues,

14    and I don't mean that the answer may not be simple, but

15    the case, as you say, you know, we're going to -- to the

16    extent that we haven't sufficiently read them, we'll

17    certainly explore them all, and, you know, we understand

18    the arguments of both side, and they're legitimate

19    arguments, so --

20    MARC TOBEROFF, ESQ.:  I'd just like to read to you

21    from a memo that you pointed out, Marks' memo, which by

22    the way is an extra-record document that should be made

23    part of this record, but I'd like to read to you what

24    Marks actually says in that memo.

25          He says, "I believe a deal will be finalized

ORAL ARGUMENT - 11/5/2012

Page 42

```
 1   with DC Comics, even if this process is not entirely

 2   smooth -- smooth.  If the parties cannot reach final

 3   agreement, then the negotiations would be terminated."

 4   That's what he says in an attorney-client communication

 5   that they're saying proves there was a binding

 6   contract.

 7        JUDGE REINHARDT:  Okay.  Thank you.

 8        MARC TOBEROFF, ESQ.:  Thank you, your Honor.

 9        JUDGE REINHARDT:  The case just argued will be

10   submitted.

11                          ---0---

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**EXHIBIT 20**
**306**

ORAL ARGUMENT - 11/5/2012

Page 43

```
 1                C E R T I F I C A T E

 2

 3           I, Melanie M. Faulconer, certify

 4      that the foregoing transcript is a true

 5      record of said proceedings, that I am not

 6      connected by blood or marriage with any of

 7      the parties herein, nor interested directly

 8      or indirectly in the matter in controversy,

 9      nor am I in the employ of counsel.

10           I have hereunto subscribed my name

11      this 6th day of November, 2012.

12           Damian Alonzo

13           Damian Alonzo on behalf of Melanie M. Faulconer

14                     MELANIE M. FAULCONER

15

16

17

18

19

20

21

22

23

24

25
```

**EXHIBIT 20**
**307**

# EXHIBIT 21

Marc Toberoff (188547)
 *mtoberoff@ipwla.com*
Pablo D. Arredondo (241142)
 *parredondo@ipwla.com*
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway #348
Malibu, California 90265
Telephone:  (310) 246-3333
Fax:          (310) 246-3101

Richard B. Kendall (90072)
 *rkendall@kbkfirm.com*
Laura W. Brill (195889)
 *lbrill@kbkfirm.com*
KENDALL BRILL & KLIEGER LLP
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California, 90067
Telephone:  (310) 556-2700
Fax:          (310) 556-2705

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>                              Plaintiff,<br><br>          vs.<br><br>PACIFIC PICTURES CORPORATION;<br>IP WORLDWIDE, LLC; IPW, LLC;<br>MARC TOBEROFF, an individual;<br>MARK WARREN Peary, as personal<br>representative of the ESTATE OF<br>JOSEPH SHUSTER; JEAN ADELE<br>Peavy, an individual; JOANNE SIEGEL,<br>an individual;  LAURA SIEGEL<br>LARSON, an individual,<br>and DOES 1-10, inclusive,<br><br>                              Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br><br>**DEFENDANT MARC TOBEROFF'S SUPPLEMENTAL RESPONSE TO PLAINTIFF DC COMICS' FIRST SET OF INTERROGATORIES**<br><br>Complaint Filed:  May 14, 2010<br>Trial Date:  None Set |

110463.1          DEFENDANT MARC TOBEROFF'S SUPPLEMENTAL RESPONSE
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

**EXHIBIT 21**
**308**

1  has responded to any interrogatory is not intended to be and shall not be construed as

2  a waiver by Toberoff of all or any part of any objection to any interrogatory.

3  Toberoff reserves until the time of trial all objections as the relevance or admissibility

4  of any facts provided in his answers to the Interrogatories.

5      12.    The general and specific objections set forth herein are based on

6  information now available to Toberoff and Toberoff reserves the right to revise,

7  correct, add, clarify or supplement the general and specific objections and responses

8  set forth herein.

9  <div align="center">**II.**</div>

10  <div align="center">**RESPONSES TO INTERROGATORIES**</div>

11      Subject to, and without waiving the General Objections and qualifications

12  above, Toberoff responds to each individual Interrogatory as follows:

13  **Interrogatory No. 1**

14      IDENTIFY the TOBEROFF TIMELINE AUTHOR.

15  **Response to Interrogatory No. 1**

16      Toberoff objects to this request to the extent that it seeks information which is

17  not reasonably calculated to lead to the discovery of relevant and admissible

18  evidence.  Toberoff additionally objects to this request to the extent that it seeks

19  communications or items protected by the attorney-client privilege, the attorney work

20  product doctrine and any other privilege or immunity available under law or arising

21  from contractual obligation.  Subject to and without waiving the foregoing general

22  and specific objections, Toberoff responds, without limitation, as follows:

23      David Michaels. Toberoff does not have sufficient information at this time to

24  know whether or not other individuals or entities participated in production and

25  dissemination of the "Timeline."

26  **Interrogatory No. 2**

27      DESCRIBE in detail who participated in the ALLEGED INTERNAL

28  INVESTIGATION, including participants within your law firm and outside of your

110463.1

1 | law firm.

2 | **Response to Interrogatory No. 2**

3 | Toberoff objects to this request to the extent that it seeks information which is

4 | not reasonably calculated to lead to the discovery of relevant and admissible

5 | evidence.  Toberoff objects to this request to the extent that it seeks communications

6 | or items protected by the attorney-client privilege, the attorney work product doctrine

7 | and any other privilege or immunity available under law or arising from contractual

8 | obligation.  Subject to and without waiving the foregoing general and specific

9 | objections, Toberoff responds, without limitation, as follows:

10 | Marc Toberoff, McNally Security Group.

11 | **Interrogatory No. 3**

12 | DESCRIBE in detail the ALLEGED INTERNAL INVESTIGATION,

13 | including all steps taken by YOU and any other participants to IDENTIFY the

14 | TOBEROFF TIMELINE AUTHOR and OBTAIN information regarding the

15 | TOBEROFF TIMELINE AUTHOR and/or the TOBEROFF TIMELINE.

16 | **Response to Interrogatory No. 3**

17 | Toberoff objects to this interrogatory on the grounds that it is overbroad,

18 | burdensome and oppressive.  Toberoff objects to this request to the extent that it

19 | seeks information which is not reasonably calculated to lead to the discovery of

20 | relevant and admissible evidence.  Toberoff further objects to this request on the

21 | grounds that it is not reasonably limited in scope.  Toberoff additionally objects to

22 | this request in that it seeks communications or items protected by the attorney-client

23 | privilege, and the attorney work product doctrine.

24 | **Interrogatory No. 4**

25 | DESCRIBE in detail any and all information revealed by the ALLEGED

26 | INTERNAL INVESTIGATION, including all information regarding the

27 | TOBEROFF TIMELINE AUTHOR and/or the TOBEROFF TIMELINE.

28 | **Response to Interrogatory No. 4**

110463.1

1    Toberoff objects to this interrogatory on the grounds that it is overbroad,

2    burdensome and oppressive. Toberoff further objects to this request on the grounds

3    that it is not reasonably limited in scope. Toberoff objects to this request to the

4    extent that it seeks information which is not reasonably calculated to lead to the

5    discovery of relevant and admissible evidence. Toberoff additionally objects to this

6    request to the extent that it seeks communications or items protected by the attorney-

7    client privilege, the attorney work product doctrine and any other privilege or

8    immunity available under law or arising from contractual obligation. Subject to and

9    without waiving the foregoing general and specific objections, Toberoff responds,

10   without limitation, as follows, including, for the sake of context, information that was

11   known prior to the investigation:

12   • **July 18, 2005**: The Firm hires attorney David Michaels ("Michaels") as its

13     lowest paid junior attorney. It appears from Michaels' interview that he took

14     the low-paying job because he was in need of money.

15   • **Mid-October 2005**: After three just months as an employee, and without

16     warning or explanation, or any prior incident at work, Michaels abruptly leaves

17     work during the middle of the day and never returns. Numerous concerned

18     calls to Michaels are never returned.

19   • **November-December 2005**: Michaels contacts the Siegels and attempts to

20     "steal" these clients from Mr. Toberoff's firm by baselessly accusing Mr.

21     Toberoff of purported unethical conduct, like allegedly charging the Siegels

22     "unconscionable fees." Under the guise of protecting the Siegels, Michaels

23     visits them, falsely disparages Mr. Toberoff, and attempts to shepherd the

24     Siegels to "a larger firm" (name unknown). In follow-up e-mails, Michaels

25     advises the Siegels to cease all communication with Mr. Toberoff, and he

26     provides them with a termination letter to give to Toberoff & Associates, as

27     well as a new retainer agreement for the Siegels to hire Michaels at a reduced

28     contingency fee. In December, 2005, the Siegels reject Michaels' attempt to

110463.1

5
DEFENDANT MARC TOBEROFF'S SUPPLEMENTAL RESPONSE
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

**EXHIBIT 21**

1   take their case away from Toberoff & Associates.  During this period,

2   Michaels also approaches another client of Toberoff & Associates, Allison

3   Giannini.  He attempts to take that client's business as well by falsely

4   disparaging Mr. Toberoff, but is rebuffed.

5   • Unbeknownst to the firm, the Siegels and/or the Shuster Estate, Michaels had

6   secretly made copies of numerous documents, many privileged, stolen from

7   Toberoff & Associates' legal files ("Stolen Documents"), and after Michaels'

8   advances are rejected by the Siegels, he delivers at least three duplicate

9   packages of the Stolen Documents to high-level Warner Bros. executives, each

10  allegedly with the same anonymous defamatory cover letter ("Cover Letter")

11  which he entitles "Superman -Marc Toberoff Timeline."  The Cover Letter

12  opens with the line:  "Consider it an early Holiday gift."

13  • The Stolen Documents were allegedly received by mail by high-level Warner

14  Bros. executives Alan Horn (President & COO), John Schulman (General

15  Counsel), and Patti Connolly (Executive Vice President of Business Affairs).

16  • **July 5, 2006**:  Toberoff receives a vague letter from Arnold & Porter LLP,

17  who are retained by Warner Bros.  The firm states that it is holding 3 sets of

18  documents sent to it by Warner Bros.' General Counsel, John Schulman.

19  These are eventually disclosed to be the three sets of Stolen Documents each

20  with the "anonymous" defamatory Cover Letter.

21  • Knowing that it is under a duty to immediately notify Toberoff & Associates of

22  its receipt of the firm's privileged documents, Warner Bros. dubiously claims

23  to have received the Stolen Documents on June 28, 2006, even though

24  Michael's Cover Letter states "*consider it an early Holiday gift*," and even

25  though this coincides with Michael's rejection by the Siegels *in December,*

26  *2005*.

27  **Interrogatory No. 5**

28  DESCRIBE in detail any internal or external investigation other than the

110463.1

1 | ALLEGED INTERNAL INVESTIGATION YOU participated in regarding the

2 | TOBEROFF TIMELINE AUTHOR and/or the TOBEROFF TIMELINE.

3 | **Response to Interrogatory No. 5**

4 |   Toberoff objects to this interrogatory on the grounds that it is overbroad,

5 | burdensome and oppressive.  Toberoff further objects to this request on the grounds

6 | that it is not reasonably limited in scope.  Toberoff objects to this request to the

7 | extent that it seeks information which is not reasonably calculated to lead to the

8 | discovery of relevant and admissible evidence.  Toberoff additionally objects to this

9 | request in that it seeks communications or items protected by the attorney-client

10 | privilege, and the attorney work product doctrine.

11 |   Subject to and without waiving the foregoing general and specific objections,

12 | Toberoff responds, without limitation, as follows:

13 | • In or about November 2007:  Toberoff met with Stanley Ornellas, of the Los

14 |   Angeles FBI Field Office, regarding the Stolen Documents, and reported the

15 |   theft.

16 | • July-August 2010:  Toberoff contacted the USAO.  In August, 2010, Toberoff

17 |   held a telephone conference with Beong-Soo Kim, Deputy Chief of the Major

18 |   Frauds section of the USAO, and Brian Klein, Assistant United States

19 |   Attorney, regarding the Stolen Documents.  The telephone conference was

20 |   followed by an in-person meeting with Mr. Kim on or about August 17, 2010.

21 |   Toberoff exchanged scheduling emails with Mr. Kim arranging this in-person

22 |   meeting.  David Michaels was disclosed as suspected of having stolen the

23 |   Stolen Documents and thereafter furnishing attorney-client privileged

24 |   information to Warner Bros.  Following the meeting, Toberoff provided

25 |   contact information for Laura Siegel.  Toberoff also provided a confidential

26 |   case summary to the United States USAO, together with the Timeline and

27 |   information concerning David Michaels' contacts with Toberoff's clients, and

28 |   a copy of DC's Complaint in this matter.

110463.1

1    • August-September, 2010: The USAO stated to Richard Kendall that it

2    required Defendants to produce the Stolen Documents to the USAO in order

3    for the USAO to investigate the theft. Kendall refused to waive attorney-client

4    privilege, and refused to produce the Timeline documents without a subpoena.

5    Following further correspondence, the issuance of a grand jury subpoena, an

6    assertion of the common-interest privilege, and the USAO's agreement to

7    maintain the Stolen Documents as confidential, Richard Kendall provided the

8    Stolen Documents to the USAO. This information was reflected in

9    correspondence with the USAO, which was copied to Mr. Toberoff.

10   **Interrogatory No. 6**

11   DESCRIBE in detail any and all information revealed by any investigation

12   REFERRED to in response to INTERROGATORY NO. 5.

13   **Response to Interrogatory No. 6**

14   Toberoff objects to this interrogatory on the grounds that it is overbroad,

15   burdensome and oppressive. Toberoff further objects to this request on the grounds

16   that it is not reasonably limited in scope. Toberoff objects to this request to the

17   extent that it seeks information which is not reasonably calculated to lead to the

18   discovery of relevant and admissible evidence. Toberoff additionally objects to this

19   request to the extent that it seeks communications or items protected by the attorney-

20   client privilege, the attorney work product doctrine and any other privilege or

21   immunity available under law or arising from contractual obligation. Subject to and

22   without waiving the foregoing general and specific objections, Toberoff responds,

23   without limitation, as follows:

24   Toberoff is informed that the FBI interviewed Michaels, and that, in that

25   interview, Michaels denied taking any documents from Toberoff's law office, and

26   Michaels also denied sending any documents to Warner Brothers.

27   **Interrogatory No. 7**

28   DESCRIBE in detail the current status of any investigation REFERRED to in

110463.1

8

DEFENDANT MARC TOBEROFF'S SUPPLEMENTAL RESPONSE
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

**EXHIBIT 21**

**314**

1   other privilege or immunity available under law or arising from contractual

2   obligation.  Subject to and without waiving the foregoing general and specific

3   objections, Toberoff responds, without limitation, as follows:

4        Toberoff has had communications with his attorneys in this action at Kendall,

5   Brill & Klieger and with the attorneys at Toberoff & Associates and his retained

6   private investigators at the McNally Security Group, as well as communications with

7   Stanley Ornellas at the FBI and Beong-Soo Kim and Brian Klein of the USAO, and

8   Ari Emanuel.  The substance of such communications, to the extent they are not

9   protected from disclosure by the attorney-client, attorney-work-product, and other

10  relevant privileges, are set forth in Responses Nos. 5, 6, 9, 11, and 13.

11

12  DATED:  June 26, 2012          KENDALL BRILL & KLIEGER LLP

13

14                                 By_____
                                          Nicholas F. Daum

15                                 Attorneys for Defendants Marc Toberoff,
                                   Pacific Pictures Corporation, IP Worldwide,
16                                 L.L.C. and IPW, L.L.C.

17

18

19

20

21

22

23

24

25

26

27

28

110463.1

25
DEFENDANT MARC TOBEROFF'S SUPPLEMENTAL RESPONSE
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

**EXHIBIT 21**

315

1

<u>PROOF OF SERVICE</u>

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

        At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of Los Angeles, State of California.  My business address is 10100 Santa Monica Blvd., Suite 1725, Los Angeles, California  90067.

4

5

        On June 26, 2012, I served the original of the following document(s) described as **DEFENDANT MARC TOBEROFF'S SUPPLEMENTAL RESPONSE TO PLAINTIFF DC COMICS' FIRST SET OF INTERROGATORIES** on the interested parties in this action as follows:

6

7

8

Daniel M. Petrocelli, Esq.
Jason Tokoro, Esq.
Matthew T. Kline, Esq.
Cassandra L. Seto, Esq.
Ashley Pearson, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Fl.
Los Angeles, CA  90067-6035

Marc Toberoff, Esq.
David Harris, Esq.
Pablo Arredondo, Esq.
Toberoff & Associates, P.C.
22631 Pacific Coast Highway #348
Malibu, CA  90265

9

10

11

12

dpetrocelli@omm.com
itokoro@omm.com
mkline@omm.com
cseto@omm.com
apearson@omm.com

mtoberoff@ipwla.com
dharris@ipwla.com
parredondo@ipwla.com

13

14

15

16

        **BY MAIL:**  I enclosed the document(s) in a sealed envelope addressed to each interested party at the address indicated above or on the attached service list.  I placed each such envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with Kendall Brill & Klieger LLP's practice for collecting and processing correspondence for mailing.  On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

17

18

19

20

        **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused the document(s) to be sent to each interested party at the email addresses listed above or on the attached service list.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

21

22

        I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

23

24

        Executed on June 26, 2012, at Los Angeles, California.

25

26

27

_____
Dawn F. Mancil
dmancil@kbkfirm.com

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

**EXHIBIT 21**