Marc Toberoff (State Bar No. 188547)
 mtoberoff@ipwla.com
Keith G. Adams (State Bar No. 240497)
 kgadams@ipwla.com
Pablo D. Arredondo (State Bar No. 241142)
 parredondo@ipwla.com
David Harris (State Bar No. 255557)
 dharris@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway #348
Malibu, California 90265
Telephone:  (310) 246-3333
Fax:          (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele Peavy,
and Laura Siegel Larson, individually and
as personal representative of the Estate of
Joanne Siegel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>                   Plaintiff,<br><br>         vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>                   Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DISCOVERY MATTER**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF DC COMICS' MOTION FOR A PROTECTIVE ORDER**<br><br>*Declaration of Keith Adams filed concurrently*<br><br>Complaint filed:   May 14, 2010<br>Discovery Cutoff:  None Set<br>Trial Date:          None Set<br><br>Date:    January 7, 2013<br>Time:    10:00 a.m.<br>Place:   Courtroom 540 |

# **Table of Contents**

I.    INTRODUCTION ................................................................................. 1

II.    DEFENDANTS' STATEMENT OF ISSUES IN DISPUTE ....................... 3

    A.    Relevant Background ................................................................. 3

    B.    DC's Motion Is Nearly A Year Too Late ............................................. 8

    C.    DC's Refusal To Log Documents May Constitute A Waiver ........... 10

    D.    DC's Untimely Motion Also Fails To Demonstrate "Good Cause" For A Protective Order ................................................................. 11

        1.    A Privilege Log Is Required To Test DC's Blanket Privilege Assertions ................................................................. 12

        2.    DC Fails To Factually Show Any Undue Burden ................... 16

    E.    Defendants Never Agreed That DC Need Not Log Post-2004 Communications ................................................................. 17

    F.    Categorical Logging Is Not Warranted ............................................. 19

III.    CONCLUSION ................................................................................. 20

# <u>Table of Authorities</u>

**Cases**

*Aikens v. Deluxe Fin. Services, Inc.,*
  217 F.R.D. 533 (D. Kan. 2003) ............................................................... 16

*Application of Sinclair Oil Corp.,*
  881 F. Supp. 535 (D. Wyo. 1995) ............................................................ 9

*Bethea v. Merchants Commercial Bank,*
  2012 WL 5359536 (D.V.I. Oct. 31, 2012) ............................................. 19

*BNSF Ry. Co. v. U.S. Dist. Ct., Dist. of Mont.,*
  408 F.3d 1142 (9th Cir. 2005) ................................................................ 10

*Brittain v. Stroh Brewery Co.,*
  136 F.R.D. 408 (M.D.N.C. 1991) ...................................................... 8-9, 11, 16

*Bullion Monarch Mining, Inc. v. Newmont USA Ltd.,*
  271 F.R.D. 643 (D. Nev. 2010) ............................................................... 9

*Burch v. Regents of University of Cal.,*
  2005 WL 6377313 (E.D. Cal. August 30, 2005) ............................... 10-11

*Burlington Northern & Santa Fe Ry. Co. v. United States,*
  408 F.3d 1142 (9th Cir. 2005) ............................................................ 10-11

*Devlyne v. Lassen Mun. Utility Dist.,*
  2011 WL 4905672 (E.D. Cal. Oct. 14, 2011) ....................................... 14

*Dewitt v. Walgreen Co.,*
  2012 WL 3837764 (D. Idaho Sept. 4, 2012) ......................................... 15

*Eli Lilly and Co. v. Wockhardt Ltd.,*
  2010 WL 2195436 (S.D. Ind. May 27, 2010) ........................................ 12

*F.C. Cycles Intern., Inc. v. Fila Sport, S.p.A.,*
  184 F.R.D. 64 (D. Md. 1998) .................................................................. 14

*F.T.C. v. Ameridebt, Inc.,*
  2006 WL 618563 (N.D. Cal. Mar. 13, 2006) .................................... 16-17

*Gulf Oil Co. v. Bernard,*
  452 U.S. 89 (1981) ........................................................................... 10-11, 17

*In re Imperial Corp. of America v. Shields,*
  174 F.R.D. 475 (S.D. Cal. July 31, 1997) ............................................. 20

*In re Motor Fuel Temperature Sales Practices Litig.,*
  2009 WL 959491 (D. Kan. Apr. 3, 2009) ........................................ 16, 19-20

*In re Rivastigmine Patent Litigation,*
  237 F.R.D. 69, 80 (S.D.N.Y. 2006) ....................................................... 15

*Lenz v. Universal Music Corp.*,
   2009 WL 3573990 (N.D. Cal. Oct 30, 2009) .......................................... 11

*Longman v. Physicians Resource Group, Inc.*,
   2003 WL 22244675 (N.D. Tex. Sept. 30, 2003) ....................................... 9

*Mansourian v. Board of Regents of University of Cal. at Davis*,
   2007 WL 4170819 (E.D. Cal. November 19, 2007).................................. 10

*Maxey v. General Motors Corp.*,
   1996 WL 692222 (N.D. Miss. November 18, 1996)............................... 8-9

*Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*,
   242 F.R.D. 552 (C.D. Cal. 2007) ........................................................... 11

*Seminara v. City of Long Beach*,
   1995 WL 598097 (Table) (9th Cir. Cal. Oct. 6, 1995) ............................. 8

*State Farm Mutual Auto. Ins. Co. v. Hawkins*,
   2011 WL 595694 (E.D. Mich. Feb. 10, 2011)......................................... 12

*Sullivan v. Prudential Ins. Co. of Am.*,
   233 F.R.D. 573 (C.D. Cal. 2005)..................................................... 16, 19

*THK America, Inc. v. NSK Ltd.*,
   1994 WL 799420 (N.D. Ill. Nov. 16, 1994) ........................................... 17

*Truckstop.Net, L.L.C. v. Sprint Communications Co., L.P.*,
   2008 WL 2357008 (D. Idaho June 6, 2008) ........................................... 11

*U.S. Magnesium Corp. of Am*,
   2006 WL 1699608 (D. Utah June 14, 2006) ........................................... 20

*U.S. v. ChevronTexaco Corp.*,
   241 F. Supp. 2d 1065 (N.D. Cal. 2002) ................................................. 14

*U.S. v. International Business Machines Corp.*,
   70 F.R.D. 700 (S.D.N.Y. 1976) ....................................................... 8, 10

*U.S. v. Panhandle Eastern Corp.*,
   118 F.R.D. 346 (D. Del. 1988) ........................................................... 9-10

*Universal City Development Partners, Ltd. v. Ride & Show Engineering, Inc.*,
   230 F.R.D. 688 (M.D. Fla. 2005) ......................................................... 11

*Wang v. Hsu*,
   919 F.2d 130 (10 Cir. 1990) ................................................................... 8

*Womack v. Virga*,
   2011 WL 6703958 (E.D. Cal. December 21, 2011) ................................ 10

**Rules**

Fed. R. Civ. P. 26 .................................................................................... 8

1

Fed. R. Civ. P. 26(b)(5) ......................................................................... 10, 15

2

Fed. R. Civ. P. 26(c) ................................................................................ 11

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Two years ago, DC Comics ("DC") rejected Defendants' proposal to enter into a privilege log stipulation that would have relieved *both sides* in this case of the burden of logging nearly all privileged documents created after the related *Siegel* cases (Case Nos. 04-CV-08400 ODW (RZx), 04-CV-08775 ODW (RZx); "*Siegel*") were filed in 2004.  Declaration of Keith Adams ("AD"), Exs. A-B, E, G.  Instead, DC proposed a one-sided stipulation favoring DC.  AD, Ex. B.  Defendants worked towards a compromise, but DC dismissed Defendants' proposals as "unacceptable." AD, Ex. A-B, E, G.

Rather than seek a compromise, DC filed a motion to compel the production of documents and privilege logs – even though Defendants had freely offered this.  AD, Exs. C, F-G; Dkt. 125.  Defendants proposed resolving the dispute by agreement of counsel, without Court intervention; DC insisted on a Court-ordered stipulation.  AD Exs. F-G.  The parties then entered into a detailed stipulation, approved and ordered by this Court on December 7, 2010 (Dkt. 133; the "December 7 Stipulated Order"), which set forth both parties' logging responsibilities – including, at DC's insistence, the logging of all post-2004 privileged documents aside from "internal" e-mails among counsel.  Dkt. 133, ¶5.  That stipulation, which DC itself had insisted upon, clearly stated that "if a non-lawyer or in-house counsel is an author or recipient of any of the communications … such communications must be logged." *Id.*

Due to DC's intransigence, Defendants completed the arduous task of logging post-2004 privileged communications, and produced a lengthy privilege log in 2010. Dkt. 161 ¶¶23-24, Exs. V-W.

Nearly a year ago, Defendants served DC with discovery requests.  AD, Ex. I. DC made blanket privilege objections, but did not produce a privilege log as required by the December 7 Stipulated Order.  Dkt. 498-2, Ex. 3.  In the months that followed, Defendants consistently reminded DC that it needed to produce a log, and warned that DC's failure to do so would waive privilege.  AD Exs. L, O; Declaration of Matt

Kline (Dkt. 538-2; "KD"), Ex. 12 at 67.  DC rebuffed Defendants without justification.  AD, Ex. M; KD Ex. 12 at 66.

Two years have passed since the December 7 Stipulated Order setting forth the parties' obligations; one year has passed since Defendants served discovery; and ten months have passed since DC raised privilege objections to that discovery.  DC has still never produced a privilege log in this case, and instead improperly relied on its outdated logs from *Siegel*.  DC now suddenly demands a protective order to relieve it of any obligation to log privileged post-2004 documents after having pointedly required Defendants to do so.

DC's motion (Dkt. 538; "Mot.") is nearly a year late.  DC's delay arguably constitutes a waiver of privilege – an argument DC itself has repeatedly asserted in this Court.  The case law is clear that protective orders should be sought ***before*** discovery is due – here, February 2012.  DC waited ten months to file its untimely motion, which should be rejected on that basis alone.

More importantly, there is no "good cause" for DC's protective order.  It would permit DC to cloak any withheld document under a blanket assertion of privilege, without any further information, and prevent Defendants from testing, and the Courts from assessing, DC's broad privilege assertions.  For example, it appears that DC, contrary to well-established law, may be withholding relevant documents on which its in-house counsel was merely copied.  Without a privilege log listing all recipients of a document, there is no way to determine whether or not this is the case.

DC's motion and accompanying declaration also do not provide the factual detail required to show that any burden is "undue," and instead closely resemble those rejected by courts in comparable cases.

DC erroneously suggests that because Defendants discussed the possibility of negotiating a mutual logging stipulation years ago, now moot as to Defendants, that they somehow agreed that DC was "entitled" to a protective order.  This is sophistry, particularly because Defendants were forced by DC to log all post-2004 privileged

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR A PROTECTIVE ORDER

communications, removing the basis for a mutually-beneficial compromise. Compounding this unfairness, DC has repeatedly relied on both the December 7 Stipulated Order, and on Ms. Larson's logging of post-2004 documents, in multiple motions before this Court, Judge Wright and the Ninth Circuit. For DC to now feign a request for a "bilateral" protective order, after requiring and leveraging such logs, is gamesmanship.

DC's alternative request to categorically log its documents also fails because the proposal is simply another way to permit DC to make virtually unlimited, blanket privilege assertions, not subject to inspection or challenge. Nor is there justification, after DC's willful delay, for it to have until March 4, 2013 to serve privilege logs, particularly as DC has stated that it will file new motions for summary judgment as soon as possible. Dkt. 528 at 9. For all of these reasons, DC's efforts to avoid producing a proper privilege log should be rejected, and DC ordered to produce a log comforting to the December 7 Stipulated Order by no later than January 21, 2013.

## II.    DEFENDANTS' STATEMENT OF ISSUES IN DISPUTE

### A.    <u>Relevant Background</u>

On August 25, 2010, just over a week after DC served its first set of requests for production in this case, Defendants requested from DC a stipulation concerning the logging of documents after the commencement of *Siegel* in October 2004. AD, Ex. A. On September 16, 2010, Defendants proposed a stipulation that would have relieved ***both*** sides of their obligation to log post-2004 documents, with the narrow exception of documents related to DC's receipt of the so-called "Toberoff Timeline," which DC had attached to its complaint:

> NOW THEREFORE, the parties stipulate and jointly agree to the following:
> 1)    Except as set forth in paragraph 2 below, no party shall be required to list on their privilege logs the following documents created on or after October 8, 2004, when the complaint was filed in *Siegel v. Warner Bros. Ent. Inc.*, Case No. 04-CV-08400 ODW (RZx):
> Attorney-client communications, attorney work product, and/or documents protected by the joint defense privilege, common interest privilege, mediation privilege, or the May 1, 2008 JAMS Confidentiality Agreement regarding settlement discussions.

2)    Notwithstanding the above, the parties shall be required to list on their respective privilege logs, documents relating to the receipt by DC Comics, Warner Bros. Entertainment, Inc., or any related entity, of the cover letter (a.k.a. "Toberoff Timeline") attached as "Exhibit A" to the Complaint filed in *DC Comics v. Pacific Pictures Corp.*, Case No. 10-CV-03633 ODW (RZx) and/or the documents (Bates nos. Q001-839) enclosed by such cover letter.

Kline Declaration ("KD"), Ex. 2 at 13.  On October 5, 2010, after DC did not respond to that initial proposal, Defendants sent a follow-up letter that re-attached the proposed privilege log stipulation.  *Id.*, Ex. 3.

On October 6, 2010, DC sent Defendants a counter-proposal which, unlike Defendants' bilateral proposal, placed a much greater burden on Defendants than DC. AD, Ex. B.  For instance, DC required the logging of all post-2004 documents to which the "common-interest" privilege applied.  This unilaterally burdened Defendants; whereas DC did not assert the common-interest privilege, the privilege is widely applicable to the Siegel and Shuster heirs (represented by the same counsel) and, in many instances, to the Siegel heirs and Michael Siegel.  *Id.* at 13.  DC's proposal did not require that it log communications with its parent, Warner Bros. Entertainment Inc. ("Warner"), even though Warner is not a party to this litigation, while requiring that all communications between defendants be logged.  *Id.*  DC's proposal also removed any requirement that it log privileged documents relating to DC/Warner's receipt of the anonymous "Timeline."

On October 11, 2010, in the middle of these negotiations, DC barged ahead, served a joint stipulation to compel documents and privilege logs, and argued that Defendants had waived privilege as to all post-2004 documents by not yet providing a log.  AD, Ex. C.  The parties engaged in further discussion regarding a privilege log stipulation, but on October 13, 2010, DC flatly rejected Defendants' proposal as "unacceptable."  AD, Exs. C-E.  The next day, Judge Wright entered a stay of the entire case (Dkt. 109), which lasted until November 17, 2010.  Dkt. 117.

Throughout November 2010, Defendants made further efforts to compromise. Defendants noted that DC's insistence on a stipulation, to be entered as an order, was

unusual, and that such disputes are ordinarily resolved by agreement of counsel. On November 22, 2010, Defendants offered to produce documents and privilege logs (covering all post-2004 privileged documents) by December 3, 2010. AD, Ex. F. On November 29, 2010, Defendants provided yet another proposed stipulation and offered a compromise production date of December 15, 2010. AD, Ex. G.

DC rejected Defendants' reasonable offers, and instead filed a motion to compel on November 29, 2010, calling for documents and privilege logs to be produced by December 22, 2010 – a week *later* than Defendants' last offer. Dkt. 125. This motion also again argued that Defendants had waived privilege over *all* attorney-client communications by not producing a privilege log during the preceding two months, in which negotiations as to the logging of post-2004 privileged documents were ongoing and the case stayed. Dkt 125 at 13, 17-18.

To avoid burdening the Court with DC's unnecessary motion, on December 6, 2010 Defendants ultimately agreed to a stipulation that required them to produce responsive documents on December 7 and lengthy privilege logs on December 15, 2010. Dkt. 132-133; 161 ¶23, 24, Exs. W, V; 160 at 9. This December 7 Stipulated Order, which was approved by this Court, required ***both*** DC and Defendants to log ***all*** post-2004 documents that were not purely internal communications among *outside* counsel:

> As to Privileged documents created prior to May 14, 2010: (a) Defendants and their counsel need not log internal communications solely between or among Defendants' counsel or between or among Defendants' counsel and anyone at the law firm of Kendall, Brill and Klieger, in either this case or the Siegel Cases; (b) DC and its outside counsel need not log internal communications solely between or among DC's outside counsel, in either this case or the Siegel Cases; ***however, and for the avoidance of doubt, (c) if a non-lawyer or in-house counsel is an author or recipient of any of the communications in subsections (a) and/or (b), such communications must be logged***. This Stipulation is also without prejudice or waiver to any party's right in the future to request or compel the identification or logging of Privileged documents otherwise covered by subsections (a) and (b) above, and is without prejudice or waiver to any party's right in the future to seek a protective order in response to any such a request or motion to compel.

Dkt. 133 ¶5 (emphasis added). This provision applied to both parties and ***all***

discovery going forward, unlike the parts of the stipulation addressing the timing of Defendants' production and logging in response to DC's already-served requests. Dkt. 133 ¶¶1-2.

On December 13, 2011, defendant Mark Warren Peary served his first set of Requests for Production. AD, Ex. I. Two months later, DC served its responses. Dkt. 498-2, Ex. 3. DC did not produce a privilege log and, despite its insistence on a Court-approved stipulation and the clear terms of the December 7 Stipulated Order, DC declared that it would not log any communications "between or among DC's counsel, including outside and in-house counsel." KD, Ex. 11 at 64. DC also did not move for a protective order. Almost a year later, DC still has not produced *any* privilege logs in this case.

Defendants have repeatedly reminded DC that it needs to produce logs and warned that its continued failure to do so will constitute a waiver. On May 30, 2012, Defendants advised DC that it had "failed for nearly six months to produce any privilege log in response to Defendants' request for production served on December 13, 2011," and that such delay could constitute waiver. AD, Ex. L at 88. DC responded by merely referring to "the privilege logs provided by Warner and DC in the *Siegel* cases" and was silent on the post-2004 communications that DC was required to log under the December 7 Stipulated Order. AD, Ex. M. On June 12, 2012, Defendants once again wrote to DC noting that "in six months you have [] failed to provide a privilege log, waiving privilege as to your clients." KD, Ex. 12 at 67. DC stated that "DC provided you with … privilege logs," an apparent reference to the *Siegel* logs, and was again silent as to post-2004 communications. KD, Ex. 12 at 66. Yet again, on July 11, 2012, Defendants wrote to DC stating that "[i]n over two years of litigation in this case, DC and its counsel have still not provided a single privilege log." AD, Ex. O at 96.

DC is represented by a virtual army of attorneys and cannot be heard to complain that it had no time to log documents or seek a protective order (from the

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR A PROTECTIVE ORDER

stipulated order DC insisted upon).  Rather than meet its discovery obligations, DC
has aggressively filed motion after motion focused on its discovery of Defendants,
which were largely denied.  Dkt. 385, 394, 396, 455, 500, 501.

On October 5, 2012, *eight months* after their responses to Mr. Peary's
discovery requests were due and *four months* after Defendants had reminded DC that
its failure to provide a privilege log constituted waiver, DC sent Defendants, without
explanation, a new proposed privilege log stipulation.  KD, Ex 15.  DC's proposal
once again ignored the issue of communications related to its receipt of the
"Timeline." *Id.* at 107-108.  Instead, DC oddly proposed that neither it nor defendant
Laura Siegel Larson would be required to log *any* post-2004 privileged documents.
*Id.* at 107.  This purportedly bilateral relief was completely illusory:  while providing
blanket protection for DC and any of its affiliates (*e.g.*, Warner), it was limited to one
defendant, Ms. Larson, who, in 2010, had already logged post-2004 documents under
threat of DC's motion to compel.  KD, Ex. 15 at 107; Dkt. 161 ¶24, Ex. W.

On October 15, 2012, Defendants wrote to DC, noting that:  (1) DC had
refused Defendants' reasonable offers to enter into the same type of stipulation the
parties had entered into in *Siegel*; (2) Defendants were thus forced to review and log
thousands of post-2004 documents; (3) Defendants repeatedly warned DC that it was
obliged to produce a log and that by failing to do so it risked waiving privilege; and
(4) DC had never moved for a protective order in the eight months since its privilege
log was due.  KD, Ex. 16 at 252-253.

After receiving DC's portion of a joint stipulation moving for a protective
order, Defendants advised DC on December 6, 2012 that, due to a family event of
counsel, Defendants would need to serve their portion of the joint stipulation on
Monday, December 10, and that this would not affect DC's contemplated filing of the
joint stipulation on December 10, 2012 or the January 7, 2013 hearing date.  Dkt.
538-1, Ex. B.  Defendants even offered to electronically combine and finalize the
joint stipulation by 6:00 p.m. on December 10 to reduce this work for DC's counsel.

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR A PROTECTIVE ORDER

*Id.*, Ex. C.  Even though the parties had reached this accommodation several times previously, and Defendants' proposal would have allowed DC to file a timely joint stipulation on December 10, 2012 as intended, DC barreled ahead and filed the instant motion.  *Id*.

### B. DC's Motion Is Nearly A Year Too Late

DC's Motion comes far too late.  "While the express language of Fed. R. Civ. P. 26 does not set limits within which a motion for protective order must be made, there is an implicit requirement that the motion be timely, or seasonable." *Seminara v. City of Long Beach*, 1995 WL 598097 (Table), at *4 (9th Cir. Cal. Oct. 6, 1995) (citing *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 413 (M.D.N.C. 1991)).  "A motion for a protective order is timely if made prior to the date set for producing discovery." *Id.* (citation omitted); *see U.S. v. International Business Machines*, 70 F.R.D. 700, 701 (S.D.N.Y. 1976) ("Such [protective order] motions … must be served before the date set for production."); *Wang v. Hsu*, 919 F.2d 130, 131 (10 Cir. 1990) (same).  Failure to file a motion for a protective order within this timeframe is grounds to deny the motion outright.  *Brittain*, 136 F.R.D. at 413.

Here, Defendants served DC with Mark Warren Peary's first set of Requests for Production on December 13, 2011.  AD, Ex. I at 80.  Pursuant to an extension requested by DC and granted by Defendants, DC had until February 17, 2012 to produce documents. Dkt. 498-2, Ex. 3.  DC's motion for a protective order should have been filed by then.  *See Maxey v. General Motors Corp.*, 1996 WL 692222, at *2 (N.D. Miss. November 18, 1996) (party "should have brought this matter to the attention of the court before the time expired for his response to the … request for production").  DC's motion is almost *a year* late.

DC has offered no excuse, let alone shown "good cause," for its ten-month delay.  *Brittain*, 136 F.R.D. at 413.  The December 7 Stipulated Order required DC to log all post-2004 privileged documents.  Mot. at 4.  DC concedes that Defendants advised DC that its failure to produce privilege logs and continued failure to do so

would waive privilege.  Mot. at 5.  DC effectively admits that it was on notice of this issue for *months* and did absolutely nothing.  It had ample "time" and "opportunity" (*Brittain*, 136 F.R.D. at 413) to file this motion, and chose instead to litigate other issues, filing eight motions, including highly-detailed motions for summary judgment and sanctions with thousands of pages of exhibits.  Dkt. 385; 391; 394; 396; 455; 458; 500; 501.  DC's desire to litigate other issues does not excuse its failure to timely seek a protective order.  *See Bullion Monarch Mining, Inc. v. Newmont USA Ltd.*, 271 F.R.D. 643, 650 (D. Nev. 2010) (waiver where party delayed logging while making tactical decision to bring summary judgment motions).

DC indisputably failed to either (a) abide by the terms of the December 7 Stipulated Order or (b) seek a protective order in a timely fashion.  *See Application of Sinclair Oil Corp.*, 881 F. Supp. 535, 537 (D. Wyo. 1995) ("Courts 'cannot overlook or disregard stipulations which are absolute and unequivocal.  Stipulations of attorneys may not be disregarded or set aside at will.'") (citations omitted); *Longman v. Physicians Resource Group, Inc.*, 2003 WL 22244675, at *6 (N.D. Tex. Sept. 30, 2003) ("The court attempts to accommodate the parties to litigation and did so by approving the Amended Stipulation; however, once it does so, it expects the parties to be fully bound by their agreements and stipulations. The court will not allow one party to undo a stipulation or agreement that such party voluntarily undertook.").

DC also cannot salvage its untimely motion by claiming that it was waiting for Defendants to move to compel:  "The party seeking the protective order … [is] responsible for initiating the process." *Brittain*, 136 F.R.D. at 413.  "Permitting that party to merely note its objections and then sit back and wait for a motion to compel can only serve to prolong and exacerbate discovery disputes." *Brittain*, 136 F.R.D. at 413; *see also Maxey*, 1996 WL 692222, at *2 (rejecting argument that party's motion for a protective order was timely since no motion to compel had been filed).

DC chose to "sit back and wait" for nearly a year before moving for a protective order.  Its motion can and should be denied on that basis alone.  *See U.S. v.*

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR A PROTECTIVE ORDER

*Panhandle Eastern Corp.*, 118 F.R.D. 346, 351 (D. Del. 1988) (denying motion for protective order filed "<u>three weeks</u> after the date set for discovery") (emphasis added); *U.S. v. International Business Machines Corp.*, 70 F.R.D. at 701 (denying motion for protective order filed "more than <u>two months</u>" late) (emphasis added).

### C.    <u>DC's Refusal To Log Documents May Constitute A Waiver</u>

The post-hoc protective order demanded by DC is especially unjustified considering that DC's willful refusal to provide a privilege log (in contravention of the very stipulation/order DC insisted upon) may constitute a waiver of privilege. Rule 26(b)(5) requires the production of a privilege log when documents are withheld on privilege grounds, and failure to timely produce a log may result in waiver. *See Womack v. Virga*, 2011 WL 6703958, at *6 (E.D. Cal. December 21, 2011).  In *Burlington Northern & Santa Fe Ry. Co. v. United States*, 408 F.3d 1142, 1147 (9th Cir. 2005), the Ninth Circuit held that waiver is determined case-by-case, and the relevant factors include "the timeliness of the … accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient)" and "other particular circumstances of the litigation that make responding to discovery unusually easy … or unusually hard."  The litigants' sophistication and experience with the type of underlying litigation is also relevant. *Id.* at 1149.

Here, the *Burlington* factors strongly warrant finding waiver.  DC should have met its obligations under Rule 26(b)(5) and produced a privilege log in *February*.  To date, DC has provided no privilege log in this case, making it impossible for Defendants or the Court to evaluate its privilege claims. *See BNSF Ry. Co. v. U.S. Dist. Ct., Dist. of Mont.*, 408 F.3d 1142, 1149–50 (9th Cir. 2005) (privileges waived where party produced privilege log five months late); *Mansourian v. Board of Regents of University of Cal. at Davis*, 2007 WL 4170819, at *1 (E.D. Cal. November 19, 2007) (upholding waiver for six-month delay in producing a privilege log); *Burch v. Regents of University of Cal.*, 2005 WL 6377313, at *3 (E.D. Cal. August 30, 2005) (finding waiver and noting that six month delay is presumptively

untimely); *Truckstop.Net, L.L.C. v. Sprint Communications Co., L.P.*, 2008 WL 2357008 (D. Idaho June 6, 2008) (waiver after seven month delay in log); *Universal City Development Partners, Ltd. v. Ride & Show Engineering, Inc.*, 230 F.R.D. 688 (M.D. Fla. 2005) (waiver after eight month delay in producing privilege log).

Moreover, like the party in *Burlington,* DC is a "sophisticated corporate litigant" and a "repeat player in [copyright] lawsuits." *Burlington*, 408 F.3d at 1149; *Lenz v. Universal Music Corp.*, 2009 WL 3573990, at *2 (N.D. Cal. Oct 30, 2009) (finding waiver where "sophisticated corporate litigant and repeat player in lawsuits regarding copyrighted material" delayed asserting privilege).

Notably, DC itself repeatedly argued that ***much shorter*** delays constitute a waiver of privilege. DC asserted that a delay of a few weeks constituted a waiver. Dkt. 207-12 at 492. DC also argued that a two-month delay constituted a waiver, because "Defendants have not sought a protective order to excuse their obligation to serve privilege logs" (Dkt. 125 at 19) and that "[i]rrespective of any stipulation, defendants may not simply refuse to … complete a privilege log." *Id.* at 22.

This Court should not permit DC, under the guise of seeking a protective order, to avoid the consequences of its willful failure to provide a privilege log.

**D.    DC's Untimely Motion Also Fails To Demonstrate "Good Cause" For A Protective Order**

DC's untimely motion is also meritless. The party seeking a protective order bears the burden to show "good cause" for such an order. Fed. R. Civ. P. 26(c); *see Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 554 (C.D. Cal. 2007) ("To obtain a protective order, the [moving] part must under Rule 26(c) show good cause … the moving party must make a clear showing of a particular and specific need for the order."); *Brittain*, 136 F.R.D. at 412 ("The burden of showing good causes rests with the party requesting the protective order."). "Good cause" requires "'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)

(citations omitted).  DC nowhere mentions this standard, because it cannot meet it; nor can DC plausibly argue that a protective order is required because it would be burdensome for it to abide by the terms of the December 2010 Stipulated Order that DC itself insisted upon.

In addition, DC's argument that the December 7 Stipulated Order was a mere "'placeholder'" that included a provision that was "'without waiver to any party's right in the future to seek a protective order'" is highly misleading.  Mot. at 4.  The "protective order" reference in the Stipulated Order was added by ***Defendants'*** counsel in response to DC's specific reservation of a right to compel the identification or production of internal communications among outside counsel, notwithstanding that the December 7 Stipulated Order provided that such documents need not be logged.  *Compare* KD, Ex. 4 at 29 ¶5 *with* KD, Ex. 5 at 41 ¶5.  This was not a free-standing provision that somehow contemplated a protective order, like that requested by DC (Dkt. 538-4), that effectively abrogates the December 7 Stipulated Order's logging requirement in its entirety.

## 1.    A Privilege Log Is Required To Test DC's Blanket Privilege Assertions

That a privilege log would be "burdensome" to prepare does not mean that there is "good cause" to excuse DC from preparing one.  "Discovery in a high-stakes [intellectual property] case is not without its burdens," including the burden of preparing and maintaining a privilege log.  *Eli Lilly and Co. v. Wockhardt Ltd.*, 2010 WL 2195436, at *2 (S.D. Ind. May 27, 2010) (ordering privilege log despite "concern that [it] would be unduly burdensome").  While preparation of a privilege log for a large volume of documents may be "inconvenient or burdensome," that does not necessarily constitute an "*undue* burden."  *State Farm Mutual Auto. Ins. Co. v. Hawkins*, 2011 WL 595694, at *4 (E.D. Mich. Feb. 10, 2011).

Here, DC argues that the burden is "undue" because "Defendants … do not challenge that the documents DC seeks not to log are privileged."  Mot. at 10.  This is

circular and false.  Defendants cannot meaningfully assess DC's clams of privilege because they know nothing about the documents being withheld – either who created, sent or received them, their dates, the type of documents, or what specific privileges are being asserted.  And Defendants do not know this basic information precisely because DC has refused to produce a log.

Although DC intimates that it is only seeking to avoid logging "unquestionably privileged" internal communications between attorneys involved in this litigation, there is every reason to believe that DC is withholding and refusing to log far more than this.  Mot. at 1, 9 ("logging internal privileged communications created in the course of litigation is … unnecessary"), 5 ("DC will not log work product or privileged communications solely between or among DC's counsel….") (quotation omitted).

DC's proposed protective order sweeps far more broadly than the "internal communications" between lawyers that DC claims would be too burdensome to log. Under the terms of DC's requested protective order, DC would not only not log internal communications, DC would also "not be required to list on [its] privilege log[] *any* 'Privileged' (as defined in the Court's December 7, 2010, order, DN 133) documents created on or after October 8, 2004…."  Mot. at 11.  The Court's December 7, 2010 Stipulated Order defines "Privileged" to mean "documents that are subject to a claim of attorney-client privilege, the attorney work-product doctrine or *any other privilege available under law*…."  Dkt. 133 at 1 (emphasis added).  As such, DC's proposed order goes well beyond "internal communications" between lawyers, and would allow DC to withhold *all* post-2004 documents that it claims are privileged for *any* reason without disclosing the asserted basis for the privilege or any information about the withheld documents.   Dkt. 538-4.  That DC would seek such an expansive protective order is unsurprising because DC's discovery responses asserted privilege over far more than "internal communications" between attorneys. Indeed, DC has even claimed that its communications with *third parties* are

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR A PROTECTIVE ORDER

privileged.  *See, e.g.*, Dkt. 461-2, Ex. C at 17 (claiming privilege in response to request that DC "IDENTIFY all COMMUNICATIONS between YOU AND any third-party that REFERRED TO the 1992 AGREEMENT").

DC's definition of "internal communications" among "counsel" also goes too far because it includes in-house counsel.  Among the small number of documents that DC has directly produced in this case, there have been virtually no internal communications from DC/Warner, and none copying in-house counsel.  It seems implausible that DC has no non-privileged internal communications whatsoever responsive to Defendants' Requests.  More likely, DC asserts privilege over these documents because its in-house counsel was copied on them – but documents are not privileged simply because an in-house attorney is copied:

> As noted above, communications between a corporation and its outside counsel are presumed to be made for the purpose of seeking legal advice. However, as already stated, unlike outside counsel, in-house attorneys can serve multiple functions within the corporation. In-house counsel may be involved intimately in the corporation's day to day business activities and frequently serve as integral players in business decisions or activities. Accordingly, communications involving in-house counsel might well pertain to business rather than legal matters. The privilege does not protect an attorney's business advice. Corporations may not conduct their business affairs in private simply by staffing a transaction with attorneys.  Because in-house counsel may operate in a purely or primarily business capacity in connection with many corporate endeavors, the presumption that attaches to communications with outside counsel does not extend to communications with in-house counsel.

*U.S. v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002) (citation omitted).  *See F.C. Cycles Intern., Inc. v. Fila Sport, S.p.A.*, 184 F.R.D. 64, 71 (D. Md. 1998) ("What would otherwise be routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda."); *Devlyne v. Lassen Mun. Utility Dist.*, 2011 WL 4905672, at *3 (E.D. Cal. Oct. 14, 2011) ("Courts have recognized that in-house counsel warrant heightened scrutiny in this regard, *i.e.*, in-house counsel often wear a non-legal business hat, and communications in that capacity are not privileged."); *In re Rivastigmine Patent Litigation*, 237 F.R.D. 69, 80 (S.D.N.Y.

2006) ("Of course, a document will not become privileged simply because an attorney recommended its preparation ... in analyzing communications created at the direction of in-house counsel, courts must be wary that the involvement of the attorney is not being used simply to shield corporate communications from disclosure."); *Dewitt v. Walgreen Co.*, 2012 WL 3837764, at *3 (D. Idaho Sept. 4, 2012) ("Indeed, communications between in-house counsel and corporate representatives, unlike those between a client and outside counsel, are not presumed to be made for the purpose of obtaining legal advice.").

For this reason, the December 7 Stipulated Order clarified that communications among *outside counsel* (*i.e.*, internal law firm communications) need not be logged, but required that client communications be logged, including communications between DC/Warner's in-house and outside counsel. DC's repeated references to "counsel" or "attorney" communications in its motion collapse this critical distinction in the December 7 Stipulated Order, which DC nowhere addresses in its brief. Mot. at 5 (refusing to log "communications solely between or among DC's counsel, including outside and in-house counsel"), 12 (complaining about logging "attorney communications from, *e.g.*, DC's in-house counsel") (quotations omitted).

Without a privilege log, Defendants have no way of knowing whether DC asserts that there are no responsive internal communications, or whether it asserts that such communications are privileged. In short, Defendants do not have sufficient information to assess or contest any of DC's blanket privilege claims. There is nothing "undue" about requiring DC to provide a privilege log to allow Defendants to test those claims, as is normally required in every case. *See* Fed. R. Civ. P. 26(b)(5). And this procedure could well reveal that DC is withholding non-privileged documents, thereby leading to relevant, discoverable evidence, despite DC's unsupported assurances. Mot. at 1.

///

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR A PROTECTIVE ORDER

## 2. DC Fails To Factually Show Any Undue Burden

DC fails to properly support its claim of undue burden with a "specific demonstration of facts." *Brittain*, 136 F.R.D. at 412; *Sullivan v. Prudential Ins. Co. of Am.*, 233 F.R.D. 573, 575 (C.D. Cal. 2005) (to establish "good cause" the "moving party must show a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements").  DC provides only the affidavit of Warner's in-house counsel, Wayne Smith.  Dkt. 538-3.  Mr. Smith describes his files and opines that it would be burdensome to sort through them, but he never specifies: (1) how many documents are even potentially responsive to Defendants' discovery requests; (2) how many documents were already filed or produced in this case; (3) how many documents are even potentially privileged; (4) whether these thousands of documents are even related to this case, the Shusters/Siegels, or even Superman generally; or (5) how many documents were created post-2004.  Mr. Smith's vague declaration leaves open the possibility that many, if not most, of the documents are not privileged, already produced, or could otherwise be excluded from the start.  Mr. Smith also fails to address the obvious point that he could readily screen his electronic documents using targeted search terms and keywords.

Courts routinely reject this sort of purposefully vague and hyped-up declaration, as demonstrated by one of DC's own cases.  *See In re Motor Fuel Temperature Sales Practices Litigation*, 2009 WL 959491, at *2 (D. Kan. Apr. 3, 2009) ("While the declarations discuss the burden of reviewing and logging *all* emails …, none of the declarations discuss the burden of reviewing only those attorney emails potentially responsive to [the] discovery requests or even only those attorney emails that hit on the search terms agreed to by the parties….");  *see also Aikens v. Deluxe Fin. Services, Inc.*, 217 F.R.D. 533, 537 (D. Kan. 2003) (rejecting party's "conclusory statement that it would cost tens or hundreds of thousands of dollars" to review "67 linear feet of documents described in the declaration"); *F.T.C. v. Ameridebt, Inc.*, 2006 WL 618563, at *1 (N.D. Cal. Mar. 13, 2006) (denying

1  protective order as "email could likely be screened efficiently through the use of

2  electronic search terms that the parties agreed upon"). This Court should do the same.

3       Mr. Smith's declaration is also insufficient to establish that preparing a

4  privilege log would place an undue burden on others.  Mr. Smith's statement that he

5  "believe[s] that the cost of reviewing and logging" the files of, "*e.g.*, our outside

6  counsel," would be "at least as burdensome as the effort for my files" is "stereotyped

7  and conclusory."  *Gulf Oil Co.*, 452 U.S. at 102 n.16 (citations omitted).

8      **E.    Defendants Never Agreed That DC Need Not Log Post-2004**

9            **Communications**

10       Unable to meet the legal requirements for a protective order, DC dedicates the

11  bulk of its brief to arguing that it is "entitled to a protective order" because

12  Defendants supposedly "promise[d]" DC that they would enter into a second logging

13  agreement.  Mot. at 1-2; *see also id.* at 8. This is both factually and legally incorrect.

14       The parties arrived at *one* and only one agreement regarding logging:  the

15  December 7 Stipulated Order.  DC's later proposal on October 5, 2012:  (a) applied

16  only to DC and Ms. Larson (who had already been forced by DC to log post-2004

17  documents), not to the other Defendants; (b) allowed DC not to log any Timeline-

18  related documents; and (c) would have permitted DC to cloak whatever document it

19  wanted under blanket, unspecified claims of privilege (KD Ex. 15) – the same

20  provisions Defendants rejected previously.  AD, Exs. B-D.  Furthermore, Defendants

21  negotiations regarding DC's proposals are not a "promise" to reach an agreement as

22  DC argues (Mot. at 8), nor could they possibly relieve DC of its obligations under the

23  December 7 Stipulated Order.  "For a [further] stipulation to be enforceable … it

24  must meet the required elements of a contract."  *THK America, Inc. v. NSK Ltd.*,

25  1994 WL 799420, at *1 (N.D. Ill. Nov. 16, 1994).  Here, those requirements are not

26  met, as "there was never a valid acceptance of a [further] stipulation."  *Id.*

27       Moreover, any equitable considerations weigh strongly *against* DC's

28  protective order.  Because DC rejected Defendants' proposal in 2010 that neither

party be required to log the vast majority of post-2004 privileged documents, and *insisted* instead on the December 7 Stipulated Order, requiring *both* parties to log such documents, Defendants were required to log thousands of post-2004 documents pertaining to this and the *Siegel* action.  DC's assertion that it proposes a "bilateral" protective order is disingenuous.  The proposed order relieves DC, without cause, of the burdens that it knowingly imposed on Defendants two years ago.

DC repeatedly complains that Defendants agreed to a stipulation in *Siegel*, and proposed one in this case, that were superficially similar to the protective order DC proposes.  This is also specious.  First, DC itself argued that any "attempts to extend the protections of the *Siegel* protective order to this case, absent an agreement, are unavailing."  AD, Ex. H at 59.  Second, DC's protective order is not similar because while excluding DC, it requires all Defendants to log post-2004 privileged documents, except Ms. Larson, who has already logged such documents.  Finally, if the parties in 2010 had agreed that neither must log post-2004 documents, each side would have assumed the risk that the other might use this to claim privilege over a non-privileged document.  Today, DC assumes little such risk because such post-2004 documents have already been logged by Defendants.

In fact, DC's proposed protective order is especially inequitable because, after Defendants served lengthy privilege logs, which included post-2004 communications, DC brought multiple unsuccessful motions challenging them.  Dkt. 161 ¶23, 24, Exs. V, W.  DC has also repeatedly relied upon the December 7 Stipulated Order before this Court, Judge Wright, and the Ninth Circuit.  *See, e.g.*, Dkt. Nos. 159 at 1; 160 at 28, 39; 207-12; 215-3 at 44; 253 at 1; 253-5 at 17; 267 at 1; 267-1 at 1; 275 at 2; 296 at 1; 296-1 at 1; 316-6 at 359; 361-2 at 238.

Contrary to DC's current claim that the December 7 Stipulated Order imposed "non-reciprocal obligations" and was a mere "placeholder" (Mot. at 4), DC stressed to the Ninth Circuit that the December 7 Stipulated Order created "*reciprocal* discovery obligations" and noted that it was not "one-sided" because it contains

1   provisions regarding Defendants' "discovery rights." Appeal No. 10-73851, Dkt. 6-1

2   at 9-10 (emphasis in original).  DC should not be permitted to backtrack on its

3   agreement after benefitting from it.

4        Ultimately, "the court [should] assume[] plaintiffs are mindful of the old

5   proverb that what is sauce for the goose is sauce for the gander." *In re Motor Fuel*

6   *Temperature Sales Practices Litig.*, 2009 WL 959491, at *3 (noting that since

7   plaintiffs had moved to require defendants to produce privilege logs, the court would

8   "be strongly inclined to grant" a similar motion by defendants).  If DC wished to

9   avoid logging privileged documents, it should have extended the same courtesy to

10  Defendants, and reached an equitable stipulation in 2010.

11       **F.    Categorical Logging Is Not Warranted**

12       DC argues that, if the Court denies its motion for a protective order, it should

13  nonetheless be allowed to "categorically log" its supposedly privileged documents in

14  the form of an affidavit.  The test for categorical logging, however, is substantially

15  similar to that for a protective order.  A party "cannot refuse to comply with Rule 26

16  simply because they find compliance with the Rule onerous." *Bethea v. Merchants*

17  *Commercial Bank*, 2012 WL 5359536, at *2 (D.V.I. Oct. 31, 2012).   Rather, the

18  moving party must "establish[] undue burden *with specificity*." *Id.* (refusing to allow

19  categorical logging of materials); *Sullivan*, 233 F.R.D. at 575.

20       The "categorical logging" offered by DC suffers the same defects as its

21  proposed protective order and would still leave Defendants – and the Court –

22  completely in the dark.  DC proposes a declaration wherein one of its counsel would

23  testify that "(a) the withheld documents were (1) either prepared to assist in

24  anticipated or pending litigation, or (2) contain information reflecting

25  communications between (i) counsels or counsels' representatives, and (ii) plaintiff[]

26  or plaintiff['s] representatives, for the purposes of facilitating the rendition of legal

27  services to plaintiff[]; and (b) intended to be confidential communications." Mot. at

28  12. This offers no specificity whatsoever over the number, type, or category of

documents that are being withheld, nor the basis for the assertion of privilege. Functionally, DC's "categorical logging" proposal is no different than its proposal not to log post-2004 documents at all.

The cases DC cites where parties were allowed to categorically log their documents do not resemble this case. For example, in *In re Imperial Corp. of America v. Shields*, 174 F.R.D. 475, 478 (S.D. Cal. July 31, 1997), the court allowed categorical logging because the "case involve[ed] multiple parties (approximately 50), law firms (approximately 20) and hundreds of thousands, if not millions, of documents." By comparison, this case is tiny. Moreover, the court issued a protective order in that case in response to requests that sought the "production of all documents between plaintiffs' various counsels and plaintiffs themselves concerning this lawsuit" – which is obviously ***not*** what Defendants seek here. *Id.* at 478. In *U.S. Magnesium Corp. of Am*, 2006 WL 1699608, at *6 (D. Utah June 14, 2006), the non-moving party (unlike Defendants here) *agreed* to allow the grouping of privilege log entries. Finally, in *In re Motor Fuel Temperature Sales Practices Litigation*, 2009 WL 959491, at *3, the court allowed categorical logging *solely* of certain attorney emails.

For the same reasons that DC is not entitled to a protective order, it is similarly not entitled to categorically log its supposedly privileged documents.

## III.  CONCLUSION

For all the reasons detailed above, DC's motion should be denied in its entirety, and DC ordered to produce a privilege log by no later than January 21, 2013. DC asks that it have until March 4, 2013 to serve privilege logs. Mot. at 13. However, DC's privilege logs are already severely untimely, and DC has had Defendants' requests for months. DC has also stated that it will file motions for summary judgment on its remaining claims as soon as possible. Dkt. 528 at 9. DC should not be permitted to avoid providing a privilege log until after it files summary judgment motions.

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR A PROTECTIVE ORDER

1    December 10, 2012        RESPECTFULLY SUBMITTED,

2                            /s/ Marc Toberoff
                            _____
3                            TOBEROFF & ASSOCIATES, P.C.
                            Attorneys for Defendants Mark Warren Peary *et al.*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR A PROTECTIVE ORDER