Marc Toberoff (State Bar No. 188547)
  mtoberoff@ipwla.com
Keith G. Adams (State Bar No. 240497)
  kgadams@ipwla.com
Pablo D. Arredondo (State Bar No. 241142)
  parredondo@ipwla.com
David Harris (State Bar No. 255557)
  dharris@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway #348
Malibu, California 90265
Telephone:  (310) 246-3333
Fax:         (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele Peavy,
and Laura Siegel Larson, individually and
as personal representative of the Estate of
Joanne Siegel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>                    Plaintiff,<br><br>        vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>                    Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>**DISCOVERY MATTER**<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DECLARATION OF KEITH G. ADAMS IN OPPOSITION TO PLAINTIFF DC COMICS' MOTION FOR A PROTECTIVE ORDER**<br><br>*Opposition filed concurrently herewith*<br><br>Complaint filed:  May 14, 2010<br>Trial Date:  None Set<br><br>Date:              January 7, 2013<br>Time:             10:00 a.m.<br>Courtroom:      540 |

## DECLARATION OF KEITH G. ADAMS

I, Keith G. Adams, declare as follows:

1. I am an attorney at the law firm of Toberoff & Associates, P.C., counsel of record for defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel, in the above-captioned action, and submit this declaration in opposition to plaintiff DC Comics' ("DC") Motion For A Protective Order.

2. Attached hereto as Exhibit "A" is a true and correct copy of an email and attachments sent from my former colleague Nick Williamson to Daniel Petrocelli, counsel for DC, dated September 16, 2010.

3. Attached hereto as Exhibit "B" is a true and correct copy of an email and attachments sent from Cassandra Seto, counsel for DC, to my colleague Marc Toberoff, dated October 6, 2010.

4. Attached hereto as Exhibit "C" is a true and correct copy of an email sent from Ms. Seto to Mr. Toberoff, dated October 11, 2010.

5. Attached hereto as Exhibit "D" is a true and correct copy of a letter and attachment sent from Mr. Toberoff to Matt Kline, counsel for DC, dated October 12, 2010.

6. Attached hereto as Exhibit "E" is a true and correct copy of a letter sent from Mr. Kline to Mr. Toberoff, dated October 13, 2010.

7. Attached hereto as Exhibit "F" is a true and correct copy of a letter sent from Mr. Toberoff to Mr. Kline, dated November 22, 2010.

8. Attached hereto as Exhibit "F" is a true and correct copy of a letter sent from Mr. Toberoff to Mr. Petrocelli, dated November 22, 2010.

9. Attached hereto as Exhibit "G" is a true and correct copy of an email sent from Mr. Toberoff to Mr. Petrocelli, dated November 29, 2010.

10. Attached hereto as Exhibit "H" is a true and correct copy of a letter sent

from Mr. Kline to Mr. Toberoff, dated September 15, 2011

11.    Attached hereto as Exhibit "I" is a true and correct copy of Defendant Mark Warren Peary's First Request To Plaintiff DC Comics For Production Of Documents And Things, served on December 13, 2011.

12.    Attached hereto as Exhibit "J" is a true and correct copy of a letter sent from Jason Tokoro, counsel for DC, to Susan Allison, counsel for third-party Kevin Marks, former counsel to defendant Laura Siegel Larson, dated May 21, 2012.

13.    Attached hereto as Exhibit "K" is a true and correct copy of a letter sent from my colleague Pablo Arredondo to Mr. Tokoro, dated May 30, 2012.

14.    Attached hereto as Exhibit "L" is a true and correct copy of a letter sent from my colleague Pablo Arredondo to Mr. Tokoro, dated May 30, 2012.

15.    Attached hereto as Exhibit "M" is a true and correct copy of a letter sent from Mr. Tokoro to Mr. Arredondo, dated May 31, 2012.

16.    Attached hereto as Exhibit "N" is a true and correct copy of a letter sent from Mr. Tokoro to Mark Drooks, former counsel for Defendant Marc Toberoff, dated June 19, 2012.

17.    Attached hereto as Exhibit "O" is a true and correct copy of a letter sent from Laura Brill, co-counsel for Defendants, to Mr. Petrocelli, dated July 11, 2012.

18.    Attached hereto as Exhibit "P" is a true and correct copy of a letter sent from Ms. Seto to myself and Mr. Arredondo, dated December 6, 2012.

///
///
///
///
///
///
///

DECLARATION OF KEITH G. ADAMS

1    Executed on December 10, 2012, at Malibu, California.

2

3    _____

4                                    Keith G. Adams

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF KEITH G. ADAMS

**Pablo Arredondo**

| | |
|---|---|
| **From:** | nwilliamson@ipwla.com |
| **Sent:** | Thursday, September 16, 2010 8:35 PM |
| **To:** | dpetrocelli@omm.com; mkline@omm.com; cseto@omm.com |
| **Cc:** | kgadams@ipwla.com; nwilliamson@ipwla.com; lbrill@kbkfirm.com; ndaum@kbkfirm.com |
| **Subject:** | DC v. PPC- Stipulation Re Privilege Logs |
| **Attachments:** | DC v.PPC.Stipulation.Privilege Logs.800pm.doc |

Counsel:

Attached please find for your review defendants' draft of the proposed stipulation regarding the logging of post-litigation communications.

Regards,

Nicholas C. Williamson
Toberoff & Associates, P.C.
2049 Century Park East, Suite 2720
Los Angeles , CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101
Email: nwilliamson@ipwla.com

This message and any attached documents may contain information from Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

**Exhibit A**
**4**

Marc Toberoff (S.B. #188547)
 MToberoff@ipwla.com
Nicholas C. Williamson (S.B. #231124)
 NWilliamson@ipwla.com
Keith G. Adams (S.B. #240497)
 KGadams@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 2720
Los Angeles, California 90067
Telephone:  (310) 246-3333
Facsimile:   (310) 246-3101

Attorneys for Defendants Mark Warren Peary,
as personal representative of the Estate of Joseph
Shuster,  Jean Adele Peavy, Joanne Siegel, and
Laura Siegel Larson

(continued on next page)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, JOANNE SIEGEL, an individual, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>　　　　　Defendants. | Case No. CV 10-3633 ODW (RZx)<br><br>**STIPULATION RE: PRIVILEGE LOGS**<br><br>**Judge**:  Hon. Otis D Wright, II<br>**Magistrate**:  Hon. Ralph Zarefsky<br><br>Complaint Filed:  May 14, 2010 |

**Exhibit A**
**5**

(continued from previous page)

RICHARD B. KENDALL (S.B. #90072)
  rkendall@kbkfirm.com
LAURA W. BRILL (S.B. #195889)
  lbrill@kbkfirm.com
NICHOLAS F. DAUM (S.B. #236155)
  ndaum@kbkfirm.com
NATHALIE E. COHEN (S.B. #258222)
  ncohen@kbkfirm.com
KENDALL BRILL & KLIEGER LLP
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California  90067
Telephone:   (310) 556-2700
Facsimile:   (310) 556-2705

Attorneys for Defendants Marc Toberoff,
Pacific Pictures Corporation, IP
Worldwide, LLC, and IPW, LLC


DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:   (310) 553-6700
Facsimile:   (310) 246-6779

Attorneys for Plaintiff DC Comics


PATRICK T. PERKINS (admitted *pro hac vice*)
  pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone:   (845) 265-2820
Facsimile:   (845) 265-2819

Attorneys for Plaintiff DC Comics

**Exhibit A**
**6**

## STIPULATION

WHEREAS, plaintiff DC Comics ("Plaintiff"), and defendants Pacific Pictures Corporation, IP Worldwide, LLC, IPW, LLC, Marc Toberoff, Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, Joanne Siegel, and Laura Siegel Larson (collectively, "Defendants") held their Federal Rule of Civil Procedure 26(f) conference of counsel on August 16, 2010;

WHEREAS, the parties have commenced formal discovery in this matter;

WHEREAS, Plaintiff and Defendants hereby agree that to list all post-litigation attorney-client communications responsive to Federal Rules of Civil Procedure, Rule 34 and Rule 45 document requests in privilege logs would be burdensome, duplicative and unnecessary;

NOW THEREFORE, the parties stipulate and jointly agree to the following:

1) Except as set forth in paragraph 2 below, no party shall be required to list on their privilege logs the following documents created on or after October 8, 2004, when the complaint was filed in *Siegel v. Warner Bros. Ent. Inc.*, Case No. 04-CV-08400 ODW (RZx):

> Attorney-client communications, attorney work product, and/or documents protected by the joint defense privilege, common interest privilege, mediation privilege, or the May 1, 2008 JAMS Confidentiality Agreement regarding settlement discussions.

2) Notwithstanding the above, the parties shall be required to list on their respective privilege logs, documents relating to the receipt by DC Comics, Warner Bros. Entertainment, Inc., or any related entity, of the cover letter (a.k.a. "Toberoff Timeline") attached as "Exhibit A" to the Complaint filed in *DC Comics v. Pacific Pictures Corp.*, Case No. 10-CV-03633 ODW (RZx) and/or the documents (Bates nos. Q001-839) enclosed by such cover letter.

**Exhibit A**

IT IS SO STIPULATED

Dated:  September 16, 2010          TOBEROFF & ASSOCIATES, P.C.


                                   By: _____
                                      Marc Toberoff
                                      Attorneys for Defendants Mark Warren
                                      Peary as personal representative of the
                                      Estate of Joseph Shuster, Jean Adele
                                      Peavy, Joanne Siegel, and Laura Seigel
                                      Larson


Dated:  September 16, 2010          KENDALL BRILL & KLIEGER LLP


                                   By: _____
                                      Richard B. Kendall
                                      Attorneys for Defendants Mark Toberoff,
                                      Pacific Pictures Corporation, IP
                                      Worldwide, LLC, and IPW, LLC


Dated:  September 16, 2010          O'MELVENY & MYERS L.L.P.


                                   By: _____
                                      Daniel M. Petrocelli
                                      Attorneys for Plaintiff DC Comics

**Exhibit A**
**8**

**Pablo Arredondo**

| | |
|---|---|
| **From:** | Seto, Cassandra [cseto@OMM.com] |
| **Sent:** | Wednesday, October 06, 2010 3:12 PM |
| **To:** | Richard Kendall; Laura Brill; Nicholas Daum; Nathalie Cohen; Marc Toberoff; Nicholas Williamson; Keith Adams |
| **Cc:** | Petrocelli, Daniel; Kline, Matthew; Tokoro, Jason |
| **Subject:** | DC Comics v. Pacific Pictures Corp. |
| **Attachments:** | Stipulation re Privilege Logs.doc; Redline-Stipulation re Privilege Logs.doc |

Counsel:

Attached please find a draft stipulation regarding the preparation of privilege logs in this case. We have included a redline against your proposal. As we have said before, we are willing to negotiate such a proposal, but reserve all rights.

Thanks.

**Cassandra L. Seto**
**O'Melveny & Myers LLP**
1999 Avenue of the Stars, Suite 700, Los Angeles, California 90067
Telephone: 310.246.6703 | Facsimile: 310.246.6779

*This message and any attached documents contain information from the law firm of O'Melveny & Myers LLP that may be confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.*

Marc Toberoff (S.B. #188547)
 MToberoff@ipwla.com
Nicholas C. Williamson (S.B. #231124)
 NWilliamson@ipwla.com
Keith G. Adams (S.B. #240497)
 KGadams@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 2720
Los Angeles, California 90067
Telephone:  (310) 246-3333
Facsimile:  (310) 246-3101

Attorneys for Defendants Mark Warren Peary,
as personal representative of the Estate of Joseph
Shuster,  Jean Adele Peavy, Joanne Siegel, and
Laura Siegel Larson

(continued on next page)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DC COMICS, | Case No. CV 10-3633 ODW (RZx) |
| Plaintiff, | **STIPULATION RE: PRIVILEGE LOGS** |
| v. | |
| PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, JOANNE SIEGEL, an individual, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive, | **Judge**:  Hon. Otis D Wright, II<br>**Magistrate**:  Hon. Ralph Zarefsky<br><br>Complaint Filed:  May 14, 2010 |
| Defendants. | |

**Exhibit B**

**10**

(continued from previous page)

RICHARD B. KENDALL (S.B. #90072)
  rkendall@kbkfirm.com
LAURA W. BRILL (S.B. #195889)
  lbrill@kbkfirm.com
NICHOLAS F. DAUM (S.B. #236155)
  ndaum@kbkfirm.com
NATHALIE E. COHEN (S.B. #258222)
  ncohen@kbkfirm.com
KENDALL BRILL & KLIEGER LLP
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone:  (310) 556-2700
Facsimile:   (310) 556-2705

Attorneys for Defendants Marc Toberoff,
Pacific Pictures Corporation, IP
Worldwide, LLC, and IPW, LLC


DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779


PATRICK T. PERKINS (admitted *pro hac vice*)
  pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone:  (845) 265-2820
Facsimile:   (845) 265-2819

Attorneys for Plaintiff DC Comics

## STIPULATION

WHEREAS, plaintiff DC Comics and defendants Pacific Pictures Corporation, IP Worldwide, LLC, IPW, LLC, Marc Toberoff, Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, Joanne Siegel, and Laura Siegel Larson (collectively, "Defendants") held their Federal Rule of Civil Procedure 26(f) conference of counsel on August 16, 2010;

WHEREAS, DC Comics has commenced discovery in this matter;

WHEREAS, the parties agree that the logging on privilege logs of a certain, defined subset of documents that are otherwise responsive to Federal Rules of Civil Procedure, Rule 34 and Rule 45 would be burdensome, duplicative and unnecessary;

NOW THEREFORE, the parties stipulate and jointly agree to the following:

1)  Except as set forth in paragraphs 3 and 4 below, DC Comics (including its affiliates) and defendants Joanne Siegel and Laura Siegel Larson shall not be required to list on their respective privilege logs the following documents created on or after October 8, 2004, when the complaint was filed in *Siegel v. Warner Bros. Ent. Inc.*, Case No. 04-CV-08400 ODW (RZx) (which, along with *Siegel v. Time Warner Inc.*, Case No. 04-CV-08776 ODW (RZx), are referred to herein as "the *Siegel* Litigation"):

(a)      Attorney-client communications and attorney work product created solely and exclusively for the purposes of the *Siegel* Litigation; and

(b)      Communications with experts and consultants retained in connection with the *Siegel* Litigation, except where specific document requests are made related to these communications, in which case this stipulation would not apply.

2)  Except as set forth in paragraphs 3 and 4 below, DC Comics (including its affiliates) and defendants Mark Warren Peary, Jean Peavy, Marc Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC shall not be required to list on their privilege logs the following documents created on or after May 14,

2010, when DC Comics filed its complaint in the above-entitled action ("the *Pacific Pictures* Litigation"):

(a)    Attorney-client communications and attorney work product created solely and exclusively for the purposes of *Pacific Pictures* Litigation; and

(b)    Communications with experts and consultants retained in connection with the *Pacific Pictures* Litigation, except where specific document requests are made related to these communications, in which case this stipulation would not apply.

3)  Notwithstanding the above, the parties shall be required to list on their respective privilege logs the following documents:

(a)    All communications that involve any third party (*i.e.*, any party other than a named party or an affiliate of the defendants in the *Siegel* Litigation or the plaintiff in the *Pacific Pictures* Litigation), regardless of when they took place and regardless of any assertion that the communication is covered by a "joint defense privilege," a "common interest privilege," or a like privilege (*e.g.*, this would include any communications between Joanne Siegel and Jean Peavy or IP Worldwide);

(b)    Any and all documents claimed to be covered by the "joint defense privilege" or "common interest privilege";

(c)    Any and all documents claimed to be protected by any privilege or confidentiality protection related to mediation privilege (including the May 1, 2008 JAMS confidentiality agreement signed in the *Siegel* Litigation); and

(d)    Any and all documents related to the Toberoff Timeline to the extent they are not merely draft pleadings, briefs, motions, or other documents submitted to the Court.

4)  Other than the exceptions set forth in paragraphs 1 and 2 (as limited by paragraphs 3 and 4), the parties agree to no other exceptions to the requirement that the respective parties prepare or produce privilege logs.  Nor may this stipulation or

discussions regarding its content be used as an excuse for not otherwise timely preparing and serving such logs.

IT IS SO STIPULATED.

Dated:  October __, 2010          TOBEROFF & ASSOCIATES, P.C.


                                 By: _____
                                     Marc Toberoff
                                     Attorneys for Defendants Mark Warren
                                     Peary as personal representative of the
                                     Estate of Joseph Shuster, Jean Adele
                                     Peavy, Joanne Siegel, and Laura Seigel
                                     Larson

Dated:  October __, 2010          KENDALL BRILL & KLIEGER LLP


                                 By: _____
                                     Richard B. Kendall
                                     Attorneys for Defendants Mark Toberoff,
                                     Pacific Pictures Corporation, IP
                                     Worldwide, LLC, and IPW, LLC

Dated:  October __, 2010          O'MELVENY & MYERS L.L.P.


                                 By: _____
                                     Daniel M. Petrocelli
                                     Attorneys for Plaintiff DC Comics

Marc Toberoff (S.B. #188547)
 MToberoff@ipwla.com
Nicholas C. Williamson (S.B. #231124)
 NWilliamson@ipwla.com
Keith G. Adams (S.B. #240497)
  KGadams@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 2720
Los Angeles, California 90067
Telephone:  (310) 246-3333
Facsimile:  (310) 246-3101

Attorneys for Defendants Mark Warren Peary,
as personal representative of the Estate of Joseph
Shuster,  Jean Adele Peavy, Joanne Siegel, and
Laura Siegel Larson

(continued on next page)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>    Plaintiff,<br><br>  v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, JOANNE SIEGEL, an individual, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>    Defendants. | Case No. CV 10-3633 ODW (RZx)<br><br>**STIPULATION RE: PRIVILEGE LOGS**<br><br>**Judge**:  Hon. Otis D Wright, II<br>**Magistrate**:  Hon. Ralph Zarefsky<br><br>Complaint Filed:  May 14, 2010 |

(continued from previous page)

RICHARD B. KENDALL (S.B. #90072)
  rkendall@kbkfirm.com
LAURA W. BRILL (S.B. #195889)
  lbrill@kbkfirm.com
NICHOLAS F. DAUM (S.B. #236155)
  ndaum@kbkfirm.com
NATHALIE E. COHEN (S.B. #258222)
  ncohen@kbkfirm.com
KENDALL BRILL & KLIEGER LLP
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California  90067
Telephone:   (310) 556-2700
Facsimile:   (310) 556-2705

Attorneys for Defendants Marc Toberoff,
Pacific Pictures Corporation, IP
Worldwide, LLC, and IPW, LLC


DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:   (310) 553-6700
Facsimile:   (310) 246-6779

~~Attorneys for Plaintiff DC Comics~~

PATRICK T. PERKINS (admitted *pro hac vice*)
  pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone:   (845) 265-2820
Facsimile:   (845) 265-2819

Attorneys for Plaintiff DC Comics

## STIPULATION

WHEREAS, plaintiff DC Comics ("Plaintiff"), and defendants Pacific Pictures Corporation, IP Worldwide, LLC, IPW, LLC, Marc Toberoff, Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, Joanne Siegel, and Laura Siegel Larson (collectively, "Defendants") held their Federal Rule of Civil Procedure 26(f) conference of counsel on August 16, 2010;

WHEREAS, the parties haveDC Comics has commenced formal discovery in this matter;

WHEREAS, Plaintiff and Defendants hereby agree that to list all post-litigation attorney-client communicationsthe parties agree that the logging on privilege logs of a certain, defined subset of documents that are otherwise responsive to Federal Rules of Civil Procedure, Rule 34 and Rule 45 document requests in privilege logs would be burdensome, duplicative and unnecessary;

NOW THEREFORE, the parties stipulate and jointly agree to the following:

1)      Except as set forth in paragraph 2 below, no party shallparagraphs 3 and 4 below, DC Comics (including its affiliates) and defendants Joanne Siegel and Laura Siegel Larson shall not be required to list on their respective privilege logs the following documents created on or after October 8, 2004, when the complaint was filed in *Siegel v. Warner Bros. Ent. Inc.*, Case No. 04-CV-08400 ODW (RZx) (which, along with *Siegel v. Time Warner Inc.*, Case No. 04-CV-08776 ODW (RZx), are referred to herein as "the *Siegel* Litigation"):

(a)      Attorney-client communications, attorney work product, and/or documents protected by the joint defense privilege, common interest privilege, mediation privilege, or the May 1, 2008 JAMS Confidentiality Agreement regarding settlement discussions. and attorney work product created solely and exclusively for the purposes of the *Siegel* Litigation; and

(b)      Communications with experts and consultants retained in connection with the *Siegel* Litigation, except where specific document requests are

made related to these communications, in which case this stipulation would not apply.

    2)    Except as set forth in paragraphs 3 and 4 below, DC Comics (including its affiliates) and defendants Mark Warren Peary, Jean Peavy, Marc Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC shall not be required to list on their privilege logs the following documents created on or after May 14, 2010, when DC Comics filed its complaint in the above-entitled action ("the *Pacific Pictures* Litigation"):

    (a)    Attorney-client communications and attorney work product created solely and exclusively for the purposes of *Pacific Pictures* Litigation; and

    (b)    Communications with experts and consultants retained in connection with the *Pacific Pictures* Litigation, except where specific document requests are made related to these communications, in which case this stipulation would not apply.

    3)    ~~2)~~ Notwithstanding the above, the parties shall be required to list on their respective privilege logs ~~documents relating to the receipt by DC Comics, Warner Bros. Entertainment, Inc., or any related entity, of the cover letter (a.k.a. "Toberoff Timeline") attached as "Exhibit A" to the Complaint filed in *DC Comics v. Pacific Pictures Corp.*, Case No. 10-CV-03633 ODW (RZx) and/or the documents (Bates nos. Q001-839) enclosed by such cover letter.~~ the following documents:

    (a)    All communications that involve any third party (*i.e.*, any party other than a named party or an affiliate of the defendants in the *Siegel* Litigation or the plaintiff in the *Pacific Pictures* Litigation), regardless of when they took place and regardless of any assertion that the communication is covered by a "joint defense privilege," a "common interest privilege," or a like privilege (*e.g.*, this would include any communications between Joanne Siegel and Jean Peavy or IP Worldwide);

(b)     Any and all documents claimed to be covered by the "joint defense privilege" or "common interest privilege";

(c)     Any and all documents claimed to be protected by any privilege or confidentiality protection related to mediation privilege (including the May 1, 2008 JAMS confidentiality agreement signed in the *Siegel* Litigation); and

(d)     Any and all documents related to the Toberoff Timeline to the extent they are not merely draft pleadings, briefs, motions, or other documents submitted to the Court.

4)     Other than the exceptions set forth in paragraphs 1 and 2 (as limited by paragraphs 3 and 4), the parties agree to no other exceptions to the requirement that the respective parties prepare or produce privilege logs.  Nor may this stipulation or discussions regarding its content be used as an excuse for not otherwise timely preparing and serving such logs.


IT IS SO STIPULATED.

Dated:  ~~September 16,~~October __,    TOBEROFF & ASSOCIATES, P.C.
2010


                                        By:    _____
                                               Marc Toberoff
                                               Attorneys for Defendants Mark Warren
                                               Peary as personal representative of the
                                               Estate of Joseph Shuster, Jean Adele
                                               Peavy, Joanne Siegel, and Laura Seigel
                                               Larson


**Exhibit B**
**19**

Dated:  ~~September 16,~~ October __,    KENDALL BRILL & KLIEGER LLP
2010


By: _____
    Richard B. Kendall
    Attorneys for Defendants Mark Toberoff,
    Pacific Pictures Corporation, IP
    Worldwide, LLC, and IPW, LLC


Dated:  ~~September 16,~~ October __,    O'MELVENY & MYERS L.L.P.
2010


By: _____
    Daniel M. Petrocelli
    Attorneys for Plaintiff DC Comics


**Exhibit B**
**20**

Document comparison by Workshare Professional on Wednesday, October 06, 2010 3:09:46 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:/Documents and Settings/cls14982/Desktop/DC v.PPC.Stipulation.Privilege Logs.800pm.doc |
| Description | DC v.PPC.Stipulation.Privilege Logs.800pm |
| Document 2 ID | file:////CCCLFP1/users/cls14982/MOMS/WP/WARNER BROS/Stipulation re Privilege Logs.doc |
| Description | Stipulation re Privilege Logs |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 29 |
| Deletions | 13 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 42 |

**Exhibit B**
**21**

**Pablo Arredondo**

---

| | |
|---|---|
| **From:** | Seto, Cassandra [cseto@OMM.com] |
| **Sent:** | Monday, October 11, 2010 11:37 PM |
| **To:** | Richard Kendall; Laura Brill; Nicholas Daum; Nathalie Cohen; Marc Toberoff; Nicholas Williamson; Keith Adams |
| **Cc:** | Petrocelli, Daniel; Kline, Matthew |
| **Subject:** | DC Comics v. PPC (1 of 3) |
| **Attachments:** | 10.11 Seto Declaration.pdf; 10.11 Motion to Compel.pdf; EXHIBIT G.PDF; EXHIBIT H.PDF; EXHIBIT I.PDF; EXHIBIT A.PDF; EXHIBIT B.PDF; EXHIBIT C.PDF; EXHIBIT D.PDF; EXHIBIT E.PDF; EXHIBIT F.PDF |

Dear Counsel:

Attached please find plaintiff's portion of DC Comics' Joint Stipulation Regarding DC Comics' Motion to Compel Production of Documents and Privilege Logs and documents in support thereof.  Please note that some of the supporting documents will be sent in separate e-mails due to size restraints.

1

**Exhibit C**

**22**

1  DANIEL M. PETROCELLI (S.B. #097802)
       dpetrocelli@omm.com
2  MATTHEW T. KLINE (S.B. #211640)
       mkline@omm.com
3  CASSANDRA L. SETO (S.B. #246608)
       cseto@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, CA  90067-6035
   Telephone:  (310) 553-6700
6  Facsimile:   (310) 246-6779

7  PATRICK T. PERKINS (admitted *pro hac vice*)
       pperkins@ptplaw.com
8  PERKINS LAW OFFICE, P.C.
   1711 Route 9D
9  Cold Spring, NY 10516
   Telephone:  (845) 265-2820
10 Facsimile:   (845) 265-2819

11 Attorneys for Plaintiff DC Comics

12 (continued on next page)

13              **UNITED STATES DISTRICT COURT**

14             **CENTRAL DISTRICT OF CALIFORNIA**

15 DC COMICS,                          | Case No.  CV 10-3633 ODW (RZx)

16              Plaintiff,             | **DISCOVERY MATTER**

17       v.                            | **JOINT STIPULATION
                                         REGARDING DC COMICS'**
18 PACIFIC PICTURES                    | **MOTION TO COMPEL
   CORPORATION, IP WORLDWIDE,**        | **PRODUCTION OF DOCUMENTS
19 LLC, IPW, LLC, MARC TOBEROFF,       | AND PRIVILEGE LOGS**
   an individual, MARK WARREN          |
20 PEARY, as personal representative of | NOTICE OF MOTION AND
   the ESTATE OF JOSEPH SHUSTER,       | MOTION, DECLARATION OF
21 JEAN ADELE PEAVY, an individual,    | CASSANDRA SETO, AND
   JOANNE SIEGEL, an individual,       | [PROPOSED] ORDER FILED
22 LAURA SIEGEL LARSON, an             | CONCURRENTLY HEREWITH
   individual, and DOES 1-10, inclusive, |
23                                     |
              Defendants.              | **Judge**:       Hon. Otis D. Wright II
24                                     | **Magistrate**:   Hon. Ralph Zarefsky
25                                     |
26                                     | **Hearing Date**:   November 8, 2010
                                       | **Hearing Time**:   10:00 a.m.
27
28

                                          JOINT STIPULATION RE:
                                      DC COMICS' MOTION TO COMPEL

                    **Exhibit C**
                         23

1 | (continued from previous page)

2 | MARC TOBEROFF (S.B. #188547)
3 |   mtoberoff@ipwla.com
     NICHOLAS C. WILLIAMSON (S.B. #231124)
4 |   nwilliamson@ipwla.com
     KEITH G. ADAMS (S.B. #240497)
5 |   kgadams@ipwla.com
     TOBEROFF & ASSOCIATES, P.C.
6 | 2049 Century Park East, Suite 2720
7 | Los Angeles, California 90067
     Telephone:  (310) 246-3333
8 | Facsimile:   (310) 246-3101

9 | Attorneys for Defendants Mark Warren
10 | Peary, Jean Peavy, Joanne Siegel, and
     Laura Siegel Larson
11 |

12 | RICHARD B. KENDALL (S.B. #90072)
       rkendall@kbkfirm.com
13 | LAURA W. BRILL (S.B. #195889)
       lbrill@kbkfirm.com
14 | NICHOLAS F. DAUM (S.B. #236155)
       ndaum@kbkfirm.com
15 | NATHALIE E. COHEN (S.B. #258222)
       ncohen@kbkfirm.com
16 | KENDALL BRILL & KLIEGER LLP
17 | 10100 Santa Monica Blvd., Suite 1725
     Los Angeles, California 90067
18 | Telephone:  (310) 556-2700
     Facsimile:   (310) 556-2705
19 |

20 | Attorneys for Defendants Marc Toberoff,
     Pacific Pictures Corporation, IP
21 | Worldwide, LLC, and IPW, LLC

22 |

23 |

24 |

25 |

26 |

27 |

28 |

JOINT STIPULATION RE:
DC COMICS' MOTION TO COMPEL

**Exhibit C**
**24**

1          Pursuant to Federal Rules of Civil Procedure 26, 34, and 37 and Central

2    District Local Rule 37-2, the parties respectfully submit the following Joint

3    Stipulation Regarding DC Comics' Motion to Compel Production of Documents

4    and Privilege Logs.  Pursuant to Central District Local Rule 37-1, the parties have

5    attempted unsuccessfully to resolve their disputes and therefore respectfully seek

6    the assistance of the Court.

7    Dated:        October 18, 2010               Respectfully Submitted,

8                                                 O'MELVENY & MYERS LLP

9

10                                               By:_____

11                                                    Daniel M. Petrocelli
                                                      Attorneys for Plaintiff DC Comics

12   Dated:        October 18, 2010               Respectfully Submitted,

13                                                TOBEROFF & ASSOCIATES, P.C.

14

15                                               By:_____

16                                                    Marc Toberoff
                                                      Attorneys for Defendants Mark
17                                                    Warren Peary, Jean Peavy, Joanne
                                                      Siegel, and Laura Siegel Larson
18

19   Dated:        October 18, 2010               Respectfully Submitted,

20                                                KENDALL BRILL & KLIEGER LLP

21

22                                               By:_____

23                                                    Richard B. Kendall
                                                      Attorneys for Defendants Marc
                                                      Toberoff, Pacific Pictures
24                                                    Corporation, IP Worldwide, LLC,
                                                      and IPW, LLC

25

26

27

28

                                      -1-                    JOINT STIPULATION RE:
                                                       DC COMICS' MOTION TO COMPEL

Exhibit C
25

# I.  DC COMICS' INTRODUCTORY STATEMENT

DC Comics seeks documents from four material witnesses:  defendants Joanne Siegel, Laura Siegel Larson, Jean Peavy, and Mark Peary.  As reflected in the initial round of discovery motions decided by the Court, defendants sought to stay discovery indefinitely and severely limit its scope.  Docket Nos. 42, 61.  At the September 20 hearing on these motions, the Court ruled "there's nothing that prevents the plaintiff from commencing discovery" and ordered that these four witnesses' depositions could commence starting November 15, 2010.  Declaration of Cassandra Seto ("Seto Decl.") Ex. H at 122:24-25, 124:11-19.  As to the documents DC Comics requested in advance of the depositions, the Court instructed the parties to "work things out so that you won't have to come back in front of me again"—admonishing counsel "to be cooperative and none to be obstructive."  *Id.* at 113:19-20, 125:17-18.

That night, defendants served over 150 pages of blanket objections to DC Comics' document requests.  Seto Decl. Exs. I-L.  In the weeks that followed, defendants only added to this barrage of objections.  To date, defendants have not produced a single document or privilege log, and refuse to do so until and unless DC Comics enters into stipulations that are objectionable and unwarranted and that defendants have no right to demand as a condition to discharging their discovery obligations.  DC Comics is entitled to the requested documents without further delay, especially in light of the need to preserve the testimony of key witnesses who are aged and infirm.  Without a court order compelling this discovery, defendants will continue to obstruct and delay the process.

Defendants' objections are unfounded.  In their initial responses served on September 20, defendants asserted (i) boilerplate objections that, under the law, amount to no objection at all; (ii) non-specific privilege claims that prevent DC Comics from challenging any claims of privilege; and (iii) the *very same* objections and arguments that the Court rejected in denying defendants' motion for a

JOINT STIPULATION RE:
DC COMICS' MOTION TO COMPEL

**Exhibit C**
**26**

1   protective order—*e.g.*, that their anti-SLAPP motion barred discovery and that

2   "discovery should be stayed" until Judge Wright rules on defendants' Rule 12

3   motions, anti-SLAPP motion, and Rule 54(b) motion in the *Siegel* case. *E.g.*, Seto

4   Decl. Ex. I at 129-30.

5        The next day, DC Comics wrote defendants and pointed out that their blanket

6   objections were inconsistent with the Court's rulings and otherwise improper and

7   requested a meet and confer under Rule 37. Seto Decl. Ex. M. Three days later,

8   defendants said that they would not meet and confer because DC Comics' letter

9   failed to specify the bases for a motion to compel. *Id.* Ex. N at 306-07. This was

10  despite the fact that defendants had represented in their objections that they would

11  "promptly meet and confer" after "the Court's rulings on the[] discovery motions."

12  *E.g.*, *id.* Ex. I at 129. Defendants also said they intended to amend their discovery

13  responses to reflect "the views that Magistrate Judge Zarefsky expressed," but not

14  until they obtained and reviewed the hearing transcript. *Id.* Ex. N at 306.

15       On September 29, DC Comics sent defendants another letter providing

16  further detail regarding this motion to compel and reiterating its request for a

17  conference. Seto Decl. Ex. O. Defendants did not respond until October 5, stating

18  they would serve amended discovery responses on October 8 and meet and confer

19  on October 12, *id.* Ex. P—some three weeks after DC Comics' initial request and

20  beyond the 10-day limit established by Rule 37.

21       At DC Comics' insistence, defendants agreed to meet and confer on October

22  5. During this discussion, DC Comics stated it would proceed with its motion to

23  compel on October 11 if defendants continued to withhold documents. Seto Decl. ¶

24  12. Defendants said they would produce documents—although they refused to

25  disclose the scope of the production—if and when DC Comics stipulated to a

26  protocol that would exempt from the parties' privilege logs all privileged

27  documents post-dating the filing of the *Siegel* litigation in 2004 pursuant to a

28  stipulation defendants had proposed to DC Comics a month earlier. *Id.*, *id.* Ex. G.

JOINT STIPULATION RE:
DC COMICS' MOTION TO COMPEL

**Exhibit C**
**27**

1   Even though the stipulation was overbroad in scope and otherwise objectionable,

2   DC Comics said it would endeavor to work out a mutually acceptable stipulation.

3   *Id.* ¶ 12.  Reiterating the position it conveyed to defendants as early as August, DC

4   Comics declined defendants' request to stipulate to an "interim" agreement that

5   would alleviate defendants' obligation to produce privilege logs while a final

6   stipulation was being negotiated.  *Id.*, *id.* Ex. F.  The next day, in the hope of

7   resolving the issue, DC Comics sent defendants a revised stipulation it was

8   prepared to sign, but defendants have yet to comment on it or agree to produce any

9   documents or privilege logs.  *Id*. Ex. Q, ¶ 13.  DC Comics remains willing to enter

10  into the form of stipulation it provided defendants.  It also is amenable to the

11  Court's adopting DC Comics' form of stipulation in an order applicable to all

12  parties.

13          On October 8, defendants served another 150 pages of blanket objections,

14  again unaccompanied by any documents or privilege logs.  Seto Decl. Exs. R-U.

15  Defendants' amended objections erroneously assert that the Court's September 20

16  discovery rulings justify their view that all document and other discovery should be

17  stayed until November 15 and possibly longer, until resolution of their motions to

18  dismiss and strike.  *E.g.*, *infra* at __.  In addition, defendants filed objections to this

19  Court's refusal to stay discovery by reason of defendants' anti-SLAPP motion,

20  Docket No. 101—even though that motion, together with their Rule 12 motions,

21  advance factual arguments necessitating discovery to oppose.

22          In short, there is no basis for defendants' continued refusal to produce

23  documents.  DC Comics requests that the Court order defendants to produce all

24  responsive documents no later than November 10, 2010 or, alternatively, to produce

25  all non-privileged documents and a complete privilege log no later than November

26  10, 2010.

27  **II.    DEFENDANTS' INTRODUCTORY STATEMENT**

28          [TO BE INSERTED]

JOINT STIPULATION RE:
DC COMICS' MOTION TO COMPEL

**Exhibit C**
**28**

## III.    DC COMICS' STATEMENT OF ISSUES IN DISPUTE

Defendants object to each of DC Comics' document requests in each of the four deposition notices.  In their four sets of responses, defendants copy and paste the same objections, with only minor variations.  Mindful of this Court's admonition about burdensome briefing, Seto Decl. Ex. H at 71:21-24, but also mindful of Local Rule 37-2 requiring a verbatim statement of the document requests and responses in dispute, DC Comics has prepared this motion in the following manner:

- In Section II.A, DC Comics reproduces Joanne Siegel's general and specific objections to DC Comics' first document request.

- In Section II.B, DC Comics shows that Ms. Siegel's objections are unfounded and that she is wrongly withholding responsive documents and privilege logs.

- In Section II.C, DC Comics identifies the collective variations contained in defendants' responses and shows why these objections lack merit.

- In Appendix 1, DC Comics has reproduced *all* of the requests at issue and all of defendants' objections.  (This portion of the joint statement spans some 150 pages, just on its own.)

### A.    Joanne Siegel's Objections to Document Request No. 1

### Document Request No. 1

All agreements between or among YOU and any DEFENDANT regarding the SIEGEL HEIRS' purported rights in SUPERMAN and/or SUPERBOY.

### General Objections

Siegel objects to the entire Request on each of the following grounds and incorporates by reference each of the following objections into her response to each individual category of documents within it:

1.    Siegel objects to the Request on the ground that the underlying compliant is subject to multiple motions to dismiss pursuant to FRCP 12(b)(6) and (f) as well as a motion brought pursuant to California's anti-SLAPP statute, Cal. Code Civ. Proc. §

**Exhibit C**
**29**

1   Superboy with the Siegels in order to falsely position the Siegels as sole owners of

2   all Superboy rights, while at the same time giving the Shusters an interest in the

3   Siegels' claims in the *Siegel* case.  Docket No. 49 ¶¶ 86-91, 129-33.  The consent

4   agreements are also relevant to the first and third claims (both federal claims not

5   subject to SLAPP) because they evidence the unlawful "third-party trafficking" of

6   future copyright interests in violation of DC Comics' exclusive rights vis-à-vis the

7   Shusters under the Copyright Act.  *See* Docket No. 89 at 5-13, Docket No. 90 at 4-

8   11.

9          *b.  Privilege.*  Without any substantiation, defendants assert that the consent

10  agreements "contain and memorialize attorney-client privileged communications

11  and attorney work product and reveal sensitive settlement strategy."  *E.g.*, *supra* at

12  __.  As explained *infra* at __, defendants' failure to identify specifically privileged

13  material and the grounds for asserting such privilege, together with their refusal to

14  produce or commit to produce a privilege log, is untenable and amounts to a

15  waiver.  At the very least, defendants had a duty to produce redacted copies of the

16  consent agreements, excluding any privileged material, if in fact any exists.  *See*

17  FED. R. CIV. P. 34(b)(2)(C); *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 539

18  (D. Kan. 2003) ("the responding party still has a duty to respond *to the extent the*

19  *request is not objectionable*") (emphasis in original).  While DC Comics has not

20  seen all the consent agreements among defendants, if they are similar to the Pacific

21  Pictures and IP Worldwide agreements disclosed in the *Siegel* case, they cannot be

22  considered privileged.  *E.g.*, *Minebea Co., Ltd. v. Papst*, 355 F. Supp. 2d 526, 529

23  (D.D.C. 2005) (business agreements and communications between attorney and

24  client not privileged); *U.S. v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) ("The fact

25  that a person is a lawyer does not make all communications with that person

26  privileged.").  Nor are the consent agreements privileged to the extent they state the

27  terms of Toberoff's engagement as a lawyer.  *See In re Grand Jury Proceedings*, 33

28  F.3d 1060, 1063-64 (9th Cir. 1994) (retainer agreements not privileged);

JOINT STIPULATION RE:
DC COMICS' MOTION TO COMPEL

**Exhibit C**
**30**

1  *Montgomery County v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999) ("The

2  attorney-client privilege does not shield fee arrangements.").

3      *c.  Collective Bargaining.*  Defendants' decision to now refer to their consent

4  agreements as "Collective Bargaining documents," *e.g.*, *supra* at __, does not shield

5  them from disclosure.  The Copyright Act imposes an exclusivity period that

6  precludes the Shusters from transferring their putative Superman rights to anyone

7  other than DC Comics *until 2013*.  Docket No. 90 at 4-11.  DC Comics has a right

8  to obtain any agreement that may infringe this exclusivity period, whether a

9  "collective bargaining" agreement or not.  Independent of copyright law, a

10  "contract providing that the client may not compromise the suit without the consent

11  of his attorney is against public policy and void."  *Calvert v. Stoner*, 33 Cal. 2d 97,

12  103 (1948); *The Golden Star*, 82 F.2d 687, 688 (9th Cir. 1936) (same).  In short,

13  however defendants seek to label their agreements, they are subject to discovery.

14      *d.  Mediation Confidentiality.*  Defendants contend DC Comics may not

15  discover certain of the consent agreements because Toberoff disclosed their

16  existence in connection with mediations.  *E.g.*, *supra* at __ (consent agreements

17  "prepared in connection with mediation" and are thus protected under "FRE 408

18  and California Evidence Code §§ 1119 [and] 1152," and JAMS confidentiality

19  agreement).  This, too, is wrong.  As federal and California law make clear,

20  defendants may not shield facts and immunize misconduct by disclosing such

21  information at a mediation.

22      Federal law governs defendants' objection, because in "federal question

23  cases where pendent state law claims are raised, the [federal rules] govern all

24  claims of privilege."  *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 459

25  (N.D. Cal. 1978); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 n.10 (9th

26  Cir. 1992) (same);  *Jacada (Europe), Ltd. v. Int'l Mktg. Strategies, Inc.*, 401 F.3d

27  701, 710-12 (6th Cir. 2005) ("generic choice-of-law provision[s]" do not "displace

28

JOINT STIPULATION RE:
DC COMICS' MOTION TO COMPEL

**Exhibit C**
**31**

1   the federal [rules]"); *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269-70 (9th Cir.

2   2002) (same).

3       Federal Rule of Evidence 408(a) prohibits evidence of "conduct or

4   statements made in compromise negotiations" *only* when such evidence is offered

5   "to prove liability, invalidity of, or amount of a claim…."  Rule 408(b) expressly

6   *permits* the use of such evidence where, as here, "the evidence is offered for

7   purposes not prohibited by subdivision (a)," such as showing the existence of an

8   independent and separate violation of the law.  As the Advisory Committee made

9   clear, Rule 408 may not be used to "immunize admissible information, such as a

10  pre-existing document, through the pretense of disclosing it during compromise

11  negotiations."  FED. R. EVID. 408, advisory committee note.  Numerous cases have

12  confirmed this principle.  *E.g.*, *Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*, 111

13  F.3d 1284, 1293-94 (6th Cir. 1997) (evidence of threats made in settlement

14  negotiations admissible); *Athey v. Farmers Ins. Exch.*, 234 F.3d 357, 362 (8th Cir.

15  2000) (evidence of settlement offer admitted to prove bad faith); *Rhoades v. Avon

16  Prods., Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007) (disclosure of settlement

17  communications to satisfy jurisdictional requirements); *Carney v. Am. Univ.*, 151

18  F.3d 1090, 1095-96 (D.C. Cir. 1998) (permitting use of settlement letter to prove

19  independent tort).

20      This Court has rightly refused to recognize a mediation privilege beyond the

21  ambit of Rule 408.  *E.g.*, *Munoz v. J.C. Penney Corp., Inc.*, 2009 U.S. Dist. LEXIS

22  36362, at *7 (C.D. Cal. Apr. 9, 2009) (Wright, J.) (while "[f]ederal courts are

23  authorized to define new privileges …, [p]rivileges are not lightly created"); *Bd. of

24  Trs. v. Tyco Int'l, Ltd.*, 253 F.R.D. 521, 523 (C.D. Cal. 2008) ("[T]here is no federal

25  privilege preventing the discovery of settlement agreements and related

26  documents.").  The minority of courts that do recognize a separate privilege only

27  permit its use to shield discovery from *third parties*, unlike the circumstances here.

28  Docket No. 90 at 21; *Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F.

JOINT STIPULATION RE:
DC COMICS' MOTION TO COMPEL

**Exhibit C
32**

1   Supp. 2d 1164, 1180-81 (C.D. Cal. 1998) (preventing compelled production of

2   mediation brief prepared by third party); *Molina v. Lexmark Int'l, Inc.*, 2008 U.S.

3   Dist. LEXIS 83014, at *25-29 (C.D. Cal. Sept. 30, 2008) (strictly limiting *Folb* to

4   its facts).

5         Defendants' reliance on California law is equally misplaced.  California

6   Evidence Code Section 1152(a) is the equivalent of Rule 408 and does not shield

7   independent facts from disclosure.  CAL. EVID. CODE § 1152(a); *see, e.g.*, *Monex*

8   *Deposit Co. v. Gilliam*, 2010 U.S. Dist. LEXIS 9344, at *5 (C.D. Cal. Jan. 25,

9   2010) (section 1152 and Rule 408 are "similar").  Nor does California's mediation

10  privilege.  *See* CAL. EVID. CODE § 1119.  Among other reasons:

11  •   Section 1120 of the California Evidence Code ensures that "[e]vidence

12      otherwise admissible or subject to discovery outside of a mediation or a

13      mediation consultation shall not be or become inadmissible or protected from

14      disclosure solely by reason of its introduction or use in a mediation."  CAL.

15      EVID. CODE § 1120.  If there were any other rule, "parties could use

16      mediation as a pretext to shield materials from disclosure."  *Doe 1 v. Super.*

17      *Ct.*, 132 Cal. App. 4th 1160, 1173 (2005).  The law forbids this:  "facts do not

18      'become inadmissible or protected from disclosure solely by reason of [their]

19      introduction or use in a mediation.'"  *Rojas v. Super. Ct.*, 33 Cal. 4th 407,

20      423 n.8 (2004); *Wimsatt v. Super. Ct.*, 152 Cal. App. 4th 137, 161 (2007);

21      *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 132-33 (2008).

22  •   Despite the mediation privilege, courts give parties latitude to pursue

23      alternative sources of discovery to prove the existence of facts disclosed in

24      mediation.  *E.g.*, *Foxgate Homeowners' Ass'n, Inc.  v. Bramalea Cal., Inc.*,

25      26 Cal.4th 1, 18 (2001) (plaintiff may seek evidence other than

26      "communications made during the mediation"); *Benesch v. Green*, 2009 U.S.

27      Dist. LEXIS 117641, at *25 (N.D. Cal. Dec. 17, 2009) (permitting discovery

28

JOINT STIPULATION RE:
DC COMICS' MOTION TO COMPEL

**Exhibit C**
**33**

of "new, admissible evidence … not protected by the confidentiality statutes").

- Section 1119 does not prevent parties to a mediation from revealing or reporting to a court "noncommunicative," "obstructionist," "sanctionable," or otherwise improper "*conduct*." *Foxgate*, 26 Cal. 4th at 13-14, 17-18 & n.14 (emphasis in original); *Campagnone v. Enjoyable Pools & Spas Serv. & Repairs, Inc.*, 163 Cal. App. 4th 566, 571 (2008) ("confidentiality rules do not prohibit 'a party' from 'advising the court about *conduct* during mediation that might warrant sanctions.'") (emphasis in original); *In re Marriage of Kieturakis*, 138 Cal. App. 4th 56, 80 (2006) (section 1120 "allow[s] a party to reveal noncommunicative conduct"). DC Comics' complaint and its discovery requests are not aimed at communications made or disclosed in connection with any mediation; they are directed to defendants' improper *conduct* outside of it—*i.e.*, the unlawful consent agreements. Docket No. 49 ¶¶ 101, 170, 188.

Defendants last argue that confidentiality provisions in the parties' JAMS agreement in the *Siegel* case prevent discovery into the consent agreements. *E.g.*, *supra* at __. But the JAMS agreement explicitly invokes and relies on federal and state law—it does not expand the scope of the privilege beyond the limits of federal or California law. Seto Decl. Ex. W at 502.

3. <u>Privilege.</u>

Defendants object that DC Comics' discovery requests seek information "protected from disclosure by the attorney-client privilege," the "attorney work product doctrine," and the "joint-interest privilege." *E.g.*, *supra* at __. Defendants provide no explanation, proof, or other means (*i.e.*, a privilege log) to ascertain or test the basis for these sweeping claims; moreover, defendants have a duty to produce documents to the extent they are not covered by the asserted privilege. *See* FED. R. CIV. P. 34(b)(2)(C); *Aikens*, 217 F.R.D. at 539 ("the responding party still

JOINT STIPULATION RE:
DC COMICS' MOTION TO COMPEL

Exhibit C
34

1  has a duty to respond *to the extent the request is not objectionable*") (emphasis in

2  original).

3        Defendants' refusal to produce a privilege log, or even commit to a date to do

4  so, amounts to a waiver of privilege.  A party asserting privilege "must identify

5  specific communications and the grounds supporting the privilege as to each piece

6  of evidence over which privilege is asserted."  *Martin*, 278 F.3d at 1000; *U.S. v. El*

7  *Paso Co.*, 682 F.2d 530, 541-42 (5th Cir. 1982) (rejecting assertion of privilege

8  based on party's failure to "particularize its assertion of the privilege"); *Clarke v.*

9  *Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) (party may be

10 required to provide "a line-by-line justification for assertion of the attorney-client

11 privilege").  Otherwise, the propounding party is unable to test the objecting party's

12 claim of privilege, precisely the circumstance confronting DC Comics.  *See* FED. R.

13 CIV. P. 26(b)(5); FED. R. CIV. P. 26(b)(5), advisory committee note (requiring

14 "sufficient information to enable other parties [and the Court] to evaluate the

15 applicability of the claimed privilege."); *Ramirez v. County of Los Angeles*, 231

16 F.R.D. 407, 410 (C.D. Cal. 2005) ("The party who withholds discovery materials

17 must provide sufficient information (*i.e.*, a privilege log) to enable the other party to

18 evaluate the applicability of the privilege or protection.  Failure to provide

19 sufficient information may constitute a waiver of the privilege.").

20       None of defendants' excuses for their failure to produce a privilege log has

21 merit:

22      *a.  No Obligation to Produce a Log.*  Defendants claim they have "no

23 obligation" to serve privilege logs on DC Comics until this Court has ruled on their

24 objections.  Seto Decl. Ex. N at 306.  This position is contrary to Ninth Circuit law

25 and federal rules establishing that a privilege log is a required element of asserting

26 privilege.  *E.g.*, *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142,

27 1149 (9th Cir. 2005); *Am. Dental Ass'n v. Khorrami*, 2003 WL 24141019, at *9

28 (C.D. Cal. July 14, 2003) (defendant admonished for intentionally refusing to

-18-

JOINT STIPULATION RE:
DC COMICS' MOTION TO COMPEL

**Exhibit C
35**

1   provide privilege log "[d]espite well-established law that parties seeking to invoke

2   such privileges are not permitted to provide mere 'blanket objections' to discovery

3   requests").  The purpose of a privilege log is to allow the propounding party and the

4   Court to evaluate the privilege claim and prevent parties from hiding behind false

5   claims of privilege.  *See* FED. R. CIV. P. 26(b)(5).  As the drafters of Rule 26

6   confirmed, "To withhold materials without [notifying requesting party] is contrary

7   to the rule …, and may be viewed as a waiver of the privilege or protection." FED.

8   R. CIV. P. 26(b)(5), advisory committee note; *Eureka Fin. Corp. v. Hartford*

9   *Accident & Indem. Co.*, 136 F.R.D. 179, 184-85 (E.D. Cal. 1991) (failure "to

10  comply with a well settled requirement of specifically identifying the evidence to

11  which a privilege applies" constitutes waiver).

12      Defendants cite two cases to justify their failure to provide privilege logs.

13  Both are inapposite.  In *U.S. v. Philip Morris Inc.*, 347 F.3d 951, 954-55 (D.C. Cir.

14  2003), the D.C. Circuit held that the district court should have considered

15  defendant's general objections before concluding that its failure to list a document

16  on its privilege log resulted in a waiver of privilege.  Unlike here, the defendant in

17  *Phillip Morris* actually *provided a privilege log*, and did not contend its generic

18  objections were sufficient to preserve privilege.  *Id.* at 953.  (To DC Comics'

19  knowledge, *Phillip Morris* has never been adopted outside the D.C. Circuit and

20  may conflict with Ninth Circuit cases like *Burlington*.)  Defendants' other case,

21  *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494-95 (9th Cir. 1983),

22  contained literally *no discussion* of privilege logs.

23      Defendants have not sought a protective order to excuse their obligation to

24  serve privilege logs in response to DC Comics' document requests.  Instead, they

25  unilaterally refused to provide any logs with their responses on September 20 or

26  their amended responses on October 8.  This is impermissible.

27      *b.  Discovery Stay.*  During the parties' October 5 meet and confer,

28  defendants asserted they were not required to produce privilege logs because the

JOINT STIPULATION RE:
DC COMICS' MOTION TO COMPEL

**Exhibit C**
**36**

1   Court stayed discovery until November 15.  Seto Decl. ¶ 12.  The Court did not stay

2   all discovery until November 15—it ruled "there's nothing that prevents the

3   plaintiff from commencing discovery" and stayed the scheduled *depositions* from

4   October to November 15 after taking into account various competing considerations

5   argued by both sides.  *Id.* Ex. H at 122-26.  The Court made no ruling barring

6   production of the documents requested from the deponents or any associated

7   privilege logs and, to the contrary, asked counsel to work cooperatively to resolve

8   the document issues.  *Id.* Ex. H at 125:17-18.

9       Also incorrect is defendants' argument that the document productions are

10   stayed because they are connected to the depositions that were briefly stayed.  *E.g.*,

11   *supra* at __.  No such relief was sought or obtained.  Furthermore, the deposition

12   notices called for production of the requested documents several weeks in advance

13   of the depositions.  Seto Decl. Exs. A at 7, B at 19, C at 32, D at 45.

14       *c.  The Lack of a Privilege Log Stipulation*.  Defendants contend that they did

15   not produce documents or a privilege log because DC Comics had not agreed to the

16   privilege log stipulation defendants proposed.  *E.g.*, *supra* at __.  To begin, this

17   objection has no application to all the non-privileged documents defendants refuse

18   to produce.

19       As to the privilege log, on August 16 (at the Rule 26(f) conference) and

20   August 25 (in a letter to counsel) defendants requested that the parties negotiate "an

21   agreement to diminish the parties' obligations to log privileged and work product

22   documents."  Seto Decl. Ex. E at 56.  In the letter, defendants proposed entering

23   into an interim agreement not to log such documents until a formal agreement was

24   negotiated.  *Id.*  DC Comics agreed to consider a "draft stipulation" if defendants

25   would prepare one, but explained that defendants' "proposed stand-still agreement,

26   pending negotiations of a final stipulation … is overbroad and likely will not

27   work."  *Id.* Ex. F at 60.  On August 26, defendants again asked for "an interim

28   agreement on logging."  *Id.* Ex. F at 59.  DC Comics again declined, explaining it

JOINT STIPULATION RE:
DC COMICS' MOTION TO COMPEL

Exhibit C
37

1  had been "stated very clearly and repeatedly … that we likely could not reach an

2  interim agreement without first seeing a draft of the stipulation." *Id.* Ex. F at 57

3        Some three weeks later, on September 16, defendants sent a draft stipulation.

4  Seto Decl. Ex. G.  Four days later, they served objections to DC Comics' document

5  requests asserting for the first time that "[a]s the parties are in the process of

6  negotiating a stipulation regarding the parties' logging of post-litigation

7  communications, [defendants] will not be serving any privilege logs until these

8  negotiations are concluded." *E.g.*, *supra* at ___.

9        In the October 5 meet-and-confer call, defendants said they could not

10 produce documents without a privilege log and required DC Comics' response to

11 their proposed stipulation on logging.  Reserving all rights (including its argument

12 that defendants had waived privilege by not producing a log), DC Comics sent

13 defendants a revised stipulation the very next day.  Seto Decl. Ex. Q.  DC Comics

14 has not heard back from defendants regarding this stipulation.  *Id.* ¶ 13.

15       Irrespective of any stipulation, defendants may not simply refuse to produce

16 documents or a privilege log.  Nor can they condition their obligation to provide

17 discovery on DC Comics' agreement to meet their demands to exempt plainly

18 relevant categories of documents from their privilege logs.  Defendants' position is

19 wholly unwarranted.

20       4.  <u>Relevance.</u>

21       Defendants object to DC Comics' document requests on relevance grounds,

22 but do not explain why any specific request is irrelevant or whether any documents

23 are being withheld on this ground.  *E.g.*, *supra* at ___.  Defendants' boilerplate

24 objection is the equivalent of no objection at all, and should be overruled.  *E.g.*,

25 *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999)

26 ("Boilerplate, generalized objections are inadequate and tantamount to not making

27 any objection at all.").  Under Rule 26(b), DC Comics is entitled to "obtain

28 discovery regarding any nonprivileged matter that is relevant to any party's claim

JOINT STIPULATION RE:
DC COMICS' MOTION TO COMPEL

**Exhibit C**
**38**

1   or defense," including information that "appears reasonably calculated to lead to the

2   discovery of admissible evidence."  FED. R. CIV. P. 26(b).  DC Comics' claims for

3   relief allege, *inter alia*, that defendants' web of unlawful agreements violate DC

4   Comics' agreements with the Siegels and Shusters and its rights under the

5   Copyright Act.  Docket No. 49 ¶¶ 105-89.  DC Comics' discovery requests are

6   directly relevant to these claims—specifically, communications and agreements

7   between and among defendants regarding the Siegels' and Shusters' purported

8   Superman rights.  These documents are "discoverable at this stage of the litigation

9   as they clearly relate to the subject matter of the lawsuit and the documents may

10  lead to further admissible evidence at trial."  *Youngblood v. Gates*, 112 F.R.D. 342,

11  348 (C.D. Cal. 1985).

12      5.  Protected Information.

13      Defendants object to the discovery requests to the extent they seek

14  production of material containing "any trade secret or other confidential or

15  proprietary information" or "protected from disclosure by court order, or any

16  privacy or similar rights."  *E.g.*, *supra* at __.  Again, defendants make no effort to

17  identify the particular information, if any, that is asserted to be protected—let alone

18  to establish why such information is protected.  Such conclusory claims of

19  confidentiality are inadequate; the party resisting discovery must show that the

20  information it seeks to protect is confidential or that its disclosure would cause

21  harm.  *See Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256

22  F.R.D. 678, 683 (C.D. Cal. 2009) (granting motion to compel where "defendant has

23  not presented any declarations … supporting its claim that the information sought

24  … is a 'trade secret' or 'confidential ... commercial information'"); *Centurion*

25  *Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981) ("To

26  resist discovery …, a person must first establish that the information sought is a

27  trade secret and then demonstrate that its disclosure might be harmful."); *Creative*

28  *Gifts, Inc. v. UFO,* 183 F.R.D. 568, 571 (D.N.M. 1998) (same).

JOINT STIPULATION RE:
DC COMICS' MOTION TO COMPEL

Exhibit C
39

## IV.    DEFENDANTS' STATEMENT OF ISSUES IN DISPUTE

[TO BE INSERTED]

## V.    DC COMICS' CONCLUSION

For all of the foregoing reasons, DC Comics respectfully requests that the Court issue an order compelling defendants to produce all responsive documents no later than November 10, 2010 or, alternatively, to produce all non-privileged documents and a complete privilege log no later than November 10, 2010.

## VI.    DEFENDANTS' CONCLUSION

[TO BE INSERTED]

documents consistent with her understanding of this request, if any, provided that such production is based upon a stipulation signed by the parties and the Court concerning the obligations of the parties to log privileged documents.

(Emphasis added.)  *E.g.*, *id.* at __.

JOINT STIPULATION RE:
DC COMICS' MOTION TO COMPEL

**Exhibit C**
**40**

1    Dated:        October 18, 2010            Respectfully Submitted,

2                                             O'MELVENY & MYERS LLP

3

4                                             By:_____
                                                  Daniel M. Petrocelli
5                                                 Attorneys for Plaintiff DC Comics

6    Dated:        October 18, 2010            Respectfully Submitted,

7                                             TOBEROFF & ASSOCIATES, P.C.

8

9                                             By:_____
                                                  Marc Toberoff
10                                                Attorneys for Defendants Mark
                                                  Warren Peary, Jean Peavy, Joanne
11                                                Siegel, and Laura Siegel Larson

12   Dated:        October 18, 2010            Respectfully Submitted,

13                                            KENDALL BRILL & KLIEGER LLP

14

15                                           By:_____
                                                 Richard B. Kendall
16                                               Attorneys for Defendants Marc
                                                 Toberoff, Pacific Pictures
17                                               Corporation, IP Worldwide, LLC,
                                                 and IPW, LLC
18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION RE:
DC COMICS' MOTION TO COMPEL

**Exhibit C**
**41**

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 2720

LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

mtoberoff@ipwla.com

* Also admitted in New York

October 12, 2010

<u>Via E-Mail</u>

Matthew Kline, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:     <u>*DC Comics v. Pacific Pictures Corp., et al.*, Case No. 10-CV-03633 ODW (RZx)</u>

Dear Matt:

I write regarding DC Comics' portion of a joint stipulation sent by your firm at 11:38 p.m. last night, and to provide our comments to your draft agreement concerning the logging of post-litigation documents, which you sent us last Wednesday afternoon.

We were surprised that DC served such a voluminous motion to compel late last night, a federal holiday, with respect to my clients' substantially revised supplemental responses served last Friday, October 8, without your even attempting to meet and confer regarding such responses as required by Local Rule 37.

Your motion repeatedly quotes Magistrate Zarefsky's admonition to the parties "to be cooperative" and "to work things out so that you won't have to come back in front of me again," but you did nothing of the sort. I made clear to you in our teleconference on October 5 that my clients intended to serve substantially revised supplemental responses, and that we should meet and confer shortly thereafter to resolve any remaining issues.

You did not even try to contact me to identify or discuss purported deficiencies with the supplemental responses, so as to avoid burdening the Court with yet another unnecessary motion. Instead, you rushed to file your motion, raising a variety of issues not addressed in Mr. Petrocelli's September 29 letter, nor in our October 5 teleconference as to my clients' prior responses.

Mr. Petrocelli's September 29 letter identified only three issues: (1) DC's view that my clients' objections to document production had been "boilerplate"; (2) DC's view that claims of privilege had not been made with specificity; and (3) DC's view that discovery should not be stayed based

**TOBEROFF & ASSOCIATES, P.C.**

October 12, 2010
Re:    *DC Comics v. Pacific Pictures Corp., et al.*
Page:  2 of 3

on the anti-SLAPP motion and other dispositive motions and the pendency of the Rule 54(b) motion in the *Siegel* litigation.

Whereas the original responses did not agree to produce documents, each of my clients agreed in their supplemental responses to produce non-privileged documents responsive to every one of DC Comics' requests, once the parties finalize the agreement under negotiation to not log over six years of post-litigation documents.  Secondly, we elaborated on privilege and other considerations that relate to the Collective Bargaining materials, and these issues are identified with specificity.  Third, we provided greater detail regarding a variety of objections in response to your view that our original objections were "boilerplate," even though this was not well-founded.

Moreover, during our October 5 teleconference, you specifically said that you would consult with your client and let me know whether it would agree that, if we produced documents before the logging agreement was executed or logs were served, this would not be deemed a waiver of any privilege.  As you know, if your client had simply agreed that there would be no waiver, my clients would happily have produced responsive documents and your motion could have easily been avoided.  However, you never even got back to me on this.

Your motion also addresses a range of issues that we never discussed on October 5, and that are not identified in Mr. Petrocelli's September 29 letter.  This includes, among other things:  (1) the issue of Collective Bargaining materials, the use of which is foreclosed by, among other things, the May 1, 2008 JAMS Confidentiality Agreement; (2) DC's contention that Collective Bargaining materials are relevant to its First and Second Claims, as well as its Third Claim, which does not exist as a matter of law, and the Fourth through Sixth Claims, which are subject to the anti-SLAPP motion; (3) DC's request for redacted copies of Collective Bargaining material; and (4) DC's lengthy analysis of privilege issues, choice of law, and the mediation privilege.

Surprisingly, your motion addresses issues that were resolved satisfactorily in our October 5 teleconference.  For example, you specifically agreed that defendants do not have to reproduce documents already produced in the closely related *Siegel* litigation.  Yet your motion argues that my clients' objections to re-producing such voluminous documents are unfounded, while deliberately failing to inform the Court that this issue had been resolved.

As I informed you on October 5, and as referenced in my clients' supplemental responses, they will produce responsive documents shortly, and your motion can readily be avoided, if we are able to reach a simple agreement either: (1) as to the logging of post-litigation documents; or (2) that such production prior to the execution of such logging agreement or the furnishing of logs will not be deemed a waiver of privilege.  Attached is our redline of your draft of the post-litigation logging agreement that you sent over last week.  Our primary concern about your draft is that it is not reciprocal in several respects.

**TOBEROFF & ASSOCIATES, P.C.**

October 12, 2010
Re:    *DC Comics v. Pacific Pictures Corp., et al.*
Page:   3 of 3

Due to the time you served your portion of the joint stipulation, the noticed November 8, 2010 hearing date is improper under L.R. 37-2.2 and L.R. 37-3, and your joint stipulation is facially defective.  We have seven days to serve our portion of the joint stipulation, *i.e.*, until Monday, October 18 at 11:38 p.m., meaning the earliest the completed joint stipulation could be filed is after the close of business on October 20.  *See* L.R. 37-2.2 ("After the opposing party's papers are added to the stipulation by the moving party's counsel, the stipulation shall be provided to opposing counsel, who shall sign it … and return it to counsel for the moving party, no later than the end of the next business day.").  As a hearing must be scheduled at least 21 days after the motion is filed on October 20, the earliest hearing date would be Monday, November 15.

Accordingly, we request until the close of business on Friday, October 22 to provide our portion of the joint stipulation.  This extra time should allow the parties to resolve this matter, without burdening the Court, by finalizing a logging agreement as to post-litigation documents, or agreeing that my clients' document production prior to such logging agreement or furnishing logs will not trigger a waiver of any privilege.  In any event, the proper November 15, 2010 hearing date would be preserved.

Very truly yours,

Marc Toberoff

Enclosure

**Exhibit D**
**44**

Marc Toberoff (S.B. #188547)
~~MToberoff~~mtoberoff@ipwla.com
Nicholas C. Williamson (S.B. #231124)
~~NWilliamson~~nwilliamson@ipwla.com
Keith G. Adams (S.B. #240497)
~~KGadams~~kgadams@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
2049 Century Park East, Suite 2720
Los Angeles, California 90067
Telephone:   (310) 246-3333
Facsimile:   (310) 246-3101

Attorneys for Defendants Mark Warren Peary,
as personal representative of the Estate of Joseph
Shuster,  Jean Adele Peavy, Joanne Siegel, and
Laura Siegel Larson

(continued on next page)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>                Plaintiff,<br><br>        v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, JOANNE SIEGEL, an individual, LAURA SIEGEL LARSON, an individual, and DOES 1-10, inclusive,<br><br>                Defendants. | Case No. CV 10-3633 ODW (RZx)<br><br>**STIPULATION RE: PRIVILEGE LOGS**<br><br>**Judge**:  Hon. Otis D Wright, II<br>**Magistrate**:  Hon. Ralph Zarefsky<br><br>Complaint Filed:  May 14, 2010 |

(continued from previous page)

RICHARD B. KENDALL (S.B. #90072)
  rkendall@kbkfirm.com
LAURA W. BRILL (S.B. #195889)
  lbrill@kbkfirm.com
NICHOLAS F. DAUM (S.B. #236155)
  ndaum@kbkfirm.com
NATHALIE E. COHEN (S.B. #258222)
  ncohen@kbkfirm.com
KENDALL BRILL & KLIEGER LLP
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California  90067
Telephone:   (310) 556-2700
Facsimile:    (310) 556-2705

Attorneys for Defendants Marc Toberoff,
Pacific Pictures Corporation, IP
Worldwide, LLC, and IPW, LLC


DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:   (310) 553-6700
Facsimile:    (310) 246-6779


PATRICK T. PERKINS (admitted *pro hac vice*)
  pperkins@ptplaw.com
PERKINS LAW OFFICE, P.C.
1711 Route 9D
Cold Spring, NY 10516
Telephone:   (845) 265-2820
Facsimile:    (845) 265-2819

Attorneys for Plaintiff DC Comics

**Exhibit D**
**46**

## STIPULATION

WHEREAS, plaintiff DC Comics and defendants Pacific Pictures Corporation, IP Worldwide, LLC, IPW, LLC, Marc Toberoff, Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, Joanne Siegel, and Laura Siegel Larson (collectively, "Defendants") held their Federal Rule of Civil Procedure 26(f) conference of counsel on August 16, 2010;

WHEREAS, DC Comics has commenced discovery in this matter;

WHEREAS, the parties agree that the logging on privilege logs of a certain, defined subset of documents that are otherwise responsive to Federal Rules of Civil Procedure, Rule 34 and Rule 45 would be burdensome, duplicative and unnecessary;

NOW THEREFORE, the parties stipulate and jointly agree to the following:

1) Except as set forth in paragraphs 3 and 4 below, DC Comics (including its affiliates) and defendants Joanne Siegel and, Laura Siegel Larson, Marc Toberoff, Pacific Pictures Corp.oration, IP Worldwide, LLC, and IPW, LLC shall not be required to list on their respective privilege logs the following documents created on or after October 8, 2004, when the complaint was filed in *Siegel v. Warner Bros. Ent. Inc.*, Case No. 04-CV-08400 ODW (RZx) (which, along with *Siegel v. Time Warner Inc.*, Case No. 04-CV-08776 ODW (RZx), are referred to herein as "the *Siegel* Litigation"):

(a)     Attorney-client communications and attorney work product created solely and exclusively for the purposes of the *Siegel* Litigation; and

2)Communications with experts and consultants retained in connection with the *Siegel* Litigation, except where specific document requests are made related to these communications, in which case this stipulation would not apply.

2) Except as set forth in paragraphs 3 and 4 below, DC Comics (including its affiliates) and defendants Joanne Siegel, Laura Siegel Larson, Marc Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC, IPW, LLC, Mark Warren Peary, and Jean Adele Peavy, Marc Toberoff, Pacific Pictures Corporation, IP Worldwide,

**Formatted:** Bullets and Numbering

**Exhibit D**
**47**

~~LLC, and IPW, LLC~~ shall not be required to list on their privilege logs the following documents created on or after May 14, 2010, when DC Comics filed its complaint in the above-entitled action ("the *Pacific Pictures* Litigation"):

(a)　Attorney-client communications and attorney work product created ~~solely and exclusively~~ for the purposes of *Pacific Pictures* Litigation; and

~~3)Communications with experts and consultants retained in connection with the *Pacific Pictures* Litigation, except where specific document requests are made related to these communications, in which case this stipulation would not apply.~~

> Formatted: Bullets and Numbering

3)　Notwithstanding the above, the parties shall be required to list on their respective privilege logs the following documents:

(a)　All communications ~~that involve~~ to any third party (*i.e.*, any party other than a named party ~~or an affiliate of the defendants~~ in the *Siegel* Litigation or ~~the plaintiff~~ in the *Pacific Pictures* Litigation or such named party's attorney), regardless of when ~~they~~ such communication took place ~~and regardless of any assertion that the communication is covered by a "joint defense privilege," a "common interest privilege," or a like privilege (*e.g.*, this would include any communications between Joanne Siegel and Jean Peavy or IP Worldwide);~~.

(b)　Any and all documents claimed to be covered by the "joint defense privilege" or "common interest privilege"~~;~~" where such document has been communicated to any person who is not a party or a party's attorney in the *Siegel* Litigation or the *Pacific Pictures* Litigation,

(c)　Any and all documents claimed to be protected by ~~any privilege~~the May 1, 2008 JAMS Confidentiality Agreement or ~~confidentiality protection related to~~by the mediation or settlement privilege ~~(including the May 1, 2008 JAMS confidentiality agreement signed in the *Siegel* Litigation)~~; and

(d)　Any and all documents ~~related to~~that mentions, discusses or references in any way:  (i) the anonymous cover letter (a.k.a. the "Toberoff Timeline

to the extent they are not merely draft pleadings, briefs, motions, or other documents") sent to Warner Bros. enclosing documents taken from Marc Toberoff's law firm (the "Timeline Documents") and/or (ii) any of the Timeline Documents, to the extent such documents are not merely draft pleadings, briefs or -motions submitted to the Court.

4) Other than the exceptions set forth in paragraphs 1 and 2 (as limited by paragraphs 3 and 4), the parties agree to no other exceptions to the requirement that the respective parties prepare or produce privilege logs. Nor may this stipulation or discussions regarding its content be used as an excuse for not otherwise timely preparing and serving such logs.

IT IS SO STIPULATED.

Dated: October __, 2010            TOBEROFF & ASSOCIATES, P.C.


                        By: _____
                            Marc Toberoff
                            Attorneys for Defendants Mark Warren
                            Peary as personal representative of the
                            Estate of Joseph Shuster, Jean Adele
                            Peavy, Joanne Siegel, and Laura Seigel
                            Larson

Dated:  October __, 2010         KENDALL BRILL & KLIEGER LLP


By:  _____
     Richard B. Kendall
     Attorneys for Defendants Mark Toberoff,
     Pacific Pictures Corporation, IP
     Worldwide, LLC, and IPW, LLC


Dated:  October __, 2010         O'MELVENY & MYERS L.L.P.


By:  _____
     Daniel M. Petrocelli
     Attorneys for Plaintiff DC Comics

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

October 13, 2010

OUR FILE NUMBER
905900-321

**VIA E-MAIL AND U.S. MAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

Richard Kendall
Kendall Brill & Klieger LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 2720
Los Angeles, California 90067

Re:    _DC Comics v. Pacific Pictures Corp. et al., CV-10-3633 (ODW) (RZx)_

Dear Counsel:

We are in receipt of your letter of last night.  We dispute your positions, decline to enter into the substantially revised and unacceptable stipulation you sent us, and disagree that an extension of time is required or appropriate.  Our positions are fully set forth in our previous and current filings with the Magistrate and the Court, including our motion to compel.  Suffice it to say that despite all our efforts to obtain discovery since the outset of the case some six months ago, defendants have not produced a single document, yet have advanced dispositive motions predicated on factual positions that necessitate discovery to oppose.  Needless to say, these circumstances are gravely prejudicial to DC Comics and permit no further delay.  We will expect to receive your half of the joint stipulation no later than Monday, October 18.  We reserve all rights.

Thank you,

Matthew T. Kline
of O'MELVENY & MYERS LLP

**Exhibit E**

**51**

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 2720

LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

mtoberoff@ipwla.com

November 22, 2010

<u>Via E-Mail</u>

Matt Kline, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:    <u>*DC Comics v. Pacific Pictures Corporation et al.*, Case No. 10-CV-03633 ODW (RZx)</u>

Dear Matt:

Prior to serving its Joint Stipulation on October 11, 2010, DC failed to meet and confer as to defendants' first amended responses dated October 8, 2010 to plaintiffs' requests for documents ("Amended Responses"), before Judge Wright's October 14 stay order.  The Amended Responses indicated that, notwithstanding their objections, the witnesses would provide any non-privileged documents in their possession responsive to DC's requests for production.  The Amended Responses thus alleviated the alleged basis for DC's motion to compel.

DC also failed to serve its Joint Stipulation pursuant to Local Rule 37-2.2 or to afford defendants the requisite time to respond as requested in their November 18 letter.  The rushed timing you proposed last week was unreasonably short, did not follow the rules, and was unworkable in light of prior commitments.  Accordingly, if DC chooses to nonetheless file its motion today, it must convert the Joint Stipulation to a regular motion pursuant to Local Rule 37-2.4.  Defendants will provide their opposition according to the rules.

Consistent with defendants' Amended Responses, the witnesses will provide responsive documents and privilege logs **on December 3, 2010**.  The witnesses must now log six years of attorney-client communications relating to the *Siegel* litigations because DC, after indicating it would enter into a customary post-litigation logging agreement, reneged.

Lastly, to the extent DC objects to said production or logs, we will in good faith agree to an early meet-and-confer (*i.e.*, to shorten the ten days permitted under Local Rule 37-1) on the Amended Responses, production and privilege logs, so long as defendants do not suffer the burden of responding to DC's defective motion.

Please include both defendants' November 18 letter and this letter in any motion you may file.

**Exhibit F**
**52**

**TOBEROFF & ASSOCIATES, P.C.**

November 22, 2010
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:   2 of 2


Sincerely,

Marc Toberoff

**Pablo Arredondo**

---

| | |
|---|---|
| **From:** | marc.toberoff@gmail.com on behalf of Marc Toberoff [mtoberoff@ipwla.com] |
| **Sent:** | Monday, November 29, 2010 8:14 PM |
| **To:** | Petrocelli, Daniel |
| **Cc:** | Seto, Cassandra; Kline, Matthew; kgadams@ipwla.com; nichwilliamson@gmail.com |
| **Subject:** | Re: DC v. PPC |
| **Attachments:** | Revised Stip re DC's First Motion to Compel_v3.755pm.doc |

Dan:

There unfortunately is no "agreement" yet.  We sent you a proposed stipulation that you <u>rejected</u>, just as you previously <u>rejected</u> our generous offer  a week ago to settle this dispute. On November 22, Defendants offered December 3 as a date to produce documents and privilege logs in an effort to compromise *before* DC served its motion.  After rejecting that offer, DC served its motion with a proposed order calling for documents and privilege logs by <u>December 22</u>.

In doing so, DC forced us to work on our opposition to the motion (which is now nearly complete) detracting from our anticipated ability to log documents during this time, including six years of documents in the Siegel litigations. Since DC's rejection of our offer our schedule and commitments in our other matters have changed as well.

Defendants remain willing to enter a stipulation (attached) where Defendants still produce their documents on December 3 and serve their privilege logs on December 15, 2010.  Note that the latter date is still a week earlier than the December 22 date sought in your motion and proposed order.

Please get back to me as soon as possible regarding the proposed stipulation attached.

Thank-you.

On Mon, Nov 29, 2010 at 7:18 PM, Petrocelli, Daniel <DPetrocelli@omm.com> wrote:
Marc, we disagree with your position that our motion cannot be timely filed for hearing on December 20. In addition, you advised us earlier today of your agreement to stipulate to a court order to produce all responsive documents save for those covered by your privilege and mediation objections; you also agreed to provide a log identifying the documents being withheld based on those two objections. The stipulation we just sent you sets forth that agreement. If you are not willing to sign it, then we will proceed with the motion.

Please let us know right away.

Thanks.

Dan

---

**From:** marc.toberoff@gmail.com <marc.toberoff@gmail.com>
**To:** Petrocelli, Daniel

1

**Exhibit G**

**54**

**Cc**: Seto, Cassandra; Kline, Matthew; Keith Adams <kgadams@ipwla.com>; Nicholas Williamson <nichwilliamson@gmail.com>
**Sent**: Mon Nov 29 18:53:32 2010

**Subject**: Re: DC v. PPC

Dan:

I am not asking you to "defer" your motion. Pursuant to Local Rule 37-2.2, the earliest plaintiff's joint stipulation can properly be filed is Wednesday, December 1. Pursuant to Local Rule 37-3, the joint stipulation cannot be heard earlier than twenty days after it is filed, meaning the earliest the motion can be heard is Monday, December 27, 2010.

Coupled with the fact that we have had to prepare our opposition over the Thanksgiving week when I was traveling with my family, you really should give us a brief extension until Wednesday, December 1 to provide our opposition while we try to work out a reasonable stipulation and avoid burdening the court with the motion all together.

Please reconsider and let me know.

Marc

On Mon, Nov 29, 2010 at 5:58 PM, Petrocelli, Daniel <DPetrocelli@omm.com> wrote:
Marc, we cannot defer our motion. I suggest we submit a stipulation and order requiring the production of the responsive documents this week, save for your asserted privilege and mediation objections. And as those objections, let's work out a briefing schedule to get a prompt resolution.

Dan

---

**From**: marc.toberoff@gmail.com <marc.toberoff@gmail.com>
**To**: Petrocelli, Daniel; Kline, Matthew; Seto, Cassandra
**Sent**: Mon Nov 29 16:48:40 2010
**Subject**: DC v. PPC

Counsel:

We believe that the parties can avoid this motion and arrive at a stipulation. However, we are now running short on time due to the requirement that our portion of the joint stipulation be served today, the intervening

Thanksgiving holiday and my being unexpectedly delayed today at a Court hearing.

Under the Local Rule 37, as we've consistently pointed out, DC's motion could not, in any event, be filed in time for a December 20, 2010 hearing due to the timing of its service.

If the parties are discussing a stipulation to avoid the motion, it makes no sense for us to be working to finalize our opposition while the parties are working on a stipulation, particularly when that hearing date will not be met.

For all of these reasons, , in the event this matter is not settled by stipulation, we request a short extension, until 5:00 p.m. Wednesday, December 1, 2010, to serve our opposition.

Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

--
Marc Toberoff
Toberoff & Associates, PC
2049 Century Park East, Suite 2720
Los Angeles, CA 90067
Tel: (310) 246-3333
Fax: (310) 246-3101
MToberoff@ipwla.com

## O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

September 15, 2011

OUR FILE NUMBER
905900-321

<u>**VIA E-MAIL**</u>

WRITER'S DIRECT DIAL
(310) 246-6840

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California 90067

Gerald A. Berk
Steuer Escovar Berk Brown
55 Public Square, Suite 1475
Cleveland, Ohio 44113

Re:    <u>*DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)</u>

Dear Counsel:

We write in response to your September 8, 2011, letter addressing issues raised in our August 29 letter regarding Don Bulson's deposition and production of documents.

1.  <u>Withdrawn Objections</u>.    Thank you for confirming the Estate's withdrawal of the objections identified in our August 29 letter regarding Mr. Bulson's deposition.

2.  <u>Objections re: Documents or Information Conveyed to Mr. Bulson by Michael Siegel</u>. You still cite to no authority to support your objection to examination of Mr. Bulson that "concerns or implicates the substance of *any communications* between Mr. Bulson and Michael Siegel," including "communications between Michael Siegel and Don Bulson regarding Mr. Siegel's communications with Laura Siegel Larson."  Nor has the Estate has identified any authority to support its instructions to Mr. Bulson to not answer questions regarding non-privileged documents conveyed to Mr. Bulson by Mr. Siegel.  *E.g.,* Tr. 30:1-36:2, 57:9-10, 60:22-61:6, 65:24-67:12.

The record is clear that Mr. Berk did not limit "communications" between Mr. Bulson and Mr. Siegel relating to the seeking or provision of legal advice.  To take an example, defendants claim, "Mr. Berk clearly asserted privilege as to Mr. Siegel's communications with Mr. Bulson about the May 13, 2003 letter, not the May 13 letter itself."  Mr. Berk explicitly argued the May 13 letter would become privileged if Mr. Siegel sent it to Mr. Bulson.  *See* Tr.

**Exhibit H**

**57**

O'MELVENY & MYERS LLP
September 15, 2011 - Page 2

30:8-13 ("This would be privileged, unless he was to get this from Laura Siegel or someone else. But if he got this from Michael Siegel, it would be part of -- be a *privileged document* as to Mr. Bulson.") (emphasis added).[1]

It is apparent the Estate does not intend to withdraw it objections, so DC will file a motion concerning them.  Please let us know if you wish to discuss them further; we can do so this week or next week.

3.  Expert Report/Calendar & Billing Entries.  You represent in your letter that the Estate requested the "Renner Otto expert report and calendar/billing entries" from Renner Otto for the first time on August 11.  First, as we stated before, DC made it request for those documents during Mr. Bulson's deposition on July 19.  Tr. 23:11-29:7, 25:5-29:7.  You have not provided any explanation for why it took almost one month before you requested the documents from Renner Otto.  Nor have you explained why you waited almost a month before following up with Renner Otto by sending a second request on September 8—especially given our letter of August 29.  DC requests that the Estate produce the August 11 and September 8 requests to Renner Otto since DC was not copied.  Second, we have spoken with Mr. Ryland and he informed us that you or Mr. Berk either are in possession of the report and calendar/billing entries, or have access to them, as the Estate of Michael Siegel's lawyers.  This means you had the documents when we requested them on July 22, and have failed to produce them.

We disagree with your contentions regarding the relevance of the documents sought by DC and see no point in further debating the issue.  As we previously advised you, the timeline of Mr. Bulson and Mr. Toberoff's interactions is directly relevant to, among other things, establishing when Mr. Toberoff first contacted Mr. Bulson to inquire about purchasing Ms. Siegel's purported Superman interest (the date of Toberoff's first contacts with the heirs is a disputed issue in the case); determining whether communications exchanged between Mr. Toberoff and Mr. Bulson occurred but have neither been produced not logged (similar to defendants' failure to produce or log Mr. Siegel's May 13 letter); and disproving defendants' erroneous assertions of common interest.

Please let us know if you will commit to providing these materials by the end of next week.  If not, DC will have to file a motion.  Please let us know if you wish to discuss the issue further; we can do so this week or early next week.

4.  Michael Siegel File.  Defendants provide no support beyond conclusory statements that documents exist in Renner Otto's digital copy of Mr. Siegel's files that are not responsive to

---

[1] *See also* Tr. 33:14-25 ("If the document was given by Michael Siegel to Mr. Bulson it becomes part of his file, it also becomes part of the *privileged file* and part of the litigation or representation by Mr. Bulson of Michael Siegel, and is therefore *privileged*. … It's basic privilege.  It's part of the file."); Tr. 62:8-11 ("I'm going to object to that as well, because first of all, if [the May 13 letter] exists and it's in his file, it becomes a privilege, and therefore not discoverable.") (emphasis added to all).

**Exhibit H**
**58**

O'MELVENY & MYERS LLP
September 15, 2011 - Page 3

DC's requests.  There is no indication—and defendants cite to nothing—that Mr. Bulson represented Mr. Siegel in any matters beyond his purported Superman interest.  Regardless, defendants' speculation is not grounds for preventing Renner Otto from preparing a log of all documents in their possession.

The true disagreement between the parties boils down to the level of detail DC is requesting Renner Otto including in generating a log of Mr. Siegel's file.  Defendants do not explain how the Court's prior orders regarding defendants' privilege logs acts as a bar to DC's request of Renner Otto to prepare a comprehensive log of Mr. Siegel's file, assuming Renner Otto is willing to prepare it, and given that the detail DC seeks is fully consistent with that provided for under the rules.[2]  No court in this case or the *Siegel* case has had the opportunity to address this specific request.

DC's offer to pay Renner Otto's expenses in preparing the proposed log is not "a transparent and improper attempt to buy its way out of adverse discovery rulings."  As previously stated, DC's offer is intended to alleviate Renner Otto's asserted burden in appropriately responding to DC's subpoena and to avoid any dispute regarding who is responsible for the associated costs and expenses.

It is apparent the Estate does not intend to yield on this issue, so DC will file a motion.  Please let us know if you wish to discuss the issue further; we can do so this week or early next week.

5.  "Confidentiality" Designations.  Defendants' continued attempts to extend the protections of the *Siegel* protective order to this case, absent an agreement, are unavailing.  The parties expressly limited the *Siegel* protective order to the *Siegel* cases:  The parties "hereby stipulate to and jointly request that the Court enter a Protective Order governing *this consolidated action* as follows."  Case No. CV-04-8400, Docket No. 50 at 6 (emphasis added).  Absent our express agreement, the *Siegel* protective order has no application here, and defendants do not dispute that they produced documents in this case by designation, without reservation of any rights or claims of confidentiality.

---

[2] *E.g., Miller v. Pancucci*, 141 F.R.D. 292, 302 (C.D. Cal. 1992) (A log should identify the primary addressee; "[s]econdary addressee(s); persons copied and recipient (and the relationship of that person(s) to the client and/or author).");  *Narayan v. EGL, Inc.*, 2006 WL 3050851, at *1 (N.D. Cal. Oct. 24, 2006) (ordering amended privilege log to include separate listing for attachments);  *In re Heritage Bond Litig.*, 2004 WL 1970058, at *5 (C.D. Cal. July 23, 2004) (same);  *Mold-Masters Ltd. v. Husky Injection Sys. Ltd.*, 2001 U.S. Dist. LEXIS 20152, at *8-9 (N.D. Ill. Dec. 5, 2001) ("Since a document with an attachment constitutes two separate documents, a party objecting to the disclosure of a document with an attachment must prove that both the document and the attachment individually satisfy the requirements of the applicable privilege or doctrine.");  RUTTER § 11:1919 ("Listing each e-mail separately is crucial where different e-mails in the strand potentially raise different privilege grounds.").

O'MELVENY & MYERS LLP
September 15, 2011 - Page 4

Defendants' assertion that the *Siegel* protective order "does not require a party to mark a document as 'Confidential' in any particular way, nor does it require a party to re-label a document as 'Confidential' if the document was already marked 'Confidential,'" is equally without merit.  The protective order in the *Siegel* cases limits the categories of documents that fall within its protections, and can therefore be marked "CONFIDENTIAL."  *Id*. at ¶ 4.  This requires the producing party to evaluate whether the underlying document can be marked "CONFIDENTIAL" under a several-part test and to so mark it as "CONFIDENTIAL" at the time of production.  An underlying document that happens to have a "confidential" label affixed to it is not automatically protected because whoever applied that stamp previously, by definition, did not have this several-part test for marking documents before him or her.

Whether or not the *Siegel* protective order applies in this case has no impact on DC's ability to examine Mr. Bulson with the documents at issue since the protective order permits witnesses to be examined with documents marked "confidential."  *See id.* ¶ 5.  Therefore, DC does not agree to defendants' improper condition for withdrawing their objections.

Please let us know if you will withdraw the instructions and objections you made at Mr. Bulson' deposition on these confidentiality grounds.  Tr. 95:3-99:22, 146:10-148:24, 158:1-160:7.  If not, DC will have to file a motion.  Please let us know if you wish to discuss the issue further; we can do so this week or early next.

6.  <u>Protective Order re: Deposition</u>.  Mr. Ryland requested that the parties' discuss a protective order concerning Renner Otto's business practices in advance of Mr. Bulson's further deposition later this fall.  Tr. 25:14-26:4.  Since Renner Otto's business practices were not the subject of any examination during Mr. Bulson's July 22 deposition, Mr. Ryland authorized DC to file the entire transcript as an exhibit to Mr. Petrocelli's declaration.  We repeat our offer to draft a proposed protective order concerning Renner Otto's business practices and submit it to you and Mr. Ryland for review.

All of DC's rights are reserved.

Very truly yours,

Matthew T. Kline
of O'MELVENY & MYERS LLP

Enclosure(s)
cc:     Daniel M. Petrocelli, Esq.
        Jason Tokoro, Esq.
        Josh Ryland, Esq.
        Richard Kendall, Esq.

**Exhibit H
60**

1 | Marc Toberoff (State Bar No. 188547)
  *mtoberoff@ipwla.com*
2 | Keith G. Adams (State Bar No. 240497)
  *kgadams@ipwla.com*
3 | TOBEROFF & ASSOCIATES, P.C.
  22631 Pacific Coast Highway #348
4 | Malibu, California 90265
  Telephone:   (310) 246-3333
5 | Fax:          (310) 246-3101

6 | Attorneys for Defendants Mark Warren
  Peary, as personal representative of the
7 | Estate of Joseph Shuster, Jean Adele Peavy
  and Laura Siegel Larson, individually and
8 | as personal representative of the Estate of
  Joanne Siegel
9 |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

| | |
|---|---|
| DC COMICS, | Case No: CV 10-03633 ODW (RZx) |
| Plaintiff, | Hon. Otis D. Wright II, U.S.D.J. |
| vs. | **DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF DC COMICS** |
| PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive, | Complaint Filed:  May 14, 2010 Trial Date:  None Set |
| Defendants. | |

PROPOUNDING PARTY:        Mark Warren Peary

RESPONDING PARTY:        DC Comics

SET NUMBER:        One (Nos. 1-68)

PLEASE TAKE NOTICE that pursuant to Rule 34 of the Federal Rules of Civil Procedure defendant Mark Warren Peary hereby requests that plaintiff DC Comics within thirty (30) days produce for inspection and copying the original documents and other tangible things designated in the requests for production below at Toberoff & Associates, P.C., 22631 Pacific Coast Highway #348, Malibu, California 90265 and continuing as long as reasonably required.

# I.

## <u>DEFINITIONS AND INSTRUCTIONS</u>

1.        Words and phrases spelled in capital letters herein shall have the specific meanings and definitions expressly assigned to them in these "Definitions and Instructions," which shall apply to each and every Document Request set forth herein, and are hereby fully incorporated within each Document Request by reference.

2.        The terms "YOU" and "YOUR" refer to plaintiff DC Comics, and any of its past or present predecessors-in-interest or successors-in-interest, any partner, joint venturer, parent company, affiliated company, subsidiary or division thereof, including Warner Bros. Entertainment Inc., and any other person or persons acting on its behalf, including, but not limited to, past or present agents, managers, representatives, advisors, employees, attorneys, accountants, investigators and insurance companies, and any agents or employees of the above, both singularly and cumulatively.

3.        The terms "DOCUMENT" and "DOCUMENTS," as used herein, are used in their broad sense to encompass all documents and tangible things subject to a Request under Rule 34 of the Federal Rules of Civil Procedure, including, without limitation, any "writing," "recording," or "photograph" as those terms are defined in

Rule 1001 of the Federal Rules of Evidence.  They shall include, but are not limited to: e-mail, audio or video recordings, correspondence, letters, phone messages, notes, memoranda, facsimiles, publications, contracts, agreements, calendars, drafts of proposed contracts or agreements, papers, and photographs.

4.    The term "COMMUNICATION" means all written, electronic, oral, telephonic, gesture, or other transmission or exchange of information, including without limitation any inquiry, request, dialogue, discussion, conversation, interview, correspondence, letter, note, consultation, negotiation, agreement, understanding, meeting, e-mail, and all DOCUMENTS evidencing any verbal or nonverbal interaction between any individuals or entities.

5.    The term "DEFENDANTS," as used herein, refers to Laura Siegel Larson, Mark Warren Peary, Jean Adele Peavy, Marc Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC.

6.    The term "SIEGEL LITIGATIONS," as used herein, refers to the cases *Siegel v. Warner Bros. Entertainment Inc., et al.*, C.D. Cal. Case No. 04-CV-08400 ODW (RZx) and *Siegel v. Time Warner Inc.*, C.D. Cal. Case No. 04-CV-08776 ODW (RZx).

7.    The term "WARNER," as used herein, refers to Warner Bros. Entertainment, Inc., and any of its past or present predecessors-in-interest or successors-in-interest, any partner, joint venturer, affiliated company, subsidiary or division thereof, and any other person or persons acting on its behalf, including, but not limited to, past or present agents, managers, representatives, advisors, employees, attorneys, accountants, investigators and insurance companies, and any agents or employees of the above, both singularly and cumulatively.

8.    The term "COMPLAINT," as used herein, refers to DC Comics' First Amended Complaint, filed in this case on September 3, 2010.

9.    The term "SHUSTER TERMINATION" refers to the "Notice of Termination of Transfer Covering Extended Copyright Renewal Term of

2

**Exhibit 63**

'Superman,'" served on November 10, 2003, referred to in Paragraph 92 of the COMPLAINT.

10.    The term "1992 AGREEMENT," as used herein, refers to the alleged letter agreement dated October 2, 1992 between DC Comics, Jean Adele Peavy and Frank Shuster, referred to in Paragraph 55 of the COMPLAINT.

11.    The term "SEPTEMBER 10, 1992 LETTER," as used herein, refers to the purported letter dated September 10, 1992, sent from Frank Shuster to DC Comics, referred to in Paragraph 54 of the COMPLAINT.

12.    The term "SEPTEMBER 7, 1999 LETTER," as used herein, refers to the purported letter dated September 7, 1999, sent from Jean Adele Peavy to DC Comics, referred to in Paragraph 56 of the COMPLAINT.

13.    The terms "REFER" and "RELATE" mean, without limitation, evidence, reflect, summarize, constitute, contain, study, analyze, explain, mention, show, discuss, describe, or comment upon.

14.    The terms "REGARDING," "RELATING TO" and "REFERRING TO" shall each have the same meaning as REFER and RELATE.

15.    As used herein, the singular shall always include the plural, or vice-versa, and verb tenses shall always include the past, present and future tenses.  The word "any" shall be understood to include and encompass "all."  The word "all" shall be understood to include and encompass "any."  The words "AND" as well as "OR" shall be construed disjunctively or conjunctively, as necessary, to bring within the scope of these Requests all DOCUMENTS or things which might otherwise be construed to be outside their scope.

16.    The requested DOCUMENTS include all attachments, enclosures, explanatory notes or memoranda, and any other material that accompanied the DOCUMENTS requested.  If the specific DOCUMENT elicited a response, that response is also to be identified and produced.  If the DOCUMENT itself was a response, the DOCUMENT to which it is responding is also to be identified and

DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

**Exhibit 64**

1  produced.

2      17.    These Requests are continuing, and any DOCUMENT obtained

3  subsequent to production which would have been produced had it been available or

4  its existence known to YOU is to be supplied forthwith.

5      18.    YOU are to produce any and all DOCUMENTS in YOUR possession,

6  custody or control, or subject to YOUR control, including but not limited to, in the

7  possession of any of YOUR attorneys, agents, shareholders, officers and

8  representatives.  In the event that YOU cannot produce all of the DOCUMENTS

9  designated in a particular request, YOU shall produce those DOCUMENTS which

10  YOU can produce, and shall describe in detail each reason for YOUR inability to

11  produce each of the remaining DOCUMENTS.

12      19.    In the event that any DOCUMENT called for by a Request has been

13  destroyed, lost, discarded or otherwise disposed of, any such DOCUMENT is to be

14  identified as completely as possible by providing, without limitation, the following

15  information: the date of disposal; the manner of disposal; the reason for disposal; the

16  person authorizing disposal; and the person who disposed of the document.

17      20.    If YOU contend that any responsive DOCUMENT is privileged, YOU

18  must identify each such DOCUMENT by providing the following information: the

19  date of the DOCUMENT, a description of its nature and content, the name and

20  capacity of the individual who originated the DOCUMENT, the name and capacity of

21  the individual to whom the DOCUMENT is addressed and all individuals to whom it

22  was circulated; and the privilege(s) asserted.

23      21.    Where an objection is made to any Request, or part thereof, all grounds

24  for the objection must be stated with specificity.  Any ground not stated in an

25  objection shall be deemed to be waived.

26      22.    If any Request is objected to as being ambiguous, vague and/or

27  overbroad, all DOCUMENTS that YOU reasonably believe are within the scope of

28  the Request should be produced, and YOUR objection should specify what is

DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

Exhibit
65

1 | otherwise ambiguous, vague or overbroad about the Request.

2 |     23.    Each DOCUMENT is to be produced as it is kept in the usual course of

3 | business, including all file folders, binders, notebooks, and other devices by which

4 | such DOCUMENTS may be organized or separated.

5 |     24.    All responsive DOCUMENTS maintained or stored in electronic format

6 | shall be produced in native file format with all associated metadata preserved.  All

7 | responsible DOCUMENTS maintained in hard copy shall be produced in PDF.

8 |     25.    The collection and production of DOCUMENTS shall be performed in a

9 | manner that ensures that the source of each DOCUMENT may be determined, if

10 | necessary.

## II.

## DOCUMENTS AND THINGS REQUESTED

**Request No. 1**

All COMMUNICATIONS between YOU AND Mark Warren Peary.

**Request No. 2**

All COMMUNICATIONS between YOU AND Jean Adele Peavy.

**Request No. 3**

All COMMUNICATIONS between YOU AND Frank Shuster.

**Request No. 4**

All COMMUNICATIONS between YOU AND Dawn Peavy.

**Request No. 5**

All COMMUNICATIONS between YOU AND Joseph Shuster.

**Request No. 6**

All drafts of the 1992 AGREEMENT.

**Request No. 7**

All DOCUMENTS that RELATE to the 1992 AGREEMENT.

**Request No. 8**

All DOCUMENTS that RELATE to the SEPTEMBER 10, 1992 LETTER.

**Request No. 9**

All DOCUMENTS that RELATE to the SEPTEMBER 7, 1999 LETTER.

**Request No. 10**

All DOCUMENTS that REFER to the SHUSTER TERMINATION.

**Request No. 11**

All DOCUMENTS that REFER to the right(s) under the United States Copyright Act to terminate prior copyright grants by Joseph Shuster to YOU.

**Request No. 12**

All COMMUNICATIONS with third parties that REFER to the 1992 AGREEMENT.

**Request No. 13**

All COMMUNICATIONS with the United States Copyright Office that REFER to the 1992 AGREEMENT.

**Request No. 14**

All DOCUMENTS that describe OR explain YOUR chain-of-title to Superman.

**Request No. 15**

All post-1990 DOCUMENTS, other than pleadings in this lawsuit OR in the SIEGEL LITIGATIONS, that REFER to ANY of Joseph Shuster's copyright grants to YOU.

**Request No. 16**

All pre-1990 DOCUMENTS that REFER to ANY of Joseph Shuster's copyright grants to YOU.

**Request No. 17**

All DOCUMENTS that REFER to the revocation of ANY of Joseph Shuster's copyright grants to YOU.

**Request No. 18**

All DOCUMENTS, excluding pleadings in this lawsuit, that REFER to the

DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

Exhibit 67

1    1992 AGREEMENT as a revocation of Joseph Shuster's copyright grants to YOU.

2    **Request No. 19**

3        All DOCUMENTS, excluding pleadings in this lawsuit, that REFER to the

4    1992 AGREEMENT as a re-grant of Joseph Shuster's copyright interests to YOU.

5    **Request No. 20**

6        All COMMUNICATIONS with third parties, excluding parties to this lawsuit,

7    that REFER to this lawsuit OR to ANY of the SIEGEL LITIGATIONS (excluding

8    pleadings filed in this lawsuit OR in ANY of the SIEGEL LITIGATIONS).

9    **Request No. 21**

10        All DOCUMENTS that support YOUR contention that "Toberoff purported to

11    secure a majority and controlling financial stake in copyright interests in Superman

12    assertedly held by the Siegel and Shuster heirs and to preclude the heirs from freely

13    entering into new agreements with DC Comics for the continued exploitation of

14    Superman," found in paragraph 3 of YOUR COMPLAINT.

15    **Request No. 22**

16        All DOCUMENTS that support YOUR contention that "Toberoff procured this

17    joint-venture agreement even though he knew that the Shusters' 1992 agreement with

18    DC Comics operated to grant any and all of the heirs' interest in Superman to DC

19    Comics and extinguish any termination rights the heirs might have held," found in

20    paragraph 6 of YOUR COMPLAINT.

21    **Request No. 23**

22        All DOCUMENTS that support YOUR contention that "Toberoff

23    manufactured the position that Jerry Siegel alone—to the exclusion of Shuster—was

24    the sole creator of Superboy," found in paragraph 9 of YOUR COMPLAINT.

25    **Request No. 24**

26        All DOCUMENTS that support YOUR contention that the "deletion of

27    Superboy was directly contrary to the Shusters' interests and occurred solely to park

28    all of the alleged Superboy rights with the Siegels," found in paragraph 10 of YOUR

7

DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

Exhibit 68

1   COMPLAINT.

2   **Request No. 25**

3   All DOCUMENTS that support YOUR contention that "Toberoff induced the

4   Siegels and Shusters to enter into agreements transferring their respective interests to

5   his companies and preventing them from conveying any rights to DC Comics without

6   each other's—and Toberoff's—consent," found in paragraph 11 of YOUR

7   COMPLAINT.

8   **Request No. 26**

9   All DOCUMENTS that support YOUR contention that "[d]espite their

10  previous legal battles with National and the widespread publicity surrounding this

11  legislation, neither Jerry Siegel nor Joe Shuster ever endeavored to exercise any

12  termination rights under the statute," found in paragraph 50 of YOUR COMPLAINT.

13  **Request No. 27**

14  All DOCUMENTS that support YOUR contention that "[t]he 1992 Agreement

15  thus operated to revoke, rescind, and replace Shuster's prior copyright grants and

16  agreements," found in paragraph 55 of YOUR COMPLAINT.

17  **Request No. 28**

18  All DOCUMENTS that support YOUR contention that "[a]fter the 1992

19  Agreement, DC Comics enjoyed an amicable relationship with the Shuster Heirs,"

20  found in paragraph 55 of YOUR COMPLAINT.

21  **Request No. 29**

22  All DOCUMENTS that support YOUR contention that "the clear effect of the

23  1992 Agreement was to revoke and regrant any prior copyright grants that could

24  otherwise have been subject to termination," found in paragraph 56 of YOUR

25  COMPLAINT.

26  **Request No. 30**

27  All DOCUMENTS that support YOUR contention that "[i]n 2001, Toberoff

28  and his motion-picture production company, Pacific Pictures, induced the Shuster

8

DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

**Exhibit 69**

Heirs to violate their 1992 Agreement and wrongfully attempt to acquire and exploit future copyright interests in Superman," found in paragraph 58 of YOUR COMPLAINT.

**Request No. 31**

All DOCUMENTS that support YOUR contention that "Toberoff made contact with the Shuster Heirs and embarked on a course of conduct with them to disrupt their relationship with DC Comics, including DC Comics' rights under the 1992 Agreement," found in paragraph 60 of YOUR COMPLAINT.

**Request No. 32**

All DOCUMENTS that support YOUR contention that "Toberoff used the Shuster Heirs to gain access to the heirs of Jerry Siegel, Joanne Siegel and Laura Siegel Larson," found in paragraph 66 of YOUR COMPLAINT.

**Request No. 33**

All DOCUMENTS that support YOUR contention that "[o]n or around February 9, 2002, Toberoff approached Steven Spira, a Warner Bros. Pictures executive, at a social function and told him: 'You have a Superman rights problem,'" found in paragraph 73 of YOUR COMPLAINT.

**Request No. 34**

All DOCUMENTS that support YOUR contention that "as a result of the Siegel-Toberoff Agreement and IP Worldwide Agreement, Toberoff now owns a 45% financial interest in the Siegel Heirs' purported Superman rights," found in paragraph 84 of YOUR COMPLAINT.

**Request No. 35**

All DOCUMENTS that support YOUR contention that the November 8, 2002 "Superboy" termination notice "not only erroneously stated that Superboy was a copyrightable work not derivative of Superman, but falsely recited that Superboy was created solely by Siegel (without contribution from Shuster)," and that "Defendants knew these claims were false," found in paragraphs 86-87 of YOUR COMPLAINT.

DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

Exhibit 70

**Request No. 36**

All DOCUMENTS that support YOUR contention that "[t]hrough Pacific Pictures, Toberoff manipulated the Siegel and Shuster Heirs into falsely positioning Siegel as the sole creator of any putative copyrightable elements in Superboy," and that "[t]hey did so to enable the Siegels to claim a sole ownership interest in Superboy elements allegedly subject to recapture and thereby prevent DC Comics from exploiting Superboy without the Siegels' authorization and without being subject to claims of copyright infringement," found in paragraph 89 of YOUR COMPLAINT.

**Request No. 37**

All DOCUMENTS that support YOUR contention that "Toberoff (acting through Pacific Pictures) caused the Shuster Heirs to remove from the 2001 joint venture between Pacific Pictures and the Shuster Heirs all claims by the Shusters to alleged rights in any and all Superboy elements," found in paragraph 90 of YOUR COMPLAINT.

**Request No. 38**

All DOCUMENTS that support YOUR contention that "Toberoff induced the Shuster Heirs to disclaim any interest in Superboy so that Toberoff could position the Siegel Heirs to recapture 100% of these rights and assert a copyright infringement action against DC Comics," found in paragraph 90 of YOUR COMPLAINT.

**Request No. 39**

All DOCUMENTS that support YOUR contention that "IP Worldwide is the Toberoff entity which, upon information and belief, holds a portion of the Siegel Heirs' Superman and Superboy rights pursuant to the IP Worldwide Agreement," found in paragraph 93 of YOUR COMPLAINT.

**Request No. 40**

All DOCUMENTS that support YOUR contention that "because the Shuster Heirs and Pacific Pictures had agreed that all rights held by their joint venture would

10

DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

Exhibit
71

be divided 50/50 upon termination of the joint venture 'for any reason,' the apparent

effect of the September 10, 2004 Letter was to transfer 50% of the Shuster Heirs'

purported share of Shuster's rights to Toberoff or his companies," found in paragraph

99 of YOUR COMPLAINT.

**Request No. 41**

All DOCUMENTS that support YOUR contention that "DC Comics is

informed and believes that Toberoff (or his companies) now own 50% of the Shuster

Heirs' putative rights as well as the 45% share of the Siegel Heirs' putative rights,"

found in paragraph 100 of YOUR COMPLAINT.

**Request No. 42**

All DOCUMENTS that support YOUR contention that "Toberoff, Pacific

Pictures, IP Worldwide, the Siegels, and the Shusters have entered into one or more

agreements preventing the Siegels or Shusters from conveying rights to DC Comics

or entering into other agreements with DC Comics, including for the settlement of

their putative termination claims or litigation, without the consent of other parties,"

found in paragraph 101 of YOUR COMPLAINT.

**Request No. 43**

All DOCUMENTS that support YOUR contention that "[t]he Shuster

Termination Notice is invalid, and thus ineffective," found in paragraph 106 of

YOUR COMPLAINT.

**Request No. 44**

All DOCUMENTS that support YOUR contention that "Shuster's termination

right ceased to exist on his death," found in paragraph 110 of YOUR COMPLAINT.

**Request No. 45**

All DOCUMENTS that support YOUR contention that "[t]he 1992 Agreement

that Frank Shuster and Jean Peavy entered into with DC Comics bars the Shuster

Estate from pursuing termination because, *inter alia*, in exchange for valuable

consideration, the 1992 Agreement effected a rescission, revocation, and re-grant of

11

DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

**Exhibit
72**

all prior copyright grants, which eliminated any pre-1978 grant that could be subject to termination under section 304 of the Copyright Act," found in paragraph 112 of YOUR COMPLAINT.

**Request No. 46**

All DOCUMENTS that support YOUR contention that "Shuster's heirs approached DC Comics in 1992 seeking increased annual payments, certain tax benefits, and payment of Shuster's debts and expenses," and that "[a]t the time, Shuster's heirs recognized the value of Superman as a property," found in paragraph 115 of YOUR COMPLAINT.

**Request No. 47**

All DOCUMENTS that support YOUR contention that "[b]y effectively rescinding, revoking, and re-granting any and all prior grants of Joe Shuster's rights, the Shuster Heirs have no right to terminate any of the Superman copyrights," found in paragraph 116 of YOUR COMPLAINT.

**Request No. 48**

All DOCUMENTS that support YOUR contention that "the Shusters are estopped from disputing that the 1992 Agreement remains in full force and effect, which operates to preclude the assertion of any termination right," found in paragraph 117 of YOUR COMPLAINT.

**Request No. 49**

All DOCUMENTS that support YOUR contention that "[t]he Shuster Termination Notice is also invalid because the party that filed it … lacked authority to do so," found in paragraph 118 of YOUR COMPLAINT.

**Request No. 50**

All DOCUMENTS that support YOUR contention that "the Shuster Estate does not own—and did not own at the time the Shuster Termination Notice was executed—the 'more than one-half' majority interest necessary to terminate under section 304( c)(1) of the Copyright Act," found in paragraph 119 of YOUR

DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

**Exhibit 73**

1  COMPLAINT.

2  **Request No. 51**

3  All DOCUMENTS that support YOUR contention that on November 13, 2003,

4  "the Shuster Estate did not own any of the purported termination right, as this and all

5  other rights had been transferred to the joint venture with Pacific Pictures," found in

6  paragraph 121 of YOUR COMPLAINT.

7  **Request No. 52**

8  All DOCUMENTS that support YOUR contention that "[a]s a result of the

9  September 10, 2004 Letter purporting to cancel the 2001 and 2003 Pacific Pictures

10  Agreements and by the terms of the 2001 and 2003 agreements themselves, any

11  putative rights held by the joint venture were split 50/50 between the Shuster Heirs

12  and Pacific Pictures on cancellation of the joint venture agreement," found in

13  paragraph 121 of YOUR COMPLAINT.

14  **Request No. 53**

15  All DOCUMENTS that support YOUR contention that purported "omissions

16  were not inadvertent, but were intended to conceal material information from DC

17  Comics, including: (a) the various conflicts of interest arising from Toberoff's and

18  his companies' significant ownership interest in the Shuster Estate's and the Siegel

19  Heirs' purported rights; and (b) consent agreements that Toberoff procured limiting

20  the Shuster and Siegel Heirs' freedom to enter into agreements with DC Comics

21  regarding those rights," found in paragraph 123 of YOUR COMPLAINT.

22  **Request No. 54**

23  All DOCUMENTS that support YOUR contention that "the Shuster

24  Termination Notice … contains material misrepresentations intended to mislead the

25  courts, Copyright Office, and DC Comics—all to the detriment of DC Comics,"

26  found in paragraph 129 of YOUR COMPLAINT.

27  **Request No. 55**

28  All DOCUMENTS that support YOUR contention that "[i]nduced by

13

DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

Exhibit
74

Toberoff, the Shuster Heirs also falsely disclaimed any interest in the Superboy rights in the Shuster Termination Notice," that "[t]his permitted Toberoff to assert on behalf of the Siegel heirs a baseless Superboy-related copyright infringement claim against DC Comics," and that "[p]rior to these manipulations by Toberoff, Shuster and the Shuster heirs had truthfully maintained for over 50 years that Shuster had co-created Superboy," found in paragraph 131 of YOUR COMPLAINT.

**Request No. 56**

All DOCUMENTS that support YOUR contention that "Defendants compromised the integrity of the Copyright Office and judicial system by crafting the Shuster Termination Notice in this way, and the Shuster Termination Notice should be held invalid on this and the other related grounds set forth herein," found in paragraph 133 of YOUR COMPLAINT.

**Request No. 57**

All DOCUMENTS that support YOUR contention that "[t]he Unpublished 1940 Superboy Script was derived entirely from pre-existing Superman elements and ideas that had been published by DCI as part of works for hire, and contained no original copyrightable element," found in paragraph 149 of YOUR COMPLAINT.

**Request No. 58**

All DOCUMENTS that support YOUR contention that the "Superboy" story in "More Fun Comics No. 101 … bore no resemblance to the Unpublished 1940 Superboy Script," found in paragraph 150 of YOUR COMPLAINT.

**Request No. 59**

All DOCUMENTS that support YOUR contention that "the Shuster Heirs have entered into agreements that frustrate and impede DC Comics' period of exclusivity," found in paragraph 169 of YOUR COMPLAINT.

**Request No. 60**

All DOCUMENTS that support YOUR contention that "Toberoff has induced the Siegel and Shuster Heirs to enter into additional agreements, which prohibit either

DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

**Exhibit 75**

family from entering into agreements conveying rights to DC Comics without the express approval of all stakeholders in the heirs' rights," found in paragraph 170 of YOUR COMPLAINT.

**Request No. 61**

All DOCUMENTS that support YOUR contention that "the Shuster Heirs have never disputed the validity or existence of the 1992 Agreement, which operated to rescind, revoke, and re-grant all of the Shusters' prior grants of rights in the Superman properties to DC Comics," found in paragraph 175 of YOUR COMPLAINT.

**Request No. 62**

All DOCUMENTS that support YOUR contention that "[i]n that 1992 Agreement, the Shuster Heirs further agreed that they would not—either then or in the future—make any claim of right to any work created in whole or part by Joe Shuster," found in paragraph 175 of YOUR COMPLAINT.

**Request No. 63**

All DOCUMENTS that support YOUR contention that "DC Comics' 1992 Agreement with the Shuster Heirs was both a valid contract and had the probability of future economic benefit to DC Comics," found in paragraph 176 of YOUR COMPLAINT.

**Request No. 64**

All DOCUMENTS that support YOUR contention that "The Shuster Heirs fully relinquished their rights under any prior agreement and re-granted to DC Comics all of their Superman-related rights," found in paragraph 176 of YOUR COMPLAINT.

**Request No. 65**

All DOCUMENTS that support YOUR contention that "Toberoff and Pacific Pictures were aware of the 1992 Agreement and DC Comics' ongoing business relationship with the Shusters," and that "Toberoff knew that his actions in having his

15

DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

Exhibit 76

company enter into a joint venture with the Shusters for the purpose of terminating DC Comics' rights were substantially certain to interfere with DC Comics' 1992 Agreement with the Shusters," found in paragraph 177 of YOUR COMPLAINT.

**Request No. 66**

All DOCUMENTS that support YOUR contention that "Toberoff and Pacific Pictures engaged in independently wrongful conduct," that they "induced the Shuster Heirs to breach the 1992 Agreement and enter into the illegal joint-venture agreements described above," that they "induced the Shusters to manipulate claims of ownership in Superboy," and that "Toberoff engaged in this misconduct in his role as businessman and shareholder of Pacific Pictures," found in paragraph 178 of YOUR COMPLAINT.

**Request No. 67**

All DOCUMENTS that support YOUR contention that "[a]s the direct result of Toberoff's and Pacific Pictures' actions, the Shuster Heirs have breached the 1992 Agreement," found in paragraph 179 of YOUR COMPLAINT.

**Request No. 68**

All DOCUMENTS that support YOUR contention that "[t]he consent agreements Toberoff has procured are void as a matter of law and public policy because they strip the Siegels and Shusters of their right freely to settle their claims and violate DC Comics' concomitant right freely to negotiate settlement of such claims," found in paragraph 188 of YOUR COMPLAINT.

| Dated: December 13, 2011 | RESPECTFULLY SUBMITTED, |
|---|---|
| | /s/ Marc Toberoff |
| | Marc Toberoff |
| | TOBEROFF & ASSOCIATES, P.C. |
| | Attorneys for Defendants, Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel |

16

DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

**Exhibit 77**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

**Exhibit**
**78**

1 | Marc Toberoff (State Bar No. 188547)
   *mtoberoff@ipwla.com*
2 | Keith G. Adams (State Bar No. 240497)
   *kgadams@ipwla.com*
3 | TOBEROFF & ASSOCIATES, P.C.
   22631 Pacific Coast Highway #348
4 | Malibu, California, 90265
   Telephone:  (310) 246-3333
5 | Fax:        (310) 246-3101

6 | Attorneys for Defendants Mark
   Warren Peary, as personal
7 | representative of the Estate of Joseph
   Shuster, Jean Adele Peavy, and Laura
8 | Siegel Larson, individually and as
   personal representative of the Estate of
9 | Joanne Siegel

10 | **UNITED STATES DISTRICT COURT**

11 | **CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION**

12 | DC COMICS,

13 |                 Plaintiff,

14 |        vs.

15 | PACIFIC PICTURES
     CORPORATION; IP WORLDWIDE,
16 | LLC; IPW, LLC; MARC
     TOBEROFF, an individual; MARK
17 | WARREN PEARY, as personal
     representative of the ESTATE OF
18 | JOSEPH SHUSTER; JEAN ADELE
     PEAVY, an individual; LAURA
19 | SIEGEL LARSON, individually and
20 | as personal representative of the
     ESTATE OF JOANNE SIEGEL, and
21 | DOES 1-10, inclusive,
22 |
23 |                 Defendants.

Case No: CV 10-03633 ODW (RZx)

Hon. Otis D. Wright II, U.S.D.J.

**PROOF OF SERVICE FOR DISCOVERY SERVED BY MARK WARREN PEARY ON DECEMBER 13, 2011**

Complaint Filed:  May 14, 2010
Trial Date:  None Set

PROOF OF SERVICE

Exhibit I
79

## +PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am over the age of eighteen years and not a party to the within action; my business address is: 22631 Pacific Coast Highway #348, Malibu, CA 90265.

On December 13, 2011, I caused to be served the foregoing document, described as DEFENDANT MARK WARREN PEARY'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF DC COMICS and DEFENDANT MARK WARREN PEARY'S FIRST SET OF INTERROGATORIES TO PLAINTIFF DC COMICS, on the interested parties in this action as follows:

Daniel M. Petrocelli, Esq.
*dpetrocelli@omm.com*
Matthew T. Kline, Esq.
*mkline@omm.com*
Cassandra Seto, Esq.
*cseto@omm.com*
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-6035

**BY U.S. MAIL:** I caused to be delivered to the address listed above via the United States Postal Service the documents listed herein.

**BY E-MAIL:** I certify that the foregoing documents are being served electronically via e-mail.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on December 13, 2011, at Los Angeles, California.

_____
Keith G. Adams

**Exhibit I**
**80**

## O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

May 21, 2012

OUR FILE NUMBER
905,900-321

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6707

Susan Allison
Jeffer Mangels Butler & Mitchell LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
jtokoro@omm.com

<u>Re:</u>     *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Susan:

With respect to Kevin Marks' deposition, we have tried to make adjustments, but are not available June 8.  While we understand that you have an upcoming trial, this discovery is important and already much delayed, and we cannot defer it for too long.  As an accommodation, we can schedule it in July (if you and Mr. Marks can provide us with a few alternative dates that month), but there are obviously many other capable attorneys at your firm who could defend Mr. Marks at deposition.  If we cannot reach an agreed-upon date soon, we will reluctantly have to select a date of our own choosing.

We will also need to meet and confer regarding Mr. Marks' privilege logs in advance of the deposition.  The Ninth Circuit's April 17 ruling confirms waiver of privilege in the Timeline Documents, and as a result, subject matter waivers have also occurred that will require production of additional documents.  *See, e.g.*, *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) ("[V]oluntary disclosure of the content of a privileged attorney communication *constitutes waiver of the privilege as to all other such communications on the same subject*.") (emphasis added); *see also U.S. v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (same); *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (same).

Based on our review of the Timeline documents, including Mr. Marks' August 9, 2002 memo, it is clear the subject-matter waiver extends to, for example, (1) communications between Mr. Marks and the Siegels relating to the October 2001 settlement with DC; (2) Marc Toberoff and Ari Emanuel's 2001/2002 offers to acquire the Siegels' putative Superman interests; (3) tort liability for the Siegels, Mr. Toberoff, and/or Mr. Emanuel if the Siegels' accepted Toberoff's and Emanuel's offer; and (4) Mr. Marks testifying against the Siegels for accepting their offer. We would ask you to identify (a) which entries on Mr. Marks' privilege logs relate to these four issues (it is not totally clear from the current logs); and (b) we would ask you produce log entries

**Exhibit J**

**81**

O'MELVENY & MYERS LLP
May 21, 2012 - Page 2

601, 609-10, 615-16, 623, 644, 652, 655, 658, 661, 670, 674, 676, 678, 680, 688-89, 692-93, 699-701, 703, 705, 707, 710, 716, 718, 723, 727, which appear to encompass topics (1), (2), and (3) of the waived subject matters above.  As examples, entries 615-16 are dated October 19, 2001, the day the Siegels accepted DC's offer of October 16, 2001, finally settling their Superman claims.  Similarly, entries 609-10 are dated October 17, 2001, the day after DC made its offer to the Siegels.  Other examples are entries 678, 680, 688-89, 692-93, 691-701, 703, 705, 707, and 710, from the July 2002 time period.  Mr. Marks testified that he provided the Siegels in July 2002 a redraft of DC's February 2002 documentation of the October 2001 settlement. Docket No. 305-14 at 405:25-406:3.

We propose meeting in-person this Wednesday, Thursday, or Friday to discuss these issues.  C.D. L.R. 37-1 ("If both counsel are located within the same county of the Central District, the conference shall take place in person at the office of the moving party's counsel, unless the parties agree to meet someplace else.").  Defendants' counsel are obviously invited to participate as well.  Please confirm your availability.

All of DC's rights and remedies are hereby reserved.

Very truly yours,

/s/ Jason H. Tokoro

Jason H. Tokoro
for O'MELVENY & MYERS LLP

cc:     Daniel M. Petrocelli, Esq., Matthew T. Kline, Esq., Marc Toberoff, Esq.,
        Richard Kendall, Esq.

Enclosure(s)

**Exhibit J**
**82**

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

22337 PACIFIC COAST HIGHWAY #348

MALIBU, CALIFORNIA 90265

MARC TOBEROFF*
KEITH G. ADAMS
PABLO D. ARREDONDO*
NICHOLAS C. WILLIAMSON

* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

parredondo@ipwla.com

May 30, 2012

<u>Via E-Mail</u>

Jason Tokoro
Matthew Kline
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:     <u>*DC Comics v. Pacific Pictures Corp., et al.*</u>, Case No. 10-CV-03633 ODW (RZx)

Dear Jason:

We write regarding DC's improper attempt to obtain Laura Siegel Larson's privileged communications from her former attorney, Kevin Marks. As Mr. Marks' counsel, Susan Allison, has repeatedly stated, any alleged issues of privilege waiver is one that is squarely between the parties in this case. Laura Siegel Larson's former attorney, Mr. Marks, can neither waive privilege nor disclose privileged communications.

Despite this DC has bypassed Defendants and resorted to harassing third party Marks and driving up the legal costs by threatening a misplaced motion to compel and insisting on meet and confers regarding a matter which should have been addressed to Ms. Larson, the privilege holder.

Moreover, even as to Marks, DC did not provide a proper meet and confer letter. DC failed to provide the legal basis for its unilateral enlargement of Magistrate Judge Zarefsky's order which found waiver only as to those specific stolen privileged documents disclosed to the United States Attorney's Office. DC has similarly failed to provide any legal basis for its demand that Ms. Allison triage Ms. Larson's privileged communications into categories conceived by DC, thereby disclosing their contents.

Rather than exhorting a non-party to do what they do not have the right to do, the correct course is for DC to send a proper meet-and-confer letter to Ms. Larson's counsel that identifies the discovery request(s) at issue, fully explains DC's position and the legal basis for its position and proposes times for a meet-and-confer *between the parties*. As this has not occurred yet, please be advised that tomorrow's conference call does not suffice as a meet-and-confer between the parties as required by the Local Rules.

**Exhibit K**
**83**

**TOBEROFF & ASSOCIATES, P.C.**

February 24, 2012
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:  2 of 2

Very truly yours,

Pablo Arredondo

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

22337 PACIFIC COAST HIGHWAY #348

MALIBU, CALIFORNIA 90265

MARC TOBEROFF*
KEITH G. ADAMS
PABLO D. ARREDONDO*
NICHOLAS C. WILLIAMSON

* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

parredondo@ipwla.com

May 30, 2012

<u>Via E-Mail</u>

Jason Tokoro
Matthew Kline
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:     <u>*DC Comics v. Pacific Pictures Corp., et al.*</u>, Case No. 10-CV-03633 ODW (RZx)

Dear Jason:

We write in response to your May 21 and May 26, 2012 letters regarding certain discovery matters. As demonstrated below, most of your complaints are entirely unfounded, and the tone and the substance of your letter are unwarranted.  We respond to each issue raised in your letter.

1.  <u>DC's Request for Concerning Allegedly "Illegible" Portions of the Stolen Documents</u>

We have made available for your inspection the original copies of the "Timeline" documents that were provided by Defendants to the United States Attorney's Office ("USAO"), and which were subsequently returned to Defendants.  As you have seen after inspecting the original photocopies sent to and returned by the USAO, the documents  provided to the USAO were themselves photocopies, because these documents were the documents stolen, sent to (and originally bates labeled by) DC Comics' parent company, Warner Brothers.  We have previously produced to you identical copies of these documents, reproduced at a standard 300 dpi resolution.  These documents contain handwriting that was accurately reproduced on the copies provided to you, and is as difficult to read on the photocopies sent to the USAO as it is on the photocopies that we produced.

2.  <u>Redaction of David Michael's Social Security Number/Laura Siegel Larson's Personal Phone Number</u>

Before production, Defendants redacted two—and only two—pieces of information: David Michaels' Social Security Number (on document SD 0048) and the home and cellular telephone numbers of Laura Siegel (on document SD 00912).  No other information was redacted.  DC's allegation that SD 00888 has been completely redacted is erroneous.  The document is a blank

**Exhibit L**
**85**

**TOBEROFF & ASSOCIATES, P.C.**

May 30, 2012
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:   2 of 6

page bearing no redaction marks.  DC cannot seriously contend that it is prejudiced by not having access to David Michael's social security number or Laura Siegel Larson's private telephone numbers.  By way of compromise, Defendants are willing to produce document SD00848 in unredacted form provided DC agrees to treat the information as "Confidential" pursuant to the protective order in *Siegel.*  If DC wishes to provide a reason why it needs Ms. Larson's private telephone numbers, Defendants will consider it.  Absent any showing of how DC will be prejudiced without this irrelevant information, Defendants are not inclined to produce Ms. Larson's private telephone numbers.

3.  <u>USAO Documents</u>

With the provision of certain attachments and a cover letter, which are described below and were provided to you today by hand delivery by the Kendall Brill firm (and which consist entirely of pleadings, Court orders and/or letters that are already in DC Comics' possession), Defendants, following a reasonable search, have now produced all of their communications with the USAO related to the Timeline.  DC states that Defendants "continue improperly to withhold key communications with the USAO" and point to two attachments to document SD-00913.  One alleged attachments "ATT0001.htm" is not a document at all but rather is a formatting file generated by email software.  The other attachment, labeled "Letter Agreement (Richard B. Kendall) 9-10-10.pdf" has already been produced (SD 00928-29).

4.  <u>Missing Page</u>

DC requests that Defendants produce a privileged page missing from the memorandum from the law firm Armstrong Hirsch Jackoway Tyerman & Wertheimer.  Page 3 of this document was not included in the documents stolen from our firm's confidential legal files, sent to DC's parent company Warner Bros., Bates-labeled by Warner Brothers, and returned to Defendants (the "Stolen Documents").   As it was not part of the Stolen Documents, page 3 was never provided to the USAO.  Accordingly, it is not within the scope of materials which Defendants have been compelled to produce by order of the Court.  The Court's order of May 25, 2011 requires production of the "stolen" documents provided to the United States Attorney's Office; the order of August 8, 2011, requires production of "all communications with the government re Toberoff Timeline."  Page 3 of the memorandum, which was never produced to the USAO, falls within neither one of these categories.

With regard to the issues DC raises as to Defendants' supplemental May 25, 2012 production:

5.  <u>Allegedly Incomplete Production</u>

Again, with the provision of certain attachments and a cover letter, which are described below and  provided to you today by the Kendall Brill firm (and which consist almost entirely of pleadings, Court orders and/or letters that are already in DC Comics' possession), Defendants,

**Exhibit L**
**86**

**TOBEROFF & ASSOCIATES, P.C.**

May 30, 2012
Re:     *DC Comics v. Pacific Pictures Corp.*
Page:   3 of 6

following a reasonable search, have now produced all of their communications with the USAO related to the Timeline.  These documents were obtained through a search of the files of both law firms.  Your accusation that "Mr. Toberoff is willingly misrepresenting facts to the courts, fraudulently preparing privilege logs, and failing to produce responsive documents in defendants' and their counsels' files" and that "[t]he Kendall Brill firm is either directing this conduct, or turning a blind eye to it" is false, reckless, and utterly irresponsible.

Rather, as the history of this litigation makes clear, it is DC Comics that has brought meritless claims and then relentlessly sought limitless, improper discovery in an effort to harass the Siegel and Shuster heirs and their counsel into refraining from asserting the termination rights provided to them by Congress.

DC and its counsel's repeated baseless *ad hominem* attacks on Defendants' counsel are extremely inappropriate.  We will bring this unprofessional pattern of behavior to the Court's attention.  DC requests that Defendants confirm that no "Timeline documents or USAO communications" are being withheld.  Defendants confirm that none of the Stolen Documents and/or communications with the USAO related to the Timeline are being withheld.

    6.   <u>Court Filings/Documents Served on DC</u>

By hand delivery, the Kendall Brill firm has produced to you today copies of the attachments referred to in your letter of May 26, 2012.  Production of these documents should have been unnecessary, as the relevant attachments are made clear from the emails, and DC has long been in possession of each and every one of these attachments.  Indeed, these documents have all long since been in the Court's docket.  These documents are as follows:

    (a)   The Summons and Complaint in this matter.  These documents were attached to Mr. Toberoff's email of August 17, 2010, which explains that he is attaching the "Complaint." They are labeled Bates Nos. SD 00930-00999.

    (b)   Moving papers served on DC in connection with Defendants' Notice of Motion and Joint Stipulation Concerning Defendants Motion for a Protective Order.  These documents were attached to Mr. Kendall's five emails of August 17, 2010 to Assistant United States Attorney Beong-Soo Kim.   As made clear Mr. Kendall's August 17 2010 emails (which simply forward emails sent to DC), these documents consist entirely of documents first served on DC on August 9, 2010.  These documents are bates labeled SD 01000-SD 02026.

    (c)   The attachment to Brian Klein's email of October 21, 2010, which is the September 17, 2010 letter from Richard Kendall to Beong-Soo Kim and Brian E. Klein that has been repeatedly provided to DC.  It is bates labeled SD 02027-SD 02028.

    (d)   The attachment to Mr. Kendall's response of October 21, 2010 to the email from Brian Klein, which is exactly the same September 17, 2010 letter from Richard Kendall to Beong-Soo Kim and Brian E. Klein.  This copy of the letter is bates labeled SD 02029-02030.

**Exhibit L**
**87**

**TOBEROFF & ASSOCIATES, P.C.**

May 30, 2012
Re:     *DC Comics v. Pacific Pictures Corp.*
Page:  4 of 6

    (e)     The attachment to Mr. Kendall's email of May 25, 2011 to Beong-Soo Kim.  This attachment is Judge Zarefsky's Order, dated May 25, 2011, concerning production of the "Timeline" documents.  It is bates-labeled SD 02031-02037.

    As you can see, each of these documents has long since been in DC's possession.

    Defendants have also included in their production a copy of the cover letter from the USAO returning the Stolen Documents to the Kendall Brill firm, and the Federal Express envelope enclosing the returned documents.  These documents are bates-labeled SD 02038-SD02039, and were inadvertently missed by the Kendall Brill firm in the prior productions.  These documents are administrative and reflect the return of the Stolen Documents by the USAO which was long ago disclosed to DC.

    7.   Privilege Log

The documents bates labeled at Nos. SD 0919-0923, which consist entirely of emails from Mr. Kendall to Mr. Kim attaching Defendant's motion for a protective order, were not logged because they had not been placed in the electronic or paper case file, and as such were not found when Defendants initially prepared their logs.  The October 21, 2010 correspondence between Mr. Kendall and Mr. Klein (which consists entirely of purely ministerial correspondence) was inadvertently not logged for the same reason.  It is difficult to imagine any conceivable prejudice whatsoever to DC Comics arising from a failure to log the transmission of publicly-available pleadings and a ministerial response to a communication with the US Attorney's Office, and in any event the responsive documents themselves have now not only been logged, but produced to your client.

It is noteworthy that DC has failed for nearly six months to produce any privileged log in response to Defendants' requests for production served on December 13, 2011. According to DC's repeated arguments, DC, itself, has waived privilege in connection with Defendants' requests by failing to timely produce any log in this case.

    8.   "Possible Omitted Text of USAO Communication"

The entirety of Mr. Kendall's May 25, 2011 email has been produced to you.  That email simply attached Magistrate Judge Zarefsky's May 25, 2011 ruling concerning the Stolen Documents, and did not contain any text.  A copy of the attached order has been produced to you at nos. SD 02031-02037.  Accordingly, there is nothing further to discuss concerning this issue.

    9.   "Voicemail to the USAO"

Defendants have searched their files, and have identified no documents describing, recording or transcribing the voicemail from Mr. Kendall to Mr. Kim, or other voicemail messages left with or by the USAO.  Accordingly, there is nothing further to discuss on this issue.

**Exhibit L**
**88**

**TOBEROFF & ASSOCIATES, P.C.**

May 30, 2012
Re:   *DC Comics v. Pacific Pictures Corp.*
Page:  5 of 6

     10. <u>Alleged "Suppression" of Relevant Evidence</u>

Your comments in this section of your letter are baseless, reckless, and improper.  The brief, ministerial communications made between Defendants and the US Attorney's Office in June, 2011, came months after the Court had stayed its order concerning communications with the US Attorney's Office and the Stolen Documents and all issues related to such documents were being considered by the Ninth Circuit, and there was no further obligation to log these communications.  DC also cannot show any prejudice whatsoever from the purported failure to log these documents.

Moreover, your accusation that these brief communications somehow "undermine[]" Defendants' arguments or that these brief emails "reveal[] that defendants asked the USAO to support its briefing, and the USAO declined" is utterly false.

Rather, the facts are as follows: based upon a phone conversation between Mr. Kendall and the USAO (as described in Mr. Kendall's declaration ) the government advised defendants' counsel that it had previously informed DC Comics that DC Comics "should not assert that the U.S. Attorney's Office does not object to the disclosure, and if DC said that the government had no objection to disclosure, it would be misrepresenting the government's position."  Defendants informed the Court (accurately) that DC Comics was falsely asserting that the government had no objection to the disclosure of the Stolen Documents, in the face of an explicit instruction by the government to the contrary.

 Defendants never asserted that the United States Attorney's Office intended to become "involved in the matter" nor could Defendants have done so, as the government did not in fact become involved in the matter.  The accusation that Defendants have somehow "fail[ed] to apprise the Courts, especially the Ninth Circuit of the government's true position on these matters" is simply unfounded.  Your firm's allegations are particularly outrageous since your firm did misrepresent the facts to the Court when your firm failed to advise the Court of the contacts between your firm (through Steve Olson) and the USAO, during which your firm attempted to persuade the USAO not to object to disclosure, and the USAO rejected your firm's request.

     11. <u>Documents In The Possession, Custody or Control of Counsel or Others</u>

As advised above, Defendants have produced the Stolen Documents, as well as all communications with the USAO Office related to the "Timeline" that they have identified after a reasonable search of counsel's files.  Accordingly, Defendants' production of documents compelled by Judge Zarefsky's discussion of Issue 8 in the order of May 25, 2011, and Item No. 2 in the minute order of August 8, 2011, is complete.

**Exhibit L**
**89**

**TOBEROFF & ASSOCIATES, P.C.**

May 30, 2012
Re:     *DC Comics v. Pacific Pictures Corp.*
Page:   6 of 6

As you can see from the above, your letter is full of baseless accusations and misstatements. Defendants have fully complied with the Court's orders.  We are willing to meet and confer over these issues further, if you or your client so desires.

The foregoing is not a complete statement of Defendants' position, and all rights and remedies are expressly reserved.

Very truly yours,

Pablo Arredondo

**Exhibit L**
**90**

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

May 31, 2012

OUR FILE NUMBER
905,900-321

**VIA E-MAIL**

Pablo Arredondo
Toberoff & Associates, P.C.
22337 Pacific Coast Highway #348
Malibu, California 90265

WRITER'S DIRECT DIAL
(310) 246-6707

WRITER'S E-MAIL ADDRESS
jtokoro@omm.com

Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Pablo:

We write in response to your letter of yesterday regarding our May 21 and May 26, 2012, letters.  We disagree with the substance of your letter and will address the balance of it during our Rule 37-1 meet-and-confer on Monday, June 4.  What must be addressed now is defendants' false accusation that, "DC has failed for nearly six months to produce any privilege log in response to Defendants' requests for production served on December 13, 2011."  As defendants are well-aware, DC responded to defendant Mark Warren Peary's First Set of Requests for Production on February 17, 2012.  Pursuant to the parties' December 7, 2010, stipulation, DC referred defendants in its production cover letter to "the privilege logs provided by Warner Bros. and DC in the *Siegel* cases, as they list privileged documents responsive to Mr. Peary's First Set of Requests."

All of DC's rights and remedies are hereby reserved.

Very truly yours,

/s/ Jason H. Tokoro

Jason H. Tokoro
for O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli, Esq., Matthew T. Kline, Esq.,
Marc Toberoff, Esq., Richard Kendall, Esq.

**Exhibit M**
**91**

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

June 19, 2012

OUR FILE NUMBER
905900-321

**VIA EMAIL**

WRITER'S DIRECT DIAL
(310) 246-6707

Mark T. Drooks
Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561

WRITER'S E-MAIL ADDRESS
jtokoro@omm.com

Re:    _DC Comics v. Pacific Pictures Corp. et al._, **CV-10-3633 (ODW) (RZx)**

Dear Mr. Drooks:

We write to respond to your letter dated June 15, 2012, concerning DC Comics' subpoenas served on your clients, Jim Jackoway and Michele Mulrooney, in the above-entitled action.  It is unfortunate that Mr. Toberoff is continuing to obstruct DC's access to relevant, important evidence in this case based on privilege claims that are unsupported by the facts and the law.  DC will advise the Court of Mr. Toberoff's misconduct, and request a Rule 37 meet-and-confer with you and Mr. Toberoff's counsel to address these issues, as we may well need to file a motion directed at your clients and him.

1.   Your privilege log asserts attorney-client privilege and/or work product doctrine claims, but we need more facts to verify these claims.  _See U.S. v. Martin_, 278 F.3d 988, 999-1000 (9th Cir. 2002) (the party asserting the privilege bears the burden of proving its applicability).  DC is entitled to know, _inter alia_, when you contend an attorney-client relationship was formed between your clients and Mr. Toberoff (if at all), whether a retainer agreement was executed, when the purported relationship was terminated, what the scope of your clients' duties were, whether Mr. Toberoff paid for the services provided by your clients, and whether all of the documents over which you claim privilege fell within whatever attorney-client relationship you assert and why.  _E.g., id._ at 999; _see also In re Grand Jury Proceedings_, 33 F.3d 1060, 1063-64 (9th Cir. 1994) (retainer agreements not privileged); _Montgomery Cnty. v. MicroVote Corp._, 175 F.3d 296, 304 (3d Cir. 1999) (same).

2.   As for the documents you list on the log and have withheld, you admit that you are aware of the recent Ninth Circuit decision in this case, in which it held that Mr. Toberoff and his fellow co-defendants "voluntarily" disclosed their allegedly privileged documents to the government, thereby waiving any claim of privilege they could assert in those materials.  _In re Pacific Pictures Corp._, Case No. 11-71844, 2012 WL 1640627, at *6-7 (9th Cir. May 10, 2012)

**Exhibit N**

**92**

O'MELVENY & MYERS LLP
June 19, 2012 - Page 2

(amended).  The law is clear that such "voluntary" disclosures effect a subject-matter waiver. *E.g., Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) ("[V]oluntary disclosure of the content of a privileged attorney communication *constitutes waiver of the privilege as to all other such communications on the same subject*.") (emphasis added); *see also U.S. v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (same); *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (same).

Mr. Toberoff has taken the position that "extra-judicial disclosures"—like his voluntary disclosure of the Timeline documents—do not result in broader subject-matter waivers.  But he has cited no authority for his position, and the case law rejects it.  *E.g., In re Martin Marietta Corp.*, 856 F.2d 619, 623 (4th Cir. 1988) (former employee indicted on fraud claims subpoenaed Martin Marietta; Martin Marietta refused to produce documents claiming attorney-client privilege; Martin Marietta acknowledged that portions of some documents it sought to withhold had been earlier quoted in disclosures it made to the government; court found extra-judicial disclosures to U.S. Attorney and Department of Defense effected subject-matter waiver and ordered production of documents underlying report to the government) (cited favorably in *In re Pacific Pictures Corp.*, 2012 WL 1640627, at *3);  *In re Sealed Case*, 877 F.2d 976, 980-81 (D.C. Cir. 1989) (company disclosed to the government as part of routine audit a document withheld from requesting party as attorney-client privileged; court held that extra-judicial disclosure to government agency waived privilege as "to all other communications relating to the same subject matter" and remanded case to determine scope of waiver); *Centuori v. Experian Info. Solutions, Inc.*, 347 F. Supp. 2d 727, 729-30 (D. Ariz. 2004) (court found that letter to credit reporting agency regarding why credit reports were sought waived privilege over that subject matter and permitted discovery of information from investigators).

Based on our review of the Toberoff Timeline documents that Mr. Toberoff produced on May 14, 2012--including the May 27, 2003, memo regarding "Marc Toberoff –Superman Rights" ("May 27 Memo") and the May 29, 2003, memo regarding "Marc Toberoff – Ethical Issues"--is it clear the subject-matter waiver extends, at least, to communications and documents relating to (1) the joint-venture agreements between Mr. Toberoff, Pacific Pictures, and the Shuster heirs; (2) ethical problems raised by these agreements; (3) ethical problems for the Armstrong Hirsch firm raised by Mr. Toberoff's and Pacific Pictures' conduct;  (4) the probate of the estate of Joseph Shuster, including probate problems created by the joint-venture agreements.

3.  We urge you to reconsider your position and to produce all of the documents listed in Mr. Jackoway's and Ms. Mulrooney's privilege logs.  To begin, your clients are withholding documents that Mr. Toberoff were among the Toberoff Timeline documents that defendants were ordered to produce by the district court and Ninth Circuit.  *E.g.,* Jackoway Privilege Log Entry Nos. 8, 9 (Memoranda with attachments "Re: Marc Toberoff – Ethical Issues"), 10, 11 (Memoranda with attachments "Re: Marc Toberoff – Superman Rights").  The subject matter lines in your privilege log also confirm that the remaining documents withheld relate to the subject matters on which defendants Toberoff and his co-defendants have waived any and all privileges.  For example:

**Exhibit N**
**93**

O'MELVENY & MYERS LLP
June 19, 2012 - Page 3

- *Compare* Jackoway Privilege Log Entry No. 2 (Handwritten notes "Re: Joint Venture Agreement between PPC and Shuster Estate"), *with*, May 27 Memo in which privilege was waived at 1-3 (memo discusses ethical problems raised by the "Joint Venture Agreement" between Mr. Toberoff and the Shuster heirs), and May 29 Memo in which privilege was waived at 1-9 (same).

- *Compare* Jackoway Privilege Log No. 7, 12, 13 (Faxes with attachments "Re: Shuster Probate"), *with*, May 27 Memo in which privilege was waived at 1-3 (memo discusses the probate of the Estate of Joseph Shuster, including issues raised by the "Joint Venture Agreement" between Mr. Toberoff and the Shuster heirs).

4.  If you decline to reconsider your position, we propose meeting in-person next week Monday or Tuesday, June 25 or 26, to discuss these issues.  C.D. L.R. 37-1 ("If both counsel are located within the same county of the Central District, the conference shall take place in person at the office of the moving party's counsel, unless the parties agree to meet someplace else."). Defendants and their counsel—against whom we will direct any motion as well—are obviously invited to participate.  Please confirm your availability.

As to the depositions that have been scheduled, we are open to discussing the logistics and timing of those during our meeting as well.

All of DC's rights and remedies are reserved.

Very truly yours,

/s/ Jason H. Tokoro

Jason H. Tokoro
for O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli, Esq.
       Matthew T. Kline, Esq.
       Richard Kendall, Esq.
       Marc Toberoff, Esq.

**Exhibit N**
**94**



writer's direct:
310.272.7922
lbrill@kbkfirm.com

July 11, 2012

Daniel Petrocelli
Partner
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067


Re:    *DC Comics v. Pacific Pictures Corporation, et al.*  Case No. CV 10-3633 ODW(RZx)

Dear Dan:

I write in response to your July 2, 2012 letter.  Let us be clear about your letter and its place in the lawsuit you filed on behalf of DC Comics.  Superman's co-creators and their heirs have been in litigation with DC over the original Superman copyrights, off and on, for more than half a century, and now the heirs are finally at the precipice of recapturing those rights under the Copyright Act's termination provisions.  DC is at a loss to find any legitimate legal or factual argument that would save it from losing these valuable rights.  Unable to win on the merits, DC has authorized its counsel to engage in a relentless smear campaign against the heirs and their counsel, Mr. Toberoff.  This campaign began with the filing of this frivolous lawsuit and has since found its way into nearly every motion, brief, letter, email and conference among counsel. In pursuing this campaign, DC and its counsel have unashamedly twisted and distorted the well-established factual record in an effort to: (i) interfere with the attorney-client relationship between the heirs and their counsel; (ii) elicit bias against the heirs and their counsel; (iii) artificially drive up litigation costs to force the heirs to settle; and (iv) obfuscate the straightforward merits of the heirs' termination notices.

Despite DC's campaign, the heirs remain entirely satisfied with Mr. Toberoff's longstanding representation of them.  Moreover, as a result of DC's appalling tactics, the heirs have become even more steadfast in their desire to enforce their rights under the Copyright Act.  Nothing in DC's smear campaign can or will change the facts or the heirs' confidence that they will ultimately prevail on the merits of their copyright dispute with DC.  Neither DC's unfounded attacks nor the unjustified costs such tactics impose will dissuade them from seeking a just resolution in the Courts.

Perhaps realizing that DC's strategy is failing, your letter now seeks to expand DC's smear campaign to falsely attack Mr. Toberoff's counsel, Kendall, Brill & Klieger ("KBK").  In keeping with DC's repeated practices in this case, your letter is filled with mischaracterizations and outright misrepresentations of the record.  For fourteen pages, it distorts the few discovery disputes in which DC has prevailed, while ignoring that DC has brought motions on approximately 37 purported discovery issues, each accompanied by the same type of accusations as made in your letter, and DC has *lost* on approximately 29 of those issues.  Your letter

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.  Suite 1725  Los Angeles, CA 90067  telephone 310.556.2700  facsimile 310.556.2705  www.kbkfirm.com

**Exhibit O
95**

Kendall Brill & Klieger LLP

July 11, 2012
Page 2

conflates and confuses issues, distorts rulings in this case and the *Siegel* case beyond recognition and ignores the real issues in this case and the facts which demonstrate that DC's allegations are meritless.  Your letter departs from standards of professionalism, while wrongly questioning the professionalism of not one, but two separate law firms and their respective attorneys.

Ironically, while we were drafting this response to your fictional account of our supposed discovery misconduct, your partner, Matt Kline, suddenly turned over two responsive documents that DC had never produced in nearly eight years of litigation.  Although Mr. Kline had personally dedicated substantial time to harassing Mr. Kendall about this firm having initially missed turning over an e-mail that had *already* been produced to DC by Mr. Toberoff, Mr. Kline casually sent over these two new documents without explanation, and subsequently stated only that "The two documents in question were found as we finalized the motion for summary judgment DC will file Monday."  Of course, that is no explanation at all.  It seems obvious that the only reason these long overdue documents are finally coming to light is because your firm intends to use them in DC's upcoming motion for partial summary judgment, which you have said you will file in less than one week.  This sort of selective withholding of discoverable material until it is deemed useful to one's side raises serious questions as to what other responsive materials are being withheld by DC and your firm.

The withholding and calculated last-minute production of these new documents is only the latest example of DC eschewing its own discovery obligations while attaching the basest of motives to its opposing counsels' efforts to comply with their obligations.  In over two years of litigation in this case, DC and its counsel have still not provided a single privilege log, while vehemently attacking inconsequential details about Defendants' logs.  Similarly, DC has refused to meaningfully respond to defendants' targeted requests for production and interrogatories regarding specific passages from DC's complaints.  Instead, DC points to nearly the *entire* production and record in both this action and in *Siegel,* rendering their answers meaningless and making it impossible for defendants' to know the evidence that DC relies upon.  DC's counsel have also asserted that the three witnesses Paul Levitz, Lillian Laserson and Martin Payson, upon whom it intends to rely in its upcoming motion for partial summary judgment, are conveniently unavailable for deposition until just *after* defendants' opposition to DC's motion would be due.

The Court and Magistrate Judge Zarefsky have already commented on numerous occasions about the improper discovery conduct of DC's counsel, expressing bewilderment at your unwillingness to pursue this case in a more professional manner or to cooperate with opposing counsel on easily resolvable issues.  You have been reminded that the "parties have a responsibility to make sure that discovery is ...proportional to the issues in the lawsuit and does not create undue burden or *harassment*."  Docket No. 439 (emphasis added).  You have been called out for mischaracterizing court opinions and casting those mischaracterizations as fact.  *See, e.g.*, Docket No. 378 at 4 ("Plaintiff also asserts, as if it were fact, that in July 2003 Ms. Siegel and Mr. Larson had no community interest.  The Ohio Court that Plaintiff references as support for this proposition did not rule so broadly.")  You have been questioned for your practice of quoting our communications with you "out of context" in your declarations.  *See, e.g.*, Docket No 323 at

**Exhibit O**
**96**

July 11, 2012
Page 3

2 (denying DC's motion to reconsider and noting that defendants' "caution is not misplaced"). You have been chastised for your unwillingness to agree to even the most reasonable accommodations. *See, e.g.*, Docket Nos. 209 at 13 (ruling in defendants favor and noting "[t]he Court does not understand why this portion of the dispute could not have been resolved out of court."); 323 at 2. And you have been told that your motions are "head[ing] in the wrong direction," resulting in increasing conflict instead of resolving issues. Docket No. 323 at 2 (noting "the direction of the lawsuit needs to be forward, not backward").

We will be bringing your continued unprofessionalism, ongoing harassment, relentless refusal to cooperate, lack of candor in Court filings, and discovery misconduct to the Court's attention and reserve the right to seek sanctions for your contemplated motion and other improper conduct.

In the meantime, here are our point-by-point responses to your latest communication:

      1.   Alleged October 2, 2002 Letter from Michael Siegel to Laura Siegel

Defendants are not in possession of this letter. Ms. Larson did not keep a copy of the letter, and was under no obligation to do so at the time. She did not provide it to her former counsel at the Gang, Tyre firm. This letter was also not included in the Renner Otto electronic archive discussed in more detail below. Accordingly, defendants, after an exhaustive search, have not found this letter.

      2.   Obligations of the Kendall Brill Firm

         a.       Defendants will not permit DC to interfere with the attorney-client relationship between Mr. Toberoff and his counsel, or allow the incendiary and improper remarks made by DC to pass without comment. KBK rejects the suggestion that Mr. Toberoff "cannot be trusted." To the contrary, it is DC's and its counsel's assertions that cannot be trusted due to their misrepresentations of the record in their Court filings and correspondence.

One such assertion is the false claim that "important relevant documents" were supposedly missing from Mr. Toberoff's production of documents provided by Toberoff to the USAO. While KBK did promptly provide a supplemental production, no document produced was by any stretch "important" and, indeed, the overwhelming majority of documents produced to DC after the initial production were copies of documents already in DC's possession, including various email attachments of court filings originally served directly on DC in this action. Aside from email attachments consisting of copies of pleadings and other documents already in DC's possession, the other documents produced included such obviously inconsequential items as a cover sheet to a facsimile already in DC's possession, and copies of a transmittal email for a document already in DC's possession. Nothing in this discovery process was prejudicial to DC, or otherwise a cause for DC's baseless accusations.

**Exhibit O**
**97**

July 11, 2012
Page 4

       b.     Your mischaracterization of the Ninth Circuit's writ decision is unfaithful to the opinion you purport to describe.  The Ninth Circuit did not "put the Kendall Brill firm on clear notice" regarding its representation of Mr. Toberoff.  The writ of mandamus before the Ninth Circuit concerned a discovery order, which was stayed, and a privilege waiver issue, no more, no less.  As you know, the issue was whether defendants' disclosure to the USAO of their stolen privileged documents, pursuant to a grand jury subpoena and common interest/confidentiality agreement, to aid in the investigation and potential prosecution of the theft, waived privilege.  That was the only issue before the Court in the writ petition; and that is all that the appellate court ruled on.  Defendants' position before the Ninth Circuit, was entirely reasonable, was consistent with the holdings of other Circuits, and nothing in the Ninth Circuit's decision or in any of the Magistrate Judge's or District Court's rulings leading up to the writ decision suggests otherwise.

As to Mr. Toberoff's "ethics and professionalism," the Ninth Circuit made it abundantly clear that the purported "concerns" DC sought to raise and that defendants vigorously disputed were "not before this court."  *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1124 (9th Cir. 2012).  Nor did the Ninth Circuit "call out" Mr. Toberoff for failing to produce non-privileged documents.  Rather, the Ninth Circuit noted the undisputed fact that the thief stole non-privileged documents, along with other documents as to which the courts had repeatedly upheld defendants' claims of privilege.  679 F.3d at 1129.  Earlier in its decision the Court had expressly noted that DC was not disputing the privileged nature of documents at issue in the writ petition and that the court was assuming the documents at issue were in fact privileged.  *Id.* at 1127 n.4 ("Because no one challenges whether these communications would have been privileged absent waiver, we do not address that issue.  For example, we assume but do not decide that these communications were all made for the purpose of obtaining legal as opposed to business advice.") (emphasis added).  None of this remotely suggests that the Ninth Circuit ruled that the documents were not privileged –indeed, the Ninth Circuit clearly stated that it assumed that the documents *were privileged* and emphasized that "we do not address that issue" – and nothing remotely suggests that the court "called out" Mr. Toberoff as to this issue.

       c.     It is important to examine in detail the facts of the November 2, 2002 letter, as it serves as the cornerstone of your false and irresponsible accusations.

First, there was no effort to "suppress" the November 2, 2002 letter.  After DC inquired about the letter in April–May, 2011, Mr. Toberoff and his associates checked and re-checked their relevant case files and could not find a November 2, 2002 letter.  Docket Nos. 267-16 at 1-2; 395-1 at 96-97.  Mr. Toberoff also asked his client Laura Siegel Larson to look for a copy of the November 2, 2002 letter, and she too was unable to find such letter.  Docket No. 395-1 at 97.  That Mr. Toberoff did not have and could not find the letter was duly communicated to DC.  Docket Nos. 267-2 at 2; 267-7 at 18; 267-16 at 1-2.  Mr. Toberoff did not obtain a copy of the November 2, 2002 letter until Mr. Toberoff became aware of, and the Renner Otto firm furnished – for the first time in the litigation – an electronic archive of Michael Siegel's legal file.  There is no basis to believe that Mr. Toberoff is in any way responsible for the Renner Otto firm not disclosing or

**Exhibit O**
**98**

Kendall Brill & Klieger LLP

July 11, 2012
Page 5

producing its electronic archive earlier.  Upon its discovery in the electronic archive, Mr. Toberoff listed the November 2, 2002 letter on a privilege log pertaining to the archive, which was promptly provided to DC in November 2011.  Docket No. 412 at 10.  There was nothing improper about this conduct, and Mr. Toberoff did exactly what any responsible lawyer would do in a similar situation: Upon learning of the existence of a responsive document that had not previously been logged and as to which there is a reasonable claim of privilege, he logged it.

Even more importantly, once the privilege issue was resolved in DC's favor, the document was promptly produced.  Moreover, while your letter spends six pages castigating KBK and Mr. Toberoff based on two words, "billionaire investor" in the November 2, 2002 letter for which DC fails to provide the relevant context, the letter as a whole does not remotely support DC's claims in this litigation or in your letter.  To the contrary, it highlights why they are so baseless.

As just one example, you have completely ignored that in this November 2, 2002 letter, eight years before you brought your tortious interference claim, Ms. Larson stated in no uncertain terms that it was DC's "revolting" conduct that sunk DC's relationship with her. EOMS 00215. This is fully consistent with the other evidence in the case, notably Joanne Siegel's May 9, 2002 letter to Time-Warner, which was sent well before the August, 2002 Ari Emanuel offer that DC falsely claims interfered with its relationship.  Ms. Larson also describes her and her mother's growing dissatisfaction with their prior counsel, also well before the August 2002 offer, and makes clear that this dissatisfaction had nothing whatsoever to do with Mr. Toberoff ("Toward the end of 2001, there was a shift. They [Gang, Tyre] started pressuring us to lower our expectations and to take an offer we did not want.  They increasingly seemed to be siding with DC against our interests…Between February and May of this year [2002] we became so dissatisfied with their representation and the revolting offer from DC that we asked for a meeting with Kevin [Marks] on May 22nd planning to fire them then and there.").  EOMS 00215.  Ms. Larson also makes plain that later in October 2002 she retained "Toberoff, the attorney, [who] has a successful track record of representing creator-writers and their heirs who have been screwed by the studios"  (), and that she did not become aware of Marc Toberoff "until August 2002."  EOMS 00216.

The July 2003 letter from Ms. Larson to Michael Siegel further supports defendants, as long before DC brought its baseless claims, Ms. Larson describes:

- Warner/DC's "hardball tactics" and the "bad and unreasonable deal" she and her mother rejected due to DC's "bogus [February, 2002] offer filled with unacceptable land mines." LSL00482
- That Warner/DC's lawyers are "particularly heartless and that it is their common practice to use every ounce of their leverage to grind people in negotiations." LSL00483
- That Warner/DC "want[s] to make an example of [the Siegels] so that other creators and their heirs won't go after their rights by Termination or otherwise." *Id*.

**Exhibit O
99**

Kendall Brill & Klieger LLP

July 11, 2012
Page 6

- That "Marc Toberoff has no plans to produce a Superman movie."  *Id.*

Despite all this, you harp on the words "billionaire investor" in the November 2002 letter as evidence of some "independent wrongful act" by Mr. Toberoff.  Yet, as you yourself already know and quote on page 6 of your diatribe, Ms. Larson has already unequivocally testified that Mr. Toberoff never used the term "billionaire investor" and that she heard that term not from Mr. Toberoff, but from Michael Siegel.

Q. Mr. Toberoff had told you that he knew billionaire investors; correct?

A. No, he never used that term.
Q. Well, he used terms similar, like he knew very wealthy investors and people in the entertainment industry who had money and would buy properties; correct?
A. No….
Deposition of Laura Siegel Larson, July 23, 2011, Docket No. 305-24 at 1020:2-9.

This testimony is consistent with the sworn testimony of every other percipient witness in this matter, including the disinterested third party, attorney Kevin Marks.  Mr. Toberoff never told Mr. Marks, Joanne Siegel or Laura Siegel Larson that he had a "billionaire" investor to purchase the Siegel's Superman interests.  Rather, all relevant witnesses have repeatedly confirmed under oath that in August 2002 Ari Emanuel made an offer to purchase the Siegel's interests for $15 million plus a "back end" to be negotiated.  That offer – which was made months after Joanne Siegel and Laura Siegel Larson had unequivocally rejected DC's February 1, 2002 proposal, and began seeking new counsel – was passed along by Marks in mid-August 2002 to Joanne Siegel and Laura Siegel Larson, but they ultimately rejected it.  No "billionaire" made an offer for Superman rights, and no mention was made, by Mr. Toberoff, Mr. Emanuel or Mr. Marks to Ms. Larson or Joanne Siegel of a "billionaire" investor.

The fact that Michael Siegel, who was "very confused," used the term "billionaire investor" to Ms. Larson and that she used the same term in response to placate him, simply is not persuasive evidence – in the face of universal sworn denials – that the term came from Mr. Toberoff.  Nor of course does it justify the unprofessional personal attacks on Mr. Toberoff or his counsel that DC hurls while completely ignoring the context in which the November 2, 2002 letter was written.

Accordingly, let us repeat once again: *Mr. Toberoff never made any representations about a "billionaire" investor*.  Defendants have been absolutely clear about this all along, and have accurately portrayed the facts.  Their counsel's representations to the Court are entirely consistent with this reality and the record.  By contrast, DC's false invective, skewed with scurrilous attacks and bogus character assassination calls into question the ethical and professional standards of you and your firm.

**Exhibit O
100**

Kendall Brill & Klieger LLP

July 11, 2012
Page 7

          d.      Your other examples of purported "discovery misconduct" are equally false distortions of the record.

- DC has previously complained about the supposed withholding of Michael Siegel's May 13, 2003 and used it as a basis to argue that onerous discovery obligations should be placed on Mr. Toberoff. Docket 231 at 19; Docket No. 225 at 17:5-10. Judge Wright has already rejected this effort. Docket No. 248. Moreover, DC's claims of improper conduct are simply wrong. Defendants made no inaccurate representations about the letter. Magistrate Judge Zarefsky ordered defendants to either produce the letter or verify to DC that it did not exist. Docket No. 209 at 12. Defendants did not claim the letter did not exist, and timely produced it in accordance with the order. Docket 231 at 19.

- With regard to Laura Siegel Larson's "July 2003" letter, you misstate an extensive record in an effort to sow confusion about issues that have long since been resolved. There are at least three potential "July 2003" letters at issue, which you deliberately confuse. First, there is a July 11, 2003 letter from Laura Siegel Larson to Michael Siegel, that was expressly found in the *Siegel* litigation to have been duly logged as privileged, and protected from disclosure by both Magistrate Judge Zarefsky and by Judge Larson in the underlying *Siegel* litigation. Docket No. 225 at 15-16. That letter was later disclosed to the USAO in connection with its investigation of the theft of Mr. Toberoff's legal files, and, eventually, as a result of the Ninth Circuit's writ decision, timely produced to you.

  Second, there is a purported July 5, 2003 letter from Michael Siegel to Laura Siegel Larson that is mentioned in the anonymous "Timeline." That letter, as defendants have repeatedly informed you, does not exist and, as far as defendants can tell from a search of the relevant records, has never existed. Although there is a reference to a "July 5" letter in the Timeline, no such letter has ever been identified in the files.

  Third, there were drafts of the July 11, 2003, letter exchanged between Mr. Toberoff and Ms. Larson on or around July 5, 2003 – all of which were, until the Ninth Circuit's writ decision, clearly privileged attorney-client communications, and all of which have now been produced to you as a result of the Ninth Circuit's decision. Defendants' representations concerning these letters have been entirely consistent, as reflected in nearly five years of pleadings on this issue. Your false and irresponsible accusation that "defendants . . . lied to the courts about [the] contents" of the July 11, 2003 letter is, unsurprisingly, not accompanied by any citation to the record or a single example of an inaccurate representation. The only party/counsel that has attempted to mislead the Court here is DC and your firm with its manipulative efforts to confuse and conflate the different letters at issue. Docket No. 15-16.

**Exhibit O**
**101**

Kendall Brill & Klieger LLP

July 11, 2012
Page 8

Moreover, the July 11, 2003 letter fatally undermines the allegations of DC's 2010 Complaint and the fabricated claims about Mr. Toberoff's purported interference that your firm contains to press. For example, the July 11, 2003 letter unambiguously confirms that Warner/DC disrupted their own negotiations by their egregious February 2002 proposal – "It was a bogus offer filled with unacceptable land mines…As a result of Time Warner's hardball tactics, we feared that we would have trouble collecting any future money from them…You and Don Bulson stated that you couldn't believe how bad the document was that they had written…We believe their lawyers are particularly heartless and that it is their common practice to use every ounce of their leverage to grind people in negotiations" – just like Joanne Siegel's May 9, 2002 letter –that was in your possession long before filing DC's frivolous complaint.  LSL 00482-483.  Ms. Larson also confirms "We fired Kevin Marks and Bruce Ramer because they were insisting we take a bad [DC Comics] deal" and that Mr. Emanuel's offer to purchase the Siegel interest was not the cause of the failed settlement between the Siegel heirs and Warner/DC.  LSL 00483.  Ms. Larson further confirms that "We went to Marc to talk about him representing the Siegels. Marc did not pursue us." "Marc did not call my mom nor me.  My mom called the Shuster family to see what the Shusters were doing.  The family gave Marc's number to my mom and she called him…We felt that Marc grasped our situation very well and was sympathetic to author's rights."  *Id.*

• Similarly without merit is your contention that Defendants' privilege log was designed to "conceal[] privilege waivers and prevent[] discovery of essential evidence."  The Court has, despite constant motion practice, repeatedly rejected DC's challenge to defendants' privilege logs and upheld them as consistent with Ninth Circuit standards.  Your specific reference to the August 9, 2002 letter from Kevin Marks, and your claim that "defendants prevented DC from challenging their assertion of 'Atty/Client' privilege over the Marks memo" based upon it being cc'ed to Michael Siegel's attorney, Don Bulson, is incorrect, as the August 9, 2002 memo was properly logged, showing Don Bulson as a recipient of the memo, in the privilege log produced in this case in 2010.  Docket 162-6 at 422, no. 623.  DC had more than ample opportunity to challenge the privilege over this document based upon its provision to Mr. Bulson.

As to the two log entries you point to regarding USAO communications (nos. 3158 and 3159), these two documents were one sentence emails scheduling a meeting between Mr. Toberoff and the USAO, and DC was long ago informed that Mr. Toberoff had briefly met with the USAO to discuss the theft of legal files from is firm..  As you know, these scheduling emails contain absolutely nothing of any substance.  Accusing defendants of attempting to conceal these utterly

**Exhibit O**
**102**

**Kendall Brill & Klieger LLP**

July 11, 2012
Page 9

insignificant documents is an example of your tactic of making overblown claims of misconduct in response to any discrepancy, no matter how inconsequential. Given the thousands of entries in defendants' privilege logs, it is inevitable that there will be inadvertent errors. This is a far cry from your irresponsible allegations of a "pattern of discovery misconduct" and "deception," and in no way supports the extraordinary appointment of a special master.

- DC's repeated assertion that the USAO documents somehow conflict with representations made to the Ninth Circuit are just as false as they were when DC first raised them in its improper Rule 28(j) letter to the Court. Docket No. 42-1. As we pointed out then, the USAO documents merely confirm that Mr. Toberoff's clients authorized the limited disclosure of the stolen privileged documents to the USAO pursuant to the secrecy surrounding a grand jury subpoena and an express confidentiality/common interest agreement specifically intended to preserve their privilege. *See* Docket No. 43. Far from voluntarily waiving privilege, the documents demonstrate that both Mr. Toberoff and his clients took affirmative steps to protect the attorney-client privilege and that there was no intent to waive privilege. At oral argument, Judge Kozinski (accurately) pointed out that there was nothing in the record concerning the consent of Mr. Toberoff's clients to disclosure to the USAO. Mr. Toberoff's counsel, Richard Kendall accurately stated that there was no evidence of such consent in the record, but that the issue of consent was irrelevant to the Ninth Circuit's determination. This accurate representation to the Ninth Circuit of both the facts and the law is the opposite of a "misrepresentation." Once again, it is DC, not defendants, that is falsely portraying the facts and the record.

- Your contention that the stolen documents disprove and/or contradict the fact that Mr. Toberoff represented the Siegels as a lawyer from the outset of their relationship is a red herring, and a tired one at that. This issue has been repeatedly addressed and refuted in defendants' prior filings. First, in 2006, the Siegels and Mr. Toberoff voluntarily produced the 2002 IP Worldwide Agreement between them in the *Siegel* case and in this case, Mr. Toberoff's 2004 *litigation* retainer agreement was produced. The IP Worldwide Agreement expressly notes Mr. Toberoff's legal services with respect to transactional matters, while also noting that legal services with respect to contemplated *litigation* would be rendered pursuant to a negotiated litigation retainer. IPWW 00003-00005. There is therefore nothing revelatory about the fact that the stolen documents reflect the negotiation of this retainer agreement in 2004, as the *actual* 2004 retainer agreement was long ago produced to DC. Moreover, as repeatedly explained to you, neither a retainer nor formal agreement is required to establish the attorney-client relationship. *Brandlin v. Belcher*, 67 Cal. App. 3d 997, 1001(1977); *see also People ex rel. Dept. of Corporations v. SpeeDee Oil Change*

**Exhibit O**
**103**

Kendall Brill & Klieger LLP

July 11, 2012
Page 10

*Systems, Inc.*, 20 Cal. 4th 1135, 1147 (1999) ("'When a party seeking legal advice consults an attorney at law and secures that advice, the relation of attorney and client is established prima facie.'") (citation omitted). Whether Mr. Toberoff and the Siegels had a formal retainer regarding litigation or whether its terms were highly negotiated by the Siegels at a later date is irrelevant to the issue of Mr. Toberoff's attorney-client relationship with them as of October, 2002.

e.         We reject, once again, your baseless attempts to interfere with the attorney-client relationship between KBK and its client, Mr. Toberoff, or to impose an allocation of work as between KBK and Mr. Toberoff's law firm. As we have frequently explained, and as you and the Court have been well aware since at least 2010, Mr. Toberoff's law firm is conducting a substantial portion of his defense in this matter, as is his right. Mr. Toberoff and/or other attorneys at his firm have appeared on multiple occasions in connection with discovery motions before the Court, and have met and conferred with your firm concerning discovery matters in this litigation on dozens of occasions, without any objection by DC. You have cited to no legal authority whatsoever suggesting that this division of labor between our two law firms is inappropriate or improper. Both law firms are well aware of their respective obligations. If you have a motion you intend to bring on some issue concerning the division of labor between the two firms, please identify it and the legal basis for such a motion.

f.         Your repeated statements about moving for a special master are also not well taken. Under Fed. R. Civ. P. 53(a)(1)(B)(i), the appointment of a special master is not appropriate absent "some exceptional condition." Here, no such condition exists. As detailed throughout this letter, your charges of discovery misconduct are made up of nothing but factual misrepresentations, distortions, and hyperbole. Both the Court and Magistrate have routinely ruled as such, consistently denying the bulk (80%) of your discovery motions. *See, e.g.*, Docket Nos. 439; 309; 262; 252; 248; 239; 209. That DC has adopted a strategy of radically multiplying the proceedings with repeated duplicative motions is not a basis to now allow it to engage in judge-shopping in an effort to find a new decision-maker, less diligent than Magistrate Judge Zarefsky and without the nearly eight years of background that Magistrate Judge Zarefsky has in handling both this case and the related *Siegel* litigations since 2004.. The Court's exasperated and somewhat sarcastic reaction to the plaintiff in *Goins v. Hitchcock I.S.D.*, 191 F. Supp. 2d 860, 867 (S.D. Tex. 2002) is just as appropriate to DC in this case:

"[Plaintiff seeks] copious amount of information from defendants, some of which appears privileged or otherwise non-discoverable. Moreover, at least one [of] the requested documents does not even exist. Nevertheless, Plaintiff seeks the appointment of a Special Master because Defendants have supposedly failed to cooperate!"

**Exhibit O**
**104**

Kendall Brill & Klieger LLP

July 11, 2012
Page 11

As in *Goins,* it is not the defendants who have failed to cooperate in this case; rather, it is DC and its counsel, both of whom continue to foster an unprofessional, uncooperative, and ultimately counter-productive discovery process.  If a special master were appointed in this case, under these circumstances, there would be no limit to the cases in which one could be appointed.  *Id.* (noting "if this Court appointed a Special Master each and every time that a party objected to the manner in which another party was responding to its discovery requests, Special Masters would become the rule – not the exception").  We will therefore oppose any effort to appoint a special master.

You state further:  "Mr. Toberoff and the Kendall Brill firm may also need to be sanctioned. . . ." In light of the above refutation of your outrageous letter, the only sanctions that may be appropriate are those we will seek on behalf of our clients against DC Comics and your firm in the event you move forward with the motion described in your letter.

        d.      Page 723 of Renner Otto Bills

Page 723 was not produced because it was not responsive to DC's request, as narrowed by DC, in the meet and confer process, to billing entries which show contacts between Mr. Toberoff and Mr. Bulson.  Defendants do not object to producing page 723, redacted along the lines of the redactions ordered by Magistrate Judge Zarefsky's on June 21, 2012.

Sincerely,

Laura W. Brill

LWB:np

cc:   Richard Kendall
       Marc Toberoff

111868.2

**Exhibit O**
**105**

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

December 6, 2012

OUR FILE NUMBER
905900-321

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6703

Keith Adams
Pablo Arredondo
Toberoff & Associates, P.C.
22631 Pacific Coast Highway #348
Malibu, CA 90265

WRITER'S E-MAIL ADDRESS
cseto@omm.com

Re:     *DC Comics v. Pacific Pictures Corp.*, Case No. CV-10-3633

Dear Keith and Pablo:

We write to follow up on our November 27 and 28 meet-and-confer talks concerning, *inter alia*, DC's responses to Mark Warren Peary's First Set of Interrogatories and Laura Siegel Larson's First Set of Requests for Production. Although DC stands by its objections to this discovery (which DC set forth in its formal responses and in our letters and calls), in the interest of compromise and to avoid needless motion practice, DC has been working to address the questions and concerns you raised during our recent discussions. Reserving all rights to object to defendants' use of the evidence sought (including, *e.g.*, on relevance grounds), DC agrees to serve amended responses and to produce responsive, non-privileged documents as discussed below. As I told you in my email, the work DC is undertaking involves a significant amount of time and expense. Much of this work is work that defendants should, if ever, have asked DC to do many months ago, and certainly before the Court granted DC summary judgment on its First and Third Claims and certified those claims for appeal. As I also mentioned in my email, we have concerns that defendants intend to press ahead with motion practice no matter what information DC provides. We hope that concern is unfounded, but if it proves to be the case, DC reserves all rights to seek its fees and costs for the work it is undertaking. DC has some materials to produce to you today, but needs your agreement that documents it marks as "Confidential" will be treated as such under the terms of the protective order in *Siegel*. Additional documents will be provided on a rolling basis, and we will need your agreement as well concerning the "Confidential" marking of certain of those documents.

O'MELVENY & MYERS LLP
December 6, 2012, Page 2

## I.    DC'S RESPONSES TO PEARY'S INTERROGATORIES

Interrogatory Nos. 1-4.  These interrogatories ask DC to identify communications with the Shuster family.  These interrogatories were overbroad to begin with, but you told us before they were focused in many respects on the 1992 Agreement, which the Court validated in its summary judgment order.  These requests are thus, for the most part, mooted by the Court's order.  Moreover, while, as you know, defendants did not challenge the adequacy of DC's initial responses, DC identified additional correspondence that may be responsive to these requests—all of which has been previously produced and cited in connection with the parties' recent summary-judgment briefing.  DC will serve amended responses listing this additional correspondence.  If the additional document searches DC offers to do below yield any additional correspondence, we will further amend, as need be.

Interrogatory No. 5.  Defendants challenge DC's response to Interrogatory No. 5, which asks DC to "IDENTIFY all COMMUNICATIONS between YOU AND any third-party that REFERRED TO the 1992 AGREEMENT."  As noted in DC's objections and discussed during our November 27 call, this request is overbroad, unduly burdensome, and needs to be limited in scope.  Indeed, Magistrate Zarefsky rightly criticized this interrogatory—and others like it—on the grounds that "requests that seek 'all' or 'any,' especially on as elastic a term as 'communications' (and there are many similar terms), when they contain little or no limiting language—as to subject and time—necessarily invite objections" and "will never produce the required information without a great deal of time, effort, expense and anguish."  DN 467 at 2.

During our November 27 call, you discussed possibly limiting Interrogatory No. 5 to third-party communications involving DC and Warner Bros.' "business and legal affairs" and "consumer products" departments.  DC and Warner Bros. have hundreds of employees who serve business affairs, legal affairs, or consumer products functions—the vast majority of whom have no knowledge whatsoever (and no reason to have knowledge) of the 1992 Agreement.  It would be overly burdensome to search all of these employees for relevant communications.

DC has already collected and reviewed documents from the custodians most likely to have such communications, including (but not limited to) those identified *infra*, Part III.  In the interest of compromise, however, and if defendants withdraw their (baseless) threat to file a motion, DC is also willing to:

- run additional searches in the E-Docs library used by Warner Bros. Entertainment "Corporate Legal";

- run additional searches in the E-Docs library used by DC Comics "Business & Legal Affairs";

- run additional searches in the E-Docs library used by Warner Bros. Pictures "Business & Legal Affairs";

O'MELVENY & MYERS LLP

December 6, 2012, Page 3

- run additional searches in the E-Docs library used by Warner Bros. Television "Business Affairs";

- run additional searches in the E-Docs library used by Warner Bros. Television "Legal Affairs";

- search relevant hard-copy documents in the custody of Steven Spira (Warner Bros. Pictures);

- search relevant hard-copy documents in the custody of Damon Bonesteel (Warner Bros. Entertainment);

- search relevant hard-copy documents in the custody of Ana de Castro (Warner Bros. Consumer Products);

- search relevant hard-copy documents in the custody of Amy Genkins (DC Entertainment);

- search relevant hard-copy documents in the custody of Alex McAuley (Warner Bros. Consumer Products, Europe); and

- search relevant hard-copy documents in the custody of Maria Tinoco (Warner Bros. Consumer Products).

If these searches yield any responsive, non-privileged documents that have not already been produced (and we have no assurances that they will), DC will identify the communications in its amended interrogatory responses and produce the documents as well.

Interrogatory Nos. 9-12.  These interrogatories ask DC to identify evidence in support of specific allegations in its First Claim for Relief.  As defendants know, judgment was granted in DC's favor on this claim, DN 507 at 5-13, and defendants are not entitled to seek further discovery on it and these interrogatories are moot, *see Brashear v. Clark*, 2009 WL 37313653, at *1 (E.D. Cal. Nov. 5, 2009) (where a "discovery request is directed toward evidence that relates to a [claim] that has been dismissed by the Court … there is no perceived need for the evidence"); *U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002) (appropriate to deny requests for "additional discovery … made after summary judgment was issued"); *cf. Goodman v. New Horizons Cmty. Serv. Bd.*, 2006 WL 940646, at *3 (11th Cir. Apr. 12, 2006) ("[T]o the extent that Goodman's motion for sanctions sought a discovery order or matter at trial, the dismissal of Goodman's case renders it moot.").

Defendants' argument (set forth in your letter of November 19) that these interrogatories are relevant to DC's Fourth, Fifth, and Sixth Claims because they *could* lead to the discovery of evidence concerning DC's *damages* is not convincing.  None of these interrogatories is directed to the question of damages.  To take just one example, Interrogatory No. 9 asks:  "IDENTIFY any evidence that supports YOUR contention that '[t]he Termination Notice is invalid, and

**Exhibit P**
**108**

O'MELVENY & MYERS LLP
December 6, 2012, Page 4

ineffective,' found in paragraph 106 of YOUR COMPLAINT." This interrogatory *only* relates to the validity of the Shusters' termination notice—a question which has now been fully and finally adjudicated in DC's favor. DN 507 at 5-13. As defendants drafted it, the interrogatory calls for no information concerning the nature or amount of damages DC seeks on its state-law claims. Even so, and as a proposed compromise, DC is willing to provide additional information concerning its damages allegations in its amended responses and produce relevant related documents, although such damages issues may ultimately be an expert-witness question.

Interrogatory Nos. 13-15. These interrogatories ask DC to identify evidence in support of specific allegations in its Third Claim for Relief. As explained above, these interrogatories are moot in light of the Court's summary judgment ruling granting judgment in DC's favor on its Third Claim. DN 507 at 16-17.

Defendants claim these interrogatories may still be relevant to DC's Fourth, Fifth, and Sixth Claims because they implicate DC's allegations about defendants' consent agreements, Superboy fraud, and various conflicts of interest. We disagree, but to moot this issue, DC is willing to amend its answers to identify evidence in support of these allegations—much of it, as you know, was addressed and briefed in the parties' cross-motions for summary judgment.

## II.    DC'S RESPONSES TO LARSON'S REQUESTS FOR PRODUCTION

Requests re: DC's Receipt and Handling of the Toberoff Timeline (Nos. 3-27, 32-65, 88). Such documents have no relevance to any claim or defense in this litigation. *Cf.* FED. R. CIV. P. 26(b)(1) (party only has right to discover materials "relevant to any party's claim or defense"). During our meet-and-confer discussions, Pablo said that such documents *may* reveal relevant information and the Federal Rules establish a "liberal" discovery standard, but "the standard of relevancy is not so liberal as to allow a party to ... explore matter which does not presently appear germane on the theory that it might conceivably become so." *Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union, AFL–CIO–CLC*, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997); *see also Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 187 (1st Cir. 1989).

Keith then made the argument—for the first time in the parties' many discussions on this topic—that the timing of DC's receipt of the Timeline could be relevant to defendants' statute-of-limitations arguments. This makes no sense, either; neither DC nor its counsel had access to the Timeline until it was produced in December 2008, so any applicable statute of limitations would be tolled until 2008. *See* DN 334 at 17, 20-21, 22-23, 25; Ninth Circuit Appeal No. 11-56934, DN 33 at 54-57; Mar. 26, 2007, Smith Decl. ¶ 13 (confirming "we have not shared the contents of the [Timeline or attached documents] with any of the outside counsel representing the Defendants in this action, nor have we used the contents of the documents in the litigation."). Moreover, under defendants' statute-of-limitations argument (which is specious, to be clear), DC's state-law claims are allegedly untimely whether Warner Bros. received the Timeline materials in June 2006 (the position defendants have briefed to the District Court and Ninth Circuit, *e.g.*, Appeal No. 11-56934, DN 8 at 49), or six or more months earlier as defendants at other times (baselessly) assert, *e.g.*, DN 160 at 76 n.28; Case No. CV-04-8400, DN 476 at 58-59. Thus, this discovery is not relevant or needed to address any properly contested issue in the case.

**Exhibit P**
**109**

O'MELVENY & MYERS LLP
December 6, 2012, Page 5

Rather, as we have previously reminded defendants, Wayne Smith's March 26, 2007, declaration in *Siegel* sets forth the precise circumstances of DC's receipt and handling of the Timeline documents, and Judge Zarefsky rightly noted (over defendants' arguments to the contrary that Warner Bros. had received the Timeline documents six months earlier, Case No. CV-04-8400, Docket Nos. 107 at 36-39; 177 at 9:2-10:11, 13:15-17:21), that Mr. Smith "acted professionally" and "reasonably" in briefly reviewing the Timeline documents in June 2006 and immediately turning them over to Arnold & Porter.  Case No. CV 04-8400, DN 108; 177 at 19:3-7.  Defendants waived any right to challenge this finding as Judge Larson held, *id.*, DN 374 at 4-5, and they certainly cannot re-litigate this issue in this related case, when it has no relevance to any claim or defense.  To moot the issue once and for all, however, we again confirm that the first documents in DC's files concerning the Timeline are dated June 28, 2006—the day the Timeline was received.[1]  Those documents are described in paragraphs 5-6 of Mr. Smith's declaration:  the *On the Receiving End* article by Kurt L. Schmalz posted on the Los Angeles County Bar Association website and the three principal California cases it identifies:  *Aerojet-Gen. Corp. v. Transp. Indem. Ins.*, 18 Cal. App. 4th 996 (1993), *State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644 (1999), and *Rico v. Mitsubishi Motors Corp.*, 116 Cal. App. 4th 51 (2004).  To further moot this issue, DC is willing to produce John Quinn's July 5, 2006, letter to counsel in *Siegel* confirming that the Timeline documents were "delivered to the Warner Bros. offices during the middle of last week"—*i.e.*, June 28, 2006.  There were no earlier written communications between DC and Arnold & Porter since, as described in Mr. Smith's declaration, all three sets of the Timeline documents "were handed over to Mr. Quinn" in person on June 30, 2006.  Mar. 26, 2007, Smith Dec. ¶ 13.  Mr. Quinn sent his letter the next business day after the holiday weekend—July 5.  To the extent defendants want further confirmation of when and how DC received the Timeline, they should depose David Michaels, whom defendants have identified as the Timeline author.  Toberoff's Jan. 24, 2011 Interrog. Resps., Resp. No. 1.

DC is also willing to produce its communications with Mr. Michaels if and when defendants do the same.  Before the parties can reach compromise on this and many other subjects, however, there must be reciprocity—defendants cannot demand that DC produce documents involving third parties that defendants themselves continue to withhold.  Nor is there any legitimate basis for defendants to assert privilege over communications with Mr. Michaels after he left Toberoff & Associates—especially given that defendants accused him of committing crimes by stealing privileged documents, "falsely disparaging" Mr. Toberoff, and attempting to "steal" his clients, *see* Toberoff's Jan. 24, 2011, Interrog. Resps., Resp. No. 4, and also reported Mr. Michaels' alleged crimes to the FBI and U.S. Attorney's Office, but now backtrack from certain of those allegations, *see id.*, Resp. 5.  Please let us know if you agree to a reciprocal exchange of communications with Mr. Michaels.

Request re: Other Interference Claims by DC and Warner Bros. (No. 29).  While defendants have failed to articulate any legitimate theory of relevance for these documents, and

---

[1] We note that this day may well have been specially chosen by the Timeline author, since *Superman Returns* was released on June 28, 2006.  *See* Internet Movie Database, Superman Returns, http://www.imdb.com/title/tt0348150/.

**Exhibit P**
**110**

O'MELVENY & MYERS LLP
December 6, 2012, Page 6

while it would be equally burdensome for defendants to locate these publicly available documents, in the interest of compromise, we propose producing any documents we are able to find after conducting a reasonable search with the limitations Keith proposed:  complaints or counterclaims involving claims for tortious interference with prospective economic advantage or tortious interference with contract filed by DC Comics or Warner Bros. Entertainment Inc. in the United States between 2000 and the present.

Request re: Documents Referring to *Siegel* or *Pacific Pictures* Litigation (No. 30).  Keith offered to limit this request to communications with third-parties concerning the *Siegel* or *Pacific Pictures* cases and internal analyses concerning the effect of these cases on DC's business.  Even as narrowed, this request is grossly overbroad, unduly burdensome, and very directly calls for privileged information.  Keith explained that this request is intended to target documents relevant to DC's damages allegations.  As noted above, DC is willing to produce documents on this topic, including licensing contracts that end prematurely in 2013—to DC's detriment.

Request re: Minutes of Board Meetings or Director Resolutions (No. 31).  Keith agreed to limit this request to minutes of Board of Directors meetings or resolutions of DC Comics, Warner Bros. Entertainment Inc., and Time Warner concerning the *Siegel* or *Pacific Pictures* lawsuits.  As a compromise, and not conceding the relevance or discoverability of this material, DC proposes conducting a search for such documents and producing any non-privileged, responsive materials.

Requests re: Documents Sufficient to Show When O'Melveny Was Retained (Nos. 66-69).  Pablo said the timing of O'Melveny & Myers' retention is relevant to when its counsel had access to a discovery database from prior counsel.  DC disputes the relevance of these documents, all of which are almost certainly privileged, but in any event, defendants have asserted they know when O'Melveny was retained in this case.  DN 530 at 5 ("DC terminated its prior counsel, and retained its current counsel, in **February 2010**") (emphasis in original), DN 533 (denying defendants' motion).  These requests are therefore moot.

Request re: Private Investigator (No. 83).  These requests are not directed to any relevant subject matter—indeed, defendants have objected to similar discovery requests concerning defendants' investigative efforts on the ground that they were "not relevant to any of the claims for relief in this action."  *See, e.g.*, Toberoff's Jan. 24, 2011, Interrog. Resp., Resp. No. 3; Toberoff's Jan. 24, 2011, Resp. & Objections to DC's Reqs. for Prod., Resp. No. 19.  In the spirit of compromise, however, DC can confirm that it retained Kroll Associates, Inc. in May 2010 to work under the direction of its attorneys in connection with this litigation.  All of Kroll's very limited work was performed at the direction of DC's attorneys for purposes of this litigation and is therefore work product or privileged.  Defendants have refused to produce any documents relating to their investigative efforts on the basis of privilege.  *E.g.*, Toberoff's Jan. 24, 2011, Resp. & Objections to DC's Reqs. for Prod., Resp. No. 19.  It is inconsistent for defendants to now insist that DC produce the same type of documents.  DC is willing to consider producing certain documents on this topic if defendants will do the same.

**Exhibit P**
**111**

O'MELVENY & MYERS LLP

December 6, 2012, Page 7

Requests re: Communications with Public Relations Entities (Nos. 84-97).  These requests are not directed to any relevant subject matter, and defendants have been unable to identify a legitimate theory of relevance.  Keith said these requests "track" DC's, but we have never served such requests in this case.  Keith also claimed that DC's statements to third-party "PR" entities could be relevant to DC's damages allegations. DC disputes the relevance of these requests, but has already agreed to produce documents on the topic of damages.  *See supra*.

Request re: All Communications re: Toberoff (No. 89).  Not only are such documents entirely irrelevant to this action, defendants' request is grossly overbroad—indeed, defendants have vigorously—and successfully—objected to requests by DC seeking "All" communications, *e.g.*, DN 262 at 5 (accepting defendants' narrowing proposal for "All DOCUMENTS RELATING to any COMMUNICATIONS with Ari Emanuel.").  Magistrate Zarefsky has warned defendants that "requests that seek 'all' or 'any,' especially on as elastic a term as "communications" (and there are many similar terms), when they contain little or no limiting language—as to subject and time—necessarily invite objections," DN 467 at 2.  As we have pointed out, Mr. Toberoff has had many dealings with DC and Warner Bros. totally unrelated to this litigation (*e.g.*, the Skyport, Gilligan's Island, Dukes of Hazzard, Wild Wild West, and Argo matters, to name a few), and this request would sweep in any and all communications in connection with these irrelevant matters.

DC remains willing to consider a reasonable compromise proposal, but defendants will have to substantially narrow the scope of this request and be willing to produce similar sets of documents concerning DC and its counsel.

Requests re: Communications with the Siegels and Various Third Parties (Nos. 70-82).  Defendants' requests for all communications with Joanne Siegel, Laura Siegel Larson, Dennis Larson, and Michael Siegel are plainly overbroad.  Even so, DC proposes conducting a reasonable search for such communications that have not already been produced, and producing responsive documents (if any).

As to defendants' requests for all communications with third parties Josh Ryland, Don Bulson, Renner Otto, Susan Allison, Kevin Marks, Bruce Ramer, Gang Tyre, Ari Emanuel, and William Morris Endeavor, defendants have never shared their theory of relevance for such documents, or given any justification for asking DC to undertake the burden of locating all such communications.  Indeed, defendants have themselves refused to produce the very same documents, and cannot demand that DC do what they will not.  DC is willing to consider searching for and producing such documents if and when defendants do the same.

Requests re: Evidence in Support of DC's Allegations (Nos. 90-125).  Request Nos. 94-96, which request evidence in support of DC's work-for-hire allegations, are moot in light of the Court's summary judgment order.  Moreover, given the breadth of these requests—*e.g.*, "All DOCUMENTS" showing that as a result of "70-plus years of character and story development by some of the most creative and talented minds in the comic-book, radio, television, and motion-picture industries—Superman has remained constantly in the public's eye and has become one of the most famous and beloved fictional characters in the world," Request No. 94—

**Exhibit P**
**112**

O'MELVENY & MYERS LLP
December 6, 2012, Page 8

it would not only be pointless, but unduly burdensome for DC to produce all responsive documents.  While the remaining requests (Nos. 90-93, 97-125) are also overbroad, DC is willing to conduct a reasonable search and produce any responsive documents that have not previously been produced (if any).

### III.    DC'S RESPONSES TO DEFENDANTS' QUESTIONS RAISED DURING MEET-AND-CONFER DISCUSSIONS

The many questions you raised about DC and Warner Bros.' prior discovery efforts are improper and misplaced.  DC has fully complied with the discovery rules, and defendants never suggested otherwise—or asked for details about our discovery processes—until after DC told defendants it would file a sanctions motion based on defendants' discovery misconduct. Defendants' concocted challenges to DC's discovery are now moot, in any event, given that the Court denied defendants' baseless motion to vacate its summary judgment order, which recognized defendants' true motivation for filing the motion to vacate—to distract from DC's sanctions motion, DN 533 at 2 ("Not to be outdone [by DC's sanctions motion], Defendants move to Vacate….")—and rightly observed that "Defendants never requested a Rule 56(d) continuance to obtain evidence or otherwise complete discovery," *id.*, as they certainly would have if they truly believed that DC had belatedly produced relevant documents.  As defendants have argued that the record on appeal cannot be expanded to include recent discovery, we are unclear whether and why defendants continue to press for this information.

However, to avoid further burdening the parties and Court with unnecessary motion practice—and without agreeing that defendants are entitled to such information, confirming the relevance of such information, or waiving any applicable privilege—DC provides the following answers to defendants' specific questions:

Organizational Charts.  Pablo asked for organizational charts listing the various DC and Warner Bros. entities.  DC will produce—subject to defendants' agreement to maintain its confidentiality—the most recent version of Time Warner Inc.'s Corporate Structure Book.

"IT Topography."  Pablo asked whether DC and Warner Bros.' electronic files are maintained in a single database or on a computer-by-computer basis.  There is no comprehensive database for DC and Warner Bros.' electronic files.  However, DC and Warner Bros. legal and business affairs employees have access to a document management system called "E-Docs DM 5.3," on which certain agreements and other related documents are stored.  Otherwise, electronic files are generally maintained on a computer-by-computer basis.

Head of IT.  Pablo asked for the name of the person in charge of DC and Warner Bros.' IT departments.  James Halsey is the Chief Information Officer for Warner Bros., which provides MIS services to DC Comics under a shared services arrangement.

DC's Discovery Efforts.  Documents were collected and reviewed from key custodians (or, if departed, from their files) at DC and Warner Bros., including, for example:

O'MELVENY & MYERS LLP
December 6, 2012, Page 9

- Patrick Caldon (DC Comics)

- Lillian Laserson (DC Comics)

- Paul Levitz (DC Comics)

- Ina Borck (Warner Bros.)

- David Camp (Warner Bros.)

- Steve Chalk (Warner Bros.)

- Don Chestnutt (Warner Bros.)

- Damian Coleman (Warner Bros.)

- Nina de Guzman (Warner Bros.)

- Mark Devitre (Warner Bros.)

- Amie Doft (Warner Bros.)

- Karen Fouts (Warner Bros.)

- Barbara Galbo (Warner Bros.)

- Nairi Gardiner (Warner Bros.)

- Julie Hanif (Warner Bros.)

- Reginald Harpur (Warner Bros.)

- Vince Heileson (Warner Bros.)

- Darryl Hendrix (Warner Bros.)

- David Kaplan (Warner Bros.)

- Keith Kelley (Warner Bros.)

- Brinda Kempton (Warner Bros.)

- Pam Kirsh (Warner Bros.)

- Danielle Knight (Warner Bros.)

O'MELVENY & MYERS LLP
December 6, 2012, Page 10

- Steve Langenthal (Warner Bros.)

- Andy Lewis (Warner Bros.)

- Francis McDonnell (Warner Bros.)

- Joelle Mitchell (Warner Bros.)

- Brian Ober (Warner Bros.)

- Don Putrimas (Warner Bros.)

- Paul Roque (Warner Bros.)

- Eric Sakai (Warner Bros.)

- Larry Schneider (Warner Bros.)

- John Schulman (Warner Bros.)

- Christina Smith (Warner Bros.)

- Wayne Smith (Warner Bros.)

- Steve Southgate (Warner Bros.)

- Michael Steuerwald (Warner Bros.)

- Ron Sunderland (Warner Bros.)

- Nancy Wang (Warner Bros.)

- Teresa Wayne (Warner Bros.)

- Frank Wells (Warner Bros.)

- Keith Zajic (Warner Bros.)

As set forth above, we have offered to expand our search and review even further.

Bonesteel and Josephson Documents.  Pablo asked whether the affidavit by Damon Bonesteel filed with the Centre National de la Cinematographie in France and the letter by Donna Josephson submitted to the Canadian Audio-Visual Certification Office are the only documents of their kind, and suggested that since *Superman Returns* was released in many countries, there should be many more such documents.  To begin, this question is irrelevant,

O'MELVENY & MYERS LLP
December 6, 2012, Page 11

since these issues have been fully ventilated in multiple sets of briefing—including, most recently, the briefing on defendants' motion to vacate the October 17, 2012, summary judgment ruling.  In any event, we can confirm that the Bonesteel and Josephson documents are the only such documents we have been able to locate.  This is not surprising, since as we explained to you during our November 27 call, these documents were prepared based on specific requirements by the French and Canadian authorities.  Nonetheless, we are willing to run additional searches for related documents and to produce any responsive, non-privileged documents we find (if any).

*    *    *

DC will serve amended responses and begin making a supplemental document production as soon as we can get your agreement on the protective order issue noted above.  We are investing a substantial amount of time and resources to these efforts, and remind you that we need to close the loop on these issues before taking any next steps, including filing any motion with the courts.  It is our hope that we can resolve these matters without needless motion practice.

All of DC's rights are reserved.

Very truly yours,

/s/ Cassandra L. Seto

Cassandra L. Seto
for O'MELVENY & MYERS LLP

OMM_US:71151416

**Exhibit P**
**116**