# EXHIBIT A

○

## O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

July 27, 2012

OUR FILE NUMBER
905900-321

**VIA EMAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

Marc Toberoff
Toberoff & Associates, P.C.
22631 Pacific Coast Highway #348
Malibu, CA 90265

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Marc:

We write to discuss re-opening DC's depositions of defendants Mark Warren Peary and Laura Siegel Larson. DC last deposed Peary and Larson last summer. Since that time, there have been several significant discovery disclosures and developments in this case that warrant defendants' further examination. To take a few examples, DC has now obtained: (1) the Timeline documents; (2) Jean Peavy's will and the 2011 PPC Agreement; and (3) Larson's July 2003 letter to Michael Siegel, Michael's November 2002 letter to Laura, and your November 2001 email to Michael Siegel (which is to be produced to DC on August 13, 2012).

As you know, Magistrate Judge Zarefsky granted DC's motion to re-open Dawn Peavy's deposition. Docket No. 377. DC would prefer to avoid similar motion practice concerning Peary and Larson's depositions. However, if defendants oppose this request, DC seeks a Rule 37 conference on the issues immediately. *See* FED. R. CIV. P. 30(d)(1) ("the court "must allow additional time … if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes … the examination…."); Advisory Committee Notes to FED. R. CIV. P. 30 (good cause for further deposition exists if an "examination reveals that documents have been requested but not produced"); *St. Clair v. U.S.*, 21 F.R.D. 330, 331 (S.D.N.Y. 1958) (granting leave to redepose where matters sought to be examined were "only recently disclosed"); *Kress v. Price Waterhouse Coopers*, 2011 U.S. Dist. LEXIS 126224, at *5-6 (E.D. Cal. Nov. 1, 2011) ("'Good cause' for an order exists where… new documents have been produced."); FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 11:1374 (Rutter 2011) ("'Good cause' for such order may include: new documents have been produced.").

**EXHIBIT A**
**2**

O'Melveny & Myers LLP

July 27, 2012 - Page 2

DC proposes the depositions take place the second week of September, in Los Angeles. Please inform us of your position as soon as possible.

All of DC's rights and remedies are reserved.

Very truly yours,

/s/ Matthew T. Kline

Matthew T. Kline
of O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli, Esq.
       Richard Kendall, Esq.
       Defense Counsel

**EXHIBIT A**
**3**

# EXHIBIT B

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

August 17, 2012

OUR FILE NUMBER
905900-321

WRITER'S DIRECT DIAL
(310) 246-6707

WRITER'S E-MAIL ADDRESS
jtokoro@omm.com

**VIA E-MAIL**

Marc Toberoff
Toberoff & Associates, P.C.
22631 Pacific Coast Highway #348
Malibu, CA 90265

Richard Kendall
Kendall Brill & Klieger LLP
10110 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067

Re:    _DC Comics v. Pacific Pictures Corp. et al._, CV-10-3633 (ODW) (RZx)

Dear Counsel:

As you know, and as we discussed in recent letters, emails, and our call earlier this week, DC intends to move to re-open the depositions of defendants Laura Siegel Larson and Mark Peary based on several significant discovery disclosures and developments in this case that warrant further examination. In addition, DC intends to move to compel these witnesses' testimony concerning key lines of questioning that defense counsel persistently instructed the witnesses not to respond. In our letter to you dated July 11, 2011 (and in our subsequent phone conference), we detailed the defects in the objections defense counsel made during Peary's June 29, 2011, deposition. A copy of our July 11 letter (the "Peary Letter") is attached. Similarly defective objections were made at Larson's July 22, 2011, deposition, and we will move to have those objections overruled for the same reasons we will move to overrule the Peary objections. If you wish to abandon the Peary and/or Larson objections set forth in our Peary Letter and this letter, please let us know. If you refuse to withdraw the objections, and wish to discuss the matter further, we can do so next week. As discussed, we believe all necessary Rule 37 conferences have occurred on these issues, but to avoid any wasteful arguments to the contrary by defendants, we write this letter and invite you to discuss these issues by phone next week.

1. <u>Consent Agreement</u>. Defense counsel instructed Larson not to answer any questions regarding the "substance of the consent agreement" between defendants that, at a minimum, prohibits the Siegel and Shuster families from entering into an agreement with DC without the consent of the other. Defense counsel refuses to produce the document—though he and

O'MELVENY & MYERS LLP
August 17, 2012 - Page 2

defendants have made many arguments about its substance—on the ground that it was "held to be privileged." Larson Tr. at 41:3-19. The lines of inquiry blocked by defense counsel included:

- whether any other side deal exists by which the Shuster heirs may claim a share of profits the Siegel heirs received from DC, *see id.* at 41:3-19;[1]

- whether the consent agreement contains any reference to Superboy, *see id.* at 42:20-44:18, 45:17-46:5; and

- Ms. Larson's understanding on how the consent provision works, *see id.* at 46:6-12.

As explained in our July 11 Peary Letter, defense counsel's objections are overbroad and not well-taken. Peary Letter at 1-5.

   a. Magistrate Judge Zarefsky denied DC's motion to compel production of the consent agreement based on his application of law-of-the-case doctrine to the *Siegel* court's ruling that the agreement (1) was entered into in connection with mediation; and (2) is privileged based on Toberoff's representations "as an officer of the Court." Docket No. 163-11 at 724:9-11. Neither of these two bases for the Court's rulings bars the discovery DC seeks.

   As to the first ground for His Honor's opinion, Peary confirmed at his subsequent deposition that the consent agreement was created—and continues to exist—separate and apart from any mediation discussion. Peary Tr. 53:21-54:6, 58:13-18, 72:5-7. Moreover, courts have established that parties can pursue alternative sources of discovery to prove the existence of facts disclosed during mediation—parties must be given an opportunity to "uncover new, admissible evidence … not protected by the confidentiality statutes." *Benesch v. Green*, 2009 U.S. Dist. LEXIS 117641, at *12-13 (N.D. Cal. Dec. 17, 2009); *see also Foxgate v. Homeowners' Assoc.*, 26 Cal. 4th 1, 17-18 (2001) (allowing plaintiff to seek sanctions based on "assertion and evidence" other than "communications made during the mediation"); *Cassel v. Super. Ct.*, 2011 WL 102710 (Cal. Jan. 13, 2011) (citing *Benesch* and *Foxgate* favorably).

   As to the second ground for His Honor's opinion, it has repeatedly been held and shown subsequent to His Honor's ruling that Toberoff's representations to DC and the courts cannot be trusted. *E.g.,* Docket Nos. 161-5 at 30-31; 209 at 12; 336; 457; 477 at 4-7; Docket No. 477; Aug. 7, 2012 letter from DC to Defendants. The Ninth Circuit, moreover, in an opinion that is the law of this case, expressly *called out defense counsel for refusing to produce non-privileged documents, compare In re Pacific Pictures Corp.*, 679 F.3d 1121, 1124 (9th Cir. 2012)*, and id. at 1129* ("most of the[ Timeline] documents are not covered by attorney-client privilege because they do not represent communications between a lawyer and his client for the purpose of obtaining legal advice. *Cf.* [*U.S. v.*] *Ruehle*, 583 F.3d [600], 608-09 n.8 [(9th Cir.2009)] (rejecting a presumption of privilege even when a communication involves a lawyer)*, with id. at* 1125 ("Considering every communication he had with the Heirs to be privileged—regardless of

---

[1] Appendix A to this letter highlights deposition questions and answers to which DC would seek to compel answers, as well as the right to ask related follow-up questions.

O'MELVENY & MYERS LLP
August 17, 2012 - Page 3

whether the communication was in his capacity as a business advisor or an attorney—Toberoff
resisted all such [discovery].").

Moreover, Larson's and Peary's testimony—which was obtained after His Honor's
ruling—makes clear that the consent agreement is a business agreement between the Siegels and
the Shusters—affecting and impairing their putative copyright claims. *See* Peary Tr. 175:5-
176:12; Larson Tr. at 42:20-25, 44:20-45:3, 45:17-46:4, 99:19-25. Privilege does not extend to
such business arrangements, as the Ninth Circuit made clear in *Pacific Pictures*, 679 F.3d at
1125, 1129, and as many other cases hold, *e.g.*, *U.S. v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996)
(privilege only applies where client seeks advice from lawyer "'*in his capacity as such*'"—not
where lawyer acts as "business agent"); *Minebea Co., Ltd. v. Papst*, 355 F. Supp. 2d 526, 529
(D.D.C. 2005) (business agreements and communications between attorney and client not
privileged); *U.S. v. Davis*, 636 F.2d 1028, 1043 (5th Cir. 1981) (where services primarily non-
legal in nature, "communications relating to that service should therefore not be privileged, even
though performed by a lawyer"); *Marten v. Yellow Freight Sys.*, 1998 U.S. Dist. LEXIS 268, at
*18 (D. Kan. Jan. 6, 1998) (recognizing that "when the legal advice is merely incidental to
business advice, the privilege does not apply").

b. Larson and Peary also waived whatever privilege might otherwise have existed in the
consent agreement by, at their depositions, selectively and strategically disclosing certain facts
about the consent agreement. Counsel allowed Larson and Peary to provide testimony that
counsel apparently believed helped defendants' case (using these disclosures as a sword)—
including on topics such as who is purportedly bound by the agreement; whether it entitles the
Shusters to share in money from the Siegels' claims; and whether it provides Toberoff additional
remuneration. Larson Tr. at 41:3-6, 41:10-42:11, 42:18, 99:15-100:5; Peary Letter at 4-5
(collecting testimony). Defense counsel then improperly used privilege as a shield to shut off
numerous lines of related inquiry—including on issues like Superboy, *e.g.*, Larson Tr. 42:20-
44:18, 45:17-46:5, which is the subject of DC's unclean hands claim on which defendants
threaten to move for summary judgment. *Compare* Docket No. 49 ¶¶ 129-33, 178, 86-91, *with,
e.g.*, June 28, 2012, letter from Defendants to DC ("Pursuant to Federal Rule of Civil Procedure
56, Defendants will be bringing a cross-motion for partial summary judgment … on DC's Third
Claim for the reasons that have been extensively brief and discussed."). A privilege holder
"cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may
elect to withhold or disclose, but after a certain point his election must remain final." *Weil v.
Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981); *Fort James Corp. v.
Solo Cup. Co.*, 412 F.3d 1340, 1349-51 (Fed. Cir. 2005).

2. Other Issues. Defense counsel instructed Larson not to answer several other questions
on the basis of the attorney-client privilege. None of these subjects implicated the conveyance of
legal advice:

- We asked questions concerning Larson's awareness of efforts to market the Siegels'
  putative Superman rights. *See* Larson Tr. 46:19-48:7. There is no basis for asserting
  privilege over such business communications. *See In re Pacific Pictures Corp.*, 679

**EXHIBIT B**
6

O'MELVENY & MYERS LLP
August 17, 2012 - Page 4

F.3d 1121 at 1125, 1129; *Chen*, 99 F.3d at 1501 (privilege cannot apply where attorney acting primarily in business role); *accord Minebea*, 355 F. Supp. 2d at 529; *Davis*, 636 F.2d at 1043. That Ms. Larson may have learned about these business meetings and proposals from her attorneys does not make the entire topic immune from discovery. *See U.S. v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) ("The fact that a person is a lawyer does not make all communications with that person privileged.").

- We asked questions about the August 2002 communication from Kevin Marks to the Siegel heirs conveying Toberoff's and Emanuel's offer to acquire the Siegels' putative Superman rights (the "Marks Memo"). *See* Larson Tr. at 147:6-150:22, 156:13-23. Defendants waived privilege over the Marks Memo by disclosing it to the U.S. Attorney's Office in 2010, and thus the communication and its contents are appropriate subjects for examination of Larson. Docket Nos. 262 at 2-4; 279; *In re Pacific Pictures Corp.*, 679 F.3d at 1131.

- We asked questions about Larson's understanding of the value of the Siegels' putative Superman rights and how the heirs could monetize those rights. Larson Tr. 322:11-. DC's questions did not call for the divulgence of *any* privileged information—to the contrary, they were directed to Larson's understanding of the value of the Siegel's putative rights. *Cf. Martin*, 278 F.3d at 999.

These are examples of defense counsel's persistent instructions to Larson not to respond to key lines of questioning during her July 22 deposition. DC reserves the right to move on all objections in Appendix A or that subsequent events necessitate DC move on.

\*    \*    \*

Please let us know immediately if you will withdraw defense counsel's objections. If not, please let us know if you want to further meet and confer on these issues and, if so, when you are available. Again, the Kendall Brill firm should be a part of this discussion.

Very truly yours,

/s/ Jason H. Tokoro

Jason H. Tokoro
for O'MELVENY & MYERS LLP

Enclosure

cc:    Daniel M Petrocelli, Esq.; Matthew T. Kline, Esq.; Defense Counsel

**EXHIBIT B**
**7**

# EXHIBIT C

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

October 24, 2012

OUR FILE NUMBER
905900-321

**VIA EMAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

Marc Toberoff
Keith G. Adams
Toberoff & Associates, P.C.
22337 Pacific Coast Highway #348
Malibu, CA 90265

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Counsel:

We write in response to defendants' letter of October 16, 2012, concerning defendant Marc Toberoff's deposition.

1. <u>DC Is Entitled To Additional Time</u>. For well over a year, defendants have articulated their need to depose defendant Marc Toberoff for more than the default seven-hour time period under FED. R. CIV. P. 30(d)(1). *See*, *e.g.*, Aug. 4, 2011 letter from M. Kline to M. Toberoff and L. Brill; Aug. 11, 2011 letter from M. Kline to M. Toberoff and K. Adams. The reasons are obvious. For example, DC's complaint alleges that Mr. Toberoff, as well as several of his "closely-held corporations," engaged in separate and distinct acts of misconduct spanning a decade. Docket No. 49 ¶¶ 165. The Advisory Committee Notes specifically provide that where, as here, "the examination will cover events occurring over a long period of time, that may justify allowing additional time." FED. R. CIV. P. 30 Advisory Notes.

The length of a deposition is an issue that courts expect parties to be able to work out on their own. *Cf. Genentech, Inc. v. Trs. of Univ. of Penn.*, 2011 WL 7074212, at *1 (N.D. Ca. Oct. 18, 2011) (court granted request for additional time to depose witness and noted it would hear any further similar applications "on shortened time together with a request for sanctions"). Failing that, courts routinely order depositions longer than seven hours. *E.g.*, *id.* (ordering individual, who had already appeared for a ten-hour deposition, to reappear based on witness being "uniquely positioned to address issues [in the case]"); *Baker v. PPL Corp.*, 2011 WL 1811106, at * 2 (M.D. Pa. May 12, 2011) (ordering party to appear for 14 hours given the "legal and factual complexity" of the case); *In re Intel Corp. Microprocessors Antitrust Litig.*, 2008 WL 5377979, at * 2 (D. Del. Dec. 18, 2008) (affirming special master's order that certain witnesses appear for "2 or 3 days of deposition time … to explore such a lengthy and substantial

EXHIBIT C
8

O'MELVENY & MYERS LLP
October 24, 2012 - Page 2

relationship," noting that the case involved a relationship spanning eight years); *Andrews v. Holloway*, 2003 WL 22227855, at * 6 (D.N.J. Sept. 29, 2003) (requiring non-party to appear for further deposition, which could exceed seven hours, because "more time is needed for a fair examination of all relevant topics"). Defendants, however, have rejected all of DC's compromise proposals, such as agreeing to two seven-hour days. *E.g.*, Aug. 10, 2011, letter from M. Toberoff to M. Kline. Defendants similarly objected (and that objection was overruled) when DC sought to depose Dawn Peavy for a second day.

In light of defendants' refusals to reach a compromise in advance of Mr. Toberoff's deposition, DC attempted, in good faith, to complete Mr. Toberoff's deposition on September 18, 2012. As DC suspected, however, it was not able to do so, given the complexity of the issues, and, worse still, DC's progress at the deposition was slowed by defendants' excessive and improper objections, as well as colloquies. As a result, Mr. Toberoff remains to be deposed on numerous core issues in this case. For example, he has not been examined about the August 2011 Pacific Pictures Agreement with the Shuster heirs and many of the Timeline documents, including but not limited to memoranda from Armstrong Hirsch law firm discussing the many ethical issues raised by Mr. Toberoff's business relationship with the Shusters. That Toberoff was deposed in *Siegel* does not, contrary to defendants' assertions, impact DC's right to depose him in this matter. *E.g.*, *Dynapower Sys. Corp.*, 1966 WL 86614, at * 1 (S.D.N.Y. Oct. 31, 1966).[1]

Please let us know whether defendants consent to make Mr. Toberoff available for a second day of deposition—to occur during the weeks of November 12 or 19. Otherwise, DC confirms that this issue will be discussed during the parties' meet-and-confer on Thursday, October 25, at 11:00 PDT. *See* Oct. 23, 2012, Email from M. Kline to K. Adams.

2 . <u>Toberoff's Discovery Misconduct</u>. DC is entitled to depose Mr. Toberoff regarding his discovery responses and conduct, as DC would be with any party. *E.g.*, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 257 F.R.D. 580, 587 (N.D. Cal. 2009) (party examined at deposition about signing verification accompanying responses to interrogatories and requests for production); *Bowoto v. Chevron Corp.*, 2006 WL 2589198, at *1 (N.D. Cal. Aug. 30, 2006) (same); *Specht v. Google, Inc.*, 268 F.R.D. 596, 602 (N.D. Ill. 2010) (discovery into party's interrogatory answers proper). That Mr. Toberoff chose—raising numerous ethical issues, *e.g.*, Docket Nos. 500, 500-2—to represent himself and his entertainment companies in responding to DC's discovery requests does not shield him as a party from discovery regarding the responses. *Cf. Specht,* 268 F.R.D. at 602 (rejecting party's argument that it was improper to depose an individual since "Mr. Moore was not merely acting as counsel but also had a previous business relationship with plaintiffs").

_____

[1] Defendants' claim that DC questioned Mr. Toberoff about the Timeline documents in 2006—when the Timeline was not produced until December 2008, and its enclosures were not produced until 2012—is both false and nonsensical.

EXHIBIT C
9

O'MELVENY & MYERS LLP
October 24, 2012 - Page 3

Moreover, DC's examination of Mr. Toberoff concerning these discovery issues could proceed even if DC wanted to depose Mr. Toberoff in his capacity as opposing counsel in this case. Mr. Toberoff's deposition is necessary because (1) the information DC seeks cannot be obtained by any other means since Mr. Toberoff has (successfully) sought to control all discovery in this case and in the *Siegel* case; (2) Mr. Toberoff's misconduct in responding to DC's discovery requests is not privileged information, *e.g., Doe v. Dist. of Columbia*, 230 F.R.D. 47, 55-56 (D.D.C. 2005); and (3) the information is crucial to DC's pending motion for an evidentiary hearing and sanctions, *e.g., Willer v. Las Vegas Valley Water Dist.*, 1998 U.S. App. LEXIS 7831, at *8-9 (9th Cir. Apr. 19, 1999).

Absent your agreement to withdraw defendants' objections and allow DC to examine Mr. Toberoff on these discovery issues—either in a deposition to occur during the weeks of November 12 or 19, or at the evidentiary hearing DC's motion seeks—DC again confirms that these issues will be discussed during the parties' meet-and-confer on Thursday, October 25, at 11:00 PDT. *See* Oct. 23, 2012, Email from M. Kline to K. Adams.

All of DC's rights are reserved.

Very truly yours,

/s/ Matthew T. Kline

Matthew T. Kline
of O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli, Esq.; Richard Kendall, Esq.; Defense Counsel

EXHIBIT C
10

# EXHIBIT D

1  Marc Toberoff (State Bar No. 188547)
    *mtoberoff@ipwla.com*
2  Keith G. Adams (State Bar No. 240497)
    *kgadams@ipwla.com*
3  Pablo D. Arredondo (State Bar No. 241142)
    *parredondo@ipwla.com*
4  David Harris (State Bar. No. 255557)
    *dharris@ipwla.com*
5  TOBEROFF & ASSOCIATES, P.C.
   22337 Pacific Coast Highway, #348
6  Malibu, California 90256
   Telephone:  (310) 246-3333
7  Fax:          (310) 246-3101

8  Attorneys for Defendants Mark Warren
   Peary, et al.
9

10              **UNITED STATES DISTRICT COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

12  DC COMICS,                          Case No: CV 10-03633 ODW (RZx)

13              Plaintiff,              Hon. Otis D. Wright II, U.S.D.J.
        vs.
14                                      **DEFENDANT MARC
                                        TOBEROFF'S FIRST SET OF**
15  PACIFIC PICTURES CORPORATION;       **INTERROGATORIES TO**
    IP WORLDWIDE, LLC; IPW, LLC;        **PLAINTIFF DC COMICS**
16  MARC TOBEROFF, an individual;
    MARK WARREN Peary, as personal      Complaint Filed:  May 14, 2010
17  representative of the ESTATE OF      Trial Date:  None Set
    JOSEPH SHUSTER; JEAN ADELE
18  PEAVY, an individual; LAURA
    SIEGEL LARSON, individually and as
19  personal representative of the ESTATE
    OF JOANNE SIEGEL,
20
    and DOES 1-10, inclusive,
21
22
              Defendants.
23

24
25
26
27
28

          DEFENDANT MARC TOBEROFF'S FIRST SET OF INTERROGATORIES

                        **EXHIBIT D**

**PROPOUNDING PARTY:**     Marc Toberoff

**RESPONDING PARTY:**     DC Comics

**SET NUMBER:**     One (Interrogatory Nos. 1-25)

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 33, defendant Marc Toberoff hereby requests that plaintiff DC Comics respond in writing and under oath to the following First Set of Interrogatories ("Interrogatories"), separately and fully, in accordance with the definitions and instructions set forth below, by no later than December 20, 2012.

**DEFINITIONS AND INSTRUCTIONS**

1.     The terms "DOCUMENT" and "DOCUMENTS" are used in their broadest sense to encompass all documents and tangible things subject to an interrogatory under Rule 33 of the Federal Rules of Civil Procedure, including, without limitation, any "writing", "recording", or "photograph", as those terms are defined in Rule 1001 of the Federal Rules of Evidence.  They shall include, but are not limited to: e-mail, audio or video recordings, correspondence, letters, phone messages, notes, memoranda, facsimiles, publications, contracts, agreements, calendars, draft of proposed contracts or agreements, papers, and photographs.

2.     The term "COMMUNICATION" refers to all written, electronic, oral, telephonic, gesture or other transmission or exchange of information, including without limitation, any inquiry, request, dialogue, discussion, conversation, interview, correspondence, letter, note, consultation, negotiation, agreement, understanding, meeting, e-mail, and all DOCUMENTS evidencing any verbal or nonverbal interaction between any individuals or entities.

3.     The terms "PERSON" and "PERSONS" refer to any natural person, firm, association, corporation, partnership, or other legal entity or organization separately identifiable, and any department(s) or division(s) therein.

4.     The terms "DC", "YOU" and "YOUR" refer to plaintiff DC Comics, and any of its past or present predecessors-in-interest or successors-in-interest, any

DEFENDANT MARC TOBEROFF'S FIRST SET OF INTERROGATORIES

**EXHIBIT D**

1   partner, joint venture, parent company, affiliated company, subsidiary or division

2   thereof, including Warner Bros. Entertainment, Inc., and any other person or persons

3   acting on its behalf, including, but not limited to, past or present agents, managers,

4   representatives, advisors, employees, attorneys, accountants, investigators, and

5   insurance companies, and any agents or employees of the above, both singularly and

6   cumulatively.

7        5.    The term "WARNER" refers to Warner Bros. Entertainment, Inc., and

8   any of its past or present predecessors-in-interest or successors-in-interest, any

9   partner, joint venture, affiliated company, subsidiary or division thereof, and any

10  other person or persons acting on its behalf, including, but not limited to, past or

11  present agents, managers, representatives, advisors, employees, attorneys,

12  accountants, investigators and insurance companies, and any agents or employees of

13  the above, both singularly and cumulatively.

14       6.    The term "COMPLAINT" refers to YOUR First Amended Complaint,

15  filed in this case on September 3, 2010.

16       7.    The term "TIMELINE" refers to the anonymous document entitled

17  "SUPERMAN – MARC TOBEROFF TIMELINE," attached as Exhibit "A" to the

18  COMPLAINT.

19       8.    The term "STOLEN DOCUMENTS" refers to the documents that were

20  delivered along with the TIMELINE to WARNER'S studio located at 4000 Warner

21  Boulevard, Burbank, California 91522.

22       9.    The term "DEFENDANTS" refers to Laura Siegel Larson, Mark Warren

23  Peary, Jean Adele Peavy, Marc Toberoff, Pacific Pictures Corporation, IP

24  Worldwide, LLC, and IPW, LLC, both collectively and individually.

25       10.   The term "*SIEGEL* LITIGATIONS," refers to the cases *Siegel v. Warner*

26  *Bros. Entertainment, Inc., et al.*, C.D. Cal. Case No. 04-CV-08400 ODW (RZx)

27  and/or *Siegel v. Time Warner Inc.*, C.D. Cal. Case No. 04-CV-08776 ODW (RZx).

28       11.   The term "TOBEROFF" refers to defendant Marc Toberoff, Pacific

1  Pictures Corporation, IP Worldwide, LLC, IPW, LLC, the Law Offices of Marc

2  Toberoff, Toberoff & Associates, P.C., , both collectively and individually, as well as

3  any of their past or present predecessors-in-interest or successors-in-interest.

4      12.    The term "TOBEROFF CLIENTS" refers to PERSONS, other than

5  DEFENDANTS, who have hired TOBEROFF or otherwise contracted for, received,

6  purchased, or used the services of TOBEROFF.

7      13.    The term "HORN" refers to Alan Horn and any other person or persons

8  acting on his behalf, including but not limited to, past or present agents, managers,

9  representatives, advisors, employees, attorneys, accountants, investigators and

10  insurance companies, and any agents or employees of the above, both singularly and

11  cumulatively.

12      14.    The term "CONNOLLY" refers to Patti Connolly and any other person

13  or persons acting on his behalf, including but not limited to, past or present agents,

14  managers, representatives, advisors, employees, attorneys, accountants, investigators

15  and insurance companies, and any agents or employees of the above, both singularly

16  and cumulatively.

17      15.    The term "RABINOV" refers to Jeff Rabinov and any other person or

18  persons acting on his behalf, including but not limited to, past or present agents,

19  managers, representatives, advisors, employees, attorneys, accountants, investigators

20  and insurance companies, and any agents or employees of the above, both singularly

21  and cumulatively.

22      16.    The term "SCHULMAN" refers to John Schulman and any other person

23  or persons acting on his behalf, including but not limited to, past or present agents,

24  managers, representatives, advisors, employees, attorneys, accountants, investigators

25  and insurance companies, and any agents or employees of the above, both singularly

26  and cumulatively.

27      17.    The term "SMITH" refers to Wayne Smith and any other person or

28  persons acting on his behalf, including but not limited to, past or present agents,

1  managers, representatives, advisors, employees, attorneys, accountants, investigators

2  and insurance companies, and any agents or employees of the above, both singularly

3  and cumulatively.

4      18.    The term "DAVID MICHAELS" refers to David Michaels (California

5  State Bar #235985) and any other person or persons acting on his behalf, including

6  but not limited to, past or present agents, managers, representatives, advisors,

7  employees, attorneys, accountants, investigators and insurance companies, and any

8  agents or employees of the above, both singularly and cumulatively.

9      19.    The term "ELECTRONIC SURVEILLANCE" refers to the use of

10  computers, software, spyware, listening devices, microphones, wiretaps, computers,

11  and/or any other method or type of electronic equipment and/or technology, to

12  intercept, record, capture, observe, view, read, or listen to COMMUNICATIONS,

13  including, but not limited to, in-person conversations, telephone calls, text messages,

14  facsimiles, e-mails, online chats, transmissions of electronic data, and/or any other

15  computer activity.

16      20.    The term "DESCRIBE" means to set forth fully and in detail all factual

17  information and data that are responsive to the particular request seeking such

18  statement or description.

19      21.    The term "IDENTIFY" means the following:

20          a.    When used in reference to a PERSON, it means to state

21              the person's full name, present or last known address,

22              and present or last known business affiliation and

23              business address;

24          b.    When used in reference to an organization, it means to

25              state the organization's full name and, if it is a

26              corporation, partnership, or other business entity, the

27              address of its principal place of business;

28

c.    When used in reference to a DOCUMENT, it means to state, to the extent known, the DOCUMENT'S (i) type (*i.e.*, letter, memo, note, e-mail); (ii) subject matter; (iii) current location; (iv) every author, recipient or addressee; and (v) the bates number of the DOCUMENT if simultaneously or previously produced in this or any related action.

d.    When used in reference to a COMMUNICATION, it means to state, to the extent known, the COMMUNICATION'S (i) date; (ii) type (*i.e.*, oral, telephonic, e-mail); (iii) subject matter; (iv) every author, recipient or addressee; and (v) the bates number of the DOCUMENT if simultaneously or previously produced in this or any related action.

18.    The term "INCLUDING" means "including, but not limited to."

19.    The terms "REFER" and "RELATE" mean, without limitation, evidence, reflect, summarize, constitute, contain, study, analyze explain, mention, show discuss, describe, or comment upon.

20.    The terms "REGARDING", "RELATING TO", and "REFERRING TO" mean the same thing as REFER and RELATE.

21.    "Any" and "All" are interchangeable. The word "any" shall be understood to include and encompass "all."  The word "all" shall be understood to include and encompass "any."

22.    "And" as well as "or" shall be construed disjunctively or conjunctively, as necessary, to bring within the scope of these Interrogatories all information which might otherwise be construed to be outside their scope.

23.    The singular form includes the plural form, and vice versa.

24.    Federal Rule of Civil Procedure 33 provides these instructions, which YOU must follow when responding to these Interrogatories:

    a.    Each interrogatory shall be answered separately and full in writing under oath, unless it is objected to, in which even the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable.

    b.    The answers are to be signed by the person making them, and the objections signed by the attorney making them.

    c.    The party upon whom the interrogatories have been served shall serve a copy of the answers, and objections if any, within 20 days after the service of the interrogatories.

    d.    All grounds for an objection to an interrogatory shall be stated with specificity.  Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown.

    e.    The party submitted the interrogatories may move for an order under Rule 37(a) with respect to any objection to or other failure to answer an interrogatory.

25.    Each answer must be as complete and straightforward as the information reasonably available to YOU permits.  If an Interrogatory cannot be answered completely, answer it to the extent possible.

26.    Whenever an Interrogatory may be answered by referring to a DOCUMENT, the DOCUMENT may be attached as an exhibit to the response and referred to in the response.  If the DOCUMENT has more than one page, refer to the page and section where the answer to the Interrogatory can be found.

27.    Each Interrogatory shall be construed independently and no Interrogatory shall be viewed as limiting the scope of any other Interrogatory.

28.    These Interrogatories impose a continuing obligation subsequent to YOUR initial responses to timely supplement YOUR responses if YOU determine that any response is incomplete or incorrect.

## II.

## <u>INTERROGATORIES</u>

### <u>Interrogatory No. 1</u>

IDENTIFY all PERSONS who received, handled, transported, or otherwise came into contact with the TIMELINE and STOLEN DOCUMENTS at WARNER'S studio located at 4000 Warner Boulevard, Burbank, California 91522.

### <u>Interrogatory No. 2</u>

IDENTIFY the PERSONS who received, handled, or otherwise came into contact with the TIMELINE and STOLEN DOCUMENTS at HORN'S office.

### <u>Interrogatory No. 3</u>

IDENTIFY the PERSONS who received, handled, or otherwise came into contact with the TIMELINE and STOLEN DOCUMENTS at CONNOLLY'S office.

### <u>Interrogatory No. 4</u>

IDENTIFY the PERSONS who received, handled, or otherwise came into contact with the TIMELINE and STOLEN DOCUMENTS at RABINOV'S office.

### <u>Interrogatory No. 5</u>

IDENTIFY the PERSONS who received, handled, or otherwise came into contact with the TIMELINE and STOLEN DOCUMENTS at SCHULMAN'S office

### <u>Interrogatory No. 6</u>

IDENTIFY the PERSONS who transported the TIMELINE and STOLEN DOCUMENTS from the offices of HORN, CONNOLLY and/or RABINOV to the office of SCHULMAN.

### <u>Interrogatory No. 7</u>

IDENTIFY all PERSONS working as support staff for and/or under HORN, CONNOLY, RABINOV or SCHULMAN between November 2005 to July 2006,

1   including, but not limited to, secretaries, assistants, personal assistants, administrative

2   assistants, executive assistants, and/or gofers.

3   **Interrogatory No. 8**

4       IDENTIFY all PERSONS employed between November 2005 to July 2006 in

5   the mailroom, mail center, or other similar mail department, office, or station,

6   responsible for receiving, sorting, logging, and/or distributing packages, envelopes

7   and other documents received by mail and other forms of delivery at WARNER'S

8   studio located at 4000 Warner Boulevard, Burbank, California 91522.

9   **Interrogatory No. 9**

10      DESCRIBE the procedures and protocols in effect between November 2005 to

11  July 2006 RELATING to receiving, sorting, logging, and transmitting packages,

12  envelopes, and other documents by mail and other forms of delivery at WARNER'S

13  studio located at 4000 Warner Boulevard, Burbank, California 91522.

14  **Interrogatory No. 10**

15      DESCRIBE the procedures and protocols in effect between November 2005 to

16  July 2006 RELATING to retaining the packaging, envelopes, or other enclosures,

17  received by mail or other forms of delivery at WARNER'S studio located at 4000

18  Warner Boulevard, Burbank, California 91522.

19  **Interrogatory No. 11**

20      IDENTIFY all private investigators YOU have hired, employed, used, or relied

21  on in connection with this case and/or the *SIEGEL* LITIGATIONS.

22  **Interrogatory No. 12**

23      DESCRIBE all efforts, whether successful or unsuccessful, YOU made to

24  retrieve the packaging enclosing the TIMELINE and STOLEN DOCUMENTS when

25  they arrived at WARNER'S studio located at 4000 Warner Boulevard, Burbank,

26  California 91522.

27  ///

28  ///

8
DEFENDANT MARC TOBEROFF'S FIRST SET OF INTERROGATORIES

**EXHIBIT D**
**19**

**Interrogatory No. 13**

DESCRIBE all efforts, whether successful or unsuccessful, YOU made to identify, locate, investigate, research, contact, and communicate with the PERSON who stole, took, or otherwise procured the STOLEN DOCUMENTS from TOBEROFF.

**Interrogatory No. 14**

DESCRIBE all COMMUNICATIONS between YOU and the PERSON who stole, took, or otherwise procured the STOLEN DOCUMENTS from TOBEROFF.

**Interrogatory No. 15**

DESCRIBE all efforts, whether successful or unsuccessful, YOU made to identify, locate, investigate, research, contact, and communicate with the PERSON who wrote, drafted, or otherwise authored the TIMELINE.

**Interrogatory No. 16**

DESCRIBE all COMMUNCATIONS between YOU and the PERSON who wrote, drafted, or otherwise authored the TIMELINE.

**Interrogatory No. 17**

DESCRIBE all efforts, whether successful or unsuccessful, YOU made to identify, locate, investigate, research, and communicate with the PERSON who caused the TIMELINE and STOLEN DOCUMENTS to be sent and/or delivered to WARNER.

**Interrogatory No. 18**

DESCRIBE all COMMUNICATIONS between YOU and the PERSON who caused the TIMELINE and STOLEN DOCUMENTS to be sent and/or delivered to WARNER.

**Interrogatory No. 19**

DESCRIBE all efforts, whether successful or unsuccessful, YOU made to identify, locate, investigate, research, contact, and communicate with DAVID MICHAELS.

9

DEFENDANT MARC TOBEROFF'S FIRST SET OF INTERROGATORIES

**Interrogatory No. 20**

DESCRIBE all COMMUNICATIONS between YOU and DAVID MICHAELS.

**Interrogatory No. 21**

DESCRIBE all efforts, whether successful or unsuccessful, YOU made to identify, locate, investigate, research, contact, and communicate with PERSONS formerly employed by TOBEROFF, including, but not limited to, the "7 attorneys [who purportedly] have come and gone at the Law Offices of Marc Toberoff," as alleged in the TIMELINE, at DOCKET 49, Ex. A at 68.

**Interrogatory No. 22**

DESCRIBE all COMMUNICATIONS between YOU and PERSONS formerly employed by TOBEROFF, including, but not limited to, the "7 attorneys [who purportedly] have come and gone at the Law Offices of Marc Toberoff," as alleged in the TIMELINE, at Docket 49, Ex. A at 68.

**Interrogatory No. 23**

DESCRIBE all efforts, whether successful or unsuccessful, YOU made to identify, locate, investigate, research, contact, and communicate with TOBEROFF CLIENTS.

**Interrogatory No. 24**

DESCRIBE all COMMUNICATIONS between YOU and TOBEROFF CLIENTS.

**Interrogatory No. 25**

Describe all ELECTRONIC SURVEILLANCE YOU have conducted in connection with this case and/or the *SIEGEL* LITIGATIONS.

///
///
///
///

Dated: Nov. 16, 2012          /s Keith Adams
                              Keith Adams
                              TOBEROFF & ASSOCIATES, P.C.

                              Attorneys for Defendants Mark Warren Peary, et al.

DEFENDANT MARC TOBEROFF'S FIRST SET OF INTERROGATORIES

**EXHIBIT D**
**22**

# EXHIBIT E

# O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| BEIJING | 1999 Avenue of the Stars, 7th Floor | SAN FRANCISCO |
| BRUSSELS | Los Angeles, California  90067-6035 | SHANGHAI |
| HONG KONG | | SILICON VALLEY |
| LONDON | TELEPHONE  (310) 553-6700 | SINGAPORE |
| LOS ANGELES | FACSIMILE  (310) 246-6779 | TOKYO |
| NEWPORT BEACH | www.omm.com | WASHINGTON, D.C. |
| NEW YORK | | |

December 6, 2012

OUR FILE NUMBER
905900-321

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6703

Keith Adams
Pablo Arredondo
Toberoff & Associates, P.C.
22631 Pacific Coast Highway #348
Malibu, CA 90265

WRITER'S E-MAIL ADDRESS
cseto@omm.com

Re:    *DC Comics v. Pacific Pictures Corp.*, Case No. CV-10-3633

Dear Keith and Pablo:

We write to follow up on our November 27 and 28 meet-and-confer talks concerning, *inter alia*, DC's responses to Mark Warren Peary's First Set of Interrogatories and Laura Siegel Larson's First Set of Requests for Production.  Although DC stands by its objections to this discovery (which DC set forth in its formal responses and in our letters and calls), in the interest of compromise and to avoid needless motion practice, DC has been working to address the questions and concerns you raised during our recent discussions.  Reserving all rights to object to defendants' use of the evidence sought (including, *e.g.*, on relevance grounds), DC agrees to serve amended responses and to produce responsive, non-privileged documents as discussed below.  As I told you in my November 28 email, the work DC is undertaking involves a significant amount of time and expense.  Much of this work is work that defendants should, if ever, have asked DC to do many months ago, and certainly before the Court granted DC summary judgment on its First and Third Claims and certified those claims for appeal.  As I also mentioned in my email, we have concerns that defendants intend to press ahead with motion practice no matter what information DC provides.  We hope that concern is unfounded, but if it proves to be the case, DC reserves all rights to seek its fees and costs for the work it is undertaking.  DC has some materials to produce to you today, but needs your agreement that documents it marks as "Confidential" will be treated as such under the terms of the protective order in *Siegel*.  Additional documents will be provided on a rolling basis, and we will need your agreement as well concerning the "Confidential" marking of certain of those documents.

O'MELVENY & MYERS LLP

December 6, 2012, Page 2

## I.      DC'S RESPONSES TO PEARY'S INTERROGATORIES

Interrogatory Nos. 1-4.  These interrogatories ask DC to identify communications with the Shuster family.  These interrogatories were overbroad to begin with, but you told us before they were focused in many respects on the 1992 Agreement, which the Court validated in its summary judgment order.  These requests are thus, for the most part, mooted by the Court's order.  Moreover, while, as you know, defendants did not challenge the adequacy of DC's initial responses, DC identified additional correspondence that may be responsive to these requests—all of which has been previously produced and cited in connection with the parties' recent summary-judgment briefing.  DC will serve amended responses listing this additional correspondence.  If the additional document searches DC offers to do below yield any additional correspondence, we will further amend, as need be.

Interrogatory No. 5.  Defendants challenge DC's response to Interrogatory No. 5, which asks DC to "IDENTIFY all COMMUNICATIONS between YOU AND any third-party that REFERRED TO the 1992 AGREEMENT."  As noted in DC's objections and discussed during our November 27 call, this request is overbroad, unduly burdensome, and needs to be limited in scope.  Indeed, Magistrate Zarefsky rightly criticized this interrogatory—and others like it—on the grounds that "requests that seek 'all' or 'any,' especially on as elastic a term as 'communications' (and there are many similar terms), when they contain little or no limiting language—as to subject and time—necessarily invite objections" and "will never produce the required information without a great deal of time, effort, expense and anguish."  DN 467 at 2.

During our November 27 call, you discussed possibly limiting Interrogatory No. 5 to third-party communications involving DC and Warner Bros.' "business and legal affairs" and "consumer products" departments.  DC and Warner Bros. have hundreds of employees who serve business affairs, legal affairs, or consumer products functions—the vast majority of whom have no knowledge whatsoever (and no reason to have knowledge) of the 1992 Agreement.  It would be overly burdensome to search all of these employees for relevant communications.

DC has already collected and reviewed documents from the custodians most likely to have such communications, including (but not limited to) those identified *infra*, Part III.  In the interest of compromise, however, and if defendants withdraw their (baseless) threat to file a motion, DC is also willing to:

- run additional searches in the E-Docs library used by Warner Bros. Entertainment "Corporate Legal";

- run additional searches in the E-Docs library used by DC Comics "Business & Legal Affairs";

- run additional searches in the E-Docs library used by Warner Bros. Pictures "Business & Legal Affairs";

O'MELVENY & MYERS LLP
December 6, 2012, Page 3

- run additional searches in the E-Docs library used by Warner Bros. Television "Business Affairs";

- run additional searches in the E-Docs library used by Warner Bros. Television "Legal Affairs";

- search relevant hard-copy documents in the custody of Steven Spira (Warner Bros. Pictures);

- search relevant hard-copy documents in the custody of Damon Bonesteel (Warner Bros. Entertainment);

- search relevant hard-copy documents in the custody of Ana de Castro (Warner Bros. Consumer Products);

- search relevant hard-copy documents in the custody of Amy Genkins (DC Entertainment);

- search relevant hard-copy documents in the custody of Alex McAuley (Warner Bros. Consumer Products, Europe); and

- search relevant hard-copy documents in the custody of Maria Tinoco (Warner Bros. Consumer Products).

If these searches yield any responsive, non-privileged documents that have not already been produced (and we have no assurances that they will), DC will identify the communications in its amended interrogatory responses and produce the documents as well.

Interrogatory Nos. 9-12.  These interrogatories ask DC to identify evidence in support of specific allegations in its First Claim for Relief.  As defendants know, judgment was granted in DC's favor on this claim, DN 507 at 5-13, and defendants are not entitled to seek further discovery on it and these interrogatories are moot, *see Brashear v. Clark*, 2009 WL 37313653, at *1 (E.D. Cal. Nov. 5, 2009) (where a "discovery request is directed toward evidence that relates to a [claim] that has been dismissed by the Court … there is no perceived need for the evidence"); *U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002) (appropriate to deny requests for "additional discovery … made after summary judgment was issued"); *cf. Goodman v. New Horizons Cmty. Serv. Bd.*, 2006 WL 940646, at *3 (11th Cir. Apr. 12, 2006) ("[T]o the extent that Goodman's motion for sanctions sought a discovery order or matter at trial, the dismissal of Goodman's case renders it moot.").

Defendants' argument (set forth in your letter of November 19) that these interrogatories are relevant to DC's Fourth, Fifth, and Sixth Claims because they *could* lead to the discovery of evidence concerning DC's *damages* is not convincing.  None of these interrogatories is directed to the question of damages.  To take just one example, Interrogatory No. 9 asks:  "IDENTIFY any evidence that supports YOUR contention that '[t]he Termination Notice is invalid, and

**EXHIBIT E**
25

O'MELVENY & MYERS LLP
December 6, 2012, Page 4

ineffective,' found in paragraph 106 of YOUR COMPLAINT." This interrogatory *only* relates to the validity of the Shusters' termination notice—a question which has now been fully and finally adjudicated in DC's favor. DN 507 at 5-13. As defendants drafted it, the interrogatory calls for no information concerning the nature or amount of damages DC seeks on its state-law claims. Even so, and as a proposed compromise, DC is willing to provide additional information concerning its damages allegations in its amended responses and produce relevant related documents, although such damages issues may ultimately be an expert-witness question.

Interrogatory Nos. 13-15. These interrogatories ask DC to identify evidence in support of specific allegations in its Third Claim for Relief. As explained above, these interrogatories are moot in light of the Court's summary judgment ruling granting judgment in DC's favor on its Third Claim. DN 507 at 16-17.

Defendants claim these interrogatories may still be relevant to DC's Fourth, Fifth, and Sixth Claims because they implicate DC's allegations about defendants' consent agreements, Superboy fraud, and various conflicts of interest. We disagree, but to moot this issue, DC is willing to amend its answers to identify evidence in support of these allegations—much of it, as you know, was addressed and briefed in the parties' cross-motions for summary judgment.

## II.    DC'S RESPONSES TO LARSON'S REQUESTS FOR PRODUCTION

Requests re: DC's Receipt and Handling of the Toberoff Timeline (Nos. 3-27, 32-65, 88). Such documents have no relevance to any claim or defense in this litigation. *Cf.* FED. R. CIV. P. 26(b)(1) (party only has right to discover materials "relevant to any party's claim or defense"). During our meet-and-confer discussions, Pablo said that such documents *may* reveal relevant information and the Federal Rules establish a "liberal" discovery standard, but "the standard of relevancy is not so liberal as to allow a party to ... explore matter which does not presently appear germane on the theory that it might conceivably become so." *Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union, AFL–CIO–CLC*, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997); *see also Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 187 (1st Cir. 1989).

Keith then made the argument—for the first time in the parties' many discussions on this topic—that the timing of DC's receipt of the Timeline could be relevant to defendants' statute-of-limitations arguments. This makes no sense, either; neither DC nor its counsel had access to the Timeline until it was produced in December 2008, so any applicable statute of limitations would be tolled until 2008. *See* DN 334 at 17, 20-21, 22-23, 25; Ninth Circuit Appeal No. 11-56934, DN 33 at 54-57; Mar. 26, 2007, Smith Decl. ¶ 13 (confirming "we have not shared the contents of the [Timeline or attached documents] with any of the outside counsel representing the Defendants in this action, nor have we used the contents of the documents in the litigation."). Moreover, under defendants' statute-of-limitations argument (which is specious, to be clear), DC's state-law claims are allegedly untimely whether Warner Bros. received the Timeline materials in June 2006 (the position defendants have briefed to the District Court and Ninth Circuit, *e.g.*, Appeal No. 11-56934, DN 8 at 49), or six or more months earlier as defendants at other times (baselessly) assert, *e.g.*, DN 160 at 76 n.28; Case No. CV-04-8400, DN 476 at 58-59. Thus, this discovery is not relevant or needed to address any properly contested issue in the case.

O'MELVENY & MYERS LLP
December 6, 2012, Page 5

Rather, as we have previously reminded defendants, Wayne Smith's March 26, 2007, declaration in *Siegel* sets forth the precise circumstances of DC's receipt and handling of the Timeline documents, and Judge Zarefsky rightly noted (over defendants' arguments to the contrary that Warner Bros. had received the Timeline documents six months earlier, Case No. CV-04-8400, Docket Nos. 107 at 36-39; 177 at 9:2-10:11, 13:15-17:21), that Mr. Smith "acted professionally" and "reasonably" in briefly reviewing the Timeline documents in June 2006 and immediately turning them over to Arnold & Porter. Case No. CV 04-8400, DN 108; 177 at 19:3-7. Defendants waived any right to challenge this finding as Judge Larson held, *id.*, DN 374 at 4-5, and they certainly cannot re-litigate this issue in this related case, when it has no relevance to any claim or defense. To moot the issue once and for all, however, we again confirm that the first documents in DC's files concerning the Timeline are dated June 28, 2006—the day the Timeline was received.[1] Those documents are described in paragraphs 5-6 of Mr. Smith's declaration: the *On the Receiving End* article by Kurt L. Schmalz posted on the Los Angeles County Bar Association website and the three principal California cases it identifies: *Aerojet-Gen. Corp. v. Transp. Indem. Ins.*, 18 Cal. App. 4th 996 (1993), *State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644 (1999), and *Rico v. Mitsubishi Motors Corp.*, 116 Cal. App. 4th 51 (2004). To further moot this issue, DC is willing to produce John Quinn's July 5, 2006, letter to counsel in *Siegel* confirming that the Timeline documents were "delivered to the Warner Bros. offices during the middle of last week"—*i.e.*, June 28, 2006. There were no earlier written communications between DC and Arnold & Porter since, as described in Mr. Smith's declaration, all three sets of the Timeline documents "were handed over to Mr. Quinn" in person on June 30, 2006. Mar. 26, 2007, Smith Dec. ¶ 13. Mr. Quinn sent his letter the next business day after the holiday weekend—July 5. To the extent defendants want further confirmation of when and how DC received the Timeline, they should depose David Michaels, whom defendants have identified as the Timeline author. Toberoff's Jan. 24, 2011 Interrog. Resps., Resp. No. 1.

DC is also willing to produce its communications with Mr. Michaels if and when defendants do the same. Before the parties can reach compromise on this and many other subjects, however, there must be reciprocity—defendants cannot demand that DC produce documents involving third parties that defendants themselves continue to withhold. Nor is there any legitimate basis for defendants to assert privilege over communications with Mr. Michaels after he left Toberoff & Associates—especially given that defendants accused him of committing crimes by stealing privileged documents, "falsely disparaging" Mr. Toberoff, and attempting to "steal" his clients, *see* Toberoff's Jan. 24, 2011, Interrog. Resps., Resp. No. 4, and also reported Mr. Michaels' alleged crimes to the FBI and U.S. Attorney's Office, but now backtrack from certain of those allegations, *see id.*, Resp. 5. Please let us know if you agree to a reciprocal exchange of communications with Mr. Michaels.

Request re: Other Interference Claims by DC and Warner Bros. (No. 29). While defendants have failed to articulate any legitimate theory of relevance for these documents, and

---

[1] We note that this day may well have been specially chosen by the Timeline author, since *Superman Returns* was released on June 28, 2006. *See* Internet Movie Database, Superman Returns, http://www.imdb.com/title/tt0348150/.

O'MELVENY & MYERS LLP
December 6, 2012, Page 6

while it would be equally burdensome for defendants to locate these publicly available documents, in the interest of compromise, we propose producing any documents we are able to find after conducting a reasonable search with the limitations Keith proposed: complaints or counterclaims involving claims for tortious interference with prospective economic advantage or tortious interference with contract filed by DC Comics or Warner Bros. Entertainment Inc. in the United States between 2000 and the present.

Request re: Documents Referring to *Siegel* or *Pacific Pictures* Litigation (No. 30). Keith offered to limit this request to communications with third-parties concerning the *Siegel* or *Pacific Pictures* cases and internal analyses concerning the effect of these cases on DC's business. Even as narrowed, this request is grossly overbroad, unduly burdensome, and very directly calls for privileged information. Keith explained that this request is intended to target documents relevant to DC's damages allegations. As noted above, DC is willing to produce documents on this topic, including licensing contracts that end prematurely in 2013—to DC's detriment.

Request re: Minutes of Board Meetings or Director Resolutions (No. 31). Keith agreed to limit this request to minutes of Board of Directors meetings or resolutions of DC Comics, Warner Bros. Entertainment Inc., and Time Warner concerning the *Siegel* or *Pacific Pictures* lawsuits. As a compromise, and not conceding the relevance or discoverability of this material, DC proposes conducting a search for such documents and producing any non-privileged, responsive materials.

Requests re: Documents Sufficient to Show When O'Melveny Was Retained (Nos. 66-69). Pablo said the timing of O'Melveny & Myers' retention is relevant to when its counsel had access to a discovery database from prior counsel. DC disputes the relevance of these documents, all of which are almost certainly privileged, but in any event, defendants have asserted they know when O'Melveny was retained in this case. DN 530 at 5 ("DC terminated its prior counsel, and retained its current counsel, in **February 2010**") (emphasis in original), DN 533 (denying defendants' motion). These requests are therefore moot.

Request re: Private Investigator (No. 83). These requests are not directed to any relevant subject matter—indeed, defendants have objected to similar discovery requests concerning defendants' investigative efforts on the ground that they were "not relevant to any of the claims for relief in this action." *See, e.g.*, Toberoff's Jan. 24, 2011, Interrog. Resp., Resp. No. 3; Toberoff's Jan. 24, 2011, Resp. & Objections to DC's Reqs. for Prod., Resp. No. 19. In the spirit of compromise, however, DC can confirm that it retained Kroll Associates, Inc. in May 2010 to work under the direction of its attorneys in connection with this litigation. All of Kroll's very limited work was performed at the direction of DC's attorneys for purposes of this litigation and is therefore work product or privileged. Defendants have refused to produce any documents relating to their investigative efforts on the basis of privilege. *E.g.*, Toberoff's Jan. 24, 2011, Resp. & Objections to DC's Reqs. for Prod., Resp. No. 19. It is inconsistent for defendants to now insist that DC produce the same type of documents. DC is willing to consider producing certain documents on this topic if defendants will do the same.

O'MELVENY & MYERS LLP

December 6, 2012, Page 7

     <u>Requests re: Communications with Public Relations Entities (Nos. 84-97)</u>.  These requests are not directed to any relevant subject matter, and defendants have been unable to identify a legitimate theory of relevance.  Keith said these requests "track" DC's, but we have never served such requests in this case.  Keith also claimed that DC's statements to third-party "PR" entities could be relevant to DC's damages allegations. DC disputes the relevance of these requests, but has already agreed to produce documents on the topic of damages.  *See supra*.

     <u>Request re: All Communications re: Toberoff (No. 89)</u>.  Not only are such documents entirely irrelevant to this action, defendants' request is grossly overbroad—indeed, defendants have vigorously—and successfully—objected to requests by DC seeking "All" communications, *e.g.*, DN 262 at 5 (accepting defendants' narrowing proposal for "All DOCUMENTS RELATING to any COMMUNICATIONS with Ari Emanuel.").  Magistrate Zarefsky has warned defendants that "requests that seek 'all' or 'any,' especially on as elastic a term as "communications" (and there are many similar terms), when they contain little or no limiting language—as to subject and time—necessarily invite objections," DN 467 at 2.  As we have pointed out, Mr. Toberoff has had many dealings with DC and Warner Bros. totally unrelated to this litigation (*e.g.*, the Skyport, Gilligan's Island, Dukes of Hazzard, Wild Wild West, and Argo matters, to name a few), and this request would sweep in any and all communications in connection with these irrelevant matters.

     DC remains willing to consider a reasonable compromise proposal, but defendants will have to substantially narrow the scope of this request and be willing to produce similar sets of documents concerning DC and its counsel.

     <u>Requests re: Communications with the Siegels and Various Third Parties (Nos. 70-82)</u>. Defendants' requests for all communications with Joanne Siegel, Laura Siegel Larson, Dennis Larson, and Michael Siegel are plainly overbroad.  Even so, DC proposes conducting a reasonable search for such communications that have not already been produced, and producing responsive documents (if any).

     As to defendants' requests for all communications with third parties Josh Ryland, Don Bulson, Renner Otto, Susan Allison, Kevin Marks, Bruce Ramer, Gang Tyre, Ari Emanuel, and William Morris Endeavor, defendants have never shared their theory of relevance for such documents, or given any justification for asking DC to undertake the burden of locating all such communications.  Indeed, defendants have themselves refused to produce the very same documents, and cannot demand that DC do what they will not.  DC is willing to consider searching for and producing such documents if and when defendants do the same.

     <u>Requests re: Evidence in Support of DC's Allegations (Nos. 90-125)</u>.  Request Nos. 94-96, which request evidence in support of DC's work-for-hire allegations, are moot in light of the Court's summary judgment order.  Moreover, given the breadth of these requests—*e.g.*, "All DOCUMENTS" showing that as a result of "70-plus years of character and story development by some of the most creative and talented minds in the comic-book, radio, television, and motion-picture industries—Superman has remained constantly in the public's eye and has become one of the most famous and beloved fictional characters in the world," Request No. 94—

**EXHIBIT E**
**29**

O'MELVENY & MYERS LLP
December 6, 2012, Page 8

it would not only be pointless, but unduly burdensome for DC to produce all responsive documents.  While the remaining requests (Nos. 90-93, 97-125) are also overbroad, DC is willing to conduct a reasonable search and produce any responsive documents that have not previously been produced (if any).

### III.    DC'S RESPONSES TO DEFENDANTS' QUESTIONS RAISED DURING MEET-AND-CONFER DISCUSSIONS

The many questions you raised about DC and Warner Bros.' prior discovery efforts are improper and misplaced.  DC has fully complied with the discovery rules, and defendants never suggested otherwise—or asked for details about our discovery processes—until after DC told defendants it would file a sanctions motion based on defendants' discovery misconduct. Defendants' concocted challenges to DC's discovery are now moot, in any event, given that the Court denied defendants' baseless motion to vacate its summary judgment order, which recognized defendants' true motivation for filing the motion to vacate—to distract from DC's sanctions motion, DN 533 at 2 ("Not to be outdone [by DC's sanctions motion], Defendants move to Vacate….")—and rightly observed that "Defendants never requested a Rule 56(d) continuance to obtain evidence or otherwise complete discovery," *id.*, as they certainly would have if they truly believed that DC had belatedly produced relevant documents.  As defendants have argued that the record on appeal cannot be expanded to include recent discovery, we are unclear whether and why defendants continue to press for this information.

However, to avoid further burdening the parties and Court with unnecessary motion practice—and without agreeing that defendants are entitled to such information, confirming the relevance of such information, or waiving any applicable privilege—DC provides the following answers to defendants' specific questions:

Organizational Charts.  Pablo asked for organizational charts listing the various DC and Warner Bros. entities.  DC will produce—subject to defendants' agreement to maintain its confidentiality—the most recent version of Time Warner Inc.'s Corporate Structure Book.

"IT Topography."  Pablo asked whether DC and Warner Bros.' electronic files are maintained in a single database or on a computer-by-computer basis.  There is no comprehensive database for DC and Warner Bros.' electronic files.  However, DC and Warner Bros. legal and business affairs employees have access to a document management system called "E-Docs DM 5.3," on which certain agreements and other related documents are stored.  Otherwise, electronic files are generally maintained on a computer-by-computer basis.

Head of IT.  Pablo asked for the name of the person in charge of DC and Warner Bros.' IT departments.  James Halsey is the Chief Information Officer for Warner Bros., which provides MIS services to DC Comics under a shared services arrangement.

DC's Discovery Efforts.  Documents were collected and reviewed from key custodians (or, if departed, from their files) at DC and Warner Bros., including, for example:

O'MELVENY & MYERS LLP
December 6, 2012, Page 9

- Patrick Caldon (DC Comics)

- Lillian Laserson (DC Comics)

- Paul Levitz (DC Comics)

- Ina Borck (Warner Bros.)

- David Camp (Warner Bros.)

- Steve Chalk (Warner Bros.)

- Don Chestnutt (Warner Bros.)

- Damian Coleman (Warner Bros.)

- Nina de Guzman (Warner Bros.)

- Mark Devitre (Warner Bros.)

- Amie Doft (Warner Bros.)

- Karen Fouts (Warner Bros.)

- Barbara Galbo (Warner Bros.)

- Nairi Gardiner (Warner Bros.)

- Julie Hanif (Warner Bros.)

- Reginald Harpur (Warner Bros.)

- Vince Heileson (Warner Bros.)

- Darryl Hendrix (Warner Bros.)

- David Kaplan (Warner Bros.)

- Keith Kelley (Warner Bros.)

- Brinda Kempton (Warner Bros.)

- Pam Kirsh (Warner Bros.)

- Danielle Knight (Warner Bros.)

EXHIBIT E
31

O'MELVENY & MYERS LLP
December 6, 2012, Page 10

- Steve Langenthal (Warner Bros.)

- Andy Lewis (Warner Bros.)

- Francis McDonnell (Warner Bros.)

- Joelle Mitchell (Warner Bros.)

- Brian Ober (Warner Bros.)

- Don Putrimas (Warner Bros.)

- Paul Roque (Warner Bros.)

- Eric Sakai (Warner Bros.)

- Larry Schneider (Warner Bros.)

- John Schulman (Warner Bros.)

- Christina Smith (Warner Bros.)

- Wayne Smith (Warner Bros.)

- Steve Southgate (Warner Bros.)

- Michael Steuerwald (Warner Bros.)

- Ron Sunderland (Warner Bros.)

- Nancy Wang (Warner Bros.)

- Teresa Wayne (Warner Bros.)

- Frank Wells (Warner Bros.)

- Keith Zajic (Warner Bros.)

As set forth above, we have offered to expand our search and review even further.

Bonesteel and Josephson Documents.  Pablo asked whether the affidavit by Damon Bonesteel filed with the Centre National de la Cinematographie in France and the letter by Donna Josephson submitted to the Canadian Audio-Visual Certification Office are the only documents of their kind, and suggested that since *Superman Returns* was released in many countries, there should be many more such documents.  To begin, this question is irrelevant,

EXHIBIT E
32

O'MELVENY & MYERS LLP
December 6, 2012, Page 11

since these issues have been fully ventilated in multiple sets of briefing—including, most recently, the briefing on defendants' motion to vacate the October 17, 2012, summary judgment ruling.  In any event, we can confirm that the Bonesteel and Josephson documents are the only such documents we have been able to locate.  This is not surprising, since as we explained to you during our November 27 call, these documents were prepared based on specific requirements by the French and Canadian authorities.  Nonetheless, we are willing to run additional searches for related documents and to produce any responsive, non-privileged documents we find (if any).

*     *     *

DC will serve amended responses and begin making a supplemental document production as soon as we can get your agreement on the protective order issue noted above.  We are investing a substantial amount of time and resources to these efforts, and remind you that we need to close the loop on these issues before taking any next steps, including filing any motion with the courts.  It is our hope that we can resolve these matters without needless motion practice.

All of DC's rights are reserved.

Very truly yours,

/s/ Cassandra L. Seto

Cassandra L. Seto
for O'MELVENY & MYERS LLP

OMM_US:71151416

**EXHIBIT E**
**33**

# EXHIBIT F

| | |
|---|---|
| **From:** | David Harris <dharris@ipwla.com> |
| **Sent:** | Friday, December 07, 2012 7:37 PM |
| **To:** | Seto, Cassandra |
| **Cc:** | Petrocelli, Daniel; Kline, Matthew; Lens, Molly; Tokoro, Jason; Pearson, Ashley; Marc Toberoff; Keith Adams; Pablo Arredondo |
| **Subject:** | DC v. PPC |

Counsel,

Please see below the correspondence sent on behalf of Keith Adams.

\*          \*          \*

Cassie:

I write in partial response to your December 6, 2010 letter.  That letter stated that "DC has some materials to produce to you today, but needs your agreement that documents it marks as 'Confidential' will be treated as such under the terms of the protective order in *Siegel*."  Defendants agree.

All of Defendants' rights and arguments are reserved.

Keith Adams

David Harris
Toberoff & Associates, P.C.
22337 Pacific Coast Highway, #348
Malibu, California 90256
(t) 310.246.3333
(f) 310.246.3101
----------------------
This message and any attached documents may contain information from Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

# EXHIBIT G

| | |
|---|---|
| **From:** | Tokoro, Jason |
| **Sent:** | Friday, December 07, 2012 8:16 PM |
| **To:** | David Harris |
| **Cc:** | Petrocelli, Daniel; Kline, Matthew; Seto, Cassandra; Lens, Molly; Pearson, Ashley; Marc Toberoff; Keith Adams; Pablo Arredondo |
| **Subject:** | RE: DC v. PPC |
| **Attachments:** | DC 00172-311 Corp Structure as of 063009.pdf |

Counsel,

Please see the attached production of documents by DC Comics.

Best and thanks,

Jason

**From:** David Harris [mailto:dharris@ipwla.com]
**Sent:** Friday, December 07, 2012 7:37 PM
**To:** Seto, Cassandra
**Cc:** Petrocelli, Daniel; Kline, Matthew; Lens, Molly; Tokoro, Jason; Pearson, Ashley; Marc Toberoff; Keith Adams; Pablo Arredondo
**Subject:** DC v. PPC

Counsel,

Please see below the correspondence sent on behalf of Keith Adams.

*          *          *

Cassie:

I write in partial response to your December 6, 2010 letter.  That letter stated that "DC has some materials to produce to you today, but needs your agreement that documents it marks as 'Confidential' will be treated as such under the terms of the protective order in *Siegel*."  Defendants agree.

All of Defendants' rights and arguments are reserved.

Keith Adams

David Harris
Toberoff & Associates, P.C.
22337 Pacific Coast Highway, #348
Malibu, California 90256
(t) 310.246.3333
(f) 310.246.3101
---------------------
This message and any attached documents may contain information from Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

1
**EXHIBIT G**
**35**