DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

Attorneys for Plaintiff DC Comics

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>　　　　Defendants. | Case No. CV 10-03633 ODW (RZx)<br><br>**DISCOVERY MATTER**<br><br>**DC COMICS' REPLY IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER**<br><br>**DECLARATION OF CASSANDRA SETO FILED CONCURRENTLY HEREWITH**<br><br>**Judge:**　　Hon. Otis D. Wright II<br>**Magistrate:**　Hon. Ralph Zarefsky<br><br>**Hearing Date**:　Jan. 7, 2013<br>**Hearing Time**:　10:00 a.m.<br>**Courtroom**:　540<br>**Discovery Cutoff:**　None Set<br>**Pretrial Conference:**　None Set<br>**Trial:**　None Set |

DC'S REPLY ISO MOT.
FOR PROTECTIVE ORDER

# TABLE OF CONTENTS

I. There Is Good Cause To Issue DC's Proposed Protective Order .................... 1

II. DC Has Not Waived Any Privilege ................................................................. 8

III. If The Court Does Not Issue DC's Proposed Protective Order, It Should Allow Categorical Logging ............................................................... 11

IV. Conclusion ..................................................................................................... 12

# **TABLE OF AUTHORITIES**

**CASES**

*Best Buy Stores, L.P. v. Manteca Lifestyle Ctr., LLC*,
  2011 WL 2433655 (E.D. Cal. June 14, 2011) ....................................................... 9

*Bethea v. Merch. Comm'l Bank*,
  2012 WL 5359536 (D.V.I. Oct. 31, 2012) ........................................................... 11

*Brittain v. Stroh Brewery Co.*,
  136 F.R.D. 408 (M.D.N.C. 1991) ..................................................................... 3, 4

*Bullion Monarch Mining, Inc. v. Newmont USA Ltd.*,
  271 F.R.D. 643 (D. Nev. 2010) ........................................................................ 4, 10

*Burch v. Regents of Univ. of Cal.*,
  2005 WL 6377313 (E.D. Cal. Aug. 30, 2005) ..................................................... 10

*Burlington N. & Santa Fe Ry. Co v. U.S. Dist. Ct.*,
  408 F.3d 1142 (9th Cir. 2005) ................................................................... 9, 10, 11

*Caliper Techs. Corp. v. Molecular Devices Corp.*,
  213 F.R.D. 555 (N.D. Cal. 2003) ........................................................................ 11

*Carl Zeiss Vision Intern. Gmbh v. Signet Armorlite Inc.*,
  2009 WL 4642388 (S.D. Cal. Dec. 1, 2009) ....................................................... 10

*Duling v. Gristede's Operating Corp.*,
  266 F.R.D. 66 (S.D.N.Y. 2010) ............................................................................ 2

*Eli Lilly & Co. v. Valeant Pharm. Int'l*,
  2011 WL 691982 (S.D. Ind. Feb. 15, 2011) .......................................................... 1

*Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.*,
  2007 WL 1726558 (D. Nev. June 11, 2007) ............................................. 1, 11, 12

*Gulf Oil Co. v Bernard*,
  452 U.S. 89 (1981) ................................................................................................ 2

*In re Imperial*,
  174 F.R.D. 475 (S.D. Cal. 1997) ................................................................... 1, 11

*In re Motor*,
  2009 WL 959491 (D. Kan. Apr. 3, 2009) ................................................. 1, 11, 12

*In re Pacific Pictures Corp.*,
  679 F.3d 1121 (9th Cir. 2012) ........................................................................... 2, 9

*Jadwin v. County of Kern*,
  2008 WL 2025093 (E.D. Cal. May 9, 2008) ........................................................ 9

*Lenz v. Universal Music Corp.*,
  2009 WL 3573990 (N.D. Cal. Oct. 30, 2009) ...................................................... 10

*Mansourian v. Bd. of Regents of Univ. of Cal.*,
  2007 WL 4170819 (E.D. Cal. Nov. 19, 2007) .................................................... 10

*Maxey v. Gen. Motors Corp.*,
  1996 WL 692222 (N.D. Miss. Nov. 18, 1996) ...................................................... 4

*SEC v. Thrasher*,
  1996 WL 125661 (S.D.N.Y. Mar. 20, 1996) ....................................................... 11

*Seminara v. City of Long Beach*,
  1995 WL 598097 (9th Cir. Oct. 6, 1995) .......................................................... 3, 4

*Skellerup Indus. v. City of Los Angeles*,
  163 F.R.D. 598 (C.D. Cal. 1995) .......................................................................... 2

*St. John v. Napolitano*,
  274 F.R.D. 12 (D.D.C. 2011) .............................................................................. 12

*Truckstop.Net, LLC v. Sprint Commc'ns Co., L.P.*,
  2008 WL 2357008 (D. Idaho June 6, 2008) ....................................................... 10

*U.S. v. IBM, Inc.*,
  70 F.R.D. 700 (S.D.N.Y. 1976) ............................................................................ 4

*U.S. v. Panhandle E. Corp.*,
  118 F.R.D. 346 (D. Del. 1988) ............................................................................. 4

*U.S. v. Rowe*,
  96 F.3d 1294 (9th Cir. 1996) ................................................................................ 7

*Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*,
  230 F.R.D. 688 (M.D. Fla. 2005) ....................................................................... 10

*USF Ins. Co. v. Smith's Food & Drug Ctr., Inc.*,
  2011 WL 2457655 (D. Nev. June 16, 2011) ........................................................ 9

*Wang v. Hsu*,
  919 F.2d 130 (10th Cir. 1990) .............................................................................. 4

**RULES**

FED. R. CIV. P. 26 ............................................................................................. *passim*

Defendants' opposition offers *no* justification for imposing the undue burden on DC of having to log tens of thousands of clearly privileged, internal litigation documents, and instead raises, for the first time, speculative, untrue claims about what documents DC *might* possess—concerns that could have been mooted if defendants properly met and conferred about DC's proposed protective order, rather than rejecting it out of hand. Defendants, moreover, completely ignore Toberoff's express assurances in 2010 that defendants would negotiate a bilateral privilege-log stipulation excusing DC from logging these very documents. These prior promises undermine each of defendants' arguments—from their insistence on such logging now, to their half-hearted suggestion that a waiver somehow *might* have occurred. DC's motion should be granted, and the protective order it seeks should issue.

## I. There Is Good Cause To Issue DC's Proposed Protective Order.

As set forth in DC's motion, Mot. 10-11, the discovery rules make clear there is "good cause" to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). Indeed, a court "*must* limit the frequency or extent of discovery … if it determines that the *burden or expense* of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(2)(C)(iii) (emphasis added). Requiring DC to log tens of thousands of unquestionably privileged documents created after the *Siegel* litigation commenced would be unduly burdensome, tremendously expensive, and yield no real benefit. *Cf. In re Motor*, 2009 WL 959491, at *3 (D. Kan. Apr. 3, 2009) ("individually logging thousands of privileged attorney communications would be immensely burdensome and have little, if any, benefit"); *In re Imperial*, 174 F.R.D. 475, 479 (S.D. Cal. 1997) ("unreasonable and overly burdensome" to "force the creation of a document-by-document privilege log" where documents clearly privileged); *Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.*, 2007 WL 1726558, at *8 (D. Nev. June 11, 2007) ("unduly burdensome" to log "hundreds or thousands" of privileged emails); *Eli Lilly & Co. v. Valeant Pharm. Int'l*, 2011 WL

1  691982, at *2 (S.D. Ind. Feb. 15, 2011) (unduly burdensome to log privileged
2  documents with marginal relevance).

3  As explained in the declaration of Wayne Smith—the in-house counsel at
4  Warner Bros. who has supervised the Superman litigation since 2004—reviewing
5  and logging the more than 36,000 electronic files and 18 linear feet of paper files *in*
6  *his possession alone* would require some 1,400 attorney hours and cost some
7  $700,000. Smith Decl. ¶ 3.[1] This does not include the substantial time and expense
8  required to log the privileged documents in other custodians' files—including other
9  in-house counsel at Warner Bros. and DC, two sets of outside counsel in *Siegel*, and
10 outside counsel in this *Pacific Pictures* case. *Id.* ¶ 4.

11 Defendants dismiss Mr. Smith's testimony as "purposefully vague and
12 hyped-up." Opp. 16. It is neither. He detailed the approximate number of e-mails
13 (30,000, excluding attachments), electronic documents (6,000), and hard-copy files
14 (18 feet) relating to *Siegel* and *Pacific Pictures* cases; estimates the attorney hours
15 (400) and cost ($200,000) required to review these materials; and estimates the
16 attorney hours (1,000) and cost ($500,000) required to log them. Smith Decl. ¶ 3.
17 This goes far beyond the "particular and specific demonstration of fact, as
18 distinguished from stereotyped and conclusory statements," required to show good
19 cause for a protective order. *Gulf Oil Co. v Bernard*, 452 U.S. 89, 102 n.16 (1981);
20 *see Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 73 (S.D.N.Y. 2010); *cf.*
21 *Skellerup Indus. v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995).

---

[1] Defendants' claim that Mr. Smith could "readily screen" his files by "using targeted search terms and keywords," Opp. 16, ignores that their sweepingly overbroad discovery requests would require a search of the vast majority, if not *all*, of Mr. Smith's files-all of which are related to this case and *Siegel*. *E.g.*, Kline Decl. Ex. 15 at 146 (Larson Request No. 30) ("All DOCUMENTS REFERRING TO this case and/or the *Siegel* Litigations…."); *id.* at 209 (Larson Request No. 89) ("All COMMUNICATIONS between YOU and any person or entity REGARDING Marc Toberoff."); Adams Decl. Ex. I at 67 (Peary Request No. 10) ("All DOCUMENTS that REFER to the SHUSTER TERMINATION."). It also ignores that defendants now object to DC's targeted search methods. *E.g.*, DN 514.

1    Defendants offer no justification for requiring DC to undertake the undue
2    burden and expense of logging these documents—and there is none:

3    <u>A.  DC's motion is timely.</u>  Defendants admit that Rule 26 "does not set
4    limits within which a motion for protective order must be made," and requires only
5    that "the motion be timely, or seasonable."  Opp. 8 (quoting *Seminara v. City of*
6    *Long Beach*, 1995 WL 598097, at *4 (9th Cir. Oct. 6, 1995)).  DC's motion is
7    timely and seasonable—and any delay was of defendants' own creation.

8    As defendants know, DC has been seeking to negotiate the protective order it
9    now asks this Court to enter for over two years.  Mot. 2-9.  DC sought to include a
10   provision in the parties' 2010 "placeholder" stipulation that would relieve DC of
11   the burden and expense of logging internal attorney documents—the same courtesy
12   DC extended to defendants.  Kline Decl. Ex. 4 at 20.  Defendants said this
13   provision was premature because they had not yet served any discovery on DC, but
14   promised to negotiate a "full-fledged logging agreement" later.  *Id.* Exs. 5 at 37, 6
15   at 43.  After defendants finally served discovery requests in late 2011, DC made
16   clear—in formal discovery responses and multiple meet-and-confer exchanges—
17   that it would "not log work product or privileged communications solely between
18   or among DC's counsel," which would "constitute unreasonable and undue
19   burden," and repeatedly invited defendants to meet and confer.  *Id.* ¶¶ 6, 8, Exs. 11
20   at 64, 13 at 93, 14 at 103, 15 at 114, 17 at 254-55, 19 at 262-63.  Defendants
21   dragged their feet for months, ignoring DC's requests, inventing objections DC
22   endeavored to meet, and refusing even to respond to DC's proposed stipulation.  *Id.*
23   ¶¶ 9-11, Exs. 13 at 92, 17 at 255, 19 at 262-63.  When defendants finally said they
24   would *not* agree to a bilateral logging stipulation (despite their earlier promises),
25   DC promptly filed this motion.  *Id.* ¶ 11, Exs. 16 at 252, 17 at 255, 19 at 263.

26   Defendants cannot claim that DC's motion is barred by a delay *they* caused.
27   Indeed, their own authorities reject their position.  In *Brittain v. Stroh Brewery Co.*,
28   136 F.R.D. 408, 414 (M.D.N.C. 1991) (cited Opp. 8-9), the moving party sought to

- 3 -     DC'S REPLY ISO MOT.
FOR PROTECTIVE ORDER

1 negotiate a protective order stipulation and noted, as did DC here, in its discovery
2 responses the need to obtain a protective order. The opposing party argued the
3 motion was untimely, and the court rightly rejected this contention, holding that the
4 moving party acted diligently by—as DC did—"s[eeking] in good faith to negotiate
5 a consent protective order," "not[ing] the objection and need for a protective order
6 in its response to written discovery," and "submit[ting] a proposed consent
7 protective order to the opposing party." *Id.*[2]

    B. <u>The parties *never* intended their 2010 "placeholder" stipulation to be final.</u> Defendants say they never "'promise[d]' DC that they would enter into a second logging agreement," Opp. 17, but do not—and cannot—deny the following:

- DC made clear the parties' 2010 stipulation was "a <u>*placeholder*</u> pending later agreement on an overall privilege log stipulation," Kline Decl. Ex. 4 at 20—and defendants agreed, *id.* Ex. 5 at 37;
- Toberoff told DC's counsel: "I trimmed back your addition of a logging exclusion [for DC] because this … gets into sticky issues which should best be dealt with in the <u>*negotiation of a full logging agreement*</u>," *id.*;
- Toberoff assured DC there was no need to "expand this stip relating to DC's Requests into a <u>*full-fledged logging agreement*</u>," since "Defendants have not yet even served DC with any requests for production," *id.*;
- Toberoff reiterated: "Again, <u>*we can address further logging aspects in negotiating a logging agreement*</u>," *id.* Ex. 6 at 43; and

---

[2] Defendants' other cases hold the same, *see Seminara*, 1995 WL 598097, at *4; *Maxey v. Gen. Motors Corp.*, 1996 WL 692222, at *2 (N.D. Miss. Nov. 18, 1996) (untimely motion may be granted if "good cause for … failure to timely file"), or are wildly off-point, *see U.S. v. IBM, Inc.*, 70 F.R.D. 700, 702 (S.D.N.Y. 1976) (motion improper on merits); *U.S. v. Panhandle E. Corp.*, 118 F.R.D. 346, 351 (D. Del. 1988) (same); *Wang v. Hsu*, 919 F.2d 130, 131 (10th Cir. 1990) (movant violated 10-day deadline for objecting to subpoena); *Bullion Monarch Mining, Inc. v. Newmont USA Ltd.*, 271 F.R.D. 643, 650-53 (D. Nev. 2010) (timing not an issue).

- 4 -
DC'S REPLY ISO MOT. FOR PROTECTIVE ORDER

1    • To further reassure DC, defendants added a provision to the 2010 stipulation
2       providing that it was "without prejudice or waiver to any party's right in the
3       future to seek a *protective order*," *id.* Ex. 5 at 41. (All emphases added.)

4    Defendants' opposition *nowhere* addresses Toberoff's assurances to DC. Instead, they suggest their prior statements are meaningless, because they do not constitute an enforceable agreement. Opp. 17. But that is not the relief DC seeks. Rather, DC asks the Court to enter a reasonable, bilateral logging stipulation under Rule 26. DC relies on Toberoff's prior (false) promises to show (i) that the relief it seeks is reasonable (defendants voiced no objection to it before); and (ii) that DC acted in reasonable reliance on his assurances. DC's reliance establishes both that its motion is timely, *supra* at 3-4, and that no waiver ever occurred, *infra* at 8-11.

C. <u>It is irrelevant that defendants chose to log certain documents.</u>

Defendants urge the Court to reject DC's proposed order because they allegedly were "forced by DC to log all post-2004 privileged communications" and "'what is sauce for the goose is sauce for the gander.'" Opp. 2-3, 19. This is factually wrong and legally irrelevant. Defendants were not "forced" to log any documents—they chose to do so after reneging on their commitment to "negotiat[e] a full logging agreement" with DC. Kline Decl. Ex. 5. Defendants also ignore that the 2010 stipulation excuses them from logging pre-May 2010 attorney communications—though DC was not given the same courtesy. DN 133 ¶ 5.

In any event, defendants are comparing apples to oranges. Their privilege logs list just 3,766 documents. *See* DN 162-5; Seto Decl. Ex. 1 (Shuster logs); DN 162-6, 162-7, 267-15; Seto Decl. Ex. 2 (Siegel logs); DN 163-17 (Toberoff logs; duplicating Shuster and Siegel logs); Seto Decl. Exs. 3-5 (Toberoff logs; supplementing Shuster and Siegel logs). In contrast, Mr. Smith alone has more than *36,000* electronic files and *18 linear feet* of paper files—which does not include the thousands of privileged documents in the files of other in-house counsel and outside counsel. Irrespective of what defendants did or did not do, Rule 26

entitles DC to seek a protective order to avoid the "undue burden or expense" of logging these documents. FED. R. CIV. P. 26(c)(1).[3]

D. **DC's documents are unquestionably privileged.** Defendants assert—with *no* support—that DC's Proposed Order *might* allow DC to withhold *non-privileged* documents. Opp. 13-15. This speculation is irrelevant and baseless, and defendants' supposed concerns could have been easily mooted if they had raised them during the parties' meet-and-confer exchanges. *Cf.* Kline Decl. ¶¶ 6, 8; Exs. 13 at 93, 14 at 103, 17 at 254-55, 19 at 262.

i. Defendants say they cannot "assess DC's claims of privilege because they know nothing about the documents being withheld." Opp. 13. DC has made crystal clear that the subject documents are privileged, internal attorney-client communications and attorney work-product created in connection with the *Siegel* case and this case. *E.g.*, Mot. 2-5, 9, 12, Kline Decl. Exs. 4 at 20, 11 at 64, 15 at 114, 17 at 254. If defendants had additional questions, they could and should have asked them during the meet-and-confer process, which they abandoned.

ii. Defendants object that DC's Proposed Order is overly expansive because it adopts the definition of "Privileged" from the 2010 court-ordered stipulation, which includes "attorney-client privilege, the attorney work-product doctrine or any other privilege available under law." DN 133 ¶ 1. It is inconsistent for defendants to object to this definition, which was based on *their* proposal, Adams Decl. Ex. A at 7[4]—but in any event, this complaint could have been resolved by proposing a

---

[3] Defendants' claim that DC has an "army of attorneys" who can quickly log these documents, Opp. 6, is untrue—indeed, as defendants know, their two sets of counsel in this case outnumber DC's.

[4] That proposal provided, in relevant part:
[N]o party shall be required to list on their privilege logs the following documents created on or after October 8, 2004, when the complaint was filed in *Siegel v. Warner Bros. Ent. Inc.*, Case No. 04-CV-08400 ODW (RZx):
 Attorney-client communications, attorney work product, and/or documents protected by the joint defense privilege, common interest privilege, mediation privilege, or the May 1, 2008 JAMS Confidentiality Agreement...

1  revision clarifying that the subject documents are privileged attorney-client
2  communications and work product created in connection with *Siegel* and this case.
3        iii.  Defendants falsely assert DC has "claimed that its communications with
4  *third parties* are privileged," Opp. 13-14, based on an obvious misreading of DC's
5  objection to an overbroad interrogatory.  Defendants asked DC to identify "all
6  COMMUNICATIONS" with third parties referring to the 1992 agreement between
7  DC and the Shusters.  DN 461-2, Ex. C at 17.  DC rightly objected that this request
8  was overbroad and could implicate privileged documents—for example, an attorney
9  memorandum analyzing a third-party communication.  *Id.* at 17-18.
10        iv.  Finally, defendants make the specious argument that DC "may be
11  withholding relevant documents on which its in-house counsel was merely copied."
12  Opp. 2.[5]  Again, as DC would gladly have clarified if defendants raised this concern
13  in the meet-and-confer process as was their duty, DC is *not* asserting privilege over
14  non-privileged communications on which in-house counsel was merely copied.
15  Such documents fall outside the scope of DC's Proposed Order, which is limited to
16  *privileged* attorney-client communications and attorney work-product.  The
17  documents DC addresses are unquestionably privileged. *See U.S. v. Rowe*, 96 F.3d
18  1294, 1296 (9th Cir. 1996) ("In determining the existence of a privilege, [n]o
19  attempt [is] made to distinguish between 'inside' and 'outside' counsel.").
20      E.  <u>DC's Proposed Order is bilateral.</u>  Though not required by Rule 26, DC's
21  Proposed Order is fully bilateral, and thus corrects the asymmetrical burdens
22  imposed by the parties' 2010 "placeholder" stipulation.  Mot. 3-4, 8, 11.
23  Defendants complain that the only defendant it exempts from logging *pre*-May 14,
24  2010 documents is Laura Siegel Larson, Opp. 7, but Larson is the only defendant
25  who was a party in *Siegel*.  *All* of the defendants are exempted from logging

---

[5] Defendants' accusation is particularly misplaced given that this Court has held *defendants* improperly withheld non-privileged documents on basis that they were later transmitted to outside counsel. *See* DN 500 at 6-12, 15-19, 527 at 2, 4, 6-7.

- 7 -  DC'S REPLY ISO MOT. FOR PROTECTIVE ORDER

1 privileged documents created after the inception of *this* case in 2010.

2 Nor is it reasonable or appropriate for the Proposed Order to carve out documents related to DC's receipt and handling of the Toberoff Timeline, *cf. id.* This timing issue is irrelevant—this Court already confirmed, based on a sworn declaration by Mr. Smith, that DC acted "reasonably" and "professionally" when it received the Timeline documents in June 2006, and rejected defendants' suggestion that DC received the documents earlier. Case No. CV 04-8400, DN 107 at 36-39; DN 177 at 9:2-10:13, 13:15-17:21, 19:3-7; *see* Mot. 6. But to moot the issue, in any event, DC identified the first documents in its files concerning the Timeline—dated June 28, 2006—and produced the first non-privileged communication on this topic—dated July 5, 2006. *See* Adams Decl. Ex. P at 109-110.

Finally, defendants' claim that DC told the Ninth Circuit the 2010 stipulation imposed "reciprocal" logging obligations, Opp. 18-19, is a fabrication. In 2010, defendants filed an emergency stay motion (the first of many unsuccessful appeals), contending that this Court imposed a "one-sided discovery stay" prohibiting them from initiating discovery. In successfully opposing defendants' motion, DC explained that the 2010 stipulation did *not* impose any stay and contemplated discovery by both parties. Ninth Circuit Appeal No. 10-73851, DN 6-1. DC *never* suggested the 2010 stipulation imposed reciprocal logging obligations. Defendants just make this fact up, and tellingly never raised it during any meet-and-confer.

## II. DC Has Not Waived Any Privilege.

Defendants do not ask this Court to find waiver, *cf.* Opp. 20, have never moved to compel on the basis of waiver, and abandoned their waiver argument during meet-and-confer discussions, Mot. 9. While defendants suggest a waiver "arguably" occurred, Opp. 2:10; *id.* at 10:5, they will not come out and argue one actually occurred, because to do so would be frivolous.

DC did not waive *any* privilege by endeavoring in good faith to negotiate a privilege logging stipulation before filing this motion. Waiver "is a harsh sanction

- 8 -

DC'S REPLY ISO MOT. FOR PROTECTIVE ORDER

1 reserved generally for unjustified, inexcusable, or bad faith conduct." *USF Ins. Co.
2 v. Smith's Food & Drug Ctr., Inc.*, 2011 WL 2457655, at *3 (D. Nev. June 16,
3 2011). For example, this Court rightly held that defendants waived privilege where
4 they voluntarily disclosed privileged documents to the U.S. Attorney's Office, *see*
5 DN 262, 279, *In re Pacific Pictures Corp.*, 679 F.3d 1121 (9th Cir. 2012), and
6 where defendants failed to list a November 2001 email from Toberoff to Michael
7 Siegel on any privilege log for *six years*, *see* DN 455, 457, 488.

8       There is no possible basis for a waiver finding against DC. DC consistently
9 asserted privilege over its internal attorney documents, in its discovery responses,
10 Kline Decl. Exs. 11 at 64, 15 at 114, and its many meet-and-confer exchanges with
11 defendants, *id.* ¶ 6, Exs. 13 at 93, 14 at 103, 17 at 254-55, 19 at 263. As defendants
12 know, the only reason DC did not file this motion sooner is because defendants
13 falsely assured DC that they would negotiate a bilateral logging stipulation
14 excusing DC from having to log these clearly privileged documents. *Supra* at 3-5.

15       Defendants do not cite a single case—and none exists—finding waiver when,
16 as here, the delay in producing a privilege log was due to efforts to negotiate a
17 logging stipulation. To the contrary, defendants' lead authority, *Burlington N. &*
18 *Santa Fe Ry. Co v. U.S. Dist. Ct.*, 408 F.3d 1142, 1149 (9th Cir. 2005), confirms
19 that there can be *no* waiver where the parties have such an agreement. And
20 applying *Burlington*, courts have refused to find waiver simply when a party merely
21 *believed* such a logging agreement existed. *See Jadwin v. County of Kern*, 2008
22 WL 2025093, at *3-4 (E.D. Cal. May 9, 2008) (no waiver where party "proceeded
23 in accordance with what [it] believed was [a logging] agreement," "[a]lthough the
24 precise details of the agreement are difficult to divine"); *Best Buy Stores, L.P. v.*
25 *Manteca Lifestyle Ctr., LLC*, 2011 WL 2433655, at *7-9 (E.D. Cal. June 14, 2011)
26 (no waiver where "delay in providing log appears to be at least the partial result of
27 the parties' agreement"). Here, DC believed the parties would finalize a bilateral
28 logging stipulation—as they had in *Siegel*, Smith Decl. ¶ 2, Ex. A, and as Toberoff

had promised in negotiating the "placeholder" stipulation in 2010, *supra* at 3-5. And DC, for months, attempted to negotiate the stipulation in good faith. *Id.*

Nor is there an automatic presumption of waiver after a certain period of time, as defendants suggest. *Burlington* requires a "case-by-case" determination whether privilege objections were sufficiently raised and uses a "holistic reasonableness analysis" based not just on timeliness, but the specificity of the "assertion of privilege," "the magnitude of the document production," and "other particular circumstances of the litigation that make responding to discovery unusually easy [or] hard." 408 F.3d at 1149-50. *Burlington* found *no* "mitigating considerations" weighing against waiver—Burlington's log was untimely and deficient, and it would have been easy to produce one earlier. *Id.*[6]

Here, the *Burlington* factors all weigh against waiver: as explained *supra*, DC's logs *were* timely; DC made its privilege objections clear in discovery responses and meet-and-confer exchanges; it would be unduly burdensome to log tens of thousands of internal attorney documents; there is no justification for requiring DC to log this clearly privileged material; and defendants' only motive in pressing for logs is their desire to inflict unnecessary expense on DC and distract from their own discovery misconduct. *Cf. Carl Zeiss Vision Intern. Gmbh v. Signet*

---

[6] *Accord Burch v. Regents of Univ. of Cal.*, 2005 WL 6377313, at *2 (E.D. Cal. Aug. 30, 2005) (same; no "mitigating considerations"); *Mansourian v. Bd. of Regents of Univ. of Cal.*, 2007 WL 4170819, at *1 (E.D. Cal. Nov. 19, 2007) (same); *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 695-96 (M.D. Fla. 2005) (same); *Truckstop.Net, LLC v. Sprint Commc'ns Co., L.P.*, 2008 WL 2357008, at *1-2 (D. Idaho June 6, 2008) (same; party promised to produce log within one week, but failed to produce anything for over six months); *Lenz v. Universal Music Corp.*, 2009 WL 3573990, at *2-3 (N.D. Cal. Oct. 30, 2009) (party *never* asserted privilege before—not in original logs, in briefing, or at hearing); *Bullion*, 271 F.R.D. at 650-53 (party failed to make "any effort" to negotiate logging agreement or seek guidance from court). The circumstances here are distinguishable from those in 2010, when DC asserted waiver based on defendants' blanket refusal to produce any documents or provide a privilege log—*before* the parties agreed to reach a logging stipulation. DN 125 at 19-22; *see* DN 207-12 at 491-92 (arguing waiver based on documents not subject to logging stipulation).

*Armorlite Inc.*, 2009 WL 4642388, at *3-4 (S.D. Cal. Dec. 1, 2009) (refusing to find waiver despite 9-month delay where other *Burlington* factors neutral or "difficult to gauge"; California courts "take[] permissive stance on deficient" logs).

**III. If The Court Does Not Issue DC's Proposed Protective Order, It Should Allow Categorical Logging.**

At minimum, this Court should allow DC to submit a categorical privilege log pursuant to Rule 26(b)(5). Mot. 11-12. Defendants object, arguing DC has not established "undue burden *with specificity*." Opp. 19. Not so. In the out-of-circuit case cited by defendants, *Bethea v. Merch. Comm'l Bank*, 2012 WL 5359536, at *2 (D.V.I. Oct. 31, 2012), the court found categorical logging inappropriate because the party "failed to articulate explicitly why production of an itemized and descriptive privilege log is unduly burdensome." Here, DC has set forth in explicit detail—including in a detailed declaration from Warner Bros.—the undue burden and expense required to prepare an itemized privilege log. *Supra* at 1-2, 6-7.

Defendants also object to the form of DC's proposed categorical log, Opp. 19-20—but ignore that DC's proposal was taken *verbatim* from the log approved in *In re Imperial*, 174 F.R.D. at 479, and used in modified form by several other courts, *e.g.*, *Caliper Techs. Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555, 563 (N.D. Cal. 2003); *SEC v. Thrasher*, 1996 WL 125661, at *2 (S.D.N.Y. 1996); *In re Motor*, 2009 WL 959491, at *3; *Fifty-Six Hope Road*, 2007 WL 1726558, at *8.

Defendants' complaint that the number of documents in dispute "is tiny," Opp. 20, is untrue, *supra* at 2, and legally irrelevant. Congress "expressly recognized" in enacting Rule 26(b)(5) there are situations in which an itemized, "document-by-document privilege log would be unduly burdensome and inappropriate." *In re Imperial*, 174 F.R.D. at 479; *see* FED. R. CIV. P. 26, advisory committee note ("Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but *may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly*

*if the items can be described by categories*.") (emphasis added). There is no requirement that a case be of a certain magnitude for categorical logging to be permissible; to the contrary, courts allow categorical logging in cases much smaller than this one. *E.g.*, *St. John v. Napolitano*, 274 F.R.D. 12, 21 (D.D.C. 2011) (small dispute between two parties); *In re Motor*, 2009 WL 959491, at *3 ("thousands" of privileged communications); *Fifty-Six Hope Road*, 2007 WL 1726558, at *8 ("hundreds or thousands" of privileged emails).[7]

**IV.   Conclusion**

DC's motion should be granted.

Dated:   December 21, 2012            Respectfully submitted,

By: /s/ Daniel M. Petrocelli
        Daniel M. Petrocelli

OMM_US:71179892

---

[7] In the event the Court orders DC to submit a log, DC requests to have until March 4, 2013 (eight weeks from the hearing on this motion) to do so. Defendants' request that DC log tens of thousands of documents by January 21—a holiday, just two weeks after the hearing—is neither possible nor reasonable. Indeed, defendants themselves took *four months* to log just 3,766 documents. *See* DN 162-6, 162-7, 162-5. It is also inaccurate that DC is planning to "file motions for summary judgment on its remaining claims as soon as possible." Opp. 2. As defendants know, the Court held it will not hear merits motions on DC's state-law claims until after the Ninth Circuit has ruled on defendants' SLAPP appeal. DN 533. Defendants have also argued to the District Court that this case and all discovery is stayed, DN 543, 544—a position which is both untrue, *id.*, and curiously absent from defendants' opposition, given the rush work they now seek to make DC do.