Marc Toberoff (State Bar No. 188547)
 mtoberoff@ipwla.com
Keith G. Adams (State Bar No. 240497)
 keithgadams@ipwla.com
Pablo D. Arredondo (State Bar No. 241142)
 parredondo@ipwla.com
David Harris (State Bar. 255557)
 dharris@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway, #348
Malibu, California, 90265
Telephone:  (310) 246-3333
Fax:         (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele Peavy
and Laura Siegel Larson, individually and
as personal representative of the Estate of
Joanne Siegel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>            Plaintiff,<br><br>   vs.<br><br>PACIFIC PICTURES CORPORATION;<br>IP WORLDWIDE, LLC; IPW, LLC;<br>MARC TOBEROFF, an individual;<br>MARK WARREN PEARY, as personal<br>representative of the ESTATE OF<br>JOSEPH SHUSTER; JEAN ADELE<br>PEAVY, an individual; LAURA<br>SIEGEL LARSON, individually and as<br>personal representative of the Estate of<br>Joanne Siegel,<br>and DOES 1-10, inclusive,<br><br>           Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DISCOVERY MATTER**<br><br>**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF "TIMELINE"-RELATED DOCUMENTS**<br><br>*Notice of Motion, Declaration of Keith Adams, and Declaration of Cassandra Seto filed concurrently*<br><br>Judge: Hon. Otis D. Wright II<br>Magistrate: Hon. Ralph Zarefsky<br><br>Complaint filed: May 14, 2010<br>Trial Date:      None Set<br><br>Date:<br>Time:<br>Courtroom:      540 |

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

Pursuant to Federal Rules of Civil Procedure 26, 34, and 37, and Central District Court Local Rule 37-2, the parties respectfully submit the following Joint Stipulation Regarding Defendants' Motion To Compel Production Of "Timeline"– Related Documents.  Pursuant to Central District Local Rule 37-1, the parties have attempted unsuccessfully to resolve their disputes and therefore respectfully seek the assistance of the Court.

Dated:   January 4, 2013          O'MELVENY & MYERS LLP


By: /s/ Daniel M. Petrocelli
    Daniel M. Petrocelli
    Attorneys for Plaintiff DC Comics

Dated:   January 4, 2013          TOBEROFF & ASSOCIATES, P.C.


By: /s/ Marc Toberoff
    Marc Toberoff
    Attorneys for Defendants Laura Siegel
    Larson, Mark Warren Peary, and Jean Adele
    Peavy

# **TABLE OF CONTENTS**

I.      DEFENDANTS' INTRODUCTION .................................................................1

II.     DC'S INTRODUCTION ...............................................................................3

III.    REQUEST NOS. 3-6, 9-16 (WHEN WARNER RECEIVED THE
        TIMELINE DOCUMENTS). ........................................................................5

        A.      Defendants' Position ......................................................................5

                1.      Factual Background ..............................................................5

                2.      Defendants Are Entitled To Discovery Related To The
                        Timeline and Stolen Documents............................................9

                        i.      The Documents Sought Are Relevant To DC's
                                Claims And Defendants' Affirmative Defenses...............10

                        ii.     "Law of the Case" Does Not Bar Discovery Here ...........14

                        iii.    The Requests Are Not Overbroad Or Ambiguous ...........17

                        iv.     Hearsay Statements By DC's Counsel Are Not A
                                Substitute For Document Discovery .................................19

                        v.      DC's Meet-And-Confer Proposals Were Inadequate........20

                3.      Defendants' Specific Discovery Requests...................................20

                        i.      Requests Nos. 3-6, 9-16 (When Did DC Receive The
                                Timeline And Stolen Documents?) ...................................20

        B.      DC's Position .................................................................................29

                1.      Defendants' Motion Can And Should Be Denied Outright
                        Based On Their Violation Of The Meet-And-Confer Rules. ......30

                2.      Defendants Have Already Litigated And Lost These Issues.......32

                3.      Defendants' Requests Are Not Relevant To Any Claim,
                        Defense, Or Material Issue In Dispute. ......................................36

                        i.      Statute-of-Limitations Defenses......................................37

                        ii.     Defendants' Conspiracy Theory of Relevance.................39

                        iii.    The Claim that DC "Injected" the Issues into
                                Discovery .........................................................................39

                        iv.     The Relevance of the Timeline Itself ...............................40

                        v.      Credibility ........................................................................41

                        vi.     DC's Discovery .................................................................41

                4.      Defendants' Requests Are Moot..................................................42

5.  Defendants' Requests Are Overbroad. ........................................43

IV.  REQUEST NOS. 53, 56-59, 65 (WARNER'S MAIL AND VISITOR RECORDS). ............................................................................................44

A.  Defendants' Position ........................................................................44

1.  Requests Nos. 53, 56-59, and 65 (Logs Showing Receipt of the Timeline Packages) ............................................................44

B.  DC's Position ....................................................................................48

V.  REQUEST NOS. 47-52, 63 (WARNER'S MAIL PROTOCOLS). ...............49

A.  Defendants' Position ........................................................................49

1.  Requests Nos. 47-52 and 63 (Why Is There No Evidence Of When DC Received The Timeline and Stolen Documents?) ......49

B.  DC's Position ....................................................................................55

VI.  REQUEST NOS. 54-55 (WARNER'S EMPLOYEES). .................................56

A.  Defendants' Position ........................................................................56

1.  Requests Nos. 54-55 (Identification of Eyewitnesses)................56

B.  DC's Position ....................................................................................58

VII.  REQUEST NOS. 7-8 (WARNER'S REVIEW OF THE TIMELINE DOCUMENTS). ............................................................................................59

A.  Defendants' Position ........................................................................59

1.  Requests Nos. 7-8 (Warner's Review Of The Timeline And Stolen Documents) ......................................................................59

B.  DC's Position ....................................................................................61

VIII.  REQUEST NOS. 32-43, 64 (THE TIMELINE AUTHOR). .........................62

A.  Defendants' Position ........................................................................62

1.  Requests Nos. 32-43 And 64 (DC's Knowledge Of The Persons Responsible For The Timeline And Stolen Documents) ...............................................................................62

B.  DC's Position ....................................................................................72

IX.  REQUEST NOS. 60-62 (WARNER'S COMMUNICATIONS RE: THE TIMELINE). ..................................................................................................76

A.  Defendants' Position ........................................................................76

1.  Requests Nos. 60-62 (Communications About The Timeline/Stolen Document Sent By Key Figures) .....................76

B.  DC's Position ....................................................................................79

X.    REQUEST NOS. 44-46 (WARNER'S COMMUNICATIONS WITH GLASER WEIL). ................................................................80

    A.    Defendants' Position ..............................................................80

        1.    Requests Nos. 44-46 (DC's Communications With Michaels' Former Employer).......................................80

    B.    DC's Position ........................................................................82

XI.    REQUEST NOS. 19-26 (DOCUMENTS RE: ARNOLD & PORTER). ........83

    A.    Defendants' Position ..............................................................83

        1.    Requests Nos. 19-26 (DC's Relationship With The "Neutral" Escrow Holder) ............................................83

    B.    DC's Position ........................................................................89

XII.    REQUEST NO. 88 (ALL THIRD-PARTY COMMUNICATIONS RE: THE TIMELINE). ......................................................................91

    A.    Defendants' Position ..............................................................91

        1.    Requests No. 88 (Third-Party Communications About The Timeline) ..............................................................91

    B.    DC's Position ........................................................................92

XIII.    WHETHER DC MUST LOG PRIVILEGED DOCUMENTS ........................93

    A.    Defendants' Position ..............................................................93

    B.    DC's Position ........................................................................94

XIV.    DEFENDANTS' CONCLUSION ................................................................95

XV.    DC'S CONCLUSION ....................................................................................95

# I.    DEFENDANTS' INTRODUCTION

In July 2006, in *Siegel v. Warner Bros. Entertainment Inc.*, C.D. Cal. Case No. 04-CV-08400 ODW (RZx) ("*Siegel*"), plaintiff DC Comics' parent Warner Bros. Entertainment Inc. ("Warner"; together with DC Comics, "DC") claimed that it received three packages on June 28, 2006.  The packages contained reams of privileged documents of the Siegel and Shuster heirs stolen from the law offices of their counsel, Mr. Toberoff (the "Stolen Documents") and a cover letter (the "Timeline") – an anonymous screed against Mr. Toberoff.  In 2007, DC moved this Court to compel the production of the Stolen Documents, but its only corroborating evidence was hearsay in a declaration from its in-house litigation counsel.

This Court simply held that Stolen Documents, not previously produced or logged, if any, were to be produced.  But eventually the illicit Timeline was also ordered "produced" to DC even though it purported to describe privileged documents which had been duly logged.

DC attached the Timeline to its complaint and incorporated the Timeline's allegations therein in bringing state-law claims for tortious interference (Fourth and Fifth Claims) and unfair competition (Sixth Claim) against, *inter alia*, Mr. Toberoff.  DC also relied heavily on the Timeline for its briefs, and sought discovery on the Timeline, its suspected author and the Stolen Documents.  DC eventually compelled production of privileged Stolen Documents due to Defendants' efforts to investigate/ prosecute the crime.  Two-and-a-half years into this litigation, DC continues to construct much of its case around the Timeline and Stolen Documents.

Defendants have thus served focused discovery requests squarely aimed at DC's receipt and handling of the Timeline/Stolen Documents.  In response, DC has stonewalled all discovery on the subject.  DC must be ordered to produce documents, because information about DC's receipt and handling of the Timeline/Stolen Documents is obviously relevant on many levels.

For instance, the date DC actually received the Timeline, and the timing and

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

extent of its review, is directly relevant to Defendants' statute of limitations defenses. The discovery Defendants seek could also help confirm the identity of the Timeline author(s) and/or thief/thieves, his/their motives, any connections to DC before or after the incident, and/or the source of the Timeline's false contentions that serve as the basis of DC's complaint.  It could also well lead to the discovery of other relevant admissible evidence and/or witnesses, or be used to impeach the credibility of DC's evidence and/or witnesses at trial.

This discovery is likewise necessary to address Defendants' legitimate concerns about DC's receipt and handling of the Timeline and Stolen Documents. DC claimed it received the documents on June 28, 2006, even though the Timeline describes itself as an "early holiday gift" (Dkt. 42-9, Ex. I at 612-16) and the actions of the suspected thief occurred just before the holidays in late October-early December, 2005.  Dkt. 212, Ex. I at 123.  DC claimed that it received only three sets of the Stolen Documents, whereas the Timeline lists four (not three) recipients.  *Id.*; Dkt. 49, Ex. A. at 68.  DC has consistently failed to provide a sworn declaration from anyone with first-hand knowledge of DC's receipt of the Timeline packages.  DC also dubiously claimed that despite the receipt of reams of privileged Stolen Documents in the midst of the high-stakes *Siegel* litigation by Warner's General Counsel, John Schulman, its President, Alan Horn, and Senior Vice President of Business Affairs, Patti Connolly, it did not retain any of the packaging in which the Stolen Document arrived, contrary to its duty to preserve evidence.  Declaration of Keith Adams ("AD"), Ex. B at 10 ¶2.  DC has signally failed and refused to provide any documentary evidence supporting its contentions about when it received the Timeline, either in this case or in *Siegel*, despite its obvious relevance.

This issue could have easily been laid to rest by DC's production of responsive contemporaneous documents proving that DC received the Timeline when it said it did, on June 28, 2006.  Instead, DC has systematically and improperly blocked *any* inquiry into this topic on spurious grounds.

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

DC argues that hearsay by Wayne Smith, its in-house litigation counsel, and statements of its outside litigation counsel in unsworn letters are adequate substitutes for actual document discovery, but they obviously are not.  DC also argues that this Court's 2007 comments at a hearing in *Siegel* that DC seemed to have acted "appropriately" forever blocks any discovery, but such comments had nothing to do with discovery of DC.  DC also argues by rote that Defendants' requests are overbroad, but the requests specifically target DC's receipt and handling of the Timeline and Stolen Documents.  The universe of responsive documents is small, confined by subject matter and a discrete time period.

DC's excuses must end.  DC cannot be permitted to represent to the Court that it received the Timeline on a specific date, consistently affirm those representations; gain access to the document; based its complaint on that document and attach it thereto; and place that document at the center of a sprawling, two-and-a-half year lawsuit, while refusing to produce a single piece of evidence about its receipt of that document and the stolen property it enclosed.  DC should be ordered to forthwith produce or log any documents relevant to its receipt, review and handling of the Timeline and Stolen Documents.

## II.    DC'S INTRODUCTION

Defendants' motion should be denied.  Each of defendants' ten categories of document requests on which they move suffers from the same five fatal defects:

1.  Defendants failed to meet-and-confer—in plain violation of Local Rule 37 and this Court's admonition to follow that Rule "assiduously," DN 467 at 1.  In late November 2012, DC told defendants that, while their requests sought irrelevant documents and were otherwise improper, DC was willing to work toward a compromise to avoid burdening the Court with needless motion practice.  Defendants agreed, and DC thus sent defendants a lengthy letter addressing their specific questions, agreeing to provide key information and documents about DC's receipt and handling of the Timeline documents, and making clear:  "we need to close the

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

loop on these issues before taking any next steps, including filing any motion with the courts." Defendants did not respond. Instead, they pressed ahead with this baseless motion to compel, which stunningly omits DC's many offers to compromise and recent document productions and interrogatory responses—which moot many, if not all, of defendants' requests. Defendants' violation of the meet-and-confer rules is reason alone to deny their motion, as this Court rightly held in denying the only other motion to compel defendants have filed. DN 467.

2. This motion also should be denied because it seeks to relitigate issues defendants have lost on time and again. In *Siegel*, and in this case (both before this Court, the District Court, and the Ninth Circuit), defendants claimed—as they do here—that the Timeline documents were delivered to Warner in December 2005 rather than June 2006 and Warner hid that alleged fact and misused the documents. Each time defendants have raised these specious claims, the courts have rejected them. Defendants cannot re-litigate these same issues yet again on this motion.

3. Defendants' requests are not relevant to any issue in dispute. Most of defendants' relevance theories are based on speculation—unsupported by the facts, evidence, or common sense—that DC and several law firms orchestrated a complex conspiracy to destroy Marc Toberoff's reputation by planting David Michaels at Toberoff & Associates to steal documents and draft the Timeline. These claims are sheer fantasy and directly contradicted by *Toberoff's prior sworn submissions* that Michaels was the Timeline author and acted to steal the Siegels as his clients. But now that DC has pursued terminating sanctions against Toberoff, he seeks to tar DC by pursuing discovery that for 24 months he ignored *and* said was unnecessary.

Defendants' theory that the date Warner received the Timeline bears on their statute-of-limitations defenses disregards evidence and court findings confirming that Warner first received the Timeline in June 2006. It also ignores that the Court rejected defendants' statute-of-limitations arguments in granting summary judgment for DC on its Third Claim. *See* DN 462 at 24, DN 507. And it ignores that

defendants themselves consistently argued—before filing this motion—that DC's
claims were untimely whether DC received the Timeline documents in June 2006 or
in December 2005.  This means the alleged factual fight they seek to relitigate is, in
reality, irrelevant to their defense.

4.  Many of defendants' requests are moot, as DC provided defendants, as part
of the ongoing discovery process, the very information they now wastefully move to
compel.  Defendants notably omit, for example, that DC timely served sworn
interrogatory responses on December 20, 2012, providing them the very details about
Warner's receipt and handling of the Timeline documents sought by defendants'
motion—including when Warner first received the documents, Warner's office staff
who may have witnessed their delivery, and the number of documents that were
delivered to whom and when.  Cassandra Seto Decl. Ex. 8.  DC urged defendants to
withdraw their motion, but they refused.  *Id.*

5.  Last, defendants' requests are overbroad, not reasonably limited in scope,
and indefinite as to time—indeed, only 7 of their 57 requests contain any time
limitation at all.  As DC sought to address in the meet-and-confer process that
defendants abandoned, responding to these requests would impose undue burden and
expense on DC, and provide no real benefit to defendants.  The discovery rules
prohibit such abusive discovery.  *See* FED. R. CIV. P. 26(g)(1)(B)(iii); *Johnson v.
Wal-Mart Stores East, L.P.*, 2012 WL 346679, at *2 (W.D.N.C. Feb. 2, 2012).
In short, defendants' motion to compel should be summarily denied.

## III.    REQUEST NOS. 3-6, 9-16 (WHEN WARNER RECEIVED THE TIMELINE DOCUMENTS).

### A.    Defendants' Position

#### 1.    Factual Background

On July 18, 2005, Mr. Toberoff's law firm, Toberoff & Associates, P.C., was
approached by a young attorney named David Michaels, who it hired as its most
junior attorney.  Dkt. 212, Ex. I at 122-23.  Michaels had access to privileged

5

material relating to *Siegel*, Joanne Siegel, Laura Siegel Larson, Jean Adele Peavy, Mark Warren Peary, and other clients of Mr. Toberoff.  *Id.*  In mid-October 2005, after just three months and without incident or warning, Michaels left work in the middle of the day and never returned.  *Id.*  In November 2005, Michaels contacted the Siegels.  *Id.* at 123.  He attempted to divert the Siegels to an undisclosed firm, with him as their attorney, by vaguely accusing Mr. Toberoff of unethical conduct.  *Id.*  In early December 2005, the Siegels rejected Michaels' overtures.  *Id.*

In July 2006, DC informed Defendants that three of its highest-ranking executives had each been anonymously sent a large package of privileged and confidential documents stolen from Mr. Toberoff's law firm – the Stolen Documents – along with a rambling anonymous Timeline, in which the author-thief hyped and expressed opinions about the Stolen Documents.  *Id.* at 123-24.  The Timeline began by stating "Consider it [the Timeline] an early holiday gift," and listed ***four*** recipients (Jeff Rabinov, Warner Bros. Pictures' President, in addition to John Schulman, Alan Horn, and Patti Connolly), not three.  Dkt. 49, Ex. A at 62, 68.  The Stolen Documents included hundreds of pages of privileged materials, stolen from Mr. Toberoff's legal files and related to his representation of the Siegels/Shusters.

The ranting Timeline included speculation that Mr. Toberoff and Ari Emanuel (now CEO of the William Morris Endeavor Agency) had interfered with DC's settlement negotiations with the Siegels by making a supposedly fraudulent offer.  This became the central allegation of DC's Fifth Claim.  *Compare* Dkt. 49 ¶¶181-86 (Fifth Claim) *with* Dkt. 49, Ex. A at 63-67 (Timeline allegations).  The Timeline also contained allegations about the agreements between Pacific Pictures Corp. and the Shuster heirs/Estate, which DC adopted in its Fourth and Sixth Claims.  *Compare* Dkt. 49 ¶¶175-79 (Fourth Claim), ¶¶188-89 (Sixth Claim) *with* Dkt. 49, Ex. A at 62-68 (Timeline allegations).

After receiving the Stolen Documents, DC reviewed and catalogued them, before turning them over to an alleged "neutral" "escrow holder". AD, Ex. A at 6-18

¶¶8-12; Ex. B at ¶3.  It is clear from the testimony of Wayne Smith, Warner's in-house counsel overseeing the Superman case, that Mr. Smith read the Timeline in detail upon receiving it.  *See* AD, Ex. A at 4-5 ¶3 ("I looked at what might be characterized as the 'cover letter' that came with the [Stolen] Documents.  The cover letter, which was not signed, alleged various types of ethical misconduct on the part of Plaintiffs' counsel in connection with the Siegel litigations. …. The letter also referenced the documents enclosed, providing an overview of their contents and their connection to Plaintiffs' counsel's alleged wrongdoing.  I also thumbed through the [Stolen] Documents contained with the letter, but did not read any of them in detail."), ¶4 ("I told Mr. Schulman that based on the contents of the cover letter and my brief thumbing through the documents, it appeared that certain of the documents in the package were privileged. …. Mr. Schulman … advised me that he had only looked at the cover letter that came with the documents ….").

DC sought to compel the production of the Stolen Documents in *Siegel*, claiming that (1) it received the documents on June 28, 2006 (despite the Timeline's description of itself as an "early holiday gift"); (2) it received "three sets" of the documents (even though the Timeline lists four, not three, recipients); (3) Mr. Smith merely "thumbed through" the documents and later spent 30 minutes separating the 900 pages of documents into "non-privileged," "privileged" and "?" piles; and (4) it did not retain or make copies of *any* of the packaging (despite the anonymous receipt by three of its highest ranking executives, including its General Counsel, of sensitive privileged documents belonging to its litigation adversaries).  Dkt. 42-9, Ex. 23 at 612-16.

DC did not provide a declaration from any of the three executives who received the Timeline packages, their support staff, or anyone else with first-hand knowledge, though it readily could have.  DC's sole evidence was the carefully worded declaration from its in-house litigation counsel, Mr. Smith, who merely testified as to when Mr. Schulman told him that the documents were allegedly

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

received.  AD, Ex. A at 4 ¶2.  DC also did not produce any documentary evidence whatsoever (*e.g.*, packaging, mail or messenger logs, telephone logs, internal communications) as to when it had actually received the Timeline and/or Stolen Documents.  Nonetheless, the Timeline and certain of the Stolen Documents were later ordered produced to DC in *Siegel*.  Dkt. 42-14, Ex. S, at 218-220.

DC thereafter filed this case against Mr. Toberoff and his clients, attaching the anonymous Timeline to its complaint.  *See* Docket Nos. 1; 49, Ex. A.  DC adapted the Timeline's allegations into its Fifth Claim, and to a lesser extent, its Fourth and Sixth Claims.  Defendants raised the statute of limitations as to all three claims.  Dkt. 347, ¶191.

On August 30, 2012, Defendant Laura Siegel Larson served her First Set of Requests for Production ("Requests") on DC.  AD, Ex. E.  Many of the Requests were aimed at discovering more information about the circumstances surrounding DC's receipt and handling of the anonymous Timeline and the Stolen Documents, as DC had failed to produce any documentary evidence whatsoever or the sworn declaration of anyone with actual knowledge on this topic.  *Id.*

On October 5, 2012, DC served its Objections and Responses to Laura Siegel Larson's Requests ("Responses").  AD, Ex. F.  DC objected to all Requests directed at its receipt and handling of the Timeline and Stolen Documents, while purporting to want to meet and confer on the subject.  *Id.*  But after Defendants simply requested a meet-and-confer (AD, Ex. G at 148-52), DC flatly refused to provide any documents related to DC's receipt of the Timeline or Stolen Documents.  AD, Ex. H at 154 (Defendants' "requests on this topic are not only irrelevant, but also moot" and "[t]here is no 'non-objectionable' portion of these Requests warranting a response").  On November 27-28, 2012, Defendants and DC held the meet-and-confer, but were unable to resolve this dispute.[1]  On December 6, 2012, DC sent a follow-up letter, in

---

[1] The parties also met and conferred on other Requests regarding, non-Timeline topics to which DC's Responses were obstructive.  AD, Ex. I.  Defendants currently

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

1  which it effectively refused to produce any evidence responsive to the Requests.  AD,

2  Ex. I.  This motion followed.

### 2.   Defendants Are Entitled To Discovery Related To The Timeline and Stolen Documents

5  Responsive documents concerning DC's receipt and handling of the

6  Timeline/Stolen Documents must be produced.  The thrust of DC's Responses to

7  Requests directed at the Timeline are exemplified by the following:

**Request No. 3**
All DOCUMENTS that REFER to the date and/or circumstances surrounding WARNER's receipt of the STOLEN DOCUMENTS.

**Response to Request No. 3**
DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21.
DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgment that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.
Subject to and without waiving all foregoing objections, DC

28  seek to narrow their differences with DC as much as possible as to such Requests before bringing a motion to compel, if required.

agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

Such "[b]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999); *see Dolarian Capital, Inc. v. SOC, LLC*, 2012 U.S. Dist. LEXIS 130275, at *5 (E.D. Cal. Sept. 12, 2012) ("[G]eneral, boilerplate objections … [are] inappropriate under the Federal Rules of Civil Procedure.").

"The federal rules allow liberal discovery." *Quiroz v. Cate*, 2012 U.S. Dist. LEXIS 109949, at *12 (N.D. Cal. Aug. 2, 2012). "The party resisting discovery [therefore] has the burden of establishing lack of relevance or undue burden." *Id*; *see also In re Toys 'R' Us-Delaware, Inc.*, 2010 U.S. Dist. LEXIS 130884, at *19-22 (C.D. Cal. July 29, 2010) ("[I]t is well-established that the burden is on the objecting party…."). In meeting this burden, a "recitation that the discovery request is 'overly broad, burdensome, oppressive and irrelevant' is not adequate…." *Quiroz,* 2012 U.S. Dist. Lexis 109949 at *12. Parties must "demonstrate that the [requested] documents are not relevant under the broad scope of relevance provided by Rule 26(b)(1) of the Federal Rules of Civil Procedure", (*id.*) or are "of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure…." *Burke v. New York City Police Dep't*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987).

DC cannot meet this burden, and none of DC's excuses has merit.

### i. The Documents Sought Are Relevant To DC's Claims And Defendants' Affirmative Defenses

DC's repeated relevance objections are meritless. Under Fed. R. Civ. P. 26(b), Defendants are entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," including information that "appears reasonably calculated to lead to the discovery of admissible evidence." Relevance is construed broadly "to encompass any matter that bears on, or that reasonably could

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

1  lead to other matter that could bear on, any issue that is or may be in the case."

2  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978); *In re Toyota Motor*

3  *Corp. Sec. Litig.*, 2012 WL 3791716, at *4 (C.D. Cal. Mar. 12, 2012) ("Discovery

4  requests are relevant if there is any possibility that the information sought is relevant

5  to any issue in the case and should ordinarily be allowed, unless it is clear that the

6  information sought can have no possible bearing on the subject matter of the action.")

7  (citation omitted).  "[D]iscovery is not limited to issues raised by the pleadings, for

8  discovery itself is designed to help define and clarify the issues.  Nor is discovery

9  limited to the merits of a case, for a variety of fact-oriented issues may arise during

10  litigation that are not related to the merits."  *Oppenheimer Fund, Inc.*, 437 U.S. at 350

11  (citation omitted).

12        Defendants' Requests more than meet this standard.

13        *First,* all such Requests are relevant given the centrality of the Timeline and

14  Stolen Documents to this case.  "The question of relevancy should be construed

15  'liberally and with common sense' and discovery should be allowed unless the

16  information sought has no conceivable bearing on the case."  *Soto v. City of Concord*,

17  162 F.R.D. 603, 610 (N.D. Cal. 1995) (quoting *Miller v. Panuci*, 141 F.R.D. 292, 296

18  (C.D. Cal. 1992)).  DC has based its claims – including highly-specific allegations in

19  its Fifth Claim – directly on the Timeline.  *See, e.g.,* Dkt. 49 ¶¶181-86; Ex. A at 63-

20  67.  DC attached the Timeline to its complaint, and expressly incorporated the

21  Timeline in its complaint by reference.  Dkt. 49 at 35 ¶104, Ex. A.  DC also relies

22  heavily on the Timeline and its allegations in its briefs.  *See, e.g.,* Dkt. 44-1 at 16; 90

23  at 4; 92 at 3; 94 at 14; 160 at 37; 184 at 2; 185 at 4; 205 at 4; 225 at 15; 253 at 4; 305

24  at 9-10, ¶¶30-31; 334 at 22-25; 362 at 11-12; 427 at 4; 521-2 at 30; 538 at 6.

25        Having constructed its case around the Timeline, DC cannot now pretend that

26  information about it "has no conceivable bearing" on this case.  Discovery about the

27  Timeline – exactly when and how it and the Stolen Documents were sent to DC, and

28  what DC knows about this theft and/or who provided the documents – can help verify

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

who authored and/or sent the Timeline,[2] who stole the privileged documents from Mr. Toberoff's firm, their motivations and whether there was any connection or other communications between such persons and DC before, during or after this incident, all of which could aid Defendants in disproving the Timeline's (and by extension DC's) meritless claims.  These documents are "discoverable … as they clearly relate to the subject matter of the lawsuit and the documents may lead to further admissible evidence at trial."  *Youngblood v. Gates*, 112 F.R.D. 342, 348 (C.D. Cal. 1985).  At a minimum, they are discoverable because they relate to the admissibility and/or credibility of the Timeline on which DC heavily relies and could support the impeachment of potential witnesses, including Michaels.  *See Paulsen v. Case Corp.*, 168 F.R.D. 285, 289 (C.D. Cal. 1996) (finding "no merit" to relevance objections where documents "certainly may be used for impeachment purposes and, thus, relate to the credibility of [defendants'] witnesses"); *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 603 (C.D. Cal. 1995) ("Rule 26 further permits the discovery of information which 'may simply relate to the credibility of a witness or other evidence in the case.'") (citation omitted).

*Second,* DC cannot argue that information about the Timeline is irrelevant when DC itself has declared that the "Timeline Is a Proper Subject of Discovery" (Dkt. 44-1 at 16) and served numerous discovery requests aimed at the Timeline. Dkt. 207, Ex. E at 18-19 (Request for Production Nos. 19, 20, 23, 24, 25, 26), YYY at Dkt. 162-14, Ex. DD at 595-612 (Interrogatories Nos. 1-25).  DC also repeatedly moved to compel information about the Timeline and its author.  *See* Dkt. 205 at 1 ("DC Comics seeks an order compelling the Toberoff defendants to produce documents relating to the Toberoff Timeline."); 206 at 5 ("Both the Toberoff

---

[2] Defendants believe the Timeline was authored by Mr. Michaels, but Mr. Michaels has vehemently denied that allegation, while admitting that he met with the Siegels in late 2005 to solicit them, with documents from Mr. Toberoff's legal files.  AD, Ex. D.  Further discovery could obviously help establish whether Mr. Michaels, someone working with Mr. Michaels, or someone entirely unrelated authored the Timeline.

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

Timeline, and the many facts and documents it discloses are relevant to DC's claims…."); *see also* Dkt. 106 at 5 ("[DC] is entitled to conduct discovery regarding … the Timeline.").

*Third*, DC directly placed its timing and handling of the Timeline/Stolen Documents at issue with its repeated assertions that it allegedly received the documents on June 28, 2006, merely "thumbed" through them, sorted these approximately 900 documents into three piles ("privileged," "non-privileged" and "?"), turned them over to a "neutral" "escrow holder," and allegedly made sure Defendants were informed of DC's receipt of these privileged materials within eight days.  *See, e.g.*, AD Exs. A, B.  Defendants are certainly entitled to test and take discovery on such representations by their litigation adversaries.  *See United States v. Lopez*, 45 F. App'x 582, 583 (9th Cir. 2002) (finding evidence relevant where counsel "raised the issue"); *Green v. Peters*, 2000 WL 1230246, at *7 (N.D. Ill. Aug. 24, 2000) (finding discovery on issue relevant where counsel "injected" the issue into case).

*Fourth*, the timing of DC's receipt and its handling of the Stolen Documents are directly pertinent to Defendants' **statute of limitations** defenses as to DC's Fifth and Sixth Claims brought in May 2010.

DC's receipt and review of the Timeline is potentially dispositive of DC's Sixth Claim.  DC's Sixth Claim – alleging unfair competition– is subject to a four-year statute of limitations.  Dkt. 333 at 7-8.  The claim is based, in part, on the 2001 and 2003 PPC Agreements, which were produced to DC in 2006.  *Id.*  DC contends that the claim accrued in 2006 when it received the agreements and is not time-barred.  Dkt. 334 at 25.  However, the Timeline contains pointed allegations regarding the PPC Agreements that would have put DC on inquiry notice.  Dkt. 49, Ex. A at 63, 66; *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988).  If DC reviewed the Timeline earlier than claimed (*i.e.,* in December 2005, consistent with the Timeline's "holiday gift" and Michaels' trajectory in late 2005), the Sixth Claim

13

1  would be time-barred under DC's own arguments, based on its knowledge of the PPC

2  Agreements.

3      DC's Fifth Claim, which is largely based on the Timeline, is subject to a three-

4  year statute of limitations.  Dkt. 333 at 22-23.  Defendants specifically maintain that

5  DC read the Timeline upon its receipt, placing it on inquiry notice, and triggering the

6  statute.  Dkt. 333 at 22-23.  DC contends that it "did not discover" the Timeline's

7  allegations until 2008.  Dkt. 334 at 23.  DC's handling and review of the Timeline is

8  potentially relevant to whether or not DC's Fifth Claim is time barred.[3]

9      DC's Fourth Claim is also subject to a three-year statute of limitations.

10  Defendants argued that the claim is time-barred because the production of the PPC

11  Agreements to DC triggered the statute.  Dkt. 333 at 15-16.  DC argued, in response,

12  that the Timeline triggered the statute and that DC only had inquiry notice when the

13  Timeline was formally produced to it in 2008 (Dkt. 334 at 17, 20-21), not when the

14  Timeline was received/reviewed by DC earlier – once again placing DC's receipt,

15  handling and review of the Timeline at the center of its statute of limitations analysis.

16          ii.      **"Law of the Case" Does Not Bar Discovery Here**

17      DC has represented to the Court and continues to represent that it conducted

18  itself properly after receiving the Timeline/Stolen Documents.  Defendants are

19  entitled to discovery about the propriety of DC's conduct.  DC has repeatedly resisted

20  such discovery, arguing that in 2007 in *Siegel* its conduct was forever established as

21  proper, when this Court commented that "defendants have acted professionally and I

22  think they've acted reasonably," and that "[t]he record does establish that [DC's

---

23  [3] DC also argued that whether or not it read the Timeline was irrelevant because it

24  could not use that information until the Timeline was ordered produced in 2008 (AD,
    Ex. I at 158), but this does not avoid its inquiry notice triggering the statute, and is a

25  legal point for which DC has advanced no authority and which has not been
    adjudicated by any Court; it is also not a basis to evade discovery.  *See Parthemore v.*

26  *Tilton*, 2008 WL 5156698, at *1 (E.D. Cal. Dec. 9, 2008) (rejecting objections where
    relevance was "dependent" on "subsequent determination by court," and that "it is

27  premature to say that this discovery lacks relevance"); *Richmond v. Coastal Bend*
    *College Dist.*, 2009 WL 1940034, at *5 (S.D. Tex. July 2, 2009) (rejecting relevance

28  objections where "a determination of relevance is premature at this point in
    proceeding").

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

former] trial counsel have not reviewed the documents" – a statement made in 2007 that in any event would not apply to DC's current counsel. Dkt. 163-13 at 21.  DC argues that this is "law of the case," and that for this reason further discovery on the subject is forever barred.

This argument fails for several reasons.

*First*, this Court did not hold in 2007 that Defendants were not entitled to discovery into DC's receipt and handling of the Stolen Documents.  The only issue before the Court at that time in *Siegel* was DC's motion to compel the production of the "Stolen Documents" from defendant Laura Siegel Larson; there was no motion by Ms. Larson, or any of the other defendants in this case to take discovery of DC, nor had DC brought interference and unfair competition claims based on the Timeline, or sought to use the Timeline as evidence.

The "law of the case acts as a bar only when the issue in question was actually considered and decided by the first court."  *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995).  Because the issue of whether the Siegels could take discovery of DC on this topic was not before the Court in 2007, there was no finding that the Siegels could not take discovery, and there is no "law of the case" bar to such discovery now. This contrasts with the *Siegel* decisions this Court adopted as "law of the case," which found that a certain specific document, like the 2008 "consent agreement," was privileged and therefore need not be produced to DC.  Dkt. 209 at 1-10.

Furthermore, while this Court commented on DC's conduct, it ordered a simple procedure applicable regardless of DC's conduct:  responsive, non-privileged documents that had not been produced, if any, were to be produced and privileged documents that had been logged were not to be produced.  AD, Ex. C at 29-31. The Court's comments regarding DC hardly constitute the "law of the case."  *See, e.g.*, *Lay v. Gill*, 2012 WL 6020115, at *7 n.1 (E.D. Cal. Dec. 3, 2012) ("law of the case" inapplicable where court "was merely making an observation, not issuing what it believed to be a binding order")*; In re Rock & Republic Enterprises, Inc.*, 2011 WL

2471000, at *8 (Bankr. S.D.N.Y. June 20, 2011) (improper to hold court's "observations, made during a hearing … to be binding legal conclusion for purposes of [other] proceedings"); *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 830 (8th Cir.2008) ( "A district court's comments during oral argument do not constitute a final order subject to the law-of-the-case doctrine."); *X-IT Products, L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 632 (E.D. Va. 2001) ("[C]ertain comments made by U.S. Magistrate Judge . . . at a [] hearing on a variety of then-pending motions… most definitely have *not* become law of the case."); *In re Cajun Elec. Power Co-op., Inc.*, 230 B.R. 693, 703 (Bankr. M.D. La. 1999) (law of case inapplicable to Court's "extremely limited comments" that were not "necessary to the Court's decision"); *Matter of Grand Valley Sport & Marine, Inc.*, 143 B.R. 840, 855 (Bankr. W.D. Mich. 1992) (law of the case doctrine does not apply to "isolated oral comment"); *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 769 F. Supp. 671, 704 (D. Del. 1991) (holding that a court's "comments on the issues" were not "decisions" within meaning of law of the case doctrine).

  *Second*, even if this Court's initial decision is taken to have established, as "law of the case" or otherwise, the propriety of DC's conduct, that would not bar discovery.  This Court recognized that the "law of the case" doctrine was "a short-hand description of a trial court's desire to adhere to a ruling previously made, recognizing, of course, a trial court's ability to reconsider a ruling under appropriate circumstances."  Dkt. 209 at 3.  As interlocutory rulings are subject to reconsideration, discovery may still be taken.  *See Software Rights Archive, LLC v. Google, Inc.*, 2010 U.S. Dist. LEXIS 11581, at *2 (N.D. Cal. Feb. 9, 2010) (granting motion to compel production of documents relevant to an issue already ruled upon where "discovery of the documents is still relevant as the ruling is not final and the documents may support a motion for reconsideration"); *Osage Tribe of Indians of Oklahoma v. United States*, 84 Fed. Cl. 495, 499 (Fed. Cl. 2008) (holding that, where the court made "interlocutory" rulings on certain issues that "are not final

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED
DOCUMENTS

judgments," "the court does not believe that its prior orders should be deployed to prohibit the parties' discovery requests and impede the development of evidence at this stage in the case before the court renders final judgment").  DC cannot and should not be permitted to present a limited slice of evidence to obtain a favorable comment, and then turn around and use that comment to block all further inquiry.

*Third*, even if one assumed that the "issue" of the propriety of DC's handling of the Timeline/Stolen Documents was decided, the Requests are relevant to other issues.  As discussed above, discovery about the origins, timing of the theft and DC's receipt of the Stolen Documents will provide additional details about the circumstances surrounding the Timeline, which, in turn, may help confirm and establish the identity of the Timeline author(s), additional participants, if any, motives, etc., and/or will establish, for purposes of Defendants' statute of limitations defenses, the date DC was put on inquiry notice of the Timeline's allegations.

### iii.    The Requests Are Not Overbroad Or Ambiguous

DC's repeated objections of overbreadth or undue burden lack merit.  Each of the Requests is properly limited in subject matter, scope and time – most by the fact that they can extend no further back than DC's receipt of the Timeline/Stolen Documents.  *See United States ex rel. El-Amin v. George Washington Univ.*, 2001 U.S. Dist. LEXIS 23438 (D.D.C. July 13, 2001) (requests for production are not overbroad when they are "clearly defined, limited in subject matter, and by its terms, focused on the time period relevant to this case"); *Bhandari v. VHA Sw. Cmty. Health Corp.*, 2010 WL 4928874, at *6 (D.N.M. Oct. 18, 2010) (requests for production were appropriately narrow because they were "limited in time").

DC complains that compliance with the Requests would be time-consuming, but just because "compliance with a 'Request for Production' would be costly or time-consuming is not ordinarily sufficient reason to grant a protective order where the requested material is relevant and necessary to the discovery of evidence." *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976).  In addition, a

1  party resisting discovery "must … show specifically how … each … request for

2  production is … overly broad, burdensome or oppressive," which DC has not done or

3  even attempted to do with respect to these Requests.  *Quiroz*, 2012 U.S. Dist. LEXIS

4  109949, at *12 (quotation omitted).  "[G]eneral or boilerplate objections such as

5  'overly burdensome and harassing' are improper – especially when a party fails to

6  submit an evidentiary declaration supporting such objections."  *A Farber & Partners,*

7  *Inc. v.* Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006).

8       Here, DC offers no real argument that producing these documents would be

9  unduly burdensome.  Nor is there any reason to think it would be:  DC's receipt and

10  handling of the documents occurred during ongoing litigation, and "[p]arties to a civil

11  action in federal court are under a duty to preserve evidence that they know is

12  relevant or reasonably could lead to the discovery of admissible evidence."  *Young v.*

13  *Facebook, Inc.*, 2010 WL 3564847, at *1 (N.D. Cal. Sept. 13, 2010) (citing *Leon v.*

14  *IDX Systems, Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)).  The responsive documents

15  (*e.g.*, the packaging) should obviously have been preserved by DC, and DC should be

16  in a position where it can readily obtain and produce such responsive documents, as it

17  routinely searches both DC Comics' and Warner's files.  *See* AD, Ex. I at 163-64

18  (listing several DC Comics custodians and 39 Warner custodians purportedly

19  searched in response to discovery requests).

20       As to DC's ambiguity objections, "it is not ground for objection that the

21  request is 'ambiguous,' unless [it is] so ambiguous that the responding party cannot,

22  in good faith, frame an intelligent reply."  *U.S. ex rel. Englund v. Los Angeles*

23  *County*, 235 F.R.D. 675, 685 (E.D. Cal. 2006); *McCoo v. Denny's, Inc.*, 192 F.R.D.

24  675, 694 (D. Kan. 2000) (parties "should exercise reason and common sense to

25  attribute ordinary definitions to terms and phrases utilized in [discovery requests]").

26  DC is obviously able to understand what is sought by these Requests.

27

28

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

### iv. Hearsay Statements By DC's Counsel Are Not A Substitute For Document Discovery

In lieu of documentary evidence, DC has offered solely the unsworn statement of its outside counsel that "the first documents in DC [Comics]'s files concerning the Timeline are dated June 28, 2006." AD, Ex. I at 159. This is obviously inadequate. Statements by counsel that purport to "moot" an issue are obviously not a substitute for document discovery on that issue. *See United States v. 22.80 Acres of Land*, 107 F.R.D. 20, 22 (N.D. Cal. 1985) ("[A] statement by counsel is, of course, not competent evidence."); *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 20 (1st Cir. 1999) (same); *Fernandez v. Chardon*, 681 F.2d 42, 56 n. 10 (1st Cir. 1982) (same). Furthermore, the statement, while seemingly unequivocal, is ambiguous as it does not clarify: what specific files and custodians were searched; whether the files of "DC" are the same as those of its parent Warner; whether there are documents not in DC's files but otherwise in its possession, custody or control; etc.

Moreover, Defendants unfortunately cannot give much weight to the assurances of DC's counsel. This Summer, DC turned over two letters that were obviously responsive and relevant to its First Claim, shortly before filing a motion for partial summary judgment on that claim that included the letters as exhibits. Dkt. 514 at 3-5. When Defendants demanded an explanation, DC's counsel represented that an "exhaustive" search had occurred and that all responsive documents had been produced: "I can confirm that we have conducted a good-faith, comprehensive search for responsive documents pursuant to Rule 34 and have found no other responsive documents requested by defendants in this case." Dkt. 514-1, Ex. F. A few months later, DC referred to a relevant responsive document in opposition to Defendants' summary judgment motion, but only produced the document at Defendants' insistence *two* business days before Defendants' reply was due. Dkt. 514, 5-7. After the summary judgment motions were taken under submission, DC turned over yet another responsive and relevant document *one hour* before including

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

it in an improper sur-reply. Dkt. 514 at 7. DC then faulted Defendants for accepting its counsels' representations and not bringing a motion to compel. Dkt. 522 at 9, 10. Given this troubling pattern of conduct, Defendants can hardly rely on the unsworn assurances of DC's counsel.

### v. DC's Meet-And-Confer Proposals Were Inadequate

DC's proposals after the parties' meet-and-confer were entirely inadequate. DC offered to produce only the following documents:

- A "July 5, 2006, letter to counsel in *Siegel*" by DC's hired "escrow" – a document already in Defendants' possession. DC did not offer to produce any of its correspondence with the "escrow" that had not already been produced. AD, Ex. I at 159.

- Its communications "with [David] Michaels if and when defendants do the same." AD, Ex. I at 159. Defendants withheld their correspondence because, *as this Court held*, such communications were protected by the attorney-client privilege. Dkt. 262 at 4. DC made no such assertion, nor could privilege apply to DC's communications with the Siegel's former attorney, Michaels.

Aside from withholding such non-privileged documents unless Defendants agreed to produce privileged documents, DC made it crystal-clear that it would produce *no* documents in response to Defendants' focused Requests relating to the Timeline.

### 3.    Defendants' Specific Discovery Requests

### i.    Requests Nos. 3-6, 9-16 (When Did DC Receive The Timeline And Stolen Documents?)

**Request No. 3**
All DOCUMENTS that REFER to the date and/or circumstances surrounding WARNER's receipt of the STOLEN DOCUMENTS.

**Response to Request No. 3**
[Reproduced *supra*]

**Request No. 4**
All DOCUMENTS that REFER to the date and/or circumstances surrounding WARNER's receipt of the TOBEROFF TIMELINE.

**Response to Request No. 4**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21.

DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 5**

All DOCUMENTS that REFER to the date and/or circumstances surrounding YOUR receipt of the STOLEN DOCUMENTS.

**Response to Request No. 5**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21.

21

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

DC objects to the definition of "YOUR" as vague and overbroad and responds to that term as limited to the relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 6**

All DOCUMENTS that REFER to the date and/or circumstances surrounding YOUR receipt of the TOBEROFF TIMELINE.

**Response to Request No. 6**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21. DC further objects on the ground that based on defendants' definition of "YOUR," there is no one "date" on which the referenced document was received.

DC objects to the definition of "YOUR" as vague and overbroad and respond to that term as limited to the relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not

22

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 9**

All DOCUMENTS which show when WARNER first received the STOLEN DOCUMENTS.

**Response to Request No. 9**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21.

DC objects to the definition of "WARNER" and will respond to that term as limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 10**

All DOCUMENTS which show when WARNER first received the TOBEROFF TIMELINE.

**Response to Request No. 10**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited

in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21.

DC objects to the definition of "WARNER" and will respond to that term as limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 11**

All DOCUMENTS which show when WARNER first became aware of the STOLEN DOCUMENTS.

**Response to Request No. 11**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21.

DC objects to the phrase "became aware" as vague and ambiguous. DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 12**

All DOCUMENTS which show when WARNER first became aware of the TOBEROFF TIMELINE.

**Response to Request No. 12**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21.

DC objects to the phrase "became aware" as vague and ambiguous. DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 13**

All DOCUMENTS which show when YOU first received the STOLEN DOCUMENTS.

**Response to Request No. 13**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21. DC further objects on the ground that based on defendants' definition of "YOU," there is no one "date" on which the referenced documents were received.

DC objects to the definition of "YOU" and will respond to that term as limited to relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

## Request No. 14

All DOCUMENTS which show when YOU first received the TOBEROFF TIMELINE.

## Response to Request No. 14

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21. DC further objects on the ground that based on defendants' definition of "YOU," there is no one "date" on which the referenced document was received.

DC objects to the definition of "YOU" and will respond to that term as limited to relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC

agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 15**

All DOCUMENTS which show when YOU first became aware of the STOLEN DOCUMENTS.

**Response to Request No. 15**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21. DC further objects on the ground that based on defendants' definition of "YOU," there is no one "date" on which the referenced documents were received.

DC objects to the phrase "became aware" as vague and ambiguous. DC objects to the definition of "YOU" and will respond to that term as limited to relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 16**

All DOCUMENTS which show when YOU first became aware of the TOBEROFF TIMELINE.

**Response to Request No. 16**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21. DC further objects on the ground that based on defendants' definition of "YOU," there is no one "date" on which the referenced document was received.

DC objects to the phrase "became aware" as vague and ambiguous. DC objects to the definition of "YOU" and will respond to that term as limited to relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

Requests Nos. 3-6, 9-16, 53, 56-59, and 65 seek documents and communications that show or refer to how and when DC first received the Timeline and Stolen Documents. These Requests are narrow, limited in subject matter to DC's initial receipt of the Timeline/Stolen Documents and limited in time to on or after DC's receipt of the documents. There is nothing overbroad or unduly burdensome about these Requests.

The Requests are all directly relevant to DC's claim that it received the Timeline/Stolen Documents in June 2006. Apart from a self-serving hearsay declaration by Warner's Vice President, Senior Litigation and Chief Patent Counsel, Wayne Smith (AD, Exs. A-B), DC has studiously avoided providing any evidence to support this claim – no mail log, no packaging materials, no contemporary internal correspondence (*e.g.*, "My boss has received an anonymous package related to the Superman case"); no declaration by anyone with first-hand knowledge. The Timeline

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

and Stolen Documents (including numerous facially privileged documents belonging to DC's litigation adversaries) were sent to a closed studio lot, with a highly developed security and legal infrastructure, and received by at least three of Warner's highest-ranking studio executives, including its General Counsel, each with support staff, in the midst of high-stakes litigation.  The notion that there are no documents that show when Warner received this bombshell lacks all credibility.

Moreover, there is evidence to suggest that DC's account of its receipt of the Stolen Documents is inaccurate and/or incomplete:  the consistent failure, evasion, and now outright refusal to produce *any* documentary evidence or first-hand testimony corroborating a June 2006 date; the Timeline's reference to four recipients, instead of three; that the Stolen Documents were stolen from Mr. Toberoff's firm sometime in October 2005; that Michaels' contacts with Laura and Joanne Siegel were in November-early December 2005; and the Timeline stated that DC should consider the privileged documents an "early holiday gift."  Dkt. 49, Ex. A at 62.

If DC did, in fact, receive the documents in June 2006, that should be simple enough to prove, and DC's adamant refusal to do so over the course of six years is puzzling.  However, if DC received the Timeline/Stolen Documents in late 2005, then they (1) improperly waited for nearly six months before notifying opposing counsel and the Court of their receipt of stolen privileged property, in violation of the law, their ethical duties and the protocols in *State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644 (1999) that DC purported to rely upon; and (2) thereafter made and continue to make material misrepresentations to the Court and opposing counsel. Either way, DC should be compelled to produce these documents and to log any responsive privileged communications.

### B.    DC's Position

It is unfortunate the Court has to wade through defendants' 26-page filibuster concerning these 12 document requests when the reasons to deny their motion (on these and all requests) are so simple and plain:  Defendants (1) failed to meet-and-

confer; (2) attempt to re-litigate issues they lost many times before; (3) seek documents that have no relevance to any material issue; and (4 & 5) pursue requests that, in addition to being impermissibly overbroad, have largely been mooted by DC's recent document productions and interrogatory responses.

1.    Defendants' Motion Can And Should Be Denied Outright Based On Their Violation Of The Meet-And-Confer Rules.

The parties had a meet-and-confer discussion about defendants' requests on November 28, 2012, during which DC explained that, while the requests sought irrelevant documents and were otherwise improper, DC was willing to work toward a compromise to avoid burdening the Court with an unnecessary motion.  Seto Decl. ¶ 2.  Defendants stated that they, too, wanted to work out a compromise.  *Id.*  DC thus sent defendants a lengthy follow-up letter, which endeavored to address the questions defendants had raised on November 28 and agreed to provide key information and documents about DC's receipt and handling of the Timeline—including when Warner first received the Timeline.  Adams Decl. Ex. I.  For example:

- DC identified the first documents in its files related to Warner's receipt of the Timeline:  a June 2006 *Los Angeles Lawyer* article and the three principal authorities it cites, which Mr. Smith downloaded immediately after receiving the Timeline documents on June 28, 2006, to determine his legal and ethical obligations in handling the documents.  *Id.* Exs. I at 159, A ¶¶ 5-6; Seto Decl. Ex. 1.

- DC offered to produce (and did produce on December 17, 2012) its first written communication with escrow agent John Quinn concerning the Timeline:  Mr. Quinn's July 5, 2006, letter to counsel in *Siegel* confirming that the Timeline documents were "delivered to the Warner Bros. offices during the middle of last week"—*i.e.*, June 28, 2006.  Adams Decl. Ex. I at 159; Seto Decl. Ex. 6 at 70-71.  DC confirmed it had no earlier written communications with Mr. Quinn or his Arnold & Porter law firm.  And as described in Mr.

1    Smith's declaration, all of the Timeline documents "were handed over to Mr.

2    Quinn" on June 30, 2006.  Adams Decl. Exs. I at 159, A ¶ 13.

3    DC offered to discuss these matters and productions further, and made clear

4    that it was "investing a substantial amount of time and resources to these [meet-and-

5    confer] efforts, and remind you that we need to close the loop on these issues before

6    taking any next steps, including filing any motion with the courts."  Adams Decl. Ex.

7    I at 165.  DC has since made three document productions responding to a wide array

8    of defendants' requests (totaling 5,736 pages) and served sworn interrogatory

9    responses containing further details about its receipt and handling of the Timeline,

10   Seto Decl. Exs. 5, 6, 8, 9—facts that defendants omit from their motion.  Certain of

11   these facts they had to omit, because defendants did not even wait to see DC's

12   promised document productions or interrogatory responses before serving their

13   motion.  *Id.* Ex. 6 at 69.  And nor did they withdraw this motion to address DC's

14   productions.  *Id.* Ex. 7.

15   Indeed, defendants did not respond to DC's lengthy meet-and-confer letter.

16   Instead—with no warning or notice to DC, and without waiting to see what

17   documents and sworn responses DC would furnish—defendants served their 65-page

18   motion to compel in the middle of the winter holidays.  DC asked defendants to

19   withdraw the motion, explaining that "defendants have violated their meet-and-confer

20   obligations by filing an improper motion in the middle of an ongoing meet-and-

21   confer," but defendants refused.  *Id.* Ex. 6 at 69.  (DC repeated this request before

22   defendants insisted on filing this joint stipulation.)

23   Defendants seek to justify their failure to comply with Rule 37 by dismissing

24   DC's November 28 meet-and-confer letter and the representations and compromises

25   it contained as "unsworn" "hearsay."  *Supra* at 19.  This is no excuse for failing to

26   comply with Rule 37 or ignoring that DC's letter was, in fact, supported by sworn

27   evidence, including Mr. Smith's 2007 declaration.  If defendants sought further

28   sworn representations, they should have asked for them before burdening the Court

31

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

with this lengthy motion.  DC could have provided any reasonable sworn verification defendants requested.[4]

Moreover, if defendants had raised their other supposed questions about DC's letter, *supra* at 19, during the meet-and-confer process—as Local Rule 37 requires—rather than in their motion, DC could have clarified, for example, that it searched the files of all custodians who reviewed any portion of the Timeline documents in June 2006 (Mr. Smith and John Schulman), that this search included Warner's files, and that neither DC nor Warner have *any* documents concerning the Timeline pre-dating June 28, 2006, in their possession, custody, or control.

This Court rightly denied defendants' only other motion to compel on the ground that the dispute was "not ripe for Court adjudication" because "the Local Rules have not been followed assiduously."  DN 467 at 1-2.  "[T]here was further compromising … that may have taken place had the [meet-and-confer] process not stopped," and DC had attempted to moot the issues raised in defendants' motion by "serv[ing] amended responses prior to the filing of the motion."  *Id.* at 1-2. Defendants have now repeated the same rules violation, deliberately abandoning the good-faith meet-and-confer process in which DC was engaging.  This Court should deny their motion on this ground alone.  *Id.*; *Sequoia Prop. v. U.S.*, 203 F.R.D. 447, 451-52 (E.D. Cal. 2001) (denying motion to compel for failure to meet and confer); *accord Wilson v. Aargon Agency, Inc.*, 262 F.R.D. 561, 564 (D. Nev. 2010); *Williams v. Kernan*, 2010 WL 731860, at *2 (N.D. Cal. Mar. 1, 2010).

## 2.    Defendants Have Already Litigated And Lost These Issues.

In *Siegel* and this case, defendants have asserted—as they do here—that the Timeline documents were delivered to Warner months earlier than June 28, 2006, and Warner hid this and misused the documents.  DC has time and again pointed out that

---

[4] In any event, defendants' suggestion that "the assurances of DC's counsel" are somehow unreliable, *supra* at 19, is specious; the District Court rejected their arguments and recognized them as an obvious ploy to distract from DC's sanctions motion targeting defendants' misconduct.  DN 533 at 2.

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

there is not a shred of evidence supporting these assertions, and the courts have repeatedly agreed with DC. Defendants are barred from litigating these same issues again and again, yet seek to do exactly that under the auspices of this motion to compel. This, too, is improper and another basis to deny this motion.

Background. In *Siegel*, defendants argued this Court should deny DC's motion to compel production of the Timeline documents because Warner acted improperly in receiving and handling the documents. Seto Decl. Ex. 3 at 57-61; Adams Decl. Ex. C at 20:2-21:11, 24:15-28:21. Defendants claimed that the Timeline documents were delivered to Warner in December 2005 rather than June 2006; that Warner failed to produce evidence confirming when the documents were delivered; that Mr. Smith reviewed the documents in detail before giving them to the escrow agent; and that Mr. Smith's sworn declaration was unreliable hearsay. Seto Decl. Ex. 3 at 57-61. Warner refuted these accusations, *id.* at 27-31; Adams Decl. Exs. A, B, and at a April 30, 2007, hearing on DC's motion, the Court said that Warner "acted professionally [and] reasonably" in briefly reviewing the Timeline documents and turning them over to the escrow, Adams Decl. Ex. C at 30:3-7. Defendants challenged this ruling in 2008, Case No. CV-04-8400, DN 240, but Judge Larson held their time to object "has long since expired," DN 42-14 at 216-17.

At the outset of this *Pacific Pictures* case, defendants tried and failed to re-litigate the exact same issues, arguing that DC was barred from relying on the Timeline documents in this case because Warner supposedly received them months earlier than it claimed and had, thus, misused the documents. DN 42 at 8-14, 35-39. Again, DC refuted these false charges, *id.* at 40-43, and defendants conceded that the Timeline "was the subject of extensive motion practice in the *Siegel* Action," *id.* at 1. This Court denied defendants' motion, stating that it was "not going to revisit [Judge Larson's] ruling" in *Siegel*. DN 95 at 55:25-56:1.

Undeterred, defendants repeated their false accusations to the Ninth Circuit. After this Court held that defendants waived privilege over the Timeline documents

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

by disclosing them to the U.S. Attorney's Office, defendants filed a petition for a writ of mandamus. In their writ papers, defendants claimed that Warner's receipt and handling of the Timeline documents was improper for the same reasons they argued in *Siegel* and this case. Appeal No. 11-71844, DN 1-1 at 2, 18-19 & n.1. The Ninth Circuit denied defendants' writ petition, rejected their arguments about DC's alleged misconduct—noting, for example, that DC appropriately "entrusted [the documents] to an outside attorney" upon their receipt, "[r]ather than exploiting [them]"—and instead specifically questioned Toberoff's "ethical and professional" misconduct. *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1124-25 (9th Cir. 2012). Defendants filed a petition for rehearing challenging these factual findings and asking the Ninth Circuit to "correct" them, Appeal No. 11-71844, DN 31-1 at 7-17, but the Court denied this baseless petition, *id.*, DN 44.

 <u>Defendants cannot re-litigate these very issues that they lost.</u> There is no reason or basis for defendants to re-litigate for a *fifth* time Warner's receipt and handling of the Timeline documents. Defendants devote pages of their motion to arguments why "law of the case" doctrine should not apply, *supra* at 14-17, but ignore the more basic point that they have litigated the exact same issues, again and again, and there is no basis for the Court to revisit these prior rulings.

 The law of the case *does* apply, and bars defendants from re-opening these issues. As defendants repeatedly have argued, the "'law of the case' doctrine stands for the common-sense principle that the same *issue* presented a second time in the same court should lead to the same result, as to do otherwise would create intolerable instability for the parties." DN 78 at 21-22; *see also* DN 80 at 21-22; 160 at 56-57; 231 at 10-11. Indeed, defendants took the *precise opposite* position they advocate here in successfully opposing DC's motion to compel production of the 2008 consent agreement in 2011. Defendants argued that Judge Larson's statement during a hearing in *Siegel* that he would "accept Mr. Toberoff's characterization of [the Consent Agreement] as a privileged document, as an officer of the court," DN 163-11

34

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

at 724:9-11, barred DC from challenging the privileged status of that agreement in this case, DN 160 at 56-57—despite the emergence of new, material facts confirming the agreement was not privileged, *see* DN 501; 521.  According to defendants, "'[w]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'"  DN 80 at 21-22 (quoting *Disimone v. Browner*, 121 F.3d 1262, 1266-67 (9th Cir. 1997)).  This Court agreed, and denied DC's motion to compel.  DN 209 at 1-10.

Defendants cannot credibly claim here that this Court's findings about DC's receipt and handling of the Timeline documents made during a different hearing in *Siegel*, Adams Decl. Ex. C at 30:3-7—as well as its ruling here denying defendants' motion for a protective order, DN 95 at 55:25-56:1, or on appeal, *Pacific Pictures*, 679 F.3d at 1124-25—deserve less deference or are not binding.

<u>Defendants' other counterarguments are unavailing</u>.  Defendants *first* say the "issue" before the *Siegel* court—*i.e.*, *DC's* entitlement to discovery concerning the Timeline—is different than the issue now before this Court—*i.e.*, *defendants'* entitlement to discovery concerning the Timeline.  *Supra* at 15.  Not so.  While the procedural posture may have been different in *Siegel*, the issue was the same: whether DC's receipt and handling of the Timeline documents was proper and whether DC lied about when it received the documents.  Law of the case was designed to prevent the "intolerable instability" that would result if defendants were permitted to re-litigate the same issue over and over.  *Ridgeway v. Mont. High School Ass'n*, 858 F.2d 579, 587-88 (9th Cir. 1988); *accord Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).

*Second*, defendants dismiss the Court's on-the-record statements in *Siegel* as passing, non-binding "observations."  *Supra* at 15-16.  Defendants disregard this Court's ruling *in this case* upholding the *Siegel* court's findings and making clear there is no basis to "revisit" them.   DN 95 at 55:25-56:1.  And they ignore that Judge Larson refused to revisit those statements—holding defendants had waived the right

35

to challenge the Court's findings.  *Supra* at 33.  Moreover, nor were the *Siegel* court's findings mere "observations"; defendants sought relief on the basis of Warner's alleged misconduct (*i.e.*, denial of its motion to compel), and this Court rejected such arguments and granted DC's motion.  DN 42-13 at 135-42; Case No. CV-04-8400, DN 158.  Law of the case bars relitigation of issues that were "directly dealt with" in a prior proceeding, even if they were "not the main issue[s] to be determined."  *Kelly v. Provident Life & Accident Ins. Co.*, 2011 WL 2680475, at *11 (S.D. Cal. July 8, 2011); *Eichman v. Fotomat Corp.*, 880 F.2d 149, 157 (9th Cir. 1989).

*Third*, defendants say discovery should be permitted because this Court *could* reconsider its ruling in *Siegel*.  *Supra* at 16.  Defendants identify no material change in law or fact that would justify reconsideration under Rule 7-18, and the *Siegel* court correctly observed that defendants' opportunity to challenge its 2007 ruling "expired" years ago.  DN 42-14 at 216-17.  The only changed circumstance since *Siegel* is this Court's and the Ninth Circuit's refusal in this case to accept defendants' arguments about DC's alleged misconduct.  *Supra* at 33-34.  The reconsideration procedure "does not give [parties] broad license to engage in extremely costly, unproductive discovery on issues no longer relevant…."  *Jenkins v. Campbell*, 200 F.R.D. 498, 501 (M.D. Ga. 2001); *Lafarge N. Am., Inc. v. Matraco-Colo., Inc.*, 2008 WL 2474638, at *3-4 (S.D. Fla. June 19, 2008).

### 3. Defendants' Requests Are Not Relevant To Any Claim, Defense, Or Material Issue In Dispute.

The date DC received the Timeline documents is irrelevant.  This Court already granted summary judgment for DC on its First and Third Claims, and deemed DC's Second Claim moot.  DN 507.  The timing issue defendants now belatedly seek to take discovery on and litigate bears on no material issue of fact with respect to DC's Fourth, Fifth, or Sixth Claims.

1    Defendants requested this information—some two years after this case

2    began—to re-litigate issues that were long ago decided, *supra* at 32-36; distract from

3    their own discovery misconduct, DN 500, 527; and harass DC and Warner.  The

4    federal rules prohibit such discovery.  *See* FED. R. CIV. P. 26(g)(1)(B)(ii) (discovery

5    cannot be made "for any improper purpose, such as to harass, cause unnecessary

6    delay, or needlessly increase the cost of litigation"); *Khalilpour v. CELLCO P'ship*,

7    2010 WL 1267749, at *1 (N.D. Cal. Apr. 1, 2010) (discovery improper where

8    documents sought are "irrelevant" and no legitimate "need for the information");

9    *Dawe v. Corrections USA*, 2008 WL 1849802, at *11 (E.D. Cal. Apr. 23, 2008)

10   (denying motion where documents sought "have little or no bearing on the actual

11   claims and defenses" and "the tenor of these requests appear designed to harass").

12   Defendants' theories of relevance—most of which were not even raised during

13   the parties' meet-and-confer exchanges—fail to satisfy defendants' burden to

14   "describe with a reasonable degree of specificity the information they hope to obtain

15   and its importance to their case."  *Johnson v. Nw. Airlines, Inc.*, 2009 WL 839044, at

16   *2 (N.D. Cal. Mar. 30, 2009); *accord Desert Valley Painting & Drywall, Inc. v. U.S.*,

17   2012 WL 4792913, at *2 (D. Nev. Oct. 9, 2012).

18                    *i.    Statute-of-Limitations Defenses*

19   Defendants claim the date Warner received the Timeline is relevant to their

20   statute-of-limitations defenses, since if the Timeline was delivered in December 2005

21   (as defendants suggest) rather than June 2006 (as the evidence shows and the courts

22   found), the statutory time limit on DC's Fourth, Fifth, and Sixth Claims expired

23   before DC filed its complaint in May 2010.  *Supra* at 13-14.  This argument was not

24   only already decided against defendants, it was concocted for this motion.  While

25   defendants have filed close to 10 motions asserting statute-of-limitations defenses

26   (including Rule 12 motions, SLAPP motions, and a cross-motion for summary

27   judgment), they *never* raised this argument before DC resisted the belated discovery

28   defendants now seek.

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

Defendants' theory of relevance disregards the evidence and Court findings that Warner received the Timeline on June 28, 2006, *see supra* at 30-31, 33-34, and ignores that the District Court rejected defendants' same statute-of-limitations arguments in granting summary judgment for DC on its Third Claim, *see* DN 462 at 24; 507.  It also ignores that defendants represented and argued that no discovery— *none*—was required on the Third Claim.  DN 495 at 2 & n.6; 495-4 at 1-5.

Turning to the specifics of defendants' new argument, defendants have long argued that DC was required to file its Fourth and Fifth Claims within the three-year statute-of-limitations—and no theory of tolling applies.  *Supra* at 13-14.  Thus, under defendants' view, DC's claims would only be timely had DC received the Timeline in late May 2007—or three years before DC filed its complaint in this case.  Thus, defendants' specious timing argument—about whether Warner received the Timeline in June 2006 or December 2005—is utterly irrelevant.  Under their view, argued in over 10 briefs filed before the District Court and the Ninth Circuit, DC's claims were untimely because Warner received the Timeline at the very latest in June 2006.  *E.g.*, DN 145-1 at 24; 146-1 at 18-20; Ninth Circuit Appeal No. 11-56934, DN 8 at 47-49.

Defendants' theory of relevance as to DC's Sixth Claim, which is subject to a four-year statute-of-limitations, *supra* at 13, is equally without merit.  Defendants challenged DC's Third Claim—which was subject to a shorter, three-year statutory period—as untimely, and the District Court concluded the claim was timely, granting DC summary judgment on that parallel claim.  DN 507 at 16-17.  Defendants had argued that the statute-of-limitations on DC's Sixth Claim began running in *2003 at the latest*, *e.g.*, DN 145-1 at 21-22 n.11; 147-1 at 10-11; 333 at 8, but DC showed that the statute did not begin to run until *2008*—when defendants entered into the rights-tying "consent" agreement that the District Court held was unlawful, DN 507 at 5, 17, and when defendants produced the Timeline pursuant to court order, DN 334 at 16-17, 20-21, 22-23, 25; 458 at 25; Ninth Circuit Appeal No. 11-56934, DN 37-1 at

38

54-57; DN 42-14 at 220-21; *see also* Adams Decl. Ex. A ¶¶ 8-13.  Defendants ignore this ruling, which eviscerates the position they now assert.  *Supra* at 13-14.

Knowing this, they assert a series of other new relevance theories that they did not press during the parties' meet and confer.  None has merit:

### ii.    Defendants' Conspiracy Theory of Relevance

Defendants say they have "legitimate concerns" about when DC received the Timeline, *supra* at 2, but identify no basis for concern—*and none exists*.  Defendants speculate the Timeline was sent to Warner soon after December 12, 2005—when the Siegels ended communication with Michaels.  *Supra* at 2; DN 427-11 at 1078.  But they fail to address the fact (pointed out by DC in the meet-and-confer process) that the Timeline's June 28, 2006, delivery was apparently timed to coincide with the release of *Superman Returns*—the first feature Superman film since 1987, which was released the same day the Timeline was received.  Adams Decl. Ex. I at 159 n.1.  As for Toberoff's speculation that Michaels sent the "holiday gift" in December, that makes little sense.  Had Michaels wanted to remain anonymous, it would make little sense for him to send the Timeline just days after the Siegels allegedly rebuffed him.  Moreover, while defendants hype the Timeline's reference to an "*early* holiday gift," *supra* at 2, 6, 7, 29, a package sent in mid-December hardly qualifies.  In any event, if Toberoff wanted to explore these issues—and not merely harass DC and Warner— he would have deposed or served discovery on Michaels, something he tellingly has chosen never to do.

### iii.    The Claim that DC "Injected" the Issues into Discovery

Defendants say DC invited this discovery by "injecting" Mr. Smith's declaration into this litigation.  *Supra* at 13.  Not so.  In the cases defendants cite, a party opened the door to discovery by making an affirmative argument at trial or giving conflicting factual accounts.  *See U.S. v. Lopez*, 45 Fed. Appx. 582, 583 (9th Cir. 2002) (unpublished) (court properly allowed "[l]imited expert testimony" to respond to defendants' argument at trial that went to ultimate issue of guilt); *Green v.*

*Peters*, 2000 WL 1230246, at *7 (N.D. Ill. Aug. 24, 2000) (in action against multiple prison officials, defense counsel gave conflicting factual accounts on key substantive issue, entitling plaintiffs to discovery after cut-off date).  DC has done neither; it submitted Mr. Smith's declaration in *Siegel* for the sole purpose of countering defendants' accusation that DC mishandled the Timeline documents.  *See* Seto Decl. Ex. 2; Adams Decl. Ex. A; DN 42-13 at 132-42.  DC republished that declaration in this case, DN 42-13 at 144-49, when defendants improperly tried to relitigate the court's rulings in *Siegel*.  *Supra* at 33-34.

### iv.  The Relevance of the Timeline Itself

Defendants say their requests *must* be relevant because DC attached the Timeline to its complaint and referenced its contents in briefing.  *Supra* at 11.  This argument is equally flawed:  defendants conflate the *contents* of the Timeline—which are relevant to DC's claims and defendants' defenses—with the circumstances surrounding DC's receipt and handling of the Timeline—wholly irrelevant issues that were litigated and decided long ago, *see supra* at 32-36.

DC's Fourth, Fifth, and Sixth Claims allege that Toberoff and his alter-ego companies orchestrated a web of illicit agreements with the Siegel and Shuster heirs to interfere with DC's rights and agreements.  *See* DN 49 ¶¶ 174-89.  The Timeline, which exposes Toberoff's unlawful scheme, is relevant to these tort claims; though its significance has substantially decreased in the past two years, as new evidence uncovered in discovery (including documents identified in the Timeline) independently corroborated its and DC's claims, *see* DN 500 at 6-11, 13-21.

The collateral issue on which defendants seek discovery—*e.g.*, whether Warner received the Timeline in December 2005 or June 2006—is irrelevant to DC's Fourth through Sixth Claims.  Defendants' suggestion that such discovery "*could* lead" to admissible evidence, *supra* at 11-12 (emphasis added), and reliance on the "liberal" discovery standards, *id.* at 10-11, are insufficient.  Relevance rules are "not so liberal as to allow a party 'to roam in shadow zones of relevancy and to explore

40

matter which does not presently appear germane on the theory that it might conceivably become so.'" *Specialized Bicycle Components, Inc. v. Barton*, 2011 WL 1599653, at *2 (N.D. Cal. Apr. 28, 2011); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) (court will "not condone the use of discovery to engage in 'fishing expedition[s]'"). A party seeking to compel discovery must establish "a plausible chain of inferences showing how discovery of the item sought would lead to other admissible evidence"—something defendants cannot do. W. SCWHARZER ET. AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 11:615 (2012); *Johnson*, 2009 WL 839044, at *2. "A mere hope that the requested ... documents contain information that might prove to be relevant later … is insufficient." *Emara v. Multicare Health Sys.*, 2012 WL 5205950, at *3 (W.D. Wash. Oct. 22, 2012).

### v.    Credibility

Defendants claim the discovery they seek could "relate to the admissibility and/or credibility of the Timeline" or "support the impeachment of potential witnesses, including Michaels," *supra* at 12, but fail to explain how or why discovery concerning DC's receipt of the Timeline would affect its admissibility or the credibility of its allegations or author. If defendants were truly interested in learning this information or impeaching Michaels, they would have deposed or subpoenaed him directly. ***Again, they notably have never done so.***

### vi.    DC's Discovery

Finally, that DC served discovery related to the Timeline does not justify defendants' unrelated and improper requests. *Cf. supra* at 12. DC sought discovery concerning the *contents* of the Timeline, and upon learning that defendants had "sought to blunt the impact of the Toberoff Timeline by asking the U.S. Attorney's office ... to initiate a criminal investigation of its author," DN 205 at 1, served discovery concerning this disclosure to show that a waiver had occurred. There is no parallel here. DC had no privilege in the Timeline materials to waive.

### 4.    Defendants' Requests Are Moot.

Rule 26 says a court "*must*" limit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive."  FED. R. CIV. P. 26(b)(2)(C)(i) (emphasis added); *see Hall v. Sullivan*, 231 F.R.D. 468, 475 (D. Md. 2005) (denying motion to compel responses to document requests where information could be obtained from another source); *Sheakalee v. Fortis Benefits Ins. Co.*, 2008 WL 4279383, at *4 (E.D. Cal. Sept. 16, 2008) (same).  Indeed, in denying defendants' last motion to compel, the Court admonished defendants for serving requests that would not "produce the required information without a great deal of time, effort, expense and anguish," particularly where "the same information can be sought by more than one discovery device."  DN 467 at 2.

DC has already produced documents and information that are more than sufficient to confirm when it received the Timeline.  Mr. Smith's sworn declaration attests that Warner received the Timeline "the afternoon of June 28, 2006," and sets forth the precise circumstances of its receipt.  Adams Decl. Ex. A ¶ 2.  In meet-and-confer correspondence, DC produced the first document in its files concerning the Timeline—dated June 28, 2006—and identified and produced the first non-privileged document—Mr. Quinn's July 5, 2006, letter confirming that the Timeline documents were "delivered to the Warner Bros. offices during the middle of last week."  Adams Decl. Ex. I at 159; Seto Decl. Exs. 1, 6 at 70-71.  And in DC's December 20 sworn interrogatory responses, it provided additional details concerning Warner's receipt of the Timeline on June 28, 2006.  Seto Decl. Ex. 8 at 83-84, 87-89, 92-93, 97-98, 102-04, 107-08, 133-34.

Defendants' assertion that DC has "studiously avoided" producing any "mail log," "packaging materials," "declaration by anyone with first-hand knowledge," or "contemporary internal correspondence," *supra* at 28, is not well-taken.  DC made clear, in Mr. Smith's declarations and again in its interrogatory responses, that there is no mail log or packaging.  Adams Decl. Exs. A ¶¶ 2-3, B ¶ 2; Seto Decl. Ex. 8 at

115-29. DC *did* provide a declaration by the key witness to Warner's receipt and handling of the Timeline—Mr. Smith.[5] Adams Decl. Ex. A; *see id.* Ex. B. And all the internal correspondence DC located is privileged, and none predates June 28, 2006. Adams Decl. Ex. I at 159. While not necessary to deny this motion, to moot these issues once and for all—and assuming a clear order enters that no waiver would be effected, *e.g.*, FED. R. EVID. 502(d)—DC is willing to share these privileged communications with the Court *in camera* for its review. They, too, confirm that Warner received the Timeline documents on June 28, 2006.

### 5. Defendants' Requests Are Overbroad.

As shown above, *supra* at 20-28, Request Nos. 3-6, 9-16 ask DC to produce "All DOCUMENTS" indicating when Warner received the Timeline. The requests are not limited in time, source, or subject matter. Rather than limiting their requests to the relevant time period—*i.e.*, December 2005 (when defendants say Warner *may* have received the Timeline) through June 2006 (when Warner actually received the Timeline)—defendants ask DC to search for documents spanning over six years. Such requests are improper. *See Clinton v. Desantis*, 2008 WL 4279712, at *18 (E.D. Cal. Sept. 16, 2008) (request "clearly overbroad" because "not limited as to time"); *Scruggs v. Vance*, 2011 WL 3739365, at *1-2 (E.D. Cal. Aug. 24, 2011); *Fisher v. Felker*, 2011 WL 39124, at *6 (E.D. Cal. Jan. 5, 2011); DN 467 at 2.

Given defendants' expansive definition of "YOU," Adams Decl. Ex. E at 53, the requests also are improper because they would require DC to search the files of, for example, all "past or present agents, managers, representatives, advisors, employees, attorneys, accountants, investigators and insurance companies" of DC , Warner Bros. Entertainment Inc., Time Warner Inc., and all other corporate affiliates, parents, and subsidiaries. This includes tens of thousands of individuals who have no relevant knowledge or documents. Requests that are overbroad as to source are

---

[5] Defendants *never* asked for any additional declaration during the meet-and-confer process—and it is unclear what, if anything, such a declaration would add.

improper as well.  *See Clinton*, 2008 WL 4279712, at *18 (request "overbroad in that it seeks documents from [sources] unrelated to plaintiff's case").

Finally, given defendants' expansive definition of "DOCUMENTS," Adams Decl. Ex. E at 53-54, the requests encompass, for example, voluminous court filings in this case and *Siegel*, all media reports concerning the case that mention the Timeline, and other irrelevant documents.  Requests that are overbroad as to subject matter are improper as well.  *See Scruggs*, 2011 3739365, at *2; *Baker v. Walker*, 2010 WL 1268074, at *2 (E.D. Cal. Mar. 31, 2010); DN 467 at 2.

DC pointed out all of these infirmities to defendants in the meet-and-confer process.  *See* Seto Decl. ¶ 2.  Intent on filing any motion accusing DC of discovery misconduct, defendants refused to limit their improper requests and pressed ahead with this motion.  This is yet another reason to deny the motion.

## IV.   REQUEST NOS. 53, 56-59, 65 (WARNER'S MAIL AND VISITOR RECORDS).

### A.   Defendants' Position

#### 1.   Requests Nos. 53, 56-59, and 65 (Logs Showing Receipt of the Timeline Packages)

**Request No. 53**

All DOCUMENTS logging, listing, or recording the packages, envelopes, and other documents received between November 1, 2005 and December 25, 2005, by mail or other form of delivery, at WARNER'S studio, at 4000 Warner Boulevard, Burbank, California 91522.

**Response to Request No. 53**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive.

DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the

phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents.

**Request No. 56**

All DOCUMENTS that log or list WARNER'S receipt of the STOLEN DOCUMENTS.

**Response to Request No. 56**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 57**

All DOCUMENTS that log or list the delivery of the STOLEN DOCUMENTS to the offices of Alan Horn, Patti Connolly, Jeff Rabinov or John Schulman.

**Response to Request No. 57**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly

45

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 58**
All DOCUMENTS that log or list the receipt of the STOLEN DOCUMENTS by the office of Alan Horn, Patti Connolly, Jeff Rabinov or John Schulman.

**Response to Request No. 58**
DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 59**
All DOCUMENTS that log or list the delivery of the STOLEN DOCUMENTS from the office of Alan Horn, Patti Connolly or Jeff Rabinov to the office of John Schulman.

**Response to Request No. 59**
DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

46

DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 65**

DOCUMENTS sufficient to show all visitors to WARNER'S studio at 4000 Warner Boulevard, Burbank, California 91522, between June 25, 2006 and June 28, 2006.

**Response to Request No. 65**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request to the extent that it seeks the production of any item, or portion thereof, which is not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the phrase "sufficient to show" as vague and ambiguous. DC objects to the definition of "DOCUMENTS" on the ground that it is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the term "DOCUMENTS" should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents.

These Requests are similarly limited. They seek any logs or lists that show: (1) when the Stolen Documents were received by DC or its executives to whom the Timeline was addressed; (2) the receipt of packages from November 1 to December 25, 2005 (due to the Timeline's "early Holiday gift" comment); and (3) visitors to the studio lot from June 25 to June 28, 2006 (when DC claims the Timeline packages were anonymously delivered). These Requests are also appropriately narrow, and

1  DC's overbreadth objections, such as its claim that Requests Nos. 56-59 need to be

2  more "reasonably narrow[ed]," are unfounded.  These Requests seek nothing more

3  than the documents logging the delivery or receipt of the Timeline/Stolen Documents

4  to the Warner lot and its executives.  DC certainly knows how such deliveries are

5  logged and the relevant date-range of logs to review.  There is no need – indeed, there

6  is no way – to further narrow these Requests.

7       **B.    DC's Position**

8       These requests seek "All DOCUMENTS" that log or list deliveries to Warner's

9  studio in late 2005, Warner's receipt of the Timeline, and visitors to Warner's studio

10  in late June 2006.  These requests are improper for the reasons discussed *supra* at 3-

11  5, 29-44, and for the additional reasons discussed below.

12       1.  These requests are moot, since the relevant information has either been

13  provided or does not exist.  DC has made clear in sworn interrogatory responses that

14  there is no comprehensive mail log that reflects all "packages, envelopes, and other

15  documents" delivered to Warner.  Seto Decl. Ex. 8 at 115-25.  Mr. Smith testified

16  that the Timeline documents "did not include any envelope or packaging"—which is

17  not surprising, since the practice at Warner is for office staff "to dispose of envelopes

18  and packaging upon opening mail."  Adams Decl. Ex. A ¶¶ 2-3, *see id.* Ex. B. ¶ 2.[6]

19  Mr. Smith also testified that "the delivery logs at the Warner Bros. studio lot were

20  checked for June 28, 2006, and it was determined that no packages or sets of

21  documents corresponding to the [Timeline] Documents had been received via

22  _____

23       [6] Defendants say that Warner should have salvaged the packaging (assuming any
existed) because it had "a duty to preserve evidence that they know is relevant,"
*supra* at 18—but while Warner had a duty to preserve the Timeline documents
24  (which it did), there was no reason for Warner to believe the *packaging* was relevant.
*See U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002) (duty to
25  preserve only applies where party "had some notice that the [evidence was]
potentially relevant to ... litigation before [it was] destroyed."); *Curcio v. Roosevelt
26  Union Free Sch. Dist.*, 283 F.R.D. 102, 125 (E.D.N.Y. 2012) (defendants "were
under no duty to preserve [an] original envelope since it essentially ha[d] no
27  relevance to the claims or defenses").  In any event, this is a claim defendants raise
some *six years too late* and waived long ago by not raising or arguing in *Siegel*.

28

48

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED
DOCUMENTS

delivery.  Therefore, the documents almost certainly arrived by mail and whatever packaging they were contained in had been disposed of per the usual practice of the office staff of the recipients."  *Id.* Ex. B ¶ 2.  To moot these issues once and for all, DC is willing to search Warner's available visitor records from June 2006 and December 2005 for any appearances of Michaels' name—a task DC could have endeavored to complete earlier had defendants not abandoned the meet-and-confer process.

2.  DC has also made clear that Warner received only *three sets* of Timeline documents.  *Compare supra* at 2, 7 *with* Adams Decl. Exs. A ¶¶ 2-3, I at 159; Seto Decl. Ex. 8 at 108.  One set was delivered to John Schulman, another to Patti Connolly, and a third to Alan Horn.  Adams Decl. Ex. A ¶ 2; Seto Decl. Ex. 8 at 108. Although Jeff Robinov was listed as a recipient on the Timeline, *he never received a copy of the Timeline or attached documents*, as DC verified in sworn interrogatory responses.  Seto Decl. Ex. 8 at 108.

3.  Despite defendants' surmise, *supra* at 2, 7, DC retained *no* copy of the Timeline documents, as its response to Larson's first Request states.  Adams Decl. Ex. F at 72.[7]

## V.   REQUEST NOS. 47-52, 63 (WARNER'S MAIL PROTOCOLS).

### A.   Defendants' Position

#### 1.   Requests Nos. 47-52 and 63 (Why Is There No Evidence Of When DC Received The Timeline and Stolen Documents?)

<u>Request No. 47</u>
All DOCUMENTS RELATING TO WARNER'S protocols or procedures in effect between 2005 and 2006 for logging OR recording its receipt of packages, envelopes, and other documents received by mail or other forms of delivery at WARNER'S studio at 4000 Warner

---

[7] Request No. 1:  "Any STOLEN DOCUMENTS that have not been produced in this case or the *Siegel* Litigations."  Response:  "[T]o the extent any such documents exist—*e.g.*, if defendants withheld certain documents from their May 11, 2012, production of Toberoff Timeline documents—they are not within DC's possession, custody, or control."

Boulevard, Burbank, California 91522.

## Response to Request No. 47

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent this Request seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the phrase "protocols or procedures" as vague and ambiguous. DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "RELATING," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

## Request No. 48

All DOCUMENTS RELATING TO WARNER'S protocols or procedures in effect in between 2005 and 2006 as to the retention of packaging, envelopes or equivalent enclosures for documents received by mail or other forms of delivery at WARNER'S studio, at 4000 Warner Boulevard, Burbank, California 91522.

## Response to Request No. 48

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent this Request seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the phrase "protocols or procedures" as vague and ambiguous. DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros.

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "RELATING," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 49**

All DOCUMENTS that REFER to WARNER'S efforts to locate the packaging, envelope, or equivalent enclosure in which the TOBEROFF TIMELINE was sent to WARNER'S studio, at 4000 Warner Boulevard, Burbank, California 91522.

**Response to Request No. 49**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to this Request on the ground that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC

51
JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 50**

All DOCUMENTS that REFER to WARNER'S efforts to locate the packaging, envelope, or equivalent enclosure in which the STOLEN DOCUMENTS were sent to WARNER'S studio, at 4000 Warner Boulevard, Burbank, California 91522.

**Response to Request No. 50**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to this Request on the ground that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 51**

All COMMUNICATIONS RELATING TO WARNER'S efforts to locate the packaging, envelope, or equivalent enclosure in which the TOBEROFF TIMELINE was sent to WARNER'S studio, at 4000 Warner Boulevard, Burbank, California 91522.

**Response to Request No. 51**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly

burdensome, and oppressive. DC further objects to this Request on the ground that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague and overbroad and will respond to this term as excluding any documents filed in connection with prior and ongoing litigation. DC objects to the extent the Request seeks production of "all COMMUNICATIONS" on the grounds that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. Such phraseology should not be construed as a representation that each and every document in DC's possession has been examined in connection with these Responses or any production pursuant thereto. DC does not object to or withhold any document based on the definition of "RELATING," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

## Request No. 52

All COMMUNICATIONS that RELATING TO WARNER'S efforts to locate the packaging, envelope, or equivalent enclosure in which the STOLEN DOCUMENTS were sent to WARNER'S studio, at 4000 Warner Boulevard, Burbank, California 91522.

## Response to Request No. 52

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to this Request on the ground that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague and overbroad and will respond to this term as excluding any documents filed in connection with prior and ongoing litigation. DC objects to the extent the Request seeks production of "all COMMUNICATIONS" on the grounds that such request is overly broad, unduly burdensome,

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. Such phraseology should not be construed as a representation that each and every document in DC's possession has been examined in connection with these Responses or any production pursuant thereto. DC does not object to or withhold any document based on the definition of "RELATING," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 63**

All DOCUMENTS that state WARNER'S protocols or procedures in effect between 2005 and 2006 for logging or tracking visitors to WARNER'S studio at 4000 Warner Boulevard, Burbank, California 91522.

**Response to Request No. 63**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent this Request seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the phrase "protocols or procedures" as vague and ambiguous. DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

Requests Nos. 47-52 and 63 seek documents that can test or shed light on DC's

statements that there is supposedly no concrete evidence to show when Warner received the Timeline/Stolen Documents.  *See, e.g.*, Dkt. 42-4, Ex. 3 at 111-12; AD, Ex. B at 10 ¶2.  Each Request seeks information about either (1) Warner's general practices for logging the delivery of packages and/or retaining packaging materials or (2) Warner's specific conduct with regard to the packaging of the Timeline/Stolen Documents.  DC again wrongly refuses to produce any materials in response to these Requests on the grounds that they are supposedly irrelevant and overly broad.

These Requests are again relevant to test the propriety of DC Comics' and Warner's conduct after receiving the Timeline/Stolen Documents.  Warner's in-house litigation counsel, Wayne Smith, claimed that Warner does not log or track incoming mail and destroys all packaging, and that there is no record of the Timeline and Stolen Documents being hand-delivered.  AD, Ex. B at 10 ¶2.  It defies reason that hundreds of pages of privileged documents could be delivered in the midst of heated litigation to three of Warner's highest-ranking executives without any sort of paper trail.

Warner's standard practices for logging deliveries and saving packaging materials (Requests Nos. 47-48, 53, 63) are relevant to test DC's assertions and to flush-out evidence as to DC's receipt and handling of the Timeline/Stolen Documents.  Similarly, information about whether Warner took steps to retrieve the packaging enclosing the Timeline/Stolen Documents (Requests Nos. 49-52) is relevant to show whether Warner complied with its duty to preserve evidence.

The Requests are also appropriately limited both in subject matter and time.  Requests Nos. 47-48 and 53 are expressly limited to the one-year period between 2005 and 2006.

## B.    DC's Position

Request Nos. 47-48, 63 seek all documents relating to Warner's protocols for logging mail, retaining packaging, and recording visitors to its studio.  These requests are improper for the reasons discussed *supra* at 3-5, 29-44, 48-49.  Moreover, the

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

requests are effectively moot—DC's interrogatory responses described in detail the protocol for logging mail deliveries used by Warner's mail services department, Seto Decl. Ex. 8 at 115-25; and Mr. Smith testified that Warner's practice is for office staff *not* to retain envelopes or packaging after opening mail, Adams Decl. Ex. A ¶ 2, or to "'log' or 'track' incoming mail," *id.* Ex. B ¶ 2.  And again, to moot these issues, DC is willing to search Warner's available visitor records from June 2006 and December 2005 for any appearances of Michaels' name, *see supra* at 49.

Request Nos. 49-52 seek all documents and communications referring to Warner's efforts to locate the Timeline packaging.  These requests are improper for the reasons discussed *supra* at 3-5, 29-44, 48-49.  Moreover, any such documents were created following defendants' requests for the Timeline packaging in *Siegel* by or at the direction of DC's counsel, and are privileged attorney-client communications or attorney work-product.  *See In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004); *U.S. v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002).

## VI.  REQUEST NOS. 54-55 (WARNER'S EMPLOYEES).

### A.  Defendants' Position

#### 1.  Requests Nos. 54-55 (Identification of Eyewitnesses)

**Request No. 54**

DOCUMENTS sufficient to show PERSONS employed between 2005 and 2006 in the mailroom, mail center, or other similar mail department, office or stations, responsible for receiving, sorting, logging, and/or distributing packages, envelopes and other documents received by mail and other forms of delivery at WARNER'S studio, at 4000 Warner Boulevard, Burbank, California 91522.

**Response to Request No. 54**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC further objects to this Request to the extent that it seeks information protected by the right to privacy under the California and United States Constitutions.

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

DC objects to the phrase "sufficient to show" as vague and ambiguous. DC objects to the definition of "DOCUMENTS" on the ground that it is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the term "DOCUMENTS" should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 55**

DOCUMENTS sufficient to show the PERSONS employed between 2005 and 2006 as support staff for and/or under Alan Horn, Patti Connolly, Jeff Rabinov and John Schulman, including, but not limited to, secretaries, assistants, personal assistants, administrative assistants, executive assistants, and/or gofers.

**Response to Request No. 55**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC further objects to this Request to the extent that it seeks information protected by the right to privacy under the California and United States Constitutions.

DC objects to the phrase "sufficient to show" as vague and ambiguous. DC objects to the definition of "DOCUMENTS" on the ground that it is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the term "DOCUMENTS" should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

Requests Nos. 54-55 seek documents sufficient to identify the persons employed in Warner's mailroom and the offices of the executives who received the Timeline/Stolen Documents. The persons employed in Warner's mailroom and the relevant executives' offices are potentially important eyewitnesses who likely took receipt of and handled the Timeline packages. They could have valuable information

as to whom the documents came from, and when and how they were delivered.  Such witnesses could also provide testimony as to Warner's general mail and logging practices, which in turn would lead to evidence demonstrating when DC/Warner received the Timeline/Stolen Documents.

The Requests are narrowly circumscribed.  First, the Requests only require DC to turn over documents "sufficient" to show who was employed, thereby allowing DC to respond in whatever manner is least burdensome.  Second, the Requests cover a specific one-year period, from 2005 to 2006.  Third, they are limited to documents identifying specific subsets of employees – those working in the mailroom and those working in the offices of the executives who received the Timeline packages.

### B.    DC's Position

These requests seek documents sufficient to show persons employed between 2005 and 2006 in Warner's various mail facilities and as support staff for Alan Horn, Patti Connolly, Jeff Robinov, and John Schulman.  These requests are improper for the reasons discussed *supra* at 3-5, 29-44, 48-49, 55-56.

The requests are also moot, as DC provided the names of the relevant employees in its interrogatory responses, Seto Decl. Ex. 8 at 108-14—and defendants themselves concede DC may "respond in whatever manner is least burdensome," *supra* at 58:5-7.

To the extent defendants seek still further documents, these requests are overbroad and improper.  *See* FED. R. CIV. P. 26(b)(2)(C)(i) (court "must" limit discovery that "can be obtained from some other source that is more convenient"); *Sheakalee*, 2008 WL 4279383, at *4 (document request "overbroad and burdensome" where it "appear[ed] better suited to a limited interrogatory").

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

# VII. REQUEST NOS. 7-8 (WARNER'S REVIEW OF THE TIMELINE DOCUMENTS).

## A. Defendants' Position

### 1. Requests Nos. 7-8 (Warner's Review Of The Timeline And Stolen Documents)

**Request No. 7**

All DOCUMENTS that REFER to WARNER's review of the STOLEN DOCUMENTS.

**Response to Request No. 7**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21.

DC objects to the term "review" as vague and ambiguous. DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overboard. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 8**

All DOCUMENTS that REFER to WARNER's review of the

TOBEROFF TIMELINE.

**<u>Response to Request No. 8</u>**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21.

DC objects to the term "review" as vague and ambiguous. DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

Requests Nos. 7 and 8 both seek documents and communications related to DC's review of the Timeline/Stolen Documents. Warner's in-house litigation counsel, Wayne Smith, reviewed the Timeline and Stolen Documents, sorting them into piles based on his belief as to whether such documents were privileged. Docket No. 42-4, Ex. 5 at 126-127. DC maintains that this review was appropriately "cursory" and lasted only a half hour (*see e.g.*, Docket Nos. 42-4, Ex. 3 at 11; 42-4, Ex. 7 at 147; 42-9, Ex. 23 at 614-15), but there is evidence to show that Mr. Smith read the documents far more closely than he has admitted.

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

Even though Mr. Smith initially swore that he could "not recall" the "specific contents" of the Stolen Documents because he "did not conduct a detailed review," he has since submitted multiple declarations in which he purported to remember minute details about those documents. AD, Ex. A at 7 ¶8, Ex. B at 10 ¶3; Dkt. 42-4, Ex. 10 at 198-99. In one of these declarations, Mr. Smith identified specific quotes from the Stolen Documents, years after reviewing them. Docket No. 42-4, Ex. 10 at 199 ¶5 ("Based upon my recollection of handling and sorting the Escrow Documents … I believe the language quoted form the Timeline refers to and is substantially similar to statements made by Mr. Marks to his clients in correspondence….")

Moreover, the Requests are relevant to Defendants' statute of limitations defenses. If DC extensively reviewed the Timeline and/or Stolen Documents upon receiving them, then that further supports that DC was on inquiry notice at that time, triggering the statute. The Requests are also narrow as to their time frame and subject matter.

### B.    DC's Position

These requests seek all documents referring to Warner's review of the Timeline documents. These requests are improper for the reasons discussed *supra* at 3-5, 29-44, 48-49, 55-56, 58, and for the reasons discussed below.

These requests are grossly overbroad and unduly burdensome, as they contain no time, source, or subject matter limitation. *See Clinton*, 2008 WL 4279712, at *18; *Scruggs*, 2011 WL 3739365, at *1-2; *Fisher*, 2011 WL 39124, at *6; *Baker*, 2010 WL 1268074, at *2; DN 467 at 2. For example, the requests would require DC to review all documents from 2006 to the present from *any* person connected to Warner and its corporate affiliates, parents, and subsidiaries—including "past or present agents, managers, representatives, advisors, employees, attorneys, accountants, investigators and insurance companies, and any agents or employees of the above," Adams Decl. Ex. E at 53—who may have read media reports, pleadings, or briefing mentioning the Timeline.

61
JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

These requests are also moot, as Mr. Smith's 2007 declaration already describes in detail his cursory review of the Timeline documents in June 2006. *Id.* Ex. A ¶¶ 8-12. Defendants' suggestion that Mr. Smith may have "read the documents far more closely" than he testified, *supra* at 60, is false—and has been rejected by the *Siegel* court, this Court, and the Ninth Circuit. *Supra* at 33-34.

## VIII. REQUEST NOS. 32-43, 64 (THE TIMELINE AUTHOR).

### A.    Defendants' Position

#### 1.    Requests Nos. 32-43 And 64 (DC's Knowledge Of The Persons Responsible For The Timeline And Stolen Documents)

**Request No. 32**

All DOCUMENTS that REFER to the person who sent the STOLEN DOCUMENTS to WARNER.

**Response to Request No. 32**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC further objects to the extent is suggests DC has knowledge of "the person who sent the STOLEN DOCUMENTS to WARNER."

DC objects to the definition of "WARNER" and responds to that term as limited to relevant representatives of Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents, the definition of "person who sent the

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

STOLEN DOCUMENTS to WARNER," and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 33**

All DOCUMENTS RELATING TO YOUR efforts to locate, identify, and/or communicate with the person who sent the STOLEN DOCUMENTS to WARNER.

**Response to Request No. 33**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to this Request on the ground that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the definition of "YOUR" and will respond to that term as limited to relevant representatives of DC and Warner Bros. Entertainment Inc. DC objects to the definition of "WARNER" and responds to that term as limited to relevant representatives of Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "RELATING," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 34**

All COMMUNICATIONS between YOU and the person who sent the STOLEN DOCUMENTS to WARNER.

**Response to Request No. 34**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly

burdensome, and oppressive. DC further objects to this Request to the extent is suggests DC has knowledge of "the person who sent the STOLEN DOCUMENTS to WARNER."

DC objects to the definition of "YOU" and will respond to that term as limited to relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the definition of "WARNER" and will respond to that term as limited to Warner Bros. Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague and overbroad and will respond to this term as excluding any documents filed in connection with prior and ongoing litigation. DC objects to the extent the Request seeks production of "all COMMUNICATIONS" on the grounds that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. Such phraseology should not be construed as a representation that each and every document in DC's possession has been examined in connection with these Responses or any production pursuant thereto.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents, the definition of "person who sent the STOLEN DOCUMENTS to WARNER," and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 35**

All DOCUMENTS that REFER to the author of the TOBEROFF TIMELINE.

**Response to Request No. 35**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent this Request seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC further objects to this Request to the extent is suggests DC has knowledge of who is "the author of the TOBEROFF TIMELINE."

DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's

64

requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents, the definition of "the author of the TOBEROFF TIMELINE," and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 36**

All DOCUMENTS RELATING TO YOUR efforts to locate, identify, and/or communicate with the author of the TOBEROFF TIMELINE.

**Response to Request No. 36**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to this Request on the ground that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.  DC further objects to this Request to the extent is suggests DC has knowledge of who is "the author of the TOBEROFF TIMELINE."

DC objects to the definition of "YOU" and will respond to that term as limited to relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "RELATING," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents, the definition of "the author of the TOBEROFF TIMELINE," and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 37**

All COMMUNICATIONS between YOU and the author of the TOBEROFF TIMELINE.

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

### Response to Request No. 37

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to this Request to the extent is suggests DC has knowledge of who is "the author of the TOBEROFF TIMELINE."

DC objects to the definition of "YOU" and will respond to that term as limited to relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague and overbroad and will respond to this term as excluding any documents filed in connection with prior and ongoing litigation. DC objects to the extent the Request seeks production of "all COMMUNICATIONS" on the grounds that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. Such phraseology should not be construed as a representation that each and every document in DC's possession has been examined in connection with these Responses or any production pursuant thereto.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents, the definition of "the author of the TOBEROFF TIMELINE," and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

### Request No. 38

All DOCUMENTS that REFER to DAVID MICHAELS.

### Response to Request No. 38

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent this Request seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "RELATING," as this

definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 39**

All DOCUMENTS RELATING TO YOUR efforts to locate, identify, and/or communicate with DAVID MICHAELS.

**Response to Request No. 39**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to this Request on the ground that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the definition of "YOUR" and will respond to that term as limited to relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "RELATING," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 40**

All COMMUNICATIONS between YOU and DAVID MICHAELS.

**Response to Request No. 40**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery

67

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive.

DC objects to the definition of "YOU" and will respond to that term as limited to relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague and overbroad and will respond to this term as excluding any documents filed in connection with prior and ongoing litigation. DC objects to the extent the Request seeks production of "all COMMUNICATIONS" on the grounds that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. Such phraseology should not be construed as a representation that each and every document in DC's possession has been examined in connection with these Responses or any production pursuant thereto.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 41**

All DOCUMENTS that REFER to former employees of Marc Toberoff, Toberoff & Associates, Pacific Pictures Corporation, IP Worldwide, LLC and IPW, LLC.

**Response to Request No. 41**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope—*e.g.*, it calls for communications between DC, Marc Toberoff, and Toberoff & Associates attorneys in other litigation entirely unrelated to this case. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent this Request seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC further objects to this Request to the extent is suggests DC has knowledge of all "former employees of Marc Toberoff, Toberoff & Associates, Pacific Pictures Corporation, IP Worldwide, LLC and IPW, LLC."

DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold

68

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents, the definition of "former employees of Marc Toberoff, Toberoff & Associates, Pacific Pictures Corporation, IP Worldwide, LLC and IPW, LLC," and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

## Request No. 42

All DOCUMENTS RELATING TO YOUR efforts to locate, identify, and/or communicate with former employees of Marc Toberoff, Toberoff & Associates, Pacific Pictures Corporation, IP Worldwide, LLC and IPW, LLC.

## Response to Request No. 42

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope—*e.g.*, it calls for communications with Marc Toberoff and Toberoff & Associates attorneys in other litigation entirely unrelated to this case. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent this Request seeks information protected by the attorney-client privilege, the attorney work product doctrine, or
any other applicable privilege or immunity. DC further objects to this Request to the extent is suggests DC has knowledge of all "former employees of Marc Toberoff, Toberoff & Associates, Pacific Pictures Corporation, IP Worldwide, LLC and IPW, LLC."

DC objects to the definition of "YOUR" and will respond to that term as limited to relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "RELATING," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of

69

the requested documents, the definition of "former employees of Marc Toberoff, Toberoff & Associates, Pacific Pictures Corporation, IP Worldwide, LLC and IPW, LLC," and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 43**

All COMMUNICATIONS between YOU and former employees of Marc Toberoff, Toberoff & Associates, Pacific Pictures Corporation, IP Worldwide, LLC and IPW, LLC.

**Response to Request No. 43**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope—*e.g.*, it calls for communications with Marc Toberoff and Toberoff & Associates attorneys in other litigation entirely unrelated to this case. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to this Request to the extent is suggests DC has knowledge of all "former employees of Marc Toberoff, Toberoff & Associates, Pacific Pictures Corporation, IP Worldwide, LLC and IPW, LLC."

DC objects to the definition of "YOU" and will respond to that term as limited to relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague and overbroad and will respond to this term as excluding any documents filed in connection with prior and ongoing litigation. DC objects to the extent the Request seeks production of "all COMMUNICATIONS" on the grounds that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. Such phraseology should not be construed as a representation that each and every document in DC's possession has been examined in connection with these Responses or any production pursuant thereto.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents, the definition of "former employees of Marc Toberoff, Toberoff & Associates, Pacific Pictures Corporation, IP Worldwide, LLC and IPW, LLC," and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 64**

DOCUMENTS sufficient to show all visits by DAVID MICHAELS to WARNER'S studio at 4000 Warner Boulevard, Burbank, California 91522.

**Response to Request No. 64**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request

on the grounds that it is indefinite as to time and not reasonably limited
in scope. DC further objects to this Request on the grounds that it calls
for a search of documents that is unduly expensive, overbroad, unduly
burdensome, and oppressive. DC further objects to the extent that it
seeks information protected by the attorney-client privilege, the attorney
work product doctrine, or any other applicable privilege or immunity.

DC objects to the phrase "sufficient to show" as vague and
ambiguous. DC objects to the definition of "DOCUMENTS" on the
ground that it is overly broad, unduly burdensome, oppressive, and not
reasonably calculated to lead to the discovery of admissible evidence. As
used in these Responses, the term "DOCUMENTS" should be
understood to mean those documents DC and its counsel were able to
locate using reasonable diligence and reasonable judgment concerning
the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC
agrees to meet-and-confer with defendants regarding the relevance of the
requested documents.

Requests Nos. 32-43 and 64 seek documents reflecting what DC knows and/or
attempted to learn about the author of the Timeline and/or the person(s) who stole
and/or sent the Stolen Documents. Because Defendants do not know the identity of
the Timeline author and/or thief with certainty, the Requests are phrased both with
and without a particular suspect in mind. *See, e.g.*, Request No. 32 ("the person who
sent the STOLEN DOCUMENTS"); Request No. 38 ("David Michaels"); Request
No. 41 ("former employees" of Mr. Toberoff).

Information as to the identity and whereabouts of the person(s) who authored
the Timeline and/or sent the Stolen Documents, and his/their communications with
DC, is particularly relevant given the weight DC has given the Timeline. Specific
information as to what DC knows or has attempted to learn about the Timeline's
author could reveal other pertinent evidence – *e.g.*, the author's motives, or
relationship, if any, with DC. For its part, DC moved to compel Defendants'
privileged communications with the Timeline author/Michaels (Dkt. 205 at 13-16),
and can hardly complain now that the shoe is on the other foot.

Each Request is also appropriately limited to documents and communications
involving either a single person (*e.g.*, the Timeline's author) or a small subset of
people (*e.g.*, former employees of Mr. Toberoff). In fact, four of the Requests name
a specific person, David Michaels. *See* Requests Nos. 38-40, 64.

Nor is DC correct that the Requests require more specific definitions. The phrases "person who sent the STOLEN DOCUMENTS to WARNER" (Requests Nos. 31, 34), "author of the TOBEROFF TIMELINE" (Requests Nos. 35, 36, 37), and "former employees of Marc Toberoff, Toberoff & Associates, Pacific Pictures Corporation, IP Worldwide, LLC and IPW, LLC" (Requests Nos. Nos. 41-43, 64) are all self-explanatory. "A request for production is to be afforded a reasonable construction …, rather than straining to find ambiguity when there is none." *King-Hardy v. Bloomfield Bd. Of Educ.*, 2002 WL 32506294, at *5 (D. Conn. Dec. 8, 2002).

As to Request No. 40, DC offered to produce its communications with David Michaels if, and only if, Defendants produced their communications with Michaels, which were upheld by this Court as privileged. AD, Ex. I at 159; Dkt. 262 at 4. DC cannot condition its discovery obligations as to non-privileged documents on Defendants' abdication of privilege.

## B.    DC's Position

These requests are improper for the reasons discussed *supra* at 3-5, 29-44, 48-49, 55-56, 58, 61-62, and for the additional reasons below.

1. Defendants say these requests are relevant because they wish to confirm the identity of the Timeline author, his motives, and his possible "connection" to DC. *Supra* at 11-12. Although they dance around the precise details—no doubt fearing Rule 11 and other sanctions—defendants' relevance "theory" is this: they are entitled to additional discovery concerning DC's receipt and handling of the Timeline documents because this evidence *may* show that DC orchestrated a massive conspiracy—involving key executives at Warner and DC, the Glaser Weil law firm, the Arnold & Porter law firm, David Michaels, and many others—to tarnish Toberoff's reputation by planting Michaels at Toberoff & Associates and forcing him to steal privileged documents and draft the Timeline. This theory is absurd—and certainly not a basis for seeking discovery. *See* FED. R. CIV. P. 26(g)(1)(B)(ii)

72

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

(discovery cannot be used "for any improper purpose, such as to harass"); *Johnson*, 2009 WL 839044, at *2 (party seeking discovery "must meet a threshold of relevance that is beyond speculation"); *Emara*, 2012 WL 5205950, at *3 ("mere hope" that discovery will lead to relevant evidence "insufficient").

In sworn interrogatory responses—which they have never amended— defendants identified the Timeline author as David Michaels and described his supposed motives for drafting the Timeline and sending it to DC.  DN 207-9 at 433-34.  Defendants gave the same information to the U.S. Attorney's Office in an effort to launch a criminal investigation into Michaels, DN 427-11 at 1078—again, with no equivocation—and in briefing before the Ninth Circuit, Ninth Circuit Appeal No. 11-71844, DN 1-1 at 6-7.  If defendants truly want more information about Michaels, they can and should depose him.  Defendants have *never* sought discovery from Michaels or any other suspect—instead, they seek needlessly to burden DC and harass various Warner employees with their overbroad and irrelevant requests.

2.  Request Nos. 32, 34, 35, and 37 seek all documents referring to, and all communications with, the Timeline author.  These requests are not reasonably limited in time, source, or subject matter.  *See Clinton*, 2008 WL 4279712, at *18; *Scruggs*, 2011 WL 3739365, at *1-2; *Fisher*, 2011 WL 39124, at *6; *Baker*, 2010 WL 1268074, at *2; DN 467 at 2.  More importantly, these requests are fundamentally misplaced—as explained in DC's objections, DC does not know who authored the Timeline or sent the Timeline documents.  Adams Decl. Ex. F at 105-06, 108, 109.  Defendants dismissed DC's request for more specificity on the ground that these requests "are all self-explanatory."  *Supra* at 72.  They are not.  While defendants repeatedly attested that  Michaels authored the Timeline, *see supra*, he has denied any involvement and claimed that  Toberoff wrongly blamed him in an effort "to deflect attention away from his own professional misconduct."  Seto Decl. Ex. 4 at 67.  It would be unduly burdensome to require DC to respond to discovery requests that are ambiguous on their face.  *See Walker v. Ryan*, 2012 WL 4458133, at *8 (D.

Ariz. Sept. 26, 2012); *Ashanti v. Cal. Dept. of Corrections*, 2006 WL 2695337, at *5 (E.D. Cal. Sept. 20, 2006).

3.  Request Nos. 33 and 36 seek all documents and communications relating to Warner's efforts to locate, identify, and communicate with the Timeline author. Again, this wrongly assumes that DC knows who the Timeline author is, *see supra*. Defendants also omit that they refused to produce documents in response to nearly identical requests served by DC.  In December 2010, DC served document requests seeking "[a]ll DOCUMENTS RELATING to any internal or external investigation [defendants] participated in regarding the TOBEROFF TIMELINE AUTHOR and/or the TOBEROFF TIMELINE, including the findings of any such investigation."  DN 207-9 at 99.  Defendants objected to this request as "compound, overbroad, burdensome, and oppressive," and seeking irrelevant documents. *Id.* at 100. Defendants cannot demand documents from DC that they themselves refuse to produce.

In any event, Warner's efforts to locate, identify, and communicate with the Timeline author have been conducted by or at the instruction of counsel for purposes of litigation, and are thus protected attorney work-product and attorney-client communications.  *See In re Grand Jury Subpoena*, 357 F.3d at 907; *Martin*, 278 F.3d at 999.  Defendants likewise claimed that materials reflecting their investigative efforts were absolutely privileged.  DN 207-9 at 100.

4.  Request No. 40 seeks all communications with David Michaels.  DC's December 6 meet-and-confer letter offered to produce these very communications, but asked that the production be reciprocal, as "defendants cannot demand that DC produce documents involving third parties that defendants themselves continue to withhold."  Adams Decl. Ex. I at 159.  In violation of the meet-and-confer rules, defendants did not respond to DC's offer or propose a compromise. *See supra* at 30-32.

There is no legitimate basis for defendants to assert privilege over their communications with Michaels *after* he left Toberoff & Associates in 2005. Defendants have accused Michaels of committing crimes by stealing privileged documents, "falsely disparag[ing]" Toberoff, and attempting to "steal" his clients, DN 207-9 at 436, and reported Michaels' alleged crimes to the FBI and U.S. Attorney's Office, DN 427-11 at 1078. *See U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (privilege only applies where client seeks legal advice from attorney in his capacity as such); *U.S. v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) ("That a person is a lawyer does not, ipso facto, make all communications with that person privileged."). This Court has *never* held that all of defendants' communications with Michaels are privileged, as defendants suggest, *supra* at 72. This Court rather found that defendants had not waived privilege over certain 2005 communications between the Siegels and Michaels by discussing their contents in interrogatory responses, DN 262 at 4 (though this Court later held that defendants *did* waive privilege by disclosing these documents to the U.S. Attorney's Office, DN 262 at 4, Ninth Circuit Appeal No. 11-71844, DN 38-2). This Court did *not* hold that defendants' subsequent communications with Michaels—including those after the Timeline was sent in June 2006 and Toberoff initiated a criminal investigation into Michaels—are privileged.

5. Request Nos. 38 and 41 seek all documents referring to former employees of Toberoff, his law firm, and his various alter-ego companies (including Michaels). Request No. 43 seeks all communications with these former employees. Aside from being wholly irrelevant, these requests are overbroad and unduly burdensome, as they contain no time, source, or subject matter limitation. *See Clinton*, 2008 WL 4279712, at *18; *Scruggs*, 2011 WL 3739365, at *1-2; *Fisher*, 2011 WL 39124, at *6; *Baker*, 2010 WL 1268074, at *2; DN 467 at 2. Warner has dealt with Toberoff and his various employees in connection with matters unrelated to this litigation—including, for example, *Skyport*, *Gilligan's Island*, *Wild Wild West*, and *Argo*, Adams

Decl. Ex. I at 161—and these requests would require DC to search and produce thousands of irrelevant documents.  This Court has recognized that "requests that seek 'all' or 'any,' especially on as elastic a term as 'communications' …, when they contain little or no limiting language—as to subject and time—necessarily invite objections."  DN 467 at 2.

6.  Request Nos. 39 and 42 seek all documents referring to Warner's efforts to locate former employees of Toberoff, his law firm, and his various alter-ego companies (including Michaels).  Defendants articulate no legitimate theory of relevance for such documents—and there is none.  This request is improperly overbroad for the same reasons stated *supra* at 74-75.  To the extent these requests target documents concerning DC's efforts to locate the Timeline author, these documents are privileged for the reasons stated *supra* at 74.

7.  Request No. 64 seeks all documents showing visits by Michaels to Warner's studio.  Aside from being irrelevant, this request is moot—Mr. Smith testified there is no evidence the Timeline documents were delivered in person, Adams Decl. Ex. B ¶ 2, and DC offered to search Warner's available visitor records from December 2005 and June 2006 for appearances of  Michaels' name, *see supra* at 49.

# IX.  REQUEST NOS. 60-62 (WARNER'S COMMUNICATIONS RE: THE TIMELINE).

## A.  Defendants' Position

### 1.  Requests Nos. 60-62 (Communications About The Timeline/Stolen Document Sent By Key Figures)

**Request No. 60**
All COMMUNICATIONS by or on behalf of Alan Horn that REFER to the TIMELINE or the STOLEN DOCUMENTS.

**Response to Request No. 60**
DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to this Request to the extent that it seeks information protected by the attorney-client privilege the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the definition of "COMMUNICATION" as vague and overbroad and will respond to this term as excluding any documents filed in connection with prior and ongoing litigation. DC objects to the extent the Request seeks production of "all COMMUNICATIONS" on the grounds that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. Such phraseology should not be construed as a representation that each and every document in DC's possession has been examined in connection with these Responses or any production pursuant thereto. DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

## Request No. 61

All COMMUNICATIONS by or on behalf of Patti Connolly that REFER to the TIMELINE of the STOLEN DOCUMENTS.

## Response to Request No. 61

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to this Request to the extent that it seeks information protected by the attorney-client privilege the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the definition of "COMMUNICATION" as vague and overbroad and will respond to this term as excluding any documents filed in connection with prior and ongoing litigation. DC objects to the extent the Request seeks production of "all COMMUNICATIONS" on the grounds that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. Such phraseology should not be construed as a representation that each and every document in DC's possession has been examined in connection with these Responses or any production pursuant thereto. DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

## Request No. 62

All COMMUNICATIONS by or on behalf of Jeff Rabinov that REFER to the TIMELINE or the STOLEN DOCUMENTS.

## Response to Request No. 62

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to this Request to the extent that it seeks information protected by the attorney-client privilege the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the definition of "COMMUNICATION" as vague and overbroad and will respond to this term as excluding any documents filed in connection with prior and ongoing litigation. DC objects to the extent the Request seeks production of "all COMMUNICATIONS" on the grounds that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. Such phraseology should not be construed as a representation that each and every document in DC's possession has been examined in connection with these Responses or any production pursuant thereto. DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request

78

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

and to see what, if any, documents should be produced.

Requests Nos. 60-62 seek communications sent by Alan Horn, Patty Connolly, and Jeff Rabinov that refer to the Timeline and/or Stolen Documents, as they are three of the executives that the Timeline states were sent copies of the Timeline/Stolen Documents.  Docket 49, Ex. A. at 68.  Their communications about these documents are facially relevant to a whole host of issues, including when those materials were received, how they were handled, who may have sent them, and so on. Mr. Rabinov's communications, if any, are additionally relevant because DC stated that he never received the Timeline package even though the Timeline specifically lists him as a recipient.  Dkt. 42-4, Ex. 3 at 111.  There is nothing overbroad or burdensome about these Requests.  Each targets a specific person's communications on a single topic, commencing upon DC's receipt of the Timeline packages in late 2005 or in 2006.

## B.    DC's Position

These requests seek all communications by or on behalf of Horn, Connolly, or Robinov relating to the Timeline documents.  These requests are improper for all the reasons discussed *supra* at 3-5, 29-44, 48-49, 55-56, 58, 61-62, 72-76.  These requests are also overbroad, and contain no time limitation, *cf. Clinton*, 2008 WL 4279712, at *18; *Scruggs*, 2011 3739365, at *1-2; DN 467 at 2.  Moreover, it is unlikely that any such communications exist, since Robinov never received the Timeline documents, Seto Decl. Ex. 8 at 108, and Horn and Connolly immediately gave the documents to Mr. Schulman without reviewing them, Adams Decl. Ex. A ¶ 2.  To the extent any such communications exist, they are almost certainly privileged communications between those individuals and Mr. Schulman (Warner's former General Counsel) or Mr. Smith (the in-house attorney responsible for handling the Timeline documents and managing the Superman litigation).  *See Upjohn Co. v. U.S.*, 449 U.S. 383, 393-95 (1981) (attorney-client privilege applies to communications

1  between in-house counsel and corporate employees); *U.S. v. Rowe*, 96 F.3d 1294,

2  1296 (9th Cir. 1996) (same).

3  **X.    REQUEST NOS. 44-46 (WARNER'S COMMUNICATIONS WITH**

4  **GLASER WEIL).**

5  **A.    Defendants' Position**

6  **1.    Requests Nos. 44-46 (DC's Communications With Michaels'**

7  **Former Employer)**

8  <u>**Request No. 44**</u>
   All COMMUNICATIONS between WARNER and GWF

9  RELATING TO the STOLEN DOCUMENTS.

10  <u>**Response to Request No. 44**</u>
    DC objects to this Request as seeking the production of

11  documents which are not reasonably calculated to lead to the discovery
    of relevant and admissible evidence. DC further objects to this Request

12  on the grounds that it is indefinite as to time and not reasonably limited
    in scope. DC further objects to this Request on the grounds that it calls

13  for a search of documents that is unduly expensive, overbroad, unduly
    burdensome, and oppressive.

14  DC objects to the definition of "WARNER" and responds to that
    term as limited to relevant custodians at Warner Bros. Entertainment

15  Inc. DC objects to the definition of "COMMUNICATION" as vague and
    overbroad and will respond to this term as excluding any documents

16  filed in connection with prior and ongoing litigation.  DC objects to the
    extent the Request seeks production of "all COMMUNICATIONS" on

17  the grounds that such request is overly broad, unduly burdensome,
    oppressive, and not reasonably calculated to lead to the discovery of

18  admissible evidence. As used in these Responses, the phrase "all
    COMMUNICATIONS," or phrases of similar import, should be

19  understood to mean those documents DC and its counsel were able to
    locate using reasonable diligence and reasonable judgment concerning

20  the whereabouts of such documents. Such phraseology should not be
    construed as a representation that each and every document in DC's

21  possession has been examined in connection with these Responses or
    any production pursuant thereto. DC does not object to or withhold any

22  document based on the definition of "RELATING," as this definition
    mirrors in large part language that DC employed in its own discovery

23  requests. Defendants previously objected to this same language in DC's
    requests as impermissibly overbroad. Based on defendants' use of this

24  same term and tacit acknowledgement that DC's use of these terms is
    proper, DC will not object on this ground, and DC has confirmed with

25  defendants that they will do the same.

26  Subject to and without waiving all foregoing objections, DC
    agrees to meet-and-confer with defendants regarding the relevance of the

27  requested documents and in an effort to reasonably narrow this Request
    and to see what, if any, documents should be produced

28  <u>**Request No. 45**</u>

80

All COMMUNICATIONS between WARNER and GWF RELATING TO the TOBEROFF TIMELINE.

**Response to Request No. 45**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive.

DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc.   DC objects to the definition of "COMMUNICATION" as vague and overbroad and will respond to this term as excluding any documents filed in connection with prior and ongoing litigation.   DC objects to the extent the Request seeks production of "all COMMUNICATIONS" on the grounds that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. Such phraseology should not be construed as a representation that each and every document in DC's possession has been examined in connection with these Responses or any production pursuant thereto. DC does not object to or withhold any document based on the definition of "RELATING," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 46**

All COMMUNICATIONS between WARNER and GWF RELATING TO DAVID MICHAELS.

**Response to Request No. 46**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive.

DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc.   DC objects to the definition of "COMMUNICATION" as vague and overbroad and will respond to this term as excluding any documents filed in connection with prior and ongoing litigation.   DC objects to the

81

extent the Request seeks production of "all COMMUNICATIONS" on the grounds that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. Such phraseology should not be construed as a representation that each and every document in DC's possession has been examined in connection with these Responses or any production pursuant thereto. DC does not object to or withhold any document based on the definition of "RELATING," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgment that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet- and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

Requests Nos. 44-46 seek communications between DC and Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP ("Glasser Weil"), regarding the Timeline and Stolen Documents, as well as Michaels, who was employed by Glaser Weil before being hired by Mr. Toberoff.  In addition, the Timeline referred to Larry Greenfield, another former Glaser Weil attorney, employed by Mr. Toberoff, as to whom DC has sought discovery. Docket 49, Ex. A at 68, KA, Ex. J at 168.  DC's communications with Glaser Weil as to the Timeline/Stolen Documents are clearly relevant to issues related to when DC received the Timeline packages, how it handled them, and what it knows about the person who authored the Timeline and/or stole the documents.  The Requests are narrow, targeting DC's communications with a specific entity, Glaser Weil, on specific topics – namely, Michaels, the Timeline and Stolen Documents.

## B.    DC's Position

Defendants request all communications between Warner and the Glaser Weil law firm concerning the Timeline documents or Michaels.  These requests are improper for the reasons discussed *supra* at 3-5, 29-44, 48-49, 55-56, 58, 61-62, 72-76, 79-80.  These requests, which are not limited in time or source, are also

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

overbroad.  *See Clinton*, 2008 WL 4279712, at *18; *Scruggs*, 2011 WL 3739365, at *1-2; DN 467 at 2.  As defendants are aware, Glaser Weil represents Warner in several matters completely unrelated to this litigation, and also represents third-party Ari Emanuel (***Toberoff's business partner***) in this case.  These requests would require DC to search and produce voluminous documents on irrelevant matters, to no legitimate end.  Defendants' theory of relevance for these documents is that DC—working with Glaser Weil and others—conspired to plant Michaels at Toberoff's law firm and draft the Timeline, *see supra* at 72-73.  Needless to say, there are no communications between Warner and Glaser Weil to support this baseless conspiracy theory.  And defendants have notably never asked their business partner's counsel to produce them.

## XI.    REQUEST NOS. 19-26 (DOCUMENTS RE: ARNOLD & PORTER).

### A.    Defendants' Position

#### 1.    Requests Nos. 19-26 (DC's Relationship With The "Neutral" Escrow Holder)

**Request No. 19**

All DOCUMENTS REFERRING TO ARNOLD PORTER and the TOBEROFF TIMELINE.

**Response to Request No. 19**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21.

DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to

mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 20**

All DOCUMENTS REFERRING TO ARNOLD PORTER and the STOLEN DOCUMENTS.

**Response to Request No. 20**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity. DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21.

DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 21**

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

All COMMUNICATIONS between YOU and ARNOLD PORTER REFERRING TO the TOBEROFF TIMELINE.

**Response to Request No. 21**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21.

DC objects to the definition of "YOU" and will respond to that term as limited to relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague and overbroad and will respond to this term as excluding any documents filed in connection with prior and ongoing litigation. DC objects to the extent the Request seeks production of "all COMMUNICATIONS" on the grounds that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. Such phraseology should not be construed as a representation that each and every document in DC's possession has been examined in connection with these Responses or any production pursuant thereto. DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 22**

All COMMUNICATIONS between YOU and ARNOLD PORTER REFERRING TO any of the STOLEN DOCUMENTS.

**Response to Request No. 22**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to this Request to the

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21.

DC objects to the definition of "YOU" and will respond to that term as limited to relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague and overbroad and will respond to this term as excluding any documents filed in connection with prior and ongoing litigation. DC objects to the extent the Request seeks production of "all COMMUNICATIONS" on the grounds that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. Such phraseology should not be construed as a representation that each and every document in DC's possession has been examined in connection with these Responses or any production pursuant thereto. DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 23**

All COMMUNICATIONS between YOU and ARNOLD PORTER REFERRING TO the *Siegel* Litigations.

**Response to Request No. 23**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21.

DC objects to the definition of "YOU" and will respond to that term as limited to relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague and overbroad and will respond to this term as excluding any documents filed in connection with prior and ongoing litigation. DC objects to the extent the Request seeks production of "all COMMUNICATIONS" on the grounds that such

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. Such phraseology should not be construed as a representation that each and every document in DC's possession has been examined in connection with these Responses or any production pursuant thereto. DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 24**

All receipts, bills, invoices, and equivalent DOCUMENTS from ARNOLD PORTER that RELATE TO the STOLEN DOCUMENTS, the TOBEROFF TIMELINE, or the *Siegel* Litigations.

**Response to Request No. 24**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents. *See* Docket No. 163-13 at 21.

DC objects to the extent the Request seeks production of "all … DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly available documents. As used in these Responses, the phrase "all … DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "RELATE," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

1    Subject to and without waiving all foregoing objections, DC
agrees to meet-and-confer with defendants regarding the relevance of
the requested documents and in an effort to reasonably narrow this
2    Request and to see what, if any, documents should be produced.

3    **Request No. 25**
    DOCUMENTS sufficient to show when WARNER first hired
4    ARNOLD PORTER with respect to the STOLEN DOCUMENTS.

5    **Response to Request No. 25**
    DC objects to this Request as seeking the production of
6    documents which are not reasonably calculated to lead to the discovery
of relevant and admissible evidence. DC further objects to this Request
7    on the grounds that it calls for a search of documents that is unduly
expensive, overbroad, unduly burdensome, and oppressive. DC further
8    objects to the extent that it seeks information protected by the attorney-
client privilege, the attorney work product doctrine, or any other
9    applicable privilege or immunity. DC further objects to this Request to
the extent that it disregards the Court's binding finding that DC and
10   WARNER "acted professionally" and "reasonably" in receiving and
handling the Toberoff Timeline documents. *See* Docket No. 163-13 at
11   21.
    DC objects to the phrase "sufficient to show" as vague and
12   ambiguous. DC objects to the definition of "WARNER" and responds to
that term as limited to relevant custodians at Warner Bros.
13   Entertainment Inc. DC objects to the definition of "DOCUMENTS" on
the ground that it is overly broad, unduly burdensome, oppressive, and
14   not reasonably calculated to lead to the discovery of admissible
evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all
15   court filings in this case and other publicly available documents. As used
in these Responses, the term "DOCUMENTS" should be understood to
16   mean those documents DC and its counsel were able to locate using
reasonable diligence and reasonable judgment concerning the
17   whereabouts of such documents.
    Subject to and without waiving all foregoing objections, DC
18   agrees to meet-and-confer with defendants regarding the relevance of
the requested documents and in an effort to reasonably narrow this
19   Request and to see what, if any, documents should be produced.

20   **Request No. 26**
    WARNER'S retainer agreement with ARNOLD PORTER
21   REGARDING the STOLEN DOCUMENTS.

22   **Response to Request No. 26**
    DC objects to this Request as seeking the production of
23   documents which are not reasonably calculated to lead to the discovery
of relevant and admissible evidence. DC further objects to this Request
24   to the extent that it disregards the Court's binding finding that DC and
WARNER "acted professionally" and "reasonably" in receiving and
25   handling the Toberoff Timeline documents. *See* Docket No. 163-13 at
21.
26   DC objects to the definition of "WARNER" and responds to that
term as limited to relevant custodians at Warner Bros. Entertainment
27   Inc. DC objects to the phrase "retainer agreement" as vague and
ambiguous.
28   Subject to and without waiving all foregoing objections, DC

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED
DOCUMENTS

agrees to meet-and-confer with defendants regarding the relevance of the requested document.

Requests Nos. 19-26 seek documents and communications related to DC's relationship with Arnold Porter, the supposedly "neutral" "escrow" that DC hired to hold the Timeline/Stolen Documents while the parties disputed the privileged nature of those documents. *See, e.g.*, Exhibit 42-4, Ex. 7 at 142. DC repeatedly represented that Arnold Porter was a "neutral third party," but Defendants are entitled to test that assertion. DC specifically selected the firm to maintain control over the Timeline and Stolen Documents (without input from Defendants) and thereafter paid for the firm's services. AD, Ex. A at 8 ¶13. Arnold Porter repeatedly adopted DC's legal positions in its correspondence. *See, e.g.,* Dkt. 42-9, Ex. 3 at 102-103, Ex. 30 at 742-44. Arnold Porter also expressly denied that it was "neutral" or an "escrow." Dkt. 42-9, Ex. 30 at 742. Given the above, these Requests are obviously relevant to test DC's representations, and are appropriately limited to communications with Arnold Porter regarding the Timeline, Stolen Documents, and *Siegel*.

DC likely did not hand over these sensitive materials without a written agreement with Arnold Porter, and just as clearly had other written communications with Arnold Porter. Yet DC solely offered to produce a single July 5, 2006 letter from Arnold Porter to defendant Laura Siegel Larson, which is obviously already in her possession. DC refused to produce or log ***any*** of its other communications with Arnold Porter. AD, Ex. I at 159.

## B.    DC's Position

These requests seek all documents referring to, and all communications with, the Arnold & Porter law firm. These requests are improper for the reasons discussed above, *supra* at 3-5, 29-44, 48-49, 55-56, 58, 61-62, 72-76, 79-80, 82-83, and for the additional reasons below.

i. Request Nos. 19 and 20 seek all documents referring to Arnold & Porter and the Timeline documents. These requests—like all others in this category—are

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

indefinite as to time and source.  *See Clinton*, 2008 WL 4279712, at *18; *Scruggs*, 2011 WL 3739365, at *1-2; DN 467 at 2.  The requests would require DC to produce, for example, six-and-a-half years of court filings in *Siegel* and this case, as well as any media reports mentioning the Timeline.

      ii.  Request Nos. 21-23 seek all communications with Arnold & Porter referring to the Timeline documents or *Siegel* litigations.  DC produced to defendants its first written communication with Arnold & Porter about the Timeline, *supra* at 30-31, Seto Decl. Ex. 6, and defendants have not identified a legitimate need for additional communications.

      iii.  Request No. 25 seeks documents sufficient to show when Warner hired Arnold & Porter to ask as a neutral escrow agent in connection with the Timeline documents.  Defendants already have these documents in their possession.  DC produced the July 5, 2006, letter from Mr. Quinn, which states:  "I have been asked to advise John Schulman, General Counsel of Warner Bros., in connection with certain documents delivered to Warner Bros. offices during the middle of last week," *id.*—confirming that Arnold & Porter was retained in late June 2006.  If there were any doubt, Mr. Smith's 2007 declaration explains that Warner first contacted Arnold & Porter about serving as an escrow on June 29, 2006, and gave Mr. Quinn the documents on June 30, 2006.  Adams Decl. Ex. A ¶ 13.

      Request Nos. 24 and 26, which seek all records of payment to Arnold & Porter and Warner's retainer agreement with Arnold & Porter, are redundant and moot in light of Request No. 25, to which DC has fully responded.  Moreover, had defendants properly met-and-conferred with DC, it would have confirmed there was no retainer agreement because Arnold & Porter was acting as a neutral escrow, not Warner's law firm.

      Defendants' suggestion that Arnold & Porter could not have been a "neutral third party" because DC "paid for the firm's services," *supra* at 89, is not well-taken. DC contacted Arnold & Porter to act as an escrow because Mr. Quinn, as former

90

president of the Los Angeles County Bar Association, was particularly qualified given his reputation and ethics experience.  Adams Decl. Ex. A ¶ 13.  This Court and the Ninth Circuit rejected defendants' claims that Mr. Quinn was somehow biased in favor of DC.  *Id.* Ex. C at 30:3-7; *Pacific Pictures*, 679 F.3d at 1125.  In *Siegel*, this Court worked with Mr. Quinn to determine which of the Timeline documents should be ordered produced to DC.  Case No. CV-04-8400, DN 386.  This Court also pointed out that defendants were asked to share the cost for Mr. Quinn's services, but declined to do so:

> Mr. Toberoff:  We always said, well, how neutral can he be if he's -- you know, has a retainer agreement with Warner Bros. and they're paying his fees.
>
> The Court:  Yes.  And I recall inviting you to supplement those fees, and you declined.
>
> Mr. Toberoff:  Yes.  DN 177 at 47:19-48:4.

## XII. REQUEST NO. 88 (ALL THIRD-PARTY COMMUNICATIONS RE: THE TIMELINE).

### A.    Defendants' Position

#### 1.    Requests No. 88 (Third-Party Communications About The Timeline)

**Request No. 88**

All COMMUNICATIONS between YOU and any person or entity REGARDING the TIMELINE.

**Response to Request No. 88**

DC objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request to the extent that it seeks the production of any item, or portion thereof, which is not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive. DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC objects to the phrase "person or entity" as vague and ambiguous. DC objects to the definition of "YOU" as vague and overbroad and will respond to this term as limited to the relevant custodians at DC and Warner Bros. Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague and overbroad and will

91

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

respond to this term as excluding any documents filed in connection with prior or ongoing litigation. DC objects to the extent the Request seeks production of "all COMMUNICATIONS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. DC does not object to or withhold any document based on the definition of "REGARDING," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

Request No. 88 seeks the production of DC's communications with third parties about the Timeline. For all the reasons discussed above, this Request is relevant on a wide range of issues, from DC's receipt and handling of the documents to its knowledge of the person(s) who authored and/or sent them. It is also necessarily limited in scope and properly narrow because it seeks only communications with third parties regarding the Timeline, which may reveal additional relevant information about numerous topics, such as DC's receipt of the Timeline, or attempts to identify and/or communicate with its author. Furthermore, the time frame is necessarily limited to after DC first received the Timeline/Stolen Documents. This Request is proper and DC should, as with the other Requests related to the Timeline/Stolen Documents, be compelled to produce or log responsive documents.

### B.    DC's Position

Defendants seek all communications with "any person or entity" relating to the Timeline. These requests are improper for the reasons discussed above, *see supra* at 3-5, 29-44, 48-49, 55-56, 58, 61-62, 72-76, 79-80, 82-83, 89-91. Moreover, these requests are plainly overbroad—indeed, this Court has cautioned defendants against

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

exactly this type of request. DN 467 at 2 ("requests that seek 'all' or 'any,' especially on as elastic a term as 'communications' …, when they contain little or no limiting language—as to subject and time—necessarily invite objections."). Defendants say the "time frame is necessarily limited to after DC first received the Timeline," *supra* at 92, but this spans six-and-a-half years. *See Clinton*, 2008 WL 4279712, at *18 (request overbroad where not reasonably limited in time); *Scruggs*, 2011 WL 3739365, at *1-2.

Given defendants' definition of "YOU," *see* Adams Decl. Ex. E at 53, these requests would require DC to search the files of tens of thousands of individuals at DC, Warner, Time Warner, and elsewhere who have no relevant knowledge or documents. Requests that are overbroad as to source are improper. *See Clinton*, 2008 WL 4279712, at *18. Likewise, defendants' expansive definition of "DOCUMENTS" (and refusal to limit the subject matter of their requests) would require DC to search and produce the voluminous court filings in this case and *Siegel* concerning the Timeline, all media reports that mention the Timeline, and many other irrelevant documents. Requests that are overbroad as to subject matter are improper. *See Scruggs*, 2011 3739365, at *2; *Baker*, 2010 WL 1268074, at *2; DN 467 at 2.

## XIII. WHETHER DC MUST LOG PRIVILEGED DOCUMENTS

### A. Defendants' Position

DC should also be ordered to provide a privilege log listing any documents responsive to the above Requests that it claims are privileged. DC consistently rejected and/or evaded Defendants' pointed proposals that DC specifically log such documents and conspicuously advanced counter-proposals that negated its logging responsibilities as to such documents. *See* Dkt. 539 at 3-5. DC also recently filed an untimely and inadequate motion for a protective order (Dkt. 538) that would allow it to entirely evade its obligation to log such documents. Instead of producing documents and timely providing privilege logs as required, DC has offered only unverifiable assurances in letters from its outside counsel that there are no documents

in "DC [Comics]'s files" that pre-date June 28, 2006.  AD, Ex. I at 159.  These assurances do not adequately explain the lack of *any* documentary evidence or first-hand testimony regarding DC Comics/Warner's receipt and handling of the Timeline/Stolen Documents, nor are they a substitute for document discovery and privilege logs.

Regardless of the outcome of DC's pending motion for a protective order, and given DC's consistent and troubling evasion with respect to discovery on this topic, DC should be required to log any privileged documents that relate to its receipt or handling of the Timeline and Stolen Documents, and to specifically designate the documents as such on its logs.

## B.    DC's Position

For all the reasons discussed above, *supra* at 3-5, 29-44, 48-49, 55-56, 58, 61-62, 72-76, 79-80, 82-83, 89-91, 92-93, there is no justification for requiring DC to log and categorize the privileged documents relating to DC's receipt and handling of the Timeline documents.  Defendants do little to justify this request, *supra* at 93-94, and as DC explains in its pending motion for a protective order, requiring DC to log thousands of privileged attorney-client communications and attorney work-product documents on this subject would be unduly burdensome, needlessly expensive, and yield no real benefit.  DN 538, 548.  Rule 26(b)(2)(C)(iii) requires this Court to "limit the frequency or extent of discovery" where, as here, "the burden or expense of the proposed discovery outweighs its likely benefit."  *See* FED. R. CIV. P. 26(c)(1); *In re Motor Fuel Temperature Pracs. Litig.*, 2009 WL 959491, at *3 (D. Kan. Apr. 3, 2009) ("individually logging thousands of privileged attorney communications would be immensely burdensome and have little, if any, benefit"); *In re Imperial Corp. of Am.*, 174 F.R.D. 475, 479 (S.D. Cal. 1997) ("unreasonable and overly burdensome" to "force the creation of a document-by-document privilege log" where documents clearly privileged); *Eli Lilly & Co. v. Valeant Pharm. Int'l*, 2011 WL 691982, at *2

JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL "TIMELINE"-RELATED DOCUMENTS

1  (S.D. Ind. Feb. 15, 2011) (unduly burdensome to log privileged documents with

2  marginal relevance).

3  **XIV.  DEFENDANTS' CONCLUSION**

4        For the foregoing reasons, Defendants respectfully request that the Court grant

5  their motion to compel and order that DC produce and/or log all responsive

6  documents to the above requests by no later than January 21, 2013.

7  **XV.   DC'S CONCLUSION**

8        Defendants' motion should be denied in its entirety.

9  Dated:   January 4, 2013              O'MELVENY & MYERS LLP

10

11                                       By: /s/ Daniel M. Petrocelli
                                             Daniel M. Petrocelli
12                                           Attorneys for Plaintiff DC Comics

13  Dated:   January 4, 2013             TOBEROFF & ASSOCIATES, P.C.

14

15                                       By: /s/ Marc Toberoff
                                             Marc Toberoff
16                                           Attorneys for Defendants Laura Siegel
                                             Larson, Mark Warren Peary, and Jean Adele
17                                           Peavy

18

19

20

21

22

23

24

25

26

27

28