1  WEISSMANN WOLFF BERGMAN
   COLEMAN GRODIN & EVALL LLP
2  Michael Bergman (SBN 37797)
   Anjani Mandavia (SBN 94092)
3  Adam Hagen (SBN 218021)
   9665 Wilshire Boulevard, Ninth Floor
4  Beverly Hills, California 90212
   Telephone: (310) 858-7888
5  Fax: (310) 550-7191

6  FROSS ZELNICK LEHRMAN & ZISSU, P.C.
   Roger L. Zissu (Admitted *pro hac vice*)
7  James D. Weinberger (Admitted *pro hac vice*)
   866 United Nations Plaza
8  New York, New York 10017
   Telephone: (212) 813-5900
9  Fax: (212) 813-5901

10 PERKINS LAW OFFICE, P.C.
   Patrick T. Perkins (Admitted *pro hac vice*)
11 1711 Route 9D
   Cold Spring, New York 10516
12 Telephone: (845) 265-2820
   Fax: (845) 265-2819

13

14 Attorneys for Defendants and Counterclaimant

15          **UNITED STATES DISTRICT COURT**

16          **CENTRAL DISTRICT OF CALIFORNIA**

17 | JOANNE SIEGEL and LAURA | Case Nos. [Consolidated for Discovery]:
18 | SIEGEL LARSON, | CV 04-8400 SGL (RZx)
   |              Plaintiffs, | CV 04-8776 SGL (RZx)
19 | vs. | Hon. Steven G. Larson, U.S.D.J.
20 | WARNER BROS. ENTERTAINMENT | Hon. Ralph Zarefsky, U.S.M.J.
   | INC.; TIME WARNER INC.; DC |
21 | COMICS; and DOES 1-10, | **DECLARATION OF WAYNE M.**
   |              Defendants. | **SMITH IN SUPPORT OF**
22 | JOANNE SIEGEL and LAURA | **DEFENDANTS'**
   | SIEGEL LARSON, | **MOTION TO COMPEL**
23 |              Plaintiffs, | **PRODUCTION OF WHISTLE-**
   | vs. | **BLOWER DOCUMENTS**
24 | TIME WARNER INC.; WARNER | **DISCOVERY MATTER**
25 | COMMUNICATIONS INC.; WARNER | **LOCAL RULE 37**
   | BROS. ENTERTAINMENT INC.; |
26 | WARNER BROS. TELEVISION | Time: 10:00 a.m.
   | PRODUCTION INC.; DC COMICS; | Date: April 16, 2007
27 | and DOES 1-10, | Courtroom: 540
   |              Defendants. | Mag. Judge Ralph Zarefsky
28 | AND RELATED COUNTERCLAIMS | Discovery Cutoff: Nov. 17, 2006

{F0010672.1}

**Exhibit A**
3

I, Wayne M. Smith, declare and state as follows:

1.    I am an attorney, admitted to practice before the Supreme Court of the State of California and before this Court, and am employed by defendant Warner Bros. Entertainment Inc. ("Warner Bros.") as Vice President, Senior Litigation and Chief Patent Counsel. I submit this declaration in support of Defendants' Motion to Compel Production of Whistle-blower Documents. I have personal knowledge of the facts contained within this declaration, and, if called upon as a witness, I could and would testify competently thereto.

2.    During the afternoon of June 28, 2006, I received a telephone call from John A. Schulman, General Counsel of Warner Bros., who asked that I come to his office. Upon arriving at his office, Mr. Schulman advised me that a set of documents (the "Superman Documents") addressed to him and apparently relating to the Siegel litigation had arrived from an anonymous source at his office that day. Mr. Schulman informed me that the cover letter contained with the documents indicated that other executives at Warner Bros. may have received the same set of documents, and that he had called the offices of those executives to see if they had received anything. He further advised me that he had asked those executives to send the documents to his office without reviewing them, and that one set of documents had already been delivered to him. Mr. Schulman handed me the stack (approximately an inch high) of Superman Documents that he had received and asked me to wait outside his office while he completed a meeting, after which we would discuss them. The stack did not include any envelope or packaging in which the documents may have arrived. This was not unusual as it has been my experience that the practice of Mr. Schulman's office staff is to dispose of envelopes and packaging upon opening mail.

3.    While I was waiting, I looked at what might be characterized as the "cover letter" that came with the Superman Documents. The cover letter, which

[F00106723]

1

**Exhibit A**
**4**

1  was not signed, alleged various types of ethical misconduct on the part of the

2  Plaintiffs' counsel in connection with the Siegel litigations.  The cover letter also

3  asserted ethical misconduct – violating the terms of a confidentiality agreement by

4  leaking settlement information to the press – in connection with another litigated

5  matter where Plaintiffs' counsel had also represented a party adverse to Warner

6  Bros.  The letter appeared designed to right wrongs caused by Plaintiffs' counsel's

7  misconduct.  The letter also referenced the documents enclosed, providing an

8  overview of their contents and their connection to Plaintiffs' counsel's alleged

9  wrongdoing.  I also thumbed through the Superman Documents contained with the

10  letter, but did not read any of them in detail.  Meanwhile, an assistant for another

11  Warner Bros. executive delivered what appeared to be another set of Superman

12  Documents to Mr. Schulman's office.  I did not observe that any of the three sets of

13  Superman Documents – (i) the set Mr. Schulman handed to me; (ii) the other set in

14  his office; or (iii) the set that was delivered while I was waiting outside his office –

15  was contained in an envelope or other packaging.

16          4.      I then met with Mr. Schulman.  I told Mr. Schulman that based on the

17  contents of the cover letter and my brief thumbing through the documents, it

18  appeared that certain of the documents in the package were privileged.  I said that

19  before I looked at the documents I wanted to review the case law in the area to

20  determine what level of review, if any, of the Superman Documents was

21  appropriate.  Mr. Schulman agreed with this approach, gave me one set of the

22  documents, retained the other two sets that he had received, and advised me that he

23  had only looked at the cover letter that came with the documents and would not

24  review the documents at all.

25          5.      I returned to my office with the set of documents.  I initially went on

26  the internet and performed a Google search relating to the issue of what obligations,

27  if any, governed the handling of the Superman Documents we had received.  My

28  initial search located an article from the June 2006 Los Angeles Lawyer magazine

[F001/0672.1]

**Exhibit A**

**5**

1  entitled "On the Receiving End," by Kurt L. Schmalz (a true and correct copy of

2  which is attached as Exhibit "A" hereto) which was posted on the Los Angeles

3  County Bar Association web site.  The article concerns the obligations of lawyers

4  who unwittingly receive privileged documents from opposing counsel's files and

5  discusses various California cases that have dealt with the issue, including the *Rico*

6  *v. Mitsubishi Motors Corporation* case pending before the California Supreme

7  Court.

8      6.    I read the Schmalz article and then downloaded and studied the three

9  principal California cases it identifies:  *Aerojet-General Corporation v. Transport*

10  *Indemnity Insurance*, 18 Cal.App.4th 996 (1993), *State Compensation Insurance*

11  *Fund v. WPS, Inc. (State Fund)*, 70 Cal.App.4th 644 (1999) and the Court of Appeal

12  decision in the case under review, *Rico v. Mitsubishi Motors Corporation*, 116

13  Cal.App.4th 51 (2004) (*review granted* June 9, 2004).  Based on my review of the

14  relevant California authorities, it appeared that a conservative approach to handling

15  the Superman Documents was to follow the procedure laid out by the Court in *State*

16  *Fund*, specifically:  (i) to review each document but to cease the review once it

17  became apparent that the document was privileged; (ii) to contact opposing counsel

18  and advise that the documents have been received; and (iii) to refrain from using any

19  information in the documents until there was either an agreement with opposing

20  counsel, or the court had determined the documents' disposition.

21      7.    Following my review of the law, I called Mr. Schulman and advised

22  him of the results of my research.  I said that I intended to review the Superman

23  Documents in accordance with *State Fund*.  At Mr. Schulman's request I also sent

24  copies of the three key cases and the article to Mr. Schulman's office.

25      8.    That evening, I took the Superman Documents home with me and spent

26  approximately a half hour reviewing them.  Certain of the documents – such as

27  executed agreements relating to Superman and correspondence between the

28  Plaintiffs and non-lawyer third parties – did not appear subject to any applicable

[S00106721]

3

**Exhibit A**

**6**

1  privilege. As I was going through the documents I placed them into three piles: (i)

2  "non-privileged," (ii) "privileged," and (iii) "?" (where either I could not tell

3  whether it was privileged or I believed the document covered subject matter where

4  privilege may have been waived in the case, as explained below). In reviewing each

5  document, where it first appeared to me that it was entirely privileged, I ceased

6  reading it, placed the document in the "privileged" pile and did not look at it further.

7  After going through the documents, I placed a post-it note on the top of each pile

8  (indicating "privileged," "non-privileged," or "?"), and fastened each pile together.

9  I did not look at the documents further. Because I did not conduct a detailed review

10 of the Superman Documents, and because of the passage of time, I do not recall

11 their specific contents. I do, however, recall generally the subject matter of certain

12 of the documents.

13      9.      The non-privileged pile was the second largest of the three. It

14 contained what appeared to be agreements between, *inter alia*, the Siegels and/or

15 Shusters and various entities, as well as correspondence concerning the interest in

16 Superman that might be owned by Plaintiff Laura Siegel's estranged step-brother,

17 Michael Siegel. To my knowledge, this last category of documents has never been

18 produced in the litigation.

19      10.     The "?" pile was the smallest. I believe that one or two of the

20 documents in this category potentially fall within the scope of a privilege waiver

21 based Plaintiffs' reliance on an affirmative defense that their predecessor counsel

22 did not have authority to accept a settlement proposal made by Defendants.

23 Defendants position on this privilege waiver is the subject of a separate Motion to

24 Compel filed concurrently herewith.

25      11.     The pile of documents I labeled "privileged" was the largest.

26      12.     Even from the brief review made, it appeared to me that, with the

27 exception of the cover letter (which also addressed the other litigation involving

28 Plaintiffs' counsel), all of the Superman Documents related to the subject matter of

{F0010672.3 }

**Exhibit A**

4

1  the instant litigation and were responsive to document requests the Defendants had
2  previously served on Plaintiffs. However, it did not appear to me at the time that
3  any of the "non-privileged" documents had been produced in the litigation.
4  Moreover, at least some (and perhaps virtually all) of the privileged documents, as
5  well as those in the "?" pile, were, to the best of my knowledge, never identified in
6  any privilege log served by the Plaintiffs.

7      13.    The next morning, June 29, 2006, I returned with the Superman
8  Documents to see Mr. Schulman in his office. Mr. Schulman and I discussed having
9  a neutral third party hold the documents pending either the parties' agreement as to
10  their disposition or order of the Court. We decided to ask John Quinn, then with
11  Arnold & Porter, and former president of the Los Angeles County Bar Association,
12  to act as the neutral based on his reputation and legal ethics experience. He agreed
13  and the following morning, June 30, 2006, the three sets of the Superman
14  Documents, including the set that I had categorized, were handed over to Mr. Quinn.
15  Out of an abundance of caution we handed over *all* the documents to Mr. Quinn, not
16  just those that were clearly or potentially privileged. Further, we have not shared
17  the contents of the Superman Documents with any of the outside counsel
18  representing the Defendants in this action, nor have we used the contents of the
19  documents in the litigation.

20      I declare under penalty of perjury of the laws of the United States of America
21  that the foregoing is true and correct.

22      Dated this 26th day of March 2007 at Burbank, California.

23

24                                              Wayne M. Smith

25

26

27

28

**Exhibit A**
**8**

1  WEISSMANN WOLFF BERGMAN
     COLEMAN GRODIN & EVALL LLP
2  Michael Bergman (SBN 37797)
   Anjani Mandavia (SBN 94092)
3  9665 Wilshire Boulevard, Ninth Floor
   Beverly Hills, California 90212
4  Telephone: (310) 858-7888
   Fax: (310) 550-7191
5
   FROSS ZELNICK LEHRMAN & ZISSU, P.C.
6  Roger L. Zissu (Admitted *pro hac vice*)
   James D. Weinberger (Admitted *pro hac vice*)
7  866 United Nations Plaza
   New York, New York 10017
8  Telephone: (212) 813-5900
   Fax: (212) 813-5901
9
   PERKINS LAW OFFICE, P.C.
10 Patrick T. Perkins (Admitted *pro hac vice*)
   1711 Route 9D
11 Cold Spring, New York 10516
   Telephone: (845) 265-2820
12 Fax: (845) 265-2819

13 Attorneys for Defendants and Counterclaimant

14             UNITED STATES DISTRICT COURT

15             CENTRAL DISTRICT OF CALIFORNIA

16 | JOANNE SIEGEL and LAURA | Case Nos. [Consolidated for Discovery]:
   | SIEGEL LARSON, |       CV 04-8400 SGL (RZx)
17 |         Plaintiffs, |       CV 04-8776 SGL (RZx)
   |                      | Hon. Steven G. Larson, U.S.D.J.
18 |     vs.              | Hon. Ralph Zarefsky, U.S.M.J.
19 | WARNER BROS. ENTERTAINMENT |
   | INC.; TIME WARNER INC.; DC | **SUPPLEMENTAL DECLARATION**
   | COMICS; and DOES 1-10, | **OF WAYNE M. SMITH IN**
20 |         Defendants. | **FURTHER SUPPORT OF**
   |                      | **DEFENDANTS'**
21 | JOANNE SIEGEL and LAURA | **MOTION TO COMPEL**
   | SIEGEL LARSON, | **PRODUCTION OF WHISTLE-**
22 |         Plaintiffs, | **BLOWER DOCUMENTS**
   |     vs.              |
23 | TIME WARNER INC.; WARNER | **DISCOVERY MATTER**
   | COMMUNICATIONS INC.; WARNER | **LOCAL RULE 37**
24 | BROS. ENTERTAINMENT INC.; |
   | WARNER BROS. TELEVISION | Time: 10:00 a.m.
25 | PRODUCTION INC.; DC COMICS; | Date: April 16, 2007
   | and DOES 1-10, | Courtroom: 540
26 |         Defendants. | Mag. Judge Ralph Zarefsky
   |                      | Discovery Cutoff: Nov. 17, 2006
27 | AND RELATED COUNTERCLAIMS |

28

{F0031625.1}

**Exhibit B**
**9**

1    I, Wayne M. Smith, declare and state as follows:

2        1.    I am an attorney, admitted to practice before the Supreme Court of the

3    State of California and before this Court, and am employed by defendant Warner

4    Bros. Entertainment Inc. ("Warner Bros.") as Vice President, Senior Litigation and

5    Chief Patent Counsel.  I submit this supplemental declaration in further support of

6    Defendants' Motion to Compel Production of Whistle-blower Documents.  I have

7    personal knowledge of the facts contained within this declaration, and, if called

8    upon as a witness, I could and would testify competently thereto.

9        2.    After Mr. Toberoff raised the issue of the packaging the documents

10   may have arrived in, the delivery logs at the Warner Bros. studio lot were checked

11   for June 28, 2006, and it was determined that no packages or sets of documents

12   corresponding to the Superman Documents had been received via delivery.

13   Therefore, the documents almost certainly arrived by mail and whatever packaging

14   they were contained in had been disposed of per the usual practice of the office staff

15   of the recipients.  Because Warner Bros. does not "log" or "track" incoming mail,

16   assuming the Whistle-blower documents in fact arrived by mail, there would be no

17   record of their receipt at the studio.

18       3.    In paragraph 9 of my March 26, 2007 declaration, I identified certain of

19   the Superman documents at issue that have not been produced by Plaintiffs in this

20   litigation.  One of the categories of documents was correspondence between plaintiff

21   Laura Siegel Larson and her estranged (and now deceased) step-brother, Michael

22   Siegel, relating to Mr. Siegel's share of the termination interest at stake in this

23   litigation.  Among these documents, I recall seeing at least one letter between

24   Michael and Laura Siegel Larson, if not more.  I am informed by Defendants'

25   counsel that no such letter has ever been produced in the case.  Further, I have

26   reviewed the privilege logs produced by Plaintiffs and no such letter is identified on

27   any of them.

28   ///

[P0031625.1]

**Exhibit B**
**10**

1        I declare under penalty of perjury of the laws of the United States of America

2    that the foregoing is true and correct.

3        Dated this 2nd day of April, 2007 at Burbank, California.

4

5                            Wayne M. Smith

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE SIEGEL, ET AL, | ) CASE NO(s): CV 04-8400-SGL(RZx) |
| | )         CV 04-8776-SGL(RZx) |
| Plaintiffs, | ) |
| | )        CIVIL |
| vs. | ) |
| | ) Los Angeles, California |
| TIME WARNER, INC, ET AL, | ) Monday, April 30, 2007 |
| | ) (10:45 a.m. to 11:28 a.m.) |
| Defendants. | ) |

1)   DEFENDANTS' MOTION TO COMPEL THIRD-PARTY KEVIN MARKS
AND PLAINTIFF LAURA SIEGEL LARSON TO ANSWER QUESTIONS
AT DEPOSITION;

2)   DEFENDANTS' MOTION TO COMPEL THIRD PARTIES KEVIN MARKS
AND GANG TYRE, RAMER & BROWN, INC TO PRODUCE DOCUMENTS
RELATING TO AUTHORITY;

3)   DEFENDANTS' MOTION TO COMPEL PRODUCTION
OF WHISTLE-BLOWER DOCUMENTS;

4)   PLAINTIFFS' MOTION TO COMPEL DEFENDANTS
TO ANSWER PLAINTIFFS' SPECIAL INTERROGATORIES

BEFORE THE HONORABLE RALPH ZAREFSKY,
UNITED STATES MAGISTRATE JUDGE

Appearances: (See next page)

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

EXCEPTIONAL REPORTING SERVICES, INC

Exhibit C
12

EXHIBIT A    4

2

APPEARANCES FOR:


Plaintiffs:                    MARC TOBEROFF, ESQ
                               1999 Avenue of the Stars
                               Suite 1540
                               Los Angeles, CA 90067

Defendants:                    MICHAEL BERGMAN, ESQ
                               Weissmann Wolff Bergman, et al.
                               9665 Wilshire Blvd., Suite 900
                               Beverly Hills, CA 90212


Court Reporter:                Recorded; FTR

Courtroom Deputy:              Ilene Bernal

Transcribed by:                Exceptional Reporting Services, Inc.
                               14493 S. Padre Island Drive
                               Suite A-400
                               Corpus Christi, TX 78418-5940
                               361 949-2988

**Exhibit C**
**13**

5

3

1    Los Angeles, California; Monday, April 30, 2007; 10:45 a.m.

2    (Call to Order)

3        THE COURT:  Let's call the next case.

4        THE CLERK:  Item number five.  Case Number CV-04-

5    8400-SGL-RZX, and related case, CV04-8776-SGL-RZX; *Joanne*

6    *Siegel, et al. versus Time Warner, Inc., et al.*

7        Counsel, please make your appearances.

8        MR. TOBEROFF:  Good morning, your Honor.  Marc

9    Toberoff for the plaintiffs.

10       THE COURT:  Good morning.

11       MR. BERGMAN:  Good morning, your Honor.  Michael

12   Bergman for the defendants.

13       THE COURT:  Good morning.  All right, we've got four

14   motions on.  Let's start with Plaintiff's Motion to Compel the

15   Answers to Interrogatories.  I read the materials.  Don't need

16   to repeat anything.

17       Do you wish to be heard, Mr. Toberoff?

18       MR. TOBEROFF:  Yes, your Honor.  I just want to

19   highlight a couple points if I may.  Essentially, when I

20   drafted these four Interrogatories on behalf of plaintiffs, I

21   did so with the *Safeco* case in mind and with Federal Rule of

22   Civil Procedure 33(a).  Essentially, each party, each

23   plaintiff, asked one question to each of the defendants.

24       THE COURT:  I read them.

25       MR. TOBEROFF:  Okay.

EXCEPTIONAL REPORTING SERVICES, INC

**Exhibit C**
**14**

6

4

1          THE COURT:  I really have -

2          MR. TOBEROFF:  All right.

3          THE COURT:  - read this material.

4          MR. TOBEROFF:  Okay, thank you.

5          So, what I do want to point out is that *Safeco*, which

6    is now being used by the defendants to claim that, essentially,

7    each single Interrogatory pertaining to a single RFA and asking

8    for the basis of the RFA is actually three Interrogatories,

9    does not stand for that proposition.

10          In *Safeco*, the Interrogatory in question was already

11    divided into three Interrogatories, so the Court never

12    addressed the question of whether the Interrogatory consists of

13    three subparts, which is the question here.  Instead, the Court

14    simply said that when an Interrogatory is tied to a Request for

15    Admission response, then that counts for one Interrogatory.

16          And the Court even went so far to say that sometimes

17    an Interrogatory focusing on multiple RFAs can stand for one

18    Interrogatory as opposed to multiple Interrogatories if the

19    RFAs are related to a common theme and logically connected to

20    one another.  So, actually, *Safeco* has language, as we set

21    forth in our motion, that very much supports our motion.

22          And finally, defendants' stonewalling response is

23    evidenced by the fact that after we served these

24    Interrogatories, they used this as an excuse not to answer the

25    Interrogatories, and we've had major problems with their

EXCEPTIONAL REPORTING SERVICES, INC

**Exhibit C**

**15**

7

5

1    discovery, their failure to respond to our discovery, which is

2    the subject now of multiple motions which we would like to have

3    avoided.

4            THE COURT:  All right, thank you.

5            Mr. Bergman?

6            MR. BERGMAN:  Thank you, your Honor.

7            Your Honor, on that last point I would like to note

8    that when the defendants responded to these Interrogatories, we

9    offered to do what Mr. Toberoff had offered to do when the

10   tables were turned, and that is to have him select the

11   Interrogatories that he wanted to have answered within the 25

12   limitation of Rule 33.

13           I'd just like to emphasize, your Honor, that the

14   problem with these Interrogatories begins with the Request for

15   Admission on which they're based.  As we've quoted in our

16   moving papers, there are Requests for Admission that ask us to

17   admit, for example -

18           THE COURT:  I read this, Mr. Bergman.  You don't need

19   to reiterate it.

20           MR. BERGMAN:  Okay.  The other point I would like to

21   make, Judge, is that these are not logically subsumed within

22   each other; that there is no primary question; there is no

23   secondary question.  Reasons are one thing; facts are another;

24   evidence is another.

25           And finally, your Honor, the burdensome nature of

EXCEPTIONAL REPORTING SERVICES, INC

**Exhibit C**

**16**

8

6

1  these Interrogatories is compounded by the fact that we're

2  talking about events that occurred 70 years ago.  Why didn't we

3  admit, why did we deny, that we paid other people to work with

4  Mr. Siegel 70 years ago?  Well, that's quite a burden.  Why do

5  we deny that the Adventures of Super Boy appeared in hundreds

6  of comic books?  Facts, evidence, reasons; that's quite a

7  burden.  We believe that they're burdensome.  We attempted to

8  have Mr. Toberoff select those Interrogatories that he felt

9  were essential, and he declined to do so.

10         THE COURT:  All right, thank you.

11         MR. BERGMAN:  Thank you, your Honor.

12         THE COURT:  All right.  On this motion, in the

13  Court's view, the motion does raise issues which at least are

14  discussed in *Safeco*.  It's 183 Federal Rules Decision 669, a

15  1998 case from this district.

16         Now, to begin with, the Court has great concern about

17  the propriety of even asking these kinds of Interrogatories,

18  which, as defense counsel's indicated, spin off of Requests for

19  Admissions.

20         Now, in the Court's view they spin off Requests for

21  Admissions with a 'gotcha' kind of mentality, and Professors

22  Wright and Miller have stated, and the Court agrees, Rule 36 is

23  not, strictly speaking, a discovery device.  It's a device for

24  shortening the proof required at trial.

25         And the rule has its own remedy if there is a problem

**Exhibit C**

**17**

9

7

1  with a Request to Admit.  The propounding party can move to

2  determine the sufficiency of the answers or objections.  But

3  Interrogatories which take a party's failure to unqualifiedly

4  admit and then ask, argumentatively, for the party to justify

5  such a failure, those are questionable discovery devices.

6        And beyond that, these Interrogatories do in fact, as

7  in *Safeco*, ask more than single questions.  Even considering

8  that questions which are related, such as a witness's name and

9  address, for example, those are properly considered part of the

10 same question; but asking for reasons as well as evidence as

11 well as all facts in this Court's view does impermissibly ask

12 for several distinct answers, and any one of them might be

13 objectionable as overbroad, burdensome, calling for work

14 product, and a whole host of other objections.

15       But for the moment, all that the Court does conclude

16 is that the allowed number has been exceeded.

17       Plaintiffs' Motion to Compel is denied.

18       Both Requests for Sanctions are denied.

19       All right, let's move to what has so elegantly been

20 called the 'whistleblower' documents and the Motion to Compel

21 with respect to them.

22       It seems to me there's a lot of noise about this

23 motion, but I don't know how much substance there is.

24       MR. BERGMAN:  Frankly, your Honor, I don't think

25 there's any substance to it in the sense that it could be

EXCEPTIONAL REPORTING SERVICES, INC

**Exhibit C**

**18**

10

8

1  avoided today.  It could have been avoided months ago.

2         Mr. Toberoff keeps taking the position that these

3  documents have been - non-privileged documents have been

4  produced; privileged documents have been listed in a privilege

5  log.  All we have been saying, and what I said to Mr. Toberoff

6  during a meet and confer, what one of my associates wrote to

7  him in a letter, is 'show it to us'.  Identify the documents,

8  the unprivileged documents that you have produced, by reference

9  to the Bate stamp numbers that Mr. Quinn's office put on the

10  document, and identify the documents which are listed on a

11  privilege log, once again, by reference to the Bate stamp

12  numbers that Mr. Quinn put on.  If that is done and we see

13  that, yes, indeed, all unprivileged documents have been

14  produced, all privileged documents have been listed, then

15  there's no further dispute.

16         If, on the other hand, we see that all unprivileged

17  documents have not been produced, well, we should be able to

18  see those documents.  And if all of the privileged documents

19  have not been produced or, rather, put on an exhibit list, a

20  privilege log, that would be a waiver of the privilege as to

21  those documents and we should be entitled to see those

22  documents, too.

23         The question is: How do we resolve this?  Well,

24  there's an easy way, and that is what we're suggesting, Judge,

25  and what we've been suggesting from the beginning.

**Exhibit C**

**19**

11

9

1            THE COURT: All right. Mr. Toberoff?

2            MR. TOBEROFF: Your Honor, I want to make sure the

3    Court understands what we're talking about here, which he

4    claims is just a simple discovery matter that should be easily

5    resolved under Rule 34, the way you deal with Requests for

6    Production in which you produce responsive documents and you

7    list in the privilege log any that are privileged.

8            First of all, plaintiffs have done so and so have I,

9    in full compliance with Rule 34. We're talking about here an

10   arrival -

11           THE COURT: No, I know what we're talking about.

12           MR. TOBEROFF: Right.

13           THE COURT: The documents showed up at Warner

14   Brothers -

15           MR. TOBEROFF: Right.

16           THE COURT: - and I read what Warner Brothers did

17   with them. They segregated them into three piles; they sent

18   them over to Mr. Quinn; Mr. Quinn Bate stamped them; he made a

19   copy; he sent the copy to you, and now we're stuck with what to

20   do with the ones that are left in Mr. Quinn's office. I

21   understand what we're talking about.

22           MR. TOBEROFF: I understand that, your Honor. These

23   documents are a pile about this high (indicates) -

24           THE COURT: Okay.

25           MR. TOBEROFF: - where a former attorney of mine, who

10

1   was terminated in November, went through not just the

2   plaintiffs' files in this case but the files of Joe Schuster's

3   family and other witnesses and other companies that I

4   represent, selected documents, and, after trying to essentially

5   steal not only the plaintiffs' clients in this case and other

6   clients of mine by disparaging me, and after he was rejected in

7   early December of 2005, he sent these documents to John

8   Schulman, the general counsel -

9           THE COURT:   I understand all that, Mr. Toberoff.

10          MR. TOBEROFF:   - and two other executives.   These are

11  documents -

12          THE COURT:   But that's not important to this

13  resolution.

14          MR. TOBEROFF:   Well, it's important -

15          THE COURT:   The question is -

16          MR. TOBEROFF:   It's important to me.

17          THE COURT:   They have documents.   The question is:

18  Have you otherwise produced them?   That's all that's at issue,

19  isn't it?

20          MR. TOBEROFF:   I have, your Honor.   I have put in a

21  declaration unequivocally that even though I'm not obligated to

22  do so, and jump through hoops of having to respond and own up

23  to documents stolen from my legal files, an obligation that

24  does not apply to the defendants in this case and does not

25  apply to parties under Rule 34, I nonetheless went through

EXCEPTIONAL REPORTING SERVICES, INC

**Exhibit C**

**21**

13

11

1   every single one of those documents, which they, instead of

2   returning the originals, returned to me with Bate stamps,

3   checked it against our production, and found two documents that

4   were non-privileged that hadn't been produced that consisted of

5   letters from plaintiffs to DC Comics, which I produced.

6          THE COURT:  See, your declaration doesn't quite say

7   that, Mr. Toberoff.  I read your declaration.

8          MR. TOBEROFF:  The intention of the declaration is to

9   say exactly what I'm saying now; that I went through my files,

10  not just the plaintiffs' files, which is all the motion

11  pertains to, but all my files, all the third-party witness

12  files -

13         THE COURT:  Forgive me for interrupting.  Your

14  declaration does say that.  What your declaration doesn't say

15  is that you went through these, let's call them 'whistleblower'

16  documents, even though that may not be an accurate statement,

17  you went through these whistleblower documents, and that you

18  verified that each of the whistleblower documents either had

19  been produced or had been listed on the privilege log.  It

20  doesn't say that.

21         MR. TOBEROFF:  That is the case, your Honor, and that

22  was certainly my intention to say that, and I'm saying that

23  now.

24         THE COURT:  All right, then we can get that cleared

25  up immediately.

**Exhibit C**

**22**

14

12

1          MR. TOBEROFF:  I'd be happy to take an oath and say

2  that, because that is precisely what I did.

3          THE COURT:  Okay.

4          MR. TOBEROFF:  And that was definitely my intention

5  in the declaration.  They claim my declaration doesn't say

6  that.  That was certainly my intention.  That's exactly what I

7  did.  And I also put in my declaration, with the utmost

8  specificity, what documents I found that had not been produced

9  and how I produced those documents.

10          THE COURT:  Yes, you did that.  I agree with that.

11          MR. TOBEROFF:  But the point here, your Honor, is

12  that there are certain procedures which plaintiffs and

13  defendants have to follow.  If the situation was reversed,

14  where I was suddenly sent a stack of documents from the general

15  counsel's files at Warner Brothers or from Mr. Bergman's files,

16  and I sat on those documents, and we believe they sat on these

17  documents from November or December of 2005, even from the date

18  that they say, they sat on these documents, and their letters

19  suggest this uneasy, queasy way in which they dealt with the

20  documents where they didn't say, 'We received documents that

21  are attorney-client privileged that are obviously from your

22  files.'  They referred vaguely to certain documents.

23          They retained another lawyer which they purported to

24  say was a 'neutral', even though that lawyer is obviously not a

25  neutral, because all his suggestions protect defendants, and

**Exhibit C**

**23**

15

13

1   he's under a retainer and undoubtedly paid by the defendants.

2   They retained this neutral -

3       THE COURT:   I'm sure Mr. Quinn would enjoy receiving

4   money from you as well, Mr. Toberoff.

5       MR. TOBEROFF:   Well, I understand, but I did not

6   retain him.  And to his credit, he never said that he was a

7   neutral in this matter.

8       THE COURT:   No.  He's not neutral in the sense that

9   he is retained by the defendants, but what he did, as I

10  understand it, and there's no suggestion otherwise, is that he

11  acted as an escrow.  That is, Mr. Bergman didn't look at these

12  documents.  Trial counsel didn't look at these documents,

13  right?

14      MR. BERGMAN:   That's correct, your Honor.

15      THE COURT:   The in-house counsel took these

16  documents, probably consulted with Mr. Bergman, 'I don't know,

17  what do we do?', the decision was made, 'Let's give them to a

18  third party and let's try and get the Court involved'.  And

19  then there was that little problem of not following the local

20  rules where there was an *ex parte* communication with the Court,

21  which you pointed out in your papers here.  But the procedure

22  does not seem unreasonable to me.

23      MR. TOBEROFF:   Let me ask this.  There are rules why

24  a police officer can't march into your house without a warrant

25  and rifle through your house looking for things.  And the

**Exhibit C**

**24**

14

1   answer to the objection to him doing so is not, 'Well, what do

2   you have to hide?' There's a simple procedure here. If you

3   have nothing to hide, why can't I rifle through your house?

4   The analogy may not be exact, but it's comparable.

5        This has an unseemly feel to it, because when you add

6   up all of the supposedly sanitizing procedures, and I have

7   great doubts that they received these documents when they said

8   they did, and when I asked for them to substantiate when they

9   received the documents, they had absolutely no information.

10  And I know from my experience with big studios that they have

11  guards and mail rooms and executives and people at their beck

12  and call who keep track of these sorts of things meticulously.

13  They have no evidence whatsoever to support the claim as to

14  when they received documents.

15        I believe they got these documents, the cover letter

16  said, 'This is an early Christmas present.' You don't write a

17  letter like that in June. And so they sat on these documents

18  for three or four months figuring, 'How can we use this

19  theft'?, which is an outrageous act. I'm not hiding behind

20  hyperbole. It is outrageous. If it happened to any lawyer, if

21  it happened to Mr. Bergman, you would be outraged.

22        They are saying, 'How do we use this outrageous act

23  as a tactical advantage?'

24        THE COURT: If they were doing all that, why would

25  they go through this process? Why wouldn't they just -

Exhibit C
25

17

15

1          MR. TOBEROFF: Because, they can't -

2          THE COURT: - keep the documents and spring them on

3     you?

4          MR. TOBEROFF: Because they can't use the documents.

5     They need to first sanitize it by saying, 'You need to jump

6     through these additional hoops that are not applicable to the

7     defendants; that would not be applicable to you or the

8     plaintiffs, but because we have what they call a 'twist of

9     fortune' of receiving documents stolen wholesale from your

10    files, we are now going to take advantage of that, and we have

11    a right to take advantage of that.'

12         THE COURT: But Mr. Toberoff, you tell me that

13    everything that's not privileged has been produced except for

14    two small items, and everything that is -

15         MR. TOBEROFF: We produced those items, your Honor.

16         THE COURT: Right. Okay. So, what huge advantage is

17    there for the defendants to gain if what you say is true?

18         MR. TOBEROFF: I'm objecting to this procedure, and

19    you are asking me what I said before. Why not illegally search

20    your house if you have nothing to hide? What do you have to

21    hide? I have nothing to hide.

22         I find this whole process frankly outrageous, and I

23    am standing here, your Honor, and lawyers may speak this way

24    just as a cover or to muddy the waters. I am not. I am

25    standing here with a firm conviction that, as a matter of

16

1   principle, when they received these documents, they should have

2   immediately picked up the phone.  It was obvious these

3   documents had been stolen from my files.  It is obvious from

4   the cover letter what had happened.

5          There's nothing whistleblower about a lawyer who is

6   bound by the attorney-client privilege taking documents and

7   communications with a client and sending them over to the

8   opposing side in the middle of a heated litigation where each

9   side is supposed to be able to rely on the confidential

10  attorney-client privilege and work product doctrine.  Doing

11  that in the middle of a lawsuit, they should have picked up the

12  phone, immediately called me and immediately returned the

13  documents.  That's not what they did.

14         Wayne Smith wrote in his declaration that he looked

15  at these documents twice.  First. he looked at them outside the

16  office of John Schulman.  Then he took them home with him.  And

17  although he didn't look at the documents or really review them

18  in any substance, and there's been no supposed communications

19  with defense counsel, he marked them 'privileged', 'non-

20  privileged', and 'potentially privileged'.  You can't do that

21  without reviewing the substance of these documents.

22         And now they're pushing for me to have to account and

23  atone, by their Bates numbers, the documents illegally stolen

24  from my offices.  And they are claiming to me that, 'Well, why

25  not do this?  Isn't it your obligation under Rule 34 to produce

17

1    documents?' And my answer to that is, 'It is my obligation.

2    I've satisfied that obligation. I've put in a declaration, and

3    I'm saying here and I'm willing to swear the oath that we have

4    produced all those documents.' More than that, we do not have

5    to do.

6           And so I'm standing here on principle, your Honor,

7    and I believe if you look closely into those principles, you'll

8    find that it's improper for the defendants and defendants'

9    counsel to seek to take advantage of this theft of legal files

10   in the middle of a lawsuit. And if it was the other way

11   around, they would be screaming bloody murder. And I don't

12   believe they would be compelled to have to atone, by my Bate

13   stamps, on documents lifted from their legal files. And I

14   guarantee you if I had that opportunity, considering that they

15   have stonewalled us in discovery, I would find a great deal of

16   useful information.

17          If it was the reverse and I received a package like

18   that, I would have picked up that phone, I would have called

19   them, and I would have returned the documents. And that's what

20   they should have done, and they didn't do that. And it's

21   outrageous, your Honor.

22          **THE COURT:** All right. Thank you, Mr. Toberoff.

23          Anything further, Mr. Bergman?

24          **MR. BERGMAN:** Just a couple of things, your Honor.

25          As your Honor has probably seen from the papers,

Exhibit C
28

20

18

1   Warner Brothers did exactly what the cases and the ABA 1994

2   opinion tells it to do.

3            THE COURT: I read the papers, Mr. Bergman.

4            MR. BERGMAN: Okay. The other point, your Honor, is,

5   one of two things happened here. Either Mr. Toberoff is

6   absolutely correct and this person sent documents which have

7   been produced and which have been listed, or he is not correct,

8   in which event there may not have been documents that should

9   have been produced, produced. All we want to do is put an end

10  to the issue by having him go through what is certainly not a

11  burdensome or oppressive task of coordinating the documents

12  produced and placed on the privilege list with the Bate stamps.

13           THE COURT: All right.

14           MR. TOBEROFF: If I may, your Honor?

15           THE COURT: I think we've exhausted it, Mr. Toberoff.

16  And I will say that I don't agree with the

17  designation of these as 'whistleblower' documents either, Mr.

18  Toberoff. And to the extent I have used that term, I use it

19  only as a shorthand version of referring to the documents that

20  are at issue. If we want to call them the 'escrow' documents,

21  that's fine, too. I mean, I don't think it qualifies as

22  classic whistleblower in the sense that that term is used in

23  the law. The defendants used that in their application, and I

24  don't think even they used it in the classic term.

25  But in any event, you know, I'm not making any

19

1    finding that these are in fact in the nature of whistleblower

2    documents.

3         But in my view, I think the defendants have acted

4    professionally, and I think they've acted reasonably.  The

5    record does establish that trial counsel has not reviewed the

6    documents.  They set up a procedure to segregate them, deposit

7    them with an escrow, and seek a resolution of this dispute.

8         Now, I told you, Mr. Toberoff, that I saw a little

9    wiggle room in your declaration.  You tell me you didn't mean

10   for there to be any.  So, here's what I'm going to do.  Not

11   later than May 7th, that's a week from today, I want you to

12   submit a declaration that does identify by the Bates numbers of

13   the escrow documents and the corresponding Bates numbers of

14   documents already produced, those among the escrow documents

15   which are unprivileged and have already been produced.

16        So, you take the Bates numbers of the escrow

17   documents and say, 'Here are the corresponding Bates numbers of

18   the documents that have already been produced.'  Take the Bates

19   numbers of the escrow documents and correspond to the listings

20   on the privilege log of the documents which have not been

21   produced because they were privileged.  All right?  So, put

22   that in your declaration.

23        Then the escrow holder, Mr. Bergman, is to return to

24   the plaintiffs any documents which are identified in the

25   declaration as being privileged and having been identified on

20

1    the privilege logs.

2          The others can be delivered to trial counsel for

3    defendants because they're either unprivileged, or, if they

4    were privileged, privilege has been waived because they weren't

5    listed on the privilege log.

6          Now, is it clear what I want done?

7          MR. BERGMAN:  Yes.

8          MR. TOBEROFF:  Are you going to put this in a written

9    order, your Honor?

10         THE COURT:  No, this is it.

11         MR. TOBEROFF:  Okay.  So you would like me to set

12   forth, you would like me essentially to prove that I'm not

13   lying by setting forth in a declaration -

14         THE COURT:  Mr. Toberoff.

15         MR. TOBEROFF:  - this is -

16         THE COURT:  Do you understand what I've ordered you

17   to put in the declaration?

18         MR. TOBEROFF:  I do, your Honor.

19         THE COURT:  All right.  Then that's it.  We're not -

20   You and I are not having an argument.

21         MR. TOBEROFF:  I'm not arguing.  I'm - Okay.

22         THE COURT:  All right?

23         MR. TOBEROFF:  I'm sorry, your Honor, if I'm upset

24   about this.  I think most lawyers would be upset with a

25   situation like this.

Exhibit C
31

23

21

1        THE COURT:  Okay.  It's fine to be upset.  It's not

2   fine to argue.  All right?

3        Mr. Bergman, do you understand what you're to do?

4        MR. BERGMAN:  Yes, I do, your Honor.

5        THE COURT:  All right.

6        All right, that leaves two motions which are related.

7        MR. TOBEROFF:  Your Honor, how much time do we have

8   to do this, because we're in the middle of -

9        THE COURT:  May 7th.

10        The remaining two motions, in my view, are related.

11   These are the Motions to Compel Answers to certain deposition

12   questions by Mr. Marks and Ms. Larson, and to require Mr. Marks

13   to produce documents relating to his authority.

14        Mr. Bergman, do you wish to be heard on these?

15        MR. BERGMAN:  Yes, your Honor.  I'll be very brief.

16   Your Honor is familiar with this problem.

17        THE COURT:  Yes.

18        MR. BERGMAN:  To this day, we have not received an

19   unequivocal answer as to whether Mr. Marks was authorized by

20   the plaintiffs to convey to Mr. Schulman the statement that is

21   contained in the October 19 letter; that is that the Siegel

22   family has accepted.

23        Mr. Toberoff is going around the bush.  He says that

24   there is no issue as to Marks' authority to have conducted

25   settlement negotiations on plaintiffs' behalf.  We're not

22

1   questioning that.  We just want to know, because it's an

2   essential element of what may be a dispositive counterclaim,

3   did the Siegels authorize Mr. Marks to say to Mr. Schulman

4   they've accepted the offer.  It's not privileged.  It's not

5   confidential.  It's intended, by definition, to be conveyed to

6   the other side, and we believe that we're entitled to it.  We

7   believe that for these same reasons we're entitled to any

8   documents that pertain to the authority.  After all, that

9   affirmative defense still lingers on in the pleadings.  It

10  hasn't been dismissed.  And I believe that we're entitled to

11  resolve it one way or another as we proceed to trial.

12          THE COURT:  All right, thank you.

13          MR. BERGMAN:  Thank you, Judge.

14          THE COURT:  Mr. Toberoff?  Let me just ask you at the

15  start, Mr. Toberoff.  I guess I must be confused, because I

16  thought you had told me you were going to dismiss those

17  affirmative defenses.

18          MR. TOBEROFF:  Yes, we were, your Honor, and we in

19  fact drafted amended pleadings, and I sent them over to Mr.

20  Bergman and they refused to stipulate to -

21          THE COURT:  No, I remember that.

22          MR. TOBEROFF:  Okay.  But after that -

23          THE COURT:  But after that you told me that you were

24  going to make a motion to dismiss those.

25          MR. TOBEROFF:  After that we didn't make the motion

**Exhibit C**

**33**

25

23

1   to dismiss.  We decided that we could just simply drop it in

2   our joint pretrial order, and it was suggested by one of the

3   attorneys that works for me that, to make this motion based on

4   this simple amendment a full-blown motion to the Court, that

5   would be unnecessary since we could drop it in the pretrial

6   order.  That was initially pled among some multiple affirmative

7   defenses.

8           THE COURT:  No, no, no, I know.  We've been over this

9   before.

10          MR. TOBEROFF:  I understand, your Honor.  But the

11  fact is that plaintiffs signed verified Interrogatory answers

12  on the question of Mr. Marks' authority.  They said he had

13  authority.  He obviously had authority to send the letter as

14  their attorney in the negotiations.  We have not once in this

15  litigation stood by or asserted the claim or defense, and

16  again, you mentioned earlier that you don't know that it even

17  is an affirmative defense.

18          THE COURT:  No, I don't think that's the way it came

19  up.  I think Mr. Bergman said he wasn't sure if it was an

20  affirmative defense.  That's my recollection of it.

21          MR. TOBEROFF:  Okay.

22          THE COURT:  But I could be wrong.

23          MR. TOBEROFF:  I think there was some mention of it

24  in -

25          THE COURT:  We had a colloquy on it.

**Exhibit C**
**34**

26

24

1          MR. TOBEROFF: Right. I don't think I was going by a

2    transcript; I think I was going by something in the order. But

3    be that as it may, we've never asserted this. They've asked,

4    as I said, Interrogatories, verified answers, answered the

5    question as to authority. They asked the question specifically

6    in Laura Siegel's deposition; she answered the question

7    specifically. I can read you the answer.

8          The question was, again, put in two prior motions,

9    and for procedural reasons, because this is a retread and

10   essentially a motion of reconsideration without being a motion

11   of reconsideration with respect to re-deposing Laura Siegel,

12   that's also relevant. But they've asked the question over and

13   over again. They know the answer to the question. He had

14   authority to send that letter. That's not what this is about.

15         This is about using this as a red herring or an

16   excuse to enter and invade the sanctum of the attorney-client

17   privilege so that they could rephrase the question of authority

18   in legal buzz words to try and formulate, from an answer,

19   something that they can then claim will form an agreement.

20   That's all they're doing here.

21         There's no issue of whether Mr. Marks had authority

22   to send that letter. He absolutely had the authority. We've

23   said so over and over again. I don't believe the fact that it

24   remains as an affirmative defense in our original complaint,

25   filed two years ago, when we've asked them to stipulate to

EXCEPTIONAL REPORTING SERVICES, INC

**Exhibit C**
**35**

27

25

1    allow us to amend it and are simply going to do this in a joint

2    - and I will represent to the Court that we're going to do this

3    in our joint pretrial order, we'll drop that affirmative

4    defense, that that becomes the lynch pin to open the door to

5    start asking questions about their communications about this

6    authority.

7         The case law - Excuse me.  May I just get a glass of

8    water?

9    **(No audible response)**

10   **(Pause)**

11        **MR. TOBEROFF:**  Their theory that authority is

12   something that one intends to communicate to the other side,

13   and therefore they can ask questions about that authority with

14   respect to a settlement negotiation, doesn't work, because

15   during the settlement negotiation the authority to agree to any

16   one term or a number of terms in a complex negotiation, which

17   this was, is necessarily linked to your settlement strategy.

18   How much do you ask up front?  How much do you settle for?  All

19   those things are linked.  Just because the ultimate authority

20   of the attorney to represent you in the settlement negotiations

21   or to send a letter is necessarily communicated to the other

22   side, that doesn't implicate the substance of your settlement

23   discussions with that attorney.

24        **THE COURT:**  Let me just ask you a question, Mr.

25   Toberoff.  I just want to make sure I'm clearly understanding

EXCEPTIONAL REPORTING SERVICES, INC

**Exhibit C**

**36**

28

26

1   you.  Are you saying that the October - was it October 19th

2   letter?

3                MR. TOBEROFF:  October 19th, 2001, yes.

4                THE COURT:  All right, which was signed by Mr. Marks,

5   right?

6                MR. TOBEROFF:  Yes.

7                THE COURT:  That that represents the statement of the

8   plaintiffs?

9                MR. TOBEROFF:  Yes.

10               THE COURT:  Okay.  All right.  Go ahead, if you have

11  anything further.

12               MR. TOBEROFF:  So, I'll just give you the question

13  that was already posed to Laura Siegel in her deposition.

14               THE COURT:  You don't need to read that again.

15               MR. TOBEROFF:  Okay.  I was going to give you her

16  answer to show that she's answered that question.

17               THE COURT:  You don't need to do that.  I've seen it.

18               MR. TOBEROFF:  Okay.

19               Now, the questions that they seek to - First of all,

20  as an initial matter, their motion with regard to Laura Siegel

21  is improper because it constitutes a motion for

22  reconsideration.

23               THE COURT:  Yeah, I read your argument on that.  I'm

24  familiar with that.

25               MR. TOBEROFF:  Do you have any questions for me about

**Exhibit C**

**37**

29

27

1    that argument?

2              THE COURT:  I don't.

3              MR. TOBEROFF:  Okay.  They ask -

4              THE COURT:  I really don't need the two of you to

5    rehash what's in this (indicates).

6              MR. TOBEROFF:  Okay.

7              THE COURT:  And I'm holding up an eight-inch stack of

8    papers.  I really don't.

9              MR. TOBEROFF:  All right.  Well, I would just like to

10   point out one thing to you.

11             THE COURT:  Okay.

12             MR. TOBEROFF:  They have a question, they have only

13   two questions for Laura Siegel.

14                  'Did you ever instruct Mr. Marks to communicate to

15                  the lawyers for DC Comics that there should be a

16                  correction made in this letter?'

17             And they put the cart before the horse, and they pre-

18   suppose that if a communication had taken place, then therefore

19   that was intended to be communicated to the other side, and

20   therefore, because it was intended to be communicated to the

21   other side, she has to answer this question.

22             There's no evidence that there was any such

23   communication to the other side objecting, and therefore, their

24   logic is flawed.  Without any evidence of this third-party

25   communication, they can't say there was any intention to

28

1   communicate this to the other side, and therefore you have to

2   answer questions as to whether such communication took place.

3        Do you see?  It's illogical.  And they're using this

4   one thought in a case which is curtailed, and we've

5   distinguished the case, to try and open the door to the whole

6   attorney-client privilege.  They've already done this with

7   Laura Siegel.  They already made this motion.  They made a

8   motion for reconsideration.  All these issues have been before

9   the Court before, and I don't -

10       **THE COURT:**  Yes, these issues do seem to have a

11  certain familiarity to them.

12       **MR. TOBEROFF:**  And I don't believe that because of

13  this vestigial 37th affirmative defense, which we've asked

14  could we please remove, and we didn't want to make a full-blown

15  motion, and we haven't asserted and we've constantly restated

16  that, no, this is not an issue, that that should be able to

17  open the door for them to invade the attorney-client privilege.

18       It's clear also from their papers they do not just

19  want to ask two questions, because they're constantly asserting

20  'and reasonable follow-up questions'.  And to the extent the

21  Court is inclined to grant any of this, and I don't think it

22  should be, these things can easily be posed in Interrogatories,

23  and in fact the cases say that these types of questions that

24  are mixed questions of law and fact are better posed in

25  contention Interrogatories which, if you find it necessary, we

EXCEPTIONAL REPORTING SERVICES, INC

**Exhibit C**
**39**

31

29

1    would answer.

2              Thank you, your Honor.

3              THE COURT:  All right.  Thank you, Mr. Toberoff.

4              Mr. Bergman, anything further?

5              MR. BERGMAN:  One very quick point, your Honor.

6              Your Honor's question to Mr. Toberoff and his

7    response to you brought him closer than he's ever been before

8    to where we believe he has to go.  But he's just the attorney.

9              Throughout his argument, he kept saying that the

10   plaintiffs gave Mr. Marks authority to send the letter.  All we

11   want to know is whether they gave him authority to say 'the

12   family has accepted the October 16 offer'.

13             Thank you, your Honor.

14             THE COURT:  All right.  These two motions I'm going

15   to take under submission.  I will get a ruling out very

16   shortly.

17             MR. TOBEROFF:  Thank you, your Honor.

18             MR. BERGMAN:  Thank you, sir.

19             THE COURT:  All right, thank you.

20             I assume Ms. Larson is no relation to Judge Larson.

21             MR. TOBEROFF:  No relation.

22             Your Honor, I'm sorry, could I just ask you to

23   clarify, even though it's simple, because I'm emotional on this

24   issue, obviously, and I want to make sure what we are to do in

25   a declaration.

30

1          It's my understanding that we are to take the Bates

2    numbers of the stolen documents and put in a declaration that

3    such and such a range of numbers we have produced?

4          THE COURT:  No.

5          MR. TOBEROFF:  Okay.  Could you please repeat it for

6    me, because I want to make sure I'm clear.

7          THE COURT:  For example, Bates number, let's call it

8    'escrow'.  Let's try and take pejoratives out of it either way,

9    all right?  So I won't call them whistleblower documents; I

10   won't call them stolen documents.  I'm not denying they're

11   stolen, I'm not saying they're whistleblower documents; I'm

12   just trying to find a neutral term, so I'm calling it 'escrow'.

13   Escrow is usually a neutral term.  All right.

14         Escrow document 00004 corresponds to previously

15   produced document 00006.  Escrow document 00007 corresponds to

16   previously produced document 00009, and so on.

17         MR. TOBEROFF:  Okay.

18         THE COURT:  Privilege escrow document 00015 is a

19   privilege document which was listed on the privilege log as

20   document such and such.

21         MR. TOBEROFF:  Okay.

22         THE COURT:  Privilege documents get returned.  The

23   privilege documents that were listed on the privilege log get

24   returned.  The others get sent to defense counsel.

25         MR. TOBEROFF:  The others get sent to defense

31

1    counsel?

2         THE COURT:  From the escrow.

3         MR. TOBEROFF:  Right.  Even though we've produced

4    them, but because we're saying they're not privileged, they

5    will get sent to defense counsel.  Okay.

6         If we have to match it up that way, could we have a

7    little more time to do that, your Honor, because it will take -

8         THE COURT:  How much time do you need?

9         MR. TOBEROFF:  We're in the middle of opposing a

10   massive summary judgment motion, so as much time as I can get

11   would be appreciated.

12        THE COURT:  Yes, I noticed you were in the middle of

13   all that, because there was some question as to when these

14   motions would be heard, and we were told that it was too

15   difficult to hear them on the 23rd because motions needed to be

16   filed on the 23rd.  And then they were set on the 30th, and then

17   you stipulated to have your motions filed on the 30th.

18        MR. TOBEROFF:  Right.

19        THE COURT:  How much time do you need?

20        MR. TOBEROFF:  Three weeks.

21        THE COURT:  Three weeks?  But you've been through

22   this already, right?  You had to to know -

23        MR. TOBEROFF:  They're a stack like this (indicates),

24   and if we're matching up all the numbers, it means we've

25   produced 2000 documents, so going through those and finding the

EXCEPTIONAL REPORTING SERVICES, INC

**Exhibit C**
**42**

34

32

1   production, the 2000 documents.  Also, this doesn't just

2   involve plaintiffs' production, and that's another question,

3   frankly, because the motion is directed at plaintiffs, but what

4   do we do to the extent that there are documents in the stolen

5   documents that don't belong to plaintiffs; that they are

6   documents of the Schusters or documents of other third parties,

7   or documents that appear on the privilege log of Don Bolson,

8   the attorney for Michael Siegel?

9           THE COURT:  Well, now, Mr. Toberoff, didn't you tell

10  me there were only two documents that hadn't been produced that

11  were unprivileged?

12          MR. TOBEROFF:  That's correct, but the ones that have

13  been produced, we still need to match up, and the ones that

14  were listed on the privilege log we would still need to match

15  up.  And we've produced the two documents that haven't been

16  produced.

17          THE COURT:  So, the fact that they're not documents

18  of the plaintiffs, they might be of some other parties, that

19  doesn't have anything to do with - You're just saying it would

20  take longer to match them up?

21          MR. TOBEROFF:  No.  What I'm saying is, this motion

22  only applies to plaintiffs.  It was a motion to compel

23  plaintiffs to do something regarding documents that are their

24  documents in their possession or control.  But out of an

25  abundance of caution and to satisfy everyone, I went through

EXCEPTIONAL REPORTING SERVICES, INC

**Exhibit C**

**43**

33

1    the documents and privilege logs, pursuant to four or five

2    subpoenas of third parties, where I have documents pertaining

3    to those third parties.

4            THE COURT:  And are you saying that in the escrow

5    documents there are some documents that came from third

6    parties?

7            MR. TOBEROFF:  Absolutely.  Well, they're actually -

8            THE COURT:  Excuse me.  But documents that

9    nevertheless had already been produced?

10           MR. TOBEROFF:  Yes.

11           THE COURT:  So you are just talking about it taking a

12   little more time to get it done?

13           MR. TOBEROFF:  No.  I'm just talking about the fact

14   that in matching this up, I have to match it up to the

15   production not only -

16           THE COURT:  I understand that.  I understand that.

17           MR. TOBEROFF:  First of all, do you want me to -

18           THE COURT:  So it'll take three weeks you say?

19           MR. TOBEROFF:  Well, there's another question and

20   I'll get to it.  Their motion does not apply to these other

21   documents; it only applies to the plaintiffs.

22           MR. BERGMAN:  Right.

23           MR. TOBEROFF:  Because it's a motion to compel

24   plaintiffs' production, not a motion to compel a third party's

25   production.

34

1          MR. BERGMAN:  Your Honor, there is also a Rule 45

2    subpoena that was issued to Mr. Toberoff seeking the identical

3    documents which is included within the motion.

4          THE COURT:  All right.  You can have three weeks.

5    So, that'll be May 21st.  Match them up from whoever's files,

6    Mr. Toberoff.

7          All right, anything further?

8          MR. BERGMAN:  No, your Honor.

9          MR. TOBEROFF:  Thank you, your Honor.

10          THE COURT:  All right.  Thank you.

11          Any other matters?

12          THE CLERK:  No, that completes the calendar.

13          THE COURT:  All right.  We'll be in recess.

14          **(This proceeding was adjourned at 11:28 a.m.)**

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                          May 15, 2007
                                                       _____

TONI HUDSON

FEDERALLY-CERTIFIED TRANSCRIBER

EXCEPTIONAL REPORTING SERVICES, INC

Exhibit C
46
38



**DTM**tax

CIVIL AND CRIMINAL TAX CONTROVERSY

R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**MAY 0 4 2012**

FILED _____
DOCKETED _____
  DATE        INITIAL

Judge O'Scannlain
Office of the Clerk
James R. Browning Courthouse
U.S. Court of Appeals
  for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

May 4, 2012

RE: <u>In Re: Pacific Pictures Corp. (No.11-71844)</u>

Judge O'Scannlain:

Forty-eight hours ago, it was brought to my attention that the Ninth Circuit (Court) had determined that I, a licensed attorney in the state of California, with an impeccable professional record, am a criminal. Specifically, the Court concluded, on the basis of *allegations*, that I stole documents from Mark Toberoff's (Toberoff) offices, drafted a timeline, and sent the timeline along with the documents to D.C. Comics executives. I did not steal documents, draft a timeline, or send same to D.C. Comics. None of these facts have ever been determined to be true by a court of law. The inclusion of my name and the completely false factual accounts within the Ninth Circuit Opinion (Opinion) clearly suggest to the reader, as demonstrated by the enormous and growing coverage on the internet, that I in fact was the alleged perpetrator. The only remedy is to withdraw the Opinion and remove all references to me and any facts indicating that I was responsible for any of the aforementioned acts. Due process mandates that this happen <u>immediately</u>.

The circumstances of my departure from Toberoff's law firm are these. Approximately two weeks before my abrupt departure, I learned that I was being provided stolen law student passwords to conduct online research on matters. I did not inform Toberoff of my discovery. Instead, I concluded research assignments via use of the UCLA Law Library and a borrowed set of Nimmer on Copyright from the law firm Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro (Christensen Miller). In and around the same time, I also discovered facts that would have to be immediately disclosed to the Siegels <u>to protect their interests</u> pursuant to the California Rules of Professional Conduct and the State Bar Act.

2901 West Coast Highway, Suite 200, Newport Beach, California 92663
Tel: (949) 334-3101 | Fax: (949) 207-3411 | Web: www.DTMtax.com | Email: david@DTMtax.com

1

**Exhibit D**
**47**



On the afternoon of my exit, Toberoff was involved in a dispute with opposing counsel in an unrelated matter and asked me to research issues he wanted to include in a letter that afternoon. At that point, I had no option but to vacate the premises. Contrary to Toberoff's *allegations*, I did not leave the firm "without incident". Shortly thereafter, I contacted the Siegels as required under the California Rules of Professional Conduct and the State Bar Act. That was the impetus of the meeting. It was not, as Toberoff alleges, to solicit the Siegels. It is important to note that the subject of representation was discussed, but the attorney-client privilege forbids me from disclosing why—a convenient wall for Toberoff. However, if Laura Siegel wishes to waive the privilege, I would be more than happy to provide that information to the Court. After the meeting, I confirmed, with a prominent California ethics attorney, that I had no further ethical responsibilities with the Siegels. I thereafter focused my career in the area of taxation, in particular, tax litigation.

To my knowledge, at no time after Toberoff learned of the alleged theft, did he, or the Siegels, contact the State Bar of California (State Bar) to report my alleged actions or any suspicions. Indeed, I have never been contacted by the State Bar in regards to this alleged incident. This is not surprising given that any such allegation against me would have permitted me to discuss all that was necessary to repel any false claims of professional misconduct on my part, specifically, the facts disclosed to the Siegels. Toberoff did contact the Federal Bureau of Investigations (FBI) to investigate the alleged theft in 2007 (Opinion at 4244, ¶2). Not surprisingly, I was never contacted by the FBI. Notably, I successfully completed a background investigation in 2008 when I was hired as an attorney-adviser for the United States Tax Court in Washington, D.C. Remarkably, I have not been contacted by Toberoff, the Siegels, or his legal representatives to discuss the alleged theft.

In February 2011, <u>fifteen months ago</u>, I was contacted by the Department of Justice (DOJ). Apparently Toberoff alleged I had committed a crime. We had a pleasant meeting during which I responded to all questions posed, without hesitation, and without representation, and fully aware of the fact that lying to them would subject me to criminal prosecution. I answered "No." when asked whether I had sent the documents to Warner Bros. (Warner). I also answered "No." when asked whether I was part of an elaborate scheme with Warner to infiltrate Toberoff's firm, steal his documents, and then return the documents to Warner. Apparently, the fact that my previous employment with Christensen Miller, a firm that has represented Warner, somehow justified Toberoff's outlandish claim. The meeting ended and I have not been contacted since. There will not be an indictment.

2901 West Coast Highway, Suite 200, Newport Beach, California 92663
Tel: (949) 334-3101 | Fax: (949) 207-3411 | Web: www.DTMtax.com | Email: david@DTMtax.com

2



The relevant facts in the Opinion include the following:

### REFERENCE ONE

"While the preexisting litigation was pending, Toberoff hired lawyer David Michaels to work for one of his companies. Michaels remained in Toberoff's employ for only about three months before absconding with copies of several documents from the Siegel and Shuster files. Unsuccessful in his initial attempt to use the documents to solicit business from the Heirs, Michaels sent the documents to executives at D.C. Comics. While he did not include his name with the package, he did append a cover letter, written in the form of a timeline, outlining in detail Toberoff's alleged master plan to capture Superman for himself." (Opinion at 4244, ¶1)

### REFERENCE TWO

"Ultimately, in April 2007, a magistrate judge ordered certain documents, including Michaels' cover letter, turned over to D.C. Comics." (Opinion at 4244, ¶2)

### REFERENCE THREE

"Michaels' cover letter formed the basis of the lawsuit and was incorporated into the complaint." (Opinion at 4244, ¶3)

### REFERENCE FOUR

"Toberoff has continued to resist the use of any of the documents taken from his offices, including those already disclosed to D.C. Comics and especially Michaels' letter." (Opinion at 4244, ¶3)

### REFERENCE FIVE

"About a month after the suit was filed, Toberoff asked the Office of the United States Attorney for the Central District of California to investigate Michaels." (Opinion at 4245, ¶1)

### REFERENCE SIX

"There is no evidence that Toberoff and the Office of the U.S. Attorney agreed before the disclosure jointly to pursue sanctions against Michaels." (Opinion at 4253, ¶1)

2901 West Coast Highway, Suite 200, Newport Beach, California 92663
Tel: (949) 334-3101 | Fax: (949) 207 3411 | Web: www.DTMtax.com | Email: david@DTMtax.com

3

**Exhibit D**
**49**



The Court, by publishing these allegations as fact, has committed a grave error that must be corrected immediately to protect my professional reputation and my fundamental right to due process. First consider a small sampling of how widely disseminated this misinformation has become and how readily the audience interprets what the Court has written as true:

See http://www.law.com/jsp/lawtechnologynews/PubArticleLTN.jsp?id=1334527980923 ("Instead the ruling revolves around the strange actions of an attorney, David Michaels, who worked briefly for Toberoff around 2006. _After leaving the firm, Michaels sent documents he'd copied from the heirs' files to D.C. Comics, **according to the Ninth Circuit**, along with a laboriously detailed timely of Toberoff's alleged plan for recapturing the rights to Superman for himself._ "Consider it an early holiday gift," Michaels wrote."). (Emphasis added)

See also http://www.hollywoodreporter.com/thr-esq/warner-bros-wins-big-superman-jerry-siegel-joe-shuster-312982 ("In the midst of working on the case to terminate the studio's rights to Superman, many of Toberoff's documents were taken by one of his former associates, David Michaels, who, reportedly frustrated by his own successful attempt to solicit business from the Superman heirs, sent the sensitive documents to Warners' offices.").

See also http://blogs.findlaw.com/ninth_circuit/2012/04/no-attorney-client-privilege-for-superman-lawsuit-stolen-documents.html ("David Michaels, a former Toberoff associate, stole documents detailing the arrangement from Toberoff, and sent them to D.C. Comics with a timeline he constructed to reveal Toberoff's plot to acquire Superman.").

Even prominent law firms such as Paul Hastings, Dechert, and Bingham, to name a few, have already posted articles on their websites discussing the Opinion with my name in bright lights as a criminal. The damage to my reputation is obvious, and completely undeserving. I did what was required of me under the professional rules of responsibility and have been rewarded with having my reputation destroyed. It is difficult to comprehend how the Court writes on the one hand that "[t]he ethical and professional conduct raised by Toberoff's actions will likely occur to many readers", yet on the other takes the ethically-challenged lawyer's allegations against me as established fact and in the process, erroneously and definitively tells all readers that I was guilty of misconduct. (Opinion at 4243, ¶3)

2901 West Coast Highway, Suite 200, Newport Beach, California 92663
Tel: (949) 334-3101 | Fax: (949) 207 3411 | Web: www.DTMtax.com | Email: david@DTMtax.com

4



CIVIL AND CRIMINAL TAX CONTROVERSY

Before the State Bar could determine whether I was guilty of professional misconduct, due process would require that it provide me notice, afford me the right to counsel, the right to present evidence, and the right to testify in my own defense. Had the DOJ decided to move forward with a prosecution, it could not, as the Court does, pronounce guilt absent due process. The Opinion has obliterated this fundamental right by incorporating these false statements of crime and professional misconduct. These allegations are simply those of an attorney seeking to deflect attention away from his own professional misconduct that is the subject of this litigation.

Given the gravity of this error, the damage to my professional reputation, and the disregard of my fundamental right to due process, I respectfully request that the Court withdraw the Opinion and remove the above-cited references immediately so that I may take remedial action to eradicate the harm. The largest tax conference of the year is next week in Washington, D.C. If this is not corrected prior to that meeting, I fear the damage amongst my professional peers will be permanent.

I have not provided a copy of this letter to the parties. My participation in this matter going forward is wholly irrelevant as the alleged conduct of the parties occurred well before my brief association with Toberoff. Moreover, I did not provide documents to D.C. Comics.

The statements in this letter are protected by the litigation privilege.

I would also like to respectfully request that chambers contact me (1) to confirm that this letter has been received and that a copy has been provided to the Judges; and (2) to update me as to the status of the decision. The clerk's office has been gracious in allowing me to fax this letter to you given its exigency. I can be readily reached at 714.742.9561, or emailed at david@dtmtax.com.

Sincerely,

David Michaels, Esq.

2901 West Coast Highway, Suite 200, Newport Beach, California 92663
Tel: (949) 334-3101 | Fax: (949) 207-3411 | Web: www.DTMtax.com | Email: david@DTMtax.com

5

Exhibit D
51

Marc Toberoff (State Bar No. 188547)
 mtoberoff@ipwla.com
Keith G. Adams (State Bar No. 240497)
 kgadams@ipwla.com
Pablo D. Arredondo (State Bar No. 241142)
 parredondo@ipwla.com
David Harris (State Bar. No. 255557)
 dharris@ipwla.com
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway, #348
Malibu, California 90256
Telephone:  (310) 246-3333
Fax:          (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele Peavy
and Laura Siegel Larson, individually and
as personal representative of the Estate of
Joanne Siegel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>             Plaintiff,<br><br>     vs.<br><br>PACIFIC PICTURES CORPORATION;<br>IP WORLDWIDE, LLC; IPW, LLC;<br>MARC TOBEROFF, an individual;<br>MARK WARREN Peary, as personal<br>representative of the ESTATE OF<br>JOSEPH SHUSTER; JEAN ADELE<br>PEAVY, an individual; LAURA<br>SIEGEL LARSON, individually and as<br>personal representative of the ESTATE<br>OF JOANNE SIEGEL,<br>and DOES 1-10, inclusive,<br><br>             Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br><br>**DEFENDANT LAURA SIEGEL LARSON'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFF DC COMICS**<br><br>Complaint Filed:  May 14, 2010<br>Trial Date:  None Set |

1  PROPOUNDING PARTY:        Laura Siegel Larson

2  RESPONDING PARTIES:       DC Comics

3  SET NUMBER:               One (Nos. 1-125)

4       PLEASE TAKE NOTICE that pursuant to Rule 34 of the Federal Rules of

5  Civil Procedure defendant Laura Siegel Larson hereby requests that plaintiff DC

6  Comics, within thirty (30) days produce for inspection and copying the original

7  documents and other tangible things designated in the requests for production below

8  at Toberoff & Associates, P.C., 22337 Pacific Coast Highway #348, Malibu,

9  California 90265 and continuing as long as reasonably required.

## I.

## DEFINITIONS AND INSTRUCTIONS

12      1.     Words and phrases spelled in capital letters herein shall have the specific

13 meanings and definitions expressly assigned to them in these "Definitions and

14 Instructions," which shall apply to each and every Document Request set forth

15 herein, and are hereby fully incorporated within each Document Request by

16 reference.

17      2.     The terms "DC," "YOU" and "YOUR" refer to plaintiff DC Comics,

18 and any of its past or present predecessors-in-interest or successors-in-interest, any

19 partner, joint venturer, parent company, affiliated company, subsidiary or division

20 thereof, including Warner Bros. Entertainment, Inc., and any other person or persons

21 acting on its behalf, including, but not limited to, past or present agents, managers,

22 representatives, advisors, employees, attorneys, accountants, investigators and

23 insurance companies, and any agents or employees of the above, both singularly and

24 cumulatively.

25      3.     The terms "DOCUMENT" or "DOCUMENTS," as used herein, are

26 used in their broad sense to encompass ALL documents and tangible things subject to

27 a Request under Rule 34 of the Federal Rules of Civil Procedure, including, without

28 limitation, any "writing," "recording," or "photograph" as those terms are defined in

DEFENDANT LAURA SIEGEL LARSON'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

**Exhibit E**
**53**

Rule 1001 of the Federal Rules of Evidence.  This shall include, but is not limited to: e-mail, audio or video recordings, correspondence, letters, phone messages, notes, memoranda, facsimiles, publications, contracts, agreements, calendars, drafts of proposed contracts or agreements, papers, and photographs.

4.    The term "COMMUNICATION" means all written, electronic, oral, telephonic, gesture, or other transmission or exchange of information, including without limitation, any inquiry, request, dialogue, discussion, conversation, interview, correspondence, letter, note, consultation, negotiation, agreement, understanding, meeting, e-mail, and all DOCUMENTS evidencing any verbal or nonverbal interaction between any individuals or entities.

5.    The term "DEFENDANTS," as used herein, refers to Laura Siegel Larson, Mark Warren Peary, Jean Adele Peavy, Marc Toberoff, Pacific Pictures Corporation, IP Worldwide, LLC, and IPW, LLC.

6.    The term "*Siegel* Litigations," as used herein, refers to the cases *Siegel v. Warner Bros. Entertainment Inc., et al.*, C.D. Cal. Case No. 04-CV-08400 ODW (RZx) and/or *Siegel v. Time Warner Inc.*, C.D. Cal. Case No. 04-CV-08776 ODW (RZx).

7.    The term "WARNER," as used herein, refers to Warner Bros. Entertainment, Inc., and any of its past or present predecessors-in-interest or successors-in-interest, any partner, joint venturer, affiliated company, subsidiary or division thereof, and any other person or persons acting on its behalf, including, but not limited to, past or present agents, managers, representatives, advisors, employees, attorneys, accountants, investigators and insurance companies, and any agents or employees of the above, both singularly and cumulatively.

8.    The term "RENNER OTTO," as used herein, refers to Renner, Otto, Boisselle & Sklar, LLP and any of its past or present predecessors-in-interest or successors-in-interest, any partner, joint venturer, affiliated company, subsidiary or division thereof, and any other person or persons acting on its behalf, including, but

2

not limited to, past or present agents, managers, representatives, advisors, employees, attorneys, accountants, investigators and insurance companies, and any agents or employees of the above, both singularly and cumulatively.

9.    The term "GWF"," as used herein, refers to Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP, formerly, Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP, and any of its past or present predecessors-in-interest or successors-in-interest, any partner, joint venturer, affiliated company, subsidiary or division thereof, and any other person or persons acting on its behalf, including, but not limited to, past or present agents, managers, representatives, advisors, employees, attorneys, accountants, investigators and insurance companies, and any agents or employees of the above, both singularly and cumulatively.

10.    The term "GANG TYRE," as used herein, refers to Gang, Tyre, Ramer and Brown, Inc. and any of its past or present predecessors-in-interest or successors-in-interest, any partner, joint venturer, affiliated company, subsidiary or division thereof, and any other person or persons acting on its behalf, including, but not limited to, past or present agents, managers, representatives, advisors, employees, attorneys, accountants, investigators and insurance companies, and any agents or employees of the above, both singularly and cumulatively.

11.    The term "ARNOLD PORTER," as used herein, refers to Arnold & Porter LLP, and any of its past or present predecessors-in-interest or successors-in-interest, any partner, joint venturer, affiliated company, subsidiary or division thereof, and any other person or persons acting on its behalf, including, but not limited to, past or present agents, managers, representatives, advisors, employees, attorneys, accountants, investigators and insurance companies, and any agents or employees of the above, both singularly and cumulatively.

12.    The term "WME," as used herein, refers to William Morris Endeavor, LLC, and any of its past or present predecessors-in-interest or successors-in-interest, any partner, joint venturer, affiliated company, subsidiary or division thereof, and any

DEFENDANT LAURA SIEGEL LARSON'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

**Exhibit E**
**55**

other person or persons acting on its behalf, including, but not limited to, past or present agents, managers, representatives, advisors, employees, attorneys, accountants, investigators and insurance companies, and any agents or employees of the above, both singularly and cumulatively.

13.    The term "DAVID MICHAELS," as used herein, refers to David T. Michaels (California State Bar #235985) and any other person or persons acting on his behalf, including, but not limited to, past or present agents, managers, representatives, advisors, employees, attorneys, accountants, investigators and insurance companies, and any agents or employees of the above, both singularly and cumulatively.

14.    The term "COMPLAINT," as used herein, refers to YOUR First Amended Complaint, filed in this case on September 3, 2010.

15.    The term "TOBEROFF TIMELINE," as used herein, refers to the anonymous document entitled "SUPERMAN – MARC TOBEROFF TIMELINE," attached as Exhibit "A" to the COMPLAINT.

16.    The term "STOLEN DOCUMENTS," as used herein, refers to the actual physical documents that were delivered to WARNER along with the TOBEROFF TIMELINE.

17.    The terms "REFER" or "RELATE" mean, without limitation, evidence, reflect, summarize, constitute, contain, study, analyze, explain, mention, show, discuss, describe, or comment upon.

18.    The terms "REGARDING," "RELATING TO" and "REFERRING TO" shall each have the same meaning as REFER or RELATE.

19.    As used herein, the singular shall always include the plural, or vice-versa, and verb tenses shall always include the past, present and future tenses.  The word "any" shall be understood to include and encompass "all."  The word "all" shall be understood to include and encompass "any."  The words "and" as well as "or" shall be construed disjunctively or conjunctively, as necessary, to bring within the

4

scope of these Requests all DOCUMENTS or things which might otherwise be construed to be outside their scope.

20.     The requested DOCUMENTS include all attachments, enclosures, explanatory notes or memoranda, and any other material that accompanied the DOCUMENTS requested.  If the specific DOCUMENT elicited a response, that response is also to be identified and produced.  If the DOCUMENT itself was a response, the DOCUMENT to which it is responding is also to be identified and produced.

21.     These Requests are continuing, and any DOCUMENT obtained subsequent to production which would have been produced had it been available or its existence known to YOU is to be supplied forthwith.

22.     YOU are to produce any and all DOCUMENTS in YOUR possession, custody or control, or subject to YOUR control, including but not limited to, in the possession of any of YOUR attorneys, agents, shareholders, officers and representatives.  In the event that YOU cannot produce all of the DOCUMENTS designated in a particular request, YOU shall produce those DOCUMENTS which YOU can produce, and shall describe in detail each reason for YOUR inability to produce each of the remaining DOCUMENTS.

23.     In the event that any DOCUMENT called for by a Request has been destroyed, lost, discarded or otherwise disposed of, any such DOCUMENT is to be identified as completely as possible by providing, without limitation, the following information: the date of disposal; the manner of disposal; the reason for disposal; the person authorizing disposal; and the person who disposed of the document.

24.     If YOU contend that any responsive DOCUMENT is privileged, YOU must identify each such DOCUMENT by providing the following information: the date of the DOCUMENT; a description of its nature and content; the name and capacity of the individual who originated the DOCUMENT; the name and capacity of the individual to whom the DOCUMENT is addressed and all individuals to whom it

DEFENDANT LAURA SIEGEL LARSON'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

**Exhibit E**
**57**

1    was circulated; and the privilege(s) asserted.

2        25.    Where an objection is made to any Request, or part thereof, all grounds

3    for the objection must be stated with specificity.  Any ground not stated in an

4    objection shall be deemed to be waived.

5        26.    If any Request is objected to as being ambiguous, vague and/or

6    overbroad, all DOCUMENTS that YOU reasonably believe are within the scope of

7    the Request should be produced, and YOUR objection should specify what is

8    otherwise ambiguous, vague or overbroad about the Request.

9        27.    Each DOCUMENT is to be produced as it is kept in the usual course of

10    business, including all file folders, binders, notebooks, and other devices by which

11    such DOCUMENTS may be organized or separated.

12        28.    All responsive DOCUMENTS maintained or stored in electronic format

13    shall be produced in native file format with all associated metadata preserved.  All

14    responsible DOCUMENTS maintained in hard copy shall be produced in PDF.

15        29.    The collection and production of DOCUMENTS shall be performed in a

16    manner that ensures that the source of each DOCUMENT may be determined, if

17    necessary.

18    **II.**

19    **DOCUMENTS AND THINGS REQUESTED**

20    **Request No. 1**

21        Any STOLEN DOCUMENTS that have not been produced in this case or in

22    the *Siegel* Litigations.

23    **Request No. 2**

24        Any STOLEN DOCUMENTS that were not transmitted to ARNOLD

25    PORTER.

26    **Request No. 3**

27        All DOCUMENTS that REFER to the date and/or circumstances surrounding

28    WARNER's receipt of the STOLEN DOCUMENTS.

6

DEFENDANT LAURA SIEGEL LARSON'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

**Exhibit E**
**58**

**Request No. 4**

All DOCUMENTS that REFER to the date and/or circumstances surrounding WARNER's receipt of the TOBEROFF TIMELINE.

**Request No. 5**

All DOCUMENTS that REFER to the date and/or circumstances surrounding YOUR receipt of the STOLEN DOCUMENTS.

**Request No. 6**

All DOCUMENTS that REFER to the date and/or circumstances surrounding YOUR receipt of the TOBEROFF TIMELINE.

**Request No. 7**

All DOCUMENTS that REFER to WARNER's review of the STOLEN DOCUMENTS.

**Request No. 8**

All DOCUMENTS that REFER to WARNER's review of the TOBEROFF TIMELINE.

**Request No. 9**

All DOCUMENTS which show when WARNER first received the STOLEN DOCUMENTS.

**Request No. 10**

All DOCUMENTS which show when WARNER first received the TOBEROFF TIMELINE.

**Request No. 11**

All DOCUMENTS which show when WARNER first became aware of the STOLEN DOCUMENTS.

**Request No. 12**

All DOCUMENTS which show when WARNER first became aware of the TOBEROFF TIMELINE.

**Request No. 13**

DEFENDANT LAURA SIEGEL LARSON'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

**Exhibit E**
**59**

1      All DOCUMENTS which show when YOU first received the STOLEN

2 DOCUMENTS.

3 **<u>Request No. 14</u>**

4      All DOCUMENTS which show when YOU first received the TOBEROFF

5 TIMELINE.

6 **<u>Request No. 15</u>**

7      All DOCUMENTS which show when YOU first became aware of the

8 STOLEN DOCUMENTS.

9 **<u>Request No. 16</u>**

10      All DOCUMENTS which show when YOU first became aware of the

11 TOBEROFF TIMELINE.

12 **<u>Request No. 17</u>**

13      All DOCUMENTS REFERRING TO the TOBEROFF TIMELINE.

14 **<u>Request No. 18</u>**

15      All DOCUMENTS REFERRING TO the STOLEN DOCUMENTS.

16 **<u>Request No. 19</u>**

17      All DOCUMENTS REFERRING TO ARNOLD PORTER and the

18 TOBEROFF TIMELINE.

19 **<u>Request No. 20</u>**

20      All DOCUMENTS REFERRING TO ARNOLD PORTER and the STOLEN

21 DOCUMENTS.

22 **<u>Request No. 21</u>**

23      All COMMUNICATIONS between YOU and ARNOLD PORTER

24 REFERRING TO the TOBEROFF TIMELINE.

25 **<u>Request No. 22</u>**

26      All COMMUNICATIONS between YOU and ARNOLD PORTER

27 REFERRING TO any of the STOLEN DOCUMENTS.

28 **<u>Request No. 23</u>**

DEFENDANT LAURA SIEGEL LARSON'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

1       All COMMUNICATIONS between YOU and ARNOLD PORTER

2  REFERRING TO the *Siegel* Litigations.

3  **Request No. 24**

4       All receipts, bills, invoices, and equivalent DOCUMENTS from ARNOLD

5  PORTER that RELATE TO the STOLEN DOCUMENTS, the TOBEROFF

6  TIMELINE, or the *Siegel* Litigations.

7  **Request No. 25**

8       DOCUMENTS sufficient to show when WARNER first hired ARNOLD

9  PORTER with respect to the STOLEN DOCUMENTS.

10  **Request No. 26**

11       WARNER'S retainer agreement with ARNOLD PORTER REGARDING the

12  STOLEN DOCUMENTS.

13  **Request No. 27**

14       Documents that state WARNER'S protocol or procedures for maintaining, and

15  disposing of records, including electronic records, files and e-mails.

16  **Request No. 28**

17       All DOCUMENTS reviewed or relied upon in connection with the filing of

18  YOUR complaint and first amended complaint in this case.

19  **Request No. 29**

20       All complaints or counterclaims filed by YOU and/or WARNER containing a

21  claim for tortious interference with prospective economic advantage and/or a claim

22  for tortious interference with contract.

23  **Request No. 30**

24       All DOCUMENTS REFERRING TO this case and/or the *Siegel* Litigations,

25  excluding documents produced or filed in this case or the Siegel Litigations.

26  **Request No. 31**

27       All minutes of Board of Directors meetings or Directors' resolutions

28  RELATING TO any Defendants in this case and/or the *Siegel* Litigations.

DEFENDANT LAURA SIEGEL LARSON'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

**Request No. 32**

All DOCUMENTS that REFER to the person who sent the STOLEN DOCUMENTS to WARNER.

**Request No. 33**

All DOCUMENTS RELATING TO YOUR efforts to locate, identify, and/or communicate with the person who sent the STOLEN DOCUMENTS to WARNER.

**Request No. 34**

All COMMUNICATIONS between YOU and the person who sent the STOLEN DOCUMENTS to WARNER.

**Request No. 35**

All DOCUMENTS that REFER to the author of the TOBEROFF TIMELINE.

**Request No. 36**

All DOCUMENTS RELATING TO YOUR efforts to locate, identify, and/or communicate with the author of the TOBEROFF TIMELINE.

**Request No. 37**

All COMMUNICATIONS between YOU and the author of the TOBEROFF TIMELINE

**Request No. 38**

All DOCUMENTS that REFER to DAVID MICHAELS.

**Request No. 39**

All DOCUMENTS RELATING TO YOUR efforts to locate, identify, and/or communicate with DAVID MICHAELS.

**Request No. 40**

All COMMUNICATIONS between YOU and DAVID MICHAELS.

**Request No. 41**

All DOCUMENTS that REFER to former employees of Marc Toberoff, Toberoff & Associates, Pacific Pictures Corporation, IP Worldwide, LLC and IPW, LLC.

10

DEFENDANT LAURA SIEGEL LARSON'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

**Exhibit E**

**62**

**Request No. 42**

All DOCUMENTS RELATING TO YOUR efforts to locate, identify, and/or communicate with former employees of Marc Toberoff, Toberoff & Associates, Pacific Pictures Corporation, IP Worldwide, LLC and IPW, LLC.

**Request No. 43**

All COMMUNICATIONS between YOU and former employees of Marc Toberoff, Toberoff & Associates, Pacific Pictures Corporation, IP Worldwide, LLC and IPW, LLC.

**Request No. 44**

All COMMUNICATIONS between WARNER and GWF RELATING TO the STOLEN DOCUMENTS.

**Request No. 45**

All COMMUNICATIONS between WARNER and GWF RELATING TO the TOBEROFF TIMELINE.

**Request No. 46**

All COMMUNICATIONS between WARNER and GWF RELATING TO DAVID MICHAELS.

**Request No. 47**

All DOCUMENTS RELATING TO WARNER'S protocols or procedures in effect between 2005 and 2006 for logging OR recording its receipt of packages, envelopes, and other documents received by mail or other forms of delivery at WARNER'S studio at 4000 Warner Boulevard, Burbank, California 91522.

**Request No. 48**

All DOCUMENTS RELATING TO WARNER'S protocols or procedures in effect in between 2005 and 2006 as to the retention of packaging, envelopes or equivalent enclosures for documents received by mail or other forms of delivery at WARNER'S studio, at 4000 Warner Boulevard, Burbank, California 91522.

**Request No. 49**

DEFENDANT LAURA SIEGEL LARSON'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

**Exhibit E**
**63**

All DOCUMENTS that REFER to WARNER'S efforts to locate the packaging, envelope, or equivalent enclosure in which the TOBEROFF TIMELINE was sent to WARNER'S studio, at 4000 Warner Boulevard, Burbank, California 91522.

**Request No. 50**

All DOCUMENTS that REFER to WARNER'S efforts to locate the packaging, envelope, or equivalent enclosure in which the STOLEN DOCUMENTS were sent to WARNER'S studio, at 4000 Warner Boulevard, Burbank, California 91522.

**Request No. 51**

All COMMUNICATIONS RELATING TO WARNER'S efforts to locate the packaging, envelope, or equivalent enclosure in which the TOBEROFF TIMELINE was sent to WARNER'S studio, at 4000 Warner Boulevard, Burbank, California 91522.

**Request No. 52**

All COMMUNICATIONS that RELATING TO WARNER'S efforts to locate the packaging, envelope, or equivalent enclosure in which the STOLEN DOCUMENTS were sent to WARNER'S studio, at 4000 Warner Boulevard, Burbank, California 91522.

**Request No. 53**

All DOCUMENTS logging, listing, or recording the packages, envelopes, and other documents received between November 1, 2005 and December 25, 2005, by mail or other form of delivery, at WARNER'S studio, at 4000 Warner Boulevard, Burbank, California 91522.

**Request No. 54**

DOCUMENTS sufficient to show the PERSONS employed between 2005 and 2006 in the mailroom, mail center, or other similar mail department, office, or stations, responsible for receiving, sorting, logging, and/or distributing packages,

12

DEFENDANT LAURA SIEGEL LARSON'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

**Exhibit E**
**64**

envelopes and other documents received by mail and other forms of delivery at WARNER'S studio, at 4000 Warner Boulevard, Burbank, California 91522.

**Request No. 55**

DOCUMENTS sufficient to show the PERSONS employed between 2005 and 2006 as support staff for and/or under Alan Horn, Patti Connolly, Jeff Rabinov and John Schulman, including, but not limited to, secretaries, assistants, personal assistants, administrative assistants, executive assistants, and/or gofers.

**Request No. 56**

All DOCUMENTS that log or list WARNER'S receipt of the STOLEN DOCUMENTS.

**Request No. 57**

All DOCUMENTS that log or list the delivery of the STOLEN DOCUMENTS to the offices of Alan Horn, Patti Connolly, Jeff Rabinov or John Schulman.

**Request No. 58**

All DOCUMENTS that log or list the receipt of the STOLEN DOCUMENTS by the office of Alan Horn, Patti Connolly, Jeff Rabinov or John Schulman.

**Request No. 59**

All DOCUMENTS that log or list the delivery of the STOLEN DOCUMENTS from the office of Alan Horn, Patti Connolly or Jeff Rabinov to the office of John Schulman.

**Request No. 60**

All COMMUNICATIONS by or on behalf of Alan Horn that REFER to the TIMELINE or the STOLEN DOCUMENTS.

**Request No. 61**

All COMMUNICATIONS by or on behalf of Patti Connolly that REFER to the TIMELINE or the STOLEN DOCUMENTS.

**Request No. 62**

All COMMUNICATIONS by or on behalf of Jeff Rabinov that REFER to the

13

1  TIMELINE or the STOLEN DOCUMENTS.

2  **Request No. 63**

3  All DOCUMENTS that state WARNER'S protocols or procedures in effect

4  between 2005 and 2006 for logging or tracking visitors to WARNER'S studio at

5  4000 Warner Boulevard, Burbank, California 91522.

6  **Request No. 64**

7  DOCUMENTS sufficient to show all visits by DAVID MICHAELS to

8  WARNER'S studio at 4000 Warner Boulevard, Burbank, California 91522.

9  **Request No. 65**

10  DOCUMENTS sufficient to show all visitors to WARNER'S studio at 4000

11  Warner Boulevard, Burbank, California 91522, between June 25, 2006 and June 28,

12  2006.

13  **Request No. 66**

14  DOCUMENTS sufficient to show when O'Melveny & Myers LLP was first

15  retained as YOUR counsel for this litigation.

16  **Request No. 67**

17  DOCUMENTS sufficient to show when O'Melveny & Myers LLP was first

18  retained as YOUR counsel for the *Siegel* Litigations.

19  **Request No. 68**

20  All retainer agreements between YOU and O'Melveny & Myers LLP that

21  RELATE to this case or the *Siegel* Litigations.

22  **Request No. 69**

23  All conflict waivers between YOU and O'Melveny & Myers LLP that

24  RELATE to this case or the *Siegel* Litigations.

25  **Request No. 70**

26  All COMMUNICATIONS between YOU and Joanne Siegel.

27  **Request No. 71**

28  All COMMUNICATIONS between YOU and Laura Siegel Larson.

14

DEFENDANT LAURA SIEGEL LARSON'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

**Exhibit E**
**66**

1    **Request No. 83**

2        All agreements between YOU and any private investigator REGARDING this

3    case or the *Siegel* Litigations.

4    **Request No. 84**

5        All agreements between YOU and any publicist, publicity agent or agency

6    REGARDING this case or the *Siegel* Litigations.

7    **Request No. 85**

8        All COMMUNICATIONS between YOU and any publicist, publicity agent or

9    publicity agency REGARDING this case or the *Siegel* Litigations.

10    **Request No. 86**

11        All DOCUMENTS REGARDING publicity RELATING TO this case or the

12    *Siegel* Litigations.

13    **Request No. 87**

14        All COMMUNICATIONS between YOU and any person or entity

15    REGARDING internet blogging RELATING TO this case or the *Siegel* Litigations.

16    **Request No. 88**

17        All COMMUNICATIONS between YOU and any person or entity

18    REGARDING the TIMELINE.

19    **Request No. 89**

20        All COMMUNICATIONS between YOU and any person or entity

21    REGARDING Marc Toberoff.

22    **Request No. 90**

23        All DOCUMENTS that support YOUR contention that "DC Comics and the

24    Siegel heirs reached an agreement providing that DC Comics would retain all rights

25    to Superman and entitling the Siegels to receive a significant portion of the Superman

26    profits," found in paragraph 7 of YOUR COMPLAINT.

27    **Request No. 91**

28        All DOCUMENTS that support YOUR contention that "Toberoff presented

DEFENDANT LAURA SIEGEL LARSON'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

1    Dated:  August 30, 2012

2                                          /s/ David Harris

3                                          David Harris
                                           TOBEROFF & ASSOCIATES, P.C.

4                                          Attorneys for Defendants Mark Warren Peary, as
                                           personal representative of the Estate of Joseph
5                                          Shuster, Jean Adele Peavy, and Laura Siegel Larson,
                                           individually and as personal representative of the
6                                          Estate of Joanne Siegel

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT LAURA SIEGEL LARSON'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF DC COMICS

**Exhibit E**
**68**

1   DANIEL M. PETROCELLI (S.B. #097802)
      dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
      mkline@omm.com
3   CASSANDRA L. SETO (S.B. #246608)
      cseto@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA  90067-6035
    Telephone:  (310) 553-6700
6   Facsimile:   (310) 246-6779

7   Attorneys for Plaintiff DC Comics

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10  DC COMICS,                          Case No. CV 10-3633 ODW (RZx)

11          Plaintiff,                  **PLAINTIFF DC COMICS'**
                                        **OBJECTIONS AND RESPONSES**
12          v.                          **TO DEFENDANT LAURA**
                                        **SIEGEL LARSON'S FIRST SET**
13  PACIFIC PICTURES                    **OF REQUESTS FOR**
    CORPORATION, IP WORLDWIDE,          **PRODUCTION**
14  LLC, IPW, LLC, MARC TOBEROFF,
    an individual, MARK WARREN          **Judge**:        Hon. Otis D. Wright II
15  PEARY, as personal representative of **Magistrate**:   Hon. Ralph Zarefsky
    the ESTATE OF JOSEPH SHUSTER,
16  JEAN ADELE PEAVY, an individual,    Complaint Filed:  May 14, 2010
    LAURA SIEGEL LARSON, an             Trial Date:       None Set
17  individual and as personal
    representative of the ESTATE OF
18  JOANNE SIEGEL, and DOES 1-10,
    inclusive,
19
            Defendants.
20

21  PROPOUNDING PARTY:      Laura Siegel Larson

22  RESPONDING PARTY:       DC Comics

23
    SET NUMBER:             One (Nos. 1-125)
24

25

26

27

28

                                        DC'S OBJS. & RESPS. TO
                                        LARSON'S REQS. FOR PROD. 1-125

1        Pursuant to Federal Rule of Civil Procedure 34, plaintiff DC Comics ("DC")

2   hereby objects and responds to defendant Laura Siegel Larson's ("Larson") First

3   Request for Production of Documents and Things ("Requests").

4                          **PRELIMINARY STATEMENT**

5        DC's Objections and Responses to Defendant Laura Siegel Larson's First Set

6   of Requests for Production ("Responses") are based on the information reasonably

7   and currently known to DC.  Responses to many of the requests can be addressed

8   by referencing DC's complaint (Docket No. 49; *id.* Ex. A), all the briefing to date in

9   this action—including, but not limited to, the briefing and exhibits filed in

10  connection with defendants' Rule 12 and SLAPP motions (Docket Nos. 30, 30-1 to

11  30-5, 31, 31-1, 31-2, 32, 33, 33-1 to 33-4, 34, 34-1, 34-2, 35, 36, 75, 75-1 to 75-5,

12  76, 77, 77-1 to 77-3, 78, 78-1 to 78-2, 79, 80, 80-1 to 80-4, 81, 89, 90, 91, 92, 93,

13  94, 94-1 to 94-40, 98, 98-1 to 98-4, 99, 99-1 to 99-2, 100, 100-1 to 100-3, 102, 102-

14  1, 103, 103-1, 106, 107, 108, 146, 146-1 to 146-4, 147, 147-1 to 147-3, 148, 148-1

15  to 148-5, 149, 150, 151, 154, 156, 181, 182, 182-1 to 182-40, 183, 183-1 to 183-4,

16  184, 185, 186, 191, 191-1, 192, 192-1 to 192-3, 193, 193-1 to 193-2, 194, 195, 195-

17  1, 196, 196-1 to 196-4, 201, 202, 203, 304, 305-1 to 305-59, 306 (errata), 307, 308,

18  312, 312-1 to 312-2, 313, 314, 314-1 to 314-3, 333, 333-1 to 333-3, 334, 334-1 to

19  334-13, 335, 338, 338-1), and DC's and defendants' cross-motions for summary

20  judgment (Docket Nos. 458, 458-1, 458-2, 459, 459-1 to 459-6, 460, 460-1 to 460-

21  3, 462, 463, 463-1 to 463-4, 464, 465, 465-1, 468, 469, 469-1, 470, 470-1, 471,

22  472, 473, 474, 478, 478-1, 478-2, 479, 479-1 to 479-7, 491, 491-1, 491-2, 492, 493,

23  493-1 to 493-7, 494, 494-1, 495, 495-1 to 495-5)—and all discovery in this action

24  and the *Siegel* action (*e.g.*, DCC00000001-154435 and WB000001-149488,

25  DC00001-168)—including, but not limited to, all deposition testimony in those

26  cases and here.

27        In making this document production pursuant to the Court's December 7,

28  2010 Order Granting Stipulation Re: Defendants' Production Of Documents And

- 1 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**
**70**

1    Privilege Logs (Docket No. 133) ("2010 Court-Ordered Stipulation"), DC will

2    reference by Bates number documents already produced in the *Siegel* litigations and

3    this case, rather than re-copy and reproduce such documents.  Given that discovery

4    is ongoing, expert discovery has not yet begun, third-party discovery still needs to

5    be taken, defendants are advancing new arguments to which DC must respond, and

6    defendants continue their efforts to stymie DC's discovery in this case, DC reserves

7    all rights to supplement these Responses as more information becomes available or

8    required.

9          Consistent with the 2010 Court-Ordered Stipulation, DC will not log

10   documents subject to a claim of attorney-client privilege, work-product privilege, or

11   any other privilege available under law that were created on or after May 14, 2010.

12   Consistent with the parties' previous discussions, DC serves concurrently herewith

13   a proposed stipulation providing that DC, its corporate affiliates named as

14   defendants in *Siegel v. Warner Bros. Entm't Inc.* (Case No. 04-8400 ODW (RZx))

15   and *Siegel v. Warner Comm'ns Inc.* (Case No. 04-8776 ODW (RZx)) and their

16   subsidiaries, and Laura Siegel Larson shall not be required to list on their respective

17   privilege logs in this case any privileged documents created on or after October 8,

18   2004, when the first complaint was filed in the *Siegel* actions, as logging such

19   documents would constitute an unreasonable and undue burden on DC.  As noted

20   during the parties' many discussions on this subject, DC is willing to meet and

21   confer with defendants concerning this proposed stipulation, though if the parties

22   are unable to reach an agreement, DC will seek all appropriate relief.

23         By these Responses, DC does not intend to waive, and does not waive, any

24   objection at trial to the admission into evidence of these Responses, in whole or in

25   part, or the documents produced in connection therewith.  Rather, DC intends to

26   preserve, and does preserve, all objections to the admission into evidence of these

27   Responses, in whole or in part, and the documents produced in connection with

28   them, including, without limitation, objections based on relevance, foundation,

- 2 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

authenticity, or privilege, as well as any and all objections based on the Federal Rules of Evidence or otherwise.  As noted  below, DC also reserves all privilege objections, and directs defendants to its previously produced privilege logs.

<strong><u>SPECIFIC OBJECTIONS AND RESPONSES</u></strong>

**<u>Request No. 1</u>**

Any STOLEN DOCUMENTS that have not been produced in this case or in the *Siegel* Litigations.

**<u>Response to Request No. 1</u>**

DC objects to this Request to the extent that it seeks the production of any item, or portion thereof, which is not reasonably calculated to lead to the discovery of relevant and admissible evidence.

Subject to and without waiving all foregoing objections, DC responds that to the extent any such documents exist—*e.g.*, if defendants withheld certain documents from their May 11, 2012, production of Toberoff Timeline documents— they are not within DC's possession, custody, or control.

**<u>Request No. 2</u>**

Any STOLEN DOCUMENTS that were not transmitted to ARNOLD PORTER.

**<u>Response to Request No. 2</u>**

DC objects to this Request to the extent that it seeks the production of any item, or portion thereof, which is not reasonably calculated to lead to the discovery of relevant and admissible evidence.

Subject to and without waiving all foregoing objections, DC responds that no such documents exist.

**<u>Request No. 3</u>**

All DOCUMENTS that REFER to the date and/or circumstances surrounding WARNER's receipt of the STOLEN DOCUMENTS.

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1    **Response to Request No. 3**

2         DC objects to this Request as seeking the production of documents which are

3    not reasonably calculated to lead to the discovery of relevant and admissible

4    evidence.  DC further objects to this Request on the grounds that it is indefinite as

5    to time and not reasonably limited in scope.  DC further objects to this Request on

6    the grounds that it calls for a search of documents that is unduly expensive,

7    overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

8    that it seeks information protected by the attorney-client privilege, the attorney

9    work product doctrine, or any other applicable privilege or immunity.  DC further

10   objects to this Request to the extent that it disregards the Court's binding finding

11   that DC and WARNER "acted professionally" and "reasonably" in receiving and

12   handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

13        DC objects to the definition of "WARNER" and responds to that term as

14   limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

15   extent the Request seeks production of "all DOCUMENTS" on the ground that

16   such request is overly broad, unduly burdensome, oppressive, and not reasonably

17   calculated to lead to the discovery of admissible evidence, as the definition of

18   "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly

19   available documents.  As used in these Responses, the phrase "all DOCUMENTS,"

20   or phrases of similar import, should be understood to mean those documents DC

21   and its counsel were able to locate using reasonable diligence and reasonable

22   judgment concerning the whereabouts of such documents.  DC does not object to or

23   withhold any document based on the definition of "REFER," as this definition

24   mirrors in large part language that DC employed in its own discovery requests.

25   Defendants previously objected to this same language in DC's requests as

26   impermissibly overbroad.  Based on defendants' use of this same term and tacit

27   acknowledgement that DC's use of these terms is proper, DC will not object on this

28   ground, and DC has confirmed with defendants that they will do the same.

- 4 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**

**73**

1    Subject to and without waiving all foregoing objections, DC agrees to meet-

2    and-confer with defendants regarding the relevance of the requested documents and

3    in an effort to reasonably narrow this Request and to see what, if any, documents

4    should be produced.

5    **Request No. 4**

6    All DOCUMENTS that REFER to the date and/or circumstances surrounding

7    WARNER's receipt of the TOBEROFF TIMELINE.

8    **Response to Request No. 4**

9    DC objects to this Request as seeking the production of documents which are

10   not reasonably calculated to lead to the discovery of relevant and admissible

11   evidence.  DC further objects to this Request on the grounds that it is indefinite as

12   to time and not reasonably limited in scope.  DC further objects to this Request on

13   the grounds that it calls for a search of documents that is unduly expensive,

14   overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

15   that it seeks information protected by the attorney-client privilege, the attorney

16   work product doctrine, or any other applicable privilege or immunity.  DC further

17   objects to this Request to the extent that it disregards the Court's binding finding

18   that DC and WARNER "acted professionally" and "reasonably" in receiving and

19   handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

20   DC objects to the definition of "WARNER" and responds to that term as

21   limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

22   extent the Request seeks production of "all DOCUMENTS" on the ground that

23   such request is overly broad, unduly burdensome, oppressive, and not reasonably

24   calculated to lead to the discovery of admissible evidence, as the definition of

25   "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly

26   available documents.  As used in these Responses, the phrase "all DOCUMENTS,"

27   or phrases of similar import, should be understood to mean those documents DC

28   and its counsel were able to locate using reasonable diligence and reasonable

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1  judgment concerning the whereabouts of such documents.  DC does not object to or

2  withhold any document based on the definition of "REFER," as this definition

3  mirrors in large part language that DC employed in its own discovery requests.

4  Defendants previously objected to this same language in DC's requests as

5  impermissibly overbroad.  Based on defendants' use of this same term and tacit

6  acknowledgement that DC's use of these terms is proper, DC will not object on this

7  ground, and DC has confirmed with defendants that they will do the same.

8       Subject to and without waiving all foregoing objections, DC agrees to meet-

9  and-confer with defendants regarding the relevance of the requested documents and

10  in an effort to reasonably narrow this Request and to see what, if any, documents

11  should be produced.

12  **Request No. 5**

13       All DOCUMENTS that REFER to the date and/or circumstances surrounding

14  YOUR receipt of the STOLEN DOCUMENTS.

15  **Response to Request No. 5**

16       DC objects to this Request as seeking the production of documents which are

17  not reasonably calculated to lead to the discovery of relevant and admissible

18  evidence.  DC further objects to this Request on the grounds that it is indefinite as

19  to time and not reasonably limited in scope.  DC further objects to this Request on

20  the grounds that it calls for a search of documents that is unduly expensive,

21  overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

22  that it seeks information protected by the attorney-client privilege, the attorney

23  work product doctrine, or any other applicable privilege or immunity.  DC further

24  objects to this Request to the extent that it disregards the Court's binding finding

25  that DC and WARNER "acted professionally" and "reasonably" in receiving and

26  handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

27       DC objects to the definition of "YOUR" as vague and overbroad and

28  responds to that term as limited to the relevant custodians at DC and Warner Bros.

- 6 -

1  Entertainment Inc.  DC objects to the extent the Request seeks production of "all

2  DOCUMENTS" on the ground that such request is overly broad, unduly

3  burdensome, oppressive, and not reasonably calculated to lead to the discovery of

4  admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all

5  court filings in this case and other publicly available documents.  As used in these

6  Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

7  understood to mean those documents DC and its counsel were able to locate using

8  reasonable diligence and reasonable judgment concerning the whereabouts of such

9  documents.  DC does not object to or withhold any document based on the

10  definition of "REFER," as this definition mirrors in large part language that DC

11  employed in its own discovery requests.  Defendants previously objected to this

12  same language in DC's requests as impermissibly overbroad.  Based on defendants'

13  use of this same term and tacit acknowledgement that DC's use of these terms is

14  proper, DC will not object on this ground, and DC has confirmed with defendants

15  that they will do the same.

16      Subject to and without waiving all foregoing objections, DC agrees to meet-

17  and-confer with defendants regarding the relevance of the requested documents and

18  in an effort to reasonably narrow this Request and to see what, if any, documents

19  should be produced.

20  **Request No. 6**

21      All DOCUMENTS that REFER to the date and/or circumstances surrounding

22  YOUR receipt of the TOBEROFF TIMELINE.

23  **Response to Request No. 6**

24      DC objects to this Request as seeking the production of documents which are

25  not reasonably calculated to lead to the discovery of relevant and admissible

26  evidence.  DC further objects to this Request on the grounds that it is indefinite as

27  to time and not reasonably limited in scope.  DC further objects to this Request on

28  the grounds that it calls for a search of documents that is unduly expensive,

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**

**76**

1    overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

2    that it seeks information protected by the attorney-client privilege, the attorney

3    work product doctrine, or any other applicable privilege or immunity.  DC further

4    objects to this Request to the extent that it disregards the Court's binding finding

5    that DC and WARNER "acted professionally" and "reasonably" in receiving and

6    handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.  DC

7    further objects on the ground that based on defendants' definition of "YOUR,"

8    there is no one "date" on which the referenced document was received.

9         DC objects to the definition of "YOUR" as vague and overbroad and respond

10   to that term as limited to the relevant custodians at DC and Warner Bros.

11   Entertainment Inc.  DC objects to the extent the Request seeks production of "all

12   DOCUMENTS" on the ground that such request is overly broad, unduly

13   burdensome, oppressive, and not reasonably calculated to lead to the discovery of

14   admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all

15   court filings in this case and other publicly available documents.  As used in these

16   Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

17   understood to mean those documents DC and its counsel were able to locate using

18   reasonable diligence and reasonable judgment concerning the whereabouts of such

19   documents.  DC does not object to or withhold any document based on the

20   definition of "REFER," as this definition mirrors in large part language that DC

21   employed in its own discovery requests.  Defendants previously objected to this

22   same language in DC's requests as impermissibly overbroad.  Based on defendants'

23   use of this same term and tacit acknowledgement that DC's use of these terms is

24   proper, DC will not object on this ground, and DC has confirmed with defendants

25   that they will do the same.

26        Subject to and without waiving all foregoing objections, DC agrees to meet-

27   and-confer with defendants regarding the relevance of the requested documents and

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1   in an effort to reasonably narrow this Request and to see what, if any, documents

2   should be produced.

3   **Request No. 7**

4       All DOCUMENTS that REFER to WARNER's review of the STOLEN

5   DOCUMENTS.

6   **Response to Request No. 7**

7       DC objects to this Request as seeking the production of documents which are

8   not reasonably calculated to lead to the discovery of relevant and admissible

9   evidence.  DC further objects to this Request on the grounds that it is indefinite as

10  to time and not reasonably limited in scope.  DC further objects to this Request on

11  the grounds that it calls for a search of documents that is unduly expensive,

12  overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

13  that it seeks information protected by the attorney-client privilege, the attorney

14  work product doctrine, or any other applicable privilege or immunity.  DC further

15  objects to this Request to the extent that it disregards the Court's binding finding

16  that DC and WARNER "acted professionally" and "reasonably" in receiving and

17  handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

18      DC objects to the term "review" as vague and ambiguous.  DC objects to the

19  definition of "WARNER" and responds to that term as limited to relevant

20  custodians at Warner Bros. Entertainment Inc.  DC objects to the extent the Request

21  seeks production of "all DOCUMENTS" on the ground that such request is overly

22  broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the

23  discovery of admissible evidence, as the definition of "DOCUMENTS"

24  encompasses, *e.g.,* all court filings in this case and other publicly available

25  documents.  As used in these Responses, the phrase "all DOCUMENTS," or

26  phrases of similar import, should be understood to mean those documents DC and

27  its counsel were able to locate using reasonable diligence and reasonable judgment

28  concerning the whereabouts of such documents.  DC does not object to or withhold

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1   any document based on the definition of "REFER," as this definition mirrors in

2   large part language that DC employed in its own discovery requests.  Defendants

3   previously objected to this same language in DC's requests as impermissibly

4   overbroad.  Based on defendants' use of this same term and tacit acknowledgement

5   that DC's use of these terms is proper, DC will not object on this ground, and DC

6   has confirmed with defendants that they will do the same.

7         Subject to and without waiving all foregoing objections, DC agrees to meet-

8   and-confer with defendants regarding the relevance of the requested documents and

9   in an effort to reasonably narrow this Request and to see what, if any, documents

10  should be produced.

11  **Request No. 8**

12        All DOCUMENTS that REFER to WARNER's review of the TOBEROFF

13  TIMELINE.

14  **Response to Request No. 8**

15        DC objects to this Request as seeking the production of documents which are

16  not reasonably calculated to lead to the discovery of relevant and admissible

17  evidence.  DC further objects to this Request on the grounds that it is indefinite as

18  to time and not reasonably limited in scope.  DC further objects to this Request on

19  the grounds that it calls for a search of documents that is unduly expensive,

20  overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

21  that it seeks information protected by the attorney-client privilege, the attorney

22  work product doctrine, or any other applicable privilege or immunity.  DC further

23  objects to this Request to the extent that it disregards the Court's binding finding

24  that DC and WARNER "acted professionally" and "reasonably" in receiving and

25  handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

26        DC objects to the term "review" as vague and ambiguous.  DC objects to the

27  definition of "WARNER" and responds to that term as limited to relevant

28  custodians at Warner Bros. Entertainment Inc.  DC objects to the extent the Request

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1   seeks production of "all DOCUMENTS" on the ground that such request is overly

2   broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the

3   discovery of admissible evidence, as the definition of "DOCUMENTS"

4   encompasses, *e.g.,* all court filings in this case and other publicly available

5   documents.  As used in these Responses, the phrase "all DOCUMENTS," or

6   phrases of similar import, should be understood to mean those documents DC and

7   its counsel were able to locate using reasonable diligence and reasonable judgment

8   concerning the whereabouts of such documents.  DC does not object to or withhold

9   any document based on the definition of "REFER," as this definition mirrors in

10  large part language that DC employed in its own discovery requests.  Defendants

11  previously objected to this same language in DC's requests as impermissibly

12  overbroad.  Based on defendants' use of this same term and tacit acknowledgement

13  that DC's use of these terms is proper, DC will not object on this ground, and DC

14  has confirmed with defendants that they will do the same.

15       Subject to and without waiving all foregoing objections, DC agrees to meet-

16  and-confer with defendants regarding the relevance of the requested documents and

17  in an effort to reasonably narrow this Request and to see what, if any, documents

18  should be produced.

19  **Request No. 9**

20       All DOCUMENTS which show when WARNER first received the STOLEN

21  DOCUMENTS.

22  **Response to Request No. 9**

23       DC objects to this Request as seeking the production of documents which are

24  not reasonably calculated to lead to the discovery of relevant and admissible

25  evidence.  DC further objects to this Request on the grounds that it is indefinite as

26  to time and not reasonably limited in scope.  DC further objects to this Request on

27  the grounds that it calls for a search of documents that is unduly expensive,

28  overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

- 11 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**
**80**

1   that it seeks information protected by the attorney-client privilege, the attorney

2   work product doctrine, or any other applicable privilege or immunity.  DC further

3   objects to this Request to the extent that it disregards the Court's binding finding

4   that DC and WARNER "acted professionally" and "reasonably" in receiving and

5   handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

6          DC objects to the definition of "WARNER" and will respond to that term as

7   limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

8   extent the Request seeks production of "all DOCUMENTS" on the ground that

9   such request is overly broad, unduly burdensome, oppressive, and not reasonably

10  calculated to lead to the discovery of admissible evidence, as the definition of

11  "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly

12  available documents.  As used in these Responses, the phrase "all DOCUMENTS,"

13  or phrases of similar import, should be understood to mean those documents DC

14  and its counsel were able to locate using reasonable diligence and reasonable

15  judgment concerning the whereabouts of such documents.

16         Subject to and without waiving all foregoing objections, DC agrees to meet-

17  and-confer with defendants regarding the relevance of the requested documents and

18  in an effort to reasonably narrow this Request and to see what, if any, documents

19  should be produced.

20  **Request No. 10**

21         All DOCUMENTS which show when WARNER first received the

22  TOBEROFF TIMELINE.

23  **Response to Request No. 10**

24         DC objects to this Request as seeking the production of documents which are

25  not reasonably calculated to lead to the discovery of relevant and admissible

26  evidence.  DC further objects to this Request on the grounds that it is indefinite as

27  to time and not reasonably limited in scope.  DC further objects to this Request on

28  the grounds that it calls for a search of documents that is unduly expensive,

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**
**81**

1    overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

2    that it seeks information protected by the attorney-client privilege, the attorney

3    work product doctrine, or any other applicable privilege or immunity.  DC further

4    objects to this Request to the extent that it disregards the Court's binding finding

5    that DC and WARNER "acted professionally" and "reasonably" in receiving and

6    handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

7         DC objects to the definition of "WARNER" and will respond to that term as

8    limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

9    extent the Request seeks production of "all DOCUMENTS" on the ground that

10   such request is overly broad, unduly burdensome, oppressive, and not reasonably

11   calculated to lead to the discovery of admissible evidence, as the definition of

12   "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly

13   available documents.  As used in these Responses, the phrase "all DOCUMENTS,"

14   or phrases of similar import, should be understood to mean those documents DC

15   and its counsel were able to locate using reasonable diligence and reasonable

16   judgment concerning the whereabouts of such documents.

17        Subject to and without waiving all foregoing objections, DC agrees to meet-

18   and-confer with defendants regarding the relevance of the requested documents and

19   in an effort to reasonably narrow this Request and to see what, if any, documents

20   should be produced.

21   **Request No. 11**

22        All DOCUMENTS which show when WARNER first became aware of the

23   STOLEN DOCUMENTS.

24   **Response to Request No. 11**

25        DC objects to this Request as seeking the production of documents which are

26   not reasonably calculated to lead to the discovery of relevant and admissible

27   evidence.  DC further objects to this Request on the grounds that it is indefinite as

28   to time and not reasonably limited in scope.  DC further objects to this Request on

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**

**82**

1   the grounds that it calls for a search of documents that is unduly expensive,

2   overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

3   that it seeks information protected by the attorney-client privilege, the attorney

4   work product doctrine, or any other applicable privilege or immunity.  DC further

5   objects to this Request to the extent that it disregards the Court's binding finding

6   that DC and WARNER "acted professionally" and "reasonably" in receiving and

7   handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

8       DC objects to the phrase "became aware" as vague and ambiguous.  DC

9   objects to the definition of "WARNER" and responds to that term as limited to

10  relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the extent the

11  Request seeks production of "all DOCUMENTS" on the ground that such request is

12  overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

13  to the discovery of admissible evidence, as the definition of "DOCUMENTS"

14  encompasses, *e.g.,* all court filings in this case and other publicly available

15  documents.  As used in these Responses, the phrase "all DOCUMENTS," or

16  phrases of similar import, should be understood to mean those documents DC and

17  its counsel were able to locate using reasonable diligence and reasonable judgment

18  concerning the whereabouts of such documents.

19      Subject to and without waiving all foregoing objections, DC agrees to meet-

20  and-confer with defendants regarding the relevance of the requested documents and

21  in an effort to reasonably narrow this Request and to see what, if any, documents

22  should be produced.

23  **Request No. 12**

24      All DOCUMENTS which show when WARNER first became aware of the

25  TOBEROFF TIMELINE.

26  **Response to Request No. 12**

27      DC objects to this Request as seeking the production of documents which are

28  not reasonably calculated to lead to the discovery of relevant and admissible

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1    evidence.  DC further objects to this Request on the grounds that it is indefinite as

2    to time and not reasonably limited in scope.  DC further objects to this Request on

3    the grounds that it calls for a search of documents that is unduly expensive,

4    overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

5    that it seeks information protected by the attorney-client privilege, the attorney

6    work product doctrine, or any other applicable privilege or immunity.  DC further

7    objects to this Request to the extent that it disregards the Court's binding finding

8    that DC and WARNER "acted professionally" and "reasonably" in receiving and

9    handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

10    DC objects to the phrase "became aware" as vague and ambiguous.  DC

11    objects to the definition of "WARNER" and responds to that term as limited to

12    relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the extent the

13    Request seeks production of "all DOCUMENTS" on the ground that such request is

14    overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

15    to the discovery of admissible evidence, as the definition of "DOCUMENTS"

16    encompasses, *e.g.,* all court filings in this case and other publicly available

17    documents.  As used in these Responses, the phrase "all DOCUMENTS," or

18    phrases of similar import, should be understood to mean those documents DC and

19    its counsel were able to locate using reasonable diligence and reasonable judgment

20    concerning the whereabouts of such documents.

21    Subject to and without waiving all foregoing objections, DC agrees to meet-

22    and-confer with defendants regarding the relevance of the requested documents and

23    in an effort to reasonably narrow this Request and to see what, if any, documents

24    should be produced.

25    **Request No. 13**

26    All DOCUMENTS which show when YOU first received the STOLEN

27    DOCUMENTS.

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**

**84**

**Response to Request No. 13**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence.  DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope.  DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive.  DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.  DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.  DC further objects on the ground that based on defendants' definition of "YOU," there is no one "date" on which the referenced documents were received.

DC objects to the definition of "YOU" and will respond to that term as limited to relevant custodians at DC and Warner Bros. Entertainment Inc.  DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly available documents.  As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**
**85**

1    **Request No. 14**

2        All DOCUMENTS which show when YOU first received the TOBEROFF

3    TIMELINE.

4    **Response to Request No. 14**

5        DC objects to this Request as seeking the production of documents which are

6    not reasonably calculated to lead to the discovery of relevant and admissible

7    evidence.  DC further objects to this Request on the grounds that it is indefinite as

8    to time and not reasonably limited in scope.  DC further objects to this Request on

9    the grounds that it calls for a search of documents that is unduly expensive,

10   overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

11   that it seeks information protected by the attorney-client privilege, the attorney

12   work product doctrine, or any other applicable privilege or immunity.  DC further

13   objects to this Request to the extent that it disregards the Court's binding finding

14   that DC and WARNER "acted professionally" and "reasonably" in receiving and

15   handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.  DC

16   further objects on the ground that based on defendants' definition of "YOU," there

17   is no one "date" on which the referenced document was received.

18       DC objects to the definition of "YOU" and will respond to that term as

19   limited to relevant custodians at DC and Warner Bros. Entertainment Inc.  DC

20   objects to the extent the Request seeks production of "all DOCUMENTS" on the

21   ground that such request is overly broad, unduly burdensome, oppressive, and not

22   reasonably calculated to lead to the discovery of admissible evidence, as the

23   definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and

24   other publicly available documents.  As used in these Responses, the phrase "all

25   DOCUMENTS," or phrases of similar import, should be understood to mean those

26   documents DC and its counsel were able to locate using reasonable diligence and

27   reasonable judgment concerning the whereabouts of such documents.

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**
**86**

1    Subject to and without waiving all foregoing objections, DC agrees to meet-

2    and-confer with defendants regarding the relevance of the requested documents and

3    in an effort to reasonably narrow this Request and to see what, if any, documents

4    should be produced.

5    **Request No. 15**

6    All DOCUMENTS which show when YOU first became aware of the

7    STOLEN DOCUMENTS.

8    **Response to Request No. 15**

9    DC objects to this Request as seeking the production of documents which are

10    not reasonably calculated to lead to the discovery of relevant and admissible

11    evidence.  DC further objects to this Request on the grounds that it is indefinite as

12    to time and not reasonably limited in scope.  DC further objects to this Request on

13    the grounds that it calls for a search of documents that is unduly expensive,

14    overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

15    that it seeks information protected by the attorney-client privilege, the attorney

16    work product doctrine, or any other applicable privilege or immunity.  DC further

17    objects to this Request to the extent that it disregards the Court's binding finding

18    that DC and WARNER "acted professionally" and "reasonably" in receiving and

19    handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.  DC

20    further objects on the ground that based on defendants' definition of "YOU," there

21    is no one "date" on which the referenced documents were received.

22    DC objects to the phrase "became aware" as vague and ambiguous.  DC

23    objects to the definition of "YOU" and will respond to that term as limited to

24    relevant custodians at DC and Warner Bros. Entertainment Inc.  DC objects to the

25    extent the Request seeks production of "all DOCUMENTS" on the ground that

26    such request is overly broad, unduly burdensome, oppressive, and not reasonably

27    calculated to lead to the discovery of admissible evidence, as the definition of

28    "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly

- 18 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**
**87**

1   available documents.  As used in these Responses, the phrase "all DOCUMENTS,"

2   or phrases of similar import, should be understood to mean those documents DC

3   and its counsel were able to locate using reasonable diligence and reasonable

4   judgment concerning the whereabouts of such documents.

5          Subject to and without waiving all foregoing objections, DC agrees to meet-

6   and-confer with defendants regarding the relevance of the requested documents and

7   in an effort to reasonably narrow this Request and to see what, if any, documents

8   should be produced.

9   **Request No. 16**

10          All DOCUMENTS which show when YOU first became aware of the

11  TOBEROFF TIMELINE.

12  **Response to Request No. 16**

13          DC objects to this Request as seeking the production of documents which are

14  not reasonably calculated to lead to the discovery of relevant and admissible

15  evidence.  DC further objects to this Request on the grounds that it is indefinite as

16  to time and not reasonably limited in scope.  DC further objects to this Request on

17  the grounds that it calls for a search of documents that is unduly expensive,

18  overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

19  that it seeks information protected by the attorney-client privilege, the attorney

20  work product doctrine, or any other applicable privilege or immunity.  DC further

21  objects to this Request to the extent that it disregards the Court's binding finding

22  that DC and WARNER "acted professionally" and "reasonably" in receiving and

23  handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.  DC

24  further objects on the ground that based on defendants' definition of "YOU," there

25  is no one "date" on which the referenced document was received.

26          DC objects to the phrase "became aware" as vague and ambiguous.  DC

27  objects to the definition of "YOU" and will respond to that term as limited to

28  relevant custodians at DC and Warner Bros. Entertainment Inc.  DC objects to the

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1   extent the Request seeks production of "all DOCUMENTS" on the ground that

2   such request is overly broad, unduly burdensome, oppressive, and not reasonably

3   calculated to lead to the discovery of admissible evidence, as the definition of

4   "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly

5   available documents.  As used in these Responses, the phrase "all DOCUMENTS,"

6   or phrases of similar import, should be understood to mean those documents DC

7   and its counsel were able to locate using reasonable diligence and reasonable

8   judgment concerning the whereabouts of such documents.  DC does not object to or

9   withhold any document based on the definition of "REFER," as this definition

10  mirrors in large part language that DC employed in its own discovery requests.

11  Defendants previously objected to this same language in DC's requests as

12  impermissibly overbroad.  Based on defendants' use of this same term and tacit

13  acknowledgement that DC's use of these terms is proper, DC will not object on this

14  ground, and DC has confirmed with defendants that they will do the same.

15          Subject to and without waiving all foregoing objections, DC agrees to meet-

16  and-confer with defendants regarding the relevance of the requested documents and

17  in an effort to reasonably narrow this Request and to see what, if any, documents

18  should be produced.

19  **Request No. 17**

20          All DOCUMENTS REFERRING TO the TOBEROFF TIMELINE.

21  **Response to Request No. 17**

22          DC objects to this Request on the grounds that it is indefinite as to time and

23  not reasonably limited in scope.  DC further objects to this Request to the extent

24  that it seeks the production of any item, or portion thereof, which is not reasonably

25  calculated to lead to the discovery of relevant and admissible evidence.  DC further

26  objects to this Request on the grounds that it calls for a search of documents that is

27  unduly expensive, overbroad, unduly burdensome, and oppressive.  DC further

28  objects to the extent that it seeks information protected by the attorney-client

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1  privilege, the attorney work product doctrine, or any other applicable privilege or

2  immunity.

3        DC objects to the extent the Request seeks production of "all

4  DOCUMENTS" on the ground that such request is overly broad, unduly

5  burdensome, oppressive, and not reasonably calculated to lead to the discovery of

6  admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all

7  court filings in this case and other publicly available documents.  As used in these

8  Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

9  understood to mean those documents DC and its counsel were able to locate using

10  reasonable diligence and reasonable judgment concerning the whereabouts of such

11  documents.  DC does not object to or withhold any document based on the

12  definition of "REFER," as this definition mirrors in large part language that DC

13  employed in its own discovery requests.  Defendants previously objected to this

14  same language in DC's requests as impermissibly overbroad.  Based on defendants'

15  use of this same term and tacit acknowledgement that DC's use of these terms is

16  proper, DC will not object on this ground, and DC has confirmed with defendants

17  that they will do the same.

18        Subject to and without waiving all foregoing objections, DC agrees to meet-

19  and-confer with defendants regarding the relevance of the requested documents and

20  in an effort to reasonably narrow this Request and to see what, if any, documents

21  should be produced.

22  **Request No. 18**

23        All DOCUMENTS REFERRING TO the STOLEN DOCUMENTS.

24  **Response to Request No. 18**

25        DC objects to this Request on the grounds that it is indefinite as to time and

26  not reasonably limited in scope.  DC further objects to this Request to the extent

27  that it seeks the production of any item, or portion thereof, which is not reasonably

28  calculated to lead to the discovery of relevant and admissible evidence.  DC further

- 21 -

1   objects to this Request on the grounds that it calls for a search of documents that is

2   unduly expensive, overbroad, unduly burdensome, and oppressive.  DC further

3   objects to the extent that it seeks information protected by the attorney-client

4   privilege, the attorney work product doctrine, or any other applicable privilege or

5   immunity.  DC further objects to this Request to the extent that it disregards the

6   Court's binding finding that DC and WARNER "acted professionally" and

7   "reasonably" in receiving and handling the Toberoff Timeline documents.  *See*

8   Docket No. 163-13 at 21.

9        DC objects to the extent the Request seeks production of "all

10  DOCUMENTS" on the ground that such request is overly broad, unduly

11  burdensome, oppressive, and not reasonably calculated to lead to the discovery of

12  admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all

13  court filings in this case and other publicly available documents.  As used in these

14  Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

15  understood to mean those documents DC and its counsel were able to locate using

16  reasonable diligence and reasonable judgment concerning the whereabouts of such

17  documents.  DC does not object to or withhold any document based on the

18  definition of "REFER," as this definition mirrors in large part language that DC

19  employed in its own discovery requests.  Defendants previously objected to this

20  same language in DC's requests as impermissibly overbroad.  Based on defendants'

21  use of this same term and tacit acknowledgement that DC's use of these terms is

22  proper, DC will not object on this ground, and DC has confirmed with defendants

23  that they will do the same.

24       Subject to and without waiving all foregoing objections, DC agrees to meet-

25  and-confer with defendants regarding the relevance of the requested documents and

26  in an effort to reasonably narrow this Request and to see what, if any, documents

27  should be produced.

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Request No. 19**

All DOCUMENTS REFERRING TO ARNOLD PORTER and the TOBEROFF TIMELINE.

**Response to Request No. 19**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence.  DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope.  DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive.  DC further objects to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.  DC further objects to this Request to the extent that it disregards the Court's binding finding that DC and WARNER "acted professionally" and "reasonably" in receiving and handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

DC objects to the extent the Request seeks production of "all DOCUMENTS" on the ground that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings in this case and other publicly available documents.  As used in these Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents.  DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests.  Defendants previously objected to this same language in DC's requests as impermissibly overbroad.  Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**
**92**

1  proper, DC will not object on this ground, and DC has confirmed with defendants

2  that they will do the same.

3      Subject to and without waiving all foregoing objections, DC agrees to meet-

4  and-confer with defendants regarding the relevance of the requested documents and

5  in an effort to reasonably narrow this Request and to see what, if any, documents

6  should be produced.

7  **Request No. 20**

8      All DOCUMENTS REFERRING TO ARNOLD PORTER and the STOLEN

9  DOCUMENTS.

10  **Response to Request No. 20**

11      DC objects to this Request as seeking the production of documents which are

12  not reasonably calculated to lead to the discovery of relevant and admissible

13  evidence.  DC further objects to this Request on the grounds that it is indefinite as

14  to time and not reasonably limited in scope.  DC further objects to this Request on

15  the grounds that it calls for a search of documents that is unduly expensive,

16  overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

17  that it seeks information protected by the attorney-client privilege, the attorney

18  work product doctrine, or any other applicable privilege or immunity.  DC further

19  objects to this Request to the extent that it disregards the Court's binding finding

20  that DC and WARNER "acted professionally" and "reasonably" in receiving and

21  handling the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

22      DC objects to the extent the Request seeks production of "all

23  DOCUMENTS" on the ground that such request is overly broad, unduly

24  burdensome, oppressive, and not reasonably calculated to lead to the discovery of

25  admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all

26  court filings in this case and other publicly available documents.  As used in these

27  Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

28  understood to mean those documents DC and its counsel were able to locate using

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1   reasonable diligence and reasonable judgment concerning the whereabouts of such

2   documents.  DC does not object to or withhold any document based on the

3   definition of "REFER," as this definition mirrors in large part language that DC

4   employed in its own discovery requests.  Defendants previously objected to this

5   same language in DC's requests as impermissibly overbroad.  Based on defendants'

6   use of this same term and tacit acknowledgement that DC's use of these terms is

7   proper, DC will not object on this ground, and DC has confirmed with defendants

8   that they will do the same.

9        Subject to and without waiving all foregoing objections, DC agrees to meet-

10  and-confer with defendants regarding the relevance of the requested documents and

11  in an effort to reasonably narrow this Request and to see what, if any, documents

12  should be produced.

13  **Request No. 21**

14       All COMMUNICATIONS between YOU and ARNOLD PORTER

15  REFERRING TO the TOBEROFF TIMELINE.

16  **Response to Request No. 21**

17       DC objects to this Request as seeking the production of documents which are

18  not reasonably calculated to lead to the discovery of relevant and admissible

19  evidence.  DC further objects to this Request on the grounds that it is indefinite as

20  to time and not reasonably limited in scope.  DC further objects to this Request on

21  the grounds that it calls for a search of documents that is unduly expensive,

22  overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

23  to the extent that it disregards the Court's binding finding that DC and WARNER

24  "acted professionally" and "reasonably" in receiving and handling the Toberoff

25  Timeline documents.  *See* Docket No. 163-13 at 21.

26       DC objects to the definition of "YOU" and will respond to that term as

27  limited to relevant custodians at DC and Warner Bros. Entertainment Inc.  DC

28  objects to the definition of "COMMUNICATION" as vague and overbroad and will

- 25 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F
94**

respond to this term as excluding any documents filed in connection with prior and ongoing litigation.  DC objects to the extent the Request seeks production of "all COMMUNICATIONS" on the grounds that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence.  As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. Such phraseology should not be construed as a representation that each and every document in DC's possession has been examined in connection with these Responses or any production pursuant thereto.  DC does not object to or withhold any document based on the definition of "REFER," as this definition mirrors in large part language that DC employed in its own discovery requests.  Defendants previously objected to this same language in DC's requests as impermissibly overbroad.  Based on defendants' use of this same term and tacit acknowledgement that DC's use of these terms is proper, DC will not object on this ground, and DC has confirmed with defendants that they will do the same.

Subject to and without waiving all foregoing objections, DC agrees to meet-and-confer with defendants regarding the relevance of the requested documents and in an effort to reasonably narrow this Request and to see what, if any, documents should be produced.

**Request No. 22**

All COMMUNICATIONS between YOU and ARNOLD PORTER REFERRING TO any of the STOLEN DOCUMENTS.

**Response to Request No. 22**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence.  DC further objects to this Request on the grounds that it is indefinite as

- 26 -

1   to time and not reasonably limited in scope.  DC further objects to this Request on

2   the grounds that it calls for a search of documents that is unduly expensive,

3   overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

4   to the extent that it disregards the Court's binding finding that DC and WARNER

5   "acted professionally" and "reasonably" in receiving and handling the Toberoff

6   Timeline documents.  *See* Docket No. 163-13 at 21.

7        DC objects to the definition of "YOU" and will respond to that term as

8   limited to relevant custodians at DC and Warner Bros. Entertainment Inc.  DC

9   objects to the definition of "COMMUNICATION" as vague and overbroad and will

10  respond to this term as excluding any documents filed in connection with prior and

11  ongoing litigation.  DC objects to the extent the Request seeks production of "all

12  COMMUNICATIONS" on the grounds that such request is overly broad, unduly

13  burdensome, oppressive, and not reasonably calculated to lead to the discovery of

14  admissible evidence.  As used in these Responses, the phrase "all

15  COMMUNICATIONS," or phrases of similar import, should be understood to

16  mean those documents DC and its counsel were able to locate using reasonable

17  diligence and reasonable judgment concerning the whereabouts of such documents.

18  Such phraseology should not be construed as a representation that each and every

19  document in DC's possession has been examined in connection with these

20  Responses or any production pursuant thereto.  DC does not object to or withhold

21  any document based on the definition of "REFER," as this definition mirrors in

22  large part language that DC employed in its own discovery requests.  Defendants

23  previously objected to this same language in DC's requests as impermissibly

24  overbroad.  Based on defendants' use of this same term and tacit acknowledgement

25  that DC's use of these terms is proper, DC will not object on this ground, and DC

26  has confirmed with defendants that they will do the same.

27        Subject to and without waiving all foregoing objections, DC agrees to meet-

28  and-confer with defendants regarding the relevance of the requested documents and

- 27 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1    in an effort to reasonably narrow this Request and to see what, if any, documents

2    should be produced.

3    **Request No. 23**

4        All COMMUNICATIONS between YOU and ARNOLD PORTER

5    REFERRING TO the *Siegel* Litigations.

6    **Response to Request No. 23**

7        DC objects to this Request as seeking the production of documents which are

8    not reasonably calculated to lead to the discovery of relevant and admissible

9    evidence.  DC further objects to this Request on the grounds that it is indefinite as

10    to time and not reasonably limited in scope.  DC further objects to this Request on

11    the grounds that it calls for a search of documents that is unduly expensive,

12    overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

13    to the extent that it disregards the Court's binding finding that DC and WARNER

14    "acted professionally" and "reasonably" in receiving and handling the Toberoff

15    Timeline documents.  *See* Docket No. 163-13 at 21.

16        DC objects to the definition of "YOU" and will respond to that term as

17    limited to relevant custodians at DC and Warner Bros. Entertainment Inc.  DC

18    objects to the definition of "COMMUNICATION" as vague and overbroad and will

19    respond to this term as excluding any documents filed in connection with prior and

20    ongoing litigation.  DC objects to the extent the Request seeks production of "all

21    COMMUNICATIONS" on the grounds that such request is overly broad, unduly

22    burdensome, oppressive, and not reasonably calculated to lead to the discovery of

23    admissible evidence.  As used in these Responses, the phrase "all

24    COMMUNICATIONS," or phrases of similar import, should be understood to

25    mean those documents DC and its counsel were able to locate using reasonable

26    diligence and reasonable judgment concerning the whereabouts of such documents.

27    Such phraseology should not be construed as a representation that each and every

28    document in DC's possession has been examined in connection with these

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1   Responses or any production pursuant thereto.  DC does not object to or withhold

2   any document based on the definition of "REFER," as this definition mirrors in

3   large part language that DC employed in its own discovery requests.  Defendants

4   previously objected to this same language in DC's requests as impermissibly

5   overbroad.  Based on defendants' use of this same term and tacit acknowledgement

6   that DC's use of these terms is proper, DC will not object on this ground, and DC

7   has confirmed with defendants that they will do the same.

8        Subject to and without waiving all foregoing objections, DC agrees to meet-

9   and-confer with defendants regarding the relevance of the requested documents and

10  in an effort to reasonably narrow this Request and to see what, if any, documents

11  should be produced.

12  **Request No. 24**

13       All receipts, bills, invoices, and equivalent DOCUMENTS from ARNOLD

14  PORTER that RELATE TO the STOLEN DOCUMENTS, the TOBEROFF

15  TIMELINE, or the *Siegel* Litigations.

16  **Response to Request No. 24**

17       DC objects to this Request as seeking the production of documents which are

18  not reasonably calculated to lead to the discovery of relevant and admissible

19  evidence.  DC further objects to this Request on the grounds that it is indefinite as

20  to time and not reasonably limited in scope.  DC further objects to this Request on

21  the grounds that it calls for a search of documents that is unduly expensive,

22  overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

23  to the extent that it disregards the Court's binding finding that DC and WARNER

24  "acted professionally" and "reasonably" in receiving and handling the Toberoff

25  Timeline documents.  *See* Docket No. 163-13 at 21.

26       DC objects to the extent the Request seeks production of "all …

27  DOCUMENTS" on the ground that such request is overly broad, unduly

28  burdensome, oppressive, and not reasonably calculated to lead to the discovery of

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**
**98**

1    admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all

2    court filings in this case and other publicly available documents.  As used in these

3    Responses, the phrase "all … DOCUMENTS," or phrases of similar import, should

4    be understood to mean those documents DC and its counsel were able to locate

5    using reasonable diligence and reasonable judgment concerning the whereabouts of

6    such documents.  DC does not object to or withhold any document based on the

7    definition of "RELATE," as this definition mirrors in large part language that DC

8    employed in its own discovery requests.  Defendants previously objected to this

9    same language in DC's requests as impermissibly overbroad.  Based on defendants'

10   use of this same term and tacit acknowledgement that DC's use of these terms is

11   proper, DC will not object on this ground, and DC has confirmed with defendants

12   that they will do the same.

13        Subject to and without waiving all foregoing objections, DC agrees to meet-

14   and-confer with defendants regarding the relevance of the requested documents and

15   in an effort to reasonably narrow this Request and to see what, if any, documents

16   should be produced.

17   **Request No. 25**

18        DOCUMENTS sufficient to show when WARNER first hired ARNOLD

19   PORTER with respect to the STOLEN DOCUMENTS.

20   **Response to Request No. 25**

21        DC objects to this Request as seeking the production of documents which are

22   not reasonably calculated to lead to the discovery of relevant and admissible

23   evidence.  DC further objects to this Request on the grounds that it calls for a search

24   of documents that is unduly expensive, overbroad, unduly burdensome, and

25   oppressive.  DC further objects to the extent that it seeks information protected by

26   the attorney-client privilege, the attorney work product doctrine, or any other

27   applicable privilege or immunity.  DC further objects to this Request to the extent

28   that it disregards the Court's binding finding that DC and WARNER "acted

- 30 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1    professionally" and "reasonably" in receiving and handling the Toberoff Timeline

2    documents.  *See* Docket No. 163-13 at 21.

3         DC objects to the phrase "sufficient to show" as vague and ambiguous.  DC

4    objects to the definition of "WARNER" and responds to that term as limited to

5    relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the definition

6    of "DOCUMENTS" on the ground that it is overly broad, unduly burdensome,

7    oppressive, and not reasonably calculated to lead to the discovery of admissible

8    evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all court filings

9    in this case and other publicly available documents.  As used in these Responses,

10   the term "DOCUMENTS" should be understood to mean those documents DC and

11   its counsel were able to locate using reasonable diligence and reasonable judgment

12   concerning the whereabouts of such documents.

13        Subject to and without waiving all foregoing objections, DC agrees to meet-

14   and-confer with defendants regarding the relevance of the requested documents and

15   in an effort to reasonably narrow this Request and to see what, if any, documents

16   should be produced.

17   **Request No. 26**

18        WARNER'S retainer agreement with ARNOLD PORTER REGARDING the

19   STOLEN DOCUMENTS.

20   **Response to Request No. 26**

21        DC objects to this Request as seeking the production of documents which are

22   not reasonably calculated to lead to the discovery of relevant and admissible

23   evidence.  DC further objects to this Request to the extent that it disregards the

24   Court's binding finding that DC and WARNER "acted professionally" and

25   "reasonably" in receiving and handling the Toberoff Timeline documents.  *See*

26   Docket No. 163-13 at 21.

27

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**
**100**

1    DC objects to the definition of "WARNER" and responds to that term as

2    limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

3    phrase "retainer agreement" as vague and ambiguous.

4    Subject to and without waiving all foregoing objections, DC agrees to meet-

5    and-confer with defendants regarding the relevance of the requested document.

6    **Request No. 27**

7    Documents that state WARNER'S protocol or procedures for maintaining,

8    and disposing of records, including electronic records, files and e-mails.

9    **Response to Request No. 27**

10    DC objects to this Request as seeking the production of documents which are

11    not reasonably calculated to lead to the discovery of relevant and admissible

12    evidence.  DC further objects to this Request on the grounds that it is indefinite as

13    to time and not reasonably limited in scope.  DC further objects to the extent that it

14    seeks information protected by the attorney-client privilege, the attorney work

15    product doctrine, or any other applicable privilege or immunity.  DC further objects

16    to this Request to the extent that it disregards the Court's binding finding that DC

17    and WARNER "acted professionally" and "reasonably" in receiving and handling

18    the Toberoff Timeline documents.  *See* Docket No. 163-13 at 21.

19    DC objects to the definition of "WARNER" and responds to that term as

20    limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

21    phrase "protocol or procedures" as vague and ambiguous.

22    Subject to and without waiving all foregoing objections, DC agrees to meet-

23    and-confer with defendants regarding the relevance of the requested documents and

24    in an effort to reasonably narrow this Request and to see what, if any, documents

25    should be produced.

26    **Request No. 28**

27    All DOCUMENTS reviewed or relied upon in connection with the filing of

28    YOUR complaint and first amended complaint in this case.

- 32 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1    **Response to Request No. 28**

2         DC objects to this Request on the ground that the discovery rules do not

3    entitle defendants to obtain such documents.  DC objects to this Request on the

4    grounds that it is indefinite as to time and not reasonably limited in scope.  DC

5    further objects to this Request on the grounds that it calls for a search of documents

6    that is unduly expensive, overbroad, unduly burdensome, and oppressive.  DC

7    further objects to the extent that it seeks information protected by the attorney-

8    client privilege, the attorney work product doctrine, or any other applicable

9    privilege or immunity.

10        DC objects to the extent the Request seeks production of "all

11   DOCUMENTS" on the ground that such request is overly broad, unduly

12   burdensome, oppressive, and not reasonably calculated to lead to the discovery of

13   admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all

14   court filings in this case and other publicly available documents.  As used in these

15   Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

16   understood to mean those documents DC and its counsel were able to locate using

17   reasonable diligence and reasonable judgment concerning the whereabouts of such

18   documents.

19        Subject to and without waiving all foregoing objections, DC responds that it

20   will not produce any such documents, as defendants are not entitled to discover

21   documents that DC and its counsel reviewed or relied upon in connection with

22   filing its complaint.

23   **Request No. 29**

24        All complaints or counterclaims filed by YOU and/or WARNER containing a

25   claim for tortious interference with prospective economic advantage and/or a claim

26   for tortious interference with contract.

27

28

- 33 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**

**102**

1  **Response to Request No. 29**

2      DC objects to this Request as seeking the production of documents which are

3  not reasonably calculated to lead to the discovery of relevant and admissible

4  evidence.  DC further objects to this Request on the grounds that it is indefinite as

5  to time, not reasonably limited in scope, and targets litigation documents that are

6  publicly available.  DC further objects to this Request on the grounds that it calls

7  for a search of documents that is unduly expensive, overbroad, unduly burdensome,

8  and oppressive.  DC further objects to the extent that it seeks information protected

9  by the attorney-client privilege, the attorney work product doctrine, or any other

10  applicable privilege or immunity.

11      DC objects to the definition of "YOU" and will respond to that term as

12  limited to DC.  DC objects to the definition of "WARNER" and will respond to that

13  term as limited to Warner Bros. Entertainment Inc.

14      Subject to and without waiving all foregoing objections, DC responds that it

15  will not produce any such documents, which are publicly available.

16  **Request No. 30**

17      All DOCUMENTS REFERRING TO this case and/or the *Siegel* Litigations,

18  excluding documents produced or filed in this case or the *Siegel* Litigations.

19  **Response to Request No. 30**

20      DC objects to this Request on the grounds that it is indefinite as to time and

21  not reasonably limited in scope.  DC further objects to this Request to the extent

22  that it seeks the production of any item, or portion thereof, which is not reasonably

23  calculated to lead to the discovery of relevant and admissible evidence.  DC further

24  objects to this Request on the grounds that it calls for a search of documents that is

25  unduly expensive, overbroad, unduly burdensome, and oppressive.  DC further

26  objects to the extent that it seeks information protected by the attorney-client

27  privilege, the attorney work product doctrine, or any other applicable privilege or

28  immunity.

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**
**103**

1    DC objects to the extent the Request seeks production of "all

2    DOCUMENTS" on the ground that such request is overly broad, unduly

3    burdensome, oppressive, and not reasonably calculated to lead to the discovery of

4    admissible evidence, as the definition of "DOCUMENTS" encompasses, *e.g.,* all

5    news reports concerning this case and the *Siegel* Litigations.  As used in these

6    Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

7    understood to mean those documents DC and its counsel were able to locate using

8    reasonable diligence and reasonable judgment concerning the whereabouts of such

9    documents.  DC does not object to or withhold any document based on the

10    definition of "REFERRING," as this definition mirrors in large part language that

11    DC employed in its own discovery requests.  Defendants previously objected to this

12    same language in DC's requests as impermissibly overbroad.  Based on defendants'

13    use of this same term and tacit acknowledgement that DC's use of these terms is

14    proper, DC will not object on this ground, and DC has confirmed with defendants

15    that they will do the same.

16    Subject to and without waiving all foregoing objections, DC agrees to meet-

17    and-confer with defendants regarding the relevance of the requested documents and

18    in an effort to reasonably narrow this Request and to see what, if any, documents

19    should be produced.

20    **Request No. 31**

21    All minutes of Board of Directors meetings or Directors' resolutions

22    RELATING TO any Defendants in this case and/or the *Siegel* Litigations.

23    **Response to Request No. 31**

24    DC objects to this Request as seeking the production of documents which are

25    not reasonably calculated to lead to the discovery of relevant and admissible

26    evidence.  DC further objects to this Request on the grounds that it is indefinite as

27    to time, not reasonably limited in scope, and calls for documents outside DC's

28    possession, custody, or control.  DC further objects to this Request on the grounds

- 35 -

1  that it calls for a search of documents that is unduly expensive, overbroad, unduly

2  burdensome, and oppressive.

3        DC objects to the phrases "Board of Directors meetings" and "Directors'

4  resolutions" as vague, ambiguous, and not connected to any specific entity.  DC

5  does not object to or withhold any document based on the definition of

6  "RELATING," as this definition mirrors in large part language that DC employed

7  in its own discovery requests.  Defendants previously objected to this same

8  language in DC's requests as impermissibly overbroad.  Based on defendants' use

9  of this same term and tacit acknowledgement that DC's use of these terms is proper,

10 DC will not object on this ground, and DC has confirmed with defendants that they

11 will do the same.

12       Subject to and without waiving all foregoing objections, DC agrees to meet-

13 and-confer with defendants regarding the relevance of the requested documents and

14 in an effort to reasonably narrow this Request and to see what, if any, documents

15 should be produced.

16 **Request No. 32**

17       All DOCUMENTS that REFER to the person who sent the STOLEN

18 DOCUMENTS to WARNER.

19 **Response to Request No. 32**

20       DC objects to this Request as seeking the production of documents which are

21 not reasonably calculated to lead to the discovery of relevant and admissible

22 evidence.  DC further objects to this Request on the grounds that it is indefinite as

23 to time and not reasonably limited in scope.  DC further objects to this Request on

24 the grounds that it calls for a search of documents that is unduly expensive,

25 overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

26 that it seeks information protected by the attorney-client privilege, the attorney

27 work product doctrine, or any other applicable privilege or immunity.  DC further

28

- 36 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1   objects to this Request to the extent is suggests DC has knowledge of "the person

2   who sent the STOLEN DOCUMENTS to WARNER."

3        DC objects to the definition of "WARNER" and responds to that term as

4   limited to relevant representatives of Warner Bros. Entertainment Inc.  DC objects

5   to the extent the Request seeks production of "all DOCUMENTS" on the ground

6   that such request is overly broad, unduly burdensome, oppressive, and not

7   reasonably calculated to lead to the discovery of admissible evidence.  As used in

8   these Responses, the phrase "all DOCUMENTS," or phrases of similar import,

9   should be understood to mean those documents DC and its counsel were able to

10  locate using reasonable diligence and reasonable judgment concerning the

11  whereabouts of such documents.  DC does not object to or withhold any document

12  based on the definition of "REFER," as this definition mirrors in large part

13  language that DC employed in its own discovery requests.  Defendants previously

14  objected to this same language in DC's requests as impermissibly overbroad.

15  Based on defendants' use of this same term and tacit acknowledgement that DC's

16  use of these terms is proper, DC will not object on this ground, and DC has

17  confirmed with defendants that they will do the same.

18       Subject to and without waiving all foregoing objections, DC agrees to meet-

19  and-confer with defendants regarding the relevance of the requested documents, the

20  definition of "person who sent the STOLEN DOCUMENTS to WARNER," and in

21  an effort to reasonably narrow this Request and to see what, if any, documents

22  should be produced.

23  **Request No. 33**

24       All DOCUMENTS RELATING TO YOUR efforts to locate, identify, and/or

25  communicate with the person who sent the STOLEN DOCUMENTS to WARNER.

26  **Response to Request No. 33**

27       DC objects to this Request as seeking the production of documents which are

28  not reasonably calculated to lead to the discovery of relevant and admissible

- 37 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1    evidence.  DC further objects to this Request on the grounds that it is indefinite as

2    to time and not reasonably limited in scope.  DC further objects to this Request on

3    the grounds that it calls for a search of documents that is unduly expensive,

4    overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

5    on the ground that it seeks information protected by the attorney-client privilege,

6    the attorney work product doctrine, or any other applicable privilege or immunity.

7         DC objects to the definition of "YOUR" and will respond to that term as

8    limited to relevant representatives of DC and Warner Bros. Entertainment Inc.  DC

9    objects to the definition of "WARNER" and responds to that term as limited to

10   relevant representatives of Warner Bros. Entertainment Inc.  DC objects to the

11   extent the Request seeks production of "all DOCUMENTS" on the ground that

12   such request is overly broad, unduly burdensome, oppressive, and not reasonably

13   calculated to lead to the discovery of admissible evidence.  As used in these

14   Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

15   understood to mean those documents DC and its counsel were able to locate using

16   reasonable diligence and reasonable judgment concerning the whereabouts of such

17   documents.  DC does not object to or withhold any document based on the

18   definition of "RELATING," as this definition mirrors in large part language that

19   DC employed in its own discovery requests.  Defendants previously objected to this

20   same language in DC's requests as impermissibly overbroad.  Based on defendants'

21   use of this same term and tacit acknowledgement that DC's use of these terms is

22   proper, DC will not object on this ground, and DC has confirmed with defendants

23   that they will do the same.

24        Subject to and without waiving all foregoing objections, DC agrees to meet-

25   and-confer with defendants regarding the relevance of the requested documents and

26   in an effort to reasonably narrow this Request and to see what, if any, documents

27   should be produced.

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Request No. 34**

All COMMUNICATIONS between YOU and the person who sent the

STOLEN DOCUMENTS to WARNER.

**Response to Request No. 34**

DC objects to this Request as seeking the production of documents which are

not reasonably calculated to lead to the discovery of relevant and admissible

evidence.  DC further objects to this Request on the grounds that it is indefinite as

to time and not reasonably limited in scope.  DC further objects to this Request on

the grounds that it calls for a search of documents that is unduly expensive,

overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

to the extent is suggests DC has knowledge of "the person who sent the STOLEN

DOCUMENTS to WARNER."

DC objects to the definition of "YOU" and will respond to that term as

limited to relevant custodians at DC and Warner Bros. Entertainment Inc.  DC

objects to the definition of "WARNER" and will respond to that term as limited to

Warner Bros. Entertainment Inc.  DC objects to the definition of

"COMMUNICATION" as vague and overbroad and will respond to this term as

excluding any documents filed in connection with prior and ongoing litigation.  DC

objects to the extent the Request seeks production of "all COMMUNICATIONS"

on the grounds that such request is overly broad, unduly burdensome, oppressive,

and not reasonably calculated to lead to the discovery of admissible evidence.  As

used in these Responses, the phrase "all COMMUNICATIONS," or phrases of

similar import, should be understood to mean those documents DC and its counsel

were able to locate using reasonable diligence and reasonable judgment concerning

the whereabouts of such documents.  Such phraseology should not be construed as

a representation that each and every document in DC's possession has been

examined in connection with these Responses or any production pursuant thereto.

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**

**108**

1    Subject to and without waiving all foregoing objections, DC agrees to meet-

2    and-confer with defendants regarding the relevance of the requested documents, the

3    definition of "person who sent the STOLEN DOCUMENTS to WARNER," and in

4    an effort to reasonably narrow this Request and to see what, if any, documents

5    should be produced.

6    **Request No. 35**

7    All DOCUMENTS that REFER to the author of the TOBEROFF

8    TIMELINE.

9    **Response to Request No. 35**

10    DC objects to this Request as seeking the production of documents which are

11    not reasonably calculated to lead to the discovery of relevant and admissible

12    evidence.  DC further objects to this Request on the grounds that it is indefinite as

13    to time and not reasonably limited in scope.  DC further objects to this Request on

14    the grounds that it calls for a search of documents that is unduly expensive,

15    overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

16    this Request seeks information protected by the attorney-client privilege, the

17    attorney work product doctrine, or any other applicable privilege or immunity.  DC

18    further objects to this Request to the extent is suggests DC has knowledge of who is

19    "the author of the TOBEROFF TIMELINE."

20    DC objects to the extent the Request seeks production of "all

21    DOCUMENTS" on the ground that such request is overly broad, unduly

22    burdensome, oppressive, and not reasonably calculated to lead to the discovery of

23    admissible evidence.  As used in these Responses, the phrase "all DOCUMENTS,"

24    or phrases of similar import, should be understood to mean those documents DC

25    and its counsel were able to locate using reasonable diligence and reasonable

26    judgment concerning the whereabouts of such documents.  DC does not object to or

27    withhold any document based on the definition of "REFER," as this definition

28    mirrors in large part language that DC employed in its own discovery requests.

- 40 -

1  Defendants previously objected to this same language in DC's requests as

2  impermissibly overbroad.  Based on defendants' use of this same term and tacit

3  acknowledgement that DC's use of these terms is proper, DC will not object on this

4  ground, and DC has confirmed with defendants that they will do the same.

5      Subject to and without waiving all foregoing objections, DC agrees to meet-

6  and-confer with defendants regarding the relevance of the requested documents, the

7  definition of "the author of the TOBEROFF TIMELINE," and in an effort to

8  reasonably narrow this Request and to see what, if any, documents should be

9  produced.

10  **Request No. 36**

11      All DOCUMENTS RELATING TO YOUR efforts to locate, identify, and/or

12  communicate with the author of the TOBEROFF TIMELINE.

13  **Response to Request No. 36**

14      DC objects to this Request as seeking the production of documents which are

15  not reasonably calculated to lead to the discovery of relevant and admissible

16  evidence.  DC further objects to this Request on the grounds that it is indefinite as

17  to time and not reasonably limited in scope.  DC further objects to this Request on

18  the grounds that it calls for a search of documents that is unduly expensive,

19  overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

20  on the ground that it seeks information protected by the attorney-client privilege,

21  the attorney work product doctrine, or any other applicable privilege or immunity.

22  DC further objects to this Request to the extent is suggests DC has knowledge of

23  who is "the author of the TOBEROFF TIMELINE."

24      DC objects to the definition of "YOU" and will respond to that term as

25  limited to relevant custodians at DC and Warner Bros. Entertainment Inc.  DC

26  objects to the extent the Request seeks production of "all DOCUMENTS" on the

27  ground that such request is overly broad, unduly burdensome, oppressive, and not

28  reasonably calculated to lead to the discovery of admissible evidence.  As used in

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1   these Responses, the phrase "all DOCUMENTS," or phrases of similar import,

2   should be understood to mean those documents DC and its counsel were able to

3   locate using reasonable diligence and reasonable judgment concerning the

4   whereabouts of such documents.  DC does not object to or withhold any document

5   based on the definition of "RELATING," as this definition mirrors in large part

6   language that DC employed in its own discovery requests.  Defendants previously

7   objected to this same language in DC's requests as impermissibly overbroad.

8   Based on defendants' use of this same term and tacit acknowledgement that DC's

9   use of these terms is proper, DC will not object on this ground, and DC has

10   confirmed with defendants that they will do the same.

11        Subject to and without waiving all foregoing objections, DC agrees to meet-

12   and-confer with defendants regarding the relevance of the requested documents, the

13   definition of "the author of the TOBEROFF TIMELINE," and in an effort to

14   reasonably narrow this Request and to see what, if any, documents should be

15   produced.

16   **Request No. 37**

17        All COMMUNICATIONS between YOU and the author of the TOBEROFF

18   TIMELINE.

19   **Response to Request No. 37**

20        DC objects to this Request as seeking the production of documents which are

21   not reasonably calculated to lead to the discovery of relevant and admissible

22   evidence.  DC further objects to this Request on the grounds that it is indefinite as

23   to time and not reasonably limited in scope.  DC further objects to this Request on

24   the grounds that it calls for a search of documents that is unduly expensive,

25   overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

26   to the extent is suggests DC has knowledge of who is "the author of the

27   TOBEROFF TIMELINE."

28

- 42 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**
**111**

1    DC objects to the definition of "YOU" and will respond to that term as

2    limited to relevant custodians at DC and Warner Bros. Entertainment Inc.  DC

3    objects to the definition of "COMMUNICATION" as vague and overbroad and will

4    respond to this term as excluding any documents filed in connection with prior and

5    ongoing litigation.  DC objects to the extent the Request seeks production of "all

6    COMMUNICATIONS" on the grounds that such request is overly broad, unduly

7    burdensome, oppressive, and not reasonably calculated to lead to the discovery of

8    admissible evidence.  As used in these Responses, the phrase "all

9    COMMUNICATIONS," or phrases of similar import, should be understood to

10   mean those documents DC and its counsel were able to locate using reasonable

11   diligence and reasonable judgment concerning the whereabouts of such documents.

12   Such phraseology should not be construed as a representation that each and every

13   document in DC's possession has been examined in connection with these

14   Responses or any production pursuant thereto.

15        Subject to and without waiving all foregoing objections, DC agrees to meet-

16   and-confer with defendants regarding the relevance of the requested documents, the

17   definition of "the author of the TOBEROFF TIMELINE," and in an effort to

18   reasonably narrow this Request and to see what, if any, documents should be

19   produced.

20   **Request No. 38**

21        All DOCUMENTS that REFER to DAVID MICHAELS.

22   **Response to Request No. 38**

23        DC objects to this Request as seeking the production of documents which are

24   not reasonably calculated to lead to the discovery of relevant and admissible

25   evidence.  DC further objects to this Request on the grounds that it is indefinite as

26   to time and not reasonably limited in scope.  DC further objects to this Request on

27   the grounds that it calls for a search of documents that is unduly expensive,

28   overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1   this Request seeks information protected by the attorney-client privilege, the

2   attorney work product doctrine, or any other applicable privilege or immunity.

3        DC objects to the extent the Request seeks production of "all

4   DOCUMENTS" on the ground that such request is overly broad, unduly

5   burdensome, oppressive, and not reasonably calculated to lead to the discovery of

6   admissible evidence.  As used in these Responses, the phrase "all DOCUMENTS,"

7   or phrases of similar import, should be understood to mean those documents DC

8   and its counsel were able to locate using reasonable diligence and reasonable

9   judgment concerning the whereabouts of such documents.  DC does not object to or

10  withhold any document based on the definition of "RELATING," as this definition

11  mirrors in large part language that DC employed in its own discovery requests.

12  Defendants previously objected to this same language in DC's requests as

13  impermissibly overbroad.  Based on defendants' use of this same term and tacit

14  acknowledgement that DC's use of these terms is proper, DC will not object on this

15  ground, and DC has confirmed with defendants that they will do the same.

16       Subject to and without waiving all foregoing objections, DC agrees to meet-

17  and-confer with defendants regarding the relevance of the requested documents and

18  in an effort to reasonably narrow this Request and to see what, if any, documents

19  should be produced.

20  **Request No. 39**

21       All DOCUMENTS RELATING TO YOUR efforts to locate, identify, and/or

22  communicate with DAVID MICHAELS.

23  **Response to Request No. 39**

24       DC objects to this Request as seeking the production of documents which are

25  not reasonably calculated to lead to the discovery of relevant and admissible

26  evidence.  DC further objects to this Request on the grounds that it is indefinite as

27  to time and not reasonably limited in scope.  DC further objects to this Request on

28  the grounds that it calls for a search of documents that is unduly expensive,

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**
**113**

1    overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

2    on the ground that it seeks information protected by the attorney-client privilege,

3    the attorney work product doctrine, or any other applicable privilege or immunity.

4         DC objects to the definition of "YOUR" and will respond to that term as

5    limited to relevant custodians at DC and Warner Bros. Entertainment Inc.  DC

6    objects to the extent the Request seeks production of "all DOCUMENTS" on the

7    ground that such request is overly broad, unduly burdensome, oppressive, and not

8    reasonably calculated to lead to the discovery of admissible evidence.  As used in

9    these Responses, the phrase "all DOCUMENTS," or phrases of similar import,

10   should be understood to mean those documents DC and its counsel were able to

11   locate using reasonable diligence and reasonable judgment concerning the

12   whereabouts of such documents.  DC does not object to or withhold any document

13   based on the definition of "RELATING," as this definition mirrors in large part

14   language that DC employed in its own discovery requests.  Defendants previously

15   objected to this same language in DC's requests as impermissibly overbroad.

16   Based on defendants' use of this same term and tacit acknowledgement that DC's

17   use of these terms is proper, DC will not object on this ground, and DC has

18   confirmed with defendants that they will do the same.

19        Subject to and without waiving all foregoing objections, DC agrees to meet-

20   and-confer with defendants regarding the relevance of the requested documents and

21   in an effort to reasonably narrow this Request and to see what, if any, documents

22   should be produced.

23   **Request No. 40**

24        All COMMUNICATIONS between YOU and DAVID MICHAELS.

25   **Response to Request No. 40**

26        DC objects to this Request as seeking the production of documents which are

27   not reasonably calculated to lead to the discovery of relevant and admissible

28   evidence.  DC further objects to this Request on the grounds that it is indefinite as

- 45 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**
**114**

1  to time and not reasonably limited in scope.  DC further objects to this Request on

2  the grounds that it calls for a search of documents that is unduly expensive,

3  overbroad, unduly burdensome, and oppressive.

4  DC objects to the definition of "YOU" and will respond to that term as

5  limited to relevant custodians at DC and Warner Bros. Entertainment Inc.  DC

6  objects to the definition of "COMMUNICATION" as vague and overbroad and will

7  respond to this term as excluding any documents filed in connection with prior and

8  ongoing litigation.  DC objects to the extent the Request seeks production of "all

9  COMMUNICATIONS" on the grounds that such request is overly broad, unduly

10  burdensome, oppressive, and not reasonably calculated to lead to the discovery of

11  admissible evidence.  As used in these Responses, the phrase "all

12  COMMUNICATIONS," or phrases of similar import, should be understood to

13  mean those documents DC and its counsel were able to locate using reasonable

14  diligence and reasonable judgment concerning the whereabouts of such documents.

15  Such phraseology should not be construed as a representation that each and every

16  document in DC's possession has been examined in connection with these

17  Responses or any production pursuant thereto.

18  Subject to and without waiving all foregoing objections, DC agrees to meet-

19  and-confer with defendants regarding the relevance of the requested documents and

20  in an effort to reasonably narrow this Request and to see what, if any, documents

21  should be produced.

22  **Request No. 41**

23  All DOCUMENTS that REFER to former employees of Marc Toberoff,

24  Toberoff & Associates, Pacific Pictures Corporation, IP Worldwide, LLC and IPW,

25  LLC.

26  **Response to Request No. 41**

27  DC objects to this Request as seeking the production of documents which are

28  not reasonably calculated to lead to the discovery of relevant and admissible

- 46 -

1 evidence.  DC further objects to this Request on the grounds that it is indefinite as

2 to time and not reasonably limited in scope—*e.g.*, it calls for communications

3 between DC, Marc Toberoff, and Toberoff & Associates attorneys in other

4 litigation entirely unrelated to this case.  DC further objects to this Request on the

5 grounds that it calls for a search of documents that is unduly expensive, overbroad,

6 unduly burdensome, and oppressive.  DC further objects to the extent this Request

7 seeks information protected by the attorney-client privilege, the attorney work

8 product doctrine, or any other applicable privilege or immunity.  DC further objects

9 to this Request to the extent is suggests DC has knowledge of all "former

10 employees of Marc Toberoff, Toberoff & Associates, Pacific Pictures Corporation,

11 IP Worldwide, LLC and IPW, LLC."

12     DC objects to the extent the Request seeks production of "all

13 DOCUMENTS" on the ground that such request is overly broad, unduly

14 burdensome, oppressive, and not reasonably calculated to lead to the discovery of

15 admissible evidence.  As used in these Responses, the phrase "all DOCUMENTS,"

16 or phrases of similar import, should be understood to mean those documents DC

17 and its counsel were able to locate using reasonable diligence and reasonable

18 judgment concerning the whereabouts of such documents.  DC does not object to or

19 withhold any document based on the definition of "REFER," as this definition

20 mirrors in large part language that DC employed in its own discovery requests.

21 Defendants previously objected to this same language in DC's requests as

22 impermissibly overbroad.  Based on defendants' use of this same term and tacit

23 acknowledgement that DC's use of these terms is proper, DC will not object on this

24 ground, and DC has confirmed with defendants that they will do the same.

25     Subject to and without waiving all foregoing objections, DC agrees to meet-

26 and-confer with defendants regarding the relevance of the requested documents, the

27 definition of "former employees of Marc Toberoff, Toberoff & Associates, Pacific

28 Pictures Corporation, IP Worldwide, LLC and IPW, LLC," and in an effort to

- 47 -

1    reasonably narrow this Request and to see what, if any, documents should be

2    produced.

3    **Request No. 42**

4         All DOCUMENTS RELATING TO YOUR efforts to locate, identify, and/or

5    communicate with former employees of Marc Toberoff, Toberoff & Associates,

6    Pacific Pictures Corporation, IP Worldwide, LLC and IPW, LLC.

7    **Response to Request No. 42**

8         DC objects to this Request as seeking the production of documents which are

9    not reasonably calculated to lead to the discovery of relevant and admissible

10   evidence.  DC further objects to this Request on the grounds that it is indefinite as

11   to time and not reasonably limited in scope—*e.g.*, it calls for communications with

12   Marc Toberoff and Toberoff & Associates attorneys in other litigation entirely

13   unrelated to this case.  DC further objects to this Request on the grounds that it calls

14   for a search of documents that is unduly expensive, overbroad, unduly burdensome,

15   and oppressive.  DC further objects to the extent this Request seeks information

16   protected by the attorney-client privilege, the attorney work product doctrine, or

17   any other applicable privilege or immunity.  DC further objects to this Request to

18   the extent is suggests DC has knowledge of all "former employees of Marc

19   Toberoff, Toberoff & Associates, Pacific Pictures Corporation, IP Worldwide, LLC

20   and IPW, LLC."

21        DC objects to the definition of "YOUR" and will respond to that term as

22   limited to relevant custodians at DC and Warner Bros. Entertainment Inc.  DC

23   objects to the extent the Request seeks production of "all DOCUMENTS" on the

24   ground that such request is overly broad, unduly burdensome, oppressive, and not

25   reasonably calculated to lead to the discovery of admissible evidence.  As used in

26   these Responses, the phrase "all DOCUMENTS," or phrases of similar import,

27   should be understood to mean those documents DC and its counsel were able to

28   locate using reasonable diligence and reasonable judgment concerning the

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1   whereabouts of such documents.  DC does not object to or withhold any document

2   based on the definition of "RELATING," as this definition mirrors in large part

3   language that DC employed in its own discovery requests.  Defendants previously

4   objected to this same language in DC's requests as impermissibly overbroad.

5   Based on defendants' use of this same term and tacit acknowledgement that DC's

6   use of these terms is proper, DC will not object on this ground, and DC has

7   confirmed with defendants that they will do the same.

8          Subject to and without waiving all foregoing objections, DC agrees to meet-

9   and-confer with defendants regarding the relevance of the requested documents, the

10  definition of "former employees of Marc Toberoff, Toberoff & Associates, Pacific

11  Pictures Corporation, IP Worldwide, LLC and IPW, LLC," and in an effort to

12  reasonably narrow this Request and to see what, if any, documents should be

13  produced.

14  **Request No. 43**

15         All COMMUNICATIONS between YOU and former employees of Marc

16  Toberoff, Toberoff & Associates, Pacific Pictures Corporation, IP Worldwide, LLC

17  and IPW, LLC.

18  **Response to Request No. 43**

19         DC objects to this Request as seeking the production of documents which are

20  not reasonably calculated to lead to the discovery of relevant and admissible

21  evidence.  DC further objects to this Request on the grounds that it is indefinite as

22  to time and not reasonably limited in scope—*e.g.*, it calls for communications with

23  Marc Toberoff and Toberoff & Associates attorneys in other litigation entirely

24  unrelated to this case.  DC further objects to this Request on the grounds that it calls

25  for a search of documents that is unduly expensive, overbroad, unduly burdensome,

26  and oppressive.  DC further objects to this Request to the extent is suggests DC has

27  knowledge of all "former employees of Marc Toberoff, Toberoff & Associates,

28  Pacific Pictures Corporation, IP Worldwide, LLC and IPW, LLC."

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1   DC objects to the definition of "YOU" and will respond to that term as

2   limited to relevant custodians at DC and Warner Bros. Entertainment Inc.  DC

3   objects to the definition of "COMMUNICATION" as vague and overbroad and will

4   respond to this term as excluding any documents filed in connection with prior and

5   ongoing litigation.  DC objects to the extent the Request seeks production of "all

6   COMMUNICATIONS" on the grounds that such request is overly broad, unduly

7   burdensome, oppressive, and not reasonably calculated to lead to the discovery of

8   admissible evidence.  As used in these Responses, the phrase "all

9   COMMUNICATIONS," or phrases of similar import, should be understood to

10  mean those documents DC and its counsel were able to locate using reasonable

11  diligence and reasonable judgment concerning the whereabouts of such documents.

12  Such phraseology should not be construed as a representation that each and every

13  document in DC's possession has been examined in connection with these

14  Responses or any production pursuant thereto.

15      Subject to and without waiving all foregoing objections, DC agrees to meet-

16  and-confer with defendants regarding the relevance of the requested documents, the

17  definition of "former employees of Marc Toberoff, Toberoff & Associates, Pacific

18  Pictures Corporation, IP Worldwide, LLC and IPW, LLC," and in an effort to

19  reasonably narrow this Request and to see what, if any, documents should be

20  produced.

21  **Request No. 44**

22      All COMMUNICATIONS between WARNER and GWF RELATING TO

23  the STOLEN DOCUMENTS.

24  **Response to Request No. 44**

25      DC objects to this Request as seeking the production of documents which are

26  not reasonably calculated to lead to the discovery of relevant and admissible

27  evidence.  DC further objects to this Request on the grounds that it is indefinite as

28  to time and not reasonably limited in scope.  DC further objects to this Request on

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1  the grounds that it calls for a search of documents that is unduly expensive,

2  overbroad, unduly burdensome, and oppressive.

3      DC objects to the definition of "WARNER" and responds to that term as

4  limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

5  definition of "COMMUNICATION" as vague and overbroad and will respond to

6  this term as excluding any documents filed in connection with prior and ongoing

7  litigation.  DC objects to the extent the Request seeks production of "all

8  COMMUNICATIONS" on the grounds that such request is overly broad, unduly

9  burdensome, oppressive, and not reasonably calculated to lead to the discovery of

10  admissible evidence.  As used in these Responses, the phrase "all

11  COMMUNICATIONS," or phrases of similar import, should be understood to

12  mean those documents DC and its counsel were able to locate using reasonable

13  diligence and reasonable judgment concerning the whereabouts of such documents.

14  Such phraseology should not be construed as a representation that each and every

15  document in DC's possession has been examined in connection with these

16  Responses or any production pursuant thereto.  DC does not object to or withhold

17  any document based on the definition of "RELATING," as this definition mirrors in

18  large part language that DC employed in its own discovery requests.  Defendants

19  previously objected to this same language in DC's requests as impermissibly

20  overbroad.  Based on defendants' use of this same term and tacit acknowledgement

21  that DC's use of these terms is proper, DC will not object on this ground, and DC

22  has confirmed with defendants that they will do the same.

23      Subject to and without waiving all foregoing objections, DC agrees to meet-

24  and-confer with defendants regarding the relevance of the requested documents and

25  in an effort to reasonably narrow this Request and to see what, if any, documents

26  should be produced.

27

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Request No. 45**

All COMMUNICATIONS between WARNER and GWF RELATING TO the TOBEROFF TIMELINE.

**Response to Request No. 45**

DC objects to this Request as seeking the production of documents which are not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC further objects to this Request on the grounds that it is indefinite as to time and not reasonably limited in scope. DC further objects to this Request on the grounds that it calls for a search of documents that is unduly expensive, overbroad, unduly burdensome, and oppressive.

DC objects to the definition of "WARNER" and responds to that term as limited to relevant custodians at Warner Bros. Entertainment Inc. DC objects to the definition of "COMMUNICATION" as vague and overbroad and will respond to this term as excluding any documents filed in connection with prior and ongoing litigation. DC objects to the extent the Request seeks production of "all COMMUNICATIONS" on the grounds that such request is overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. As used in these Responses, the phrase "all COMMUNICATIONS," or phrases of similar import, should be understood to mean those documents DC and its counsel were able to locate using reasonable diligence and reasonable judgment concerning the whereabouts of such documents. Such phraseology should not be construed as a representation that each and every document in DC's possession has been examined in connection with these Responses or any production pursuant thereto. DC does not object to or withhold any document based on the definition of "RELATING," as this definition mirrors in large part language that DC employed in its own discovery requests. Defendants previously objected to this same language in DC's requests as impermissibly overbroad. Based on defendants' use of this same term and tacit acknowledgement

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**
**121**

1  that DC's use of these terms is proper, DC will not object on this ground, and DC

2  has confirmed with defendants that they will do the same.

3         Subject to and without waiving all foregoing objections, DC agrees to meet-

4  and-confer with defendants regarding the relevance of the requested documents and

5  in an effort to reasonably narrow this Request and to see what, if any, documents

6  should be produced.

7  **Request No. 46**

8         All COMMUNICATIONS between WARNER and GWF RELATING TO

9  DAVID MICHAELS.

10 **Response to Request No. 46**

11        DC objects to this Request as seeking the production of documents which are

12 not reasonably calculated to lead to the discovery of relevant and admissible

13 evidence.  DC further objects to this Request on the grounds that it is indefinite as

14 to time and not reasonably limited in scope.  DC further objects to this Request on

15 the grounds that it calls for a search of documents that is unduly expensive,

16 overbroad, unduly burdensome, and oppressive.

17        DC objects to the definition of "WARNER" and responds to that term as

18 limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

19 definition of "COMMUNICATION" as vague and overbroad and will respond to

20 this term as excluding any documents filed in connection with prior and ongoing

21 litigation.  DC objects to the extent the Request seeks production of "all

22 COMMUNICATIONS" on the grounds that such request is overly broad, unduly

23 burdensome, oppressive, and not reasonably calculated to lead to the discovery of

24 admissible evidence.  As used in these Responses, the phrase "all

25 COMMUNICATIONS," or phrases of similar import, should be understood to

26 mean those documents DC and its counsel were able to locate using reasonable

27 diligence and reasonable judgment concerning the whereabouts of such documents.

28 Such phraseology should not be construed as a representation that each and every

- 53 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**

**122**

1   document in DC's possession has been examined in connection with these

2   Responses or any production pursuant thereto.  DC does not object to or withhold

3   any document based on the definition of "RELATING," as this definition mirrors in

4   large part language that DC employed in its own discovery requests.  Defendants

5   previously objected to this same language in DC's requests as impermissibly

6   overbroad.  Based on defendants' use of this same term and tacit acknowledgement

7   that DC's use of these terms is proper, DC will not object on this ground, and DC

8   has confirmed with defendants that they will do the same.

9       Subject to and without waiving all foregoing objections, DC agrees to meet-

10  and-confer with defendants regarding the relevance of the requested documents and

11  in an effort to reasonably narrow this Request and to see what, if any, documents

12  should be produced.

13  **Request No. 47**

14      All DOCUMENTS RELATING TO WARNER'S protocols or procedures in

15  effect between 2005 and 2006 for logging OR recording its receipt of packages,

16  envelopes, and other documents received by mail or other forms of delivery at

17  WARNER'S studio at 4000 Warner Boulevard, Burbank, California 91522.

18  **Response to Request No. 47**

19      DC objects to this Request as seeking the production of documents which are

20  not reasonably calculated to lead to the discovery of relevant and admissible

21  evidence.  DC further objects to this Request on the grounds that it is not

22  reasonably limited in scope.  DC further objects to this Request on the grounds that

23  it calls for a search of documents that is unduly expensive, overbroad, unduly

24  burdensome, and oppressive.  DC further objects to the extent this Request seeks

25  information protected by the attorney-client privilege, the attorney work product

26  doctrine, or any other applicable privilege or immunity.

27      DC objects to the phrase "protocols or procedures" as vague and ambiguous.

28  DC objects to the definition of "WARNER" and responds to that term as limited to

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1    relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the extent the

2    Request seeks production of "all DOCUMENTS" on the ground that such request is

3    overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

4    to the discovery of admissible evidence.  As used in these Responses, the phrase

5    "all DOCUMENTS," or phrases of similar import, should be understood to mean

6    those documents DC and its counsel were able to locate using reasonable diligence

7    and reasonable judgment concerning the whereabouts of such documents.  DC does

8    not object to or withhold any document based on the definition of "RELATING,"

9    as this definition mirrors in large part language that DC employed in its own

10   discovery requests.  Defendants previously objected to this same language in DC's

11   requests as impermissibly overbroad.  Based on defendants' use of this same term

12   and tacit acknowledgement that DC's use of these terms is proper, DC will not

13   object on this ground, and DC has confirmed with defendants that they will do the

14   same.

15          Subject to and without waiving all foregoing objections, DC agrees to meet-

16   and-confer with defendants regarding the relevance of the requested documents and

17   in an effort to reasonably narrow this Request and to see what, if any, documents

18   should be produced.

19   **Request No. 48**

20          All DOCUMENTS RELATING TO WARNER'S protocols or procedures in

21   effect in between 2005 and 2006 as to the retention of packaging, envelopes or

22   equivalent enclosures for documents received by mail or other forms of delivery at

23   WARNER'S studio, at 4000 Warner Boulevard, Burbank, California 91522.

24   **Response to Request No. 48**

25          DC objects to this Request as seeking the production of documents which are

26   not reasonably calculated to lead to the discovery of relevant and admissible

27   evidence.  DC further objects to this Request on the grounds that it is not

28   reasonably limited in scope.  DC further objects to this Request on the grounds that

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**

**124**

1   it calls for a search of documents that is unduly expensive, overbroad, unduly

2   burdensome, and oppressive.  DC further objects to the extent this Request seeks

3   information protected by the attorney-client privilege, the attorney work product

4   doctrine, or any other applicable privilege or immunity.

5         DC objects to the phrase "protocols or procedures" as vague and ambiguous.

6   DC objects to the definition of "WARNER" and responds to that term as limited to

7   relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the extent the

8   Request seeks production of "all DOCUMENTS" on the ground that such request is

9   overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

10   to the discovery of admissible evidence.  As used in these Responses, the phrase

11   "all DOCUMENTS," or phrases of similar import, should be understood to mean

12   those documents DC and its counsel were able to locate using reasonable diligence

13   and reasonable judgment concerning the whereabouts of such documents.  DC does

14   not object to or withhold any document based on the definition of "RELATING,"

15   as this definition mirrors in large part language that DC employed in its own

16   discovery requests.  Defendants previously objected to this same language in DC's

17   requests as impermissibly overbroad.  Based on defendants' use of this same term

18   and tacit acknowledgement that DC's use of these terms is proper, DC will not

19   object on this ground, and DC has confirmed with defendants that they will do the

20   same.

21         Subject to and without waiving all foregoing objections, DC agrees to meet-

22   and-confer with defendants regarding the relevance of the requested documents and

23   in an effort to reasonably narrow this Request and to see what, if any, documents

24   should be produced.

25   **Request No. 49**

26         All DOCUMENTS that REFER to WARNER'S efforts to locate the

27   packaging, envelope, or equivalent enclosure in which the TOBEROFF TIMELINE

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1    was sent to WARNER'S studio, at 4000 Warner Boulevard, Burbank, California

2    91522.

3    **Response to Request No. 49**

4         DC objects to this Request as seeking the production of documents which are

5    not reasonably calculated to lead to the discovery of relevant and admissible

6    evidence.  DC further objects to this Request on the grounds that it is indefinite as

7    to time and not reasonably limited in scope.  DC further objects to this Request on

8    the grounds that it calls for a search of documents that is unduly expensive,

9    overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

10   on the ground that it seeks information protected by the attorney-client privilege,

11   the attorney work product doctrine, or any other applicable privilege or immunity.

12        DC objects to the definition of "WARNER" and responds to that term as

13   limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

14   extent the Request seeks production of "all DOCUMENTS" on the ground that

15   such request is overly broad, unduly burdensome, oppressive, and not reasonably

16   calculated to lead to the discovery of admissible evidence.  As used in these

17   Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

18   understood to mean those documents DC and its counsel were able to locate using

19   reasonable diligence and reasonable judgment concerning the whereabouts of such

20   documents.  DC does not object to or withhold any document based on the

21   definition of "REFER," as this definition mirrors in large part language that DC

22   employed in its own discovery requests.  Defendants previously objected to this

23   same language in DC's requests as impermissibly overbroad.  Based on defendants'

24   use of this same term and tacit acknowledgement that DC's use of these terms is

25   proper, DC will not object on this ground, and DC has confirmed with defendants

26   that they will do the same.

27        Subject to and without waiving all foregoing objections, DC agrees to meet-

28   and-confer with defendants regarding the relevance of the requested documents and

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1    in an effort to reasonably narrow this Request and to see what, if any, documents

2    should be produced.

3    **Request No. 50**

4        All DOCUMENTS that REFER to WARNER'S efforts to locate the

5    packaging, envelope, or equivalent enclosure in which the STOLEN

6    DOCUMENTS were sent to WARNER'S studio, at 4000 Warner Boulevard,

7    Burbank, California 91522.

8    **Response to Request No. 50**

9        DC objects to this Request as seeking the production of documents which are

10    not reasonably calculated to lead to the discovery of relevant and admissible

11    evidence.  DC further objects to this Request on the grounds that it is indefinite as

12    to time and not reasonably limited in scope.  DC further objects to this Request on

13    the grounds that it calls for a search of documents that is unduly expensive,

14    overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

15    on the ground that it seeks information protected by the attorney-client privilege,

16    the attorney work product doctrine, or any other applicable privilege or immunity.

17        DC objects to the definition of "WARNER" and responds to that term as

18    limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

19    extent the Request seeks production of "all DOCUMENTS" on the ground that

20    such request is overly broad, unduly burdensome, oppressive, and not reasonably

21    calculated to lead to the discovery of admissible evidence.  As used in these

22    Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

23    understood to mean those documents DC and its counsel were able to locate using

24    reasonable diligence and reasonable judgment concerning the whereabouts of such

25    documents.  DC does not object to or withhold any document based on the

26    definition of "REFER," as this definition mirrors in large part language that DC

27    employed in its own discovery requests.  Defendants previously objected to this

28    same language in DC's requests as impermissibly overbroad.  Based on defendants'

1   use of this same term and tacit acknowledgement that DC's use of these terms is

2   proper, DC will not object on this ground, and DC has confirmed with defendants

3   that they will do the same.

4        Subject to and without waiving all foregoing objections, DC agrees to meet-

5   and-confer with defendants regarding the relevance of the requested documents and

6   in an effort to reasonably narrow this Request and to see what, if any, documents

7   should be produced.

8   **Request No. 51**

9        All COMMUNICATIONS RELATING TO WARNER'S efforts to locate the

10  packaging, envelope, or equivalent enclosure in which the TOBEROFF TIMELINE

11  was sent to WARNER'S studio, at 4000 Warner Boulevard, Burbank, California

12  91522.

13  **Response to Request No. 51**

14       DC objects to this Request as seeking the production of documents which are

15  not reasonably calculated to lead to the discovery of relevant and admissible

16  evidence.  DC further objects to this Request on the grounds that it is indefinite as

17  to time and not reasonably limited in scope.  DC further objects to this Request on

18  the grounds that it calls for a search of documents that is unduly expensive,

19  overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

20  on the ground that it seeks information protected by the attorney-client privilege,

21  the attorney work product doctrine, or any other applicable privilege or immunity.

22       DC objects to the definition of "WARNER" and responds to that term as

23  limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

24  definition of "COMMUNICATION" as vague and overbroad and will respond to

25  this term as excluding any documents filed in connection with prior and ongoing

26  litigation.  DC objects to the extent the Request seeks production of "all

27  COMMUNICATIONS" on the grounds that such request is overly broad, unduly

28  burdensome, oppressive, and not reasonably calculated to lead to the discovery of

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1  admissible evidence.  As used in these Responses, the phrase "all

2  COMMUNICATIONS," or phrases of similar import, should be understood to

3  mean those documents DC and its counsel were able to locate using reasonable

4  diligence and reasonable judgment concerning the whereabouts of such documents.

5  Such phraseology should not be construed as a representation that each and every

6  document in DC's possession has been examined in connection with these

7  Responses or any production pursuant thereto.  DC does not object to or withhold

8  any document based on the definition of "RELATING," as this definition mirrors in

9  large part language that DC employed in its own discovery requests.  Defendants

10  previously objected to this same language in DC's requests as impermissibly

11  overbroad.  Based on defendants' use of this same term and tacit acknowledgement

12  that DC's use of these terms is proper, DC will not object on this ground, and DC

13  has confirmed with defendants that they will do the same.

14       Subject to and without waiving all foregoing objections, DC agrees to meet-

15  and-confer with defendants regarding the relevance of the requested documents and

16  in an effort to reasonably narrow this Request and to see what, if any, documents

17  should be produced.

18  **Request No. 52**

19       All COMMUNICATIONS that RELATING TO WARNER'S efforts to

20  locate the packaging, envelope, or equivalent enclosure in which the STOLEN

21  DOCUMENTS were sent to WARNER'S studio, at 4000 Warner Boulevard,

22  Burbank, California 91522.

23  **Response to Request No. 52**

24       DC objects to this Request as seeking the production of documents which are

25  not reasonably calculated to lead to the discovery of relevant and admissible

26  evidence.  DC further objects to this Request on the grounds that it is indefinite as

27  to time and not reasonably limited in scope.  DC further objects to this Request on

28  the grounds that it calls for a search of documents that is unduly expensive,

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1    overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

2    on the ground that it seeks information protected by the attorney-client privilege,

3    the attorney work product doctrine, or any other applicable privilege or immunity.

4          DC objects to the definition of "WARNER" and responds to that term as

5    limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

6    definition of "COMMUNICATION" as vague and overbroad and will respond to

7    this term as excluding any documents filed in connection with prior and ongoing

8    litigation.  DC objects to the extent the Request seeks production of "all

9    COMMUNICATIONS" on the grounds that such request is overly broad, unduly

10   burdensome, oppressive, and not reasonably calculated to lead to the discovery of

11   admissible evidence.  As used in these Responses, the phrase "all

12   COMMUNICATIONS," or phrases of similar import, should be understood to

13   mean those documents DC and its counsel were able to locate using reasonable

14   diligence and reasonable judgment concerning the whereabouts of such documents.

15   Such phraseology should not be construed as a representation that each and every

16   document in DC's possession has been examined in connection with these

17   Responses or any production pursuant thereto.  DC does not object to or withhold

18   any document based on the definition of "RELATING," as this definition mirrors in

19   large part language that DC employed in its own discovery requests.  Defendants

20   previously objected to this same language in DC's requests as impermissibly

21   overbroad.  Based on defendants' use of this same term and tacit acknowledgement

22   that DC's use of these terms is proper, DC will not object on this ground, and DC

23   has confirmed with defendants that they will do the same.

24         Subject to and without waiving all foregoing objections, DC agrees to meet-

25   and-confer with defendants regarding the relevance of the requested documents and

26   in an effort to reasonably narrow this Request and to see what, if any, documents

27   should be produced.

28

- 61 -

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1    **Request No. 53**

2        All DOCUMENTS logging, listing, or recording the packages, envelopes,

3    and other documents received between November 1, 2005 and December 25, 2005,

4    by mail or other form of delivery, at WARNER'S studio, at 4000 Warner

5    Boulevard, Burbank, California 91522.

6    **Response to Request No. 53**

7        DC objects to this Request as seeking the production of documents which are

8    not reasonably calculated to lead to the discovery of relevant and admissible

9    evidence.  DC further objects to this Request on the grounds that it is not

10   reasonably limited in scope.  DC further objects to this Request on the grounds that

11   it calls for a search of documents that is unduly expensive, overbroad, unduly

12   burdensome, and oppressive.

13       DC objects to the definition of "WARNER" and responds to that term as

14   limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

15   extent the Request seeks production of "all DOCUMENTS" on the ground that

16   such request is overly broad, unduly burdensome, oppressive, and not reasonably

17   calculated to lead to the discovery of admissible evidence.  As used in these

18   Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

19   understood to mean those documents DC and its counsel were able to locate using

20   reasonable diligence and reasonable judgment concerning the whereabouts of such

21   documents.

22       Subject to and without waiving all foregoing objections, DC agrees to meet-

23   and-confer with defendants regarding the relevance of the requested documents.

24   **Request No. 54**

25       DOCUMENTS sufficient to show PERSONS employed between 2005 and

26   2006 in the mailroom, mail center, or other similar mail department, office or

27   stations, responsible for receiving, sorting, logging, and/or distributing packages,

28

- 62 -

1  envelopes and other documents received by mail and other forms of delivery at

2  WARNER'S studio, at 4000 Warner Boulevard, Burbank, California 91522.

3  **Response to Request No. 54**

4      DC objects to this Request as seeking the production of documents which are

5  not reasonably calculated to lead to the discovery of relevant and admissible

6  evidence.  DC further objects to this Request on the grounds that it is indefinite as

7  to time and not reasonably limited in scope.  DC further objects to this Request on

8  the grounds that it calls for a search of documents that is unduly expensive,

9  overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

10  that it seeks information protected by the attorney-client privilege, the attorney

11  work product doctrine, or any other applicable privilege or immunity.  DC further

12  objects to this Request to the extent that it seeks information protected by the right

13  to privacy under the California and United States Constitutions.

14      DC objects to the phrase "sufficient to show" as vague and ambiguous.  DC

15  objects to the definition of "DOCUMENTS" on the ground that it is overly broad,

16  unduly burdensome, oppressive, and not reasonably calculated to lead to the

17  discovery of admissible evidence.  As used in these Responses, the term

18  "DOCUMENTS" should be understood to mean those documents DC and its

19  counsel were able to locate using reasonable diligence and reasonable judgment

20  concerning the whereabouts of such documents.

21      Subject to and without waiving all foregoing objections, DC agrees to meet-

22  and-confer with defendants regarding the relevance of the requested documents and

23  in an effort to reasonably narrow this Request and to see what, if any, documents

24  should be produced.

25  **Request No. 55**

26      DOCUMENTS sufficient to show the PERSONS employed between 2005

27  and 2006 as support staff for and/or under Alan Horn, Patti Connolly, Jeff Rabinov

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**

**132**

1   and John Schulman, including, but not limited to, secretaries, assistants, personal

2   assistants, administrative assistants, executive assistants, and/or gofers.

3   **Response to Request No. 55**

4          DC objects to this Request as seeking the production of documents which are

5   not reasonably calculated to lead to the discovery of relevant and admissible

6   evidence.  DC further objects to this Request on the grounds that it is not

7   reasonably limited in scope.  DC further objects to this Request on the grounds that

8   it calls for a search of documents that is unduly expensive, overbroad, unduly

9   burdensome, and oppressive.  DC further objects to the extent that it seeks

10  information protected by the attorney-client privilege, the attorney work product

11  doctrine, or any other applicable privilege or immunity.  DC further objects to this

12  Request to the extent that it seeks information protected by the right to privacy

13  under the California and United States Constitutions.

14         DC objects to the phrase "sufficient to show" as vague and ambiguous.  DC

15  objects to the definition of "DOCUMENTS" on the ground that it is overly broad,

16  unduly burdensome, oppressive, and not reasonably calculated to lead to the

17  discovery of admissible evidence.  As used in these Responses, the term

18  "DOCUMENTS" should be understood to mean those documents DC and its

19  counsel were able to locate using reasonable diligence and reasonable judgment

20  concerning the whereabouts of such documents.

21         Subject to and without waiving all foregoing objections, DC agrees to meet-

22  and-confer with defendants regarding the relevance of the requested documents and

23  in an effort to reasonably narrow this Request and to see what, if any, documents

24  should be produced.

25  **Request No. 56**

26         All DOCUMENTS that log or list WARNER'S receipt of the STOLEN

27  DOCUMENTS.

28

- 64 -

1   **Response to Request No. 56**

2          DC objects to this Request as seeking the production of documents which are

3   not reasonably calculated to lead to the discovery of relevant and admissible

4   evidence.  DC further objects to this Request on the grounds that it is indefinite as

5   to time and not reasonably limited in scope.  DC further objects to this Request on

6   the grounds that it calls for a search of documents that is unduly expensive,

7   overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

8   that it seeks information protected by the attorney-client privilege, the attorney

9   work product doctrine, or any other applicable privilege or immunity.

10          DC objects to the definition of "WARNER" and responds to that term as

11  limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

12  extent the Request seeks production of "all DOCUMENTS" on the ground that

13  such request is overly broad, unduly burdensome, oppressive, and not reasonably

14  calculated to lead to the discovery of admissible evidence.  As used in these

15  Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

16  understood to mean those documents DC and its counsel were able to locate using

17  reasonable diligence and reasonable judgment concerning the whereabouts of such

18  documents.

19          Subject to and without waiving all foregoing objections, DC agrees to meet-

20  and-confer with defendants regarding the relevance of the requested documents and

21  in an effort to reasonably narrow this Request and to see what, if any, documents

22  should be produced.

23  **Request No. 57**

24          All DOCUMENTS that log or list the delivery of the STOLEN

25  DOCUMENTS to the offices of Alan Horn, Patti Connolly, Jeff Rabinov or John

26  Schulman.

27

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**
**134**

1    **Response to Request No. 57**

2       DC objects to this Request as seeking the production of documents which are

3    not reasonably calculated to lead to the discovery of relevant and admissible

4    evidence.  DC further objects to this Request on the grounds that it is indefinite as

5    to time and not reasonably limited in scope.  DC further objects to this Request on

6    the grounds that it calls for a search of documents that is unduly expensive,

7    overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

8    that it seeks information protected by the attorney-client privilege, the attorney

9    work product doctrine, or any other applicable privilege or immunity.

10      DC objects to the definition of "WARNER" and responds to that term as

11   limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

12   extent the Request seeks production of "all DOCUMENTS" on the ground that

13   such request is overly broad, unduly burdensome, oppressive, and not reasonably

14   calculated to lead to the discovery of admissible evidence.  As used in these

15   Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

16   understood to mean those documents DC and its counsel were able to locate using

17   reasonable diligence and reasonable judgment concerning the whereabouts of such

18   documents.

19      Subject to and without waiving all foregoing objections, DC agrees to meet-

20   and-confer with defendants regarding the relevance of the requested documents and

21   in an effort to reasonably narrow this Request and to see what, if any, documents

22   should be produced.

23   **Request No. 58**

24      All DOCUMENTS that log or list the receipt of the STOLEN DOCUMENTS

25   by the office of Alan Horn, Patti Connolly, Jeff Rabinov or John Schulman.

26   **Response to Request No. 58**

27      DC objects to this Request as seeking the production of documents which are

28   not reasonably calculated to lead to the discovery of relevant and admissible

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**
**135**

1    evidence.  DC further objects to this Request on the grounds that it is indefinite as

2    to time and not reasonably limited in scope.  DC further objects to this Request on

3    the grounds that it calls for a search of documents that is unduly expensive,

4    overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

5    that it seeks information protected by the attorney-client privilege, the attorney

6    work product doctrine, or any other applicable privilege or immunity.

7        DC objects to the definition of "WARNER" and responds to that term as

8    limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

9    extent the Request seeks production of "all DOCUMENTS" on the ground that

10    such request is overly broad, unduly burdensome, oppressive, and not reasonably

11    calculated to lead to the discovery of admissible evidence.  As used in these

12    Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

13    understood to mean those documents DC and its counsel were able to locate using

14    reasonable diligence and reasonable judgment concerning the whereabouts of such

15    documents.

16        Subject to and without waiving all foregoing objections, DC agrees to meet-

17    and-confer with defendants regarding the relevance of the requested documents and

18    in an effort to reasonably narrow this Request and to see what, if any, documents

19    should be produced.

20    **Request No. 59**

21        All DOCUMENTS that log or list the delivery of the STOLEN

22    DOCUMENTS from the office of Alan Horn, Patti Connolly or Jeff Rabinov to the

23    office of John Schulman.

24    **Response to Request No. 59**

25        DC objects to this Request as seeking the production of documents which are

26    not reasonably calculated to lead to the discovery of relevant and admissible

27    evidence.  DC further objects to this Request on the grounds that it is indefinite as

28    to time and not reasonably limited in scope.  DC further objects to this Request on

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**

**136**

1  the grounds that it calls for a search of documents that is unduly expensive,

2  overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

3  that it seeks information protected by the attorney-client privilege, the attorney

4  work product doctrine, or any other applicable privilege or immunity.

5      DC objects to the definition of "WARNER" and responds to that term as

6  limited to relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the

7  extent the Request seeks production of "all DOCUMENTS" on the ground that

8  such request is overly broad, unduly burdensome, oppressive, and not reasonably

9  calculated to lead to the discovery of admissible evidence.  As used in these

10 Responses, the phrase "all DOCUMENTS," or phrases of similar import, should be

11 understood to mean those documents DC and its counsel were able to locate using

12 reasonable diligence and reasonable judgment concerning the whereabouts of such

13 documents.

14     Subject to and without waiving all foregoing objections, DC agrees to meet-

15 and-confer with defendants regarding the relevance of the requested documents and

16 in an effort to reasonably narrow this Request and to see what, if any, documents

17 should be produced.

18 **Request No. 60**

19     All COMMUNICATIONS by or on behalf of Alan Horn that REFER to the

20 TIMELINE or the STOLEN DOCUMENTS.

21 **Response to Request No. 60**

22     DC objects to this Request as seeking the production of documents which are

23 not reasonably calculated to lead to the discovery of relevant and admissible

24 evidence.  DC further objects to this Request on the grounds that it is indefinite as

25 to time and not reasonably limited in scope.  DC further objects to this Request on

26 the grounds that it calls for a search of documents that is unduly expensive,

27 overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1   to the extent that it seeks information protected by the attorney-client privilege the

2   attorney work product doctrine, or any other applicable privilege or immunity.

3       DC objects to the definition of "COMMUNICATION" as vague and

4   overbroad and will respond to this term as excluding any documents filed in

5   connection with prior and ongoing litigation.  DC objects to the extent the Request

6   seeks production of "all COMMUNICATIONS" on the grounds that such request is

7   overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

8   to the discovery of admissible evidence.  As used in these Responses, the phrase

9   "all COMMUNICATIONS," or phrases of similar import, should be understood to

10  mean those documents DC and its counsel were able to locate using reasonable

11  diligence and reasonable judgment concerning the whereabouts of such documents.

12  Such phraseology should not be construed as a representation that each and every

13  document in DC's possession has been examined in connection with these

14  Responses or any production pursuant thereto.  DC does not object to or withhold

15  any document based on the definition of "REFER," as this definition mirrors in

16  large part language that DC employed in its own discovery requests.  Defendants

17  previously objected to this same language in DC's requests as impermissibly

18  overbroad.  Based on defendants' use of this same term and tacit acknowledgement

19  that DC's use of these terms is proper, DC will not object on this ground, and DC

20  has confirmed with defendants that they will do the same.

21      Subject to and without waiving all foregoing objections, DC agrees to meet-

22  and-confer with defendants regarding the relevance of the requested documents and

23  in an effort to reasonably narrow this Request and to see what, if any, documents

24  should be produced.

25  **Request No. 61**

26      All COMMUNICATIONS by or on behalf of Patti Connolly that REFER to

27  the TIMELINE of the STOLEN DOCUMENTS.

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**

**138**

1    **Response to Request No. 61**

2    DC objects to this Request as seeking the production of documents which are

3    not reasonably calculated to lead to the discovery of relevant and admissible

4    evidence.  DC further objects to this Request on the grounds that it is indefinite as

5    to time and not reasonably limited in scope.  DC further objects to this Request on

6    the grounds that it calls for a search of documents that is unduly expensive,

7    overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

8    to the extent that it seeks information protected by the attorney-client privilege the

9    attorney work product doctrine, or any other applicable privilege or immunity.

10    DC objects to the definition of "COMMUNICATION" as vague and

11    overbroad and will respond to this term as excluding any documents filed in

12    connection with prior and ongoing litigation.  DC objects to the extent the Request

13    seeks production of "all COMMUNICATIONS" on the grounds that such request is

14    overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

15    to the discovery of admissible evidence.  As used in these Responses, the phrase

16    "all COMMUNICATIONS," or phrases of similar import, should be understood to

17    mean those documents DC and its counsel were able to locate using reasonable

18    diligence and reasonable judgment concerning the whereabouts of such documents.

19    Such phraseology should not be construed as a representation that each and every

20    document in DC's possession has been examined in connection with these

21    Responses or any production pursuant thereto.  DC does not object to or withhold

22    any document based on the definition of "REFER," as this definition mirrors in

23    large part language that DC employed in its own discovery requests.  Defendants

24    previously objected to this same language in DC's requests as impermissibly

25    overbroad.  Based on defendants' use of this same term and tacit acknowledgement

26    that DC's use of these terms is proper, DC will not object on this ground, and DC

27    has confirmed with defendants that they will do the same.

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**

**139**

1      Subject to and without waiving all foregoing objections, DC agrees to meet-

2   and-confer with defendants regarding the relevance of the requested documents and

3   in an effort to reasonably narrow this Request and to see what, if any, documents

4   should be produced.

5   **Request No. 62**

6      All COMMUNICATIONS by or on behalf of Jeff Rabinov that REFER to

7   the TIMELINE or the STOLEN DOCUMENTS.

8   **Response to Request No. 62**

9      DC objects to this Request as seeking the production of documents which are

10   not reasonably calculated to lead to the discovery of relevant and admissible

11   evidence.  DC further objects to this Request on the grounds that it is indefinite as

12   to time and not reasonably limited in scope.  DC further objects to this Request on

13   the grounds that it calls for a search of documents that is unduly expensive,

14   overbroad, unduly burdensome, and oppressive.  DC further objects to this Request

15   to the extent that it seeks information protected by the attorney-client privilege the

16   attorney work product doctrine, or any other applicable privilege or immunity.

17      DC objects to the definition of "COMMUNICATION" as vague and

18   overbroad and will respond to this term as excluding any documents filed in

19   connection with prior and ongoing litigation.  DC objects to the extent the Request

20   seeks production of "all COMMUNICATIONS" on the grounds that such request is

21   overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

22   to the discovery of admissible evidence.  As used in these Responses, the phrase

23   "all COMMUNICATIONS," or phrases of similar import, should be understood to

24   mean those documents DC and its counsel were able to locate using reasonable

25   diligence and reasonable judgment concerning the whereabouts of such documents.

26   Such phraseology should not be construed as a representation that each and every

27   document in DC's possession has been examined in connection with these

28   Responses or any production pursuant thereto.  DC does not object to or withhold

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1   any document based on the definition of "REFER," as this definition mirrors in

2   large part language that DC employed in its own discovery requests.  Defendants

3   previously objected to this same language in DC's requests as impermissibly

4   overbroad.  Based on defendants' use of this same term and tacit acknowledgement

5   that DC's use of these terms is proper, DC will not object on this ground, and DC

6   has confirmed with defendants that they will do the same.

7          Subject to and without waiving all foregoing objections, DC agrees to meet-

8   and-confer with defendants regarding the relevance of the requested documents and

9   in an effort to reasonably narrow this Request and to see what, if any, documents

10  should be produced.

11  **Request No. 63**

12         All DOCUMENTS that state WARNER'S protocols or procedures in effect

13  between 2005 and 2006 for logging or tracking visitors to WARNER'S studio at

14  4000 Warner Boulevard, Burbank, California 91522.

15  **Response to Request No. 63**

16         DC objects to this Request as seeking the production of documents which are

17  not reasonably calculated to lead to the discovery of relevant and admissible

18  evidence.  DC further objects to this Request on the grounds that it is not

19  reasonably limited in scope.  DC further objects to this Request on the grounds that

20  it calls for a search of documents that is unduly expensive, overbroad, unduly

21  burdensome, and oppressive.  DC further objects to the extent this Request seeks

22  information protected by the attorney-client privilege, the attorney work product

23  doctrine, or any other applicable privilege or immunity.

24         DC objects to the phrase "protocols or procedures" as vague and ambiguous.

25  DC objects to the definition of "WARNER" and responds to that term as limited to

26  relevant custodians at Warner Bros. Entertainment Inc.  DC objects to the extent the

27  Request seeks production of "all DOCUMENTS" on the ground that such request is

28  overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1   to the discovery of admissible evidence.  As used in these Responses, the phrase

2   "all DOCUMENTS," or phrases of similar import, should be understood to mean

3   those documents DC and its counsel were able to locate using reasonable diligence

4   and reasonable judgment concerning the whereabouts of such documents.

5        Subject to and without waiving all foregoing objections, DC agrees to meet-

6   and-confer with defendants regarding the relevance of the requested documents and

7   in an effort to reasonably narrow this Request and to see what, if any, documents

8   should be produced.

9   **Request No. 64**

10       DOCUMENTS sufficient to show all visits by DAVID MICHAELS to

11  WARNER'S studio at 4000 Warner Boulevard, Burbank, California 91522.

12  **Response to Request No. 64**

13       DC objects to this Request as seeking the production of documents which are

14  not reasonably calculated to lead to the discovery of relevant and admissible

15  evidence.  DC further objects to this Request on the grounds that it is indefinite as

16  to time and not reasonably limited in scope.  DC further objects to this Request on

17  the grounds that it calls for a search of documents that is unduly expensive,

18  overbroad, unduly burdensome, and oppressive.  DC further objects to the extent

19  that it seeks information protected by the attorney-client privilege, the attorney

20  work product doctrine, or any other applicable privilege or immunity.

21       DC objects to the phrase "sufficient to show" as vague and ambiguous.  DC

22  objects to the definition of "DOCUMENTS" on the ground that it is overly broad,

23  unduly burdensome, oppressive, and not reasonably calculated to lead to the

24  discovery of admissible evidence.  As used in these Responses, the term

25  "DOCUMENTS" should be understood to mean those documents DC and its

26  counsel were able to locate using reasonable diligence and reasonable judgment

27  concerning the whereabouts of such documents.

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1    Subject to and without waiving all foregoing objections, DC agrees to meet-

2 and-confer with defendants regarding the relevance of the requested documents.

3 **Request No. 65**

4    DOCUMENTS sufficient to show all visitors to WARNER'S studio at 4000

5 Warner Boulevard, Burbank, California 91522, between June 25, 2006 and June 28,

6 2006.

7 **Response to Request No. 65**

8    DC objects to this Request as seeking the production of documents which are

9 not reasonably calculated to lead to the discovery of relevant and admissible

10 evidence.  DC further objects to this Request to the extent that it seeks the

11 production of any item, or portion thereof, which is not reasonably calculated to

12 lead to the discovery of relevant and admissible evidence.  DC further objects to

13 this Request on the grounds that it calls for a search of documents that is unduly

14 expensive, overbroad, unduly burdensome, and oppressive.  DC further objects to

15 the extent that it seeks information protected by the attorney-client privilege, the

16 attorney work product doctrine, or any other applicable privilege or immunity.

17    DC objects to the phrase "sufficient to show" as vague and ambiguous.  DC

18 objects to the definition of "DOCUMENTS" on the ground that it is overly broad,

19 unduly burdensome, oppressive, and not reasonably calculated to lead to the

20 discovery of admissible evidence.  As used in these Responses, the term

21 "DOCUMENTS" should be understood to mean those documents DC and its

22 counsel were able to locate using reasonable diligence and reasonable judgment

23 concerning the whereabouts of such documents.

24    Subject to and without waiving all foregoing objections, DC agrees to meet-

25 and-confer with defendants regarding the relevance of the requested documents.

26 **Request No. 66**

27    DOCUMENTS sufficient to show when O'Melveny & Myers LLP was first

28 retained as YOUR counsel for this litigation.

1   seeks production of "all COMMUNICATIONS" on the ground that such request is

2   overly broad, unduly burdensome, oppressive, and not reasonably calculated to lead

3   to the discovery of admissible evidence. As used in these Responses, the phrase "all

4   COMMUNICATIONS," or phrases of similar import, should be understood to

5   mean those documents DC and its counsel were able to locate using reasonable

6   diligence and reasonable judgment concerning the whereabouts of such documents.

7   DC does not object to or withhold any document based on the definitions of

8   "REGARDING" or "RELATING," as these definitions mirror in large part

9   language that DC employed in its own discovery requests.  Defendants previously

10  objected to this same language in DC's requests as impermissibly overbroad.

11  Based on defendants' use of this same term and tacit acknowledgement that DC's

12  use of these terms is proper, DC will not object on this ground, and DC has

13  confirmed with defendants that they will do the same.

14          Subject to and without waiving all foregoing objections, DC agrees to meet-

15  and-confer with defendants regarding the relevance of the requested documents and

16  in an effort to reasonably narrow this Request and to see what, if any, documents

17  should be produced.

18  **Request No. 88**

19          All COMMUNICATIONS between YOU and any person or entity

20  REGARDING the TIMELINE.

21  **Response to Request No. 88**

22          DC objects to this Request on the grounds that it is indefinite as to time and

23  not reasonably limited in scope.  DC further objects to this Request to the extent

24  that it seeks the production of any item, or portion thereof, which is not reasonably

25  calculated to lead to the discovery of relevant and admissible evidence.  DC further

26  objects to this Request on the grounds that it calls for a search of documents that is

27  unduly expensive, overbroad, unduly burdensome, and oppressive.  DC further

28  objects to the extent that it seeks information protected by the attorney-client

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1  privilege, the attorney work product doctrine, or any other applicable privilege or

2  immunity.

3       DC objects to the phrase "person or entity" as vague and ambiguous.  DC

4  objects to the definition of "YOU" as vague and overbroad and will respond to this

5  term as limited to the relevant custodians at DC and Warner Bros. Entertainment

6  Inc. DC objects to the definition of "COMMUNICATION" as vague and overbroad

7  and will respond to this term as excluding any documents filed in connection with

8  prior or ongoing litigation. DC objects to the extent the Request seeks production of

9  "all COMMUNICATIONS" on the ground that such request is overly broad,

10  unduly burdensome, oppressive, and not reasonably calculated to lead to the

11  discovery of admissible evidence. As used in these Responses, the phrase "all

12  COMMUNICATIONS," or phrases of similar import, should be understood to

13  mean those documents DC and its counsel were able to locate using reasonable

14  diligence and reasonable judgment concerning the whereabouts of such documents.

15  DC does not object to or withhold any document based on the definition of

16  "REGARDING," as this definition mirrors in large part language that DC employed

17  in its own discovery requests.  Defendants previously objected to this same

18  language in DC's requests as impermissibly overbroad.  Based on defendants' use

19  of this same term and tacit acknowledgement that DC's use of these terms is proper,

20  DC will not object on this ground, and DC has confirmed with defendants that they

21  will do the same.

22       Subject to and without waiving all foregoing objections, DC agrees to meet-

23  and-confer with defendants regarding the relevance of the requested documents and

24  in an effort to reasonably narrow this Request and to see what, if any, documents

25  should be produced.

26  **Request No. 89**

27       All COMMUNICATIONS between YOU and any person or entity

28  REGARDING Marc Toberoff.

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

1    other publicly available documents.  As used in these Responses, the phrase "all

2    DOCUMENTS," or phrases of similar import, should be understood to mean those

3    documents DC and its counsel were able to locate using reasonable diligence and

4    reasonable judgment concerning the whereabouts of such documents.

5         Subject to and without waiving all foregoing objections, DC will conduct a

6    reasonably diligent search of the documents in the possession, custody, or control

7    of relevant custodians and will produce by designation or otherwise all non-

8    privileged, responsive documents.  Given that discovery is ongoing in this case, DC

9    expressly reserves its right to supplement these Responses, if need be, as more

10   information becomes available, and to use in discovery and at trial any information

11   omitted from these Responses as a result of mistake, inadvertence, or oversight.

12        Dated:  October 5, 2012                Respectfully submitted,

13                                               By:  /s/ Daniel M. Petrocelli

14                                                    Daniel M. Petrocelli

15                                               Attorneys for Plaintiff DC Comics

16

17

18

19

20

21

22

23

24

25

26

27

28

DC'S OBJS. & RESPS. TO
LARSON'S REQS. FOR PROD. 1-125

**Exhibit F**
**146**

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

22337 PACIFIC COAST HIGHWAY #348

MALIBU, CALIFORNIA 90265

MARC TOBEROFF*
KEITH G. ADAMS
PABLO D. ARREDONDO*
DAVID HARRIS

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

kgadams@ipwla.com

\* Also admitted in New York

October 25, 2012

<u>Via E-Mail</u>

Matthew Kline
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:    <u>*DC Comics v. Pacific Pictures Corp., et al.*</u>, Case No. 10-CV-03633 ODW (RZx)

Dear Matt:

I write in response to Plaintiff DC Comics' Objections and Responses to Defendant Laura Siegel
Larson's First Set of Requests for Production ("Responses"), dated October 5, 2012, and to
request that the parties meet-and-confer pursuant to L.R. 37-1.

## 1.    <u>DC's Search Efforts and Protocols</u>

As set forth in my letter to you dated October 12, 2012, DC's ongoing pattern of producing non-
privileged, highly responsive documents only when it intends to use such documents in its
briefing is a gross violation of DC's discovery obligations.  Defendants have already been
prejudiced by this discovery misconduct with respect to the parties' critical summary judgment
motions regarding DC's First Claim.

Unfortunately, the assurances of DC's counsel as to the completeness of DC's search efforts
have been shown to be worthless.  Ms. Seto represented in March 2012 that all documents
relevant to the 1992 Agreement had been produced; Mr. Kline similarly represented in July 2012
that a "comprehensive search" had been done and that all responsive documents had been
produced.

In both cases, DC thereafter produced additional documents that expressly referred to the 1992
Agreement and would have been uncovered in any reasonable search.  DC's attempt to justify its
improper withholding and belated production of obviously responsive documents as done in
response to comments made at oral argument (Docket 498 at 2-3; 498-1 at ¶8-9) makes it plain
that DC conducts a more rigorous search in preparation for its motions than it does in response to
Defendants' discovery requests.  This is completely unacceptable and in violation of DC's
discovery obligations.

**Exhibit G**
**147**

**TOBEROFF & ASSOCIATES, P.C.**

October 25, 2012
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:   2 of 6

Defendants also cannot trust DC to make a good faith selection of document custodians on its own, as evidenced by the fact that it apparently omitted, either deliberately or negligently, such obvious custodians as its Legal and Business Affairs departments, with respect to the 1992 Agreement at issue.

DC's further generic assurances as to its "comprehensive search" (*see, e.g.,* 10/22/2012 Kline Letter to Toberoff and Adams) do nothing to remedy these obvious deficiencies.

Consequently, Defendants require and are entitled to specific and complete information as to DC's search efforts to date and going forward. This includes a list of the authors, recipients and custodians of documents covered by your search, databases searched, and, where applicable, search queries used to cull responsive documents. DC must also produce relevant organization charts so that Defendants can assess whether key custodians are being excluded. *See Sloan Valve Co. v. Zurn Indus., Inc.*, 2012 WL 1886353 at *9 (N.D. Ill. May 23, 2012) (ordering parties to create and file "an agreed-upon list of reasonable search terms, custodians, and proposed date restrictions"); *ArrivalStar S.A. v. United States*, 2012 WL 3590414 at *1 (Fed. Cl. Aug. 20, 2012) ("The parties shall cooperate to identify the proper custodians, proper search terms, and time frame.").

2.    <u>**DC's Deficient Responses To Laura Siegel Larson's First Set of Requests for Production**</u>

DC refused to produce documents absent a meet-and-confer in response to seventy-two (72) of Ms. Larson's requests. DC claimed a meet-and-confer is purportedly required to explain the requests' (i) relevancy (Response to Request Nos. 26, 53, 64-69); (ii) relevancy and scope (Response to Request Nos. 3-25, 27-31, 33, 38-40, 44-52, 54-63, 83-89); or (iii) relevancy, scope and definitions (Response to Request Nos. 32, 34-37, 41-43).

These boilerplate objections are unfounded, and DC's insistence on meeting and conferring to supposedly narrow, define, and/or discuss the relevancy of the majority of Ms. Larson's requests is nothing more than a dilatory tactic to stall the discovery process.

Ms. Larson's requests are relevant to this case, and already appropriately narrow in scope and definition. "Discovery requests are relevant if there is any possibility that the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear that the information sought can have no possible bearing on the subject matter of the action." *In re Toyota Motor Corp. Sec. Litig.*, 2012 WL 3791716 at *4 (C.D. Cal. Mar. 12, 2012) (citation omitted); F.R.C.P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense."). Defendants' pointed requests more than meet this standard.

**Exhibit G**
**148**

**TOBEROFF & ASSOCIATES, P.C.**

October 25, 2012
Re:     *DC Comics v. Pacific Pictures Corp.*
Page:   3 of 6

Moreover, as DC itself has repeatedly stated, a party is required to respond to requests to the extent the requests are non-objectionable. *See* Docket 125 at 23-24; Fed. R. Civ. P. 34(b)(2)(C) ("An objection to part of a requests must specify the part and permit inspection of the rest."); W. Schwarzer, et al., *Federal Civil Procedure Before Trial* § 11:1914 (Rutter 2010) (citing *Aikens v. Deluxe Fin. Servs.*, Inc., 217 F.R.D. 533, 539 (D. Kan. 2003) ("[T]he responding party still has a duty to respond to the extent the request is not objectionable").

**Request Nos. 3-22, 23-27, 32-65, 88**

These requests are aimed at evidence regarding when and how Warner received the stolen privileged documents and the anonymous cover letter enclosing them (the so-called "Timeline"). As DC attached the Timeline to its complaint and rely heavily on it and the stolen documents in this litigation, these requests are obviously relevant. Docket Nos. 1, 49, 459-43, 455 at 8.

DC's boilerplate objections to these requests make no sense. To give but a couple examples:

- Request No. 6 asks for "All DOCUMENTS that REFER to the date and/or circumstances surrounding YOUR receipt of the TOBEROFF TIMELINE." The relevance of this request speaks for itself; to date, DC/Warner has provided absolutely no evidence to support its representation to the Court that it received the anonymous package in June of 2006. Moreover, absolutely no evidence has been provided as to the circumstances surrounding the provision of the stolen documents to DC/Warner. Given that the anonymous package made its way into the office of extremely senior Warner executives and Warner's General Counsel, the absence of any materials is conspicuous.

- Request No. 14 asks for "All DOCUMENTS which show when YOU first received the TOBEROFF TIMELINE." The relevance of this request again speaks for itself, as set forth with respect to Request No. 6 above.

- Request No. 21 asks for "All COMMUNICATIONS between YOU and ARNOLD PORTER REFERRING TO the TOBEROFF TIMELINE." This request is clearly relevant as communications between DC and its purported "neutral escrow agent", to whom it sent the stolen documents will shed light on when and how DC handled the stolen documents. It is quite narrow as it refers to communications with only one entity. DC's objection that the request is not limited in time is disingenuous as the request is clearly limited to the period subsequent to DC's receipt of the Timeline and to communications referencing that document. DC improperly demands a meet-and-confer to discuss relevancy and to "reasonably narrow" the request, when its relevancy is obvious and there is nothing to narrow.

- Request No. 49 asks for "All DOCUMENTS that REFER to WARNER'S efforts to locate the packaging, envelope, or equivalent enclosure in which the TOBEROFF TIMELINE was sent to WARNER'S studio at 4000 Warner Boulevard, Burbank,

**TOBEROFF & ASSOCIATES, P.C.**

October 25, 2012
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:  4 of 6

California, 91522."  This request is directly relevant to the issue of when and how DC handled the Timeline and stolen documents.  To date, DC has produced no evidence whatsoever in support of its claim that it first received the Timeline and stolen documents in June 2006.  Again, this request is also narrowly targeted to request copies of the packaging in which the stolen materials were sent to Warner's senior executives, including its General Counsel.  This clearly could confirm the date Warner actually received the Timeline and stolen documents, and test Warner's critical representations to the Court as to this fact.  In addition, any handwriting on the packaging could be used to confirm the identity of the thief who authored the Timeline, and be used to question him at deposition.

**Request No. 29**

Request No. 29 asks for "All complaints or counterclaims filed by YOU and/or WARNER containing a claim for tortious interference with prospective economic advantage and/or a claim for tortious interference with contract."  This request is plainly relevant for a number of reasons, including measuring DC's claimed methodologies used to establish damages, and the methodologies used by DC/Warner to establish the value of intellectual properties.  DC responds that it "will not produce any such documents, which are publicly available."  This objection is improper.  *Vera v. O'Keefe*, 2011 WL 4434876 at * 6 (S.D. Cal. Sept. 23, 2011) (ordering documents produced "regardless of whether they are publicly available"); *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, 2005 WL 1459555 (N.D. Cal. June 21, 2005) ("[T]he Court can see no justifiable reason why Plaintiffs should not produce …. documents … whether they are in Defendants' possession or in the public domain."); *St. Paul Reinsurance Co. V. Commercial Fin. Corp.*, 198 F.R.D. 508, 513 (N.D. Iowa 2000) ("It is not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record.").  Moreover, DC has a much easier ability to obtain these documents.  *Solar Star Sys., LLC v. Bellsouth Telecommunications, Inc.*, 2010 WL 5477757 at *3 (S.D. Fla. Dec. 30, 2010) (granting motion to compel complaints filed by corporation "even though such complaints may be publicly available" where corporation "has an even easier ability to obtain this data, which undoubtedly is tracked and documented within corporation on a regular basis").  Defendants request that DC withdraw this objection.

**Request No. 30**

Request No. 30 asks for "All DOCUMENTS REFERRING TO this case and/or the *Siegel* Litigations, excluding documents produced or filed in this case or the *Siegel* Litigations."  To the extent DC is in possession of non-privileged documents, such documents would obviously be relevant within the meaning of F.R.C.P. 26(b)(1).

**TOBEROFF & ASSOCIATES, P.C.**

October 25, 2012
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:  5 of 6

## Request No. 31

Request No. 31 asks for "All minutes of Board of Directors meetings or Directors' resolutions RELATING TO any Defendants in this case and/or the *Siegel* Litigations." This request is obviously relevant on its face. Nor is the request burdensome, as it is narrowly tailored to two species of corporate documents and further narrowed to only those documents relating to any defendants in this case or in *Siegel,* and thus requests a limited volume of responsive documents. DC's refusal to produce absent a meet-and-confer is baseless.

## Request Nos. 66-69

Request Nos. 66-69 concern the timing of the relationship between Warner/DC and its present litigation counsel, O'Melveny & Myers, LLP. These requests are relevant, especially as Mr. Kline has stated that responsive documents were not produced because O'Melveny was purportedly unable to access the databases used by prior counsel. (7/12/2012 Email from Matt Kline to Marc Toberoff).

## Request No. 83

Request No. 83 asks for "All agreements between YOU and any private investigator REGARDING this case or the *Siegel* Litigations." This request is relevant for a number of reasons, including allowing Defendants to understand what if any efforts DC has made to identify and locate the thief who provided Warner with the stolen documents, and whether DC has additional responsive evidence that it refuses to turn over. The request is also relevant to examining potential communications between Warner/DC and the author of the Timeline and/or between Warner/DC and other former employees or clients of Toberoff & Associates, which DC placed at issue when it attached the "Timeline" to its complaint. The request is reasonably tailored to cover only this case and the *Siegel* Litigations. DC's refusal to produce absent a meet-and-confer is baseless.

## Request Nos. 84-87

Request Nos. 84 through 87 concern DC's communications and agreements concerning publicity in this case. These requests are relevant for a number of reasons, including to discover any contradictions between statements DC has made to third-parties and statements it has made in its filing in this case, and because DC has extensively relied on third-party press articles about Mr. Toberoff in its briefing and filings. Furthermore, such documents would be relevant to establish DC's motivation for bringing this retaliatory suit against its opposing counsel, Mr. Toberoff. For instance, to damage Mr. Toberoff and garner leverage, Warner/DC attached the anonymous defamatory Timeline to its complaint and then encouraged media outlets to post the Timeline in full on the internet. Warner has suffered high-profile defeats in cases Mr. Toberoff litigated and Defendants are entitled to know the extent to which Warner is seeking to use publicity related to this litigation as a deterrent to other artists who might seek Mr. Toberoff's counsel. The request

**TOBEROFF & ASSOCIATES, P.C.**

October 25, 2012
Re:     *DC Comics v. Pacific Pictures Corp.*
Page:   6 of 6

is reasonably tailored to cover only this case and the *Siegel* Litigations.  Especially as DC provides no information regarding the volume of responsive documents, DC's refusal to produce absent a meet-and-confer is baseless.

**<u>Request No. 89</u>**

Request No. 89 asks for "All COMMUNICATIONS between YOU and any person or entity REGARDING Marc Toberoff."  As Mr. Toberoff is a party to this case, this request is clearly relevant.  Especially as DC provides no information regarding the volume of responsive documents, DC's refusal to produce absent a meet-and-confer is baseless.

*       *       *

Finally, it should be noted that DC's refusal to produce materials on the basis of attorney-client privilege are inappropriate.  Despite having been repeatedly warned by Defendants (*see, e.g.,* 5/30/2012 Letter from Pablo Arredondo to Jason Tokoro*; 6/12/2012 Email from Marc Toberoff to Matt Kline; 10/16/2012 Letter from Adams to Tokoro*), DC still has provided no privilege logs in this case.

Pursuant to L.R. 37-1, defendants request that the parties meet and confer on these matters anytime on October 26 or October 29, 2012.

Nothing in this letter should be construed as a waiver or limitation of any of Defendants' rights or remedies, all of which are reserved.

Very truly yours,

Keith Adams

**Exhibit G**
**152**

# O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| BEIJING | 1999 Avenue of the Stars, 7th Floor | SAN FRANCISCO |
| BRUSSELS | Los Angeles, California  90067-6035 | SHANGHAI |
| HONG KONG | | SILICON VALLEY |
| LONDON | TELEPHONE  (310) 553-6700 | SINGAPORE |
| LOS ANGELES | FACSIMILE  (310) 246-6779 | TOKYO |
| NEWPORT BEACH | www.omm.com | WASHINGTON, D.C. |
| NEW YORK | | |

October 31, 2012

OUR FILE NUMBER
905900-321

**VIA EMAIL**

WRITER'S DIRECT DIAL
(310) 246-8593

Marc Toberoff
Keith G. Adams
Toberoff & Associates, P.C.
22337 Pacific Coast Highway #348
Malibu, CA  90265

WRITER'S E-MAIL ADDRESS
mlens@omm.com

Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Counsel:

We write in response to defendants' letter of October 25, 2012, concerning DC's Objections and Responses to Defendant Laura Siegel Larson's First Set of Requests for Production ("Responses").

1. <u>DC Remains Willing To Meet And Confer</u>.  Defendants expend six paragraphs in their letter asserting their right to meet and confer on DC's search for responsive documents.  As DC first stated seven months ago, and as DC just confirmed in its October 22 letter, DC has been—and remains—willing to meet and confer on its document collection protocol.  However, defendants have never taken DC up on its invitation.  *See, e.g.*, Oct. 22, 2012 letter from M. Kline to M. Toberoff and K. Adams.  Defendants' six-paragraph "demand" for a meet-and-confer on DC's search methodology is a charade, but we are happy to begin that discussion next week after the two Ninth Circuit arguments we have in this case and the *Siegel* case.

2. <u>DC Did Not Serve Boilerplate Objections</u>.  Contrary to your assertions, DC did not serve "boilerplate" objections to defendant Laura Siegel Larson's First Set of Requests for Production (the "Requests").  Given the similar nature of many of the Requests, it is not surprising that many of DC's objections were applicable to numerous requests.  Indeed, your October 25 letter concedes that *60 Requests* were "aimed at evidence regarding when and how Warner received" the Timeline documents, Oct. 25, 2012 letter from K. Adams to M. Kline—an irrelevant issue and source of inquiry in any event, and one on which the *Siegel* court already ruled.  The fact that many of the Requests were objectionable for the same reasons does not render DC's objections "boilerplate."  It means they are consistent.

**Exhibit H**
**153**

O'MELVENY & MYERS LLP
October 31, 2012 - Page 2

    3. <u>DC's Objections Are Valid</u>.  Defendants' attempts to justify the objectionable Requests do not assuage DC's concerns and, in fact, reinforce DC's position.  As one example, the fact that DC attached the Timeline to its complaint does not render evidence "regarding when and how Warner received" the Timeline relevant.  In any event, DC has already stated—several times—that it does not possess any documents concerning the Timeline that predate June 28, 2006.  *E.g.*, Oct. 22, 2012 letter from J. Tokoro to M. Toberoff and R. Kendall.  Additionally, defendants have Wayne Smith's declaration that details Warner Bros. and DC's receipt of the Timeline, which, as you'll recall, formed the basis for Judge Zarefsky's opinion that Mr. Smith's actions were professional, reasonable, and appropriate.  Case No. CV 04-8400, Docket Nos., 108; 177 at 19:3-7.  For these reasons, defendants' 60 Requests on this topic are not only irrelevant, but also moot.  Thus, there is no "non-objectionable" portion of these Requests warranting a response.

    4. <u>DC Has Not Waived Any Privilege</u>.  In closing, your letter rehashes arguments that have been the subject of separate correspondence between the parties.  As DC explained in its October 22 letter, there has been no waiver of any privilege and DC intends to move for a protective order on the terms set forth in DC's proposed privilege logging stipulation.  Oct. 22 letter from J. Tokoro to M. Toberoff and R. Kendall.  Given that the parties declared an impasse on this issue during the October 25 meet-and-confer, DC does not see the point of repeating its position here.

    This is, of course, not a full recitation of the infirmities of defendants' position.  Nor is DC unwilling to meet and confer on sensible ways to narrow or otherwise address or better understand the relevance of defendants' requests.[1]  We can have that conversation next week.  We propose November 6 at 3pm PDT.  All of DC's rights are reserved.

                        Very truly yours,

                        /s/ Molly Lens

                        Molly M. Lens
                        for O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli, Esq.
        Matthew T. Kline, Esq.
        Richard Kendall, Esq.
        Defense Counsel

---

[1] While you characterize DC's proposal that the parties meet and confer over the objectionable requests as a "dilatory tactic," which it is not, we note that this response mirrors that taken by defendants in response to DC's document requests.  *See*, *e.g.*, Marc Toberoff's Jan. 24, 2011 Objections and Responses to DC's Request for the Production of Documents (Response to Request 5:  "Subject to and without waiving the foregoing general and specific objections, Toberoff is willing to meet and confer with Plaintiff regarding the tailoring of this request.").

# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

December 6, 2012

OUR FILE NUMBER
905900-321

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6703

Keith Adams
Pablo Arredondo
Toberoff & Associates, P.C.
22631 Pacific Coast Highway #348
Malibu, CA 90265

WRITER'S E-MAIL ADDRESS
cseto@omm.com

Re:    *DC Comics v. Pacific Pictures Corp.*, Case No. CV-10-3633

Dear Keith and Pablo:

We write to follow up on our November 27 and 28 meet-and-confer talks concerning, *inter alia*, DC's responses to Mark Warren Peary's First Set of Interrogatories and Laura Siegel Larson's First Set of Requests for Production.  Although DC stands by its objections to this discovery (which DC set forth in its formal responses and in our letters and calls), in the interest of compromise and to avoid needless motion practice, DC has been working to address the questions and concerns you raised during our recent discussions.  Reserving all rights to object to defendants' use of the evidence sought (including, *e.g.*, on relevance grounds), DC agrees to serve amended responses and to produce responsive, non-privileged documents as discussed below.  As I told you in my November 28 email, the work DC is undertaking involves a significant amount of time and expense.  Much of this work is work that defendants should, if ever, have asked DC to do many months ago, and certainly before the Court granted DC summary judgment on its First and Third Claims and certified those claims for appeal.  As I also mentioned in my email, we have concerns that defendants intend to press ahead with motion practice no matter what information DC provides.  We hope that concern is unfounded, but if it proves to be the case, DC reserves all rights to seek its fees and costs for the work it is undertaking.  DC has some materials to produce to you today, but needs your agreement that documents it marks as "Confidential" will be treated as such under the terms of the protective order in *Siegel*.  Additional documents will be provided on a rolling basis, and we will need your agreement as well concerning the "Confidential" marking of certain of those documents.

**Exhibit I**
**155**

O'MELVENY & MYERS LLP
December 6, 2012, Page 2

## I.    DC'S RESPONSES TO PEARY'S INTERROGATORIES

Interrogatory Nos. 1-4.  These interrogatories ask DC to identify communications with the Shuster family.  These interrogatories were overbroad to begin with, but you told us before they were focused in many respects on the 1992 Agreement, which the Court validated in its summary judgment order.  These requests are thus, for the most part, mooted by the Court's order.  Moreover, while, as you know, defendants did not challenge the adequacy of DC's initial responses, DC identified additional correspondence that may be responsive to these requests—all of which has been previously produced and cited in connection with the parties' recent summary-judgment briefing.  DC will serve amended responses listing this additional correspondence.  If the additional document searches DC offers to do below yield any additional correspondence, we will further amend, as need be.

Interrogatory No. 5.  Defendants challenge DC's response to Interrogatory No. 5, which asks DC to "IDENTIFY all COMMUNICATIONS between YOU AND any third-party that REFERRED TO the 1992 AGREEMENT."  As noted in DC's objections and discussed during our November 27 call, this request is overbroad, unduly burdensome, and needs to be limited in scope.  Indeed, Magistrate Zarefsky rightly criticized this interrogatory—and others like it—on the grounds that "requests that seek 'all' or 'any,' especially on as elastic a term as 'communications' (and there are many similar terms), when they contain little or no limiting language—as to subject and time—necessarily invite objections" and "will never produce the required information without a great deal of time, effort, expense and anguish."  DN 467 at 2.

During our November 27 call, you discussed possibly limiting Interrogatory No. 5 to third-party communications involving DC and Warner Bros.' "business and legal affairs" and "consumer products" departments.  DC and Warner Bros. have hundreds of employees who serve business affairs, legal affairs, or consumer products functions—the vast majority of whom have no knowledge whatsoever (and no reason to have knowledge) of the 1992 Agreement.  It would be overly burdensome to search all of these employees for relevant communications.

DC has already collected and reviewed documents from the custodians most likely to have such communications, including (but not limited to) those identified *infra*, Part III.  In the interest of compromise, however, and if defendants withdraw their (baseless) threat to file a motion, DC is also willing to:

- run additional searches in the E-Docs library used by Warner Bros. Entertainment "Corporate Legal";

- run additional searches in the E-Docs library used by DC Comics "Business & Legal Affairs";

- run additional searches in the E-Docs library used by Warner Bros. Pictures "Business & Legal Affairs";

Exhibit I
156

O'MELVENY & MYERS LLP
December 6, 2012, Page 3

- run additional searches in the E-Docs library used by Warner Bros. Television "Business Affairs";

- run additional searches in the E-Docs library used by Warner Bros. Television "Legal Affairs";

- search relevant hard-copy documents in the custody of Steven Spira (Warner Bros. Pictures);

- search relevant hard-copy documents in the custody of Damon Bonesteel (Warner Bros. Entertainment);

- search relevant hard-copy documents in the custody of Ana de Castro (Warner Bros. Consumer Products);

- search relevant hard-copy documents in the custody of Amy Genkins (DC Entertainment);

- search relevant hard-copy documents in the custody of Alex McAuley (Warner Bros. Consumer Products, Europe); and

- search relevant hard-copy documents in the custody of Maria Tinoco (Warner Bros. Consumer Products).

If these searches yield any responsive, non-privileged documents that have not already been produced (and we have no assurances that they will), DC will identify the communications in its amended interrogatory responses and produce the documents as well.

Interrogatory Nos. 9-12.  These interrogatories ask DC to identify evidence in support of specific allegations in its First Claim for Relief.  As defendants know, judgment was granted in DC's favor on this claim, DN 507 at 5-13, and defendants are not entitled to seek further discovery on it and these interrogatories are moot, *see Brashear v. Clark*, 2009 WL 37313653, at *1 (E.D. Cal. Nov. 5, 2009) (where a "discovery request is directed toward evidence that relates to a [claim] that has been dismissed by the Court … there is no perceived need for the evidence"); *U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002) (appropriate to deny requests for "additional discovery … made after summary judgment was issued"); *cf. Goodman v. New Horizons Cmty. Serv. Bd.*, 2006 WL 940646, at *3 (11th Cir. Apr. 12, 2006) ("[T]o the extent that Goodman's motion for sanctions sought a discovery order or matter at trial, the dismissal of Goodman's case renders it moot.").

Defendants' argument (set forth in your letter of November 19) that these interrogatories are relevant to DC's Fourth, Fifth, and Sixth Claims because they *could* lead to the discovery of evidence concerning DC's *damages* is not convincing.  None of these interrogatories is directed to the question of damages.  To take just one example, Interrogatory No. 9 asks:  "IDENTIFY any evidence that supports YOUR contention that '[t]he Termination Notice is invalid, and

**Exhibit I**
**157**

O'MELVENY & MYERS LLP
December 6, 2012, Page 4

ineffective,' found in paragraph 106 of YOUR COMPLAINT." This interrogatory *only* relates to the validity of the Shusters' termination notice—a question which has now been fully and finally adjudicated in DC's favor. DN 507 at 5-13. As defendants drafted it, the interrogatory calls for no information concerning the nature or amount of damages DC seeks on its state-law claims. Even so, and as a proposed compromise, DC is willing to provide additional information concerning its damages allegations in its amended responses and produce relevant related documents, although such damages issues may ultimately be an expert-witness question.

Interrogatory Nos. 13-15. These interrogatories ask DC to identify evidence in support of specific allegations in its Third Claim for Relief. As explained above, these interrogatories are moot in light of the Court's summary judgment ruling granting judgment in DC's favor on its Third Claim. DN 507 at 16-17.

Defendants claim these interrogatories may still be relevant to DC's Fourth, Fifth, and Sixth Claims because they implicate DC's allegations about defendants' consent agreements, Superboy fraud, and various conflicts of interest. We disagree, but to moot this issue, DC is willing to amend its answers to identify evidence in support of these allegations—much of it, as you know, was addressed and briefed in the parties' cross-motions for summary judgment.

## II.    DC'S RESPONSES TO LARSON'S REQUESTS FOR PRODUCTION

Requests re: DC's Receipt and Handling of the Toberoff Timeline (Nos. 3-27, 32-65, 88). Such documents have no relevance to any claim or defense in this litigation. *Cf.* FED. R. CIV. P. 26(b)(1) (party only has right to discover materials "relevant to any party's claim or defense"). During our meet-and-confer discussions, Pablo said that such documents *may* reveal relevant information and the Federal Rules establish a "liberal" discovery standard, but "the standard of relevancy is not so liberal as to allow a party to ... explore matter which does not presently appear germane on the theory that it might conceivably become so." *Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union, AFL–CIO–CLC*, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997); *see also Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 187 (1st Cir. 1989).

Keith then made the argument—for the first time in the parties' many discussions on this topic—that the timing of DC's receipt of the Timeline could be relevant to defendants' statute-of-limitations arguments. This makes no sense, either; neither DC nor its counsel had access to the Timeline until it was produced in December 2008, so any applicable statute of limitations would be tolled until 2008. *See* DN 334 at 17, 20-21, 22-23, 25; Ninth Circuit Appeal No. 11-56934, DN 33 at 54-57; Mar. 26, 2007, Smith Decl. ¶ 13 (confirming "we have not shared the contents of the [Timeline or attached documents] with any of the outside counsel representing the Defendants in this action, nor have we used the contents of the documents in the litigation."). Moreover, under defendants' statute-of-limitations argument (which is specious, to be clear), DC's state-law claims are allegedly untimely whether Warner Bros. received the Timeline materials in June 2006 (the position defendants have briefed to the District Court and Ninth Circuit, *e.g.*, Appeal No. 11-56934, DN 8 at 49), or six or more months earlier as defendants at other times (baselessly) assert, *e.g.*, DN 160 at 76 n.28; Case No. CV-04-8400, DN 476 at 58-59. Thus, this discovery is not relevant or needed to address any properly contested issue in the case.

**Exhibit I**
**158**

O'MELVENY & MYERS LLP
December 6, 2012, Page 5

Rather, as we have previously reminded defendants, Wayne Smith's March 26, 2007, declaration in *Siegel* sets forth the precise circumstances of DC's receipt and handling of the Timeline documents, and Judge Zarefsky rightly noted (over defendants' arguments to the contrary that Warner Bros. had received the Timeline documents six months earlier, Case No. CV-04-8400, Docket Nos. 107 at 36-39; 177 at 9:2-10:11, 13:15-17:21), that Mr. Smith "acted professionally" and "reasonably" in briefly reviewing the Timeline documents in June 2006 and immediately turning them over to Arnold & Porter. Case No. CV 04-8400, DN 108; 177 at 19:3-7. Defendants waived any right to challenge this finding as Judge Larson held, *id.*, DN 374 at 4-5, and they certainly cannot re-litigate this issue in this related case, when it has no relevance to any claim or defense. To moot the issue once and for all, however, we again confirm that the first documents in DC's files concerning the Timeline are dated June 28, 2006—the day the Timeline was received.[1] Those documents are described in paragraphs 5-6 of Mr. Smith's declaration: the *On the Receiving End* article by Kurt L. Schmalz posted on the Los Angeles County Bar Association website and the three principal California cases it identifies: *Aerojet-Gen. Corp. v. Transp. Indem. Ins.*, 18 Cal. App. 4th 996 (1993), *State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644 (1999), and *Rico v. Mitsubishi Motors Corp.*, 116 Cal. App. 4th 51 (2004). To further moot this issue, DC is willing to produce John Quinn's July 5, 2006, letter to counsel in *Siegel* confirming that the Timeline documents were "delivered to the Warner Bros. offices during the middle of last week"—*i.e.*, June 28, 2006. There were no earlier written communications between DC and Arnold & Porter since, as described in Mr. Smith's declaration, all three sets of the Timeline documents "were handed over to Mr. Quinn" in person on June 30, 2006. Mar. 26, 2007, Smith Dec. ¶ 13. Mr. Quinn sent his letter the next business day after the holiday weekend—July 5. To the extent defendants want further confirmation of when and how DC received the Timeline, they should depose David Michaels, whom defendants have identified as the Timeline author. Toberoff's Jan. 24, 2011 Interrog. Resps., Resp. No. 1.

DC is also willing to produce its communications with Mr. Michaels if and when defendants do the same. Before the parties can reach compromise on this and many other subjects, however, there must be reciprocity—defendants cannot demand that DC produce documents involving third parties that defendants themselves continue to withhold. Nor is there any legitimate basis for defendants to assert privilege over communications with Mr. Michaels after he left Toberoff & Associates—especially given that defendants accused him of committing crimes by stealing privileged documents, "falsely disparaging" Mr. Toberoff, and attempting to "steal" his clients, *see* Toberoff's Jan. 24, 2011, Interrog. Resps., Resp. No. 4, and also reported Mr. Michaels' alleged crimes to the FBI and U.S. Attorney's Office, but now backtrack from certain of those allegations, *see id.*, Resp. 5. Please let us know if you agree to a reciprocal exchange of communications with Mr. Michaels.

Request re: Other Interference Claims by DC and Warner Bros. (No. 29). While defendants have failed to articulate any legitimate theory of relevance for these documents, and

---

[1] We note that this day may well have been specially chosen by the Timeline author, since *Superman Returns* was released on June 28, 2006. *See* Internet Movie Database, Superman Returns, http://www.imdb.com/title/tt0348150/.

**Exhibit I**
**159**

O'MELVENY & MYERS LLP
December 6, 2012, Page 6

while it would be equally burdensome for defendants to locate these publicly available documents, in the interest of compromise, we propose producing any documents we are able to find after conducting a reasonable search with the limitations Keith proposed:  complaints or counterclaims involving claims for tortious interference with prospective economic advantage or tortious interference with contract filed by DC Comics or Warner Bros. Entertainment Inc. in the United States between 2000 and the present.

     Request re: Documents Referring to *Siegel* or *Pacific Pictures* Litigation (No. 30).  Keith offered to limit this request to communications with third-parties concerning the *Siegel* or *Pacific Pictures* cases and internal analyses concerning the effect of these cases on DC's business.  Even as narrowed, this request is grossly overbroad, unduly burdensome, and very directly calls for privileged information.  Keith explained that this request is intended to target documents relevant to DC's damages allegations.  As noted above, DC is willing to produce documents on this topic, including licensing contracts that end prematurely in 2013—to DC's detriment.

     Request re: Minutes of Board Meetings or Director Resolutions (No. 31).  Keith agreed to limit this request to minutes of Board of Directors meetings or resolutions of DC Comics, Warner Bros. Entertainment Inc., and Time Warner concerning the *Siegel* or *Pacific Pictures* lawsuits.  As a compromise, and not conceding the relevance or discoverability of this material, DC proposes conducting a search for such documents and producing any non-privileged, responsive materials.

     Requests re: Documents Sufficient to Show When O'Melveny Was Retained (Nos. 66-69).  Pablo said the timing of O'Melveny & Myers' retention is relevant to when its counsel had access to a discovery database from prior counsel.  DC disputes the relevance of these documents, all of which are almost certainly privileged, but in any event, defendants have asserted they know when O'Melveny was retained in this case.  DN 530 at 5 ("DC terminated its prior counsel, and retained its current counsel, in **February 2010**") (emphasis in original), DN 533 (denying defendants' motion).  These requests are therefore moot.

     Request re: Private Investigator (No. 83).  These requests are not directed to any relevant subject matter—indeed, defendants have objected to similar discovery requests concerning defendants' investigative efforts on the ground that they were "not relevant to any of the claims for relief in this action."  *See, e.g.*, Toberoff's Jan. 24, 2011, Interrog. Resp., Resp. No. 3; Toberoff's Jan. 24, 2011, Resp. & Objections to DC's Reqs. for Prod., Resp. No. 19.  In the spirit of compromise, however, DC can confirm that it retained Kroll Associates, Inc. in May 2010 to work under the direction of its attorneys in connection with this litigation.  All of Kroll's very limited work was performed at the direction of DC's attorneys for purposes of this litigation and is therefore work product or privileged.  Defendants have refused to produce any documents relating to their investigative efforts on the basis of privilege.  *E.g.*, Toberoff's Jan. 24, 2011, Resp. & Objections to DC's Reqs. for Prod., Resp. No. 19.  It is inconsistent for defendants to now insist that DC produce the same type of documents.  DC is willing to consider producing certain documents on this topic if defendants will do the same.

**Exhibit I**
**160**

O'MELVENY & MYERS LLP
December 6, 2012, Page 7

<u>Requests re: Communications with Public Relations Entities (Nos. 84-97)</u>.  These requests are not directed to any relevant subject matter, and defendants have been unable to identify a legitimate theory of relevance.  Keith said these requests "track" DC's, but we have never served such requests in this case.  Keith also claimed that DC's statements to third-party "PR" entities could be relevant to DC's damages allegations. DC disputes the relevance of these requests, but has already agreed to produce documents on the topic of damages.  *See supra*.

<u>Request re: All Communications re: Toberoff (No. 89)</u>.  Not only are such documents entirely irrelevant to this action, defendants' request is grossly overbroad—indeed, defendants have vigorously—and successfully—objected to requests by DC seeking "All" communications, *e.g.*, DN 262 at 5 (accepting defendants' narrowing proposal for "All DOCUMENTS RELATING to any COMMUNICATIONS with Ari Emanuel.").  Magistrate Zarefsky has warned defendants that "requests that seek 'all' or 'any,' especially on as elastic a term as "communications" (and there are many similar terms), when they contain little or no limiting language—as to subject and time—necessarily invite objections," DN 467 at 2.  As we have pointed out, Mr. Toberoff has had many dealings with DC and Warner Bros. totally unrelated to this litigation (*e.g.*, the Skyport, Gilligan's Island, Dukes of Hazzard, Wild Wild West, and Argo matters, to name a few), and this request would sweep in any and all communications in connection with these irrelevant matters.

DC remains willing to consider a reasonable compromise proposal, but defendants will have to substantially narrow the scope of this request and be willing to produce similar sets of documents concerning DC and its counsel.

<u>Requests re: Communications with the Siegels and Various Third Parties (Nos. 70-82)</u>.  Defendants' requests for all communications with Joanne Siegel, Laura Siegel Larson, Dennis Larson, and Michael Siegel are plainly overbroad.  Even so, DC proposes conducting a reasonable search for such communications that have not already been produced, and producing responsive documents (if any).

As to defendants' requests for all communications with third parties Josh Ryland, Don Bulson, Renner Otto, Susan Allison, Kevin Marks, Bruce Ramer, Gang Tyre, Ari Emanuel, and William Morris Endeavor, defendants have never shared their theory of relevance for such documents, or given any justification for asking DC to undertake the burden of locating all such communications.  Indeed, defendants have themselves refused to produce the very same documents, and cannot demand that DC do what they will not.  DC is willing to consider searching for and producing such documents if and when defendants do the same.

<u>Requests re: Evidence in Support of DC's Allegations (Nos. 90-125)</u>.  Request Nos. 94-96, which request evidence in support of DC's work-for-hire allegations, are moot in light of the Court's summary judgment order.  Moreover, given the breadth of these requests—*e.g.*, "All DOCUMENTS" showing that as a result of "70-plus years of character and story development by some of the most creative and talented minds in the comic-book, radio, television, and motion-picture industries—Superman has remained constantly in the public's eye and has become one of the most famous and beloved fictional characters in the world," Request No. 94—

**Exhibit I**
**161**

O'MELVENY & MYERS LLP

December 6, 2012, Page 8

it would not only be pointless, but unduly burdensome for DC to produce all responsive documents.  While the remaining requests (Nos. 90-93, 97-125) are also overbroad, DC is willing to conduct a reasonable search and produce any responsive documents that have not previously been produced (if any).

### III.  DC'S RESPONSES TO DEFENDANTS' QUESTIONS RAISED DURING MEET-AND-CONFER DISCUSSIONS

The many questions you raised about DC and Warner Bros.' prior discovery efforts are improper and misplaced.  DC has fully complied with the discovery rules, and defendants never suggested otherwise—or asked for details about our discovery processes—until after DC told defendants it would file a sanctions motion based on defendants' discovery misconduct.  Defendants' concocted challenges to DC's discovery are now moot, in any event, given that the Court denied defendants' baseless motion to vacate its summary judgment order, which recognized defendants' true motivation for filing the motion to vacate—to distract from DC's sanctions motion, DN 533 at 2 ("Not to be outdone [by DC's sanctions motion], Defendants move to Vacate….")—and rightly observed that "Defendants never requested a Rule 56(d) continuance to obtain evidence or otherwise complete discovery," *id.*, as they certainly would have if they truly believed that DC had belatedly produced relevant documents.  As defendants have argued that the record on appeal cannot be expanded to include recent discovery, we are unclear whether and why defendants continue to press for this information.

However, to avoid further burdening the parties and Court with unnecessary motion practice—and without agreeing that defendants are entitled to such information, confirming the relevance of such information, or waiving any applicable privilege—DC provides the following answers to defendants' specific questions:

Organizational Charts.  Pablo asked for organizational charts listing the various DC and Warner Bros. entities.  DC will produce—subject to defendants' agreement to maintain its confidentiality—the most recent version of Time Warner Inc.'s Corporate Structure Book.

"IT Topography."  Pablo asked whether DC and Warner Bros.' electronic files are maintained in a single database or on a computer-by-computer basis.  There is no comprehensive database for DC and Warner Bros.' electronic files.  However, DC and Warner Bros. legal and business affairs employees have access to a document management system called "E-Docs DM 5.3," on which certain agreements and other related documents are stored.  Otherwise, electronic files are generally maintained on a computer-by-computer basis.

Head of IT.  Pablo asked for the name of the person in charge of DC and Warner Bros.' IT departments.  James Halsey is the Chief Information Officer for Warner Bros., which provides MIS services to DC Comics under a shared services arrangement.

DC's Discovery Efforts.  Documents were collected and reviewed from key custodians (or, if departed, from their files) at DC and Warner Bros., including, for example:

**Exhibit I**
**162**

O'MELVENY & MYERS LLP
December 6, 2012, Page 9

- Patrick Caldon (DC Comics)

- Lillian Laserson (DC Comics)

- Paul Levitz (DC Comics)

- Ina Borck (Warner Bros.)

- David Camp (Warner Bros.)

- Steve Chalk (Warner Bros.)

- Don Chestnutt (Warner Bros.)

- Damian Coleman (Warner Bros.)

- Nina de Guzman (Warner Bros.)

- Mark Devitre (Warner Bros.)

- Amie Doft (Warner Bros.)

- Karen Fouts (Warner Bros.)

- Barbara Galbo (Warner Bros.)

- Nairi Gardiner (Warner Bros.)

- Julie Hanif (Warner Bros.)

- Reginald Harpur (Warner Bros.)

- Vince Heileson (Warner Bros.)

- Darryl Hendrix (Warner Bros.)

- David Kaplan (Warner Bros.)

- Keith Kelley (Warner Bros.)

- Brinda Kempton (Warner Bros.)

- Pam Kirsh (Warner Bros.)

- Danielle Knight (Warner Bros.)

**Exhibit I**
**163**

O'MELVENY & MYERS LLP
December 6, 2012, Page 10

- Steve Langenthal (Warner Bros.)

- Andy Lewis (Warner Bros.)

- Francis McDonnell (Warner Bros.)

- Joelle Mitchell (Warner Bros.)

- Brian Ober (Warner Bros.)

- Don Putrimas (Warner Bros.)

- Paul Roque (Warner Bros.)

- Eric Sakai (Warner Bros.)

- Larry Schneider (Warner Bros.)

- John Schulman (Warner Bros.)

- Christina Smith (Warner Bros.)

- Wayne Smith (Warner Bros.)

- Steve Southgate (Warner Bros.)

- Michael Steuerwald (Warner Bros.)

- Ron Sunderland (Warner Bros.)

- Nancy Wang (Warner Bros.)

- Teresa Wayne (Warner Bros.)

- Frank Wells (Warner Bros.)

- Keith Zajic (Warner Bros.)

As set forth above, we have offered to expand our search and review even further.

Bonesteel and Josephson Documents.  Pablo asked whether the affidavit by Damon Bonesteel filed with the Centre National de la Cinematographie in France and the letter by Donna Josephson submitted to the Canadian Audio-Visual Certification Office are the only documents of their kind, and suggested that since *Superman Returns* was released in many countries, there should be many more such documents.  To begin, this question is irrelevant,

**Exhibit I**
**164**

O'MELVENY & MYERS LLP
December 6, 2012, Page 11

since these issues have been fully ventilated in multiple sets of briefing—including, most recently, the briefing on defendants' motion to vacate the October 17, 2012, summary judgment ruling.  In any event, we can confirm that the Bonesteel and Josephson documents are the only such documents we have been able to locate.  This is not surprising, since as we explained to you during our November 27 call, these documents were prepared based on specific requirements by the French and Canadian authorities.  Nonetheless, we are willing to run additional searches for related documents and to produce any responsive, non-privileged documents we find (if any).

*        *        *

DC will serve amended responses and begin making a supplemental document production as soon as we can get your agreement on the protective order issue noted above.  We are investing a substantial amount of time and resources to these efforts, and remind you that we need to close the loop on these issues before taking any next steps, including filing any motion with the courts.  It is our hope that we can resolve these matters without needless motion practice.

All of DC's rights are reserved.

Very truly yours,

/s/ Cassandra L. Seto

Cassandra L. Seto
for O'MELVENY & MYERS LLP

OMM_US:71151416

**Exhibit I**
**165**

1    DANIEL M. PETROCELLI (S.B. #97802)
       dpetrocelli@omm.com
2    MATTHEW T. KLINE (S.B. #211640)
       mkline@omm.com
3    CASSANDRA L. SETO (S.B. #246608)
       cseto@omm.com
4    O'MELVENY & MYERS LLP
     1999 Avenue of the Stars, 7th Floor
5    Los Angeles, CA 90067-6035
     Telephone:  (310) 553-6700
6    Facsimile:  (310) 246-6779

7    PATRICK T. PERKINS (admitted *pro hac vice*)
       pperkins@ptplaw.com
8    PERKINS LAW OFFICE, P.C.
     1711 Route 9D
9    Cold Spring, NY 10516
     Telephone:  (845) 265-2820
10   Facsimile:  (845) 265-2819

11

12   Attorneys for Plaintiff DC Comics

13                  UNITED STATES DISTRICT COURT

14                CENTRAL DISTRICT OF CALIFORNIA

| 15 | DC COMICS, | Case No. CV-10-3633 ODW (RZx) |
|---|---|---|
| 16 | Plaintiff, | **DISCOVERY MATTER** |
| 17 | v. | **PLAINTIFF DC COMICS'** |
| 18 | PACIFIC PICTURES | **SECOND SET OF REQUESTS FOR PRODUCTION TO DEFENDANT MARC TOBEROFF** |
| 19 | CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, | |
| 20 | an individual, MARK WARREN PEARY, as personal representative of | **Judge:** Hon. Otis D. Wright II |
| 21 | the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, | **Magistrate:** Hon. Ralph Zarefsky |
| 22 | LAURA SIEGEL LARSON, an individual and as personal | |
| 23 | representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, | |
| 24 | inclusive, | |
| 25 | Defendants. | |

26

27

28

1         Pursuant to Federal Rule of Civil Procedure 34, plaintiff DC Comics

2 hereby requests that defendant Marc Toberoff produce for inspection and copying

3 all documents described in the following Requests for Production, in accordance

4 with the definitions and instructions contained therein, by no later than July 12,

5 2012.

6                **DEFINITIONS AND INSTRUCTIONS**

7      1.     "DOCUMENT" shall be interpreted in its broadest sense to include

8 any and all "documents" and "other tangible things" as those terms are

9 understood in Federal Rule of Civil Procedure 34, including, without limitation,

10 any "writing," "recording," or "photograph" as those terms are defined in Federal

11 Rule of Evidence 1001. This shall include, but is not limited to: e-mail, audio or

12 video recordings, correspondence, letters, phone messages, notes, memoranda,

13 facsimiles, publications, contracts, agreements, calendars, drafts of proposed

14 contracts or agreements, papers, and photographs.

15      2.     "COMMUNICATION" means all written, electronic, oral,

16 telephonic, gesture, or other transmission or exchange of information, including

17 without limitation any inquiry, request, dialogue, discussion, conversation,

18 interview, correspondence, letter, note, consultation, negotiation, agreement,

19 understanding, meeting, e-mail, and all DOCUMENTS evidencing any verbal or

20 nonverbal interaction between any individuals or entities.

21      3.     "RELATE" (or any conjugation thereof) means, without limitation,

22 to refer to or bear upon.

23      4.     "OBTAIN" (or any conjugation thereof) means, without limitation,

24 acquire, attain, capture, come by, gain, garner, get, procure, or secure.

25      5.     "PERSON" means any natural person, firm, association, corporation,

26 partnership, or other legal entity or organization separately identifiable, and any

27 department(s) or division(s) therein.

28

1   70. All COMMUNICATIONS between the SIEGEL HEIRS and Chapman

2 University, or any PERSON associated with Chapman University, including but not

3 limited to the potential COMMUNICATION referenced in the DECEMBER 12

4 EMAIL.

5   71. All DOCUMENTS RELATING to any COMMUNICATIONS

6 between the SIEGEL HEIRS and Chapman University, or any PERSON associated

7 with Chapman University, including but not limited to the potential

8 COMMUNICATION referenced in the DECEMBER 12 EMAIL.

9   72. All COMMUNICATIONS RELATING to the "long-time Christensen

10 Miller attorney" referenced in the CONFIDENTIAL CASE SUMMARY

11 RELATING to DC Comics, Warner Bros., David Michaels, the SIEGEL HEIRS,

12 the SHUSTER HEIRS, SUPERMAN, and/or SUPERBOY.

13   73. All DOCUMENTS RELATING to the "long-time Christensen Miller

14 attorney" referenced in the CONFIDENTIAL CASE SUMMARY.

15   74. The "detailed outline" of "ethical issues" referenced in the

16 DECEMBER 9 EMAIL, and any RELATED DOCUMENTS.

17   75. All DOCUMENTS identifying the dates and times during which YOU

18 met with or communicated with the USAO during or after 2010.

19   76. Complete copies of Internal Revenue Service Schedule K-1 forms for

20 defendant IP Worldwide, LLC from 2002 and 2003, including pages 1 and 2 of the

21 form.

22   77. Internal Revenue Service Schedule K-1 forms for defendant IP

23 Worldwide, LLC from 2010 to the present day.

24   78. Internal Revenue Service Schedule K-1 forms for defendant IPW, LLC

25 from 2010 to the present day.

26   79. Internal Revenue Service Form 1065 forms for defendant IP

27 Worldwide, LLC from 2002 to the present day.

28

PL.'S SECOND SET OF REQS. FOR
PRODUC. TO DEF. MARC TOBEROFF

1      80.    Internal Revenue Service Form 1065 forms for defendant IPW, LLC

2    from 2004 to the present day.

3      81.    All DOCUMENTS RELATING to any agreement between YOU and

4    Bruce Karsh RELATING to IPW, SUPERMAN, or SUPERBOY.

5      82.    All DOCUMENTS showing the start and end dates of David

6    Michael's employment by YOU.

7      83.    All DOCUMENTS RELATING to the stamp reading

8    "EJ140635574US" that appears on the OCTOBER 10 EMAIL CHAIN.

9      84.    All DOCUMENTS RELATING to the stamp reading

10   "EJ140635588US" that appears on the DECEMBER 3 LETTER.

11     85.    All DOCUMENTS RELATING to the "IP Hit List" referenced in the

12   FEBRUARY 12 AGREEMENT.

13     86.    All COMMUNICATIONS between YOU and Ari Emanuel

14   RELATING to the "IP Hit List" referenced in the FEBRUARY 12 AGREEMENT.

15

16           Dated:  June 12, 2012                    Respectfully submitted,

17                                                    O'MELVENY & MYERS LLP

18                                                    By:

19                                                       Daniel M. Petrocelli

20                                                    Attorneys for Plaintiff DC Comics

21

22

23

24

25

26

27

28

**Exhibit J**
**169**