# EXHIBIT 8

1   DANIEL M. PETROCELLI (S.B. #097802)
      dpetrocelli@omm.com
2   MATTHEW T. KLINE (S.B. #211640)
      mkline@omm.com
3   CASSANDRA L. SETO (S.B. #246608)
      cseto@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA 90067-6035
    Telephone: (310) 553-6700
6   Facsimile: (310) 246-6779

7   Attorneys for Plaintiff DC Comics

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10  DC COMICS,                          | Case No. CV 10-3633 ODW (RZx)

11          Plaintiff,                  | **PLAINTIFF DC COMICS'**
                                          **OBJECTIONS AND RESPONSES**
12       v.                              **TO DEFENDANT MARC**
                                          **TOBEROFF'S FIRST SET OF**
13  PACIFIC PICTURES                     **INTERROGATORIES**
    CORPORATION, IP WORLDWIDE,
14  LLC, IPW, LLC, MARC TOBEROFF,        Hon. Otis D. Wright II
    an individual, MARK WARREN
15  PEARY, as personal representative of   Complaint Filed: May 14, 2010
    the ESTATE OF JOSEPH SHUSTER,         Trial Date:      None Set
16  JEAN ADELE PEAVY, an individual,
    LAURA SIEGEL LARSON, an
17  individual and as personal
    representative of the ESTATE OF
18  JOANNE SIEGEL, and DOES 1-10,
    inclusive,
19
            Defendants.
20

21  PROPOUNDING PARTY:      Marc Toberoff

22  RESPONDING PARTY:       DC Comics

23
    SET NUMBER:             One (Nos. 1-25)
24

25

26

27

28

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**
78

Pursuant to Federal Rule of Civil Procedure 33, plaintiff DC Comics ("DC") hereby objects and responds to defendant Marc Toberoff's ("Toberoff") First Set of Interrogatories (the "Interrogatories").

## PRELIMINARY STATEMENT

DC's Objections and Responses to Defendant Marc Toberoff's First Set of Interrogatories ("Responses") are based on the information reasonably and currently known to DC. Given that discovery is ongoing, expert discovery has not yet begun, and defendants continue their efforts to stymie DC's discovery in this case, DC anticipates that it may be necessary to supplement these Responses as more information becomes available.

By these Responses, DC does not intend to waive, and does not waive, any objection at trial to the admission into evidence of these Responses, in whole or in part, or the information produced in connection with it. Rather, DC intends to preserve, and does preserve, all objections to the admission into evidence of these Responses, in whole or in part, and the information produced in connection with them, including, without limitation, objections based on relevance, foundation, authenticity, or privilege, as well as any and all objections based on the Federal Rules of Evidence or otherwise.

## SPECIFIC OBJECTIONS AND RESPONSES

**Interrogatory No. 1**

IDENTIFY all PERSONS who received, handled, transported, or otherwise came into contact with the TIMELINE and STOLEN DOCUMENTS at WARNER'S studio located at 4000 Warner Boulevard, Burbank, California 91522.

**Response to Interrogatory No. 1**

DC objects to this Interrogatory as it calls for information that is not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC's receipt, handling, and all persons at Warner who ever came into contact with the Timeline and Timeline documents is not remotely relevant to any claim or

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**
**79**

1    defense in dispute in this case.  The Court already granted summary judgment for

2    DC on its First and Third Claims, DN 507; its Second Claim does not concern the

3    Timeline in any way; and Warner Bros.' receipt and handling of the Timeline

4    documents bears on no material issue of disputed fact with respect to DC's Fourth

5    through Sixth Claims or defendants' defenses thereto.  Defendants request this

6    information solely to re-litigate issues DC has already prevailed on in this case and

7    the *Siegel* case, and to harass Warner Bros. personnel.

8          Defendants spent many pages of briefs and oral arguments in the related

9    *Siegel* case accusing Warner Bros. of receiving the Timeline documents months

10   earlier than Wayne Smith of Warner Bros. swore occurred and of inappropriately

11   handling the Timeline documents.  *E.g.*, Case No. CV-04-8400, DN 107 at 36-39;

12   177 at 9:2-10:11, 13:15-17:21.  DC refuted these arguments, *id.* DN 107 at 6-10;

13   108, and at a 2007 hearing in *Siegel*, Magistrate Judge Zarefsky expressly found

14   that Warner Bros.' handling of the Timeline and accompanying documents was

15   "professional[]" and "reasonable[]," *id.* DN 177 at 19:3-7.  Many months later,

16   defendants challenged Magistrate Judge Zarefsky's April 30, 2007, order.  DN 240.

17   Judge Larson rejected defendants' challenge, holding in 2008 that defendants' time

18   to object to Magistrate Judge Zarefsky's findings "has long since expired."  *Id*. DN

19   374 at 4-5.

20         Defendants have tried and failed to re-litigate these claims in this *Pacific*

21   *Pictures* case.  In a protective order motion filed in 2010, they argued that DC

22   should be barred from relying on the Timeline and related documents in this case,

23   because DC obtained them inappropriately, Wayne Smith lied about when Warner

24   Bros. received it, and Warner Bros. received the Timeline documents six months

25   earlier than he had testified.  DN 42 at 8-13, 35-39.  DC refuted these charges, *id.* at

26   40-43, defendants were forced to admit that the Timeline "was the subject of

27   extensive motion practice in the *Siegel* Action," *id.* at 1, and Magistrate Judge

28   Zarefsky denied defendants' protective order motion, stating that he was "not going

- 2 -

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**
**80**

1  to revisit [Judge Larson's] ruling" concerning the Timeline document.  DN 95 at

2  55:25-56:1.

3      Undeterred, defendants have made their false accusations about Warner

4  Bros.' receipt and handling of the Timeline to the Ninth Circuit.  It, too, declined to

5  credit such arguments.  After this Court held that defendants waived privilege in the

6  Timeline documents by disclosing them to the U.S. Attorney's Office, defendants

7  petitioned for writ of mandamus with the Ninth Circuit.  In their writ papers,

8  defendants again argued that Warner Bros. acted inappropriately in its receipt and

9  handling of the Timeline documents—and accused DC of misstating, by six

10 months, when it received the documents.  Appeal No. 11-71844, DN 1-1 at 17-18 &

11 n.1.  The Ninth Circuit rejected defendants' writ, did not credit any of defendants'

12 arguments about DC's alleged misconduct, and, instead, specifically noted the

13 "ethical and professional concerns" raised by defendant Marc Toberoff's conduct.

14 *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1124 (9th Cir. 2012).

15     Defendants now improperly wish to re-litigate when and how DC came to

16 possess the Timeline documents.  After months of meet-and-confers on the subject

17 in which they could articulate no theory of relevance to obtain this discovery, they

18 finally argued that the timing of DC's receipt of the Timeline document could be

19 relevant to defendants' statute-of-limitations arguments.  As DC informed

20 defendants, this theory of relevance makes no sense.  The reason:  under

21 defendants' statute-of-limitations arguments (which are specious, to be clear), DC's

22 state-law claims are allegedly untimely whether Warner Bros. received the

23 Timeline materials in June 2006 (as Mr. Smith testified) or six months earlier (as

24 defendants wildly assert).  Indeed, defendants told the District Court and Ninth

25 Circuit in Rule 12 and SLAPP briefs that DC's claims were many months untimely

26 even if Warner Bros. only first received the Timeline documents in June 2006.

27 *E.g.*, DN 145-1 at 24; 146-1 at 18-20; Appeal No. 11-56934, DN 8 at 47-49.

28

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

1     Defendants also say they wish to confirm the identity of the Timeline author.

2   There is a far more simple way to do this than harassing Warner Bros. employees.

3   Defendants can and should depose the person they swore under oath and without

4   equivocation, *e.g.* DN 207-9 at 433-34, was the Timeline's author:  David

5   Michaels.  Rather than do so, defendants seek needlessly to burden Warner Bros.

6   and DC with invasive interrogatories and document requests.

7     DC further objects to this Interrogatory on the grounds that it is indefinite as

8   to time and not reasonably limited in scope.  For example, the Interrogatory seeks

9   the identification of "all PERSONS" who "received, handled, transported, or

10  otherwise came into contact with the TIMELINE and STOLEN DOCUMENTS" at

11  any time.  This would include all in-house and outside counsel who have worked on

12  this case or the *Siegel* case since June 2006, and anyone at DC or Warner Bros. who

13  reviewed DC's complaint in this case at any time (the Timeline is attached as

14  Exhibit A to DC's complaint ).  This open-ended Interrogatory covers six years and

15  conduct that has no bearing on any issue in the case—even defendants' spurious

16  statute-of-limitations arguments and arguments about the Timeline author's

17  identity.  Indeed, Magistrate Judge Zarefsky has warned defendants that "requests

18  that seek 'all' or 'any,' especially on as elastic a term as "communications" (and

19  there are many similar terms), when they contain little or no limiting language—as

20  to subject and time—necessarily invite objections."  DN 467 at 2.

21    DC further objects to this Interrogatory on the ground that it is compound.

22  This Interrogatory constitutes four separate interrogatories, requesting that DC

23  "IDENTIFY all PERSONS" who (1) "received," (2) "handled," (3) "transported,"

24  and/or (4) "otherwise came into contact with" the Timeline documents.  This issue

25  is replete throughout defendant's interrogatories.  What defendant has done through

26  its First Set of Interrogatories is to ask DC over 80 separate interrogatories,

27  exceeding the permitted number of 25 total interrogatories under Federal Rule of

28  Civil Procedure 33(a)(1).

- 4 -

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**

**82**

1    Subject to and without waiving all foregoing objections, DC directs

2 defendants to Mr. Smith's March 26, 2007, declaration in *Siegel*. Mr. Smith's

3 March 26, 2007, declaration states who received the Timeline documents at Warner

4 Bros. and what they did upon receipt:

5    During the afternoon of June 28, 2006, I received a telephone
6    call from John A. Schulman, General Counsel of Warner Bros., who
     asked that I come to his office. Upon arriving at his office,
7    Mr. Schulman advised me that a set of documents (the "Superman
     Documents") addressed to him and apparently relating to the Siegel
8    litigation had arrived from an anonymous source at his office that day.
9    Mr. Schulman informed me that the cover letter contained with the
     documents indicated that other executives at Warner Bros. [Alan Horn,
10   Jeff Robinov, and Patti Connolly] may have received the same set of
     documents, and that he had called the offices of those executives [Alan
11   Horn, Jeff Robinov, and Patti Connolly] to see if they had received
     anything. He further advised me that he had asked those executives to
12   send the documents to his office without reviewing them, and that one
13   set of documents had already been delivered to him. Mr. Schulman
     handed me the stack (approximately an inch high) of Superman
14   Documents that he had received and asked me to wait outside his
15   office while he completed a meeting, after which we would discuss
     them. The stack did not include any envelope or packaging in which
16   the documents may have arrived. This was not unusual as it has been
17   my experience that the practice of Mr. Schulman's office staff is to
     dispose of envelopes and packaging upon opening mail.
18
19       While I was waiting, I looked at what might be characterized as
20   the "cover letter" that came with the Superman Documents. The cover
     letter, which was not signed, alleged various types of ethical
21   misconduct on the part of the Plaintiffs' counsel in connection with the
22   Siegel litigations. The cover letter also asserted ethical misconduct –
     violating the terms of a confidentiality agreement by leaking
23   settlement information to the press – in connection with another
24   litigated matter where Plaintiffs' counsel had also represented a party
     adverse to Warner Bros. The letter appeared designed to right wrongs
25   caused by Plaintiffs' counsel's misconduct. The letter also referenced
26   the documents enclosed, providing an overview of their contents and
     their connection to Plaintiffs' counsel's alleged wrongdoing. I also
27   thumbed through the Superman Documents contained with the letter,
28   but did not read any of them in detail. Meanwhile, an assistant for

- 5 -

**EXHIBIT 8**

**83**

1    another Warner Bros. executive delivered what appeared to be another
2    set of Superman Documents to Mr. Schulman's office. I did not
3    observe that any of the three sets of Superman Documents - (i) the set
     Mr. Schulman handed to me; (ii) the other set in his office; or (iii) the
4    set that was delivered while I was waiting outside his office was
5    contained in an envelope or other packaging. Case No. CV-04-8400,
     DN 108 ¶¶ 2-3.

6         DC further responds, without limitation and to the best of DC's knowledge,

7    that the "PERSONS who received, handled, transported, or otherwise came into

8    contact with" the Timeline and Timeline documents at Warner Bros.' studio may

9    include: John Schulman, Patti Connolly, Alan Horn, Wayne Smith, Leigh

10   Chapman, Ginger Tipton, Taryn Hipwell, Linda Curtin, Jacquie Stavalone, Sherry

11   Foley, Jennifer Keith, and Christopher Shin.

12   **Interrogatory No. 2**

13        IDENTIFY the PERSONS who received, handled, or otherwise came into

14   contact with the TIMELINE and STOLEN DOCUMENTS at HORN'S office.

15   **Response to Interrogatory No. 2**

16        DC objects to this Interrogatory as it calls for information that is not

17   reasonably calculated to lead to the discovery of relevant and admissible evidence.

18   DC's receipt, handling, and all persons at Warner who ever came into contact with

19   the Timeline and Timeline documents is not remotely relevant to any claim or

20   defense in dispute in this case. The Court already granted summary judgment for

21   DC on its First and Third Claims, DN 507; its Second Claim does not concern the

22   Timeline in any way; and Warner Bros.' receipt and handling of the Timeline

23   documents bears on no material issue of disputed fact with respect to DC's Fourth

24   through Sixth Claims or defendants' defenses thereto. Defendants request this

25   information solely to re-litigate issues DC has already prevailed on in this case and

26   the *Siegel* case, and to harass Warner Bros. personnel.

27

28

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

1     Defendants spent many pages of briefs and oral arguments in the related

2  *Siegel* case accusing Warner Bros. of receiving the Timeline documents months

3  earlier than Wayne Smith of Warner Bros. swore occurred and of inappropriately

4  handling the Timeline documents. *E.g.*, Case No. CV-04-8400, DN 107 at 36-39;

5  177 at 9:2-10:11, 13:15-17:21. DC refuted these arguments, *id.* DN 107 at 6-10;

6  108, and at a 2007 hearing in *Siegel*, Magistrate Judge Zarefsky expressly found

7  that Warner Bros.' handling of the Timeline and accompanying documents was

8  "professional[]" and "reasonable[]," *id.* DN 177 at 19:3-7. Many months later,

9  defendants challenged Magistrate Judge Zarefsky's April 30, 2007, order. DN 240.

10  Judge Larson rejected defendants' challenge, holding in 2008 that defendants' time

11  to object to Magistrate Judge Zarefsky's findings "has long since expired." *Id*. DN

12  374 at 4-5.

13     Defendants have tried and failed to re-litigate these claims in this *Pacific*

14  *Pictures* case. In a protective order motion filed in 2010, they argued that DC

15  should be barred from relying on the Timeline and related documents in this case,

16  because DC obtained them inappropriately, Wayne Smith lied about when Warner

17  Bros. received it, and Warner Bros. received the Timeline documents six months

18  earlier than he had testified. DN 42 at 8-13, 35-39. DC refuted these charges, *id.* at

19  40-43, defendants were forced to admit that the Timeline "was the subject of

20  extensive motion practice in the *Siegel* Action," DN 42 at 1, and Magistrate Judge

21  Zarefsky denied defendants' protective order motion, stating that he was "not going

22  to revisit [Judge Larson's] ruling" concerning the Timeline document. DN 95 at

23  55:25-56:1.

24     Undeterred, defendants have made their false accusations about Warner

25  Bros.' receipt and handling of the Timeline to the Ninth Circuit. It, too, declined to

26  credit such arguments. After this Court held that defendants waived privilege in the

27  Timeline documents by disclosing them to the U.S. Attorney's Office, defendants

28  petitioned for writ of mandamus with the Ninth Circuit. In their writ papers,

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**

**85**

1   defendants again argued that Warner Bros. acted inappropriately in its receipt and

2   handling of the Timeline documents—and accused DC of misstating, by six

3   months, when it received the documents. Appeal No. 11-71844, DN 1-1 at 17-18 &

4   n.1. The Ninth Circuit rejected defendants' writ, did not credit any of defendants'

5   arguments about DC's alleged misconduct, and, instead, specifically noted the

6   "ethical and professional concerns" raised by defendant Marc Toberoff's conduct.

7   *In re Pacific Pictures Corp.*, 679 F.3d at 1124.

8       Defendants now improperly wish to re-litigate when and how DC came to

9   possess the Timeline documents. After months of meet-and-confers on the subject

10  in which they could articulate no theory of relevance to obtain this discovery, they

11  finally argued that the timing of DC's receipt of the Timeline document could be

12  relevant to defendants' statute-of-limitations arguments. As DC informed

13  defendants, this theory of relevance makes no sense. The reason:  under

14  defendants' statute-of-limitations arguments (which are specious, to be clear), DC's

15  state-law claims are allegedly untimely whether Warner Bros. received the

16  Timeline materials in June 2006 (as Mr. Smith testified) or six months earlier (as

17  defendants wildly assert). Indeed, defendants told the District Court and Ninth

18  Circuit in Rule 12 and SLAPP briefs that DC's claims were many months untimely

19  even if Warner Bros. only first received the Timeline documents in June 2006.

20  *E.g.*, DN 145-1 at 24; 146-1 at 18-20; Appeal No. 11-56934, DN 8 at 47-49.

21      Defendants also say they wish to confirm the identity of the Timeline author.

22  There is a far more simple way to do this than harassing Warner Bros. employees.

23  Defendants can and should depose the person they swore under oath and without

24  equivocation, *e.g.* DN 207-9 at 433-34, was the Timeline's author:  David

25  Michaels. Rather than do so, defendants seek needlessly to burden Warner Bros.

26  and DC with invasive interrogatories and document requests.

27      DC further objects to this Interrogatory on the grounds that it is indefinite as

28  to time and not reasonably limited in scope. For example, the Interrogatory seeks

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**
**86**

1    the identification of "the PERSONS" who "received, handled, transported, or

2    otherwise came into contact with the TIMELINE and STOLEN DOCUMENTS at

3    HORN'S office" at any time.  This would include all support staff since June 2006

4    who have come into contact with documents relating to this case or the *Siegel* case,

5    including DC's complaint in this case.  This open-ended Interrogatory covers six

6    years and conduct that has no bearing on any issue in the case—even defendants'

7    spurious statute-of-limitations arguments and arguments about the Timeline

8    author's identity.  Indeed, Magistrate Judge Zarefsky has warned defendants that

9    "requests that seek 'all' or 'any,' especially on as elastic a term as

10   "communications" (and there are many similar terms), when they contain little or

11   no limiting language—as to subject and time—necessarily invite objections."  DN

12   467 at 2.

13       DC further objects to this Interrogatory on the ground that it is compound.

14   This Interrogatory constitutes three separate interrogatories, requesting that DC

15   "IDENTIFY the PERSONS" who (1) "received," (2) "handled," or (3) "otherwise

16   came into contact with" the Timeline documents.  This issue is replete throughout

17   defendant's interrogatories.  What defendant has done through its First Set of

18   Interrogatories is to ask DC over 80 separate interrogatories, exceeding the

19   permitted number of 25 total interrogatories under Federal Rule of Civil Procedure

20   33(a)(1).  DC further objects to this Interrogatory on the ground that it is

21   duplicative of Interrogatory No. 1.

22       Subject to and without waiving all foregoing objections, DC directs

23   defendants to Mr. Smith's March 26, 2007, declaration in *Siegel*.  Mr. Smith's

24   March 26, 2007, declaration states who received the Timeline documents at Warner

25   Bros. and what they did upon receipt:

26           During the afternoon of June 28, 2006, I received a telephone
         call from John A. Schulman, General Counsel of Warner Bros., who
27       asked that I come to his office.  Upon arriving at his office,
28       Mr. Schulman advised me that a set of documents (the "Superman

- 9 -

Documents") addressed to him and apparently relating to the Siegel litigation had arrived from an anonymous source at his office that day. Mr. Schulman informed me that the cover letter contained with the documents indicated that other executives at Warner Bros. [Alan Horn, Jeff Robinov, and Patti Connolly] may have received the same set of documents, and that he had called the offices of those executives [Alan Horn, Jeff Robinov, and Patti Connolly] to see if they had received anything.   He further advised me that he had asked those executives to send the documents to his office without reviewing them, and that one set of documents had already been delivered to him.  Mr. Schulman handed me the stack (approximately an inch high) of Superman Documents that he had received and asked me to wait outside his office while he completed a meeting, after which we would discuss them.  The stack did not include any envelope or packaging in which the documents may have arrived.  This was not unusual as it has been my experience that the practice of Mr. Schulman's office staff is to dispose of envelopes and packaging upon opening mail.

While I was waiting, I looked at what might be characterized as the "cover letter" that came with the Superman Documents. The cover letter, which was not signed, alleged various types of ethical misconduct on the part of the Plaintiffs' counsel in connection with the Siegel litigations. The cover letter also asserted ethical misconduct – violating the terms of a confidentiality agreement by leaking settlement information to the press – in connection with another litigated matter where Plaintiffs' counsel had also represented a party adverse to Warner Bros. The letter appeared designed to right wrongs caused by Plaintiffs' counsel's misconduct. The letter also referenced the documents enclosed, providing an overview of their contents and their connection to Plaintiffs' counsel's alleged wrongdoing. I also thumbed through the Superman Documents contained with the letter, but did not read any of them in detail. Meanwhile, an assistant for another Warner Bros. executive delivered what appeared to be another set of Superman Documents to Mr. Schulman's office. I did not observe that any of the three sets of Superman Documents - (i) the set Mr. Schulman handed to me; (ii) the other set in his office; or (iii) the set that was delivered while I was waiting outside his office was contained in an envelope or other packaging.  Case No. CV-04-8400, DN 108 ¶¶ 2-3.

1    DC further responds, without limitation and to the best of DC's knowledge,

2    that the "PERSONS who received, handled, or otherwise came into contact with"

3    the Timeline and Timeline documents at Mr. Horn's office may include:  Alan

4    Horn, Jacquie Stavalone, Sherry Foley, Jennifer Keith, and Christopher Shin.

5    **Interrogatory No. 3**

6        IDENTIFY the PERSONS who received, handled, or otherwise came into

7    contact with the TIMELINE and STOLEN DOCUMENTS at CONNOLLY'S

8    office.

9    **Response to Interrogatory No. 3**

10        DC objects to this Interrogatory as it calls for information that is not

11    reasonably calculated to lead to the discovery of relevant and admissible evidence.

12    DC's receipt, handling, and all persons at Warner who ever came into contact with

13    the Timeline and Timeline documents is not remotely relevant to any claim or

14    defense in dispute in this case.  The Court already granted summary judgment for

15    DC on its First and Third Claims, DN 507; its Second Claim does not concern the

16    Timeline in any way; and Warner Bros.' receipt and handling of the Timeline

17    documents bears on no material issue of disputed fact with respect to DC's Fourth

18    through Sixth Claims or defendants' defenses thereto.  Defendants request this

19    information solely to re-litigate issues DC has already prevailed on in this case and

20    the *Siegel* case, and to harass Warner Bros. personnel.

21        Defendants spent many pages of briefs and oral arguments in the related

22    *Siegel* case accusing Warner Bros. of receiving the Timeline documents months

23    earlier than Wayne Smith of Warner Bros. swore occurred and of inappropriately

24    handling the Timeline documents.  *E.g.*, Case No. CV-04-8400, DN 107 at 36-39;

25    177 at 9:2-10:11, 13:15-17:21.  DC refuted these arguments, *id.* DN 107 at 6-10;

26    108, and at a 2007 hearing in *Siegel*, Magistrate Judge Zarefsky expressly found

27    that Warner Bros.' handling of the Timeline and accompanying documents was

28    "professional[]" and "reasonable[]," *id.* DN 177 at 19:3-7.  Many months later,

- 11 -

**EXHIBIT 8**

**89**

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

1    defendants challenged Magistrate Judge Zarefsky's April 30, 2007, order.  DN 240.

2    Judge Larson rejected defendants' challenge, holding in 2008 that defendants' time

3    to object to Magistrate Judge Zarefsky's findings "has long since expired."  *Id*. DN

4    374 at 4-5.

5         Defendants have tried and failed to re-litigate these claims in this *Pacific*

6    *Pictures* case.  In a protective order motion filed in 2010, they argued that DC

7    should be barred from relying on the Timeline and related documents in this case,

8    because DC obtained them inappropriately, Wayne Smith lied about when Warner

9    Bros. received it, and Warner Bros. received the Timeline documents six months

10   earlier than he had testified.  DN 42 at 8-13, 35-39.  DC refuted these charges, *id*. at

11   40-43, defendants were forced to admit that the Timeline "was the subject of

12   extensive motion practice in the *Siegel* Action," DN 42 at 1, and Magistrate Judge

13   Zarefsky denied defendants' protective order motion, stating that he was "not going

14   to revisit [Judge Larson's] ruling" concerning the Timeline document.  DN 95 at

15   55:25-56:1.

16        Undeterred, defendants have made their false accusations about Warner

17   Bros.' receipt and handling of the Timeline to the Ninth Circuit.  It, too, declined to

18   credit such arguments.  After this Court held that defendants waived privilege in the

19   Timeline documents by disclosing them to the U.S. Attorney's Office, defendants

20   petitioned for writ of mandamus with the Ninth Circuit.  In their writ papers,

21   defendants again argued that Warner Bros. acted inappropriately in its receipt and

22   handling of the Timeline documents—and accused DC of misstating, by six

23   months, when it received the documents.  Appeal No. 11-71844, DN 1-1 at 17-18 &

24   n.1.  The Ninth Circuit rejected defendants' writ, did not credit any of defendants'

25   arguments about DC's alleged misconduct, and, instead, specifically noted the

26   "ethical and professional concerns" raised by defendant Marc Toberoff's conduct.

27   *In re Pacific Pictures Corp.*, 679 F.3d at 1124.

28

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

1    Defendants now improperly wish to re-litigate when and how DC came to

2  possess the Timeline documents.  After months of meet-and-confers on the subject

3  in which they could articulate no theory of relevance to obtain this discovery, they

4  finally argued that the timing of DC's receipt of the Timeline document could be

5  relevant to defendants' statute-of-limitations arguments.  As DC informed

6  defendants, this theory of relevance makes no sense.  The reason:  under

7  defendants' statute-of-limitations arguments (which are specious, to be clear), DC's

8  state-law claims are allegedly untimely whether Warner Bros. received the

9  Timeline materials in June 2006 (as Mr. Smith testified) or six months earlier (as

10  defendants wildly assert).  Indeed, defendants told the District Court and Ninth

11  Circuit in Rule 12 and SLAPP briefs that DC's claims were many months untimely

12  even if Warner Bros. only first received the Timeline documents in June 2006.

13  *E.g.*, DN 145-1 at 24; 146-1 at 18-20; Appeal No. 11-56934, DN 8 at 47-49.

14    Defendants also say they wish to confirm the identity of the Timeline author.

15  There is a far more simple way to do this than harassing Warner Bros. employees.

16  Defendants can and should depose the person they swore under oath and without

17  equivocation, *e.g.* DN 207-9 at 433-34, was the Timeline's author:  David

18  Michaels.  Rather than do so, defendants seek needlessly to burden Warner Bros.

19  and DC with invasive interrogatories and document requests.

20    DC further objects to this Interrogatory on the grounds that it is indefinite as

21  to time and not reasonably limited in scope.  For example, the Interrogatory seeks

22  the identification of "the PERSONS" who "received, handled, transported, or

23  otherwise came into contact with the TIMELINE and STOLEN DOCUMENTS at

24  CONNOLLY'S office" at any time.  This would include all support staff since June

25  2006 who have come into contact with documents relating to this case or the *Siegel*

26  case, including DC's complaint in this case.  This open-ended Interrogatory covers

27  six years and conduct that has no bearing on any issue in the case—even

28  defendants' spurious statute-of-limitations arguments and arguments about the

- 13 -

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**
**91**

1   Timeline author's identity.  Indeed, Magistrate Judge Zarefsky has warned

2   defendants that "requests that seek 'all' or 'any,' especially on as elastic a term as

3   "communications" (and there are many similar terms), when they contain little or

4   no limiting language—as to subject and time—necessarily invite objections."  DN

5   467 at 2.

6       DC further objects to this Interrogatory on the ground that it is compound.

7   This Interrogatory constitutes three separate interrogatories, requesting that DC

8   "IDENTIFY the PERSONS" who (1) "received," (2) "handled," or (3) "otherwise

9   came into contact with" the Timeline documents.  This issue is replete throughout

10  defendant's interrogatories.  What defendant has done through its First Set of

11  Interrogatories is to ask DC over 80 separate interrogatories, exceeding the

12  permitted number of 25 total interrogatories under Federal Rule of Civil Procedure

13  33(a)(1).  DC further objects to this Interrogatory on the ground that it is

14  duplicative of Interrogatory No. 1.

15      Subject to and without waiving all foregoing objections, DC directs

16  defendants to Mr. Smith's March 26, 2007, declaration in *Siegel*.  Mr. Smith's

17  March 26, 2007, declaration states who received the Timeline documents at Warner

18  Bros. and what they did upon receipt:

19          During the afternoon of June 28, 2006, I received a telephone
        call from John A. Schulman, General Counsel of Warner Bros., who
20      asked that I come to his office.  Upon arriving at his office,
        Mr. Schulman advised me that a set of documents (the "Superman
21      Documents") addressed to him and apparently relating to the Siegel
22      litigation had arrived from an anonymous source at his office that day.
        Mr. Schulman informed me that the cover letter contained with the
23      documents indicated that other executives at Warner Bros. [Alan Horn,
24      Jeff Robinov, and Patti Connolly] may have received the same set of
        documents, and that he had called the offices of those executives [Alan
25      Horn, Jeff Robinov, and Patti Connolly] to see if they had received
26      anything.   He further advised me that he had asked those executives to
        send the documents to his office without reviewing them, and that one
27      set of documents had already been delivered to him.  Mr. Schulman
28

- 14 -

handed me the stack (approximately an inch high) of Superman Documents that he had received and asked me to wait outside his office while he completed a meeting, after which we would discuss them. The stack did not include any envelope or packaging in which the documents may have arrived. This was not unusual as it has been my experience that the practice of Mr. Schulman's office staff is to dispose of envelopes and packaging upon opening mail.

While I was waiting, I looked at what might be characterized as the "cover letter" that came with the Superman Documents. The cover letter, which was not signed, alleged various types of ethical misconduct on the part of the Plaintiffs' counsel in connection with the Siegel litigations. The cover letter also asserted ethical misconduct – violating the terms of a confidentiality agreement by leaking settlement information to the press – in connection with another litigated matter where Plaintiffs' counsel had also represented a party adverse to Warner Bros. The letter appeared designed to right wrongs caused by Plaintiffs' counsel's misconduct. The letter also referenced the documents enclosed, providing an overview of their contents and their connection to Plaintiffs' counsel's alleged wrongdoing. I also thumbed through the Superman Documents contained with the letter, but did not read any of them in detail. Meanwhile, an assistant for another Warner Bros. executive delivered what appeared to be another set of Superman Documents to Mr. Schulman's office. I did not observe that any of the three sets of Superman Documents - (i) the set Mr. Schulman handed to me; (ii) the other set in his office; or (iii) the set that was delivered while I was waiting outside his office was contained in an envelope or other packaging. Case No. CV-04-8400, DN 108 ¶¶ 2-3.

DC further responds, without limitation and to the best of DC's knowledge, that the "PERSONS who received, handled, or otherwise came into contact with" the Timeline and Timeline documents at Ms. Connolly's office may include: Patti Connolly and Linda Curtin.

**Interrogatory No. 4**

IDENTIFY the PERSONS who received, handled, or otherwise came into contact with the TIMELINE and STOLEN DOCUMENTS at RABINOV'S office.

**Response to Interrogatory No. 4**

DC objects to this Interrogatory as it calls for information that is not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC's receipt, handling, and all persons at Warner who ever came into contact with the Timeline and Timeline documents is not remotely relevant to any claim or defense in dispute in this case. The Court already granted summary judgment for DC on its First and Third Claims, DN 507; its Second Claim does not concern the Timeline in any way; and Warner Bros.' receipt and handling of the Timeline documents bears on no material issue of disputed fact with respect to DC's Fourth through Sixth Claims or defendants' defenses thereto. Defendants request this information solely to re-litigate issues DC has already prevailed on in this case and the *Siegel* case, and to harass Warner Bros. personnel.

Defendants spent many pages of briefs and oral arguments in the related *Siegel* case accusing Warner Bros. of receiving the Timeline documents months earlier than Wayne Smith of Warner Bros. swore occurred and of inappropriately handling the Timeline documents. *E.g.*, Case No. CV-04-8400, DN 107 at 36-39; 177 at 9:2-10:11, 13:15-17:21. DC refuted these arguments, *id.* DN 107 at 6-10; 108, and at a 2007 hearing in *Siegel*, Magistrate Judge Zarefsky expressly found that Warner Bros.' handling of the Timeline and accompanying documents was "professional[]" and "reasonable[]," *id.* DN 177 at 19:3-7. Many months later, defendants challenged Magistrate Judge Zarefsky's April 30, 2007, order. DN 240. Judge Larson rejected defendants' challenge, holding in 2008 that defendants' time to object to Magistrate Judge Zarefsky's findings "has long since expired." *Id*. DN 374 at 4-5.

Defendants have tried and failed to re-litigate these claims in this *Pacific Pictures* case. In a protective order motion filed in 2010, they argued that DC should be barred from relying on the Timeline and related documents in this case, because DC obtained them inappropriately, Wayne Smith lied about when Warner

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**
**94**

1    Bros. received it, and Warner Bros. received the Timeline documents six months

2    earlier than he had testified.  DN 42 at 8-13, 35-39.  DC refuted these charges, *id.* at

3    40-43, defendants were forced to admit that the Timeline "was the subject of

4    extensive motion practice in the *Siegel* Action," DN 42 at 1, and Magistrate Judge

5    Zarefsky denied defendants' protective order motion, stating that he was "not going

6    to revisit [Judge Larson's] ruling" concerning the Timeline document.  DN 95 at

7    55:25-56:1.

8        Undeterred, defendants have made their false accusations about Warner

9    Bros.' receipt and handling of the Timeline to the Ninth Circuit.  It, too, declined to

10   credit such arguments.  After this Court held that defendants waived privilege in the

11   Timeline documents by disclosing them to the U.S. Attorney's Office, defendants

12   petitioned for writ of mandamus with the Ninth Circuit.  In their writ papers,

13   defendants again argued that Warner Bros. acted inappropriately in its receipt and

14   handling of the Timeline documents—and accused DC of misstating, by six

15   months, when it received the documents.  Appeal No. 11-71844, DN 1-1 at 17-18 &

16   n.1.  The Ninth Circuit rejected defendants' writ, did not credit any of defendants'

17   arguments about DC's alleged misconduct, and, instead, specifically noted the

18   "ethical and professional concerns" raised by defendant Marc Toberoff's conduct.

19   *In re Pacific Pictures Corp.*, 679 F.3d at 1124.

20       Defendants now improperly wish to re-litigate when and how DC came to

21   possess the Timeline documents.  After months of meet-and-confers on the subject

22   in which they could articulate no theory of relevance to obtain this discovery, they

23   finally argued that the timing of DC's receipt of the Timeline document could be

24   relevant to defendants' statute-of-limitations arguments.  As DC informed

25   defendants, this theory of relevance makes no sense.  The reason:  under

26   defendants' statute-of-limitations arguments (which are specious, to be clear), DC's

27   state-law claims are allegedly untimely whether Warner Bros. received the

28   Timeline materials in June 2006 (as Mr. Smith testified) or six months earlier (as

- 17 -

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**

**95**

1    defendants wildly assert).  Indeed, defendants told the District Court and Ninth

2    Circuit in Rule 12 and SLAPP briefs that DC's claims were many months untimely

3    even if Warner Bros. only first received the Timeline documents in June 2006.

4    *E.g.*, DN 145-1 at 24; 146-1 at 18-20; Appeal No. 11-56934, DN 8 at 47-49.

5        Defendants also say they wish to confirm the identity of the Timeline author.

6    There is a far more simple way to do this than harassing Warner Bros. employees.

7    Defendants can and should depose the person they swore under oath and without

8    equivocation, *e.g.* DN 207-9 at 433-34, was the Timeline's author:  David

9    Michaels.  Rather than do so, defendants seek needlessly to burden Warner Bros.

10   and DC with invasive interrogatories and document requests.

11       DC further objects to this Interrogatory on the grounds that it is indefinite as

12   to time and not reasonably limited in scope.  For example, the Interrogatory seeks

13   the identification of "the PERSONS" who "received, handled, transported, or

14   otherwise came into contact with the TIMELINE and STOLEN DOCUMENTS at

15   RABINOV'S office" at any time.  This would include all support staff since June

16   2006 who have come into contact with documents relating to this case or the *Siegel*

17   case, including DC's complaint in this case.  This open-ended Interrogatory covers

18   six years and conduct that has no bearing on any issue in the case—even

19   defendants' spurious statute-of-limitations arguments and arguments about the

20   Timeline author's identity.  Indeed, Magistrate Judge Zarefsky has warned

21   defendants that "requests that seek 'all' or 'any,' especially on as elastic a term as

22   "communications" (and there are many similar terms), when they contain little or

23   no limiting language—as to subject and time—necessarily invite objections."  DN

24   467 at 2.

25       DC further objects to this Interrogatory on the ground that it is compound.

26   This Interrogatory constitutes three separate interrogatories, requesting that DC

27   "IDENTIFY the PERSONS" who (1) "received," (2) "handled," or (3) "otherwise

28   came into contact with" the Timeline documents.  This issue is replete throughout

- 18 -

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**

**96**

1    defendant's interrogatories.  What defendant has done through its First Set of

2    Interrogatories is to ask DC over 80 separate interrogatories, exceeding the

3    permitted number of 25 total interrogatories under Federal Rule of Civil Procedure

4    33(a)(1).  DC further objects to this Interrogatory on the ground that it is

5    duplicative of Interrogatory No. 1.

6        Subject to and without waiving all foregoing objections, DC directs

7    defendants to Mr. Smith's March 26, 2007, declaration in *Siegel*.  Mr. Smith's

8    March 26, 2007, declaration states who received the Timeline documents at Warner

9    Bros. and what they did upon receipt:

10       During the afternoon of June 28, 2006, I received a telephone
11       call from John A. Schulman, General Counsel of Warner Bros., who
         asked that I come to his office.  Upon arriving at his office,
12       Mr. Schulman advised me that a set of documents (the "Superman
         Documents") addressed to him and apparently relating to the Siegel
13       litigation had arrived from an anonymous source at his office that day.
14       Mr. Schulman informed me that the cover letter contained with the
         documents indicated that other executives at Warner Bros. [Alan Horn,
15       Jeff Robinov, and Patti Connolly] may have received the same set of
16       documents, and that he had called the offices of those executives [Alan
         Horn, Jeff Robinov, and Patti Connolly] to see if they had received
17       anything.   He further advised me that he had asked those executives to
18       send the documents to his office without reviewing them, and that one
         set of documents had already been delivered to him.  Mr. Schulman
19       handed me the stack (approximately an inch high) of Superman
20       Documents that he had received and asked me to wait outside his
         office while he completed a meeting, after which we would discuss
21       them.  The stack did not include any envelope or packaging in which
22       the documents may have arrived.  This was not unusual as it has been
         my experience that the practice of Mr. Schulman's office staff is to
23       dispose of envelopes and packaging upon opening mail.

24       While I was waiting, I looked at what might be characterized as
25       the "cover letter" that came with the Superman Documents. The cover
         letter, which was not signed, alleged various types of ethical
26       misconduct on the part of the Plaintiffs' counsel in connection with the
27       Siegel litigations. The cover letter also asserted ethical misconduct –
         violating the terms of a confidentiality agreement by leaking
28

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**
**97**

settlement information to the press – in connection with another litigated matter where Plaintiffs' counsel had also represented a party adverse to Warner Bros. The letter appeared designed to right wrongs caused by Plaintiffs' counsel's misconduct. The letter also referenced the documents enclosed, providing an overview of their contents and their connection to Plaintiffs' counsel's alleged wrongdoing. I also thumbed through the Superman Documents contained with the letter, but did not read any of them in detail. Meanwhile, an assistant for another Warner Bros. executive delivered what appeared to be another set of Superman Documents to Mr. Schulman's office. I did not observe that any of the three sets of Superman Documents - (i) the set Mr. Schulman handed to me; (ii) the other set in his office; or (iii) the set that was delivered while I was waiting outside his office was contained in an envelope or other packaging.  Case No. CV-04-8400, DN 108 ¶¶ 2-3.

DC further responds, without limitation and to the best of DC's knowledge, that no one "received, handled, or otherwise came into contact with" the Timeline and Timeline documents at Mr. Robinov's office—Mr. Robinov did not receive a copy of the Timeline and Timeline documents.

**Interrogatory No. 5**

IDENTIFY the PERSONS who received, handled, or otherwise came into contact with the TIMELINE and STOLEN DOCUMENTS at SCHULMAN'S office.

**Response to Interrogatory No. 5**

DC objects to this Interrogatory as it calls for information that is not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC's receipt, handling, and all persons at Warner who ever came into contact with the Timeline and Timeline documents is not remotely relevant to any claim or defense in dispute in this case.  The Court already granted summary judgment for DC on its First and Third Claims, DN 507; its Second Claim does not concern the Timeline in any way; and Warner Bros.' receipt and handling of the Timeline documents bears on no material issue of disputed fact with respect to DC's Fourth

**EXHIBIT 8**

**98**

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

1   through Sixth Claims or defendants' defenses thereto.  Defendants request this

2   information solely to re-litigate issues DC has already prevailed on in this case and

3   the *Siegel* case, and to harass Warner Bros. personnel.

4           Defendants spent many pages of briefs and oral arguments in the related

5   *Siegel* case accusing Warner Bros. of receiving the Timeline documents months

6   earlier than Wayne Smith of Warner Bros. swore occurred and of inappropriately

7   handling the Timeline documents.  *E.g.*, Case No. CV-04-8400, DN 107 at 36-39;

8   177 at 9:2-10:11, 13:15-17:21.  DC refuted these arguments, *id.* DN 107 at 6-10;

9   108, and at a 2007 hearing in *Siegel*, Magistrate Judge Zarefsky expressly found

10  that Warner Bros.' handling of the Timeline and accompanying documents was

11  "professional[]" and "reasonable[]," *id.* DN 177 at 19:3-7.  Many months later,

12  defendants challenged Magistrate Judge Zarefsky's April 30, 2007, order.  DN 240.

13  Judge Larson rejected defendants' challenge, holding in 2008 that defendants' time

14  to object to Magistrate Judge Zarefsky's findings "has long since expired."  *Id.* DN

15  374 at 4-5.

16          Defendants have tried and failed to re-litigate these claims in this *Pacific*

17  *Pictures* case.  In a protective order motion filed in 2010, they argued that DC

18  should be barred from relying on the Timeline and related documents in this case,

19  because DC obtained them inappropriately, Wayne Smith lied about when Warner

20  Bros. received it, and Warner Bros. received the Timeline documents six months

21  earlier than he had testified.  DN 42 at 8-13, 35-39.  DC refuted these charges, *id.* at

22  40-43, defendants were forced to admit that the Timeline "was the subject of

23  extensive motion practice in the *Siegel* Action," DN 42 at 1, and Magistrate Judge

24  Zarefsky denied defendants' protective order motion, stating that he was "not going

25  to revisit [Judge Larson's] ruling" concerning the Timeline document.  DN 95 at

26  55:25-56:1.

27          Undeterred, defendants have made their false accusations about Warner

28  Bros.' receipt and handling of the Timeline to the Ninth Circuit.  It, too, declined to

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**
**99**

1    credit such arguments.  After this Court held that defendants waived privilege in the

2    Timeline documents by disclosing them to the U.S. Attorney's Office, defendants

3    petitioned for writ of mandamus with the Ninth Circuit.  In their writ papers,

4    defendants again argued that Warner Bros. acted inappropriately in its receipt and

5    handling of the Timeline documents—and accused DC of misstating, by six

6    months, when it received the documents.  Appeal No. 11-71844, DN 1-1 at 17-18 &

7    n.1.  The Ninth Circuit rejected defendants' writ, did not credit any of defendants'

8    arguments about DC's alleged misconduct, and, instead, specifically noted the

9    "ethical and professional concerns" raised by defendant Marc Toberoff's conduct.

10   *In re Pacific Pictures Corp.*, 679 F.3d at 1124.

11        Defendants now improperly wish to re-litigate when and how DC came to

12   possess the Timeline documents.  After months of meet-and-confers on the subject

13   in which they could articulate no theory of relevance to obtain this discovery, they

14   finally argued that the timing of DC's receipt of the Timeline document could be

15   relevant to defendants' statute-of-limitations arguments.  As DC informed

16   defendants, this theory of relevance makes no sense.  The reason:  under

17   defendants' statute-of-limitations arguments (which are specious, to be clear), DC's

18   state-law claims are allegedly untimely whether Warner Bros. received the

19   Timeline materials in June 2006 (as Mr. Smith testified) or six months earlier (as

20   defendants wildly assert).  Indeed, defendants told the District Court and Ninth

21   Circuit in Rule 12 and SLAPP briefs that DC's claims were many months untimely

22   even if Warner Bros. only first received the Timeline documents in June 2006.

23   *E.g.*, DN 145-1 at 24; 146-1 at 18-20; Appeal No. 11-56934, DN 8 at 47-49.

24        Defendants also say they wish to confirm the identity of the Timeline author.

25   There is a far more simple way to do this than harassing Warner Bros. employees.

26   Defendants can and should depose the person they swore under oath and without

27   equivocation, *e.g.* DN 207-9 at 433-34, was the Timeline's author:  David

28

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

1    Michaels.  Rather than do so, defendants seek needlessly to burden Warner Bros.

2    and DC with invasive interrogatories and document requests.

3         DC further objects to this Interrogatory on the grounds that it is indefinite as

4    to time and not reasonably limited in scope.  For example, the Interrogatory seeks

5    the identification of "the PERSONS" who "received, handled, transported, or

6    otherwise came into contact with the TIMELINE and STOLEN DOCUMENTS at

7    SCHULMAN'S office" at any time.  This would include all support staff since June

8    2006 who have come into contact with documents relating to this case or the *Siegel*

9    case, including DC's complaint in this case.  This open-ended Interrogatory covers

10   six years and conduct that has no bearing on any issue in the case—even

11   defendants' spurious statute-of-limitations arguments and arguments about the

12   Timeline author's identity.  Indeed, Magistrate Judge Zarefsky has warned

13   defendants that "requests that seek 'all' or 'any,' especially on as elastic a term as

14   "communications" (and there are many similar terms), when they contain little or

15   no limiting language—as to subject and time—necessarily invite objections."  DN

16   467 at 2.

17        DC further objects to this Interrogatory on the ground that it is compound.

18   This Interrogatory constitutes three separate interrogatories, requesting that DC

19   "IDENTIFY the PERSONS" who (1) "received," (2) "handled," or (3) "otherwise

20   came into contact with" the Timeline documents.  This issue is replete throughout

21   defendant's interrogatories.  What defendant has done through its First Set of

22   Interrogatories is to ask DC over 80 separate interrogatories, exceeding the

23   permitted number of 25 total interrogatories under Federal Rule of Civil Procedure

24   33(a)(1).  DC further objects to this Interrogatory on the ground that it is

25   duplicative of Interrogatory No. 1.

26        Subject to and without waiving all foregoing objections, DC directs

27   defendants to Mr. Smith's March 26, 2007, declaration in *Siegel*.  Mr. Smith's

28

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**
**101**

March 26, 2007, declaration states who received the Timeline documents at Warner Bros. and what they did upon receipt:

> During the afternoon of June 28, 2006, I received a telephone call from John A. Schulman, General Counsel of Warner Bros., who asked that I come to his office. Upon arriving at his office, Mr. Schulman advised me that a set of documents (the "Superman Documents") addressed to him and apparently relating to the Siegel litigation had arrived from an anonymous source at his office that day. Mr. Schulman informed me that the cover letter contained with the documents indicated that other executives at Warner Bros. [Alan Horn, Jeff Robinov, and Patti Connolly] may have received the same set of documents, and that he had called the offices of those executives [Alan Horn, Jeff Robinov, and Patti Connolly] to see if they had received anything. He further advised me that he had asked those executives to send the documents to his office without reviewing them, and that one set of documents had already been delivered to him. Mr. Schulman handed me the stack (approximately an inch high) of Superman Documents that he had received and asked me to wait outside his office while he completed a meeting, after which we would discuss them. The stack did not include any envelope or packaging in which the documents may have arrived. This was not unusual as it has been my experience that the practice of Mr. Schulman's office staff is to dispose of envelopes and packaging upon opening mail.
>
> While I was waiting, I looked at what might be characterized as the "cover letter" that came with the Superman Documents. The cover letter, which was not signed, alleged various types of ethical misconduct on the part of the Plaintiffs' counsel in connection with the Siegel litigations. The cover letter also asserted ethical misconduct – violating the terms of a confidentiality agreement by leaking settlement information to the press – in connection with another litigated matter where Plaintiffs' counsel had also represented a party adverse to Warner Bros. The letter appeared designed to right wrongs caused by Plaintiffs' counsel's misconduct. The letter also referenced the documents enclosed, providing an overview of their contents and their connection to Plaintiffs' counsel's alleged wrongdoing. I also thumbed through the Superman Documents contained with the letter, but did not read any of them in detail. Meanwhile, an assistant for another Warner Bros. executive delivered what appeared to be another set of Superman Documents to Mr. Schulman's office. I did not observe that any of the three sets of Superman Documents - (i) the set

DC'S OBJ. & RESP. TO TOBEROFF INTERROGATORY NOS. 1-25

**EXHIBIT 8**
**102**

1   Mr. Schulman handed to me; (ii) the other set in his office; or (iii) the
2   set that was delivered while I was waiting outside his office was
    contained in an envelope or other packaging.  Case No. CV-04-8400,
3   DN 108 ¶¶ 2-3.

4       Mr. Smith's declaration further states Mr. Schulman's involvement with the
5   Timeline documents before they were handed over to the escrow agent on June 30,
6   2006:

7           I then met with Mr. Schulman. I told Mr. Schulman that based
8       on the contents of the cover letter and my brief thumbing through the
        documents, it appeared that certain of the documents in the package
9       were privileged. I said that before I looked at the documents I wanted
10      to review the case law in the area to determine what level of review, if
        any, of the Superman Documents was appropriate. Mr. Schulman
11      agreed with this approach, gave me one set of the documents, retained
        the other two sets that he had received, and advised me that he had
12      only looked at the cover letter that came with the documents and
13      would not review the documents at all. …

14
15          The next morning, June 29, 2006, I returned with the Superman
        Documents to see Mr. Schulman in his office. Mr. Schulman and I
16      discussed having a neutral third party hold the documents pending
        either the parties' agreement as to their disposition or order of the
17      Court. We decided to ask John Quinn, then with Arnold & Porter, and
18      former president of the Los Angeles County Bar Association, to act as
        the neutral based on his reputation and legal ethics experience. He
19      agreed and the following morning, June 30, 2006, the three sets of the
20      Superman Documents, including the set that I had categorized, were
        handed over to Mr. Quinn. Out of an abundance of caution we handed
21      over *all* the documents to Mr. Quinn, not just those that were clearly or
22      potentially privileged. Further, we have not shared the contents of the
        Superman Documents with any of the outside counsel representing the
23      Defendants in this action, nor have we used the contents of the
24      documents in the litigation. *Id.* ¶¶ 4, 13.

25      DC further responds, without limitation and to the best of DC's knowledge,
26   that the "PERSONS who received, handled, or otherwise came into contact with"

27

28

- 25 -

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**
**103**

1  the Timeline and Timeline documents at Mr. Schulman's office may include:  John

2  Schulman, Wayne Smith, Ginger Tipton, and Taryn Hipwell.

3  **Interrogatory No. 6**

4      IDENTIFY the PERSONS who transported the TIMELINE and STOLEN

5  DOCUMENTS from the offices of HORN, CONNOLLY and/or RABINOV to the

6  office of SCHULMAN.

7  **Response to Interrogatory No. 6**

8      DC objects to this Interrogatory as it calls for information that is not

9  reasonably calculated to lead to the discovery of relevant and admissible evidence.

10  DC's receipt, handling, and all persons at Warner who ever came into contact with

11  the Timeline and Timeline documents is not remotely relevant to any claim or

12  defense in dispute in this case.  The Court already granted summary judgment for

13  DC on its First and Third Claims, DN 507; its Second Claim does not concern the

14  Timeline in any way; and Warner Bros.' receipt and handling of the Timeline

15  documents bears on no material issue of disputed fact with respect to DC's Fourth

16  through Sixth Claims or defendants' defenses thereto.  Defendants request this

17  information solely to re-litigate issues DC has already prevailed on in this case and

18  the *Siegel* case, and to harass Warner Bros. personnel.

19      Defendants spent many pages of briefs and oral arguments in the related

20  *Siegel* case accusing Warner Bros. of receiving the Timeline documents months

21  earlier than Wayne Smith of Warner Bros. swore occurred and of inappropriately

22  handling the Timeline documents.  *E.g.*, Case No. CV-04-8400, DN 107 at 36-39;

23  177 at 9:2-10:11, 13:15-17:21.  DC refuted these arguments, *id.* DN 107 at 6-10;

24  108, and at a 2007 hearing in *Siegel*, Magistrate Judge Zarefsky expressly found

25  that Warner Bros.' handling of the Timeline and accompanying documents was

26  "professional[]" and "reasonable[]," *id.* DN 177 at 19:3-7.  Many months later,

27  defendants challenged Magistrate Judge Zarefsky's April 30, 2007, order.  DN 240.

28  Judge Larson rejected defendants' challenge, holding in 2008 that defendants' time

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**

**104**

1   to object to Magistrate Judge Zarefsky's findings "has long since expired." *Id*. DN

2   374 at 4-5.

3       Defendants have tried and failed to re-litigate these claims in this *Pacific*

4   *Pictures* case.  In a protective order motion filed in 2010, they argued that DC

5   should be barred from relying on the Timeline and related documents in this case,

6   because DC obtained them inappropriately, Wayne Smith lied about when Warner

7   Bros. received it, and Warner Bros. received the Timeline documents six months

8   earlier than he had testified.  DN 42 at 8-13, 35-39.  DC refuted these charges, *id.* at

9   40-43, defendants were forced to admit that the Timeline "was the subject of

10  extensive motion practice in the *Siegel* Action," DN 42 at 1, and Magistrate Judge

11  Zarefsky denied defendants' protective order motion, stating that he was "not going

12  to revisit [Judge Larson's] ruling" concerning the Timeline document.  DN 95 at

13  55:25-56:1.

14      Undeterred, defendants have made their false accusations about Warner

15  Bros.' receipt and handling of the Timeline to the Ninth Circuit.  It, too, declined to

16  credit such arguments.  After this Court held that defendants waived privilege in the

17  Timeline documents by disclosing them to the U.S. Attorney's Office, defendants

18  petitioned for writ of mandamus with the Ninth Circuit.  In their writ papers,

19  defendants again argued that Warner Bros. acted inappropriately in its receipt and

20  handling of the Timeline documents—and accused DC of misstating, by six

21  months, when it received the documents.  Appeal No. 11-71844, DN 1-1 at 17-18 &

22  n.1.  The Ninth Circuit rejected defendants' writ, did not credit any of defendants'

23  arguments about DC's alleged misconduct, and, instead, specifically noted the

24  "ethical and professional concerns" raised by defendant Marc Toberoff's conduct.

25  *In re Pacific Pictures Corp.*, 679 F.3d at 1124.

26      Defendants now improperly wish to re-litigate when and how DC came to

27  possess the Timeline documents.  After months of meet-and-confers on the subject

28  in which they could articulate no theory of relevance to obtain this discovery, they

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**
**105**

1   finally argued that the timing of DC's receipt of the Timeline document could be

2   relevant to defendants' statute-of-limitations arguments.  As DC informed

3   defendants, this theory of relevance makes no sense.  The reason:  under

4   defendants' statute-of-limitations arguments (which are specious, to be clear), DC's

5   state-law claims are allegedly untimely whether Warner Bros. received the

6   Timeline materials in June 2006 (as Mr. Smith testified) or six months earlier (as

7   defendants wildly assert).  Indeed, defendants told the District Court and Ninth

8   Circuit in Rule 12 and SLAPP briefs that DC's claims were many months untimely

9   even if Warner Bros. only first received the Timeline documents in June 2006.

10  *E.g.*, DN 145-1 at 24; 146-1 at 18-20; Appeal No. 11-56934, DN 8 at 47-49.

11         Defendants also say they wish to confirm the identity of the Timeline author.

12  There is a far more simple way to do this than harassing Warner Bros. employees.

13  Defendants can and should depose the person they swore under oath and without

14  equivocation, *e.g.* DN 207-9 at 433-34, was the Timeline's author:  David

15  Michaels.  Rather than do so, defendants seek needlessly to burden Warner Bros.

16  and DC with invasive interrogatories and document requests.

17         DC further objects to this Interrogatory on the ground that it is compound.

18  This Interrogatory constitutes four separate interrogatories, requesting that DC

19  "IDENTIFY the PERSONS" who transported the documents from the offices of (1)

20  "HORN," (2) "CONNOLLY", and/or (3) "RABINOV" to the office of

21  "SCHULMAN."  This issue is replete throughout defendant's interrogatories.

22  What defendant has done through its First Set of Interrogatories is to ask DC over

23  80 separate interrogatories, exceeding the permitted number of 25 total

24  interrogatories under Federal Rule of Civil Procedure 33(a)(1).  DC further objects

25  to this Interrogatory on the ground that it is duplicative of Interrogatory No. 1.

26         Subject to and without waiving all foregoing objections, DC directs

27  defendants to Mr. Smith's March 26, 2007, declaration in *Siegel*.  Mr. Smith's

28

**EXHIBIT 8**

**106**

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

March 26, 2007, declaration states who received the Timeline documents at Warner

Bros. and what they did upon receipt:

> During the afternoon of June 28, 2006, I received a telephone call from John A. Schulman, General Counsel of Warner Bros., who asked that I come to his office.  Upon arriving at his office, Mr. Schulman advised me that a set of documents (the "Superman Documents") addressed to him and apparently relating to the Siegel litigation had arrived from an anonymous source at his office that day.  Mr. Schulman informed me that the cover letter contained with the documents indicated that other executives at Warner Bros. [Alan Horn, Jeff Robinov, and Patti Connolly] may have received the same set of documents, and that he had called the offices of those executives [Alan Horn, Jeff Robinov, and Patti Connolly] to see if they had received anything.   He further advised me that he had asked those executives to send the documents to his office without reviewing them, and that one set of documents had already been delivered to him.  Mr. Schulman handed me the stack (approximately an inch high) of Superman Documents that he had received and asked me to wait outside his office while he completed a meeting, after which we would discuss them.  The stack did not include any envelope or packaging in which the documents may have arrived.  This was not unusual as it has been my experience that the practice of Mr. Schulman's office staff is to dispose of envelopes and packaging upon opening mail.

> .    While I was waiting, I looked at what might be characterized as the "cover letter" that came with the Superman Documents. The cover letter, which was not signed, alleged various types of ethical misconduct on the part of the Plaintiffs' counsel in connection with the Siegel litigations. The cover letter also asserted ethical misconduct – violating the terms of a confidentiality agreement by leaking settlement information to the press – in connection with another litigated matter where Plaintiffs' counsel had also represented a party adverse to Warner Bros. The letter appeared designed to right wrongs caused by Plaintiffs' counsel's misconduct. The letter also referenced the documents enclosed, providing an overview of their contents and their connection to Plaintiffs' counsel's alleged wrongdoing. I also thumbed through the Superman Documents contained with the letter, but did not read any of them in detail. Meanwhile, an assistant for another Warner Bros. executive delivered what appeared to be another set of Superman Documents to Mr. Schulman's office. I did not observe that any of the three sets of Superman Documents - (i) the set

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

EXHIBIT 8
107

1  Mr. Schulman handed to me; (ii) the other set in his office; or (iii) the
2  set that was delivered while I was waiting outside his office was
   contained in an envelope or other packaging.  Case No. CV-04-8400,
3  DN 108 ¶¶ 2-3.

4      DC further responds, without limitation and to the best of DC's knowledge,

5  that the "PERSONS who transported" the Timeline and Timeline documents from

6  Mr. Horn's and/or Ms. Connolly's office to Mr. Schulman's office may include:

7  Linda Curtin, Jacquie Stavalone, Sherry Foley, Jennifer Keith, and Christopher

8  Shin.  No one "transported" the Timeline and Timeline documents from Mr.

9  Robinov's office—Mr. Robinov did not receive a copy of the Timeline and

10 Timeline documents.

11 **Interrogatory No. 7**

12     IDENTIFY all PERSONS working as support staff for and/or under HORN,

13 CONNOLLY, RABINOV or SCHULMAN between November 2005 to July 2006,

14 including, but not limited to, secretaries, assistants, personal assistants,

15 administrative assistants, executive assistants, and/or gofers.

16 **Response to Interrogatory No. 7**

17     DC objects to this Interrogatory as it calls for information that is not

18 reasonably calculated to lead to the discovery of relevant and admissible evidence.

19 DC's receipt, handling, and all persons at Warner who ever came into contact with

20 the Timeline and Timeline documents is not remotely relevant to any claim or

21 defense in dispute in this case.  The Court already granted summary judgment for

22 DC on its First and Third Claims, DN 507; its Second Claim does not concern the

23 Timeline in any way; and Warner Bros.' receipt and handling of the Timeline

24 documents bears on no material issue of disputed fact with respect to DC's Fourth

25 through Sixth Claims or defendants' defenses thereto.  Defendants request this

26 information solely to re-litigate issues DC has already prevailed on in this case and

27 the *Siegel* case, and to harass Warner Bros. personnel.

28

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**
**108**

1    Defendants spent many pages of briefs and oral arguments in the related

2    *Siegel* case accusing Warner Bros. of receiving the Timeline documents months

3    earlier than Wayne Smith of Warner Bros. swore occurred and of inappropriately

4    handling the Timeline documents. *E.g.*, Case No. CV-04-8400, DN 107 at 36-39;

5    177 at 9:2-10:11, 13:15-17:21. DC refuted these arguments, *id.* DN 107 at 6-10;

6    108, and at a 2007 hearing in *Siegel*, Magistrate Judge Zarefsky expressly found

7    that Warner Bros.' handling of the Timeline and accompanying documents was

8    "professional[]" and "reasonable[]," *id.* DN 177 at 19:3-7. Many months later,

9    defendants challenged Magistrate Judge Zarefsky's April 30, 2007, order. DN 240.

10    Judge Larson rejected defendants' challenge, holding in 2008 that defendants' time

11    to object to Magistrate Judge Zarefsky's findings "has long since expired." *Id*. DN

12    374 at 4-5.

13    Defendants have tried and failed to re-litigate these claims in this *Pacific*

14    *Pictures* case. In a protective order motion filed in 2010, they argued that DC

15    should be barred from relying on the Timeline and related documents in this case,

16    because DC obtained them inappropriately, Wayne Smith lied about when Warner

17    Bros. received it, and Warner Bros. received the Timeline documents six months

18    earlier than he had testified. DN 42 at 8-13, 35-39. DC refuted these charges, *id.* at

19    40-43, defendants were forced to admit that the Timeline "was the subject of

20    extensive motion practice in the *Siegel* Action," DN 42 at 1, and Magistrate Judge

21    Zarefsky denied defendants' protective order motion, stating that he was "not going

22    to revisit [Judge Larson's] ruling" concerning the Timeline document. DN 95 at

23    55:25-56:1.

24    Undeterred, defendants have made their false accusations about Warner

25    Bros.' receipt and handling of the Timeline to the Ninth Circuit. It, too, declined to

26    credit such arguments. After this Court held that defendants waived privilege in the

27    Timeline documents by disclosing them to the U.S. Attorney's Office, defendants

28    petitioned for writ of mandamus with the Ninth Circuit. In their writ papers,

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**
**109**

1    defendants again argued that Warner Bros. acted inappropriately in its receipt and

2    handling of the Timeline documents—and accused DC of misstating, by six

3    months, when it received the documents. Appeal No. 11-71844, DN 1-1 at 17-18 &

4    n.1. The Ninth Circuit rejected defendants' writ, did not credit any of defendants'

5    arguments about DC's alleged misconduct, and, instead, specifically noted the

6    "ethical and professional concerns" raised by defendant Marc Toberoff's conduct.

7    *In re Pacific Pictures Corp.*, 679 F.3d at 1124.

8        Defendants now improperly wish to re-litigate when and how DC came to

9    possess the Timeline documents. After months of meet-and-confers on the subject

10   in which they could articulate no theory of relevance to obtain this discovery, they

11   finally argued that the timing of DC's receipt of the Timeline document could be

12   relevant to defendants' statute-of-limitations arguments. As DC informed

13   defendants, this theory of relevance makes no sense. The reason: under

14   defendants' statute-of-limitations arguments (which are specious, to be clear), DC's

15   state-law claims are allegedly untimely whether Warner Bros. received the

16   Timeline materials in June 2006 (as Mr. Smith testified) or six months earlier (as

17   defendants wildly assert). Indeed, defendants told the District Court and Ninth

18   Circuit in Rule 12 and SLAPP briefs that DC's claims were many months untimely

19   even if Warner Bros. only first received the Timeline documents in June 2006.

20   *E.g.*, DN 145-1 at 24; 146-1 at 18-20; Appeal No. 11-56934, DN 8 at 47-49.

21       Defendants also say they wish to confirm the identity of the Timeline author.

22   There is a far more simple way to do this than harassing Warner Bros. employees.

23   Defendants can and should depose the person they swore under oath and without

24   equivocation, *e.g.* DN 207-9 at 433-34, was the Timeline's author: David

25   Michaels. Rather than do so, defendants seek needlessly to burden Warner Bros.

26   and DC with invasive interrogatories and document requests.

27       DC further objects to this Interrogatory on the ground that it is compound.

28   This Interrogatory constitutes four separate interrogatories, requesting that DC

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**
**110**

1    "IDENTIFY all PERSONS"  working as support staff for (1) "HORN," (2)

2    "CONNOLLY", (3) "RABINOV," or "SCHULMAN."  This issue is replete

3    throughout defendant's interrogatories.  What defendant has done through its First

4    Set of Interrogatories is to ask DC over 80 separate interrogatories, exceeding the

5    permitted number of 25 total interrogatories under Federal Rule of Civil Procedure

6    33(a)(1).

7        Subject to and without waiving all foregoing objections, DC responds,

8    without limitation and to the best of DC's knowledge, that the "PERSONS working

9    as support staff for and/or under" Mr. Horn, Ms. Connolly, or Mr. Schulman

10    between November 2005 to July 2006 includes:  Ginger Tipton, Taryn Hipwell,

11    Linda Curtin, Jacquie Stavalone, Sherry Foley, Jennifer Keith, and Christopher

12    Shin.  To the extent defendants can articulate a theory of relevance for why DC

13    should identify the support staff working for Mr. Robinov, who did not receive a

14    copy of the Timeline and Timeline document, DC is willing to meet and confer

15    with defendants to discuss its response further.   DC believes it has met its

16    discovery obligations in responding to this Interrogatory.

17    **Interrogatory No. 8**

18        IDENTIFY all PERSONS employed between November 2005 to July 2006

19    in the mailroom, mail center, or other similar mail department, office, or station,

20    responsible for receiving, sorting, logging, and/or distributing packages, envelopes

21    and other documents received by mail and other forms of delivery at WARNER'S

22    studio located at 4000 Warner Boulevard, Burbank, California 91522.

23    **Response to Interrogatory No. 8**

24        DC objects to this Interrogatory as it calls for information that is not

25    reasonably calculated to lead to the discovery of relevant and admissible evidence.

26    DC's receipt, handling, and all persons at Warner who ever came into contact with

27    the Timeline and Timeline documents is not remotely relevant to any claim or

28    defense in dispute in this case.  The Court already granted summary judgment for

- 33 -

**EXHIBIT 8**
**111**

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

DC on its First and Third Claims, DN 507; its Second Claim does not concern the Timeline in any way; and Warner Bros.' receipt and handling of the Timeline documents bears on no material issue of disputed fact with respect to DC's Fourth through Sixth Claims or defendants' defenses thereto. Defendants request this information solely to re-litigate issues DC has already prevailed on in this case and the *Siegel* case, and to harass Warner Bros. personnel.

Defendants spent many pages of briefs and oral arguments in the related *Siegel* case accusing Warner Bros. of receiving the Timeline documents months earlier than Wayne Smith of Warner Bros. swore occurred and of inappropriately handling the Timeline documents. *E.g.*, Case No. CV-04-8400, DN 107 at 36-39; 177 at 9:2-10:11, 13:15-17:21. DC refuted these arguments, *id.* DN 107 at 6-10; 108, and at a 2007 hearing in *Siegel*, Magistrate Judge Zarefsky expressly found that Warner Bros.' handling of the Timeline and accompanying documents was "professional[]" and "reasonable[]," *id.* DN 177 at 19:3-7. Many months later, defendants challenged Magistrate Judge Zarefsky's April 30, 2007, order. DN 240. Judge Larson rejected defendants' challenge, holding in 2008 that defendants' time to object to Magistrate Judge Zarefsky's findings "has long since expired." *Id*. DN 374 at 4-5.

Defendants have tried and failed to re-litigate these claims in this *Pacific Pictures* case. In a protective order motion filed in 2010, they argued that DC should be barred from relying on the Timeline and related documents in this case, because DC obtained them inappropriately, Wayne Smith lied about when Warner Bros. received it, and Warner Bros. received the Timeline documents six months earlier than he had testified. DN 42 at 8-13, 35-39. DC refuted these charges, *id.* at 40-43, defendants were forced to admit that the Timeline "was the subject of extensive motion practice in the *Siegel* Action," DN 42 at 1, and Magistrate Judge Zarefsky denied defendants' protective order motion, stating that he was "not going

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

1   to revisit [Judge Larson's] ruling" concerning the Timeline document.  DN 95 at

2   55:25-56:1.

3          Undeterred, defendants have made their false accusations about Warner

4   Bros.' receipt and handling of the Timeline to the Ninth Circuit.  It, too, declined to

5   credit such arguments.  After this Court held that defendants waived privilege in the

6   Timeline documents by disclosing them to the U.S. Attorney's Office, defendants

7   petitioned for writ of mandamus with the Ninth Circuit.  In their writ papers,

8   defendants again argued that Warner Bros. acted inappropriately in its receipt and

9   handling of the Timeline documents—and accused DC of misstating, by six

10  months, when it received the documents.  Appeal No. 11-71844, DN 1-1 at 17-18 &

11  n.1.  The Ninth Circuit rejected defendants' writ, did not credit any of defendants'

12  arguments about DC's alleged misconduct, and, instead, specifically noted the

13  "ethical and professional concerns" raised by defendant Marc Toberoff's conduct.

14  *In re Pacific Pictures Corp.*, 679 F.3d at 1124.

15         Defendants now improperly wish to re-litigate when and how DC came to

16  possess the Timeline documents.  After months of meet-and-confers on the subject

17  in which they could articulate no theory of relevance to obtain this discovery, they

18  finally argued that the timing of DC's receipt of the Timeline document could be

19  relevant to defendants' statute-of-limitations arguments.  As DC informed

20  defendants, this theory of relevance makes no sense.  The reason:  under

21  defendants' statute-of-limitations arguments (which are specious, to be clear), DC's

22  state-law claims are allegedly untimely whether Warner Bros. received the

23  Timeline materials in June 2006 (as Mr. Smith testified) or six months earlier (as

24  defendants wildly assert).  Indeed, defendants told the District Court and Ninth

25  Circuit in Rule 12 and SLAPP briefs that DC's claims were many months untimely

26  even if Warner Bros. only first received the Timeline documents in June 2006.

27  *E.g.*, DN 145-1 at 24; 146-1 at 18-20; Appeal No. 11-56934, DN 8 at 47-49.

28

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

1    Defendants also say they wish to confirm the identity of the Timeline author.

2    There is a far more simple way to do this than harassing Warner Bros. employees.

3    Defendants can and should depose the person they swore under oath and without

4    equivocation, *e.g.* DN 207-9 at 433-34, was the Timeline's author:  David

5    Michaels.  Rather than do so, defendants seek needlessly to burden Warner Bros.

6    and DC with invasive interrogatories and document requests.

7    DC further objects to this Interrogatory on the ground that it is compound.

8    This Interrogatory constitutes four separate interrogatories, requesting that DC

9    "IDENTIFY all PERSONS" responsible for (1) "receiving," (2) "sorting, (3)

10    "logging," and/or (4) "distributing" packages at the Warner Bros. Studio lot.  This

11    issue is replete throughout defendant's interrogatories.  What defendant has done

12    through its First Set of Interrogatories is to ask DC over 80 separate interrogatories,

13    exceeding the permitted number of 25 total interrogatories under Federal Rule of

14    Civil Procedure 33(a)(1).

15    Subject to and without waiving all foregoing objections, DC responds,

16    without limitation and to the best of DC's knowledge, that the persons employed by

17    mail services at Warner Bros.' studio between November 2005 and July 2006

18    includes:  Jonathan Acuna, Luciana Addante, Mark S. Bazoian, Robert D. Bentley,

19    Brandon Brown, Francis L. Castro, Darryl Dick, Admassu Dimestros, Eugene

20    Fricioni, Jr., Jacob Gilbert, Diana Gonzalez, Rebeca Gonzalez, Tony Gonzalves,

21    Bingham Green, III, Mathew Gruca, Edward O. Hernandez, Jose Hernandez,

22    Gregory A. King, Marcial Landeros, Lorenzo Lozano, Manolo Monteros, Roger

23    Nilsson, Cathy Olson, Liberty Pamplona, Fredy Payes-Trujillo, Arizona Pritchard,

24    Tomas Reyes, Jason Rodriguez, Victor Rodriguez, Hendrick Talley, Jon C.

25    Trapnell, Muhammed J. Uddin, Jeffrey T. Vigue, Stephen R. Witt, Robin Yates,

26    and Patrick Zivelonghi.

27

28

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**

**114**

**Interrogatory No. 9**

DESCRIBE the procedures and protocols in effect between November 2005 to July 2006 RELATING to receiving, sorting, logging, and transmitting packages, envelopes, and other documents by mail and other forms of delivery at WARNER'S studio located at 4000 Warner Boulevard, Burbank, California 91522.

**Response to Interrogatory No. 9**

DC objects to this Interrogatory as it calls for information that is not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC's receipt, handling, and all persons at Warner who ever came into contact with the Timeline and Timeline documents is not remotely relevant to any claim or defense in dispute in this case. The Court already granted summary judgment for DC on its First and Third Claims, DN 507; its Second Claim does not concern the Timeline in any way; and Warner Bros.' receipt and handling of the Timeline documents bears on no material issue of disputed fact with respect to DC's Fourth through Sixth Claims or defendants' defenses thereto. Defendants request this information solely to re-litigate issues DC has already prevailed on in this case and the *Siegel* case, and to harass Warner Bros. personnel.

Defendants spent many pages of briefs and oral arguments in the related *Siegel* case accusing Warner Bros. of receiving the Timeline documents months earlier than Wayne Smith of Warner Bros. swore occurred and of inappropriately handling the Timeline documents. *E.g.*, Case No. CV-04-8400, DN 107 at 36-39; 177 at 9:2-10:11, 13:15-17:21. DC refuted these arguments, *id.* DN 107 at 6-10; 108, and at a 2007 hearing in *Siegel*, Magistrate Judge Zarefsky expressly found that Warner Bros.' handling of the Timeline and accompanying documents was "professional[]" and "reasonable[]," *id.* DN 177 at 19:3-7. Many months later, defendants challenged Magistrate Judge Zarefsky's April 30, 2007, order. DN 240. Judge Larson rejected defendants' challenge, holding in 2008 that defendants' time

**EXHIBIT 8**

**115**

1    to object to Magistrate Judge Zarefsky's findings "has long since expired." *Id*. DN

2    374 at 4-5.

3        Defendants have tried and failed to re-litigate these claims in this *Pacific*

4    *Pictures* case.  In a protective order motion filed in 2010, they argued that DC

5    should be barred from relying on the Timeline and related documents in this case,

6    because DC obtained them inappropriately, Wayne Smith lied about when Warner

7    Bros. received it, and Warner Bros. received the Timeline documents six months

8    earlier than he had testified.  DN 42 at 8-13, 35-39.  DC refuted these charges, *id.* at

9    40-43, defendants were forced to admit that the Timeline "was the subject of

10   extensive motion practice in the *Siegel* Action," DN 42 at 1, and Magistrate Judge

11   Zarefsky denied defendants' protective order motion, stating that he was "not going

12   to revisit [Judge Larson's] ruling" concerning the Timeline document.  DN 95 at

13   55:25-56:1.

14       Undeterred, defendants have made their false accusations about Warner

15   Bros.' receipt and handling of the Timeline to the Ninth Circuit.  It, too, declined to

16   credit such arguments.  After this Court held that defendants waived privilege in the

17   Timeline documents by disclosing them to the U.S. Attorney's Office, defendants

18   petitioned for writ of mandamus with the Ninth Circuit.  In their writ papers,

19   defendants again argued that Warner Bros. acted inappropriately in its receipt and

20   handling of the Timeline documents—and accused DC of misstating, by six

21   months, when it received the documents.  Appeal No. 11-71844, DN 1-1 at 17-18 &

22   n.1.  The Ninth Circuit rejected defendants' writ, did not credit any of defendants'

23   arguments about DC's alleged misconduct, and, instead, specifically noted the

24   "ethical and professional concerns" raised by defendant Marc Toberoff's conduct.

25   *In re Pacific Pictures Corp.*, 679 F.3d at 1124.

26       Defendants now improperly wish to re-litigate when and how DC came to

27   possess the Timeline documents.  After months of meet-and-confers on the subject

28   in which they could articulate no theory of relevance to obtain this discovery, they

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25
EXHIBIT 8
116

1   finally argued that the timing of DC's receipt of the Timeline document could be

2   relevant to defendants' statute-of-limitations arguments. As DC informed

3   defendants, this theory of relevance makes no sense. The reason: under

4   defendants' statute-of-limitations arguments (which are specious, to be clear), DC's

5   state-law claims are allegedly untimely whether Warner Bros. received the

6   Timeline materials in June 2006 (as Mr. Smith testified) or six months earlier (as

7   defendants wildly assert). Indeed, defendants told the District Court and Ninth

8   Circuit in Rule 12 and SLAPP briefs that DC's claims were many months untimely

9   even if Warner Bros. only first received the Timeline documents in June 2006.

10   *E.g.*, DN 145-1 at 24; 146-1 at 18-20; Appeal No. 11-56934, DN 8 at 47-49.

11          Defendants also say they wish to confirm the identity of the Timeline author.

12   There is a far more simple way to do this than harassing Warner Bros. employees.

13   Defendants can and should depose the person they swore under oath and without

14   equivocation, *e.g.* DN 207-9 at 433-34, was the Timeline's author: David

15   Michaels. Rather than do so, defendants seek needlessly to burden Warner Bros.

16   and DC with invasive interrogatories and document requests.

17          DC further objects to this Interrogatory on the ground that it is compound.

18   This Interrogatory constitutes four separate interrogatories, requesting that DC

19   "DESCRIBE the procedures and protocols" relating to (1) "receiving," (2) "sorting,"

20   (3) "logging," and/or (4) "distributing" packages at the Warner Bros. Studio lot.

21   This issue is replete throughout defendant's interrogatories. What defendant has

22   done through its First Set of Interrogatories is to ask DC over 80 separate

23   interrogatories, exceeding the permitted number of 25 total interrogatories under

24   Federal Rule of Civil Procedure 33(a)(1).

25          Defendant's definition of "DESCRIBE" is also objectionable. It mirrors in

26   large part language that DC employed in its own discovery requests, to which

27   defendants objected as being impermissibly overbroad. *E.g.*, DN 207-9 at 432.

28   Defendants stood by their objections and refused to withdraw them, yet use this

**EXHIBIT 8**

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

same language in this Interrogatory. *E.g.*, DN 207-13 at 498. Defendants must confirm that they acknowledge DC's use of this term is proper and that defendants will answer DC's discovery requests accordingly. Defendants cannot request that DC do more than what defendants have committed to do themselves.

Subject to and without waiving all foregoing objections, DC responds, without limitation and to the best of DC's knowledge, as follows:

### Mail Services

Mail Services is located on the first floor of B156 N at the Warner Bros. studio and is responsible for the receipt of all United States Postal Services ("USPS") inbound mail, Trade delivery, and scheduled mail runs. Mail Services is responsible for insuring Warner Bros.' policy of one mail run a day, the delivery of early morning trades, and the handling of outgoing mail to be metered and interoffice mail to be sorted.

### Handling of Trades

Trade Receipt: Trades are delivered at 6:00 a.m. daily to the Gate 9 loading dock by the distributor, then couriered over by Warner Bros. Couriers by 6:30 a.m. Upon receipt, Mail Services begins the process of sorting out the trades to the assigned routes. This continues till 8:00 a.m., when the trades are then sorted out further by Building/Department. At 8:00 a.m., the mail agents assigned to each route begin work and start "fine sorting" and "Wrapping" the trades by building/Dept. This process usually takes about half an hour.

Trade Delivery: Trade delivery time is scheduled between 8:30-10:00 a.m., with each route agent set to return back to the mailroom by 9:30 a.m. The Trade run is a "no pick up" and "no mail delivery" run. The trade run is solely intended for a fast delivery of the trades.

Main lot trade delivery routes are as follows:

- Main Exec          WBTV North
- Main Admin         WBTV Central

**EXHIBIT 8**
**118**

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

1      • 3700              WBTV South
2      • Producers         B156 N
3      • Front             B156 S
4      • Back              Village
5    Peripheral Buildings delivery of Trades is as follows:
6      • B160, B118, B154, B151 are sorted & Wrapped at B156 and
7        brought over by one of our Mail Agents for re-delivery at 9:00
8        a.m. by the Central Delivery staff at each location.
9      • B168 & Ranch facility are couriered over by Warner Bros.
10       couriers at 8:00 a.m. and re delivered at 9:00 a.m. by Central
11       Delivery staff.
12   **USPS Incoming Mail**
13   Receiving USPS:  USPS delivers directly to B156 N loading dock at the
14   Warner Bros. studio by 9:30 a.m. after having gone through Gate 9 Vehicle Truck
15   Inspection.  Upon receipt, mail agents begin with x-raying all incoming mail.  As
16   each of the trays/buckets of mail go through the x-ray machine, they are then passed
17   to other agents who are assigned to sort the mail by routes.  Mail is then fine-sorted
18   by Building/Department by mail agents assigned to each route until 10:45 a.m.  At
19   this time, mail begins to be wrapped and ready for the AM mail delivery which
20   starts at 11:15 a.m.
21   Unidentifiable mail:  Any mail pieces that the sorters are unable to identify
22   placed in a tub for further review by senior staff members.  Throughout the day, this
23   tub of mail is reviewed, identified, and sorted out to the appropriate routes.  Items
24   addressed to Theatrical Legal Department/4000 Warner Blvd. are to be delivered to
25   Building 3, Room 160 "Legal."
26   **Mail Deliveries**
27   AM Mail Deliveries:  The first mail run is set for 11:15 a.m., once the mail
28   agents have finished sorting and wrapping the mail, they will go out on delivery

- 41 -

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**
**119**

runs of their respected routes.  Mail delivery consists with the delivery of all USPS mail, Interoffice mail, as well as doing pick-ups at the designated outgoing mail bins.  The routes assigned an AM delivery schedule are as follows:

- Main Exec: B2, B3
- Main Admin: B1, B14, B90, B102, B103, B67-71, B21
- Front: B34/S15, B36, B19, B11, B3, B9, B17, B8, B15, B16, B81
- Back:  B153, B48, B38, B28, B44, B243, B245, B113, B41, B8
- WBTV North: B139, B140, B262
- WBTV Central: B137, B247
- WBTV South: B136, B225, B222, B221, B223, B228, B258, B265
- B156 Upper: 4th, 5th, & misc. South Building.
- B156 Lower: 1st, 2nd, & 3rd floors

Off lot buildings have scheduled afternoon mail runs that start at  2:30 p.m.

PM Mail Deliveries:  The second mail run of the day is set to begin at 2:30 p.m. This mail run is the same as the AM mail run with USPS and Interoffice mail being delivered, as well as a scheduled pick up from all designated pick up bins. The routes assigned for the PM delivery/pick up on the Main Lot are below.

- 3700 route: B273, B138, B133, B135, Bungalows, B157, B269, B73
- Producers: B273, B66, B76, B4, B5
- Village: Village offices, B155, B131

Outgoing Mail Picked Up During Mail Runs:  Outgoing mail picked up must be verified that a GL is attached, if there is no GL, the Mail Agent will request one from the department.

Mail Services Afternoon Duties For Offsite Locations:  The following duties are performed by Mail Services in the afternoon for the Offsite locations:

- B160 mail delivery & desk coverage:  Mail is sorted and wrapped in three parts (Floors 1-3, Floors 4-6, and Floors 7-13) and delivered to B160 at 2:30 p.m., the delivery person stays at B160 to cover the desk until 4:00 p.m. while the mail run is being completed.  Once finished the mail agent gathers up all outgoing mail and returns to B156.

- B154, B118 & 151 mail delivery:  B154 mail is sorted and wrapped at B156 and brought over with B151 unsorted/unwrapped mail at 2:30 p.m.  B151 mail is then sorted and wrapped by B154 Central Delivery and taken to B151 for delivery.  B154 mail is handed off to B154 Central Delivery for re-delivery.  B118 mail is then delivered by the B156 mail agent for re-delivery by both mail agent and B118 Central Delivery.  Once completed and outgoing mail is gathered, mail agent returns to B154 for B154/B151 outgoing mail and returns.

- B168 desk coverage:  A B156 mail agent reports to B168 at 1:15 p.m. to assist with desk coverage and assist with floors 1-3 mail delivery.  And returns back to B156 at 4:15 p.m.

Afternoon Duties:  Beginning at 1:00 p.m., outgoing mail picked up from the AM mail run is sorted, interoffice mail and regular mail is re-sorted, and outgoing USPS mail is staged for metering.  Certified mail and Express mail is metered first and the certified mail is logged in and staged for Warner Bros courier pick up at 3:30 p.m.  At 2:00 p.m., outgoing mail begins to be metered and continues as the PM Mail Run is being completed with the picked up outgoing mail sorted and staged.  Around 2:30 to 3:00 p.m., checks from Accounts Payable are brought down and metered.  Once the checks are metered they are staged in a locked cabinet for the 3:30 p.m. USPS pick up.  At 4:30 p.m., a mail agent performs the daily mail

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**
**121**

1  pick up at Gate 4 & 5 security gate mail drop box, as well as building 2/Room 108

2  mail pick up.

3  **Central Delivery, Gate 9 – Express Courier Intake**

4  Gate 9 operation is responsible for the receipt of, the processing of (*i.e.*, x-

5  raying, sorting, & scanning) and the delivery of all inbound packages delivered by

6  major express carriers (i.e. UPS, FedEx, DHL) Gate 9 is located at Trailer 237 on

7  Forest Lawn Drive, adjacent to Gate 7.  The Mail Services Department oversees the

8  Gate 9 operation.

9  **Receipt of Packages**

10  UPS, FedEx, and DHL deliver the bulk of their daily delivery at or before

11  their guaranteed time of 10:30 a.m.  On average DHL arrives around 9:00 a.m.,

12  FedEx around 9:00 a.m., and UPS around 9:45 a.m.  The packages are delivered at

13  the loading dock located on the south side of Trailer 237.

14  DHL:  The DHL shipment is pre-scanned at the DHL hub.  Due to this, DHL

15  provides Gate 9 with a printed manifest at time of delivery.  As the packages are

16  received from the DHL driver, a Gate 9 staff member verifies that all packages are

17  accounted for by having the DHL driver read off the last 4 digits of each tracking

18  number and cross-checking the daily manifest.  The Gate 9 staff member "checks

19  off" each piece accounted for.  If there is any discrepancy, the DHL driver is

20  notified and removes the tracking number in question from the DHL palm pilot.

21  FedEx:  FedEx arrives daily, around 9:00 a.m. and the packages are scanned

22  upon arrival.  Once the Gate 9 staff member verifies that each package is properly

23  scanned and placed into our possession, as well as receiving the printed manifest

24  that is printed by FedEx with the use a portable printer, the Gate 9 staff member

25  will proceed with signing the FedEx palm pilot.

26  UPS:  The UPS driver scans each package upon delivery as the packages are

27  unloaded off the truck, then placed on a platform dollie to be brought from the

28  loading dock and into the trailer.  A Gate 9 staff member oversees this procedure to

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**

**122**

ensure that all items are properly scanned, counted, and placed in Gate 9 possession and signs the UPS palm pilot.  The UPS driver proceeds into the trailer and downloads all scanned items into the UPS delivery link.  Daily UPS average is 160 pieces.

    FedEx Ground (PM Delivery):  FedEx ground normal delivery hours is by end of business day.  The FedEx driver scans each package on their palm pilot as the package is taken off of the FedEx truck and placed upon a flat dollie/cart on the loading dock.  A Gate 9 staff member oversees this procedure to ensure that all items are properly scanned, counted, and placed in Gate 9 possession.  Upon completion, the FedEx driver prints out a daily delivery manifest of the items received from a mobile printer.

    DHL International:  The DHL shipment is pre-scanned at the DHL hub.  Due to this, DHL provides us with a printed manifest at time of delivery.  As the packages are received from the DHL driver, a Gate 9 staff member verifies that all packages are accounted for by having the DHL driver read off the last 4 digits of each tracking number.  The Gate 9 staff member "checks off" each piece accounted for.  If there is any discrepancy, the DHL driver is notified and removes the tracking number in question from the DHL palm pilot

**X-raying of Packages**

    All received packages, as mentioned in the "Receipt of Packages," are then moved from the loading dock into the south side of Trailer 237.  Located on the south side of the trailer is the departmental x-ray machine.  All packages are placed into the x-ray machine by a Gate 9 staff member.  Another gate 9 staff member views the x-ray monitor for suspicious looking items.  Yet another Gate 9 staff member removes all unsuspicious packages exiting the x-ray machine and places them upon a flatbed dollie or mail hampers.  The flatbed dollies and/or mail hampers are then taken to the "main sorting room" located on the north side of trailer 237.

**EXHIBIT 8**

**123**

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**Suspicious Packages**

During the X-raying process, any suspicious packages are pulled aside and inspected by the Gate 9 lead staff member. This process includes additional viewing by the X-ray machine, requesting security to have the "bomb sniffing" dog inspect the parcel, or a complete physical inspection of the suspicious package in the clean room of trailer 237. Physical inspection may only be done by the Security Department. The Warner Bros. Security Department will be called in to determine how the package will be handled. If the package is determined not to be suspicious, then the Gate 9 staff will stamp the inspected package to inform the recipient.

**Sorting and Scanning of Received Packages**

<u>Sorting</u>: After the X-ray process is completed, all packages are transported to the north side of Trailer 237 for sorting. Gate 9 staff members begin to sort the packages onto counter tops, which are segregated into routes with the assistance of signage. The signage includes the designated building numbers that each route consists of. A total of five routes currently exist. Once all the received packages are sorted by route, each Gate 9 staff member that is assigned to a route starts to sort their assigned packages by building/department.

<u>Scanning packages into Arrival</u>: After all the sorting is completed, the Gate 9 staff members begin to scan in all packages into the Arrival program with individual "palm pilots." The staff members log into the palm pilots with their own user ID. After logging in, the staff members begin the receiving process for each package that is assigned to their route. The staff members must enter the Sender info, Recipient info, and last scan the barcode. After all of the receiving information has been entered onto the palm pilots, the device is placed into a hot sync cradle (this is a single unit cradle used for the hot sync) once the process has been completed, all the information that was placed within the palm pilot has now been uploaded into the Arrival System database. At this point, all the packages are now in the system as "Pending" and can now be tracked to determine where they

**EXHIBIT 8**

**124**

are being sent from, who they are going to, carrier who delivered them, and time they were received.

Delivery:  Once the Gate 9 staff members have completed the scanning process and finished hot syncing the palm pilots, they can begin loading the packages into their assigned electric carts for delivery.  Upon delivery of packages to recipients, Gate 9 staff must first secure a signature.  In cases were the recipient is not available, but a co-worker is, the package can still be delivered but the name of the signer must be typed into the palm pilot before securing the signature.

Hot Syncing After Deliveries And End Of Day:  During the day, between delivery rounds, Gate 9 staff members will continue to hot sync their palm pilots so that the signatures captured of the delivered packages can be uploaded into Arrival. Also at the end of day, all palm pilots are hot synced, insuring all items have been uploaded into the Arrival System.

**Arrival System**

The Arrival System is the software used for departmental package receiving and distribution.  Arrival is contained within the two computers in the sorting room. Information is processed through palm pilots (individual tracking assistance).  The palm pilots are hand held wireless devices used to house sender, recipient, and tracking information.  The information is downloaded from the palm pilot to the Arrival System via a hot sync.  A hot sync takes place after the info is entered into the device, and then the palm pilot is placed into the hot sync cradle and activated. The activation then relays the information from the palm pilots to the Arrival System database, which can then be accessed by the Arrival application from the computer.

**Interrogatory No. 10**

DESCRIBE the procedures and protocols in effect between November 2005 to July 2006 RELATING to retaining the packaging, envelopes, or other

- 47 -

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**

**125**

1  enclosures, received by mail or other forms of delivery at WARNER'S studio

2  located at 4000 Warner Boulevard, Burbank, California 91522.

3  **Response to Interrogatory No. 10**

4      DC objects to this Interrogatory as it calls for information that is not

5  reasonably calculated to lead to the discovery of relevant and admissible evidence.

6  DC's receipt, handling, and all persons at Warner who ever came into contact with

7  the Timeline and Timeline documents is not remotely relevant to any claim or

8  defense in dispute in this case.  The Court already granted summary judgment for

9  DC on its First and Third Claims, DN 507; its Second Claim does not concern the

10  Timeline in any way; and Warner Bros.' receipt and handling of the Timeline

11  documents bears on no material issue of disputed fact with respect to DC's Fourth

12  through Sixth Claims or defendants' defenses thereto.  Defendants request this

13  information solely to re-litigate issues DC has already prevailed on in this case and

14  the *Siegel* case, and to harass Warner Bros. personnel.

15      Defendants spent many pages of briefs and oral arguments in the related

16  *Siegel* case accusing Warner Bros. of receiving the Timeline documents months

17  earlier than Wayne Smith of Warner Bros. swore occurred and of inappropriately

18  handling the Timeline documents.  *E.g.*, Case No. CV-04-8400, DN 107 at 36-39;

19  177 at 9:2-10:11, 13:15-17:21.  DC refuted these arguments, *id.* DN 107 at 6-10;

20  108, and at a 2007 hearing in *Siegel*, Magistrate Judge Zarefsky expressly found

21  that Warner Bros.' handling of the Timeline and accompanying documents was

22  "professional[]" and "reasonable[]," *id.* DN 177 at 19:3-7.  Many months later,

23  defendants challenged Magistrate Judge Zarefsky's April 30, 2007, order.  DN 240.

24  Judge Larson rejected defendants' challenge, holding in 2008 that defendants' time

25  to object to Magistrate Judge Zarefsky's findings "has long since expired."  *Id*. DN

26  374 at 4-5.

27      Defendants have tried and failed to re-litigate these claims in this *Pacific*

28  *Pictures* case.  In a protective order motion filed in 2010, they argued that DC

**EXHIBIT 8**
**126**

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

1    should be barred from relying on the Timeline and related documents in this case,

2    because DC obtained them inappropriately, Wayne Smith lied about when Warner

3    Bros. received it, and Warner Bros. received the Timeline documents six months

4    earlier than he had testified. DN 42 at 8-13, 35-39. DC refuted these charges, *id.* at

5    40-43, defendants were forced to admit that the Timeline "was the subject of

6    extensive motion practice in the *Siegel* Action," DN 42 at 1, and Magistrate Judge

7    Zarefsky denied defendants' protective order motion, stating that he was "not going

8    to revisit [Judge Larson's] ruling" concerning the Timeline document. DN 95 at

9    55:25-56:1.

10           Undeterred, defendants have made their false accusations about Warner

11   Bros.' receipt and handling of the Timeline to the Ninth Circuit. It, too, declined to

12   credit such arguments. After this Court held that defendants waived privilege in the

13   Timeline documents by disclosing them to the U.S. Attorney's Office, defendants

14   petitioned for writ of mandamus with the Ninth Circuit. In their writ papers,

15   defendants again argued that Warner Bros. acted inappropriately in its receipt and

16   handling of the Timeline documents—and accused DC of misstating, by six

17   months, when it received the documents. Appeal No. 11-71844, DN 1-1 at 17-18 &

18   n.1. The Ninth Circuit rejected defendants' writ, did not credit any of defendants'

19   arguments about DC's alleged misconduct, and, instead, specifically noted the

20   "ethical and professional concerns" raised by defendant Marc Toberoff's conduct.

21   *In re Pacific Pictures Corp.*, 679 F.3d at 1124.

22           Defendants now improperly wish to re-litigate when and how DC came to

23   possess the Timeline documents. After months of meet-and-confers on the subject

24   in which they could articulate no theory of relevance to obtain this discovery, they

25   finally argued that the timing of DC's receipt of the Timeline document could be

26   relevant to defendants' statute-of-limitations arguments. As DC informed

27   defendants, this theory of relevance makes no sense. The reason: under

28   defendants' statute-of-limitations arguments (which are specious, to be clear), DC's

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**
**127**

1    state-law claims are allegedly untimely whether Warner Bros. received the

2    Timeline materials in June 2006 (as Mr. Smith testified) or six months earlier (as

3    defendants wildly assert).  Indeed, defendants told the District Court and Ninth

4    Circuit in Rule 12 and SLAPP briefs that DC's claims were many months untimely

5    even if Warner Bros. only first received the Timeline documents in June 2006.

6    *E.g.*, DN 145-1 at 24; 146-1 at 18-20; Appeal No. 11-56934, DN 8 at 47-49.

7        Defendants also say they wish to confirm the identity of the Timeline author.

8    There is a far more simple way to do this than harassing Warner Bros. employees.

9    Defendants can and should depose the person they swore under oath and without

10   equivocation, *e.g.* DN 207-9 at 433-34, was the Timeline's author:  David

11   Michaels.  Rather than do so, defendants seek needlessly to burden Warner Bros.

12   and DC with invasive interrogatories and document requests.

13       DC further objects to this Interrogatory on the ground that it exceeds the

14   permitted number of 25 total interrogatories under Federal Rule of Civil Procedure

15   33(a)(1).  What defendant has done through its First Set of Interrogatories is to ask

16   DC over 80 separate interrogatories.

17       Defendant's definition of "DESCRIBE" is also objectionable.  It mirrors in

18   large part language that DC employed in its own discovery requests, to which

19   defendants objected as being impermissibly overbroad.  *E.g.*, DN 207-9 at 432.

20   Defendants stood by their objections and refused to withdraw them, yet use this

21   same language in this Interrogatory.  *E.g.*, DN 207-13 at 498.  Defendants must

22   confirm that they acknowledge DC's use of this term is proper and that defendants

23   will answer DC's discovery requests accordingly.  Defendants cannot request that

24   DC do more than what defendants have committed to do themselves.

25       Subject to and without waiving all foregoing objections, DC responds,

26   without limitation and to the best of DC's knowledge, that there were no

27   "procedures or protocols in effect between November 2005 to July 2006

28

**EXHIBIT 8**

**128**

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

1  RELATING to retaining the packaging, envelopes, or other enclosures, received by

2  mail or other forms of delivery" at Warner Bros. studio.

3  **Interrogatory No. 11**

4  IDENTIFY all private investigators YOU have hired, employed, used, or

5  relied on in connection with this case and/or the *SIEGEL* LITIGATIONS.

6  **Response to Interrogatory No. 11**

7  DC objects to this Interrogatory as it calls for information that is not

8  reasonably calculated to lead to the discovery of relevant and admissible evidence.

9  DC's use of privative investigators in connection with this case or the *Siegel* case is

10  not remotely relevant to any claim or defense in dispute in this case.

11  DC further objects to this Interrogatory to the extent that it seeks information

12  protected by the attorney-client privilege, the attorney work product doctrine, or

13  any other applicable privilege or immunity.

14  DC further objects to this Interrogatory on the ground that it exceeds the

15  permitted number of 25 total interrogatories under Federal Rule of Civil Procedure

16  33(a)(1).  What defendant has done through its First Set of Interrogatories is to ask

17  DC over 80 separate interrogatories.

18  Defendant's definition of "DESCRIBE" is also objectionable.  It mirrors in

19  large part language that DC employed in its own discovery requests, to which

20  defendants objected as being impermissibly overbroad.  *E.g.*, DN 207-9 at 432.

21  Defendants stood by their objections and refused to withdraw them, yet use this

22  same language in this Interrogatory.  *E.g.*, DN 207-13 at 498.  Defendants must

23  confirm that they acknowledge DC's use of this term is proper and that defendants

24  will answer DC's discovery requests accordingly.  Defendants cannot request that

25  DC do more than what defendants have committed to do themselves.

26  Subject to and without waiving all foregoing objections, and as DC has

27  already advised defendants, DC "confirm[s] that is retained Kroll Associates, Inc.

28  in May 2010 to work under the direction of its attorneys in connection with this

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

litigation.  All of Kroll's very limited work was performed at the direction of DC's attorneys for purposes of this litigation and is therefore work product or privileged." Dec. 6, 2012, C. Seto Letter to K. Adams.

**Interrogatory No. 12**

DESCRIBE all efforts, whether successful or unsuccessful, YOU made to retrieve the packaging enclosing the TIMELINE and STOLEN DOCUMENTS when they arrived at WARNER'S studio located at 4000 Warner Boulevard, Burbank, California 91522.

**Response to Interrogatory No. 12**

DC objects to this Interrogatory as it calls for information that is not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC's receipt, handling, and all persons at Warner who ever came into contact with the Timeline and Timeline documents is not remotely relevant to any claim or defense in dispute in this case.  The Court already granted summary judgment for DC on its First and Third Claims, DN 507; its Second Claim does not concern the Timeline in any way; and Warner Bros.' receipt and handling of the Timeline documents bears on no material issue of disputed fact with respect to DC's Fourth through Sixth Claims or defendants' defenses thereto.  Defendants request this information solely to re-litigate issues DC has already prevailed on in this case and the *Siegel* case, and to harass Warner Bros. personnel.

Defendants spent many pages of briefs and oral arguments in the related *Siegel* case accusing Warner Bros. of receiving the Timeline documents months earlier than Wayne Smith of Warner Bros. swore occurred and of inappropriately handling the Timeline documents.  *E.g.*, Case No. CV-04-8400, DN 107 at 36-39; 177 at 9:2-10:11, 13:15-17:21.  DC refuted these arguments, *id.* DN 107 at 6-10; 108, and at a 2007 hearing in *Siegel*, Magistrate Judge Zarefsky expressly found that Warner Bros.' handling of the Timeline and accompanying documents was "professional[]" and "reasonable[]," *id.* DN 177 at 19:3-7.  Many months later,

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**
**130**

1    defendants challenged Magistrate Judge Zarefsky's April 30, 2007, order.  DN 240.

2    Judge Larson rejected defendants' challenge, holding in 2008 that defendants' time

3    to object to Magistrate Judge Zarefsky's findings "has long since expired."  *Id.* DN

4    374 at 4-5.

5         Defendants have tried and failed to re-litigate these claims in this *Pacific*

6    *Pictures* case.  In a protective order motion filed in 2010, they argued that DC

7    should be barred from relying on the Timeline and related documents in this case,

8    because DC obtained them inappropriately, Wayne Smith lied about when Warner

9    Bros. received it, and Warner Bros. received the Timeline documents six months

10   earlier than he had testified.  DN 42 at 8-13, 35-39.  DC refuted these charges, *id.* at

11   40-43, defendants were forced to admit that the Timeline "was the subject of

12   extensive motion practice in the *Siegel* Action," DN 42 at 1, and Magistrate Judge

13   Zarefsky denied defendants' protective order motion, stating that he was "not going

14   to revisit [Judge Larson's] ruling" concerning the Timeline document.  DN 95 at

15   55:25-56:1.

16        Undeterred, defendants have made their false accusations about Warner

17   Bros.' receipt and handling of the Timeline to the Ninth Circuit.  It, too, declined to

18   credit such arguments.  After this Court held that defendants waived privilege in the

19   Timeline documents by disclosing them to the U.S. Attorney's Office, defendants

20   petitioned for writ of mandamus with the Ninth Circuit.  In their writ papers,

21   defendants again argued that Warner Bros. acted inappropriately in its receipt and

22   handling of the Timeline documents—and accused DC of misstating, by six

23   months, when it received the documents.  Appeal No. 11-71844, DN 1-1 at 17-18 &

24   n.1.  The Ninth Circuit rejected defendants' writ, did not credit any of defendants'

25   arguments about DC's alleged misconduct, and, instead, specifically noted the

26   "ethical and professional concerns" raised by defendant Marc Toberoff's conduct.

27   *In re Pacific Pictures Corp.*, 679 F.3d at 1124.

28

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**
**131**

1    Defendants now improperly wish to re-litigate when and how DC came to

2    possess the Timeline documents.  After months of meet-and-confers on the subject

3    in which they could articulate no theory of relevance to obtain this discovery, they

4    finally argued that the timing of DC's receipt of the Timeline document could be

5    relevant to defendants' statute-of-limitations arguments.  As DC informed

6    defendants, this theory of relevance makes no sense.  The reason:  under

7    defendants' statute-of-limitations arguments (which are specious, to be clear), DC's

8    state-law claims are allegedly untimely whether Warner Bros. received the

9    Timeline materials in June 2006 (as Mr. Smith testified) or six months earlier (as

10   defendants wildly assert).  Indeed, defendants told the District Court and Ninth

11   Circuit in Rule 12 and SLAPP briefs that DC's claims were many months untimely

12   even if Warner Bros. only first received the Timeline documents in June 2006.

13   *E.g.*, DN 145-1 at 24; 146-1 at 18-20; Appeal No. 11-56934, DN 8 at 47-49.

14   Defendants also say they wish to confirm the identity of the Timeline author.

15   There is a far more simple way to do this than harassing Warner Bros. employees.

16   Defendants can and should depose the person they swore under oath and without

17   equivocation, *e.g.* DN 207-9 at 433-34, was the Timeline's author:  David

18   Michaels.  Rather than do so, defendants seek needlessly to burden Warner Bros.

19   and DC with invasive interrogatories and document requests.

20   DC further objects to this Interrogatory to the extent that it seeks information

21   protected by the attorney-client privilege, the attorney work product doctrine, or

22   any other applicable privilege or immunity.

23   DC further objects to this Interrogatory on the ground that it exceeds the

24   permitted number of 25 total interrogatories under Federal Rule of Civil Procedure

25   33(a)(1).  What defendant has done through its First Set of Interrogatories is to ask

26   DC over 80 separate interrogatories.

27   DC objects to the definition of "YOU" as vague and overbroad and will

28   respond to this term as limited to the relevant representatives at DC and Warner

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**

**132**

1   Bros. Entertainment Inc. Defendant's definition of "DESCRIBE" is also

2   objectionable. It mirrors in large part language that DC employed in its own

3   discovery requests, to which defendants objected as being impermissibly overbroad.

4   *E.g.*, DN 207-9 at 432. Defendants stood by their objections and refused to

5   withdraw them, yet use this same language in this Interrogatory. *E.g.*, DN 207-13

6   at 498. Defendants must confirm that they acknowledge DC's use of this term is

7   proper and that defendants will answer DC's discovery requests accordingly.

8   Defendants cannot request that DC do more than what defendants have committed

9   to do themselves.

10       Subject to and without waiving all foregoing objections, DC directs

11   defendants to Mr. Smith's March 26, 2007, declaration in *Siegel*. Mr. Smith's

12   March 26, 2007, declaration states who received the Timeline documents at Warner

13   Bros. and what they did upon receipt:

14       During the afternoon of June 28, 2006, I received a telephone
     call from John A. Schulman, General Counsel of Warner Bros., who
15   asked that I come to his office. Upon arriving at his office,
     Mr. Schulman advised me that a set of documents (the "Superman
16   Documents") addressed to him and apparently relating to the Siegel
     litigation had arrived from an anonymous source at his office that day.
17   Mr. Schulman informed me that the cover letter contained with the
     documents indicated that other executives at Warner Bros. [Alan Horn,
18   Jeff Robinov, and Patti Connolly] may have received the same set of
     documents, and that he had called the offices of those executives [Alan
19   Horn, Jeff Robinov, and Patti Connolly] to see if they had received
     anything. He further advised me that he had asked those executives to
20   send the documents to his office without reviewing them, and that one
     set of documents had already been delivered to him. Mr. Schulman
21   handed me the stack (approximately an inch high) of Superman
     Documents that he had received and asked me to wait outside his
22   office while he completed a meeting, after which we would discuss
     them. The stack did not include any envelope or packaging in which
23   the documents may have arrived. This was not unusual as it has been
     my experience that the practice of Mr. Schulman's office staff is to
24   dispose of envelopes and packaging upon opening mail.
25
26
27
28

- 55 -

While I was waiting, I looked at what might be characterized as the "cover letter" that came with the Superman Documents. The cover letter, which was not signed, alleged various types of ethical misconduct on the part of the Plaintiffs' counsel in connection with the Siegel litigations. The cover letter also asserted ethical misconduct – violating the terms of a confidentiality agreement by leaking settlement information to the press – in connection with another litigated matter where Plaintiffs' counsel had also represented a party adverse to Warner Bros. The letter appeared designed to right wrongs caused by Plaintiffs' counsel's misconduct. The letter also referenced the documents enclosed, providing an overview of their contents and their connection to Plaintiffs' counsel's alleged wrongdoing. I also thumbed through the Superman Documents contained with the letter, but did not read any of them in detail. Meanwhile, an assistant for another Warner Bros. executive delivered what appeared to be another set of Superman Documents to Mr. Schulman's office. I did not observe that any of the three sets of Superman Documents - (i) the set Mr. Schulman handed to me; (ii) the other set in his office; or (iii) the set that was delivered while I was waiting outside his office was contained in an envelope or other packaging.  Case No. CV-04-8400, DN 108 ¶¶ 2-3.

To the extent defendants believe more information is necessary and can articulate a theory of relevance for why that information should be produced, DC is willing to meet and confer with defendants to discuss its response further.  DC believes it has met its discovery obligations in responding to this Interrogatory.

**Interrogatory No. 13**

DESCRIBE all efforts, whether successful or unsuccessful, YOU made to identify, locate, investigate, research, contact, and communicate with the PERSON who stole, took, or otherwise procured the STOLEN DOCUMENTS from TOBEROFF.

**Response to Interrogatory No. 13**

DC objects to this Interrogatory as it calls for information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC's efforts to "identify, locate, investigate, research, contact, and communicate"

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

1   with the person who procured the Timeline documents from Toberoff are not

2   remotely relevant to any claims or defenses in this case. Defendants say they wish

3   to confirm the identity of the Timeline author. There is a far more simple way to do

4   this: Defendants can and should depose the person they swore under oath and

5   without equivocation, *e.g.* DN 207-9 at 433-34, was the Timeline's author: David

6   Michaels. Rather than do so, defendants seek needlessly to burden Warner Bros.

7   and DC with invasive interrogatories and document requests.

8       DC further objects to this Interrogatory to the extent that it seeks information

9   protected by the attorney-client privilege, the attorney work product doctrine, or

10  any other applicable privilege or immunity.

11      DC further objects to this Interrogatory on the ground that it is compound.

12  This Interrogatory constitutes six separate interrogatories, requesting that DC

13  "DESCRIBE all efforts" to (1) "identify," (2) "locate," (3) "investigate," (4)

14  "research," (5) "contact," and (6) "communicate" with the person who procured the

15  Timeline documents from Toberoff. This issue is replete throughout defendant's

16  interrogatories. What defendant has done through its First Set of Interrogatories is

17  to ask DC over 80 separate interrogatories, exceeding the permitted number of 25

18  total interrogatories under Federal Rule of Civil Procedure 33(a)(1).

19      DC objects to the definition of "YOU" as vague and overbroad and will

20  respond to this term as limited to the relevant representatives at DC and Warner

21  Bros. Entertainment Inc. Defendant's definition of "DESCRIBE" is also

22  objectionable. It mirrors in large part language that DC employed in its own

23  discovery requests, to which defendants objected as being impermissibly overbroad.

24  *E.g.*, DN 207-9 at 432. Defendants stood by their objections and refused to

25  withdraw them, yet use this same language in this Interrogatory. *E.g.*, DN 207-13

26  at 498. Defendants must confirm that they acknowledge DC's use of this term is

27  proper and that defendants will answer DC's discovery requests accordingly.

28

**EXHIBIT 8**

**135**

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

1  Defendants cannot request that DC do more than what defendants have committed
2  to do themselves.

3        Subject to and without waiving all foregoing objections, DC responds that
4  defendants assert David Michaels procured the Timeline documents from Toberoff.
5  Mr. Michaels denies these allegations.  At the present time, defendants cannot
6  definitively state who procured the Timeline documents from Toberoff, and DC has
7  no independent knowledge of "the PERSON who stole, took, or otherwise procured
8  the STOLEN DOCUMENTS from TOBEROFF."

9  **Interrogatory No. 14**

10       DESCRIBE all COMMUNICATIONS between YOU and the PERSON who
11  stole, took, or otherwise procured the STOLEN DOCUMENTS from TOBEROFF.

12  **Response to Interrogatory No. 14**

13       DC objects to this Interrogatory as it calls for information which is not
14  reasonably calculated to lead to the discovery of relevant and admissible evidence.
15  DC's communications with the person who procured the Timeline documents from
16  Toberoff are not remotely relevant to any claims or defenses in this case.
17  Defendants say they wish to confirm the identity of the Timeline author.  There is a
18  far more simple way to do this:  Defendants can and should depose the person they
19  swore under oath and without equivocation, *e.g.* DN 207-9 at 433-34, was the
20  Timeline's author:  David Michaels.  Rather than do so, defendants seek needlessly
21  to burden Warner Bros. and DC with invasive interrogatories and document
22  requests.

23       DC further objects to this Interrogatory on the grounds that it is indefinite as
24  to time and not reasonably limited in scope.  For example, the Interrogatory seeks
25  the description of "all COMMUNICATIONS" between DC and the "PERSON who
26  stole , took, or otherwise procedure the STOLEN DOCUMENTS from
27  TOBEROFF" at any time.  Depending on the identity of the person who procured
28  the Timeline documents from Toberoff, this could include communications over a

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

1    period of several decades relating to topics having no bearing on any issue in this

2    case.  This open-ended Interrogatory inquires about an expansive period of time not

3    relevant to any claims or defenses in this case, including defendants' statute-of-

4    limitations arguments.   Indeed, Magistrate Judge Zarefsky has warned defendants

5    that "requests that seek 'all' or 'any,' especially on as elastic a term as

6    "communications" (and there are many similar terms), when they contain little or

7    no limiting language—as to subject and time—necessarily invite objections."  DN

8    467 at 2.

9        DC further objects to this Interrogatory on the ground that it exceeds the

10    permitted number of 25 total interrogatories under Federal Rule of Civil Procedure

11    33(a)(1).  What defendant has done through its First Set of Interrogatories is to ask

12    DC over 80 separate interrogatories.

13        DC objects to the definition of "YOU" as vague and overbroad and will

14    respond to this term as limited to the relevant representatives at DC and Warner

15    Bros. Entertainment Inc.  Defendant's definition of "DESCRIBE" is also

16    objectionable.  It mirrors in large part language that DC employed in its own

17    discovery requests, to which defendants objected as being impermissibly overbroad.

18    *E.g.*, DN 207-9 at 432.  Defendants stood by their objections and refused to

19    withdraw them, yet use this same language in this Interrogatory.  *E.g.*, DN 207-13

20    at 498.  Defendants must confirm that they acknowledge DC's use of this term is

21    proper and that defendants will answer DC's discovery requests accordingly.

22    Defendants cannot request that DC do more than what defendants have committed

23    to do themselves.

24        Subject to and without waiving all foregoing objections, DC responds that

25    defendants assert David Michaels procured the Timeline documents from Toberoff.

26    Mr. Michaels denies these allegations.  At the present time, defendants cannot

27    definitively state who procured the Timeline documents from Toberoff, and DC has

28

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

1  no independent knowledge of "the PERSON who stole, took, or otherwise procured

2  the STOLEN DOCUMENTS from TOBEROFF."

3  **Interrogatory No. 15**

4      DESCRIBE all efforts, whether successful or unsuccessful, YOU made to

5  identify, locate, investigate, research, contact, and communicate with the PERSON

6  who wrote, drafted, or otherwise authored the TIMELINE.

7  **Response to Interrogatory No. 15**

8      DC objects to this Interrogatory as it calls for information which is not

9  reasonably calculated to lead to the discovery of relevant and admissible evidence.

10  DC's efforts to "identify, locate, investigate, research, contact, and communicate"

11  with the person who authored the Timeline are not remotely relevant to any claims

12  or defenses in this case.  Defendants say they wish to confirm the identity of the

13  Timeline author.  There is a far more simple way to do this:  Defendants can and

14  should depose the person they swore under oath and without equivocation, *e.g.* DN

15  207-9 at 433-34, was the Timeline's author:  David Michaels.  Rather than do so,

16  defendants seek needlessly to burden Warner Bros. and DC with invasive

17  interrogatories and document requests.

18      DC further objects to this Interrogatory to the extent that it seeks information

19  protected by the attorney-client privilege, the attorney work product doctrine, or

20  any other applicable privilege or immunity.

21      DC further objects to this Interrogatory on the ground that it is compound.

22  This Interrogatory constitutes six separate interrogatories, requesting that DC

23  "DESCRIBE all efforts" to (1) "identify," (2) "locate," (3) "investigate," (4)

24  "research," (5) "contact," and (6) "communicate" with the person who authored the

25  Timeline.  This issue is replete throughout defendant's interrogatories.  What

26  defendant has done through its First Set of Interrogatories is to ask DC over 80

27  separate interrogatories, exceeding the permitted number of 25 total interrogatories

28  under Federal Rule of Civil Procedure 33(a)(1).

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**

**138**

DC objects to the definition of "YOU" as vague and overbroad and will respond to this term as limited to the relevant representatives at DC and Warner Bros. Entertainment Inc. Defendant's definition of "DESCRIBE" is also objectionable. It mirrors in large part language that DC employed in its own discovery requests, to which defendants objected as being impermissibly overbroad. *E.g.*, DN 207-9 at 432. Defendants stood by their objections and refused to withdraw them, yet use this same language in this Interrogatory. *E.g.*, DN 207-13 at 498. Defendants must confirm that they acknowledge DC's use of this term is proper and that defendants will answer DC's discovery requests accordingly. Defendants cannot request that DC do more than what defendants have committed to do themselves.

Subject to and without waiving all foregoing objections, DC responds that defendants assert David Michaels authored the Timeline. Mr. Michaels denies these allegations. At the present time, defendants cannot definitively state who authored the Timeline, and DC has no independent knowledge of "the PERSON who wrote, drafted, or otherwise authored the TIMELINE."

**Interrogatory No. 16**

DESCRIBE all COMMUNICATIONS between YOU and the PERSON who wrote, drafted, or otherwise authored the TIMELINE.

**Response to Interrogatory No. 16**

DC objects to this Interrogatory as it calls for information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC's communications with the person who authored the Timeline are not remotely relevant to any claims or defenses in this case. Defendants say they wish to confirm the identity of the Timeline author. There is a far more simple way to do this: Defendants can and should depose the person they swore under oath and without equivocation, *e.g.* DN 207-9 at 433-34, was the Timeline's author: David

**EXHIBIT 8**

**139**

1    Michaels.  Rather than do so, defendants seek needlessly to burden Warner Bros.

2    and DC with invasive interrogatories and document requests.

3        DC further objects to this Interrogatory on the grounds that it is indefinite as

4    to time and not reasonably limited in scope.  For example, the Interrogatory seeks

5    the description of "all COMMUNICATIONS" between DC and the "PERSON who

6    wrote, drafted, or otherwise authored the TIMELINE" at any time.  Depending on

7    the identity of the person authored the Timeline, this could include communications

8    over a period of several decades relating to topics having no bearing on any issue in

9    this case.  This open-ended Interrogatory inquires about an expansive period of time

10   not relevant to any claims or defenses in this case, including defendants' statute-of-

11   limitations arguments.   Indeed, Magistrate Judge Zarefsky has warned defendants

12   that "requests that seek 'all' or 'any,' especially on as elastic a term as

13   "communications" (and there are many similar terms), when they contain little or

14   no limiting language—as to subject and time—necessarily invite objections."  DN

15   467 at 2.

16       DC further objects to this Interrogatory on the ground that it exceeds the

17   permitted number of 25 total interrogatories under Federal Rule of Civil Procedure

18   33(a)(1).  What defendant has done through its First Set of Interrogatories is to ask

19   DC over 80 separate interrogatories.

20       DC objects to the definition of "YOU" as vague and overbroad and will

21   respond to this term as limited to the relevant representatives at DC and Warner

22   Bros. Entertainment Inc.  Defendant's definition of "DESCRIBE" is also

23   objectionable.  It mirrors in large part language that DC employed in its own

24   discovery requests, to which defendants objected as being impermissibly overbroad.

25   *E.g.*, DN 207-9 at 432.  Defendants stood by their objections and refused to

26   withdraw them, yet use this same language in this Interrogatory.  *E.g.*, DN 207-13

27   at 498.  Defendants must confirm that they acknowledge DC's use of this term is

28   proper and that defendants will answer DC's discovery requests accordingly.

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**

**140**

1  Defendants cannot request that DC do more than what defendants have committed

2  to do themselves.

3      Subject to and without waiving all foregoing objections, DC responds that

4  defendants assert David Michaels authored the Timeline.  Mr. Michaels denies

5  these allegations.  At the present time, defendants cannot definitively state who

6  authored the Timeline, and DC has no independent knowledge of "the PERSON

7  who wrote, drafted, or otherwise authored the TIMELINE."

8  **Interrogatory No. 17**

9      DESCRIBE all efforts, whether successful or unsuccessful, YOU made to

10 identify, locate, investigate, research, and communicate with the PERSON who

11 caused the TIMELINE and STOLEN DOCUMENTS to be sent and/or delivered to

12 WARNER.

13 **Response to Interrogatory No. 17**

14     DC objects to this Interrogatory as it calls for information which is not

15 reasonably calculated to lead to the discovery of relevant and admissible evidence.

16 DC's efforts to "identify, locate, investigate, research, contact, and communicate"

17 with the person who caused the Timeline and Timeline documents to be delivered

18 to Warner Bros. are not remotely relevant to any claims or defenses in this case.

19 Defendants say they wish to confirm the identity of the Timeline author.  There is a

20 far more simple way to do this:  Defendants can and should depose the person they

21 swore under oath and without equivocation, *e.g.* DN 207-9 at 433-34, was the

22 Timeline's author:  David Michaels.  Rather than do so, defendants seek needlessly

23 to burden Warner Bros. and DC with invasive interrogatories and document

24 requests.

25     DC further objects to this Interrogatory to the extent that it seeks information

26 protected by the attorney-client privilege, the attorney work product doctrine, or

27 any other applicable privilege or immunity.

28

**EXHIBIT 8**

**141**

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

1    DC further objects to this Interrogatory on the ground that it is compound.

2    This Interrogatory constitutes six separate interrogatories, requesting that DC

3    "DESCRIBE all efforts" to (1) "identify," (2) "locate," (3) "investigate," (4)

4    "research," (5) "contact," and (6) "communicate" with the person who caused the

5    Timeline and Timeline documents to be delivered to Warner Bros.  This issue is

6    replete throughout defendant's interrogatories.  What defendant has done through

7    its First Set of Interrogatories is to ask DC over 80 separate interrogatories,

8    exceeding the permitted number of 25 total interrogatories under Federal Rule of

9    Civil Procedure 33(a)(1).

10    DC objects to the definition of "YOU" as vague and overbroad and will

11    respond to this term as limited to the relevant representatives at DC and Warner

12    Bros. Entertainment Inc.  Defendant's definition of "DESCRIBE" is also

13    objectionable.  It mirrors in large part language that DC employed in its own

14    discovery requests, to which defendants objected as being impermissibly overbroad.

15    *E.g.*, DN 207-9 at 432.  Defendants stood by their objections and refused to

16    withdraw them, yet use this same language in this Interrogatory.  *E.g.*, DN 207-13

17    at 498.  Defendants must confirm that they acknowledge DC's use of this term is

18    proper and that defendants will answer DC's discovery requests accordingly.

19    Defendants cannot request that DC do more than what defendants have committed

20    to do themselves.

21    Subject to and without waiving all foregoing objections, DC responds that

22    defendants assert David Michaels caused the Timeline and Timeline documents to

23    be delivered to Warner Bros.  Mr. Michaels denies these allegations.  At the present

24    time, defendants cannot definitively state who caused the Timeline documents to be

25    delivered to Warner Bros., and DC has no independent knowledge of "the PERSON

26    who caused the TIMELINE and STOLEN DOCUMENTS to be sent and/or

27    delivered to WARNER."

28

- 64 -

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**

**142**

**Interrogatory No. 18**

DESCRIBE all COMMUNICATIONS between YOU and the PERSON who caused the TIMELINE and STOLEN DOCUMENTS to be sent and/or delivered to WARNER.

**Response to Interrogatory No. 18**

DC objects to this Interrogatory as it calls for information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC's communications with the person who caused the Timeline and Timeline documents to be delivered to Warner Bros. are not remotely relevant to any claims or defenses in this case. Defendants say they wish to confirm the identity of the Timeline author. There is a far more simple way to do this: Defendants can and should depose the person they swore under oath and without equivocation, *e.g.* DN 207-9 at 433-34, was the Timeline's author: David Michaels. Rather than do so, defendants seek needlessly to burden Warner Bros. and DC with invasive interrogatories and document requests.

DC further objects to this Interrogatory on the grounds that it is indefinite as to time and not reasonably limited in scope. For example, the Interrogatory seeks the description of "all COMMUNICATIONS" between DC and the "PERSON who caused the TIMELINE and STOLEN DOCUMENTS to be sent and/or delivered to WARNER" at any time. Depending on the identity of the person authored the Timeline, this could include communications over a period of several decades relating to topics having no bearing on any issue in this case. This open-ended Interrogatory inquires about an expansive period of time not relevant to any claims or defenses in this case, including defendants' statute-of-limitations arguments. Indeed, Magistrate Judge Zarefsky has warned defendants that "requests that seek 'all' or 'any,' especially on as elastic a term as "communications" (and there are many similar terms), when they contain little or no limiting language—as to subject and time—necessarily invite objections." DN 467 at 2.

- 65 -

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**

**143**

1    DC further objects to this Interrogatory on the ground that it exceeds the

2    permitted number of 25 total interrogatories under Federal Rule of Civil Procedure

3    33(a)(1).  What defendant has done through its First Set of Interrogatories is to ask

4    DC over 80 separate interrogatories.

5    DC objects to the definition of "YOU" as vague and overbroad and will

6    respond to this term as limited to the relevant representatives at DC and Warner

7    Bros. Entertainment Inc.  Defendant's definition of "DESCRIBE" is also

8    objectionable.  It mirrors in large part language that DC employed in its own

9    discovery requests, to which defendants objected as being impermissibly overbroad.

10   *E.g.*, DN 207-9 at 432.  Defendants stood by their objections and refused to

11   withdraw them, yet use this same language in this Interrogatory.  *E.g.*, DN 207-13

12   at 498.  Defendants must confirm that they acknowledge DC's use of this term is

13   proper and that defendants will answer DC's discovery requests accordingly.

14   Defendants cannot request that DC do more than what defendants have committed

15   to do themselves.

16   Subject to and without waiving all foregoing objections, DC responds that

17   defendants assert David Michaels caused the Timeline and Timeline documents to

18   be delivered to Warner Bros.  Mr. Michaels denies these allegations.  At the present

19   time, defendants cannot definitively state who caused the Timeline and Timeline

20   documents to be delivered to Warner Bros., and DC has no independent knowledge

21   of "the PERSON who caused the TIMELINE and STOLEN DOCUMENTS to be

22   sent and/or delivered to WARNER."

23   **Interrogatory No. 19**

24   DESCRIBE all efforts, whether successful or unsuccessful, YOU made to

25   identify, locate, investigate, research, contact, and communicate with DAVID

26   MICHAELS.

27

28

- 66 -

**Response to Interrogatory No. 19**

DC objects to this Interrogatory as it calls for information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC's efforts to "identify, locate, investigate, research, contact, and communicate" with David Michaels are not remotely relevant to any claims or defenses in this case. Defendants say they wish to confirm the identity of the Timeline author. There is a far more simple way to do this: Defendants can and should depose the person they swore under oath and without equivocation, *e.g.* DN 207-9 at 433-34, was the Timeline's author: David Michaels. Rather than do so, defendants seek needlessly to burden Warner Bros. and DC with invasive interrogatories and document requests.

DC further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC further objects to this Interrogatory on the ground that it is compound. This Interrogatory constitutes six separate interrogatories, requesting that DC "DESCRIBE all efforts" to (1) "identify," (2) "locate," (3) "investigate," (4) "research," (5) "contact," and (6) "communicate" with David Michaels. This issue is replete throughout defendant's interrogatories. What defendant has done through its First Set of Interrogatories is to ask DC over 80 separate interrogatories, exceeding the permitted number of 25 total interrogatories under Federal Rule of Civil Procedure 33(a)(1).

DC objects to the definition of "YOU" as vague and overbroad and will respond to this term as limited to the relevant representatives at DC and Warner Bros. Entertainment Inc. Defendant's definition of "DESCRIBE" is also objectionable. It mirrors in large part language that DC employed in its own discovery requests, to which defendants objected as being impermissibly overbroad. *E.g.*, DN 207-9 at 432. Defendants stood by their objections and refused to

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**
**145**

withdraw them, yet use this same language in this Interrogatory. *E.g.*, DN 207-13 at 498. Defendants must confirm that they acknowledge DC's use of this term is proper and that defendants will answer DC's discovery requests accordingly. Defendants cannot request that DC do more than what defendants have committed to do themselves.

Subject to and without waiving all foregoing objections, and as DC already advised defendants, DC responds that it is willing to discuss the relevance of and to describe its communications with David Michaels if and when defendants do the same, including Toberoff's communications with David Michaels after he left Toberoff & Associates in October 2005. Dec. 6, 2012, C. Seto Letter to K. Adams. Defendants cannot demand that DC describe communications with third parties that defendants themselves continue to withhold. Nor is there any legitimate basis for defendants to assert privilege over communications with David Michaels after he left Toberoff & Associates—especially given that defendants accused him of committing crimes by stealing privileged documents, "falsely disparaging" Toberoff, and attempting to "steal" his clients, and also reported David Michaels' alleged crimes to the FBI and U.S. Attorney's Office, but now backtrack from certain of those allegations. *E.g.,* DN 42 at 8; 193-1 ¶ 15.

**Interrogatory No. 20**

DESCRIBE all COMMUNICATIONS between YOU and DAVID MICHAELS.

**Response to Interrogatory No. 20**

DC objects to this Interrogatory as it calls for information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC's communications with David Michaels are not remotely relevant to any claims or defenses in this case. Defendants say they wish to confirm the identity of the Timeline author. There is a far more simple way to do this: Defendants can and should depose the person they swore under oath and without equivocation, *e.g.* DN

- 68 -

207-9 at 433-34, was the Timeline's author: David Michaels. Rather than do so, defendants seek needlessly to burden Warner Bros. and DC with invasive interrogatories and document requests.

DC further objects to this Interrogatory on the grounds that it is indefinite as to time and not reasonably limited in scope. For example, the Interrogatory seeks the description of "all COMMUNICATIONS" between DC and David Michaels. This would include all communications with David Michaels at any time and relating to any subject, including matters not relevant to this case. This open-ended Interrogatory inquires about an expansive period of time not relevant to any claims or defenses in this case, including defendants' statute-of-limitations arguments. Indeed, Magistrate Judge Zarefsky has warned defendants that "requests that seek 'all' or 'any,' especially on as elastic a term as "communications" (and there are many similar terms), when they contain little or no limiting language—as to subject and time—necessarily invite objections." DN 467 at 2.

DC further objects to this Interrogatory on the ground that it exceeds the permitted number of 25 total interrogatories under Federal Rule of Civil Procedure 33(a)(1). What defendant has done through its First Set of Interrogatories is to ask DC over 80 separate interrogatories.

DC objects to the definition of "YOU" as vague and overbroad and will respond to this term as limited to the relevant representatives at DC and Warner Bros. Entertainment Inc. Defendant's definition of "DESCRIBE" is also objectionable. It mirrors in large part language that DC employed in its own discovery requests, to which defendants objected as being impermissibly overbroad. *E.g.*, DN 207-9 at 432. Defendants stood by their objections and refused to withdraw them, yet use this same language in this Interrogatory. *E.g.*, DN 207-13 at 498. Defendants must confirm that they acknowledge DC's use of this term is proper and that defendants will answer DC's discovery requests accordingly.

**EXHIBIT 8**

**147**

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

1  Defendants cannot request that DC do more than what defendants have committed

2  to do themselves.

3      Subject to and without waiving all foregoing objections, and as DC already

4  advised defendants, DC responds that it is willing to discuss the relevance of and to

5  describe its communications with David Michaels if and when defendants do the

6  same, including Toberoff's communications with David Michaels after he left

7  Toberoff & Associates in October 2005.  Dec. 6, 2012, C. Seto Letter to K. Adams.

8  Defendants cannot demand that DC describe communications with third parties that

9  defendants themselves continue to withhold.  Nor is there any legitimate basis for

10  defendants to assert privilege over communications with David Michaels after he

11  left Toberoff & Associates—especially given that defendants accused him of

12  committing crimes by stealing privileged documents, "falsely disparaging"

13  Toberoff, and attempting to "steal" his clients, and also reported David Michaels'

14  alleged crimes to the FBI and U.S. Attorney's Office, but now backtrack from

15  certain of those allegations.  *E.g.,* DN 42 at 8; 193-1 ¶ 15.

16  **Interrogatory No. 21**

17      DESCRIBE all efforts, whether successful or unsuccessful, YOU made to

18  identify, locate, investigate, research, contact, and communicate with PERSONS

19  formerly employed by TOBEROFF, including, but not limited to, the "7 attorneys

20  [who purportedly] have come and gone at the Law Offices of Marc Toberoff," as

21  alleged in the TIMELINE, at DOCKET 49, Ex. A at 68.

22  **Response to Interrogatory No. 21**

23      DC objects to this Interrogatory as it calls for information which is not

24  reasonably calculated to lead to the discovery of relevant and admissible evidence.

25  DC's efforts to "identify, locate, investigate, research, contact, and communicate"

26  with "PERSONS formerly employed by TOBEROFF" are not remotely relevant to

27  any claims or defenses in this case.  Defendants have not articulated a theory of

28  relevance for the Interrogatory.  To the extent defendants wish to confirm the

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**

**148**

identity of the Timeline author, there is a far more simple way to do this: Defendants can and should depose the person they swore under oath and without equivocation, *e.g.* DN 207-9 at 433-34, was the Timeline's author: David Michaels. Rather than do so, defendants seek needlessly to burden Warner Bros. and DC with invasive interrogatories and document requests.

DC further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC further objects to this Interrogatory on the ground that it is compound. This Interrogatory constitutes six separate interrogatories, requesting that DC "DESCRIBE all efforts" to (1) "identify," (2) "locate," (3) "investigate," (4) "research," (5) "contact," and (6) "communicate" with "PERSONS formerly employed by TOBEROFF." This issue is replete throughout defendant's interrogatories. What defendant has done through its First Set of Interrogatories is to ask DC over 80 separate interrogatories, exceeding the permitted number of 25 total interrogatories under Federal Rule of Civil Procedure 33(a)(1).

DC objects to the definition of "YOU" as vague and overbroad and will respond to this term as limited to the relevant representatives at DC and Warner Bros. Entertainment Inc. Defendant's definition of "DESCRIBE" is also objectionable. It mirrors in large part language that DC employed in its own discovery requests, to which defendants objected as being impermissibly overbroad. *E.g.*, DN 207-9 at 432. Defendants stood by their objections and refused to withdraw them, yet use this same language in this Interrogatory. *E.g.*, DN 207-13 at 498. Defendants must confirm that they acknowledge DC's use of this term is proper and that defendants will answer DC's discovery requests accordingly. Defendants cannot request that DC do more than what defendants have committed to do themselves.

**EXHIBIT 8**
**149**

1    Subject to and without waiving all foregoing objections, DC is currently in

2    the process of meeting and conferring with defendants on related requests for

3    production, and to the extent defendants can articulate a theory of relevance for

4    why that information should be produced, DC is willing to meet and confer with

5    defendant to discuss this response further.

6    **Interrogatory No. 22**

7    DESCRIBE all COMMUNICATIONS between YOU and PERSONS

8    formerly employed by TOBEROFF, including, but not limited to, the "7 attorneys

9    [who purportedly] have come and gone at the Law Offices of Marc Toberoff," as

10   alleged in the TIMELINE, at Docket 49, Ex. A at 68.

11   **Response to Interrogatory No. 22**

12   DC objects to this Interrogatory as it calls for information which is not

13   reasonably calculated to lead to the discovery of relevant and admissible evidence.

14   DC's communications with "PERSONS formerly employed by TOBEROFF" are

15   not remotely relevant to any claims or defenses in this case.  Defendants have not

16   articulated a theory of relevance for the Interrogatory.  To the extent defendants

17   wish to confirm the identity of the Timeline author, there is a far more simple way

18   to do this:  Defendants can and should depose the person they swore under oath and

19   without equivocation, *e.g.* DN 207-9 at 433-34, was the Timeline's author:  David

20   Michaels.  Rather than do so, defendants seek needlessly to burden Warner Bros.

21   and DC with invasive interrogatories and document requests.

22   DC further objects to this Interrogatory on the grounds that it is indefinite as

23   to time and not reasonably limited in scope.  For example, the Interrogatory seeks

24   the description of "all COMMUNICATIONS" between DC and "PERSONS

25   formerly employed by Toberoff."  This would include all communications with

26   anyone ever employed by Toberoff at any time, including before the person was

27   employed by Toberoff, and relating to any subject, including matters not relevant to

28   this case.  This open-ended Interrogatory inquires about an expansive period of time

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

1  not relevant to any claims or defenses in this case, including defendants' statute-of-

2  limitations arguments.  Indeed, Magistrate Judge Zarefsky has warned defendants

3  that "requests that seek 'all' or 'any,' especially on as elastic a term as

4  "communications" (and there are many similar terms), when they contain little or

5  no limiting language—as to subject and time—necessarily invite objections."  DN

6  467 at 2.

7       DC further objects to this Interrogatory on the ground that it exceeds the

8  permitted number of 25 total interrogatories under Federal Rule of Civil Procedure

9  33(a)(1).  What defendant has done through its First Set of Interrogatories is to ask

10  DC over 80 separate interrogatories.

11       DC objects to the definition of "YOU" as vague and overbroad and will

12  respond to this term as limited to the relevant representatives at DC and Warner

13  Bros. Entertainment Inc.  Defendant's definition of "DESCRIBE" is also

14  objectionable.  It mirrors in large part language that DC employed in its own

15  discovery requests, to which defendants objected as being impermissibly overbroad.

16  *E.g.*, DN 207-9 at 432.  Defendants stood by their objections and refused to

17  withdraw them, yet use this same language in this Interrogatory.  *E.g.*, DN 207-13

18  at 498.  Defendants must confirm that they acknowledge DC's use of this term is

19  proper and that defendants will answer DC's discovery requests accordingly.

20  Defendants cannot request that DC do more than what defendants have committed

21  to do themselves.

22       Subject to and without waiving all foregoing objections, DC is currently in

23  the process of meeting and conferring with defendants on related requests for

24  production, and to the extent defendants can articulate a theory of relevance for

25  why that information should be produced, DC is willing to meet and confer with

26  defendant to discuss this response further.

27

28

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

EXHIBIT 8
151

**Interrogatory No. 23**

DESCRIBE all efforts, whether successful or unsuccessful, YOU made to identify, locate, investigate, research, contact, and communicate with TOBEROFF CLIENTS.

**Response to Interrogatory No. 23**

DC objects to this Interrogatory as it calls for information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC's efforts to "identify, locate, investigate, research, contact, and communicate" with "TOBEROFF CLIENTS" are not remotely relevant to any claims or defenses in this case. Defendants have not articulated any theory of relevance for this Interrogatory.

DC further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or immunity.

DC further objects to this Interrogatory on the ground that it is compound. This Interrogatory constitutes six separate interrogatories, requesting that DC "DESCRIBE all efforts" to (1) "identify," (2) "locate," (3) "investigate," (4) "research," (5) "contact," and (6) "communicate" with "TOBEROFF CLIENTS." This issue is replete throughout defendant's interrogatories. What defendant has done through its First Set of Interrogatories is to ask DC over 80 separate interrogatories, exceeding the permitted number of 25 total interrogatories under Federal Rule of Civil Procedure 33(a)(1).

DC objects to the definition of "YOU" as vague and overbroad and will respond to this term as limited to the relevant representatives at DC and Warner Bros. Entertainment Inc. Defendant's definition of "DESCRIBE" is also objectionable. It mirrors in large part language that DC employed in its own discovery requests, to which defendants objected as being impermissibly overbroad. *E.g.*, DN 207-9 at 432. Defendants stood by their objections and refused to

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

withdraw them, yet use this same language in this Interrogatory. *E.g.*, DN 207-13 at 498. Defendants must confirm that they acknowledge DC's use of this term is proper and that defendants will answer DC's discovery requests accordingly. Defendants cannot request that DC do more than what defendants have committed to do themselves.

Subject to and without waiving all foregoing objections, DC is currently in the process of meeting and conferring with defendants on related requests for production, and to the extent defendants can articulate a theory of relevance for why that information should be produced, DC is willing to meet and confer with defendant to discuss this response further.

**Interrogatory No. 24**

DESCRIBE all COMMUNICATIONS between YOU and TOBEROFF CLIENTS.

**Response to Interrogatory No. 24**

DC objects to this Interrogatory as it calls for information which is not reasonably calculated to lead to the discovery of relevant and admissible evidence. DC's communications with "TOBEROFF CLIENTS" are not remotely relevant to any claims or defenses in this case. Defendants have not articulated any theory of relevance for this Interrogatory.

DC further objects to this Interrogatory on the grounds that it is indefinite as to time and not reasonably limited in scope. For example, the Interrogatory seeks the description of "all COMMUNICATIONS" between DC and "TOBEROFF CLIENTS." This would include all communications with any client of Toberoff at any time, including before the person was a client of Toberoff, and relating to any subject, including matters not relevant to this case. Indeed, Magistrate Judge Zarefsky has warned defendants that "requests that seek 'all' or 'any,' especially on as elastic a term as "communications" (and there are many similar terms), when

1    they contain little or no limiting language—as to subject and time—necessarily

2    invite objections."  DN 467 at 2.

3        DC further objects to this Interrogatory on the ground that it exceeds the

4    permitted number of 25 total interrogatories under Federal Rule of Civil Procedure

5    33(a)(1).  What defendant has done through its First Set of Interrogatories is to ask

6    DC over 80 separate interrogatories.

7        DC objects to the definition of "YOU" as vague and overbroad and will

8    respond to this term as limited to the relevant representatives at DC and Warner

9    Bros. Entertainment Inc.  Defendant's definition of "DESCRIBE" is also

10   objectionable.  It mirrors in large part language that DC employed in its own

11   discovery requests, to which defendants objected as being impermissibly overbroad.

12   *E.g.*, DN 207-9 at 432.  Defendants stood by their objections and refused to

13   withdraw them, yet use this same language in this Interrogatory.  *E.g.*, DN 207-13

14   at 498.  Defendants must confirm that they acknowledge DC's use of this term is

15   proper and that defendants will answer DC's discovery requests accordingly.

16   Defendants cannot request that DC do more than what defendants have committed

17   to do themselves.  SAME COMMENT AS 23

18       Subject to and without waiving all foregoing objections, DC is currently in

19   the process of meeting and conferring with defendants on related requests for

20   production, and to the extent defendants can articulate a theory of relevance for

21   why that information should be produced, DC is willing to meet and confer with

22   defendant to discuss this response further.

23   **Interrogatory No. 25**

24       Describe all ELECTRONIC SURVEILLANCE YOU have conducted in

25   connection with this case and/or the *SIEGEL* LITIGATIONS.

26   **Response to Interrogatory No. 25**

27       DC objects to this Interrogatory as it calls for information which is not

28   reasonably calculated to lead to the discovery of relevant and admissible evidence.

DC'S OBJ. & RESP. TO TOBEROFF
INTERROGATORY NOS. 1-25

**EXHIBIT 8**

**154**

1  DC conducting "ELECTRONIC SURVEILLANCE" in connection with this case
2  of *Siegel* is not remotely relevant to any claims or defenses in this case.  Defendants
3  have not articulated any theory of relevance for this Interrogatory.

4       DC further objects to this Interrogatory to the extent that it seeks information
5  protected by the attorney-client privilege, the attorney work product doctrine, or
6  any other applicable privilege or immunity.

7       DC further objects to this Interrogatory on the ground that it exceeds the
8  permitted number of 25 total interrogatories under Federal Rule of Civil Procedure
9  33(a)(1).  What defendant has done through its First Set of Interrogatories is to ask
10  DC over 80 separate interrogatories, including this compound interrogatory.

11       Defendant's definition of "DESCRIBE" is also objectionable.  It mirrors in
12  large part language that DC employed in its own discovery requests, to which
13  defendants objected as being impermissibly overbroad.  *E.g.*, DN 207-9 at 432.
14  Defendants stood by their objections and refused to withdraw them, yet use this
15  same language in this Interrogatory.  *E.g.*, DN 207-13 at 498.  Defendants must
16  confirm that they acknowledge DC's use of this term is proper and that defendants
17  will answer DC's discovery requests accordingly.  Defendants cannot request that
18  DC do more than what defendants have committed to do themselves.

19       Subject to and without waiving all foregoing objections, DC responds:
20  None.

21
22  Dated:  December 20, 2012        Respectfully submitted,
23                                   By: _____
24                                        Daniel M. Petrocelli
25                                   Attorneys for Plaintiff DC Comics
26
27
28

- 77 -                                   DC'S OBJ. & RESP. TO TOBEROFF
                                         INTERROGATORY NOS. 1-25

EXHIBIT 8
155

1        I, WAYNE M. SMITH, hereby declare:

2        I am Vice President, Senior Litigation and Chief Patent Counsel of Warner Bros.

3    Entertainment Inc. ("WBEI"), and I make this verification on behalf of WBEI's affiliate, DC

4    Comics.  I have read the foregoing PLAINTIFF DC COMICS' OBJECTIONS AND

5    RESPONSES TO DEFENDANT MARC TOBEROFF'S FIRST SET OF INTERROGATORIES

6    

7    and state and verify that the responses contained therein are true and accurate to the best of my

8    knowledge and belief.

9        I declare under the penalty of perjury under the laws of the United States that the

10   foregoing is true and correct.

11       Executed on December 20, 2012 at Burbank, California.

12   

13   

14   _____
     Wayne M. Smith
     Vice President, Senior Litigation and Chief Patent Counsel

15   Warner Bros. Entertainment Inc.

16   

17   

18   

19   

20   

21   

22   

23   

24   

25   

26   

27   

28   

**EXHIBIT 8**
**156**

# EXHIBIT 9



# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

OUR FILE NUMBER
905,900-321

WRITER'S DIRECT DIAL
(310) 246-6707

WRITER'S E-MAIL ADDRESS
jtokoro@omm.com

December 21, 2012

**VIA FEDEX**

Marc Toberoff
Toberoff & Associates, P.C.
22631 Pacific Coast Highway #348
Malibu, CA 90265

Richard Kendall
Kendall Brill & Klieger LLP
10110 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067

Re: _DC Comics v. Pacific Pictures Corp. et al._, CV-10-3633 (ODW) (RZx)

Counsel:

Enclosed please find a supplemental production of documents by DC Comics, bates-labeled DC 01801 – DC 05908.

Very truly yours,

/s/ Jason H. Tokoro

Jason H. Tokoro
for O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli, Esq.
       Matthew T. Kline, Esq.

**EXHIBIT 9**
**157**