1

```
 1

 2                    UNITED STATES DISTRICT COURT

 3                   CENTRAL DISTRICT OF CALIFORNIA
                           WESTERN DIVISION
 4

 5
     DC COMICS,                      )
 6                                   )
                                     )
 7        PLAINTIFF,                  )
                                     )
 8        VS.                         ) CASE NO. CV 10-03633-ODW(RZX)
                                     )
 9                                   )
     PACIFIC PICTURES CORP. ET AL.,)
10                                   ) LOS ANGELES, CALIFORNIA
                                     ) JANUARY 7, 2013
11                                   ) (10:15 A.M. TO 10:56 A.M.)
          DEFENDANTS.                )
12   _____)

13
                               HEARING
14           BEFORE THE HONORABLE RALPH ZAREFSKY
                UNITED STATES MAGISTRATE JUDGE
15

16

17

18   APPEARANCES:            SEE NEXT PAGE

19   COURT REPORTER:         RECORDED; COURT SMART

20   COURTROOM DEPUTY:       ILENE BERNAL

21
     TRANSCRIBER:            DOROTHY BABYKIN
22                           COURTHOUSE SERVICES
                             1218 VALEBROOK PLACE
23                           GLENDORA, CALIFORNIA  91740
                             (626) 963-0566
24
     PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
25   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
```

                                                              2

```
 1   APPEARANCES:  (CONTINUED)
     FOR THE PLAINTIFF:        O'MELVENY & MYERS LLP
 2                             BY:  MATTHEW T. KLINE
                                    JASON TOKORO
 3                                  ATTORNEYS AT LAW
                               1999 AVENUE OF THE STARS
 4                             7TH FLOOR
                               LOS ANGELES, CALIFORNIA  90067
 5
                               O'MELVENY & MYERS LLP
 6                             BY:  DANIEL M. PETROCELLI
                                    ATTORNEY AT LAW
 7                             400 SOUTH HOPE STREET
                               18TH FLOOR
 8                             LOS ANGELES, CALIFORNIA  90071

 9
     FOR SIEGEL AND SHUSTER    TOBEROFF & ASSOCIATES, P.C.
10   DEFENDANTS:               BY:  MARC TOBEROFF
                                    DAVID HARRIS
11                                  ATTORNEYS AT LAW
                               22337 PACIFIC COAST HIGHWAY
12                             SUITE 348
                               MALIBU, CALIFORNIA  90256
13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1                          I N D E X

2   CASE NO. CV 10-03633-ODW(RZX)              JANUARY 7, 2013

3   PROCEEDINGS:   PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1   LOS ANGELES, CALIFORNIA; MONDAY, JANUARY 7, 2013; 10:15 A.M.

2            THE CLERK:   ITEM NUMBER 3, CASE NUMBER

3   CV 10-03633-ODW(RZX), DC COMICS VERSUS PACIFIC PICTURES

4   CORPORATION, ET AL.

5            COUNSEL, PLEASE MAKE YOUR APPEARANCES.

6            MR. PETROCELLI:   GOOD MORNING, YOUR HONOR.   HAPPY

7   NEW YEAR.

8            THE COURT:   HAPPY NEW YEAR.

9            MR. PETROCELLI:   DANIEL PETROCELLI WITH MATT KLINE

10   AND JASON TOKORO FOR PLAINTIFF DC COMICS.

11            THE COURT:   THANK YOU, MR. PETROCELLI.

12            MR. TOBEROFF:   GOOD MORNING, YOUR HONOR.

13            HAPPY NEW YEAR TO YOU AS WELL.

14            MARK TOBEROFF FOR THE DEFENDANTS.   I'M HERE WITH MY

15   ASSOCIATE DAVID HARRIS.

16            THE COURT:   I KNOW YOU BROUGHT BUSINESS CARDS, MR.

17   TOBEROFF.

18            ALL RIGHT.   THIS IS PLAINTIFF'S MOTION.   I'VE READ

19   IT, STUDIED IT, BUT I'LL LISTEN TO YOU, MR. TOBEROFF -- MR.

20   PETROCELLI.

21            MR. PETROCELLI:   YOUR HONOR, THERE'S NO DISPUTE

22   HERE WITH RESPECT TO THE PRIVILEGED MATERIAL RESPONSIVE TO

23   THE SOME 200 REQUESTS THAT WERE SERVED BY MR. TOBEROFF FOR

24   THE PERIOD AFTER THE COMMENCEMENT OF THIS LAWSUIT MAY 14,

25   2010.   BOTH SIDES AGREE THAT THERE IS NO LOGGING.   AND THAT

5

1    WAS SET FORTH IN --

2            THE COURT:  BETWEEN THE TWO LAWSUITS WE'RE TALKING

3    ABOUT?

4            MR. PETROCELLI:  NO, THIS -- I WAS TRYING TO NARROW

5    THIS.  FROM MAY 14, 2010 FORWARD --

6            THE COURT:  RIGHT.

7            MR. PETROCELLI:  -- YOUR PRIOR COURT ORDER OF

8    DECEMBER 7, 2010 PURSUANT TO THE STIPULATION TAKES THAT OUT

9    OF PLAY.  NOBODY HAS TO LOG ANYTHING.

10            AND YOU'RE CORRECT THAT THE ISSUE IS REALLY BETWEEN

11   THE TWO LAWSUITS, OCTOBER 8, 2004 TO MAY 14, 2010.

12            THE COURT:  AND IT'S NOT BETWEEN THE TWO LAWSUITS

13   AS TO THE ONE PARTY INVOLVED IN THE FIRST LAWSUIT.

14            MR. PETROCELLI:  CORRECT.

15            THE COURT:  OKAY.

16            MR. PETROCELLI:  THAT WAS MS. SIEGEL.

17            AND THOSE DOCUMENTS WERE ALL LOGGED WITH RESPECT TO

18   THE PERIOD OF TIME PRIOR TO THE FILING OF THE FIRST LAWSUIT

19   OCTOBER 8, 2004.  AND THOSE LOGS WERE THEN RE-REFERENCED OR

20   RE-SERVED HERE IN THIS CASE.

21            SO, THE ONLY ISSUE REALLY IS THAT THE COLLECTIVE

22   REQUESTS THAT HAVE COME IN FROM THE DEFENDANTS -- AND THEY

23   DID NOT -- THEY'VE SERVED TWO REQUESTS, ONE IN DECEMBER 2011

24   AND THEN ONE MORE RECENTLY -- ABOUT 190 REQUESTS.

25            AND ONE OF THEM, FOR EXAMPLE, REFERENCED IN

6

1    FOOTNOTE 1 OF OUR REPLY BRIEF IS, "ALL DOCUMENTS REFERRING TO

2    THIS CASE AND/OR THE SIEGEL LITIGATIONS."

3              ALL OF THE DOCUMENTS THAT WE'RE SEEKING TO AVOID

4    THE UNNECESSARY BURDEN, TIME AND EXPENSE OF HAVING TO LOG

5    RELATE TO THIS REQUEST, FOR EXAMPLE.  THEY'RE RESPONSIVE TO

6    THIS REQUEST.  BECAUSE BY DEFINITION ALL OF THOSE DOCUMENTS

7    THAT MR. SMITH DESCRIBED IN HIS DECLARATION, THE 18 LINEAR

8    FEET AND THE THOUSANDS AND THOUSANDS OF ELECTRONIC FILES, ARE

9    ALL RELATING TO THE LITIGATION.  HE'S A LITIGATION ATTORNEY.

10   HE'S AN IN-HOUSE LAWYER WHO'S BEEN MONITORING THIS CASE AND

11   THE PRIOR CASE, THE SIEGEL CASE, TOGETHER WITH OTHER LAWYERS.

12             AND WHEN THE DISCOVERY IN THIS CASE FIRST COMMENCED

13   WE ENDEAVORED TO WORK OUT A BILATERAL LITIGATION -- A

14   BILATERAL STIPULATION THAT -- UNDER WHICH NEITHER SIDE HAD TO

15   LOG THESE LAWYER-TYPE LITIGATION-TYPE COMMUNICATIONS.

16             AND MR. TOBEROFF BALKED AT THAT BECAUSE HE SAID AT

17   THE TIME THAT THE ONLY ISSUE ON THE TABLE WERE DC COMICS'

18   REQUESTS.  THIS IS BACK IN DECEMBER OF 2010.  HE HAD YET TO

19   SERVE HIS REQUESTS AND WOULD NOT DO SO FOR ANOTHER YEAR.

20             THE COURT:  BECAUSE HE WAS PURSUING THE SLAP

21   STRATEGY.

22             MR. PETROCELLI:  BECAUSE HE WAS PURSUING A SLAPSTER

23   STRATEGY AND WAS HOPEFUL OF NEVER HAVING TO ENGAGE IN THE

24   DISCOVERY PROCESS.

25             BUT WE SAID, LOOK, IF WE'RE GOING TO GIVE YOU SOME

7

1   LOGGING EXCLUSIONS, YOU KNOW, WE NEED LOGGING EXCLUSIONS

2   ALSO.  HE WANTED A LOGGING EXCLUSION, WHICH WE ULTIMATELY

3   AGREED TO, WHERE HE DIDN'T HAVE TO LOG ANY DOCUMENTS RELATING

4   TO ANY OF THE LAWYERS ON HIS SIDE OF THE CASE -- THE BRILL --

5   THE KENDALL BRILL FIRM AND HIS FIRM.

6           AND WE SAID FINE.  WE SAID WE WANT A SIMILAR

7   LOGGING EXCLUSION THAT WOULD PICK UP NOT ONLY THE FOLKS AT

8   O'MELVENY BUT ALSO THE IN-HOUSE LITIGATORS AT WARNER BROS.

9   AND DC.  THEY'RE NO DIFFERENT THAN YOU FOLKS.

10          AND HE SAID, OKAY.  WELL, WE'LL DEAL WITH THAT AT A

11  LATER TIME.  WE DON'T WANT TO BOG DOWN THIS DISCUSSION.  IT'S

12  NOT RELEVANT NOW BECAUSE WE DON'T HAVE ANY DISCOVERY REQUESTS

13  TO YOU YET.

14          AND HE SPECIFICALLY -- WE SPECIFICALLY GAVE YOU

15  THIS CORRESPONDENCE -- IT'S EXHIBITS 4, 5 AND 6 TO THE

16  DECLARATION OF MR. KLINE.  AND IT'S REFERENCED IN OUR REPLY

17  BRIEF AT PAGE 4 I THINK.  WE'VE CATALOGUED THOSE DOCUMENTS.

18          MR. TOBEROFF, FOR EXAMPLE, SAYS, "WE DON'T NEED TO

19  GET INTO THIS NOW BECAUSE OF THE STICKY ISSUES WHICH WOULD

20  BEST BE DEALT WITH IN THE NEGOTIATION OF A FULL LOGGING

21  AGREEMENT.  WE ALSO NEED NOT DO THIS AT THE MOMENT BECAUSE

22  DEFENDANTS HAVE NOT YET EVEN SERVED DC WITH ANY REQUESTS FOR

23  PRODUCTION."  THAT'S EXHIBIT 5.

24          AND IN EXHIBIT 6 HE SAYS, "AGAIN, WE CAN ADDRESS

25  FURTHER LOGGING ASPECTS IN NEGOTIATING A LOGGING AGREEMENT."

8

1          SO, WHEN THE TIME CAME TO FOLLOW THROUGH ON THE

2     LOGGING AGREEMENT THAT HE PROMISED IN THESE EMAILS AND THAT

3     WHICH LED US TO AGREE TO THE STIPULATION IN DECEMBER THAT THE

4     COURT SIGNED, DECEMBER 2010, AFTER MR. TOBEROFF FINALLY GOT

5     AROUND TO SERVING DISCOVERY, THERE WAS NO RESPONSE FROM HIM.

6          AND WE ATTEMPTED TO MEET AND CONFER.  AND IT REALLY

7     WASN'T UNTIL OCTOBER 25, 2012 AT A MEET AND CONFER WHEN FOR

8     THE FIRST TIME THE DEFENDANTS MADE CLEAR THAT THEY WERE NOT

9     GOING TO ENTER INTO ANY ADDITIONAL LOGGING AGREEMENTS,

10    EFFECTIVELY RENEGING ON THE PROMISE TO DO SO BACK IN DECEMBER

11    OF 2010.

12          AND THAT'S WHAT ULTIMATELY LED US TO THEN PROMPTLY

13    FILE THIS MOTION.

14          SO, THE FINAL INDICATION FROM THE DEFENDANTS THAT

15    THEY WERE NOT GOING TO DO THIS LOGGING AGREEMENT IS OCTOBER

16    25.  WE FILED THIS MOTION IN I THINK DECEMBER 10TH, 45 DAYS

17    LATER.

18          DURING THAT 45-DAY PERIOD BOTH SIDES WERE HUNKERING

19    DOWN TO ARGUE THE APPEALS IN THE NINTH CIRCUIT, WHICH

20    OCCURRED I THINK ON NOVEMBER 5 OR SO -- OR 4?

21          MR. KLINE:  5.

22          MR. PETROCELLI:  -- 5, BOTH IN THIS CASE AND IN THE

23    RELATED SIEGEL CASE.  AND WE'RE STILL AWAITING WORD FROM THE

24    NINTH CIRCUIT ON THOSE ARGUMENTS.

25          SO, IMMEDIATELY WHEN THE ARGUMENTS WERE DONE, WE

9

1   THEN PUT THIS MOTION TOGETHER AND WE FILED IT.

2          YOUR HONOR, THERE IS NOTHING TO BE GAINED.

3   NOTHING.  NO UTILITY.  NO PROBATIVE VALUE.  NO MEANINGFUL

4   INFORMATION.  NOTHING.  BY REQUIRING US TO GO THROUGH

5   IN-HOUSE LITIGATOR FILES AND LOG ALL THESE DOCUMENTS,

6   THOUSANDS AND THOUSANDS AND THOUSANDS OF DOCUMENTS --

7   ESPECIALLY, BY THE WAY, WERE WE TO HEW TO THE LOGGING

8   PROTOCOL USED BY DEFENDANTS WHERE, AS YOUR HONOR KNOWS, WE

9   HAVE VOCIFEROUSLY COMPLAINED ARE HIGHLY UNINFORMATIVE AND ARE

10  THE SUBJECT IN PART OF A TERMINATING SANCTION MOTION BEFORE

11  JUDGE WRIGHT, WHICH HAS BEEN PUT ON HOLD PENDING THE NINTH

12  CIRCUIT RULINGS.  YOUR HONOR --

13          THE COURT:  HAS HE STAYED THAT?

14          MR. PETROCELLI:  WELL, HE HAS NOT STAYED IT, BUT HE

15  CLAIMED THAT BECAUSE WE SEEK A TERMINATING SANCTION WITH

16  RESPECT TO CLAIMS 4, 5 AND 6, THE STATE LAW CLAIMS --

17          THE COURT:  YES.

18          MR. PETROCELLI:  -- AGAINST MR. TOBEROFF AND HIS

19  ENTITIES, THAT HE DOESN'T HAVE JURISDICTION TO DEAL WITH A

20  TERMINATION SANCTION MOTION BECAUSE OF THE PENDENCY OF THE

21  SLAP APPEAL, WHICH HAS STRIPPED THE COURT OF JURISDICTION ON

22  MERITS-RELATED ISSUES.  SO, FOR EXAMPLE, WE CAN'T MAKE A

23  SUMMARY JUDGMENT MOTION ON CLAIMS 4, 5 AND 6 AS WELL.  AND WE

24  HAVE TO AWAIT THE RULING ON MR. TOBEROFF'S APPEAL OF JUDGE

25  WRIGHT'S DENIAL OF THE SLAP MOTION, WHICH, FRANKLY, WE EXPECT

                                                                    10

 1    WILL BE HANDED DOWN SHORTLY.  YOU KNOW, THE ARGUMENT WAS IN

 2    NOVEMBER.

 3            THE COURT:  YES, BUT ONE DOESN'T KNOW.

 4            MR. PETROCELLI:  ONE DOESN'T KNOW.  SO, WE --

 5            THE COURT:  BUT JUST OUT OF CURIOSITY, MR.

 6    PETROCELLI, WHAT IS SOUGHT TO BE TERMINATED?

 7            MR. PETROCELLI:  CLAIMS 4, 5 AND 6 IN OUR FAVOR ON

 8    THE GROUND THAT NON-PRIVILEGED DOCUMENTS WERE CONCEALED

 9    BEHIND THE --

10            THE COURT:  THESE ARE YOUR CLAIMS?

11            MR. PETROCELLI:  OUR CLAIMS, YES.  OUR LAWSUIT.

12    WE'RE THE PLAINTIFF.

13            THE COURT:  YES.  NO, I UNDERSTAND.  NORMALLY ONE

14    DOESN'T THINK OF TERMINATING SANCTIONS AS --

15            MR. PETROCELLI:  OH, FAIR ENOUGH.  FAIR ENOUGH.  I

16    USED THAT GENERICALLY.  A DEFAULT.

17            THE COURT:  OKAY.

18            MR. PETROCELLI:  A DEFAULT.

19            AND YOUR HONOR MAY OR MAY NOT APPRECIATE THIS, BUT

20    JUDGE WRIGHT GRANTED SUMMARY JUDGMENT IN OUR FAVOR --

21            THE COURT:  YES, I SAW THAT.

22            MR. PETROCELLI:  -- ON CLAIM 1 AND 3.  AND 2 IS

23    THEREBY MOOTED BECAUSE --

24            THE COURT:  I SAW THAT.

25            MR. PETROCELLI:  OKAY.

1          SO, WE'RE DOWN TO CLAIMS 4, 5 AND 6.  AND, YES, SO

2    EFFECTIVELY A DEFAULT ON THE GROUND THAT NON-PRIVILEGED

3    DOCUMENTS HAD BEEN CONCEALED FROM US IN A FALSE AND

4    FRAUDULENT MANNER.

5          SO, YOU KNOW, WE GAVE YOU THE FORM OF PROTECTIVE

6    ORDER.  AND REALLY THE ONLY ARGUMENT THAT THEY'VE COME BACK

7    WITH IS THE ARGUMENT THAT WHAT'S SAUCE FOR THE GOOSE IS SAUCE

8    FOR THE GANDER.  AND I SUGGEST THAT EVEN IF YOU WERE TO

9    ACCEPT THAT AS A LEGAL ARGUMENT, THIS PROTECTIVE ORDER NEEDS

10   TO BE ENTERED INTO.  BECAUSE AT THE TIME THAT WE WERE INDUCED

11   TO ENTER INTO THE DECEMBER 7, 2010 STIPULATION, IT WAS

12   EXPRESSLY BASED ON HIS REPRESENTATIONS THAT WE WOULD DEAL

13   WITH OUR REQUEST FOR LOGGING EXCLUSIONS AT SUCH TIME AS WHEN

14   MR. TOBEROFF SERVED HIS DISCOVERY, WHICH AS I INDICATED HE

15   DID NOT DO FOR AT LEAST A YEAR LATER.  AND THEN WHEN THAT

16   TIME CAME HE INDICATED HE WASN'T GOING TO ENGAGE IN THAT.

17         THE OTHER ARGUMENT HE MAKES IS A WAIVER ARGUMENT.

18   AND THAT ARGUMENT HAS NO MERIT BECAUSE FROM THE VERY OUTSET,

19   FROM OUR INITIAL RESPONSE TO HIS DOCUMENT REQUEST -- HE

20   SERVED HIS FIRST DOCUMENT REQUEST IN THIS CASE IN DECEMBER

21   2011.  AND WE RESPONDED IN FEBRUARY 2012.  AND WE

22   SPECIFICALLY NOTE ON PAGE 2 THAT WE ARE NOT GOING TO LOG

23   DOCUMENTS CONSISTENT WITH THE ARRANGEMENTS THAT WE WORKED OUT

24   BOTH PURSUANT TO THE EXPRESS TERMS OF THE STIPULATION AND

25   ORDER, PLUS, THE PROMISE TO WORK OUT AN AGREEMENT IF AND WHEN

12

1    HE GOT AROUND TO SERVING DISCOVERY.

2              AND IN ALL OF THE CORRESPONDENCE AND THE MEET AND

3    CONFER EFFORTS WE CONTINUALLY ASSERTED OUR RIGHT TO PROTECT

4    -- SEEK A PROTECTIVE ORDER AND CLAIM PRIVILEGE AS TO THESE

5    DOCUMENTS AND THE RIGHT NOT TO HAVE TO LOG THEM.

6              SO, THE CASES THAT HAVE BEEN CITED THAT SHOW WAIVER

7    ARE WHEN A PARTY SITS ON ITS RIGHTS, MAKES BLAND, BOILERPLATE

8    OBJECTIONS THAT ARE NOT SPECIFIC TO THE ATTORNEY-CLIENT

9    PRIVILEGE.  THAT'S NOT THIS CASE AT ALL.

10              SO, WE ACTED DILIGENTLY AND PROMPTLY THROUGHOUT.

11              AND ALL OF THIS GOES BACK TO THE COMMUNICATIONS IN

12    DECEMBER 2010 WHEN MR. TOBEROFF EXPRESSLY AGREED THAT HE

13    WOULD WORK WITH US TO NEGOTIATE A FULL LOGGING AGREEMENT AND

14    THEN LATER DECLINED TO DO SO.  HIS ARGUMENT IS THERE'S NO

15    BENEFIT TO ME TO ENTER INTO THIS LOGGING AGREEMENT WITH YOU

16    ANYMORE BECAUSE I HAD TO LOG DOCUMENTS.

17              WELL, THAT WAS A DECISION THAT HE MADE WHEN HE

18    AGREED TO ENTER INTO A LOGGING AGREEMENT WITH US DOWN THE

19    ROAD IN HIS CORRESPONDENCE.  HE KNEW AT THAT MOMENT AND TIME

20    THAT HE WAS GOING TO -- IN ORDER TO AVOID THE PENDENCY OF OUR

21    MOTION, WHICH WAS ON FILE AT THAT TIME, AND THE JEOPARDY THAT

22    HE FACED, HE MADE THE TACTICAL DECISION THAT I'M GOING TO LOG

23    VARIOUS CLIENT COMMUNICATIONS, AND I WILL PROMISE DC THAT I

24    WILL WORK OUT A LOGGING AGREEMENT WITH THEM DOWN THE ROAD.

25              AND NOW HE CLAIMS THERE'S NO BENEFIT TO HIM TO THIS

13

1    AGREEMENT.  WELL, THAT'S A CHOICE THAT HE MADE.

2                IN ANY EVENT, YOUR HONOR, THE CIRCUMSTANCES ARE NOT

3    PARALLEL BECAUSE HE LOGGED ABOUT 3- TO 4,000 ATTORNEY-CLIENT

4    COMMUNICATIONS, AGAIN, BETWEEN 2004 AND 2010.

5                AND WE'RE TALKING ABOUT, YOU KNOW, SCORES OF

6    MAGNITUDES IN EXCESS OF THAT.  AND TO HAVE TO GO THROUGH THAT

7    AND SPEND ALL THAT TIME AND MONEY FOR NO PURPOSE OTHER THAN

8    TO PUT US THROUGH THE GRINDER IS NOT AN APPROPRIATE USE OF

9    THE DISCOVERY RULES AND ISN'T AN APPROPRIATE USE OF THE

10   PROTECTIVE ORDER RULE.  SO, THAT'S OUR CASE, YOUR HONOR.

11               THE COURT:  ALL RIGHT.  LET ME ASK YOU A COUPLE OF

12   QUESTIONS --

13               MR. PETROCELLI:  SURE.

14               THE COURT: -- MR. PETROCELLI.

15               FIRST, DO I CORRECTLY ASSUME THAT MR. SMITH IS NOT

16   THE ONLY IN-HOUSE PERSON WHO WOULD HAVE FILES?

17               MR. PETROCELLI:  CORRECT.

18               THE COURT:  AND HOW MANY OTHERS ARE THERE?  ANY

19   SENSE?

20               MR. PETROCELLI:  WELL --

21               THE COURT:  BECAUSE I READ HIS DECLARATION.  HE'S

22   TALKING ONLY ABOUT HIS FILES.

23               IS THAT CORRECT?

24               MR. PETROCELLI:  YES.  WELL, THERE'S MR. SCHULMAN,

25   THE PREDECESSOR GENERAL COUNSEL.  THERE'S MR. ROGOVIN, THE

14

1   CURRENT GENERAL COUNSEL.  THERE'S THE HEAD OF LITIGATION ZAZI

2   POPE.  THERE ARE A NUMBER OF LITIGATORS WHO HAVE BEEN

3   MONITORING THIS MATTER.  SO, HE IS NOT THE ONLY ONE.  BUT TO

4   BE CLEAR, HE HAS THE LION SHARE OF THEM.  HE IS THE SORT OF

5   REPOSITORY OR THE CUSTODIAN WITHIN DC AND WARNER BROS. OF THE

6   LITIGATION DOCUMENTS.  THAT'S WHY WE USED HIS DECLARATION.

7              THE COURT:  OKAY.

8              THE OTHER QUESTION I HAD FOR YOU IS, DO YOU HAVE

9   THE DECEMBER PROTECTIVE ORDER THAT I SIGNED?

10             MR. PETROCELLI:  YES.

11             THE COURT:  THE LOGGING AGREEMENT?

12             MR. PETROCELLI:  I DO.

13             THE COURT:  I'M A LITTLE CONFUSED ABOUT PARAGRAPH 5

14  ON PAGE 2.

15             MR. PETROCELLI:  HAVE IT IN FRONT OF ME.

16             THE COURT:  PERHAPS YOU COULD HELP ME WITH THAT,

17  UNDERSTAND THE REFERENCES TO DC IN THAT PARAGRAPH IF THIS

18  AGREEMENT ONLY COVERED THE PLAINTIFF -- I MEAN, THE

19  DEFENDANTS.

20             MR. PETROCELLI:  WELL, NOT -- PART OF IT COVERS

21  BOTH PLAINTIFFS AND DEFENDANTS.  FOR EXAMPLE, TAKE THE FIRST

22  SENTENCE AT PARAGRAPH 5.  OKAY.

23             "THE PARTIES ARE NOT REQUIRED TO LIST ON THEIR

24             RESPECTIVE PRIVILEGE LOGS IN THIS CASE ANY

25             PRIVILEGE DOCUMENTS CREATED ON OR AFTER MAY 14,

1          2010."

2              AND WE SOUGHT THE ENTIRE PARAGRAPH 5 AS INDICATED

3     BY MY -- BY EXHIBIT 4 TO THE KLINE DECLARATION, WHICH IS MY

4     EMAIL TO MR. TOBEROFF.  WE SOUGHT BILATERAL TREATMENT

5     THROUGHOUT THIS PARAGRAPH.  WE WANTED THE LOGGING EXCLUSION

6     THAT MR. TOBEROFF SOUGHT WITH RESPECT TO ALL OF THE

7     LITIGATORS ON HIS SIDE TO EQUALLY APPLY TO ALL THE LITIGATORS

8     ON OUR SIDE, THAT IS, ON DC'S SIDE, NOT JUST O'MELVENY AND

9     MYERS' LITIGATORS, BUT WAYNE SMITH AND THE OTHER LITIGATION

10    FOLKS IN WARNER BROS. AND DC.

11             THAT'S WHEN MR. TOBEROFF SAID, WE'LL DEAL WITH THAT

12    AT A LATER TIME.  MY REQUEST -- I DON'T HAVE ANY REQUEST TO

13    YOU AT THIS MOMENT IN TIME.  SO, THAT'S NOT REALLY RIPE.  BUT

14    AS YOU CAN SEE FROM THE CORRESPONDENCE CLEARLY REFERENCED A

15    LATER LOGGING DISCUSSION THAT WE WOULD HAVE.

16             THE COURT:  WELL, WHAT ABOUT THE ORDER ITSELF WHICH

17    SAYS THAT:

18             "DC AND ITS OUTSIDE COUNSEL NEED NOT LOG

19             INTERNAL COMMUNICATIONS SOLELY BETWEEN OR AMONG

20             DC'S OUTSIDE COUNSEL."

21             MR. PETROCELLI:  CORRECT.

22             THE COURT:  "IN EITHER THIS CASE OR THE SIEGEL

23             CASES.  HOWEVER, AND FOR THE AVOIDANCE OF DOUBT,

24             C, IF A NON-LAWYER OR AN IN-HOUSE COUNSEL IS AN

25             AUTHOR OR RECIPIENT OF ANY OF THE COMMUNICATIONS

1        IN SUBSECTIONS A AND/OR B, SUCH COMMUNICATIONS

2        MUST BE LOGGED."

3        MR. PETROCELLI:  THAT'S WHAT MR. TOBEROFF WANTED

4   AND INSISTED ON, INCLUDING REJECTING OUR REQUEST FOR A

5   BILATERAL AGREEMENT.

6        THE COURT:  BUT --

7        MR. PETROCELLI:  BUT WE ONLY AGREED TO THAT SO THAT

8   HE COULD NOT MAKE THE VERY ARGUMENT THAT YOUR HONOR IS

9   IDENTIFYING, WHICH IS HE CAN'T REALLY RELY ON THAT LANGUAGE

10  TO FORECLOSE US FROM SEEKING THAT EXCLUSION BECAUSE OF THE

11  LAST SENTENCE OF PARAGRAPH 5, WHICH SAYS THAT:

12       "THIS STIPULATION IS WITHOUT PREJUDICE OR WAIVER

13        TO ANY PARTY'S RIGHT IN THE FUTURE TO SEEK A

14        PROTECTIVE ORDER IN RESPONSE TO ANY SUCH A REQUEST

15        OR MOTION TO COMPEL."

16       SO, WE WANTED THAT IN THERE TO MAKE SURE THAT IF

17  AND WHEN HE GOT AROUND TO SERVING DISCOVERY, THAT WE WERE NOT

18  CONFRONTED WITH THE ARGUMENT THAT WE'RE NOT ABLE TO SEEK THE

19  LOGGING EXCLUSION.  AND THAT'S WHY THAT SPECIFIC WAIVER --

20       THE COURT:  OKAY.

21       MR. PETROCELLI: -- A RESERVATION, EXCUSE ME, IS IN

22  THERE, WHICH IS PART OF THE COURT'S ORDER.

23       SO, I DON'T THINK IT'S FAIR TO BE LOOKING AT B

24  WITHOUT REGARD TO THE RESERVATION OF RIGHTS AT THE END OF

25  PARAGRAPH 5.

1          THE COURT:  ALL RIGHT.

2          MR. PETROCELLI:  OKAY.  THANK YOU.

3          THE COURT:  THANK YOU.

4          MR. TOBEROFF.

5          MR. TOBEROFF:  WITH DUE RESPECT FOR MY OPPOSING

6     COUNSEL, YOUR HONOR, MR. PETROCELLI IS MAKING THINGS UP AS HE

7     GOES ALONG.  HE'S MADE SEVERAL STATEMENTS THAT ARE JUST

8     UTTERLY FALSE, WHICH I'M GOING TO ADDRESS IN THE COURSE OF MY

9     OPPOSITION.

10          ESSENTIALLY WE PROPOSED TO HAVE THE SAME SIMPLE

11     POST-LITIGATION NON-LOGGING AGREEMENT THAT WE HAD IN SIEGEL.

12     THAT'S WHAT WE STARTED OUT WITH.  THAT'S WHAT WE ASKED FOR.

13     THEY COULD HAVE EASILY SAID YES.

14          AT THAT POINT IN TIME WHEN THEY SAID NO, THEY WERE

15     FULLY AWARE OF THE BURDENS -- THEIR SUPPOSED BURDENS OF

16     LOGGING POST-LITIGATION DOCUMENTS.  THEY WERE AWARE BECAUSE

17     IT WAS IN 2010 OF HOW MANY DOCUMENTS THEY HAD SINCE 2004.

18     THEY REJECTED THAT.  INSTEAD, INSISTED ON A ONE-SIDED LOGGING

19     AGREEMENT.

20          AND THEY DID NOT WANT TO EXCUSE THE BURDEN OF

21     HAVING TO LOG -- EXCUSE MS. LARSON OF THE BURDEN OF HAVING TO

22     LOG POST-LITIGATION DOCUMENTS.

23          WE PROPOSED PRODUCING DOCUMENTS IN RESPONSE TO

24     THEIR REQUESTS BY DECEMBER 5TH.  AND, THEN, WHEN TIME WENT BY

25     DUE TO NEGOTIATIONS, DECEMBER 15TH THEY BARRELED AHEAD WITH A

18

1    MOTION TO COMPEL.  AND THEY INSISTED THAT WE COULDN'T RESOLVE

2    THIS WITH A LOGGING AGREEMENT BETWEEN COUNSEL.  THEY NEEDED A

3    STIPULATION, AND THEY NEEDED TO BE ORDERED BY THE COURT.

4            WE THEN NEGOTIATED THE STIPULATION.  IT'S AN

5    AGREEMENT.  IT'S A CONTRACT.  AND STIPULATIONS ARE LOOKED AT

6    UNDER CONTRACT LAW.  I HAVE QUESTIONS WHETHER ONCE YOU HAVE A

7    SIGNED STIPULATION, WHICH IS A BINDING AGREEMENT, WHERE THE

8    COURT CAN SIMPLY RESCIND THAT TO BEGIN WITH.  I'M NOT SURE

9    WHAT THE ANSWER IS TO THAT.

10            THE COURT:  I THINK ONCE IT BECOMES AN ORDER OF THE

11    COURT, THE COURT CAN RESCIND AN ORDER OR MODIFY AN ORDER OR

12    --

13            MR. TOBEROFF:  RIGHT.

14            THE COURT: -- ENFORCE AN ORDER.

15            MR. TOBEROFF:  I UNDERSTAND.  BUT IN SO DOING

16    BASICALLY YOU WOULD BE RESCINDING AN AGREEMENT THAT WE

17    PERFORMED UNDER TO OUR DETRIMENT AND THEY RELIED ON.

18            THEY'VE SINCE TAKEN THAT DECEMBER ORDER, AND

19    THEY'VE CONSISTENTLY RELIED ON THAT ORDER IN MOTION AFTER

20    MOTION AFTER MOTION TO COMPEL, MANY OF WHICH HAVE BEEN

21    UNSUCCESSFUL.  THEY'RE RELYING ON THAT ORDER CLAIMING WE'RE

22    IN BREACH OF A COURT ORDER WITH RESPECT TO THEIR SANCTIONS --

23    THEIR TRUMPED-UP SANCTIONS MOTION.

24            AND WE HAVE A RIGHT TO RELY ON THAT ORDER AS WELL.

25    WE HAVE RELIED ON THE ORDER.  WE PERFORMED ON IT.  WE HAD TO

19

1    GO BACK AND LOG ROUGHLY 4,000 POST-LITIGATION DOCUMENTS.

2            THEY WERE SERVED -- A YEAR LATER THEY WERE SERVED

3    WITH REQUESTS IN DECEMBER OF 2011.  AND AT THAT TIME THEY

4    SAID NOTHING ABOUT A LOGGING AGREEMENT OR RESUMING THE

5    NEGOTIATIONS ABOUT A LOGGING AGREEMENT.  THEY NEVER MENTIONED

6    POST 2004 POST SIEGEL DOCUMENTS WHATSOEVER.

7            THEY HAD ASKED FOR AN EXTENSION OF THEIR TIME TO

8    RESPOND TO DISCOVERY, WHICH WE GRANTED.  SO, THEY HAD TILL

9    FEBRUARY 17TH TO RESPOND TO DISCOVERY AND DURING THAT INTERIM

10   TO TRY AND NEGOTIATE A LOGGING AGREEMENT, WHICH THEY DIDN'T

11   EVEN TRY TO NEGOTIATE.  NOR DID THEY MOVE FOR A PROTECTIVE

12   ORDER.

13           AND THE CASES SAY THAT EVEN THOUGH THE RULES ARE

14   OPEN-ENDED WITH RESPECT TO A PROTECTIVE ORDER, WE CITE A

15   NINTH CIRCUIT CASE, SEMINARA, WHICH STATES THAT THE TIME TO

16   MOVE FOR A PROTECTIVE ORDER IS BEFORE PERFORMANCE, NOT LONG

17   AFTER THE TIME PERFORMANCE IS DUE.  AND CASES HAVE DENIED

18   PROTECTIVE ORDERS OUTRIGHT WHEN THERE WAS A DELAY OF TWO

19   MONTHS, THREE MONTHS, FOUR MONTHS IN SEEKING A PROTECTIVE

20   ORDER.  HERE WE HAVE A DELAY OF A YEAR IN SEEKING A

21   PROTECTIVE ORDER.

22           NOW, MR. PETROCELLI ACTUALLY MISSTATES THE

23   PROVISION IN PARAGRAPH 5 THAT TALKS ABOUT SEEKING A

24   PROTECTIVE ORDER.

25           WE PUT THE PROVISION ABOUT SEEKING A PROTECTIVE

20

1   ORDER IN.  WE RED-LINED THAT IN.  AND THAT'S CLEAR FROM THE

2   EXHIBITS.  THE REASON WE RED-LINED THAT IN IS BECAUSE EVEN

3   THOUGH THEY WERE AGREEING THAT YOU NEED NOT LOG INTERNAL

4   COMMUNICATIONS BETWEEN OUTSIDE COUNSEL.  WE HAVE THIS MUTUAL

5   AGREEMENT IN THE STIPULATION.  YOU NEED NOT LOG INTERNAL

6   COMMUNICATIONS BETWEEN OUTSIDE COUNSEL.  THEY WANTED STILL TO

7   RESERVE THEIR RIGHTS TO MAKE REQUESTS FOR THOSE VERY

8   COMMUNICATIONS AND TO MOVE TO COMPEL THE LOGGING OF THOSE

9   COMMUNICATIONS.

10          AND THAT GAVE RISE TO THE FIRST PART OF THE LAST

11   SENTENCE IN PARAGRAPH 5.

12          "THIS STIPULATION IS WITHOUT PREJUDICE TO

13          ANY PARTY'S RIGHT IN THE FUTURE TO REQUEST

14          AND COMPEL THE IDENTIFICATION OR LOGGING

15          OF PRIVILEGE DOCUMENTS OTHERWISE COVERED BY

16          SUBSECTION A AND B."

17          WE THEN ADDED, OKAY.  WELL, IF YOU'RE RESERVING

18   YOUR RIGHT TO MOVE TO COMPEL THE DOCUMENTS THAT ARE EXCLUDED

19   FROM THIS LOGGING -- IN THIS LOGGING AGREEMENT, THEN, WE WANT

20   THE RIGHT TO SEEK A PROTECTIVE ORDER WITH RESPECT TO ANY

21   MOTION TO COMPEL OR REQUEST FOR THOSE DOCUMENTS THAT YOU NEED

22   NOT LOG IN THIS AGREEMENT.

23          THAT'S WHAT THAT PROVISION -- THEY DIDN'T ADD THAT

24   PROVISION TO THE STIPULATION REGARDING A PROTECTIVE ORDER.

25   WE DID.  AND IT WAS REFERENCED IN THE FIRST PART OF THE

21

1    SENTENCE WHICH THEY HAD ADDED.  AND THE RED LINES, WHICH ARE

2    ATTACHED AS EXHIBITS, REFLECT THIS.

3             SO, THAT'S --

4             THE COURT:  DOES IT MAKE A DIFFERENCE WHO PUT THE

5    --

6             MR. TOBEROFF:  YES, IT DOES.  BECAUSE THEY'RE

7    MISREPRESENTING THAT THAT PROVISION PERTAINS TO SEEKING A

8    PROTECTIVE ORDER TO ESSENTIALLY NEGATE THE ENTIRE STIPULATION

9    -- MUTUAL STIPULATION, WHICH IS NOT WHAT IT REFERRED TO.

10             SO, YES, THE INTENT OF THE PARTIES THAT ENTER INTO

11    AN AGREEMENT I THINK DOES MAKE A DIFFERENCE.

12             SECONDLY, MR. PETROCELLI STATES -- SO WHAT HAPPENED

13    IS AFTER THEY GOT THESE REQUESTS THEY DIDN'T MENTION THE

14    LOGGING AGREEMENT.  THEY DIDN'T SAY YOU PROMISED WE'D HAVE A

15    LOGGING AGREEMENT.  WE NEED A LOGGING AGREEMENT BECAUSE THE

16    FEBRUARY 17TH DATE IS COMING UP, AND WE DON'T WANT TO HAVE TO

17    LOG ALL THESE DOCUMENTS BECAUSE THEY'RE TOO BURDENSOME.  THEY

18    DID NOTHING.

19             AND WHEN IT CAME TIME TO PRODUCE ON FEBRUARY 17TH,

20    THEY PRODUCED SOME DOCUMENTS BY DESIGNATION.  AND THEY

21    PRODUCED NO LOGS.  THEY PRODUCED NO LOGS IN THIS CASE.  IT'S

22    NOT JUST A QUESTION OF POST 2004 LITIGATION DOCUMENTS.  THEY

23    PRODUCED NO LOGS WHATSOEVER.

24             WHAT THEY DID IS REFER TO THEIR LOGS IN THE SIEGEL

25    CASE.  THEY SAID WE DON'T HAVE TO PRODUCE ANY LOGS.  AND THEY

1    JUST MADE REFERENCE TO THEIR LOGS IN THE SIEGEL CASE WHICH IS

2    A DIFFERENT CASE.

3              AND WE'VE ASKED OURSELVES WHY DIDN'T AT A MINIMUM

4    WOULDN'T THEY HAVE COPIED THE LOGS IN THE SIEGEL CASE AND

5    GIVEN THEM TO US IN THIS CASE.  AND I BELIEVE THEY HAVEN'T

6    DONE THAT BECAUSE THERE'S A PROBLEM.  THERE'S A PROBLEM WITH

7    THE PREVIOUS LOGS THAT WERE DONE BY PRIOR COUNSEL.  AND THE

8    NEW SET OF COUNSEL DON'T WANT TO ENDORSE THOSE LOGS.  SO,

9    THEY PRODUCED NO PRIVILEGE LOGS IN THIS CASE.

10             AND THIS IS A FIRM THAT HAS CLAIMED AFTER THREE

11   WEEKS WHILE WE WERE NEGOTIATING A LOGGING AGREEMENT THAT

12   WE'VE WAIVED PRIVILEGE.  WHEN AFTER TWO MONTHS WHILE WE WERE

13   NEGOTIATING A LOGGING AGREEMENT WE'VE WAIVED PRIVILEGE.  AT

14   EVERY JUNCTURE THEY'VE ARGUED THAT WE'VE WAIVED PRIVILEGE.

15             AND AT TIMES THIS COURT AND THE WRIGHT COURT HAS

16   STATED THAT WE'VE WAIVED PRIVILEGE.  AND HERE THEY'VE

17   PRODUCED NO LOG WHATSOEVER IN THIS CASE.  WE SHOULDN'T BE

18   TALKING ABOUT WHETHER THEY NEED TO PRODUCE LOGS.  WE HAVE AN

19   AGREEMENT AND AN ORDER SAYING THEY DO NEED TO PROVIDE US WITH

20   PRIVILEGE LOGS.

21             FRANKLY, WE SHOULDN'T BE TALKING ABOUT WAIVER AND

22   THAT THEY'VE WAIVED PRIVILEGE.  BECAUSE IN A YEAR THEY

23   PRODUCED NO LOGS.

24             SO, WHAT HAPPENS NEXT.  FEBRUARY 17TH COMES AND

25   GOES.  NO LOGS.  WE THEN WRITE A LETTER TO THEM IN MAY SAYING

23

1   WHERE -- YOU KNOW, WE DON'T JUMP DOWN THEIR THROATS

2   IMMEDIATELY LIKE THEY'VE DONE WITH US.  WE'VE GIVEN THEM A

3   LITTLE MORE TIME.  THERE'S NO MENTION OF ANYTHING.

4          SO, MR. PETROCELLI HE FUDGES ON THESE MAJOR FACTUAL

5   POINTS AND SAYS THAT THEY ASKED FOR A LOG, AND THERE WAS NO

6   RESPONSE FROM ME.  THIS IS -- THIS IS UNTRUE.  OTHERWISE

7   KNOWN AS A LIE.  THEY DID NOT ASK FOR A LOGGING AGREEMENT

8   FROM ME.  AND THERE'S NOTHING IN THE RECORD ASKING FOR A

9   LOGGING AGREEMENT FROM ME OR A NEW LOGGING AGREEMENT FROM ME.

10  THEY DID NOTHING.

11         IN MAY WE READ YOU A LETTER SAYING, WHERE'S YOUR

12  PRIVILEGE LOG.  YOUR FAILURE TO PRODUCE A PRIVILEGE LOG, ANY

13  PRIVILEGE LOG IN THIS CASE IS AT THE RISK OF WAIVING

14  PRIVILEGE.

15         THEY SAY WE PROVIDED A PRIVILEGE LOG.  IT'S THE LOG

16  IN THE SIEGEL CASE.  AND DON'T MENTION ANYTHING ABOUT POST

17  2004 DOCUMENTS.  NOT A WORD.

18         WE THEN WRITE TO THEM AGAIN IN JUNE AND SAY WHERE'S

19  YOUR PRIVILEGE LOG.  NOW WE DON'T SAY YOU'RE AT THE RISK OF

20  WAIVING PRIVILEGE.  WE SAY YOU'RE WAIVING PRIVILEGE BY NOT

21  PRODUCING A PRIVILEGE LOG.  WE HAVE NO PRIVILEGE LOG IN THIS

22  CASE.

23         AGAIN, THEY DON'T COME BACK ASKING FOR A LOGGING

24  AGREEMENT.  THEY DON'T COME BACK -- THERE'S NO MENTION ABOUT

25  POST 2004 DOCUMENTS AT ALL.  THEY DON'T SAY AS TO PRE 2004

24

1  DOCUMENTS WE'VE ALREADY PRODUCED PRIVILEGE LOG IN SIEGEL BUT

2  AS TO POST 2004 DOCUMENTS LET'S NEGOTIATE A LOGGING

3  AGREEMENT.

4        ALL THEY SAID IS WE PROVIDED PRIVILEGE LOGS IN THE

5  SIEGEL CASE.  NO MENTION OF POST 2004 DOCUMENTS.

6        AGAIN, WE WRITE THEM ANOTHER LETTER IN JULY.  THIS

7  IS ALL PART OF THE RECORD.  AND THE SAME THING HAPPENS.  IN

8  RESPONSE THEY SAY WE'VE ALREADY PRODUCED A PRIVILEGE LOG.  I

9  THINK THE JULY LETTER THEY DIDN'T EVEN RESPOND TO.  NO

10  MENTION OF POST 2004 DOCUMENTS.

11        FINALLY, OUT OF THE BLUE IN OCTOBER, MID-OCTOBER OR

12  THE FIRST WEEK IN OCTOBER, THEY SEND OVER THE SAME LOGGING

13  STIPULATION THAT THEY SENT OVER IN DECEMBER OF 2010 THAT WE

14  REJECTED BECAUSE IT WAS ONE-SIDED.  AND ACTING LIKE, OKAY.

15  HERE'S OUR LOGGING STIPULATION.  THAT'S BASICALLY TEN MONTHS

16  SINCE OUR REQUEST FOR PRODUCTION AND EIGHT MONTHS SINCE THEY

17  WOULD HAVE HAD TO PRODUCE A PRIVILEGE LOG.  THEY SEND OVER A

18  LOGGING AGREEMENT WHICH WE ALREADY REJECTED TWO YEARS

19  EARLIER.

20        THEY'RE NOW ASKING FOR A PROTECTIVE ORDER CLAIMING,

21  YOU KNOW, WOE IS ME.  HOW IT'S UNDULY BURDENSOME.  AND THEY

22  PRETEND THAT WE'RE JUST TALKING ABOUT INTERNAL LEGAL

23  COMMUNICATIONS WHEN THAT'S NOT WHAT WE'RE TALKING ABOUT.

24  WE'RE TALKING ABOUT ALL PRIVILEGE COMMUNICATIONS.  IN FACT,

25  PRIVILEGE IS REFERRED TO IN THE PROPOSED PROTECTIVE ORDER AS

25

 1   DEFINED IN THIS ORDER, AND IT'S DEFINED BROADLY AS

 2   ATTORNEY-CLIENT PRIVILEGE OR PRODUCT PROTECTION, COMMON

 3   INTEREST PRIVILEGE OR ANY OTHER PRIVILEGE AFFORDED BY LAW.

 4            AND, SO, THAT'S WHAT THEY'RE TALKING ABOUT.

 5   THEY'RE TALKING ABOUT ALL PRIVILEGE DOCUMENTS NOT INTERNAL --

 6   AND THEY MAKE BELIEVE THAT THIS IS ABOUT THEIR BEST CASE

 7   SCENARIO, WHICH MIGHT HAVE TO DO WITH SOME INTERNAL CLIENT

 8   COMMUNICATIONS.

 9            TO MAKE MATTERS WORSE, THEY'VE STONEWALLED

10   DISCOVERY AT EVERY TURN IN THIS CASE.  AND WE HAVE NO

11   DOCUMENTS, FOR INSTANCE, WHERE THERE WOULD BE COMMUNICATIONS

12   BETWEEN EXECUTIVES -- WE HAVE NO DOCUMENTS OR VERY FEW

13   DOCUMENTS WITH EXECUTIVES BETWEEN DC AND WARNER BROS. TALKING

14   ABOUT ANY MATTER RELATIVE TO -- RELEVANT TO THIS CASE.

15            THE COURT:  BUT THAT DOESN'T HAVE ANYTHING TO DO

16   WITH THIS MOTION.

17            MR. TOBEROFF:  NO, IT HAS TO DO WITH WHY WE WANT

18   PRIVILEGE LOGS.

19            FOR EXAMPLE, WE COULDN'T FIND A DOCUMENT WHICH

20   WOULD BE NON-PRIVILEGED BETWEEN EXECUTIVES OF DC AND WARNER

21   BROS. OR EXECUTIVES OF WARNER BROS. THAT HAPPENED TO HAVE

22   BEEN CC'D TO IN-HOUSE COUNSEL.  AND THE LAW SAYS SOMETHING

23   LIKE THAT WOULD NOT BE PRIVILEGED.

24            THE LAW ALSO SAYS THAT COMMUNICATIONS TO IN-HOUSE

25   COUNSEL ARE NOT PRESUMPTIVELY PRIVILEGED BECAUSE IN-HOUSE

1  COUNSEL DEALS WITH ALL SORTS OF BUSINESS MATTERS AND AREN'T

2  NECESSARILY JUST RELATED TO SEEKING OR GIVING LEGAL ADVICE.

3          SO, WE'RE VERY CONCERNED THAT THEY ARE CLOAKING

4  WITH PRIVILEGE AND WITHHOLDING RELEVANT DOCUMENTS SIMPLY

5  BECAUSE THEY WERE EITHER CC'D TO IN-HOUSE COUNSEL OR

6  COMMUNICATIONS WITH IN-HOUSE COUNSEL, AND WE WOULD LIKE TO

7  TEST THAT PRIVILEGE AND TO UNDERSTAND.  WE HAVE NO ABILITY --

8  THEY SAY IN THEIR PAPERS THERE'S NO DISPUTE AS TO PRIVILEGE

9  HERE.  IT'S JUST A DISPUTE AS TO LOGGING.

10          WE HAVE NO ABILITY TO DISPUTE THEIR ASSERTIONS OF

11  PRIVILEGE WITHOUT THESE THINGS BROKEN DOWN FURTHER TO SEE WHO

12  THE SENDER, WHO THE AUTHOR, WHO THE RECIPIENT IS, WHO IS

13  CC'D.  ALL OF THE THINGS THAT THEY'VE CRAWLED ALL OVER.

14          THEY OBTAINED THIS STIPULATION ORDER BY THREATENING

15  AND JUMPING AHEAD WITH A MOTION TO COMPEL.  AND THEN WE --

16  UNDER THE THREAT OF THEIR MOTION TO COMPEL, WE AGREED TO THIS

17  STIPULATED ORDER.  THIS WASN'T A -- THIS WASN'T A STIPULATED

18  ORDER THAT WE INSISTED UPON.  THIS IS SOMETHING THAT THEY

19  INSISTED UPON.  SO, AFTER INSISTING UPON IT AND MAKING US LOG

20  POST 2004 DOCUMENTS, AND RECEIVING THE BENEFIT WITHOUT THE

21  RISKS OF A NO LOGGING AGREEMENT, THEY'RE NOW TURNING -- THEY

22  WILLFULLY BREACHED THE AGREEMENT.  THEY BREACHED THIS COURT

23  ORDER.  I DON'T KNOW WHAT YOU'D CALL IT WHEN YOU HAVE TO

24  PRODUCE PRIVILEGE LOG BY FEBRUARY 17TH.  AND FOR EIGHT MONTHS

25  YOU DON'T PRODUCE IT.  THAT'S CALLED A BREACH OF AN AGREEMENT

27

1    AND A BREACH OF A COURT ORDER.  AND AFTER ALL THIS TIME THEY

2    WALTZ INTO THE COURT AND SAY, GOLLY, THAT'S VERY BURDENSOME.

3    BURDENS THAT THEY WERE WELL AWARE OF WHEN THEY MADE THIS

4    AGREEMENT.

5            AND THEY HAD THE UPPERHAND IN NEGOTIATING THIS

6    AGREEMENT.  WE DIDN'T.  WE NEGOTIATED THIS WITH -- IN AN

7    EFFORT TO AVOID A MOTION TO COMPEL BY THEIR DESIGN.  IT WAS

8    THEIR DESIGN THAT COUNSEL COULDN'T SIMPLY AGREE TO A LOGGING

9    AGREEMENT AS WE DID WITH OTHER COUNSEL IN THE SIEGEL CASE.

10   NO.  THEY POUNDED AHEAD WITH A MOTION TO COMPEL SO THAT THIS

11   WOULD TAKE A FORM OF A STIPULATED ORDER SO THAT THEY CAN

12   LATER CLAIM WE WERE IN BREACH OF THE ORDER.  MEANWHILE

13   THEY'RE WILLFULLY BREACHING THE ORDER FOR EIGHT MONTHS AND

14   NOT MOVING A PROTECTIVE ORDER AND NOT DOING ANYTHING.

15           SO, BETWEEN THE PERIOD THEY DID NOT COME TO US AS

16   THEY SAID AND SAID, GEE, WE SAID WE WERE GOING TO HAVE

17   ANOTHER LOGGING AGREEMENT.  WE'VE RELIED ON THAT.  LET'S

18   NEGOTIATE THAT LOGGING AGREEMENT.  THEY DIDN'T DO ANYTHING.

19           (PAUSE IN PROCEEDINGS.)

20           MR. TOBEROFF:  MR. PETROCELLI ALSO STATED THAT WHEN

21   THEY DID NOT PRODUCE ANY PRIVILEGE LOG IN THIS CASE AND DID

22   NOT LOG POST 2004 DOCUMENTS THAT THEY SAID TO US THAT THEY'RE

23   NOT DOING THAT IN RELIANCE OF OUR PROMISE TO HAVE A LOGGING

24   AGREEMENT.  THAT'S A LIE.

25           IN THEIR DOCUMENT, WHICH IS EXHIBIT 11 AT 63, THEY

28

1    SAY:

2              "CONSISTENT WITH THE PARTIES' DECEMBER 7TH, 2010

3                  STIPULATION, DC WILL NOT LOG DOCUMENTS SUBJECT

4                  TO A CLAIM OF ATTORNEY-CLIENT PRIVILEGE,

5                  WORK-PRODUCT PRIVILEGE, OR ANY OTHER PRIVILEGE

6                  AVAILABLE IN THE LAW THAT WERE CREATED ON OR AFTER

7                  MAY 14TH," SOMETHING TO WHICH THERE'S NO

8    AGREEMENT.

9              "AS TO DOCUMENTS CREATED PRIOR TO MAY 14TH, DC

10                 WILL NOT LOG WORK PRODUCT OR PRIVILEGE

11                 COMMUNICATIONS SOLELY BETWEEN OR AMONG DC'S

12                 COUNSEL, INCLUDING OUTSIDE AND IN-HOUSE COUNSEL.

13                 LOGGING SUCH DOCUMENTS WOULD CONSTITUTE AN

14                 UNREASONABLE BURDEN."

15             THEY MAKE NO MENTION OF IN RELIANCE ON A LOGGING

16   AGREEMENT OR ANYTHING OF THAT NATURE.

17             AND FOR SOPHISTICATED COUNSEL TO CLAIM THAT THEY

18   VIOLATED A COURT ORDER AND BREACHED A STIPULATION THAT THEY

19   PUSHED AND THEY ENTERED INTO AFTER RECEIVING THE FULL BENEFIT

20   OF THIS STIPULATION BECAUSE THEY WERE SOMEHOW RELYING ON THE

21   PARTIES' DISCUSSIONS THAT WE COULD ALWAYS ENTER INTO ANOTHER

22   LOGGING AGREEMENT IF WE SO CHOOSE, KNOWING THAT IN ORDER TO

23   HAVE ANOTHER LOGGING AGREEMENT YOU HAVE TO SIT DOWN AND

24   NEGOTIATE IT, WHICH THEY DIDN'T DO.  AND BOTH PARTIES HAVE TO

25   AGREE TO IT, WHICH NEVER HAPPENED.

29

1          THAT'S NO BASIS NOT TO HAVE LOGGED THESE DOCUMENTS

2     OR TO PRODUCE ANY PRIVILEGE LOG IN THIS CASE.

3          IN ADDITION TO THE FACT ALL OF THEIR PROPOSALS THAT

4     THEY'VE MADE TO US -- THE INITIAL PROPOSAL THEY MADE TO US

5     AND THE PROPOSAL THEY MADE TO -- NOW IS COMPLETELY ONE-SIDED.

6     THEIR PROTECTIVE ORDER SAYS IT'S A BILATERAL ORDER.  WE DON'T

7     HAVE TO LOG POST 2004 DOCUMENTS.  AND LAURA SIEGEL DOESN'T

8     HAVE TO LOG POST 2004 DOCUMENTS EVEN THOUGH SHE ALREADY

9     LOGGED ALL THOSE DOCUMENTS AT THEIR INSISTENCE AND PURSUANT

10    TO THIS STIPULATED ORDER.  BUT ALL THE OTHER DEFENDANTS HAVE

11    TO LOG POST 2004 DOCUMENTS.

12         SO, THEY CONTINUED TO PUSH THESE EXTREMELY

13    ONE-SIDED STIPULATIONS, WHICH IS THE WHOLE REASON WE COULDN'T

14    ARRIVE AT A LOGGING AGREEMENT TO BEGIN WITH.  SO, AFTER WE

15    TRIED TO HAVE THIS SORT OF LOGGING AGREEMENT TO RELIEVE THE

16    BURDENS ON BOTH SIDES, AND AFTER THEY FORCED US TO INCUR THAT

17    BURDEN, NOW IT'S THEIR TURN.  THEY NEED TO LOG DOCUMENTS.

18    AND WE WANT A LOG SO THAT WE CAN ATTACK IF NECESSARY THEIR

19    CLAIMS OF PRIVILEGE THAT ARE UNWARRANTED.

20         THANK YOU.

21         THE COURT:  THANK YOU, MR. TOBEROFF.

22         MR. PETROCELLI:  YOUR HONOR, IN RESPONSE TO THE

23    ARGUMENTS ABOUT THE HISTORY OF THE ORDER, RATHER THAN GET

24    INTO A HE-SAID/SHE-SAID, WHICH IS REALLY OF NO UTILITY, I

25    JUST ASK THE COURT TO LOOK AT THE CORRESPONDENCE THAT'S

1    ATTACHED IN THE RECORDS AS TO EXHIBITS 4, 5 AND 6.

2              AND IN MY LETTER TO MR. TOBEROFF, WHICH IS EXHIBIT

3    4, I SPECIFICALLY SAY:

4              "I HAVE ALSO INCLUDED A PROVISION THAT THE

5              LOGGING EXCLUSIONS IN OUR STIPULATION ARE

6              WITHOUT WAIVER OF ANY PARTY'S RIGHT TO SEEK IN

7              THE FUTURE IDENTIFICATION OF DOCUMENTS NOT

8              REQUIRED TO BE LOGGED.  THIS IS A PLACEHOLDER

9              PENDING LATER AGREEMENT ON AN OVERALL PRIVILEGE

10             LOG STIPULATION."

11             AND THAT IS THE PROVISION THAT WE HAVE IN THE

12   STIPULATION BECAUSE WE WERE NOT WILLING TO SURRENDER OUR

13   RIGHT TO HAVE AN AGREEMENT OR LITIGATE ABSENT AN AGREEMENT

14   THE ISSUE OF NOT HAVING TO LOG ALL OF THESE

15   LITIGATION-RELATED COMMUNICATIONS REPOSED WITHIN WARNER BROS.

16   FROM 2004 UNTIL 2010.  WE WERE NEVER GIVING THAT UP.

17             AND THAT'S WHY I SAID THIS IN HERE, AND THAT'S WHY

18   IT'S IN THE AGREEMENT THAT THE COURT SIGNED.

19             AND WE'RE NOT SAYING THAT WE HAVE AN OVERALL

20   LOGGING AGREEMENT WITH HIM.  BECAUSE WE OBVIOUSLY DON'T.

21   THAT'S WHY WE'RE HERE.  WHAT WE ARE SAYING IS THAT HE HAD

22   INDICATED TO US THAT WE WOULD DISCUSS AND NEGOTIATE AN

23   OVERALL LOGGING AGREEMENT WHEN THAT TIME CAME; NAMELY, WHEN

24   HE PROPOUNDED DISCOVERY.

25             AND WHEN HE FINALLY GOT AROUND TO PROPOUNDING

31

1    DISCOVERY HE SAYS WE SAID NOTHING.  HE READ TO YOU --

2    ALTHOUGH HE DIDN'T IDENTIFY WHAT HE WAS READING FROM, HE READ

3    TO YOU EXHIBIT 11 A FEW MOMENTS AGO.  EXHIBIT 11 IS OUR

4    INITIAL WRITTEN RESPONSE UNDER THE RULES TO HIS INITIAL

5    DOCUMENT REQUEST SERVED IN DECEMBER 2011.  AND WE REFERENCE

6    THE PRIVILEGE LOG STIPULATION.  AND WE REFERENCE SPECIFICALLY

7    THAT WE'RE NOT INTENDING TO LOG PRIVILEGE DOCUMENTS SOLELY

8    INVOLVING COUNSEL, INCLUDING IN-HOUSE COUNSEL.

9            AND, THEN, MR. KLINE'S DECLARATION ON PAGE 4

10   CHRONICLES ALL THE ENSUING CORRESPONDENCES ON THIS SUBJECT IN

11   LETTERS A THROUGH I OF PARAGRAPH 6.  AND HE CAN ADDRESS THAT

12   IN MORE DETAIL.  I WAS NOT INVOLVED IN ANY OF THESE

13   DISCUSSIONS.  MR. KLINE HANDLED THOSE DISCUSSIONS WITH MR.

14   TOBEROFF.

15           BUT SUFFICE IT TO SAY THAT IT WAS QUITE CLEAR FROM

16   THE EARLIEST RESPONSE THAT WE WERE STANDING ON OUR RIGHT TO

17   EITHER HAVE AN AGREEMENT OR LITIGATE ABSENT AN AGREEMENT THIS

18   LOGGING EXCLUSION, GIVEN THE EXTREME BURDEN, AND NEVER WAIVED

19   THAT RIGHT.

20           AND, INDEED, MR. TOBEROFF DIDN'T FILE A MOTION TO

21   COMPEL.  IF HE FELT WE WERE IN BREACH OR IN VIOLATION OF SOME

22   LAW OR RULE OR AGREEMENT HE FILED, NO SUCH MOTION.  AND HE

23   COULD HAVE BECAUSE HE UNDERSTOOD THAT WE WERE IN THIS PROCESS

24   AS CHRONICLED BY ALL THESE COMMUNICATIONS OF TRYING TO GET TO

25   A FINAL CONCLUSION ON THIS ISSUE.  ULTIMATELY WE WERE NOT

1   ABLE TO, AND THAT'S WHY WE ARE HERE.

2        THE CASES ON WAIVER DEAL WITH PARTIES' RECKLESS

3   ABANDONMENT OF THEIR RIGHTS, THEIR INTENTIONAL RELINQUISHMENT

4   OF THEIR RIGHTS.  THAT IS NOT CONCEIVABLE ON THIS RECORD.

5   SO, THERE WAS NO WAIVER.

6        AND LET'S JUST GO BACK TO BASICS AND ASK WHAT

7   MR. TOBEROFF IS ASKING US TO DO, WHICH IS TO GO THROUGH TENS

8   AND TENS OF THOUSANDS OF LITIGATION EMAILS THAT WOULD REPOSE

9   NORMALLY IN A LAWYER'S LAW FILES.  ALL POST-LITIGATION.  ALL

10  POST SIEGEL LITIGATION.  ALL THE WAY THROUGH 2010.

11       AND THE REASON WHY THEY WOULD HAVE TO BE LOGGED IS

12  BECAUSE HE HAS REQUESTS SUCH AS "ALL DOCUMENTS RELATING TO

13  THE SIEGEL LITIGATIONS."  THAT WOULD PICK UP EVERY ONE OF

14  THEM.

15       THERE'S NO CONCEIVABLE REASON WHY WE SHOULD BE PUT

16  TO THE TIME, EXPENSE, BURDEN AND UNFAIRNESS OF HAVING TO LOG

17  ALL OF THOSE COMMUNICATIONS.  THEY'RE ALL PRIVILEGED.  THEY

18  ALL INVOLVE LAWYERS.  HE'LL NEVER SEE THEM.  THERE'S NO

19  INFORMATION TO BE GLEANED FROM THEM.

20       IN LITIGATION IN -- ALMOST ALWAYS POST-LITIGATION

21  DOCUMENTS ARE NOT LOGGED.  AND THESE ARE BY DEFINITION

22  POST-LITIGATION DOCUMENTS.  AGAIN, WE'RE NOT TALKING ABOUT

23  DOCUMENTS PRIOR TO THE SIEGEL CASE.  THOSE HAVE BEEN LOGGED.

24  AND THEY ALSO INVOLVER SHUSTER-RELATED DOCUMENTS THAT ARE ON

25  THOSE SIEGEL PRIVILEGE LOGS.  BECAUSE BACK IN THE SIEGEL CASE

33

1    THEIR REQUEST ENCOMPASSED SHUSTER-RELATED ISSUES, FOR

2    EXAMPLE, RELATING TO THE '92 AGREEMENT.  SO, YOU WILL SEE ON

3    THOSE 2004 SIEGEL PRIVILEGE LOGS YOU WILL SEE REFERENCES TO

4    SHUSTER DOCUMENTS ON THERE.

5            SO, WE'RE NOT TALKING ABOUT ANYTHING PRIOR TO

6    OCTOBER 8, 2004.  WE'RE NOT TALKING ABOUT ANYTHING AFTER MAY

7    14, 2010.  IT IS SIMPLY THE PERIOD DURING WHICH THE SIEGEL

8    CASES WERE HOTLY LITIGATED THAT HE WANTS ALL THE LITIGATION

9    DOCUMENTS PUT ON A PRIVILEGE LOG.

10           AND THAT MAKES NO SENSE AND IS WHOLLY UNWARRANTED

11   AND UNFAIR.  AND WE GAVE YOUR HONOR A DECLARATION AS TO THE

12   BURDEN.  WE ALSO CITED THE CASES, INCLUDING THOSE CITED BY

13   MR. TOBEROFF, WHICH ALLOW FOR A CATEGORICAL TYPE OF PRIVILEGE

14   LOGGING, WHICH WAYNE SMITH'S DECLARATION TRACKED.

15           THE COURT:  WELL, IN FACT, AS I RECALL, THERE'S NO

16   REQUIREMENT OF A LOG.  I MEAN, THE LOG IS A MECHANISM THAT

17   HAS BEEN USED, BUT THE RULES DON'T SAY LOG.

18           MR. PETROCELLI:  CORRECT.  AND THE ADVISORY

19   COMMITTEE NOTES TO RULE 26 I THINK MAKE THAT CLEAR.

20           UNLESS YOUR HONOR HAS ANY FURTHER QUESTIONS --

21           THE COURT:  NO.  NO.

22           MR. PETROCELLI:  -- WE'LL SUBMIT.  THANK YOU.

23           MR. TOBEROFF:  YOUR HONOR, I'D JUST LIKE TO MAKE

24   ONE POINT, IF I MAY?

25           THE COURT:  WELL, I REALLY THINK IT'S BEEN ALL HIT

34

1    PRETTY HARD, MR. TOBEROFF.

2              MR. TOBEROFF:  WELL, I'D LIKE TO -- IT'S OFF OF

3    WHAT MR. PETROCELLI JUST SAID.

4              MR. PETROCELLI:  YOUR HONOR, WHAT HE SAYS --

5              MR. TOBEROFF:  IT'S CLEAR --

6              THE COURT:  JUST A MOMENT.  JUST A MOMENT.  JUST A

7    MOMENT.

8              MR. PETROCELLI:  PAST EXPERIENCE HE'S GOTTEN UP AND

9    ARGUED FOR 20 MINUTES --

10             THE COURT:  MR. PETROCELLI, PLEASE.

11             I'VE HEARD ENOUGH.  I'M PRETTY CLEAR HOW I'M GOING

12   TO COME OUT.  BUT I WANT TO LOOK AT IT ONE MORE TIME.  AND,

13   SO, I'M GOING TO TAKE IT BACK INTO CHAMBERS AND DO THAT, AND

14   I'LL GET A WRITTEN RULING OUT SHORTLY.

15             MR. PETROCELLI:  THANK YOU, YOUR HONOR.

16             MR. TOBEROFF:  THANK YOU, YOUR HONOR.

17             THE COURT:  THANK ALL OF YOU.  HAPPY NEW YEAR TOO.

18             MR. HARRIS:  HAPPY NEW YEAR.

19             THE COURT:  WE'LL BE IN RECESS.

20             (PROCEEDINGS CONCLUDED 10:56 A.M.)

21

22

23

24

25

35

1

2                           C E R T I F I C A T E

3

4            I CERTIFY THAT THE FOREGOING IS A CORRECT

5   TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE

6   PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

7

8

9

10  /S/ DOROTHY BABYKIN                      1/17/13

11  _____      _____

12  FEDERALLY CERTIFIED TRANSCRIBER          DATED

13  DOROTHY BABYKIN

14

15

16

17

18

19

20

21

22

23

24

25