Marc Toberoff (State Bar No. 188547)
 mtoberoff@toberoffandassociates.com
Keith G. Adams (State Bar No. 240497)
 kgadams@toberoffandassociates.com
Pablo D. Arredondo (State Bar No. 241142)
 parredondo@toberoffandassociates.com
David Harris (State Bar No. 255557)
 dharris@toberoffandassociates.com
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway, #348
Malibu, California
Telephone:  (310) 246-3333
Fax:        (310) 246-3101

Attorneys for Defendants Mark Warren
Peary, as personal representative of the
Estate of Joseph Shuster, Jean Adele Peavy,
Laura Siegel Larson, individually and as
personal representative of the Estate of
Joanne Siegel

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>    Plaintiff,<br><br>  vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>    Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR REVIEW OF JANUARY 16, 2013 ORDER PRECLUDING DISCOVERY RE: TIMELINE-RELATED DOCUMENTS**<br><br>*Declaration of Keith G. Adams and [Proposed] Order filed concurrently herewith*<br><br>Complaint filed:  May 14, 2010<br>Trial Date:  None Set<br><br>Date: March 11, 2013<br>Time: 1:30 p.m.<br>Place: Courtroom 11 |

KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (State Bar No. 90072)
 *rkendall@kbkfirm.com*
Laura W. Brill (State Bar No. 195889)
 *lbrill@kbkfirm.com*
Nicholas F. Daum (State Bar No. 236155)
 *ndaum@kbkfirm.com*
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California  90067
Telephone:   (310) 556-2700
Facsimile:    (310)556-2705

Attorneys for Defendants Marc Toberoff,
Pacific Pictures Corporation, IP
Worldwide, LLC, and IPW, LLC

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 11, 2013 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 11 of the above-captioned Court, located at 312 N. Spring Street, Los Angeles, California, 90012, defendants Mark Warren Peary, Jean Adele Peavy, Laura Siegel Larson, Pacific Pictures Corporation, IP Worldwide, LLC, IPW, LLC, and Marc Toberoff will and hereby do move this Court for review of Magistrate Judge Zarefsky's January 16, 2013 order (Dkt. 558). That order denied Defendants the opportunity to take discovery related to the author of the "Timeline" (Dkt. 1, Ex. A) which was sent to Warner Bros. Entertainment Inc. ("Warner") and DC Comics (collectively, "DC") and enclosed hundreds of pages of privileged documents stolen from the legal files of defendants Laura Siegel Larson, Mark Warren Peary and Jean Peavy, and also denied discovery as to DC's receipt and handling of the "Timeline" and stolen documents.  The Order erred in finding that discovery regarding such topics was irrelevant, and not within the broad scope of discovery afforded by Fed. R. Civ. P. 26(b)(1), and thereby prejudiced Defendants' ability to defend themselves against DC's claims based on the Timeline.

This motion is made following a conference of counsel pursuant to L.R. 7-3, which took place on January 24, 2013.  This motion is based on the attached memorandum of points and authorities, the pleadings and records on file in this action, such additional authority and argument as may be presented in any reply and at the hearing on this motion, and such other matters of which this Court may take judicial notice.

Dated: January 29, 2013          RESPECTFULLY SUBMITTED,


/s/ Marc Toberoff
Marc Toberoff

TOBEROFF & ASSOCIATES, P.C.
Attorneys for Defendants Mark Warren Peary, *et al.*

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................1

BACKGROUND ...........................................................................................2

LEGAL STANDARD......................................................................................5

ARGUMENT .................................................................................................5

    I.       THE FEDERAL RULES PERMIT BROAD DISCOVERY ..........3

    II.     DEFENDANTS ARE ENTITLED TO DISCOVERY RELATED TO THE TIMELINE AND STOLEN DOCUMENTS ...........................................................................6

          A.    The January 16 Order Erred In Finding That Timeline-Related Discovery Was Not Relevant To The Parties' Claims And Defenses............................................................6

          B.    Defendants Are Entitled To Contest The Timeline's Reliability..................................................................10

          C.    The January 16 Order Erred In Ignoring And Failing To Compel Production Of DC's Communications With David Michaels And Documents Pertaining To DC's Investigation Of The Timeline/Theft ...................12

          D.    DC Admits To An Incomplete Search For Relevant Documents ........................................................13

    III.    CONCLUSION ..........................................................14

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                          **Pages**

*Adams v. Cooper Indus., Inc.*,
2007 WL 805459 (E.D. Ky. Mar. 13, 2007)................................................................ 11

*Am. Cas. Co. of Reading, PA v. Oasis Physical Therapy, PLLC*,
2009 WL 1838998 (E.D. Wash. June 24, 2009)......................................................... 10

*Bhan v. NME Hospitals, Inc.*,
929 F.2d 1404 (9th Cir. 1991) ...................................................................................... 5

*Blankenship v. Hearst Corp.*,
519 F.2d 418 (9th Cir. 1975) ........................................................................................ 6

*Borenstein v. Finova Group Inc.*,
2000 WL 34524743 (D. Ariz. Aug. 30, 2000)............................................................ 10

*Burke v. New York City Police Dep't*,
115 F.R.D. 220 (S.D.N.Y. 1987) ................................................................................. 6

*Cacique, Inc. v. Robert Reiser & Co., Inc.*,
169 F.3d 619 (9th Cir. 1999) ....................................................................................... 5

*Crispin v. Christian Audigier, Inc.*,
2010 WL 2293238 (C.D. Cal. May 26, 2010) .............................................................. 5

*Dang v. Cross, No.*,
2002 WL 432197 (C.D. Cal. Mar. 18, 2002)................................................................ 5

*Green v. Peters*,
2000 WL 1230246 (N.D. Ill. Aug. 24, 2000) ............................................................... 9

*Hollinger Int'l, Inc. v. Hollinger, Inc.*,
2004 WL 1102327 (N.D. Ill. May 5, 2004)................................................................. 10

*Jolly v. Eli Lilly & Co.*,
44 Cal. 3d 1103 (1988) ................................................................................................. 9

*Keith H. v. Long Beach Unified Sch. Dist.*,
228 F.R.D. 652 (C.D. Cal. 2005).................................................................................. 6

*Meyer v. Target Corp.*,
2010 WL 3080195 (N.D. Cal. Aug. 6, 2010) ............................................................. 11

*Miller v. Panuci*,
141 F.R.D. 292 (C.D. Cal. 1992) .............................................................................. 7

*Royal Oak Enterprises, LLC v. Nature's Grilling Products, LLC*,
2011 WL 5858057 (N.D. Ga. Nov. 21, 2011) ......................................................... 11

*Oakes v. Halvorsen Marine Ltd.*,
179 F.R.D. 281 (C.D. Cal. 1998) ........................................................................... 5,6

*Paulsen v. Case Corp.*,
168 F.R.D. 285 (C.D. Cal. 1996) .............................................................................. 8

*Quiroz v. Cate*,
2012 WL 3236490 (N.D. Cal. Aug. 6, 2012). .......................................................... 6

*Ragge v. MCA/Universal Studios*,
165 F.R.D. 601 (C.D. Cal. 1995) ......................................................................... 8, 10

*Shappley v. Amedica Corp.*,
2012 WL 3776863 (D. Utah Aug. 29, 2012) ........................................................... 10

*Soto v. City of Concord*,
162 F.R.D. 603 (N.D. Cal. 1995) .............................................................................. 7

*United States v. Budziak*,
697 F.3d 1105 (9th Cir. 2012) ................................................................................ 10

*United States v. Cedano–Arellano*,
332 F.3d 568 (9th Cir.2003) ................................................................................... 10

*United States v. Lopez*,
45 F. App'x 582 (9th Cir. 2002) ................................................................................ 9

*Whitmore v. Dep't of Labor*,
680 F.3d 1353 (Fed. Cir. 2012) .............................................................................. 10

*Youngblood v. Gates*,
12 F.R.D. 342 (C.D. Cal. 1985) ................................................................................ 8

iii
TABLES OF CONTENTS AND AUTHORITIES

1

2

## **Statutes**

28 U.S.C. § 636(b)(1)(A) ........................................................................ 5

CAL. BUS. & PROF. CODE §§ 17200 *et seq* ............................................. 9

## **Rules**

Fed. R. Civ. P. 26(b)(1) ..................................................................... *passim*

Fed. R. Civ. P. 72(a) ............................................................................... 5

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **INTRODUCTION**

Magistrate Judge Zarefsky's January 16, 2013 order (Dkt. 558; "January 16 Order" or "Order") must be reversed, as it improperly deprives Defendants of their due process right to discovery as to evidence relied upon by plaintiff: the so-called "Timeline" enclosing to Defendants' litigation adversaries, Warner Bros. Entertainment Inc. ("Warner") and DC Comics (collectively, "DC"), stacks of privileged documents *stolen* from Defendants' legal files.  The Order effectively precludes any discovery as to how DC obtained, handled, and investigated the anonymous Timeline, and any discovery of information in DC's possession regarding the author(s) of the Timeline and/or the theft of Defendants' privileged material.

This is particularly inequitable and prejudicial as DC, from the start, has heavily relied on the Timeline.  DC mimicked and incorporated by reference the Timeline's anonymous allegations throughout its complaint; DC devotes an entire section of its complaint to the Timeline; and DC attached it as the sole exhibit to its complaint.  Dkt. 49, ¶¶102-04; Ex. A.  Defendants have a right to defend themselves, including by challenging the authenticity, authorship and credibility of the Timeline.

According to DC's vague unsworn or hearsay accounts, near duplicate packages of the Timeline, along with stacks of Defendants' privileged documents, mysteriously appeared on the desks of three senior Warner executives, including the General Counsel, President and Senior Vice President, in late June 2006. Warner disclosed its receipt of this stolen privileged material to Defendants in July 2006. However, the theft itself occurred in October 2005 and the thief stated in the Timeline's introduction:  "Consider it [the stolen documents] an early holiday gift" [*i.e.,* prior to the December 2005 holidays].

Tellingly, DC has consistently failed to provide a sworn declaration from anyone with first-hand knowledge of DC's receipt of the Timeline packages.  DC also dubiously claimed that, despite the supposed receipt of stolen privileged documents in the midst of the high-stakes *Siegel* litigation, it did not retain any of the

packaging in which the privileged documents arrived, contrary to its duty to preserve evidence.  Dkt 550-3, Ex. B at 10 ¶2.  In fact, DC has signally failed and refused to provide any documentary evidence supporting its contentions about when it received the Timeline, either in this case or in *Siegel*, despite its obvious relevance.

This issue could have easily been laid to rest by DC's production of responsive contemporaneous documents proving that DC received the Timeline when it says it did, on June 28, 2006.  Instead, DC has systematically blocked *any* inquiry into this topic on spurious grounds.  DC even refused to produce its non-privileged communications with third parties regarding the Timeline, including its admitted communications with the suspected author of the Timeline.

The Order erred by:  (1) denying Defendants the right to take discovery relevant to the admissibility and/or reliability of the Timeline; (2) denying Defendants the right to test by objective discovery DC's unsupported representations as to its receipt and handling of the Timeline and stolen documents; (3) denying and ignoring Defendants' right to discover the results of DC's investigation of the Timeline author(s) and the theft of Defendants' privileged documents; and (4) denying and ignoring Defendants' right to DC's admitted communications with the suspected author of the Timeline, David Michaels.  It is a fundamental principle of civil procedure a party is able to challenge the opposing party's evidence, and the Order's denial of any discovery on these matters has greatly prejudiced Defendants. The January 16 Order must be reversed and discovery permitted to proceed on these salient topics.

## BACKGROUND

On July 18, 2005, Mr. Toberoff's law firm, Toberoff & Associates, P.C., was approached by a young attorney named David Michaels, who it hired as its most junior attorney.  Dkt. 212, Ex. I at 122-23.  Michaels had access to privileged material relating to the related *Siegel* case (C.D. Cal. Case No. 04-CV-08400 ODW (RZx)), Joanne Siegel, Laura Siegel Larson, Jean Adele Peavy, Mark Warren Peary,

1   and other clients of Mr. Toberoff.  *Id.*  In mid-October 2005, after just three months

2   and without incident or warning, Michaels left work in the middle of the day and

3   never returned.  *Id.*  In November 2005, Michaels contacted the Siegels.  *Id.* at 123.

4   He attempted to divert the Siegels to an undisclosed firm, with him as their attorney,

5   by vaguely attacking Mr. Toberoff.  *Id.*  In early December 2005, the Siegels rejected

6   Michaels' overtures.  *Id.*

7        In July 2006, DC informed Defendants that in late June 2006, three of its

8   highest-ranking executives had each been anonymously sent a large package of

9   documents stolen from Mr. Toberoff's law firm, which included hundreds of pages of

10  the Siegel and Shuster heirs' privileged material.  *Id.* at 123-24.  Accompanying each

11  of these packages was a rambling, anonymous Timeline, which hyped and expressed

12  opinions about the stolen documents.  *Id.*  The Timeline began by stating, "Consider

13  it [the stolen privileged documents] an early holiday gift," and listed ***four*** recipients

14  (Jeff Rabinov,[1] John Schulman, Alan Horn, and Patti Connolly), not three as DC

15  claimed.  Dkt. 49, Ex. A at 62, 68.

16       Among the Timeline's concerted attempts to set-up Mr. Toberoff was

17  speculation that Mr. Toberoff and Ari Emanuel (now CEO of the William Morris

18  Endeavor Agency) had tortiously interfered with DC's settlement negotiations with

19  the Siegels.  This speculation became the cornerstone of DC's Fifth Claim for

20  tortious interference.  *Compare* Dkt. 49 ¶¶181-86 (Fifth Claim) *with* Dkt. 49, Ex. A at

21  63-67 (Timeline).  The Timeline also contained accusations about two long-cancelled

22  agreements between Pacific Pictures Corporation and the Shuster heirs, which DC

23  adopted in its Fourth and Sixth Claims.  *Compare* Dkt. 49 ¶¶175-79 (Fourth Claim),

24  ¶¶188-89 (Sixth Claim) *with* Dkt. 49, Ex. A at 62-68 (Timeline).

25       Tellingly, DC would not provide a declaration from anyone who received the

26  Timeline packages, the three executives, their staff, or anyone else with first-hand

27

28  [1] As discussed below, John Schulman testified under oath that Jeff Rabinov received the Timeline.  This testimony is contradicted in DC's sworn interrogatory responses, which unequivocally state that Rabinov did *not* receive the Timeline.

knowledge.  DC also consistently evaded or refused to produce any documentary evidence that showed when it in fact received the Timeline and/or stolen documents (*e.g.*, packaging, mail or messenger logs, telephone logs, internal communications).  DC's sole evidence was a carefully worded ***hearsay*** declaration from its in-house litigation counsel, Mr. Smith, who merely testified as to when Mr. Schulman ***told*** him that the documents were received.  Dkt. 550-3, Ex. A at 4, ¶2.  This caginess was especially suspect as DC claimed it received the documents on June 28, 2006, even though (1) the Timeline describes itself as an "early holiday gift" (Dkt. 42-9, Ex. I at 612-16) and (2) the actions of the chief suspect occurred in late October (the theft) through early December 2005, just before the holidays.  Dkt. 212, Ex. I at 123.

DC represented to the Court that it acted properly in its handling of the Timeline/Stolen Documents, and based on these representations, DC was able to secure and take extensive discovery on both.  Dkt. 550-3, Ex. A.

On August 30, 2012, defendant Laura Siegel Larson served her First Set of Requests for Production ("Requests") on DC.  Dkt 550-3, Ex. E.  Many of the Requests were aimed at the circumstances surrounding DC's receipt, handling and investigation of the anonymous Timeline on which DC based its complaint, as DC had never produced any documentary evidence or the sworn declaration of anyone with actual first-hand knowledge on this topic.  *Id.*, Requests Nos. 3-16, 19-26, 32-59, 60-65, 88.

On October 5, 2012, DC served its Objections and Responses to Laura Siegel Larson's Requests ("Responses").  *Id.*, Ex. F.  DC stonewalled, and objected to all Requests directed at its receipt and handling of the Timeline and stolen documents, while purporting to want to meet and confer.  *Id.*  But when Defendants requested such a meet-and-confer (*id.*, Ex. G), DC flatly refused to provide any documents related to DC's receipt/handling of the Timeline or stolen documents.[2]  *Id.*, Ex. H

---

[2] DC also refused to log privileged documents relating to the Timeline, which would demonstrate when DC actually received the Timeline, and its unwillingness to

1   (Defendants' "requests on this topic are not only irrelevant, but also moot" and
2   "[t]here is no 'non-objectionable' portion of these Requests warranting a response.").
3   On December 6, after the parties had met and conferred, DC sent a follow-up letter,
4   in which DC again refused to produce evidence responsive to Defendants' Requests.
5   *Id.*, Ex. I.  On January 4, 2013, Defendants moved to compel responses on a number
6   of these discovery Requests.  Dkt. 550-1.  On January 16, 2013, without a hearing,
7   Magistrate Judge Zarefsky denied Defendants' motion in its entirety.  Dkt. 558.

## **LEGAL STANDARD**

9          Rulings of magistrate judges on non-dispositive motions may be set aside if
10  "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P.
11  72(a); *Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991).  The
12  clearly erroneous standard applies to the magistrate judge's factual findings, while the
13  contrary to law standard "permits independent review of purely legal determinations
14  by the magistrate judge." *Crispin v. Christian Audigier, Inc.*, 2010 WL 2293238, at
15  *3 (C.D. Cal. May 26, 2010) (citations omitted) (granting motion for review).
16  Discovery orders are non-dispositive orders subject to these standards of review.
17  *Dang v. Cross, No*., 2002 WL 432197 (C.D. Cal. Mar. 18, 2002).  Thus, the issue of
18  whether the requested discovery is relevant to the action is a question of law subject
19  to de novo review.  *Cacique, Inc. v. Robert Reiser & Co., Inc.*, 169 F.3d 619, 622
20  (9th Cir. 1999) (an issue as to whether the information being sought is relevant is a
21  question of law that is reviewed de novo).

## **ARGUMENT**

### **I.   THE FEDERAL RULES PERMIT BROAD DISCOVERY**

24         Rule 26(b)(1) permits discovery of "any matter, not privileged, that is relevant
25  to the claim or defense of any party."  Fed. R. Civ. P. 26(b)(1).  The Rule is "liberally
26  interpreted to permit wide-ranging discovery of information." *Oakes v. Halvorsen*

---

27
28  compromise on this issue prevented the parties from arriving at a routine stipulation
    as to the logging of post-litigation documents.  Dkt. 539.

*Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998).

"The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 655-656 (C.D. Cal. 2005) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). Theirs is a "heavy burden," given "the liberal discovery principles of the Federal Rules." *Blankenship*, 519 F.2d at 429.

In meeting this burden, a "recitation that the discovery request is 'overly broad, burdensome, oppressive and irrelevant' is not adequate…." *Quiroz v. Cate*, 2012 WL 3236490, at *4 (N.D. Cal. Aug. 6, 2012). Parties must "demonstrate that the [requested] documents are not relevant under the broad scope of relevance provided by Rule 26(b)(1) of the Federal Rules of Civil Procedure" (*id.)* or are "of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure…." *Burke v. New York City Police Dep't*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987).

Given the broad scope of discovery, the Order's denial of discovery on relevance grounds was clearly erroneous, as the documents were relevant, or could lead to the discovery of admissible evidence, and DC cited no plausible "harm" (*id.*) that would arise from their disclosure. *See* Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.").

## II.    DEFENDANTS ARE ENTITLED TO DISCOVERY RELATED TO THE TIMELINE AND STOLEN DOCUMENTS

### A.    <u>The January 16 Order Erred In Finding That Timeline-Related Discovery Was Not Relevant To The Parties' Claims And Defenses</u>

The January 16 Order held that Defendants' requests did not seek "material

relevant to the claims and defenses of the parties" under Fed. R. Civ. P. 26(b).  Order at 3.  This was clear error.

First, all such Requests are relevant given the centrality of the Timeline and stolen documents to this case.  "The question of relevancy should be construed 'liberally and with common sense' and discovery should be allowed unless the information sought has no conceivable bearing on the case."  *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (quoting *Miller v. Panuci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992)).  DC has based its claims – including highly-specific allegations in its Fifth Claim – directly on the Timeline.  *See, e.g.*, Dkt. 49 ¶¶181-86; Ex. A at 63-67.  DC attached the Timeline to its complaint, and expressly incorporated the Timeline in its complaint by reference.  Dkt. 49 at 35 ¶104, Ex. A.  DC also relies heavily on the Timeline and its allegations in its briefs.  *See, e.g.*, Dkt. 44-1 at 16; 90 at 4; 92 at 3; 94 at 14; 160 at 37; 184 at 2; 185 at 4; 205 at 4; 225 at 15; 253 at 4; 305 at 9-10, ¶¶30-31; 334 at 22-25; 362 at 11-12; 427 at 4; 521-2 at 30; 538 at 6.

Having constructed its case around the Timeline, DC cannot now pretend that information about it "has no conceivable bearing" on this case.  Discovery about the Timeline – exactly when and how it and the stolen documents were sent to DC, and what DC knows about this theft and/or who provided the documents – can help verify who authored and/or sent the Timeline,[3] who stole the privileged documents from Mr. Toberoff's firm, their motivations and whether there was any connection or other communications between such persons and DC before, during or after this incident, all of which could aid Defendants in disproving the Timeline's (and by extension DC's) meritless claims.  These documents are "discoverable … as they clearly relate

---

[3] Defendants believe the Timeline was authored by Michaels, butMichaels has vehemently denied that allegation, while admitting that after he disappeared from Mr. Toberoff's firm he approached the Siegels in late 2005 to solicit them with documents taken from the firm's legal files.  Dkt. 550-3, Ex. D.  Further discovery could obviously help establish whether Michaels, someone working with Michaels, or someone entirely unrelated authored the Timeline, which in turn bears on the credibility of its allegations, relied upon by DC in its complaint.

7

MOTION FOR REVIEW OF JANUARY 16, 2013 ORDER

to the subject matter of the lawsuit and the documents may lead to further admissible evidence at trial." *Youngblood v. Gates*, 112 F.R.D. 342, 348 (C.D. Cal. 1985).  At a minimum, they are discoverable because they relate to the admissibility and/or credibility of the Timeline on which DC heavily relies, and could support the impeachment of potential witnesses, including Michaels.  *See Paulsen v. Case Corp.*, 168 F.R.D. 285, 289 (C.D. Cal. 1996) (finding "no merit" to relevance objections where documents "certainly may be used for impeachment purposes and, thus, relate to the credibility of [defendants'] witnesses"); *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 603 (C.D. Cal. 1995) ("Rule 26 further permits the discovery of information which 'may simply relate to the credibility of a witness or other evidence in the case.'") (citation omitted).

     *Second,* DC cannot argue that information about the Timeline is irrelevant when DC itself has declared that the "Timeline Is a Proper Subject of Discovery" (Dkt. 44-1 at 16) and served numerous discovery requests aimed at the Timeline. Dkt. 207, Ex. E at 18-19 (Request for Production Nos. 19, 20, 23, 24, 25, 26), YYY at Dkt. 162-14, Ex. DD at 595-612 (Interrogatories Nos. 1-25).  DC has also repeatedly moved to compel information about the Timeline and its author.  *See* Dkt. 205 at 1 ("DC Comics seeks an order compelling the Toberoff defendants to produce documents relating to the Toberoff Timeline."); 206 at 5 ("Both the Toberoff Timeline, and the many facts and documents it discloses are relevant to DC's claims…."); *see also* Dkt. 106 at 5 ("[DC] is entitled to conduct discovery regarding … the Timeline.").

     *Third*, DC directly placed its timing and handling of the Timeline/stolen documents at issue with its repeated assertions that it allegedly received the documents on June 28, 2006, merely "thumbed" through them, sorted these approximately 900 documents into three piles ("privileged," "non-privileged" and "?"), turned them over to a "neutral" "escrow holder," and allegedly made sure Defendants were informed of DC's receipt of these privileged materials within eight

days.  *See, e.g.*, Dkt. 550-3 Exs. A, B.  **Defendants are entitled to test and take discovery on the representations of their litigation adversaries.**  *See United States v. Lopez*, 45 F. App'x 582, 583 (9th Cir. 2002) (finding evidence relevant where counsel "raised the issue"); *Green v. Peters*, 2000 WL 1230246, at *7 (N.D. Ill. Aug. 24, 2000) (finding discovery relevant where counsel "injected" the issue into case).

*Fourth*, the timing of DC's receipt and its handling of the stolen documents are directly pertinent to Defendants' ***statute of limitations*** defenses as to DC's Sixth Claim brought in May 2010.  Indeed, DC's receipt and review of the Timeline is potentially dispositive of DC's Sixth Claim.  DC's Sixth Claim – alleging unfair competition – is subject to a four-year statute of limitations.  Dkt. 333 at 7-8.  The claim is based, in part, on the 2001 and 2003 PPC Agreements, which were produced to DC in 2006.  *Id.*  DC contends that the claim accrued in 2006 when it received the agreements and is not time-barred.  Dkt. 334 at 25.  However, the Timeline contains pointed allegations regarding the PPC Agreements that would have put DC on inquiry notice.  Dkt. 49, Ex. A at 63, 66; *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988).  If DC reviewed the Timeline earlier than claimed (*i.e.,* in December 2005, consistent with the Timeline's "holiday gift" and the theft in late 2005), the Sixth Claim would be time-barred under DC's own arguments.

The January 16 Order agreed that DC's receipt of the Timeline was *directly relevant* to Defendant's statute of limitations defense as to DC's Sixth Claim for unfair competition under CAL. BUS. & PROF. CODE §§ 17200 *et seq.*  Order at 4.  However, the Order then dismissed this based on the mistaken assumption that this Court's partial summary judgment ruling granting DC's Third Claim for declaratory relief obviated the need for discovery on DC's Sixth Claim.  *Id.*  While there is overlap in the relief sought by DC's Third Claim for declaratory relief under the Copyright Act and DC's Sixth Claim under California's unfair competition statute, the two claims are distinct and require different elements of proof. Defendants are entitled to defend themselves as to this claim, including by taking discovery relevant

to their statute of limitations defense. *See Am. Cas. Co. of Reading, PA v. Oasis Physical Therapy, PLLC*, 2009 WL 1838998, at *3 (E.D. Wash. June 24, 2009) (noting that "factual issues in [a] federal declaratory relief lawsuit are distinct from those … in [an] underlying tort action[]"); *Borenstein v. Finova Group Inc.*, 2000 WL 34524743, at *4 (D. Ariz. Aug. 30, 2000) (noting that "different elements, will require different discovery"); *Hollinger Int'l, Inc. v. Hollinger, Inc.*, 2004 WL 1102327, at *3 (N.D. Ill. May 5, 2004) (noting that "different discovery" is required for "fundamentally distinct" claims – one federal and one state law – which "require different legal findings").

## B.    Defendants Are Entitled To Contest The Timeline's Reliability

Defendants are entitled to defend themselves by contesting the reliability of DC's evidence, and it is reversible error for district courts to deny discovery of such evidence. *See United States v. Budziak*, 697 F.3d 1105, 1112 (9th Cir. 2012) (reversing judgment where defendant was "denied background material … that could have enabled him to pursue a more effective [cross]-examination"); *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1369 (Fed. Cir. 2012) (denying party ability to "call[] into question the veracity and reliability of [evidentiary document]" reversed as an abuse of discretion); *United States v. Cedano-Arellano*, 332 F.3d 568, 570 (9th Cir. 2003) (defendant was entitled to discovery "crucial to his ability to assess the [evidence's] reliability, a very important issue in his defense, and to conduct an effective cross-examination"); *Shappley v. Amedica Corp.*, 2012 WL 3776863, at *3 (D. Utah Aug. 29, 2012) (defendant "entitled to test [plaintiff's] allegations by discovering all information about [allegations], not just the narrow category of information identified by [plaintiff]"); *Ragge*, 165 F.R.D. at 603 (documents that "pertain to the credibility of witnesses" are discoverable).

The Order improperly accepted the informal and open-ended representations of DC's outside litigation counsel and hearsay from Mr. Smith, Warner's in-house litigation counsel, as a basis for denying Defendants' discovery of these topics, while

ignoring that Defendants have consistently refused to provide any corroborating evidence.  Order at 2.   Defendants are surely entitled to test DC's self-serving representations via discovery, as improprieties or misrepresentations would be grounds to exclude evidence *in limine*, or for evidentiary or issues sanctions.  *See Meyer v. Target Corp.*, 2010 WL 3080195, at *1 (N.D. Cal. Aug. 6, 2010) ("Defendant must be able to test the veracity of Plaintiff's allegations…"); *Adams v. Cooper Indus., Inc.*, 2007 WL 805459, at *1 n.1 (E.D. Ky. Mar. 13, 2007) (rejecting defendants' "take our word for it" assertion that plaintiffs were not entitled to discovery on document); *Royal Oak Enterprises, LLC v. Nature's Grilling Products, LLC*, 2011 WL 5858057, at *3 (N.D. Ga. Nov. 21, 2011) (plaintiff entitled to "test the veracity of the declaration testimony submitted by defendant").

DC's representations are also contradictory, vague and incomplete.  DC stated unequivocally in a sworn interrogatory response that Jeff Rabinov *did not* receive the Timeline (Dkt. 550-6, Ex. 8 at 98), and repeated this assertion in opposition to Defendants' motion to compel.  Dkt. 550-1 at 49.  Yet John Schulman, Warner's former General Counsel, testified *twice* under oath that Jeff Rabinov *did* receive the Timeline package. Declaration of Keith G. Adams ("AD"), Ex. A at 8:14-19 (Q: "Who were these executives [who received duplicates of the package]" A: "Patti Connolly, head of production, Jeff Robinov, head of features or theatrical production"); 9:24-10:7 ("… I asked somebody in my staff to … check to see if anything had come in for me, for Jeff, and for Patti.").  Under the January 16, 2013 Order, Defendants are prohibited from seeking discovery as to such contradictions.

DC asserts that the three packages were mailed; thus, the postmark on the packaging would readily show when DC in fact received the Timeline and stolen documents.  *Id.*, Ex. A at 9:16-19 (Q: "do you have any knowledge one way or the other of whether these documents had been mailed to Warner Bros. or hand delivered to Warner Bros.?" A: "I believe they were mailed.").  Yet DC repeatedly implied that the packaging was simply thrown away, including by DC's General Counsel,

implicating the spoliation of evidence. *See* Dkt. 550-3, Ex. A at 4 ¶2. DC also

refused to disclose what, if any, efforts it made to recover the packaging once it

realized that the packages contained scores of stolen privileged documents belonging

to its litigation adversaries. Defendants served an interrogatory on this topic, but

DC's response consisted of "formulaic objections, with a promise to talk further," a

tactic Magistrate Judge Zarefsky rightly admonished, but did nothing to remedy.

Order at 4. Indeed, DC did not even state directly that the packaging was discarded,

and instead relied on purposefully ambiguous statements. Dkt. 550-3, Ex. A at 4. By

denying any discovery on these topics, the Order permitted discovery misconduct by

DC, and severely prejudiced Defendants' ability to defend themselves as to the

Timeline attached to and incorporated in DC's complaint.

### C. The January 16 Order Erred In Ignoring And Failing To Compel Production Of DC's Communications With David Michaels And Documents Pertaining To DC's Investigation Of The Timeline/Theft

DC admits to having communications with David Michaels, the suspected

author of the Timeline. DC does not, and cannot, contend that these communications

are privileged. DC's communications with Michaels are highly relevant, as specific

information as to what DC knows or has attempted to learn about the Timeline's

author could reveal other pertinent evidence – *e.g.*, the author's motives or

relationship, if any, with DC. For its part, DC moved to compel Defendants'

privileged communications with the Timeline author/Michaels (Dkt. 205 at 13-16),

and can hardly complain now that the shoe is on the other foot.

DC brazenly refused to produce these responsive documents unless Defendants

agreed to produce communications held by the Court to be privileged. Dkt. 550-3,

Ex. I at 159. DC cannot condition its discovery obligations as to non-privileged

documents on Defendants' voluntary waiver of their Court-upheld privilege, and the

Order's failure to address this issue was clear error.

Defendants also served Requests regarding DC's efforts to locate and identify

MOTION FOR REVIEW OF JANUARY 16, 2013 ORDER

the person(s) responsible for the Timeline and/or its delivery to Warner. Dkt. 550-3, Ex. E at 62-64 (Requests No. 32-43), 66 (Request No. 64). DC again refused to produce such documents, though Defendants' Requests were narrowly limited in scope. *Id.* Again, Magistrate Zarefsky erred in ignoring these Requests for relevant information and precluding Defendants from this basic discovery.

### D.  DC Admits To An Incomplete Search For Relevant Documents

The Order improperly denied Defendants the ability to take discovery as to Warner's receipt or handling of the Timeline packages, based on vague unsworn statements by DC's litigation counsel in briefs. The Magistrate accepted such as representations that DC had "searched its files [and found] no documents, privileged or not, concerning receipt of the time line and accompanying documents, that pre-date June 28, 2006…. [or] logs showing receipt of the time line and accompanying documents [or] packaging or envelopes in which the documents might have been encased." Order at 4. This was clear error.

First, as Defendants explained (Dkt. 555), and DC admitted, it conducted a very limited review for such documents. Dkt. 550-1 ("DC … searched the files of … Mr. Smith and John Schulman."). DC did not search the files or logs of Alan Horn or Patti Connolly, two of the three executives who were alleged by DC to have received the Timeline and stolen documents. *Id.*; Dkt. 550-6, Ex. 8 at 84. DC also did not search the files of Jeff Rabinov, even though the Timeline names Rabinov (along with Schulman, Horn and Connolly) as a recipient and John Schulman has testified under oath that Rabinov had received the Timeline. AD, Ex. A at 8:14-19 (testifying that Rabinov received the package of stolen documents). DC also stated in an interrogatory response that Leigh Chapman handled the Timeline, and yet her files were also never searched. Dkt. 550-6, Ex. 8 at 84. The assurances in briefs that "no documents" have been found are next to worthless when the files of key custodians

of the relevant records are not searched.[4]

Second, DC's actual statements were considerably more ambiguous than what the Magistrate set forth.  What DC actually stated was that "DC made clear, in Mr. Smith's declarations and again in its interrogatory responses, that there is no mail log or packaging."  Dkt. 550-1 at 42.  However, DC's interrogatory responses only cite Mr. Smith's testimony (Dkt. 550-6, Ex. 8 at 83), and Mr. Smith's testimony, in turn, merely states that he did not see any packaging when he was called into the office of Warner's General Counsel Schulman, and his second-hand purported understanding of Schulman's general practices.  Dkt. 550-6, Ex. 8 at 133-34.

## CONCLUSION

The Timeline and stolen documents are central to DC's claims and Defendants' defenses and Defendants are entitled to full discovery on them, including discovery which may lead to the identity of the Timeline's author, his motivations, and the mysterious circumstances of the Timeline's delivery to Warner along with reams of stolen privileged documents.  Defendants are equally entitled to challenge DC's incomplete and inconsistent representations, particularly given its concerted refusal to provide any hard corroborating evidence whatsoever when such evidence would ordinarily be readily available.  Precluding Defendants from taking this discovery was clear error that will severely prejudice Defendants, and the January 16, 2013 Order must be reversed, and Defendants permitted to proceed with discovery on the topics of DC's receipt and handling of the Timeline and stolen privileged documents, DC's admitted communications with the suspected Timeline author, and DC's investigation.  DC should be ordered to produce all non-privileged documents responsive to Defendants' discovery Requests.

---

[4] Even as to the records DC says it searched, the Order's acceptance of DC's blanket assurances is untenable given DC's previous discovery gamesmanship, where similar assurances were later revealed to be false.  *See* Dkt. 514.

1   Dated:  January 29, 2013        RESPECTFULLY SUBMITTED,

2                                   /s/ Marc Toberoff

3                                   Marc Toberoff

4                                   TOBEROFF & ASSOCIATES, P.C.
                                    Attorneys for Defendants Mark Warren Peary, *et al.*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28