Marc Toberoff (State Bar No. 188547)
 *mtoberoff@toberoffandassociates.com*
Keith G. Adams (State Bar No. 240497)
 *kgadams@toberoffandassociates.com*
Pablo D. Arredondo (State Bar No. 241142)
 *parredondo@toberoffandassociates.com*
David Harris (State Bar No. 255557)
 *dharris@toberoffandassociates.com*
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway, #348
Malibu, California, 90265
Telephone: (310) 246-3333
Fax: (310) 246-3101

Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>              Plaintiff,<br><br>    vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>              Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DECLARATION OF KEITH G. ADAMS IN SUPPORT OF DEFENDANTS' MOTION FOR REVIEW OF JANUARY 16, 2013 ORDER PRECLUDING DISCOVERY RE: TIMELINE-RELATED DOCUMENTS**<br><br>*Motion and [Proposed] Order filed concurrently herewith*<br><br>Complaint filed: May 14, 2010<br>Trial Date:       None Set<br><br>Date:  March 11, 2012<br>Time:  1:30 p.m.<br>Place: Courtroom 11 |

DECLARATION OF KEITH G. ADAMS IN SUPPORT OF DEFENDANTS' MOTION FOR REVIEW

## **DECLARATION OF KEITH G. ADAMS**

I, Keith G. Adams, declare as follows:

1. I am an attorney at Toberoff & Associates, P.C., counsel of record for defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel. I am a member in good standing of the State Bar of California and submit this declaration in support of Defendants' Motion For Review Of January 16, 2013 Order Precluding Discovery Re: Timeline-Related Documents.

2. Attached hereto as Exhibit "A" is a true and correct copy of relevant excerpts from the transcript of the November 10, 2006 deposition of John Schulman in the related matters of *Siegel v. Warner Bros. Entertainmentt Inc.*, Case 04-cv-8400 ODW (RZx), and *Siegel v. Time Warner Inc.*, Case 04-cv-8776 ODW (RZx).

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on January 29, 2012, at Malibu, California

_____
Keith G. Adams

1
DECLARATION OF KEITH G. ADAMS IN SUPPORT OF DEFENDANTS' MOTION FOR REVIEW

```
 1                    UNITED STATES DISTRICT COURT
 2                   CENTRAL DISTRICT OF CALIFORNIA
 3
 4   JOANNE SIEGEL, an individual;      )
     and LAURA SIEGEL LARSON, an        )
 5   individual,                        )
                                        )
 6                                      )
                         PLAINTIFFS,    )
                                        )   CASE NOS.
 7              VS.                     )   04-8400 SGL (RZx)
                                        )   04-8776 SGL (RZx)
 8   TIME WARNER, INC., a corporation;  )
     WARNER COMMUNICATIONS, INC.; a     )
 9   corporation; WARNER BROS.          )
     ENTERTAINMENT, INC., a corporation;)
10   WARNER BROS. TELEVISION PRODUCTION,)
     INC., a corporation; DC COMICS, a  )
11   general partnership,               )
                                        )
12                       DEFENDANTS.    )
     _____)
13
14
15                          DEPOSITION OF
16                          JOHN SCHULMAN
17                      LOS ANGELES, CALIFORNIA
18                        NOVEMBER 10, 2006
19
20
21   ATKINSON-BAKER, INC.
     COURT REPORTERS
22   (800) 288-3376
     www.depo.com
23
24   REPORTED BY:    CHRISTY A. CANNARIATO, CSR #7954
25   FILE NO.:       A009CB6
```

CERTIFIED COPY

1

**EXHIBIT A**

**2**

```
                    UNITED STATES DISTRICT COURT

                   CENTRAL DISTRICT OF CALIFORNIA


JOANNE SIEGEL, an individual;        )
and LAURA SIEGEL LARSON, an          )
individual,                          )
                                     )
                    PLAINTIFFS,      )
                                     )   CASE NOS.
         VS.                         )   04-8400 SGL (RZx)
                                     )   04-8776 SGL (RZx)
TIME WARNER, INC., a corporation;    )
WARNER COMMUNICATIONS, INC.; a       )
corporation; WARNER BROS.            )
ENTERTAINMENT, INC., a corporation;  )
WARNER BROS. TELEVISION PRODUCTION,  )
INC., a corporation; DC COMICS, a    )
general partnership,                 )
                                     )
                    DEFENDANTS.      )
_____)
```

Deposition of John Schulman, taken on behalf of Plaintiffs, at Law Offices of Marc Toberoff, 2049 Century Park East, Suite 2720, Los Angeles, CA 90067, commencing at 10:04 a.m., Friday, November 10, 2006, before Christy A. Cannariato, CSR #7954.

2

**EXHIBIT A**

**3**

```
 1                    A P P E A R A N C E S
 2
 3
 4    FOR THE PLAINTIFFS AND COUNTERCLAIM DEFENDANTS:
 5    TOBEROFF & ASSOCIATES
      BY:  MARC TOBEROFF, ESQ.
 6    2049 CENTURY PARK EAST
      SUITE 2720
 7    LOS ANGELES, CA   90067
 8
 9
10
11
12    FOR THE WITNESS AND DEFENDANTS:
13    WEISSMANN, WOLFF, BERGMAN, COLEMAN, SILVERMAN & HOLMES
      BY:  MICHAEL BERGMAN, ESQ.
14    9665 WILSHIRE BOULEVARD
      9th Floor
15    BEVERLY HILLS, CA   90212-2316
16
17
18
19
20
21
22    ALSO PRESENT:
      NICHOLAS WILLIAMSON
23    WAYNE SMITH
24
25
```

3

**EXHIBIT A**

**4**

```
 1  specific receipt coming in.  So I can't recall how I
 2  specifically received it, even with your admonition that
 3  you might have refreshed my recollection by reposing the
 4  question.
 5       Q.   So you don't know one way or the other.
 6       A.   Correct.
 7       Q.   What is the protocol, for lack of a better
 8  word, in your office when you receive documents by mail?
 9  Does somebody record that document other than simply
10  filing it or bring it to your attention, does somebody
11  take down the date of receipt and the sender on a list?
12       A.   I smile because that's something to be aimed
13  for but not something that's done in my office.
14       Q.   Okay.  So the answer is, it's other than
15  dealing with the document itself or filing it or making a
16  copy of it --
17       A.   It's generally brought to my attention
18  initially when it comes in.  It sometimes is
19  presegregated, this is stuff that looks like it's burning,
20  this is stuff that isn't so much, this is a charity
21  request.  That's about it.
22       Q.   And when something appears to be of important
23  legal import is it your practice to keep copies of the
24  envelopes in which something is mailed to you?
25       A.   No.  Generally I don't even see the envelopes
```

105

**EXHIBIT A**

**5**

```
 1  in which something is mailed to me.
 2       Q.   Is it the practice of your office to keep
 3  copies of that envelope?
 4       A.   No.  Generally they are thrown away before it
 5  gets to me.
 6       Q.   Usually the envelopes are thrown away?  You
 7  don't keep them?
 8       A.   Before the stuff gets in to me -- we get mail a
 9  couple times a day -- it's generally opened and brought to
10  me without envelopes, which are in the trash can.  And if
11  I don't get to it right away before trash cans are
12  cleaned, I couldn't find it if I had to.
13       Q.   And what about documents that are received by
14  messenger?  Is a log kept?  How would Warner Bros. be able
15  to tell when a document is received by messenger?
16       A.   I don't know the answer to this.  You will have
17  to ask the procedure guys.  But I think messenger stuff
18  gets logged in.
19       Q.   So does it get logged in at the guard gates
20  when the messengers have to check in?
21       A.   I'm sorry, I gave you my answer a minute ago.
22  I don't know how it gets done or who it gets done, whether
23  it gets sent somewhere.  I don't think there are nine
24  different gates where everybody logs in everything that
25  comes, because that seems unwieldy.
```

106

**EXHIBIT A**

**6**

```
 1        Q.   Even if you don't know exactly where, do you
 2   believe it gets logged in?
 3        A.   Some central repository.  I don't know where.
 4   A messenger gets sent over to Mikey's office, and Mikey is
 5   in charge.
 6        Q.   Whose office?
 7        A.   I was pointing to Mr. Bergman.  Mikey's office.
 8   I don't know where it gets logged in.
 9        Q.   But you --
10        A.   I believe we would have some record of a
11   messenger service delivering something to us if it did.
12   Yes.
13        Q.   Do you recall receiving a large number of
14   documents in a package and upon opening those documents
15   seeing that the package contained all sorts of
16   communications between me and the Siegels that would
17   ordinarily be considered attorney-client privileged
18   documents?
19        A.   The answer to the question the way you asked it
20   is no.
21        Q.   Do you recall receiving documents with a cover
22   letter disparaging me?
23        A.   Yes.
24        Q.   When did you receive those documents?
25        A.   Whatever day we've told you I received one.
```

107

```
 1        Q.   As you sit here today what is your recollection
 2   of when you received those documents?
 3        A.   Two, three months ago.  I don't even remember.
 4        Q.   You have no recollection whatsoever?
 5        A.   I have none whatsoever.  But this should be an
 6   easy fact.  We turned them over to an outside lawyer the
 7   day afterwards.  We told you about it.  I think we told
 8   you the day we received them in print somewhere.  I don't
 9   think this is contestable.
10        Q.   To my mind it's extremely contestable.
11        A.   Fine.  Okay.
12        Q.   That's why I'm asking the questions.
13        A.   Fair enough.
14        Q.   Did any other executives receive a duplicate
15   copy of that package that was sent to you?
16        A.   Two, I believe.
17        Q.   Who were those executives?
18        A.   Patti Connolly, head of production; Jeff
19   Robinov, head of features or theatrical production.
20        Q.   And upon their receipt of these packages did
21   they promptly forward those packages to your office as
22   well?
23        A.   That's a good -- the question calls for
24   speculation.  I have no idea.  I got the two of them very
25   soon after I got mine.  And if they received theirs a year
```

108

**EXHIBIT A**

**8**

1    before and sat on it I do not know.
2        Q.   And when you received their packages I'm
3    interested to know whether these documents and letters
4    were sent in an envelope.
5        A.   I received no envelope from either of them.
6        Q.   Did you ever see the envelope in which any of
7    these documents were delivered to you?
8        A.   No, sir, I did not.
9        Q.   Do you have any recollection one way or another
10   whether any of these three sets of the same --
11       A.   I don't even know they're the same documents.
12   That's correct.
13       Q.   Any three sets of documents that may be the
14   same, similar or different --
15       A.   Fair.
16       Q.   -- do you have any knowledge one way or the
17   other of whether these documents had been mailed to Warner
18   Bros. or hand delivered to Warner Bros.?
19       A.   I believe they were mailed.
20       Q.   Why do you say that?
21       A.   I checked with whoever or had my office check
22   with any messenger service receipt, and we didn't have one
23   that seemed to match.
24       Q.   When you say messenger service receipt, what do
25   you mean?

109

**EXHIBIT A**

**9**

1       A.    I asked somebody in my staff to see if this
2   office central place that I don't know where it is to see
3   -- to check to see if anything had come in for me, for
4   Jeff, and for Patti, and there was no report or receipt of
5   such. It wasn't that we hadn't gotten things; there was
6   nothing that the three of us had gotten at about that
7   time.
8       MR. TOBEROFF:  I have no further questions.
9       MR. BERGMAN:  I have none.
10          We're going to enter into I believe the
11  following stipulation: That the court reporter will be
12  relieved of her statutory obligations, and after creating
13  the transcript of Mr. Schulman's testimony will send it to
14  my office. I will convey it to Mr. Schulman who will make
15  any necessary corrections and sign it under penalty of
16  perjury within 30 days of his receipt.
17      MR. TOBEROFF:  Agreed.
18          (The proceedings concluded at 1:15 p.m.)

110

**EXHIBIT A**
**10**

1   STATE OF _____California_____ )
                                        ) SS.
2   COUNTY OF _____Los Angeles_____ )

3

4

5

6

7           I, the undersigned, declare under penalty
8   of perjury that I have read the foregoing transcript,
9   and I have made any corrections, additions or
10  deletions that I was desirous of making; that the
11  foregoing is a true and correct transcript of
12  my testimony contained therein.
13          EXECUTED this __12th__ day of __December__,
14  __2006__, at __Los Angeles__, __California__.
                      (City)            (State)
15

16

17

18                                  _____/s/ John Schulman_____
19                                       JOHN SCHULMAN

20

21

22

23

24
25

**EXHIBIT A**

**11**

REPORTER'S CERTIFICATE

I, CHRISTY A. CANNARIATO, CSR #7954, Certified Shorthand Reporter, certify:

That the foregoing proceedings were taken before me at the time and place therein set forth, at which time the witness was put under oath by me;

That the testimony of the witness, the questions propounded, and all objections and statements made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative nor employee of any attorney of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Dated this 28 day of November, 2006.

_____
CHRISTY A. CANNARIATO, CSR #7954

REPORTER'S CERTIFICATION OF CERTIFIED COPY

I, CHRISTY A. CANNARIATO, CSR #7954, a Certified Shorthand Reporter in the State of California, certify that the foregoing pages, I through III, constitute a true and correct copy of the original deposition of John Schwlman taken on November 10, 2006.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated this 28 day of November, 2006.

_____
CHRISTY A. CANNARIATO, CSR #7954