1  Marc Toberoff (State Bar No. 188547)
    *mtoberoff@toberoffandassociates.com*
2  Keith G. Adams (State Bar No. 240497)
    *kadams@ toberoffandassociates.com*
3  Pablo D. Arredondo (State Bar No. 241142)
    *parredondo@ toberoffandassociates.com*
4  David Harris (State Bar No.255557)
    *dharris@ toberoffandassociates.com*
5  TOBEROFF & ASSOCIATES, P.C.
   22337 Pacific Coast Highway #348
6  Malibu, California 90265
   Telephone:   (310) 246-3333
7  Fax:         (310) 246-3101

8  Attorneys for Defendants Mark Warren
   Peary, as personal representative of the
9  Estate of Joseph Shuster, Jean Adele Peavy,
   and Laura Siegel Larson, individually and
10 as personal representative of the Estate of
   Joanne Siegel

11

                **UNITED STATES DISTRICT COURT**
12
        **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**
13

14 | DC COMICS,                              | Case No: CV 10-03633 ODW (RZx) |
   |                  Plaintiff,             |                                |
15 |        vs.                              | Hon. Otis D. Wright II, U.S.D.J. |
   |                                         | Hon. Ralph Zarefsky, U.S.M.J.  |
16 | PACIFIC PICTURES CORPORATION;           |                                |
17 | IP WORLDWIDE, LLC; IPW, LLC;            | **DEFENDANTS' OPPOSITION TO DC COMICS' MOTION FOR ATTORNEY'S FEES ON THIRD CLAIM FOR RELIEF** |
18 | MARC TOBEROFF, an individual;           |                                |
   | MARK WARREN PEARY, as personal          | *Declaration of Keith Adams filed concurrently* |
19 | representative of the ESTATE OF         |                                |
   | JOSEPH SHUSTER; JEAN ADELE              | Complaint filed:   May 14, 2010 |
20 | PEAVY, an individual; LAURA             | Discovery Cutoff:  None Set     |
   | SIEGEL LARSON, individually and as      | Trial Date:        None Set     |
21 | personal representative of the ESTATE   |                                |
22 | OF JOANNE SIEGEL,                       | Date:   March 11, 2013          |
   | and DOES 1-10, inclusive,               | Time:   1:30 p.m.               |
23 |                                         | Place:  Courtroom 11            |
24 |                  Defendants.            |                                |

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ......................................2

ARGUMENT .........................................................................................................5

I.   ATTORNEY'S FEES ON DC'S THIRD CLAIM ARE NOT JUSTIFIED .....................................................................................................5

    A.   The Legal Standard For Attorney's Fees Awards.............................5

    B.   DC Does Not Meet The Standards For Awarding Attorney's Fees.....................................................................................................6

        1.   DC Was Not The "Prevailing Party" Under 17 U.S.C. § 505 Because DC Fails To Meet The "Material Alteration" Test ...........................................................................6

            a.   DC's Third Claim Was Moot ...................................6

            b.   Even If The Third Claim Had Not Been Mooted, DC Did Not Secure Relief Against Mr. Toberoff Or PPC .......................................................................7

            c.   DC's Limited Success Does Not Justify A Fee Award .......................................................................9

            d.   As To The 2008 Agreement, DC Improperly Seeks Fees Against Mr. Toberoff As The Heirs' Litigation Counsel ..................................................9

        2.   Defendants' Claims And Defenses Were Not Frivolous Or Objectively Unreasonable...............................................10

            a.   Positions Are Objectively Unreasonable Only If They Are Unsupported By The Facts Or Law  .........10

            b.   Defendants' Position Was Well Supported By The Statute, Case Law, And Leading Treatises, And Was Advanced Elsewhere By DC's Own Counsel .....................................................................11

        3.   Defendants' Motivations In Defending Against DC's Third Claim Were Proper .......................................................14

        4.   An Award Of Attorney's Fees Would Undermine The Termination Provisions.........................................................16

II.   DC'S ATTORNEY'S FEES ARE EXCESSIVE....................................17

III.   DC'S MOTION SHOULD NOT BE DEFERRED.................................18

CONCLUSION ................................................................................................18

TABLES OF CONTENTS AND AUTHORITIES

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3
4
*3D, Ltd. v. Spectratek Techs.*,
   41 Fed. Appx. 931 (9th Cir. 2002) ............................................................. 5

5
*4C, Inc. v. Pouls*,
   2012 U.S. Dist. LEXIS 84607 (D. Del. June 19, 2012) ........................ 14

6
7
*Access for the Disabled, Inc. v. First Resort, Inc.*,
   2012 WL 4479005 (M.D. Fla. Sept. 28, 2012) ....................................... 7

8
9
*Actuate Corp. v. Aon Corp.*,
   2012 U.S. Dist. LEXIS 118346 (N.D. Cal. Aug. 21, 2012) .................. 16

10
*Assessment Techs. of WI, LLC v. WIREdata, Inc.*,
   361 F.3d 434 (7th Cir. Mar.17, 2004) ................................................... 11

11
12
*Batjac Prods. v. Goodtimes Home Vid. Corp.*,
   1997 U.S. Dist. LEXIS 20357 (C.D. Cal. 1997) ........................... 5, 10, 14

13
14
*Bisson-Dath v. Sony Computer Entm't Am. Inc.*,
   2012 U.S. Dist. LEXIS 103159 (N.D. Cal. July 24, 2010) ............ 14-15, 17

15
*Bourne Co. v. MPL Commc'ns, Inc.*,
   675 F. Supp. 859 (S.D.N.Y. 1987) .................................................... 12-13

16
17
*Brod v. Gen. Publ'g Group, Inc.*,
   32 Fed. Appx. 231 (9th Cir. 2002) .................................................. 14, 17

18
*Bryant v. Media Right Prods.*,
   603 F.3d 135 (2d. Cir. 2010) .............................................................. 10

19
20
*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dept. of Health & Human Res.*,
   532 U.S. 598 (2001) ............................................................................ 6

21
22
*Cadkin v. Loose*,
   569 F.3d 1142 (9th Cir. 2009) ............................................................. 6

23
24
*Canal+ Image UK Ltd. v. Lutvak*,
   792 F. Supp. 2d 675 (S.D.N.Y. 2011) ................................................ 14

25
*Christianburg Garment Co. v. EEOC*,
   434 U.S. 412 (1997) .......................................................................... 10

26
27
*Classic Media, Inc. v. Mewborn*,
   532 F.3d 978 (9th Cir. 2008) ............................................................. 16

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*DHX, Inc. v. Allianz AGF MAT, Ltd.,*
   425 F.3d 1169 (9th Cir. 2005) ................................................................7

*Fantasy, Inc. v. Fogerty,*
   94 F.3d 553 (9th Cir. 1996) ......................................................... 16-17

*Fletcher v. City of Fort Wayne,*
   162 F.3d 975 (7th Cir. 1998) ...............................................................9

*Fogerty v. Fantasy, Inc.,*
   510 U.S. 517 (1994) ..............................................................................5

*Gamma Audio & Video, Inc. v. Ean-Chea,*
   11 F.3d 1106 (1st Cir. 1993) ...............................................................9

*Glass v. Sue,*
   2011 U.S. Dist. LEXIS 16793 (C.D. Cal. Feb. 8, 2011) ................14

*Halicki Films, LLC v. Sanderson Sales & Mktg.,*
   547 F.3d 1213 (9th Cir. 2008) ...........................................................15

*Healey v. Chelsea Resources, Ltd.,*
   947 F.2d 611 (2d Cir. 1991) ................................................................9

*Heckethorn v. Sunan Corp.,*
   992 F.2d 240 (9th Cir. 1993) .............................................................10

*Hendrickson v. Amazon.com, Inc.,*
   181 Fed. Appx. 692 (9th Cir. 2006) ..................................................14

*Hernandez v. Grubs,*
   2003 U.S. Dist. LEXIS 18855 (E.D.La. October 22, 2003) ............18

*Int'l Media Films, Inc. v. Lurcas Entm't, Inc.,*
   2011 WL 5865739 (S.D.N.Y. Nov. 22, 2011) ..................................10

*Jartech, Inc. v. Clancy,*
   666 F.2d 403 (9th Cir. 1982) .............................................................15

*Key Tronic Corp. v. United States,*
   511 U.S. 809 (1994) ..............................................................................9

*Kittel v. Thomas,*
   620 F.3d 1203 (9th Cir. 2011) .............................................................7

*Lifshitz v. Walter Drake & Sons, Inc.,*
   806 F.2d 1426 (9th Cir. 1986) ...........................................................15

*Lotus Dev. Corp. v. Borland Int'l, Inc.*,
   140 F.3d 70 (1st Cir. 1998) ....................................................................... 11, 16

*Love v. Associated Newspapers, Ltd.*,
   611 F.3d 601 (9th Cir. 2010) ........................................................................ 10

*Masalosalo by Masalaosalo v. Stonewall Ins. Co.*,
   718 F.2d 955 (9th Cir. 1983) ........................................................................ 18

*Meshwerks, Inc. v. Toyota Motor Sales U.S.A.*,
   528 F.3d 1258 (10th Cir. 2008) ..................................................................... 11

*Mills Music, Inc. v. Snyder*,
   469 U.S. 153 (1985) ...................................................................................... 16

*Milne v. Stephen Slesinger, Inc.*,
   2009 U.S. Dist. Ct. Motions LEXIS 49109 (C.D. Cal. July 6, 2009) ............. 13

*Milne v. Stephen Slesinger, Inc.*,
   2003 U.S. Dist. Ct. Motions LEXIS 8195 (C.D. Cal. Feb. 10, 2003) .............. 13

*Milton H. Greene Archives, Inc. v. Julien's Auction House LLC*,
   345 Fed. Appx. 244 (9th Cir. 2009) ................................................................. 9

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) ........................................................................ 10

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   695 F.3d 946 (9th Cir. 2012) ....................................................................... 6, 9

*Shangold v. Walt Disney Co.*,
   275 Fed. Appx. 72 (2d Cir. 2008) ................................................................... 17

*Siegel v. Warner Bros. Entertainment Inc.*,
   542 F. Supp. 2d 1098 (C.D. Cal. 2008) ............................................................ 3

*Singer Mgmt. Consultants, Inc. v. Milgram*,
   650 F.3d 223 (3d Cir. 2011) ............................................................................. 8

*Stewart v. Abend*,
   495 U.S. 207 (1990) ...................................................................................... 16

*Terket v. Lund*,
   623 F.2d 29 (7th Cir. 1980) ........................................................................... 18

*Virgin Records Am. Inc. v. Thompson*,
   512 F.3d 724 (5th Cir. 2008) ...................................................................... 5, 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **Statutes**

17 U.S.C. § 304(c)(6)(D) ..................................................................*passim*

17 U.S.C. § 505 ...................................................................................*passim*

17 U.S.C. § 507(b) ...................................................................................... 13

## **Other Authorities**

3 M. Nimmer & D. Nimmer, *Nimmer on Copyright*
    § 11.08[A]............................................................................................. 13

3 W. Patry, *Patry on Copyright* (2010) ("*Patry*")
    § 7:47 ................................................................................................... 13

6 *Patry*
    § 21:18 ................................................................................................. 13

TABLES OF CONTENTS AND AUTHORITIES

# INTRODUCTION

DC's motion (Dkt. 559; "Mot.") is not a legitimate attempt to secure attorney's fees under 17 U.S.C. § 505, but rather an improper effort to penalize its long-time opposing counsel, Marc Toberoff.  Despite DC's boasts that it is "entitled" to attorney's fees, such fees are *not* awarded as a matter of course in copyright cases.  An award of  fees is generally proper only when the prevailing party has secured meaningful relief, the losing party has made frivolous or objectively unreasonable arguments, and the award itself would promote the Copyright Act's purposes.  None of the factors are met here, and there is no reason to grant DC's motion.

DC only seeks fees against two defendants – Mr. Toberoff (counsel to the heirs of Jerome Siegel and Joseph Shuster, the co-creators of Superman) and Pacific Pictures Corporation ("PPC"), Mr. Toberoff's long defunct (Dkt. 31-1 at 4-5 ¶7, Ex. G at 189-90) "loan-out" company – on one claim, its Third Claim.  However, DC did not secure any meaningful relief against Mr. Toberoff or PPC on its Third Claim.

The Court invalidated the 2001 and 2003 PPC agreements, but those agreements had been voluntarily cancelled at Mr. Toberoff's suggestion in 2004, ***six years*** before DC filed suit, and neither Mr. Toberoff nor PPC ever argued in this case that they were valid.  The Court also invalidated a 2008 agreement between the Siegel and Shuster heirs to jointly negotiate settlement in the *Siegel* litigation of their jointly owned copyright (the "2008 Agreement"), but Mr. Toberoff and PPC were <u>not</u> parties to that agreement.  Nor can DC properly seek attorney's fees against Mr. Toberoff as to the 2008 Agreement for his role as counsel to the heirs.  DC must not be awarded fees against Mr. Toberoff for securing unnecessary relief (the 2001/2003 PPC Agreements) or relief as to his clients (the 2008 Agreement).

Furthermore, as pled by DC, its Third Claim was mooted when the Court granted its First Claim.  DC's Third Claim was expressly and solely pled "in the alternative – *i.e.,* if the Court does not grant DC's First Claim for Relief" (Dkt. 49 ("FAC") ¶166), which sought to invalidate the Shuster termination.  Because this

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR ATTORNEY'S FEES

Court granted DC's First Claim and invalidated the Shuster termination, the validity or invalidity of the cancelled 2001/2003 PPC Agreements and the 2008 Agreement regarding the Shuster estate's non-existent termination interest was moot, as DC well knows.  It is well settled that the Constitution limits the jurisdiction of federal court's to "live controversies," and DC could not obtain an "advisory opinion" on its Third Claim which had become moot.  Nor can DC seek attorney's fees on this moot claim.

Under established law, DC is not, for purposes of 17 U.S.C. § 505, the "prevailing party" on its Third Claim, given DC's utter failure to secure any meaningful relief against Mr. Toberoff or PPC on its moot claim. That alone means that DC is not entitled to an award of attorney's fees against Mr. Toberoff or PPC.

Furthermore, Defendants' position on the Third Claim was objectively reasonable, not "frivolous."  DC's Third Claim was premised on the notion that 17 U.S.C. § 304(c)(6)(D) provides a statutory "right" to terminated grantees such as DC. Defendants' argument that the Copyright Act does not confer any such right was supported by (1) the plain language of the statute, (2) the only on-point case, (3) the two leading copyright treatises, and (4) the arguments of DC's own counsel in prior cases.  Awards of attorney's fees are especially inappropriate where, as here, a losing party takes a reasonable and well-supported position on a close or novel issue, because such awards chill legitimate advocacy.

DC's motion for attorney's fees is defective and will remain defective regardless of the outcome of the pending Ninth Circuit appeal of the Court's summary judgment order.  This Court should therefore decline DC's request to delay consideration of its motion, and deny the motion.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2001, Shuster's nephew, Mark Warren Peary, sought advice on his family's interest in Superman, and contacted attorney Marc Toberoff.  Dkt. 479-6, Ex. JJ at 364:5-16.  In November 2001, Mr. Peary, Shuster's sister Jean Peavy, and Mr. Toberoff's loan-out company, Pacific Pictures Corp. ("PPC"), entered into an

agreement (the "2001 PPC Agreement") to probate Shuster's estate and exercise its termination rights under the Copyright Act. Dkt. 479-3, Ex. Z at 210-13. After the estate was probated in 2003, it entered into an agreement with PPC in 2003 (the "2003 PPC Agreement") and served notices of termination on DC (the "Shuster Termination") drafted and signed by Mr. Toberoff as "Counsel for the Estate of Joseph Shuster." Dkt. 479-6, Exs. DD at 324-28, EE at 329-32, FF at 333-48.

In 2004, at Mr. Toberoff's suggestion, the 2001/2003 PPC Agreements were cancelled and replaced by a standard legal retainer agreement with the Shuster estate, retroactive to 2001. Dkt. 305-40, Ex. 40; Dkt. 479-6, Exs. GG at 349, UU at 520-21.

In 2004, the Siegel heirs also entered into a legal retainer agreement with Mr. Toberoff, and filed suit (the *Siegel* litigation) to vindicate their 1997 statutory termination, which DC claimed was invalid. Dkt. 305-26, Ex. 26 at 1063-1068.

In 2005, DC sent Mr. Peary a low-ball offer to buy out the Shuster estate's termination interest, and tried to induce the estate to turn against and underbid the Siegels. Dkt. 479-6, Ex. HH at 351 (DC: "[I]f we are able to resolve matters with the Siegel heirs … *before* we reach an agreement with you [Shuster Estate] … there will not be any pressing need to reach an agreement with you…."). In 2008, prior to a court-ordered mediation in *Siegel*, the Siegel and Shuster heirs thus entered into an agreement (the "2008 Agreement") to jointly negotiate regarding their jointly-owned copyrights and prevent DC's "divide and conquer" tactics. Dkt. 160 at 50-51; 209 at 1-2, 4-5; *see also* Dkt. 512. The heirs were the only parties to this agreement. Dkt. 160 at 63; 502-5, Ex. Q at 856:8-21. Mr. Toberoff was ***not*** a party, and approved the agreement only "as to form," as their attorney. *See* Declaration of Keith G. Adams ("AD"), Ex. A at 7; Dkt. 160 at 63.

In 2008-09, the Court held that the Siegel heirs had successfully recaptured Siegel's Superman copyrights by valid termination. *Siegel v. Warner Bros. Entertainment Inc.*, 542 F. Supp. 2d 1098 (C.D. Cal. 2008).

In 2010, DC retaliated by filing this lawsuit against the Siegels, the Shusters,

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR ATTORNEY'S FEES

and their counsel Mr. Toberoff.  Dkt. 1.  DC's First Claim was brought only against
Mr. Peary, as executor of the Shuster estate, and his mother, Ms. Peavy.  FAC at 35.
DC's Third Claim was brought against all defendants, and alleged that the 2001 and
2003 PPC Agreements, as well as the heirs' 2008 Agreement, to which neither Mr.
Toberoff nor PPC were a party, violated a supposed "right" of DC under 17 U.S.C. §
304(c)(6)(D) to negotiate for the copyrights recovered by the Shuster termination.
FAC ¶¶ 165-73.

DC expressly pled its Third Claim "in the alternative – *i.e.,* if the Court does
not grant DC's First Claim for Relief."  FAC ¶166.  This made sense because DC's
First Claim sought to invalidate the Shuster Termination, while its Third Claim
sought a declaration that, if the First Claim was denied and the Termination valid,
then DC had an alleged exclusive "right" under 17 U.S.C. § 304(c)(6)(D) to negotiate
with the Shusters to repurchase their recaptured copyrights.  If, however, the First
Claim was granted, DC's Third Claim would be moot, because there would be no
terminated Shuster copyrights to negotiate over.

In response to DC's Third Claim, Defendants repeatedly pointed out that:  (i)
the 2001 and 2003 PPC Agreements were void *ab initio*; (ii) the 2001 and 2003 PPC
Agreements were voluntarily cancelled in 2004 and therefore moot; (iii) PPC itself
had been dissolved long before DC even filed suit; and (iv) 17 U.S.C. §304(c)(6)(D)
did not provide a terminated grantee like DC with a statutory "right" or standing to
sue.  *See, e.g.*, Dkt. 147-1 at 4-10, 192 at 1-3, 333 at 8-11, 338 at 5-7.

On July 16, 2012, DC filed a motion for partial summary judgment on its First
and Third Claims.  Dkt. 458.  In opposition, Defendants again noted that the PPC
Agreements were "cancelled and ineffective," and argued that the Copyright Act did
not provide DC with any "right."  Dkt. 462 at 21-23.  On August 20, 2012,
Defendants filed a cross-motion for partial summary judgment on DC's First, Second
and Third Claims.  Dkt. 478.  At a September 5, 2012 hearing on the parties' cross-
motions, ***all*** of the time was devoted to DC's First Claim, and the Court appeared

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR ATTORNEY'S FEES

1     very sympathetic to Defendants' arguments. *See, e.g.*, Dkt. 489 at 39:15-16, 48:6-7,

2     53:16-18.  Nonetheless, on October 17, 2012, the Court issued an order granting

3     DC's motion for partial summary judgment on both its First Claim and Third Claim.

4     Dkt. 507.  On December 11, 2012, the Court entered its order as a final judgment

5     pursuant to Rule 54(b), invalidating the 2001 and 2003 PPC Agreements (cancelled

6     in 2004), and the 2008 Agreement.  Dkt. 540.  The judgment is currently under

7     appeal.  Dkt. 541; 542; 9th Cir. Appellate Case No. 12-57245.

8         DC now brings a motion for attorney's fees, as to its Third Claim alone and

9     only against its opposing counsel, Mr. Toberoff, and his long-defunct loan-out

10    company, PPC.  Dkt. 559 at 1-2.

11                            **ARGUMENT**

12  **I.**      **ATTORNEY'S FEES ON DC'S THIRD CLAIM ARE NOT JUSTIFIED**

13        **A.**     **The Legal Standard For Attorney's Fees Awards**

14         "[I]t is the general rule in this country that unless Congress provides otherwise,

15    parties are to bear their own attorney's fees." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517,

16    533 (1994).  Attorney's fees may be awarded in copyright actions under 17 U.S.C. §

17    505, but "only as a matter of the court's discretion." *Fogerty,* 510 U.S. at 534.

18         The mere fact that a party's claim was granted is an insufficient basis to award

19    attorney's fees under 17 U.S.C. § 505.  *See 3D, Ltd. v. Spectratek Techs.*, 41 Fed.

20    Appx. 931, 932-33 (9th Cir. 2002) ("While success may be a prerequisite to

21    obtaining fees, it does not automatically support awarding fees in the absence of

22    additional considerations."); *Virgin Records Am. Inc. v. Thompson*, 512 F.3d 724,

23    726 (5th Cir. 2008) ("[R]ecovery of attorney's fees is not automatic."); *Batjac Prods.*

24    *v. Goodtimes Home Vid. Corp.*, 1997 U.S. Dist. LEXIS 20357, at *4-5 (C.D. Cal.

25    1997) (17 U.S.C. § 505 "does not authorize an automatic award of fees").

26         Rather, the court must make a specific determination that an award of

27    attorney's fees is warranted.  The court is to consider a variety of non-exclusive

28    factors, including "[1] the degree of success obtained on the claim; [2] frivolousness;

1   [3] motivation; [4] objective reasonableness of factual and legal arguments; and [5]

2   [the] need for compensation and deterrence." *Petrella v. Metro-Goldwyn-Mayer,*

3   *Inc.*, 695 F.3d 946, 957 (9th Cir. 2012) (upholding denial of fees) (citations omitted).

4       **B.**   **DC Does Not Meet The Standards For Awarding Attorney's Fees**

5         **1.**   **DC Was Not The "Prevailing Party" Under 17 U.S.C. § 505**

6             **Because DC Fails To Meet The "Material Alteration" Test**

7         Under 17 U.S.C. § 505, "the court may … award a reasonable attorney's fee to

8   the ***prevailing party***...." (emphasis added). The Supreme Court has clearly held that

9   "prevailing party" in the context of attorney's fees is a "legal term of art" that does

10  not simply mean the party that wins. *Buckhannon Bd. & Care Home, Inc. v. W.*

11  *Virginia Dept. of Health & Human Res.*, 532 U.S. 598, 603-05 (2001) (attorney's

12  fees require "judicially sanctioned change in the parties' legal relationship"). In

13  copyright cases, "[t]he key [prevailing party] inquiry is whether some court action

14  has created a '*material alteration of the legal relationship of the parties*.'" *Cadkin v.*

15  *Loose*, 569 F.3d 1142, 1148-49 (9th Cir. 2009) (emphasis added) (citation omitted)

16  (holding that "the material alteration test … governs the prevailing party inquiry

17  under § 505 of the Copyright Act….").

18        DC's boast of a "complete victory" is false. Mot. at 2. For purposes of 17

19  U.S.C. § 505, DC did not "prevail" against Mr. Toberoff or PPC on its Third Claim,

20  the only claim for which it seeks attorney's fees, because it fails the "material

21  alteration" test – it did not secure any relief that altered the legal relationship between

22  DC, Mr. Toberoff and PPC. *Cadkin*, 569 F.3d at 1148.

23            a.   DC's Third Claim Was Moot

24        The entirety of DC's Third Claim was pled *by DC* "in the alternative – *i.e.,* if

25  the Court does not grant DC's First Claim for Relief." FAC ¶166. Because the Court

26  granted DC summary judgment on its First Claim and invalidated the Shuster

27  Termination, the Third Claim was moot per DC's complaint and as a practical matter.

28  DC's Third Claim alleges that the 2001/2003 PPC Agreements and 2008 Agreement

violated its purported "right" to exclusively negotiate with the Shusters to repurchase the Superman copyrights recaptured by the Shuster Termination.  However, in granting DC summary judgment on its First Claim, the Court held that the Shuster Termination was ineffective due to a 1992 agreement, and that the Shusters therefore would *not* recover any Superman copyrights.  Dkt. 507 at 13, 16.  Thus, under the Court's order, there was never a Shuster termination interest to be affected by the 2001/2003 PPC Agreements or 2008 Agreement.  Because DC could not have been denied an alleged "right" to "exclusive negotiations" (FAC, ¶¶165-73) over a ***non-existent*** termination interest, DC's alternative Third Claim was moot.

"The Constitution limits the jurisdiction of the federal courts to live controversies…."  *Kittel v. Thomas*, 620 F.3d 1203, 1206 (9th Cir. 2011); *see also DHX, Inc. v. Allianz AGF MAT, Ltd.*, 425 F.3d 1169, 1174 (9th Cir. 2005) ("It has long been settled that we have no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before [us].'  The federal courts do not, and cannot, render advisory opinions") (citations omitted).

DC's "winning" of a moot claim is not a sound basis for awarding attorney's fees.  *See Access for the Disabled, Inc. v. First Resort, Inc.*, 2012 WL 4479005, at *7 (M.D. Fla. Sept. 28, 2012) (plaintiffs not entitled to fees as "their claims are moot").

> b.   <u>Even If The Third Claim Had Not Been Mooted, DC Did Not Secure Relief Against Mr. Toberoff Or PPC</u>

<u>PPC Agreements</u>:  With regard to the 2001 and 2003 PPC Agreements, Mr. Toberoff/PPC have *always* agreed with DC that those agreements were ineffective as a matter of law and did *not* transfer any of Shuster's copyright interests.  *See, e.g.*, Dkt. 145-1 at 11, 25; 333 at 8 n.5; 338 at 7; 347 at 18-19, ¶99; 462 at 21; 478 at 22; 495 at 10-11.  Defendants thus voluntarily (and retroactively) cancelled these agreements in 2004 – ***six years*** before DC brought its claim.  Dkt. 479-6, Exs. GG at 349.  The Court's summary judgment order acknowledged this.  Dkt. 507 at 17 ("The

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR ATTORNEY'S FEES

Court further agrees with defendants that, 'as a pure matter of law, the 2001/2003 PPC Agreement – could not and did not transfer the prospective copyrights….'"). And DC admitted this.  Mot. at 1 (noting "defendants conceded that their two Pacific Pictures agreements with the Shuster heirs were … 'void *ab initio*'").

The only relief DC secured as to the 2001/2003 PPC Agreements was to have them "deemed invalid and unenforceable under [§] 304(c)(6)(D) of the Copyright Act."  Dkt. 540 at 1.  In other words, DC obtained a declaration invalidating agreements that Defendants had already agreed were ineffective, and rendering unenforceable agreements with PPC that Defendants had voluntarily cancelled in 2004, long prior to DC's suit.  DC did not obtain any other relief regarding the PPC Agreements.  This ruling did not change ***anything*** about the parties' legal relationship, and without a "material alteration," DC cannot be the "prevailing party" under 17 U.S.C. § 505.  *See Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 232 (3d Cir. 2011) (plaintiff is *not* a "prevailing party" under 17 U.S.C. § 505 where defendants' voluntary actions mooted plaintiff's claims).

<u>2008 Agreement</u>:  The invalidation of the 2008 Agreement also did not materially alter DC's legal relationship with Mr. Toberoff or PPC.  The parties to the agreement were the Siegel and Shuster heirs, not Mr. Toberoff or PPC.  Mr. Toberoff signed the Agreement approving it only "as to form," as the attorney for both the Siegel and Shuster heirs.  AD, Ex. A at 7.  The agreement merely "require[d] … the consent of the Siegels and Shuster Estate, ***not*** their attorney Mr. Toberoff, to a settlement of their termination rights with DC."  Dkt. 160 at 63.  The only relief DC secured as to this agreement was to have it "deemed invalid and unenforceable."  Dkt. 540 at 1.  Because neither Mr. Toberoff nor PPC were parties to the 2008 Agreement, this relief did not and could not materially alter either of their legal relationships with DC.  Therefore under 17 U.S.C. § 505 DC was not a "prevailing party" against Mr. Toberoff and PPC as to the 2008 Agreement either.

///

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR ATTORNEY'S FEES

c.    DC's Limited Success Does Not Justify A Fee Award

Even if the well-settled "material alteration test" were ignored, and DC were somehow construed to be the "prevailing party," this would still not support attorney's fees, as the "degree of [DC's] success" is quite limited. *Petrella*, 695 F.3d at 957. DC's limited success in invalidating (1) already cancelled agreements and (2) an agreement to which neither Mr. Toberoff nor PPC were a party cannot support an award of attorney's fees against Mr. Toberoff or PPC. *See Milton H. Greene Archives, Inc. v. Julien's Auction House LLC*, 345 Fed. Appx. 244, 249 (9th Cir. 2009) ("[A]ttorney's fees may be properly denied where the plaintiff's success on a legal claim can be characterized as purely technical or *de minimis*.") (citation omitted); *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1119 (1st Cir. 1993) (declining to award fees given the party's "limited success"); *Fletcher v. City of Fort Wayne*,162 F.3d 975, 976 (7th Cir. 1998) ("A plaintiff who recovers only nominal damages technically 'prevails,' ... but a judge has discretion to withhold fees when damages are tiny in relation to the claim.... In other words, for trivial recoveries the only reasonable award of fees is zero.").

d.    As To The 2008 Agreement, DC Improperly Seeks Fees
      Against Mr. Toberoff As The Heirs' Litigation Counsel

In seeking attorney's fees against Mr. Toberoff for the 2008 Agreement – to which he was not a party and signed only "as to form" as the parties' attorney – DC improperly seeks fees against Mr. Toberoff as the heirs' attorney, not as a party. The Copyright Act does not provide the "explicit Congressional authorization" required to award attorney's fees against the losing party's attorney. *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994); *see also Healey v. Chelsea Resources, Ltd.*, 947 F.2d 611, 624 (2d Cir. 1991) (noting "section [505 of the Copyright Act] does not state that such an award may be made against the attorneys"). "When a fee-shifting statute that authorizes the courts to award attorneys' fees to prevailing parties does not mention an award against the losing party's attorney, the appropriate

1  inference is that an award against the attorney[] is *not* authorized." *Id.*; *see*

2  *Heckethorn v. Sunan Corp.*, 992 F.2d 240, 242 (9th Cir. 1993) ("[T]he presumption

3  [is] that an attorney is generally not liable for [attorney's] fees unless that prospect is

4  spelled out" in "a fee-shifting statute.").  DC cannot recover fees against Mr.

5  Toberoff based on his role as litigation counsel for the parties to the 2008 Agreement.

> ### 2. Defendants' Claims And Defenses Were Not Frivolous Or Objectively Unreasonable

>> a. Positions Are Objectively Unreasonable Only If They Are Unsupported By The Facts Or Law

10  "The objective unreasonableness of the losing party's factual and legal

11  arguments" is a key factor in attorney's fees determinations.  *Love v. Associated*

12  *Newspapers, Ltd.*, 611 F.3d 601, 614-15 (9th Cir. 2010); *see Bryant v. Media Right*

13  *Prods.*, 603 F.3d 135, 144 (2d. Cir. 2010) (noting that the factor of objective

14  unreasonableness "should be given substantial weight").  Because Defendants'

15  arguments and defenses as to the Third Claim were neither objectively unreasonable

16  nor frivolous, this weighs heavily against an award of attorney's fees.  *See Perfect 10,*

17  *Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007) (affirming denial of

18  attorney's fees where "there [was] ample support for the district court's finding that

19  [party's] legal claims [were] not frivolous or objectively unreasonable").

20  Positions are not "objectively unreasonable merely because they could not

21  survive summary judgment." *Batjac Prods.*, 1997 U.S. Dist. LEXIS 20357, at *7;

22  *see Int'l Media Films, Inc. v. Lurcas Entm't, Inc.*, 2011 WL 5865739, at *2

23  (S.D.N.Y. Nov. 22, 2011) ("Lack of success is not the equivalent of … objective

24  unreasonableness.").  Instead, they are objectively unreasonable only when they are

25  "unsupported by facts or law." *Id.*

26  The Supreme Court has strongly emphasized that courts must not chill

27  legitimate advocacy through the imposition of attorney's fees.  *See Christianburg*

28  *Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1997) ("It is important that a district

10

court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not prevail, his action must have been unreasonable or without foundation.").  Other Courts have also cautioned against awarding attorney's fees in novel areas of copyright law such as this one, because such fees could discourage litigation that would otherwise serve to clarify the boundaries of the law.  *See Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 75 (1st Cir. 1998) (cautioning against "the potentially chilling effect of imposing [attorney's fees]" because "[w]hen close infringement cases are litigated, copyright law benefits from the resulting clarification of the doctrine's boundaries"); *Meshwerks, Inc. v. Toyota Motor Sales U.S.A.*, 528 F.3d 1258, 1270 n.11 (10th Cir. 2008) (denying attorney's fees where, "[f]ar from being frivolous, this suit presents a novel and consequential question"); *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. Mar.17, 2004) (Posner, J.) (noting that "there is no urgent need to add in an award of attorneys' fees") (citations omitted).

            b.    <u>Defendants' Position Was Well Supported By The Statute, Case Law, And Leading Treatises, And Was Advanced Elsewhere By DC's Own Counsel</u>

Defendants' position as to DC's Third Claim was objectively reasonable. Defendants never argued that the 2001 or 2003 PPC Agreements were valid; to the contrary, they long ago concluded that these agreements were invalid, voluntarily cancelled the agreements, and so informed the Court.  Defendants merely argued that 17 U.S.C. § 304(c)(6)(D) did not provide DC with any "right" or standing to sue. *See, e.g.*, Dkt. 333 at 8-11; 338 at 5-6; 462 at 21-24; 478 at 22-24; 495 at 12.  Even if ultimately unsuccessful, Defendants' position was well-supported by the statute's language, by relevant on-point case law, and by the two leading copyright treatises. As shown below, *DC's own counsel* made identical arguments in a prior case.

<u>The Statute</u>:  DC's Third Claim was premised on a supposed statutory "right" under 17 U.S.C. § 304(c)(6)(D) to exclusively negotiate the purchase of the

1    copyrights recovered by the Siegels and the Shuster Estate.  FAC ¶¶ 167-168.

2    Section 304(c)(6)(D) states the following:

3           A further grant, or agreement to make a further grant, of any right covered by a
             terminated grant is valid only if it is made after the effective date of the
4           termination. As an exception, however, an agreement for such a further grant
             may be made between the author or any of the persons provided by the first
5           sentence of clause (6) of this subsection, or between the persons provided by
             subclause (C) of this clause, and the original grantee or such grantee's
6           successor in title, after the notice of termination has been served as provided
             by clause (4) of this subsection.
7

8    The plain language of the statute gives a terminated grantee, like DC, no "right" or

9    "rights."  It simply states when a further grant of terminated copyrights is effective or

10   ineffective.  As such, Defendants properly maintained that the subject agreements

11   could not have violated DC's "right" because no such right exists under the

12   Copyright Act.

13          <u>Case Law:</u>  The only on-point case to have considered the issue expressly

14   supports Defendants' position.  In *Bourne Co. v. MPL Commc'ns, Inc.*, 675 F. Supp.

15   859, 865 (S.D.N.Y. 1987), the Court unambiguously ruled that § 304(c)(6)(D)

16   "provides merely that an agreement between the terminating party and the terminated

17   grantee prior to the effective date of termination is the only one that is *valid* and

18   *enforceable* against the former" but "neither compels the terminating party to

19   negotiate with the terminated grantee, nor forbids him from negotiating with anyone

20   else."  *See also id.* (noting that if Congress had wanted to provide terminated grantees

21   such as DC with a statutory "right" then "it would have done so in clear language").

22          <u>DC's Counsel's Arguments:</u>  Nor can DC's counsel plausibly argue that it was

23   "unreasonable" to rely on *Bourne*.  Less than a year before filing DC's Third Claim,

24   DC's counsel, Mr. Petrocelli, made the identical arguments that Defendants made:

25          Section 304(c)(6)(D) of the Copyright Act 'provides merely that an agreement
             between the terminating party and the terminated grantee prior to the effective
26          date of termination is the only one that is *valid* and *enforceable* against the
             former.' *Id.* [*Bourne*, 675 F. Supp.] at 865 (emphases added). This section does
27          not create a '"right of first refusal,"' does not '"give the terminated grantee a
             preferred competitive position,"' and it '"neither *compels* the terminating party
28          to negotiate with the terminated grantee, nor *forbids* him from negotiating with
             anyone else."' *Id.* (emphases added).

                                          12

1  *Milne v. Stephen Slesinger, Inc.*, 2009 U.S. Dist. Ct. Motions LEXIS 49109, at *39

2  n.10 (C.D. Cal. July 6, 2009) (emphasis in original).  *See also Milne*, 2003

3  U.S. Dist. Ct. Motions LEXIS 8195, at *1 (C.D. Cal. Feb. 10, 2003) (Petrocelli):

4  
5  
6  
7

> [Defendants] contention that the Copyright Act creates a statutory right is inconsistent with the plain language of the Act and has been expressly rejected by the only federal court reporting a decision on the issue.  As the District Court for the Southern District of New York held in [*Bourne*,] Section 304(c)(6)(D) of the Copyright Act does not provide for a 'right of first refusal' or any 'exclusive period of negotiation.'  *Id.* at 865-866.

8  <u>Treatises:</u>  Two leading copyright treatises also agreed with Defendants that §

9  304(c)(6)(D) neither gives terminated grantees such as DC any rights, nor provides

10  them with standing to sue.  6 W. Patry, *Patry on Copyright* (2010) ("*Patry*") § 21:18

11  (a terminated grantee has "no rights under [§ 304(c)(6)(D)], [it] cannot sue for failure

12  to comply, and the provision therefore does not provide a basis for standing"); 3

13  *Patry on Copyright* § 7:47 ("[§ 304(c)(6) (D) is] sometimes erroneously described as

14  a 'right of first refusal.'"); 3 *Nimmer* § 11.08[A], n.6 (2010) ("It is inaccurate to refer

15  to this [§ 304(c)(6)(D)] advantage as 'an exclusive period of negotiation.'").

16  <u>Decisions In This Case:</u>  After extensive briefing, Magistrate Zarefsky rejected

17  DC's argument that the 2008 Agreement was "an independent wrong [that] violates

18  the Copyright Act," finding it instead to be a legitimate "Drysdale-Koufax collective

19  approach to negotiation."  Dkt. 209 at 5-8.  This Court upheld that ruling.  Dkt. 252.

20  While this Court ultimately invalidated the 2008 Agreement, the prior rulings of both

21  Magistrate Zarefsky and this Court demonstrate the closeness of the question.

22  <u>Affirmative Defenses:</u>  Defendants also raised reasonable affirmative defenses

23  against DC's Third Claim, including that the claim was barred by the statute of

24  limitations because: (1) the Copyright Act, 17 U.S.C. § 507(b), imposes a three-year

25  statute of limitations and (2) it is undisputed that in 2006 DC received the (long

26  cancelled) 2001/2003 PPC Agreements it complains about, but waited to file until

27  2010, well after the limitations period had expired.

28  * * *

13
DEFENDANTS' OPPOSITION TO DC'S MOTION FOR ATTORNEY'S FEES

As Defendants' position was objectively reasonable, it was not frivolous, further weighing against a fee award.  *See 4C, Inc. v. Pouls*, 2012 U.S. Dist. LEXIS 84607, at *7 (D. Del. June 19, 2012) (noting courts "have analyzed frivolousness and objective unreasonableness together"); *Glass*, 2011 U.S. Dist. LEXIS 16793, at *9 (positions are "frivolous only when … wholly without merit").

While unsuccessful here, Defendants' position was nowhere near "wholly without merit" (*Glass v. Sue*, 2011 U.S. Dist. LEXIS 16793, at *9 (C.D. Cal. Feb. 8, 2011)) or "clearly baseless" (*Bisson-Dath v. Sony Computer Entm't Am. Inc.*, 2012 U.S. Dist. LEXIS 103159, at *5 (N.D. Cal. July 24, 2010) (quotations omitted)), such as to justify an award of fees.  Rather, it was based on a reasonable reading of the plain language of the Copyright Act and all of the leading authorities.  *See Batjac Prods.*, 1997 U.S. Dist. LEXIS 20357, at *9 (declining to award attorney's fees where the losing party's position while "incorrect, … was not without legal support").  Because "the imposition of a fee award against a … [party] with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act," DC's motion should be denied.  *Canal+ Image UK Ltd. v. Lutvak*, 792 F. Supp. 2d 675, 681 (S.D.N.Y. 2011); *see Hendrickson v. Amazon.com, Inc.*, 181 Fed. Appx. 692, 693 (9th Cir. 2006) (vacating fees because Court was "not persuaded that [the losing party's] action was frivolous or objectively unreasonable"); *Brod v. Gen. Publ'g Group, Inc.*, 32 Fed. Appx. 231, 236 (9th Cir. 2002) (affirming denial of fees where losing party "raised colorable legal and factual issues").

### 3.    Defendants' Motivations In Defending Against DC's Third Claim Were Proper

Defendants' motive in defending against DC's Third Claim was proper.  *See Virgin Records Am. Inc.*, 512 F.3d at 727 (denying attorney's fees where there was "no indication that Plaintiffs prosecuted this suit with malevolent intent") (quotations omitted).

As detailed above, Defendants recognized that the PPC Agreements were

ineffective and voluntarily cancelled them years before DC ever filed its Third Claim.

Defendants disputed DC's contention that it had a legal "right" and/or standing to sue under § 304(c)(6)(D), which provides no such right. As shown above, this position was adopted in good faith and fully supported by the relevant authorities. *See Jartech, Inc. v. Clancy*, 666 F.2d 403, 408 (9th Cir. 1982) (no bad faith where "sincere interest in the settlement of close legal questions"); *Lifshitz v. Walter Drake & Sons, Inc.*, 806 F.2d 1426, 1435 (9th Cir. 1986) ("Because some of the issues presented … were substantial questions of first impression we cannot say that th[is] was … brought in bad faith.").

Defendants also sought to protect the Siegel and Shuster heirs' 2008 Agreement, and their freedom to jointly negotiate the sale of their jointly-owned copyrights. These were entirely appropriate reasons to dispute DC's Third Claim. *See Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1230 (9th Cir. 2008) (affirming denial of attorney's fees where losing parties' "motivation in bringing the claims was to protect an interest that they believed was theirs").

DC vaguely complains that Defendants' arguments "forced" DC to undertake supposedly "needless rounds of briefing" and other litigation work. Mot. at 4. This is factually inaccurate and legally irrelevant. The Third Claim was only lightly litigated, and the parties' briefs were narrowly and properly focused on DC's supposed "right" and standing to sue, and Defendants' affirmative defenses. *See, e.g.*, Dkt. 458 at 23-25, 468 at 10-12. The only other litigation related to the Third Claim consisted of DC's repeated motions to compel production of the 2008 Agreement – motions that DC *lost*. Dkts. 160; 209 at 10; 225; 252; 501; 533 at 2.

Finally, even if the Third Claim had been heavily litigated (it was not), "[t]he fact that both parties aggressively pursued their claims through pre-trial motions and discovery does not give rise to a finding of bad faith." *Bisson-Dath*, 2012 U.S.Dist. LEXIS 103159, at *8 (N.D. Cal. July 24, 2012).

///

### 4.    An Award Of Attorney's Fees Would Undermine The Termination Provisions

Attorney's fees should only be awarded when they will "advance the primary objective of the Copyright Act." *Actuate Corp. v. Aon Corp.*, 2012 U.S. Dist. LEXIS 118346, at *3 (N.D. Cal. Aug. 21, 2012).  An award of attorney's fees here would ***undermine*** the primary purpose of the Copyright Act's termination provisions.  The Copyright Act's "termination right" was "intended to make the rewards for the creativity of authors more substantial." *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 172-173 (1985); *see Marvel Characters v. Simon*, 310 F.3d 280, 290 (same).  This right was made "inalienable" to ensure that it could be exercised by authors and their heirs.  *See Stewart v. Abend*, 495 U.S. 207, 230 (1990); 17 U.S.C. §§ 304(c)(5), 203(a)(5).  The Ninth Circuit reaffirmed this in a case successfully litigated by Mr. Toberoff, *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 982, 984 (9th Cir. 2008): "Congress's clear intent [was] to benefit authors and their heirs" and the termination right was "in large measure designed to assure that [the 1976 Act's] new benefits would be for the authors and their heirs."

Authors and heirs seeking to exercise their termination rights will inevitably be in an economically weaker position than a media giant resisting termination. Awarding fees against an attorney who agreed to litigate a termination case on a contingency basis would significantly deter other attorneys from considering such cases, thereby encumbering an author's ability to secure representation, chilling the termination right itself.  *See Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 559 (9th Cir. 1996) ("The chilling effect of attorney's fees may be too great"); *Lotus Dev. Corp.*, 140 F.3d at 75 (cautioning against "the potentially chilling effect of imposing [attorney's fees]"); *Patrella*, 695 F.3d at 957 (upholding denial of attorney's fees where award "would have a deterrent effect upon other copyright owners … who have valid claims" because that "would not further the policies of the Copyright Act").

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR ATTORNEY'S FEES

The economic inequities at play also weigh against a fee award.  DC is owned by one of the largest media corporations in the world and has spared no expense in litigating this case.  An award of attorney's fees would be of little significance to DC, but very detrimental to Mr. Toberoff and his family, and would send a clear message to attorneys to stay far away from statutory termination cases.  *See Shangold v. Walt Disney Co.*, 275 Fed. Appx. 72, 74 (2d Cir. 2008) ("[C]ourts should not hesitate to take the relative wealth of the parties into account…."); *Fantasy, Inc.*, 94 F.3d at 559 (attorney's fees should not be awarded if such would "impose an inequitable burden" on the losing party); *Brod*, 32 Fed. Appx. at 236 ("We will not discourage … defending copyrights … due to the threat of attorney's fees."); *Bisson-Dath*, 2012 U.S. Dist. LEXIS 103159, at *9 (denying award of attorney's because others "might be hesitant to bring meritorious … claims in the future if they believe that such claims could lead to financial ruin").

## II.    DC'S ATTORNEY'S FEES ARE EXCESSIVE

DC has not provided detailed billing records with its motion, as is the norm, opting instead for a drawn-out, bifurcated process.  *See* Mot. at 4-5.  As a result, Defendants are unable to meaningfully assess and refute DC's requested attorney's fees.  However, it is already evident that $500,000 is excessive.  As set forth above, DC's Third Claim was pled in the alternative, lightly litigated, and of little ultimate significance, as it largely sought a declaration that long-ago cancelled agreements (that Defendants agreed were invalid) were invalid.  Thus, only three pages of DC's twenty-five page summary judgment motion and only two pages of its 12-page reply concerned the Third Claim; the vast majority of DC's briefing was devoted to the First Claim, where Mr. Toberoff and PPC were **not** defendants.  *See* Dkt. 458 at 23-25; 468 at 10-12.  Furthermore, DC should not be able to claim fees for bringing repeated *unsuccessful* discovery motions to compel production of the 2008 Agreement, which both Magistrate Zarefsky and this Court upheld as privileged.  Dkts. 209 at 10; 252; 533 at 2.  Defendants' respectfully reserve the right to further

challenge DC's billing records, if DC ever submits them to the Court.

## III.    DC'S MOTION SHOULD NOT BE DEFERRED

For the reasons detailed above, attorney's fees are not warranted, and will not be warranted, regardless of the outcome of Defendants' appeal of the summary judgment order currently pending before the Ninth Circuit.  9th Cir. Appeal No. 12-57245.  The Court can therefore easily dispose of DC's motion for attorney's fees now.

The Ninth Circuit has clearly stated that district courts retain jurisdiction over a motion for attorney's fees even "after the notice of appeal from the decision on the merits has been filed" and has articulated strong policy reasons for district courts to decide such motions before an appeal is decided, as it can "prevent delay and duplication at the appellate level."  *Masalosalo by Masalaosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir. 1983).  "If a district court decides a fee issue early in the course of a pending appeal on the merits, and the fee order is appealed, the appeals may be consolidated."  *Id.*; *see also Terket v. Lund*, 623 F.2d 29, 34 (7th Cir. 1980) (same).  This prevents piecemeal appeals.  *Id.* ("[I]n the majority of cases, piecemeal appeals may well be caused by preventing district courts from ruling … on prompt post-judgment fee motions after a notice of appeal.").

Adjudication of this motion would allow this Court to consider the fee issue while the matter is still fresh, and allow an appeal on that issue (if any is taken) to be consolidated with the current appeal.  The Court should decline DC's suggestion (Mot. at 5) that it defer consideration of its motion until after the appeal is completed. *See Hernandez v. Grubs*, 2003 U.S. Dist. LEXIS 18855 (E.D. La. October 22, 2003) ("[I]t is *normal* … that the Court decide the award of attorneys' fees prior to an appeal being taken.").

## <u>CONCLUSION</u>

Defendants respectfully request that this Court deny DC's motion for attorney's fees in its entirety.

18
DEFENDANTS' OPPOSITION TO DC'S MOTION FOR ATTORNEY'S FEES

1    Dated:  February 4, 2013         RESPECTFULLY SUBMITTED,

2                                     /s/ Keith G. Adams

3                                     Keith G. Adams

                                      TOBEROFF & ASSOCIATES, P.C.
4                                     Attorneys for Defendants Mark Warren Peary *et al.*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO DC'S MOTION FOR ATTORNEY'S FEES