Marc Toberoff (State Bar No. 188547)
  mtoberoff@toberoffandassociates.com
Keith G. Adams (State Bar No. 240497)
  kadams@toberoffandassociates.com
Pablo D. Arredondo (State Bar No. 241142)
  parredondo@toberoffandassociates.com
David Harris (State Bar No. 255557)
  dharris@toberoffandassociates.com
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway #348
Malibu, California 90265
Telephone:   (310) 246-3333
Fax:         (310) 246-3101

Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>    Plaintiff,<br><br>    vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>    Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON DC'S FOURTH, FIFTH AND SIXTH CLAIMS**<br><br>*Notice of Motion and Motion; Declaration of Keith Adams; and [Proposed] Order and Statement of Decision filed concurrently herewith*<br><br>Complaint filed:   May 14, 2010<br>Discovery Cutoff:  None Set<br>Trial Date:        None Set<br><br>Date:   March 11, 2013<br>Time:   1:30 p.m.<br>Place:  Courtroom 11 |

DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS**

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| 1 | On October 2, 1992, DC entered into a one-page agreement with Joe Shuster's surviving siblings, Frank Shuster and Jean Adele Peavy (the "1992 Agreement"). | Dkt. 49 (First Amended Complaint; "FAC") ¶55; Declaration of Keith G. Adams ("AD"), Ex. A |
| 2 | In November 2001, Joe Shuster's nephew, Mark Warren Peary, and Ms. Peavy entered into an agreement (the "2001 PPC Agreement") with Pacific Pictures Corporation ("PPC"). That agreement stated in part:<br><br>In consideration of the mutual covenants contained herein and other good and valuable consideration, PPC and Claimants hereby form a joint venture (the "Venture") to investigate, retrieve, enforce and exploit the Rights, including without limitation, via the establishment of Joe Shuster's estate and the estate's termination pursuant to Section 304(c) of the U.S. Copyright Law (Title 17, U.S.C.) of any and all grant or transfers by Joe Shuster of any copyright interest in his creations. | FAC ¶60; AD, Ex. D at 21 |
| 3 | On October 7, 2003, the Los Angeles Superior Court appointed Mr. Peary as executor of the estate of Joseph Shuster (the "Shuster Estate"). | AD, Ex. J |
| 4 | On October 27, 2003, the Shuster Estate and PPC entered into an agreement (the "2003 PPC Agreement"). That agreement stated in part:<br><br>Client hereby engages PPC as its exclusive advisor for the purpose of retrieving, enforcing and exploiting all of Joe Shuster's, and his estate's rights, claims, copyrights, property, title and interests in and to Joe Shuster's creations (hereinafter, | AD, Ex. K at 102 |

1
DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
|  | such rights, property and claims, are individually and collectively referred to as the "Rights"). The Rights shall include without limitation, all current and future rights, claims, title, copyrights and interests of Client in and to each character, story element, and indicia associated with, and all rights to proceeds from "SUPERMAN," or the "SUPERMAN" stories and comic books, including, without limitation, Client's copyright termination interest in "SUPERMAN" pursuant to Section 304(d) of the U.S. Copyright Law. |  |
| 5 | In November 2003, Mr. Toberoff, on behalf of the Shuster Estate, served on DC Comics ("DC") and filed a notice of termination under 17 U.S.C. § 304(d) of Joe Shuster's prior Superman copyright grants to DC (the "Shuster Termination"). | AD, Ex. M |
| 6 | On September 10, 2004, Toberoff, Peary and Peavy voluntarily cancelled the 2001 and 2003 PPC Agreements. | AD, Ex. N; Ex. O |
| 7 | In September 2004, Toberoff, Peary and Peavy entered into a legal retainer agreement dated as of November 23, 2001. | AD, Ex. P, Ex. FF at 473:1-8, 474:4-7 |
| 8 | In 1997, Jerome Siegel's widow, Joanne Siegel, and his daughter, Laura Siegel Larson (the "Siegels"), served on DC and filed notices of termination under 17 U.S.C. § 304(c) of Siegel's Superman copyright grants to DC (the "Siegel Termination"). | FAC ¶67 |

2
DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| 9 | By letter dated April 15, 1999, DC contested the Siegel Termination. | *Siegel v. Warner Bros. Entm't Inc.*, 542 F. Supp. 2d 1098, 1114 (C.D. Cal. 2008) |
| 10 | The Siegels thereafter engaged in negotiations with DC, represented by attorney Kevin Marks. | FAC ¶68 |
| 11 | On October 19, 2001, Marks sent DC a letter outlining and purporting to accept what he believed were the terms of an oral October 16, 2001 offer by DC. | AD, Ex. B |
| 12 | On October 26, 2001, DC sent Marks its "outline" of what it believed the terms were. | AD, Ex. C at 13 |
| 13 | On February 1, 2002, DC sent a 56-page draft of the agreement it proposed. | AD, Ex. E |
| 14 | On May 9, 2002, Joanne Siegel sent a letter to DC's parent, AOL Time Warner, Inc. That letter stated in part:<br><br>…. Negotiations dragged on for four difficult years. We made painful concessions assured if we did we would arrive at an agreement. When we made these difficult concessions and reluctantly accepted [DC's] last proposal…we were stabbed in the back by a shocking contract.<br>    Your company's unconscionable contract dated February [1], 2002 contained new, outrageous demands that were not in the [October 19] proposal. …. After four years we have no deal and this contract makes an agreement impossible. | AD, Ex. F at 82, 84 |

3
DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| 15 | In 2002, Mr. Toberoff formed a joint venture with Ariel Emanuel, the CEO of the Endeavor Talent Agency (now William Morris Endeavor), called IP Worldwide, LLC. | AD, Ex. G, Ex. FF at 472:10-24 |
| 16 | In late July/August 2002, Mr. Toberoff informed Mr. Marks that he was working with Mr. Emanuel and inquired whether the Siegels were interested in licensing their rights. | AD, Ex. S at 147:6-148:6; Ex. W at 249:10-250:2 |
| 17 | In August 2002, Marks, Toberoff and Emanuel scheduled and held a conference call, in which an offer was made to purchase the Siegels' rights for $15 million (the "August 2002 Offer"). | AD, Ex. S at 149:2-150:5, Ex. W at 253:24-258:9 |
| 18 | Marks conveyed the August 2002 offer to the Siegels, but neither they nor Marks responded to it. | AD, Ex. S at 150:23-151:24, Ex. W at 263:20-264:8 |
| 19 | On September 21, 2002, the Siegels sent a letter to Marks, with a copy to DC, terminating Marks and ending negotiations with DC Comics. The letter stated in part:<br><br>As we previously discussed with you and hereby affirm, we rejected DC Comics' offer for the Siegel Family interest in Superman and other characters sent to us by you on February 4, 2002. We similarly reject your redraft of the February 4, 2002 document which you sent to us on July 15, 2002. Therefore due to irreconcilable differences, after four years of painful and unsatisfying negotiations, this letter serves as formal notification that we are totally stopping and ending all negotiations with | AD, Ex. H at 92 |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
|  | DC Comics, Inc., its parent company AOL Time Warner and all of its representatives and associates, effective immediately. |  |
| 20 | On October 3, 2002, the Siegels entered into an agreement with IP Worldwide, LLC to represent the Siegels' Superman termination interest (the "IP Worldwide Agreement"). That agreement stated in part:<br><br>1. In consideration for IPW's services set forth below, the mutual covenants contained herein and other good and valuable consideration, Owner hereby grants IPW the exclusive right to represent Owner and the Rights throughout the world in negotiating and assisting Owner to arrange and negotiate the sale, lease, license and all other dispositions or exploitations of the Rights, for the Term set forth below.<br><br>2. IPW will furnish and provide the legal services of Marc Toberoff, Esq., and the business services of Ariel Emanuel and IPW's support staff and employ its network of business relationships and resources to market and negotiate the sale, license, settlement and/or other disposition of the Rights on your behalf, and will advise you and consult with you with respect thereto. …. | AD, Ex. I at 93 |
| 21 | The IP Worldwide Agreement expired on April 23, 2005. | AD, Ex. I, Ex. N |
| 22 | In 2003, Mr. Toberoff and Mr. Emanuel, on the Siegels' behalf, recommended settlement negotiations with DC. | AD, Ex. L, Ex. T at 158:12-165:2, Ex. EE at 461-62 |

5
DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| 23 | On October 8, 2004, Mr. Toberoff, as attorney for the Siegels, filed the *Siegel v. Warner Bros. Entertainment, Inc.* case (C.D. Cal. Case No. 04-CV-08400, ODW (RZx) ("*Siegel*") which sought to validate the Siegel Termination, and to enforce the Siegels' copyright interests. | FAC ¶91 |
| 24 | On February 17, 2005, DC counterclaimed in *Siegel*, that the October 19, 2001 letter constituted an enforceable contract. | AD, Ex. AA at 425-428 |
| 25 | During discovery in *Siegel*, the 2001 PPC Agreement, the 2003 PPC Agreement and the 2002 IP Worldwide Agreement, were all produced to DC by November 15, 2006. | AD, Ex. V at 200, Ex. BB at 444, Ex. CC at 449 |
| 26 | In *Siegel,* DC took the deposition of Kevin Marks on October 7, 2006. | AD, Ex. S |
| 27 | Mr. Marks testified at his October 7, 2006 deposition about his communications with Mr. Toberoff. | AD, Ex. S at 146:11-151:24 |
| 28 | Mr. Marks testified at his October 7, 2006 deposition about the August 2002 Offer to the Siegels. | AD, Ex. S at 149:10-150:5 |
| 29 | In *Siegel,* DC took the deposition of Mark Warren Peary on November 11, 2006. | AD, Ex. U |
| 30 | Mr. Peary testified at his November 11, 2006 deposition about the 2001 and 2003 PPC Agreements. | AD, Ex. U at 171:6-196:13 |
| 31 | In *Siegel,* DC took the deposition of Marc | AD, Ex. W |

6
DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
|  | Toberoff on November 17, 2006. |  |
| 32 | At the deposition of Mr. Toberoff on November 17, 2006, DC introduced the 2001 and 2003 PPC Agreements as exhibits. | AD, Ex. W at 204:18-20, 223:17-19 |
| 33 | Mr. Toberoff testified at his November 17, 2006 deposition about the 2001 and 2003 PPC Agreements and the Shuster Termination. | AD, Ex. W at 204:18-230:8 |
| 34 | Mr. Toberoff testified at his November 17, 2006 deposition about his 2002 communications with Kevin Marks. | AD, Ex. W at 240:17-260:11 |
| 35 | Mr. Toberoff testified at his November 17, 2006 deposition about the August 2002 Offer to the Siegels. | AD, Ex. W at 257:14-259:14 |
| 36 | Mr. Toberoff testified at his November 17, 2006 deposition about the 2002 IP Worldwide Agreement. | AD, Ex. W at 266:23-268:16 |
| 37 | DC's deposition of Mr. Toberoff in 2006 tracked the Fifth Claim. | FAC ¶¶180-186; AD, Ex. W at 244:13-264:25 |
| 38 | On or before June 2006, DC's parent, Warner Bros. Entertainment Inc. ("Warner"), received packages of documents stolen from Mr. Toberoff's law firm, including privileged attorney-client communications, accompanied by an anonymous document entitled "Superman-Marc Toberoff Timeline" (the "Timeline"). | AD, Ex. X at 278 ¶2 |
| 39 | The Timeline accused Mr. Toberoff of | AD, Ex. R |

7
DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
|  | wrongfully interfering with DC's relationships and agreements with the Shuster and Siegel heirs. |  |
| 40 | Warner's in-house counsel, Wayne Smith (Vice President, Senior Litigation and Chief Patent Counsel) and John Schulman (General Counsel), who oversaw the *Siegel* litigation, read the Timeline in June 2006. | AD, Ex. X at 278-79 ¶¶3-4 |
| 41 | In a March 27, 2007 declaration, Wayne Smith testified, in part, that:<br><br>2. During the afternoon of June 28, 2006, I received a telephone call from John A Schulman, General Counsel of Warner Bros., who asked that I come to his office. Upon arriving at his office, Mr. Schulman advised me that a set of documents (the "Superman Documents") addressed to him and apparently relating to the Siegel litigation had arrived from an anonymous source at his office that day. Mr. Schulman informed me that the cover letter contained with the documents indicated that other executives at Warner Bros. may have received the same set of documents, and that he had called the offices of those executives to see if they had received anything. He further advised me that he had asked those executives to send the documents to his office without reviewing them, and that one set of documents had already been delivered to him. Mr. Schulman handed me the stack (approximately an inch high) of Superman Documents that he had received and asked me to wait outside his office while he completed a meeting, after which we would discuss them. The stack did not include any envelope or packaging in which the documents may have arrived. This was not unusual as it has been my experience that the practice of Mr. Schulman's office staff is to dispose of envelopes and packaging upon | AD, Ex. X at 278-79 ¶¶2-4 |

8
DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
|  | opening mail.<br><br>3. While I was waiting, I looked at what might be characterized as the "cover letter" that came with the Superman Documents. The cover letter, which was not signed, alleged various types of ethical misconduct on the part of Plaintiffs' counsel in connection with the Siegel litigations. The cover letter also asserted ethical misconduct – violating the terms of a confidentiality agreement by leaking settlement information to the press – in connection with another litigated matter where Plaintiffs' counsel had also represented a party adverse to Warner Bros. The letter appeared designed to right wrongs caused by Plaintiffs' counsel's misconduct. The letter also referenced the documents enclosed, providing an overview of their contents and their connection to Plaintiffs' counsel's alleged wrongdoing. I also thumbed through the Superman Documents contained with the letter, but did not read any of them in detail. ….<br><br>4. I then met with Mr. Schulman. …. Mr. Schulman agreed with this approach, gave me one set of the documents, retained the other two sets that he had received, and advised me that he had only looked at the cover letter that came with the documents and would not review the documents at all. |  |
| 42 | On July 5, 2006, Wayne Smith informed DC's then-outside counsel, Michael Bergman, of allegations in the Timeline, as confirmed by Mr. Bergman's declaration dated September 25, 2007, which stated, in part:<br><br>On July 5, 2006, I received a call from Wayne Smith, Vice President, Senior Litigation and Chief Patent Counsel of Warner Bros. Entertainment Inc., informing me that three Warner Bros. employees, including General Counsel John Schulman, had received packages on June 28, 2006 containing documents relating to the present litigation | AD, Ex. Z at 382-383<br><br>¶4 |

9
DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
|  | that had been sent by an anonymous source … Mr. Smith told me that the packages, apparently identical, each contained an unsigned cover letter alleging, among other things, various types of ethical misconduct on the part of Plaintiffs' counsel in connection with the present litigation and another previously litigated case. The cover letter also explained how the enclosed documents related to the misconduct allegations. |  |
| 43 | In May 2007, in the *Siegel* case, both sides filed motions for partial summary judgment. | *Siegel*, 542 F. Supp. 2d at 1116; AD, Ex. Y |
| 44 | In DC's summary judgment briefing in *Siegel*, DC argued that Mr. Toberoff had interfered with DC's alleged agreement with the Siegels. | AD, Ex. Y at 319-20, 363-64, 372 |
| 45 | In DC's summary judgment briefing in *Siegel*, DC stated the following:<br><br>On July 30, Mr. Toberoff again contacted Mr. Marks to inquire as to the status of Plaintiffs' dealings with DC on the Superman property. (Bergman Decl. Exh. S (Marks Tr.) at 165:25-167:3.) When informed that there was a confidentiality agreement in place and that Mr. Marks would not speak with him about DC, Mr. Toberoff asked if Mr. Marks would be willing to enter into separate negotiations with him regarding the sale of the Siegels' Superman interests. (*Id.*) Mr. Marks declined to do so, but told Mr. Toberoff that if he had an offer to make, Mr. Marks would present it to his clients. (*Id.*) Accordingly, in early August, 2002, Mr. Toberoff's company, IPW [IP Worldwide], offered to purchase Plaintiffs' Superman copyright interests for $15 million and "a meaningful back-end." (*Id.* at 167:7-169:25.) Mr. Marks communicated that offer to his clients. (*Id.* at 169:21-170:12.)<br><br>On September 21, 2002, Plaintiffs abruptly terminated Mr. Marks' and Gang Tyre's representation of them, without any prior notice, via a letter copied to Paul Levitz, | AD, Ex. Y at 319-20 |

10
DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
|  | DC's President and Publisher. (Bergman Decl. Exh. S (Marks Tr.) at 202:1-202:16; *Id.* Exh. DD.) On the same day, Plaintiffs sent a separate letter to DC repudiating the parties' October 19 agreement and purporting to break off all further negotiations, and claiming that February Draft contained "outrageous, never discussed, unacceptable demands." (Bergman Decl. Exh. BB.) Plaintiffs then promptly retained Mr. Toberoff to represent them (*id.* Exh. X (Toberoff Tr. at 106:1-107:4; 132:4-134:7), and after being advised by Mr. Toberoff's business partner that DC's offer for their Superman copyright interest was "ridiculously low" (*id.* Exh. EE (Laura Siegel Larson Tr.) at 28:15-28:18), entered into an agreement with IPW [IP Worldwide] dated October 3, 2002 pursuant to which Plaintiff's retained IPW [IP Worldwide] to be their exclusive representative in connection with their Superman interests. (Bergman Decl. Exh. FF.) |  |
| 46 | In DC's summary judgment briefing in *Siegel*, DC also stated the following:<br><br>Moreover, as demonstrated below, Defendants have presented sufficient admissible evidence for a trier of fact to conclude that in October, 2001, (i) the parties' attorneys Mr. Schulman and Mr. Marks, with full authority from their respective clients, reached a meeting of the minds on all material terms pursuant to which Plaintiff would convey their Superman copyright interests to DC, (ii) that this agreement was contemporaneously memorialized and affirmed in a writing executed by Plaintiffs' counsel on October 19, 2001, and (iii) that the parties intended and expected to be bound by the terms of that agreements notwithstanding the fact that they contemplated negotiating and executing a more formal contract thereafter. In fact, the parties were proceeding along that basis, with the drafting and re-drafting of their more formal documentation, until Plaintiffs suddenly appeared to have second thoughts after being | AD, Ex. Y at 363-64 |

11
DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
| | presented with a seemingly more lucrative offer by their current counsel, and abruptly jettisoned both the deal and their attorneys who negotiated it. | |
| 47 | In DC's summary judgment briefing in *Siegel*, DC also stated the following:<br><br>Indeed, the evidence supports the conclusion that Plaintiffs' belated claim that the Schulman Letter changed the deal or that the February Draft was "unacceptable" is nothing other than an *ex post facto* excuse for Plaintiffs to reject the deal they had already made for the promise of a much more lucrative payday from their current counsel and the companies he controlled: Mr. Marks *never* disputed anything in the Schulman Letter, and similarly voice *no* concern about the February Draft until after he learned about his client's complaining letter to Time Warner's Chief Executive Officer; and even then he acknowledged to Mr. Schulman that although the draft was "very aggressive" and contained some things which had not been discussed *it was not contrary to what the parties had agreed to.* (Schulman Decl. ¶ 11.) Mr. Marks even tried his hand at re-crafting the draft into a form that would be acceptable to his client. (Bergman Decl. Exh. S (Marks Tr.) at 196:21-197:15, 198:25-199:3; *id.* Exh. BB.), but the effort came to naught when Plaintiffs abruptly fired Mr. Marks and terminated discussions with DC shortly after receiving Mr. Toberoff's "$15 million plus" offer. (*Id.* Exh. S (Marks Tr.) at 168:1-169:20.). | AD, Ex. Y at 372 |
| 48 | In 2008, during the *Siegel* litigation, an agreement was entered into by Joanne Siegel, Laura Siegel Larson, Mark Warren Peary, and Jean Adele Peavy (the "2008 Agreement") to collectively negotiate with DC. | Dkt. 160 at 50-51, 63, Dkt. 209 at 1-2, 4-5; AD, Ex. FF at 475:10-480:4 |
| 49 | The district court granted, in part, the Siegels' | *Siegel*, 542 F. Supp. 2d at |

| No. | Statement Of Undisputed Fact | Defendants' Evidence |
|---|---|---|
|  | summary judgment motion, holding that the Siegel Termination was valid as to <u>Action Comics</u>, No. 1, and rejecting DC's claim that the parties had reached an agreement on October 19, 2001. | 1145 |
| 50 | On April 26, 2010, Joanne Siegel, Laura Siegel Larson and Mark Warren Peary, along with their attorney, Marc Toberoff, held a settlement mediation with DC, but the parties did not reach a settlement. | AD, Ex. DD |
| 51 | On May 14, 2010, DC filed the instant action against Laura Siegel Larson, Joanne Siegel, and Mark Warren Peary, as personal representative of the Estate of Joseph Shuster and their counsel, Marc Toberoff. | Dkt. 1 |

**CONCLUSIONS OF LAW**

1. Summary judgment should be granted in Defendants' favor on DC's Fourth Claim for Relief (Dkt. 49 ("FAC") ¶¶ 174-79) for tortious interference with contract. The Fourth Claim, brought in 2010, is barred by the applicable two-year statute of limitations (Cal. Code of Civ. Proc. § 339(1)), which expired no later than 2008.

Tortious interference claims accrue "at the date of the wrongful act" and "[can] not be later than the actual breach of the contract by the party who was wrongfully induced to breach." *Trembath v. Digardi*, 43 Cal. App. 3d 834, 836 (1974). "[T]he statute of limitations [for tortious interference] began to run when the contract was actually breached." *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000). Here, the alleged breach consisted of the 2001 and 2003 PPC Agreements, and the resulting 2003 Shuster Termination, both well outside the statute of limitations period.

DC cannot invoke the "delayed discovery" rule because all that is required to trigger the statute of limitations is inquiry notice, which occurs "once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988) (citations omitted). DC was served with the Shuster Termination in 2003; and DC was on actual and inquiry notice by November 15, 2006, when it was provided with complete and unredacted copies of both the 2001 and 2003 PPC Agreements. Defendants' Statement of Undisputed Facts ("SUF") ¶25; *see Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1061 (9th Cir. 2012).

Because DC had actual and inquiry notice by 2006, any allegations by DC of fraudulent concealment are irrelevant. *Barber v. Superior Court*, 234 Cal. App. 3d 1076, 1083 (1991). The "continuing harm" doctrine does not apply to DC's interference claims. *Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 952 (N.D. Cal. 2010).

2. Summary judgment should be granted in Defendants' favor on DC's Fifth Claim for Relief (FAC ¶¶ 180-86) for interference with prospective economic advantage. The Fifth Claim, brought in 2010, is barred by the applicable two-year statute of limitations (Cal. Code of Civ. Proc. § 339(1)), which expired no later than 2008.

Tortious interference claims accrue "at the date of the wrongful act" and "[can] not be later than the actual breach of the contract by the party who was wrongfully induced to breach." *Trembath*, 43 Cal. App. 3d at 836. "[T]he statute of limitations [for tortious interference] began to run when the contract was actually breached." *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d at 530. DC's Fifth Claim alleges that the tortious interference occurred in August 2002, when Mr. Toberoff informed the Siegels' counsel of an offer to purchase their Superman rights, and the alleged breach occurred no later than September 21, 2002, when the Siegels formally ended negotiations with DC.

Plaintiff cannot invoke the "delayed discovery" rule because all that is required to trigger the statute of limitations is inquiry notice, which occurs "once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry." *Jolly*, 44 Cal. 3d at 1110-11. On September 21, 2002, the Siegels formally terminated their counsel, Kevin Marks, and ended his negotiations with DC. SUF ¶19. By 2003, DC knew that Mssrs. Toberoff and Emanuel represented the Siegel termination interest when they resumed negotiations with DC. SUF ¶22. By 2006, DC received, read and investigated the "Timeline's" allegations of interference by Mr. Toberoff and DC proceeded in *Siegel* to take extensive depositions and document discovery, revealing by late 2006 that: (1) Mssrs. Emanuel and Toberoff had made an August 2002 offer to Mr. Marks to purchase the Siegels' Superman copyrights, and (2) shortly after the Siegels' ended Marks' negotiations with DC on September 21, 2002, the Siegels entered into an agreement dated October 3, 2002 with Emanuel/Toberoff's venture, IP Worldwide, LLC, to market the Siegels'

15
DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW

Superman rights. SUF ¶¶15-22, 25-28, 34-37. Knowledge of the Timeline's accusations of interference and of these events was sufficient to raise "suspicion," putting DC on inquiry notice. *See Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999); *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 172 (4th Cir. 2007). Demonstrating that DC was on actual or inquiry notice of its Fifth Claim, it explicitly argued on summary judgment in *Siegel* that by "a seemingly more lucrative offer" Mr. Toberoff had "interfered" with DC's relationship with Siegels. SUF ¶43-47.

      3.    Summary judgment should be granted in Defendants' favor on DC's Sixth Claim for Relief (FAC ¶¶ 187-189) for unfair competition.

          (a). DC's Sixth Claim is moot. The Court has already granted the relief sought by DC's Sixth Claim in connection with DC's Third Claim. Dkt. 507, 540. There is no longer a "live controversy" and therefore "the claim is moot … [and] must be dismissed." *American Rivers v. National Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997).

          (b). DC's Sixth Claim is preempted by the Copyright Act. If a "state law unfair competition claim is based solely on rights equivalent to those protected by the federal copyright laws," it is preempted. *Kodadek v. MTV Networks*, 152 F.3d 1209, 1213 (9th Cir. 1998). DC's state-law Sixth Claim merely reformulates DC's Third Claim (FAC ¶¶165-73) under the Copyright Act and is premised on the same alleged Copyright Act violation, which it incorporates by reference. The claim is therefore preempted. *See Motown Record Corp. v. George A. Hormel & Co.*, 657 F. Supp. 1236, 1239 (C.D. Cal. 1987); *Del Madera Properties v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987).

          (c). DC's Sixth Claim is also largely barred by the applicable four-year statute of limitations. Cal. Bus. & Prof. Code § 17208. Unfair competition claims begin to run "on the date the cause of action accrued, not on the date of discovery." *Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002). Insofar as it is based on the 2001 and 2003 PPC Agreements,

1 | which were cancelled in 2004, the claim is barred by the statute of limitations.

Dated:  February 4, 2013  RESPECTFULLY SUBMITTED,
/s/ Keith G. Adams
TOBEROFF & ASSOCIATES, P.C.
Attorneys for Defendants Mark Warren Peary *et al.*