# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>         Plaintiff,<br><br>    vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>         Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**[PROPOSED] ORDER AND STATEMENT OF DECISION RE: DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON DC'S FOURTH, FIFTH AND SIXTH CLAIMS FOR RELIEF**<br><br>Complaint filed:   May 14, 2010<br>Discovery Cutoff:  None Set<br>Trial Date:              None Set<br><br>Date:   March 11, 2012<br>Time:   1:30 p.m.<br>Place:  Courtroom 11 |

[PROPOSED] ORDER AND STATEMENT OF DECISION RE: DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON FOURTH, FIFTH AND SIXTH CLAIMS FOR RELIEF

Good cause appearing, IT IS HEREBY ORDERED that Defendants' Motion For Partial Summary Judgment On DC's Fourth, Fifth and Sixth Claims For Relief Is GRANTED.

1.   Summary judgment should be granted in Defendants' favor on DC's Fourth Claim for Relief (Dkt. 49 ("FAC") ¶¶ 174-79) for tortious interference with contract. The Fourth Claim, brought in 2010, is barred by the applicable two-year statute of limitations (Cal. Code of Civ. Proc. § 339(1)), which expired no later than 2008.

Tortious interference claims accrue "at the date of the wrongful act" and "[can] not be later than the actual breach of the contract by the party who was wrongfully induced to breach." *Trembath v. Digardi*, 43 Cal. App. 3d 834, 836 (1974). "[T]he statute of limitations [for tortious interference] began to run when the contract was actually breached." *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000). Here, the alleged breach consisted of the 2001 and 2003 PPC Agreements, and the resulting 2003 Shuster Termination, both well outside the statute of limitations period.

DC cannot invoke the "delayed discovery" rule because all that is required to trigger the statute of limitations is inquiry notice, which occurs "once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988) (citations omitted). DC was served with the Shuster Termination in 2003; and DC was on actual and inquiry notice by November 15, 2006, when it was provided with complete and unredacted copies of both the 2001 and 2003 PPC Agreements. Defendants' Statement of Undisputed Facts ("SUF") ¶25; *see Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1061 (9th Cir. 2012).

Because DC had actual and inquiry notice by 2006, any allegations by DC of fraudulent concealment are irrelevant. *Barber v. Superior Court*, 234 Cal. App. 3d 1076, 1083 (1991). The "continuing harm" doctrine does not apply to DC's

interference claims. *Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 952 (N.D. Cal. 2010).

   2.   Summary judgment should be granted in Defendants' favor on DC's Fifth Claim for Relief (FAC ¶¶ 180-86) for interference with prospective economic advantage.  The Fifth Claim, brought in 2010, is barred by the applicable two-year statute of limitations (Cal. Code of Civ. Proc. § 339(1)), which expired no later than 2008.

   Tortious interference claims accrue "at the date of the wrongful act" and "[can] not be later than the actual breach of the contract by the party who was wrongfully induced to breach." *Trembath*, 43 Cal. App. 3d at 836.  "[T]he statute of limitations [for tortious interference] began to run when the contract was actually breached." *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d at 530.  DC's Fifth Claim alleges that the tortious interference occurred in August 2002, when Mr. Toberoff informed the Siegels' counsel of an offer to purchase their Superman rights, and the alleged breach occurred no later than September 21, 2002, when the Siegels formally ended negotiations with DC.

   Plaintiff cannot invoke the "delayed discovery" rule because all that is required to trigger the statute of limitations is inquiry notice, which occurs "once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry." *Jolly*, 44 Cal. 3d at 1110-11.  On September 21, 2002, the Siegels formally terminated their counsel, Kevin Marks, and ended his negotiations with DC.  SUF ¶19.  By 2003, DC knew that Mssrs. Toberoff and Emanuel represented the Siegel termination interest when they resumed negotiations with DC.  SUF ¶22.  By 2006, DC received, read and investigated the "Timeline's" allegations of interference by Mr. Toberoff and DC proceeded in *Siegel* to take extensive depositions and document discovery, revealing by late 2006 that:  (1) Mssrs. Emanuel and Toberoff had made an August 2002 offer to Mr. Marks to purchase the Siegels' Superman copyrights, and (2) shortly after the Siegels' ended Marks' negotiations with DC on

September 21, 2002, the Siegels entered into an agreement dated October 3, 2002 with Emanuel/Toberoff's venture, IP Worldwide, LLC, to market the Siegels' Superman rights. SUF ¶¶15-22, 25-28, 34-37. Knowledge of the Timeline's accusations of interference and of these events was sufficient to raise "suspicion," putting DC on inquiry notice. *See Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999); *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 172 (4th Cir. 2007). Demonstrating that DC was on actual or inquiry notice of its Fifth Claim, it explicitly argued on summary judgment in *Siegel* that by "a seemingly more lucrative offer" Mr. Toberoff had "interfered" with DC's relationship with Siegels. SUF ¶43-47.

    3.    Summary judgment should be granted in Defendants' favor on DC's Sixth Claim for Relief (FAC ¶¶ 187-189) for unfair competition.

    (a).    DC's Sixth Claim is moot. The Court has already granted the relief sought by DC's Sixth Claim in connection with DC's Third Claim. Dkt. 507, 540. There is no longer a "live controversy" and therefore "the claim is moot … [and] must be dismissed." *American Rivers v. National Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997).

    (b).    DC's Sixth Claim is preempted by the Copyright Act. If a "state law unfair competition claim is based solely on rights equivalent to those protected by the federal copyright laws," it is preempted. *Kodadek v. MTV Networks*, 152 F.3d 1209, 1213 (9th Cir. 1998). DC's state-law Sixth Claim merely reformulates DC's Third Claim (FAC ¶¶165-73) under the Copyright Act and is premised on the same alleged Copyright Act violation, which it incorporates by reference. The claim is therefore preempted. *See Motown Record Corp. v. George A. Hormel & Co.*, 657 F. Supp. 1236, 1239 (C.D. Cal. 1987); *Del Madera Properties v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987).

    (c).    DC's Sixth Claim is also largely barred by the applicable four-year statute of limitations. Cal. Bus. & Prof. Code § 17208. Unfair competition claims begin to run "on the date the cause of action accrued, not on the date of

discovery." *Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002). Insofar as it is based on the 2001 and 2003 PPC Agreements, which were cancelled in 2004, the claim is barred by the statute of limitations.

IT IS SO ORDERED.

Dated: _____

_____
Hon. Otis D. Wright II.