DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

Attorneys for Plaintiff DC Comics

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>            Plaintiff,<br><br>      v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>            Defendants. | Case No. CV 10-03633 ODW (RZx)<br><br>**DC COMICS' OPPOSITION TO DEFENDANTS' MOTION FOR REVIEW OF JANUARY 16, 2013 ORDER RE: TIMELINE-RELATED DOCUMENTS**<br><br>[PROPOSED] ORDER FILED CONCURRENTLY HEREWITH<br><br>Hon. Otis D. Wright II<br><br>**Hearing Date**:  March 11, 2013<br>**Hearing Time**:  1:30 p.m.<br>**Courtroom**:       11 |

# **TABLE OF CONTENTS**

I.   Introduction ............................................................................................... 1

II.  Judge Zarefsky Rightly Held That Defendants' Requests Are
     Irrelevant, Moot, And Overbroad ............................................................. 2

     A.   Defendants Have Already Litigated And Lost These Very Issues ....... 3

     B.   Defendants Have No "Right" To Discovery That Is, As the
          Magistrate Held, "Far Afield From the Relevance Tether" ................. 4

          1.   Statute-of-Limitations Defense ..................................................... 5

          2.   Defendants' Conspiracy Theory .................................................... 6

          3.   Defendants' Claim that DC "Injected" the Issues into
               Discovery ...................................................................................... 9

          4.   The Contents of the Timeline ....................................................... 9

          5.   Credibility ................................................................................... 10

          6.   DC's Discovery ........................................................................... 11

     C.   The Magistrate Rightly Held Defendants' Requests Are Moot .......... 11

III. Conclusion ................................................................................................ 14

# **TABLE OF AUTHORITIES**

**CASES**

*Adams v. Cooper Indus., Inc.*,
2007 WL 805459 (E.D. Ky. Mar. 13, 2007) ........................................................ 5

*Curcio v. Roosevelt Union Free Sch. Dist.*,
283 F.R.D. 102 (E.D.N.Y. 2012) ....................................................................... 12

*Dawe v. Corrections USA*,
2008 WL 1849802 (E.D. Cal. Apr. 23, 2008) ..................................................... 4

*Desert Valley Painting & Drywall, Inc. v. U.S.*,
2012 WL 4792913 (D. Nev. Oct. 9, 2012) .......................................................... 5

*Emara v. Multicare Health Sys.*,
2012 WL 5205950 (W.D. Wash. Oct. 22, 2012) ........................................... 7, 10

*Green v. Peters*,
2000 WL 1230246 (N.D. Ill. Aug. 24, 2000) ...................................................... 9

*Greenhow v. Sec'y of Health & Human Services*,
863 F.2d 633 (9th Cir. 1988) ............................................................................... 9

*In re Grand Jury Subpoena*,
357 F.3d 900 (9th Cir. 2004) ......................................................................... 2, 13

*In re Pacific Pictures Corp.*,
679 F.3d 1121 (9th Cir. 2012) .......................................................................... 3, 4

*Johnson v. Nw. Airlines, Inc.*,
2009 WL 839044 (N.D. Cal. Mar. 30, 2009) ................................................... 5, 7

*Khalilpour v. CELLCO P'ship*,
2010 WL 1267749 (N.D. Cal. Apr. 1, 2010) ...................................................... 4

*Paddington Partners v. Bouchard*,
34 F.3d 1132 (2nd Cir. 1994) .............................................................................. 9

*Ragge v. MCA/Universal*,
165 F.R.D. 601 (C.D. Cal. 1995) ........................................................................ 5

*Rivera v. NIBCO, Inc.*,
364 F.3d 1057 (9th Cir. 2004) ........................................................................... 10

*Royal Oak Enters., LLC v. Nature's Grilling Prods., LLC*,
2011 WL 5858057 (N.D. Ga. Nov. 21, 2011) ..................................................... 5

*Shappley v. Amedica Corp.*,
  2012 WL 3776863 (D. Utah Aug. 29, 2012) ........................................................ 5

*Specialized Bicycle Components, Inc. v. Barton*,
  2011 WL 1599653 (N.D. Cal. Apr. 28, 2011) ................................................... 10

*U.S. v. Budziak*,
  697 F.3d 1105 (9th Cir. 2012) ............................................................................. 5

*U.S. v. Cedano-Arellano*,
  332 F.3d 568 (9th Cir. 2003) ............................................................................... 5

*U.S. v. Chen*,
  99 F.3d 1495 (9th Cir. 1996) ............................................................................. 14

*U.S. v. Kitsap Physicians Serv.*,
  314 F.3d 995 (9th Cir. 2002) ............................................................................. 12

*U.S. v. Lopez*,
  45 Fed. Appx. 582 (9th Cir. 2002) ...................................................................... 9

*U.S. v. Ruehle*,
  583 F.3d 600 (9th Cir. 2009) ............................................................................. 14

*Upjohn Co. v. U.S.*,
  449 U.S. 383 (1981) .......................................................................................... 13

*Whitmore v. Dep't of Labor*,
  680 F.3d 1353 (Fed. Cir. 2012) ........................................................................... 5

**RULES**

C.D. CAL. R. 72(a) .................................................................................................... 2

FED. R. CIV. P. 11 ..................................................................................................... 6

FED. R. CIV. P. 12 ..................................................................................................... 6

FED. R. CIV. P. 26 .............................................................................................*passim*

FED. R. CIV. P. 72(a) ........................................................................................*passim*

**OTHER AUTHORITIES**

W. SCWHARZER ET AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL (The
  Rutter Group 2012) ................................................................................... 2, 9, 10

## I. Introduction

Magistrate Judge Zarefsky's January 16, 2013, ruling was clear: "the documents sought [by defendants in their motion now presented to this Court] either do not exist, or the relevance of any such documents (assuming they are not privileged) is so strained that the burden of their production outweighs any utility in this lawsuit." DN 558 at 5. Defendants offer *no* explanation—**none**—why these factual findings are "clearly erroneous," or why Judge Zarefsky's ultimate legal conclusion that defendants are not entitled to additional documents concerning Warner's receipt and handling of the Toberoff Timeline documents was "contrary to law," DN 18 at 3, FED. R. CIV. P. 72(a). Defendants do not meet their burden to show such error on this motion, and instead, advance arguments that they failed to present below or that are directly contradicted by a series of rulings in the related *Siegel* case and this case—which defendants improperly fail to mention or address.

To begin, the requests for production on which defendants move are not relevant to any claim or defense; as Magistrate Judge Zarefsky found, they amount to "the proverbial fishing expedition." DN 558 at 5. Most of defendants' relevance arguments stem from their wild conspiracy theory that DC and several prominent law firms orchestrated a complex scheme to destroy Marc Toberoff's reputation by planting David Michaels as an associate at Toberoff & Associates in order to steal documents and draft the Timeline. "This speculation is at best fragile," the Court held below, *id.* at 4-5, and is directly contradicted by Toberoff's prior *sworn* submissions that Michaels was a disgruntled employee motivated by his desire to steal the Siegel heirs as his clients.

Defendants' alternative theory or relevance—that Warner received the Timeline months earlier than claimed—ignores the *multiple court findings*—in *Siegel*, and in this case (before Judge Zarefsky, this Court, and the Ninth Circuit). The undisputed evidence—including declarations from Warner's in-house counsel, contemporaneous correspondence, and sworn interrogatory responses—confirm

that Warner received the Timeline on June 28, 2006. DN 550-1 at 30-36.

Defendants also fail to address that the requests on which they move are moot, as DC has already provided "information of the sort sought by Defendants." DN 558 at 2. For example, DC served detailed interrogatory responses on December 20, 2012, identifying when Warner first received the Timeline, which office staff may have witnessed its delivery, and what number of documents were delivered to whom and when—the very details defendants seek in their motion. Defendants are well aware that other documents they seek do not exist, and "[DC] cannot produce what it does not have," *id.* at 4, as Judge Zarefsky rightly held.

Finally, as Judge Zarefsky further found, defendants' requests "address *virtually all* of the circumstances" of Warner's receipt and handling of the Timeline documents. DN 558 at 1-2 (emphasis added). Responding to these grossly overbroad requests would impose undue burden and expense on DC and Warner, and provide no real benefit to defendants. The discovery rules prohibit such abusive discovery. *See* FED. R. CIV. P. 26(g)(1)(B)(iii).

Defendants' motion for review is not well-taken and should be denied.

## II. Judge Zarefsky Rightly Held That Defendants' Requests Are Irrelevant, Moot, And Overbroad.

This Court's standing order provides: "The decision of the Magistrate Judge shall be final, subject to modification by the District Court *only* where it has been shown [to be] *clearly erroneous or contrary to law*." DN 18 at 3 (emphasis added); *accord* FED. R. CIV. P. 72(a). Judge Zarefsky's January 16, 2013, order is neither.[1]

---

[1] Before addressing this ruling, one important procedural note: defendants' motion fails to address with specificity the **57** document requests targeted by their 65-page motion to compel. *Cf.* DN 550-1. Defendants waived any right to pursue the large majority of requests not addressed with specificity. *See* C.D. CAL. R. 72(a) (motion for review must identify "the specific portions of the ruling objected to"); W. SCWHARZER ET AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 16:282.2 (The Rutter Group 2012) ["RUTTER"] (same); *In re Grand Jury Subpoena*, 357 F.3d at 910 (failure to object in district court to magistrate's finding waives subsequent challenges).

- 2 -

DC'S OPP. TO DEFS.' MOT. FOR REVIEW OF JAN. 16, 2013 ORDER

**A.     Defendants Have Already Litigated And Lost These Very Issues.**

As Judge Zarefsky found, "[t]his is, of course, not the first time [these issues] have come before the Court."  DN 558 at 5.  In *Siegel* and this case, defendants have asserted the Timeline documents were delivered to Warner months earlier than June 2006, and Warner did not provide their only copies of the materials to a third-party escrow, but rather secretly used them.  Each time defendants have asserted this specious theory, the courts have rejected it.  Defendants are barred from re-litigating these same issues yet again under the auspices of a discovery motion.

1.  In *Siegel*, defendants argued that this Court should deny DC's motion to compel production of the Timeline documents because Warner allegedly lied about when it received the documents and acted improperly handling them.  DN 550-5, Ex. 3 at 57-61; 550-3, Ex. C at 20:2-21:11, 24:15-28:21.  Defendants claimed, without any evidence, that the Timeline documents were delivered to Warner in December 2005 rather than June 2006; that Warner failed to produce evidence confirming when the documents were delivered; that Warner's in-house counsel, Wayne Smith, reviewed the documents in detail before giving them to escrow agent John Quinn; and that Smith's sworn declaration was unreliable hearsay.  DN 550-5, Ex. 3 at 57-61.  Warner refuted these claims, *id.* at 27-31; 550-3, Exs. A, B, and the Court recognized that Warner "acted professionally [and] reasonably" in briefly reviewing the Timeline materials and turning them over to the escrow, DN 550-3, Ex. C at 30:3-7.  Defendants never filed a motion to review this ruling.  When they challenged the ruling months later in 2008, Judge Larson held their time to object had "long since expired," DN 42-14 at 216-17, and such arguments were waived, Case No. CV-04-8400, DN 240.

2.  At the outset of this *Pacific Pictures* case, defendants tried to re-litigate these same claims, arguing DC was barred from relying on the Timeline documents because Warner supposedly received them months earlier than it claimed and had, thus, misused them.  DN 42 at 8-14, 35.  Again, DC refuted these false charges, *id.*

at 40-43, and Judge Zarefsky denied defendants' motion, stating that he was "not going to revisit [Judge Larson's] ruling" in *Siegel*. DN 95 at 55:25-56:1.

3. Defendants repeated the same false accusations to the Ninth Circuit. After this Court held that defendants waived privilege over the Timeline materials, defendants filed a petition for a writ of mandamus, claiming that Warner's receipt and handling of the documents was improper. Appeal No. 11-71844, DN 1-1 at 2, 18-19 & n.1. The Ninth Circuit denied defendants' petition; rejected their arguments about Warner's alleged misconduct (noting Warner "entrusted [the documents] to an outside attorney," "[r]ather than exploiting [them]"); and called out Toberoff for his "ethical and professional" misconduct. *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1124-25 (9th Cir. 2012). Defendants challenged these binding conclusions and asked the Ninth Circuit to "correct" them, Appeal No. 11-71844, DN 31-1 at 7-17, but the appellate court refused to do so, *id.*, DN 44.

4. There is no reason or basis for defendants to re-litigate these issues for a *fifth* time. Rather than address this, defendants abandon the arguments they made below about why these rulings are not binding. *Cf.* DN 550-1 at 14-17. But ignoring these rulings does not alter their dispositive impact. *Id.* at 32-36.

**B.  Defendants Have No "Right" To Discovery That Is, As the Magistrate Held, "Far Afield From the Relevance Tether."**

Advancing an argument they failed to make below, defendants make much ado about their so-called "due process right to discovery." Mot. 1. But the law is clear, there is *no right* to discovery that has "little or no bearing on the actual claims and defenses" at issue. *Dawe v. Corrections USA*, 2008 WL 1849802, at *11 (E.D. Cal. Apr. 23, 2008). Indeed, the rules and case law expressly prohibit such needless pursuits. FED. R. CIV. P. 26(g)(1)(B)(ii); *see Khalilpour v. CELLCO P'ship*, 2010 WL 1267749, at *1 (N.D. Cal. Apr. 1, 2010).[2]

---

[2] Defendants' cited cases are inapposite, as most all involve a situation where—*unlike here*—the moving party was denied access to information that bore directly

- 4 -

DC'S OPP. TO DEFS.' MOT. FOR REVIEW OF JAN. 16, 2013 ORDER

Magistrate Judge Zarefsky rightly held that defendants' requests are "far afield from the relevance tether." DN 558 at 4. Warner's receipt and handling of the Timeline documents have no bearing on the remaining claims in this case—DC's Fourth, Fifth, and Sixth Claims. Defendants only seek this information—almost *three years* after this case began—to re-litigate issues that were long ago decided against them; to distract from the discovery misconduct targeted by DC's pending sanctions motion, DN 573, 500, 527; and to harass DC and Warner. Such abusive discovery tactics are improper. FED. R. CIV. P. 26(g)(1)(B)(ii), (g)(3).

As set forth below, defendants' theories of relevance—some of which they assert for the first time on this motion for review—fail to satisfy their burden to "describe with a reasonable degree of specificity the information they hope to obtain and its importance to their case." *Johnson v. Nw. Airlines, Inc.*, 2009 WL 839044, at *2 (N.D. Cal. Mar. 30, 2009); *accord Desert Valley Painting & Drywall, Inc. v. U.S.*, 2012 WL 4792913, at *2 (D. Nev. Oct. 9, 2012).

### 1. Statute-of-Limitations Defense

Defendants argue the date Warner received the Timeline is relevant because *if* the Timeline was delivered in December 2005 (as defendants suggest) rather than June 2006 (as the evidence shows and the courts found), the four-year statute-of-limitations on DC's Sixth Claim expired before DC filed its complaint in May 2010. Mot. 9. (Defendants now abandon their argument that this timing issue has any relevance to DC's Fourth or Fifth Claims. *Cf.* DN 550-1 at 13-14.) Not only

---

on disputed issues in the case. *See Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1368-69 (Fed. Cir. 2012); *Shappley v. Amedica Corp.*, 2012 WL 3776863, at *3 (D. Utah Aug. 29, 2012); *Ragge v. MCA/Universal*, 165 F.R.D. 601, 603-04 (C.D. Cal. 1995); *Adams v. Cooper Indus., Inc.*, 2007 WL 805459, at *1 (E.D. Ky. Mar. 13, 2007). Defendants' other cases either interpret the Rules of *Criminal* Procedure—which apply entirely different discovery standards, *U.S. v. Budziak*, 697 F.3d 1105, 1111-12 (9th Cir. 2012); *U.S. v. Cedano-Arellano*, 332 F.3d 568, 570 (9th Cir. 2003)—or are otherwise distinguishable, *Royal Oak Enters., LLC v. Nature's Grilling Prods., LLC*, 2011 WL 5858057, at *3-4 (N.D. Ga. Nov. 21, 2011) (court denied summary judgment motion as "clearly premature" due to "lack of any discovery on the relevant issues," and parties agreed "discovery is warranted").

DC'S OPP. TO DEFS.' MOT. FOR REVIEW OF JAN. 16, 2013 ORDER

does defendants' argument about DC's Sixth Claim disregard the evidence and court findings that Warner received the Timeline in June 2006, *supra* at 3-4, it was concocted for the first time in defendants' motion below.  While defendants filed close to 10 motions asserting statute-of-limitations defenses (including Rule 12 motions, SLAPP motions, and a cross-motion for summary judgment), they *never* before raised this argument.  Instead, they have always maintained that the statute-of-limitations on DC's Sixth Claim began running in <u>2003 at the latest</u>, *e.g.*, DN 145-1 at 21-22 n.11; 147-1 at 2-3; 333 at 8—which confirms that their newly minted theory of relevance has no real bearing on their defense.

In any event, DC has demonstrated that the statute-of-limitations did not begin to run until *2008*—when defendants entered into the rights-tying "consent" agreement that this Court held was unlawful, DN 507 at 5, 17, and when defendants first produced the Timeline pursuant to court order, DN 334 at 16-17, 20-21, 22-23, 25; 458 at 25; Appeal No. 11-56934, DN 37-1 at 54-57; DN 42-14 at 220-21. Defendants notably fail to address this. *Cf.* DN 550-1 at 37-39.  Instead, they complain that Judge Zarefsky rejected their statute-of-limitations argument "based on the mistaken assumption that this Court's partial summary judgment ruling"—which granted judgment for DC on its Third Claim over defendants' statute-of-limitations defense, DN 462 at 24; 507—"obviated the need for discovery on DC's Sixth Claim." Mot. 9.  This is untrue, DN 558 at 4:1-11, and irrelevant in any event.  This Court's rejection of defendants' parallel limitations argument on DC's Third Claim *is* reason alone to bar the same argument as to its Sixth Claim.  The same estoppel theories apply to both claims, as DC showed in opposing the Rule 12 motions that defendants conspicuously abandoned.  *See* DN 334 at 16-17, 25; 343.

2. <u>Defendants' Conspiracy Theory</u>

Defendants say these requests are relevant because they need to confirm the identity of the Timeline author and his possible "connection" to DC.  Mot. 7. Although they dance around the precise details—no doubt fearing Rule 11—

DC'S OPP. TO DEFS.' MOT. FOR
REVIEW OF JAN. 16, 2013 ORDER

defendants' relevance "theory" is this: they are entitled to additional discovery concerning DC's receipt and handling of the Timeline documents because this evidence *might* show that DC orchestrated a massive conspiracy—involving key executives at Warner and DC, the Glaser Weil law firm, the Arnold & Porter law firm, David Michaels, and many others—to tarnish Toberoff's reputation by planting David Michaels at Toberoff & Associates and having him to steal privileged documents and draft the Timeline. *See* Mot. 2-4.

As Judge Zarefsky held, "[t]his speculation is at best fragile, and does not make the information appear *reasonably* calculated to lead to the discovery of admissible evidence." DN 558 at 4-5; *see Johnson*, 2009 WL 839044, at *2 (party seeking discovery "must meet a threshold of relevance that is beyond speculation"); *Emara v. Multicare Health Sys.*, 2012 WL 5205950, at *3 (W.D. Wash. Oct. 22, 2012) ("mere hope" that discovery will lead to relevant evidence "insufficient"). In reality, it was Toberoff's *own* conduct that led the Ninth Circuit to question his ethics, led this Court to declare his illegal rights-tying agreements invalid, led this Court to criticize his lack of candor with the Copyright Office, led the Armstrong Hirsch law firm (his own counsel) to criticize his actions, and led DC to file the pending terminating sanctions motion now before this Court. DN 573, 500, 527.

In any event, Toberoff's wild conspiracy theory is as unsupported as it is nonsensical:

a. In sworn interrogatory responses—which they have never amended—defendants identified the Timeline author as Michaels, and attested to his alleged motive for drafting the Timeline and sending it to Warner—*i.e.*, stealing the Siegels as clients. DN 207-9 at 433-34, 436. Defendants told the same story to the U.S. Attorney's Office in seeking to launch a criminal investigation into Michaels, DN 427-11 at 1078, and in their briefing before the Ninth Circuit, Appeal No. 11-71844, DN 1-1 at 6-7. Defendants did not stress the Michaels/law firm conspiracy theory, and for good reason: it is nonsense. In any event, if defendants truly wanted

- 7 -

1  more information about Michaels, they can and should depose him. Yet defendants
2  have never sought *any* discovery from Michaels, or any other suspect—instead,
3  they seek to burden DC with their irrelevant, overbroad requests. This is improper.
4  DN 550-1 at 43-44, 48-49, 55-56, 58, 61-62, 72-76, 79-80, 82-83, 89-95 (DC's
5  overbreadth objections to these requests); DN 558 at 1-2 (Judge Zarefsky's finding
6  that defendants' "requests address *virtually all of the circumstances* about
7  [Warner's] receipt" of the Timeline documents) (emphasis added).

      b. Defendants speculate that the Timeline was sent to Warner in December 2005, immediately after the Siegels ended communication with Michaels. Mot. 3-4. Not only does this theory ignore the evidence and court findings that the Timeline was delivered in June 2006, *supra* at 3-4, it makes no sense. If Michaels wanted to remain anonymous, he would not have sent the Timeline just days after he was spurned by the Siegels. Instead, as DC pointed out below, the Timeline's June 28, 2006, delivery appears timed to coincide with the release of *Superman Returns*, the same day. DN 550-1 at 39. And while defendants continue to hype the Timeline's reference to an "early holiday gift," as Judge Zarefsky found, "no one knows what 'holiday' the time line author(s) referred to; … it could have been the upcoming July 4 holiday." DN 558 at 2. Moreover, if it was intended as a Christmas gift, its arrival in late June was certainly "early."

      c. Defendants suggest that Warner received four, rather than three, sets of Timeline documents. Mot. 11. DC made clear, in sworn interrogatory responses and extensive meet-and-confer exchanges, that Warner received only *three sets* of documents. One set was delivered to John Schulman, another to Patti Connolly, and a third to Alan Horn. DN 550-3, Ex. A ¶ 2; DN 550-6, Ex. 8 at 108. Although Jeff Robinov was listed as a recipient on the Timeline, he never received a copy. DN 550-6, Ex. 8 at 108. Nor did DC retain any copy of the Timeline documents, as its discovery responses make clear. DN 550-3, Ex. F at 72.

Defendants now argue, for the first time, that Robinov *did* receive the Timeline documents based on a mischaracterization of Schulman's deposition testimony. Mot. 11. This argument—which was *never* made below or raised during the parties' many meet-and-confer exchanges—is waived. *See* RUTTER § 16:282.1 ("The party objecting to the magistrate judge's report may not present … further evidence."); *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2nd Cir. 1994) (same); *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds*. It is also unavailing. Schulman testified only that he "believe[d]" Robinov and Connolly had received the Timeline documents—since the Timeline was addressed to both of them—but "ha[d] no idea" of the precise circumstances of their receipt. Adams Decl. Ex. A at 8:14-24.

### 3. Defendants' Claim that DC "Injected" the Issues into Discovery

Defendants say DC invited this discovery by "injecting" Smith's declaration into the case. Mot. 8-9. In defendants' cited cases, parties opened the door to discovery by making affirmative arguments or giving conflicting factual accounts. *See U.S. v. Lopez*, 45 Fed. Appx. 582, 583 (9th Cir. 2002) (court properly allowed "[l]imited expert testimony" to respond to defendants' argument at trial that went to issue of guilt); *Green v. Peters*, 2000 WL 1230246, at *7 (N.D. Ill. Aug. 24, 2000) (in action against multiple prison officials, defense counsel gave conflicting factual accounts on key substantive issue, entitling plaintiffs to discovery after cut-off date). DC has done neither: it submitted Mr. Smith's declaration in *Siegel* for the sole purpose of countering defendants' accusation that DC mishandled the Timeline documents, DN 550-5, Ex. 2; 550-3, Ex. A; DN 42-13 at 132-42; and republished his declaration in this case when defendants improperly tried to re-litigate the *Siegel* court's rulings, DN 42-13 at 144-49.

### 4. The Contents of the Timeline

Defendants presume their requests *must* be relevant because DC attached the Timeline to its complaint and referenced its contents in briefing. Mot. 7. But as Judge Zarefsky found, defendants' requests "do not concern the substance of the documents referred to in the time line; rather the requests concern the circumstances under which the time line and accompanying documents were received by Warner." DN 558 at 1. Defendants improperly conflate the *contents* of the Timeline—which are relevant to DC's claims—with the *circumstances* of DC's receipt and handling of the Timeline—wholly irrelevant issues that were litigated decided against defendants long ago, *id.* at 2-3; DN 550-1 at 40-41; *supra* at 3-4.

Defendants' suggestion that such discovery "could lead" to admissible evidence and repeated reliance on the "liberal" discovery standards, Mot. 5-7, are insufficient. The discovery rules are "not so liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" *Specialized Bicycle Components, Inc. v. Barton*, 2011 WL 1599653, at *2 (N.D. Cal. Apr. 28, 2011). Judge Zarefsky rightly held that defendants' requests are "far afield from the relevance tether," and "qualif[y] as the proverbial fishing expedition." DN 558 at 4-5. Courts must "not condone the use of discovery to engage in [such] expedition[s]." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004); *see* RUTTER § 11:615 (movant must establish "a plausible chain of inferences showing how discovery of the item sought would lead to other admissible evidence"); *Emara*, 2012 WL 5205950, at *3 ("A mere hope that the requested ... documents contain information that might prove to be relevant later … is insufficient.").

### 5. Credibility

Defendants say the discovery they seek could "relate to the admissibility and/or credibility of the Timeline" or "support the impeachment of potential witnesses, including Michaels," Mot. 8, but fail to explain how or why discovery

concerning DC's receipt of the Timeline would affect its admissibility or the credibility of its allegations or author. If defendants were truly interested in learning this information or impeaching Michaels, they would have deposed or subpoenaed him directly. They have *never* done so.

### 6. DC's Discovery

Nor does the fact that DC served discovery related to the Timeline justify defendants' unrelated and improper requests. Mot. 8. Unlike defendants, DC sought discovery concerning the *contents* of the Timeline—and, after learning that defendants had "sought to blunt the impact of the Toberoff Timeline by asking the U.S. Attorney's office ... to initiate a criminal investigation of its author," DN 205 at 1, served discovery concerning this disclosure to establish a waiver of privilege.

## C. The Magistrate Rightly Held Defendants' Requests Are Moot.

Judge Zarefsky found that most of the documents sought by defendants have already "[been] provided," "do not exist," or are "privileged." DN 558 at 2, 5. Defendants do not argue or show—nor can they—that these factual findings are "clearly erroneous," as required for reversal under Rule 72(a).

1. Defendants say their questions would be "laid to rest" by information showing "that DC received the Timeline when it says it did, on June 28, 2006." Mot. 2. But as Judge Zarefsky found, DC "searched the files of Warner Brothers and of John Schulman, its then General Counsel," and produced documents and information that are more than sufficient to confirm this fact. DN 558 at 2.[3]

Smith's sworn declaration attests that Warner received the Timeline "the afternoon of June 28, 2006," and describes the precise circumstances of its receipt. DN 550-3, Ex. A ¶ 2. DC identified the first privileged documents in its files concerning the Timeline—dated June 28, 2006—and produced the first non-

---

[3] Defendants' assertion that the Court should not rely on DC's searches in light of "previous discovery gamesmanship," Mot. 14 n.4, is not well-taken—and was rightly rejected by Judge Zarefsky. *Compare* DN 550-1 at 19, *with* DN 558 at 2.

DC'S OPP. TO DEFS.' MOT. FOR REVIEW OF JAN. 16, 2013 ORDER

privileged document—the escrow's July 5, 2006, letter confirming the Timeline documents were "delivered to the Warner Bros. offices during the middle of last week." DN 550-3, Ex. I at 159; DN 550-5, Exs. 1, 6 at 70-71. DC's interrogatory responses provide additional details concerning Warner's receipt of the Timeline on June 28, 2006, as well as other information, including Warner's protocol for logging mail deliveries and relevant Warner employees. DN 550-6, Ex. 8 at 83-84, 87-89, 92-93, 97-98, 102-04, 107-08, 133-34. Judge Zarefsky's decision to credit DC's evidence is fully and supported by the record and cannot be overruled, much less under the governing clearly erroneous standard. *Supra* at 2:2-23.

2. Defendants also argue that DC "refused to log privileged documents relating to the Timeline, which would demonstrate when DC actually received the Timeline." Mot. 4 n.2. As defendants know, Judge Zarefsky *rejected this very argument* in a separate order that defendants *did not challenge*, in which he ruled that DC "has provided the information as to the receipt of the time line … in a much more economical way than identifying all the documents in the lawsuit" in a log. DN 553 at 2. Judge Zarefsky held that DC was not required to log thousands of privileged documents created after the *Siegel* litigation—including those related to the Timeline—because "the cost of the logging exercise would be extremely high, and the task extremely time-consuming," with "little corresponding benefit." *Id.* Again, defendants simply ignore this ruling (and their duty of candor).

3. Defendants' claim that DC has "refused to produce" any "packaging, mail or messenger logs, telephone logs, [or] internal communications" from the relevant time period, Mot. 4, disregards Judge Zarefsky's finding that *these documents do not exist*. Warner "has no logs showing receipt of the time line and accompanying documents, and … no packaging or envelopes in which the documents might have been encased. Plaintiff cannot produce what it does not have."[4] DN 558 at 4; *see*

---

[4] Defendants say that Warner should have salvaged the packaging (assuming any existed), Mot. 2—but while Warner had a duty to preserve the Timeline documents

- 12 -

DN 550-1 at 48-49.  DC also made clear that all of the internal correspondence it located—*none* of which predates June 28, 2006—is privileged, DN 550-3, Ex. I at 159, and even offered to share these privileged communications with Judge Zarefsky *in camera*.  Judge Zarefsky's findings crediting DC's evidence was not clear error, nor have defendants shown such error.

      4.  Equally baseless are defendants' claims that DC has not produced a "declaration of anyone with actual first-hand knowledge on this topic."  Mot. 4.  Again, Judge Zarefsky found—over such baseless objections—that DC "submitted declarations of Wayne Smith, Warner Brothers' in-house counsel in charge of this matter, describing the receipt of the documents and the turning over of the documents to a third party escrow."  DN 558 at 2.  Defendants' suggestions that Smith was an incompetent witness or mishandled the documents is false—and were rejected by the *Siegel* court, this Court, and the Ninth Circuit.  *Supra* at 3-4.

      5.  Defendants argue Warner "refused to disclose" documents concerning its internal investigations, including its efforts to locate the Timeline packaging and identify the Timeline author.  Mot. 12-13.  To the extent such documents exist, they are privileged.  DN 558 at 5.  Warner's investigative efforts were conducted by or at the instruction of counsel for purposes of litigation, and thus are privileged.  *See In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004).  Defendants have likewise claimed that their materials reflecting their investigative efforts are privileged, and have refused to produce any documents on this basis.  DN 207-9 at 99, 100.  Defendants cannot demand documents from DC that they themselves refuse to produce.

---

(which it did), there was no reason for it to preserve the *packaging*. *See U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002) (duty to preserve only applies where party "had some notice that the [evidence was] potentially relevant to ... litigation before [it was] destroyed"); *Curcio v. Roosevelt Union Free Sch. Dist.*, 283 F.R.D. 102, 125 (E.D.N.Y. 2012) (defendants "were under no duty to preserve [an] original envelope since it essentially ha[d] no relevance").

DC'S OPP. TO DEFS.' MOT. FOR REVIEW OF JAN. 16, 2013 ORDER

6. Defendants assert DC "brazenly refused" to produce its communications with Michaels, Mot. 12—but most (if not all) of these documents are already in defendants' possession. Moreover, DC *repeatedly* offered to produce all such communications, but asked defendants to do the same, and they declined citing privilege. DN 550-3, Ex. I at 159.

There is no legitimate basis for defendants to assert privilege over their communications with Michaels *after* he left Toberoff & Associates in 2005. *Cf.* Mot. 12. Defendants have accused Michaels of committing crimes by stealing privileged documents, "falsely disparag[ing]" Toberoff, and attempting to "steal" his clients, DN 207-9 at 436, and they reported Michaels' alleged crimes to the FBI and U.S. Attorney's Office, DN 427-11 at 1078. *See U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (privilege only applies where client seeks legal advice from attorney in his capacity as such); *U.S. v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) ("That a person is a lawyer does not, *ipso facto*, make all communications with that person privileged."). This Court *never* held that all of defendants' communications with Michaels are privileged, as defendants argue. Mot. 12. Judge Zarefsky merely found that defendants had not waived privilege over certain 2005 communications by discussing their contents in interrogatory responses, DN 262 at 4 (though this Court later held that defendants *did* waive privilege by disclosing the documents to the U.S. Attorney's Office, DN 262 at 4, Appeal No. 11-71844, DN 38-2).

### III. Conclusion

Defendants' motion for review borders on the frivolous. It should be denied, and the DC should be awarded its fees for opposing it.

Dated:    February 7, 2013              Respectfully Submitted,

By: /s/ Daniel M. Petrocelli
    Daniel M. Petrocelli
    Attorneys for Plaintiff DC Comics