DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:  (310) 553-6700
Facsimile:  (310) 246-6779

Attorneys for Plaintiff DC Comics

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>      Plaintiff,<br><br>      v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>      Defendants. | Case No. CV 10-3633 ODW (RZx)<br><br>**REPLY IN SUPPORT OF DC COMICS' MOTION FOR ATTORNEYS' FEES UNDER 17 U.S.C. § 505**<br><br>Hon. Otis D. Wright II<br><br>**Hearing Date**:      Vacated |

The Toberoff defendants' opposition to DC's fees motion fails to cite recent controlling Ninth Circuit case law that directly rejects a central premise of their opposition, *Mattel, Inc. v. MGA Entm't, Inc.*, 2013 WL 264645, at *2 (9th Cir. Jan. 24, 2013); it never mentions or addresses DC's several cited cases showing that courts regularly grant fee awards in copyright cases involving only declaratory relief; and its description of the procedural history of this case, and the gravamen of DC's Third Claim, is nothing more than the same legal wordplay that forced DC to bring its Third Claim and have its rights judicially declared in the first place.

Indeed, defendants *admit* that Toberoff and Pacific Pictures violated the Copyright Act by engineering a series of unlawful rights-tying agreements, but say there should be no consequences for their deliberate misconduct.  They argue the Court's declaration that their agreements are invalid should be deemed "moot," and assert that DC cannot recover the fees it incurred in vindicating its rights.  This mootness argument comes *months* too late:  defendants lost on summary judgment; lost in trying to have DC's full Third Claim excluded from the Court's final judgment; and are appealing that Third Claim in the Ninth Circuit.  The mootness argument is also wrong on its own terms and badly misreads DC's complaint.

As for DC's entitlement to fees, *Mattel* is clear:  if a fee request will promote the underlying purposes of the Copyright Act, it should be granted.  2013 WL 264645, at *2.  Congress and the Ninth Circuit could not have spoken more clearly about the need to protect parties like DC from parties like Toberoff who improperly "traffic[] in future [copyright] interests."  *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1047 (9th Cir. 2005) (citing Congress).  Letting Toberoff escape the expense he caused DC would neither be just, nor promote the Copyright Act's goals.

## I.     DC Prevailed On Its Third Claim Against Toberoff And Pacific Pictures.

The Copyright Act provides for an award of attorneys' fees "to the prevailing party" on copyright claims.  17 U.S.C. § 505.  A "'prevailing party' is one who has been awarded some relief by the court," including a "judgment on the merits."

*Cadkin v. Loose*, 569 F.3d 1142, 1148 (9th Cir. 2009); *see Merch. Transaction Sys., Inc. v. Nelcela, Inc.*, 2010 WL 1336956, at *4 (D. Ariz. Mar. 31, 2010) ("summary judgment order" is "determination on the merits" warranting fee award).

It is beyond question that DC prevailed on its Third Claim. After the parties spent two-plus years litigating the Third Claim on the merits, the Court granted summary judgment in DC's favor and entered final judgment against Toberoff and Pacific Pictures, declaring that their "rights-encumbering agreements—including the 2001 Pacific Pictures agreement, 2003 Pacific Pictures agreement, and 2008 consent agreement—are deemed invalid and unenforceable under § 304(c)(6)(D) of the Copyright Act." DN 507; 540. This is the very relief that DC sought in its complaint, DN 49 ¶ 172, and in its summary judgment motion to which Toberoff refused to stipulate, DN 458 at 23-25. It is also the very relief Toberoff argued should not be afforded DC in his own competing cross-motion. DN 478 at 22-24.

Defendants' claim that DC somehow did *not* "prevail[]," Opp. 6, is frivolous:

<u>1. DC's Third Claim Is Not, And Was Not, Moot.</u> Defendants argue that the Court's ruling granting DC judgment on its First Claim—and declaring the Shuster copyright termination notice invalid—mooted DC's Third Claim. Opp. 6-7. This improper motion for reconsideration of the Court's summary judgment ruling—a ruling which *granted* DC judgment on *both* its First and Third Claims—was already rejected by this Court months ago. Defendants conspicuously fail to mention that they already argued that DC's Third Claim was "moot," DN 513 at 6, and the Court rejected that argument, granting DC final judgment on *both* claims, DN 540.

Even if Toberoff could challenge these rulings now (and he cannot, while they are on appeal), the Court's summary judgment order and final judgment were proper. DC's Third Claim alleged Toberoff's consent agreements violated § 304(c)(6)(D) of the Copyright Act, and asked the Court to grant two separate forms of relief: (1) to declare those rights-tying agreements invalid; and/or (2) to restore DC's exclusive 10-year negotiation period with the Shuster heirs concerning

their then-pending termination notice. DN 49 ¶¶ 165-73, 192-94; 458 at 23-25. While the Court's ruling on DC's First Claim mooted DC's latter, *alternative* injunctive-relief request, it had no effect on the principal relief on which DC was granted judgment—a declaration invalidating Toberoff's rights-tying agreements.

      The Court's ruling judicially declaring Toberoff's web of unlawful consent agreements invalid, DN 540, was of and remains of critical importance to DC. The declaration makes clear DC may settle its business disputes with *either* the Shuster or Siegel families, free from interference by Toberoff, his companies, or the other family. *Id.* This ruling remains vitally important to DC, which—based on its agreements with both families—will have business and contractual relationships with the heirs for years to come. This Court has always had full jurisdiction under the Declaratory Judgment Act to afford DC this declaratory relief. *See* 28 U.S.C. § 2201; *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); Mot. 3. Toberoff cannot undo this ruling, preventing him from further interfering, in the auspices of this fees motion.[1]

      2.  <u>DC Obtained "Meaningful Relief" Against Toberoff And Pacific Pictures.</u>
Defendants argue that because they "*always* agreed" the Pacific Pictures contracts were unlawful, DC's victory on its Third Claim afforded no "meaningful relief." Opp. 7-8. This is sophistry. *First*, DC invited Toberoff to stipulate to judgment on DC's claims some *30 months* ago (in 2010), DN 90 at 4-11; 92 at 4, but defendants, *including* Toberoff and Pacific Pictures, fought this claim for over two years, badly misreading what the Pacific Pictures contracts actually said and what Shuster rights Toberoff locked up. DN 90 at 4-11; DN 458 at 23-25. *Second*, Toberoff felt the need as late as August 2011—15 months after this litigation began—to enter into a

---

[1] Toberoff cites no authority to the contrary, and never addresses DC's cases. In the sole case he cites, *Access for the Disabled, Inc. v. First Resort, Inc.*, 2012 WL 4479005, at *7-8 (M.D. Fla. Sept. 28, 2012), the court denied plaintiff's fees motion because it lacked standing to bring a claim under the ADA and was thus ineligible for fees—unlike DC, which already *prevailed* on the merits of its claim.

new agreement with the Shusters "cancel[ing]" the 2001 and 2003 Pacific Pictures agreements. DN 314-2 Ex. D; 322 at 1-2. *Third*, defendants argued, as late as December *2012*, that the Court's final judgment on DC's Third Claim—against Toberoff and Pacific Pictures—should not mention the 2008 lock-up agreement at all, DN 513 at 6; 529 at 4-5; 534 at 1, 536. Defendants hardly agreed to anything.

While defendants could have avoided DC's fee request by stipulating to DC's claims years ago, *cf. Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 232 (3d Cir. 2011), they never did so, because Toberoff wanted to lock up the heirs and keep them from freely negotiating peace with DC. Now that the Court has entered judgment against him, Toberoff cannot suddenly pretend DC's claim was "moot" all along. Opp. 8. It was only after years of briefing contested Rule 12, discovery, and summary judgment motions that the Court finally found for DC and declared the agreements Toberoff orchestrated invalid. DN 507. This ruling unquestionably "altered the legal relationship between the parties." *Cf.* Opp. 6.

Toberoff's fallback argument is that the Court's invalidation of the 2008 consent agreement is irrelevant because he was not a party to it. This is nonsense. To begin, Toberoff's claim that he signed the consent agreement only "as to form," Opp. 8, cannot be tested given his continued refusal to produce the agreement, even *in camera*, DN 160 at 58-60. Moreover, it ignores that the Siegels and Shusters testified that *Toberoff caused them* to sign the consent agreement. DN 501 at 11-15; 502-5 at 798:15-800:21, 801:4-13, 810:14-23, 834:20-835:7, 836:6-12. Indeed, Mark Peary went so far as to say that he had *no* independent thoughts concerning the agreement save for what Toberoff told him. DN 459-6 at 461:19-462:9, 464:3-465:17. Finally, as DC's complaint and all its briefing make clear, its Third Claim has always targeted *Toberoff's* acts in orchestrating these lock-up agreements. DN 49 ¶¶ 165-73, 192-94; 458 at 23-25. DC's summary judgment motion and proposed final judgment on its Third Claim (both of which the Court *granted*) were directed at Toberoff, *personally*. DN 458 at 23-25; 535-1 at 1. Until Toberoff

received this fees motion, he never argued—*not once*—that DC's Third Claim was not directed at him, or that it would not alter DC's rights vis-à-vis the Toberoff defendants. This is an eleventh-hour invention aimed at evading responsibility.

A similar fiction is Toberoff's claim that DC cannot seek fees against him because he was the Shusters' lawyer. Opp. 9-10, 16-17. The Copyright Act does not exempt lawyer/businessman copyright traffickers from its rules, and both this Court and the Ninth Circuit have definitively rejected Toberoff's oft-recycled claim that DC filed this case to "retaliate" against him for his legal work. Opp. 3. The law of this case—which Toberoff can no longer in good faith dispute, FED. R. APP. P. 41(c)—is that "DC's claims were *not* 'based on' protected activity…." *DC Comics v. Pacific Pictures Corp.*, 2013 WL 120807, at *1 (9th Cir. Jan. 10, 2013).[2]

## II. All Of The *Fogerty* Factors Weigh In Favor Of A Fee Award.

Although fee awards under the Copyright Act are not "automatic," Opp. 5, the Ninth Circuit has established that "courts may freely award fees," *Historical Research v. Cabral*, 80 F.3d 377, 378 (9th Cir. 1996), and courts hold "[t]he grant of fees and costs [in copyright cases] <u>'is the rule</u> rather than the exception <u>and they should be awarded routinely</u>.'" *Balsley v. LFP, Inc.*, 691 F.3d 747, 773 (6th Cir. 2012) (emphasis added); *accord Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 484 (S.D.N.Y. 2001). In determining whether a fee award is appropriate, courts consider the non-exclusive factors identified in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534-35, 535 n.19 (1994). Here, *all* of those factors confirm that DC is entitled to attorneys' fees under the Copyright Act.

<u>1. DC's Fee Award Would Further The Purposes Of The Copyright Act.</u>
"The most important factor in determining whether to award fees under the Copyright Act is whether an award will further the purposes of the Act." *Mattel*,

---

[2] *See id.* ("[T]he lock-up agreement appears to bind the heirs long after the expiration of any settlement negotiations. Any protected conduct is thus merely the backdrop to—and not the basis of—[DC's] unfair competition claim.").

2013 WL 264645, at *2. Toberoff argues that awarding DC fees would undermine the Act because Congress enacted its termination provisions to protect heirs like the Shusters. Opp. 16. He is mistaken. To begin, DC is *not* seeking fees from the Shusters—who, like DC, were victims of Toberoff's unlawful schemes. Mot. i-ii. Rather, DC seeks fees against Toberoff and Pacific Pictures, who *admittedly* violated § 304(c)(6)(D), and did so for their own private, commercial gain.

The termination provisions, moreover, were *not* enacted solely to benefit authors and heirs. Congress carefully crafted the termination laws as a *compromise* between the interests of authors, and also grantees like DC, which spent more than 70 years developing Superman. *E.g.*, SUPP. REG.'S REP. ON GEN. REV'N OF U.S. COPYRIGHT LAW, 89TH CONG. 72 (1965) (termination provisions a "compromise" designed to provide a "benefit to authors … without being unfair to publishers, film producers, and other users"). Section 304(c)(6)(D)—which Toberoff violated—is a key part of this "compromise." As the Ninth Circuit has held, that provision "give[s] the original grantee [*i.e.*, DC] a competitive advantage over third parties," akin to a "right of 'first refusal.'" *Milne*, 430 F.3d at 1047. It also forbids third parties like Toberoff from "trafficking" in copyrights. *Id.*; *see* DN 507 at 16:16-26.

Letting Toberoff intentionally violate § 304(c)(6)(D) without consequence would undermine the Act. Under *Mattel*, DC should be awarded the fees it incurred in vindicating its rights and having Toberoff's unlawful contracts invalidated. Congress created these rights to benefit DC, and the Ninth Circuit recognized their importance in *Milne*. 430 F.3d at 1047 (canvassing legislative history). Toberoff's citations to treatise writers who do not meaningfully address *Milne*, *see* 3 M. & D. NIMMER, NIMMER ON COPYRIGHT § 11.07 (2010) ("NIMMER"), who were on the losing end of *Milne*, *id.*, or who concede that Congress was "hostile" to traffickers like Toberoff, 3 W. PATRY, PATRY ON COPYRIGHT § 7:47, at 7-104 n.1 (2009), do not alter this analysis. Nor does Toberoff's cite to Judge Zarefsky, who said he could *not* opine on the legality of the consent agreement unless he saw it. DN 209

REPLY RE: DC'S MOT. FOR ATTORNEYS' FEES

at 8. Nor does Toberoff's cite to a New York case from 1987, years before *Milne*.[3] Nor does Toberoff's reliance on the fact that Mr. Petrocelli was co-counsel to Mr. Nimmer in *Milne*. Opp. 12. *Milne* held—<u>in 2005</u>—that § 304(c)(6)(D) "give[s] [DC] a competitive advantage over third parties" akin to a "right of 'first refusal.'" 430 F.3d at 1047. Well aware of that ruling (having briefed it in his *Mewborn* case, *see* DN 491 at 12-13), Toberoff nonetheless chose to engineer his illegal consent agreement <u>in 2008</u>—and to defend it in this case, at great cost to DC.

    2. <u>DC Achieved A High Degree of Success.</u> As shown above, DC achieved victory on its Third Claim and obtained the declaratory relief it sought. The law is clear: DC is entitled to a fee award for obtaining such declaratory relief. *E.g.*, 4 NIMMER § 14.10 (fees available "any time the action at hand requires construction of the Copyright Act," including claim "for a declaration"); *Pritchett v. Pound*, 473 F.3d 217, 220 (5th Cir. 2006) (award of fees under § 505 in declaratory relief action); *Ackoff-Ortega v. Windswept Pac. Entm't Co.*, 2001 WL 225246, at *4 n.9 (S.D.N.Y. Mar. 2, 2001) ("this Court has repeatedly awarded attorneys' fees for any action brought under the Copyright Act, including declaratory judgments").

Tellingly, defendants have no response to any these authorities—all of which were cited in DC's motion. Mot. 3. And *none* of defendants' few cited cases involves a situation where, as here, the prevailing party won judgment on the merits and obtained the very relief it sought—*i.e.*, a declaration establishing its rights and forever freeing itself from third-parties' unlawful interference.[4]

---

[3] *Bourne Co. v. MPL Commc'ns, Inc.*, 675 F. Supp. 859, 861, 865-66 (S.D.N.Y. 1987), denied plaintiff's claim for *money* damages based on a violation of § 304(c)(6)(D), but *never* ruled that plaintiff was not entitled to declaratory relief.

[4] *Cf. Milton H. Greene Archives, Inc. v. Julien's Auction House LLC*, 345 Fed. Appx. 244, 249 (9th Cir. 2009) (<u>upholding</u> award even though plaintiff's success was "nominal" and **1%** of requested damages were awarded); *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1118-19 (1st Cir. 1993) (success was "limited"—plaintiff alleged massive counterfeiting scheme, but court found only a few infringing items); *Fletcher v. City of Fort Wayne*, 162 F.3d 975, 976 (7th Cir. 1998) (plaintiff recovered "nominal damages" in "tiny" proportion to relief sought).

3. <u>Defendants' Unreasonable Conduct.</u>  Defendants repeatedly argue that because their defense on DC's Third Claim was "not frivolous," DC's motion must be denied.  *E.g.*, Opp. 1:7, 2:12, 10:6, 10:19, 11:11, 14:1-5, 14:19.  Chief Judge Kozinski's ruling in *Mattel*, 2013 WL 264645, at *3—which *pre*-dated Toberoff's opposition brief, but which Toberoff nowhere cites—refutes this very argument:

> Mattel argues that, because its claim was objectively reasonable, MGA is not entitled to fees. *This argument seeks to resurrect the <u>long-rejected requirements of frivolousness</u> and bad faith.* [Citation omitted.]  At one point, a copyright defendant had to show that the plaintiff's claim was frivolous or made in bad faith in order to be entitled to fees; *but no longer*.  *Id*.  (Emphasis added.)

And while DC need not show Toberoff was unreasonable to prevail on this motion, *id.* ("Even assuming Mattel's claim was objectively reasonable, the district court didn't abuse its discretion in awarding MGA fees."), he certainly was so.  In *Milne*, the Ninth Circuit held that § 304(c)(6)(D) created a "right" running in DC's favor.  Yet Toberoff filed one Rule 12 and summary judgment brief after another ignoring *Milne*, challenging DC's Third Claim, and asserting that § 304(c)(6)(D) did not create a right on which DC could sue.  *E.g.*, DN 78 at 4-7; 333 at 8-11; 462 at 21-24.  At great expense, DC had to respond and show Toberoff's deceptions in not addressing *Milne*, DN 90 at 5; 334 at 12-15; 468 at 10—a deception he repeats here with *Mattel*.  *Cf. Gonzalez-Servin v. Ford Motor Co.*, 662 F.3d 931, 934 (7th Cir. 2011) (a party "may not simply ignore" adverse "dispositive precedent").

Toberoff's wasteful litigation on DC's Third Claim ended only after two years of expensive litigation, and when the Court granted DC summary judgment—expressly relying on *Milne*, DN 507 at 5-13.  Copyright fee awards are proper when a party's arguments "contribute to the bloat" of a case, *Love v. Assoc. Newspapers*, 611 F.3d 601, 615 (9th Cir. 2010), or are "factually unreasonable" in light of the contracts at issue, *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 890 (9th Cir. 1996).  In light of *Milne* and given the undisputed lock-up clauses in his consent agreements, Toberoff had no basis to oppose DC's Third

REPLY RE: DC'S MOT. FOR ATTORNEYS' FEES

Claim. None of the supposed contrary authorities on which he relied, Opp. 11-13, could possibly trump *Milne*, and *none* held or argued that DC could not obtain the declaratory relief it sought. At most, *Bourne* held that a party could not pursue a damages claim under § 304(c)(6)(D), *supra* n.4, which DC did not do, in any event.

4. Compensation And Deterrence. Toberoff's willful, admitted violation of § 304(c)(6)(D), like his refusal to consent to judgment, weigh heavily in favor of a fee award. Third parties like Toberoff, who "traffic[]" in copyright interests, *Milne*, 430 F.3d at 1047, should be deterred. *See Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996) (courts must consider "the goal of deter[ence]"); *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1230 (9th Cir. 1997) (same). Moreover, DC should be compensated for having to bear the cost of Toberoff's misconduct; which includes DC's inability to freely negotiate with the Shusters for the past 12 years because of Toberoff's unlawful rights-tying agreements, and this litigation, which was necessary to vindicate its rights.

5. Defendants' "Motive." Toberoff argues his "motive in defending against DC's Third Claim was proper," Opp. 14, and thus DC's motion should be denied. Toberoff's claims about his motives are belied by his litigation conduct and are irrelevant. *See Mattel*, 2013 WL 264645, at *3 ("bad faith" a "long-rejected" test); *Fogerty*, 94 F.3d at 558 ("blameworthiness is not a prerequisite to awarding fees").

**III. DC's Fee Request Is Modest And Reasonable.**

DC was forced to incur millions of dollars in attorneys' fees prosecuting its Third Claim, as a result of defendants' *three* motions to dismiss or strike the claim, their efforts to stay this case and to resist discovery, the parties' cross-summary judgment briefing on the claim, and defendants' efforts to overturn the Court's ruling. DN 559-1 ¶ 3. Even so, DC is seeking to recover only a fraction its fees, $500,000. *Id.* As the Rule and commentators provide is the proper course, DC can and will submit documentation of its fees, if the Court rules DC is entitled to fees. *See* 10-54 FERN M. SMITH, MOORE'S FEDERAL PRACTICE § 54.154 (2011) (movant

"should not, submit copious evidentiary materials designed to prove the right to a fee or the amount of the fee. Those evidentiary materials should be submitted only as directed by the court."); FED. R. CIV. P. 54(d)(2)(C).

Toberoff suggests fees can *only* be awarded where the losing party is better off financially than the prevailing party. *Cf.* Opp. 16-17. This is plainly not the law, *see Fogerty*, 510 U.S. at 534-35 & n.19—and courts have rejected Toberoff's position many times before, *e.g.*, *Littel v. Twentieth Century-Fox Film Corp.*, 1996 WL 18819, at *3 (S.D.N.Y. 1996) (granting fee motion despite plaintiffs' claim to be "struggling artists" "likely to become bankrupt" by fee award). Nor is there any evidence that the fee award DC seeks will "lead to financial ruin" for Toberoff and Pacific Pictures. Opp. 17. To the contrary, Toberoff regularly boasts about his vast wealth, and had he wanted to prove otherwise, he should have submitted a sworn declaration supporting his claim. *E.g.*, *Littel*, 1996 WL 18819, at *3-4. He notably did not do so.

**V.  Conclusion**

This Court should grant DC's motion for attorneys' fees and enter DC's Proposed Order (DN 559-3).

Dated:       February 10, 2013              Respectfully Submitted,

By: /s/ Daniel M. Petrocelli
Daniel M. Petrocelli
Attorneys for Plaintiff DC Comics