# EXHIBIT B

# Part 8 of 9

ROUGH DRAFT

18:13:07  1    again.  Can you answer the question anyway you see

18:13:08  2    fit.  And -- and I -- and with the exception that I

18:13:12  3    will instruct you not to answer certain questions

18:13:15  4    that impinge on the attorney-client privilege.

18:13:15  5    BY MR. PETROCELLI:

18:13:18  6        Q.  Now, my question to you is would you have

18:13:20  7    wanted to know about various documents in which that

18:13:23  8    evidence your uncle claiming co-authorship of

18:13:28  9    Superboy and filing copyright registrations as late

18:13:32  10   as the mid-'70s in making a determination to remove

18:13:37  11   the -- any interest of the estate to Superboy?

18:13:40  12       MR. TOBEROFF:  Objection.  Assumes facts.

18:13:43  13   Lacks foundaton.  It mischaracterizes the exhibits

18:13:48  14   you can answer.

18:13:51  15       THE WITNESS:  My answer is I don't think it

18:13:52  16   would have made any difference so no.

18:13:52  17   BY MR. PETROCELLI:

18:13:55  18       Q.  Why wouldn't it have made a difference?

18:13:57  19       MR. TOBEROFF:  You can only answer that to

18:13:59  20   the extent that your knowledge is not based on

18:14:01  21   conversations with me regarding Superboy.

18:14:05  22       THE WITNESS:  I -- I -- it's kind of legal.

18:14:15  23   I just know.

18:14:17  24       MR. TOBEROFF:  You can only answer that --

18:14:19  25   please follow my instruction.  If your conversations

305

**EXHIBIT B**
**348**

ROUGH DRAFT

18:14:23  1  are based on knowledge independent of your

18:14:25  2  discussions with me I'm happy for you to answer the

18:14:27  3  question.  If they're not, then you can't answer the

18:14:31  4  question.  That's it.

18:14:33  5       THE WITNESS:  Okay.

18:14:33  6  BY MR. PETROCELLI:

18:14:37  7       Q.  As --

18:14:38  8       A.  My -- my knowledge of it is -- is based

18:14:44  9  mostly on my discussions so I guess I can't answer

18:14:49 10  it.

18:14:50 11       Q.  You're the executor of the estate.  You

18:14:52 12  filed legal documents in that capacity.  You filed

18:14:56 13  them as a matter of public record.

18:15:03 14       On what basis did you file documents

18:15:06 15  concluding that the estate had no interest in

18:15:09 16  Superboy?

18:15:13 17       MR. TOBEROFF:  You can answer that as -- as

18:15:15 18  long is as your basis is not based on conversations

18:15:18 19  and advice with your -- from and with your attorney.

18:15:25 20       THE WITNESS:  Okay.  So what do I know

18:15:30 21  separate from talking with my attorney?

18:15:33 22       MR. TOBEROFF:  Don't involve him in that

18:15:34 23  thought process.  Think to yourself whether you have

18:15:36 24  an understanding separate from your conversations

18:15:41 25  with me or if you can separate it then can you

306

ROUGH DRAFT

18:15:43 1    answer the question.  If not, I instruct you not to

18:15:46 2    answer.

18:15:48 3            THE WITNESS:  Well my knowledge is tied to

18:15:50 4    my discussions with Marc Toberoff.  I don't know how

18:15:54 5    to separate it.

18:15:54 6    BY MR. PETROCELLI:

18:15:56 7        Q.  I'm asking you for --

18:15:57 8            MR. TOBEROFF:  I instruct you not to

18:15:58 9    answer.

18:15:58 10   BY MR. PETROCELLI:

18:15:59 11       Q.  I'm asking you to answer the question based

18:16:01 12   on your judgment and your capacity as the executor

18:16:03 13   of the estate.  You're the decision-maker not your

18:16:06 14   lawyer.

18:16:07 15           MR. TOBEROFF:  It's the same instruction.

18:16:09 16   His question doesn't change my instruction.

18:16:14 17           THE WITNESS:  I have to follow the

18:16:15 18   instruction.

18:16:16 19           (Instruction not to answer.)

18:16:16 20   BY MR. PETROCELLI:

18:16:17 21       Q.  Did you -- do you believe that Joe Shuster

18:16:20 22   new better than Marc Toberoff as to whether he

18:16:25 23   participated in the creation of Superboy?

18:16:34 24       A.  I'm not sure I understand the question.

18:16:34 25       Q.  Well, you saw that I showed you various

307

ROUGH DRAFT

18:16:36    1    documents including copyright registration files --

18:16:41    2    filings in which Joe Shuster was attributed as a

18:16:49    3    co-shore of Superboy.  You saw that, right?

18:16:51    4         A.  Yes.

18:16:52    5         Q.  Okay.  Do you think that Joe Shuster would

18:16:54    6    have had a better understanding of whether he was a

18:16:56    7    co-author of Superboy than Marc Toberoff?

18:17:01    8              MR. TOBEROFF:  Calls for a legal

18:17:02    9    conclusion.  Lacks foundation.

18:17:09   10              THE WITNESS:  All I know is she's -- these

18:17:13   11    terminations were based upon a -- a renewal period

18:17:17   12    that -- that doesn't currently apply.

18:17:20   13              MR. TOBEROFF:  Don't -- don't discuss --.

18:17:20   14    BY MR. PETROCELLI:

18:17:23   15         Q.  How do you know what you just said?

18:17:24   16              MR. TOBEROFF:  Excuse me.

18:17:24   17    BY MR. PETROCELLI:

18:17:26   18         Q.  You just said that these renewals don't

18:17:29   19    apply.  What did you mean by that?

18:17:31   20              MR. TOBEROFF:  Excuse me.  I'm going to

18:17:33   21    make my instruction again.  I'm instructing you not

18:17:36   22    to testify based on advice or information that you

18:17:41   23    have only received from your attorney.

18:17:43   24              Do you understand that instruction?

18:17:45   25              Do you understand that instruction?

**EXHIBIT B**
**351**

ROUGH DRAFT

18:17:48 1          THE WITNESS:  Not to testify to information

18:17:49 2     that I have received from my attorney?

18:17:51 3          MR. TOBEROFF:  Yes.

18:17:51 4          Do you understand that instruction.

18:17:53 5          THE WITNESS:  Yes.

18:17:54 6          MR. TOBEROFF:  Okay.  So if you have

18:17:55 7     knowledge outside of your conversations with me or

18:17:59 8     outside of advice that I have given you, then can

18:18:02 9     you testify.

18:18:09 10          THE WITNESS:  Okay.  Well --

18:18:11 11          MR. TOBEROFF:  And you don't have to feel

18:18:12 12     bad about it.  Just you make the decision whether

18:18:14 13     it's based on knowledge -- based on advice and

18:18:17 14     knowledge you've obtained from me and conversations

18:18:19 15     with me in which event I instruct you not to answer.

18:18:22 16     You don't have to feel bad about not answering.  You

18:18:24 17     don't answer the question.  You're instructed not to

18:18:27 18     answer.  If however you have information based on

18:18:30 19     your own independent knowledge that's not part and

18:18:34 20     parcel of your discussions and advice from me, then

18:18:37 21     you -- then you can answer the question and only,

18:18:39 22     then.

18:18:39 23          Do you understand that?

18:18:44 24          THE WITNESS:  Okay yes.

18:18:45 25          MR. TOBEROFF:  Okay good.

309

**EXHIBIT B**
**352**

ROUGH DRAFT

18:18:45   1    BY MR. PETROCELLI:

18:18:47   2        Q.  So answer the question now.

18:18:48   3        A.  So my -- my -- my understanding is based on

18:18:58   4    my discussions with Marc Toberoff, my -- and where

18:19:02   5    we discuss copyright law.  That's.

18:19:06   6        Q.  But you -- you made a judgment it was your

18:19:08   7    decision to make not Mr. Toberoff's.  You made a

18:19:11   8    judgment to enter into an amendment to a joint

18:19:14   9    venture removing certain rights from the venture.

18:19:18   10   And in what -- when you made that judgment I

18:19:20   11   would -- I want you to tell me what was the basis of

18:19:23   12   that judgment?

18:19:24   13       MR. TOBEROFF:  Asked and answered.  I

18:19:25   14   instruct you not to answer.  You've already answered

18:19:28   15   the question.  Basis is legal advice.  You don't

18:19:30   16   have to answer and you don't have to speak.

18:19:32   17       (Instruction not to answer.)

18:19:34   18       MR. TOBEROFF:  Next question.

18:19:34   19   BY MR. PETROCELLI:

18:19:36   20       Q.  And when you made the judgment as the

18:19:38   21   executor of the estate to reject any claim to

18:19:48   22   Superboy, what was the basis of that judgment?

18:19:56   23       MR. TOBEROFF:  Same instruction.

18:19:56   24       (Instruction not to answer.)

18:19:56   25   BY MR. PETROCELLI:

310

**EXHIBIT B**
**353**

ROUGH DRAFT

18:20:03  1      Q.  Did you -- did you talk to the -- to the

18:20:11  2  Siegels about your decision before making it?

18:20:24  3      A.  I don't recall doing that.

18:20:25  4      Q.  Did you approach the Siegels at any time

18:20:30  5  and indicate to them that based on Joe Shuster's

18:20:38  6  contributions to Superboy, that the right should be

18:20:44  7  equally divided?  Did you have any discussion like

18:20:47  8  that with the Siegels?

18:20:48  9      A.  No.

18:20:50 10      Q.  Did you even think about having that kind

18:20:52 11  of conversation?

18:20:57 12      A.  I don't know if I thought about it.

18:20:59 13      Q.  Did you talk to your mom that you were

18:21:03 14  going to relinquish rights to Superboy?

18:21:06 15      A.

18:21:06 16          MR. TOBEROFF:  Misstates his testimony.

18:21:09 17  Assumes facts.  Lacks foundation.

18:21:15 18          THE WITNESS:  I didn't think we had rights.

18:21:15 19  BY MR. PETROCELLI:

18:21:18 20      Q.  That was based on what Marc Toberoff told

18:21:19 21  you, correct?

18:21:21 22      A.  Largely.

18:21:22 23      Q.  Well what -- what part wasn't based on what

18:21:24 24  Marc Toberoff told you?

18:21:25 25      A.  I have seen section 304 D of the copyright

                                                              311

**EXHIBIT B**
**354**

ROUGH DRAFT

18:21:33  1      law.

18:21:34  2          Q.  So you made your own interpretation of

18:21:36  3      section 304 D of the copyright law and concluded

18:21:39  4      that Joe Shuster had no rights to Superboy?

18:21:43  5          A.  I read it in consultation with my attorney.

18:21:46  6              MR. TOBEROFF:  Again, please, don't go into

18:21:48  7      areas that are based on your consultation with your

18:21:50  8      attorney, please.

18:21:51  9              THE WITNESS:  Okay.

18:21:52  10             MR. TOBEROFF:  Just because he keeps asking

18:21:54  11     you the same questions all over again you don't have

18:21:56  12     to feel bad when you can't answer those questions

18:21:58  13     because it's attorney-client privilege.  He could

18:22:01  14     ask the question.

18:22:01  15             MR. PETROCELLI:  Mark.

18:22:02  16             MR. TOBEROFF:  Over and over again.

18:22:03  17             MR. PETROCELLI:  Mark it's not.

18:22:04  18             MR. TOBEROFF:  I'm instructing.

18:22:05  19             MR. PETROCELLI:  No, no.

18:22:06  20             MR. TOBEROFF:  When you interrupt me it

18:22:07  21     wastes more time than you letting me finish.

18:22:10  22             MR. PETROCELLI:  You're taking a moment can

18:22:11  23     you go off the record and tell him that.

18:22:13  24             MR. TOBEROFF:  You're wasting time.

18:22:14  25             MR. PETROCELLI:  I don't want you using

312

ROUGH DRAFT

18:22:16  1    valuable time telling him he doesn't have to feel

18:22:19  2    bad.

18:22:19  3            MR. TOBEROFF:  If you're concerned about

18:22:20  4    the time you wouldn't engage in me in colloquy.

18:22:20  5            MR. PETROCELLI:  No, No, I can't let you

18:22:20  6    keep doing this.

18:22:23  7            MR. TOBEROFF:  Court consider I'm going

18:22:25  8    instruct my client you can reserve all your rights.

18:22:27  9            MR. PETROCELLI:  I'm putting you on notice

18:22:29 10    right now.

18:22:29 11            MR. TOBEROFF:  Interrupting me again.

18:22:31 12            MR. PETROCELLI:  That I'm going to seek

18:22:34 13    more time to examine the witness.

18:22:34 14            MR. TOBEROFF:  I reject that.

18:22:37 15            MR. PETROCELLI:  Because you're talking.

18:22:40 16            MR. TOBEROFF:  The time is wasted by -- he

18:22:43 17    you're not going to brow meet your?

18:22:45 18            MR. PETROCELLI:  That you instruct him not

18:22:47 19    to answer.  You don't have to go into any further

18:22:49 20    colloquy request him.

18:22:50 21            MR. TOBEROFF:  I see that my client is

18:22:52 22    getsing very distressed because your asking him the

18:22:55 23    same question -- please don't interrupt plea please

18:22:57 24    don't interrupt me.

18:22:58 25            MR. PETROCELLI:  Asking you to go off the

313

**EXHIBIT B**
**356**

ROUGH DRAFT

18:22:59  1    record so you don't take up my time that's all I'm

18:23:02  2    asking you.

18:23:02  3            MR. TOBEROFF:  We can govern govern the

18:23:04  4    record.

18:23:05  5            THE VIDEOGRAPHER:  Video off the record the

18:23:06  6    time is 6:22.

18:32:05  7            (Brief recess.)

18:32:06  8            THE VIDEOGRAPHER:  Back on the record at

18:32:11  9    6:31.

18:32:11  10   BY MR. PETROCELLI:

18:32:15  11       Q.  I put Exhibit 13 back in front of you.

18:32:17  12   It's the October 27, 2003 amendment to the joint

18:32:21  13   venture agreement.  Which you signed as executor

18:32:26  14   with Pacific Pictures Corporation.

18:32:33  15            When you entered into this amendment to the

18:32:36  16   joint venture agreement with Pacific Pictures

18:32:41  17   Corporation, on what basis did you determine to

18:32:48  18   remove references to Superboy from your joint

18:32:52  19   venture?

18:32:56  20       A.  It was on advice of counsel.

18:32:59  21       Q.  But the counsel you're talking about is --

18:33:03  22   was the other party to the joint venture, correct?

18:33:07  23            MR. TOBEROFF:  Argumentative.

18:33:07  24   BY MR. PETROCELLI:

18:33:11  25       Q.  The counsel you're talking about is Marc

314

**EXHIBIT B**
**357**

ROUGH DRAFT

18:33:13   1    Toberoff, correct?

18:33:13   2        A.  Marc Toberoff attorney.

18:33:14   3        Q.  Marc Toberoff was the president of the

18:33:16   4    joint venture that was the other party to your joint

18:33:23   5    venture agreement, correct?

18:33:23   6        A.  Yes.

18:33:27   7        Q.  President of Pacific Pictures so you took

18:33:30   8    the advice of the president of Pacific -- you're

18:33:32   9    relying on the advice of the president of Pacific

18:33:37  10    Pictures Corporation and on that basis refusing to

18:33:39  11    tell me why you deleted Superboy?

18:33:43  12            MR. TOBEROFF:  Argumentative.

18:33:44  13            THE WITNESS:  My relationship with.

18:33:47  14            MR. TOBEROFF:  What's the question?

18:33:49  15    BY MR. PETROCELLI:

18:33:51  16        Q.

18:33:51  17            Is that correct?

18:33:52  18        A.  That -- say it again.

18:33:53  19        Q.  That you're -- you're telling me that the

18:33:56  20    sole basis of your decision to remove Superboy from

18:34:01  21    your amendment to your joint venture which is

18:34:04  22    Exhibit 13 that you entered into with the president

18:34:08  23    of Pacific Pictures Corporation was the advice given

18:34:12  24    to you by the president of Pacific Pictures

18:34:15  25    Corporation?

315

ROUGH DRAFT

18:34:17  1          A.  As my attorney, yes.

18:34:20  2          Q.  And you had no other basis other than what

18:34:23  3   your attorney told you, other than what Mr. Toberoff

18:34:25  4   told you, correct?

18:34:25  5          A.  Yes.

18:34:29  6          Q.  And you refused to -- to share the basis

18:34:36  7   for your judgment simply because your lawyer told

18:34:39  8   you?

18:34:41  9          A.  My counsel told me, yes.

18:34:47 10          Q.  And -- and you understood at the time that

18:34:55 11   you relied exclusively on the advice of Mr. Toberoff

18:35:02 12   that he was the lawyer for the Siegels who were

18:35:07 13   claiming 100 percent rights to Superboy, correct?

18:35:07 14          A.  Yes.

18:35:29 15          Q.  Now, you said that this agreement got

18:35:40 16   terminated or canceled because you learned from

18:35:45 17   Mr. Toberoff that it was invalid.

18:35:45 18              Is that correct?

18:35:50 19          MR. TOBEROFF:  I believe that misstates his

18:35:51 20   testimony.

18:35:53 21              THE WITNESS:  I don't remember the reason

18:35:55 22   why I said.

18:35:55 23   BY MR. PETROCELLI:

18:35:59 24          Q.  What was your understanding why the

18:36:01 25   reason -- why the agreement was invalid?

316

**EXHIBIT B**
**359**

ROUGH DRAFT

18:36:06  1        A.  I don't know if I thought it was invalid.

18:36:09  2    We changed it to a legal retainer because it was a

18:36:12  3    better format.

18:36:18  4        Q.  Why -- and -- but you also in connection

18:36:21  5    with that decision received advice that certain

18:36:27  6    parts of your agreement might not be valid, correct?

18:36:35  7        A.  I believe so.

18:36:35  8        Q.  What parts?

18:36:43  9        MR. TOBEROFF:  I'll -- I'll -- I'll -- he

18:36:46  10   can't go into that without divulging the substance

18:36:51  11   of his communications with me on the subject.

18:36:51  12   BY MR. PETROCELLI:

18:36:55  13       Q.  Well as the executor of the estate entering

18:36:58  14   into -- well, let me start all over again.

18:37:00  15           Take a look at Exhibit 20.

18:37:09  16           (The document referred to was

18:37:09  17           marked for identification by the

18:37:09  18           C.S.R. as Exhibit 20 and attached

18:37:15  19           to this deposition.)

18:37:15  20       MR. PETROCELLI:  This is the September 10,

18:37:17  21   20004 document that you signed and your mother also

18:37:21  22   signed, correct?

18:37:21  23       A.  Yes.

18:37:25  24       Q.  You signed it both in your individual

18:37:26  25   capacity as executor of Mr. Shuster's estate?

317

**EXHIBIT B**
**360**

ROUGH DRAFT

18:37:29  1        A.  Yes.

18:37:31  2        Q.  And it says:

18:37:36  3              "It's a letter from

18:37:37  4        Mr. Toberoff to you.  And to

18:37:41  5        Ms. Peavy, right?

18:37:42  6        A.  Yes.

18:37:43  7        Q.  It says this is to confirm that one, the

18:37:46  8    joint venture agreement dated as of November 23,

18:37:50  9    2001 between you and Pacific Pictures Corporation

18:37:53  10   and 2, the engagement agreement dated October 27,

18:37:58  11   2003 between the estate of Joseph Shuster and

18:38:01  12   Pacific Pictures corp. have been canceled.

18:38:06  13   Sincerely yours Marc Toberoff and its on the

18:38:08  14   letterhead of Pacific Pictures Corporation.

18:38:11  15             Do you see that?

18:38:11  16       A.  Yes.

18:38:18  17       Q.  When you agreed to this cancellation what

18:38:26  18   provisions of your prior agreements did you believe

18:38:28  19   were invalid?

18:38:33  20             MR. TOBEROFF:  Same instruction.

18:38:33  21   BY MR. PETROCELLI:

18:38:40  22       Q.  Were there drafts of the October 27, 2003

18:38:42  23   amendment to the joint venture or did you just sign

18:38:44  24   the one and only version that was given to you?

18:38:53  25       A.  I don't remember if there were any other

                                                              318

**EXHIBIT B**
**361**

ROUGH DRAFT

18:38:54  1    drafts.

18:38:54  2         Q.  Were there drafts of Exhibit 20 in the

18:38:56  3    September 10, 20004 document that you have in front

18:39:04  4    of you?

18:39:04  5         A.  I only recall getting this.

18:39:10  6         Q.  Excuse me?  You only recall receiving?

18:39:10  7         A.  This I only recall getting this document.

18:39:12  8         Q.  If you go back and look at Exhibit 10 for a

18:39:15  9    moment?

18:39:15 10         A.  Which is.

18:39:32 11         Q.  Exhibit 10.  And paragraph -- paragraph 8

18:40:04 12    and you see the reference in there that in the event

18:40:06 13    of a termination for any reason the rights will be

18:40:11 14    held by the claimants that's you and your mother 50

18:40:15 15    percent and by PPC as tenants in common by percent."

18:40:20 16         Do you see that? Paragraph 8?

18:40:20 17         A.  Yes.

18:40:21 18         Q.  And you see the same provision in Exhibit

18:40:24 19    13 in paragraph 7 that's the October 27, 2003

18:40:30 20    amendment.  In the event of a termination for any

18:40:33 21    reason the rights go to you 50 percent, the estate

18:40:42 22    and then 50 percent PPC.

18:40:47 23         Do you see that?

18:40:47 24         A.  2003, which.

18:41:12 25         Q.  Paragraph 7?

319

**EXHIBIT B**
**362**

ROUGH DRAFT

18:41:12  1        A.  Oh, 7.  Okay.

18:41:19  2        A.  Yeah okay.

18:41:20  3        Q.  You got that?

18:41:32  4        A.  In the event of termination?

18:41:33  5        Q.  Right for any reason?

18:41:34  6        A.  On expiration -- oh, okay.

18:41:37  7        Q.  So you see it has the same provision,

18:41:37  8   correct?

18:41:40  9        A.  Almost.  It just leaves out the word

18:41:44  10  "venture" is all.

18:41:47  11       Q.  Okay.  Now, are you aware of any document

18:41:51  12  at the time you executed Exhibit 20 which is the

18:41:54  13  December -- excuse me, the September 10, 20004

18:41:58  14  document, that states that the rights do not go 50

18:42:10  15  percent to the estate and 50 percent to PPC in the

18:42:14  16  event of a termination.

18:42:19  17       A.  Not in that document, no.

18:42:20  18       Q.  It's not in Exhibit 20 corrects?

18:42:24  19       A.  That's correct.

18:42:24  20       Q.  Is there any other document of which you

18:42:26  21  were aware that provided that as a result of

18:42:29  22  executing Exhibit 20 the rights went other than as

18:42:35  23  directed by exhibits 10 and 13 the joint venture

18:42:39  24  agreements?

18:42:39  25       A.  Yes.

320

**EXHIBIT B**
**363**

ROUGH DRAFT

18:42:42  1        Q.  What document is that?

18:42:44  2        A.  The legal retainer.

18:42:46  3        Q.  Okay.  Show me that.  Here is our copy of T

18:42:54  4   it's Exhibit 21.

18:43:01  5             MR. TOBEROFF:  May I have a copy, please.

18:43:03  6             (The document referred to was

18:43:03  7             marked for identification by the

18:43:03  8             C.S.R. as Exhibit 21 and attached

18:43:11  9             to this deposition.)

18:43:11  10  BY MR. PETROCELLI:

18:43:12  11       Q.  Now, this is a copy that's redacted.  Do

18:43:19  12  you understand what redacted means?  When

18:43:23  13  Mr. Toberoff produced it to us he excised or omitted

18:43:26  14  various parts of it so it's not a complete document

18:43:29  15  but it's all that we have.  This is a document that

18:43:40  16  you signed?  What you're now calling this retainer

18:43:47  17  agreement Exhibit 21.

18:43:48  18       A.  Yes.

18:43:48  19       Q.  Okay.  And did you sign this at or around

18:43:51  20  the time that you executed Exhibit 20 the September

18:43:57  21  10, 20004 document?

18:44:04  22       A.  It was signed around that time.

18:44:09  23       Q.  And where in Exhibit 21, the -- by the way,

18:44:21  24  would you call Exhibit 21 the -- more or less a

18:44:24  25  standard legal retainer agreement?

                                                            321

ROUGH DRAFT

18:44:28  1          A.  I believe.

18:44:28  2              MR. TOBEROFF:  Vague.

18:44:28  3     BY MR. PETROCELLI:

18:44:30  4          Q.  Where in the Exhibit 21 does it say that

18:44:35  5     the rights upon termination of the venture go other

18:44:41  6     than as directed by the joint venture agreements

18:44:45  7     exhibits 10 and 13?

18:44:51  8          A.  In 9 it says this agreement supersedes all

18:44:54  9     prior and contemporaneous understandings.

18:45:01 10          Q.  Is there anyplace in this document that

18:45:03 11     says that in the event that the joints venture

18:45:06 12     agreements -- because the joint venture agreements

18:45:10 13     have been canceled that the rights go not as

18:45:13 14     directed by the joint venture agreements by but in

18:45:16 15     some other manner?  Is there some more explicit

18:45:20 16     clause than 9?

18:45:20 17              MR. TOBEROFF:  Are you asking -- are you

18:45:22 18     asking him to read the document.

18:45:22 19     BY MR. PETROCELLI:

18:45:24 20          Q.  No I'm asking him to tell me from memory,

18:45:27 21     because I've read what you've given me and there is

18:45:30 22     no such statement in what you produced to us in the

18:45:33 23     redacted version so is there any such statement that

18:45:39 24     you recall that appeared in this document when you

18:45:42 25     signed it before it was sent to us in redacted form?

                                                                322

**EXHIBIT B**
**365**

ROUGH DRAFT

18:45:45  1        A.  That specifically states.

18:45:46  2        Q.  That notwithstanding -- in words or

18:45:49  3    substance notwithstanding what is stated in the

18:45:52  4    joint venture agreements and the event of a

18:45:53  5    termination for any reason the claimants will own 50

18:45:56  6    percent and PPC will own the remaining 50 percent.

18:46:00  7        MR. TOBEROFF:  Asked and answered.

18:46:00  8    BY MR. PETROCELLI:

18:46:01  9        Q.  That the rights about not go to

18:46:04  10   Mr. Toberoff or any company associated with him or

18:46:06  11   PPC but will go as -- in some different way?

18:46:11  12       MR. TOBEROFF:  Asked and answered.

18:46:11  13   BY MR. PETROCELLI:

18:46:12  14       Q.  Something like that.  Is there some

18:46:13  15   explicit reference in this retainer agreement along

18:46:16  16   those lines?

18:46:17  17       MR. TOBEROFF:  Asked and answered.

18:46:21  18       You can answer.

18:46:22  19       THE WITNESS:  Not exactly as you stated it.

18:46:22  20   BY MR. PETROCELLI:

18:46:25  21       Q.  Is there any reference to the did he say

18:46:28  22   position of the rights upon termination of the joint

18:46:33  23   venture other than the first sentence of paragraph 9

18:46:37  24   that you just pointed out to me?

18:46:42  25       A.  Well, to me the --

323

**EXHIBIT B**
**366**

ROUGH DRAFT

18:46:44  1           MR. TOBEROFF:  You'd have to read the

18:46:45  2    agreement before you can answer.

18:46:47  3           Do you want him to read the agreements.

18:46:47  4    BY MR. PETROCELLI:

18:46:49  5           Q.  Are you aware of anything?  You pointed

18:46:52  6    readily to paragraph 9.  Are you aware of any other

18:46:54  7    agreement, other provision in the document that

18:46:56  8    deals with the disposition was rights?

18:46:58  9           MR. TOBEROFF:  Without reading it?

18:47:00 10           MR. PETROCELLI:  Yes.  Without reading it

18:47:02 11    word for word:  You can scan it.

18:47:15 12           THE WITNESS:  To me it's -- it's clear

18:47:20 13    between the legal retainer and the letter that

18:47:20 14    canceled the joint venture that the -- the legal

18:47:28 15    retainer as it states supersedes everything else.

18:47:28 16    BY MR. PETROCELLI:

18:47:33 17           Q.  Your understanding that Pacific Pictures

18:47:36 18    Corporation was a party to this retainer agreement?

18:47:36 19           A.  No.

18:47:45 20           Q.  So Pacific Pictures Corporation didn't

18:47:50 21    agree to anything in this retainer agreement so far

18:47:56 22    as you know, right?

18:47:57 23           A.  As far as I know they're not a party.

18:47:59 24           Q.  So are you aware of a document by which

18:48:02 25    Pacific Pictures Corporation specifically stated

324

**EXHIBIT B**
**367**

ROUGH DRAFT

18:48:07  1    that notwithstanding the provisions of the joint

18:48:09  2    venture agreement in the event of a termination

18:48:12  3    Pacific Pictures Corporation will not own any

18:48:16  4    rights?

18:48:17  5            A.  The -- my understanding of the Pacific

18:48:26  6    Pictures it says if the venture is terminated not if

18:48:30  7    it's canceled.

18:48:32  8            Q.  Terminated for any reason, right?

18:48:35  9            A.  That's -- if the venture is -- it's not the

18:48:38  10    same thing as canceled.  That's my understanding.

18:48:43  11            Q.  What's the difference between the two?

18:48:44  12            A.  The -- the difference being canceled means

18:48:48  13    it has been supplanted by the legal retainer and

18:48:52  14    supersedes all prior agreements like it states here.

18:48:55  15            Q.  Pacific Pictures is not a party to this

18:48:58  16    agreement you said, right?

18:48:59  17            A.  Not to the legal retainer.

18:49:00  18            Q.  Right.  So you're saying that -- who told

18:49:03  19    you that the word "canceled" means that the

18:49:07  20    termination provisions of the joint venture

18:49:09  21    agreements no longer apply?

18:49:11  22            MR. TOBEROFF:  Assumes facts.  Lacks

18:49:11  23    foundation.

18:49:11  24    BY MR. PETROCELLI:

18:49:17  25            Q.  Is that something that you just thought of

325

**EXHIBIT B**
**368**

ROUGH DRAFT

| | | |
|---|---|---|
| 18:49:18 | 1 | right now or is that something that you were told at |
| 18:49:21 | 2 | the time that by using one word canceled instead of |
| 18:49:24 | 3 | the word "terminated, that would solve the problem? |
| 18:49:32 | 4 | A. That's my understanding of it. |
| 18:49:33 | 5 | Q. And who told you that? |
| 18:49:37 | 6 | MR. TOBEROFF: Assumes facts. Lacks |
| 18:49:39 | 7 | foundation. |
| 18:49:39 | 8 | THE WITNESS: I told myself that. |
| 18:49:39 | 9 | BY MR. PETROCELLI: |
| 18:49:40 | 10 | Q. No one told you that in other words, right? |
| 18:49:45 | 11 | That's something you've come up with on your own? |
| 18:49:47 | 12 | A. We have a clear -- a clear understanding |
| 18:49:50 | 13 | when we switch from the joint venture to the legal |
| 18:49:52 | 14 | retainer. We clearly understood each other. |
| 18:49:55 | 15 | Q. Who is we? |
| 18:49:57 | 16 | A. Me and Marc Toberoff. |
| 18:49:58 | 17 | Q. How do you know that? |
| 18:49:59 | 18 | A. Because we discussed. |
| 18:50:01 | 19 | Q. What did you -- what did you and he discuss |
| 18:50:03 | 20 | in that regard? |
| 18:50:06 | 21 | MR. TOBEROFF: I'll allow you to answer |
| 18:50:07 | 22 | that question without waiver of the attorney-client |
| 18:50:09 | 23 | privilege. |
| 18:50:11 | 24 | THE WITNESS: We discussed. |
| 18:50:12 | 25 | MR. TOBEROFF: Do you agree that I'm not |

326

**EXHIBIT B**
**369**

ROUGH DRAFT

18:50:14 1    waiving the privilege by allowing him to answer

18:50:16 2    that?

18:50:17 3              MR. PETROCELLI:  No.

18:50:18 4              MR. TOBEROFF:  Okay.  Then I instruct you

18:50:19 5    not to answer our discussions.

18:50:21 6              (Instruction not to answer.)

18:50:27 7              MR. PETROCELLI:  No, I can't -- I can't

18:50:29 8    allow you to selectively waive like that.

18:50:36 9              MR. TOBEROFF:  Fine.

18:50:36 10   BY MR. PETROCELLI:

18:50:56 11        Q.  Did you -- have you reviewed a copy of this

18:51:03 12   retainer agreement recently?

18:51:07 13        A.  I believe so.

18:51:09 14        Q.  When?

18:51:13 15        A.  I believe before I came here.

18:51:18 16        Q.  In connection with the deposition?

18:51:23 17        A.  I would say so.

18:51:25 18        Q.  Do you have a copy at home?

18:51:26 19        A.  Yes.

18:51:31 20        Q.  Where was it maintained?

18:51:37 21        A.  A copy?

18:51:37 22        Q.  Yes.

18:51:39 23        A.  There's one in a filing cabinet.

18:51:44 24        Q.  And you read this retainer agreement and

18:51:47 25   you also said you read the consent agreement and

327

ROUGH DRAFT

18:51:51 1      what else did you read?

18:51:55 2           A.  The deposition materials.

18:51:57 3           Q.  The prior deposition in the Siegel case?

18:51:59 4           A.  Yes.

18:52:00 5           Q.  And you read all of those materials prior

18:52:03 6      to coming here for the deposition?

18:52:05 7           A.  Yes.

18:52:06 8           Q.  Did you bring the retainer agreement with

18:52:08 9      you?

18:52:09 10          A.  No.

18:52:16 11          Q.  Is this the last document that you have

18:52:21 12     signed in connection with either Mr. Toberoff or the

18:52:27 13     Siegels other than the subsequent 2008 consent

18:52:31 14     agreement?

18:52:32 15          A.  This would be the last one other than that.

18:52:34 16          Q.  Next -- so this is the next to last one,

18:52:34 17     right?

18:52:38 18          A.  I believe so.

18:52:38 19          Q.  And does this document Exhibit 21 contain

18:52:48 20     any provisions in it that deal with agreements with

18:52:55 21     the Siegels or getting the consent of the Siegels?

18:53:05 22               MR. TOBEROFF:  You have to read the

18:53:06 23     document.

18:53:07 24               MR. PETROCELLI:  I'm talking about the

18:53:08 25     parts that are omitted.  The redacted parts.

328

**EXHIBIT B**
**371**

ROUGH DRAFT

18:53:13  1          MR. TOBEROFF:  He can't testify as to the

18:53:15  2    redacted parts obviously.  Instruct you not to

18:53:18  3    answer any questions about the redacted parts.

18:53:21  4          (Instruction not to answer.)

18:53:21  5          MR. PETROCELLI:  With resp- -- yeah because

18:53:23  6    I can read the parts that have been produced to us.

18:53:25  7          Q.  Based on your review of the entire

18:53:27  8    documents was there any reference in the document to

18:53:29  9    the Siegels?

18:53:33 10          MR. TOBEROFF:  Instruct you not to answer.

18:53:34 11          (Instruction not to answer.)

18:53:34 12    BY MR. PETROCELLI:

18:53:36 13          Q.  Was there -- is there any reference in the

18:53:38 14    document to Superboy?

18:53:43 15          MR. TOBEROFF:  Are you asking him

18:53:44 16    whether -- about the omitted portions in the

18:53:46 17    document?

18:53:46 18          MR. PETROCELLI:  Yes.

18:53:47 19          MR. TOBEROFF:  Okay.

18:53:47 20          MR. PETROCELLI:  In other words, can I read

18:53:48 21    the portion.

18:53:49 22          MR. TOBEROFF:  Since you're concerned about

18:53:50 23    your time we can save a lot of time I'm going to

18:53:53 24    instruct him not to answer any question as to the

18:53:55 25    redacted portions of the agreement that have been

329

**EXHIBIT B**
**372**

ROUGH DRAFT

18:53:58  1      upheld by the Court.

18:54:00  2              (Instruction not to answer.)

18:54:00  3      BY MR. PETROCELLI:

18:54:18  4          Q.  Have you been aware of any efforts to

18:54:24  5      market any rights Superman that you or the estate

18:54:30  6      may own?

18:54:31  7          A.  No.

18:54:35  8          Q.  Are you aware that Mr. -- of any efforts by

18:54:38  9      Mr. Toberoff to approach third parties like motion

18:54:47 10      picture studios or other, to try to sell an interest

18:54:54 11      in Superman?

18:54:54 12              MR. TOBEROFF:  Instruct you not to answer

18:54:54 13      as to any awareness that can only be based on the

18:54:58 14      substance of communications between us.

18:54:59 15              (Instruction not to answer.)

18:54:59 16      BY MR. PETROCELLI:

18:55:00 17          Q.  Are you aware of any reports by

18:55:01 18      Mr. Toberoff not of legal advice but that he met

18:55:04 19      with third parties to discuss possible sale of your

18:55:13 20      interest in Superman?

18:55:14 21              MR. TOBEROFF:  Same instruction.

18:55:15 22              (Instruction not to answer.)

18:55:15 23      BY MR. PETROCELLI:

18:55:17 24          Q.  On what ground?

18:55:20 25              MR. TOBEROFF:  Same ground.

330

**EXHIBIT B**
**373**