# EXHIBIT B

# Part 9 of 9

ROUGH DRAFT

MR. PETROCELLI: Attorney-client privilege.

MR. TOBEROFF: Same grounds.

MR. PETROCELLI: Even though there's no legal advice.

MR. TOBEROFF: I'm not going to argue with you.

BY MR. PETROCELLI:

Q. Are you aware that whether or not any contacts have been made to sell the estates' interest or negotiate potential sale of the estate's interest on your behalf?

MR. TOBEROFF: Same instruction.

BY MR. PETROCELLI:

Q. Is the -- what is the estates doing to market its interest?

A. Currently?

Q. Yes. What -- since you became the executor of the estate, what efforts have you undertaken as the executor to determine -- to attempts to sell any interest in the rights that the estate seeks to -- seeks to recapture?

A. I don't believe we've done that yet.

Q. Are you aware of Mr. Toberoff having contacted third parties on behalf of the estate?

MR. TOBEROFF: I instruct you not to

18:56:27 answer. It implicates our communications.

18:56:30 (Instruction not to answer.)

18:56:30 BY MR. PETROCELLI:

18:56:35 Q. Are you aware -- have you discussed that

18:56:37 subject with your mother?

18:56:44 A. I don't believe so.

18:56:44 Q. Or with the Siegels?

18:56:45 A. No.

18:56:47 Q. Take a look at Exhibit 22.

18:56:49 (The document referred to was

18:56:49 marked for identification by the

18:56:49 C.S.R. as Exhibit 22 and attached

18:56:55 to this deposition.)

18:56:55 MR. TOBEROFF: Can I get a time check how

18:56:57 long we've been going here.

18:56:58 THE VIDEOGRAPHER: Yes. Approximately 14

18:57:01 minutes left in the 7 hours.

18:57:04 MR. TOBEROFF: Could you please let me know

18:57:06 when it's 7 hours?

18:57:06 BY MR. PETROCELLI:

18:57:26 Q. Are you aware of -- have you seen this

18:57:30 document before?

18:57:35 A. I don't believe so.

18:57:36 Q. Have you seen any e-mails between Paramount

18:57:43 Pictures and Marc Toberoff prior to today,?

18:57:44 A. No.
18:57:47 Q. You'll see on page 1 that this is an e-mail
18:57:49 from Mr. Toberoff to individuals at Paramount dated
18:57:57 April 29, 2010.
18:57:57 A. Yes.
18:58:00 Q. And you see that some of the attachments
18:58:03 are listed below one of them is the Shuster
18:58:06 termination.
18:58:06 Do you see that?
18:58:12 A. Which one is that on the e-mail?
18:58:15 Q. The first page?
18:58:16 A. Yeah. The attachments.
18:58:17 Q. You see the reference the Shuster
18:58:19 termination it says three attachments Shuster
18:58:21 termination?
18:58:25 A. That's the Siegel V?
18:58:27 Q. Excuse me? I can't hear you, sir?
18:58:32 A. That's the Siegel V attachments at the
18:58:34 bottom?
18:58:37 Q. I'm just asking do you see the reference to
18:58:39 Shuster termination on page 1?
18:58:41 A. Oh, let me see.
18:58:48 Q. Are you looking at the same document I am?
18:58:53 MR. TOBEROFF: We have a different document
18:58:53 here.

18:58:53 MR. PETROCELLI: Well, that explains the confusion. Okay. Can you get what page is he on? Okay. So for the record you're looking on a page that's included in Exhibit 22 and at the top it says attachments for Paramount part 2/2, correct?

18:59:30 A. At the bottom there's a Bates number L S L 00098.

18:59:34 Do you see that?

18:59:34 A. Yes.

18:59:34 Q. Okay. And you'll see I just wanted to direct your attention to the e-mail in the reference to the Shuster termination notice. You see that now, correct?

18:59:44 A. Yes.

18:59:45 Q. Okay. Now, can you turn to the page that says part one of 2 L S L 00209. And there's another e-mail there from Mr. Toberoff to folks at Paramount saying this is the first two e-mails attaching requested documents and then there's some description of the documents that were forwarded including documents relating to the Schusters.

19:00:29 Do you see that?

19:00:29 A. Yes.

19:00:30 Q. Okay. Now were you aware that documents relating to the Shuster termination interest were

19:00:40 being sent to Paramount Pictures?
19:00:47 A. I don't think so.
19:00:49 Q. Okay. First time you're seeing this?
19:00:52 A. These e-mails, yes.
19:00:56 Q. Okay. And were you aware of any contacts
19:01:01 that Mr. Toberoff had made with Paramount regarding
19:01:04 the Shuster termination interest prior to today?
19:01:13 A. There have been discussions.
19:01:16 MR. TOBEROFF: Don't -- you can't talk
19:01:18 about discussions with me.
19:01:18 THE WITNESS: I know I know can't.
19:01:18 BY MR. PETROCELLI:
19:01:21 Q. Discussions with whom?
19:01:21 A. My attorney.
19:01:22 Q. Who is your attorney?
19:01:23 A. Marc Toberoff.
19:01:24 Q. When did those discussions occur?
19:01:25 A. I can't remember specific dates.
19:01:32 Q. What year?
19:01:35 A. Some time in the seven years that he has
19:01:37 been working on this is all I can say.
19:01:40 Q. Were you aware of discussions within the
19:01:44 last year having to do with Paramount?
19:01:50 A.
19:01:50 MR. TOBEROFF: If you're awareness is

solely based on discussions with me I have to cut it off. I can't have you testify.

THE WITNESS: Okay. Can't say anything.

(Instruction not to answer.)

BY MR. PETROCELLI:

Q. Have you had any discussions directly with third parties like Paramount?

A. No.

Q. How is it that the estate intends to -- before I ask you that, take a look at Exhibit 23. Which is a vehicle pass that Mr. Toberoff has produced. Which says pitch Superman.

(The document referred to was marked for identification by the C.S.R. as Exhibit 23 and attached to this deposition.)

BY MR. PETROCELLI:

Q. Are you aware of any pitches that this one is date November 19, 2010. It's got Bates number L S L 00210 on it.

Do you see that?

A. Yes.

Q. Are you aware of any meetings that Mr. Toberoff attended relating to the Shuster's termination interest meetings with third parties to

ROUGH DRAFT

19:03:17 pitch Superman?

19:03:18 A. Not this specifically.

19:03:25 Q. How is it that the estate intends to get
19:03:32 any money for the Superman interest that it has
19:03:36 sought to terminate?

19:03:40 MR. TOBEROFF: You -- you can't -- I
19:03:42 instruct you not to answer that question if your
19:03:44 answer to that question is based on your discussions
19:03:46 with me and advice of counsel.

19:03:48 (Instruction not to answer.)

19:03:51 THE WITNESS: Well my understanding is
19:03:53 based on discussions with counsel.

19:03:53 BY MR. PETROCELLI:

19:03:56 Q. I'm not asking about legal advice. Your --
19:03:58 in your capacity as executor of the escrow state,
19:04:02 how is it you -- you've asked for the powers to be
19:04:07 granted to you and they were granted to go and take
19:04:15 various proceedings with respect to the Shuster
19:04:17 termination interest for the benefit of the estate.
19:04:20 How is it that you as the executor intend to get any
19:04:28 money for the termination interest?

19:04:30 MR. TOBEROFF: Same instruction.

19:04:31 (Instruction not to answer.)

19:04:31 BY MR. PETROCELLI:

19:04:33 Q. Have you given any thought to that?

19:04:36 MR. TOBEROFF: Same instruction.
19:04:36 (Instruction not to answer.)
19:04:37 MR. PETROCELLI: That --
19:04:39 MR. TOBEROFF: Can you answer whether or
19:04:40 not -- yes or no you've given any thought to it you
19:04:42 can answer that.
19:04:45 THE WITNESS: Yes. I've given thought.
19:04:47 MR. TOBEROFF: Okay.
19:04:47 BY MR. PETROCELLI:
19:04:48 Q. And what -- what thoughts have you had on
19:04:50 that subject?
19:04:51 MR. TOBEROFF: Same instruction.
19:04:51 (Instruction not to answer.)
19:04:51 BY MR. PETROCELLI:
19:04:55 Q. Are you incapable of having a thought on
19:04:57 that subject that does not involve Marc Toberoff?
19:05:01 MR. TOBEROFF: Argumentative.
19:05:02 MR. PETROCELLI: It's definitely not
19:05:04 argumentative.
19:05:07 Q. In your role as executor of the estate, is
19:05:10 it your testimony that you have been able to -- you
19:05:15 can't do anything or even think of anything that
19:05:17 doesn't involve the legal advice of Marc Toberoff?
19:05:22 A. That's correct.
19:05:25 Q. Okay. So everything that you do and

19:05:27 everything that you know as the executor of the
19:05:32 estate is based on the legal advice of Marc
19:05:37 Toberoff?
19:05:37 MR. TOBEROFF: Vague.
19:05:41 THE WITNESS: Yes. Follow my counsel.
19:05:43 MR. PETROCELLI:
19:05:43 Q. And -- well, I didn't ask you whether you
19:05:45 follow your counsel. I'm asking you in your role as
19:05:48 your executor, you don't have any judgment or any
19:05:56 ideas or any thoughts other than what Toberoff
19:06:01 discusses with you.
19:06:01 Is that correct?
19:06:03 MR. TOBEROFF: Misstates his testimony.
19:06:04 You can answer.
19:06:07 THE WITNESS: That's correct.
19:06:07 BY MR. PETROCELLI:
19:06:16 Q. Do you believe your fit to be an executor
19:06:18 under those circumstances?
19:06:22 A. Yes.
19:06:27 Q. Have you disclosed to the Court that you
19:06:29 refuse to say anything about your thinking your
19:06:36 thoughts your judgments or your actions because
19:06:38 everything is based on conversations with Marc
19:06:41 Toberoff as to which you will claim the privilege?
19:06:43 Is that something that you indicated to the probate

court when you sought permission to act as executor?

MR. TOBEROFF: Misstates testimony and the assertion of privilege.

THE WITNESS: No.

BY MR. PETROCELLI:

Q. Do you understand that you have fiduciary duties to people other than your mother as the beneficiary?

MR. TOBEROFF: Calls for a legal conclusion. Lacks foundation. Assumes facts.

BY MR. PETROCELLI:

Q. Who do you understand in your role as the executor who do you understand that you owe a fiduciary duty to?

MR. TOBEROFF: Calls for a legal conclusion.

THE WITNESS: My understanding is the Shuster heirs.

BY MR. PETROCELLI:

Q. And who is that?

A. Jean, myself and my sister.

Q. Is that a thought that you've had without talking to Marc Toberoff or did Mr. Toberoff tell you that?

A. No, I'm aware of that on my own.

Q. Is that the only thing you're aware of on your own?

MR. TOBEROFF: About anything?

MR. PETROCELLI: Correct.

Q. Having to do with the administration of the estate and in particular the termination interest.

MR. TOBEROFF: Vague. Overbroad.

THE WITNESS: I don't know. You would have to be specific.

BY MR. PETROCELLI:

Q. Has anyone told you that you owe fiduciary duty to creditors including DC Comics?

A. I don't know about that.

Q. Are you aware that unless you make an agreement with DC Comics that the estate may get nothing at any time with respect to its Superman interests?

MR. TOBEROFF: You can't -- if you have an opinion about that independent on discussions with me, can you answer the question. Otherwise, I instruct you not to answer.

THE WITNESS: No my -- my opinion is based on discussions with counsel.

(Instruction not to answer.)

BY MR. PETROCELLI:

ROUGH DRAFT

19:09:06 Q. Do you have the opinion that the estate can sell an interest in Superman without making an agreement with DC Comics?

19:09:13 MR. TOBEROFF: Same instruction. If you have an opinion independent of the advice of counsel, you can answer. Otherwise I instruct you not to answer.

19:09:21 (Instruction not to answer.)

19:09:21 MR. PETROCELLI: I'm not strictly asking for opinions I'm asking for your state of mind, your knowledge, your information, your beliefs.

19:09:27 MR. TOBEROFF: If any, of those are independent of the advice of counsel regarding his particular question, can you answer. Otherwise I instruct you not to answer.

19:09:36 THE WITNESS: No they're not independent of counsel.

19:09:38 BY MR. PETROCELLI:

19:09:41 Q. Have you formed any views about the estate's ability to sell an interest in Superman without having an agreement with DC Comics?

19:10:02 MR. TOBEROFF: He is just asking -- I'll let you answer the question whether or not you formed any views not what those views are.

19:10:07 THE WITNESS: Okay. Yes, I formed views.

ROUGH DRAFT

19:10:07 BY MR. PETROCELLI:

19:10:11 Q. And what are those views?

19:10:12 MR. TOBEROFF: Based on your prior answers
19:10:13 to his similar questions I instruct you not to
19:10:16 answer.

19:10:16 BY MR. PETROCELLI:

19:10:20 Q. Are -- are you aware that the estate could
19:10:27 lose this case and the Court could find that the
19:10:31 Shuster termination notice is not valid with respect
19:10:35 to Superman?

19:10:40 MR. TOBEROFF: If you're --.

19:10:40 BY MR. PETROCELLI:

19:10:42 Q. As the executor of the estate have you --
19:10:46 have you thought about that issue?

19:10:51 MR. TOBEROFF: Can you just answer that in
19:10:53 the most general fashion without going into any
19:10:55 particulars.

19:10:56 THE WITNESS: Okay. Yes.

19:10:56 BY MR. PETROCELLI:

19:10:58 Q. Okay. And have you received any advice on
19:11:03 that subject other than from Marc Toberoff?

19:11:06 A. No.

19:11:15 Q. Okay. And the estate has already given up
19:11:17 any interest in claim to Superboy, correct?

19:11:21 A.

19:11:21 MR. TOBEROFF: Assumes facts. Lacks foundation.

19:11:23 THE WITNESS: As far as I know.

19:11:23 BY MR. PETROCELLI:

19:11:27 Q. So you -- you understand that given that the estate has already given up an interest in Superboy, and the estate could lose this case and the Court could find that the Shuster termination notice is invalid that you as executor could yield the estate 0. You entertain that as a possible outcome, correct?

19:11:51 MR. TOBEROFF: Assumes facts. Lacks foundation. You can answer in the most general fashion without going into any details.

19:12:01 THE WITNESS: I.

19:12:02 MR. TOBEROFF: This is -- this is his last answer because we're -- we've met our 7 hour max.

19:12:08 THE WITNESS:

19:12:09 MR. PETROCELLI: It's not a max but I understand your leaving at the end of 7 hours.

19:12:13 THE WITNESS: I've only considered that like I would an asteroid hitting us and wiping out life on earth.

19:12:21 BY MR. PETROCELLI:

19:12:22 Q. Is -- and again, it's based on

19:12:25 Mr. Toberoff's advice?

19:12:25 MR. TOBEROFF: We're cutting this as 7 hour.

19:12:28 THE WITNESS: Yes.

19:12:28 BY MR. PETROCELLI:

19:12:29 Q. Okay. One other question. Are you able to enter into a settlement agreement with DC without the consent of the Siegels?

19:12:39 MR. TOBEROFF: I instruct you not to answer that question. He's asking you about the consent agreements.

19:12:44 (Instruction not to answer.)

19:12:46 MR. PETROCELLI: Well, I wasn't but --

19:12:46 Q. Independent --

19:12:52 MR. TOBEROFF: No more questions. Done. 7 hours and I'm cutting it off.

19:12:55 MR. PETROCELLI: Are you saying that we're.

19:12:57 MR. TOBEROFF: I'm abiding by the Federal rules we're over the 7 hours I gave you an extra question and that was one question too many.

19:13:04 MR. PETROCELLI: Well since your declining to go forward, we obviously are not finished. So we will.

19:13:12 MR. TOBEROFF: I disagree.

19:13:13 MR. PETROCELLI: Well, I understand. I'm

ROUGH DRAFT

19:13:15 just making it clear that I'm not concluding the
19:13:18 deposition. We'll have to seek court relief to not
19:13:22 only continue it but also, mark, to address the
19:13:28 objections.

19:13:28 MR. TOBEROFF: On what basis are you saying
19:13:30 we haven't concluded if you've used up the 7 hours
19:13:32 that you've gotten under the rulings.

19:13:35 MR. PETROCELLI: Because the rules require,
19:13:36 permit more time inappropriate circumstances and
19:13:40 there'sly Johns of cases on that. We don't need to
19:13:43 debate that now.

19:13:44 MR. TOBEROFF: Okay. Well our position of
19:13:46 course is that it has concluded you used up your 7
19:13:48 hours and that you're not entitled to go beyond
19:13:51 that.

19:13:51 MR. PETROCELLI: Can we have the normal
19:13:54 stipulation on the record which is that when this
19:13:58 has -- let's say 30 days to review it and to advise
19:14:01 of any corrections bearing in mind that any
19:14:05 corrections of substance may shed light on your
19:14:09 credibility. It can be signed under penalty of
19:14:12 perjury. And if it's not signed it can be used as
19:14:16 though signed.

19:14:17 MR. TOBEROFF: Yes and then the court
19:14:19 reporter don't we under California have to relieve

19:14:22 the court reporter.

19:14:23 MR. PETROCELLI: Relieve the court reporter of her duties.

19:14:25 MR. TOBEROFF: I will hold the original and send that to us.

19:14:29 MR. PETROCELLI: You'll send the original to Mr. Toberoff and certified copy to us. And you have 30 days on your receipt of it.

19:14:38 MR. TOBEROFF: Okay.

19:14:38 MR. PETROCELLI: Thank you.

19:14:39 MR. TOBEROFF: Agreed so stipulated.

19:14:42 MR. PETROCELLI: Thank you.

19:14:42 THE VIDEOGRAPHER: This will then mark the end of Volume I tape number 4 in the deposition of mark war penalty rather re. All original videotapes will be retained by Merrill Legal Solutions at 20750 Ventura Boulevard Woodland Hills, California. Going off the record. The time is 7:13.