# EXHIBIT C

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 3630
LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

\* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

mtoberoff@ipwla.com

July 25, 2011

<u>Via E-Mail</u>

Matthew Kline
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:    *DC Comics v. Pacific Pictures Corp., et al.*, Case No. 10-CV-03633 ODW (RZx)

Matt:

Defendants write in response to the notices of deposition served on Marc Toberoff, Pacific Pictures Corporation ("PPC"), IP Worldwide, LLC ("IPWW"), and IPW, LLC ("IPW"), for deposition dates of August 10, 12, 16, and 30, 2011, respectively.

DC's July 11, 2011 letter indicated that it scheduled the depositions for these dates in light of Mr. Toberoff's vacation from July 25-August 5, 2011. As you know, Mr. Toberoff cancelled that vacation to accommodate the depositions of Dawn Peavy and Kevin Marks, noticed by DC for August 3 and 5, respectively.

**If DC wishes to take Mr. Toberoff's deposition in advance of its August 8, 2011 deadline to file a new opposition to defendants' anti-SLAPP motion, Mr. Toberoff is available for deposition on July 28-29, 2011.** If DC wishes to proceed on such dates, please notify us immediately.

Otherwise, Mr. Toberoff is available for deposition on August 10, 2011 as noticed, as well as the other noticed dates of August 12 and August 16, 2011. However, he is not available on August 30, as he has rescheduled his family vacation for August 21 – September 6, 2011.

PPC is as you know dissolved, IPWW has long been inactive and the allegations in DC's complaint do not even involve IPW. Moreover, all three were (as to PPC) and are closely-held companies of Mr. Toberoff. When Mr. Toberoff first appears for his deposition pursuant to F.R.C.P. 30(b)(1), he will also appear as the F.R.C.P. 30(b)(6) witness designated by PPC, IPWW and IPW, which will adopt his testimony. *See, e.g., Novartis Pharms. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 162–63 (D. Del. 2001); *A.I.A. Holdings, S.A v. Lehman Brothers, Inc.*, 2002 U.S. Dist. LEXIS 9218, at \*18 (S.D.N.Y. May 20, 2002) ("However, common sense

**EXHIBIT C**
**391**

**TOBEROFF & ASSOCIATES, P.C.**

July 25, 2011
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:  2 of 2

teaches that in the case of relatively small, closely-held entities … there may be no difference between the knowledge of the entity and the knowledge of its principals…. A 30(b)(6) deposition may not be justified where, assuming the witness is properly prepared, the entity establishes that the witness's testimony as a 30(b)(6) witness would be identical to his testimony as an individual…. In such a situation, there appears to be no obstacle to the entity's complying with its obligations under Rule 30(b)(6) by adopting the witness's testimony in his individual capacity."); *Sabre v. First Dominion Capital, LLC,* 2001 U.S. Dist. LEXIS 20637, at *3-*4 (S.D.N.Y. Dec. 10, 2001) ("In the case of many closely held corporations, the knowledge of an individual concerning a particular subject also constitutes the total knowledge of the entity. In such a situation, the witness could simply adopt the testimony he or she provided in a former capacity, thereby obviating the need for a second deposition.").

Please be advised that Mr. Toberoff will not appear for four separate 7-hour depositions as noticed by DC, and DC's attempt to get four bites at the proverbial apple is unreasonable, unduly burdensome and harassing.

Defendants will move for a protective order pursuant to F.R.C.P. 26(c) to limit the deposition testimony of Mr. Toberoff, PPC, IPWW and IPW to a single day of seven hours, and hereby request a conference of counsel pursuant to L.R. 37-1 on this subject. Defendants are available today, as well as July 26-29 and August 1-4, 2011, to meet and confer.

Nothing in this letter should be construed as a waiver or limitation of any of defendants' rights or remedies, all of which are reserved.

Very truly yours,

Keith G. Adams

**EXHIBIT C**
**392**

# EXHIBIT D



# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

July 26, 2011

OUR FILE NUMBER
905900-321

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Laura Brill
Kendall Brill & Klieger LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067

Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Counsel,

We write in response to Keith Adams' July 25, 2011, letter. There is no basis for your refusal to produce half of the defendants in this case for their duly-noticed depositions.

DC clearly is entitled to depose defendant Marc Toberoff in his individual capacity under Federal Rule of Civil Procedure 30(a)(1), and also to depose the corporate designees of defendants Pacific Pictures Corporation; IP Worldwide, LLC; and IPW, LLC under Federal Rule of Civil Procedure 30(b)(6). Rule 30(b)(6) expressly provides that it "*does not preclude a deposition by any other procedure* allowed by these rules." (Emphasis added.) Defendants' own cases confirm that "the 30(b)(6) deposition of an witness is a separate deposition from the deposition of that same person as an individual witness and is presumptively subject to a separate, independent seven-hour time limit." *Sabre v. First Dominion Capital, LLC*, 2001 WL 1590544, *2 (S.D.N.Y. Dec. 12, 2001) (any other rule would create "substantial potential for over-reaching"); *see also A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 2002 WL 1041356, at *3 (S.D.N.Y. May 23, 2002) ("[T]he mere fact that the principal of a corporation has been deposed [in his individual capacity] is not an automatic substitute for a 30(b)(6) deposition."). This makes sense, as "the depositions serve distinct purposes, impose different obligations ... and involve different ramifications." *Commodity Futures Trading Comm. v. Midland Rare Coin Exch. Inc.*, 1999 U.S. Dist. LEXIS 16939, *9-*10 (S.D. Fla. July 28, 1999). The need for separate depositions is particularly compelling in this case, where each of the Toberoff

**EXHIBIT D**
**393**

O'MELVENY & MYERS LLP
July 26, 2011 - Page 2

defendants is alleged to have engaged in different acts of misconduct and entered into separate agreements that violate DC's rights in different ways. *See* Comp. ¶¶ 165-89.

Indeed, there is *no* authority barring multiple depositions of a witness in his individual and 30(b)(6) capacities, even where the testimony "may be similar." *Provide Commerce, Inc. v. Preferred Commerce, Inc.*, 2008 WL 360588, *3 (S.D. Fla. Feb. 8, 2008) (denying protective-order motion and observing: "this Court did not find *any case law* that barred a second deposition of an individual who was first deposed in his individual capacity and then called to testify a second time on behalf of the corporation) (emphasis added); *see also ICE Corp. v. Hamilton Sundstrand Corp.*, 2007 WL 1732369, *3 (D. Kan. June 11, 2007) (denying protective-order motion and noting: "the court has failed to find, *any authority* whereby the previous deposition of certain witnesses prevents 30(b)(6) depositions of those same witnesses. In fact, *Rule 30(b)(6) anticipates such an occurrence*….") (emphasis added); *Smith v. Gen. Mills, Inc.*, 2009 WL 2525462, *5 (S.D. Ohio Aug. 13, 2009) ("Courts have soundly rejected [the] argument that prior deposition testimony from individual fact witnesses relieves a corporation from designating a corporate spokesperson in response to a Rule 30(b)(6) notice of deposition."). Courts routinely deny motions seeking to bar depositions on this ground. *E.g., id.*; *Ice Corp. v. Hamilton Sundstrand Corp.*, 2007 WL 1500311, *3 (D. Kan. May 21, 2007) (denying protective-order motion; "[j]ust because [defendant] may choose to designate certain individuals as its corporate designees whose fact depositions have already occurred does not insulate [defendant] from the requirements of Rule 30(b)(6). *Such a finding would eviscerate Rule 30(b)(6)*.") (emphasis added); *LendingTree, Inc. v. LowerMyBills, Inc.*, 2006 U.S. Dist. LEXIS 59589, at *3-*6, *9 (W.D.N.C. Aug. 22, 2006) (granting motion to compel Rule 30(b)(6) deposition even though designee had previously testified on similar topics as individual); *In re Willkie Farr & Gallagher LLP to Quash Subpoena*, 2008 WL 3884380, at *2-*3 (S.D.N.Y. Aug. 14, 2008) (denying motion to quash where insufficient showing "Rule 30(b)(6) deposition … would be entirely, or even substantially, redundant of the deposition of [witness] in his individual capacity"); *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 210 F.3d 1, 17 (1st Cir. 2000) (imposing sanctions and fees for refusal to produce 30(b)(6) witnesses because issuing party "had in early stages of the case already deposed the employees"); *Sabre v. First Dominion Capital, LLC*, 2002 WL 31556379, *2 (S.D.N.Y. Nov. 15, 2002) (denying motion to quash; "the fact that individually named witness have testified concerning a subject is generally no obstacle to a 30(b)(6) deposition on the same subject").

In *San Francisco Bay Area Rapid Transit Dist. v. Spencer*, 2006 WL 2734289 (N.D. Cal. Sept. 25, 2006), the district court considered circumstances nearly identical to those here. Defendant William Spencer was the president and sole owner of defendant FWS, which in turn controlled defendant BMC. *Id.* at *1. The court allowed plaintiff to depose Spencer three separate times—once in his individual capacity, once as the 30(b)(6) designee of FWS, and again as the 30(b)(6) designee of BMC. *Id.* at *1-*2.

These rules make sense. Mr. Toberoff chose to set up these separate companies, and invoked the laws and protections of each state of incorporation in doing so. Each company made contracts, conducted business, and engaged in activities that are alleged to run afoul of the law—

**EXHIBIT D**
**394**

O'MELVENY & MYERS LLP
July 26, 2011 - Page 3

some aspects of which defendants have admitted, *see* Docket Nos. 147-1 at 2, 8; 191 at 8—and while Mr. Toberoff has yet to admit that each was his alter ego and acting as his agent, defendants now wish to treat them as one and the same so as to avoid their independent and separate discovery obligations.

We cannot countenance that, particularly given the way you have obstructed other depositions. That said, we are willing to discuss consolidating the Toberoff defendants' depositions into two, seven-hour days, rather than four.

We are available to meet and confer on these issues August 1-4. During that meeting, we can discuss when to schedule the depositions. Dan has an upcoming trial before Judge Fairbank, and the dates you propose just a few days from now are not reasonable in any event, especially given that the Ninth Circuit has not yet ruled on defendants' writ.

All of DC's rights are reserved.

Very truly yours,

/s/ Matthew T. Kline

Matthew T. Kline

**EXHIBIT D**
**395**

# EXHIBIT E

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 3630
LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

mtoberoff@ipwla.com

August 1, 2011

<u>Via E-Mail</u>

Matthew Kline
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:    *DC Comics v. Pacific Pictures Corp., et al.*, Case No. 10-CV-03633 ODW (RZx)

Matt:

I write in response to your July 26, 2011 letter, regarding the depositions of defendants Marc Toberoff, Pacific Pictures Corporation ("PPC"), IP Worldwide, LLC ("IPWW"), and IPW, LLC ("IPW"), which DC scheduled for August 10, 12, 16, and 30, 2011, respectively.

Defendants are not refusing to appear for deposition, as you misstate. As set forth in my July 25, 2011 letter, defendants PPC, IPWW, and IPW will designate Mr. Toberoff as their F.R.C.P. 30(b)(6) witness, and will adopt his testimony. DC will have a full and fair opportunity to depose those entities when it deposes Mr. Toberoff, and Mr. Toberoff will appear for his deposition as noticed on August 10, 2011.

DC cannot seriously dispute that courts can and will issue protective orders to prevent the harassing and abusive multiple depositions that DC seeks. *See* F.R.C.P. 26(c).

The cases cited in DC's letter – which largely concerns the fact that the deposition of a percipient witness does not preclude a Rule 30(b)(6) deposition– miss the mark. Virtually none of the cases involve closely-held corporations. Moreover, *San Francisco Bay Area Rapid Transit Dist. v. Spencer*, 2006 U.S. Dist. LEXIS 73135, at *2-3 (N.D. Cal. Sept. 25, 2006), heavily relied on by DC, recognized that an individual may be simultaneously deposed in an individual capacity and as Rule 30(b)(6) witnesses and that "[d]eponents are entitled to the presumption that their testimony will be limited to seven-hours even if they are testifying both individually and as corporate designee." An additional deposition was permitted in *Spencer* only because it was unclear whether the witness was testifying on behalf of one of the corporate defendants. As stated in my July 25, 2011 letter, when Mr. Toberoff testifies, he will testify on behalf of PPC, IPWW and IPW.

**EXHIBIT E**
**396**

**TOBEROFF & ASSOCIATES, P.C.**

August 1, 2011
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:  2 of 2

DC's letter also vaguely references Mr. Petrocelli's upcoming trial and states that "we can discuss when to schedule the depositions." Such comments imply that DC intends to change the noticed date(s) for Mr. Toberoff's deposition. If DC knows that the depositions will not go forward on the noticed dates, DC must advise defendants of this immediately.

DC is entitled to take *one* deposition of Mr. Toberoff, not four.

We are available to meet-and-confer on these issues at a break during Dawn Peavy's deposition on August 3 or anytime on August 4.

Nothing in this letter should be construed as a waiver or limitation of any of defendants' rights or remedies, all of which are reserved.

Very truly yours,

Keith G. Adams

**EXHIBIT E**
**397**

# EXHIBIT F

**From:** Seto, Cassandra
**Sent:** Friday, August 05, 2011 8:00 AM
**To:** 'Keith Adams'
**Cc:** Marc Toberoff; Petrocelli, Daniel; Kline, Matthew
**Subject:** RE: DC Comics v. Pacific Pictures

Please see the below email sent on behalf of Matt Kline.

\*          \*          \*

Keith,

We did respond.  We discussed the depositions with Marc at length in New Mexico and told him we'd get you DC's position yesterday, which we did by letter.

Matt


**From:** Keith Adams [mailto:kgadams@ipwla.com]
**Sent:** Thursday, August 04, 2011 11:20 AM
**To:** Kline, Matthew
**Cc:** Tokoro, Jason; Marc Toberoff; Petrocelli, Daniel; Seto, Cassandra
**Subject:** DC Comics v. Pacific Pictures

Matt:

You have not responded to my August 3, 2011 letter regarding the scheduling of Mr. Toberoff's deposition. Please confirm whether you intend to proceed with Mr. Toberoff's deposition on August 10, as it is only three business days away.

Keith G. Adams
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101
Email: kgadams@ipwla.com
http://www.ipwla.com

This message and any attached documents may contain information from
Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

1

**EXHIBIT F**
**398**

# EXHIBIT G



# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

August 4, 2011

OUR FILE NUMBER
905900-321

**VIA MESSENGER & E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Laura Brill
Kendall Brill & Klieger LLP
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067

Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Counsel:

We write to confirm our efforts to meet and confer with Marc Toberoff on open discovery issues following Dawn Peavy's deposition yesterday.

First, we discussed defendants' request to consolidate the Rule 30(a)(1) deposition of defendant Marc Toberoff and the Rule 30(b)(6) depositions of the corporate designees of defendants Pacific Pictures Corporation; IP Worldwide, LLC; and IPW, LLC. Mr. Toberoff confirmed his intention to appear as the Rule 30(b)(6) designee of all three corporate defendants. DC clearly is entitled to separately depose Mr. Toberoff in his individual capacity and his Rule 30(b)(6) capacity as a representative for each company. *See* FED. R. CIV. P. 30(b)(6) ("This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules."). Defendants notably had no response to the plain language of Rule 30(b)(6) in their August 1, 2011, letter—or to the fact that the very case they rely on, *Sabre v. First Dominion Capital, LLC*, 2001 WL 1590544, *2 (S.D.N.Y. Dec. 12, 2001), confirms that "the 30(b)(6) deposition of an witness is a separate deposition from the deposition of that same person as an individual witness and is presumptively subject to a *separate, independent seven-hour time limit*." (Emphasis added.)

In an effort to avoid unnecessary motion practice, we offered to consolidate the Toberoff defendants' depositions to two, seven-hour days. Mr. Toberoff refused, asserting that he will only appear for one, seven-hour day of deposition on behalf of all four defendants, because he

**EXHIBIT G**
**399**

O'MELVENY & MYERS LLP
August 4, 2011 - Page 2

claims that Pacific Pictures, IP Worldwide, and IPW are "closely-held corporations" that are largely inactive—despite the fact that DC's complaint alleges that each of these defendants engaged in separate and distinct acts of misconduct. Docket No. 49 ¶¶ 165-89. Mr. Toberoff stated he has been deposed before, he knows all the questions we are going to ask, and that his counsel at the deposition (Mr. Kendall) will object less frequently than Mr. Toberoff has done in this case, and thus the seven hours would be adequate for all four defendants.

We asked Mr. Toberoff if defendants were willing to concede that all three companies are his alter egos and act as his agent. He said defendants do not concede this. We asked about other potential 30(b)(6) designees—e.g., J. Todd Harris—but Mr. Toberoff refused to discuss the details of who the companies' employees, investors, and officers were, saying we would have to ask such questions at his deposition.

In a final effort toward compromise, we are willing to discuss scheduling one, extended day of deposition during which we will endeavor to complete our questioning of the four Toberoff defendants, with the understanding that if we are unable to do so, we will continue to a second day. Let us know if you will agree to this compromise so we can discuss scheduling the deposition.

Second, we discussed defendants' failure to review for responsive documents the "various boxes" related to this case that Laura Siegel Larson testified she has in her possession, e.g., July 22, 2011, Larson Tr. at 64, 70, 245, 267, 275, 277—which include documents that defendants previously represented were non-existent to the Court and DC. Mr. Toberoff confirmed that Ms. Larson has documents that have never been reviewed, including documents formerly belonging to her mother, Joanne Siegel, but that have been in Mr. Larson's possession for months, and were in her possession when DC's recent discovery motions were litigated. We asked Mr. Toberoff to commit to a date certain by which he would review Ms. Larson's files and produce or log any responsive documents, but he declined to do so, saying only that he would speak to Ms. Larson when she returns from vacation in two weeks.

When we pressed for further document productions or privilege logs concerning the other attorneys with whom the Siegels have admittedly communicated in recent years, you again declined to provide any date certain by which you would make this production. Moreover, we note a disturbing pattern in defendants' production of communications with attorneys—while Ms. Larson produced her written communications with Gerry Spence (a lawyer whom defendants say her mother considered hiring), defendants refuse to produce the Siegels' communications with David Michaels. Docket No. 210 at 11-12. This is yet another selective waiver, and further grounds to compel the production of the Michaels letters.

Mr. Toberoff also refused to confirm the existence of Mr. Larson's response to Michael Siegel's May 13, 2003 letter—even though she testified that she was "sure" she responded to the May 13 letter, id. at 267, Mr. Toberoff "made suggestions of changes in the wording" of her response, id. at 279, and that the response may well have been sent on July 5, 2003, as recounted in the Toberoff Timeline, id. at 277. Mr. Toberoff refused to address whether such a letter or

**EXHIBIT G**
**400**

O'MELVENY & MYERS LLP
August 4, 2011 - Page 3

drafts of it existed in his files, whether Ms. Larson possessed a copy of it, or whether this document was among those defendants have listed on their privilege logs. When we said her recent testimony clearly confirmed the existence of such a responsive letter, as raised in our previous motions, Mr. Toberoff suggested that Ms. Larson might have been referring to another letter of another date. When we asked him when the letter she testified about was sent, if not in July, he refused to address the issue. When we pointed out that his refusal to provide these details made it impossible to determine whether to file our motion as one to compel or one for reconsideration, he acknowledged this problem, but still refused to provide the necessary detail.

Nor would Mr. Toberoff confirm or deny the existence of the letter that Ms. Larson testified she "sent [Michael Siegel] on November 2", 2002, Tr. at 267, saying only that he reviewed "our files" and was "unable to find" such a letter.

Mr. Toberoff asserted that DC's motions seeking production of the July 5 and November 2 letters were denied—but failed to explain his representations in opposition to those motions that, for example,

- he "did perform a diligent search of our records, *all of our records*," for responsive documents, June 20, 2011 Hr'g Tr. at 38:23-39:1 (emphasis added);

- he "asked [Ms. Larson] whether she had a copy and to *research her records*," *id.* at 39:8-10 (emphasis added);

- "To the extent that relevant documents exist, they have either been produced or designated as privileged," Jan. 8, 2011 Letter from M. Toberoff to M. Kline at 3.

- he conducted "a diligent search" but could not locate "a supposed November 2, 2002 letter," Docket No. 267-1 at 4; and

- he "caused [his] office to re-check our relevant case files" for responsive documents, Docket No. 267-16 ¶ 4.

Finally, Mr. Toberoff argued generally that we had taken Ms. Larson's testimony out of context, but would not explain how or point to any testimony suggesting that DC had misread Ms. Larson's sworn statements.

We have reached an impasse on the production of Ms. Larson's letter responding to her brother's May 13, 2003 letter and related drafts, and will serve a motion on the subject shortly, unless you produce those documents this week. Moreover, unless defendants commit to a date certain for producing and/or logging all responsive documents in Ms. Larson's possession, custody, and control—including her letters to Michael Siegel dated on or around July 5, 2003, and November 2, 2002—DC will move to compel on this issue, as well as the issue of the Siegels' correspondence with counsel.

**EXHIBIT G**
**401**

O'MELVENY & MYERS LLP
August 4, 2011 - Page 4

    <u>Third</u>, we attempted to meet and confer on the deficiencies in defendants' responses to DC's revised requests for production.  We clearly identified those deficiencies in our 30-page letter sent on July 7, 2011, requested a meet and confer on these issues in our July 19 letter, and reiterated that request in our July 29 letter—all of which are attached.  Mr. Toberoff, however, refused to meet and confer, asserting—incorrectly—that DC had failed to timely request a meet and confer pursuant to Local Rule 37.  DC will therefore proceed with its motion to compel, unless you agree to meet and confer on these issues sometime tomorrow.

    Finally, we asked Mr. Toberoff why defendants had failed to produce several documents discussed during the depositions of Mr. Peary and Ms. Peavy, including unredacted versions of defendants' agreements with Ari Emanuel, Jean Peavy's will, and the two scripts concerning Joseph Shuster's life written by Mr. Peary.  After discussing these documents at some length and why they should or should not be produced, Mr. Toberoff claimed that we had not met and conferred on the need to produce them, pursuant to Rule 37.  Demand is hereby made to have such conference.  Also, although we think DC's current document requests call for Ms. Peavy's will and Mr. Peary's scripts, please find enclosed additional requests for production seeking them specifically.

    We reserve all rights.

Very truly yours,

Matthew T. Kline

cc:    Daniel M. Petrocelli, Esq.

Enclosures

**EXHIBIT G**
**402**

# EXHIBIT H

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 3630
LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

\* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

mtoberoff@ipwla.com

August 10, 2011

<u>Via E-Mail</u>

Matthew Kline
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:    *DC Comics v. Pacific Pictures Corp., et al.*, Case No. 10-CV-03633 ODW (RZx)

Matt:

The factual and legal assertions in your August 4 letter are disputed, and your letter significantly mischaracterizes your meet-and-confer discussions with Mr. Toberoff on August 3, 2011.

<u>Deposition of Marc Toberoff:</u>  As to the multiple depositions sought by DC, my letters of July 25 and August 1, 2011 make it clear that Pacific Pictures Corporation (dissolved), IP Worldwide, LLC (inactive), and IPW, LLC (irrelevant) will designate Mr. Toberoff as their F.R.C.P. 30(b)(6) witness, and will adopt his testimony.  Where "the knowledge of an individual concerning a particular subject also constitutes the total knowledge of the entity …. the witness could simply adopt the testimony he or she provided in a former capacity, thereby obviating the need for a second deposition," the exact procedure defendants have adopted.  *Sabre v. First Dominion Capital, LLC*, 2001 U.S. Dist. LEXIS 20637, at *3-*4 (S.D.N.Y. Dec. 10, 2001).  We informed DC of this in advance so that it could properly plan its deposition.

Your purported compromise offer to "discuss" the possibility of "one extended day of deposition during which we will endeavor to complete our questioning … with the understanding that if we are unable to do so, we will continue to a second day" is illusory.  This gives DC the ability to extend the deposition at its sole discretion for fourteen hours or more given your reference to the first day as an "extended day."  This is uncalled for and unnecessarily burdensome.

Your statement that when "asked about other potential 30(b)(6) designees – *e.g.*, J. Todd Harris – [] Mr. Toberoff refused to discuss the details" mischaracterizes your meet and confer with Mr. Toberoff, who clearly stated that Mr. Harris was/is not an employee.  Mr. Harris would also not be a proper Rule 30(b)(6) witness on any of the topics in DC's deposition notices.  Mr. Toberoff is the only knowledgeable Rule 30(b)(6) witness for any of the entities.

**EXHIBIT H**
**403**

**TOBEROFF & ASSOCIATES, P.C.**

August 10, 2011
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:  2 of 3

You make various other misstatements and self-serving exaggerations as to the meet and confer regarding the Toberoff defendants that are not well taken, but do not merit discussion as this juncture.

Scheduling of Mr. Toberoff's Deposition:  DC failed to respond to my August 1 letter regarding whether Mr. Toberoff's deposition would go forward on August 10.  When I again asked in an August 3 e-mail whether DC intended to proceed with Mr. Toberoff's deposition on the noticed dates, DC again dodged the question and merely referred to its August 3, 2011 letter.  DC's response in its August 3 letter is that the parties should "discuss scheduling the deposition."

Despite DC's studied ambiguity on this subject, in a telephone conversation between Mr. Toberoff and Mr. Petrocelli on August 5, 2011, Mr. Petrocelli confirmed that DC did not intend to depose Mr. Toberoff on August 10, 2011 due to a potential scheduling conflict with another case, and that the parties should reschedule the deposition for sometime in September, 2011.  We should confer on possible September dates for Mr. Toberoff's deposition before he leaves for his rescheduled vacation from August 22-September 6, 2011.

DC's Motions for Reconsideration re: Laura Siegel Larson Documents:  DC's assumption that Ms. Larson's boxes of documents "include documents that defendants previously represented were non-existent" is completely unfounded.  Contrary to your claims and as Mr. Toberoff specifically stated in your meet and confer, Ms. Larson long ago conducted a diligent search and produced the responsive documents in her possession or control, and there is no grounds for further motion practice by DC on this subject.  Mr. Toberoff also clearly informed you that Ms. Larson obtained some materials when she recently cleaned out her late mother, Joanne Siegel's apartment; that Ms. Larson has searched most of these materials for any responsive documents, and will complete this search upon return from her summer vacation.  So far nothing new was located, except for the non-substantive Gary Spence materials that were produced. Upon Ms. Larson's return, we will provide DC with dates by which Ms. Larson will finish her review of her mother's materials.  However, DC should not have unrealistic expectations regarding the remainder of Ms. Larson's review, as Joanne Siegel herself, while she was alive, conducted a diligent search and produced all non-privileged documents in her possession or control responsive to DC's requests in both the closely related *Siegel* litigations and in this case.

DC has already made two motions to compel the production of Ms. Larson's correspondence with David Michaels, including the "July 2003" letter and the "November 2002" letter, both of which were *denied*, and we see no grounds for further discussion of the subject on the thin pretext of Ms. Larson's production of her brief, non-substantive communications with Gary Spence.

DC's complaint that defendants "would not explain" how DC misinterpreted and misconstrued Ms. Larson's testimony is hollow.  As explained in Mr. Toberoff's August 1, 2011 letter, DC takes snippets of Ms. Larson's deposition testimony out of context.  It is obvious from DC's selective quotations and the truth that DC is willfully misinterpreting Ms. Larson's testimony.

**TOBEROFF & ASSOCIATES, P.C.**

August 10, 2011
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:  3 of 3

You make various other mischaracterizations of the parties' meet and confer that do not merit a point by point discussion as this time.

In light of Magistrate Zarefsky's comments at yesterday's hearing, DC should not bring yet another frivolous motion for reconsideration of these already-decided issues.

Toberoff Document Production: DC has had the Toberoff defendants' written responses to DC's amended discovery requests since July 15, 2011, and their document production since July 27, 2011. All of DC's supposed requests to "meet-and-confer" simply refer to DC's old July 7, 2011 letter, which obviously did not address defendants' subsequent responses and document production. DC has not even attempted to properly meet-and-confer on the subject of defendants' actual responses and production. Defendants again caution DC that its assumption that there are numerous responsive documents that have not been produced is erroneous.

Your letter also seeks "unredacted versions of defendants' agreements with Ari Emanuel." As Magistrate Zarefsky stated in his May 25, 2011 order, DC is not entitled to "everything" about the businesses of the various defendants in the case, and the redacted portions of that agreement are not relevant to this litigation. DC received redacted copies of such agreements years ago in the *Siegel* litigation based on similar requests as in this case, and in all this time, including over a year in this action, has failed to voice any objection to the redaction.

Peary/Peavy Document Requests: DC demands a meet-and-confer on various documents – notably, scripts by Warren Peary and Jean Peavy's will – that it vaguely claims are responsive to DC's prior discovery requests, while serving new requests for production of such scripts and will. DC was well-aware that the scripts existed from Mr. Peary's prior deposition in 2006, that Ms. Peavy could have a will, and that such documents were not part of the Shusters' production in December 2010. If these documents were actually responsive to DC's prior discovery requests, it undoubtedly would have brought them up in connection with its prior motions to compel, and not waited for over eight months to even address the issue.

Your August 4 letter does not even remotely comply with L.R. 37-1 as to DC's prior requests, and it is outside the rules and makes no sense to meet-and-confer on pending discovery requests, especially when defendants' responses are due before any motion to compel on the subject could be heard. Defendants will respond to DC's new discovery in due course pursuant to the Federal Rules of Civil Procedure.

Nothing in this letter should be construed as a waiver or limitation of any of defendants' rights or remedies, all of which are reserved.

Very truly yours,

Keith Adams

# EXHIBIT I



## O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

August 11, 2011

OUR FILE NUMBER
905900-321

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

Keith Adams
Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Re:  *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Keith:

In response to your letter of yesterday sent at 9:31 a.m., let's plan to talk Friday morning concerning dates for Mr. Toberoff's and Mr. Marks' depositions in late September or early October. We spoke to Susan Allison today about the latter.

1. We disagree that Mr. Toberoff and his companies should not and cannot be deposed separately and reserve all rights to take separate depositions of his three companies. DC alleges that each company engaged in separate and distinct acts of misconduct. *See* FAC ¶¶ 165-89. We intend separately to question each company about its individual acts of misconduct under Rule 30(b)(6). The depositions of Pacific Pictures and IP Worldwide will take the longest—though each may be shorter than a day—as these companies entered into many of the offending agreements with the Shuster and Siegel heirs. Any follow-up deposition of IPW will be shorter and cover separate ground, and the deposition of Mr. Toberoff under Rule 30(a)(1) will cover only additional conduct he engaged in as an individual, and will not re-plough the same ground covered in the companies' Rule 30(b)(6) depositions. Defendants have not conceded that the three companies are alter egos or agents of Mr. Toberoff or one another, and, thus, we need to examine these companies as well on inter-corporate liability issues, which takes time and is distinct as to each company. *E.g., Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 538-39 (2000); *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837-38 (1962). Your Rule 12 and SLAPP motions notably do not contest these alter-ego and agency allegations and, thus, there can be no question that they are ripe for discovery.

You have cited three cases in support of your argument that DC is not entitled to separately depose the Toberoff defendants, all of which are inapposite:

**EXHIBIT I**
**406**

O'MELVENY & MYERS LLP
August 11, 2011 - Page 2

     a. In *Novartis Pharmaceuticals Corp. v. Abbott Labs.*, 203 F.R.D. 159, 162-63 (D. Del. 2001), the court found that, "[o]n the record presented," a Rule 30(b)(6) deposition of a witness who had already testified about the same topic in his individual capacity was not warranted because (1) the defendant offered to be bound by the witness's testimony, (2) the witness was the person most knowledgeable on the topic, and (3) another deposition would be "duplicative" and "cumulative to the testimony already procured." You may concede that Mr. Toberoff's companies are bound by his individual testimony and assert that he is the person most knowledgeable at each company. But unlike in *Novartis*, we are not attempting to depose Mr. Toberoff as both an individual and a corporate designee on the same, limited topic (*i.e.*, the companies' conduct), and so the testimony we obtain from Mr. Toberoff in his individual capacity will not be "duplicative" or "cumulative." As for the time it will take to conduct these four depositions, the Rules presumptively entitle us to four days—one each with each defendant. As we have noted, however, we would try to complete all four examinations in one long day, or over two days. You have declined those middle-ground offers.

     b. In *A.I.A. Holdings v. Lehman Bros., Inc.*, 2002 U.S. Dist. LEXIS 9218, at *13 (S.D.N.Y. 2002), the plaintiff sought a protective order to limit its Rule 30(b)(6) deposition because three of its principals had been deposed in their individual capacities on the majority of topics in the Rule 30(b)(6) deposition notice. The court rightly observed that "the mere fact that the principal of a corporation has been deposed is not an automatic substitute for a 30(b)(6) deposition," although it noted that a Rule 30(b)(6) deposition may not be warranted where the testimony "would be identical to his testimony as an individual and the 30(b)(6) is limited, or substantially limited, to topics covered in the deposition taken in the witness's individual capacity." *Id.* at *17-18. In this case, no one has been deposed yet on behalf of any of the Toberoff defendants on any topic. Our deposition of Mr. Toberoff will not concern the acts of his companies; the company depositions will cover separate and distinct topics. All of the depositions are proper, and no showing has been made that they would be cumulative.

     c. Your third case—*Sabre v. First Dominion Capital, L.L.C.*, 2001 U.S. Dist. LEXIS 20637, at *1 (S.D.N.Y. 2001)—confirms that "the depositions of an individual who is noticed as an individual witness pursuant to Fed. R. Civ. P. 30(b)(1) and who is also produced as a corporate representative pursuant to Fed. R. Civ. P. 30(b)(6) *are presumptively subject to independent seven-hour time limits*." (Emphasis added.) In dicta, *Sabre* noted that separate depositions of a closely-held corporation and its principal may be unnecessary where the corporation adopts the principal's statements; in such a case, "if the questioning … becomes repetitive or is otherwise being conducted in an oppressive manner, the aggrieved party can always make application for a protective order." *Id.* at *2. In this case, there is no need for a protective order because DC does not seek to cover the same ground in its four depositions—and in any event, a protective order motion is not yet ripe because DC has not yet taken *any* deposition of the Toberoff defendants, much less a "repetitive" second deposition.

     We have tried to be accommodating and propose alternatives that would allow the four depositions to be completed in one or two days, but you have declined to accept those offers. In

**EXHIBIT I**
**407**

O'MELVENY & MYERS LLP
August 11, 2011 - Page 3

a final effort to avoid motion practice, we reiterate our offer to have a consolidated deposition of the Toberoff defendants over one long day or two days, whatever is needed, in late September.

2. On the Laura Siegel Larson documents, we will move to compel production of Ms. Larson's letter to her half-brother (and the drafts of it) that she described at length at her deposition:

> Q. This is a letter from Michael Siegel to you dated May 13; is that correct?
> A. Yes.
> …
> Q. Did you respond to it?
> A. I'm sure I did.
> …
> Q. [The Toberoff Timeline] says "Laura Siegel reveals her ignorance of Toberoff's dubious actions in her return letter back to Michael." Putting aside the characterization of your ignorance, does July 5, 2003, sound right to you as around the time that you responded to the May 13, 2003, letter?
> A. It could have been.
> Q. Okay. Is it fair to say that your letter back to Mr. Michael Siegel did not agree with any of his criticisms of Mr. Toberoff's actions and Mr. Toberoff generally?
> A. Well, whoever stole this document, you know, is doing his version of what he's reading into whatever the letter said.
> Q. You're not following my question.
> A. Well, I haven't read the letter in a long time.
> Q. My question to you is when you wrote back to Michael --
> A. Yes.
> Q. -- in response to his May 13, 2003, letter, is it fair to say that you expressed no agreement with any of his criticisms of Mr. Toberoff?
> A. I would say that's probably safe to say.
> Q. Did you tell Michael Siegel in your response letter back that Mr. Toberoff does not have a production company?
> A. Yes, I believe I did.
> …
> Q. Yes. It says "Also, in the letter back to Michael Siegel, that MT helped Laura Siegel draft -- in response to Michael's accusations of Toberoff, Laura clearly states that MT does not have a production company." And that was your belief at the time; correct?
> A. Correct.
> Q. And it goes on to say that, in parentheses: "(This is false -- Marc Toberoff's IPW has been in existence, partly funded by Ari Emanuel, since at least 2002). In the draft of the letter, MT crossed out the statement that he does not have a production company, and writes, quote, "MT  has not plans to produce

**EXHIBIT I**
**408**

O'MELVENY & MYERS LLP
August 11, 2011 - Page 4

a SUPERMAN movie, nor is this feasible given the division of ownership of the rights," end of quotes. Now, does that -- is that consistent with your recollection that your statement that Mr. Toberoff did not have a production company was crossed out by Mr. Toberoff in the final draft and replaced with the quoted language that I just read?"

A. It could have been.

Q. And when Mr. Toberoff made his changes to the letter and returned it to you, did you review it and sign it before you sent it out as your response letter back to Michael?

A. Well, he made suggestions of changes in the wording of certain areas, and, you know, I retyped the letter, accepted some of the things that he said and didn't use some other suggestions that he made.

Q. How did he convey his suggestions to you?

A. He wrote it on -- he wrote it on this letter -- no, not this letter. He wrote it on that letter that's being discussed here and faxed it back to me.

Q. Okay. So you did engage in faxed communication with Mr. Toberoff from time to time.

A. Yes.

Q. Okay. Including with respect to this very correspondence that we're discussing.

A. I believe so.

Q. Okay. Now, did you show him the final draft before you sent it out?

A. I believe I did.

Q. And which of the changes did you reject?

A. I don't remember. I just remember the process, but I don't remember the contents.

July 22, 2011, Larson Dep. Tr. at 298:12-15, 300:11-12, 310:20-311:22, 312:3-314:3.

Ms. Larson's description of her response letter to Michael's May 13, 2003, letter confirms the Toberoff Timeline's claim that Ms. Larson wrote a responsive letter and that Mr. Toberoff edited it:

> **July 5, 2003.** Laura Siegel reveals her ignorance of Toberoff's dubious actions in her return letter back to Michael --- MT has NOT told them he is about to enter into the PPC agreement, whereby MT *personally* will have a 50% of the Schuster interest in Superman. He will shortly own equal to what Joanne owns (25% of entire copyright), and double what Laura owns, *but MT has failed to disclose this*. The Schusters – through the Pacific Pictures Corp agreement – gave MT half of what they had. MT never had the intention to make a movie in competition to the one at Warners – it is tantamount to throwing $$$ away, but it does appeal to the heirs' sense of lost ownership. MT never did want to make a movie, and exploit the rights. MT knows no one is going to invest in an outside movie project outside of Warner Brothers, though he uses Ari Emanuel, the agent, to legitmize his claims. *(please see enclosed letter)*

**EXHIBIT I**
**409**

O'MELVENY & MYERS LLP
August 11, 2011 - Page 5

> Also, in the letter back to Michael Siegel, that MT helped Laura Siegel draft --- in response to Michael's accusations of Toberoff, Laura clearly states that MT does *not* have a production company. (This is false – Marc Toberoff's IPW has been in existence, partly funded by Ari Emanuel, since at least 2002). In the draft of the letter, MT crossed out the statement that he does not have a production company, and writes " MT has not plans to produce a SUPERMAN movie, nor is this feasible given the division of ownership of the rights." (please see enclosed letter). **This clearly delineates that Toberoff never had the intention of making a movie, and approached the Siegels and Schusters separately ---- not for the exploitation of rights as he initially asserted, but to gain an unconscionable fee from a very large possible settlement with Time Warner.**

FAC Ex. A at 65-66. The Toberoff Timeline notes that it enclosed a copy of Ms. Larson's responsive letter to her brother, yet defendants have never produced that document.

Defendants notably do not deny—either in your two recent letters on the subject, or during ou meet-and-confer with Mr. Toberoff in New Mexico—that the non-privileged letter that Ms. Larson wrote to her half-brother and the accompanying drafts of it about which she testified exist in your and/or her files. Nor do you disclose whether the letter and drafts of it are among the documents listed on your privilege logs or at what entries—*i.e.*, entries on which DC moved to compel production or not.

Because of this ambiguity, which you decline to help clarify, we will need to file the motion for these documents as one to compel and/or, in the alternative, as one for reconsideration. Even if it is the latter, we have studied the Magistrate's stated reasons for declining to compel the production of this document:

> The Court feels, however, that reconsideration is not appropriate as to the July 11th letter. Knowing the specific language of the May 13 letter does not tell much about the July 11th letter. There's nothing to demonstrate that the prior orders long ago upheld on the grounds that DC Comics did not seek review of this Court's earlier ruling were materially wrong.

> Even more so, the May 13th letter does not justify a different ruling on the July 5th letter. As the Court previously stated, the defendants clearly stated that such a letter did not exist. Plaintiff asserts that maybe it exists in a different form or with a different date, but the Court declines to order defendants to undertake a vague or amorphous further search.

June 20, 2011, Hr'g Tr. at 19. Ms. Larson's recent deposition testimony makes clear that defendants need not engage in a "vague or amorphous further search" to see if her letter and the drafts of it described in her deposition and in the Timeline exist. *Id.* Moreover, Magistrate Zarefsky's June 20 ruling was focused on the May 13 letter; he did not have Ms. Larson's testimony before him, which she gave almost a month later, on July 22, 2011.

**EXHIBIT I**
**410**

O'MELVENY & MYERS LLP
August 11, 2011 - Page 6

3. As for the Toberoff defendants' document production, we believe we have fully met
and conferred on these issues, but so there is no argument to the contrary, attached is a proposed
order specifying exactly what documents we intend to move on. We have limited those issues to
the following 12 categories. We raised each in our June 1 and July 7 correspondence, but we can
discuss those issues on a Rule 37 call, within the next 10 days, as needed:

a. <u>Drafts of agreements.</u> As we pointed out and excerpted on page 26 of our July 7 letter,
Mr. Peary testified at his deposition that "[t]here were drafts" of the 2001 Pacific Pictures
agreement that "went back and forth," but no such drafts have been produced. Toberoff Request
No. 12 seeks "All DOCUMENTS created during or since 1997 RELATING to or affecting the
disposition, division, or ownership of any rights in SUPERMAN and/or SUPERBOY," and our
July 7 letter specifically mentioned drafts of the Pacific Pictures agreements as within the
category of documents sought by that request. July 7 Letter at 5. Drafts of any other agreements
between defendants likewise fall within this category. Will you be producing such drafts, or is it
your position that no such drafts exist?

b. <u>Toberoff's ownership interest.</u> The 2001 and 2003 Pacific Pictures agreements
provide for the transfer of 50% of the Shusters' purported rights to the joint venture if the
venture were "terminated for any reason." DC's proposed order seeks any document
transferring, assigning, or disclaiming such rights by Mr. Toberoff's companies, as Pacific
Pictures contributed its "current IP business" to IP Worldwide in February 2002, EN 00001-7,
and IP Worldwide later transferred its rights to IPW, Nov. 17, 2006 Toberoff Dep. Tr at 45:6-15.
At deposition, Mr. Peary asserted that Paragraph 9 of the Shusters' retainer agreement
"supersedes all prior and contemporaneous understandings" between Mr. Toberoff and the
Shusters, but could identify no document by which Pacific Pictures itself disclaimed any such
interest. June 29, 2011, Peary Dep. Tr. 335:16-340:2; *see also* July 7 Letter at 27. If it is your
position that no such documents exist—and defendants intend to produce no further documents
in response to Toberoff Request Nos. 12-15, 29, 40, 41; Pacific Pictures Request Nos. 24-25, 27-
28; IP Worldwide Request No. 24, 25, 27—please let us know. The "if any" language in your
responses is not conclusive on this point. Have you made your full production and do no such
documents exist, or will you be producing more?

As noted in the proposed order, DC also seeks unredacted copies of all documents
showing what interest, if any, Ari Emanuel holds in those rights. We understand you refuse to
produce such unredacted copies. Is it your position that no part of the Ari Emanuel documents
that you redacted, EN 00001-142, relates to Superman, the Shusters, or the Siegels? A review of
what Endeavor produced suggests that might not be the case. *Cf.* EN 00142 (redacted page with
words "Toberoff" and "Superman - may find problem now, but doesn't surface until after the
term."). We need your clear position on this and want to discuss the redactions on our call.

c. <u>Meetings with the Siegels or Shusters in 2001 and 2002.</u> Toberoff Request Nos. 27
and 28, Pacific Pictures Request No. 19, and IP Worldwide Request No. 18 seek documents
related to the introduction of those defendants to the Siegels and Shusters. Our July 7 letter
made clear for each of these requests that DC seeks "phone records, calendar logs, [or]

**EXHIBIT I**
**411**

O'MELVENY & MYERS LLP
August 11, 2011 - Page 7

correspondence setting up meetings." July 7 Letter at 6-7, 16, 20. Defendants responded that they would produce all "non-privileged documents, if any," responsive to these requests, but produced no such documents. We find it difficult to believe that no phone or calendar records—physical or electronic—or correspondence exist setting up, confirming, or reflecting the dates on which these initial meetings between defendants occurred. *Cf.* July 22, 2011, Larson Dep. Tr. at 125-28, 131-39; June 29, 2011, Peary Dep. Tr. at 101-07. Is it defendants' position that no such documents exist? If it is, please let us know so clearly.

d. Toberoff's marketing efforts. Toberoff Request No. 15 seeks "All DOCUMENTS created during or since 1997 RELATING to the potential sale, assignment, license, or other disposition of any rights RELATING to SUPERMAN and/or SUPERBOY, including but not limited to any solicitation, offer, option, or proposed agreement." As noted in our August 3 letter, while the August 1 interrogatory responses of Mr. Toberoff's business entities make clear that they engaged in no efforts to market the purported rights of the Siegels or Shusters to third-party investors, it is unclear the extent to which Mr. Toberoff has otherwise engaged in such efforts. Your August 10 letter does not clarify whether Mr. Toberoff will respond to the DC's proposed interrogatories on this subject, which we enclosed with our August 3 letter. On July 15, Mr. Toberoff agreed to produce any responsive, non-privileged documents, but his July 18 production of one page included no new documents on this topic. If it is your contention that no such documents exist, please let us know so definitively.

e. Corporate documents. As our July 7 letter made clear, Toberoff Request Nos. 56(a)-(d), 57(a)-(d), and 58(a)-(d); Pacific Pictures Request Nos. 31 and 33; IP Worldwide Request Nos. 32, 33, and 34; and IPW Request Nos. 27 and 29 removed the "RELATING" language that defendants originally objected to as overbroad, replaced it with narrowed requests for documents "identifying" or "evidencing" relevant aspects of Mr. Toberoff's business entities, and clarified that DC does not seek "every transaction in which [defendants] ever engaged." *E.g.*, July 7 Letter at 13. Despite the clarification, defendants simply reiterated that Magistrate Zarefsky originally denied DC's motion as to these requests as "calling for everything there is about companies with which Mr. Toberoff has been associated." This response fails to engage on the current issues, as detailed by DC's exhaustive July 7 letter. If you are willing to stipulate that Mr. Toberoff is bound to his companies' actions as its alter-ego and agent, we can forego or limit these requests. Otherwise, DC is entitled to discovery related to veil-piercing factors such as commingling of funds and assets, adequate capitalization, disregard of corporate formalities, etc. *See Sonora Diamond.*, 83 Cal. App. 4th at 538-39. Do you refuse to produce such documents?

f. Ari Emanuel documents. Despite Mr. Toberoff's "long-standing relationship with Mr. Emanuel" referred to by Ms. Brill's February 2011 correspondence, defendants have not listed a single communication with Mr. Emanuel on their privilege logs on this case. As noted on page 28 of our July 7 letter, defendants have produced in this matter only *seven pages* of non-substantive e-mails between Mr. Toberoff and Mr. Emanuel, including *zero* from Mr. Emanuel himself. Is it really defendants' position that they possess, control, or have custody of *no* communications from Mr. Emanuel relating to Superman, Superboy, or the Siegel or Shuster heirs? If so, please let us know that is the case clearly.

EXHIBIT I
412

O'MELVENY & MYERS LLP
August 11, 2011 - Page 8

      g.  <u>Conflict disclosures and waivers.</u>  Toberoff Request No. 30 seeks "All
COMMUNICATIONS RELATING to any disclosure of a potential or actual conflict of interest
by or to YOU, the SIEGEL HEIRS, or SHUSTER HEIRS," and Request No. 31 seeks any
"waiver or acknowledgement" of the same.  Mr. Toberoff stated he would produce "responsive,
non-privileged documents, if any" pertaining to that request, but has produced no such
documents, despite both Mr. Peary and Ms. Larson admitting to having signed such conflict
waivers.  June 29, 2011, Peary Dep. Tr. at 93:24-95:12; July 22, 2011, Larson Dep. Tr. at 31:10-
36:22.

      During our meet and confer on July 20, we asked that you identify the privilege log
entries that correspond to the conflict waiver that Mr. Peary signed in 2010, but you refused.  At
present, we have no way of knowing whether that document—or any of the conflict-related
correspondence identified by Ms. Larson—is identified on defendants' privilege logs; there are
well over 500 entries on Mr. Toberoff's log from 2010 alone, all identified simply as "E-mail,"
"Letter," or "Facsimile."  Moreover, you have provided no case law or authority underlying your
assertion that such a communication constitutes the provision of legal advice.  Nor have you
provided any response to DC's case law on this point.  *E.g.*, *Maine Baptist Church v. Regions
Bank*, 207 WL 1445257, at *2-3 (E.D. Mo. May 10, 2007) ("The production of conflict
memoranda, new matter forms, and correspondence regarding conflicts is not protected by the
attorney-client privilege or work product doctrine.").  What is your position on these issues?

      h.  <u>Documents obtained before meeting heirs.</u>  Mr. Toberoff stated he would produce
documents relating to the Siegels or Shusters obtained prior to his initial contact with them, but
has produced none.  *See* Toberoff Request Nos. 9(a-b).  At his deposition he testified to reading
"the Siegels' termination notice or a copy of one of their termination notices on the internet" and
that news of their termination efforts "was all over the internet."  Nov. 17, 2007 Toberoff Dep.
Tr. at 85:16-86:12, 140:7-24.  Such documents should be produced.  If it is defendants' position
that no such documents exist, please so advise us.

      i.  <u>Valuations.</u>  Defendants' July 15 responses agreed to produce "All DOCUMENTS
created during or since 1995 RELATING to the valuation of any past, current, or potential
ownership interest in SUPERMAN and/or SUPERBOY," "if any."  Toberoff Request No. 18;
Pacific Pictures Request No. 15; IP Worldwide Request No. 15.  If no such documents exist or
you are claiming privilege over any such documents, please state so clearly.

      j.  <u>Communications with Kevin Marks.</u>  Toberoff Request Nos. 42(a-b) and 44 seek
documents relating to communications with Kevin Marks, and while Mr. Toberoff agreed to
produce documents as to all three requests, no new documents were produced.  July 15, 2011,
Toberoff Responses at 19-21 ("Toberoff will produce the responsive, non-privileged documents,
if any").  If none exist, please let us know.

      k.  <u>Communications with Michael Siegel.</u>  Toberoff Request Nos. 46 and 48 seek
documents relating to communications with Michael Siegel and, again, Mr. Toberoff agreed to
produce any such documents, but produced none.  July 15, 2011, Toberoff Responses at 21-23

**EXHIBIT I**
**413**

O'MELVENY & MYERS LLP
August 11, 2011 - Page 9

("Toberoff will produce the responsive, non-privileged documents, if any"). If none exist, please let us know. If no such documents exist, please state so.

l. <u>Communications with David Michaels.</u> On April 4, DC moved to compel the production of defendants' communications with David Michaels. Docket No. 205 at 13-16. In opposing that motion, defendants argued:

> Michaels communicated with the Siegels in connection with his potential representation of them, and discussed their case, based on privileged and confidential information he obtained while working for Toberoff & Associates as their attorney. It is well-established that "consulting" an attorney as to retention, if any, is considered to entail the provision of "legal advice" and is protected by the attorney-client privilege. *See Barton v. United States Dist. Court*, 410 F.3d 1104, 1108 (9th Cir. 2005) ("privilege applied to pre-employment communications with an attorney by a prospective client"). Thus, there is no basis to assert that Michaels' communications with the Siegels are not privileged, regardless of whether he was attempting to "steal" a client from Toberoff & Associates.

Docket No. 210 at 11-12. While Magistrate Zarefsky denied that motion, Docket No. 262 at 4, on July 21, Ms. Larson produced documents related to her communications with Gerry Spence, another attorney she "consult[ed] … as to retention." LSL 00452-481. Defendants may not produce documents as to one potential new attorney while withholding documents as to another. A privilege holder "cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or disclose, but after a certain point his election must remain final." *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). Please confirm whether you will now produce the David Michaels letters.

If you decline to produce the documents discussed in paragraphs 3.a-l above, please let us know when we can meet and confer within the next 10 days regarding our motion to compel their production. We also need to know in the next 10 days what you mean by the following statement for the following document responses: defendants agree to produce "responsive, non-privileged documents, if any."[1] As to each of the document requests listed above and in the margin below, it appears you produced no responsive documents to these requests. Is your production fully complete as to these listed requests, or do documents exist that you have yet to produce? We need clarity on this.

4. We take it from your letter that you decline to produce copies of Ms. Peavy's will and the Superman script based on the prior discovery that DC served. Is that your position? If so, we need to include this issue in our Rule 37 discussion.

---

[1] Toberoff Request Nos. 9(a-b), 12-15, 18, 27-32, 40-41, 42(a-b), 44, 46, 48; Pacific Pictures Request Nos. 15, 19, 24, 27-28; IP Worldwide Request Nos. 15, 18, 24, 27.

**EXHIBIT I**
**414**

O'MELVENY & MYERS LLP
August 11, 2011 - Page 10

    5.  Finally, as we asked Mr. Toberoff when we met in New Mexico, please let us know if
you can commit to a date certain in September—*i.e.*, no later than September 9—to complete
your review of Ms. Larson's files and to update her privilege logs.  This date gives defendants
more than a month to do this work.  Despite your claims to the contrary, important new
documents were revealed at her deposition that heretofore had never been produced.  This
includes the extension of the IP Worldwide agreement that defendants never before produced,
July 22, 2011, Larson Dep. Tr. at 60:4-62:1, 64:3-23; IPWW 00006-7, and Ms. Larson's
testimony about her correspondence with her brother, *e.g.*, July 22, 2011, Larson Dep. Tr. at 246-
47, 299, 310-14, which you continue to refuse to produce or discuss with us.

    All of DC's rights are reserved.

                Very truly yours,

                /s/ Matthew T. Kline

                Matthew T. Kline
                of O'Melveny & Myers LLP

cc:    Daniel M. Petrocelli, Esq.
       Laura Brill, Esq.

**EXHIBIT I**
**415**

# EXHIBIT J

**From:** Tokoro, Jason
**Sent:** Thursday, August 18, 2011 5:35 PM
**To:** 'Keith Adams'; 'Marc Toberoff'
**Cc:** Petrocelli, Daniel; Kline, Matthew; Seto, Cassandra
**Subject:** RE: DC Comics v. PPC

Please see below correspondence sent on behalf of Matthew T. Kline.

\*          \*          \*

Keith,

We will notice the four depositions of the four witnesses to take place on September 27 and 28. Given that you offered these dates, we assume defendants and their counsel will not assert that the Rosh Hashanah holiday is an issue. If it is, let us know now. We will endeavor to complete the examination in one day, but expect it will take at least two, and believe DC has the full right to the four days. We will serve the notices on your offices tomorrow.

We reserve all rights.

Matt

**From:** Keith Adams [mailto:kgadams@ipwla.com]
**Sent:** Wednesday, August 17, 2011 09:13 PM
**To:** Seto, Cassandra; Petrocelli, Daniel; Kline, Matthew
**Cc:** Marc Toberoff <mtoberoff@ipwla.com>
**Subject:** Re: DC Comics v. PPC

Matt:

I do not understand your August 16 e-mail.  Our August 10 letter clearly rejected the "offer" made in your August 11 letter as unreasonbaly burdensome, as it simply repeated the offer made in your August 3, 2011 letter that defendants already rejected on August 10 for the same reason.

Mr. Toberoff is available to be deposed both in his individual capacity and as a Rule 30(b)(6) witness for PPC, IPWW and IPW, on September 27-30.

All of defendants' rights are reserved.

Keith G. Adams
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, CA 90067
Telephone: (310) 246-3333
Facsimile: (310) 246-3101
Email: kgadams@ipwla.com
http://www.ipwla.com

This message and any attached documents may contain information from
Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read,
copy, distribute or use this information. If you have received this transmission in error, please notify the sender
immediately by reply e-mail and then delete this message.

1

**EXHIBIT J**
**416**

--- On **Tue, 8/16/11, Seto, Cassandra <*cseto@OMM.com*>** wrote:

From: Seto, Cassandra <cseto@OMM.com>
Subject: FW: DC Comics v. PPC
To: "'Keith Adams'" <kgadams@ipwla.com>, "Marc Toberoff" <mtoberoff@ipwla.com>, "Laura Brill" <lbrill@kbkfirm.com>
Cc: "Petrocelli, Daniel" <DPetrocelli@OMM.com>, "Kline, Matthew" <MKline@OMM.com>
Date: Tuesday, August 16, 2011, 10:22 PM

Please see the email below sent on behalf of Matt Kline.


\*          \*          \*


Dear Counsel,


We have received no response to the offer in our August 11 letter (attached) to consolidate the four Toberoff defendants' depositions to two days (or one long day, if possible) in late September.  Nor have we heard from you regarding dates for these depositions, despite your request to meet and confer on these issues last week.  Please confirm defendants' position; if you are unwilling to meet and confer on this issue, we will have no choice but to notice the four defendants' depositions on dates that work for us and proceed on those noticed dates.


Thanks,


Matt


---

From: Seto, Cassandra
Sent: Thursday, August 11, 2011 6:21 PM
To: Keith Adams; Marc Toberoff; Laura Brill
Cc: Petrocelli, Daniel; Kline, Matthew
Subject: DC Comics v. PPC


Dear Counsel,


Please see the attached letter from Matt Kline.

2

**EXHIBIT J**
**417**

# EXHIBIT K



# O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
HONG KONG
LONDON
LOS ANGELES
NEWPORT BEACH
NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO
SHANGHAI
SILICON VALLEY
SINGAPORE
TOKYO
WASHINGTON, D.C.

October 7, 2011

OUR FILE NUMBER
905900-321

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6850

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
dpetrocelli@omm.com

Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Marc:

We write to address issues raised by defendants' September 30, 2011, production of the Last Will and Testament of Jean Adele Peavy (MWP 00060-61) ("Peavy Will"). At his June 29 deposition, defendant Mark Warren Peary testified that he believed that Dawn Peavy would share with him under the Peavy Will. M. Peary Tr. at 76:14-80:4. At Dawn Peavy's August 3 deposition she also testified that it was her understanding that she would benefit under the will. D. Peavy Tr. 49:14-51:3. Defendants refused to produce the Peavy Will to DC—even though it was clearly responsive to DC's document requests served in August 2010,[1] and even though defendants waived all objections to these requests, save for privilege, Docket No. 133 at 1—until *after* Mr. Peary's and Dawn Peavy's deposition, and *after* forcing DC to serve a second set of document requests on the Shuster heirs in August 2011 additionally asking for this document. The Peavy Will discloses that Mr. Peary is the sole beneficiary of the estate, and that Dawn Peavy only benefits in the extremely unlikely event that Mr. Peary predeceases his mother. We need to examine Dawn Peavy and Mr. Peary regarding this revelation as well as the recent agreement between Mr. Peary and Pacific Pictures that you produced last month, among other issues.

We are also deeply concerned about another issue. You purported to represent Dawn Peavy for purposes of her deposition, D. Peavy Tr. at 4:4-6; and you heard her testimony that she understood that she would inherit under Ms. Peavy's will; you also represent Mr. Peary; and you

---

[1] *E.g.*, Peary Requests No. 6 ("All DOCUMENTS relating to or affecting the disposition, division, or ownership of any rights in SUPERMAN and/or SUPERBOY."); No. 7 ("All DOCUMENTS relating to or affecting the division of revenue, proceeds, or other profits regarding SUPERMAN and/or SUPERBOY."); No. 8 ("ALL DOCUMENTS relating to or affecting the division of any settlement proceeds regarding SUPERMAN and/or SUPERBOY.").

**EXHIBIT K**
**418**

O'MELVENY & MYERS LLP
October 7, 2011 - Page 2

heard his testimony that Dawn would share the estate with him.  No corrections were made on this point to either witnesses' testimony.  These circumstances raise serious questions regarding not only the conduct and credibility of your clients, but also conflicts of interest on your part, especially since you also represent Ms. Peavy.  We need to address these issues promptly.

All of DC's rights are reserved.

Very truly yours,

Daniel M. Petrocelli
of O'MELVENY & MYERS LLP

cc:     Matthew T. Kline, Esq.
        Richard Kendall, Esq.

**EXHIBIT K**
**419**

# EXHIBIT L

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 3630
LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

mtoberoff@ipwla.com

October 14, 2011

<u>Via E-Mail</u>

Daniel Petrocelli
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:     *DC Comics v. Pacific Pictures Corp., et al.*, Case No. 10-CV-03633 ODW (RZx)

Dan:

I write in response to your October 7, 2011 letter regarding DC's desire to re-depose Dawn
Peavy and Mark Warren Peary based on the production of Jean Adele Peavy's will, dated August
24, 2001.

DC's arguments that the will, which does not refer to termination rights or Joseph Shuster's
copyrights and pre-dates the November 23, 2001 Pacific Pictures Agreement at the center of
DC's allegations, was responsive to DC's first set of production requests are not well-taken.  As
Mr. Adams stated in his August 10 letter, DC was well aware that Jean Peavy could have a will,
and that the will was not part of the Shusters' production in December 2010.  If the will was
responsive to DC's prior discovery requests, DC undoubtedly would have brought up the issue in
the motion to compel it brought as to those requests, but did not.

DC's complaint that it did not receive the will until after Mr. Peary and Dawn Peavy's
depositions is also off-point.  DC controlled the timing of the depositions, controlled the timing
of its discovery requests, knew that it did not have Jean Peavy's will, and knew that there were
numerous, significant discovery issues outstanding (*e.g.,* the "stolen documents"), but DC
nonetheless proceeded with the depositions of both Mr. Peary and Dawn Peavy.  There is no
reasonable basis for DC to take their depositions again.

DC's vague allusions as to potential "conflicts" between Dawn Peavy and Mr. Peary, or
inaccuracies in their deposition testimony, also do not go anywhere.  While DC claims "Dawn
Peavy only benefits [from the will] in the extremely unlikely event that Mr. Peary predeceases
his mother," Mr. Peary clearly testified to his and his mother's intent to set up a trust to benefit
Dawn, and that such a trust did not yet exist.  *See* Peary Trans. at 75:22-23 ("We plan on any
proceeds would go into a trust."), 76:12-13 ("Q:  Does such a trust exist?  A: Not yet.").

**EXHIBIT L**
**420**

**TOBEROFF & ASSOCIATES, P.C.**

October 14, 2011
Re:     *DC Comics v. Pacific Pictures Corp.*
Page:   2 of 2

It appears from these vague, invasive comments that DC simply seeks to re-depose Mr. Peary and Dawn Peavy in the hope of driving some sort of wedge between them.  In the same divisive vein DC baselessly alludes to potential conflicts between me and Mr. Peary and/or Dawn Peavy, which DC has no standing to assert.

Nothing in this letter should be construed as a waiver or limitation of any of defendants' rights or remedies, all of which are reserved.

Very truly yours,

Marc Toberoff

**EXHIBIT L**
**421**

# EXHIBIT M



# O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
HONG KONG
LONDON
LOS ANGELES
NEWPORT BEACH
NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California  90067-6035

TELEPHONE  (310) 553-6700
FACSIMILE  (310) 246-6779
www.omm.com

SAN FRANCISCO
SHANGHAI
SILICON VALLEY
SINGAPORE
TOKYO
WASHINGTON, D.C.

October 19, 2011

OUR FILE NUMBER
905900-321

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6850

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
dpetrocelli@omm.com

Re:    ___DC Comics v. Pacific Pictures Corp. et al.___, CV-10-3633 (ODW) (RZx)

Dear Marc:

We write in response to your October 14, 2011, letter addressing defendants' production of Jean Peavy's will.

Defendants do not dispute that Ms. Peavy's will is relevant to DC's claims or that defendants waived all objections to DC's initial document requests, save for privilege.  Docket No. 133 at 1.  Defendants instead assert the will is somehow not responsive to DC's initial set of document requests, but do not and cannot explain why.  This position is without basis.  To take one example, Peavy's will plainly relates to "ownership of any rights in SUPERMAN," Peary Request No. 6, and Peavy was adjudged to be the sole heir to Joe Shuster, and defendants claim the primary asset of his estate is Superman-related copyrights.  Nonetheless, defendants failed to produce or log the Peavy will in December 2010, when their discovery responses were due.

There is no basis for Mr. Adams' charge that "DC was well aware Jean Peavy could have a will, and that the will was not part of the Shusters' production in December 2010."  The first time DC was advised Ms. Peavy had a will was during defendant Mark Peary's June 29, 2011, deposition.  M. Peary Tr. at 76:14-15.  DC cannot be faulted for its decision to proceed with Mr. Peary's deposition when it did when defendants represented to DC and the Court that it had produced or logged all responsive, non-privileged documents, Docket Nos. 133; 160 at 64-74; 162-12, but, in fact, had held back Ms. Peavy's will.  Indeed, it is defendants who are responsible for DC's need to further examine Mr. Peary and Dawn Peavy regarding both the Peavy will, as well as the erroneous testimony from Mr. Peary and Ms. Peavy that the will exposes.  Defendants tactically chose not to produce the will until after these depositions were taken.  DC also reserved its right, at both Mr. Peary's and Dawn Peavy's depositions, to seek further testimony from both witnesses to address this type of gamesmanship.  M. Peary Tr. at 359:15-360:5; D. Peavy Tr. at 109:4-111:8.

**EXHIBIT M**
**422**

O'MELVENY & MYERS LLP
October 19, 2011 - Page 2

Defendants' discussion of Mr. Peary's testimony concerning his mother's purported intent to establish a trust to benefit Dawn Peavy does not address the issue raised in our October 7 letter: That Mr. Peary's and Dawn Peavy's testimony that Dawn would share 50/50 under the Peavy will is contradicted by the express terms of the will, which discloses that Mr. Peary is the sole beneficiary of the estate unless he predeceases his mother. M. Peary Tr. at 76:20-22 ("Q: Does [the Peavy will] distribute the estates equally between you and your sister Dawn?  A: I believe."); D. Peavy Tr. at 49:17-23 ("Q: Do you know that [the Peavy will] names you as a beneficiary?  A: Yes.  Q: How do you know that?  A: They told me.  Q: Who is 'they'?  A: My bother and [mother]."). Neither Mr. Peary nor Dawn Peavy qualified their testimony by saying that Dawn would share in her mother's estate's assets only if her mother first set up a trust, otherwise amended her will, or Mr. Peary pre-deceased his mother. Moreover, establishing such a trust now appears impossible, given Mr. Peary and Dawn Peavy's testimony about Jean Peavy's infirm mental and physical condition. *E.g.*, M. Peary Tr. at 36:18-21; D. Peavy Tr. at 7:13-22, 51:4-13.

Your accusations regarding why DC seeks to re-depose Mr. Peary and Dawn Peavy are unfounded. Your conflicts in representing Ms. Peavy and Ms. Peary, as well as other parties in this case, remain a serious issue and one that the District Court has the full right to remedy. *See Abbott v. Kidder Peabody & Co.*, 42 F. Supp. 2d 1046, 1050-51 (D. Col. 1999); *Moreno v. Autozone, Inc.*, 2007 WL 4287517, at *3, *17 (N.D. Cal. Dec. 6, 2007).

All of DC's rights are reserved.

Very truly yours,

Daniel M. Petrocelli
of O'MELVENY & MYERS LLP

cc:    Matthew T. Kline, Esq.
       Richard Kendall, Esq.

**EXHIBIT M**
**423**

# EXHIBIT N



# O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
HONG KONG
LONDON
LOS ANGELES
NEWPORT BEACH
NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO
SHANGHAI
SILICON VALLEY
SINGAPORE
TOKYO
WASHINGTON, D.C.

November 4, 2011

**VIA E-MAIL**

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California 90067

OUR FILE NUMBER
905900-321

WRITER'S DIRECT DIAL
(310) 246-6850

WRITER'S E-MAIL ADDRESS
dpetrocelli@omm.com

Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Marc:

We write to follow up on our October 19, 2011, letter to you addressing issues raised by defendants' production of Jean Peavy's will, including DC's right to take further depositions of defendant Mark Warren Peary and his sister Dawn Peavy. We have received no response from you. Please advise us of your position forthwith.

All of DC's rights are reserved.

Very truly yours,

Daniel M. Petrocelli
of O'MELVENY & MYERS LLP

cc:    Matthew T. Kline, Esq.
Richard Kendall, Esq.

**EXHIBIT N**
**424**

# EXHIBIT O

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

2049 CENTURY PARK EAST, SUITE 3630
LOS ANGELES, CALIFORNIA 90067

MARC TOBEROFF*
NICHOLAS C. WILLIAMSON
KEITH G. ADAMS
JEFFREY R. RHOADS

* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

mtoberoff@ipwla.com

November 9, 2011

<u>Via E-Mail</u>

Dan Petrocelli
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:    *DC Comics v. Pacific Pictures Corp., et al.*, Case No. 10-CV-03633 ODW (RZx)

Dan:

I write to follow up on certain outstanding discovery issues.

As to your October 19 and November 4, 2011 letters, those letters simply re-stated the erroneous factual contentions originally set forth in your October 7, 2011 letter, which were addressed in my October 14, 2011 letter. In fact, while your October 7, October 19 and November 4, 2011 letters vaguely allude to "issues" and DC's desire to re-depose Dawn Peavy and Mark Warren Peary, there does not appear to be any concrete dispute for the parties to address.

In response to the inquiry in Mr. Tokoro's November 4, 2011 letter, Ms. Larson will complete her review of her mother's documents, and any relevant, responsive documents will be produced to DC by no later than November 25, 2011. Ms. Larson was in the process of completing her review when her building's mangers announced that they will be fumigating the entire premises, which will require her to pack her belongings, etc., and will delay her by a couple of weeks.

Lastly, please be advised that, in addition to the log already produced by Renner Otto and incorporated in defendants' privilege logs, defendants anticipate that they will produce a log of the "Bulson" electronic archive at the same time that Ms. Larson produces any remaining "Joanne Siegel" documents.

Nothing in this letter should be construed as a waiver or limitation of any of defendants' rights or remedies, all of which are reserved.

Very truly yours,

Marc Toberoff

**EXHIBIT O**
**425**

# EXHIBIT P



## O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

November 11, 2011

OUR FILE NUMBER
905900-321

**VIA E-MAIL**

WRITER'S DIRECT DIAL
(310) 246-6850

Marc Toberoff
Toberoff & Associates, P.C.
2049 Century Park East, Suite 3630
Los Angeles, California 90067

WRITER'S E-MAIL ADDRESS
dpetrocelli@omm.com

Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Marc:

We write in response to your letter of yesterday addressing various outstanding discovery issues.

1. <u>Jean Peavy Will</u>.  You have not responded to the issues we raised in our October 7, October 19, and November 4 letters.  Your assertion that "there does not appear to be any concrete dispute for the parties to address" is contradicted by the record.

First, you do not address the fact that at his June 29 deposition, defendant Mark Warren Peary testified that he believed Dawn Peavy would share with him under the Peavy Will.  M. Peary Tr. at 76:14-80:4.  At Dawn Peavy's August 3 deposition, she also testified that it was her understanding that she would benefit under the will, as discussed with Mr. Peary.  D. Peavy Tr. at 49:14-51:3.  The Peavy Will contradicts these assertions and discloses that Mr. Peary is the sole beneficiary of the estate.  Neither Mr. Peary nor Dawn Peavy testified that Dawn would share in her mother's estate's assets only if her mother first set up a trust, otherwise amended her will, or Mr. Peary pre-deceased his mother.  We are entitled to examine Dawn Peavy and Mr. Peary regarding this inconsistency.  In addition, you have nowhere addressed DC's right to depose both Dawn Peavy and Mr. Peary concerning the recent agreement between Mr. Peary and Pacific Pictures that you produced in September.

Second, we remain concerned about the conduct and credibility of your client, and the conflicts of interest on your part, especially since you represent also Ms. Peavy.  This concern is highlighted by Ms. Peavy and Mr. Peary's inconsistent testimony about the distribution of the estate and ensuing failure to correct their testimony.  We need to address these issues promptly.

**EXHIBIT P**

**426**

O'MELVENY & MYERS LLP
November 11, 2011 - Page 2


2. <u>Laura Siegel Larson Review</u>. We requested that defendant Laura Siegel Larson review her mother's files and produce or log responsive documents at her July 22, 2011, deposition, almost four months ago. We cannot wait any longer.

3. <u>Bulson Log</u>. It is unclear what you mean in saying that "defendants anticipate that they will produce a log of the 'Bulson' electronic archive." Please confirm that defendants will be providing DC with a log of Renner Otto's entire digital copy of Mr. Siegel's files identifying who authored the document, to whom it was sent (if anyone), the date of the document, when it was received by Renner Otto (if that date is known), and the total number of pages for each individual document. Also, please confirm that attachments and enclosures will be listed separately, as would each part of an email chain.

4. <u>Bulson Document Production</u>. You letter once again does not provide a date certain when you will complete your review and produce or log Renner Otto's expert report and its calendar and billing entries. It has been four months since we made our request at Mr. Bulson's July 19, 2011, deposition, and there is no justification for defendants' delay. Please confirm that you will complete your review no later than next Friday, November 18.


Very truly yours,

/s/ Daniel M. Petrocelli

Daniel M. Petrocelli
of O'MELVENY & MYERS LLP


cc:    Matthew T. Kline, Esq.
       Richard Kendall, Esq.


**EXHIBIT P**
**427**

# EXHIBIT Q



# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

July 27, 2012

OUR FILE NUMBER
905900-321

**VIA EMAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

Marc Toberoff
Toberoff & Associates, P.C.
22631 Pacific Coast Highway #348
Malibu, CA 90265

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Re:    ***DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)**

Dear Marc:

We write to discuss re-opening DC's depositions of defendants Mark Warren Peary and Laura Siegel Larson.  DC last deposed Peary and Larson last summer.  Since that time, there have been several significant discovery disclosures and developments in this case that warrant defendants' further examination.  To take a few examples, DC has now obtained:  (1) the Timeline documents; (2) Jean Peavy's will and the 2011 PPC Agreement; and (3) Larson's July 2003 letter to Michael Siegel, Michael's November 2002 letter to Laura, and your November 2001 email to Michael Siegel (which is to be produced to DC on August 13, 2012).

As you know, Magistrate Judge Zarefsky granted DC's motion to re-open Dawn Peavy's deposition.  Docket No. 377.  DC would prefer to avoid similar motion practice concerning Peary and Larson's depositions.  However, if defendants oppose this request, DC seeks a Rule 37 conference on the issues immediately.  *See* FED. R. CIV. P. 30(d)(1) ("the court "must allow additional time … if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes … the examination…."); Advisory Committee Notes to FED. R. CIV. P. 30 (good cause for further deposition exists if an "examination reveals that documents have been requested but not produced"); *St. Clair v. U.S.*, 21 F.R.D. 330, 331 (S.D.N.Y. 1958) (granting leave to redepose where matters sought to be examined were "only recently disclosed"); *Kress v. Price Waterhouse Coopers*, 2011 U.S. Dist. LEXIS 126224, at *5-6 (E.D. Cal. Nov. 1, 2011) ("'Good cause' for an order exists where… new documents have been produced."); FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 11:1374 (Rutter 2011) ("'Good cause' for such order may include: new documents have been produced.").

**EXHIBIT Q**

**428**

O'MELVENY & MYERS LLP
July 27, 2012 - Page 2


DC proposes the depositions take place the second week of September, in Los Angeles. Please inform us of your position as soon as possible.

All of DC's rights and remedies are reserved.


Very truly yours,

/s/ Matthew T. Kline

Matthew T. Kline
of O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli, Esq.
       Richard Kendall, Esq.
       Defense Counsel

**EXHIBIT Q**
**429**

# EXHIBIT R

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

22631 PACIFIC COAST HIGHWAY #348

MALIBU, CALIFORNIA 90265

MARC TOBEROFF*
KEITH G. ADAMS
PABLO D. ARREDONDO*
DAVID HARRIS

* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

kgadams@ipwla.com

August 1, 2012

<u>Via E-Mail</u>

Matthew Kline
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:     <u>*DC Comics v. Pacific Pictures Corp., et al.*, Case No. 10-CV-03633 ODW (RZx)</u>

Dear Matt:

I write in response to your July 27, 2012 letter seeking to take a ***third*** deposition of Mark Warren Peary and a ***fourth*** deposition of Laura Siegel Larson, of unrestricted length and subject matter. Despite DC's contention that "significant discovery disclosures" warrant further depositions, there is nothing cited in your letter that would justify the burden, hassle, and expense of DC taking additional depositions of these two individuals. *See* Federal Rule of Civil Procedure 30(d)(2) ("[A] deposition is limited to one day of seven hours.").

DC cannot point to purportedly "new" documents to justify re-opening depositions. DC took Mr. Peary's and Ms. Larson's depositions in this case over defendants' objections and knowing full well that document discovery was incomplete and that there were numerous outstanding discovery issues – including, most notably, the "Timeline Documents," the production of which had been expressly and indefinitely stayed pending review.

None of the documents cited in your letter justify reopening these depositions. The unspecified "Timeline Documents" are largely duplicative of discovery already taken. Jean Peavy's short will dates from well before Mr. Toberoff had communicated with Ms. Peavy or Mr. Peary, and does not even mention Superman or termination. The August 2, 2011 letter simply confirmed the operative September 10, 2004 letter, which in turn cancelled and wholly revoked the 2001 and 2003 PPC Agreements, and DC has already taken extensive testimony on such topics. Ms. Larson has already testified extensively about her communications with Michael Siegel, and the two letters that you point to add no new subjects that were not previously covered. Magistrate Zarefsky has confirmed that, consistent with defendants' representations, the November 2001 email is privileged and concerns legal rights and potential representation; in any event, Judge Wright's order for its production is, as you know, the subject of defendants' soon-to-be filed

**TOBEROFF & ASSOCIATES, P.C.**

August 1, 2012
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:   2 of 2

motion for reconsideration, and it would be highly improper for DC to use that letter while
defendants' motion is still pending.

In short, your letter falls well short of demonstrating "good cause" to subject Ms. Larson and Mr.
Peary to even further depositions.  Magistrate Zarefsky has already admonished DC about using
the discovery process to "create undue burden or harassment."  Dkt. No. 439.  Based on your
request to take repetitive and unnecessary depositions, it would appear that you have not taken
this rebuke to heart.

We are available to meet-and-confer on these issues at 12:00 p.m. on Monday, August 6, 2012.

Very truly yours,

*[signature]*

Keith Adams

**EXHIBIT R**
**431**