# EXHIBIT S

# PART 2 OF 7

LAURA SIEGEL LARSON - 7/22/2011

Page 45

| | | |
|---|---|---|
| 10:32:23 | 1 | MR. TOBEROFF:  I instruct you not to answer |
| 10:32:25 | 2 | based on the attorney-client privilege, joint client |
| 10:32:28 | 3 | privilege. |
| | 4 | BY MR. PETROCELLI: |
| 10:32:30 | 5 | Q.   And these were conversations just between |
| 10:32:32 | 6 | your mother and you; is that correct? |
| 10:32:33 | 7 | A.   Yes. |
| 10:32:41 | 8 | Excuse me.  May I take a bathroom break for a |
| 10:32:43 | 9 | moment? |
| 10:32:44 | 10 | MR. PETROCELLI:  Sure.  Let's stop right now. |
| 10:32:48 | 11 | THE VIDEOGRAPHER:  Off the record.  The time |
| 10:32:48 | 12 | is 10:32. |
| 10:33:54 | 13 | (A recess was taken.) |
| 10:46:52 | 14 | THE VIDEOGRAPHER:  We're back on the record |
| 10:46:54 | 15 | at 10:46. |
| | 16 | BY MR. PETROCELLI: |
| 10:46:57 | 17 | Q.   I just want to follow up a bit on that last |
| 10:47:01 | 18 | area that we covered about the consent agreements and |
| 10:47:04 | 19 | the arrangements with the Shusters.  Does -- do the |
| 10:47:10 | 20 | consent agreements -- I may have asked you this |
| 10:47:17 | 21 | already, but let me ask you again.  Do the consent |
| 10:47:22 | 22 | agreement documents -- does the consent agreement |
| 10:47:25 | 23 | document make any reference at all to Superboy? |
| 10:47:31 | 24 | A.   You did ask me that. |
| 10:47:32 | 25 | MR. TOBEROFF:  Asked and answered.  And I |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 46

| | | |
|---|---|---|
| 10:47:34 | 1 | instruct you not to answer. |
| 10:47:37 | 2 | MR. PETROCELLI: If I agree that it's not a |
| 10:47:39 | 3 | waiver, do you continue to instruct on that? |
| 10:47:41 | 4 | MR. TOBEROFF: Yes. |
| 10:47:42 | 5 | MR. PETROCELLI: Okay. |
| 10:47:59 | 6 | Q. Are you currently able to enter into an |
| 10:48:04 | 7 | agreement with DC Comics without the consent of the |
| 10:48:15 | 8 | Shuster side, the Shuster family? |
| 10:48:22 | 9 | MR. TOBEROFF: I instruct you not to answer |
| 10:48:25 | 10 | that. |
| 10:48:25 | 11 | MR. PETROCELLI: Same objection? Privilege? |
| 10:48:30 | 12 | MR. TOBEROFF: Same objection. Privilege. |
| | 13 | BY MR. PETROCELLI: |
| 10:48:35 | 14 | Q. Have you had any discussions with any member |
| 10:48:38 | 15 | of the Shuster family since 2008 when the both of you |
| 10:48:45 | 16 | signed the consent agreement about the marketing of |
| 10:48:50 | 17 | the Superman rights? |
| 10:48:54 | 18 | A. I can't recall any discussion. |
| 10:49:02 | 19 | Q. Are -- have any efforts been made on your |
| 10:49:05 | 20 | behalf or your family's behalf to market the Superman |
| 10:49:10 | 21 | rights since 2008? |
| 10:49:15 | 22 | MR. TOBEROFF: You can -- you could answer |
| 10:49:23 | 23 | that yes or no, a yes or no question, and you can also |
| 10:49:28 | 24 | answer it to the extent your knowledge does not reveal |
| 10:49:31 | 25 | the substance of your communications with counsel. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 47

| | | |
|---|---|---|
| 10:49:35 | 1 | THE WITNESS: Okay. |
| 10:49:37 | 2 | MR. TOBEROFF: So -- |
| 10:49:39 | 3 | MR. PETROCELLI: To be clear, Marc, and we're |
| 10:49:41 | 4 | not going to settle this on the record, but I do want |
| 10:49:43 | 5 | to make clear that I disagree that all conversations |
| 10:49:46 | 6 | with you are privileged. They have to involve the |
| 10:49:48 | 7 | rendition of legal advice at the very minimum. |
| 10:49:51 | 8 | MR. TOBEROFF: Well, the marketing of her -- |
| 10:49:55 | 9 | the subject of a litigation for the past six now going |
| 10:49:58 | 10 | to the seventh year of rights wouldn't necessarily |
| 10:50:01 | 11 | entail legal advice. |
| 10:50:03 | 12 | MR. PETROCELLI: If you meet with Paramount |
| 10:50:05 | 13 | Pictures about the sale of Superman or you go to Fox |
| 10:50:08 | 14 | and you then report on the meeting, that's hardly the |
| 10:50:11 | 15 | rendition of legal advice. |
| 10:50:12 | 16 | MR. TOBEROFF: It's totally intertwined with |
| 10:50:15 | 17 | legal advice. Any studio would want to know the state |
| 10:50:18 | 18 | of the litigation, the odds of the litigation, the |
| 10:50:21 | 19 | odds on appeal. There's so much going on in this case |
| 10:50:25 | 20 | that would be relevant to the status of those rights |
| 10:50:28 | 21 | and which would -- it's just very closely intertwined. |
| 10:50:34 | 22 | If she has knowledge of that independent of her |
| 10:50:37 | 23 | discussions with me, I will allow her to answer. |
| 10:50:38 | 24 | Otherwise I would instruct you not to answer. |
| 10:50:40 | 25 | MR. PETROCELLI: It seems like it's |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 48

| 10:50:41 | 1 | impossible for her to have any knowledge independent |
| 10:50:44 | 2 | of you. |
| 10:50:45 | 3 | MR. TOBEROFF:  Certainly when it regards |
| 10:50:48 | 4 | legal matters, that would be the case. |
| 10:50:50 | 5 | MR. PETROCELLI:  This is a business question |
| 10:50:51 | 6 | about selling the rights. |
| 10:50:55 | 7 | MR. TOBEROFF:  Same instruction. |
| | 8 | BY MR. PETROCELLI: |
| 10:50:56 | 9 | Q.  Have you -- let me ask the question so we |
| 10:51:00 | 10 | have a record here. |
| 10:51:02 | 11 | Do you -- are you aware of any efforts made |
| 10:51:04 | 12 | on your behalf to market your Superman rights since |
| 10:51:10 | 13 | 2008? |
| 10:51:10 | 14 | MR. TOBEROFF:  You could just answer that yes |
| 10:51:12 | 15 | or no. |
| 10:51:16 | 16 | Laura? |
| 10:51:17 | 17 | THE WITNESS:  I'm thinking. |
| 10:51:18 | 18 | MR. TOBEROFF:  Okay. |
| 10:51:21 | 19 | THE WITNESS:  There's -- there's so much to |
| 10:51:22 | 20 | remember in this -- |
| 10:51:23 | 21 | MR. PETROCELLI:  That's like -- |
| | 22 | THE WITNESS:  -- situation. |
| 10:51:24 | 23 | MR. PETROCELLI:  -- the old Jack Benny joke. |
| 10:51:26 | 24 | "Your money or your life," and he goes "I'm thinking! |
| 10:51:30 | 25 | I'm thinking!" |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 49

| 10:51:30 | 1 | THE WITNESS: I know the joke. |
| 10:51:37 | 2 | MR. PETROCELLI: Marc, you're still smiling. |
| 10:51:39 | 3 | You appreciate that, I know. |
| 10:51:41 | 4 | THE WITNESS: That's a good joke.  That's a |
| 10:51:43 | 5 | good joke. |
| 10:51:44 | 6 | MR. PETROCELLI: I used to love Jack Benny. |
| 10:51:46 | 7 | THE WITNESS: I know.  I did too. |
| 10:51:50 | 8 | MR. PETROCELLI: We're telling our age. |
| 10:51:51 | 9 | THE WITNESS: I don't believe so. |
| 10:51:52 | 10 | MR. TOBEROFF: As to showing your age or the |
| 10:51:54 | 11 | question? |
| 10:51:54 | 12 | MR. PETROCELLI: We will get back on track |
| 10:51:56 | 13 | here.  It's really my fault. |
| 10:51:58 | 14 | Q.   You're not aware of any efforts to market the |
| 10:52:03 | 15 | Superman rights since 2008; is that correct? |
| 10:52:05 | 16 | A.   I don't recall any. |
| 10:52:06 | 17 | Q.   Are you aware of any discussions that were |
| 10:52:11 | 18 | had on your behalf with representatives of Paramount |
| 10:52:17 | 19 | Pictures or the Paramount Studio? |
| 10:52:21 | 20 | A.   I don't remember a time frame.  I believe |
| 10:52:24 | 21 | that may have occurred, but -- |
| 10:52:27 | 22 | Q.   Why do you believe it may have occurred? |
| 10:52:29 | 23 | A.   I'm just trying to draw on my memory here. |
| 10:52:37 | 24 | Was it Paramount?  Yeah.  I guess it was Paramount. |
| 10:52:41 | 25 | Q.   And are you aware of any efforts to market |

Merrill  Corporation  -  Los Angeles

800-826-0277                          www.merillcorp.com/law

EXHIBIT S
486

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 50

| 10:52:43 | 1 | the property to anyone other than Paramount? |
| 10:52:49 | 2 | A.   I can't recall any right now. |
| 10:52:52 | 3 | Q.   What came of the Paramount marketing effort? |
| 10:52:58 | 4 | A.   I don't believe -- |
| 10:52:59 | 5 | MR. TOBEROFF:   I instruct you not to -- you |
| 10:53:00 | 6 | know, again, we have to be careful here because |
| 10:53:04 | 7 | when -- you object to my instruction based on |
| 10:53:06 | 8 | privilege, and then when I let her answer, you claim a |
| 10:53:08 | 9 | broad waiver of privilege.  So it's almost a |
| 10:53:14 | 10 | self-fulfilling prophecy to a certain extent. |
| 10:53:16 | 11 | MR. PETROCELLI:   You act as though I'm taking |
| 10:53:19 | 12 | some kind of inappropriate position, Marc.  I have to |
| 10:53:22 | 13 | follow the rules and we have to abide by the |
| 10:53:24 | 14 | consequences. |
| 10:53:26 | 15 | MR. TOBEROFF:   We have different views |
| 10:53:27 | 16 | clearly as to what's appropriate. |
| 10:53:30 | 17 | So I'm instructing you not to answer as to |
| 10:53:35 | 18 | the marketing of or whatever his question regarding |
| 10:53:40 | 19 | the marketing of your rights to the extent your |
| 10:53:45 | 20 | knowledge of the details come only through me.  If you |
| 10:53:48 | 21 | have independent knowledge of that, then you can |
| 10:53:52 | 22 | discuss that. |
| 10:53:53 | 23 | THE WITNESS:   Okay. |
|  | 24 | BY MR. PETROCELLI: |
| 10:53:56 | 25 | Q.   Is everything you know about the marketing of |

LAURA SIEGEL LARSON - 7/22/2011

Page 51

| Time | Line | Text |
|------|------|------|
| 10:53:58 | 1 | the Superman rights information you learned from Marc |
| 10:54:05 | 2 | Toberoff? |
| 10:54:05 | 3 | A.    Yes. |
| 10:54:06 | 4 | Q.    In every single discussion you had with Marc |
| 10:54:10 | 5 | Toberoff, you are receiving legal advice? |
| 10:54:13 | 6 | A.    Yes. |
| 10:54:14 | 7 | Q.    And you believe that when he's reporting on a |
| 10:54:17 | 8 | meeting that he had with third parties, that's legal |
| 10:54:21 | 9 | advice? |
| 10:54:21 | 10 | A.    Yes. |
| 10:54:23 | 11 | Q.    Why? |
| 10:54:24 | 12 | A.    He's my lawyer. |
| 10:54:26 | 13 | Q.    You also know that he's an entrepreneur in |
| 10:54:30 | 14 | the motion picture industry; correct? |
| 10:54:33 | 15 | A.    It has nothing to do with me. |
| 10:54:35 | 16 | MR. TOBEROFF:  Vague and ambiguous. |
| | 17 | BY MR. PETROCELLI: |
| 10:54:35 | 18 | Q.    I didn't ask you that question; right?  I |
| 10:54:37 | 19 | simply asked you whether you were aware of that. |
| 10:54:40 | 20 | MR. TOBEROFF:  Just focus on his question. |
| 10:54:45 | 21 | THE WITNESS:  I am not aware of him having |
| 10:54:47 | 22 | any current activities. |
| | 23 | BY MR. PETROCELLI: |
| 10:54:48 | 24 | Q.    I didn't ask that question either.  You are |
| 10:54:53 | 25 | aware -- |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 52

| 10:54:53 | 1 | MR. TOBEROFF: Just wait. Wait. Wait. I |
| 10:54:55 | 2 | just want to instruct -- |
| 10:54:57 | 3 | THE WITNESS: Okay. Okay. I'm reading too |
| 10:54:59 | 4 | much into what you're saying. |
| 10:55:00 | 5 | MR. PETROCELLI: I think you are. I think |
| 10:55:01 | 6 | you are, because you're -- |
| 10:55:03 | 7 | MR. TOBEROFF: Wait. Wait. I'd just like to |
| 10:55:04 | 8 | talk to my client. |
| 10:55:06 | 9 | Just try and -- first of all, I want to slow |
| 10:55:09 | 10 | it down so I have time to object. Just try and focus |
| 10:55:11 | 11 | on his question. Don't try and think of where he's |
| 10:55:14 | 12 | going with the question. Just focus on the question |
| 10:55:16 | 13 | and answer the question. |
| 10:55:17 | 14 | THE WITNESS: Um-hum. Okay. |
| 10:55:18 | 15 | MR. PETROCELLI: I concur. |
| 10:55:24 | 16 | Q.   You are aware based on your knowledge of |
| 10:55:29 | 17 | Mr. Toberoff from the first time you ever heard his |
| 10:55:32 | 18 | name until today that he has been involved in various |
| 10:55:39 | 19 | business activities in the entertainment industry; |
| 10:55:42 | 20 | correct? |
| 10:55:42 | 21 | A.   Yes. |
| 10:55:43 | 22 | Q.   And that he has been involved in the |
| 10:55:47 | 23 | acquisition of various literary properties; correct? |
| 10:55:54 | 24 | A.   Acquisition? |
| 10:55:55 | 25 | Q.   Yes. |

EXHIBIT S

489

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 53

| | | |
|---|---|---|
| 10:55:56 | 1 | A. Do you want to define "acquisition" for me? |
| 10:55:58 | 2 | Q. To acquire rights to sell or produce various |
| 10:56:02 | 3 | properties in the entertainment business. |
| 10:56:04 | 4 | A. Yes. |
| 10:56:09 | 5 | Q. And you are aware that he had a business |
| 10:56:21 | 6 | collaboration with Ari Emanuel in connection with the |
| 10:56:27 | 7 | acquisition of various entertainment properties; |
| 10:56:31 | 8 | correct? |
| 10:56:31 | 9 | A. Yes. |
| 10:56:32 | 10 | Q. And you were aware that he had that |
| 10:56:35 | 11 | collaboration when you first became acquainted with |
| 10:56:39 | 12 | Mr. Toberoff; correct? |
| 10:56:40 | 13 | A. Yes. |
| 10:56:42 | 14 | Q. And when you entered into your first |
| 10:56:46 | 15 | agreement with Mr. Toberoff, part of that agreement |
| 10:56:49 | 16 | involved services to be rendered by Mr. Toberoff and |
| 10:56:55 | 17 | Mr. Emanuel for a 10 percent representation fee; |
| 10:57:03 | 18 | correct? |
| 10:57:04 | 19 | A. Yes. |
| 10:57:04 | 20 | Q. That would be like an agent's fee; correct? |
| 10:57:07 | 21 | A. Yes. |
| 10:57:07 | 22 | Q. And you understood that Mr. Toberoff would |
| 10:57:10 | 23 | share in that agent's fee of 10 percent; correct? |
| 10:57:13 | 24 | MR. TOBEROFF: I object. Objection. Vague |
| 10:57:20 | 25 | and ambiguous. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 54

| | | |
|---|---|---|
| 10:57:20 | 1 | BY MR. PETROCELLI: |
| 10:57:20 | 2 | Q.   You may answer. |
| 10:57:24 | 3 | A.   Well, the -- the -- could you reask the |
| 10:57:35 | 4 | question so I'm sure that I'm answering it correctly, |
| 10:57:38 | 5 | you know?  I do not want to read into what you're |
| 10:57:42 | 6 | saying. |
| 10:57:42 | 7 | Q.   With respect to the 10 percent representation |
| 10:57:45 | 8 | or agent's fee that you agreed to pay in connection |
| 10:57:52 | 9 | with the efforts of Mr. Emanuel and Mr. Toberoff, you |
| 10:58:00 | 10 | understood that Mr. Toberoff would share in part of |
| 10:58:04 | 11 | that 10 percent fee; correct? |
| 10:58:06 | 12 | MR. TOBEROFF:  Vague and ambiguous. |
| | 13 | BY MR. PETROCELLI: |
| 10:58:07 | 14 | Q.   Yes or no? |
| 10:58:09 | 15 | A.   I would like to go back and say that when you |
| 10:58:12 | 16 | refer to it as an agent's fee, I didn't -- I didn't |
| 10:58:17 | 17 | understand, you know, exactly what you were referring |
| 10:58:20 | 18 | to.  Mr. Toberoff did not act as an agent. |
| 10:58:24 | 19 | Q.   Well, when you signed an agreement in 2002 -- |
| 10:58:28 | 20 | A.   Yes. |
| 10:58:28 | 21 | Q.   -- you didn't sign it personally with |
| 10:58:30 | 22 | Mr. Toberoff.  You signed it with an entity called IP |
| 10:58:36 | 23 | Worldwide; is that correct? |
| 10:58:37 | 24 | A.   That's correct. |
| 10:58:39 | 25 | Q.   And that was a company, to your knowledge, at |

**Merrill    Corporation    -    Los Angeles**

800-826-0277

www.merillcorp.com/law

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 55

| | | |
|---|---|---|
| 10:58:43 | 1 | the time that consisted of Mr. Toberoff and |
| 10:58:48 | 2 | Mr. Emanuel; correct? |
| 10:58:50 | 3 | A.    Yes. |
| 10:58:52 | 4 | Q.    And the fee that you agreed to pay to employ |
| 10:58:59 | 5 | Mr. Toberoff and Mr. Emanuel was 10 percent of the |
| 10:59:06 | 6 | proceeds that they would generate with respect to the |
| 10:59:09 | 7 | sale of your Superman rights; correct? |
| 10:59:15 | 8 | A.    I don't believe "sale" is the correct word to |
| 10:59:18 | 9 | use. |
| 10:59:18 | 10 | Q.    What is the correct word? |
| 10:59:21 | 11 | A.    Negotiations on representation. |
| 10:59:26 | 12 | Q.    Okay. |
| 10:59:26 | 13 | A.    Exploring, you know, different avenues of, |
| 10:59:30 | 14 | you know, how, you know, our rights could be marketed. |
| 10:59:34 | 15 | Q.    But the 10 percent fee would not be payable |
| 10:59:37 | 16 | until and unless their efforts to exploit and |
| 10:59:42 | 17 | negotiate and market resulted in a transaction that |
| 10:59:45 | 18 | generated proceeds; correct? |
| 10:59:46 | 19 | A.    Correct. |
| 10:59:47 | 20 | Q.    Okay.  And with respect to that 10 percent |
| 10:59:52 | 21 | that you agreed to pay if the transaction was |
| 10:59:56 | 22 | consummated that generated proceeds, did you have any |
| 11:00:00 | 23 | understanding as to how that money would be split up |
| 11:00:03 | 24 | as between Mr. Toberoff and Mr. Emanuel? |
| 11:00:10 | 25 | A.    No. |

EXHIBIT S
492

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 56

| | | |
|---|---|---|
| 11:00:10 | 1 | Q.   Were you made aware of the joint venture |
| 11:00:17 | 2 | agreement between the two of them that created IP |
| 11:00:23 | 3 | Worldwide? |
| 11:00:23 | 4 | A.   Could you define "made aware"? |
| 11:00:25 | 5 | Q.   Did you ever see it? |
| 11:00:27 | 6 | A.   No. |
| 11:00:30 | 7 | Q.   Have you ever seen it? |
| 11:00:33 | 8 | A.   No. |
| 11:00:33 | 9 | Q.   Did they describe it to you? |
| 11:00:38 | 10 | A.   Well, Mr. Toberoff was acting as my attorney, |
| 11:00:42 | 11 | so I'm not sure whether -- |
| 11:00:44 | 12 | Q.   Okay.  Well, you're not responding to my |
| 11:00:46 | 13 | question -- |
| 11:00:47 | 14 | A.   No. |
| 11:00:47 | 15 | Q.   -- but I don't want to interrupt you, so |
| 11:00:49 | 16 | complete the answer.  Normally when a witness doesn't |
| 11:00:51 | 17 | respond to a lawyer, at least a good lawyer moves to |
| 11:00:53 | 18 | strike as nonresponsive.  I'm trying not to do that -- |
| 11:00:56 | 19 | A.   Um-hum. |
| 11:00:57 | 20 | Q.   -- because I want to accommodate you, but it |
| 11:00:59 | 21 | would be helpful if you tried to just respond to my |
| 11:01:03 | 22 | question. |
| 11:01:04 | 23 | A.   Okay.  So could you -- could I have the |
| 11:01:07 | 24 | question again, please? |
| | 25 | MR. TOBEROFF:  Who's here to hear your motion |

**EXHIBIT S**

**493**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 57

| 11:01:11 | 1 | to strike as nonresponsive? |
| 11:01:12 | 2 | MR. PETROCELLI:  It's only for the purpose of |
| 11:01:14 | 3 | preserving it for the record so when we're in trial, I |
| 11:01:16 | 4 | can seek to have that excluded from the record. |
| 11:01:30 | 5 | Q.   Did Mr. Emanuel or Mr. Toberoff describe to |
| 11:01:33 | 6 | you the terms of their arrangement prior to the time |
| 11:01:37 | 7 | you retained them in 2002? |
| 11:01:39 | 8 | A.   Yes. |
| 11:01:41 | 9 | Q.   What did they say to you? |
| 11:01:43 | 10 | A.   That they had a company together. |
| 11:01:46 | 11 | Q.   Okay.  And did they tell you about their |
| 11:01:51 | 12 | track record as a company together? |
| 11:01:55 | 13 | A.   Yes. |
| 11:01:56 | 14 | Q.   And did they tell you about prior successes |
| 11:02:02 | 15 | that they had achieved together? |
| 11:02:05 | 16 | A.   I remember Mr. Toberoff's achievements. |
| 11:02:10 | 17 | Q.   Did they tell you about prior transactions |
| 11:02:16 | 18 | that they, "they" being Mr. Emanuel and Mr. Toberoff |
| 11:02:20 | 19 | through their company, had accomplished prior to your |
| 11:02:26 | 20 | retaining them?  Did they say, for example, "We did a |
| 11:02:30 | 21 | similar transaction for" this person or that person. |
| 11:02:34 | 22 | "We can do the same for you"? |
| 11:02:36 | 23 | A.   As a company, no. |
| 11:02:40 | 24 | Q.   Okay.  Was it your understanding that the |
| 11:02:46 | 25 | arrangement with you that IP Worldwide made was the |

EXHIBIT S
494

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 58

| | | |
|---|---|---|
| 11:02:49 | 1 | first business dealing of this new company, of this |
| 11:02:55 | 2 | company, IP Worldwide? |
| 11:02:57 | 3 | A.  I had no knowledge of that. |
| 11:02:59 | 4 | Q.  Did you have any knowledge how old the |
| 11:03:01 | 5 | company was? |
| 11:03:03 | 6 | A.  I believe it was -- it was a fairly new |
| 11:03:06 | 7 | company. |
| 11:03:07 | 8 | Q.  And again, did you believe that yours was the |
| 11:03:10 | 9 | first transaction the company entered into? |
| 11:03:14 | 10 | A.  I don't have any recollection of it being a |
| 11:03:17 | 11 | first. |
| 11:03:18 | 12 | Q.  Did you do any research on the company? |
| 11:03:21 | 13 | A.  I did research on Mr. Toberoff and on |
| 11:03:25 | 14 | Mr. Emanuel. |
| 11:03:25 | 15 | Q.  And did you do any research on IP Worldwide? |
| 11:03:32 | 16 | A.  I don't recall anything specific. |
| 11:03:33 | 17 | Q.  Now, at the time you knew that Mr. Toberoff |
| 11:03:37 | 18 | also was a lawyer; right? |
| 11:03:39 | 19 | A.  Yes. |
| 11:03:40 | 20 | Q.  Okay.  And you knew that Mr. Emanuel was a |
| 11:03:44 | 21 | talent agent; correct? |
| 11:03:45 | 22 | A.  Correct. |
| 11:03:45 | 23 | Q.  And you knew that Mr. Emanuel was a partner |
| 11:03:49 | 24 | at an agency called Endeavor; correct? |
| 11:03:52 | 25 | A.  Correct. |

**EXHIBIT S**
**495**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 59

| 11:03:52 | 1 | Q.   We're now talking 2002; right? |
| 11:03:54 | 2 | A.   Yes. |
| 11:03:55 | 3 | Q.   And you knew Mr. Toberoff had a law firm; |
| 11:03:59 | 4 | correct? |
| 11:04:00 | 5 | A.   Correct. |
| 11:04:00 | 6 | Q.   Did you know the name of his law firm? |
| 11:04:04 | 7 | A.   Law Offices of Marc Toberoff. |
| 11:04:07 | 8 | Q.   Okay.  You did not enter into an agreement |
| 11:04:09 | 9 | with The Law Offices of Marc Toberoff in 2002; is that |
| 11:04:15 | 10 | correct? |
| 11:04:15 | 11 | A.   Not that name, no. |
| 11:04:18 | 12 | Q.   There is no agreement between any member of |
| 11:04:22 | 13 | the Siegel family and The Law Offices of Marc Toberoff |
| 11:04:27 | 14 | in 2002; correct? |
| 11:04:28 | 15 | A.   Correct. |
| 11:04:29 | 16 | Q.   And there is no agreement between any member |
| 11:04:33 | 17 | of the Siegel family and the Endeavor talent agency in |
| 11:04:37 | 18 | 2002; correct? |
| 11:04:37 | 19 | A.   Correct. |
| 11:04:38 | 20 | Q.   The only agreement that you entered into for |
| 11:04:41 | 21 | the services of Mr. Emanuel and Mr. Toberoff was the |
| 11:04:45 | 22 | IP Worldwide agreement; is that right? |
| 11:04:46 | 23 | A.   Correct. |
| 11:04:58 | 24 | Q.   The 10 percent -- let me ask you this |
| 11:05:01 | 25 | question.  The record will reflect that that agreement |

## LAURA SIEGEL LARSON - 7/22/2011

Page 60

| | | |
|---|---|---|
| 11:05:04 | 1 | is dated as of October 3, 2002.  In fact, let me just |
| 11:05:12 | 2 | show you a copy of it. |
| 11:05:14 | 3 | A.   Okay. |
| 11:05:14 | 4 | Q.   It's been previously marked as Plaintiff's |
| 11:05:17 | 5 | Exhibit 45. |
| 11:05:18 | 6 | A.   Thank you. |
| | 7 | (Whereupon, Plaintiff's Exhibit 45 |
| 11:05:29 | 8 | was placed before the witness.) |
| 11:05:31 | 9 | BY MR. PETROCELLI: |
| 11:05:31 | 10 | Q.   And you'll see at the last page it bears |
| 11:05:32 | 11 | your -- |
| 11:05:33 | 12 | A.   It's a bad copy. |
| 11:05:34 | 13 | Q.   It's the best copy we have. |
| 11:05:36 | 14 | A.   Okay. |
| 11:05:36 | 15 | Q.   You'll see on the last page it bears your |
| 11:05:41 | 16 | signature? |
| 11:05:41 | 17 | A.   Yes. |
| 11:05:41 | 18 | Q.   And the signature of your mother, Joanne |
| 11:05:45 | 19 | Siegel? |
| 11:05:45 | 20 | A.   Yes. |
| 11:05:46 | 21 | Q.   And Mr. Toberoff? |
| 11:05:47 | 22 | A.   Yes. |
| 11:05:48 | 23 | Q.   And Mr. Emanuel. |
| 11:05:52 | 24 | A.   Yes. |
| 11:06:01 | 25 | Q.   You'll see that in paragraph 6 there's a |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 61

| | | |
|---|---|---|
| 11:06:06 | 1 | provision for a 10 percent payment to IP Worldwide, |
| 11:06:13 | 2 | based on any gross proceeds that they generate.  And |
| 11:06:18 | 3 | I'm simplifying it.  I don't want to read that whole |
| 11:06:22 | 4 | paragraph.  Do you see that? |
| 11:06:24 | 5 | A.  I'm reading it. |
| 11:06:54 | 6 | Okay.  I'm sorry.  Your question? |
| 11:06:57 | 7 | Q.  You see that paragraph 6 provides for the |
| 11:07:00 | 8 | compensation of 10 percent to IP Worldwide for the |
| 11:07:03 | 9 | rendition of their services? |
| 11:07:04 | 10 | A.  Yes. |
| 11:07:29 | 11 | Q.  Do you know if this agreement still exists? |
| 11:07:35 | 12 | A.  It does not. |
| 11:07:39 | 13 | Q.  When did it end? |
| 11:07:42 | 14 | A.  It expired, I believe, early 2005.  I believe |
| 11:07:52 | 15 | it was 2005. |
| 11:07:54 | 16 | Q.  And what about 2005 causes you to believe |
| 11:07:57 | 17 | that it expired? |
| 11:07:58 | 18 | A.  Well, because we had an end date for it. |
| 11:08:02 | 19 | Q.  Where is the end date indicated? |
| 11:08:04 | 20 | A.  It's not in this document. |
| 11:08:06 | 21 | Q.  Is it in another document? |
| 11:08:07 | 22 | A.  Yes, it is. |
| 11:08:09 | 23 | Q.  What's the other document? |
| 11:08:10 | 24 | A.  There was a -- we extended this for a limited |
| 11:08:17 | 25 | period of time, and there was an end date stated in |

EXHIBIT S
498

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 62

| | | |
|---|---|---|
| 11:08:21 | 1 | that document. |
| 11:08:25 | 2 | MR. PETROCELLI:  Bear with me. |
| 11:08:33 | 3 | This is a better copy. |
| 11:08:43 | 4 | Q.  Can you take a look at paragraph 10 of |
| 11:08:50 | 5 | Exhibit 45? |
| 11:08:50 | 6 | A.  Yes. |
| 11:08:51 | 7 | Q.  It states: |
| 11:08:52 | 8 | "The parties understand and |
| 11:08:56 | 9 | acknowledge that the scope of this |
| 11:08:57 | 10 | Agreement does not include legal |
| 11:09:00 | 11 | services and/or expenses in |
| 11:09:04 | 12 | connection with litigation or formal |
| 11:09:06 | 13 | legal arbitration, if any.  The |
| 11:09:09 | 14 | provision of such services and |
| 11:09:13 | 15 | advancing of such expenses, is |
| 11:09:15 | 16 | requested and desired by Owner" -- |
| 11:09:18 | 17 | excuse me -- "if requested and |
| 11:09:20 | 18 | desired by Owner, will be rendered |
| 11:09:22 | 19 | and provided by Marc Toberoff, Esq., |
| 11:09:27 | 20 | subject to good faith negotiation of |
| 11:09:30 | 21 | mutually acceptable" -- "of a |
| 11:09:32 | 22 | mutually acceptable agreement |
| 11:09:33 | 23 | executed by Mr. Toberoff and Owner," |
| 11:09:36 | 24 | end of quotes. |
| 11:09:38 | 25 | And you agreed to that provision when you |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 63

| 11:09:40 | 1 | signed Exhibit 45; correct? |
| 11:09:42 | 2 | A.    Yes, regarding litigation. |
| 11:09:44 | 3 | Q.    Right.  And it wasn't until I believe you |
| 11:09:51 | 4 | said 2004 that you entered into the litigation |
| 11:09:56 | 5 | agreement -- entered into a litigation agreement with |
| 11:09:59 | 6 | Mr. Toberoff; is that correct? |
| 11:10:00 | 7 | A.    Correct. |
| 11:10:07 | 8 | Q.    And between the signing of Exhibit 45 as of |
| 11:10:13 | 9 | October 3, 2002, and the signing of the litigation |
| 11:10:18 | 10 | agreement in 2004, you signed no agreements with |
| 11:10:22 | 11 | Mr. Toberoff for the rendition of litigation services; |
| 11:10:29 | 12 | correct? |
| 11:10:30 | 13 | A.    Not for litigation, correct.  I don't know if |
| 11:10:35 | 14 | I answered yes or no to that the way it's phrased. |
| 11:10:39 | 15 | That's why I'm trying to clarify. |
| 11:10:40 | 16 | Q.    Let me repeat it -- |
| 11:10:42 | 17 | A.    Okay. |
| 11:10:42 | 18 | Q.    -- because I think if you had said yes, we |
| 11:10:44 | 19 | would be in agreement with each other. |
| 11:10:47 | 20 | A.    Oh. |
| 11:10:48 | 21 | Q.    From the time that you signed Exhibit 45 as |
| 11:10:50 | 22 | of October 3, 2002, until the time that you signed the |
| 11:10:56 | 23 | litigation agreement with Mr. Toberoff in 2004, |
| 11:11:02 | 24 | neither you nor your mom signed an agreement with |
| 11:11:05 | 25 | Mr. Toberoff calling for him to render litigation |

EXHIBIT S
500

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 64

| | | |
|---|---|---|
| 11:11:08 | 1 | services; correct? |
| 11:11:09 | 2 | A.   Correct. |
| 11:11:24 | 3 | Q.   Do you recall having signed an amendment to |
| 11:11:29 | 4 | this Exhibit 45 extending the term till, I think you |
| 11:11:34 | 5 | said, 2005? |
| 11:11:35 | 6 | A.   Yes. |
| 11:11:38 | 7 | Q.   What can you tell me about that document?  I |
| 11:11:40 | 8 | don't believe we have it. |
| 11:11:43 | 9 | A.   It was very short, and I believe it just |
| 11:11:50 | 10 | referenced this document, and the only thing that was |
| 11:11:54 | 11 | different about it was it said that we were extending |
| 11:11:58 | 12 | the terms of this contract through a particular date. |
| 11:12:03 | 13 | MR. PETROCELLI:  Marc, have you produced |
| 11:12:04 | 14 | that?  I mean we may have overlooked it. |
| 11:12:09 | 15 | MR. TOBEROFF:  I can't say off the top of my |
| 11:12:10 | 16 | head.  We can -- |
| 11:12:11 | 17 | MR. PETROCELLI:  Can you please check? |
| 11:12:13 | 18 | MR. TOBEROFF: -- see if we have it.  We will |
| 11:12:16 | 19 | look for it and produce it. |
| 11:12:18 | 20 | MR. PETROCELLI:  Thank you. |
| 11:12:21 | 21 | Q.   Is it -- in two thousand -- |
| 11:12:27 | 22 | MR. TOBEROFF:  I should say if it exists and |
| 11:12:29 | 23 | we have it, we will produce it. |
| | 24 | BY MR. PETROCELLI: |
| 11:12:32 | 25 | Q.   Do you have a copy? |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON – 7/22/2011

Page 65

| | | |
|---|---|---|
| 11:12:34 | 1 | A.    I -- I don't know what I -- what I have. |
| 11:12:38 | 2 | Q.    Where do you -- where do you have your |
| 11:12:41 | 3 | documents related to this whole Superman saga? |
| 11:12:46 | 4 | A.    All over the place.  I'm not very organized. |
| 11:12:54 | 5 | Q.    There's a black cabinet that contained a lot |
| 11:12:56 | 6 | of these documents; right? |
| 11:13:00 | 7 | A.    No.  There was a black cabinet that my |
| 11:13:02 | 8 | ex-husband had that contained some of his things. |
| 11:13:06 | 9 | Q.    Was that a black cabinet that was in the home |
| 11:13:10 | 10 | that you shared with your husband before the two of |
| 11:13:12 | 11 | you separated? |
| 11:13:13 | 12 | A.    Yes, yes. |
| 11:13:13 | 13 | Q.    Okay.  And was that the same cabinet that you |
| 11:13:18 | 14 | shared your materials while you were married with |
| 11:13:21 | 15 | him related to this case? |
| 11:13:22 | 16 | A.    No.  That was strictly his. |
| 11:13:24 | 17 | Q.    What color was your cabinet? |
| 11:13:27 | 18 | A.    I don't have a cabinet.  No, it's -- you |
| 11:13:31 | 19 | know, I mean I have boxes. |
| 11:13:34 | 20 | Q.    What was the address where you lived with |
| 11:13:37 | 21 | your husband before your separation in 2000? |
| 11:13:41 | 22 | A.    The same address I have now. |
| 11:13:43 | 23 | Q.    Which is what? |
| 11:13:44 | 24 | A.    6400 Pacific Avenue, Playa del Rey, |
| 11:13:48 | 25 | California. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 66

| 11:13:48 | 1 | Q. And is there a space in your home where you |
| 11:13:54 | 2 | keep your papers related to this matter, "this matter" |
| 11:13:56 | 3 | being going back to the serving of the termination |
| 11:13:59 | 4 | notices to the present? |
| 11:14:00 | 5 | A. Well, I have -- I have them throughout the |
| 11:14:05 | 6 | place. There isn't one place. Throughout my |
| 11:14:10 | 7 | condominium. |
| 11:14:10 | 8 | Q. Is there a room where you have most of the |
| 11:14:14 | 9 | papers? |
| 11:14:15 | 10 | A. I wish I could say yes. The answer is no. |
| 11:14:17 | 11 | Q. Do you have filing cabinets where you keep |
| 11:14:21 | 12 | them? |
| 11:14:22 | 13 | A. No. |
| 11:14:22 | 14 | Q. Do you just put them on the floor in boxes? |
| 11:14:25 | 15 | A. They are in boxes. |
| 11:14:26 | 16 | Q. Okay. About how many boxes do you have? |
| 11:14:32 | 17 | A. Well, some are in boxes and some are in |
| 11:14:36 | 18 | furniture where I had to put them because I can't live |
| 11:14:38 | 19 | with that many boxes. |
| 11:14:39 | 20 | Q. What kind of furniture? |
| 11:14:40 | 21 | A. It's just a large -- I used to have records |
| 11:14:44 | 22 | in there, but now I have no space for the records |
| 11:14:47 | 23 | because I put papers in there. |
| 11:14:50 | 24 | Q. And -- |
| 11:14:51 | 25 | A. It's just a couple of shelves. |

EXHIBIT S
503

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 67

| | | |
|---|---|---|
| 11:14:52 | 1 | Q.   When your husband left the home, he took his |
| 11:14:55 | 2 | black cabinet with him? |
| 11:14:56 | 3 | A.   No, he did not. |
| 11:14:58 | 4 | Q.   He left it there, but he took the papers out |
| 11:15:00 | 5 | of it? |
| 11:15:00 | 6 | A.   Yes. |
| 11:15:04 | 7 | Q.   When Michael Siegel -- he's your stepbrother. |
| 11:15:07 | 8 | He was your stepbrother? |
| 11:15:09 | 9 | A.   Half brother. |
| 11:15:10 | 10 | Q.   Half brother.  Excuse me.  He died in what |
| 11:15:14 | 11 | year?  2006? |
| 11:15:16 | 12 | A.   Yes. |
| 11:15:17 | 13 | Q.   After his death, did you receive any papers |
| 11:15:23 | 14 | from him or his estate or related to Superman in any |
| 11:15:28 | 15 | way, any correspondence, any letters, anything like |
| 11:15:33 | 16 | that? |
| 11:15:33 | 17 | A.   I can't recall any after his death, no. |
| 11:15:37 | 18 | Q.   Who took possession of his papers, if you |
| 11:15:41 | 19 | know? |
| 11:15:42 | 20 | A.   Well, I hired somebody to go in and to help |
| 11:15:47 | 21 | me clear out the place. |
| 11:15:48 | 22 | Q.   Who was that? |
| 11:15:50 | 23 | A.   My cousin. |
| 11:15:51 | 24 | Q.   Who is your cousin? |
| 11:15:52 | 25 | A.   Michele Innenberg. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 68

| | | |
|---|---|---|
| 11:15:54 | 1 | Q.   Where does Michele live? |
| 11:15:56 | 2 | A.   In Cleveland. |
| 11:15:57 | 3 | Q.   How is she your cousin?  Through what |
| 11:15:59 | 4 | relationship? |
| 11:15:59 | 5 | A.   She -- like a second cousin.  She's the |
| 11:16:03 | 6 | daughter of one of my cousins. |
| 11:16:07 | 7 | Q.   What town does she live in? |
| 11:16:09 | 8 | A.   Cleveland. |
| 11:16:10 | 9 | Q.   Cleveland? |
| 11:16:11 | 10 | A.   Um-hum. |
| 11:16:11 | 11 | Q.   And was -- now, is she related to Michael? |
| 11:16:15 | 12 | A.   No.  She's related to me through my father's |
| 11:16:19 | 13 | side of the family. |
| 11:16:20 | 14 | Q.   Okay.  Did Michael -- well, that's the same |
| 11:16:24 | 15 | side that -- |
| 11:16:24 | 16 | A.   It has nothing -- it wasn't -- |
| 11:16:27 | 17 | Q.   Okay.  Michael's father was Jerome Siegel, |
| 11:16:34 | 18 | your father; right? |
| 11:16:35 | 19 | A.   Yes. |
| 11:16:35 | 20 | Q.   Okay.  Who was Michael's mother? |
| 11:16:39 | 21 | A.   Bella Siegel. |
| 11:16:40 | 22 | Q.   When did she -- is she alive? |
| 11:16:41 | 23 | A.   No. |
| 11:16:41 | 24 | Q.   When did she pass? |
| 11:16:47 | 25 | A.   Maybe about a year before Michael. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 69

| | | |
|---|---|---|
| 11:16:50 | 1 | Q. Okay. And did Michael have any other -- so |
| 11:16:57 | 2 | your dad was married to Bella before your dad married |
| 11:17:00 | 3 | Joanne? |
| 11:17:01 | 4 | A. Correct. |
| 11:17:01 | 5 | Q. Did they have any children other than |
| 11:17:06 | 6 | Michael? |
| 11:17:07 | 7 | A. There -- there was a child that died at |
| 11:17:10 | 8 | birth. |
| 11:17:10 | 9 | Q. Okay. And was Michael ever married? |
| 11:17:13 | 10 | A. No. He lived with his mother his whole life. |
| 11:17:19 | 11 | Q. How old was Michael when he died? |
| 11:17:21 | 12 | A. In his sixties. |
| 11:17:25 | 13 | Q. And he had had heart problems? |
| 11:17:27 | 14 | A. He had a lot of health problems. |
| 11:17:31 | 15 | Q. Did Michele know Michael? |
| 11:17:33 | 16 | A. No. I should actually clarify. Michele's |
| 11:17:45 | 17 | role was to help with furniture and to help clear out, |
| 11:17:52 | 18 | you know, certain -- certain things that I wanted. So |
| 11:17:58 | 19 | she boxed them up. |
| 11:18:01 | 20 | Q. Did -- what did you want? |
| 11:18:04 | 21 | A. Oh, there was a saxophone. There were |
| 11:18:08 | 22 | pictures of Michael as a kid, things like that. |
| 11:18:13 | 23 | Q. Did you receive from Michael after his death |
| 11:18:17 | 24 | through Michele or through anyone else any materials |
| 11:18:20 | 25 | of any kind related to Superman? |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 70

| | | |
|---|---|---|
| 11:18:23 | 1 | A.  He had some Superman books and pins and |
| 11:18:29 | 2 | things like that. |
| 11:18:30 | 3 | Q.  What about any papers, letters, things like |
| 11:18:35 | 4 | that? |
| 11:18:35 | 5 | A.  No, I don't recall any. |
| 11:18:37 | 6 | Q.  Letters to you, for example? |
| 11:18:39 | 7 | A.  I don't recall any. |
| 11:18:41 | 8 | Q.  Okay.  You and he corresponded from time to |
| 11:18:47 | 9 | time in writing about Superman; correct? |
| 11:18:49 | 10 | A.  Every so often. |
| 11:18:50 | 11 | Q.  And there were some letters, in fact, about |
| 11:18:53 | 12 | Mr. Toberoff; correct? |
| 11:18:56 | 13 | A.  He mentioned him.  It wasn't, you know, all |
| 11:18:59 | 14 | he would talk about. |
| 11:19:00 | 15 | Q.  No, I'm not saying that's all he would talk |
| 11:19:04 | 16 | about, but there was correspondence that you and he |
| 11:19:06 | 17 | exchanged, prior to his death, of course, about |
| 11:19:09 | 18 | Mr. Toberoff; correct? |
| 11:19:10 | 19 | A.  Yes. |
| 11:19:10 | 20 | Q.  Including his expressing his concern to you |
| 11:19:14 | 21 | about Mr. Toberoff; correct? |
| 11:19:16 | 22 | A.  Yes. |
| 11:19:17 | 23 | Q.  Have you reviewed any of that correspondence |
| 11:19:20 | 24 | recently? |
| 11:19:21 | 25 | A.  Not recently. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 71

| 11:19:22 | 1 | Q. | You met with Mr. Toberoff yesterday? |
| 11:19:25 | 2 | A. | Yes. |
| 11:19:26 | 3 | Q. | Who else was present? |
| 11:19:28 | 4 | A. | Just Mr. Toberoff. |
| 11:19:30 | 5 | Q. | At his office? |
| 11:19:30 | 6 | A. | Yes. |
| 11:19:31 | 7 | Q. | How long did you meet? |
| 11:19:33 | 8 | A. | A couple of hours, maybe two and a half. |

11:19:35    9    Q.    Prior to yesterday did you have any

11:19:38    10    discussions with him about the deposition other than

11:19:43    11    scheduling it?

11:19:43    12    A.    Just scheduling.

11:19:45    13    Q.    Did you review any documents, see any

11:19:48    14    documents, look at any documents yesterday?

11:19:52    15    A.    I looked at my former depositions.

11:19:55    16    (Whereupon, Ms. Seto entered the room.)

11:19:58    17    BY MR. PETROCELLI:

11:19:58    18    Q.    Besides your former depositions?

11:20:01    19    A.    No.

11:20:01    20    Q.    Okay.  Were you shown any letters, any

11:20:03    21    agreements, anything at all in your meeting yesterday?

11:20:10    22    A.    No.

11:20:13    23    Q.    Have you looked at any materials in the last

11:20:13    24    couple of weeks, except your deposition, related to

11:20:19    25    this case?

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 72

| | | |
|---|---|---|
| 11:20:23 | 1 | A.    I don't think so. |
| 11:20:31 | 2 | Q.    What happened to Michael's correspondence, to |
| 11:20:35 | 3 | your knowledge, after his death? |
| 11:20:38 | 4 | MR. TOBEROFF:  Vague and ambiguous. |
| | 5 | BY MR. PETROCELLI: |
| 11:20:39 | 6 | Q.    About Superman. |
| 11:20:42 | 7 | A.    Well -- |
| 11:20:44 | 8 | MR. TOBEROFF:  Still vague and ambiguous. |
| 11:20:45 | 9 | Lacks foundation. |
| 11:20:48 | 10 | THE WITNESS:  Some -- somewhere I have the |
| 11:20:50 | 11 | copies of the things that he sent to me. |
| | 12 | BY MR. PETROCELLI: |
| 11:20:54 | 13 | Q.    And that's somewhere in your home? |
| 11:20:57 | 14 | A.    I would -- yes. |
| 11:20:59 | 15 | Q.    Okay.  Where did your mom live before she |
| 11:21:10 | 16 | died? |
| 11:21:10 | 17 | A.    In Marina del Rey. |
| 11:21:11 | 18 | Q.    In a different place than you? |
| 11:21:13 | 19 | A.    Yes. |
| 11:21:14 | 20 | Q.    Did she live alone? |
| 11:21:15 | 21 | A.    Yes. |
| 11:21:16 | 22 | Q.    All the way into the very end? |
| 11:21:17 | 23 | A.    Yes. |
| 11:21:20 | 24 | Q.    What was the address, if you remember? |
| 11:21:24 | 25 | A.    13929 Marquesas Way in Marina Del Rey. |

**Merrill   Corporation   -   Los Angeles**

800-826-0277                                    www.merillcorp.com/law

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 73

| | | |
|---|---|---|
| 11:21:30 | 1 | Q. Was she renting? |
| 11:21:31 | 2 | A. Yes. |
| 11:21:32 | 3 | Q. And so now someone else has that place? |
| 11:21:35 | 4 | A. Yes. |
| 11:21:35 | 5 | Q. Okay. And did you help clean it out after |
| 11:21:39 | 6 | she passed? |
| 11:21:40 | 7 | A. Yes. |
| 11:21:46 | 8 | MR. PETROCELLI: I was told I'm a little bit |
| 11:21:49 | 9 | too close to the camera, so it was picking up my hand. |
| 11:21:52 | 10 | I have now moved away. Thank you for letting me know. |
| 11:21:58 | 11 | Q. Your mother kept papers in her home related |
| 11:22:02 | 12 | to Superman? |
| 11:22:03 | 13 | A. Yes. |
| 11:22:05 | 14 | Q. Including letters and agreements and |
| 11:22:10 | 15 | memorabilia, all sorts of things? |
| 11:22:11 | 16 | A. That's right. |
| 11:22:12 | 17 | Q. And did she also have them all over the |
| 11:22:16 | 18 | place, to use your expression? |
| 11:22:18 | 19 | A. Yes. |
| 11:22:18 | 20 | Q. She did not have like an office or a filing |
| 11:22:22 | 21 | cabinet where she kept the materials? |
| 11:22:24 | 22 | A. She didn't keep an office. |
| 11:22:28 | 23 | Q. Okay. Now, did your mother have a typewriter |
| 11:22:32 | 24 | or computer in her home? |
| 11:22:34 | 25 | A. She didn't -- no. She had a computer, but |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 74

| | | |
|---|---|---|
| 11:22:36 | 1 | she never figured out how to use it. |
| 11:22:39 | 2 | Q. And she didn't have a typewriter; right? |
| 11:22:42 | 3 | A. She gave up using that years ago. |
| 11:22:45 | 4 | Q. Now, you have a computer in your home? |
| 11:22:48 | 5 | A. Yes. |
| 11:22:49 | 6 | Q. And what kind of computer do you have? |
| 11:22:51 | 7 | A. I have a laptop. |
| 11:22:57 | 8 | Q. What -- how long have you had it? |
| 11:23:04 | 9 | A. I think two years. |
| 11:23:05 | 10 | Q. And before the laptop, what did you have? |
| 11:23:09 | 11 | A. I had a PC that died. |
| 11:23:12 | 12 | Q. How long did you have the PC? |
| 11:23:15 | 13 | A. Several years. |
| 11:23:18 | 14 | Q. Would -- let's say starting in 2000 -- 2000, |
| 11:23:26 | 15 | what equipment did you have in your home that you |
| 11:23:30 | 16 | would use to type or create letters or other |
| 11:23:36 | 17 | documents? |
| 11:23:36 | 18 | A. A computer. |
| 11:23:37 | 19 | Q. Okay. You're a former journalist; right? |
| 11:23:40 | 20 | A. Yes. |
| 11:23:40 | 21 | Q. You retired in the mid eighties? |
| 11:23:43 | 22 | A. No, 1994. |
| 11:23:44 | 23 | Q. 1994. And you were a broadcast journalist? |
| 11:23:48 | 24 | A. Yes. |
| 11:23:49 | 25 | Q. For CNN and some other organizations? |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 75

| 11:23:51 | 1 | A.    CNN, CBS, KCAL. |
| 11:23:55 | 2 | Q.    On camera? |
| 11:23:56 | 3 | A.    On camera and also as an executive producer |
| 11:24:00 | 4 | and producer and writer. |
| 11:24:02 | 5 | Q.    Was it a network program, or was it a local |
| 11:24:05 | 6 | program? |
| 11:24:05 | 7 | A.    Some of my things were carried on the |
| 11:24:08 | 8 | network.  Of course on CNN it was carried on the |
| 11:24:11 | 9 | network. |
| 11:24:11 | 10 | Q.    Right. |
| 11:24:13 | 11 | A.    And some of my CBS programming was carried on |
| 11:24:19 | 12 | ESPN, and also they would pick up things sometimes on |
| 11:24:22 | 13 | the CBS network. |
| 11:24:24 | 14 | Q.    And you wrote a lot of your own scripts and |
| 11:24:27 | 15 | stories? |
| 11:24:27 | 16 | A.    Oh, yes. |
| 11:24:36 | 17 | Q.    So let's go back to the equipment in your |
| 11:24:42 | 18 | place. |
| 11:24:42 | 19 |       First of all, you have had no office outside |
| 11:24:44 | 20 | of your home since the year 2000 to the present? |
| 11:24:47 | 21 | A.    No. |
| 11:24:48 | 22 | Q.    So the only place that you would create |
| 11:24:52 | 23 | documents like letters would be in your house? |
| 11:24:55 | 24 | A.    Correct. |
| 11:24:56 | 25 | Q.    Did you ever create any documents or letters |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 76

| | | |
|---|---|---|
| 11:24:59 | 1 | related to Superman in your mother's home? |
| 11:25:05 | 2 | A.    No. |
| 11:25:05 | 3 | Q.    Okay.  And to your knowledge, your mother |
| 11:25:11 | 4 | never typed out or caused to be printed on a computer |
| 11:25:16 | 5 | a letter or a document related to Superman; correct? |
| 11:25:20 | 6 | A.    Well, she wrote tons of things longhand, and |
| 11:25:26 | 7 | there were times when she would type a few things up |
| 11:25:31 | 8 | on her old typewriter until that, you know, wasn't |
| 11:25:35 | 9 | working any longer. |
| 11:25:35 | 10 | Q.    That would be before year 2000; right? |
| 11:25:38 | 11 | A.    You know, I don't know whether it was before |
| 11:25:40 | 12 | or after 2000. |
| 11:25:42 | 13 | Q.    That she would work on a typewriter? |
| 11:25:44 | 14 | A.    Yes.  I don't know for sure. |
| 11:25:48 | 15 | Q.    Did you retrieve the typewriter when she |
| 11:25:50 | 16 | passed away? |
| 11:25:51 | 17 | A.    Yes. |
| 11:25:51 | 18 | Q.    You still have it? |
| 11:25:52 | 19 | A.    Yes. |
| 11:25:52 | 20 | Q.    Where is it? |
| 11:25:54 | 21 | A.    I put it with her other furniture that I |
| 11:25:58 | 22 | currently have just put in storage until I figure out |
| 11:26:02 | 23 | what to do with it. |
| 11:26:03 | 24 | Q.    What's the storage facility? |
| 11:26:05 | 25 | A.    It's called Public Storage. |

**EXHIBIT S**
**513**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 77

| | | |
|---|---|---|
| 11:26:07 | 1 | Q.   The one -- is there one in Marina nearby? |
| 11:26:11 | 2 | A.   Yes. |
| 11:26:12 | 3 | Q.   The Superman papers and materials that you |
| 11:26:15 | 4 | collected from your mother's home -- |
| 11:26:17 | 5 | A.   Um-hum. |
| 11:26:18 | 6 | Q.   -- did you put those in Public Storage? |
| 11:26:21 | 7 | A.   Well, I brought a lot of them home.  I'm |
| 11:26:26 | 8 | currently trying to go through things.  So at the |
| 11:26:30 | 9 | moment my place is almost unlivable because I have, |
| 11:26:33 | 10 | you know, my stuff and her stuff, and, you know, it's |
| 11:26:40 | 11 | unbelievable. |
| 11:26:40 | 12 | Q.   And again, I'm only focused on Superman |
| 11:26:46 | 13 | materials.  But between your Superman papers, files, |
| 11:26:50 | 14 | and materials and your mother's -- |
| 11:26:52 | 15 | A.   Yes. |
| 11:26:52 | 16 | Q.   -- can you somehow in your own way |
| 11:26:55 | 17 | approximate the volume?  Let's say boxes.  If you put |
| 11:27:00 | 18 | it all in the bankers boxes, how many boxes would |
| 11:27:02 | 19 | there be?  Ten boxes? |
| 11:27:06 | 20 | A.   I couldn't guess at that because there were a |
| 11:27:08 | 21 | lot of things that -- there are many different things |
| 11:27:12 | 22 | in any one given box, these things that I haven't gone |
| 11:27:16 | 23 | through yet.  So there could be a box that has one |
| 11:27:19 | 24 | paper relating to Superman or there could be many |
| 11:27:28 | 25 | papers. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 78

| | | |
|---|---|---|
| 11:27:28 | 1 | Q.  Like, for example, the letters that you |
| 11:27:31 | 2 | exchanged with Michael Siegel that you said are in |
| 11:27:34 | 3 | your home, where in your home are those letters? |
| 11:27:37 | 4 | MR. TOBEROFF:  Lacks foundation. |
| 11:27:40 | 5 | THE WITNESS:  Well, anything that I had, you |
| 11:27:44 | 6 | know, is also mixed in with papers.  I mean I have -- |
| 11:27:51 | 7 | I have various boxes that relate to the case.  I have |
| 11:27:56 | 8 | other boxes that relate to my divorce.  I've got a lot |
| 11:28:01 | 9 | of different things. |
| | 10 | BY MR. PETROCELLI: |
| 11:28:02 | 11 | Q.  Have you -- since this lawsuit was filed in |
| 11:28:05 | 12 | May, 2010, have you gone and searched for and given to |
| 11:28:13 | 13 | someone else your Michael Siegel correspondence? |
| 11:28:20 | 14 | A.  Well, whenever I find anything that I think |
| 11:28:24 | 15 | relates to the case, I turn it over to Mr. Toberoff. |
| 11:28:28 | 16 | Q.  Since May, 2010, have you turned over to |
| 11:28:31 | 17 | Mr. Toberoff any of your correspondence with Michael |
| 11:28:36 | 18 | Siegel that was in your home? |
| 11:28:39 | 19 | A.  Probably. |
| 11:28:40 | 20 | Q.  Okay. |
| 11:28:42 | 21 | A.  Oh, excuse me.  May I say something about |
| 11:28:46 | 22 | 2010? |
| 11:28:47 | 23 | Q.  You may. |
| 11:28:49 | 24 | A.  I believe that you -- I believe that you |
| 11:28:52 | 25 | asked me earlier about documents from 2010, around |

**EXHIBIT S**
**515**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 79

| | | |
|---|---|---|
| 11:29:00 | 1 | that time.  We were talking about different agreements |
| 11:29:03 | 2 | and we were talking about in connection with when this |
| 11:29:08 | 3 | lawsuit had been filed. |
| 11:29:09 | 4 | Q.    Proceed. |
| 11:29:10 | 5 | A.    Okay.  I believe that I misstated something. |
| 11:29:16 | 6 | I -- after this lawsuit was filed, Mr. Toberoff did |
| 11:29:20 | 7 | send me another -- what was it called? -- conflict, |
| 11:29:29 | 8 | another, you know, delineating, you know, potential |
| 11:29:33 | 9 | conflicts, a document regarding conflicts, and I |
| 11:29:36 | 10 | don't -- I don't believe I mentioned that earlier. |
| 11:29:38 | 11 | You were asking me different ones for different dates. |
| 11:29:41 | 12 | Q.    And your recollection about that was prompted |
| 11:29:43 | 13 | as a result of Mr. Toberoff mentioning it to you |
| 11:29:45 | 14 | during a break? |
| 11:29:46 | 15 | A.    Well, I went to the bathroom.  It was cooler. |
| 11:29:49 | 16 | I was -- |
| 11:29:50 | 17 | MR. TOBEROFF:  You can -- you can -- you |
| 11:29:55 | 18 | can -- you can answer that you recalled that during |
| 11:29:58 | 19 | the break. |
| 11:30:00 | 20 | THE WITNESS:  Yeah, I recalled it during the |
| 11:30:03 | 21 | break. |
| | 22 | BY MR. PETROCELLI: |
| 11:30:04 | 23 | Q.    And as a result of talking to Mr. Toberoff? |
| 11:30:06 | 24 | MR. TOBEROFF:  Well, you can't -- you can't |
| 11:30:09 | 25 | talk about your conversations with me. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 80

| 11:30:10 | 1 | BY MR. PETROCELLI: |
| 11:30:10 | 2 | Q.   Did you talk to Mr. Toberoff about anything |
| 11:30:12 | 3 | during the break? |
| 11:30:14 | 4 | MR. TOBEROFF:   You can answer that. |
| | 5 | BY MR. PETROCELLI: |
| 11:30:15 | 6 | Q.   Yes or no? |
| 11:30:16 | 7 | A.   Yes. |
| 11:30:19 | 8 | Q.   Okay.  And you remembered this new document |
| 11:30:25 | 9 | that I will now ask you about after talking to |
| 11:30:28 | 10 | Mr. Toberoff during the break. |
| 11:30:33 | 11 | A.   Yes. |
| 11:30:34 | 12 | Q.   Okay. |
| 11:30:34 | 13 | A.   While I was in the restroom. |
| 11:30:38 | 14 | Q.   Well, so tell me more about this document. |
| 11:30:42 | 15 | What is it and -- |
| 11:30:45 | 16 | A.   No, I just remember that -- that he wanted to |
| 11:30:51 | 17 | make sure that -- |
| 11:30:53 | 18 | MR. TOBEROFF:   Don't -- don't talk about the |
| 11:30:55 | 19 | contents of the document.  You can talk about whether |
| 11:30:57 | 20 | or not you signed it. |
| 11:30:59 | 21 | THE WITNESS:   Right. |
| 11:31:00 | 22 | MR. TOBEROFF:   Another conflict waiver. |
| 11:31:01 | 23 | THE WITNESS:   Right.  He wanted to make sure |
| 11:31:03 | 24 | that I signed, you know, this document that he felt |
| 11:31:08 | 25 | was warranted. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 81

| 11:31:10 | 1 | BY MR. PETROCELLI: |
| 11:31:10 | 2 | Q. What was the subject matter of the document? |
| 11:31:15 | 3 | A. As I said, it was a conflict disclosure. |
| 11:31:18 | 4 | Q. Did it relate to this new case that DC filed? |
| 11:31:22 | 5 | A. It was as a result of this case. |
| 11:31:25 | 6 | Q. Did anybody else sign it besides you and -- I |
| 11:31:30 | 7 | presume Mr. Toberoff signed it? |
| 11:31:31 | 8 | A. I believe my mother signed it. |
| 11:31:33 | 9 | Q. Anyone else? |
| 11:31:34 | 10 | A. I don't think so. |
| 11:31:35 | 11 | Q. Did anybody review it on your behalf? |
| 11:31:40 | 12 | A. I'm sure George did, George Zadrozny. |
| 11:31:48 | 13 | Q. You remember that he did? |
| 11:31:49 | 14 | A. I believe that he did. |
| 11:31:51 | 15 | Q. Did you send it to him before signing it? |
| 11:31:55 | 16 | A. I believe so. |
| 11:31:56 | 17 | Q. How do you send things to George? |
| 11:32:00 | 18 | A. Well, sometimes by mail. |
| 11:32:03 | 19 | Q. In 2010 how did you send this document to |
| 11:32:07 | 20 | George? |
| 11:32:07 | 21 | A. If it was sent to me in electronic form, |
| 11:32:12 | 22 | then -- |
| 11:32:13 | 23 | Q. E-mailed? |
| 11:32:14 | 24 | A. -- then I could e-mail him. I don't recall |
| 11:32:16 | 25 | whether this one was sent to me or, you know -- |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 82

| | | |
|---|---|---|
| 11:32:19 | 1 | Q.   You would forward the e-mail. |
| 11:32:21 | 2 | A.   A copy, right.  If I get something that's |
| 11:32:25 | 3 | papers, then I can fax it, but, you know -- |
| 11:32:27 | 4 | Q.   What is your e-mail address? |
| 11:32:29 | 5 | A.   Mistylight3@cs.com. |
| 11:32:33 | 6 | Q.   What is George's e-mail address? |
| 11:32:35 | 7 | MR. TOBEROFF:  I would just like to say in |
| 11:32:36 | 8 | terms of her home address and her e-mail address, I |
| 11:32:39 | 9 | want to keep that private on the record -- |
| 11:32:42 | 10 | MR. PETROCELLI:  That's fine. |
| 11:32:43 | 11 | MR. TOBEROFF:  -- to disclose documents, |
| 11:32:44 | 12 | because there's so many -- so much commentary and fans |
| 11:32:48 | 13 | that are interested in this Superman case. |
| 11:32:50 | 14 | MR. PETROCELLI:  We have no interest at all |
| 11:32:53 | 15 | in publicizing it.  We may use it for purposes of the |
| 11:32:58 | 16 | lawsuit, but -- |
| 11:32:58 | 17 | MR. TOBEROFF:  But when it's used for |
| 11:32:58 | 18 | purposes of the lawsuit, I don't want her address and |
| 11:33:00 | 19 | her personal e-mail to be disclosed.  I want it to |
| 11:33:05 | 20 | be -- |
| 11:33:05 | 21 | MR. PETROCELLI:  Well, I want to work with |
| 11:33:06 | 22 | you on that because we have no interest in causing any |
| 11:33:10 | 23 | unwarranted invasion of her privacy, but the details |
| 11:33:13 | 24 | of that we will have to work out.  Okay?  Because I |
| 11:33:15 | 25 | don't know exactly what that means.  We're not going |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 83

| | | |
|---|---|---|
| 11:33:17 | 1 | to negotiation a protective order right now on the |
| 11:33:20 | 2 | record. |
| 11:33:20 | 3 | MR. TOBEROFF:  No.  What I'm saying is we've |
| 11:33:21 | 4 | talked at times about having a protective order in |
| 11:33:23 | 5 | this case. |
| 11:33:23 | 6 | MR. PETROCELLI:  Okay. |
| 11:33:24 | 7 | MR. TOBEROFF:  And I'm sure your client is |
| 11:33:25 | 8 | going to want a protective order when it comes to |
| 11:33:30 | 9 | discovery of its materials, and that day is coming, |
| 11:33:32 | 10 | that we -- this information should be subject to that |
| 11:33:37 | 11 | protective order. |
| 11:33:38 | 12 | MR. PETROCELLI:  I understand you would like |
| 11:33:39 | 13 | to designate this as confidential.  Okay. |
| 11:33:42 | 14 | Q.   What is George's e-mail address? |
| 11:33:44 | 15 | A.   I don't have it off the top of my head. |
| 11:33:47 | 16 | Q.   Did your mother have an e-mail address? |
| 11:33:57 | 17 | A.   No. |
| 11:33:57 | 18 | Q.   So before you remembered this document, we |
| 11:34:00 | 19 | were talking about documents in general, and I want to |
| 11:34:04 | 20 | go back to that.  Okay? |
| 11:34:05 | 21 | A.   Okay. |
| 11:34:08 | 22 | Q.   You said you -- when you gave Mr. Toberoff |
| 11:34:18 | 23 | documents related to this case -- |
| 11:34:19 | 24 | A.   Yes. |
| 11:34:22 | 25 | Q.   -- did you keep copies for yourself? |

**EXHIBIT S**
**520**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 84

| | | |
|---|---|---|
| 11:34:29 | 1 | A. No. When I gave them to him, I gave them to |
| 11:34:32 | 2 | him. |
| 11:34:33 | 3 | Q. When your mom passed and you took some -- you |
| 11:34:35 | 4 | took all of her files and papers, did you turn any of |
| 11:34:38 | 5 | that material over to Mr. Toberoff? |
| 11:34:42 | 6 | A. Yes. I found something that I -- |
| 11:34:45 | 7 | Q. What did you find? |
| 11:34:46 | 8 | A. I found a file that she had about a lawyer |
| 11:34:50 | 9 | that we had been talking about potentially hiring. |
| 11:34:53 | 10 | Q. Is that Gerry Spence? |
| 11:34:55 | 11 | A. Gerry Spence, yes. |
| 11:34:58 | 12 | Q. And you just turned that over to him when? |
| 11:35:01 | 13 | A. Just a couple of days ago. |
| 11:35:03 | 14 | Q. Okay. So what caused you a couple of days |
| 11:35:06 | 15 | ago to come across that file? Were you looking for |
| 11:35:09 | 16 | materials related to this case? |
| 11:35:11 | 17 | A. No. I was going -- going through a box of |
| 11:35:14 | 18 | her papers, and it happened to be in there. |
| 11:35:17 | 19 | Q. Has anyone other than you -- since the filing |
| 11:35:22 | 20 | of this lawsuit in May, 2010, has anyone other than |
| 11:35:26 | 21 | you searched the papers in your home related to this |
| 11:35:32 | 22 | case? |
| 11:35:32 | 23 | MR. TOBEROFF: At her home? |
| 11:35:33 | 24 | MR. PETROCELLI: Yes. |
| 11:35:36 | 25 | THE WITNESS: No. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

### LAURA SIEGEL LARSON - 7/22/2011

Page 85

| | | |
|---|---|---|
| 11:35:36 | 1 | BY MR. PETROCELLI: |
| 11:35:37 | 2 | Q.    For example, did Mr. Toberoff come to your |
| 11:35:40 | 3 | house and search through your files or a member of his |
| 11:35:43 | 4 | law firm? |
| 11:35:44 | 5 | A.    No. |
| 11:35:47 | 6 | Q.    Okay.  Since the filing of this case, have |
| 11:35:57 | 7 | you provided Mr. Toberoff with any materials other |
| 11:36:02 | 8 | than that Gerry Spence file you just found? |
| 11:36:08 | 9 | A.    Yes. |
| 11:36:08 | 10 | Q.    What did you give? |
| 11:36:13 | 11 | A.    Papers relating to my divorce. |
| 11:36:18 | 12 | Q.    When was that? |
| 11:36:21 | 13 | A.    There was a document request from, I believe, |
| 11:36:25 | 14 | your office, and in response to that, I produce those. |
| 11:36:30 | 15 | Q.    Anything other than the divorce file -- |
| 11:36:34 | 16 | that's from your former husband, Dennis Larson; |
| 11:36:37 | 17 | correct? |
| 11:36:38 | 18 | A.    Yes. |
| 11:36:38 | 19 | Q.    And the Gerry Spence file.  Anything else |
| 11:36:43 | 20 | since the filing of this lawsuit that you gave to |
| 11:36:43 | 21 | Mr. Toberoff from your home? |
| 11:36:43 | 22 | A.    Since the filing of this lawsuit.  I don't |
| 11:36:47 | 23 | recall anything specific. |
| 11:36:52 | 24 | Q.    Okay.  Now, why -- how was it that you came |
| 11:36:59 | 25 | across the Gerry Spence file a couple of days ago? |

**EXHIBIT S**
**522**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 86

| | | |
|---|---|---|
| 11:37:01 | 1 | MR. TOBEROFF:  Asked and answered. |
| 11:37:02 | 2 | You can answer. |
| | 3 | BY MR. PETROCELLI: |
| 11:37:03 | 4 | Q.   You were looking -- |
| 11:37:04 | 5 | A.   I was -- I wasn't looking for it, but I was |
| 11:37:06 | 6 | going through, you know, one of the boxes of my mom's |
| 11:37:10 | 7 | papers, and it was in there. |
| 11:37:11 | 8 | Q.   Okay.  Have you provided any papers in your |
| 11:37:17 | 9 | home since the filing of this lawsuit to anyone other |
| 11:37:21 | 10 | than Mr. Toberoff? |
| 11:37:24 | 11 | A.   No. |
| 11:37:24 | 12 | Q.   Has any other lawyer seen any materials in |
| 11:37:28 | 13 | your home or have you given them any materials? |
| 11:37:38 | 14 | A.   No. |
| 11:37:38 | 15 | Q.   When you collected the papers from your |
| 11:37:42 | 16 | mother's place, how did you collect them?  You just |
| 11:37:44 | 17 | put them in a box or a couple of boxes? |
| 11:37:46 | 18 | A.   Well, she had a lot of boxes already, and she |
| 11:37:51 | 19 | had -- you know, there were bags.  There were boxes. |
| 11:37:54 | 20 | There were a lot of -- a lot of different things that |
| 11:37:58 | 21 | were already, you know -- what can I call them?  They |
| 11:38:04 | 22 | were in containers of one sort or another. |
| 11:38:06 | 23 | Q.   Paper containers? |
| 11:38:08 | 24 | A.   Well, when I say container -- |
| 11:38:10 | 25 | Q.   What kind of -- cardboard containers? |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 87

| | | |
|---|---|---|
| 11:38:11 | 1 | A.   No, no.   I'm using the term generically for |
| 11:38:14 | 2 | both bags and boxes. |
| 11:38:15 | 3 | Q.   I see.   Like those big trash bags? |
| 11:38:18 | 4 | A.   No.   Oftentimes they were like Ralphs bags. |
| 11:38:23 | 5 | Q.   Okay. |
| 11:38:24 | 6 | A.   Things like that, you know, so I -- you know, |
| 11:38:27 | 7 | in the interest of time I couldn't go through |
| 11:38:31 | 8 | everything.   So, you know, I packed those things, you |
| 11:38:34 | 9 | know, into my car, took them to the place where I |
| 11:38:39 | 10 | live, and then there were other things that I had a |
| 11:38:43 | 11 | professional mover when he moved the furniture also |
| 11:38:46 | 12 | moved some additional boxes for me because it was just |
| 11:38:49 | 13 | too much stuff for me to transport. |
| 11:38:51 | 14 | Q.   I was going to ask you that.   Who helped you |
| 11:38:53 | 15 | move these containers of papers and Superman-related |
| 11:38:57 | 16 | materials from your mother's home to your home? |
| 11:39:03 | 17 | A.   Well, my sons helped me, and it was just my |
| 11:39:04 | 18 | sons and me and then professional movers. |
| 11:39:08 | 19 | Q.   What was the moving company you used? |
| 11:39:12 | 20 | A.   Starving Students. |
| 11:39:15 | 21 | Q.   How old are your children? |
| 11:39:18 | 22 | A.   20 and 23 years old. |
| 11:39:21 | 23 | Q.   The 20-year-old is whom? |
| 11:39:22 | 24 | A.   Michael -- no, no.   James.   James is 20. |
| 11:39:25 | 25 | Q.   And Michael is how old? |

EXHIBIT S
524

3baac749-5ca5-4935-b47c-c3b46o0b4ffc

## LAURA SIEGEL LARSON – 7/22/2011

Page 88

| | | |
|---|---|---|
| 11:39:27 | 1 | A. 23. |
| 11:39:28 | 2 | Q. Do they live with you? |
| 11:39:30 | 3 | A. Some of the time, not really anymore. |
| 11:39:36 | 4 | Q. Okay. Now, with respect to the typing or |
| 11:39:41 | 5 | computer equipment in your home since 2000, and you |
| 11:39:45 | 6 | said you did take possession of your mother's |
| 11:39:48 | 7 | typewriter, and remind me. Did she or did she not |
| 11:39:52 | 8 | have an old computer there as well? |
| 11:39:53 | 9 | A. She had a laptop that my sons tried to teach |
| 11:39:57 | 10 | her how to use, but it was unused. |
| 11:40:00 | 11 | Q. Where is that laptop now? |
| 11:40:01 | 12 | A. I have it. |
| 11:40:03 | 13 | Q. In your home? |
| 11:40:04 | 14 | A. Yes. |
| 11:40:05 | 15 | Q. Okay. And with respect to the computer |
| 11:40:08 | 16 | equipment going back to 2000 that you used -- |
| 11:40:11 | 17 | A. Um-hum. |
| 11:40:12 | 18 | Q. -- why don't you just bring me up to date on |
| 11:40:16 | 19 | that. What did you use going back to 2000 to today? |
| 11:40:19 | 20 | A. Well, I had -- you know, I had a PC, as I |
| 11:40:23 | 21 | explained before. |
| 11:40:24 | 22 | Q. What kind of PC? Do you remember? |
| 11:40:28 | 23 | A. It was a Hewlett Packard or something. |
| 11:40:30 | 24 | Q. Do you have a printer in your home? |
| 11:40:32 | 25 | A. Yes. I've had -- you know, they die, you |

EXHIBIT S
525

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 89

| | | |
|---|---|---|
| 11:40:36 | 1 | know, periodically, you know, so I had printers that I |
| 11:40:42 | 2 | had to throw away and replace, and I currently have an |
| 11:40:46 | 3 | all in one. It's an all in one. You know, it's both |
| 11:40:49 | 4 | a fax machine and a -- |
| 11:40:50 | 5 | Q. Right. |
| 11:40:51 | 6 | A. -- printer. |
| 11:40:51 | 7 | Q. What's the name of the laptop that you now |
| 11:40:54 | 8 | use? What's the model? |
| 11:40:55 | 9 | A. Toshiba. |
| 11:40:57 | 10 | Q. Are you a pretty good typist? |
| 11:41:00 | 11 | A. I'm okay. |
| 11:41:02 | 12 | Q. And you typed letters for your mother related |
| 11:41:06 | 13 | to this case? |
| 11:41:07 | 14 | A. Yes. |
| 11:41:17 | 15 | Q. Okay. |
| 11:41:31 | 16 | What were the reasons why you decided not to |
| 11:41:38 | 17 | extend your business arrangement with IP Worldwide |
| 11:41:42 | 18 | calling for the payment of a 10 percent commission? |
| 11:41:46 | 19 | A. It became unnecessary because we were |
| 11:41:48 | 20 | entering into litigation. |
| 11:41:52 | 21 | Q. And that was about the late 2004 and early |
| 11:41:55 | 22 | 2005 time period? |
| 11:41:57 | 23 | A. Yes. |
| 11:42:04 | 24 | Q. Any -- is it your understanding, then, |
| 11:42:06 | 25 | that -- well, before I go there, prior to the time |

EXHIBIT S
526

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 90

| | | |
|---|---|---|
| 11:42:11 | 1 | that you decided not to extend the IP Worldwide |
| 11:42:16 | 2 | business arrangement, was the commission still 10 |
| 11:42:23 | 3 | percent, or had that number been modified in some way? |
| 11:42:28 | 4 | A.    You mean just this document itself, or are |
| 11:42:33 | 5 | you talking about services?  I -- |
| 11:42:35 | 6 | Q.    I'm not sure why you're asking me those |
| 11:42:38 | 7 | questions, so -- |
| 11:42:40 | 8 | A.    I'm not understanding your question. |
| 11:42:41 | 9 | Q.    Well, in paragraph 6 of this agreement -- |
| 11:42:43 | 10 | A.    Yes. |
| 11:42:44 | 11 | Q.    -- Exhibit 45, there's a 10 percent |
| 11:42:45 | 12 | commission. |
| 11:42:46 | 13 | A.    Yes. |
| 11:42:47 | 14 | Q.    When this agreement was no longer in effect |
| 11:42:52 | 15 | sometime in early 2005, as you said -- |
| 11:42:55 | 16 | A.    Yes. |
| 11:42:56 | 17 | Q.    -- was the commission still 10 percent at |
| 11:42:59 | 18 | that moment in time? |
| 11:43:02 | 19 | A.    No. |
| 11:43:02 | 20 | Q.    What was it? |
| 11:43:05 | 21 | A.    It -- once the -- once the litigation |
| 11:43:08 | 22 | agreement went into effect, it was reduced because |
| 11:43:12 | 23 | Mr. Toberoff was not going to receive any -- any |
| 11:43:19 | 24 | percentage under the IP Worldwide. |
| 11:43:22 | 25 | Q.    And it was reduced -- |

**EXHIBIT S**
**527**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 91

| 11:43:24 | 1 | A.    So it was reduced to 5 percent for |
| 11:43:29 | 2 | Mr. Emanuel only. |
| 11:43:29 | 3 | Q.    I see.  So that any money that Mr. Toberoff |
| 11:43:32 | 4 | would get he would get pursuant to the litigation |
| 11:43:34 | 5 | agreement which had shortly before been executed. |
| 11:43:38 | 6 | A.    Correct. |
| 11:43:39 | 7 | Q.    Okay.  And so for a period of time, then, you |
| 11:43:45 | 8 | had in effect a litigation agreement with Mr. Toberoff |
| 11:43:50 | 9 | calling for a particular percentage, and then you had |
| 11:43:54 | 10 | an IP Worldwide agreement that the commission of which |
| 11:43:58 | 11 | in paragraph 6 was reduced from 6 -- from 10 to 5 |
| 11:44:02 | 12 | percent; correct? |
| 11:44:03 | 13 | A.    Correct. |
| 11:44:03 | 14 | Q.    Okay.  Now, was there a document that |
| 11:44:06 | 15 | reflected the reduction of the commission from 10 |
| 11:44:10 | 16 | percent to 5 percent for IP Worldwide? |
| 11:44:15 | 17 | A.    It was -- it was reflected in the litigation |
| 11:44:22 | 18 | agreement. |
| 11:44:23 | 19 | Q.    So the litigation agreement contains a |
| 11:44:26 | 20 | reference that the IP Worldwide commission is dropping |
| 11:44:29 | 21 | from 10 to 5. |
| 11:44:32 | 22 | A.    I can't remember the exact details. |
| 11:44:36 | 23 | Q.    Okay.  You indicated that there was a |
| 11:44:38 | 24 | document that you recall having signed that extended |
| 11:44:41 | 25 | the IP Worldwide agreement.  Do you remember that |

EXHIBIT S
528

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 92

| | | |
|---|---|---|
| 11:44:44 | 1 | testimony? |
| 11:44:44 | 2 | A.   Yes. |
| 11:44:45 | 3 | Q.   Was there one extension that you signed or |
| 11:44:48 | 4 | more than one? |
| 11:44:53 | 5 | A.   There may have been more than one. |
| 11:44:55 | 6 | Q.   And did any of those extensions that you |
| 11:44:58 | 7 | signed also address the reduction of the commission |
| 11:45:00 | 8 | from 10 to 5? |
| 11:45:07 | 9 | A.   No. |
| 11:45:07 | 10 | Q.   Now, when -- given that you had for at least |
| 11:45:15 | 11 | a period of time two agreements in effect, one for the |
| 11:45:19 | 12 | litigation with Mr. Toberoff and then the IP Worldwide |
| 11:45:22 | 13 | agreement at 5 percent, why did you then decide to |
| 11:45:27 | 14 | stop the 5 percent agreement? |
| 11:45:31 | 15 | A.   Well, Mr. Emanuel's services were not needed. |
| 11:45:36 | 16 | Q.   Well, why were Mr. Emanuel's services needed |
| 11:45:39 | 17 | the moment you signed the litigation agreement with |
| 11:45:43 | 18 | Mr. Toberoff? |
| 11:45:44 | 19 | MR. TOBEROFF:  You mean not needed?  You said |
| 11:45:46 | 20 | "needed." |
| 11:45:47 | 21 | MR. PETROCELLI:  No.  I meant "needed." |
| 11:45:50 | 22 | MR. TOBEROFF:  Oh. |
| 11:45:50 | 23 | MR. PETROCELLI:  Let me go back. |
| 11:45:51 | 24 | THE WITNESS:  Okay. |
| | 25 | BY MR. PETROCELLI: |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON – 7/22/2011

Page 93

| | | |
|---|---|---|
| 11:45:52 | 1 | Q.   First of all, the percentage in the |
| 11:45:55 | 2 | litigation agreement with Mr. Toberoff ranged from 33 |
| 11:45:59 | 3 | percent to 40 percent; correct? |
| 11:46:01 | 4 | A.   Yes. |
| 11:46:02 | 5 | Q.   Okay.  Is that still the current arrangement? |
| 11:46:05 | 6 | A.   Yes. |
| 11:46:06 | 7 | MR. TOBEROFF:  Okay.  I just want to -- |
| 11:46:08 | 8 | before we ask more questions regarding the retainer |
| 11:46:10 | 9 | agreement, I just want you to be aware that certain |
| 11:46:13 | 10 | portions of the retainer agreement have been redacted |
| 11:46:16 | 11 | as privileged. |
| 11:46:17 | 12 | THE WITNESS:  Okay. |
| 11:46:18 | 13 | MR. TOBEROFF:  They made a motion to compel, |
| 11:46:19 | 14 | and a redaction was upheld by the court.  So I need |
| 11:46:22 | 15 | you to pause and particularly when they start asking |
| 11:46:25 | 16 | you questions about what's in the retainer agreement |
| 11:46:27 | 17 | so I can instruct you -- |
| 11:46:29 | 18 | THE WITNESS:  All right. |
| 11:46:30 | 19 | MR. TOBEROFF:  -- accordingly. |
| | 20 | BY MR. PETROCELLI: |
| 11:46:32 | 21 | Q.   After the -- you signed the 33 to 40 percent |
| 11:46:37 | 22 | litigation agreement with Mr. Toberoff, you determined |
| 11:46:41 | 23 | you would still have an arrangement with IP Worldwide |
| 11:46:46 | 24 | for Mr. Emanuel's services, but that was reduced to 5 |
| 11:46:50 | 25 | percent; correct? |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 94

| | | |
|---|---|---|
| 11:46:51 | 1 | MR. TOBEROFF:  Misstates her testimony. |
| 11:46:54 | 2 | MR. PETROCELLI:  I didn't misstate anything. |
| 11:46:56 | 3 | It's not even a proper objection. |
| 11:46:58 | 4 | But go ahead. |
| 11:46:59 | 5 | MR. TOBEROFF:  Misstates the record. |
| 11:47:01 | 6 | MR. PETROCELLI:  Nor is that. |
| 11:47:04 | 7 | THE WITNESS:  I'm lost. |
| 11:47:05 | 8 | MR. TOBEROFF:  Misstates the -- |
| | 9 | BY MR. PETROCELLI: |
| 11:47:09 | 10 | Q.   When you -- you indicated that there was -- |
| 11:47:12 | 11 | at the time of the litigation agreement with |
| 11:47:15 | 12 | Mr. Toberoff which called for a percentage to |
| 11:47:19 | 13 | Mr. Toberoff of 33 to 40 percent, that there was a |
| 11:47:23 | 14 | simultaneous reduction of the IPW commission, IP |
| 11:47:28 | 15 | Worldwide commission, from 10 percent to 5 percent. |
| 11:47:31 | 16 | Do you recall that? |
| 11:47:31 | 17 | A.   Yes. |
| 11:47:32 | 18 | Q.   In fact, you said it was in the same document |
| 11:47:34 | 19 | that that occurred, the litigation document; right? |
| 11:47:37 | 20 | A.   Yes. |
| 11:47:37 | 21 | Q.   Okay.  Why did you retain Mr. Emanuel once |
| 11:47:42 | 22 | you had signed the litigation agreement with |
| 11:47:46 | 23 | Mr. Toberoff? |
| 11:47:46 | 24 | MR. TOBEROFF:  Assumes facts.  Lacks |
| 11:47:48 | 25 | foundation. |

EXHIBIT S
531

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 95

| | | |
|---|---|---|
| 11:47:49 | 1 | THE WITNESS:  There was a -- |
| | 2 | BY MR. PETROCELLI: |
| 11:47:51 | 3 | Q.   Why did you continue the services of |
| 11:47:53 | 4 | Mr. Emanuel at 5 percent after having entered into the |
| 11:47:57 | 5 | litigation agreement with Mr. Toberoff? |
| 11:47:59 | 6 | MR. TOBEROFF:  Objection.  Assumes facts. |
| 11:48:01 | 7 | Lacks foundation. |
| | 8 | BY MR. PETROCELLI: |
| 11:48:01 | 9 | Q.   You may answer. |
| 11:48:03 | 10 | A.   There was a very short period of time.  The |
| 11:48:08 | 11 | litigation had not actually begun yet.  There was a |
| 11:48:13 | 12 | possibility that Mr. Emanuel's services prior to the |
| 11:48:17 | 13 | initiation of the actual litigation might be needed. |
| 11:48:21 | 14 | MR. PETROCELLI:  Okay.  We have to stop now |
| 11:48:23 | 15 | because he needs to change the tape. |
| 11:48:24 | 16 | THE WITNESS:  Okay. |
| 11:48:25 | 17 | MR. PETROCELLI:  So we'll take a short break. |
| 11:48:28 | 18 | THE WITNESS:  Okay.  Good. |
| 11:48:29 | 19 | THE VIDEOGRAPHER:  This will mark the end of |
| | 20 | Volume 1, tape number one, in the deposition of Laura |
| 11:48:30 | 21 | Siegel.  Going off the record.  The time is 11:48. |
| 11:59:45 | 22 | (A recess was taken.) |
| 11:59:48 | 23 | THE VIDEOGRAPHER:  We're back on the record, |
| 11:59:51 | 24 | and this marks the beginning of Volume 1, tape number |
| 11:59:53 | 25 | two, in the deposition of Laura Siegel.  The time is |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 96

| | | |
|---|---|---|
| 11:59:56 | 1 | 11:59.  Go ahead. |
| | 2 | BY MR. PETROCELLI: |
| 12:00:03 | 3 | Q.   When is the last -- after the end of the |
| 12:00:10 | 4 | IPW -- IP Worldwide agreement in early 2005, as you |
| 12:00:15 | 5 | said, when litigation began, you said it became |
| 12:00:18 | 6 | unnecessary; right? |
| 12:00:19 | 7 | A.   Correct. |
| 12:00:21 | 8 | Q.   Okay.  From that point on until today, have |
| 12:00:25 | 9 | you had any contact at all with Ari Emanuel? |
| 12:00:30 | 10 | A.   No. |
| 12:00:30 | 11 | Q.   Has your mother?  Did your mother, to your |
| 12:00:34 | 12 | knowledge, prior to her death? |
| 12:00:36 | 13 | A.   I don't believe so. |
| 12:00:37 | 14 | Q.   Are you aware of any ongoing role that Ari |
| 12:00:44 | 15 | Emanuel plays -- |
| 12:00:46 | 16 | A.   I'm not -- |
| 12:00:47 | 17 | Q.   -- with respect to your Superman rights? |
| 12:00:50 | 18 | A.   I'm not aware of that. |
| 12:00:52 | 19 | Q.   Are you aware of any financial arrangement |
| 12:00:57 | 20 | that may exist with respect to the services of Ari |
| 12:01:03 | 21 | Emanuel regarding any transaction for your Superman |
| 12:01:07 | 22 | rights? |
| 12:01:08 | 23 | A.   I'm not aware of anything like that. |
| 12:01:10 | 24 | Q.   So for example, if your Superman rights were |
| 12:01:15 | 25 | sold in a transaction to Paramount Pictures, to your |

EXHIBIT S
533

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 97

| | | |
|---|---|---|
| 12:01:21 | 1 | knowledge, would Ari Emanuel receive a fee of any |
| 12:01:25 | 2 | kind? |
| 12:01:25 | 3 | A.   I don't believe so. |
| 12:01:28 | 4 | Q.   It's your view that you have no current |
| 12:01:30 | 5 | agreements with him at all; is that right? |
| 12:01:33 | 6 | A.   I believe so, yes. |
| 12:01:35 | 7 | Q.   Based on the totality of your financial |
| 12:01:41 | 8 | arrangements, if you entered into a transaction to |
| 12:01:46 | 9 | sell your Superman rights today, what would be the |
| 12:01:55 | 10 | percentage of the gross proceeds that you would be |
| 12:01:58 | 11 | obligated to pay? |
| 12:01:59 | 12 | MR. TOBEROFF:  Wait.  If you can answer that |
| 12:02:07 | 13 | without revealing the contents of the consent |
| 12:02:11 | 14 | agreement, I would allow you to answer that question |
| 12:02:14 | 15 | if you know the answer.  Otherwise I instruct you not |
| 12:02:16 | 16 | to answer. |
| 12:02:21 | 17 | THE WITNESS:  You know, I really don't know |
| 12:02:24 | 18 | exactly what it is. |
| | 19 | BY MR. PETROCELLI: |
| 12:02:29 | 20 | Q.   Well, you do know; right?  I mean you do know |
| 12:02:32 | 21 | the terms that you have with Mr. Toberoff; correct? |
| 12:02:37 | 22 | A.   Not separately from the instruction that I |
| 12:02:41 | 23 | received. |
| 12:02:41 | 24 | Q.   Well, the instruction had to do with the |
| 12:02:43 | 25 | consent agreement.  The financial terms, at least some |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 98

| | | |
|---|---|---|
| 12:02:48 | 1 | of them, have already been disclosed to us with |
| 12:02:51 | 2 | respect to the litigation retainer agreement. |
| 12:02:53 | 3 | A.   Oh, okay.  Sometimes it gets confusing |
| 12:02:55 | 4 | because we're talking about so many agreements, you |
| 12:02:57 | 5 | know. |
| 12:02:58 | 6 | Q.   Okay.  So let me see if I can break it down |
| 12:03:00 | 7 | for you. |
| 12:03:00 | 8 | A.   All right. |
| 12:03:01 | 9 | Q.   If there were a transaction today for the |
| 12:03:03 | 10 | sale of your Superman rights, you would have to pay |
| 12:03:10 | 11 | Mr. Toberoff 33 to 40 percent based on your agreement; |
| | 12 | is that correct? |
| 12:03:14 | 13 | A.   I believe so. |
| 12:03:15 | 14 | Q.   And would that be 33 or 40 percent?  Do you |
| 12:03:21 | 15 | know?  What range applies as of today? |
| 12:03:36 | 16 | A.   I believe because we had an initial trial |
| 12:03:45 | 17 | before -- was that considered a trial with Judge |
| 12:03:50 | 18 | Larson? |
| 12:03:51 | 19 | Q.   Well, Mr. Toberoff has -- would certainly |
| 12:03:55 | 20 | suggest that it was. |
| 12:03:57 | 21 | A.   I mean, you know, what's the definition of a |
| 12:04:00 | 22 | trial, yes.  Okay. |
| 12:04:02 | 23 | Q.   So an argument could be made that the current |
| 12:04:05 | 24 | percentage of 40 percent is owed; correct?  If that |
| 12:04:10 | 25 | were a trial? |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 99

| | | |
|---|---|---|
| 12:04:10 | 1 | A.   If it were a trial, yes. |
| 12:04:12 | 2 | Q.   Okay.  So besides that 40 percent to |
| 12:04:22 | 3 | Mr. Toberoff, is there any other percent that would |
| 12:04:26 | 4 | have to be paid to Mr. Toberoff? |
| 12:04:31 | 5 | A.   No. |
| 12:04:32 | 6 | Q.   Is there any other fee that would have to be |
| 12:04:35 | 7 | paid to Mr. Toberoff? |
| 12:04:38 | 8 | A.   No.  I can't think of any. |
| 12:04:39 | 9 | Q.   Any other type of remuneration of any kind |
| 12:04:42 | 10 | that would be paid to Mr. Toberoff? |
| 12:04:44 | 11 | A.   You know, I think that there were some -- |
| 12:04:47 | 12 | some costs that were advanced. |
| 12:04:49 | 13 | Q.   Besides that. |
| 12:04:50 | 14 | A.   Other than costs, no. |
| 12:04:51 | 15 | Q.   Okay.  Is there anything in the 2008 consent |
| 12:04:56 | 16 | agreement that would trigger additional remuneration |
| 12:05:01 | 17 | to Mr. Toberoff based on a transaction of the Siegel |
| 12:05:05 | 18 | rights? |
| 12:05:06 | 19 | MR. TOBEROFF:  I -- I will allow you to |
| 12:05:09 | 20 | answer as to -- because what is not in the agreement |
| 12:05:13 | 21 | would not be privileged.  Did I say that right? |
| 12:05:18 | 22 | MR. PETROCELLI:  You did. |
| 12:05:18 | 23 | MR. TOBEROFF:  Some things not in the |
| 12:05:20 | 24 | agreement we are not asserting privilege.  We are |
| 12:05:24 | 25 | asserting privilege to what is in the agreement.  So |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc