# EXHIBIT S

# PART 6 OF 7

## LAURA SIEGEL LARSON - 7/22/2011

Page 276

| | | |
|---|---|---|
| 17:58:45 | 1 | A.   I turned them over to my attorney. |
| 17:58:47 | 2 | Q.   You said you had letters in your apartment, |
| 17:58:50 | 3 | in your condominium. |
| 17:58:52 | 4 | A.   Well, anything that I found I turned over to |
| 17:58:55 | 5 | my attorney.  I said that if there's anything else, it |
| 17:58:58 | 6 | would be in my apartment. |
| 17:58:59 | 7 | Q.   When you turned those letters over to your |
| 17:59:02 | 8 | attorney, do you mean Marc Toberoff? |
| 17:59:03 | 9 | A.   Yes. |
| 17:59:03 | 10 | Q.   How did you turn your letters with Michael |
| 17:59:05 | 11 | Siegel over to Marc Toberoff? |
| 17:59:07 | 12 | A.   Well, in a general request for production of |
| 17:59:11 | 13 | documents. |
| 17:59:12 | 14 | Q.   How did you give them to Mr. Toberoff? |
| 17:59:15 | 15 | MR. TOBEROFF:  He's talking about -- |
| | 16 | BY MR. PETROCELLI: |
| 17:59:16 | 17 | Q.   How did you transmit them to Mr. Toberoff? |
| 17:59:18 | 18 | MR. TOBEROFF:  Mail it? |
| 17:59:20 | 19 | THE WITNESS:  In a box. |
| | 20 | BY MR. PETROCELLI: |
| 17:59:20 | 21 | Q.   Did you ever fax any to Mr. Toberoff? |
| 17:59:23 | 22 | A.   I don't recall any faxes. |
| 17:59:25 | 23 | Q.   You have a fax machine; right? |
| 17:59:27 | 24 | A.   Yes, I do. |
| 17:59:31 | 25 | Q.   Okay.  Is it fair to say that Mr. Toberoff |

**EXHIBIT S**
**713**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 277

| | | |
|---|---|---|
| 17:59:34 | 1 | has a copy of every single letter that you exchanged |
| 17:59:40 | 2 | with Michael Siegel -- |
| 17:59:44 | 3 | A.    What I -- |
| 17:59:45 | 4 | Q.    -- regarding Superman? |
| 17:59:47 | 5 | A.    Whatever I have found that pertains to the |
| 17:59:50 | 6 | case I have turned over to him. |
| 17:59:54 | 7 | Q.    Okay.  And when is the last time that you |
| 17:59:59 | 8 | gave Mr. Toberoff or any member of his firm a -- any |
| 18:00:05 | 9 | correspondence with Michael Siegel? |
| 18:00:07 | 10 | A.    Oh. |
| 18:00:08 | 11 | Q.    When is the last time that you located such a |
| 18:00:10 | 12 | document and gave it to him? |
| 18:00:14 | 13 | A.    Well, that's hard to answer because, you |
| 18:00:17 | 14 | know, I -- I don't necessarily just find something of |
| 18:00:21 | 15 | Michael's separately from finding other things. |
| 18:00:24 | 16 | Q.    So I didn't mean to suggest -- |
| 18:00:26 | 17 | A.    No, I'm just trying -- I know I'm not |
| 18:00:27 | 18 | answering your question.  I'm trying to reconstruct in |
| 18:00:30 | 19 | my mind. |
| 18:00:31 | 20 | Q.    Okay.  I'm just saying when is the last time |
| 18:00:32 | 21 | you recall coming across a Michael Siegel letter and |
| 18:00:36 | 22 | giving it to Mr. Toberoff? |
| 18:00:39 | 23 | A.    I don't know.  It could have been a few |
| 18:00:41 | 24 | months ago. |
| 18:00:41 | 25 | Q.    What was the letter that you found? |

**EXHIBIT S**

**714**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 278

| 18:00:43 | 1 | MR. TOBEROFF: Misstates. Okay. |
| | 2 | BY MR. PETROCELLI: |
| 18:00:46 | 3 | Q. What was the letter that you came across a |
| 18:00:50 | 4 | few months ago and gave to Mr. Toberoff? |
| 18:00:52 | 5 | MR. TOBEROFF: Misstates her testimony. |
| 18:00:53 | 6 | I just want to instruct you when he's asking |
| 18:00:55 | 7 | you these questions, just focus on the question, and |
| 18:00:59 | 8 | this isn't a memory test. If you know the answer, let |
| 18:01:01 | 9 | him know. If you can recall, recall. But you don't |
| 18:01:05 | 10 | have to feel constrained to put something together if |
| 18:01:09 | 11 | you don't remember. Just let him know what you |
| 18:01:12 | 12 | remember. |
| 18:01:12 | 13 | MR. PETROCELLI: You know, to the extent your |
| 18:01:14 | 14 | lawyer is telling you to say you don't recall, it's |
| 18:01:17 | 15 | really not appropriate. |
| 18:01:18 | 16 | MR. TOBEROFF: I'm not -- I'm not saying |
| 18:01:18 | 17 | that. |
| 18:01:19 | 18 | THE WITNESS: No, I don't -- |
| | 19 | MR. PETROCELLI: We've gone over this, and |
| 18:01:21 | 20 | it's really late in the day to be talking about this |
| 18:01:21 | 21 | now. You just have to give me your very, very best |
| 18:01:25 | 22 | recollection even if it's a faint recollection. I |
| 18:01:26 | 23 | don't want you speculating wildly. |
| 18:01:27 | 24 | MR. TOBEROFF: Excuse me. I object to the |
| 18:01:29 | 25 | implication I'm telling her not to recall. She |

EXHIBIT S
715

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 279

| | | |
|---|---|---|
| 18:01:30 | 1 | started saying things that were unresponsive, and then |
| 18:01:34 | 2 | she said she's just trying to put it together and by |
| 18:01:38 | 3 | vocalizing various things, and I said look, it's not a |
| 18:01:40 | 4 | memory test. Try and remember. If you can remember, |
| 18:01:42 | 5 | give it to him. If you don't, don't. That's not |
| 18:01:45 | 6 | coaching her not to recall, and I take object -- you |
| 18:01:47 | 7 | know, that's a snotty comment, and I object to it. |
| 18:01:52 | 8 | MR. PETROCELLI: We better change the tape. |
| 18:01:54 | 9 | THE VIDEOGRAPHER: Okay. This will mark the |
| 18:01:55 | 10 | end of Volume -- sorry -- Volume 1, tape number four, |
| 18:01:58 | 11 | in the deposition of Laura Siegel. Going off the |
| 18:02:04 | 12 | record. The time is 6:02. |
| 18:08:07 | 13 | (A recess was taken.) |
| 18:08:15 | 14 | THE VIDEOGRAPHER: We are back on the record. |
| 18:08:17 | 15 | This marks the beginning of Volume 1, tape number |
| 18:08:19 | 16 | five, in the deposition of Laura Siegel. The time is |
| 18:08:23 | 17 | 6:08. |
| | 18 | BY MR. PETROCELLI: |
| 18:08:24 | 19 | Q. I want to get back to these questions about |
| 18:08:32 | 20 | Mr. Emanuel purchasing the interest of Mr. Siegel. |
| 18:08:37 | 21 | Now, first of all, were you aware that |
| 18:08:40 | 22 | Mr. Toberoff would be assisting Mr. Emanuel in |
| 18:08:45 | 23 | acquiring Mr. Michael Siegel's termination interest? |
| 18:08:49 | 24 | A. What do you mean by assisting? |
| 18:08:52 | 25 | Q. Working with him in some way. |

**Merrill  Corporation  -  Los Angeles**

800-826-0277                                www.merillcorp.com/law

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 280

| 18:08:56 | 1 | A.    I believe that he was communicating with |
| 18:09:00 | 2 | Michael Siegel or with Don Bulson. |
| 18:09:03 | 3 | Q.    Mr. Toberoff was? |
| 18:09:04 | 4 | A.    Mr. Toberoff. |
| 18:09:05 | 5 | Q.    On behalf of whom? |
| 18:09:07 | 6 | A.    On behalf of Mr. Emanuel. |
| 18:09:08 | 7 | Q.    Okay.  And how do you know that? |
| 18:09:13 | 8 | A.    It was a discussion. |
| 18:09:16 | 9 | Q.    Mr. Emanuel told you that, that he would be |
| 18:09:18 | 10 | working with Mr. Toberoff in connection with his |
| 18:09:21 | 11 | activities with Mr. Siegel and Mr. Bulson? |
| 18:09:24 | 12 | A.    Yes. |
| 18:09:24 | 13 | Q.    Okay.  Did you and Mr. Emanuel discuss price? |
| 18:09:40 | 14 | A.    No, we did not. |
| 18:09:41 | 15 | MR. TOBEROFF:  Asked and answered. |
| | 16 | BY MR. PETROCELLI: |
| 18:09:41 | 17 | Q.    Were you made aware at any time of any of the |
| 18:09:45 | 18 | offers going back and forth? |
| 18:09:49 | 19 | A.    No. |
| 18:09:50 | 20 | Q.    Are you certain? |
| 18:09:50 | 21 | A.    Not the amount of the offers.  I was aware |
| 18:09:53 | 22 | that offers were going back and forth. |
| 18:09:55 | 23 | Q.    Were you aware generally of the nature of the |
| 18:09:59 | 24 | offers that were going back and forth? |
| 18:10:01 | 25 | MR. TOBEROFF:  Vague and ambiguous. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 281

| | | |
|---|---|---|
| 18:10:03 | 1 | THE WITNESS:  I don't believe that there was |
| 18:10:05 | 2 | a number ever mentioned. |
| | 3 | BY MR. PETROCELLI: |
| 18:10:07 | 4 | Q.   But you were being kept apprised of what was |
| 18:10:11 | 5 | happening on a general basis; is that right? |
| 18:10:13 | 6 | A.   Yes, correct. |
| 18:10:19 | 7 | Q.   Was it your view that it would be |
| 18:10:25 | 8 | advantageous to have the Michael Siegel interest |
| 18:10:34 | 9 | purchased and getting a maximum price for your |
| 18:10:36 | 10 | interest and your mother's interest in your dealings |
| 18:10:38 | 11 | with Warner Bros. or DC? |
| 18:10:41 | 12 | A.   I'm not sure I understand the question. |
| 18:10:44 | 13 | Q.   Did you believe that if Mr. Emanuel purchased |
| 18:10:49 | 14 | the Michael Siegel interest, that would facilitate |
| 18:10:53 | 15 | discussions that you and your mother would have to |
| 18:10:56 | 16 | transact your interest? |
| 18:10:58 | 17 | A.   Yes. |
| 18:11:02 | 18 | Q.   Did you think it was important for Michael |
| 18:11:05 | 19 | Siegel, your stepbrother, to know that it was Ari |
| 18:11:11 | 20 | Emanuel, a person with whom you were doing business, |
| 18:11:14 | 21 | who was seeking to purchase his interest? |
| 18:11:18 | 22 | A.   First of all, he was my half brother, but -- |
| 18:11:21 | 23 | Q.   Half brother.  Forgive me. |
| 18:11:25 | 24 | Did you think it was important for your half |
| 18:11:27 | 25 | brother, Michael Siegel, to know that the person who |

**EXHIBIT S**

**718**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 282

| | | |
|---|---|---|
| 18:11:31 | 1 | was seeking to acquire his termination interest was |
| 18:11:37 | 2 | Ari Emanuel, the same person with whom you were doing |
| 18:11:40 | 3 | business? |
| 18:11:41 | 4 | A.   No, I didn't think that was important. |
| 18:11:44 | 5 | Q.   And you did not ever communicate to your |
| 18:11:47 | 6 | brother that it was Ari Emanuel who was this investor; |
| 18:11:53 | 7 | correct? |
| 18:11:54 | 8 | A.   I don't recall doing that. |
| 18:11:56 | 9 | Q.   And you know that your brother -- excuse me. |
| 18:12:00 | 10 | You know that Michael Siegel was never told that Ari |
| 18:12:03 | 11 | Emanuel was the person who was interested in |
| 18:12:09 | 12 | purchasing his termination interest; correct? |
| 18:12:11 | 13 | MR. TOBEROFF:  Vague as to time. |
| 18:12:12 | 14 | THE WITNESS:  Well, I do not know that. |
| 18:12:14 | 15 | BY MR. PETROCELLI: |
| 18:12:16 | 16 | Q.   You know that in the correspondence and the |
| 18:12:18 | 17 | communications with Michael Siegel and his lawyer, Don |
| 18:12:21 | 18 | Bulson, the purchaser was never named; correct? |
| 18:12:26 | 19 | A.   I -- I think -- I think that I heard that. |
| 18:12:31 | 20 | Q.   What was the strategy behind not telling |
| 18:12:35 | 21 | Michael Siegel that it was Ari Emanuel? |
| 18:12:41 | 22 | A.   I don't know that there was a strategy. |
| 18:12:43 | 23 | Q.   You didn't want Mr. Siegel to know that it |
| 18:12:46 | 24 | was Ari Emanuel; correct? |
| 18:12:47 | 25 | A.   I didn't have any feelings about it one way |

Merrill  Corporation  -  Los Angeles

800-826-0277                          www.merrillcorp.com/law

EXHIBIT S
719

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 283

| | | |
|---|---|---|
| 18:12:49 | 1 | or another. |
| 18:12:50 | 2 | Q. But you never felt that you should tell him; |
| 18:12:54 | 3 | right? |
| 18:13:00 | 4 | A. No. |
| 18:13:00 | 5 | Q. And you had rejected selling your interest to |
| 18:13:04 | 6 | Ari Emanuel because you thought that he wasn't |
| 18:13:09 | 7 | offering enough money; right? |
| 18:13:13 | 8 | A. No. |
| 18:13:14 | 9 | Q. You said that he offered you 15 million and |
| 18:13:18 | 10 | that why would he ever pay full value, so it must be |
| 18:13:21 | 11 | worth a lot more than that. Do you recall that? |
| 18:13:23 | 12 | A. We preferred to have him negotiate for us |
| 18:13:26 | 13 | than make a purchase. |
| 18:13:26 | 14 | Q. Did you make a counteroffer to him and say, |
| 18:13:29 | 15 | "You know, Ari, a guy like you would never offer 15 if |
| 18:13:34 | 16 | it's worth 15, so it must be worth 30 or 40 or 50 or a |
| 18:13:38 | 17 | hundred, so I'm going to counter at a much higher |
| 18:13:40 | 18 | number"? Did you ever have that kind of discussion |
| 18:13:42 | 19 | with Mr. Emanuel? |
| 18:13:43 | 20 | A. No. |
| 18:13:43 | 21 | Q. Did you ever make any counterproposal to his |
| 18:13:46 | 22 | $15 million proposal? |
| 18:13:47 | 23 | A. Yeah. The counter was "Why don't you |
| 18:13:50 | 24 | represent us." |
| 18:13:50 | 25 | Q. A counter to do a deal with him, I meant, |

**EXHIBIT S**
**720**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 284

| | | |
|---|---|---|
| 18:13:53 | 1 | other than an agency deal. |
| 18:14:01 | 2 | A.   No. |
| 18:14:01 | 3 | Q.   Why didn't you suggest to Mr. Emanuel that he |
| 18:14:05 | 4 | represent Michael Siegel just like he was representing |
| 18:14:09 | 5 | you to try to sell Michael Siegel's interest as an |
| 18:14:12 | 6 | agent rather than as a principal? |
| 18:14:14 | 7 | A.   He didn't express any interest in doing that. |
| 18:14:16 | 8 | Q.   Did you try to persuade him to doing so, into |
| 18:14:23 | 9 | doing that? |
| 18:14:23 | 10 | A.   We may have discussed it, but he didn't ever |
| 18:14:25 | 11 | show any interest in doing that. |
| 18:14:25 | 12 | Q.   Did you have a point of view about that?  Did |
| 18:14:30 | 13 | you have a preference? |
| 18:14:31 | 14 | A.   Not really. |
| 18:14:46 | 15 | Q.   Did you have any issue with the fact that the |
| 18:14:51 | 16 | person that you thought was your lawyer was now acting |
| 18:14:54 | 17 | in an adverse capacity to your stepbrother? |
| 18:15:00 | 18 | A.   I don't think we considered it an adverse |
| 18:15:03 | 19 | capacity. |
| 18:15:03 | 20 | Q.   You don't believe that Mr. Toberoff |
| 18:15:06 | 21 | representing Ari Emanuel in trying to provide the |
| 18:15:14 | 22 | lowest price to Michael Siegel to acquire his interest |
| 18:15:19 | 23 | was adverse to Michael Siegel? |
| 18:15:23 | 24 | A.   We had knowledge of the fact that Michael |
| 18:15:25 | 25 | wanted to speed up the process.  He really didn't want |

**EXHIBIT S**
**721**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 285

| | | |
|---|---|---|
| 18:15:27 | 1 | to wait things out.  He wasn't interested in |
| 18:15:33 | 2 | prolonging anything and wanted some money.  So it |
| 18:15:37 | 3 | seemed as if it was going to be to his advantage. |
| 18:15:40 | 4 | Q.    Why didn't you buy it? |
| 18:15:41 | 5 | A.    Didn't have the money. |
| 18:15:42 | 6 | Q.    Why didn't you try to borrow the money? |
| 18:15:47 | 7 | A.    Hey, I'm disabled.  I live on a disability |
| 18:15:51 | 8 | income.  There's no way that I could borrow any kind |
| 18:15:53 | 9 | of money for that. |
| 18:15:54 | 10 | Q.    Why didn't you ask Ari Emanuel to put up the |
| 18:15:58 | 11 | funds on your behalf? |
| 18:15:59 | 12 | A.    I just didn't think of it. |
| 18:16:00 | 13 | Q.    Nobody suggested that to you? |
| 18:16:07 | 14 | A.    No. |
| 18:16:07 | 15 | Q.    Did you tell -- since you never spoke to |
| 18:16:12 | 16 | Michael Siegel, did you communicate with Michael |
| 18:16:16 | 17 | Siegel that -- did you ask Michael Siegel in writing |
| 18:16:29 | 18 | whether he had any issue with your lawyer, Marc |
| 18:16:34 | 19 | Toberoff, representing this purchaser of his interest? |
| 18:16:40 | 20 | A.    I never asked him that. |
| 18:16:54 | 21 | Q.    Take a look at the next exhibit. |
| 18:16:59 | 22 | MR. TOKORO:  64. |
| | 23 | (Whereupon, Plaintiff's Exhibit 64 |
| | 24 | was marked for identification.) |
| 18:17:08 | 25 | THE WITNESS:  Thank you. |

**EXHIBIT S**

**722**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 286

| | | |
|---|---|---|
| 18:17:08 | 1 | BY MR. PETROCELLI: |
| 18:17:08 | 2 | Q.   This is a document sent to you and your |
| 18:17:10 | 3 | mother on the letterhead of IP Worldwide dated |
| 18:17:15 | 4 | November 26, 2002, with respect to the purchase of |
| 18:17:27 | 5 | Michael Siegel's termination interest by Ari Emanuel. |
| 18:17:33 | 6 | A.   I'm reading it, so I'm sorry.  If you could |
| 18:17:37 | 7 | give me a few minutes. |
| 18:17:56 | 8 | Q.   Tell me when you're ready. |
| 18:18:19 | 9 | A.   Okay.  I've read it. |
| 18:18:21 | 10 | Q.   What were the potential conflicts of interest |
| 18:18:27 | 11 | that you understood related to this document? |
| 18:18:35 | 12 | A.   I don't recall because it's not in this |
| 18:18:38 | 13 | document. |
| 18:18:38 | 14 | Q.   What's not in this document? |
| 18:18:40 | 15 | A.   Potential conflicts of interest.  It's not -- |
| 18:18:44 | 16 | it's not explained in the document, so I don't recall |
| 18:18:49 | 17 | something that was discussed in 2002 that's not in |
| 18:18:52 | 18 | front of me. |
| 18:18:53 | 19 | Q.   Right now as you sit here, you have no idea |
| 18:18:56 | 20 | what the potential conflicts of interest were? |
| 18:18:58 | 21 | A.   May I read that paragraph again? |
| 18:19:00 | 22 | Q.   Please. |
| 18:19:32 | 23 | A.   It doesn't refresh my memory by reading it. |
| 18:19:35 | 24 | Q.   Now, you see it's on the stationery or |
| 18:19:41 | 25 | letterhead of IP Worldwide.  Do you see that? |

**EXHIBIT S**

**723**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 287

| | | |
|---|---|---|
| 18:19:43 | 1 | A.    Yes. |
| 18:19:43 | 2 | Q.    Go to the beginning of the second paragraph. |
| 18:19:46 | 3 | It says "IPW will enter into negotiations."  Do you |
| 18:19:52 | 4 | see that? |
| 18:19:52 | 5 | A.    Yes, I do. |
| 18:19:53 | 6 | Q.    What did you understand IPW to be? |
| 18:19:55 | 7 | A.    IP Worldwide. |
| 18:19:58 | 8 | Q.    Tell me -- so then it was IP Worldwide that |
| 18:20:00 | 9 | was going to acquire the Michael Siegel interests; |
| 18:20:04 | 10 | correct? |
| 18:20:06 | 11 | A.    No.  It says it will be directly financed by |
| 18:20:08 | 12 | Ari Emanuel. |
| 18:20:09 | 13 | Q.    Financed by, but the acquisition is to occur |
| 18:20:13 | 14 | by IPW; correct? |
| 18:20:15 | 15 | A.    My understanding of that was that IP |
| 18:20:20 | 16 | Worldwide, meaning as a lawyer, Mr. Toberoff was going |
| 18:20:24 | 17 | to conduct the negotiations. |
| 18:20:28 | 18 | Q.    If IPW acquired the termination interest of |
| 18:20:33 | 19 | Michael Siegel, a company in which Mr. Toberoff had an |
| 18:20:36 | 20 | ownership interest, you would have had no objection to |
| 18:20:38 | 21 | that; correct? |
| 18:20:39 | 22 | MR. TOBEROFF:  I just want to make -- when |
| 18:20:40 | 23 | we're speaking -- you're saying I, because there is a |
| | 24 | company called IPW. |
| | 25 | MR. PETROCELLI:  I know, but not at this |

**EXHIBIT S**

**724**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 288

| | | |
|---|---|---|
| | 1 | point in time. |
| 18:20:44 | 2 | MR. TOBEROFF:  You're talking about IP |
| 18:20:45 | 3 | Worldwide; correct? |
| 18:20:46 | 4 | MR. PETROCELLI:  Yes.  I'm using "IPW" |
| 18:20:48 | 5 | because as the witness said, she understood it to mean |
| 18:20:52 | 6 | IP Worldwide as used in this letter. |
| 18:20:53 | 7 | MR. TOBEROFF:  Okay. |
| 18:20:54 | 8 | THE WITNESS:  And the question? |
| | 9 | BY MR. PETROCELLI: |
| 18:20:55 | 10 | Q.   You would have had no objection to Michael |
| 18:20:58 | 11 | Siegel's interests being purchased in the name of IP |
| 18:21:01 | 12 | Worldwide, a company in which Mr. Toberoff had an |
| 18:21:04 | 13 | ownership interest; correct? |
| 18:21:05 | 14 | A.   Correct. |
| 18:21:13 | 15 | Q.   And again, you can't recall any of the |
| 18:21:16 | 16 | conflicts over the subject of this document. |
| 18:21:18 | 17 | A.   No.  Sorry.  I can't. |
| 18:21:21 | 18 | MR. PETROCELLI:  What exhibit number is this? |
| 18:21:23 | 19 | MR. TOKORO:  64. |
| 18:21:29 | 20 | MR. PETROCELLI:  Go to the next one. |
| 18:21:30 | 21 | MR. TOBEROFF:  I would like you to read me -- |
| 18:21:32 | 22 | she asked a question, and you said "correct," and you |
| 18:21:34 | 23 | said "correct."  Can you read me that question, |
| 18:21:37 | 24 | please? |
| 18:21:51 | 25 | (The record was read.) |

EXHIBIT S
725

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 289

| 18:21:51 | 1 | MR. TOBEROFF: Okay. Thank you. |
| 18:21:55 | 2 | MR. PETROCELLI: Next is Exhibit 65, which is |
| 18:21:58 | 3 | another draft of this document dated December 16, |
| 18:22:02 | 4 | 2002, which contains more terms. |
| | 5 | (Whereupon, Plaintiff's Exhibit 65 |
| 18:22:11 | 6 | was marked for identification.) |
| | 7 | BY MR. PETROCELLI: |
| 18:22:12 | 8 | Q. Were you negotiating this document with |
| 18:22:17 | 9 | Mr. Emanuel? |
| 18:22:18 | 10 | A. May I read it first? |
| 18:22:20 | 11 | Q. Sure. |
| 18:22:21 | 12 | A. Thank you. |
| 18:22:45 | 13 | MR. TOBEROFF: Do you have a signed -- you're |
| 18:22:47 | 14 | showing her documents that are unsigned. Do you have |
| 18:22:50 | 15 | a signed document? |
| 18:22:58 | 16 | MR. PETROCELLI: No. You didn't produce it. |
| 18:23:19 | 17 | Q. You do recall signing a version of this |
| 18:23:19 | 18 | document; is that right? |
| 18:23:19 | 19 | A. A version. I can't say this was the final. |
| 18:23:20 | 20 | MR. TOBEROFF: I think there was a signed |
| 18:23:22 | 21 | document that was produced. |
| 18:23:24 | 22 | MR. PETROCELLI: Well, I don't have it here, |
| 18:23:28 | 23 | and it's certainly possible. |
| 18:23:55 | 24 | THE WITNESS: Okay. I'm ready for your |
| 18:23:58 | 25 | question. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 290

| | | |
|---|---|---|
| 18:23:58 | 1 | MR. PETROCELLI: Oh. So you did find one. |
| 18:24:03 | 2 | Let me see it. |
| 18:24:17 | 3 | We're going to get to a signed version. |
| 18:24:19 | 4 | THE WITNESS: Okay. |
| 18:24:20 | 5 | MR. PETROCELLI: But it's not -- we're going |
| 18:24:22 | 6 | to stay with this document first. |
| 18:24:24 | 7 | THE WITNESS: All right. |
| 18:24:32 | 8 | BY MR. PETROCELLI: |
| 18:24:32 | 9 | Q.   This is Exhibit 65.  Who was negotiating the |
| 18:24:37 | 10 | terms of this document? |
| 18:24:39 | 11 | A.   My mother and I. |
| 18:24:42 | 12 | Q.   And who were you negotiating with? |
| 18:24:47 | 13 | A.   Ari. |
| 18:24:49 | 14 | Q.   How?  Over the phone?  In person?  Through |
| 18:24:52 | 15 | Mr. Toberoff?  All the above? |
| 18:24:53 | 16 | A.   All the above. |
| 18:24:58 | 17 | Q.   Was anybody other than Mr. Toberoff working |
| 18:25:02 | 18 | with you on the negotiations? |
| 18:25:10 | 19 | A.   No. |
| 18:25:11 | 20 | Q.   You -- you were the one insisting that if |
| 18:25:19 | 21 | Michael Siegel sold this interest to IPW and/or Ari |
| 18:25:26 | 22 | Emanuel, that they in turn, that is, IPW and/or Ari |
| 18:25:35 | 23 | Emanuel, would only sell the Michael Siegel interest |
| 18:25:39 | 24 | to a third party in connection with the sale of your |
| 18:25:43 | 25 | interest; correct? |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 291

| | | |
|---|---|---|
| 18:25:45 | 1 | A.   Can you show me where in the document it says |
| 18:25:47 | 2 | that? |
| 18:25:48 | 3 | Q.   3(a). |
| 18:25:58 | 4 | A.   If this was the final version, then that's |
| 18:26:01 | 5 | what we agreed to. |
| 18:26:02 | 6 | Q.   But that's -- I'm not asking right now |
| 18:26:05 | 7 | whether you agreed to it, but that's something you |
| 18:26:07 | 8 | wanted; right? |
| 18:26:07 | 9 | A.   Yes. |
| 18:26:08 | 10 | Q.   And you wanted the complete decision making |
| 18:26:12 | 11 | authority with respect to the disposition of not only |
| 18:26:15 | 12 | your interest, but the Michael Siegel interest; |
| 18:26:17 | 13 | correct? |
| 18:26:17 | 14 | A.   That's correct. |
| 18:26:18 | 15 | Q.   So you were basically using Ari Emanuel and |
| 18:26:22 | 16 | IPW as a front to acquire this interest that you would |
| 18:26:27 | 17 | ultimately control without telling your stepbrother; |
| 18:26:29 | 18 | correct? |
| 18:26:30 | 19 | A.   No. |
| 18:26:30 | 20 | Q.   And you did not tell your stepbrother that it |
| 18:26:32 | 21 | was you who was going to have complete control over |
| 18:26:35 | 22 | his interest; correct? |
| 18:26:36 | 23 | A.   I didn't discuss the details with him. |
| 18:26:39 | 24 | Q.   Well, you didn't tell him anything, did you? |
| 18:26:41 | 25 | A.   I don't recall. |

**EXHIBIT S**

**728**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON – 7/22/2011

Page 292

| | | |
|---|---|---|
| 18:26:41 | 1 | Q.   You never spoke to him, you said. |
| 18:26:44 | 2 | A.   No, I didn't. |
| 18:26:45 | 3 | Q.   You never wrote to him about any of this; |
| 18:26:47 | 4 | right? |
| 18:26:48 | 5 | A.   I said I didn't remember whether I wrote to |
| 18:26:50 | 6 | him about this. |
| 18:26:53 | 7 | Q.   You remember, and you did not advise Michael |
| 18:26:57 | 8 | Siegel that you were negotiating against him through |
| 18:27:00 | 9 | Ari Emanuel; correct? |
| 18:27:02 | 10 | MR. TOBEROFF:  Argumentative. |
| 18:27:03 | 11 | THE WITNESS:  I don't think you can read my |
| 18:27:05 | 12 | mind, with all due respect. |
| | 13 | BY MR. PETROCELLI: |
| 18:27:07 | 14 | Q.   Well, are you saying you did make this full |
| 18:27:09 | 15 | disclosure to him about what your demands were of |
| 18:27:14 | 16 | Mr. Ari Emanuel, that you wanted to control the |
| 18:27:17 | 17 | disposition of the Michael Siegel interests, that it |
| 18:27:19 | 18 | could only be sold in connection with your interest? |
| 18:27:22 | 19 | Are you telling me that you told that to your half |
| 18:27:25 | 20 | brother in writing? |
| 18:27:28 | 21 | A.   I don't -- I don't remember what we discussed |
| 18:27:31 | 22 | in writing. |
| 18:27:32 | 23 | Q.   Did you have a single communication with him |
| 18:27:34 | 24 | in writing on this subject? |
| 18:27:36 | 25 | A.   I do not recall. |

**EXHIBIT S**

**729**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 293

| | | |
|---|---|---|
| 18:27:43 | 1 | Q. In paragraph (c) here of this draft it says |
| 18:27:47 | 2 | that Mr. Emanuel is going to indemnify you in case |
| 18:27:51 | 3 | there is any litigation arising out of your -- arising |
| 18:27:54 | 4 | out of the purchase of the Michael Siegel interests. |
| 18:27:56 | 5 | Why do you want an indemnification from Mr. Emanuel? |
| 18:28:00 | 6 | What kind of litigation were you concerned about? |
| 18:28:02 | 7 | A. We had no idea what might occur in the |
| 18:28:16 | 8 | future. |
| 18:28:16 | 9 | Q. How were you communicating your demands and |
| 18:28:20 | 10 | your positions such that they were being embodied in |
| 18:28:25 | 11 | these drafts? Were you doing it orally, or were you |
| 18:28:29 | 12 | like typing things out and sending it to Mr. Toberoff |
| 18:28:33 | 13 | or Mr. Emanuel? |
| 18:28:34 | 14 | A. Oh, you're saying the negotiation over -- |
| 18:28:36 | 15 | Q. Yes. |
| 18:28:37 | 16 | A. -- over this document? |
| 18:28:38 | 17 | Q. Yes. |
| 18:28:41 | 18 | A. I think we did it in conversation. |
| 18:28:47 | 19 | Q. Okay. Take a look at the next document. |
| 18:28:51 | 20 | This is Exhibit 46. |
| | 21 | (Whereupon, Plaintiff's Exhibit 46 |
| 18:28:59 | 22 | was placed before the witness.) |
| | 23 | BY MR. PETROCELLI: |
| 18:28:59 | 24 | Q. Now, it says that it's dated January 21, |
| 18:29:03 | 25 | 2002. I'm assuming that's a typo. That must be 2003. |

**EXHIBIT S**

**730**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 294

| | | |
|---|---|---|
| 18:29:07 | 1 | A.    Yeah, because it's -- |
| 18:29:09 | 2 | Q.    The sequence of time here.  Does that make |
| 18:29:11 | 3 | sense to you? |
| 18:29:11 | 4 | A.    It's signed on 2003. |
| 18:29:13 | 5 | Q.    Well, Exhibit 46 is not signed.  You're |
| 18:29:15 | 6 | looking at the wrong exhibit. |
| 18:29:18 | 7 | A.    46. |
| 18:29:20 | 8 | MR. TOBEROFF:  Signed. |
| 18:29:20 | 9 | THE WITNESS:  Is signed. |
| 18:29:23 | 10 | MR. PETROCELLI:  Time out.  Time out.  Time |
| 18:29:25 | 11 | out.  Time out. |
| 18:29:55 | 12 | Q.    You have Exhibit 46 in front of you? |
| 18:29:57 | 13 | A.    Yes, I do. |
| 18:29:57 | 14 | Q.    And that is a signed version? |
| 18:29:59 | 15 | A.    Yes. |
| 18:30:08 | 16 | Q.    Okay.  And you will see in paragraph 2 -- in |
| 18:30:21 | 17 | paragraph 1 we're dealing with Mr. Siegel's interests, |
| 18:30:26 | 18 | Michael Siegel's interest in Superman, Superboy, and |
| 18:30:29 | 19 | The Spectre.  Do you see that? |
| 18:30:30 | 20 | A.    Yes, I do. |
| 18:30:31 | 21 | Q.    What's The Spectre? |
| 18:30:32 | 22 | A.    That's another character that my father |
| 18:30:39 | 23 | co-created. |
| 18:30:39 | 24 | Q.    And you wanted to have Mr. Emanuel acquire |
| 18:30:42 | 25 | Michael Siegel's interest in that character as well? |

# LAURA SIEGEL LARSON − 7/22/2011

Page 295

| | | |
|---|---|---|
| 18:30:45 | 1 | A.    Yes. |
| 18:30:45 | 2 | Q.    So at the end of the day, you wanted to |
| 18:30:50 | 3 | obtain everything Michael Siegel might own with |
| 18:30:53 | 4 | respect to your father's creations; correct? |
| 18:30:56 | 5 | MR. TOBEROFF:    Misstates the document and the |
| 18:30:58 | 6 | record.    Assumes facts.    Lacks foundation. |
| 18:31:02 | 7 | MR. PETROCELLI:    Repeat the question because |
| 18:31:04 | 8 | I made a mistake in it. |
| 18:31:05 | 9 | Q.    You wanted Mr. Emanuel and negotiated and |
| 18:31:09 | 10 | contracted with Mr. Emanuel that he would acquire all |
| 18:31:15 | 11 | copyright termination interests that Michael Siegel |
| 18:31:17 | 12 | might hold with respect to your father's creations; |
| 18:31:20 | 13 | correct? |
| 18:31:22 | 14 | A.    These Superman, Superboy, and The Spectre |
| 18:31:25 | 15 | were the only properties that had at this point been |
| 18:31:30 | 16 | terminated.    There is always the possibility that |
| 18:31:32 | 17 | there are additional characters created by my father |
| 18:31:36 | 18 | that would be terminated in the future. |
| 18:31:39 | 19 | Q.    Were you -- |
| 18:31:40 | 20 | A.    This agreement didn't apply to anything |
| 18:31:43 | 21 | except for the specific characters. |
| 18:31:43 | 22 | Q.    What were the other characters that you were |
| 18:31:46 | 23 | leaving available for Michael Siegel to exercise |
| 18:31:48 | 24 | copyright termination interests over? |
| 18:31:50 | 25 | A.    Anything that came -- because of the calendar |

**EXHIBIT S**
**732**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 296

| | | |
|---|---|---|
| 18:31:53 | 1 | of the way copyright terminations go, there are -- you |
| 18:31:57 | 2 | know, there are different dates of publication, and, |
| 18:32:01 | 3 | you know, the window for termination for each |
| 18:32:04 | 4 | character is different. |
| 18:32:05 | 5 | Q.   Well, were you aware of any other windows of |
| 18:32:08 | 6 | termination for any other characters that were coming |
| 18:32:11 | 7 | up? |
| 18:32:11 | 8 | A.   There were some, but they were way down the |
| 18:32:14 | 9 | road. |
| 18:32:14 | 10 | Q.   What were they? |
| 18:32:15 | 11 | A.   Oh, you would ask me that.  At this moment I |
| 18:32:30 | 12 | can't recall. |
| 18:32:30 | 13 | Q.   Well, as of January 21, 2003, you were |
| 18:32:37 | 14 | authorizing Ari Emanuel to purchase all existing |
| 18:32:42 | 15 | termination interests of Michael Siegel in your |
| 18:32:46 | 16 | father's creations; is that correct? |
| 18:32:48 | 17 | A.   That were -- that were in effect or had been |
| 18:32:51 | 18 | terminated at that point. |
| 18:32:56 | 19 | Q.   And this is the document you did sign; right? |
| 18:33:02 | 20 | A.   Yes. |
| 18:33:03 | 21 | Q.   Which sets forth the condition that the |
| 18:33:10 | 22 | Michael Siegel interests so acquired by Mr. Emanuel |
| 18:33:12 | 23 | could only be sold to a third party in conjunction |
| 18:33:17 | 24 | with the sale of the Siegel interests, your interests; |
| 18:33:20 | 25 | correct? |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 297

| | | |
|---|---|---|
| 18:33:20 | 1 | A.   Correct. |
| 18:33:21 | 2 | Q.   And that you and your mother would retain |
| 18:33:24 | 3 | full and complete decision making authority with |
| 18:33:26 | 4 | respect to such a disposition; correct? |
| 18:33:29 | 5 | A.   Where is that, please?  I didn't have a |
| 18:33:31 | 6 | chance to read the entire document. |
| 18:33:33 | 7 | Q.   3(b). |
| 18:33:39 | 8 | A.   Correct. |
| 18:33:40 | 9 | Q.   3(c) is the indemnity that you're getting |
| 18:33:43 | 10 | from Mr. Emanuel in case there's any litigation |
| 18:33:46 | 11 | arising out of the purchase of the Michael Siegel |
| 18:33:49 | 12 | interest; correct? |
| 18:33:49 | 13 | A.   Correct. |
| 18:33:49 | 14 | Q.   And you understood that might apply if |
| 18:33:52 | 15 | Michael Siegel himself filed suit against you; |
| 18:33:54 | 16 | correct? |
| 18:33:54 | 17 | A.   I believe so. |
| 18:34:03 | 18 | Q.   In paragraph 3(d) you ask Mr. Emanuel to |
| 18:34:08 | 19 | reimburse you for the Michael Siegel 25 percent share |
| 18:34:13 | 20 | of the expenses that you had been advancing; correct? |
| 18:34:19 | 21 | A.   That we advanced on behalf of the entire |
| 18:34:37 | 22 | interest. |
| 18:34:37 | 23 | Q.   In the first paragraph of this document, |
| 18:34:42 | 24 | Exhibit 46, again it makes reference to various risks |
| 18:34:48 | 25 | and potential problems regarding Michael Siegel and |

Merrill   Corporation   -   Los Angeles
800-826-0277                              www.merrillcorp.com/law

EXHIBIT S
734

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 298

| | | |
|---|---|---|
| 18:34:52 | 1 | the mitigation of possible conflicts of interest with |
| 18:34:56 | 2 | respect to the following proposed remedial actions. |
| 18:35:00 | 3 | What were the risks, the potential problems, and the |
| 18:35:05 | 4 | possible conflicts? |
| 18:35:07 | 5 | A.    I really don't recall. |
| 18:35:08 | 6 | Q.    You can't remember a single thing about that? |
| 18:35:11 | 7 | A.    Not today. |
| 18:35:56 | 8 | Q.    Take a look at the next document in order, |
| 18:36:03 | 9 | Exhibit 30. |
| | 10 | (Whereupon, Plaintiff's Exhibit 30 |
| | 11 | was placed before the witness.) |
| | 12 | BY MR. PETROCELLI: |
| 18:36:12 | 13 | Q.    This is a letter from Michael Siegel to you |
| 18:36:15 | 14 | dated May 13; is that correct? |
| 18:36:19 | 15 | A.    Yes. |
| 18:36:22 | 16 | Q.    When is the last time you saw this document? |
| 18:36:25 | 17 | A.    It's been quite a while. |
| 18:36:34 | 18 | Q.    When you received documents -- well, |
| 18:36:37 | 19 | withdrawn. |
| 18:36:38 | 20 | A.    I'm sorry.  What was -- |
| 18:36:40 | 21 | Q.    Withdrawn.  Let me start all over again. |
| 18:36:42 | 22 | When did you first give a copy of this |
| 18:36:45 | 23 | document to Mr. Toberoff? |
| 18:36:50 | 24 | A.    Whenever there was a request for the |
| 18:36:53 | 25 | production of documents, whenever that was. |

**EXHIBIT S**

**735**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 299

| 18:36:56 | 1 | Q.   In what case? |
| 18:36:59 | 2 | A.   Good question.  There's just so many cases. |
| 18:37:04 | 3 | You know, they're all kind of running together for me, |
| 18:37:06 | 4 | so I don't remember. |
| 18:37:12 | 5 | Q.   When you provided documents from time to time |
| 18:37:15 | 6 | to Mr. Toberoff, did you maintain copies for yourself? |
| 18:37:20 | 7 | A.   No. |
| 18:37:21 | 8 | Q.   Never? |
| 18:37:21 | 9 | A.   I don't -- I don't believe so. |
| 18:37:23 | 10 | Q.   Even letters with your stepbrother? |
| 18:37:26 | 11 | A.   Well, I knew that he had them, and if I |
| 18:37:28 | 12 | needed them, I could always get a copy from him. |
| 18:37:42 | 13 | Q.   This letter starts out "Thank you for your |
| 18:37:44 | 14 | letter of November 2 of last year."  What letter was |
| 18:37:49 | 15 | that? |
| 18:37:49 | 16 | A.   A letter I sent him on November 2. |
| 18:37:51 | 17 | Q.   Do you have any idea what you wrote in that |
| 18:37:53 | 18 | letter? |
| 18:37:54 | 19 | A.   No, I don't. |
| 18:38:01 | 20 | Q.   Now, you see -- you recall receiving this |
| 18:38:05 | 21 | letter? |
| 18:38:05 | 22 | A.   Well, the part that I remember is when he |
| 18:38:07 | 23 | told me that his mother passed away. |
| 18:38:11 | 24 | Q.   That's in the second sentence. |
| 18:38:13 | 25 | A.   That's right. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 300

| | | |
|---|---|---|
| 18:38:13 | 1 | Q.    And then the rest of this letter goes on to |
| 18:38:17 | 2 | discuss his concerns about Mr. Toberoff, and are you |
| 18:38:21 | 3 | suggesting that none of that was important to you? |
| 18:38:27 | 4 | A.    I didn't say it wasn't important to me.  I |
| 18:38:31 | 5 | just said that the thing that made me remember this |
| 18:38:34 | 6 | letter was the fact that he said that his mother |
| 18:38:34 | 7 | passed away. |
| 18:38:50 | 8 | Q.    Do you know what prompted his sending this |
| 18:38:52 | 9 | letter to you? |
| 18:38:54 | 10 | A.    I don't know. |
| 18:38:59 | 11 | Q.    Did you respond to it? |
| 18:39:02 | 12 | A.    I'm sure I did. |
| 18:39:05 | 13 | Q.    What did you say? |
| 18:39:08 | 14 | A.    I'm sorry, but I don't recall. |
| 18:39:14 | 15 | Q.    He said here in the -- directing your |
| 18:39:18 | 16 | attention to the second paragraph, okay -- |
| 18:39:21 | 17 | A.    Um-hum. |
| 18:39:22 | 18 | Q.    -- it starts out "I really wish to discuss |
| 18:39:26 | 19 | Marc Toberoff."  And it says in the third sentence: |
| 18:39:37 | 20 | "I told you when he first contacted |
| 18:39:41 | 21 | me, he wanted to buy my share of the |
| 18:39:47 | 22 | copyright.  Marc had a mysterious |
| 18:39:51 | 23 | billionaire who wanted to invest in |
| 18:39:52 | 24 | the Superman copyright, put |
| 18:39:54 | 25 | 15 million dollars up front plus |

**Merrill    Corporation    -    Los Angeles**

800-826-0277                          www.merillcorp.com/law

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 301

| | | |
|---|---|---|
| 18:39:57 | 1 | participation.  When you signed with |
| 18:40:01 | 2 | Marc the billionaire invested |
| 18:40:04 | 3 | elsewhere." |
| 18:40:08 | 4 | Do you know where he got that information? |
| 18:40:10 | 5 | A.    I have no idea. |
| 18:40:11 | 6 | Q.    You don't think he made it up, do you? |
| 18:40:14 | 7 | A.    You know, Michael was a very confused guy, on |
| 18:40:21 | 8 | a lot of medication, and when he would write things to |
| 18:40:25 | 9 | me, such as asking me did I know that Marc was the |
| 18:40:29 | 10 | attorney for the Shusters, well, of course I did, and, |
| 18:40:33 | 11 | you know -- |
| 18:40:35 | 12 | Q.    He's telling you that Marc Toberoff contacted |
| 18:40:38 | 13 | him and said he had a mysterious billionaire. |
| 18:40:43 | 14 | A.    Yeah.  Well, I don't know where that came |
| 18:40:45 | 15 | from. |
| 18:40:46 | 16 | Q.    Did you think your brother -- your |
| 18:40:48 | 17 | stepbrother was lying? |
| 18:40:49 | 18 | A.    I don't -- I don't know that he came up with |
| 18:40:57 | 19 | the wording himself.  You know, I mean it -- I had |
| 18:41:01 | 20 | never heard this referred to in any way other than in |
| 18:41:04 | 21 | this letter, "mysterious billionaire."  I don't know |
| 18:41:08 | 22 | what that means. |
| 18:41:12 | 23 | Q.    Put $15 million up front, plus participation, |
| 18:41:15 | 24 | that happened to be exactly the same number that |
| 18:41:19 | 25 | Mr. Emanuel had offered you; correct? |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 302

| | | |
|---|---|---|
| 18:41:21 | 1 | A.   That was interesting, and that caught my eye. |
| 18:41:27 | 2 | Q.   Mr. Toberoff had told you that he knew |
| 18:41:32 | 3 | billionaire investors; correct? |
| 18:41:33 | 4 | A.   No, he never used that term. |
| 18:41:34 | 5 | Q.   Well, he used terms similar, like he knew |
| 18:41:39 | 6 | very wealthy investors and people in the entertainment |
| 18:41:41 | 7 | industry who had money and would buy properties; |
| 18:41:43 | 8 | correct? |
| 18:41:44 | 9 | A.   No.   The offer came from -- directly from Ari |
| 18:41:46 | 10 | Emanuel. |
| 18:41:47 | 11 | Q.   What offer? |
| 18:41:49 | 12 | A.   Well, Ari Emanuel was involved in that |
| 18:41:53 | 13 | proposal of the $15 million. |
| 18:41:56 | 14 | Q.   Was involved with Mr. Toberoff. |
| 18:41:58 | 15 | A.   No, was -- it was going to be Ari Emanuel |
| 18:42:02 | 16 | putting up the $15 million in that discussion, the |
| 18:42:07 | 17 | initial discussion that apparently happened with Kevin |
| 18:42:11 | 18 | Marks. |
| 18:42:11 | 19 | Q.   How do you know that it was so specific that |
| 18:42:13 | 20 | it was only going to be Ari Emanuel acquiring the |
| 18:42:17 | 21 | interest and not IPW or an entity with which |
| 18:42:23 | 22 | Mr. Toberoff had an interest? |
| 18:42:24 | 23 | A.   It wasn't mentioned to me. |
| 18:42:25 | 24 | Q.   It was not. |
| 18:42:26 | 25 | A.   No. |

LAURA SIEGEL LARSON - 7/22/2011

Page 303

| | | |
|---|---|---|
| 18:42:26 | 1 | Q. Okay. |
| 18:42:31 | 2 | A. Not that I recall. |
| 18:42:33 | 3 | Q. Then you're basing that off of your |
| 18:42:35 | 4 | recollection of the letter, what you just told me? |
| 18:42:38 | 5 | MR. TOBEROFF: What letter? What letter? |
| 18:42:40 | 6 | THE WITNESS: Yeah. |
| | 7 | BY MR. PETROCELLI: |
| 18:42:40 | 8 | Q. The letter you got from Mr. Marks that |
| 18:42:43 | 9 | advised you about the approach by Mr. Emanuel and -- |
| 18:42:46 | 10 | A. I believe that -- |
| 18:42:47 | 11 | MR. TOBEROFF: Wait a second. You can |
| 18:42:49 | 12 | answer -- let me slow this down for a second. |
| 18:42:52 | 13 | THE WITNESS: Of course. |
| 18:42:53 | 14 | MR. TOBEROFF: You can answer not in such a |
| 18:42:55 | 15 | way that discloses the substance of the letter from |
| 18:42:58 | 16 | Kevin Marks advising you that there had been a |
| 18:43:02 | 17 | $15 million offer. |
| 18:43:03 | 18 | THE WITNESS: Um-hum. |
| | 19 | BY MR. PETROCELLI: |
| 18:43:04 | 20 | Q. You just gave some testimony -- |
| 18:43:05 | 21 | MR. TOBEROFF: And make sure when you're |
| 18:43:06 | 22 | answering, you keep your parties straight. |
| 18:43:09 | 23 | THE WITNESS: Yes. |
| | 24 | BY MR. PETROCELLI: |
| 18:43:09 | 25 | Q. You just gave some testimony about the |

LAURA SIEGEL LARSON - 7/22/2011

Page 304

| | | |
|---|---|---|
| 18:43:11 | 1 | $15 million was to be from Ari Emanuel, and then I |
| 18:43:15 | 2 | pressed you about, well, maybe Mr. Toberoff would have |
| 18:43:18 | 3 | had a piece of it through IPW, and you said, well, |
| 18:43:22 | 4 | you're not sure, okay, words to that effect.  When you |
| 18:43:25 | 5 | gave that answer about the $15 million coming from |
| 18:43:28 | 6 | Ari, was that based on your recollection of the letter |
| 18:43:31 | 7 | from Kevin Marks? |
| 18:43:34 | 8 | A.   It -- I believe it was based not only on the |
| 18:43:36 | 9 | letter, but on a subsequent conversation with Kevin |
| 18:43:41 | 10 | Marks and also with Ari Emanuel. |
| 18:43:44 | 11 | Q.   Where they said that Mr. Emanuel was going to |
| 18:43:47 | 12 | fund the $15 million? |
| 18:43:48 | 13 | MR. TOBEROFF:  You can answer only with |
| 18:43:50 | 14 | respect to the conversation with Ari Emanuel. |
| 18:43:52 | 15 | THE WITNESS:  Yeah.  Well, you know, it may |
| 18:43:55 | 16 | not have solely been Ari, but, you know, he was |
| 18:43:59 | 17 | obviously the driving force in it. |
| | 18 | BY MR. PETROCELLI: |
| 18:44:02 | 19 | Q.   Yes, and again, you had no issue whatsoever |
| 18:44:06 | 20 | if Ari was funding an investment through IPW in which |
| 18:44:15 | 21 | Mr. Toberoff -- IP Worldwide in which Mr. Toberoff had |
| 18:44:18 | 22 | an interest; correct? |
| 18:44:19 | 23 | A.   At that point I wasn't aware of IP Worldwide, |
| 18:44:24 | 24 | if you're talking -- if you're talking about when |
| 18:44:27 | 25 | Kevin Marks first mentioned it. |

## LAURA SIEGEL LARSON - 7/22/2011

Page 305

| | | |
|---|---|---|
| 18:44:28 | 1 | Q.    Later on when you had your meeting with |
| 18:44:31 | 2 | Mr. Emanuel and again he discussed the $15 million |
| 18:44:35 | 3 | offer and you said ultimately "No, I want you to be an |
| 18:44:38 | 4 | agent, not a business partner" -- |
| 18:44:41 | 5 | A.    Um-hum. |
| 18:44:41 | 6 | Q.    -- had you done a deal for $15 million or |
| 18:44:52 | 7 | whatever with Mr. Emanuel, you would have had no |
| 18:44:52 | 8 | objection to doing it with IP Worldwide and |
| 18:44:52 | 9 | Mr. Toberoff participating; correct? |
| 18:44:54 | 10 | MR. TOBEROFF:  Incomplete hypothetical. |
| 18:44:55 | 11 | THE WITNESS:  Well, we didn't proceed with |
| 18:44:57 | 12 | it, so we weren't -- you know, it wasn't that we were |
| 18:45:00 | 13 | in favor of it.  We were not in favor of it because we |
| 18:45:03 | 14 | didn't do it. |
| | 15 | BY MR. PETROCELLI: |
| 18:45:03 | 16 | Q.    I understand, but you didn't have some hard |
| 18:45:06 | 17 | and fast rule that in no circumstance could Marc |
| 18:45:10 | 18 | Toberoff participate in the acquisition of any |
| 18:45:12 | 19 | interest that you would sell. |
| 18:45:13 | 20 | MR. TOBEROFF:  Same objection. |
| | 21 | BY MR. PETROCELLI: |
| 18:45:14 | 22 | Q.    Correct? |
| 18:45:15 | 23 | THE WITNESS:  What was the objection? |
| 18:45:17 | 24 | MR. TOBEROFF:  It's okay. |
| 18:45:18 | 25 | MR. PETROCELLI:  He doesn't even remember. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 306

| | | |
|---|---|---|
| 18:45:20 | 1 | MR. TOBEROFF: I remember. Incomplete |
| 18:45:23 | 2 | hypothetical. |
| | 3 | BY MR. PETROCELLI: |
| 18:45:24 | 4 | Q. In other words, you understand my question. |
| 18:45:27 | 5 | You had no hard and fast rule that if you were going |
| 18:45:29 | 6 | to sell your interest to IP Worldwide or Mr. Emanuel, |
| 18:45:33 | 7 | that Mr. Toberoff was not to participate economically; |
| 18:45:36 | 8 | correct? |
| 18:45:37 | 9 | A. It was never discussed. |
| 18:45:39 | 10 | MR. TOBEROFF: Same objection. |
| | 11 | BY MR. PETROCELLI: |
| 18:45:40 | 12 | Q. I understand it wasn't discussed, but you |
| 18:45:42 | 13 | didn't have the state of mind that you were going to |
| 18:45:43 | 14 | be adamantly opposed to it; correct? |
| 18:45:46 | 15 | MR. TOBEROFF: Incomplete hypothetical. |
| 18:45:47 | 16 | THE WITNESS: I didn't form an opinion. |
| | 17 | BY MR. PETROCELLI: |
| 18:45:49 | 18 | Q. Never; right? One way or the other; correct? |
| 18:45:51 | 19 | A. Not that I can recall. |
| 18:45:52 | 20 | Q. One way or the other; correct? |
| 18:45:54 | 21 | A. Correct. |
| 18:45:55 | 22 | Q. Okay. |
| 18:45:55 | 23 | A. I think, if I'm following that. |
| 18:46:18 | 24 | Q. By the way, when you wrote your stepbrother |
| 18:46:21 | 25 | back, did you straighten him out on things that you |

Merrill    Corporation    -    Los Angeles

800-826-0277                                      www.merillcorp.com/law

EXHIBIT S
743

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 307

| | | |
|---|---|---|
| 18:46:24 | 1 | think he had wrong in his letter to you of May 13? |
| 18:46:27 | 2 | A.   I did my best to. |
| 18:46:29 | 3 | Q.   Can you explain to me as best as you can, for |
| 18:46:32 | 4 | example, what you said about the billionaire, the |
| 18:46:36 | 5 | mysterious billionaire? |
| 18:46:37 | 6 | A.   You know, I don't remember how I put it to |
| 18:46:39 | 7 | him, but I, you know, I tried to in as simple a manner |
| 18:46:46 | 8 | as possible explain what he had wrong in this letter. |
| 18:46:51 | 9 | Regarding specifically the billionaire, I really don't |
| 18:46:54 | 10 | recall what I said. |
| 18:46:55 | 11 | Q.   Did you type the letter yourself? |
| | 12 | A.   Yes, I did. |
| 18:46:59 | 13 | Q.   Did your mother help you prepare it? |
| 18:47:01 | 14 | A.   I think she had input. |
| 18:47:02 | 15 | Q.   Now, did you explain to him the situation |
| 18:47:05 | 16 | with the Shusters? |
| 18:47:09 | 17 | A.   Well, I cleared up some of his misconceptions |
| 18:47:13 | 18 | about the Shusters. |
| 18:47:14 | 19 | Q.   How did you clear them up?  In other words, |
| 18:47:16 | 20 | just generally what did you say? |
| 18:47:19 | 21 | A.   Once again, you're asking me to answer |
| 18:47:22 | 22 | something that I really can't recall.  I'm sorry. |
| 18:47:25 | 23 | Q.   When you said you cleared up the Shuster |
| 18:47:27 | 24 | issue for him, did you explain to him that you were |
| 18:47:29 | 25 | aware that Mr. Toberoff was working with the Shusters? |

## LAURA SIEGEL LARSON - 7/22/2011

Page 308

| | | |
|---|---|---|
| 18:47:33 | 1 | A.    I'm sure I did. |
| 18:47:36 | 2 | Q.    Do you know when you wrote your responsive |
| 18:47:39 | 3 | letter back to this May 13 letter? |
| 18:47:41 | 4 | A.    I don't know exactly. |
| 18:47:43 | 5 | Q.    Did you have Mr. Toberoff assist in any way |
| 18:47:48 | 6 | in the response that you prepared? |
| 18:47:51 | 7 | A.    I believe I had him look at it. |
| 18:47:53 | 8 | Q.    And before you sent it to Mr. -- |
| 18:47:55 | 9 | A.    Yes. |
| 18:47:56 | 10 | Q.    And why did you have him look at it? |
| 18:47:58 | 11 | A.    Well, you know, it was dealing with issues |
| 18:48:04 | 12 | that had to do with legal matters, and I didn't want |
| 18:48:07 | 13 | to misstate something that basically would, you know, |
| 18:48:11 | 14 | come back and bite me in the butt later.  So I just |
| 18:48:15 | 15 | wanted -- wanted to make sure that I was as a civilian |
| 18:48:19 | 16 | expressing myself properly. |
| 18:48:21 | 17 | Q.    And in order for Mr. Toberoff to assist or |
| 18:48:27 | 18 | review the letter that you drafted, you would have |
| 18:48:30 | 19 | sent him Mr. Michael Siegel's May 13 letter so he |
| 18:48:35 | 20 | could have both letters. |
| 18:48:36 | 21 | A.    This letter? |
| 18:48:37 | 22 | Q.    Correct. |
| 18:48:37 | 23 | A.    Probably. |
| 18:48:39 | 24 | Q.    Okay.  And take a look at the Toberoff |
| 18:48:42 | 25 | timeline for a second, please, which is Exhibit 58. |

**EXHIBIT S**
**745**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 309

| | | |
|---|---|---|
| 18:48:45 | 1 | A.    I already have that, don't I? |
| 18:48:49 | 2 | Q.    Yes. |
| 18:48:49 | 3 | MR. PETROCELLI:  Can you fish that out for |
| 18:48:51 | 4 | her, Jason?  Thank you. |
| 18:48:53 | 5 | THE WITNESS:  Thank you. |
| | 6 | BY MR. PETROCELLI: |
| | 7 | Q.    I'd like to direct your attention -- |
| 18:48:54 | 8 | THE WITNESS:  Do I still need this one? |
| 18:48:56 | 9 | MR. PETROCELLI:  Yeah, leave it there. |
| 18:49:10 | 10 | THE WITNESS:  Okay.  Thank you. |
| | 11 | MR. TOBEROFF:  I can help explain it. |
| | 12 | MR. KLINE:  Are you reading our notes, Marc? |
| | 13 | THE WITNESS:  Thank you. |
| 18:49:17 | 14 | MR. TOBEROFF:  No, because I haven't gotten a |
| 18:49:17 | 15 | package -- duplicate packages with your notes. |
| 18:49:22 | 16 | MR. KLINE:  Oh, no.  Did you read this note? |
| | 17 | MR. PETROCELLI:  Okay.  So you have them. |
| 18:49:24 | 18 | MR. KLINE:  Please don't -- |
| 18:49:25 | 19 | MR. TOBEROFF:  Of course not.  I'm making a |
| 18:49:28 | 20 | joke.  Lighten up. |
| | 21 | BY MR. PETROCELLI: |
| 18:49:29 | 22 | Q.    So you have the Superman -- you have the Marc |
| 18:49:32 | 23 | Toberoff timeline, Exhibit 58, in front of you? |
| 18:49:33 | 24 | A.    Yes. |
| 18:49:33 | 25 | Q.    And you also have Exhibit 30, the Michael |

## LAURA SIEGEL LARSON - 7/22/2011

Page 310

| | | |
|---|---|---|
| 18:49:37 | 1 | Siegel letter to you dated May 13, 2003? |
| 18:49:39 | 2 | A.    Yes, I do. |
| 18:49:40 | 3 | Q.    Now, go to the end of the fourth page as |
| 18:49:46 | 4 | Q 0004 and you'll see a reference to a July 5, 2003 -- |
| 18:50:02 | 5 | first of all, go to the prior page of this Exhibit 58. |
| 18:50:06 | 6 | A.    Okay. |
| 18:50:06 | 7 | Q.    And you'll see that the author of this |
| 18:50:09 | 8 | document is identifying Michael Siegel's May 13, 2003, |
| 18:50:15 | 9 | letter, the one that you have in front of you as |
| 18:50:18 | 10 | Exhibit 30.  Do you see that? |
| 18:50:19 | 11 | A.    I do. |
| 18:50:19 | 12 | Q.    And then he is -- he or she is purporting to |
| 18:50:23 | 13 | state some of the contents of that letter.  Do you see |
| 18:50:26 | 14 | that? |
| 18:50:26 | 15 | A.    I see a paragraph about it. |
| 18:50:29 | 16 | Q.    Okay.  And now dropping down to the end of |
| 18:50:32 | 17 | the next page with the Bates label Q 0004, the |
| 18:50:43 | 18 | reference to the July 5, 2003, date, do you see that? |
| 18:50:43 | 19 | A.    Yes, I do. |
| 18:50:43 | 20 | Q.    It says "Laura Siegel reveals her ignorance |
| 18:50:52 | 21 | of Toberoff's dubious actions in her return letter |
| 18:50:52 | 22 | back to Michael."  Putting aside the characterization |
| 18:50:54 | 23 | of your ignorance, does July 5, 2003, sound right to |
| 18:50:58 | 24 | you as around the time that you responded to the May |
| 18:51:01 | 25 | 13, 2003, letter? |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 311

| | | |
|---|---|---|
| 18:51:04 | 1 | A. It could have been. |
| 18:51:11 | 2 | Q. Okay. Is it fair to say that your letter |
| 18:51:16 | 3 | back to Mr. Michael Siegel did not agree with any of |
| 18:51:24 | 4 | his criticisms of Mr. Toberoff's actions and |
| 18:51:29 | 5 | Mr. Toberoff generally? |
| 18:51:32 | 6 | A. Well, whoever stole this document, you know, |
| 18:51:36 | 7 | is doing his version of what he's reading into |
| 18:51:40 | 8 | whatever the letter said. |
| 18:51:42 | 9 | Q. You're not following my question. |
| 18:51:44 | 10 | A. Well, I haven't read the letter in a long |
| 18:51:51 | 11 | time. |
| 18:51:51 | 12 | Q. My question to you is when you wrote back to |
| 18:51:54 | 13 | Michael -- |
| 18:51:54 | 14 | A. Yes. |
| 18:51:56 | 15 | Q. -- in response to his May 13, 2003, letter, |
| 18:51:59 | 16 | is it fair to say that you expressed no agreement with |
| 18:52:04 | 17 | any of his criticisms of Mr. Toberoff? |
| 18:52:08 | 18 | A. I would say that's probably safe to say. |
| 18:52:19 | 19 | Q. Did you tell Michael Siegel in your response |
| 18:52:26 | 20 | letter back that Mr. Toberoff does not have a |
| 18:52:31 | 21 | production company? |
| 18:52:32 | 22 | A. Yes, I believe I did. |
| 18:52:35 | 23 | Q. And you will see on the next page of this |
| 18:52:39 | 24 | document, Exhibit 58, in the description of the entry |
| 18:52:45 | 25 | July 5, 2003 -- |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

| | | |
|---|---|---|
| 18:52:47 | 1 | A.  I'm sorry.  You're saying continuation on the |
| 18:52:50 | 2 | top of the page? |
| 18:52:51 | 3 | Q.  Yes.  It says "Also, in the letter back to |
| 18:52:53 | 4 | Michael Siegel, that MT helped Laura Siegel draft -- |
| 18:52:57 | 5 | in response to Michael's accusations of Toberoff, |
| 18:53:00 | 6 | Laura clearly states that MT does not have a |
| 18:53:06 | 7 | production company."  And that was your belief at the |
| 18:53:08 | 8 | time; correct? |
| 18:53:10 | 9 | A.  Correct. |
| 18:53:11 | 10 | Q.  And it goes on to say that, in parentheses: |
| 18:53:17 | 11 | "(This is false -- Marc Toberoff's |
| 18:53:19 | 12 | IPW has been in existence, partly |
| 18:53:21 | 13 | funded by Ari Emanuel, since at |
| 18:53:21 | 14 | least 2002).  In the draft of the |
| 18:53:26 | 15 | letter, MT crossed out the statement |
| 18:53:27 | 16 | that he does not have a production |
| 18:53:29 | 17 | company, and writes," quote, "'MT |
| 18:53:33 | 18 | has not plans to produce a SUPERMAN |
| 18:53:36 | 19 | movie, nor is this feasible given |
| 18:53:38 | 20 | the division of ownership of the |
| 18:53:41 | 21 | rights,'" end of quotes. |
| 18:53:43 | 22 | Now, does that -- is that consistent with |
| 18:53:47 | 23 | your recollection that your statement that |
| 18:53:51 | 24 | Mr. Toberoff did not have a production company was |
| 18:53:54 | 25 | crossed out by Mr. Toberoff in the final draft and |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON – 7/22/2011

Page 313

| | | |
|---|---|---|
| 18:53:57 | 1 | replaced with the quoted language that I just read? |
| 18:53:59 | 2 | A.   It could have been. |
| 18:54:03 | 3 | Q.   And when Mr. Toberoff made his changes to the |
| 18:54:07 | 4 | letter and returned it to you, did you review it and |
| 18:54:11 | 5 | sign it before you sent it out as your response letter |
| 18:54:15 | 6 | back to Michael? |
| 18:54:16 | 7 | A.   Well, he made suggestions of changes in the |
| 18:54:22 | 8 | wording of certain areas, and, you know, I retyped the |
| 18:54:28 | 9 | letter, accepted some of the things that he said and |
| 18:54:30 | 10 | didn't use some other suggestions that he made. |
| 18:54:33 | 11 | Q.   How did he convey his suggestions to you? |
| 18:54:36 | 12 | A.   He wrote it on -- he wrote it on this |
| 18:54:39 | 13 | letter -- no, not this letter.  He wrote it on that |
| 18:54:43 | 14 | letter that's being discussed here and faxed it back |
| 18:54:46 | 15 | to me. |
| 18:54:47 | 16 | Q.   Okay.  So you did engage in faxed |
| 18:54:50 | 17 | communication with Mr. Toberoff from time to time. |
| 18:54:51 | 18 | A.   Yes. |
| 18:54:53 | 19 | Q.   Okay.  Including with respect to this very |
| 18:54:55 | 20 | correspondence that we're discussing. |
| 18:54:56 | 21 | A.   I believe so. |
| 18:54:58 | 22 | Q.   Okay. |
| 18:54:59 | 23 | Now, did you show him the final draft before |
| 18:55:03 | 24 | you sent it out? |
| 18:55:05 | 25 | A.   I believe I did. |

**EXHIBIT S**

**750**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 314

| | | |
|---|---|---|
| 18:55:07 | 1 | Q. And which of the changes did you reject? |
| 18:55:16 | 2 | A. I don't remember. I just remember the |
| 18:55:18 | 3 | process, but I don't remember the contents. |
| 18:55:37 | 4 | Q. Now, by the time you received this letter, |
| 18:55:43 | 5 | Mr. Emanuel was -- |
| 18:55:44 | 6 | A. I'm sorry. You're talking about the May 13 |
| 18:55:47 | 7 | letter? |
| 18:55:47 | 8 | Q. Thank you. |
| 18:55:48 | 9 | By the time you received the May 13, 2003, |
| 18:55:50 | 10 | letter, Exhibit 30, and then responded with your |
| 18:55:53 | 11 | letter that you've been describing, during that period |
| 18:55:58 | 12 | of time, that's when you knew that Mr. Emanuel was |
| 18:56:07 | 13 | secretly attempting to purchase Michael Siegel's |
| 18:56:09 | 14 | interest; correct? |
| 18:56:11 | 15 | MR. TOBEROFF: Misstates the record. |
| 18:56:13 | 16 | THE WITNESS: I -- you know, I wouldn't use |
| 18:56:16 | 17 | the word "secretly," but I believe an offer -- an |
| 18:56:20 | 18 | offer may have been made during that period. |
| | 19 | BY MR. PETROCELLI: |
| 18:56:21 | 20 | Q. You said you wouldn't use the word |
| 18:56:24 | 21 | "secretly," but you knew that Mr. Michael Siegel did |
| 18:56:26 | 22 | not know that it was Mr. Emanuel who was the |
| 18:56:29 | 23 | prospective purchaser. We've discussed that already; |
| 18:56:31 | 24 | correct? |
| 18:56:31 | 25 | A. Yes, we did. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 315

| | | |
|---|---|---|
| 18:56:32 | 1 | Q.    And you did not tell Michael Siegel in your |
| 18:56:39 | 2 | response letter back that Mr. Emanuel was indeed the |
| 18:56:46 | 3 | very person with your full knowledge and blessing who |
| 18:56:48 | 4 | was attempting to acquire his interest. |
| 18:56:51 | 5 | MR. TOBEROFF:  Asked and answered. |
| 18:56:52 | 6 | THE WITNESS:  No, I did not mention that. |
| | 7 | BY MR. PETROCELLI: |
| 18:56:56 | 8 | Q.    And your letter back to Mr. Michael Siegel |
| 18:56:59 | 9 | does in fact mention Mr. Emanuel; correct? |
| 18:57:01 | 10 | A.    I'm sorry.  Does or does not? |
| 18:57:03 | 11 | Q.    Does. |
| 18:57:05 | 12 | A.    Does mention Mr. Emanuel? |
| 18:57:07 | 13 | Q.    Yes. |
| 18:57:07 | 14 | A.    I don't -- I don't recall. |
| 18:57:16 | 15 | Q.    Have you given any consideration to the idea |
| 18:57:27 | 16 | that is being stated in these documents that |
| 18:57:30 | 17 | Mr. Toberoff is going to end up with the lion's share |
| 18:57:32 | 18 | of the money with respect to any disposition of the |
| 18:57:39 | 19 | termination interests of the -- stemming from Superman |
| 18:57:42 | 20 | both from the Siegel side and the Shuster side? |
| 18:57:44 | 21 | A.    Well, I disagree with your characterization |
| 18:57:49 | 22 | of lion's share. |
| 18:57:52 | 23 | Q.    Well, let's -- |
| 18:57:52 | 24 | A.    I mean he has a contingency agreement with me |
| 18:57:56 | 25 | and with my mom, and he had a contingency agreement |

Merrill   Corporation   -   Los Angeles

800-826-0277                                    www.merrillcorp.com/law

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 316

| | | |
|---|---|---|
| 18:57:59 | 1 | with the Shusters. |
| 18:58:00 | 2 | Q.   So when you do the math, though, as was |
| 18:58:03 | 3 | pointed out in some of these documents, he ends up |
| 18:58:05 | 4 | with the biggest percentage, bigger than what you |
| 18:58:09 | 5 | would receive and bigger than what the Shuster side |
| 18:58:13 | 6 | would receive; right? |
| 18:58:14 | 7 | A.   He was being compensated for at this point |
| 18:58:16 | 8 | nearly ten years of work. |
| 18:58:18 | 9 | Q.   But when you made these deals, there wasn't |
| 18:58:20 | 10 | ten years of work; correct? |
| 18:58:22 | 11 | A.   No, but we had no idea how long or how much |
| 18:58:24 | 12 | or how expensive it was all going to be. |
| 18:58:26 | 13 | Q.   So you understood that at the end of the day |
| 18:58:30 | 14 | Mr. Toberoff might end up with 45 percent or so of the |
| 18:58:36 | 15 | total proceeds with you and your mother's side, |
| 18:58:42 | 16 | Michael Siegel's side 27 and a half percent and the |
| 18:58:46 | 17 | Shuster side 25 percent; correct? |
| 18:58:48 | 18 | A.   You know, I'm sorry, but you're throwing |
| 18:58:51 | 19 | around percentages, and that's not correct. |
| 18:58:52 | 20 | Q.   But you have fully appreciated that at the |
| 18:58:55 | 21 | end of the day Mr. Toberoff would have the biggest |
| 18:59:01 | 22 | stake in the proceeds. |
| 18:59:03 | 23 | A.   My only concerns -- excuse me.  Were you |
| 18:59:06 | 24 | finished?  I didn't want to interrupt you. |
| 18:59:07 | 25 | Q.   I want to make sure you understand what I'm |

**EXHIBIT S**

**753**

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

# LAURA SIEGEL LARSON - 7/22/2011

Page 317

| | | |
|---|---|---|
| 18:59:10 | 1 | asking you, that you have understood and understand to |
| 18:59:15 | 2 | this day that given his agreements with the Shuster |
| 18:59:19 | 3 | family, given his agreements with you and your mother, |
| 18:59:23 | 4 | given the fact that you succeeded to your half |
| 18:59:28 | 5 | brother's rights, that Mr. Toberoff's aggregate share |
| 18:59:37 | 6 | in any proceeds from the disposition of all these |
| 18:59:40 | 7 | Shuster and Siegel interests is greater than your |
| 18:59:44 | 8 | interest and greater than the Shuster interest; |
| 18:59:46 | 9 | correct? |
| 18:59:46 | 10 | A.   I was only concerned with my interest.  I did |
| 18:59:50 | 11 | not even know what his percentage was with the |
| 18:59:53 | 12 | Shusters. |
| 18:59:53 | 13 | Q.   But you certainly became aware of it when you |
| 18:59:56 | 14 | read it in the timeline document; correct? |
| 18:59:59 | 15 | A.   Well, I didn't get this timeline until |
| 19:00:03 | 16 | much -- a long time afterward, and, you know -- |
| 19:00:06 | 17 | Q.   Well, when you saw -- take a look at the |
| 19:00:09 | 18 | timeline.  That's Exhibit 58 -- bear with me.  I'm |
| 19:00:37 | 19 | looking for -- |
| 19:00:52 | 20 | Here it is. |
| 19:01:02 | 21 | When you were meeting with David Michaels, by |
| 19:01:04 | 22 | the way, did he run through these different numbers in |
| 19:01:08 | 23 | the way that I just did in describing to you that |
| 19:01:10 | 24 | Mr. Toberoff would end up with the biggest share? |
| 19:01:14 | 25 | A.   He ran some numbers by us, but, you know, he |

EXHIBIT S
754

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 318

| | | |
|---|---|---|
| 19:01:17 | 1 | offered no proof. |
| 19:01:20 | 2 | Q. Well, you knew what your agreements were, and |
| 19:01:22 | 3 | he was aware of them as well. |
| 19:01:24 | 4 | A. He was actually mischaracterizing to us what |
| 19:01:26 | 5 | our agreement was. |
| 19:01:27 | 6 | Q. You mean the percentages? |
| 19:01:28 | 7 | A. Correct. |
| 19:01:29 | 8 | Q. In what way did he mischaracterize it? |
| 19:01:32 | 9 | A. He was inflating it. |
| 19:01:33 | 10 | Q. It was 40 percent; right? |
| 19:01:35 | 11 | A. It was 40 percent, but he was claiming |
| 19:01:37 | 12 | something much larger than that. |
| 19:01:39 | 13 | Q. He was claiming an additional 5 or 10 percent |
| 19:01:42 | 14 | that you thought no longer applied? |
| 19:01:44 | 15 | A. Well, that I knew no longer applied. |
| 19:01:55 | 16 | Q. Okay. |
| 19:02:00 | 17 | Can you turn to page 6 of Exhibit 58. |
| 19:02:15 | 18 | A. Yeah. |
| 19:02:21 | 19 | Q. First of all, on page 1 it states: |
| 19:02:25 | 20 | "As it stands right now, the |
| 19:02:27 | 21 | single person who would stand to |
| 19:02:28 | 22 | gain the MOST in a settlement with |
| 19:02:30 | 23 | Time Warner regarding the ongoing |
| 19:02:33 | 24 | SUPERMAN legal dispute would not be |
| 19:02:34 | 25 | the heirs themselves, but Marc |

EXHIBIT S
755

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 319

| | | |
|---|---|---|
| 19:02:36 | 1 | Toberoff." |
| 19:02:37 | 2 | Now, when you read that, did you agree with |
| 19:02:39 | 3 | that statement? |
| 19:02:40 | 4 | A.    No. |
| 19:02:41 | 5 | Q.    But it is factually true that in terms of the |
| 19:02:43 | 6 | division of the proceeds, he would receive the largest |
| 19:02:47 | 7 | share; correct? |
| 19:02:48 | 8 | A.    What I objected to was the -- was the way |
| 19:02:51 | 9 | this was -- the way that this was presented. |
| 19:02:54 | 10 | Q.    Putting this aside, though, in terms of the |
| 19:02:56 | 11 | mathematical division of the shares, the Toberoff |
| 19:03:01 | 12 | share is the biggest share.  It's 45 or 40 -- in |
| 19:03:05 | 13 | excess of 45 percent; correct? |
| 19:03:08 | 14 | A.    Well, it's not bigger than my share now. |
| 19:03:10 | 15 | Q.    Why is that? |
| 19:03:12 | 16 | A.    Well, I inherited my mother's, I inherited |
| 19:03:16 | 17 | Michael's, and I have my own. |
| 19:03:17 | 18 | Q.    But if you take all of that, Mr. Toberoff |
| 19:03:21 | 19 | gets 40 percent of that; right? |
| 19:03:22 | 20 | A.    He gets 40 percent.  I get 60 percent. |
| 19:03:25 | 21 | Q.    And then he gets 40 percent of your piece, |
| 19:03:29 | 22 | which is half, with the Shusters owning the other |
| 19:03:33 | 23 | half; correct? |
| 19:03:33 | 24 | A.    You're not saying that he gets half of mine. |
| 19:03:36 | 25 | You're saying that my share of the overall Superman |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 320

| | | |
|---|---|---|
| 19:03:39 | 1 | copyright is 50 percent? |
| 19:03:41 | 2 | Q.    Correct.  And he gets 40 percent of your 50 |
| 19:03:47 | 3 | percent; correct? |
| 19:03:47 | 4 | A.    Correct. |
| 19:03:47 | 5 | Q.    And he gets 50 percent of the Shuster 50 |
| 19:03:49 | 6 | percent; right? |
| 19:03:49 | 7 | A.    If he does. |
| 19:03:53 | 8 | Q.    Well, you saw that referenced in the timeline |
| 19:03:54 | 9 | document; right? |
| 19:03:55 | 10 | A.    Yeah, but there are errors in this timeline, |
| 19:03:58 | 11 | so I don't know if that's correct. |
| 19:03:59 | 12 | Q.    You don't know that it's incorrect, do you? |
| 19:04:01 | 13 | A.    No. |
| 19:04:01 | 14 | Q.    The bottom line is you are aware that there's |
| 19:04:04 | 15 | a possibility that he could end up as the biggest |
| 19:04:07 | 16 | financial recipient of proceeds among you and the |
| 19:04:11 | 17 | Shuster family and him; correct? |
| 19:04:13 | 18 | A.    Look -- |
| 19:04:14 | 19 | Q.    Are you aware of that? |
| 19:04:16 | 20 | A.    It may be possible.  I'm not doing the math |
| 19:04:28 | 21 | today. |
| 19:04:29 | 22 | Q.    Have you ever calculated how much you would |
| 19:04:33 | 23 | have received today had you accepted the proposal that |
| 19:04:45 | 24 | DC had made back in 2001, 2002? |
| 19:04:49 | 25 | A.    At the time it was offered -- |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

## LAURA SIEGEL LARSON - 7/22/2011

Page 321

| | | |
|---|---|---|
| 19:04:50 | 1 | MR. TOBEROFF:  Again, objection.  Compound. |
| 19:04:53 | 2 | Which are you referring to, the February, 2002, draft |
| 19:04:56 | 3 | or the Kevin Marks letter in October of 2001? |
| 19:05:04 | 4 | MR. PETROCELLI:  Either one. |
| 19:05:05 | 5 | Q.   Have you ever done the -- |
| 19:05:06 | 6 | MR. TOBEROFF:  Compound. |
| | 7 | BY MR. PETROCELLI: |
| 19:05:07 | 8 | Q.   Have you ever done the calculation of what |
| 19:05:10 | 9 | dollars would have been received by you and your |
| 19:05:13 | 10 | mother? |
| 19:05:14 | 11 | A.   Well, you're talking about two different |
| 19:05:17 | 12 | calculations. |
| 19:05:17 | 13 | Q.   Have you done the calculations for both of |
| 19:05:19 | 14 | them? |
| 19:05:19 | 15 | A.   You say ever.  At one time when it was |
| 19:05:22 | 16 | initially offered, you know, we did a projection on |
| 19:05:27 | 17 | it.  I haven't done it recently. |
| 19:05:31 | 18 | Q.   Do you have any -- |
| 19:05:32 | 19 | A.   We just knew a lot of money had already been |
| 19:05:35 | 20 | owed to us, which was the basis of the accounting |
| 19:05:41 | 21 | claim. |
| 19:05:41 | 22 | Q.   How is it -- |
| 19:05:41 | 23 | A.   That lawsuit. |
| 19:05:42 | 24 | Q.   How is it that you think that you can |
| 19:05:45 | 25 | financially benefit from now having, like you said, a |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 322

| Time | Line | Text |
|---|---|---|
| 19:05:50 | 1 | hundred percent of 50 percent of the copyright subject |
| 19:05:55 | 2 | to Mr. Toberoff's share?  How is it that you can |
| 19:05:58 | 3 | financially benefit from the termination interests |
| 19:06:00 | 4 | that you believe you have recaptured and that you -- |
| 19:06:04 | 5 | that you believe you have recaptured? |
| 19:06:06 | 6 | MR. TOBEROFF:  Objection.  Vague and |
| 19:06:08 | 7 | ambiguous. |
|  | 8 | BY MR. PETROCELLI: |
| 19:06:09 | 9 | Q.   You can answer. |
| 19:06:10 | 10 | A.   It's so broad, I don't understand. |
| 19:06:12 | 11 | Q.   Well, what are the ways in which you believe |
| 19:06:13 | 12 | that you can turn your termination interest into |
| 19:06:16 | 13 | money? |
| 19:06:16 | 14 | MR. TOBEROFF:  I instruct you not to answer |
| 19:06:18 | 15 | to the extent your answer reveals communications with |
| 19:06:27 | 16 | your attorney, either with me or with your former |
| 19:06:30 | 17 | attorney, Kevin Marks. |
|  | 18 | BY MR. PETROCELLI: |
| 19:06:32 | 19 | Q.   I don't believe you need to rely on |
| 19:06:36 | 20 | attorney-client discussions to answer this question. |
| 19:06:38 | 21 | I'm asking you, an extremely intelligent person who |
| 19:06:41 | 22 | has been involved with this for many years. |
| 19:06:44 | 23 | MR. TOBEROFF:  Excuse me. |
|  | 24 | BY MR. PETROCELLI: |
| 19:06:45 | 25 | Q.   In what ways have you considered that you |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 323

| 19:06:47 | 1 | might be able to turn your termination interest, |
| 19:06:51 | 2 | whatever it is and whenever it's final, into money? |
| 19:06:56 | 3 | MR. TOBEROFF:  I instruct you not to answer |
| 19:06:59 | 4 | to the extent your answer reveals the contents of |
| 19:07:08 | 5 | attorney-client communications.  If you can answer |
| 19:07:14 | 6 | without divulging the substance of attorney-client |
| 19:07:18 | 7 | communications, then you can only answer to that |
| 19:07:20 | 8 | extent. |
| 19:07:21 | 9 | THE WITNESS:  Yeah. |
| 19:07:21 | 10 | My answer is that's the subject of |
| 19:07:25 | 11 | litigation. |
|  | 12 | BY MR. PETROCELLI: |
| 19:07:26 | 13 | Q.  What's the subject of litigation? |
| 19:07:28 | 14 | A.  You know, what -- what my rights were and |
| 19:07:32 | 15 | potentially what the value of the rights are. |
| 19:07:33 | 16 | Q.  But you understand that -- you're talking |
| 19:07:35 | 17 | about the lawsuit that you filed on your termination |
| 19:07:37 | 18 | interest? |
| 19:07:38 | 19 | A.  Yes. |
| 19:07:38 | 20 | Q.  Okay.  Now, you understand, though, that as a |
| 19:07:41 | 21 | result of that lawsuit, and let's say you're |
| 19:07:45 | 22 | completely successful in every respect after all |
| 19:07:48 | 23 | appeals and so forth, the only compensation you would |
| 19:07:51 | 24 | receive as a result of the lawsuit is an accounting |
| 19:07:55 | 25 | from 1999 to 2013; correct? |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 324

| 19:07:58 | 1 | A. Not necessarily. |
| 19:07:59 | 2 | Q. What other compensation do you believe in |
| 19:08:02 | 3 | terms of money that would -- can be awarded to you by |
| 19:08:07 | 4 | way of a lawsuit? |
| 19:08:08 | 5 | A. I believe it depends on the court ruling. |
| 19:08:10 | 6 | Q. How so? |
| 19:08:12 | 7 | MR. TOBEROFF: I again -- |
| | 8 | BY MR. PETROCELLI: |
| 19:08:14 | 9 | Q. How so do you -- |
| 19:08:15 | 10 | MR. TOBEROFF: If you have any understanding |
| 19:08:16 | 11 | of those things that are independent of the advice of |
| 19:08:19 | 12 | counsel, you can answer. If you don't, I instruct you |
| 19:08:21 | 13 | not to answer. |
| | 14 | BY MR. PETROCELLI: |
| 19:08:22 | 15 | Q. I'm not asking about your legal advice. I'm |
| 19:08:24 | 16 | asking about you as a plaintiff in that -- |
| 19:08:25 | 17 | MR. TOBEROFF: That's not the instruction. |
| | 18 | BY MR. PETROCELLI: |
| 19:08:26 | 19 | Q. -- in that, and you can disregard whatever |
| 19:08:28 | 20 | Mr. Toberoff and you have discussed. But do you have |
| 19:08:31 | 21 | an understanding that you have a claim for money in |
| 19:08:36 | 22 | that case other than the accounting claim? |
| 19:08:42 | 23 | A. Well, I believe that there are numerous |
| 19:08:46 | 24 | appeals. There are numerous issues that are still |
| 19:08:48 | 25 | going to be examined in a court of law that could |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 325

| | | |
|---|---|---|
| 19:08:52 | 1 | directly affect, you know, my income going forward. |
| 19:08:58 | 2 | Q.   Well, is it your -- but isn't your |
| 19:09:02 | 3 | understanding that the only way -- the only possible |
| 19:09:08 | 4 | money that you can recover from your lawsuit is |
| 19:09:13 | 5 | whatever the court finally determines is the amount |
| 19:09:17 | 6 | that DC was required to account and pay to you for the |
| 19:09:22 | 7 | years 1999 through 2013 for the works in which the |
| 19:09:28 | 8 | court finds you had an interest? |
| 19:09:30 | 9 | MR. TOBEROFF:   Again, my instruction is if |
| 19:09:32 | 10 | you can answer that question on your own and not based |
| 19:09:35 | 11 | on any advice or discussions with counsel, you can |
| 19:09:38 | 12 | answer the question.   If your answer is based on your |
| 19:09:41 | 13 | discussions with counsel, then I instruct you not to |
| 19:09:46 | 14 | answer. |
| 19:09:48 | 15 | THE WITNESS:   Going beyond the lawsuit, there |
| 19:09:52 | 16 | are always possibilities. |
| | 17 | BY MR. PETROCELLI: |
| 19:09:52 | 18 | Q.   I was just focused on the lawsuit, that the |
| 19:09:54 | 19 | only -- that you have an understanding that the only |
| 19:09:56 | 20 | money that you can recover from your lawsuit is the |
| 19:10:00 | 21 | accounting money for the period 1999 to 2013.   Are you |
| 19:10:05 | 22 | aware of that? |
| 19:10:06 | 23 | A.   Yes. |
| 19:10:07 | 24 | Q.   Okay.   And in terms of getting any other |
| 19:10:13 | 25 | money in respect of your termination interest, you |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON – 7/22/2011

Page 326

| | | |
|---|---|---|
| 19:10:16 | 1 | understand that that would require some kind of |
| 19:10:17 | 2 | business transaction? |
| 19:10:18 | 3 | A.   Yes, that's correct. |
| 19:10:19 | 4 | Q.   Okay.  A business transaction in which you |
| 19:10:22 | 5 | would partner up with someone or license someone or |
| 19:10:26 | 6 | sell your interest; correct? |
| 19:10:27 | 7 | A.   Correct. |
| 19:10:33 | 8 | Q.   When do you believe that you will be able to |
| 19:10:35 | 9 | do so? |
| 19:10:37 | 10 | MR. TOBEROFF:  I'm instructing you not to |
| 19:10:39 | 11 | answer unless you can answer independent of any advice |
| 19:10:43 | 12 | of counsel, if you can answer.  If your answer |
| 19:10:48 | 13 | implicates advice of counsel, I instruct you not to |
| 19:10:50 | 14 | answer the question. |
| 19:10:51 | 15 | THE WITNESS:  Yeah, I mean -- |
| 19:10:53 | 16 | MR. TOBEROFF:  You don't -- do you understand |
| 19:10:55 | 17 | the instruction? |
| 19:10:55 | 18 | THE WITNESS:  I do. |
| 19:10:56 | 19 | MR. TOBEROFF:  Okay. |
| 19:10:57 | 20 | THE WITNESS:  I do. |
| 19:10:57 | 21 | I'm not able to say anything, you know, |
| 19:11:01 | 22 | specific because it all involves discussions with my |
| 19:11:06 | 23 | attorney regarding legal matters. |
| 19:11:08 | 24 | MR. PETROCELLI:  Well, that doesn't necess- |
| 19:11:09 | 25 | arily mean you can't answer the question.  Let me -- |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 327

| | | |
|---|---|---|
| 19:11:12 | 1 | THE WITNESS:  In my mind it does. |
| 19:11:13 | 2 | MR. PETROCELLI:  Let me try again. |
| 19:11:15 | 3 | Q.  Do you have an understanding -- |
| 19:11:17 | 4 | MR. TOBEROFF:  It does pursuant to my |
| 19:11:21 | 5 | instruction. |
| | 6 | BY MR. PETROCELLI: |
| 19:11:21 | 7 | Q.  Do you have an understanding that -- |
| 19:11:31 | 8 | withdrawn. |
| 19:11:31 | 9 | Do you have a plan or intent to enter into a |
| 19:11:36 | 10 | business transaction regarding your Superman rights? |
| 19:11:39 | 11 | A.  I believe I have very valuable rights and |
| 19:11:43 | 12 | that at some point I will be able to profit from them. |
| 19:11:48 | 13 | Q.  Do -- what are the ways in which you believe |
| 19:11:50 | 14 | you can profit from them? |
| 19:11:52 | 15 | MR. TOBEROFF:  Same instruction. |
| 19:11:55 | 16 | THE WITNESS:  That's something that I really |
| 19:11:56 | 17 | can't respond to. |
| | 18 | BY MR. PETROCELLI: |
| 19:11:58 | 19 | Q.  Well, you just said "I believe they're |
| 19:12:00 | 20 | valuable."  Why do you believe they're valuable? |
| 19:12:02 | 21 | A.  Because it's Superman. |
| 19:12:04 | 22 | Q.  Do you believe that you'll have the ability |
| 19:12:06 | 23 | to sell them? |
| 19:12:08 | 24 | MR. TOBEROFF:  Same instruction.  Same |
| 19:12:11 | 25 | instruction. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc

LAURA SIEGEL LARSON - 7/22/2011

Page 328

| | | |
|---|---|---|
| 19:12:11 | 1 | THE WITNESS: I can't respond to that. |
| | 2 | BY MR. PETROCELLI: |
| 19:12:15 | 3 | Q. Have you ever attempted to find out, other |
| 19:12:19 | 4 | than through talking to Marc Toberoff, what kind of |
| 19:12:23 | 5 | value there is in these Superman rights for which you |
| 19:12:26 | 6 | have been involved for 15 years or so? |
| 19:12:29 | 7 | MR. TOBEROFF: Same instruction, and that |
| 19:12:31 | 8 | instruction doesn't just implicate talking to Marc |
| 19:12:34 | 9 | Toberoff. It implicates things that Marc Toberoff has |
| 19:12:37 | 10 | done on your behalf and my work product. |
| 19:12:40 | 11 | THE WITNESS: It's all intertwined with |
| 19:12:44 | 12 | matters that are of a legal nature, so I can't answer |
| 19:12:47 | 13 | that question. |
| | 14 | BY MR. PETROCELLI: |
| 19:12:49 | 15 | Q. Have you identified in your own mind or |
| 19:12:51 | 16 | thinking any prospective purchasers of your rights? |
| 19:12:56 | 17 | MR. TOBEROFF: Same instruction. |
| 19:12:58 | 18 | THE WITNESS: No one specific. |
| | 19 | BY MR. PETROCELLI: |
| 19:13:00 | 20 | Q. Have you given some thought to how much you |
| 19:13:06 | 21 | would sell your rights for? |
| 19:13:09 | 22 | MR. TOBEROFF: Same instruction. |
| 19:13:11 | 23 | THE WITNESS: I don't have a clear number. |
| | 24 | BY MR. PETROCELLI: |
| 19:13:14 | 25 | Q. A range. |

3baac749-5ca5-4935-b47c-c3b46e0b4ffc