# EXHIBIT T

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

22337 PACIFIC COAST HIGHWAY #348

MALIBU, CALIFORNIA 90265

MARC TOBEROFF*
KEITH G. ADAMS
PABLO D. ARREDONDO*
DAVID HARRIS

* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

kgadams@ipwla.com

August 27, 2012

Via E-Mail

Jason Tokoro
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:    *DC Comics v. Pacific Pictures Corp., et al.*, Case No. 10-CV-03633 ODW (RZx)

Dear Jason:

I write in response to your August 17, 2012 letter, regarding DC's intent to move to compel the further depositions of defendants Laura Siegel Larson and Mark Peary, and to follow-up on my August 14, 2012 meet-and-confer with Matt Kline as to DC's July 27, 2012 letter, my August 1, 2012 letter, and the parties' subsequent e-mail correspondence.

## I.    REPEAT DEPOSITIONS OF MR. PEARY AND MS. LARSON

While unclear from your August 17 letter, defendants' understanding is that DC will seek to compel the further deposition of Mark Warren Peary and Laura Siegel Larson for an additional day each.  DC will seek to depose Mr. Peary and Ms. Larson regarding:  (a) anything "new" in the case since their depositions in June-July 2011, including any documents produced since that time (*e.g.,* the "Timeline" documents); and (b) questions which were objected to as improper at those depositions, as set forth below.

As to category (a), DC chose to take the depositions knowing there were numerous outstanding document discovery issues and a pending writ on which DC did not seek to expedite review.  That some of those issues have been resolved and DC now has additional documents is not a basis to re-depose these witnesses.  Between this case and the closely related *Siegel* litigation, Ms. Larson has already been deposed three times, while Mr. Peary has been deposed twice.

As to category (b), defendants strongly object to DC's tactic of bringing discovery disputes up at a meet-and-confer, waiting to bring a motion for over a year, and then attempting to incorporate the prior dispute in a separate dispute/motion.  DC's specific issues as to such disputes are addressed below.

**EXHIBIT T**
**780**

**TOBEROFF & ASSOCIATES, P.C.**

August 27, 2012
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:   2 of 5

Furthermore, during the August 14 meet-and-confer, you stated that you had not confirmed with Mr. Petrocelli or your client what potential compromises would be acceptable, but indicated that DC might agree to shorten the time of such depositions on the topics listed above if it would avoid motion practice. However, no compromise was proposed in your letter.

## II.    OBJECTIONS AT THE INITIAL DEPOSITION

As set forth below, the objections made by Mr. Toberoff at Mr. Peary's June 29, 2011 deposition and Ms. Larson's July 22, 2011 deposition were proper.

      1.    <u>Consent Agreement</u>

Magistrate Zarefsky denied DC's motion to compel production of the 2008 collective negotiation agreement (the "Consent Agreement"), as did Judge Larson in *Siegel*. Docket Nos. 209, 163-11 at 724:9-11. Judge Wright also weighed in, denying DC's motion for review on this subject. Docket Nos. 248, 252. All of this occurred well before DC took either Mr. Peary's or Ms. Larson's depositions, and the time to challenge Magistrate Zarefsky's (and Judge Wright's) ruling has long since passed. Fed. R. Civ. P. 72; L.R. 72-2.1.

DC now improperly attempts an end-run around these decisions by deposing defendants on the privileged contents of the consent agreement. DC's only justifications for this are: (a) its erroneous and rejected belief that Magistrate Zarefsky's order was wrongly decided; (b) its erroneous and insulting assertion that Mr. Toberoff "cannot be trusted"; and (c) its erroneous contention that Ms. Larson and Mr. Peary waived privilege.

      A.    <u>Judge Larson's, Magistrate Zarefsky's, and Judge Wright's Rulings Were Not Erroneous</u>

These decisions were clearly correct. None of them relied on DC's straw man of a "settlement" or "mediation" privilege. *See* Docket No. 209 at 8 ("Nor will the Court re-visit Judge Larson's ruling that the attorney-client and related privileges protect the consent agreement."). The Consent Agreement, which was expressly entered into in connection with the settlement of legal claims, contains the Heirs and their counsel's settlement strategies and is clearly protected by the attorney-client privilege and attorney work-product doctrine. *See Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992). The privilege encompasses documents that reveal, involve or implicate legal advice, litigation strategy or litigation motives of a party. *Id.* at 129. The Consent Agreement constitutes a communication among the Heirs and their counsel Mr. Toberoff, and reflects Mr. Toberoff's legal advice to his clients and legal strategies regarding settlement of their termination interests. It is also protected by the work-product doctrine, as it "reveal[s] an attorney's strategy [or] evaluation of strengths and weaknesses" of the case. *Schwarzer*, et al., Fed. Civ. Proc. Before Trial § 11:285 (2010), citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). *See* F.R.C.P. 26(b)(3). Accordingly, it is absolutely privileged and was duly listed on the Heirs' privilege logs in this case. *See United States v. Martin*, 278 F.3d 988,

**TOBEROFF & ASSOCIATES, P.C.**

August 27, 2012
Re:    *DC Comics v. Pacific Pictures Corp.*
Page: 3 of 5

999-1000 (9th Cir. 2002)

> B.    DC's Baseless *Ad Hominem* Attacks Are Insufficient To Pierce Privilege

As it does in virtually all of its correspondence and briefing where it loses on the merits, DC devotes a substantial portion of its letter to empty rhetoric, impugning opposing counsel. These baseless attacks are dealt with at length in Laura Brill's July 11, 2012 letter and in defendants' briefing. Such attacks offer nothing to justify piercing the Heirs' privilege over the consent agreement that has been thrice upheld.

DC's repeated refrain is that defendants' representations as to documents somehow cannot be trusted. Yet when Magistrate Zarefsky has reviewed defendants' documents *in camera*, defendants' privilege assertions have been largely upheld, and, in any event, there is no indication that defendants ever misrepresented the contents of such documents to the Court. See Docket Nos. 239, 439, 451.

Notably, DC recently repeatedly contended that defendants had misrepresented the contents of a November 2001 e-mail between Michael Siegel and Mr. Toberoff, by stating that it "pertains to legal retention." Docket No. 412 at 4:16-17. After Magistrate Judge Zarefsky reviewed the document *in camera*, he confirmed that the "subject matter of the e-mail concerns legal rights and potential representation of Michael Siegel," and held the document privileged. Docket No. 451 at 1-2. Tellingly, now that DC has secured a copy of this e-mail, its August 17 letter makes no mention of the document.

> C.    Ms. Larson and Mr. Peary Did Not Waive Privilege

DC contends that Ms. Larson and Mr. Peary waived privilege over the Consent Agreement by "selectively and strategically disclosing certain facts about [it]." This argument was already made by DC, Docket No. 160 at 26:5-6, and rejected by Magistrate Zarefsky and Judge Wright. Docket Nos. 209 at 9-10, 248, 252.

Furthermore, the very testimony DC cites confirms that the parties agreed that allowing Ms. Larson to answer certain questions would not constitute a waiver (Larson Tr. 42:1-10; Peary Tr. 81:10-15) and that the witness was allowed to answer only because the question did not call for privileged material. Larson Tr. 99:15-100:5. In both depositions, counsel for defendants was explicit that the witness could not testify as to the contents of the privileged document. Larson Tr. 42:23-25; Peary Tr. 58:23-25.

Nor did defendants waive privilege by rebutting DC's inaccurate assertion to the Court as to the unlawfulness of the Consent Agreement. The comments concerning the consent agreement in recent motions were no more "revealing" than those in defendants' prior motions to dismiss and/or strike – and those comments were held not to waive privilege by Magistrate Zarefsky and Judge Wright, as defendants have a right to counter DC's false assertions as to the Consent

**EXHIBIT T**
**782**

TOBEROFF & ASSOCIATES, P.C.

August 27, 2012
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:   4 of 5

Agreement without waiving privilege. Docket Nos. 209 at 10:6-11, 248, 252; Docket Nos. 78, 100; Docket Nos. 462, 478. Furthermore, the "disclosure of a general description of the subject matter of a privileged communication does not operate as a waiver of the privilege." *United States v. Zuckerman*, 88 F. Supp. 2d 9, 15 (E.D.N.Y. 2000).

Under DC's skewed logic, a party could make frivolous misrepresentations about an opposing party's privileged documents and the opposing party would have no options but to let the misstatements go unchallenged or waive privilege. Magistrate Zarefsky expressly rejected this false construct: "Defendants do not waive privilege by defending themselves." Docket No. 209 at 10:10-11.

     2.    <u>Rights Strategy/Evaluation:</u>

DC mischaracterizes the record in claiming that defendants' counsel asserted privilege over "business communications," specifically marketing the Siegels' rights in Superman. The testimony DC points to makes clear that Mr. Toberoff objected only to the extent it called on Ms. Larson to "reveal the substance of [her] communications with counsel." Larson Tr. 46:22-25. Legal advice remains privileged even if it regards business or naturally incorporates business advice. *See ABB Kent-Taylor v. Stallings and Co., Inc.*, 172 F.R.D. 53, 55 (W.D.N.Y.1996) ("Often intertwined with legal advice as to substantive issues is counsel's strategic assessment of alternative choices of action available to the client."); *ePlus Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 254 (E.D. Va. 2012) (privilege applies to mixture of business and legal advice).

DC's assertion that the privilege somehow does not apply to Mr. Toberoff's advice to Ms. Larson about "the value of the Siegels' putative Superman rights and how the heirs could monetize these rights" is wrong. Even prior to the filing of the *Siegel* lawsuits in 2004, Mr. Toberoff's advice about the Siegels' Superman rights took place against the backdrop of anticipated litigation and settlement with DC/Warner Bros. over the rights to Superman; Mr. Toberoff held settlement discussions with Warner Bros.' General Counsel, John Schulman, in 2003-04; and since *Siegel*, any such advice is obviously bound up in litigation and settlement discussions with DC/Warner. Ms. Larson's "understanding" is privileged to the extent it is based on privileged attorney-client communications as to settlement and legal strategy.

     3.    <u>Subject Matter Waiver</u>

The disclosure of certain stolen privileged documents to the United States Attorney's Office to facilitate its investigation of the theft does not constitute a subject matter waiver. *See, e.g, In re von Bulow*, 828 F.2d 94, 102 (2d Cir. 1987). DC has previously made this argument with regard to communications between David Michael and the Siegels (Docket No. 205 at 14:8-15), and Magistrate Zarefsky has rejected that argument. Docket No. 262 at 4:9-12. DC has also advanced similar arguments with respect to communications between the Siegels and Kevin Marks, which both Magistrate Zarefsky and Judge Wright have rejected. Docket Nos. 362, 378, 389.

**EXHIBIT T**

**783**

**TOBEROFF & ASSOCIATES, P.C.**

August 27, 2012
Re:    *DC Comics v. Pacific Pictures Corp.*
Page:  5 of 5

## III.    DEFENDANTS' COMPROMISE PROPOSAL

If DC has any proposals to narrow the scope of this dispute, defendants are available to meet and confer on September 6, 2012.  As DC's contemplated motion is directed solely at defendants Laura Siegel Larson and Mark Warren Peary, the Kendall Brill firm, which represents neither defendant, will not participate.

Nothing in this letter should be construed as a waiver or limitation of any of defendants' rights or remedies, all of which are reserved.

Very truly yours,

Keith G. Adams

**EXHIBIT T**
**784**

# EXHIBIT U

| From: | Tokoro, Jason |
|---|---|
| To: | Keith Adams |
| Cc: | Petrocelli, Daniel; Kline, Matthew; Seto, Cassandra; Richard Kendall; Laura Brill; Nicholas Daum; David Harris; Pablo Arredondo; Marc Toberoff |
| Subject: | FW: DC v. PPC |
| Date: | Tuesday, August 28, 2012 3:37:00 PM |
| Attachments: | DC v. PPC.Letters.Adams-Tokoro.Depositions.8.27.2012.final.pdf |

Keith:

DC disagrees with your letter below and will file its motion.

We are copying the Kendall Brill firm on this response (and attaching a copy of your letter), as we understand that they remain counsel in the case.

All of the DC's rights are reserved.

Jason

**From:** Pablo Arredondo [mailto:parredondo@ipwla.com]
**Sent:** Monday, August 27, 2012 6:09 PM
**To:** Tokoro, Jason
**Cc:** Petrocelli, Daniel; Kline, Matthew; Seto, Cassandra; Pearson, Ashley; 'Marc Toberoff'; 'Keith Adams'; 'David Harris'
**Subject:** DC v. PPC

Counsel:

Please see the attached correspondence sent on behalf of Keith Adams.

Pablo

**Pablo D. Arredondo**
Toberoff & Associates, P.C.
22337 Pacific Coast Highway, #348
Malibu, California 90256
(t) 310.246.3333
(f) 310.246.3101

This message and any attached documents may contain information from Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

**EXHIBIT U**
**785**

# EXHIBIT V

# In The Matter Of:

*DC COMICS*

*v.*

*PACIFIC PICTURES CORPORATION*

---

## *TOBEROFF, MARC  - Vol. 1*
### *September 18, 2012*

---

**MERRILL CORPORATION**

**LegaLink, Inc.**

20750 Ventura Boulevard
Suite 205
Woodland Hills, CA 91364
Phone: 818.593.2300
Fax: 818.593.2301

**EXHIBIT V**

**786**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CERTIFIED
COPY

| | |
|---|---|
| DC COMICS, | ) |
| | ) |
| Plaintiff, | )No. |
| | )CV-10-3633 ODW (RZx) |
| VS. | ) |
| | ) |
| PACIFIC PICTURES CORPORATION, | ) |
| IP WORLDWIDE, LLC, IPW, LLC, | ) |
| MARC TOBEROFF, an individual, | ) |
| Laura Siegel Larson, as | ) |
| personal representative of | ) |
| the ESTATE OF JOSEPH SHUSTER, | ) |
| JEAN ADELE PEAVY, an | ) |
| individual, JOANNE SIEGEL, | ) |
| an individual, LAURA SIEGEL | ) |
| LARSON, an individual, and | ) |
| DOES 1-10, inclusive, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

VIDEOTAPED DEPOSITION OF MARC TOBEROFF

TAKEN ON

TUESDAY, SEPTEMBER 18, 2012

Reported by:  SHANDA GABRIEL

CSR No. 10094

Merrill  Corporation  -  Los Angeles
Los Angeles - 800-826-0277          www.merrillcorp.com/law

EXHIBIT V
787

MARC  TOBEROFF - 9/18/2012

Page 63

| | | |
|---|---|---|
| 1 | MR. KENDALL:  Just a minute.  Just a | 10:50:47 |
| 2 | minute. | 10:50:48 |
| 3 | THE WITNESS:  Sorry. | 10:50:48 |
| 4 | MR. KENDALL:  Calls for speculation. | 10:50:50 |
| 5 | THE WITNESS:  I can't answer as to what his | 10:50:53 |
| 6 | motivations are. | 10:50:56 |
| 7 | BY MR. PETROCELLI: | 10:50:56 |
| 8 | Q.  What are yours? | 10:50:57 |
| 9 | A.  In furtherance of my clients. | 10:51:00 |
| 10 | Q.  Have you withheld in this litigation e-mail | 10:51:06 |
| 11 | communications with Mr. Emanuel on the basis of this | 10:51:09 |
| 12 | verbal agreement -- this verbal confidentiality | 10:51:12 |
| 13 | agreement? | 10:51:16 |
| 14 | MR. KENDALL:  I'm going to object to that | 10:51:17 |
| 15 | question on the ground that I don't think it's | 10:51:19 |
| 16 | proper for you to ask questions in this deposition | 10:51:23 |
| 17 | about Mr. Toberoff's actions or decisions in his | 10:51:25 |
| 18 | capacity as counsel for his clients or as -- in his | 10:51:36 |
| 19 | capacity as counsel for and his firm's counsel for | 10:51:45 |
| 20 | himself and the Toberoff entities. | 10:51:52 |
| 21 | So I think you're free to ask questions | 10:51:54 |
| 22 | that you would normally ask of a lay witness but not | 10:51:56 |
| 23 | about the discovery process. | 10:52:00 |
| 24 | BY MR. PETROCELLI: | 10:52:00 |
| 25 | Q.  Have you -- | 10:52:01 |

**EXHIBIT V**
**788**

MARC  TOBEROFF - 9/18/2012

Page 64

| | | |
|---|---|---|
| 1 | I'm not going to respond other than to have | 10:52:04 |
| 2 | you understand that when I don't respond, it doesn't | 10:52:10 |
| 3 | mean I agree. | 10:52:12 |
| 4 | MR. KENDALL:  We can say that that's a | 10:52:14 |
| 5 | reciprocal understanding. | 10:52:16 |
| 6 | MR. PETROCELLI:  Yes.  It will save a lot | 10:52:17 |
| 7 | of chatter. | 10:52:19 |
| 8 | Q.  The -- have you had written communications | 10:52:21 |
| 9 | with Mr. Emanuel since 2004 to the present? | 10:52:25 |
| 10 | A.  Casual, casual e-mails. | 10:52:29 |
| 11 | Q.  Related -- | 10:52:37 |
| 12 | A.  Not a lot.  I don't -- I don't -- I | 10:52:37 |
| 13 | generally communicate with him by phone. | 10:52:40 |
| 14 | Q.  Have you had -- | 10:52:42 |
| 15 | A.  He's not very responsive to e-mails and | 10:52:43 |
| 16 | things. | 10:52:46 |
| 17 | Q.  Have you had written communications with | 10:52:46 |
| 18 | him since 2004 related to the Siegel or Shuster | 10:52:48 |
| 19 | interests? | 10:52:53 |
| 20 | A.  I'm sure I have. | 10:52:53 |
| 21 | Q.  Okay. | 10:52:53 |
| 22 | MR. KENDALL:  Mr. Petrocelli, could I just | 10:52:58 |
| 23 | ask that you try to hold your questions until he's | 10:53:00 |
| 24 | finished answering.  I think when you look at the | 10:53:03 |
| 25 | record eventually, you will see many interruptions | 10:53:05 |

**EXHIBIT V**
**789**

1   STATE OF CALIFORNIA    )
                          )  ss.
2   COUNTY OF LOS ANGELES  )

3

4        I, Shanda Gabriel, Certified Shorthand

5   Reporter, Certificate No. 10094, for the State of

6   California, hereby certify:

7        I am the deposition officer that

8   stenographically recorded the testimony in the

9   foregoing deposition;

10        Prior to being examined the witness was by

11  me first duly sworn;

12        The foregoing transcript is a true record

13  of the testimony given.

14        Before completion of the deposition, review

15  of the transcript [X] was [] was not requested.  If

16  requested, any changes made by the deponent (and

17  provided to the reporter) during the period allowed

18  are appended hereto.

19

20  Dated  *September 20, 2012.*

21

22              _____
                        Shanda Gabriel
23                      CSR 10094

24

25

**EXHIBIT V**
**790**

## ERRATA SHEET

Witness: **Marc Toberoff**

Deposition Date: **September 18, 2012**

Case Name: **DC Comics v. Pacific Pictures Corporation et al.   CV-10-3633 (ODW) (RZx)**

| Page/Line | Correction | Reason |
|-----------|------------|--------|
| 10:15 | Change "products" to "projects" | Typographical Error |
| 15:6 | Change "from" to "for" | Typographical Error |
| 92:6 | Delete "what's salient of that, and" | Clarification |
| 92:7 | Delete "at the Siegel deposition" | Clarification |
| 111:9 | Change "no" to "yes" | Confused about dates; corrected later in testimony |
| 146:7 | Change "." to "that" | Clarification |
| 146:7 | Change "when" to "When" | Capitalization to conform with above change |
| 163:13 | Change "services of" to "services to" | Clarification |
| 171:10 | Delete "don't" | Clarification |
| 226:22 | Change "expedite" to "exercise the" | Typographical error |
| 226:24 | Change "Shuster" to "Shuster's Estate" | Clarifies entity referred to |
| 249:10 | Delete "not" and delete "[sic]" | Clarification |
| 249:11 | Change "I'm waiving" to "I'm not waiving" | Conform with above change |
| 253:15 | Change "interest to interest waiver" | Clarification |
| 282:23 | Change "of" to "or" | Typographical Error |
| 283:19 | Delete "on" | Typographical Error |
| 283:22 | Change "paint" to "place" | Typographical Error |
| 295:19 | Change "subject" to "conversation" | Clarification |
| 295:19 | Delete "[sic]" | Not applicable after above change |
| 300:18 | Change "IPW" to "IP Worldwide" | Clarification |
| 309:21 | Change "Yes" to "Yes, I believe that statement is inaccurate" | Clarification |
| 311:7 | Change "not aware" to "aware of" | Clarification |

___10/22/2012___
Date

_____
Witness Name

**EXHIBIT V**
**791**

# EXHIBIT W



# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

October 11, 2012

OUR FILE NUMBER
905900-321

**VIA EMAIL**

WRITER'S DIRECT DIAL
(310) 246-6840

Marc Toberoff
Keith G. Adams
Toberoff & Associates, P.C.
22337 Pacific Coast Highway #348
Malibu, CA 90265

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Re:   *DC Comics v. Pacific Pictures Corp. et al.,* CV-10-3633 (ODW) (RZx)

Dear Counsel:

We are in receipt of your letter of October 3, 2012. We disagree with it and object to your false and improper assertions, as you can see from the motions DC filed yesterday. We do note, however, that Mr. Kendall refused to allow DC to examine Mr. Toberoff during his September 18, 2012, deposition about the discovery process, Toberoff Tr. at 63:14-64:3, and yet in your October 3 letter you republish the same factual contentions on which you refuse to have Mr. Toberoff examined. We ask that defendants withdraw their objections and allow DC to examine Mr. Toberoff on these discovery issues—either in a deposition to occur in the next three weeks, or at the evidentiary hearing DC's motion seeks.

In addition, and as we discussed at the end of Mr. Toberoff's deposition, *id.* at 311:17-25, DC needs a second day with Mr. Toberoff to conclude his deposition on non-discovery issues. We propose October 22 and 23 as deposition dates. If you refuse to make Mr. Toberoff available for this second day on these non-discovery topics, DC requests a Rule 37 conference. All of DC's rights and remedies are reserved

Very truly yours,

/s/ Matthew T. Kline

Matthew T. Kline
of O'MELVENY & MYERS LLP

cc:   Daniel M. Petrocelli, Esq.; Richard Kendall, Esq.; Defense Counsel

**EXHIBIT W**
**792**

# EXHIBIT X

# TOBEROFF & ASSOCIATES, P.C.

A PROFESSIONAL CORPORATION

22337 PACIFIC COAST HIGHWAY #348

MALIBU, CALIFORNIA 90265

MARC TOBEROFF*
KEITH G. ADAMS
PABLO D. ARREDONDO*
DAVID HARRIS

* Also admitted in New York

TELEPHONE
(310) 246-3333

FACSIMILE
(310) 246-3101

kgadams@ipwla.com

October 16, 2012

<u>Via E-Mail</u>

Matthew Kline
O'Melveny and Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:    *DC Comics v. Pacific Pictures Corp., et al.*, Case No. 10-CV-03633 ODW (RZx)

Dear Matt:

I write in response to your October 11, 2012 letter, wherein DC demands "a second day with Mr. Toberoff to conclude his deposition." DC already deposed Mr. Toberoff for a full day in 2006 in the closely related *Siegel* litigation, and again in his recent full-day deposition on September 18, 2012 in this litigation. As you are well aware, the Federal Rules of Civil Procedure limit depositions to "one day of seven hours." F.R.C.P. Rule 30 (d)(1). The Rules do not envision that a party will be deposed multiple times without leave of the Court. F.R.A.P. Rule 30(a)(2)(A)(ii).

As DC is also aware, Magistrate Zarefsky disfavors repeat depositions. When Defendants sought a protective order as to DC's proposed second deposition of Mark Warren Peary and third deposition of Laura Siegel Larson, which DC sought to proceed with despite numerous outstanding discovery issues, Magistrate Zarefsky gave the following admonition:

> "Now, I've expressed before my reluctance about multiple depositions of the same witness. And I'm not ruling now on a motion that might be made in the future. But, in general, courts, and this court is one of them, disfavor repeat depositions. *Plaintiff knows this*." Docket No. 288 at 31:2-6 (emphasis added).

1.    There is no justification to depose Mr. Toberoff for a third day. DC's only reason appears to be that it ran out of time and did not cover all of the topics that it wanted to at Mr. Toberoff's second deposition. However, at this point, Mr. Toberoff has been deposed for a total of 14 hours in this case and the closely related *Siegel* case. Notably, during Mr. Toberoff's deposition in *Siegel*, DC's then-counsel questioned him in a manner that closely tracks the allegations DC has made in this case, as by that time DC had already received and read the so-

**EXHIBIT X**
**793**

**TOBEROFF & ASSOCIATES, P.C.**

October 16, 2012
Re:     *DC Comics v. Pacific Pictures Corp.*
Page:   2 of 2

called Timeline attached to DC's complaint in this case. Docket 305/308-17. DC has also served at least *188* discovery requests on Mr. Toberoff.

DC conducted itself cavalierly at the deposition as though it was presumptively entitled to more than seven hours, contrary to Rule 30(d)(1) (*e.g.*, Transcript at 255:2-6), and wastefully spent considerable time on largely irrelevant topics such as Mr. Toberoff's background (*e.g.*, Transcript at 6:13-20:9) and on topics already covered at Mr. Toberoff's first deposition (*e.g.*, Transcript at 100:2-101:5). As such DC did not even attempt to complete Mr. Toberoff's deposition within the allotted seven hours.

DC provides no information on the substantive topics it believes still need to be addressed, nor does DC offer any explanation why such could not have been addressed within the allotted time at DC's leisurely first deposition. There is no reason, much less "good cause," for the further deposition of Mr. Toberoff, and DC's presumptive stance at Mr. Toberoff's deposition and in your letter is pure harassment.

2.      While DC, in its October 11 letter, expressly does not seek to meet-and-confer on this topic, it also asks that Mr. Toberoff be deposed not as a fact-witness/party but as litigation counsel on "discovery issues" within the next three weeks. As you know, "[f]ederal courts have disfavored the practice of taking the deposition of a party's attorney; instead the practice should be employed only in limited circumstances." *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999).

DC claims that Mr. Kendall prevented it from questioning Mr. Toberoff on "discovery issues," but if DC wanted to depose Mr. Toberoff in his capacity as opposing counsel in this case and the related *Siegel* case, it was incumbent on DC to make that clear and to resolve this issue prior to deposition. *See Willer v. Las Vegas Valley Water Dist.*, 1999 U.S. App. LEXIS 7831, at *8-9 (9th Cir. Apr. 19, 1999) ("A party seeking to depose opposing counsel … must show that (1) the desired information cannot be obtained by any other means; (2) the desired information is relevant and non-privileged; and (3) the desired information is crucial to the preparation of the case."); *American Cas. Co. of Reading, Pa. v. Krieger*, 160 F.R.D. 582, 585 (S.D. Cal. 1995) (party seeking to depose opposing counsel has the burden of "demonstrat[ing] the propriety and the need for the deposition"); *Stull v. YTB Int'l, Inc.*, 2010 U.S. Dist. LEXIS 93480 (S.D. Ill. Sept. 8, 2010) ("In particular, taking the deposition of opposing counsel is highly disfavored and is allowed only in exceptional circumstances.") (collecting cases); *Carehouse Convalescent Hospital v. Superior Court*, 143 Cal. App. 4th 1558, 1562 (2006) ("Depositions of opposing counsel are presumptively improper, severely restricted, and require 'extremely' good cause.").

DC has not even cited the basic legal standards, much less made the requisite showing that it is entitled to depose its opposing counsel on purported "discovery issues."

Lastly, DC cannot cite its trumped-up motion for an evidentiary hearing (for which it also failed to meet-and-confer) as justification to take a third deposition of Mr. Toberoff. DC repeatedly

**EXHIBIT X**
**794**

**TOBEROFF & ASSOCIATES, P.C.**

October 16, 2012
Re:     *DC Comics v. Pacific Pictures Corp.*
Page:  3 of 3

delayed both Mr. Toberoff's deposition and the filing of its misguided motion for tactical reasons.  If DC wanted Mr. Toberoff's testimony on "discovery issues" in connection with its motion, the proper time to have raised the issue was *before* DC took Mr. Toberoff's deposition and filed its motion.

Nothing in this letter should be construed as a waiver or limitation of any of defendants' rights or remedies, all of which are reserved.

Very truly yours,

Keith Adams

**EXHIBIT X**
**795**

# EXHIBIT Y



## O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
HONG KONG
LONDON
LOS ANGELES
NEWPORT BEACH
NEW YORK

1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

SAN FRANCISCO
SHANGHAI
SILICON VALLEY
SINGAPORE
TOKYO
WASHINGTON, D.C.

October 24, 2012

**VIA EMAIL**

Marc Toberoff
Keith G. Adams
Toberoff & Associates, P.C.
22337 Pacific Coast Highway #348
Malibu, CA 90265

OUR FILE NUMBER
905900-321

WRITER'S DIRECT DIAL
(310) 246-6840

WRITER'S E-MAIL ADDRESS
mkline@omm.com

Re:    *DC Comics v. Pacific Pictures Corp. et al.*, CV-10-3633 (ODW) (RZx)

Dear Counsel:

　　We write in response to defendants' letter of October 16, 2012, concerning defendant Marc Toberoff's deposition.

　　1. <u>DC Is Entitled To Additional Time</u>.  For well over a year, defendants have articulated their need to depose defendant Marc Toberoff for more than the default seven-hour time period under FED. R. CIV. P. 30(d)(1).  *See, e.g.*, Aug. 4, 2011 letter from M. Kline to M. Toberoff and L. Brill; Aug. 11, 2011 letter from M. Kline to M. Toberoff and K. Adams.  The reasons are obvious.  For example, DC's complaint alleges that Mr. Toberoff, as well as several of his "closely-held corporations," engaged in separate and distinct acts of misconduct spanning a decade.  Docket No. 49 ¶¶ 165.  The Advisory Committee Notes specifically provide that where, as here, "the examination will cover events occurring over a long period of time, that may justify allowing additional time." FED. R. CIV. P. 30 Advisory Notes.

　　The length of a deposition is an issue that courts expect parties to be able to work out on their own.  *Cf. Genentech, Inc. v. Trs. of Univ. of Penn.*, 2011 WL 7074212, at *1 (N.D. Ca. Oct. 18, 2011) (court granted request for additional time to depose witness and noted it would hear any further similar applications "on shortened time together with a request for sanctions").  Failing that, courts routinely order depositions longer than seven hours.  *E.g., id.* (ordering individual, who had already appeared for a ten-hour deposition, to reappear based on witness being "uniquely positioned to address issues [in the case]"); *Baker v. PPL Corp.*, 2011 WL 1811106, at * 2 (M.D. Pa. May 12, 2011) (ordering party to appear for 14 hours given the "legal and factual complexity" of the case); *In re Intel Corp. Microprocessors Antitrust Litig.*, 2008 WL 5377979, at * 2 (D. Del. Dec. 18, 2008) (affirming special master's order that certain witnesses appear for "2 or 3 days of deposition time … to explore such a lengthy and substantial

**EXHIBIT Y**
**796**

O'MELVENY & MYERS LLP
October 24, 2012 - Page 2

relationship," noting that the case involved a relationship spanning eight years); *Andrews v. Holloway*, 2003 WL 22227855, at * 6 (D.N.J. Sept. 29, 2003) (requiring non-party to appear for further deposition, which could exceed seven hours, because "more time is needed for a fair examination of all relevant topics"). Defendants, however, have rejected all of DC's compromise proposals, such as agreeing to two seven-hour days. *E.g.*, Aug. 10, 2011, letter from M. Toberoff to M. Kline. Defendants similarly objected (and that objection was overruled) when DC sought to depose Dawn Peavy for a second day.

In light of defendants' refusals to reach a compromise in advance of Mr. Toberoff's deposition, DC attempted, in good faith, to complete Mr. Toberoff's deposition on September 18, 2012. As DC suspected, however, it was not able to do so, given the complexity of the issues, and, worse still, DC's progress at the deposition was slowed by defendants' excessive and improper objections, as well as colloquies. As a result, Mr. Toberoff remains to be deposed on numerous core issues in this case. For example, he has not been examined about the August 2011 Pacific Pictures Agreement with the Shuster heirs and many of the Timeline documents, including but not limited to memoranda from Armstrong Hirsch law firm discussing the many ethical issues raised by Mr. Toberoff's business relationship with the Shusters. That Toberoff was deposed in *Siegel* does not, contrary to defendants' assertions, impact DC's right to depose him in this matter. *E.g.*, *Dynapower Sys. Corp.*, 1966 WL 86614, at * 1 (S.D.N.Y. Oct. 31, 1966).[1]

Please let us know whether defendants consent to make Mr. Toberoff available for a second day of deposition—to occur during the weeks of November 12 or 19. Otherwise, DC confirms that this issue will be discussed during the parties' meet-and-confer on Thursday, October 25, at 11:00 PDT. *See* Oct. 23, 2012, Email from M. Kline to K. Adams.

2 . Toberoff's Discovery Misconduct. DC is entitled to depose Mr. Toberoff regarding his discovery responses and conduct, as DC would be with any party. *E.g.*, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 257 F.R.D. 580, 587 (N.D. Cal. 2009) (party examined at deposition about signing verification accompanying responses to interrogatories and requests for production); *Bowoto v. Chevron Corp.*, 2006 WL 2589198, at *1 (N.D. Cal. Aug. 30, 2006) (same); *Specht v. Google, Inc.*, 268 F.R.D. 596, 602 (N.D. Ill. 2010) (discovery into party's interrogatory answers proper). That Mr. Toberoff chose—raising numerous ethical issues, *e.g.*, Docket Nos. 500, 500-2—to represent himself and his entertainment companies in responding to DC's discovery requests does not shield him as a party from discovery regarding the responses. *Cf. Specht*, 268 F.R.D. at 602 (rejecting party's argument that it was improper to depose an individual since "Mr. Moore was not merely acting as counsel but also had a previous business relationship with plaintiffs").

---

[1] Defendants' claim that DC questioned Mr. Toberoff about the Timeline documents in 2006—when the Timeline was not produced until December 2008, and its enclosures were not produced until 2012—is both false and nonsensical.

**EXHIBIT Y**
**797**

O'MELVENY & MYERS LLP
October 24, 2012 - Page 3

    Moreover, DC's examination of Mr. Toberoff concerning these discovery issues could proceed even if DC wanted to depose Mr. Toberoff in his capacity as opposing counsel in this case. Mr. Toberoff's deposition is necessary because (1) the information DC seeks cannot be obtained by any other means since Mr. Toberoff has (successfully) sought to control all discovery in this case and in the *Siegel* case; (2) Mr. Toberoff's misconduct in responding to DC's discovery requests is not privileged information, *e.g., Doe v. Dist. of Columbia*, 230 F.R.D. 47, 55-56 (D.D.C. 2005); and (3) the information is crucial to DC's pending motion for an evidentiary hearing and sanctions, *e.g., Willer v. Las Vegas Valley Water Dist.*, 1998 U.S. App. LEXIS 7831, at *8-9 (9th Cir. Apr. 19, 1999).

    Absent your agreement to withdraw defendants' objections and allow DC to examine Mr. Toberoff on these discovery issues—either in a deposition to occur during the weeks of November 12 or 19, or at the evidentiary hearing DC's motion seeks—DC again confirms that these issues will be discussed during the parties' meet-and-confer on Thursday, October 25, at 11:00 PDT. *See* Oct. 23, 2012, Email from M. Kline to K. Adams.

    All of DC's rights are reserved.

                        Very truly yours,

                        /s/ Matthew T. Kline

                        Matthew T. Kline
                        of O'MELVENY & MYERS LLP

cc:    Daniel M. Petrocelli, Esq.; Richard Kendall, Esq.; Defense Counsel

**EXHIBIT Y**
**798**