DANIEL M. PETROCELLI (S.B. #097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

Attorneys for Plaintiff DC Comics

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>　　　　Defendants. | Case No. CV 10-3633 ODW (RZx)<br><br>**PLAINTIFF DC COMICS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON DC'S FOURTH, FIFTH, AND SIXTH CLAIMS; AND DC'S NOTICE OF MOTION AND CROSS-MOTION FOR JUDGMENT ON THESE SAME CLAIMS**<br><br>DECLARATION OF DANIEL M. PETROCELLI PURSUANT TO FED. R. CIV. P. 56(D); STATEMENT OF GENUINE ISSUES AND RESPONSE TO DEFENDANTS' CONCLUSIONS OF LAW; [PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW; AND [PROPOSED] ORDER FILED CONCURRENTLY HEREWITH<br><br>Hon. Otis D. Wright II<br><br>**Hearing Date**:　　March 11, 2013<br>　　　　　　　　(*Hearing Vacated*) |

1    Plaintiff DC Comics ("DC") hereby opposes defendants' partial summary

2  judgment motion on DC's Fourth, Fifth, and Sixth Claims for Relief, DN 577, for

3  the reasons stated in DC's accompanying memorandum of points and authorities

4  and the accompanying documents DC files herewith.

5  TO DEFENDANTS AND THEIR COUNSEL OF RECORD:

6    PLEASE ALSO TAKE NOTICE that DC will and hereby does cross-move

7  for judgment on its Fourth, Fifth, and Sixth Claims.  Because the Court vacated the

8  hearing date for defendants' motion for summary judgment on these claims and

9  stated "the matter will be decided upon without oral argument," DN 581, DC does

10  not notice a new hearing date for this cross-motion—although it remains willing

11  and able to appear for oral argument, if the Court so orders it.

12    1.  As set forth in DC's pending sanctions motion, DN 500; 500-1-500-15;

13  504; 510; 527; 573, the Court can and should enter judgment for DC on its Fourth,

14  Fifth, and Sixth Claims as a sanction for defendants' egregious, ongoing discovery

15  misconduct—which includes defendants' violation of multiple court orders, false

16  statements to the courts and DC, and systematic concealment of key evidence that

17  proves DC's Fourth through Sixth Claims.  Defendants' misconduct is also grounds

18  for the Court to strike defendants' statute-of-limitation defenses.  *See* FED. R. CIV.

19  P. 37(b)(2)(A); 8B C. WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 2289, at

20  544 & n.20 (3d ed. 2010) (collecting cases); *Marshall v. F.W. Woolworth, Inc.*, 122

21  F.R.D. 117, 119 (D.P.R. 1988) (ordering "all of defendant's affirmative defenses …

22  stricken" based on counsel's "callous disregard for this Court's orders and for the

23  orderly administration of justice"); *In re Orthopedic Bone Screw Prods. Liab.*

24  *Litig.*, 1998 WL 254038, at *1-6 (E.D. Pa. May 5, 1998) (striking certain defenses

25  "to prevent [defendant] from benefitting from the delay in document production").

26    If the Court were to grant DC judgment on its state-law claims on this basis,

27  the only issue left to prove would be its damages on its Fourth and Fifth Claims,

28  which largely consist of its attorneys' fees in the Superman cases.  Defendants have

argued that such fees are not recoverable as damages under California's anti-SLAPP statute.  *See* 9th Cir. Appeal No. 11-56934, DN 8 at 27; 37-1 at 37-38; Case No. CV-10-3633, DN 521-2 at 24:5-25:14, 34:23-35:19.  The Ninth Circuit rejected defendants' SLAPP appeal and, with it, this specious argument.  *DC Comics v. Pacific Pictures Corp.*, 2013 WL 120807 (9th Cir. Jan. 10, 2013); Case No. CV-04-8400, DN 702 at 8:3-11; *see Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1258 (9th Cir. 2005); 4 W. SCWHARZER ET AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 4:632 (Rutter 2012).

2.  Regardless of how the Court rules on DC's sanctions motion, pursuant to Federal Rule of Civil Procedure 56, summary judgment should be entered in DC's favor on its Sixth Claim.  DC seeks a declaration that the web of unlawful, rights-tying agreements that defendant Marc Toberoff (and his various companies) engineered with the Siegel and Shuster heirs are void and unenforceable under California's unfair competition laws (the "UCL").  DN 49 ¶¶ 188-89.  Conduct is unlawful under the UCL if it violates federal law, as the UCL expressly "borrows" claims based on violations of federal statutes.  *Farmers Ins. Exch. v. Sup. Ct.*, 2 Cal. 4th 377, 383 (1992).  The Court has already entered final judgment in DC's favor on its Third Claim on the ground that Toberoff's "rights-encumbering agreements—including the 2001 Pacific Pictures agreement, 2003 Pacific Pictures agreement, and 2008 consent agreement"—violate § 304(c)(6)(D) of the Copyright Act.  DN 507 at 5, 17; 540.  There are no issues of material fact as to DC's Sixth Claim, and judgment should be entered in DC's favor.  Defendants' mootness, timeliness, and preemption defenses to this claim defy the Court's prior orders, ignore on-point California Supreme Court authority rejecting their position, and badly misread both DC's complaint and the law of copyright preemption.

This motion is made pursuant to Rule 56, Central District Local Rule 56, and this Court's Standing Order Regarding Newly Assigned Cases (DN 18).  It is also made pursuant to the rules governing sanctions motions, cited in DC's pending

1   sanctions motion.  DN 500; 500-1-500-15; 504; 510; 527; 573.  This motion is

2   made following several conferences of counsel, including a lengthy in-person

3   meeting on July 17, 2012, concerning DC's request for sanctions (with Toberoff

4   participating by telephone), *see* DN 500-2, and a meet-and-confer discussion on

5   November 27, 2012, concerning DC's intent to move for summary judgment,

6   pursuant to Central District Local Rule 7-3.  *See, e.g.*, Case No. 04-8400, DN 705 at

7   7, 705-2 Ex. B.

8         This motion is based on this Notice of Motion and Motion and accompanying

9   Memorandum of Points and Authorities; the concurrently filed Declaration of

10   Daniel M. Petrocelli, DC's Statement of Genuine Issues of Material Fact and

11   Response to Defendants' Conclusions of Law, DC's Proposed Statement of

12   Uncontested Facts and Conclusions of Law, and DC's Proposed Order; and all

13   exhibits, files, and records on file in this action, matters of which judicial notice

14   may be taken, and such additional submissions and argument as may be presented

15   at or before the hearing on this motion.

16         Dated:  February 15, 2013              Respectfully submitted,

17                                              By:  /s/ Daniel M. Petrocelli

18                                                   Daniel M. Petrocelli
                                                    Attorneys for Plaintiff DC Comics

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................... 1

II.    TOBEROFF'S DISCOVERY MISCONDUCT BARS THIS MOTION ....... 2

    A.     Factual Background ............................................................. 2

    B.     The Law ............................................................................... 3

III.   DEFENDANTS COME NOWHERE CLOSE TO MEETING THEIR
       BURDEN OF SHOWING NO DISPUTED FACT ISSUES REMAIN
       ON DC'S FOURTH AND FIFTH CLAIMS .................................... 5

    A.     Defendants' Recycled Arguments Should Be Summarily
         Rejected ............................................................................... 5

    B.     DC's Fourth Claim Is Timely ............................................. 6

         1.     Defendants' Continuing Course of Interference From
            2001 to 2012 ........................................................... 6

         2.     DC's Discovery of Toberoff's Torts ....................... 10

         3.     Toberoff's Fraudulent Concealment of His Interference ........ 12

    C.     DC's Fifth Claim Is Timely ............................................. 14

         1.     The Facts ............................................................... 14

         2.     The Law ................................................................. 15

IV.    FINAL JUDGMENT SHOULD ENTER IN <u>DC'S</u> FAVOR ON ITS
       SIXTH CLAIM ............................................................................. 18

    A.     Mootness ........................................................................... 19

    B.     Timeliness ......................................................................... 19

    C.     Preemption ........................................................................ 21

V.     CONCLUSION .............................................................................. 22

    APPENDIX A ................................................................................. 23

# TABLE OF AUTHORITIES

**CASES**

*Abbott v. Kidder Peabody & Co.,*
   42 F.2d 1046 (D. Colo. 1999) .......................................................... 22

*Adobe Lumber, Inc. v. Hellman,*
   2008 WL 4615285 (E.D. Cal. Oct. 17, 2008) .................................... 10

*Altera Corp. v. Clear Logic, Inc.,*
   424 F.3d 1079 (9th Cir. 2005) ......................................................... 22

*Aryeh v. Canon Bus. Solutions, Inc.,*
   55 Cal. 4th 1185 (2013) ........................................................... 1, 8, 20

*Baker v. Beech Aircraft Corp.,*
   39 Cal. App. 3d 315 (1974) ....................................................... 11, 12

*Baker v. Del Taco, Inc.,*
   2001 WL 1397299 (Cal. App. Nov. 8, 2001) ................................... 15

*Bernson v. Browning-Ferris Indus.,*
   7 Cal. 4th 926 (1994) ....................................................... 4, 15, 17

*Birchstein v. New United Motor Mfg., Inc.,*
   92 Cal. App. 4th 994 (2001) ............................................................. 8

*Blue Nile, Inc. v. Ice.com, Inc.,*
   478 F.2d 1240 (W.D. Wash. 2007) .................................................. 22

*Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co.,*
   688 F.2d 940 (N.D. Cal. 2010) .......................................................... 9

*Boys Town, U.S.A., Inc. v. World Church,*
   349 F.2d 576 (9th Cir. 1965) ........................................................... 15

*Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes for the Fort
   Peck Reservation,*
   323 F.3d 767 (9th Cir. 2003) ........................................................... 15

*Calvert v. Stoner,*
   33 Cal.2d 97 (1948) ......................................................................... 22

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
   20 Cal. 4th 163 (1999) .............................................................. 19, 21

*Chambord Techs., Inc. v. Arthur D. Little, Inc.,*
   2006 WL 978990 (Cal. App. Arp. 14, 2006) ............................. 13, 18

*Chao v. Bremerton Metal Trades Council, AFL-CIO,*
   294 F.3d 1114 (9th Cir. 2002) ........................................................... 8

*Claitor v. U.S.*,
  1999 U.S. Dist. LEXIS 12666 (N.D. Cal. July 29, 1999) ...................................... 9

*Cleveland v. Internet Specialties W., Inc.*,
  171 Cal. App. 4th 24 (2009) ................................................................. 17, 18

*DC Comics v. Pacific Pictures Corp.*,
  2013 WL 120807 (9th Cir. 2013) ........................................................... 4, 7

*Del Madera Props. v. Rhodes & Gardner, Inc.*,
  820 F.2d 973 (9th Cir.1987) ...................................................................... 21

*Dias v. Nationwide Life Ins. Co.*,
  700 F.2d 1204 (E.D. Cal. 2010) ........................................................... *passim*

*Dickson v. Scoville*,
  2000 U.S. App. LEXIS 1107 (9th Cir. Jan. 27, 2000) ............................... 9

*Estate of Axelrod v. Flannery*,
  476 F.2d 188 (D. Conn. 2007) ...................................................................... 9

*Estate of Falco*,
  188 Cal. App. 3d 1004 (1987) .................................................................... 22

*Evans v. Eckelman*,
  216 Cal. App. 3d 1609 (1990) .................................................................... 17

*Farmers Ins. Exch. v. Sup.Ct.*,
  2 Cal. 4th 377 (1992) ................................................................................... 18

*Flowers v. Carville*,
  310 F.3d 1118 (9th Cir. 2002) ................................................................. 6, 9

*Fowkes v. Penn. R.R. Co.*,
  264 F.2d 397 (3d Cir. 1959) ......................................................................... 9

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005) .......................................................................... 11, 17

*Gadda v. State Bar of Cal.*,
  511 F.3d 933 (9th Cir. 2007) .................................................................... 7-8

*Grant v. Aurora Loan Servs.*,
  736 F.2d 1257 (C.D. Cal. 2010) ................................................................ 13

*Groupion, LLC v. Groupon, Inc.*,
  2012 WL 3025711 (N.D. Cal. July 24, 2012) ............................................ 7

*Hansen v. Bear Film Co.*,
  28 Cal. 2d 154 (1946) ........................................................................... 12, 15

DC'S OPP. TO DEFS.' MSJ &
CROSS-MOT. FOR J.

*Hopkins v. Dow Corning Corp.*,
   33 F.3d 1116 (9th Cir. 1994) ................................................................ 10

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
   1998 WL 254038 (E.D. Pa. May 5, 1998) ........................................ 1, 3

*In re Pacific Pictures*,
   679 F.3d 1121 (9th Cir. 2012) ......................................................... 9, 16

*In re Rubber Chems. Antitrust Litig.*,
   504 F. Supp. 2d 777 (N.D. Cal. 2007) ........................................... 11, 13

*Karl Storz Endoscopy-America, Inc. v. Surgical Technologies, Inc.*
   285 F.3d 848 (9th Cir. 2002) ................................................................ 20

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002) .......................................................................... 19

*Kodadek v. MTV Networks*,
   152 F.3d 1209 (9th Cir. 1998) .............................................................. 22

*Leonhard v. U.S.*,
   633 F.2d 599 (2d Cir. 1980) ................................................................... 9

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
   431 F.3d 353 (9th Cir. 2005) ........................................................*passim*

*Marshall v. F.W. Woolworth, Inc.*,
   122 F.R.D. 117 (D. P.R. 1988) .......................................................... 1, 3

*MEECO Mfg. Co. v. True Value Co.*,
   2007 U.S. Dist. LEXIS 25986 (W.D. Wash. Apr. 3, 2007) .................. 22

*Metabolife Int'l, Inc. v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) ................................................................ 15

*Motown Record Corp. v. George A. Hormel & Co.*,
   657 F. Supp. 1236 (C.D. Cal. 1987) ..................................................... 22

*Nehad v. Mukasey*,
   535 F.3d 962 (9th Cir. 2008) ................................................................ 22

*Norgart v. Upjohn Co.*,
   21 Cal. 4th 383 (1999) .......................................................................... 10

*Page v. U.S.*,
   729 F.2d 818 (D.C. Cir. 1984) ................................................................ 9

*Pashley v. Pac. Elec. Co.*,
   25 Cal. 2d 226 (1944) ................................................................4, 12, 17

iv

DC'S OPP. TO DEFS.' MSJ &
CROSS-MOT. FOR J.

*Polar Bear Prods., Inc. v. Timex Corp.*,
   384 F.3d 700 (9th Cir. 2004) ................................................................. 10

*Regents of Univ. of Cal. v. Sup. Ct.*,
   20 Cal. 4th 509 (1999) ................................................................... 4, 17

*Ritchie v. Williams*,
   395 F.3d 283 (6th Cir. 2005) ................................................................ 22

*Shakir v. Bd. of Trustees of Rend Lake College*,
   2010 WL 432262 (S.D. Ill. Feb. 1, 2010) ......................................... 8, 9

*Singer Asset Fin. Co., LLC v. Wyner*,
   156 N.H. 468 (N.H. 2007) ....................................................................... 9

*Suh v. Yang*,
   987 F. Supp. 783 (N.D. Cal. 1997) ......................................................... 6

*Sylve v. Riley*,
   15 Cal. App. 4th 23 (1993) .................................................................... 11

*Trenton v. Infinity Broad. Corp.*,
   865 F. Supp. 1416 (C.D. Cal. 1994) ................................................ 21, 22

*Unruh-Haxton v. Regents of Univ. of Cal.*,
   162 Cal. App. 4th 343 (2008) ........................................................ 12, 15

*Valley Fruit Orchards, LLC v. Global Horizons Manpower, Inc.*,
   2010 U.S. Dist. LEXIS 29051 (E.D. Wash. Mar. 26, 2010) ............... 18

*Wash. Mut. Bank, FA v. Sup.Ct.*,
   75 Cal. App. 4th 773 (1999) ................................................................. 19

*Wyatt v. Union Mortg. Co.*,
   24 Cal. 3d 773 (1979) ............................................................................. 6

**STATUTES**

17 U.S.C. § 301(a) .................................................................................... 21

FED. R. CIV. P. 37 ................................................................................. 1, 3

CAL. CIV. P. CODE § 339 ........................................................................ 14

**OTHER AUTHORITIES**

8B C. WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 2289 (3d ed.
   2010) ................................................................................................. 3, 4

7-A WILLIAM L. STERN, BUSINESS & PROFESSIONS CODE § 17200 PRACTICE
   (Rutter 2012) ....................................................................................... 21

DC'S OPP. TO DEFS.' MSJ &
CROSS-MOT. FOR J.

1    **I.    INTRODUCTION**

2          Defendants' summary judgment motion on DC's state-law claims (its Fourth

3    through Sixth Claims) should be denied for many reasons.

4          *First*, it is a transparent end-run around DC's fully-briefed and pending

5    terminating sanctions motion, which completely disposes of defendants' statute-of-

6    limitation defenses.  DN 575; Case No. CV-04-8400, DN 705 at 6; 707.  That

7    sanctions motion documents defendants' long campaign of discovery misconduct

8    involving the violation of multiple court orders.  Defendants never address that

9    misconduct or the critical new evidence DC uncovered in the past two years—even

10   though both are complete bars to their limitation defenses, whether as a terminating

11   sanction, *see* FED. R. CIV. P. 37(b)(2)(A); *infra* at 3-5, or because DC cannot be

12   charged with knowledge of facts that Toberoff concealed, *see id.*; *Living Designs,*

13   *Inc. v. E.I. Dupont de Nemours & Co*., 431 F.3d 353, 366 (9th Cir. 2005).

14         *Second*, defendants' motion disregards the Courts' prior rulings.  It asserts

15   the *same* timeliness arguments defendants *lost* last year when the Court entered

16   judgment for DC on its Third Claim.  DN 507; 540; 468 at 12.  Indeed, defendants

17   do little more than recycle the same alleged facts and arguments.  Their current

18   motion also defies the courts' *repeated rulings* rejecting their false claims about

19   DC's alleged use of the Toberoff Timeline before December 2008.  *Cf.* DN 579 at

20   7-8.  Defendants further ignore the rulings of both this Court and the Ninth Circuit

21   regarding their illicit consent agreements.

22         *Third*, the motion misstates the law, including by failing to address recent

23   authority from the California Supreme Court.  In *Aryeh v. Canon Bus. Solutions,*

24   *Inc*., 55 Cal. 4th 1185 (2013), the Court not only rejected defendants' arguments

25   about California's delayed-discovery rule and other tolling doctrines, it described

26   the case on which Toberoff principally relies as poorly reasoned and wrong.

27         *Finally*, defendants' motion impermissibly asks the Court to decide one

28   disputed fact issue after another.  The summary judgment rules forbid this,

DC'S OPP. TO DEFS.' MSJ &
CROSS-MOT. FOR J.

1   particularly, where, as here, discovery into the core issues surrounding defendants'

2   limitation defenses is ongoing, Petrocelli Decl. & FED. R. CIV. P. 56(d), and

3   defendants refuse to be deposed on the very issues their motion raises, DN 585.

4   Toberoff's motion comes nowhere close to meeting its most basic burden—*i.e.*,

5   showing that no disputed issues of material fact exist on his limitation defenses.

6   His supposed "factual" recitation about when DC was put on notice of its claims—

7   like his denials that he concealed evidence, or his assurances that the harms he

8   caused DC were not ongoing as of May 2010, when DC filed suit—are both untrue,

9   and under no scenario can they be summarily adjudicated in his favor.  This point is

10  best proved by the no fewer than *51* material facts Toberoff (wrongly) asks the

11  Court to accept as true and undisputed on this motion.

12          In short, Toberoff's motion should be denied, and, consistent with DC's

13  pending sanctions motion and its arguments herein, judgment should enter for DC.

14  **II.      TOBEROFF'S DISCOVERY MISCONDUCT BARS THIS MOTION.**

15          The most expeditious way to dispose of defendants' motion (and this case) is

16  to grant DC's pending sanctions motion, which will render defendants' summary

17  judgment motion moot.  While Toberoff seeks to avoid DC's earlier-filed sanctions

18  motion by asking the Court to give priority to his statute-of-limitation arguments,

19  *this gets the law exactly backwards*.

20          **A. *Factual Background.***  Last Fall, DC moved for default judgment on its

21  state-law claims and other relief as a sanction for defendants' ongoing discovery

22  misconduct.  DN 573.  That motion was fully briefed months ago, DN 500; 500-1

23  to 500-15, 504, 510, 516–20, 523, 523-1, 524–27; DC renewed the motion when

24  the Ninth Circuit issued its mandate on defendants' failed SLAPP appeal, DN 573;

25  and the Court took DC's motion under submission, DN 575; *see* DN 580.  After the

26  Court took DC's sanctions motion under submission, defendants filed this summary

27  judgment motion based on statute of limitation grounds.  DN 577.  In addition,

28  Toberoff now argues the Court should not decide DC's fully-briefed sanctions

DC'S OPP. TO DEFS.' MSJ &
CROSS-MOT. FOR J.

1   motion until it hears their limitation-defense motion, even though that motion is yet

2   to be briefed.  *See* Case No. CV-04-8776, DN 225 at 1:14-26.

3       **B. The Law.**  Defendants cannot moot DC's sanctions motion with statute-

4   of-limitation arguments.  Rule 37 expressly empowers courts to strike affirmative

5   defenses—including statute-of-limitation defenses—as a sanction for discovery

6   misconduct.  *See* FED. R. CIV. P. 37(b)(2)(A); 8B C. WRIGHT, ET AL., FEDERAL

7   PRACTICE & PROCEDURE § 2289, at 544 n.20 (3d ed. 2010) (collecting cases);

8   *Marshall v. F.W. Woolworth, Inc.*, 122 F.R.D. 117, 119 (D. P.R. 1988) ("counsel

9   has shown a callous disregard for this Court's orders and for the orderly

10  administration of justice….  Consequently, all of defendant's affirmative defenses

11  are stricken from the record."); *In re Orthopedic Bone Screw Prods. Liab. Litig.*,

12  1998 WL 254038, at *1-6 (E.D. Pa. May 5, 1998) (striking limitation defenses that

13  overlapped with time period of discovery misconduct; sanction "necessary to

14  prevent [defendant] from benefitting from the delay in document production").

15      Toberoff's misconduct compels striking of his limitation defenses.  Together

16  with his co-defendants, Toberoff not only failed to comply with DC's document

17  requests here and in *Siegel*, but also submitted false privilege logs and declarations

18  in both cases and violated multiple court orders requiring him to produce evidence.

19  DN 500, 527.  Toberoff compounded the harm by making willfully false factual

20  arguments to this Court and the Ninth Circuit.  This includes Toberoff's assurance

21  that there was ***no*** evidence to prove DC's "billionaire investor" fraud claims—an

22  assurance Toberoff provided while actively suppressing non-privileged letters

23  between the Siegels that documented that very fraud.  *Id.*  While Toberoff now says

24  DC should have known about his "billionaire investor" fraud in 2006, Mot. 13-19,

25  it was not *until 2008, 2011*, and *2012*, and under compulsion of court order, that he

26  finally produced the "billionaire investor" documents, DN 500 at 14-21; 527.

27      Striking Toberoff's limitation defenses is "necessary to prevent" him "from

28  benefitting" from his misdeeds.  *Orthopedic Bone Screw*, 1998 WL 254038 at *4;

DC'S OPP. TO DEFS.' MSJ &
CROSS-MOT. FOR J.

*see* WRIGHT, *supra*, at § 2289, at 544.  Striking these defenses also fully disposes of his pending motion for summary judgment.

These remedies are fully consistent with the policies animating statutes of limitation.  The Ninth Circuit has held that a party's discovery misconduct that hid its underlying torts is grounds to reject a limitation defense, especially one asserted on summary judgment.  *See Living Designs*, 431 F.3d at 366.  And the California Supreme Court has held that the purpose behind limitation-*tolling* doctrines—like the fraudulent-concealment doctrine on which DC relies—is to "disarm a defendant who, by his own deception, has caused a claim to become stale."  *Regents of Univ. of Cal. v. Sup. Ct.*, 20 Cal. 4th 509, 533 (1999); *Pashley v. Pac. Elec. Co.*, 25 Cal. 2d 226, 231 (1944) ("statute of limitations … may not [be] use[d] to perpetrate a fraud upon otherwise diligent suitors"); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994) ("culpable defendant should be estopped from profiting by his own wrong"; statute tolled where "defendant fraudulently prevents discovery"); *Dias v. Nationwide Life Ins. Co.*, 700 F. Supp. 2d 1204, 1223 (E.D. Cal. 2010).

Toberoff engaged in a systematic effort—through intensively managed and intentionally deceptive discovery misconduct and delay—to prevent DC from discovering the facts giving rise to its state-law claims in this case.  *See* DN 500; 527; *infra* 10-18.  He cannot and should not be rewarded for that behavior.  Not only should his summary judgment motion be denied, judgment can and should be entered in <u>DC's</u> favor on its Fourth, Fifth, and Sixth Claims, pursuant to DC's pending terminating sanctions motion.  DN 573.[1]

---

[1] DC's Sixth Claim can be resolved entirely in its favor on this motion, as all it seeks is declaratory relief.  *Infra* Part IV.  Given that DC seeks damages on its Fourth and Fifth Claims (largely its attorneys' fees in the Superman cases), partial judgment should enter for DC on those claims.  DC can prove these damages easily and quickly.  Toberoff argued DC could not seek its attorney's fees as damages consistent with the SLAPP statute.  9th Cir. Appeal No. 11-56934, DN 8 at 27; 16 at 36; Case No. CV-10-3633, DN 521-2 at 24:5-25:14, 34:23-35:19.  The Ninth Circuit rejected his appeal and, along with it, this specious argument.  *See DC Comics v. Pacific Pictures Corp.*, 2013 WL 120807, at *1 (9th Cir. Jan. 10, 2013).

**III.   DEFENDANTS COME NOWHERE CLOSE TO MEETING THEIR BURDEN OF SHOWING THAT NO DISPUTED FACT ISSUES REMAIN ON DC'S FOURTH AND FIFTH CLAIMS.**

**A.   *Defendants' Recycled Arguments Should Be Summarily Rejected.***

Defendants' motion raises the *same* limitation arguments as to DC's state-law claims that they tactically chose to abandon when they withdrew their Rule 12 motion.  DN 334, 343.[2]  When DC moved for summary judgment on its Third Claim, Toberoff repeated these same limitation arguments, DN 462 at 24; 478 at 24, and this Court *declined to credit* them, DN 507 at 16-17; 540.  The Court did not discuss Toberoff's limitation argument expressly, but in order to have ruled in DC's favor on its Third Claim, it had to have rejected Toberoff's arguments, and that ruling is binding.  *See Clemons v. Mississippi*, 494 U.S. 738, 747 n.3 (1990); *Shoshone Indian Tribe of Wind River Reservation, Wyo. v. U.S.*, 672 F.3d 1021, 1037 (Fed. Cir. 2012); *U.S. v. Russo*, 708 F.2d 209, 225-26 (6th Cir. 1983).

Despite this ruling, defendants simply repeat their limitation arguments here, recycling the same legal arguments and alleged "facts."  *Id.*; *infra* Appendix A.  For example, their current motion—like their prior failed one—repeats all of the following: (1) their false assertion that DC's Fourth Claim is limited to challenging the 2001 and 2003 Pacific Pictures contracts; (2) their mistaken argument that DC's claim is time-barred because it received the Pacific Pictures contracts in *Siegel*; (3) their oft-rejected claim that DC knew of and could have used the contents of the Toberoff Timeline starting in June 2006; and (4) their contested claims that the "continuing harm" doctrine does not toll business torts or is somehow inapplicable because the 2001 and 2003 Pacific Pictures agreements were "cancelled" in 2004.  *Compare* DN 462 at 24, *and* 478 at 24, *with* Mot. at 8-13.

Of the few exhibits submitted with their current motion, defendants cited all but two in moving for summary judgment on DC's Third Claim.  *See* Petrocelli

---

[2] Indeed, defendants abandoned their Rule 12 motion right <u>after</u> the Court denied their SLAPP motion and said it would rule on their Rule 12 papers.  DN 337, 342.

DC'S OPP. TO DEFS.' MSJ & CROSS-MOT. FOR J.

Decl. ¶¶ 24-25.  One is the Shuster termination notice, which has long been a part of this case, and now has been declared invalid.  DN 507.  The other is a declaration from DC's former counsel, AD Ex. Z, on which defendants again rely to make their rejected argument that DC had access to the Timeline in 2006.  *Infra* at 11, 15-18.

As shown below, none of defendants' limitation arguments has any merit. That was the case when they made them in 2010, again in 2011, again in 2012, and again, now, in 2013.  *E.g.*, Appendix A; DN 507 at 16-17; 540.

### B.     DC's Fourth Claim Is Timely.

Defendants argue the two-year statute of limitations on DC's Fourth Claim ran in November 2008 because DC received the 2001 and 2003 Pacific Pictures agreements in 2006 and knew Peary had filed a termination notice in 2003.  Mot. 8-13.  Defendants' motion attacks a straw man, ignoring both the gravamen of DC's actual complaint, and the fact that Court has found that Peary and Toberoff's termination notice misled the Copyright Office.  DN 507 at 14-15.  Defendants' challenge to this Fourth Claim also fails because it would require the Court to resolve scores of disputed facts in their favor, and because they never establish that this claim is untimely under the three limitations-tolling doctrines that apply.

1. Defendants' Continuing Course of Interference From 2001 to 2012.  DC's Fourth Claim is expressly premised on defendants' *continuing course of conduct*, which violated DC's rights under its 1992 agreement with Joe Shuster's heirs.  *See* DN 49 ¶¶ 60-65, 92-100, 174-79.  The "continuing wrong" doctrine tolls all statutes where, as here, defendants engage in "multiple, continuous acts, and some of the[] acts occurred within the limitations period."  *Suh v. Yang*, 987 F. Supp. 783, 795 (N.D. Cal. 1997); *accord Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 788 (1979); *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002).  DC's Fourth Claim is based on a series of contracts Toberoff induced the Shusters to sign, the latest iterations of which were executed as recently as August 2011—well after DC filed its complaint in May 2010—and *all* of which continued to harm DC's rights and

1    interests until at least late 2012.  DN 49 ¶¶ 174-79; 507 at 16-17.

2           Defendants say little about the continuing harm DC alleges, DN 49 ¶¶ 3, 101,

3    174-79; instead, they mischaracterize DC's Fourth Claim and the several consent

4    agreements that DC challenges as limited to the 2001 and 2003 Pacific Pictures

5    contracts they produced in 2006 and that say they "cancelled" in 2004.  Mot. 8-13.

6           Neither of defendants' assertions has merit.  DC's complaint challenged

7    *additional* consent agreements and pled that all of defendants' consent agreements

8    "*remain[ed] in effect*," in May 2010, when DC filed suit.  DN 49 ¶ 170 (emphasis

9    added).  Indeed, defendants concede that the existence of one of their offending

10   "consent agreements"—the one that bound the Siegel and Shuster heirs, and which

11   this Court invalidated, DN 507 at 16-17; 540 —was not revealed to DC until 2008,

12   DN 146-1 at 18; 185 at 16-23; Mot. 21.  Peary testified this consent agreement

13   remained in effect well after DC filed this lawsuit, DN 502-5 at 804:5-7, and this

14   agreement has operated to impermissibly impede business negotiations ever since.

15   In its recent SLAPP ruling, the Ninth Circuit expressly noted that "the lock-up

16   agreement appears to bind the heirs long after the expiration of any [2008]

17   settlement negotiations…."  *DC*, 2013 WL 120807, at *1.

18          In addition, DC has always contended—and Peary admitted at deposition—

19   that even though the 2001 and 2003 Pacific Pictures agreements were allegedly

20   "cancelled" in 2004, they still assigned 50% of the Shuster family's putative rights

21   to Toberoff and Pacific Pictures.  DN 49 ¶¶ 99-100; 305-37 at 1310:3-1314:6,

22   1316:9-15, 1434-40; 307 at 6-9; 334 at 11-17.  That illicit agreement remained in

23   force until August 2011—well after DC filed suit—when Toberoff disclaimed his

24   rights under the Pacific Pictures contracts in a new 2011 contract and in connection

25   with the filing of his SLAPP *reply brief*.  DN 322 at 1-2.[3]

26   _____

27   [3] DC raised all of these issues when briefing summary judgment on its Third
     Claim.  DN 458, 491.  Defendants' tactical ploy to ignore them in their moving
     papers is fatal and they cannot first address these points on reply.  *See Gadda v.*
28   *State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007) ("It is well established that

DC'S OPP. TO DEFS.' MSJ &
CROSS-MOT. FOR J.

1    In short, the harm here is that defendants' consent agreements violated DC's

2    rights—"gut[ting]" DC's 1992 agreement with the Shusters, as this Court observed,

3    DN 337 at 3—*until October 2012*, when the Court declared Toberoff's agreements

4    invalid, DN 540.  Because the consent agreements remained in effect until *after* DC

5    filed its complaint, and were being made and amended seriatim before and after this

6    case was filed, the harm to DC was "continuing" and the limitation period on its

7    Fourth Claim was tolled.  *Supra* at 6; *Birchstein v. New United Motor Mfg., Inc.*, 92

8    Cal. App. 4th 994, 1003 (2001) (where a tort involves a continuing wrong, statute

9    does not begin to run until the date of the last injury or when tortious acts cease).

10    Although it remains an open question under California law whether the

11    "continuing harm" doctrine applies to intentional interference claims, Mot. 13, the

12    California Supreme Court has shown a receptiveness to applying *all* common-law

13    tolling doctrines to plaintiff's California-law claims—even those targeting unfair-

14    business practices, like DC's Fourth Claim.  *See Aryeh*, 55 Cal. 4th at 1196-97

15    (analogizing UCL claim to interference with prospective economic advantage;

16    holding that UCL claims are governed by common law accrual rules, which include

17    continuing harm).  In any event, the Court should evaluate (if ever) the merits of

18    this common-law question *not* at this preliminary procedural stage, but rather in the

19    context of a fully-developed discovery and trial record, after a jury has examined all

20    the facts.  *Cf. Chao v. Bremerton Metal Trades Council, AFL-CIO*, 294 F.3d 1114,

21    1124 (9th Cir. 2002) (reversing summary judgment and remanding to district court

22    to "develop and weigh all the facts and circumstances" to assess "novel question").

23    Defendants offer no principled reason why the limitation period on an

24    interference claim should not toll where, as here, their course of interference

25    continued before, during, and after DC filed its complaint.  The "continuing harm"

26    doctrine exists to redress such ongoing misconduct, and some courts in other

27

28    issues cannot be raised for the first time in a reply brief."); *Groupion, LLC v. Groupon, Inc.*, 2012 WL 3025711, at *3 (N.D. Cal. July 24, 2012) (striking reply).

DC'S OPP. TO DEFS.' MSJ &
CROSS-MOT. FOR J.

1    circuits have extended the "continuing harm" doctrine to interference claims.[4]

2        Unlike the facts of the only case defendants cite, *Boon Rawd Trading Int'l*

3    *Co., Ltd. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 952 (N.D. Cal. 2010)

4    (refusing to treat "numerous *discrete* acts" as " continuous wrong"), DC alleges that

5    Toberoff induced the Shusters to enter into a series of illicit, subsisting, rights-tying

6    contracts that continued to interfere with DC's rights though the filing of DC's

7    lawsuit.  DN 49 ¶¶ 6, 58-65, 92-101, 174-79.  Since "no single incident in [this]

8    continuous chain of tortious activity can fairly" be called the sole cause of DC's

9    harm, "it [is] proper to regard the cumulative effect of the conduct as actionable"

10   under the continuing-harm doctrine.  *Page v. U.S.*, 729 F.2d 818, 821-822 (D.C.

11   Cir. 1984); *accord Flowers*, 310 F.3d at 1126; *Dickson v. Scoville*, 2000 U.S. App.

12   LEXIS 1107 (9th Cir. Jan. 27, 2000); *supra* at 8.

13       Equity also requires that Toberoff—whose deceptions have been recognized

14   by this Court, DN 507 at 14-15, and whose "ethical" violations have been called out

15   by the Ninth Circuit, *In re Pacific Pictures*, 679 F.3d 1121, 1124 (9th Cir. 2012)—

16   "not be allowed to acquire a right to continue [] tortious conduct by operation of a

17   statute of limitations," *Claitor v. U.S.*, 1999 U.S. Dist. LEXIS 12666, 10-12 (N.D.

18   Cal. July 29, 1999); *see Leonhard v. U.S.*, 633 F.2d 599, 613 (2d Cir. 1980) ("the

19   injured party has the right to bring suit for all of the damages, past, present and

20   future, caused by the defendant's acts"); *Fowkes v. Penn. R.R. Co.*, 264 F.2d 397,

21   399 (3d Cir. 1959) (continuing harm doctrine allows courts to "adapt and apply"

22   limitations period "in a fair and reasonable way" where injury results from

23   _____

24   [4] *Compare Shakir v. Bd. of Trustees of Rend Lake College*, 2010 WL 432262, at
     *8-9 (S.D. Ill. Feb. 1, 2010) (finding claim for interference with prospective

25   economic advantage timely since plaintiff alleged a series of acts that tortiously
     interfered with plaintiff's rights that did not end until within the limitations period),

26   *and Estate of Axelrod v. Flannery*, 476 F. Supp. 2d 188, 204 (D. Conn. 2007)
     (same), *with*, *e.g.*, *Singer Asset Fin. Co., LLC v. Wyner*, 156 N.H. 468, 477-78

27   (N.H. 2007) (declining to apply continuing wrong doctrine to tortious interference
     claim where alleged interference "occurred at two discrete points in time," and was

28   not part of continuing course of conduct).

DC'S OPP. TO DEFS.' MSJ &
                                                 CROSS-MOT. FOR J.

1    continuing wrong).  This conclusion makes all the more sense here, given that the

2    full extent of Toberoff's misconduct is the subject of depositions that DC seeks to

3    take as well as its pending sanctions motion.  Petrocelli Decl. ¶¶ 13-22; DN 585.

4            2. DC's Discovery of Toberoff's Torts.  Toberoff's misconduct became

5    actionable, at the very earliest, when Judge Larson ordered the Timeline produced

6    to DC in December 2008—17 months before DC filed suit.  DN 49 ¶¶ 102-04.

7    Although Warner Bros. received a copy of the Timeline in June 2006, it gave the

8    document to a third-party escrow and the document was embargoed for two-plus

9    years as its alleged privileged status was litigated.  During this time, DC lacked

10   access to the Timeline, the ability to use it, and knowledge of its material facts.  DN

11   579 at 3-6; 558 at 5; *infra* at 12-18.  As defendants concede, the discovery rule

12   postpones accrual of a cause of action until plaintiff discovers the facts underlying

13   its claims.  Mot. 9; *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 707 (9th

14   Cir. 2004); *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 393 (1999).  A plaintiff pleads

15   facts "necessary to invoke discovery rule" where, as here, it alleges it lacked reason

16   to suspect the wrongful cause of its injury until after a critical discovery was made.

17   *See Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1120 (9th Cir. 1994); *Adobe*

18   *Lumber, Inc. v. Hellman*, 2008 WL 4615285, at *2-4 (E.D. Cal. Oct. 17, 2008).

19           As alleged in DC's complaint, the Timeline first reported that Toberoff:

20   •   fraudulently induced the Shuster heirs to sever their relations with DC and
         enter into illicit, rights-tying agreements with Toberoff's company,
21       defendant Pacific Pictures, by representing he would market the heirs'
         putative Superman rights when "MT was never intending to do anything
22       with rights other than litigate," and

23   •   "interfer[ed] in all relationships" between DC and the Shuster and Siegel
         heirs "for his own[] personal benefit," DN 49, Ex. A at 65, 64.
24

25           Following the filing of DC's complaint, important new evidence concerning

26   Toberoff's web of illicit consent agreements has come to light, and doubtless more

27   will be uncovered by DC in discovery.  *See* DN 500, 585.  For example, defendants

28   disclosed in September 2011 the latest in the series of contracts Toberoff induced

- 10 -

DC'S OPP. TO DEFS.' MSJ &
CROSS-MOT. FOR J.

1   the Shuster heirs to execute—the August 2011 agreement between Toberoff, Pacific

2   Pictures, and the Shuster heirs.  DN 322 at 1-2.  Around the same time, Toberoff

3   finally produced Jean Peavy's will, which revealed how Peary and Toberoff had

4   misled the Shuster heirs.  DN 360 at 6-9.  In May 2012, DC finally gained access to

5   2004 records from the law firm Armstrong Hirsch showing how Toberoff had

6   violated California law in his dealings with the Shusters.  DN 433 at 7.  And in

7   October 2012, this Court ruled that Toberoff misled the Copyright Office and DC in

8   the Shuster copyright termination notice he filed.  DN 507 at 14-15.

9        Defendants' assertion that DC knew of its claim no later than November

10   2006—without any real answer to the contrary facts above—fails to carry their

11   burden on this motion.  *See Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 810

12   (2005) ("statute of limitations … normally a question of fact"); *Sylve v. Riley*, 15

13   Cal. App. 4th 23, 26 (1993) (same); *Baker v. Beech Aircraft Corp.*, 39 Cal. App. 3d

14   315, 323 (1974) ("Whether appellants should have made discovery sooner in view

15   of the facts set forth, is not a question to be concluded as a matter of law."); *In re

16   Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 789 (N.D. Cal. 2007).

17        Defendants' claim that DC obtained and could have used the Timeline in

18   June 2006, Mot. 11, is frivolous.  Toberoff made this same argument in moving for

19   judgment on DC's Third Claim, and the Court did not credit it.  DN 462 at 24; 507.

20   Moreover, Judge Zarefsky, this Court, and the Ninth Circuit have all rejected

21   defendants' claim that DC had access to the Timeline before December 2008, when

22   Judge Larson first ordered it produced.  DN 579 at 7-8; *infra* at 15-17.  Finally,

23   even assuming, *contrary to every fact*, that DC had access to the Timeline facts in

24   2006, it was not permitted to use them until the Court ruled in December 2008 that

25   any privilege in the Timeline was waived.  *See* Fed. R. Civ. P. 26(b)(5)(B)

26   (recipient of claimed privileged material "must not use or disclose the information

27   until the claim is resolved").  In short, DC did not obtain the Timeline or have

28   knowledge of its contents giving rise to this lawsuit until it was produced, pursuant

DC'S OPP. TO DEFS.' MSJ &
CROSS-MOT. FOR J.

1    to court order, on December 10, 2008.  DC filed its complaint in this case on May

2    14, 2010—17 months later and well within the two-year limitations period.

3         3.  Toberoff's Fraudulent Concealment of His Interference.  A "statute of

4    limitations … may not [be] use[d] to perpetrate a fraud upon otherwise diligent

5    suitors."  *Pashley*, 25 Cal. 2d at 231.  Where, as here, "a defendant is guilty of

6    fraudulent concealment of the cause of action, the statute of limitation is deemed

7    not to become operative until the aggrieved party discovers the existence of the

8    cause of action."  *Hansen v. Bear Film Co.*, 28 Cal. 2d 154, 178 (1946); *Unruh-*

9    *Haxton v. Regents of Univ. of Cal.*, 162 Cal. App. 4th 343, 367 (2008) (same).

10        In the course of this case, DC has repeatedly exposed Toberoff's suppression

11   of key evidence relevant to its claims.  *E.g.*, DN 500; 527.  Indeed, it has only been

12   through DC's diligence in pursuing its claims that DC uncovered Toberoff's torts.

13   *Id.*  DC first got hint of Toberoff's torts and the damage Toberoff caused DC when

14   the Court provided DC with the Timeline in December 2008.  It revealed that:

15        *Toberoff being labeled as the "relentless crusader for artists' rights" is*
         *hardly that:  he has devised a strategy whereas he has ultimately*
16       *claimed much ownership of the Superman copyright* <u>*personally*</u> *as he*
17       *can ….  We believe there are details within this timeline that will be of*
         *strong interest to you.*  DN 49, Ex. A at 62 (emphasis in original).
18

19        After the Timeline was produced, Toberoff responded by repeatedly calling it

20   a pack of lies, utterly false, and accusing DC's counsel of misconduct for relying on

21   its allegations.  DN 160 at 71-72; 162-12 at 589; 196 at 1-5, 10; 225 at 13-14; 253

22   at 3-4; Case No. CV-04-8400, DN 476 at 2-5.  At the same time, he actively

23   suppressed written evidence refuting these contentions and proving the facts set

24   forth in the Timeline.  Toberoff concealed this evidence with bogus privilege

25   claims, fraudulent privilege logs, perjurious declarations, and false representations

26   to the Courts about such evidence.  *E.g.*, DN 500; 527; 42 at 4-7, 40-61.  DC cannot

27   be faulted for failing to discover these facts sooner.  *Cf. Baker*, 39 Cal. App. 3d at

28   321 (fraudulent concealment doctrine applies where plaintiff "not at fault for failing

1   to discover" fraud sooner); *Living Designs*, 431 F.3d at 357-66.

2       Indeed—at very best for Toberoff—the merits of this fraudulent-concealment

3   issue must be decided by a jury.  The case law plainly demonstrates that it cannot

4   be decided in *his favor* on summary judgment.  *Id.*; *Rubber Chems.*, 504 F. Supp.

5   2d at 789.  The decision in *Chambord Techs., Inc. v. Arthur D. Little, Inc.*, 2006

6   WL 978990, at *1, 8, 23 (Cal. App. Apr. 14, 2006), is instructive.[5]  There, plaintiff

7   sued defendant for tortious interference, alleging it induced Design Labs to abandon

8   its contract with plaintiff to work for defendant.  Plaintiff alleged it did not discover

9   this tort until Design Labs' contract with defendant was produced in other litigation

10   as defendant's president lied about when it hired Design Labs.  *Id.*  The court

11   rejected defendants' statute-of-limitations defense—even though plaintiff knew

12   Design Labs had cut its ties with plaintiff, thus harming it.  The court remanded for

13   a jury trial on the issue of fraudulent concealment because whether a "reasonable

14   person" would have become aware of defendant's acts of interference earlier was

15   "not a question that could properly be resolved as a matter of law."  *Id.* at *24.

16       Similarly, in *Living Designs*, 431 F.3d at 356-58, plaintiffs alleged DuPont

17   fraudulently induced them to settle a products liability suit by withholding damning

18   evidence until after they settled.  After plaintiffs dismissed their prior claims with

19   prejudice, DuPont produced documents to the non-settling parties that showed it

20   had hidden test results showing its products contained contaminants.  Plaintiffs sued

21   DuPont based on this concealed key evidence.  *Id.*  Writing for a unanimous panel,

22   Judge Thomas (who just heard Toberoff's SLAPP appeal), rejected DuPont's

23   limitations defense.  He held that plaintiffs "tendered sufficient evidence to raise a

24   genuine issue of material fact as to when they knew of or should have discovered

25   the fraud."  *Id.* at 365-66.  Because, as here, plaintiffs offered evidence that they

26   were unaware of the frauds earlier, only a jury could decide the limitations defense.

27

28       [5] Though unpublished, *Chambard* is persuasive authority.  *See Grant v. Aurora Loan Servs.*, 736 F.Supp.2d 1257, 1272 n.53 (C.D. Cal. 2010).

DC'S OPP. TO DEFS.' MSJ & CROSS-MOT. FOR J.

C.      *DC's Fifth Claim Is Timely.*

DC's Fifth Claim alleges Toberoff interfered with its economic relationship and 2001 settlement agreement with the Siegels by "falsely misrepresenting to [them] that he had a billionaire investor ready to purchase their Superman rights," if they cut ties with DC. DN 49 ¶¶ 181-86. Defendants argue the limitation period began to run in 2002, when the Siegels accepted his competing offer. Mot. 13. For many of the same reasons DC's Fourth Claim is timely, so too is its Fifth Claim.

1. The Facts. Defendants' argument is premised on a deliberate misreading of DC's Fifth Claim. It ignores that DC had no knowledge of the "billionaire investor" fraud in 2002, and did not learn of it until December 2008, when the Timeline was ordered produced. *Supra* at 10; *infra* at 15-18. Even then, Toberoff repeatedly represented that the Timeline's tale of the "billionaire investor" fraud was a "mockery." *E.g.*, DN 500 at 1-3, 14-21; 527 at 2-5; 162-12 at 589; 196 at 1-3, 10; 312 at 3; 477-2 at 103-09, 121-27, 131-33 (Toberoff calling "billionaire investor" claim a "mockery," "contrary to all evidence," based on "untrustworthy and inadmissible Timeline," and representing "[t]here are no documents related to an offer by a 'billionaire investor' to purchase the Siegels' Superman rights"). Toberoff persisted in this diversion through last year, *id.*, when, after years of his obstruction, the courts compelled him to produce non-privileged letters between Michael and Laura Siegel Larson. DN 500 at 4-21; 527 at 2-5. Those letters confirm that Toberoff had indeed falsely represented to the heirs that he had a "billionaire investor" prepared to purchase their Superman rights. *Id.* DC did not know of this fraud before. And it was not until DC obtained the so-called "Marks Memo" in May 2010 that it learned that Marks warned Larson and Toberoff in 2002 that DC would sue them for his torts. DN 500 at 13-14; 500-5 at 338-39; *see e.g.*, DC's Statement Of Genuine Issues Of Material Fact And Response To Defs.' Conclusions Of Law In Opp. To Defs.' Mot. For Partial Summary J. On DC's Fourth, Fifth And Sixth Claims ¶¶ 16-17 *et seq.* (filed herewith) ("DC's SGI").

DC'S OPP. TO DEFS.' MSJ &
CROSS-MOT. FOR J.

2.  The Law.  On these facts, there is no way that Toberoff can overcome California's delayed-discovery or fraudulent-concealment doctrines, CAL. CIV. P. CODE § 339; *Boys Town, U.S.A., Inc. v. World Church*, 349 F2d 576, 579 (9th Cir. 1965)—and certainly *not* on a summary judgment motion, while discovery is still ongoing, FED. R. CIV. P. 56(d); Petrocelli Decl. ¶¶ 3-4, 12-23; *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) ("the Supreme Court has restated [Rule 56] as requiring, rather than merely permitting, discovery [to oppose a summary judgment motion] 'where the non-moving party has not had the opportunity to discover information that is essential to its opposition'"); *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes for the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003).  Courts in California have expressly held that the delayed-discovery rule applies equally to causes of action for interference with prospective economic advantage and for interference with contract.  *See Baker v. Del Taco, Inc.*, 2001 WL 1397299, at *3 (Cal. Ct. App. Nov. 8, 2001) & *supra* n.4; *supra* at 8-9; *see Dias*, 700 F. Supp. 2d at 1223 ("statute of limitations is also tolled where a defendant fraudulently prevents discovery"); *Bernson*, 7 Cal. 4th at 931 n.3; *Hansen*, 28 Cal. 2d at 178; *Unruh-Haxton*, 162 Cal. App. 4th at 358-59, 367.

As with DC's Fourth Claim, defendants' only response is to make the false and unproven charge that DC made use of the Timeline starting in 2006.  Mot. 16-18.  As sworn testimony established in *Siegel*, Wayne Smith (of Warner Bros.) followed California law and merely "looked at" the Timeline and briefly reviewed the enclosed documents before handing all copies of the materials to a third-party escrow agent.  AD Ex. X ¶¶ 3, 5-8, 13.  Judge Zarefsky, Judge Larson, the Ninth Circuit, and this Court have all repeatedly rejected Toberoff's claims that Smith lied, held onto or used the documents, or supplied them or their contents to DC:

a.  In *Siegel*, defendants argued that Judge Zarefsky should deny DC's motion to compel production of the Timeline documents because Smith allegedly lied about when Warner received the documents and that Warner acted improperly

DC'S OPP. TO DEFS.' MSJ & CROSS-MOT. FOR J.

handling them. DN 550-5 at 57-61; 550-3 at 20-28. Toberoff claimed, without any evidence, that the Timeline documents were delivered to Warner in December 2005 rather than June 2006; that Warner failed to produce evidence confirming when the documents were delivered; that Smith reviewed the documents in detail before giving them to escrow agent John Quinn; and that Smith's sworn testimony should be rejected. *Id.* Warner refuted these claims, DN 550-5 at 27-31; 550-3 at 9-11; AD Ex. X, and the Court recognized that Warner and Smith "acted professionally [and] reasonably" in briefly reviewing the Timeline materials and giving them to Quinn, DN 550-3 at 30:3-7. Toberoff never moved to review this ruling. When he challenged it months later in 2008, Judge Larson held the time to object had "long since expired," and such arguments were waived. DN 42-14 at 216-17.

b. At the outset of this *Pacific Pictures* case, defendants tried to re-litigate these same claims. As now, he argued DC was barred from relying on the Timeline because Warner and DC received it months earlier than claimed, that DC used the Timeline materials to take discovery in *Siegel*, and that DC misused and lied about the documents. DN 42 at 8-14, 35, 39. Again, DC refuted these false charges, *id.* at 40-43, and Judge Zarefsky denied defendants' motion, stating that he was "not going to revisit [Judge Larson's] ruling" in *Siegel*, DN 95 at 55:21-56:1. This Court declined to grant defendants' motion for review. DN 101, 118; L.R. 72-2.

c. Defendants repeated the same false accusations to the Ninth Circuit. After this Court held that defendants waived privilege over the Timeline materials, they filed a writ petition claiming that Warner's handling and use of the documents was improper. 9th Cir. Appeal No. 11-71844, DN 1-1 at 2, 18-19 & n.1. The Ninth Circuit denied defendants' petition; rejected their arguments about Warner's alleged misconduct (noting it "entrusted [the documents] to an outside attorney," "[r]ather than exploiting [them]"); and called out Toberoff for his "ethical and professional" misconduct. *Pacific Pictures*, 679 F.3d at 1124-25. Defendants challenged these binding conclusions and asked the Ninth Circuit to "correct" them. 9th Cir. Appeal

1    No. 11-71844, DN 31-1 at 7-17.  The appellate court declined to do so.  *Id.*, DN 44.

2          Defendants cannot re-litigate these invented assertions—much less call them

3    "undisputed" facts, as they so improperly do—on this motion.  *E.g.*, DC's SGI ¶¶

4    38-42.  Nor can they say that Smith's cursory review of the Timeline (for Warner

5    Bros.) before handing it over to the escrow somehow put *DC* on notice of *DC's*

6    Fifth Claim.  To begin, the Timeline is a lengthy, complicated document.  *Cf. Evans*

7    *v. Eckelman*, 216 Cal. App. 3d 1609, 1614 (1990) (delayed discovery rule applies to

8    "actions in which it will generally be difficult for plaintiffs to immediately detect").

9    Moreover, rather than acknowledge that the Timeline raised legitimate complaints,

10   Toberoff vigorously opposed all discovery into the document in both this case and

11   *Siegel*, DN 42; 42-9 at 745-48; 42-14 at 213-17; 44-1; 61; 163-2, and repeatedly

12   told DC and the courts the Timeline was "defamatory," "extremely untrustworthy,"

13   " grossly inaccurate," and "an anonymous incoherent 'hit piece' [] unworthy of DC

14   and its counsel," DN 42-15 at 248; 160 at 5, 71; 162-12 at 589.

15         Just as it is now clear that these representations were lies, DN 500 at 6-21, it

16   is equally clear that California's statute-of-limitations law does not allow Toberoff

17   to profit from them.  *E.g.*, *Regents*, 20 Cal. 4th at 533 (fraudulent concealment

18   doctrine exists to "disarm a defendant" "who, by his own deception, has caused a

19   claim to become stale"); *Pashley*, 25 Cal. 2d at 231; *Bernson*, 7 Cal. 4th at 931.

20         In short, the statute did not begin to run on DC's Fifth Claims until *DC* could

21   review and use the Timeline document in 2008.  *E.g.*, *Fox*, 35 Cal. 4th at 815 ("[i]t

22   would be contrary to public policy" to require plaintiffs to file a lawsuit at a time

23   when they lacked factual support for their causes of action).  Again—and at best for

24   Toberoff—whether DC was on earlier inquiry notice is "quintessential[ly] [a]

25   question[] for the trier of fact."  *Cleveland v. Internet Specialties W., Inc.*, 171 Cal.

26   App. 4th 24, 33 (2009).  The facts relating to this question are still developing, as

27   DC needs to depose Toberoff and Larson on *new* documents they only recently

28   were compelled to produce.  DN 585; Petrocelli Decl. ¶¶ 13-15, 20.  On this record,

summary judgment cannot possibly be entered in Toberoff's favor.  *See Dias*, 700 F. Supp. 2d at 1223; *Chambord Techs.*, 2006 WL 978990, at \*23; *Cleveland*, 171 Cal. App. 4th at 24; *Valley Fruit Orchards, LLC v. Global Horizons Manpower, Inc.*, 2010 U.S. Dist. LEXIS 29051, 10-11 (E.D. Wash. Mar. 26, 2010).[6]

## IV.   FINAL JUDGMENT SHOULD ENTER IN <u>DC'S</u> FAVOR ON ITS SIXTH CLAIM.

DC's Sixth Claim seeks a declaration that the lock-up agreements to which Toberoff subjected the Siegels, Shusters, and DC for close to a decade are void under California's unfair competition laws (the "UCL").  DN 49 ¶ 188.  Conduct is unlawful under the UCL if it violates federal law, as the UCL expressly "borrows" claims based on violations of federal statutes.  *Farmers Ins. Exch. v. Sup.Ct.*, 2 Cal. 4th 377, 383 (1992).  The Court's final judgment in DC's favor on its Third Claim—in which the Court held that these same consent agreements violated federal copyright law, DN 540 at 1—compels that judgment enter in DC's favor on its Sixth Claim.  *Id.*  DC met and conferred with Toberoff's counsel on this issue

_____

[6] The supposed "new" evidence Toberoff cites in this motion—a 2007 declaration by DC's former outside counsel in *Siegel* (Michael Bergman), Petrocelli Decl. ¶¶24-25—is not new at all, and Toberoff misstates what it says.  Toberoff wrongly relied on this declaration before in making his rejected arguments about the Timeline, *e.g.*, DN 42 at 23, and it does *not*, contrary to his repeated false claim, show that Smith conveyed the substance of the Timeline to Bergman, Mot. 11. Bergman merely stated that Smith told him that Warner received the Timeline documents—a fact that was contemporaneously shared with Toberoff and the court. AD Ex. Z at 382-383 ¶ 4.  And as defendants well-know, Smith did "not share[] the contents of the Superman Documents with any of the outside counsel representing the Defendants in [the Siegel] action," nor did DC "use the contents of the documents in the [*Siegel*] litigation," prior to DC's receipt of the Timeline in December 2008.  DN 550-3 at 8 ¶ 13; DN 579 at 7-8; DC's SGI ¶¶ 38-42.

Defendants also assert that in its 2007 summary judgment briefs in *Siegel*, DC complained that Larson repudiated her settlement with DC and started a business relationship with Toberoff.  Mot. 2, 18-19.  Notably absent from DC's *Siegel* briefs or Toberoff's brief here is *any* evidence that DC was aware of the misconduct that gave rise to its tort claim:  the "billionaire investor" fraud and related misconduct. *Supra* 14; DC's SGI ¶¶ 17-19, 27-28, 34-37, 44-45, 47._Where Toberoff actively hid from DC the essential facts giving rise to its claim, summary judgment cannot issue in his favor.  *Supra* at 12-13, 17; *Chambord*, 2006 WL 978990, at \*24; *Living Designs*, 431 F.3d at 366.

DC'S OPP. TO DEFS.' MSJ & CROSS-MOT. FOR J.

1   months ago.  Case No. 04-8400, DN 705 at 7, 705-2 Ex. B.  Toberoff's three

2   asserted defenses to entry of judgment in DC's favor are without basis:

3      ***A.  Mootness.***  Toberoff argues DC's Sixth Claim is moot, Mot. 19, but is

4   mistaken.  In opposing judgment on DC's Third Claim, he argued that DC lacked

5   standing to bring its Third Claim under federal law because, under his view, DC has

6   no rights under § 304(c)(6)(D) of the Copyright Act to enforce.  DN 462 at 23-24.

7   Congress, the Ninth Circuit, and this Court all reject Toberoff's position, DN 507 at

8   16-17; 582 at 5-7, but he will no doubt press it on appeal, DN 541.

9      This means there is indeed a "live controversy" between the parties.  Mot. 20.

10  Given Toberoff's federal appeal, DC needs a ruling under the UCL that protects its

11  rights and interests.  This is key because Toberoff cannot make his (erroneous)

12  federal standing argument under the UCL.  As commentators and courts make

13  clear, UCL claims "are not dependent on rights and remedies conferred by the

14  underlying law that is being 'borrowed,'" 7-A WILLIAM L. STERN, BUSINESS &

15  PROFESSIONS CODE § 17200 PRACTICE § 7:5 (Rutter 2012), and the UCL *allows* a

16  plaintiff a remedy even where it would lack standing to bring a claim under the

17  federal statute being invoked, *e.g.*, *Wash. Mut. Bank, FA v. Sup.Ct.*, 75 Cal. App.

18  4th 773, 783 (1999); *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002).  Indeed,  as

19  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 189-91

20  (1999), held, even a "near miss" of a predicate federal statutory violation is enough

21  to support a viable claim under the UCL.  *See* STERN, *supra*, § 3:128.

22     ***B.  Timeliness.***  Toberoff claims "the bulk" of DC's Sixth Claim is untimely,

23  arguing DC's claims concerning the 2001 and 2003 Pacific Pictures agreements are

24  time barred, but *conceding* that DC's Sixth Claim is timely as to the 2008 consent

25  agreement.  Mot. 21.  This alone defeats his motion.  And not only is Toberoff's

26  rewriting of DC's claims in error (DC challenges his *continuing course* of conduct,

27  *supra* at 6-9), he ignores this Court's summary judgment ruling on DC's Third

28  Claim.  In opposing DC's motion for judgment on that Third Claim, and in cross-

DC'S OPP. TO DEFS.' MSJ &
CROSS-MOT. FOR J.

1    moving for judgment in *his* favor, Toberoff argued the claim was time-barred—

2    advancing the same arguments he makes here.  DN 462 at 24; *supra* at 5.  This

3    Court did not credit Toberoff's statute-of-limitations arguments and granted DC

4    judgment in its favor on its Third Claim.  DN 507 at 17.  It should do the same here.

5         Toberoff suggests that DC's Sixth Claim is different because the UCL—

6    unlike the Copyright Act on which DC's Third Claim is premised—does not

7    recognize tolling doctrines like fraudulent concealment.  Citing cases from 2002

8    and 2007, he argues it remains an *open question* in California whether the delayed-

9    discovery rule applies to UCL claims.  Mot. 21.  This position is directly refuted by

10   the California Supreme Court's decision in *Aryeh*.  *Aryeh* held that common-law

11   tolling doctrines—such as "delayed discovery" and "continuing harm"—apply to

12   UCL claims.  55 Cal.4th at 1196-97.  Indeed, the very *Karl Storz* case on which

13   Toberoff relies, Mot. 21, was criticized in *Aryeh*, 55 Cal. 4th at 1194 n.4 ("[A]

14   subsequent Ninth Circuit case also asserted that UCL claims never run from the

15   date of their discovery, but it offered only an ipse dixit, with no reasoning to

16   support its construction of California law.  (*Karl Storz Endoscopy-America, Inc. v.*

17   *Surgical Technologies, Inc.* (9th Cir. 2002) 285 F.3d 848, 857.")); *id.* at 1196-97.

18        As Toberoff knows, it has always been DC's position that its Sixth Claim is

19   timely under various California tolling doctrines and, *inter alia*, because (1) DC did

20   not become aware of Toberoff's misconduct until late 2008; and (2) he continued to

21   spin his web of consent agreements in 2008 and beyond—well *after* DC filed suit in

22   May 2010.  *E.g.*, DN 49 ¶¶ 102-04; 468 at 12; *infra* at 6-13.  The only new "fact"

23   defendants submit in connection with this claim is that they purportedly "cancelled"

24   their 2001 and 2003 Pacific Pictures agreements in 2004, and that this somehow

25   ended the harm DC suffered.  Mot. 21.  As demonstrated above, however, this

26   supposed "cancellation" was a sham, and it was not until August 2011—and in

27   response to this lawsuit—that Toberoff finally purported to quitclaim his interests

28   in the Shuster's putative copyrights.  *Supra* at 7.  Moreover, it was not until late

- 20 -

1   2012 that this Court invalidated the consent agreements DC challenges on this Sixth

2   Claim (and its parallel Third Claim.).  *Supra* at 8.  Again, Toberoff was fully aware

3   that DC disputed his supposed "cancellation" argument— and his no-harm-no-foul

4   position[7]—but he tactically and improperly failed to address the issue in his motion.

5   This is yet further grounds to deny his motion on DC's Sixth Claim.  *Supra* n.3.

6       ***C. Preemption.***  Section 301 of the Copyright Act preempts state-law claims

7   only if they (1) come within the "subject matter of copyright" as defined in sections

8   102 and 103 of the Act; and (2) are "equivalent" to the exclusive rights defined in

9   section 106.  17 U.S.C. § 301(a).  Or, as defendants' own case puts it: "Section 301

10  preempts those state law rights which *are in essence reformulated allegations of*

11  *unauthorized use of a copyrighted work*."  *Trenton v. Infinity Broad. Corp.*, 865 F.

12  Supp. 1416, 1429 (C.D. Cal. 1994) (emphasis added).  In contrast, a state-law claim

13  that contains an "extra element"—one that it is "qualitatively different from a

14  copyright … *infringement*" claim—is <u>not</u> preempted.  *Del Madera Props. v. Rhodes*

15  *& Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir.1987) (emphasis added).

16      DC does not sue Toberoff for "use" or "infringement" of its copyrights.  It

17  sues him for illicit consent agreements that violate the grant-making provisions in

18  § 304(c)(6)(D); DN 458 at 23-25, and, thus, are also "unlawful" under the UCL.

19  DC also sues him for violating the UCL's prohibitions on unfair, anti-competitive,

20  and fraudulent conduct—all of which Toberoff's web of consent agreements

21  violate—and none of which allege that Toberoff infringed DC's copyrighted works.

22  *E.g.*, *Cel-Tech*, 20 Cal.4th at 187 ("unfair" prong of UCL met when business

23  practice "significantly threatens or harms competition").  Indeed, Toberoff's

24

25      [7] As examples, DC so argued in its Rule 12 briefing, DN 185 at 5-6; 334 at 11-
26  17, in response to Toberoff's unsuccessful summary-judgment motion, DN 468 at
    12; 471 at 66-67; 494-1 at 52; during Peary's deposition, DN 305-37 at 1310:3-
27  1314:6, 1316:9-15, 1325:9-1337:1, 1371:13-23, 1432:19-1440:5; in opposition to
    Toberoff's SLAPP motion, DN 307 at 8-9, and in moving to compel Dawn Peavy's
28  deposition, DN 360 at 3-4.  Toberoff's claim that the "fact" of his 2004 cancellation
    is undisputed is preposterous—as are many of his 51 allegedly "Undisputed Facts."

DC'S OPP. TO DEFS.' MSJ &
CROSS-MOT. FOR J.

agreements violate the UCL, because they run afoul of *state-law* and not just the Copyright Act.  *E.g.*, *Calvert v. Stoner*, 33 Cal.2d 97, 103 (1948) (contract limiting client's ability to settle "is against public policy and void"); *accord Estate of Falco*, 188 Cal. App. 3d 1004, 1018 (1987); *Nehad v. Mukasey*, 535 F.3d 962, 970 (9th Cir. 2008); *Abbott v. Kidder Peabody & Co.*, 42 F. Supp. 2d 1046, 1050-51 (D. Colo. 1999); PAUL W. VAPNEK ET AL., CAL. PRAC. GUIDE: PROF'L. RESP. § 5:735 (2009).  Toberoff knows this; the lawyers he tried to hire at Armstrong Hirsch told him so.  DN 500-5 at 348-76.  Toberoff addresses none of this in his improper motion, and none of his cited cases helps him.  All are either copyright "infringement" or "use" cases,[8] or prove DC's point that preemption does *not* apply to claims involving extra elements.[9]

## V.   CONCLUSION

Defendants' summary judgment motion should be denied; final judgment should enter in DC's favor on its Sixth Claim; and partial, final judgment should enter in DC's favor on all issues on its Fourth and Fifth Claims, save for damages, which DC can expeditiously establish.

Dated:  February 15, 2013

Respectfully submitted,

By: /s/  Daniel M. Petrocelli
　　　　Daniel M. Petrocelli
Attorneys for Plaintiff DC Comics

---

[8] *See Trenton*, 865 F. Supp. at 1429; *Kodadek v. MTV Networks*, 152 F.3d 1209, 1213 (9th Cir. 1998) (UCL claim incorporating by reference copyright infringement claim); *Blue Nile, Inc. v. Ice.com, Inc.*, 478 F. Supp. 2d 1240, 1250 (W.D. Wash. 2007) (same); *MEECO Mfg. Co. v. True Value Co.*, 2007 U.S. Dist. LEXIS 25986 at *14 (W.D. Wash. Apr. 3, 2007) (same); *Motown Record Corp. v. George A. Hormel & Co.*, 657 F. Supp. 1236, 1239 (C.D. Cal. 1987) (same).

[9] *See Altera Corp. v. Clear Logic, Inc.*, 424 F .3d 1079, 1089-90 (9th Cir. 2005) (intentional interference claims satisfy extra element test);  *Ritchie v. Williams*, 395 F.3d 283, 289 (6th Cir. 2005) (state-law claim not preempted because it "does not implicate either of the elements of a copyright claim—ownership or infringement").

# Appendix A

| Defendants' MSJ on DC's <u>Third</u> Claim | Defendants' MSJ on DC's <u>Fourth-Sixth</u> Claims |
|---|---|
| DC is not saved by the "discovery rule" because the PPC Agreements were voluntarily produced to DC in **November 2006**, and DC took depositions on these agreements in 2006. SGI ¶¶94-95. DC's Third Claim thus expired in **November 2009**, six months before this suit was filed. DN 462 at 24 (emphasis in original). | [I]n *Siegel*, **DC was provided with complete unredacted copies of both the 2001 and 2003 PPC Agreements by November 15, 2006**, putting DC on actual notice.  DC even introduced and relied upon the PPC Agreements as exhibits in its November  17, 2006 deposition of Mr. Toberoff, and extensively questioned him about both the Shuster Termination and the 2001/2003 PPC Agreements.<br><br>The statute of limitations thus began to run *at the very latest* on November 15, 2006.… Mot. 10-11 (cites omitted; emphasis in original). |
| DC's excuse that it was unaware until it read the anonymous "Timeline" in 2008 does not hold up because DC's claim is based on the PPC Agreements themselves and, in any event, DC's in-house counsel admitted to reading the "Timeline" in 2006, as well.  SGI ¶96.  DN 462 at 24. | DC has also argued that the statute of limitations was tolled under California's "delayed discovery rule" because it was supposedly unaware of the facts until Defendants formally produced the anonymous "Timeline" in 2008.  This is not true.  First, DC has admitted that in-house counsel received and read the Timeline in 2006, and then conveyed the Timeline's accusations to outside counsel.  Second, as shown directly above, the PPC Agreements and Shuster Termination placed DC on actual and inquiry notice without the Timeline.  Mot. 11 (cites omitted). |
| DC effectively concedes that its Third Claim is time-barred, unless saved by the "continuing harm" doctrine.  MSJ 25.  DC has no continuing harm because the PPC Agreements were expressly revoked in 2004 and have no continuing effect (SGI ¶85) and, as shown above, the 2008 Consent Agreement does not violate anything.  DN 462 at 24. | The "continuing harm" doctrine has no application here, where the PPC Agreements can be "fairly" and "realistically" identified as the supposed cause of, and basis for, DC's claim.  Mot. at 13 (citations omitted)….  DC's Fourth Claim alleges that Mr. Toberoff and [PPC] tortiously interfered with DC's 1992 agreement with Joseph Shuster's siblings by entering into 2001 and 2003 agreements with Mark Warren Peary (both of which were cancelled in 2004)….  *Id*. at 1. |

OMM_US:71350082

DC'S OPP. TO DEFS.' MSJ & CROSS-MOT. FOR J.