DANIEL M. PETROCELLI (S.B. #097802)
 dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. #211640)
 mkline@omm.com
CASSANDRA L. SETO (S.B. #246608)
 cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

Attorneys for Plaintiff DC Comics

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DC COMICS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>　　　　Defendants. | Case No. CV 10-3633 ODW (RZx)<br><br>**DECLARATION OF DANIEL M. PETROCELLI IN SUPPORT OF DC'S REQUEST FOR CONTINUANCE OF SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56(d); DC'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON DC'S FOURTH, FIFTH, AND SIXTH CLAIMS; AND DC'S CROSS-MOTION FOR JUDGMENT ON THESE SAME CLAIMS**<br><br>Hon. Otis D. Wright II<br><br>**Hearing Date**:　　March 11, 2013<br>　　　　　　　　　　(*Hearing Vacated*) |

# DECLARATION OF DANIEL M. PETROCELLI

I, Daniel M. Petrocelli, declare and state:

1. I am a partner at O'Melveny & Myers LLP, counsel of record for plaintiff DC Comics ("DC") in the above-entitled case. I make this declaration in support of DC's Request For Continuance Of Summary Judgment Under Fed. R. Civ. P. 56(d); DC's Opposition To Defendants' Motion For Partial Summary Judgment On DC's Fourth, Fifth and Sixth Claims; and DC's Cross-Motion For Judgment On These Same Claims. I have personal knowledge of the matters set forth in this declaration.

## I. The Court Should Defer Ruling On Defendants' Summary Judgment Motion Until Discovery Is Complete.

2. Defendants have moved for summary judgment on DC's Fourth, Fifth, and Sixth Claims, based almost entirely on their argument that these claims are barred by the applicable statutes of limitation. As explained below, DC is in the midst of deposition and document discovery that bears directly on defendants' limitation defenses. DC thus asks the Court to defer ruling on these issues until the necessary discovery has been completed.

3. Under Federal Rule of Civil Procedure 56(d), a party may obtain a continuance on a motion for summary judgment if it appears that he "cannot for reasons stated present by affidavit facts essential to justify his opposition." Where, as here, a party making a Rule 56(d) request has "diligently pursued its previous discovery opportunities," *Byrd v. Guess*, 137 F.3d 1126, 1135 (9th Cir. 1998), and sets forth in affidavit form (1) the relevant information it seeks to elicit from further discovery, and (2) the basis for believing that information actually exists, then the additional discovery must be granted, *see VISA Int'l Servs. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986) (reversing district court's denial of Rule 56(f) [now 56(d)] application where discovery was not complete); *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) ("the Supreme

1  Court has restated the rule as *requiring*, rather than merely permitting, discovery
2  'where the non-moving party has not had the opportunity to discover information
3  that is essential to its opposition'") (emphasis added); *Burlington N. Santa Fe R.R.*
4  *Co. v. Assiniboine & Sioux Tribes for the Fort Peck Reservation*, 323 F.3d 767, 773
5  (9th Cir. 2003) (noting that where a summary judgment motion is filed "before a
6  party has had any realistic opportunity to pursue discovery … district court should
7  grant any Rule 56(f) motion fairly freely"); *see also Garrett v. City & Cnty. of San*
8  *Francisco*, 818 F.2d 1515, 1519 (9th Cir. 1987).

### *A.  DC Has Diligently Pursued Discovery*

4.  Since it filed this case in May 2010, DC has diligently pursued discovery in support of its claims, including discovery relevant to defendants' limitation defenses to its Fourth, Fifth, and Sixth Claims.  For example, DC has served hundreds of document requests and interrogatories, deposed a number of witnesses, and filed over 25 discovery motions (many on account of the issues described in DC's pending sanctions motion, DN 500; 527;573).  Despite DC's diligence, discovery has been delayed due to a nearly two-year-long discovery dispute (and stay) concerning the Toberoff Timeline documents, and defendants' repeated efforts to resist key discovery, as addressed both in DC's pending sanction motion, *id.*, and a pending motion to take defendants' second day of depositions based on the new Timeline documents and other evidence DC recently obtained, DN 585 at 1-2, 6-19.

5.  Indeed, for almost two years—from July 2010 until May 2012—much discovery in this case was stalled while the parties litigated whether defendants waived privilege over the Timeline documents, including by disclosing them to the U.S. Attorney's Office.  The Timeline documents include evidence describing Toberoff's misconduct.  *See In re Pacific Pictures*, 679 F.3d 1121, 1124 (9th Cir. 2012); DN 163-12 at 735-40; 427-3-427-11; 500; 527.

- 2 -

PETROCELLI FRCP 56(D) DECL. ISO
DC'S MSJ OPP. & CROSS-MOT. FOR J.

6. In May 2011, Magistrate Judge Zarefsky ordered defendants to produce the Timeline documents to DC, but stayed his ruling pending appellate review. DN 262 at 4. This Court denied defendants' challenge to that ruling. DN 279. In April 2012, the Ninth Circuit affirmed this Court's order compelling defendants to produce the Timeline documents. *Pacific Pictures*, 679 F.3d at 1131. Defendants delayed producing the documents by filing a series of emergency motions, all of which were rejected by this Court and the Ninth Circuit. DN 424, 429; 9th Cir. Appeal No. 11-71844, DN 39. The Timeline documents were finally produced in May 2012. These documents revealed further evidence of defendants' misconduct—including the withholding of important, non-privileged documents. *See* DN 500 at 18-19; 527 at 1-7.

7. Defendants' discovery resistance and consequent delays have prevented DC from obtaining important discovery relevant to defendants' limitation defenses. As discussed below, DC needs to complete this discovery in order to fully oppose defendants' summary judgment motion. For that reason, we submit that defendants' pending motion cannot be granted.

### B. Defendants' Statute-Of-Limitation Defenses

8. Defendants contend that DC's Fourth, Fifth, and Sixth Claims are barred by the applicable statutes of limitation. As set forth in DC's concurrently filed opposition, DC submits that these limitation defenses fail as a matter of law. Defendants' motion also asks the Court to decide disputed factual issues when discovery on those issues is ongoing—including such issues as when DC was reasonably put on notice of its claims, defendants' continuing course of misconduct, and Toberoff's concealment of key evidence.

9. DC's Fourth Claim alleges that Toberoff and Pacific Pictures intentionally interfered with DC's 1992 agreement with the Shuster heirs by improperly inducing the Shusters to repudiate that agreement and grant him and Pacific Pictures competing rights. DN 49 ¶¶ 175-79. Defendants contend the two-

year limitation period on this claim expired in November 2008—before DC filed its complaint in May 2010—because DC received the Shusters' termination notice in 2003 and knew about the Pacific Pictures agreements in 2006. Mot. 8-13. In its concurrently filed opposition, DC argues its Fourth Claim is timely because, *inter alia*, (1) it is premised on defendants' continuing course of conduct, including an unlawful consent agreement executed by the heirs in 2008 and a Pacific Pictures agreement executed in 2011; (2) Toberoff's pattern of misconduct only came to light when he produced the Timeline in December 2008—less than two years before DC filed suit; and (3) Toberoff, as party and as counsel, fraudulently concealed his acts of interference.

10. DC's Fifth Claim alleges that Toberoff intentionally interfered with DC's 2001 settlement agreement and business relationship with the Siegel heirs by inducing them to cut their ties and break their contract with DC based on Toberoff's fraudulent promises about a business offer from a fictitious "billionaire investor." DN 49 ¶¶ 181-86. Defendants contend the two-year limitation period on this claim began to run in 2002, when the Siegels cut their ties with DC. Mot. 13-14. In its concurrently filed opposition, DC argues its Fifth Claim is timely because, *inter alia*, (1) DC had no way to discover Toberoff's illicit scheme before it obtained the Timeline in 2008; and (2) DC's efforts to uncover this scheme, which ultimately revealed Toberoff's fraudulent promises to the Siegels, were stymied by his discovery misconduct.

11. DC's Sixth Claim alleges that the web of unlawful, rights-tying agreements that Toberoff (and his companies) made with the Siegel and Shuster heirs are void and unenforceable under California's unfair competition laws. DN 49 ¶¶ 188-89. Although defendants concede this Claim is timely as to their 2008 consent agreement, they claim the four-year limitation period began to run years earlier on the Pacific Pictures agreements DC challenges. Mot. 21. In its concurrently filed opposition, DC contends that its Sixth Claim is timely because,

*inter alia*, (1) DC first learned about Toberoff's misconduct when the Timeline was produced in late 2008; and (2) his misconduct continued with the consent agreements in 2008 and 2011—*after* DC filed suit in 2010. As to each of its Fourth, Fifth, and Sixth Claims, DC also argues that Toberoff's motion is barred by this Court's ruling in DC's favor on its Third Claim, DN 507—over the same statute-of-limitation arguments defendants repeat here.

### C.   *Ongoing Discovery Relevant To Defendants' Limitation Defenses*

12.   DC is currently conducting important deposition and document discovery relevant to defendants' limitation defenses. For example, currently pending before Magistrate Judge Zarefsky is DC's motion to compel further depositions of defendants Toberoff, his three companies (for whom Toberoff is testifying under FED. R. CIV. P. 30(b)(6)), Laura Siegel Larson, and Mark Warren Peary. DN 585 at 1-2, 6-19. DC submits it is entitled to depose these defendants about important new documents, most of which surfaced *after* their initial depositions—including the 2011 Pacific Pictures agreement, the Toberoff Timeline documents, and declarations concerning their discovery misconduct—and about key issues about which defendants previously refused to testify based on unwarranted objections. *Id.* The testimony DC seeks is relevant to defendants' statute-of-limitation defenses.

13.   <u>DC Needs to Finish Deposing Toberoff.</u>  DC has yet to depose Toberoff on key documents, including many of the Timeline documents, Toberoff's recent declaration concerning his discovery conduct, the 2011 Pacific Pictures agreement, and memos from the Armstrong Hirsch firm to Toberoff discussing the ethical failings inherent in his business relationship with the Shusters. DN 585 at 1-2, 6-12. The substance of these documents is relevant to DC's affirmative claims (the Armstrong Hirsch memos, for example, disclose and detail Toberoff's dealings with the Shusters that DC contends were improper), and the timing and method of production of the Timeline and related documents (including documents related to

- 5 -   PETROCELLI FRCP 56(D) DECL. ISO
DC'S MSJ OPP. & CROSS-MOT. FOR J.

1   DC's "billionaire investor" fraud claim) are relevant to DC's claims and refutation
2   of defendants' limitation defenses. *Id.* at 6-12. DC was unable to cover these
3   topics during Toberoff's deposition last year, given the complexity of the many
4   issues presented in this case and given that Toberoff was testifying on behalf of
5   *four* separate defendants. *Id.* at 6-9.

6   14.  DC also needs to depose Toberoff about DC's contentions regarding
7   his discovery misconduct. At his first deposition, Toberoff's counsel foreclosed all
8   questions on this topic through a series of meritless privilege objections. *Id.* at 9-
9   10. But DC contends this topic is *not* privileged, *id.*, and Toberoff's withholding of
10  evidence of interactions with the Siegel and Shuster heirs—revealed in non-
11  privileged, never-before-produced letters among the heirs, DN 500—supports DC's
12  fraudulent concealment, delayed discovery, and equitable tolling arguments that
13  respond to and refute defendants' limitation defenses. *E.g.*, DN 585 at 10
14  (collecting relevant case law); *see* DN 184 at 8-13; 185 at 12-13; 307 at 22-25; 334
15  at 22-23.

16  15.  Last Fall—after his deposition discussed above and in response to
17  DC's pending sanctions motion—Toberoff submitted an eight-page, fact-intensive
18  declaration about his and defendants' discovery conduct. DN 518. The declaration
19  covers the types of topics about which I intended to examine Toberoff just weeks
20  before, when defense counsel instructed him not to answer on the grounds of
21  privilege. If DC's pending motion is granted, we intend to depose Toberoff about
22  this declaration as well. *See* DN 585 at 11-12 (citing, *e.g.*, *Wald v. Costco*
23  *Wholesale Corp.*, 2005 WL 425864, at *4 (S.D.N.Y. Feb. 22, 2005) (ordering
24  witness produced for "additional deposition regarding her new declaration" where
25  declaration "elaborate[d] in considerable detail" on opinions)). Such a deposition is
26  especially important given that Toberoff's factual claims in his declaration bear
27  directly on his pending motion for summary judgment and, as set forth in DC's
28

motions, are contradicted by his earlier statements in sworn declarations and in open court. *See* DN 527 at 1, 3-5, 7; 585 at 11-12.

16. <u>DC's Need to Depose Peary.</u>  DC seeks to examine Peary about several new documents that were not disclosed until after his July 2011 deposition. For example, the 2011 Pacific Pictures agreement, which was executed well within the statutory period, is directly relevant to refute defendants' limitation arguments, as DC argues in its concurrently filed opposition brief.  DC contends that the creation of the 2011 agreement (in response to this lawsuit) refutes defendants' claim that when they "cancelled" the earlier Pacific Pictures agreements in 2004, Toberoff gave back to the Shusters his 50% stake in their purported rights.  DN 577 at 8-13, 21.  As DC has shown, Toberoff's company still held the rights up until August 2011—meaning the harm DC suffered and on which it sued continued well after the filing of this lawsuit.  DN 49 ¶¶ 9, 58-64; 169; 305-37 at 1310:3-1314:6, 1316:9-15, 1434:14-1440:5; 307 at 6-9; 334 at 11-17; 458 at 7-9, 23-25; 468 at 10-12.

17. DC also seeks to depose Peary about his mother's recently surfaced will regarding DC's contention that Peary and Toberoff misled Ms. Peavy and her daughter Dawn Peavy.  DN 585 at 15-16.  The Court permitted DC an additional 1½ hours to depose Dawn Peavy concerning these same documents.  DN 377; 382 at 7:24-9:1.

18. DC also seeks to depose Peary about the Timeline documents—including the Armstrong Hirsch memos that discuss how Toberoff's Pacific Pictures agreements with the Shusters violate California probate laws, Rules of Professional Responsibility, and the State Bar Act.  DN 500-5 at 350-51, 348-76, 355-62.  These memos help refute defendants' limitation defenses, as they are part of the lengthy course of dealings between Toberoff and Peary that DC contends were illicit and violated its rights.  *See* DN 507 at 14-17.

1    19.   DC also requires more complete testimony about the agreements
2  between the Shusters and Pacific Pictures. During Peary's 2011 deposition,
3  Toberoff instructed him not to answer a number of DC's questions on this topic
4  because he supposedly had discussions with Toberoff on the same issues. DN 585
5  at 16-18. DC submits in its pending motion that, given Toberoff's dual role as the
6  Shusters' business partner and lawyer, these instructions should be overruled. *Id.*
7  Such testimony—about why and how Peary and his family were induced by
8  Toberoff to breach the Shusters' 1992 agreement with DC and enter into a business
9  deal with Toberoff instead—is directly relevant to the creation, ongoing conduct,
10 and content of that business relationship, DN 49 ¶¶ 180-89; 458 at 23-25; 468 at 10-
11 12, which bears on defendants' limitation defenses.

12   20.   <u>DC's Need to Depose Larson.</u> DC has yet to depose Larson on
13 important, newly produced documents, including letters between Larson and her
14 late half-brother Michael Siegel, the Timeline documents, two recent declarations
15 she submitted, and a letter she published to "Superman Fans Everywhere" on
16 October 11, 2012, that addresses allegations in DC's Fifth Claim. As DC explains
17 in its concurrently filed opposition, these documents are relevant to defendants'
18 limitation defenses in that they support DC's contentions regarding defendants'
19 fraudulent concealment and DC's recent discovery of key evidence underlying its
20 Fifth and Sixth Claims. *See also* DN 585 at 12-14.

21   a.   DC's Fifth Claim alleges that Toberoff misrepresented that he
22 had a "billionaire investor" willing to purchase the Siegels' putative Superman
23 rights, if they cut their ties with DC. DN 49 ¶¶ 180-86. Toberoff and Larson
24 denied that Toberoff ever mentioned such a "billionaire," DN 98 at 2-3; 99 at 2-3;
25 305 at 1018:18-1020:4, 1024:24-1025:12; claimed Ari Emanuel had been the third-
26 party investor, DN 231 at 17; 269 at 8-11; 312 at 9; and swore the Timeline, which
27 disclosed the "billionaire," was false, DN 98 at 2-3; 160 at 71-72; 196 at 1-5, 10.
28 After seeking for several years to obtain Laura's correspondence with Michael, on

June 21, 2012—11 months after DC deposed Larson—the Court ordered Larson to produce a November 2002 letter she wrote Michael. DN 451 at 6. DC seeks to depose Larson about this letter. In this letter, Larson described "extensive meetings [she had] with Toberoff and Emmanuel" during which she learned that "the <u>billionaire investor</u> who was offering $15 million … invested his money elsewhere." DN 455-2 at 4. In DC's view, Larson's letter confirms that Toberoff (1) told Larson about a "billionaire investor;" (2) the "billionaire" was *not* Emanuel, and (3) the non-existent "billionaire" disappeared when Larson cut her ties with DC. As argued in its concurrently filed opposition, DC contends that defendants' failure to produce this document years earlier bars their limitation defense, and DC has a right to take discovery regarding the letter—as well as other letters between Michael and Laura (including an October 2, 2002, letter cited in Laura's November 2002 letter), which defendants still refuse to produce. DN 500 at 21.

   b. Among the Timeline documents disclosed in May 2012 is an August 9, 2002, memo from Kevin Marks to Larson in which he states he "told Mr. Toberoff that the Siegel Family had reached an agreement with D.C. Comics" in 2001, that Toberoff made a competing business offer to the Siegels nonetheless, and that if Larson accepted that competing offer, DC might sue her and Toberoff. DN 500-5 at 338-39. DC is entitled to depose Larson about this memo, which corroborates DC's Fifth Claim, DN 49 ¶¶ 184-85; 9th Cir. Appeal No. 11-56934, DN 29; 37-1 at 15-17, and which was withheld both in the *Siegel* case and at the start of this case. Again, DC contends in its concurrently filed opposition that defendants' withholding of such evidence tolled the statute of limitation on DC's claims.

   c. Larson also filed two sworn declarations on August 2, 2012, and November 19, 2012—over a year after her July 2011 deposition—in which she makes sworn statements directly relevant to DC's billionaire investor claim. *See* DN 466-2 ¶¶ 2-4, 6; 526 ¶¶ 6, 7, 10-12, 15. DC contends that these declarations

- 9 -

contradict Larson's November 2002 letter, DN 527 at 7; they are the subject of pending dispositive motions in the case, *id.*; and are further grounds for DC to re-depose Larson regarding the merits of DC's claims and defendants' limitation defense.

21. <u>Other Discovery.</u>  In addition to defendants, DC also seeks to depose representatives from Toberoff's three companies, as well as third-party witnesses like J. Todd Harris (Toberoff's former business partner), Ari Emanuel (Toberoff's former business partner), and Don Bulson (counsel for Michael Siegel).  In DC's view, the many exigencies of this case and the related *Siegel* cases—and the significant delay in getting full and complete document productions from defendants—have impeded DC from taking these depositions earlier.  DC plans to take these depositions soon.

22. Also pending before the Court is DC's sanctions motion, which seeks to uncover key documents that Toberoff has improperly withheld or destroyed, as well as documents over which defendants have now waived privilege.  DN 500 at 23-24.  Given Toberoff's history of discovery misconduct, DC believes there are additional documents in defendants' possession that support DC's Fourth through Sixth Claims and refute defendants' limitation defenses.  *Id.* at 6-21.  This includes hundreds of documents in Bulson's possession, on Toberoff's logs, and in the possession of both the Siegel and Shuster heirs.  *Id.*

23. DC contends it should have the opportunity to complete all of this discovery before defendants' summary judgment motion on its limitation defenses can be heard.  While DC submits the Court could grant judgment in *DC's favor* on its Fourth, Fifth, and Sixth Claims—for all of the reasons discussed in DC's concurrently filed cross-motion for summary judgment, and its fully briefed sanctions motion—DC contends defendants cannot obtain summary judgment on their limitation defenses when discovery on those defenses is incomplete.

**II.     Materials Cited In Defendants' Motion and DC's Papers**

24.     Defendants cite a total of seven exhibits in support of their summary judgment motion:  (1) the Shuster termination notice; (2) a letter concerning production of the Pacific Pictures agreements; (3) excerpts from Toberoff's 2006 deposition in *Siegel*; (4) a declaration submitted by Warner's in-house counsel, Wayne Smith, in *Siegel*; (5) a declaration submitted by DC's former counsel in *Siegel*; (6) defendants' Request for Judicial Notice ("RJN") filed in support of their Rule 12 motions; and (7) DC's Response to the RJN.  Adams Decl. Exs. M, V, W, X, Z, BB, CC.

25.     Only two of these seven exhibits are new.  In unsuccessfully moving for summary judgment on DC's First and Third Claims last year, defendants cited (2), (3), and (4).  *Compare* Adams Decl., Exs. V, W, X *with* DN 463-3 at 302; 463-4 at 303-329.  And in support of their Rule 12 motions—which defendants later withdrew, DN 343—defendants submitted their RJN ((6)) and DC submitted its response ((7)).  *Compare* Adams Decl., Exs. BB, CC *with* DN 333-1, 335.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on the 15th day of February, 2013 at Los Angeles, California.

                                                                /s/ Daniel M. Petrocelli
                                                                Daniel M. Petrocelli

- 11 -

PETROCELLI FRCP 56(D) DECL. ISO DC'S MSJ OPP. & CROSS-MOT. FOR J.