DANIEL M. PETROCELLI (S.B. # 097802)
  dpetrocelli@omm.com
MATTHEW T. KLINE (S.B. # 211640)
  mkline@omm.com
CASSANDRA L. SETO (S.B. # 246608)
  cseto@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

Attorneys for Plaintiff DC Comics

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PACIFIC PICTURES CORPORATION, IP WORLDWIDE, LLC, IPW, LLC, MARC TOBEROFF, an individual, MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER, JEAN ADELE PEAVY, an individual, LAURA SIEGEL LARSON, an individual and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>　　　　Defendant. | Case No.  CV 10-3633 ODW (RZx)<br><br>**DISCOVERY MATTER**<br><br>**DC COMICS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION (1) FOR LEAVE TO CONDUCT FURTHER DEPOSITION OF DEFENDANTS MARC TOBEROFF, LAURA SIEGEL LARSON, AND MARK WARREN PEARY; AND (2) TO COMPEL DEFENDANTS MARC TOBEROFF AND MARK WARREN PEARY TO RESPOND TO DEPOSITION QUESTIONS**<br><br>**Judge**:　　　Hon. Otis D. Wright II<br>**Magistrate**:　Hon. Ralph Zarefsky<br><br>**Hearing Date**:　　　March 11, 2013<br>**Hearing Time**:　　　10:00 a.m.<br>**Courtroom:**　　　　540<br>**Discovery Cutoff:**　　None Set<br>**Pretrial Conference:**　None Set<br>**Trial:**　　　　　　　　None Set |

DC's motion to compel further depositions of defendants should be granted, and should not be controversial given the facts on which it is based. To begin, each defendant has produced *new* documents central to DC's claims and/or submitted *new* substantive, fact-intensive declarations. DC has yet to depose defendants concerning these new materials, yet Toberoff would have the Courts treat as gospel the hotly contested facts they assert, DN 527 at 3-7, 9—including Larson's new, sworn explanation of what she meant by writing "billionaire investor" in 2002, *e.g.*, *id.*; DN 585 at 33-34. In a prior ruling involving a third-party witness, this Court allowed DC a second deposition to address just two new pieces of evidence. Here, DC seeks to re-depose *party witnesses* on *scores of new writings* on critical issues like DC's "billionaire" fraud claim. These further depositions should be allowed to explore this new evidence, and also because the events in the case spans ten years (2001 to 2011) and scores of events; Toberoff is testifying for four parties; and the three deponents DC seeks are all central to its claims. The fact issues that will be covered in these depositions are also relevant to dispositive motions pending before the District Court, including those raised in DC's Rule 56(d) affidavit. DN 588-89.

For all of these independent reasons, DC has shown good cause to take these depositions, and they should take place now so the District Court has full access to the testimony. Defendants offer 25 pages of reasons why the depositions should be barred or delayed. In these five pages, DC focuses its response on *nine* key points:

*1.* Defendants argue the District Court will *not* consider further deposition testimony in connection with DC's pending sanctions motion. DN 585 at 4:9-11. Not so. Judge Wright expressly said he would consider such further evidence on a showing of "good cause." DN 575. Testimony impeaching the declarations that Toberoff and Larson submitted on DC's sanctions motion would surely qualify.

*2.* Defendants suggest this Court already denied this motion when it told DC in 2011 that it generally disfavors multiple depositions. DN 585 at 3-4, 20-21. But this ignores: (a) that the Court also said in 2011 that it was "not ruling now" on any

- 1 -   SUPP. MEMO ISO DC'S MOT. TO COMPEL

1  motion DC made "in the future" to depose defendants concerning the Timeline, DN
2  288 at 31; and (b) that the Court ordered Ms. Peavy to sit for a second deposition in
3  2011, based on the emergence of two of the *same new documents* on which DC
4  now seeks to depose Toberoff and Peary, DN 377.  Peary and Toberoff *helped draft*
5  these new documents and should be examined on their contents.  DN 360 at 3-9.

6  *3.* Defendants argue the merits of their summary judgment motion at length,
7  predicting they will win "easily."  DN 585 at 4, 26-28, 41-42.  They made similar
8  predictions about their Rule 12 and SLAPP motions (which they withdrew and lost,
9  respectively), when arguing (unsuccessfully before) that all discovery in this case
10 should be stayed or that they should not be deposed.  DN 45 at 24-39; 61 at 14-32;
11 119 at 3-8.  Defendants' wait-and-see argument should again be rejected.[1]

12 *4.* DC did not "game" its filing of this motion.  DN 585 at 4-5.  To begin,
13 defendants ignore that it was *they* who forced DC to depose Larson and Peary in
14 2011 (*before* DC obtained the Timeline materials), by urging the Court to set a hard
15 deadline by which DC had to oppose their SLAPP motion.  DN 263, 268, 270.  As
16 for reopening the depositions, DC sought to avoid seriatim filings and planned to
17 move to compel in December 2012—*after* it obtained the Timeline documents and
18 critical follow-up documents the Courts ordered defendants to produce, DN 336;
19 416; 451 at 2-6; 457; 488; *after* Toberoff (and all defendants) testified and DC met-
20 and-conferred as to each deponent; *after* Toberoff and Larson submitted their new
21 declarations; and *after* the parties finished the work of arguing their cross-summary
22 judgment motions and two Ninth Circuit appeals (on all of which DC prevailed).

23 On December 5, 2012, however, the District Court ruled that it was not going
24 to hear DC's sanctions motion or any "merits" motions on DC's state-law claims,

---

[1] For sake of space, DC will not rehash the many reasons why defendants' summary judgment motion (and its conspiracy theories about DC and the Toberoff Timeline) are without merit. DN 588-89.  Nor will it respond to defendants' false, unproven claims that DC had access to the Timeline materials when it first deposed Larson and Peary in this case or Toberoff in *Siegel*, *compare* DN 585 at 20, 27, *with*, DN 579 at 3-4; 589 at 41-50.

pending defendants' SLAPP appeal.  DN 533.  Defendants (wrongly) argued this ruling stayed the case.  DN 543-44.  Rather than burden this Court with a motion to compel that defendants would argue was stayed, DC waited to draft this motion until after the Ninth Circuit rejected defendants' SLAPP appeal, which happened January 10.  DC then worked diligently on and served this motion without delay.

  *5.* DC was not "leisurely" or duplicative of *Siegel* when deposing defendants here.  DN 585 at 3.  To begin, DC mainly seeks to depose defendants about *new documents and declarations* to which DC lacked access at their first depositions here and in *Siegel*.  As for timing, DC covered a variety of topics at Toberoff's first deposition, but, despite its diligence, did not make needed progress into the Shuster story, nor did it examine him regarding, *inter alia*, many Timeline documents, the conduct of his three company defendants, or concerning his discovery conduct.  DN 588-1 ¶¶ 13-15.  *None* of these topics was covered in any detail—or at all—in *Siegel*, and defendants do not dispute that DC has yet to examine Toberoff on key issues in the case.  Indeed, in none of defendants' charts, nor anywhere in their brief do they point to a specific time when DC dithered on a topic or improperly ploughed the same ground as in *Siegel*.  Rather, any review of the three depositions shows experienced counsel marching quickly through an enormous record.[2]

  *6.* Defendants cite two older New York cases for the proposition that the Toberoff companies can simply "adopt" his testimony.  DN 585 at 25.  First, neither the *AIA*, 2002 U.S. Dist. LEXIS 9218, nor *Sabre*, 2001 WL 1590544, cases they cite point to controlling authority for this proposition.  And as *Sw. Bell Tel., L.P. v. UTEX Commc'ns. Corp.*, 2009 U.S. Dist. LEXIS 131706 (W.D. Tex. Sept. 30, 2009), held, this procedure is in decline and the Federal Rules "contemplate depositions of both individuals and of corporate representatives."  *Id.* at *6-8

---

[2] The only testimonial exchange defendants specifically hone in on is a misquote of DC's counsel, to suggest he admitted he was covering the same ground in *Siegel*.  DN 585 at 23.  The italicized portions of the exchange in Appendix A, *infra*—all of which defendants misleadingly *omit*—show that DC did not want to delay or duplicate.

- 3 -   SUPP. MEMO ISO DC'S MOT. TO COMPEL

(collecting cases).  Defendants address neither these new cases, nor DC's other cited cases.  Defendants do discuss *S.F. BART*, 2006 WL 2734289, at *1-2, but ignore the fact that the court there *allowed* plaintiff to depose Spencer *three times*— once individually, and once for each of his companies.  DC could have asked to depose Toberoff for four days; it sought *two* days as a compromise, but he refused.[3]

7. Toberoff argues that as a lawyer he cannot be deposed about his discovery conduct.  DN 585 at 28-30.  Toberoff is not just counsel; *he is a named defendant*, and as the Courts' SLAPP rulings fully establish, DC sued him as a businessman.  Discovery conduct is a perfectly appropriate subject for deposition, *id*. at 10-11, and Toberoff's decision to represent himself and his companies cannot shield them from questioning.  Toberoff tellingly never mentions *Specht* or the other cases DC cited, *id.*, which hold that (a) lawyers *may* be deposed on such topics; and (b) lawyers who serve in such business roles especially must testify.  Ignoring his business role, Toberoff argues that *Willer*, 1999 U.S. App. LEXIS 7831, should apply.  DC easily meets its test, too.  The discovery it seeks can (a) only be obtained from Toberoff (he controlled all discovery); (b) the evidence it seeks is relevant and not privileged (DC seeks to depose him on sworn statements he made in *public filings* about his conduct); and (3) DC's pending sanctions is not only "crucial to the case," it could dispose of it or lead to discovery of important new documents.  *Id*. at *8-9; DN 500.

8. Throughout their brief, defendants repeatedly argue the merits of the case and mischaracterize DC's claims to suggest the discovery DC seeks is irrelevant.

---

[3] Kline Decl. Exs. D, E, H.  In this and other ways, DC sought middle ground with Toberoff, but he gave no quarter.  At the end of his brief he suggests DC did not confer on all issues, DN 585 at 41, but DC told him it sought to depose Larson regarding "anything 'new' in the case since [her 2011] deposition," *id.* Ex. T at 780, which includes the new documents and declarations she provided.  He refused.  Likewise, DC told Toberoff it sought to depose him "regarding his discovery responses and conduct," *Id.* Ex. W, Y—the very subject of his November 14 declaration, DN 518—and he refused, Kline Decl. Ex. X.
As for Ms. Larson's health, DN 585 at 32, DC took all precautions to address it at her last deposition, *e.g.*, DN 305-24 at 729:10-12, and will do the same here.  Indeed, even though DC offered to stop the last deposition, take more breaks, or conduct it over multiple days, Toberoff pressed to go the full seven-hour day.  *Id*.; *id*. at 1052:22-1053:6.

1   To take two examples (among many), they claim it is "undisputed" that the 2001
2   and 2003 Pacific Pictures agreements were "cancelled" in 2004 and, thus they say,
3   DC need not depose Toberoff concerning the 2004 Armstrong Hirsch memos
4   calling those contracts unethical and unlawful.  DN 585 at 25.

5       Not so.  DC has repeatedly shown, including in pending summary judgment
6   briefs, that the Pacific Pictures agreements were *not* rescinded until *2011—after* this
7   case was filed.  DN 588 at 6-7.  Toberoff's choice to keep those illicit agreements
8   in place (and to deceive Peary and DC about them) are relevant to DC's Fourth and
9   Sixth Claims on the merits, to refute defendants' limitations arguments, *id*., and to
10  impeach the credibility of the key defense witness in the case—*i.e.*, Toberoff.

11      Defendants' claim that the Superboy "quid pro quo" issue is moot is equally
12  untrue.  It is yet another illicit means that Toberoff employed to violate DC's rights,
13  as DC's Fourth and Sixth Claims allege.  DN 49 ¶¶ 178, 188; 184 at 4-5; 307 at 7-8.
14  DC *did* tell the Court that its Superboy allegations on its *First* Claim were mooted
15  by the Court's summary judgment order on that claim, DN 585 at 39-40, but DC
16  *never said* the Superboy issue was not a remaining part of its three state-law claims.
17  DC is entitled to depose Peary on the non-privileged issue of why he forfeited the
18  claim he had made to Superboy in 2001, in favor of the Siegels in 2003.

19      *9*.  All of Toberoff's improper privilege objections—made at his deposition
20  and Peary's—should be overruled.  Again and again, those objections address
21  *business* issues, not legal advice.  And his claims about the state of the record do
22  not moot the parts of DC's motion targeting his objections.  While Toberoff argues,
23  for example, that the *Superboy* "quid pro quo" does <u>not</u> appear in the Peary retainer,
24  DN 585 at 40, he <u>never</u> says that this improper deal was not documented elsewhere.
25  DC has every right to explore these obvious omissions and business terms.

26  Dated:      February 25, 2013           Respectfully Submitted,
27                                          O'MELVENY & MYERS LLP
28                                          By:  /s/ Daniel M. Petrocelli

# APPENDIX A

THE WITNESS: Which, that you didn't say it in the Siegel or that you're not going to do that here?

*MR. PETROCELLI: You know, it's -- it's sort of unnecessary chatter, which I don't think is productive. I've read your deposition in the Siegel case, I'm familiar with it. I may or may not ask some of the same questions from time to time.*

*Whatever information is in there, I'm aware of. It's not my intention to re- -- replay that examination. Obviously that examination occurred many years ago without the benefit of a lot of information that's now available, so we will be going over the same timeline of events. I think that's obvious.*

So with that, can you repeat the question, please.

THE WITNESS [Marc Toberoff]: I just want to note that what's salient of that, and I think what prompted you to say at the Siegel deposition that you're not going to repeat the questions is because in allowing you to take depositions of the same parties whose depositions you had taken on the same subjects in the Siegel case, the Magistrate Zarefsky cautioned that he expects that DC's counsel would not be just asking the same questions.

*MR. PETROCELLI: And I'm mindful of the Court's rulings and where we are right now in the case.*

THE WITNESS: Okay.

*MR. PETROCELLI: And I'm the last person in this room who wants to waste time--*

DN 587 at 26 (Tr. 91:13-92:19).