Marc Toberoff (State Bar No. 188547)
*mtoberoff@toberoffandassociates.com*
Keith G. Adams (State Bar No. 240497)
*kadams@toberoffandassociates.com*
Pablo D. Arredondo (State Bar No. 241142)
*parredondo@toberoffandassociates.com*
David Harris (State Bar No.255557)
*dharris@toberoffandassociates.com*
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway #348
Malibu, California 90265
Telephone: (310) 246-3333
Fax: (310) 246-3101

Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, and Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

DC COMICS,

Plaintiff,

vs.

PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,

Defendants.

Case No: CV 10-03633 ODW (RZx)

Hon. Otis D. Wright II, U.S.D.J.
Hon. Ralph Zarefsky, U.S.M.J.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON DC'S FOURTH, FIFTH, AND SIXTH CLAIMS AND OPPOSITION TO DC'S CROSS-MOTION ON THE SAME CLAIMS**

*Reply Statement of Undisputed Facts, Response to Rule 56(d) Declaration, Statement of Genuine Issues in Response to Cross-Motion and Declarations of Ari Emanuel and Pablo Arredondo filed concurrently*

Complaint filed: May 14, 2010

Date: March 11, 2013*
Time: 1:30 p.m.*
Place: Courtroom 11*

*: The Court has indicated that it will take the motion under submission and hold a hearing if necessary. Dkt. 581.

# TABLE OF CONTENTS

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. DC'S FOURTH AND FIFTH CLAIMS ARE TIME-BARRED ........ 2

A. DC Was On Notice Of The Claims Without The "Timeline" ........ 2

B. DC's "Concealment" Arguments Are Legally Irrelevant ........ 4

C. Notice Issues Are Properly Decided On Summary Judgment ........ 5

D. "Continuing Harm" Is Inapplicable To DC's Fourth Claim ........ 6

E. DC Read The Timeline ........ 8

F. The Court Did Not Previously Adjudicate The Limitations Defenses ........ 9

II. DC'S SIXTH CLAIM IS BARRED ........ 10

A. DC Offers No Counter To Defendants' Mootness Argument ........ 10

B. The Sixth Claim Is Preempted ........ 10

III. DC'S CROSS-MOTION INVITES THIS COURT TO COMMIT ERROR ........ 11

CONCLUSION ........ 12

# TABLE OF AUTHORITIES

## Cases

*American Rivers v. National Marine Fisheries Serv.*, 126 F.3d 1118 (9th Cir. 1997) ........ 10

*Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185 (2013) ........ 7

*Barber v. Superior Court*, 234 Cal. App. 3d 1076 (1991) ........ 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 10

*Bernson v. Browning-Ferris Industries*, 7 Cal. 4th 926 (1994) ........ 5

*Brookhaven Typesetting Servs. v. Adobe Sys.*, 332 Fed. Appx. 387 (9th Cir. 2009) ........ 11

*CAMSI IV v. Hunter Technology Corp.*, 230 Cal. App. 3d 1525 (1991) ........ 5

*Cel-Tech Commc'ns, Inc. v. L. A. Cellular Tele. Co.*, 20 Cal. 4th 163 (1999) ........ 10

*Cent. Delta Water Agency v. U.S.*, 306 F.3d 938 (9th Cir. 2002) ........ 9

*Chambord Techs., Inc. v. Arthur D. Little, Inc.*, 2006 Cal. App. Unpub. LEXIS 3070 (Cal. App. Apr. 14 2006) ........ 5

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091 (9th Cir. 2007) ........ 11-12

*Flowers v. Carville*, 310 F.3d 1118 (9th Cir. 2002) ........ 6-7

*DOCA Co. v. Westinghouse Elec. Co., LLC*,
2011 WL 2182439 (W.D. Pa. June 3, 2011) .......... 9

*Evans v. Eckelman*,
216 Cal. App. 3d 1609 (1990) .......... 8

*Forcier v. Microsoft Corp.*,
123 F. Supp. 2d 520 (N.D. Cal. 2000) .......... 7

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) .......... 4

*G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Service, Inc.*,
958 F.2d 896 (9th Cir. 1992) .......... 10

*Hexcel Corp. v. Ineos Polymers, Inc.*,
681 F.3d 1055 (9th Cir. 2012) .......... 5

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
1998 U.S. Dist. LEXIS 8019 (E.D. Pa. May 5, 1998) .......... 12

*Jolly v. Eli Lilly & Co.*,
44 Cal. 3d 1103 (1988) .......... 1-2, 4, 9

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*,
431 F.3d 353 (9th Cir. 2005) .......... 5-6

*Mir v. Little Co. of Mary Hosp.*,
844 F.2d 646 (9th Cir. 1988) .......... 11

*Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.*,
407 F.2d 288 (9th Cir. 1969) .......... 7

*PNY Technologies, Inc. v. SanDisk Corp.*,
2012 WL 1380271 (N.D. Cal. Apr. 20, 2012) .......... 10

*Roth v. G.D. Searle & Co.*,
27 F.3d 1303 (8th Cir. 1994) .......... 8

*Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248 (9th Cir. 1978) .................... 8

*Sabety v. Pomona Valley Hosp. Med. Ctr., Inc.*, 2001 Cal. App. Unpub. LEXIS 529 (Cal. App. Dec. 20, 2001) .................... 9

*Saliter v. Pierce Brothers Mortuaries*, 81 Cal. App. 3d 292 (1978) .................... 5

*State ex rel. Metz v. CCC Info. Services, Inc.*, 149 Cal. App. 4th 402 (2007) .................... 6

*Suh v. Yang*, 987 F. Supp. 783 (N.D. Cal. 1997) .................... 7

*Thorman v. Am. Seafoods Co.*, 421 F.3d 1090 (9th Cir. 2005) .................... 5

*U.S. v. Gavilan Joint Cmty. Coll. Dist.*, 849 F.2d 1246 (9th Cir. 1988) .................... 11

*United States use of Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600 (9th Cir. 1988) .................... 11-12

*Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773 (1979) .................... 7

*Yeager v. Bowlin*, 693 F.3d 1076 (9th Cir. 2012) .................... 8

*Zuill v. Shanahan*, 80 F.3d 1366 (9th Cir.1996) .................... 9

**Statutes**

17 U.S.C. § 304(c)(6)(D) .................... 10

**Additional Authorities**

1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 1.01[B][1] .................... 10-11

**INTRODUCTION**

DC's opposition/cross-motion is a morass of distractions, and *ad hominem* attacks on its opposing counsel, irrelevant to the conclusion that the two-year statute of limitations ran in 2008. DC concedes that the relevant question is inquiry notice. Dkt. 588 ("Opp.") 2, 17. Notice requires that "the plaintiff has notice or information of circumstances to put a reasonable person on inquiry." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988). Defendants demonstrated that DC was on notice of its Fourth and Fifth Claims by 2006, when it had the PPC Agreements and the 2003 Shuster Termination that form the basis of its Fourth Claim, and had taken extensive discovery on the August 2002 offer and IP Worldwide agreement that form the basis of its Fifth Claim. Dkt. 577 ("Mot.") 7-19.

DC does not and cannot dispute the facts that demonstrate notice, or the clear California law governing inquiry notice. In short, DC cannot dispute that its claims are time-barred. Instead, DC tries to sidetrack the Court with arguments about the "Timeline" and documents DC received *after* it already filed suit. DC had notice in 2006, regardless of the Timeline or information received after filing its tort claims.

DC's "cross-motion" is the largest distraction of all. DC's Fourth, Fifth and Sixth Claims, attacking its opposing counsel, were always a sideshow used to leverage its federal claims against the Shuster Termination. Now DC distracts further with arguments that its overblown motion for an evidentiary hearing on discovery sanctions entitles it to unprecedented terminating sanctions on its time-barred Fourth and Fifth Claims and moot Sixth Claim, regardless of their lack of merit. After three years of discovery and access to reams of stolen privileged documents, DC cannot prove its frivolous claims, so it has substituted and exaggerated discovery disputes.

While not the focus of Defendants' streamlined motion, DC's claims are indeed meritless. DC's Fourth Claim is premised on allegedly interfering agreements that were legally ineffective, as this Court held, and voluntarily cancelled in 2004. DC's Fifth Claim alleges that an August 2002 offer to license the Siegels' rights for

1

DEFENDANTS' REPLY RE: MOTION FOR SUMMARY JUDGMENT ON FOURTH, FIFTH, AND SIXTH CLAIMS AND OPPOSITION RE: CROSS-MOTION ON SAME CLAIMS

$15 million "interfered" with its negotiations. This fails as a matter of timing: months earlier, in May 2002, the Siegels had declared an agreement "impossible." Dkt. 145-5, Ex. O. Moreover, DC's allegation that the August 2002 offer "fraudulently" promised a "billionaire investor" runs contrary to the testimony of every relevant witness. Ms. Larson (Dkt. 466-2, 526), her then-attorney Kevin Marks (Dkt. 312-2), Ari Emanuel (who made the offer), and Mr. Toberoff (Dkt. 587, Ex A at 77-78) all testified that no one mentioned a "billionaire." As Mr. Emanuel states in his declaration: "I was the investor." Declaration of Ari Emanuel ("ED") ¶5.

Nor is DC entitled to additional discovery. *See* Defendants' Response to Rule 56(d) Declaration. DC has known about the defenses raised here since August 2010 and has been free to take full discovery. And in all this time, DC has not even bothered to take the depositions of key witnesses such as Mr. Marks or Mr. Emanuel. Nor is the discovery DC seeks remotely relevant to the statute of limitations issue, which is based on documents and information already in DC's possession by 2006.

Try as DC might to muddy the waters, the facts and law are clear. DC's last claims must be dismissed as time-barred or moot, and this case brought to a close.

## ARGUMENT

### I. DC'S FOURTH AND FIFTH CLAIMS ARE TIME-BARRED

#### A. DC Was On Notice Of The Claims Without The "Timeline"

The key question is when DC had ***inquiry notice*** of its state-law claims. Mot. 9-12, 13-19. A plaintiff is placed on inquiry notice when "the plaintiff has notice or information of circumstances to put a reasonable person on inquiry;" the plaintiff "need not be aware of the specific 'facts' necessary to establish the claim," and needs only a "suspicion of wrongdoing." *Jolly*, 44 Cal. 3d at 1110-11 (citations omitted).

DC's Fourth Claim alleges that Mr. Toberoff interfered with DC's 1992 agreement with Joe Shuster's siblings by entering into the 2001 and 2003 PPC Agreements (cancelled in 2004), and by serving the Shuster Termination in 2003. FAC ¶¶174-179. DC does not dispute that it received the termination notice in 2003,

2

DEFENDANTS' REPLY RE: MOTION FOR SUMMARY JUDGMENT ON FOURTH, FIFTH, AND SIXTH CLAIMS AND OPPOSITION RE: CROSS-MOTION ON SAME CLAIMS

and copies of both the 2001 and 2003 PPC agreements, and the 2004 cancellation, in 2006. Reply Statement of Facts ("RUF") ¶25. With the agreements and termination in hand, DC was unequivocally on notice of this claim by **2006**. Mot. 8-13.

DC's Fifth Claim alleges that Mr. Toberoff tortiously interfered with DC's negotiations with Laura and Joanne Siegel when Mr. Emanuel (who DC tellingly did *not* sue) made an August 2002 offer to the Siegels' attorney to license their Superman rights. FAC ¶¶180-186. DC does not dispute: (1) that DC received the Siegels' September 21, 2002 letter formally terminating their counsel and negotiations (RUF ¶19); (2) that DC knew that the Siegels were represented by Mr. Toberoff when negotiations resumed in 2003 (*id.* ¶22); or (3) that DC took discovery in 2006, including deposition testimony from all relevant witnesses, on the August 2002 offer, the Siegels' September 2002 letter, and their subsequent October 3, 2002 agreement with IP Worldwide (Emanuel/Toberoff). *Id.* ¶¶20, 25-28, 31, 34-36. Nor does DC dispute that, with such notice, it argued in 2007 that the Siegels "suddenly appeared to have second thoughts after being presented with a seemingly more lucrative offer by their current counsel [Toberoff]" and that they "abruptly fired Mr. Marks and terminated discussions with DC shortly after receiving" that offer. *Id.* ¶¶46-47. It is indisputable that DC was on notice of its Fifth Claim in **2006**. Mot. at 13-19.

As DC was on inquiry or actual notice of both claims by 2006, the two-year statute ran in 2008, *two years* before DC filed suit. It is not even close – the claims are time-barred. DC's argument that it was not aware of its claims until formal receipt of the Timeline (that it read in 2006) is a red herring because ***none*** of the above undisputed facts depend on the Timeline. DC's arguments also do not hold up.

Fourth Claim: DC argues that it needed the anonymous Timeline to make its Fourth Claim, but DC cites ***no*** Timeline allegation in its Fourth Claim. Opp. 10 (quoting FAC, Ex. A). The Fourth Claim (FAC ¶¶174-79) itself shows that the documents required to allege it were (at most) the 2003 Shuster Termination, and the 2001 and 2003 PPC Agreements, which DC received by 2003 and 2006, respectively.

3

DEFENDANTS' REPLY RE: MOTION FOR SUMMARY JUDGMENT ON FOURTH, FIFTH, AND SIXTH CLAIMS AND OPPOSITION RE: CROSS-MOTION ON SAME CLAIMS

DC avers to supposed "important new evidence" regarding this claim produced in discovery **in this case**. Opp. 10-11. Evidence produced *after* the claim was filed has nothing to do with whether DC was on notice long *before* it was filed.[1]  DC also cannot seriously argue that it was not on notice of claims when it filed them.

Fifth Claim:  DC argues that it could not file its Fifth Claim until it could use the Timeline's "billionaire investor" allegations.  DC's premise is wrong.  The gravamen of its claim is the allegedly interfering August 2002 offer.  FAC ¶¶77-79, 185-86.  All DC needed was suspicion about this offer, which DC clearly had.  DC's 2006 deposition of Mr. Toberoff showed DC's suspicion about the August 2002 offer, and its 2007 briefing articulated those suspicions.[2] RUF ¶¶44-47.

"A plaintiff need not be aware of the specific 'facts' necessary to establish the claim." *Jolly,* 44 Cal.3d at 1111.  DC had a "reason to at least suspect" its claim, which is all that is required for inquiry notice. *Fox v. Ethicon Endo-Surgery*, *Inc.*, 35 Cal. 4th 797, 807-08 (2005). In any event, DC's "billionaire investor" sideshow is false, as shown by the testimony and declarations of both Mr. Emanuel (who made the offer) and Mr. Marks (who received it). ED ¶¶2-6; Dkt. 312-2.[3]

**B.     DC's "Concealment" Arguments Are Legally Irrelevant**

DC argues that supposed "suppression" and "concealment" of evidence tolled the statute.  Opp. at 3-4, 9-10, 12-16.  DC's accusations are untrue, as shown in

---

[1] This "new evidence" is irrelevant and consists of:  (1) a 2011 letter that simply confirmed the 2004 cancellation of the PPC Agreements (*see* Dkt. 585 at 37); (2) Jean Peavy's will, in which Mr. Toberoff had no involvement (*id.*); and (3) attorney-client opinion memos, written at Mr. Toberoff's request, concerning a form of agreement. *Id.* at 25-26.

[2] *See* Dkt. 578-2, Ex. W at 246 (DC:  "Do you recall Mr. Marks telling you in that first conversation that he was very far along with DC Comics and at a documentation phase), 253 (DC:  "Mr. Marks went on to testify concerning a conference call he had with you and Mr. Emanuel…."), 255 (DC:  "Prior to that conference call … had you [or Mr. Emanuel] taken any steps to place a monetary value on the Siegel interest?"), 257 (DC:  "Had you or Mr. Emanuel set up a fund to acquire intellectual property rights at that time? …. Did you or Mr. Emanuel propose acquiring the Siegel rights to Mr. Marks for $15 million together with a meaningful back end?"), 260 (DC:  "Had Mr. Emanuel discussed the $15 million figure with you prior to the conference call?").

[3] DC also misrepresents that it needed the Marks Memo for notice and that it "obtained the so-called 'Marks Memo' in May 2010." Opp. 14.  DC received the memo in May **2012** (Dkt. 417-2 ¶8) – two years after it filed its complaint in May 2010, not before as DC's convenient typo implies.

Defendants' opposition to DC's sanctions motion. Dkt. 517. More critically, they are legally irrelevant, because DC had notice regardless of documents produced *after* DC filed such claims. DC does not and cannot rebut clear California law that "the fraudulent concealment tolling provision does not come into play, whatever the lengths to which a defendant has gone to conceal his wrongs, if a plaintiff is on notice of a potential claim." *Barber v. Superior Court*, 234 Cal. App. 3d 1076, 1083 (1991).

In fact, the California Supreme Court case cited by DC expressly supports this point. *See Bernson v. Browning-Ferris Industries*, 7 Cal. 4th 926, 931 (1994) (fraudulent concealment tolls the statute "only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff … should have discovered it"). The Ninth Circuit agrees. *See Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) (if "plaintiff had actual or constructive knowledge … the doctrine of fraudulent concealment does not apply").

Here, the fraudulent concealment doctrine cannot help DC because it had ***by 2006***: the 2001/2003 PPC Agreements, the 2003 Shuster Termination, the 2002 IP Worldwide Agreement, and extensive testimony about the August 2002 offer.

### C. Notice Issues Are Properly Decided On Summary Judgment

DC argues that issues of "inquiry notice" are for trial. Opp. 12-13. Not so. Courts routinely decide such issues on summary judgment. *See, e.g.*, *CAMSI IV v. Hunter Technology Corp.*, 230 Cal. App. 3d 1525, 1537 (1991) ("Arguments that discovery-rule issues are necessarily factual and cannot be resolved on demurrer have been rejected."); *Thorman v. Am. Seafoods Co.*, 421 F.3d 1090, 1096 (9th Cir. 2005); *Saliter v. Pierce Brothers Mortuaries*, 81 Cal. App. 3d 292, 300 (1978).

DC cites two inapposite cases. An unpublished case, *Chambord Techs., Inc. v. Arthur D. Little, Inc.*, 2006 Cal. App. Unpub. LEXIS 3070, at *3 (Cal. App. Apr. 14 2006) (Opp. 13), where a party "deliberately misrepresented the date [he] was hired," and, as to this "critical fact," whether the "alleged reliance on [his] representation was reasonable" was held a triable issue. And *Living Designs, Inc. v. E.I. DuPont de*

*Nemours & Co.*, 431 F.3d 353, 366 (9th Cir. 2005) (Opp. 13), a RICO suit applying *federal* (not California) law, which merely held that a party dismissed from a case could not be charged with knowledge of a later order in the case "as a matter of law."

**D. "Continuing Harm" Is Inapplicable To DC's Fourth Claim**

DC spends four pages erroneously arguing that its Fourth Claim asserts a "continuing wrong" and misrepresenting what this claim is about. Opp. 6-11.

DC pretends its Fourth Claim was based on a "series of contracts Toberoff induced the Shuster heirs to sign." Opp. 6. Not so. The claim was premised on a supposed transfer of rights in the 2001 and 2003 PPC Agreements. *See* Dkt. 337 at 2-3 (The Court: "[T]he Pacific Pictures Agreements essentially gut the 1992 Agreement, purporting to assign to Toberoff those rights which were already assigned to DC Comics"); FAC ¶177 ("Toberoff knew that his actions in having his company [PPC] enter into a joint venture with the Shusters [the 2001 PPC Agreement] for the purpose of terminating DC's rights [was] substantially certain to interfere with [the] 1992 Agreement."). If this is a "continuing harm," every alleged interference with contract would result in continuing harm. That is ***not*** the law.

The "continuing harm" or "continuing accrual" doctrine has never been applied by a California court to a tortious interference claim. Rather, the doctrine applies "when an obligation or liability arises on a recurring basis," such as an obligation to make periodic payments or ongoing discriminatory conduct. *State ex rel. Metz v. CCC Info. Services, Inc.*, 149 Cal. App. 4th 402, 418 (2007) (alleged fraudulent statements within limitations period did not allow "continuing accrual" because the claim was triggered by initial statement outside the limitations period).

As the Ninth Circuit has stated in applying similar Nevada law, the "continuing harm" doctrine only applies "where there is 'no single incident' that can 'fairly or realistically be identified as the cause of significant harm.'" *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) (cited by DC). Indeed, the Circuit has specifically held that "[a] continuing violation is occasioned by continual unlawful acts, not by

6

DEFENDANTS' REPLY RE: MOTION FOR SUMMARY JUDGMENT ON FOURTH, FIFTH, AND SIXTH CLAIMS AND OPPOSITION RE: CROSS-MOTION ON SAME CLAIMS

continual ill effects from an original violation." *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981). *See Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.*, 407 F.2d 288, 292- 93 (9th Cir. 1969) (rejecting "continuing" harm argument in California tort case because "[t]he cause of action arises but once"). The "continuing harm" cases cited by DC are inapposite.[4]

DC's unsupported "continuing harm" theories would render the statute of limitations meaningless for interference claims, because a plaintiff could restart the limitations period at any time during a defendant's allegedly improper relationship with the plaintiff's former contractual party, no matter when the interference occurred. Courts have never taken this view. *See Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000) (interference claim based on hiring former employees accrued on hiring, even though employees continued to be employed).

Desperate to salvage this time-barred claim, DC misrepresents that its "complaint challenged *additional* consent agreements and pled that all of defendants' consent agreements 'remained in effect.'" Opp. 7 (citing FAC ¶170). Those allegations are not in DC's Fourth Claim, but in its already-decided Third Claim.

DC then argues that its Fourth Claim for interference is equivalent to an unfair competition claim. Opp. 8. This makes no sense, as the two causes of action are entirely separate. DC tries to confuse the point by citing *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185 (2013), but that case merely held that UCL claims are subject to California common law as to accrual of the statute of limitations.

Lastly, DC argues that an August 2011 letter is supposedly a "new contract" showing "continuing" conduct. Opp. 7. But that letter just confirmed the parties' understanding that they had *already* cancelled and replaced the PPC Agreements with a legal retainer seven years earlier, in 2004 (Dkt. 314-2, Ex. D), to nip in the bud

[4] *See Wyatt v. Union Mortg. Co.*, 24 Cal. 3d 773, 787-788 (1979) (conspiracy claims); *Suh v. Yang*, 987 F. Supp. 783, 796 (N.D. Cal. 1997) (trademark law); *Page v. United States*, 729 F.2d 818, 822 (D.C. Cir. 1984) (malpractice as to ongoing medical care; federal law); *Dickson v. Scoville*, 210 F.3d 382 (9th Cir. 2000) (drug administration cases; Idaho law; unpublished).

DC's erroneous assertion that the void PPC Agreements had ongoing effect. FAC ¶¶62, 99-100. All of this was later mooted by the Court's decision that the PPC Agreements "did not transfer ownership of the subject copyrights." Dkt. 507 at 15.

**E. <u>DC Read The Timeline</u>**

DC tries to downplay the fact that it read the Timeline in 2006. However, the prior testimony of Mr. Smith and DC's outside counsel speaks for itself. RUF ¶41 (Smith), ¶42 (Bergman). A party cannot create an issue of fact by "contradicting his prior [] testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).

DC then argues that even if Smith read the Timeline, his review was insufficient because it is a "lengthy, complicated document." Opp. 17. This is specious, as shown by the seven-page Timeline and by Smith's detailed 2007 testimony setting forth its contents. *See* RUF ¶41 (Smith: "The letter also referenced the documents enclosed, providing an overview of their contents and their connection to Plaintiffs' counsel's alleged wrongdoing."); *Roth v. G.D. Searle & Co.*, 27 F.3d 1303, 1305 (8th Cir. 1994) (inquiry notice where party "briefly read" brochure with warning). DC cannot cite any California case holding that a party is not on notice of a document it read. DC only cites *Evans v. Eckelman*, 216 Cal. App. 3d 1609 (1990), an off-point case that applied the delayed discovery rule to child molestation claims.

DC argues that the statute of limitations does not apply because Mr. Toberoff attacked the Timeline's reliability. Opp. 17. But inquiry notice is not defeated merely because an opposing party challenges a document, allegation or claim. *See Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978) (plaintiff on inquiry notice despite defendants' denial, and noting the sophisticated plaintiff "would [not] be thrown off the trail by a simple denial of wrongdoing"). Moreover, DC assumed that the Timeline was reliable, and even argued in *Siegel* that it justified reopening discovery and re-questioning Mr. Marks. Dkt. 42-10, Ex. 32.

DC argues that it was held that it did not have "access" to the Timeline until December 2008 (Opp. 11, 15-17), but its citations have no bearing on the fact that

8

DEFENDANTS' REPLY RE: MOTION FOR SUMMARY JUDGMENT ON FOURTH, FIFTH, AND SIXTH CLAIMS AND OPPOSITION RE: CROSS-MOTION ON SAME CLAIMS

Smith read the Timeline and described it to DC's outside counsel in 2006. RUF ¶41.

Lastly, DC argues that even if it had read and was therefore on notice of the Timeline it could not "use" it. Opp. 11. DC cites no authority, and none exists, for the proposition that inquiry notice is limited to useable evidence. For inquiry notice, the question is not when plaintiff had admissible evidence to prove its claims, but when it had "knowledge" sufficient to raise "suspicion," which DC plainly had by 2006. *Jolly,* 44 Cal. 3d at 1110-11. DC does not even try to distinguish *Sabety v. Pomona Valley Hosp. Med. Ctr., Inc.*, 2001 Cal. App. Unpub. LEXIS 529, at *16 (Cal. App. Dec. 20, 2001) (Mot. at 17), which unequivocally rejects DC's argument that it "lacked the means of discovery of the actual information [to support its claim] because the defendants asserted a privilege against discovery of [the information]." *See also DOCA Co. v. Westinghouse Elec. Co., LLC*, 2011 WL 2182439, at *4 (W.D. Pa. June 3, 2011) (permitting party "to inquire into a relevant non-privileged fact even though it learned of the fact only through an inadvertent disclosure [of a privileged document]"). Moreover, the Timeline is still **inadmissible** and unusable because it is anonymous. F.R.E. 701.

### F. The Court Did Not Previously Adjudicate The Limitations Defenses

DC also erroneously argues the above limitations issues were decided with DC's Third Claim. Opp. 5-6. DC's Third Claim was for declaratory relief under the Copyright Act and subject to the Copyright Act's federal statute of limitations. *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir.1996). The decision on the federal Third Claim did not and could not adjudicate Defendants' statute of limitations defenses under **California state law** to the Fourth and Fifth Claims. *See Cent. Delta Water Agency v. U.S.*, 306 F.3d 938, 953 (9th Cir. 2002) (for issue preclusion "to be satisfied, the issues litigated must not be 'merely similar,' but must be 'identical'").[5]

[5] DC frivolously argues that Defendants "abandon[ed]" (Opp. 5) their limitations defenses when they withdrew their 12(b)(6) motion because it "implicate[d] issues that are now under the jurisdiction of the Ninth Circuit … pursuant to defendants' recently-filed [anti-SLAPP] appeal." Dkt. 343. This Court later agreed that it lacked such jurisdiction during that appeal. Dkt. 533 at 1.

## II. DC'S SIXTH CLAIM IS BARRED

### A. <u>DC Offers No Counter To Defendants' Mootness Argument</u>

DC cannot rebut that its Sixth Claim is moot. In granting DC's Third Claim, this Court invalidated the PPC Agreements and the 2008 agreement (Dkt. 540), the same relief DC seeks in its Sixth Claim. FAC ¶¶188-89. There is nothing more for the Court to do. "A claim is moot if it has lost its character as a present, live controversy," and if "the claim is moot … [it] must be dismissed." *American Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997).

Furthermore, if judgment on the Third Claim is reversed on appeal, there would be no basis for DC's Sixth Claim. DC concedes that its Sixth Claim, like its Third, is premised on a supposed "right" under § 304(c)(6)(D). Opp. 21. If the Ninth Circuit reverses, holding that no such "right" exists, the Sixth Claim would also fail.

DC argues that a "near miss" of the statute can support "unlawful" conduct under the UCL. Opp. 19, 21-22. But the case it cites, *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tele. Co.*, 20 Cal. 4th 163, 187 (1999), holds only that "unlawful" conduct under the UCL must harm "competition" and cause "antitrust" injury. DC did not allege this in its Sixth Claim. *See PNY Technologies, Inc. v. SanDisk Corp.*, 2012 WL 1380271, at *4 (N.D. Cal. Apr. 20, 2012) ("Supreme Court's caution to proceed in these cases only upon a complaint with specific [antitrust] allegations is particularly apt.") (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).

### B. <u>The Sixth Claim Is Preempted</u>

DC cannot dispute that its Sixth Claim is based on its supposed rights under the Copyright Act, 17 U.S.C. § 304(c)(6)(D) (FAC, ¶¶ 171-72, 188-89) or that the Copyright Act preempts state claims. DC argues that the Copyright Act only preempts "infringement" style claims. Opp. 21. Not true. "Copyright preemption is both explicit and broad." *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Service, Inc.*, 958 F.2d 896, 904 (9th Cir. 1992). "[I]f a state-created right is 'within the general scope of copyright,' it is subject to pre-emption, even if the precise contours

of the right differ from [those in] Section 106 [the Copyright Act's preemption provision]." 1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 1.01[B][1] (citations omitted). DC's UCL claim indisputably falls within the "general scope" of copyright, because it *expressly* seeks to "establish the parties' respective rights and obligations with respect to the copyright interest in [Superman]," which includes § 106's "exclusive rights." FAC ¶189. DC's Sixth Claim is preempted.

## III. DC'S CROSS-MOTION INVITES THIS COURT TO COMMIT ERROR

DC argues that its motion for an evidentiary hearing re: discovery sanctions "moots" this summary judgment motion. Opp. 2. It is the other way around. DC cannot complain about discovery on claims filed two years after the statute of limitations had run. DC's filing of clearly time-barred claims is itself sanctionable.[6]

Furthermore, DC's motion is aimed at discovery regarding only its Fifth Claim (Dkt. 500 at 4-21) and seeks ***an evidentiary hearing*** on sanctions as to its Fifth Claim only. Dkt. 500-1 (Proposed Order). Faced here with the real prospect of judgment against it, DC now pretends that its evidentiary hearing motion seeks sanctions on ***all*** claims. Opp. 4. As set forth in Defendants' opposition (Dkt. 517 at 19-22), the drastic remedy of terminating sanctions is wholly unjustified as to DC's Fifth Claim, let alone its Fourth and Sixth Claims. "The sanction of dismissal is not favored." *Brookhaven Typesetting Servs. v. Adobe Sys.*, 332 Fed. Appx. 387, 389 (9th Cir. 2009). "[P]ublic policy favor[s] disposition of cases on their merits," "a terminating sanction… is very severe," *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills* ("*Connecticut*"), 482 F.3d 1091, 1096 (9th Cir. 2007), and is "authorized only in 'extreme circumstances.'" *United States use of Wiltec Guam, Inc. v. Kahaluu Constr. Co.* ("*Guam*"), 857 F.2d 600, 603 (9th Cir. 1988). Striking defenses is the equivalent of terminating sanctions, and is subject to the same standards. *Id.* at 605.

---

[6] *See U.S. v. Gavilan Joint Cmty. Coll. Dist.*, 849 F.2d 1246, 1251 (9th Cir. 1988) (Rule 11 sanctions proper where plaintiff brings clearly time-barred claims, notwithstanding meritless assertions of delayed discovery); *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 653 (9th Cir. 1988) (affirming Rule 11 sanctions as filing clearly time-barred claim is objectively unreasonable).

DC points to none of the requirements for severe sanctions: no finding that Defendants violated any Court orders, no prior imposition of sanctions in eight years of litigating these cases, and no warning by any Court. "[F]ailure to warn [prior to terminating sanctions] may place the district court's order in serious jeopardy." *Guam*, 857 F.2d at 605. DC resorts to slandering Mr. Toberoff, claiming "willfully false factual arguments," but can only cite to the entirety of *its own briefs*. Opp. 3.

"What is most critical for case-dispositive sanctions is whether the discovery violations threaten to interfere with the rightful decision of the case." *Connecticut*, 482 F.3d at 1097 (quot'n omitted). DC's trumped-up accusations boil down to: (a) the alleged mis-logging of four documents (out of thousands), where DC was aware of them and their logging since 2007 (Dkt. 517 at 4-14); and (b) DC's fabrication that Michael Siegel's lawyers sent all his files to Mr. Toberoff in 2006, when they were not sent until 2011, and then promptly produced or logged. *Id.* at 14-17. None of this threatened the "rightful disposition" of this case, and it was resolved long before a disposition of DC's Fifth Claim, the sole claim to which it is remotely relevant.

DC ignores clear Ninth Circuit precedent, *supra*, and instead relies on an unpublished out-of-circuit case, *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 1998 U.S. Dist. LEXIS 8019 (E.D. Pa. May 5, 1998), which did not strike defenses in their entirety as DC argues (Opp. 3), but merely tolled the statute for the period that documents, required for inquiry notice, were not produced. *Id.* at *28-29. Here the documents and information placing DC on notice were in DC's possession by 2006.

DC's "cross-motion" is a sham; it asks this Court to go beyond what even DC moved for, ignore Ninth Circuit authority, and commit clear error.

## CONCLUSION

Defendants' motion should be granted and this case brought to a close.

Dated: February 25, 2013 RESPECTFULLY SUBMITTED,

/s/ Keith G. Adams

Attorneys for Defendants Mark Warren Peary *et al.*