1  Marc Toberoff (State Bar No. 188547)
    mtoberoff@toberoffandassociates.com
2  Keith G. Adams (State Bar No. 240497)
    kadams@toberoffandassociates.com
3  Pablo D. Arredondo (State Bar No. 241142)
    parredondo@toberoffandassociates.com
4  David Harris (State Bar No. 255557)
    dharris@toberoffandassociates.com
5  TOBEROFF & ASSOCIATES, P.C.
   22337 Pacific Coast Highway #348
6  Malibu, California 90265
   Telephone:  (310) 246-3333
7  Fax:          (310) 246-3101

8  Attorneys for Defendants Mark Warren
   Peary, as personal representative of the
9  Estate of Joseph Shuster, Jean Adele Peavy,
   and Laura Siegel Larson, individually and
10 as personal representative of the Estate of
   Joanne Siegel

11

12                    **UNITED STATES DISTRICT COURT**

13        **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

14
   DC COMICS,                           | Case No: CV 10-03633 ODW (RZx)

15
                  Plaintiff,            | Hon. Otis D. Wright II, U.S.D.J.
16         vs.                          | Hon. Ralph Zarefsky, U.S.M.J.

17 PACIFIC PICTURES CORPORATION;        | **DEFENDANTS' RESPONSE TO
   IP WORLDWIDE, LLC; IPW, LLC;         | DECLARATION OF DANIEL
18 MARC TOBEROFF, an individual;        | PETROCELLI RE: DC'S REQUEST
   MARK WARREN PEARY, as personal       | FOR CONTINUANCE OF
19 representative of the ESTATE OF       | SUMMARY JUDGMENT UNDER
   JOSEPH SHUSTER; JEAN ADELE           | FED. R. CIV. P. 56(d)**
20 PEAVY, an individual; LAURA
   SIEGEL LARSON, individually and as   | *Reply Brief, Reply Statement of
21                                       | Undisputed Facts, Statement of Genuine
   personal representative of the ESTATE | Issues in Response to Cross-Motion and
22 OF JOANNE SIEGEL,                     | Declarations of Ari Emanuel and Pablo
   and DOES 1-10, inclusive,            | Arredondo filed concurrently*
23
                                        | Complaint filed:    May 14, 2010
24                Defendants.
                                        | Date:    March 11, 2013*
25                                       | Time:    1:30 p.m.*
                                        | Place:   Courtroom 11*
26
                                        | *:  The Court has indicated that it will
27                                       | take the motion under submission and
                                        | hold a hearing if necessary.  Dkt. 581.
28

RESPONSE TO RULE 56(d) DECLARATION RE: DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

# I.    Introduction

1.    The **_11-page_** Rule 56(d) Declaration of Daniel M. Petrocelli (Docket No. 588-1; "Declaration" or "PD"), lead counsel for plaintiff DC Comics ("DC"), in no way justifies a continuance so that DC can conduct further discovery, as it is irrelevant to the issue of whether DC had actual or inquiry notice of its Fourth and Fifth Claims by 2006, time-barring the filing of its claims in 2010.

2.    To obtain a continuance, a party must show that it has "diligently pursued its previous discovery opportunities."  Fed. R. Civ. P. 56(d) (formerly 56(f)). A party must also "'show how allowing additional discovery would have precluded summary judgment.'"  *Natural Res. Def. Council v. Houston*, 146 F.3d 1118, 1133 (9th Cir. 1998) (citation omitted).  And a Rule 56(d) affidavit must contain more than mere "conclusory statements" that "discovery is incomplete" or that further discovery is supposedly of "'critical importance.'"  *International Surplus Lines Ins. Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 905 (10th Cir. 1995).  "[It] must state with specificity why extra time is needed and how the additional time and material will rebut" the relevant motion for summary judgment.  *Id.*

3.    DC concedes that adjudication of Defendants' motion for summary judgment (Dkt. 577; "Mot.") depends "almost entirely" on whether DC's claims are barred by the applicable statutes of limitation.  PD ¶2.  As set forth in Defendants' moving and reply papers, DC was on actual or inquiry notice as to its state-law claims by no later than 2006, based on the undisputed record as to the documents and information in DC's possession by 2006.  Because the discovery DC now seeks is irrelevant to this operative issue, DC's 56(d) continuance request must be denied.

4.    The central argument of Mr. Petrocelli's 56(d) declaration is based on the false premise that, despite the overwhelming evidence that DC was on actual or inquiry notice of its state-law claims by 2006, summary judgment should be delayed so that DC can take further discovery on Defendants' alleged "discovery misconduct," nearly three years after DC belatedly filed its long time-barred claims.

RESPONSE TO RULE 56(d) DECLARATION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

5.      Petrocelli argues that further depositions might find evidence of discovery misconduct in support of DC's "fraudulent concealment" theory.  PD ¶9. This fails as a matter of law.  Fatally to DC's position, its allegations of discovery misconduct do not impact the analysis of whether DC was on inquiry notice of its claims based on the documents and information *already in DC's possession* by 2006. *See Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110-11 (1988) (notice requires only that "the plaintiff has notice or information of circumstances to put a reasonable person on inquiry"); *Fox v.Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807-08 (2005) (statute accrues when plaintiff has "reason to at least suspect" its claim); *Barber v. Superior Court*, 234 Cal. App. 3d 1076, 1083 (1991) ("[T]he fraudulent concealment tolling provision does not come into play, whatever the lengths to which a defendant has gone to conceal his wrongs, if a plaintiff is on notice of a potential claim.").  Consequently, DC's allegations as to discovery conduct are irrelevant to the statute-of-limitations issue, and further discovery could not preclude summary judgment.

6.      DC has been aware of all of Defendants' arguments since August 2010. Dkt. 31 at 18-20, 23-25 (statute of limitations re: Fourth and Fifth Claims), 34 at 8-12 (mootness and preemption re: Sixth Claim).  And for two-and-a-half years, DC taken extensive discovery in this case, in addition to the extensive discovery taken on the same topics in the closely-related *Siegel* case.  DC has deposed Laura Siegel Larson, Mark Warren Peary, and Marc Toberoff in this case.  Dkt. 585 at 3-5.  DC also deposed ***all*** of these witnesses, as well as Kevin Marks, Ari Emanuel, Joanne Siegel and Jean Peavy, in *Siegel*.  DC also has had the documents on which it seeks additional discovery for nearly a year.  Despite every opportunity to do so, DC has ***still*** not deposed Mr. Marks, Mr. Emanuel, or David Michaels (the suspected Timeline author) in this case.  DC's delay over the past two-and-a-half years is alone sufficient to deny DC's request.  *See Peltier v. Macomb County, Mich.*, 2011 WL 3320743, at *2 (E.D. Mich. Aug. 2, 2011) (denying 56(d) motion as "[p]laintiff had

2

1  more than ample opportunity to conduct discovery during the extended five-and-a-

2  half-month long discovery period").

3      7.    DC's request for more time for discovery after two-and-a-half years of

4  discovery in this case and years of discovery in *Siegel* is a transparent ploy to prolong

5  this litigation and delay a ruling on Defendants' summary judgment motion, which

6  disposes of DC's untimely state-law claims. *See Alli v. United States*, 105 Fed. Cl.

7  440, 446 (Fed. Cl. 2012) (finding "no valid excuse" for additional discovery where

8  plaintiff "had more than ample time to develop evidence in support of their case").

9      8.    All of the above, standing alone, is more than sufficient grounds to deny

10  DC's 54(d) request for a continuance.

11          **II.    The Specific Discovery DC Seeks Is Unnecessary And Irrelevant**

12      9.    DC requests that this Court delay adjudication of Defendants' summary

13  judgment motion until after it has re-deposed or deposed six witnesses: (1) Marc

14  Toberoff (already deposed twice, once in this case and once in Siegel; see Dkt. 305-

15  18; Dkt. 587, Ex. A);  (2) Laura Siegel Larson (already deposed thrice, once in this

16  case and twice in *Siegel*; see Dkt. 61-2, Ex. B at 88, Ex. C at 251; Dkt. 305-25); (3)

17  Mark Warren Peary (already deposed twice, once in this case and once in Siegel; see

18  Dkt. 305-38; 305-52);  (4) J. Todd Harris (third-party); (5) Ari Emanuel (third-party)

19  (deposed in Siegel; see Dkt. 578-2, Ex. T at 154) and (6) Don Bulson (third-party)

20  (already deposed twice, once in this case and once in *Siegel*; see Dkt 427-1 ¶6; 305-

21  53, Ex. 52).

22      10.    As to Ms. Larson, Mr. Peary and Mr. Toberoff, DC has shown complete

23  lack of diligence.  As set forth in Defendants' opposition to DC's motion to take

24  second depositions of these parties:

25
26      DC met and conferred on re-deposing Mr. Peary and Ms. Larson in **2011**,
        shortly after their depositions. DC did not move at that time. DC received the
27      "Timeline" documents in **May 2012**.  DC did not move at that time either. DC
        filed its original sanctions motion in October 2012, and re-filed it in January
28      2013. DC did not move to re-depose prior to either.  Dkt. 585 at 4-5.  In fact,
        the last time the parties' exchanged correspondence regarding re-deposing Ms.

RESPONSE TO RULE 56(d) DECLARATION RE: DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

Larson and Mr. Peary was on August 1, 2012, and as to Mr. Toberoff on October 25, 2012.

Dkt. 585 at 41.  Instead, DC sat on its hands and waited until *after* Defendants filed for summary judgment to move, for tactical reasons, to take repeat depositions, in an effort to delay Defendants' motion for summary judgment.  Notwithstanding that such repeat depositions violate Fed. Rule Civ. Proc. 30(d)(2), they are irrelevant to Defendants' summary judgment motion, which is based on the documents and information in DC's possession by 2006, which placed it on actual or inquiry notice of its claims.  The information DC receives after it filed its time-barred claims in 2010 is irrelevant to Defendants' motion.

## A.    Marc Toberoff

11.    DC asserts that it needs to "finish" deposing Mr. Toberoff on "key documents, including many of the Timeline documents, Toberoff's recent declaration concerning his discovery conduct", the non-existent "2011 Pacific Pictures agreement," and legal advice memos from the Armstrong Hirsch firm to Mr. Toberoff (PD ¶13) – none of which are relevant to the statute of limitations issues in Defendants' motion.

12.    DC "finished" the seven-hour deposition of Mr. Toberoff allowed under Fed. R. Civ. P. 30(d)(2).  DC also "finished" another seven-hour deposition of Mr. Toberoff in *Siegel* in 2006.  DC seeks a *third* deposition of Mr. Toberoff, not to "finish" deposing him, but to harass and assert improper leverage over its opposing counsel and his clients.  None of DC's rationales for re-deposing Mr. Toberoff hold up.  *See* Dkt. 585 at 24-30.

13.    *First*, DC fails to inform the Court that it waited to depose Mr. Toberoff until September 2012, months *after* it received the Timeline documents.  And DC points to virtually no new documents or information since it last deposed Mr. Toberoff to support reopening his deposition.

14.    *Second,* DC has no need to re-depose Mr. Toberoff regarding what DC falsely calls the "2011 PPC Agreement," which it had during his 2012 deposition and

4

RESPONSE TO RULE 56(d) DECLARATION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

has had since August 2011. Dkt. 314-2. This supposed "PPC agreement" is nothing more than a letter signed by Mr. Toberoff, Mr. Peary and Ms. Peavy confirming the 2004 cancellation of the 2001 and 2003 PPC Agreements. Dkt. 314-2, Ex. D at 118-119. The 2011 letter nips in the bud DC's attempts to sow confusion as to the PPC Agreement's supposed continuing effect. FAC ¶¶62, 99-100. DC now tries to sow further confusion about the 2011 letter itself by misleadingly recasting it as some sort of new agreement, but the record is plain that this is untrue.

15.    *Third*, DC asserts that it was "unable to cover" the topic of the Armstrong Hirsch memorandums in Mr. Toberoff's 2012 deposition "given the complexity of the many issues presented in this case." PD ¶13. This is also false. DC questioned Mr. Toberoff at length about the Armstrong Hirsch memorandums. Dkt. 587, Ex. A at 231:17-232:13. DC also mischaracterizes these documents as discussing "ethical failings" (PD ¶13) but in reality, as Mr. Toberoff testified, he voluntarily sought Armstrong Hirsch's legal opinion about the 2001 PPC Agreement because he was uncertain and uncomfortable with the form of agreement used. Dkt. 587, Ex. A at 231:17-232:13. The Armstrong Hirsch memorandums also have no bearing on DC's claims or the issue of whether these claims are long time-barred.

16.    *Fourth*, DC contends that it is entitled to depose Mr. Toberoff in his role as litigation attorney in this case and *Siegel*. The Ninth Circuit, however, has set a high bar to deposing opposing counsel with regard to his/her role as an attorney. *See Willer v. Las Vegas Valley Water Dist.*, 1999 U.S. App. LEXIS 7831, at *8-9 (9th Cir. Apr. 19, 1999). DC does not cite these standards, because it cannot meet them. Nor is any of this relevant to Defendants' statute of limitations defenses, which turn on the information in DC's possession by 2006.

## B.    Laura Siegel Larson

17.    DC contends that this Court should delay ruling on Defendants' summary judgment motion so that DC can re-depose Ms. Larson for a *fourth* time on "newly produced documents, including letters between Larson and her late half-

5

brother Michael Siegel, the Timeline documents, two recent declarations she submitted, and a letter she published … on October 11, 2012 that addresses allegations in DC's Fifth Claims."  Reply Declaration of Pablo D. Arredondo ("RAD"), Ex. E (October 11, 2012 letter); PD ¶20.  DC's proposed discovery fails both the relevance and diligence prongs of Rule 56(d).

18.    *First*, a fourth deposition of Ms. Larson is irrelevant to Defendants' summary judgment motion, which is based on documents and information in DC's possession placing it on inquiry notice by 2006, not information it received after *filing* its time-barred claims in 2010.

19.     *Second*, DC opted to devote a considerable portion of Ms. Larson's 2011 deposition to topics that had already been covered during her 2006 deposition in *Siegel*.  *See* Dkt. 585 at 30-31 (charting overlap between depositions).

20.    *Third*, DC knowingly made the tactical decision to depose Ms. Larson (and Mr. Peary) in 2011, at a time when production of the Timeline documents had been expressly stayed pending writ review by the Ninth Circuit.  Dkt. 262 at 4.  Indeed, Defendants moved for a protective order to stay the depositions until review was complete.  Dkt. 278.  Magistrate Zarefsky allowed DC to proceed with the depositions but "forewarned" DC that it did so at its own peril because "courts, and this court is one of them, disfavor repeat depositions."  Dkt. 288 at 31.  DC nonetheless chose to proceed with all-day depositions of Mr. Peary and Ms. Larson without waiting for the Timeline documents.  DC also has had the Timeline documents since May 2012, and waited over eight months, until February 2013, to move to re-depose Ms. Larson and Mr. Peary, to try to delay Defendants' summary judgment motion.

21.    *Fourth*, the documents DC seeks to depose Ms. Larson on are particularly irrelevant to Defendants' motion for summary judgment.

22.    DC's sole basis for seeking to depose Ms. Larson regarding her November 2002 letter to her half-brother is that the letter supposedly supports the

6

"billionaire investor" allegations in DC's Fifth Claim.  PD ¶20(a).  Ms. Larson's declarations of August 2 and November 19, 2012 simply and clearly explain her letter and why she used the term "billionaire" therein.  Dkt. 466-2 ¶5; 526 ¶¶13-14.  Moreover, correspondence between Ms. Larson and her half-brother is irrelevant to Defendants' summary judgment motion, which turns on *DC's* inquiry notice as to its claims based on information in DC's possession by 2006, not on alleged "evidence" DC obtained *after filing suit*.

23.    DC now contends that summary judgment should be delayed while it deposes Ms. Larson regarding an open letter she published on October 11, 2012.  RAD, Ex. E.  DC states vaguely that the letter "addresses allegations in DC's Fifth Claim" (*id.*) but does not and cannot specify how any discovery relating to this letter impacts the statute-of-limitations issues in Defendants' motion for summary judgment.  Once again, if DC really believed that this letter warranted further discovery, it would have moved to re-depose Ms. Larson on it months ago, and not waited until after Defendants moved for summary judgment.

## C.    Mark Warren Peary

24.    DC asserts that it needs to "examine Peary about several new documents."  PD ¶16.  Specifically, DC claims it needs to depose Mr. Peary on: (1) the non-existent "2011 Pacific Pictures agreement"; (2) the "recently surfaced" will of Jean Peavy; and (3) the Armstrong Hirsch memorandums.  PD ¶16-18.  Again, none of this is relevant to Defendants' motion for summary judgment based on the information already in DC's possession by 2006, which placed it on inquiry or actual notice, triggering the statute of limitations.  Even notwithstanding this, none of the "needs" asserted by DC hold water.

25.    *First*, as described above (*supra* ¶14), the simple letter DC misleadingly calls the "2011 Pacific Pictures agreement" is irrelevant and, if it was of actual import, DC would have moved for a second deposition of Mr. Peary long ago.

26.    *Second*, Jean Peavy's will is hardly "recently surfaced."  DC has been in

7

possession of the will since **September 2011.** Dkt. 360-1 ¶18. DC deposed Dawn Peavy about the will in **April 2012** (Dkt. 585 at 15); at no time prior to Defendants' summary judgment motion did DC move to re-depose Mr. Peary on the will.

27.    Moreover, Ms. Peavy's will was executed on November 14, 2000, *before* the PPC Agreements and *before* any contact between Mr. Toberoff and Mr. Peary or Ms. Peavy. Dkt. 371-4, Ex. C at 6-20. The will does not in any way relate to Defendants' statute of limitation defenses. The will, which is nowhere mentioned in DC's complaint, and does not mention termination rights or Superman, is of extremely dubious relevance to DC's claims.

28.    *Third*, as DC is well aware, Mr. Peary has no firsthand knowledge of the Armstrong Hirsch memorandums, which were written at Mr. Toberoff's request and sent directly to him. Dkt. 205-28 at 271:19-22 ("**DC Counsel**: Have you seen a – any opinion or memoranda from the Armstrong Hirsch Firm on the subject of your agreement? **Mr. Peary**: No."). DC's assertion that "these memos help refute Defendants' limitation defenses" (PD ¶18) is not only inaccurate, but doubly irrelevant since DC has already deposed Mr. Toberoff on the memorandums and Mr. Peary has not seen them.

### D.    Ari Emanuel

29.    Similarly, DC's sudden need to seek further testimony from third-party Ari Emanuel (PD ¶21) is belied by the fact that, in two-and-a-half years of discovery in this case, Mr. Emanuel's deposition has been repeatedly postponed by DC. RAD, ¶4; Ex. C. Moreover, Mr. Emanuel's testimony is irrelevant to DC's inquiry notice based on documents and information DC had in 2006, independently of Mr. Emanuel. Once again, DC does not even attempt to show how Mr. Emanuel's testimony could impact the Court's statute of limitations analysis or preclude summary judgment in Defendants' favor.

30.    DC knew, through discovery in *Siegel*, that Mr. Emanuel made the August 2002 offer that was at the heart of its Fifth Claim. Yet DC tellingly did not

8

1  sue Mr. Emanuel, in its Fifth Claim or otherwise, and in two-and-a-half years has not

2  even deposed him.  DC's inaction with respect to Mr. Emanuel speaks volumes as to

3  the sham nature of its Fifth Claim, which was obviously intended to leverage DC's

4  position against the Siegel and Shuster heirs by suing their counsel, Mr. Toberoff.

5      31.    Although not required to demonstrate that DC's claims are time-barred,

6  Mr. Emanuel has submitted a declaration further proving that DC's Fifth Claim

7  against Mr. Toberoff is utterly devoid of merit.  Specifically, Mr. Emanuel states

8  plainly that during the August 2002 discussions with Kevin Marks "neither Mr.

9  Toberoff nor I mentioned a 'billionaire investor', because I was the investor …

10  [t]here was also no mention by anyone of producing a Superman movie with the

11  Siegels."  Declaration of Ariel Z. Emanuel, ¶4 (emphasis added).

12                          **E.    J. Todd Harris**

13      32.    DC contends that it needs time to depose third-party J. Todd Harris (PD

14  ¶21), but omits that Mr. Harris has waited to be deposed since September 2012, and

15  that DC noticed and then canceled his deposition on *three separate occasions.* RAD,

16  Ex. A (e-mail from DC cancelling September 19, 2012 deposition), B (e-mail from

17  DC cancelling October 19, 2012 deposition), D (e-mail from DC cancelling

18  December 5, 2012 deposition).  Aside from this improper harassment of Mr. Harris

19  and complete disregard for his schedule, these tactics preclude DC from now

20  claiming it was diligent in pursuing Mr. Harris's testimony.  On November 30, 2012,

21  when DC last cancelled Mr. Harris's deposition, it said that it would "be in touch

22  regarding rescheduling the deposition."  RAD, Ex. D.  To date, DC has not done so.

23      33.    Nor would Mr. Harris's testimony impact the statute-of-limitations issue

24  for the reasons set forth above.  Tellingly, DC does not even attempt to establish how

25  Mr. Harris's testimony would impact Defendants' statute-of-limitations defenses.  As

26  such, DC has not established grounds for a 56(d) continuance to depose him.

27                          **F.    Don Bulson**

28      34.    DC conducted a deposition of Don Bulson in *Siegel* in 2008 and in this

9

case in 2011.  Dkt 427-1 ¶6; 305-53, Ex. 52.  DC now asserts, without any support or explanation (PD ¶21), that the Court should delay its summary judgment ruling while DC deposes Mr. Bulson on unspecified topics for a third time.  This falls well short of the standard required for a Rule 56(d) continuance.

### III.    Conclusion

35.    The timing of key events makes plain that DC's attempt to forestall summary judgment on its time-barred claims is pure gamesmanship.  DC cites its pending motion to take second depositions, but it improperly waited months to file that motion.  DC also made the strategic decision to improperly cross-move for summary judgment (Dkt. 581), rather than take additional discovery, which is difficult to reconcile with DC's sudden claims that discovery is still incomplete after all this time.

36.    DC makes only conclusory assertions that the discovery it seeks bears on Defendants' statute-of-limitation defenses.  For several of the witnesses DC seeks to depose, DC doesn't even provide *any* rationale.  These vague and ambiguous assertions fall well short of the showing required under Rule 56(d).  *See Krav Maga Ass'n of Am., Inc. v. Yanilov*, 464 F. Supp. 2d 981, 991 (C.D. Cal. 2006) (denying Rule 56(f) motion where "plaintiffs failed to make clear what facts they intend to elicit from the seven … declarants or how such facts would help the plaintiffs survive summary judgment").  With years of prior discovery at its disposal, DC should not be afforded more time for this sort of "fishing expedition."  *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968) (denial of 56(f) motion where "additional discovery would be merely a fishing expedition").

37.    The Declaration effectively admits that additional discovery is not necessary in arguing that "the Court could grant summary judgment in *DC's favor* … for all the reasons discussed in DC's concurrently filed cross-motion for summary judgment."  PD ¶23.  Accordingly, DC's application should be denied because "to justify a continuance under Rule 56(f), the discovery sought must be 'essential' to

[DC's] opposition [and DC] concedes that the additional discovery [sought] is not necessary to their opposition on summary judgment." *Asia Econ. Inst. v. Xcentric Ventures, LLC*, 2010 WL 4977054, at *21 (C.D. Cal. July 19, 2010).

38.    The Declaration relies on inapposite cases where a party who did not have a chance to obtain discovery made a targeted request for pivotal, non-privileged information – the ***opposite*** of the situation here.  PD ¶¶3; *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003) (continuance where summary judgment motion brought less than a month after filing suit and targeted evidence was "dispositive of [the] pivotal question"); *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 847 (9th Cir. 2001) (ordering limited discovery as to specific scientific issue that expert characterized as "highly probative"); *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986) (allowing specific discovery of specific documents that were the "most probative evidence" of central issue); *Garret v. City & Cnty. of San Francisco*, 818 F.2d 1515, 1519 (9th Cir. 1987) (reversing denial of 56(d) motion as "moot"; movant "did not seek broad additional discovery, but rather sought only the personnel records of 16 named firefighters").  DC also cites to case law that actually support the denial of its motions.  *See Bryd v. Guess,* 137 F.3d 1126, 1135 (9th Cir. 1998) (affirming denial of 56(d) motion where movant had "many months" to take discovery and did not diligently pursue prior discovery opportunities).

39.    DC has utterly failed to meet its burden under Rule 56(d).  As a matter of law, the Court should not grant DC's eleventh-hour application for a continuance on Defendants' Motion for Partial Summary Judgment.

///

///

///

///

RESPONSE TO RULE 56(d) DECLARATION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Dated: February 25, 2013          RESPECTFULLY SUBMITTED,

                                  /s/ Keith G. Adams

                                  TOBEROFF & ASSOCIATES, P.C.
                                  Attorneys for Defendants Mark Warren Peary, *et al.*

RESPONSE TO RULE 56(d) DECLARATION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT