Marc Toberoff (State Bar No. 188547)
 *mtoberoff@toberoffandassociates.com*
Keith G. Adams (State Bar No. 240497)
 *kadams@toberoffandassociates.com*
Pablo D. Arredondo (State Bar No. 241142)
 *parredondo@toberoffandassociates.com*
David Harris (State Bar No. 255557)
 *dharris@toberoffandassociates.com*
TOBEROFF & ASSOCIATES, P.C.
22337 Pacific Coast Highway #348
Malibu, California
Telephone:  (310) 246-3333
Fax:         (310) 246-3101

Attorneys for Defendants Mark Warren Peary, as personal representative of the Estate of Joseph Shuster, Jean Adele Peavy, Laura Siegel Larson, individually and as personal representative of the Estate of Joanne Siegel

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| DC COMICS,<br><br>           Plaintiff,<br><br>   vs.<br><br>PACIFIC PICTURES CORPORATION; IP WORLDWIDE, LLC; IPW, LLC; MARC TOBEROFF, an individual; MARK WARREN PEARY, as personal representative of the ESTATE OF JOSEPH SHUSTER; JEAN ADELE PEAVY, an individual; LAURA SIEGEL LARSON, individually and as personal representative of the ESTATE OF JOANNE SIEGEL, and DOES 1-10, inclusive,<br><br>           Defendants. | Case No: CV 10-03633 ODW (RZx)<br><br>Hon. Otis D. Wright II, U.S.D.J.<br>Hon. Ralph Zarefsky, U.S.M.J.<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR REVIEW OF JANUARY 16, 2013 ORDER PRECLUDING DISCOVERY RE: TIMELINE-RELATED DOCUMENTS**<br><br>Complaint filed: May 14, 2010<br>Trial Date: None Set<br><br>Date:  March 11, 2013*<br>Time:  1:30 p.m.*<br>Place: Courtroom 11*<br><br>*: The Court vacated this hearing date and stated that it would take the motion under submission. Dkt. 580. |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

ARGUMENT ............................................................................................................ 2

I.    DEFENDANTS' RIGHT TO DISCOVERY ON THE TIMELINE ................ 2

    A.    The Identity And Motivations Of The Timeline Author ........................ 2

    B.    Sixth Claim ................................................................................. 2

    C.    DC's Own Discovery Demonstrates Relevance ...................................... 3

II.    THE ISSUE HAS NOT BEEN PREVIOUSLY LITIGATED ........................ 4

III.    DC'S CONTRADICTORY ACCOUNTS DO NOT MOOT DEFENDANTS' DISCOVERY ........................................................................... 5

IV.    DEFENDANTS' REQUESTS ARE NOT OVERBROAD .............................. 7

V.    DC MUST BE ORDERED TO IMMEDIATELY PRODUCE ITS NON-PRIVILEGED COMMUNICATIONS WITH DAVID MICHAELS ................................................................................................... 8

VI.    DEFENDANTS' MOTION FOR REVIEW COMPLIES WITH C.D. CAL. R. 72(a)'S SPECIFICITY REQUIREMENTS ................................ 9

CONCLUSION ......................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*A Farber & Partners, Inc. v. Garber*,
  234 F.R.D. 186 (C.D. Cal. 2006) ........................................................................ 8

*Aryeh v. Canon Bus. Solutions, Inc.*,
  55 Cal. 4th 1185 (2013) ................................................................................. 2-3

*Bhandari v. VHA Sw. Cmty. Health Corp.*,
  2010 WL 4928874 (D.N.M. Oct. 18, 2010) ....................................................... 8

*Curcio v. Roosevelt Union Free Sch. Dist.*,
  283 F.R.D. 102 (E.D.N.Y. 2012) ....................................................................... 7

*Gander Mountain Co. v. Cabela's, Inc.*,
  540 F.3d 827 (8th Cir.2008) .............................................................................. 4

*In re Grand Jury Subpoena*,
  357 F.3d 900 (9th Cir. 2004) ............................................................................. 9

*In re Pac. Pictures Corp.*,
  679 F.3d 1121 (9th Cir. 2012) ........................................................................... 5

*Leon v. IDX Systems, Corp.*,
  464 F.3d 951 (9th Cir. 2006) ............................................................................. 7

Paulsen v. Case Corp.,
  168 F.R.D. 285 (C.D. Cal. 1996) ....................................................................... 2

*Quiroz v. Cate*,
  2012 U.S. Dist. LEXIS 109949 (N.D. Cal. Aug 2, 2012) .................................. 8

*Ragge v. MCA/Universal* Studios,
  165 F.R.D. 601, 603 (C.D. Cal. 1995) ............................................................... 2

*U.S. v. Kitsap Physicians Serv.*,
  314 F.3d 995 (9th Cir. 2002) ............................................................................. 7

*United States ex rel. El-Amin v. George Washington Univ.*,
   2001 U.S. Dist. LEXIS 23438 (D.D.C. July 13, 2001) .............................................. 8

*United States v. Cote*,
   51 F.3d 178 (9th Cir. 1995) ....................................................................................... 4

*X-IT Products, L.L.C. v. Walter Kidde Portable Equip., Inc.*,
   155 F. Supp. 2d 577, 632 (E.D. Va. 2001) ................................................................ 4

*Young v. Facebook, Inc.*,
   2010 WL 3564847 (N.D. Cal. Sept. 13, 2010) .......................................................... 7

**Rules**

C.D. Cal. R. 72(a) ............................................................................................................. 2

Fed. R. Civ. P. 30(d)(2) .................................................................................................... 9

# INTRODUCTION

Plaintiff DC Comics' (together with its parent, Warner Bros., "DC") Opposition (Dkt. 579; "Opp.") to Defendants' motion for review of Magistrate Zarefsky's January 16, 2013 Order (Dkt. 558; "Order") dodges the real and only issue: Defendants' due process right to defend themselves and take discovery on DC's receipt and handling of the Timeline and Stolen Documents.[1] Such discovery is relevant for at least two reasons: (1) discovery into DC's receipt and handling of the Timeline is reasonably calculated to lead to evidence as to the credibility and reliability of the Timeline; and (2) as Magistrate Zarefsky held, the date of DC's receipt of the Timeline is potentially dispositive of DC's Sixth Claim.

DC pretends that this issue has already been litigated, but ***none*** of the prior decisions DC cites have concerned Defendants' right to Timeline-related discovery.

DC also asserts that Defendants' discovery is moot, claiming it has already conducted all the needed searches. This is demonstrably false. DC's own account makes plain that its searches were incomplete. For instance, DC admits that it did not search the files of two of the three executives that it says received the Timeline packages of stolen privileged documents. And the limited information DC has provided contains glaring contradictions, including about basic issues such as who received the multiple Timeline packages and whether and why at least three sets of packaging, revealing the date and location of mailing and potential information regarding the sender/Timeline author, was destroyed. Given DC's history of discovery abuse, and the gaps in DC's story, more than vague unsworn assurances are necessary, and it was error for the Order to simply rely on DC's blanket statements. Most importantly, Defendants are entitled to test DC's story via normal discovery.

---

[1] Defendants have a pending motion for summary judgment on all of the remaining claims in this case. Dkt. 577. If that motion is granted, this motion would be moot. Nothing in this motion should be read to suggest that discovery into DC's receipt and handling of the "Timeline" is required with respect to that summary judgment motion.

1
DEFENDANTS' REPLY RE: MOTION FOR REVIEW OF JANUARY 16, 2013 ORDER

# ARGUMENT

## I. DEFENDANTS' RIGHT TO DISCOVERY ON THE TIMELINE

DC does not dispute that it attached the Timeline to its complaint. Mot. 7. As a simple matter of equity, Defendants have a right to take discovery on it.

### A. The Identity And Motivations Of The Timeline Author

Defendants' discovery requests were properly targeted at information that could help them determine the identity and motivations of the Timeline author/thief. This information is discoverable because it could impeach the allegations in the Timeline and potential witnesses, including David Michaels, the suspected author of the Timeline. *See Paulsen v. Case Corp.*, 168 F.R.D. 285, 289 (C.D. Cal. 1996); *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 603 (C.D. Cal. 1995).

DC argues the straw man that Defendants seek this information to prove a "conspiracy theory" that Warner planted Mr. Michaels at Mr. Toberoff's offices. Opp. 6-9. The briefing DC cites (Mot. 3-4) makes no such argument, but simply lays out the exceedingly scarce and contradictory information DC provided as to how Defendants' privileged documents ended up on the desks of Warner executives, including its General Counsel, in the midst of the high-stakes Superman litigations.

DC then advances the specious argument that Defendants are not "truly interested" in this information because they have not yet deposed David Michaels. Pursuant to Fed. R. Civ. P. 30(d)(2), a party is only entitled to depose a witness once; Defendants naturally seek discovery from DC as to its receipt and handling of the Timeline/stolen documents, DC's investigation of the Timeline author, and DC's admitted communications with David Michaels *before* Defendants depose Michaels.

### B. Sixth Claim

As Magistrate Zarefsky noted, the date on which DC received the Timeline is potentially dispositive as to DC's Sixth Claim under California's unfair competition law if the "discovery rule" applied to such claims. Order at 4. *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185 (January 24, 2013), issued after the Magistrate's

decision, confirmed that the "discovery rule" does in fact apply to UCL claims.  The only reason the Order denied discovery was DC's representations that it had searched its files.  As shown in Defendants' motion (Mot. 13-14) and below, it was clear error to simply rely on DC's bare assertions, without affording Defendants the opportunity to test those representations.  This information is not just relevant, but potentially dispositive of the Sixth Claim, and Defendants are clearly entitled to discovery on it.

### C. DC's Own Discovery Demonstrates Relevance

DC's own actions demonstrate the relevance of this discovery.  In *Siegel*, in an attempt to sanitize the theft and compel formal production of the stolen documents, DC offered speculation about the Timeline author's supposed "whistle-blower intent." Dkt. 550-5, Ex. E at 22-23.[2]  DC then deposed Mr. Toberoff in *Siegel* about the Timeline, Mr. Toberoff's investigation and beliefs as to the identity and motivations of the Timeline's author, and Mr. Toberoff's knowledge as to DC's receipt and handling of the Timeline.  Dkt. 305-18 at 142:1-147:6 (DC: "[W]ho do you believe stole [the documents] from your office?"; DC: "Do you have any evidence … that the documents were received by Warner Bros. prior to on or around June 28th of this year?"; DC: "[W]hat steps have you taken to ascertain who may have taken those documents from your files?").

Indeed, DC's very first discovery requests to Mr. Toberoff in this case were aimed at the circumstances surrounding the Timeline and stolen documents.  DC falsely asserts that its discovery requests only concerned "the contents of the Timeline" or waiver of privilege (Opp. 11), an argument rebutted by the plain language of its requests.[3]  DC's own discovery makes clear that DC itself considers

---

[2] Magistrate Zarefsky disagreed with DC's characterization:  "I don't agree with the designation of these as 'whistleblower' documents…." Dkt. 550-3, Ex. C at 29:16-30:2.

[3] *See, e.g.*, Dkt. 162-14, Ex. DD at 595 ("Identify the Toberoff Timeline author"), 600 ("Describe in detail any and all information revealed by any investigation [regarding the Timeline Author or Timeline]"), 611 ("Describe in detail any and all communications you have had with the Toberoff Timeline Author since July 2006, including all efforts you made to contact the Toberoff Timeline Author"); Dkt. 207, Ex. E at 18-20 ("All documents relating to any internal or external investigation you participated in regarding the Toberoff Timeline Author and/or the Toberoff Timeline, including

the circumstances surrounding the Timeline to be highly relevant to this case.

## II. THE ISSUE HAS NOT BEEN PREVIOUSLY LITIGATED

DC spends much of its opposition erroneously arguing that these "very issues" have been litigated, and that Defendants are "barred" from seeking relief from this Court. Opp. at 3-4. DC's assertion is falsely premised on (1) its purposeful misreading of four rulings that do not concern Defendants' discovery rights; and (2) its elevation of a mere side comment at oral argument into a binding factual finding.

*First*, DC points (Opp. 2) to an order in *Siegel* in which Magistrate Zarefsky ordered Defendants to "match up" the stolen documents to those already produced or listed on their privilege logs. Dkt. 550-5, Ex. 3; Dkt. 550-3, Ex C at 18 (the "April 2007 Order"). DC makes much of Magistrate Zarefsky's passing remark during oral argument that, based on the record then before him, he thought that DC had acted "properly." Opp. 3. Such asides during oral argument are obviously not "law of the case" barring any discovery by Defendants. *See Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 830 (8th Cir. 2008) ("A district court's comments during oral argument do not constitute a final order subject to the law-of-the-case doctrine."); *X-IT Products, L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 632 (E.D. Va. 2001) ("[Comments made by U.S. Magistrate Judge … at a [] hearing on a variety of then-pending motions … most definitely have not become law of the case."). Nor was the comment necessary to the April 2007 Order, which simply called for an administrative "matching up" process regarding the stolen documents.

Moreover, the "law of the case acts as a bar only when the issue in question was actually considered and decided by the first court." *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995). Defendants' discovery of DC was not at issue in the April 2007 Order, which therefore cannot bar the discovery Defendants now seek.

*Second*, DC points to a decision by Judge Larson holding that, under the April

---

the findings of any such investigation;" "All documents relating to any communications you have had with third parties related to the Toberoff Timeline Author or the Toberoff Timeline").

4
DEFENDANTS' REPLY RE: MOTION FOR REVIEW OF JANUARY 16, 2013 ORDER

2007 Order, Defendants waived privilege over a few documents (including the Timeline). Dkt. 42-14, Ex. R at 216-17. For this purpose and only on this limited "waiver" issue, Judge Larson stated that the April 2007 Order was "law of the case." *Id.* The order in no way stated or suggested, as DC now argues (Opp. 2-3), that the Magistrate's side comments during oral argument were binding factual determinations or that the April 2007 Order somehow precluded Defendants from ever seeking Timeline-related discovery.

*Third*, DC points to Magistrate Zarefsky's denial of Defendants' motion for a protective order, which sought to limit DC's use of the Timeline during discovery. Opp. 2-3. Magistrate Zarefsky could not have been clearer that his order did not concern Defendants' right to discovery:

> So, since the Timeline has been disclosed, the Plaintiffs may conduct discovery about it. ***And that's all I'm indicating in denying this motion. I'm not making any further ruling with connection to that*** except to say that [Defendants'] motion for a protective order is denied.

Dkt. 95 at 56:9-13 (emphasis added).

*Fourth*, DC points to the Ninth Circuit's opinion on Defendants' petition for a writ of mandamus, which clearly states in its first sentence what is at issue: "We must decide whether a party waives attorney-client privilege forever by voluntarily disclosing privileged documents to the federal government." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1124 (9th Cir. 2012). The Ninth Circuit's decision had nothing to do with Defendants' discovery of DC. And the Circuit noted the uncertainty surrounding the time DC received the Timeline and stolen documents. *Id.* (DC received the stolen documents "*no later than* June 2006") (emphasis added).

### III. DC'S CONTRADICTORY ACCOUNTS DO NOT MOOT DEFENDANTS' DISCOVERY

DC also argues that the limited information and documents it has provided render Defendants' requests moot. Opp. 11-13. To the contrary, the many gaps and contradictions in DC's sparse, undocumented accounts as to who received the

5
DEFENDANTS' REPLY RE: MOTION FOR REVIEW OF JANUARY 16, 2013 ORDER

Timeline/stolen documents and when demonstrate why further discovery *is* needed.

For example, Warner's General Counsel, John Schulman, twice testified under oath that the President of Warner Bros. Pictures, Jeff Robinov, received the Timeline package, but this directly contradicts DC's sworn interrogatory responses, which claim that Robinov did not receive the Timeline package. Mot. 11. In its Opposition, DC distorts Schulman's testimony on this point to make it appear equivocal when it was not, pulling equivocating phrases ("believe" and "ha[d] no idea") *from answers to different questions* in order to mislead the Court on this issue. Schulman did not waver in his testimony:

> **Q:** Who were those executives [who received duplicates of the package]?
>
> **A:** Patti Connolly, head of production; Jeff Robinov, head of features.

Dkt. 569-1, Ex. A at 8:14-19. Later, Schulman testified that he had his staff inquire into the mail logs *for Robinov* to determine if there was any information in them regarding the Timeline's delivery. *Id.* at 9:24-10:7. DC does not and cannot explain this testimony away or why it contradicts its interrogatory responses.

DC's accounts of what happened to the (at least) three different envelopes that enclosed the allegedly mailed Timeline and stolen documents also conflict. In a letter sent one month after DC allegedly received the Timeline, DC's outside counsel informed Mr. Toberoff that "[t]he *envelopes* received at the office of Mr. Horn and Ms. Connolly *were forwarded … to Mr. Schulman's office*. Each *envelope* contained a number of documents." Dkt. 42-4 at 3 (emphasis added). A few months later, Schulman testified that the envelopes were *not* forwarded:

> **Q**: And when you received their packages I'm interested to know whether these documents and letters were sent in an envelope.
>
> **A**: I received no envelope from either of them.

Dkt. 569, Ex. A at 9:2-5.

DC now claims that it discarded the envelopes, but argues that this was not spoliation because supposedly "there was no reason for [DC] to preserve" the

6
DEFENDANTS' REPLY RE: MOTION FOR REVIEW OF JANUARY 16, 2013 ORDER

envelopes enclosing reams of its litigation adversaries' privileged documents in the middle of a major lawsuit. Opp. 12-13 n. 4. DC purports to justify its conduct by citing cases that hold parties need not retain envelopes – but all of those cases concern the retention of envelopes where it was known who the sender was. *U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002); *Curcio v. Roosevelt Union Free Sch. Dist.*, 283 F.R.D. 102, 125 (E.D.N.Y. 2012). **None** of those cases concerned anything like this situation – an envelope enclosing an anonymous letter along with hundreds of pages of privileged material in a multi-million dollar lawsuit.

The notion that DC's General Counsel did not believe that the envelopes were "potentially relevant" to ongoing litigation is simply not credible. "Parties to a civil action in federal court are under a duty to preserve evidence that they know is relevant or reasonably could lead to the discovery of admissible evidence." *Young v. Facebook, Inc.*, 2010 WL 3564847, at *1 (N.D. Cal. Sept. 13, 2010) (citing *Leon v. IDX Systems, Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)). These responsive documents (*i.e.*, the envelopes), which may provide the *only* tangible proof of when and from where the stolen documents were mailed, should obviously have been preserved. Yet DC adamantly refuses to clearly state what happened to this evidence.

Nor does DC anywhere dispute or address the fact that it did not search the files or logs of Alan Horn or Patti Connolly, two of the three executives who it now alleges received the Timeline packages (Dkt. 550-6, Ex. 8 at 84) or Jeff Robinov, who Mr. Schulman previously testified had received the Timeline.

Given these glaring contradictions and gaps, and the substantial discovery failures that have occurred after DC gave similar assurances about its searches in other contexts (*see* Dkt. 514; 514-1 at ¶2, Ex. E at 12), it was clear error for the Magistrate to deny any discovery based solely on DC's untested representations.

### IV. DEFENDANTS' REQUESTS ARE NOT OVERBROAD

DC also makes a conclusory argument that Defendants' discovery requests are overbroad. Opp. 2. The requests are properly limited in subject matter, scope and

time – most by the fact that they can extend no further back than DC's receipt of the Timeline/stolen documents. *See United States ex rel. El-Amin v. George Washington Univ.*, 2001 U.S. Dist. LEXIS 23438, at *4 (D.D.C. July 13, 2001) (requests are not overbroad when they are "clearly defined, limited in subject matter, and by its terms, focused on the time period relevant to this case"); *Bhandari v. VHA Sw. Cmty. Health Corp.*, 2010 WL 4928874, at *6 (D.N.M. Oct. 18, 2010) (requests were appropriately narrow because they were "limited in time").[4]

DC offers no support for its claims that responding to these requests would be unduly burdensome. Consequently, DC's reliance on this objection is unavailing. *See A Farber & Partners, Inc. v. Garber,* 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("General or boilerplate objections such as 'overly burdensome and harassing' are improper – especially when a party fails to submit an evidentiary declaration supporting such objections."); *Quiroz v. Cate,* 2012 U.S. Dist. LEXIS 109949, at *12 (N.D. Cal. Aug 2, 2012). Moreover, DC should be able to readily obtain and produce responsive documents, as it claims to routinely search both DC Comics' and Warner's files. *See* Dkt. 550-3, Ex. I at 163-64 (listing DC Comics custodians and 39 Warner custodians purportedly searched in response to discovery requests).

## V. DC MUST BE ORDERED TO IMMEDIATELY PRODUCE ITS NON-PRIVILEGED COMMUNICATIONS WITH DAVID MICHAELS

DC must produce its non-privileged communications with David Michaels, the suspected thief and author of the Timeline. DC does not dispute that these communications are relevant to the case. Instead, DC vaguely argues for the first time that Defendants are already in possession of "most (if not all) of these documents." Opp. 14. DC's selective withholding of its communications with Michaels is a clear-cut violation of its discovery obligations.

DC doubles down on its nonsensical argument that it will only produce its non-

---

[4] If the Court does not wish to adjudicate the issue of whether or not specific requests are overbroad, the sweeping January 16 Order should be reversed and the parties instructed to reach good-faith compromises, subject to Magistrate Zarefsky's review.

privileged communications with Michaels if Laura Siegel Larson waives privilege as to her 2005 communications with Michaels, even though Magistrate Zarefsky held those communications privileged. Dkt. 262 at 4. To be clear, the only written communications between Defendants and Michaels are those 2005 communications. Unable to justify its improper ransoming of these documents, DC merely repeats its failed arguments, long ago rejected by Magistrate Zarefsky (Dkt. 262 at 4), that privilege should not attach to Defendants' communications with Michaels. Opp. 14. The January 16 Order, in clear error, simply ignored that DC improperly withheld its communications with Michaels.

## VI. DEFENDANTS' MOTION FOR REVIEW COMPLIES WITH C.D. CAL. R. 72(A)'S SPECIFICITY REQUIREMENTS

DC speciously argues that Defendants' motion does not comply with C.D. Cal. R. 72(a)'s specificity requirements. Opp. at 2 n.1. This is nonsense. Local Rule 72 requires that a party seeking review "designat[e] the specific portions of the ruling objected to." Defendants' motion more than meets this standard. The motion properly objected to the four-page Order's sweeping holding that precluded Defendants' from *any* discovery as to DC's receipt and handling of the Timeline and stolen documents, and repeatedly pointed to instances of "error" and "clear error." *See, e.g.*, Mot. (Notice) at 1; Mot. at 2, 6-7, 10, 12, 13, 13-14. The only case that DC cites, *In re Grand Jury Subpoena*, 357 F.3d 900 (9th Cir. 2004), in no way supports their position: it does not concern a failure to list discovery requests, but whether a party waived objections when it "fail[ed] to object in the district court to a magistrate judge's finding of fact." *Id.* at 910.

## CONCLUSION

If Defendants' motion for summary judgment based on the statute of limitations is not granted, the January 16, 2013 Order must be reversed; Defendants permitted to proceed with discovery as to the Timeline, and DC ordered to produce all non-privileged responsive documents.

| | | |
|---|---|---|
| 1 | Dated: February 25, 2013 | RESPECTFULLY SUBMITTED, |
| 2 | | /s/ Keith G. Adams |
| | | Keith G. Adams |
| 3 | | TOBEROFF & ASSOCIATES, P.C. |
| 4 | | Attorneys for Defendants Mark Warren Peary, *et al.* |

DEFENDANTS' REPLY RE: MOTION FOR REVIEW OF JANUARY 16, 2013 ORDER