O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>PACIFIC PICTURES CPRORATION; IP WORLDWIDE, LLD; IPW, LLC; MARC TOBEROFF; MARK WARREN PEARY; JEAN ADELE PEAVY; LAURA SIEGEL LARSON; and DOES 1–10, inclusive,<br><br>　　　　　　Defendants. | Case No. 2:10-cv-03633-ODW(RZx)<br><br>**ORDER DENYING DC COMICS'S RENEWED MOTION FOR EVIDENTIARY HEARING AND SACTIONS [573] AND DENYING DEFENDANTS' MOTION TO REVIEW JANUARY 16, 2013 ORDER [569]** |

On October 10, 2012, Plaintiff DC Comics moved for an evidentiary hearing and sanctions—including terminating sanctions, appointment of a special master, and other relief—based on allegations that Defendants had engaged in gross discovery misconduct. (ECF No. 500.) On December 5, the Court denied DC's motion for lack of jurisdiction while the Court's denial of Defendants' anti-SLAPP motion was on appeal. (ECF No. 533.) DC now renews its motion. (ECF No. 573.)

The Court has performed a detailed review of the parties' papers and scrutinized the relevant portions of the vast discovery records in this case and the closely related *Siegel* litigation. The Court comes away from this investigation with the view that DC's Motion for Evidentiary Sanctions is really just a rehashing of the tortured course of discovery in these Superman matters. Now with the benefit of

hindsight (and relatively newfound possession of a multitude of documents to which DC may not have been entitled but for the theft of those documents from Toberoff's office and their subsequent disclosure to Warner Brothers), DC seeks to open a wide-reaching inquiry into attorney and Defendant Marc Toberoff's prior privilege assertions and privilege-logging practices.  The Court is admittedly deeply troubled by Toberoff's repeated failure to update his privilege logs to reflect Michael Siegel as a participant in the letter correspondence with his half-sister (and Defendant in this matter), Laura Siegel Larson, in November 2002, and May 2003, and July 2003— even after DC explicitly asked for any correspondence between the two. Nevertheless, the record does not support a clear inference that this logging inaccuracy was the result of a deliberate attempt to mislead the Court or DC Comics; rather, it appears more likely the result of a misplaced reliance on the attorney-client privilege and the related joint-litigation privilege.  Indeed, at various stages in this litigation, Toberoff's joint-litigation privilege assertions were upheld in some respects and overruled in others.  That his assertions have been upheld—even if such assertions were ultimately determined to be unwarranted—establishes that the privilege assertions were at least colorable, and therefore do not rise to willful attempts to mislead.

In any event, the Court is skeptical of DC's contention that any perceived deception here caused it any real prejudice, as the letters at issue here actually serve more to discredit DC's cries of intentional interference than they do to bolster them. For example, DC's fifth claim alleges that "Toberoff approached the Siegel Heirs and their representatives in late 2001 and 2002 to express interest in purchasing their Superman rights" with full knowledge that "the Siegel Heirs had already reached an agreement with DC Comics."  (FAC ¶ 184.)  DC also contends that "[a]s a direct result of Toberoff's misdeeds, the Siegel Heirs repudiated the Siegel-DC Comics Agreement with DC Comics."  (FAC ¶ 186.)  But the November 2, 2002 letter from Laura Siegel to Michael Siegel unambiguously reveals that Joanne and Laura Siegel

1  fired Kevin Marks (who had been representing them in negotiations with DC Comics
2  in late 2001 and early 2002) upon their "dissatisf[action]" with "the revolting offer
3  from DC" in February 2002—six months *before* they first learned that Toberoff had
4  made an offer to Marks in August 2002.

5        The Court could go on, but to no productive end.  As Magistrate Judge Zarefsky
6  has already advised, "At some point a matter has to be set aside, and parties go on to
7  other issues.  This is true even if the original decision may have been incorrect; once
8  decided, rightly or wrongly, there is a need for finality on an issue."  ECF No. 323,
9  at 2.  DC's Motion (ECF No. 573) is **DENIED**.

10        Defendants' Motion for Review of Judge Zarefsky's January 16, 2013 Order
11  Precluding Discovery Re: Timeline-Related Documents (ECF No. 569) is likewise
12  **DENIED**.

14  **IT IS SO ORDERED.**

16  March 8, 2013

18  _____
19        **OTIS D. WRIGHT, II**
      **UNITED STATES DISTRICT JUDGE**