UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

```
DC COMICS,                       )
                                 )
                                 )
     PLAINTIFF,                  )
                                 )
     VS.                         ) CASE NO. CV 10-03633-ODW(RZX)
                                 )
                                 )
PACIFIC PICTURES CORP. ET AL.,)
                                 ) LOS ANGELES, CALIFORNIA
                                 ) MARCH 11, 2013
                                 ) (10:10 A.M. TO 10:29 A.M.)
     DEFENDANTS.                 )
_____)
```

HEARING
BEFORE THE HONORABLE RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:              SEE NEXT PAGE

COURT REPORTER:           RECORDED; COURT SMART

COURTROOM DEPUTY:         ILENE BERNAL


TRANSCRIBER:              DOROTHY BABYKIN
                          COURTHOUSE SERVICES
                          1218 VALEBROOK PLACE
                          GLENDORA, CALIFORNIA  91740
                          (626) 963-0566

PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

```
 1  APPEARANCES: (CONTINUED)
    FOR THE PLAINTIFF:        O'MELVENY & MYERS LLP
 2                            BY:  MATTHEW T. KLINE
                                   JASON TOKORO
 3                                 BRIAN PEARL
                                   ATTORNEYS AT LAW
 4                            1999 AVENUE OF THE STARS
                              7TH FLOOR
 5                            LOS ANGELES, CALIFORNIA  90067

 6
    FOR SIEGEL AND SHUSTER    TOBEROFF & ASSOCIATES, P.C.
 7  DEFENDANTS:               BY:  MARC TOBEROFF
                                   ATTORNEY AT LAW
 8                            2049 CENTURY PARK EAST
                              SUITE 2720
 9                            LOS ANGELES, CALIFORNIA  90067

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
                                                                    3

 1                              I N D E X
     CASE NO. CV 10-03633-ODW(RZX)                  MARCH 11, 2013
 2
     PROCEEDINGS:  1.  PLAINTIFF'S MOTION TO CONDUCT FURTHER
 3                     DEPOSITION OF DEFENDANTS MARC TOBEROFF,
                       LAURA SIEGEL LARSON AND MARK WARREN PEARY;
 4                 2.  TO COMPEL DEFENDANTS MARC TOBEROFF AND MARK
                       WARREN PEARY TO RESPOND TO DEPOSITION
 5                     QUESTIONS

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    LOS ANGELES, CALIFORNIA; MONDAY, MARCH 11, 2013; 10:10 A.M.
2            THE CLERK:  CALLING CASE NUMBER
3    CV 10-03633-ODW(RZX), DC COMICS VERSUS PACIFIC PICTURES
4    CORP., ET CETERA, ET AL.
5            COUNSEL, PLEASE MAKE YOUR APPEARANCES.
6            MR. KLINE:  YOUR HONOR, MATT KLINE OF O'MELVENY &
7    MYERS ON BEHALF OF DC COMICS WITH MY COLLEAGUES JASON TOKORO
8    AND BRIAN PEARL.
9            THE COURT:  GOOD MORNING.
10           MR. TOKORO:  GOOD MORNING.
11           MR. TOBEROFF:  GOOD MORNING, YOUR HONOR.
12           MARC TOBEROFF ON BEHALF OF THE DEFENDANTS.
13           THE COURT: GOOD MORNING.
14           ALL RIGHT.  I'VE READ AND REVIEWED THE PAPERS.
15   I'VE READ JUDGE WRIGHT'S DECISION FROM FRIDAY.
16           WHAT DO YOU WANT TO TELL ME, MR. KLINE?
17           MR. KLINE:  I'LL BE VERY BRIEF, YOUR HONOR.
18           WE'VE BRIEFED THESE ISSUES EXHAUSTIVELY.
19           OBVIOUSLY, ANY OF THE ARGUMENTS THAT WE MADE THAT
20   RELIED ON THE SANCTIONS MOTION, WHICH HAS NOW BEEN DENIED,
21   ARE WITHDRAWN.  BUT THERE'S STILL INDEPENDENT REASONS THAT
22   WE'VE IDENTIFIED IN THE MOTION FOR PROCEEDING WITH THE
23   DISCOVERY AGAINST THE THREE DEPONENTS.
24           I THINK THE ONE PART OF JUDGE WRIGHT'S OPINION THAT
25   ACTUALLY HELPS US IS WHERE HE TALKS ABOUT THE PRIVILEGE

1   CLAIMS THAT WERE ASSERTED BY MR. TOBEROFF.  AT THE END OF THE
2   MOTION HERE WE'RE OBVIOUSLY CHALLENGING SEVERAL PRIVILEGE
3   ASSERTIONS THAT WERE MADE AT MR. PEARY'S DEPOSITION, AND WE
4   THINK THAT THE LOGIC OF MR. -- OR JUDGE WRIGHT'S RULINGS
5   HELPED US IN THAT REGARD.
6        BUT OTHER THAN THAT WE'VE BRIEFED THESE ISSUES
7   EXHAUSTIVELY.  WE THINK THERE'S A PRESSING NEED TO DEPOSE THE
8   THREE DEPONENTS HERE, IN PARTICULAR, MS. LARSON, ABOUT HER
9   LETTERS REFERRING TO THE BILLIONAIRE INVESTOR.  THOSE WERE
10  OBVIOUSLY WRITTEN AFTER MR. MARKS HAD WARNED HER IN THE
11  SUMMER OF 2001 THAT IF SHE BROKE HER DEAL WITH DC AND WENT
12  OFF WITH MR. TOBEROFF, DC MIGHT SUE HER AND MR. TOBEROFF.
13       AND, OF COURSE, JUDGE WRIGHT ACKNOWLEDGED THAT
14  THERE WERE SOME EXONERATING STATEMENTS IN THOSE LETTERS.  BUT
15  WE THINK THOSE EXONERATING STATEMENTS CAN BE TIED BACK TO MR.
16  MARKS' WARNING THAT SHE MIGHT BE SUED.
17       AND, SO, IT'S OUR SUBMISSION THAT --
18       THE COURT:  GIVE ME AN EXAMPLE, MR. KLINE, OF THE
19  SORTS OF THINGS YOU MIGHT ASK HER.
20       MR. KLINE:  OH, FOR EXAMPLE, THE WRITING PROCESS
21  THAT WENT INTO SOME OF THOSE LETTERS.  SHE'S MADE STATEMENTS
22  THAT THE BILLIONAIRE INVESTOR AND MR. EMANUEL WERE ONE IN THE
23  SAME.
24       BUT IF YOU LOOK AT THE NOVEMBER 2002 LETTER, FOR
25  EXAMPLE, SHE REFERS TO THREE SEPARATE PEOPLE -- MR. TOBEROFF,

1    MR. EMANUEL, AND THE BILLIONAIRE INVESTOR.  SHE TALKS ABOUT

2    AFTER THE BILLIONAIRE INVESTOR WENT AWAY SHE WOULD CONTINUE

3    DOING BUSINESS WITH MR. EMANUEL AND MR. TOBEROFF.  AND, SO,

4    WE WOULD WANT TO PURSUE THOSE LINES OF INQUIRY.

5              WE'D ALSO WANT TO SHOW HER BRIEFS THAT WERE

6    SUBMITTED IN THE CASE THAT SAID THAT THERE WAS NO EVIDENCE

7    THAT ANY BILLIONAIRE INVESTOR EXISTED AND CONTRAST THOSE WITH

8    THE LETTERS THAT SHE WROTE HERSELF.

9              AND THEN TALK ABOUT WHO HELPED WRITE THOSE LETTERS.

10   BECAUSE WE THINK THOSE LETTERS ARE EXTREMELY IMPORTANT,

11   PARTICULARLY IN LIGHT OF MR. MARKS' MEMO, WHICH WE'VE NEVER

12   BEEN ABLE TO EXAMINE HER ON EITHER, IN WHICH SHE WARNS HER --

13             I APOLOGIZE BY THE WAY, YOUR HONOR, I'M GETTING

14   OVER THE FLU.

15             THE COURT:  JUST DON'T BREATHE ON ME.

16             MR. KLINE:  I WON'T.

17             IN MR. MARKS' MEMORANDUM AT THE END OF IT HE WARNS

18   HER, LOOK, IF YOU GO THIS ROUTE, IT'S QUITE LIKELY THAT DC

19   WILL SUE YOU AND MR. TOBEROFF.

20             AND, SO, WE BELIEVE WE SHOULD BE ABLE TO EXAMINE

21   HER ABOUT THAT WARNING THAT SHE RECEIVED AND SUBSEQUENT

22   COMMUNICATIONS THAT SHE CREATED WITH HER BROTHER MICHAEL.

23             THE COURT:  AND WHAT DO YOU IN YOUR WILD

24   IMAGINATION -- I DON'T MEAN IT THAT WAY.  WHAT DO YOU AT YOUR

25   MOST OPTIMISTIC ANTICIPATE THAT YOU WOULD GET FROM ASKING HER

1  ABOUT -- ABOUT THOSE LETTERS?

2           MR. KLINE: WELL, FOR ONE, YOUR HONOR, IF YOU READ

3  THE POINT TEXT TO THEM SHE'S REFERRING TO THREE DIFFERENT

4  PEOPLE. AND WE DO THINK --

5           THE COURT: OKAY. SO, YOU DON'T NEED TO ASK HER

6  QUESTIONS ABOUT THAT. YOU KNOW THAT.

7           MR. KLINE: WE THINK WE DO, YOUR HONOR, BECAUSE

8  THEY'VE PRESSED THIS MOTION RIGHT NOW FOR SUMMARY JUDGMENT IN

9  WHICH THEY'RE SAYING THAT SHE SUBMITS A DECLARATION SAYING,

10 NO, IT'S DEFINITIVE. THE BILLIONAIRE AND MR. EMANUEL ARE ONE

11 IN THE SAME. AND WE HAVE A PENDING 56(D) DECLARATION IN

12 CONNECTION WITH THAT SUMMARY JUDGMENT MOTION IN WHICH WE SAY

13 THAT'S A HOTLY DISPUTED ISSUE OF FACT. WE SHOULD BE ABLE TO

14 EXAMINE HER.

15          AND I THINK MY PARTNER MR. PETROCELLI, WHO'S QUITE

16 AN ABLE EXAMINER, MIGHT BE ABLE TO GET HER TO ADMIT THAT,

17 YES, THOSE ARE THREE SEPARATE PEOPLE AND THAT'S WHAT MY PLAIN

18 WORDS SAY. AND I THINK THAT THAT ADMISSION WOULD FURTHER

19 HELP US.

20          WE THINK RIGHT NOW ON THE FACTUAL RECORD WE HAVE

21 RIGHT NOW GIVEN THE PLAIN TEXT OF HER LETTER, YOU KNOW,

22 THERE'S AT LEAST A DISPUTED ISSUE OF FACT ON THAT ISSUE. BUT

23 I THINK THE REASON WHY WE NEED TO HAVE AN EXAMINATION IS

24 BECAUSE MY PARTNER WOULD BE ABLE TO ELICIT FROM HER THAT,

25 YES, THOSE ARE THREE SEPARATE PEOPLE. AND IT WOULD NEGATE

1  THE FACTUAL ARGUMENT THEY'VE BEEN PROFFERING IN SUPPORT OF
2  THAT MOTION.
3          THE COURT:  ALL RIGHT.
4          MR. KLINE:  AND ON MR. PEARY, HE'S REALLY
5  UNAFFECTED BY THIS.  WE WANT TO EXAMINE HIM ON THE SORTS OF
6  DOCUMENTS THAT WE EXAMINED MS. PEAVY ON, INCLUDING HIS
7  MOTHER'S WILL, THE 2011 PACIFIC PICTURES AGREEMENT.
8          THAT 2011 PACIFIC PICTURES AGREEMENT IS PLAYING A
9  PRETTY CENTRAL ROLE IN THAT PENDING SUMMARY JUDGMENT MOTION
10 AS WELL.  AND, SO, WE THINK WE'RE ENTITLED TO EXAMINE HIM
11 TOO.
12         AND, THEN, AS TO MR. TOBEROFF, YOU KNOW, REALLY THE
13 MAIN SUBMISSION THERE IS IT'S A VERY COMPLICATED CASE.  HE
14 WAS TESTIFYING ON BEHALF OF FOUR DEFENDANTS.  AND WE'RE ONLY
15 ABOUT HALFWAY THROUGH THE EXAMINATION.  THAT'S BEFORE HE GETS
16 ALL THESE NEWLY PRODUCED DOCUMENTS WE HAVEN'T BEEN ABLE TO
17 QUESTION HIM ON.
18         SO, WITH THAT, YOUR HONOR, I DON'T WANT TO TAKE ANY
19 MORE OF YOUR TIME.
20         THE COURT:  WHAT IS -- I KNOW THAT MR. TOBEROFF'S
21 MOTION IS PENDING.
22         IS THERE A TRIAL DATE SET AT ALL?
23         MR. KLINE:  THERE'S NOT AT PRESENT, YOUR HONOR.
24         THE COURT:  OKAY.
25         ALL RIGHT.

```
1                MR. KLINE:  THANK YOU.
2                THE COURT:  THANK YOU, MR. KLINE.  HOPE YOU FEEL
3    BETTER.
4                MR. KLINE:  THANK YOU.
5                THE COURT:  MR. TOBEROFF.
6                MR. TOBEROFF:  GOOD MORNING, YOUR HONOR.
7                THE COURT:  GOOD MORNING.
8                MR. TOBEROFF:  I'LL START WITH THE DEPOSITION OF
9    WARREN PEARY, DO WE EVEN DEPOSE HIM.
10               FIRST OF ALL, WITH RESPECT TO LAURA SIEGEL LARSON
11   AND MR. PEARY, THOSE DEPOSITIONS ARE PURPORTEDLY BASED ON THE
12   TIMELINE DOCUMENTS THAT WERE SUBJECT TO REVIEW.  AT THE TIME
13   WHEN THEY FIRST TOOK -- NOTICED THEIR DEPOSITIONS WE MOVED
14   FOR A PROTECTIVE ORDER NOTING THAT WE WERE CONCERNED THAT
15   SINCE THE WRIT OF REVIEW IS PENDING, THAT ONCE THEY GOT THOSE
16   DOCUMENTS, WE WERE NOT SUCCESSFUL ON THE WRIT, THAT THEY
17   WOULD MOVE TO REDEPOSE OUR CLIENTS.
18               AND TO PROTECT THEM FROM HAVING TO SIT THROUGH YET
19   ANOTHER DEPOSITION, WE MOVED FOR A PROTECTIVE ORDER.  THAT
20   WAS DENIED.  AND YOUR HONOR AT THAT POINT CAUTIONED THAT I'M
21   LEAVING IT TO THEM.  YOU CAN PROCEED WITH YOUR DEPOSITION,
22   BUT YOU SHOULD BE FOREWARNED THAT I DON'T FAVOR REPEAT
23   DEPOSITIONS IN A CASE.
24               IN THIS CASE BECAUSE OF THE CLOSE RELATION BETWEEN
25   THIS CASE AND THE SIEGEL CASE, MS. LARSON HAS ALREADY GONE
```

1  THROUGH APPROXIMATELY 17 HOURS OF DEPOSITION TESTIMONY.  AND

2  WE SHOW IN OUR BRIEFS --

3           THE COURT:  THAT'S IN THREE SETTINGS -- THREE

4  SITTINGS.

5           MR. TOBEROFF:  THREE.  SHE HAD TWO DEPOSITIONS IN

6  THE SIEGEL CASE.  THEY WERE ALLOWED TO REDEPOSE HER IN THE

7  SIEGEL CASE.  AND A FULL DAY'S DEPOSITION IN THIS CASE.

8           AT THE END OF A SEVEN-HOUR DEPOSITION -- AND I

9  SHOULD NOTE --

10          THE COURT:  SHE SAID I'M STILL AVAILABLE.  ASK ME

11 SOME MORE QUESTIONS IF YOU WANT.

12          MR. TOBEROFF:  SHE WANTED TO CONTINUE BECAUSE SHE

13 DIDN'T WANT TO HAVE TO COME BACK.  AND I DON'T WANT TO

14 BELABOR THE POINT, BUT SHE DOES HAVE MULTIPLE SCLEROSIS AND

15 FIBROMYALGIA.  AND IT IS VERY DIFFICULT -- I DON'T KNOW MUCH

16 ABOUT THESE DISEASES, BUT I KNOW WHAT I SEE.  AND SHE HAD TO

17 TAKE FREQUENT BREAKS, LIE DOWN, IS IN CONSIDERABLE PAIN

18 SITTING FOR A PROLONGED PERIOD OF TIME.  AND ENOUGH'S ENOUGH.

19 THEY'VE TAKEN 17 HOURS OF DEPOSITIONS.

20          YOU ALSO CAUTIONED THEM WITH RESPECT TO A MOTION WE

21 MADE WHERE WE ASKED FOR A STAY OF DISCOVERY DURING THE

22 ANTI-SLAPP MOTION.  YOU ALLOWED THEM TO PROCEED WITH THEIR

23 DEPOSITIONS, BUT YOU CAUTIONED DC NOT TO ASK QUESTIONS

24 THEY'VE ALREADY ASKED IN THE PRIOR DEPOSITION, UNDERSTANDING

25 THAT THE CASES ARE CLOSELY RELATED, AND THEY PROCEEDED TO DO

1  JUST THAT. AND WE SHOWED IN OUR BRIEF, AND THE TRANSCRIPTS

2  DON'T LIE, THAT THEY PROCEEDED TO ASK QUESTIONS ON A VARIETY

3  -- NOT JUST ONE OR TWO SUBJECTS -- BUT A DOZEN SUBJECTS IN

4  BOTH DEPOSITIONS TO GO OVER REPEAT TESTIMONY.

5      FINALLY, WITH RESPECT TO THE DOCUMENTS -- THE KEY

6  DOCUMENT THEY'RE SPEAKING ABOUT IS A NOVEMBER LETTER. JUDGE

7  WRIGHT HAS ALREADY FOUND -- OR MENTIONED THAT THAT LETTER

8  DOES MORE TO UNDERCUT THEIR CLAIMS OF TORTIOUS INTERFERENCE

9  THAN TO SUPPORT THEIR CLAIMS OF TORTIOUS INTERFERENCE.

10      AS TO THE MARKS MEMO, THE BEST PERSON FOR THEM TO

11  ASK ABOUT THAT IS MR. MARKS. AND IN THIS CASE, WHICH HAS

12  GONE ON NOW FOR --

13      THE COURT: HE'S BEEN DEPOSED TOO, HASN'T HE?

14      MR. TOBEROFF: NO, HE HASN'T. THEY HAVEN'T DEPOSED

15  HIM --

16      THE COURT: DEPOSED IN SIEGEL?

17      MR. TOBEROFF: THEY DEPOSED HIM IN SIEGEL, BUT --

18      THE COURT: OKAY.

19      MR. TOBEROFF: BUT IN TWO AND A HALF YEARS IN THIS

20  CASE AND AFTER RECEIVING THE MARKS MEMO, AFTER THE WRIT

21  REVIEW, THEY'VE NEVER TAKEN MR. MARKS' DEPOSITION. JUST LIKE

22  THEY'VE NEVER TAKEN ARI EMANUEL'S DEPOSITION IN TWO AND A

23  HALF YEARS.

24      THESE DEPOSITIONS ARE NOT BEING USED JUST TO GET AT

25  THE BASIS FOR THEIR CLAIMS IN MY OPINION. THESE DEPOSITIONS

Case 2:10-cv-03633-ODW-RZ   Document 609   Filed 03/19/13   Page 12 of 20   Page ID
 #:39268

1   ARE BEING USED FOR ANCILLARY REASONS TO PRESSURE AND HARASS.

2              THEY ALSO IN THESE DEPOSITIONS -- SINCE PART OF, I

3   BELIEVE, DC'S TACTICS IN THIS CASE IS TO INVADE THE

4   ATTORNEY-CLIENT RELATIONSHIP AS A WAY OF WEAKENING OUR

5   OPPOSITION, THEY ASK ALL SORTS OF QUESTIONS IN THESE

6   DEPOSITIONS -- ABOUT SETTLEMENT, ABOUT THEIR RELATIONSHIP

7   WITH ME.  THEY WROTE IN THEIR PAPERS THAT THEY WANT TO

8   QUESTION LAURA SIEGEL ABOUT THE NEGOTIATION OF MY CONTINGENCY

9   FEE EVEN THOUGH THEY HAVE THE AMOUNT OF MY CONTINGENCY FEE,

10  WHICH IS NOT PROTECTED.  BUT THE NEGOTIATION OF THE FEE WOULD

11  BE PROTECTED.

12             AND THEY'VE ALSO HAD THE RETAINER AGREEMENT SUBJECT

13  TO CERTAIN REDACTIONS WHICH THEY CHALLENGED IN THIS CASE.

14  AND YOUR HONOR HELD THAT THOSE REDACTIONS WILL NOT -- WILL BE

15  UPHELD.  SO, THEY SHOULDN'T BE ALLOWED TO ASK ANY MORE

16  QUESTIONS REGARDING MY RETENTION.  IT'S NOT RELEVANT TO THEIR

17  CLAIMS MY LEGAL RETAINER AGREEMENT IN THIS CASE.

18             AS FAR AS MR. PEARY IS CONCERNED, THEIR CLAIM IS

19  THAT THE WILL AND THAT A SUPPOSED 2011 AGREEMENT IS THE BASIS

20  FOR A NEW DEPOSITION.  THAT REALLY DOESN'T MAKE MUCH SENSE.

21  THE WILL WAS ENTERED INTO IN NOVEMBER OF 2000 BEFORE I HAD

22  ANY CONTACT WITH THE SHUSTERS, BEFORE THE 2001 PPC AGREEMENT.

23             AND IT DOESN'T MENTION TERMINATION.  IT REALLY HAS

24  NOTHING TO DO WITH TERMINATION IN THIS CASE.  IT'S NOT

25  MENTIONED IN THEIR COMPLAINT.  AND THEY COULD NOT TIE IN

```
 1   THEIR BRIEFS ANY LOGICAL CONNECTION BETWEEN THE WILL AND
 2   THEIR CLAIM FOR TORTIOUS INTERFERENCE IN THIS CASE.
 3            THEY SAID THEY WANT TO DEPOSE WARREN ABOUT A
 4   CONFIDENTIAL ATTORNEY-CLIENT MEMORANDUM GIVING ME ADVICE I
 5   VOLUNTARILY ASKED REGARDING THE FORM OF THE PPC AGREEMENT.
 6   BECAUSE I WASN'T COMFORTABLE WITH IT I ASKED ATTORNEYS TO
 7   REVIEW IT FOR ME AS COUNSEL AND GIVE ME ADVICE AS TO WHETHER
 8   OR NOT IT COMPLIES WITH THE ETHICS AND PROFESSIONS CODE IN
 9   VARIOUS AREAS.  AND THEY GAVE ME A LONG MEMO GOING OVER ALL
10   OF THESE POINTS.
11            THEY ASKED ABOUT THAT MEMO, WHETHER WARREN HAD EVER
12   SEEN THAT MEMO.  AND HE SAID, NO, THERE'S REALLY NOTHING FOR
13   HIM TO ASK ABOUT.  NOR IS IT RELEVANT TO THEIR CLAIM OF
14   TORTIOUS INTERFERENCE.  BECAUSE THEIR CLAIM FOR TORTIOUS
15   INTERFERENCE, EVEN IF THEY CLAIM THAT THAT MEMO SHOWS THAT I
16   ENGAGED IN WRONGFUL CONDUCT, WRONGFUL CONDUCT IS NOT AN
17   ELEMENT OF A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT.
18   IT'S A CLAIM FOR TORTIOUS -- IT'S AN ELEMENT OF A CLAIM FOR
19   TORTIOUS INTERFERENCE WITH A PROSPECTIVE ADVANTAGE.
20            SO, THERE'S NO REAL -- THE ONLY DOCUMENT -- AND THE
21   SUPPOSED 2011 AGREEMENT THAT THEY SPEAK TO IS NO AGREEMENT AT
22   ALL.  IT'S SIMPLY THEY HAD MADE A CLAIM THAT UNDER THE PPC
23   AGREEMENTS, EVEN THOUGH WE CANCELLED THE AGREEMENTS, THEY
24   SAID THERE'S A PROVISION IN THE PPC AGREEMENT THAT ALLOWS FOR
25   THE CONTINUING EFFECT OF CERTAIN TERMS IN THE PPC AGREEMENT
```

1  AFTER CANCELLATION.  SO, THEY CLAIM THAT THE SHUSTER
2  TERMINATION WAS INVALID BECAUSE PPC UNDER THAT AGREEMENT
3  CONTINUED TO HOLD AN INTEREST IN THE TERMINATION WHICH
4  RENDERED THEIR INTEREST INVALID BY NOT COMPRISING A MAJORITY
5  INTEREST.
6          THIS IS ALL MOOT.  BECAUSE JUDGE WRIGHT HAS RULED
7  --
8          EXCUSE ME.  I JUST NEED TO TAKE A SIP OF WATER.
9          JUDGE WRIGHT HAS RULED IN -- PREVIOUSLY IN THE CASE
10 WITH REGARD TO THE THIRD CLAIM THAT THE TERMINATION INTEREST
11 CANNOT BE TRANSFERRED UNDER THE COPYRIGHT ACT.  AND,
12 THEREFORE, THEIR CLAIM THAT PPC HAD AN INTEREST -- WHICH IS
13 WHAT THE 2011 LETTER WAS ABOUT.  IT WASN'T AN AGREEMENT.  IT
14 WAS SIMPLY A LETTER DISAVOWING ANY INTEREST OF PPC TO PUT TO
15 BED THEIR CLAIM THAT PPC HAD SOME INTEREST.  EVEN THOUGH
16 THERE WAS A CANCELLATION OF THE 2001 AGREEMENT AND THE 2003
17 AGREEMENT, ALL OF THAT IS MOOT.
18          SINCE THERE IS NO -- NOT ONLY HAS JUDGE WRIGHT HELD
19 THAT YOU CAN'T TRANSFER TERMINATION INTERESTS, BUT HE HELD
20 THAT THE SHUSTERS HAD NO TERMINATION RIGHT DUE TO A 1992
21 AGREEMENT.  SO, IT'S DOUBLY MOOT.
22          SO, THERE'S NO CONCEIVABLE BASIS TO TAKE WARREN'S
23 DEPOSITION.  HE WAS DEPOSED FOR 14 HOURS BETWEEN THE TWO
24 CASES ALREADY.
25          AS FAR AS LAURA SIEGEL, THE SAME APPLIES.  THERE'S

1    NO REAL BASIS TO TAKE HER DEPOSITION.  AND THEY COULD HAVE

2    WELL HAVE WAITED TILL AFTER WRIT REVIEW BECAUSE THERE'S NO

3    DISCOVERY CUTOFF IN THIS CASE.  THERE HASN'T BEEN A DISCOVERY

4    CUTOFF OR A SCHEDULING ORDER ISSUED IN THE CASE.

5            AS FAR AS MY DEPOSITION IS CONCERNED, THE DESIRE TO

6    RETAKE MY DEPOSITION WAS LARGELY BASED ON THEIR SANCTIONS

7    MOTION TO ASK ME QUESTIONS ON DISCOVERY.  AND AS ADMITTED,

8    THAT'S NOW MOOT BECAUSE THE SANCTIONS MOTION WAS DENIED.

9            IN ADDITION TO THAT, THEY WANT TO TAKE MY

10   DEPOSITION REGARDING THE ARMSTRONG-HIRSCH MEMOS, WHICH, AS I

11   DESCRIBED, AREN'T RELEVANT TO ANY CLAIM IN THE CASE.  THE

12   MEMOS ASKED FOR ETHICS REVIEW OF A CERTAIN AGREEMENT, WHICH

13   BASED ON THAT ETHICS REVIEW WE THEN CANCELLED.

14           THEY WANT TO TAKE MY DEPOSITION AS AN ATTORNEY AS

15   OPPOSED TO A PARTY.  THEY SAY IN THEIR PAPERS THEY SEEK TO

16   TAKE MY DEPOSITION AS THE ATTORNEY FOR THE SHUSTER AND SIEGEL

17   HEIRS.  THAT'S NOT REALLY PROPER.  THERE'S A HIGHER STANDARD

18   OF GOOD CAUSE THAT YOU NEED TO SHOW FOR THAT.  AND WE REFUSE

19   TO ANSWER THOSE TYPES OF QUESTIONS BECAUSE IT'S NOT PROPER TO

20   USE A DEPOSITION TO DEPOSE YOUR -- OPPOSING COUNSEL AS TO HOW

21   HE'S CONDUCTED HIMSELF IN THE CASE AS COUNSEL.

22           FINALLY, NOTHING NEW HAS CHANGED SINCE -- NOTHING

23   HAS HAPPENED SINCE THEY TOOK MY DEPOSITION IN SEPTEMBER 2012.

24   THERE'S NO NEW DOCUMENTS.  THEY TOOK MY DEPOSITION AFTER

25   RECEIVING THE WRIT DOCUMENTS.  THERE'S REALLY NOTHING NEW HAS

1  HAPPENED.

2           IT REALLY COMES DOWN TO THE FACT THAT THEY DIDN'T

3  PROPERLY TIME THE DEPOSITION.  THEY TOOK A VERY LEISURELY

4  DEPOSITION.  THEY ASKED ME ALL SORTS OF QUESTIONS, WHICH WE

5  SHOWED IN OUR BRIEF THEY HAD ALREADY ASKED IN THE PRIOR

6  DEPOSITION, INCLUDING BASIC BACKGROUND QUESTIONS ABOUT MY

7  EDUCATION.

8           ESSENTIALLY SINCE OTHER COUNSEL HAD HANDLED THE

9  CASE BEFORE THEM IN SIEGEL THEY WANTED TO DO -- AND THEY WERE

10 NEW COUNSEL IN THIS CASE, THEY JUST WANTED TO DO IT THE WAY

11 THEY WANTED TO DO IT.  AND THEY LET US KNOW HALFWAY THROUGH

12 THE DEPOSITION THAT THEY EXPECTED TO TAKE FURTHER DEPOSITION,

13 AND THAT THEY DIDN'T EXPECT TO COMPLETE IT THAT DAY.  THEY

14 JUST TOOK FOR GRANTED THAT THE COURT WOULD GIVE THEM

15 ADDITIONAL TIME REGARDLESS OF THE FACT THAT THE COURT HAS

16 SAID ON MORE THAN ONE OCCASION THAT IT DOESN'T VIEW REPEAT

17 DEPOSITIONS FAVORABLY.

18           THANK YOU, YOUR HONOR.

19           THE COURT:  THANK YOU, MR. TOBEROFF.

20           MR. KLINE, ANYTHING FURTHER?

21           MR. KLINE:  JUST VERY QUICKLY, YOUR HONOR.

22           WE'RE DEPOSING MR. EMANUEL NEXT WEEK.  AS WE PUT IN

23 OUR 56(D) PAPERS, WE WANT TO DEPOSE MR. MARKS AND OTHER

24 WITNESSES.

25           IN TERMS OF DEPOSING MR. PEARY ABOUT THE WILL, AS

1    WE ARGUED WHEN YOU ALLOWED US TO REDEPOSE HIS SISTER DAWN
2    PEAVY, THE CRITICAL ISSUE THERE IS THAT HE LIED TO HIS SISTER
3    AND HIS MOTHER ABOUT THE CONTENTS OF THE WILL, AND HE'S
4    OBVIOUSLY A KEY MATERIAL WITNESS IN THE CASE.  NOW WE HAVE
5    THE DOCUMENT TO IMPEACH HIM WITH.
6         THE REASON WHY WE TOOK THE DEPOSITIONS WHEN WE DID
7    BEFORE IS MR. TOBEROFF URGED THAT THE SLAPP MOTION BE HEARD
8    IMMEDIATELY.  JUDGE WRIGHT ISSUED A DATE BY WHICH WE HAD TO
9    RESPOND TO THAT SLAPP MOTION.  AND AS WE TOLD YOU, WE FELT
10   OUR HANDS WERE TIED AND THEREFORE TOOK THE DEPOSITIONS WHEN
11   WE DID.
12        WE DO NOT WANT TO BURDEN MS. LARSON, MR. PEARY OR
13   MR. TOBEROFF AT ALL.  WE WAITED UNTIL WE GOT WHAT WE FELT
14   WERE GOING TO BE ALL THE DOCUMENTS.  WE WANT TO TAKE ONE
15   FINAL DEPOSITION.
16        I ASSURE YOU THERE WAS NOTHING LEISURELY ABOUT
17   THOSE DEPOSITIONS; NOR ARE THEY DUPLICATIVE.  WE REALLY WENT
18   IN THERE AND TRIED TO COVER SOME NEW GROUND.
19        THE DOCUMENTS WE WANT TO DEPOSE MR. TOBEROFF ON,
20   INCLUDING THE ARMSTRONG-HIRSCH MEMOS, ARE NOT MOOT.  THEY ARE
21   KEY COMPONENTS OF OUR SIXTH CLAIM FOR RELIEF, FOR EXAMPLE,
22   AND THE STATUTE OF LIMITATIONS DEFENSES THAT ARE PRESENTLY
23   BEING BRIEFED.
24        THE SAME FOR THE 2011 AGREEMENT.  HE SAYS THAT THE
25   DOCUMENT IS CANCELLED, BUT MR. PEARY ADMITTED IN HIS

1  DEPOSITION, THE LAST DEPOSITION THAT WE TOOK, THAT THE OLD
2  PPC AGREEMENTS WERE, IN FACT, NOT CANCELLED.  AND THE RIGHTS
3  WERE NOT TRANSFERRED BACK TO MR. TOBEROFF.
4           THE WORD "CANCELLED" APPEARED THERE, BUT THERE WAS
5  NO TRANSFER OF RIGHTS BACK TO MR. TOBEROFF.  AND, SO, THEY
6  CREATED THIS NEW 2011 AGREEMENT IN THE MIDDLE OF SLAPP
7  BRIEFING.  WE'VE NEVER HAD A CHANCE TO QUESTION MR. PEARY
8  ABOUT IT.
9           SO, I DON'T WANT TO BELABOR POINTS THAT WE'VE HIT
10 PRETTY HARD IN OUR PAPERS, BUT JUST TO TOUCH ON THOSE FEW
11 ISSUES.
12          THANK YOU, YOUR HONOR.
13          THE COURT:  ALL RIGHT.  THANK YOU.
14          I WANT TO REVIEW IT A LITTLE MORE SO I'M GOING TO
15 TAKE IT UNDER SUBMISSION.
16          I'LL GET A RULING OUT AS SOON AS I CAN.
17          MR. KLINE:  THANK YOU, YOUR HONOR.
18          THE COURT:  THANKS VERY MUCH.
19          WE'LL BE IN RECESS.
20          (PROCEEDINGS CONCLUDED 10:29 A.M.)
21
22
23
24
25

C E R T I F I C A T E

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

/S/ DOROTHY BABYKIN                                      3/17/13
_____                     _____
FEDERALLY CERTIFIED TRANSCRIBER                          DATED
DOROTHY BABYKIN

Case 2:10-cv-03633-ODW-RZ Document 609 Filed 03/19/13 Page 20 of 20 Page ID #:39276