O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC COMICS,<br><br>                    Plaintiffs,<br><br>          v.<br><br>PACIFIC PICTURES CORPORATION;<br>IP WORLDWIDE, LLC; IPW, LLC;<br>MARC TOBEROFF; MARK WARREN<br>PEARY; JEAN ADELE PEAVY, LAURA<br>SIEGEL LARSON; DOES 1–10,<br>inclusive,<br><br>                    Defendants. | Case No. 2:10-cv-03633-ODW(RZx)<br><br>**ORDER DENYING DC'S MOTION**<br>**FOR ATTORNEYS' FEES [562]** |

## I.  INTRODUCTION

In 2010, DC Comics filed suit against (among others) the heirs of Superman co-creator Joseph Shuster, alleging that the heirs' attempted copyright-grant termination was ineffective.  DC also sought to invalidate three agreements between the heirs and Defendants Marc Toberoff and Pacific Pictures Corporation under 17 U.S.C. § 304(c)(6)(D).  After two years of acrimonious litigation, the Court granted partial summary judgment on both claims in DC's favor.

DC now moves for $500,000 in attorneys' fees under the Copyright Act's fee-shifting statute, 17 U.S.C. § 505.  But DC seeks fees only against Toberoff, and only on its third claim concerning the heirs' 2001 and 2003 agreements with Pacific

1   Pictures and the 2008 consent agreement between the Shuster and Siegel heirs.

2   Defendants oppose DC's fees request, arguing that DC succeeded only minimally and

3   that Defendants had not asserted any frivolous or unreasonable defenses during the

4   litigation.   After considering the various factors expounded by the United States

5   Supreme Court, as well as public-policy considerations, the Court **DENIES** DC's

6   Motion for Attorneys' Fees.[1]

7               **II.   FACTUAL AND PROCEDURAL BACKGROUND**

8          In November 2001, Defendants Mark Warren Peary and Jean Adele Peavy

9   entered into a "Joint Venture Agreement" with Defendant Pacific Pictures

10  Corporation, purportedly assigning any interest the heirs would recapture from the

11  1992 Shuster termination notice to the venture.   The parties reaffirmed this agreement

12  in 2003.   But in 2004, the parties rescinded both agreements.   In 2008, the Shuster

13  heirs and the Siegel heirs entered into a consent agreement, which prohibited either

14  family from entering into an agreement with DC without the other's approval.

15         On August 20, 2012, DC moved for partial summary judgment on its first,

16  second, and third claims.   (ECF No. 458.)   DC's first claim sought a declaratory

17  judgment that the Shuster heirs' purported 2003 termination notice was ineffective

18  under the Copyright Act for five alternative reasons.   (FAC ¶¶ 105–34.)   Under its

19  third claim, DC sought a declaratory judgment that the 2001 and 2003 Pacific Pictures

20  agreements and a 2008 consent agreement all violated 17 U.S.C. § 304(c)(6)(D).   (*Id.*

21  ¶¶ 165–73.)   DC argued that, as the allegedly terminated grantee, it was the only party

22  with which the Shuster heirs could enter into an agreement regarding the Superman

23  rights expected to be recovered from the 2003 termination.   (ECF No. 458, at 31–33.)

24         Defendants filed a cross-motion for partial summary judgment on the same

25  claims.   (ECF No. 478.)   With respect to DC's first claim, Defendants argued that

26  Mark Warren Peary validly terminated the 1992 agreement in 2003 under 17 U.S.C.

27

28  _____
[1] After carefully considering the papers filed with respect to this Motion, the Court deems the matter
appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

1  § 304(d).  (*Id.* at 19–30.)  Defendants also asserted that DC had no right to exclusively
2  negotiate with the heirs under § 304(c)(6)(D).  (*Id.* at 33–34.)

3  On October 17, 2012, the Court granted partial summary judgment in DC's
4  favor on its first and third claims.  (ECF No. 507.)  The Court found that the 1992
5  agreement between DC and the Shuster heirs revoked and regranted the heirs'
6  Superman rights, thereby precluding the heirs from invoking § 304(d)'s termination
7  provision.  (ECF No. 507, at 8–13.)  On DC's third claim, the Court determined that
8  the 2001, 2003, and 2008 agreements violated § 304(c)(6)(D), as they predated the
9  purported termination notice's October 2013 effective date.  (*Id.* at 16–17.)  On
10  December 11, 2012, the Court accordingly issued partial judgment.  (ECF No. 540.)

11  Despite its victory on both its first and third claims, DC now moves for
12  $500,000 in attorneys' fees only against Marc Toberoff and Pacific Pictures[2] and only
13  for prosecuting its third claim.  (Notice of Mot. 2 (ECF No. 562, at 3).)  DC chose not
14  to seek fees from Peary and Defendant Jean Adele Peavy, asserting that they too
15  "were the victims of Marc Toberoff and his illicit schemes to interfere with DC's
16  rights for his own private gain."  (*Id.*)  Defendants timely opposed on February 4,
17  2013.  (ECF No. 576.)  That Motion is now before the Court for decision.[3]

18  ### III.   LEGAL STANDARD

19  Under the "American Rule," the prevailing party ordinarily is not entitled to
20  collect attorneys' fees from the losing party absent explicit statutory authority to the
21  contrary.  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human*
22  *Res.*, 532 U.S. 598, 602 (2001).  Section 505 of the Copyright Act provides that a
23  court may, in its discretion, award reasonable attorneys' fees to the prevailing party in
24  "any civil action under this title."  17 U.S.C. § 505.
25  / / /

26
27  [2] Pacific Pictures has since been dissolved.  (Adams Decl. Ex. 21 (ECF No. 463-4, at 28).)
     [3] While Defendants have appealed the partial-summary judgment ruling, the Court finds it
28  appropriate to resolve the attorneys'-fees motion now to avoid "piecemeal appeals."  *Masalosalo by*
     *Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir. 1983).

3

The United States Supreme Court has expounded four nonexclusive factors a district court should consider in determining whether to award attorneys' fees under this section: (1) frivolousness; (2) motivation; (3) objective unreasonableness in both the factual and legal components of the case; and (4) the need to advance compensation and deterrence goals. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n.19 (1994). The Ninth Circuit also considers the prevailing party's degree of success. *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006). Despite these vague factors, the Ninth Circuit has emphasized that an attorneys'-fees award is "reposed in the sound discretion of the district courts." *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 555 (9th Cir. 1996).

## IV.   DISCUSSION

DC moves for attorneys' fees solely against Toberoff and Pacific Pictures and only based on DC's third claim. DC argues that since Defendants have agreed that the 2001 and 2003 Pacific Pictures agreements were invalid, they should have stipulated to judgment in DC's favor on the third claim and saved DC from having to spend $500,000 prosecuting that claim.

Defendants respond that DC did not obtain any meaningful relief against Toberoff or Pacific Pictures, because Defendants voluntarily rescinded the Pacific Pictures agreements in 2004—six years before this litigation commenced. Defendants also assert that nothing they argued was frivolous or objectively unreasonable, considering the scant authority interpreting § 304(c)(6)(D). The Court considers each party's arguments in turn.

**A.   Degree of success DC obtained**

The United States Supreme Court has interpreted that a party must have obtained "a corresponding alteration in the legal relationship of the parties" to be considered a "prevailing party" under a federal fee-shifting statute. *Buckhannon*, 532 U.S. at 602. The Ninth Circuit has adopted this *Buckhannon* test in the Copyright Act attorneys'-fees context. *Cadkin v. Loose*, 569 F.3d 1142, 1149 (9th Cir. 2009).

DC argues that it obtained precisely the relief it sought through the Court's partial-summary-judgment Order: a declaration that the 2001, 2003, and 2008 agreements violated § 304(c)(6)(D).  (Mot. 2–3.)  Even though Toberoff and Pacific Pictures were not parties to the 2008 consent agreement, DC contends that its third claim nevertheless targeted Toberoff's conduct in "orchestrating [the] lock-up agreements."  (Reply 4.)

Defendants disagree, arguing that since Defendants voluntarily canceled the Pacific Pictures agreements in 2004 and never asserted that they were valid, DC did not achieve any significant alteration in the parties' legal relationship.  (Opp'n 1, 4, 6–9.)  Further, Toberoff contends that he is not personally liable for any of DC's attorneys' fees, because he was not a party to the 2008 consent agreement and only acted as the Shuster heirs' attorney.  (*Id.* at 9–10.)

In its partial-summary-judgment Order, the Court reasoned that the "multiple agreements purporting to grant or otherwise encumber" the alleged rights to be recovered from the 2003 termination ran afoul of § 304(c)(6)(D) and were therefore invalid.  (ECF No. 507, at 17.)  These agreements, as noted in the Court's partial judgment, were the 2001 and 2003 Pacific Pictures agreements and the 2008 consent agreement between the Shuster and Siegel heirs.  (ECF No. 540.)  So, even though Defendants voluntarily terminated the 2001 and 2003 agreements, the 2008 consent agreement remained in full force until the Court invalidated it.  This nullification did indeed alter the legal relationship between DC and the Shuster heirs: without it, DC is now free to negotiate with either family without the other family's consent.

But DC achieved only limited success on its third claim.  While DC's first claim—under which it retained the rights to Superman—was worth millions of dollars, its third claim stands in stark contrast.  DC simply obtained the freedom to unilaterally negotiate with one family (the Shusters) over rights the Shuster heirs do not have.  The Ninth Circuit's degree-of-success factor contemplates that a party's favorable judgment falls on a continuum.  DC's exiguous success on its third claim

ranks at the lower end of that spectrum, thus weighing against an attorneys'-fees award. *See Park, ex rel. Park v. Anaheim Union High School Dist.*, 464 F.3d 1025, 1036 (noting that a court may deny attorneys' fees when "plaintiff's success on a legal claim can be characterized as purely technical or de minimis").

## B. Frivolousness and objective unreasonableness

The Ninth Circuit recently held that "a losing party's claim can be a relevant indicator of whether the [Copyright] Act's primary objective is being served by the litigation." *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, No. 10-56535, 2013 WL 1004610, at \*5 (9th Cir. Mar. 11, 2013) (slip op.) (internal quotation marks omitted); *see also Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 883 (9th Cir. 2005). The Supreme Court has not defined objective unreasonableness in the copyright context. But in another area, the Court noted that an argument is "frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

DC asserts that since Defendants declined to stipulate to judgment on DC's third claim, DC was "forced" to, among other things, prosecute that claim, defend against motions to dismiss, and prepare its partial-summary-judgment motion. (Mot. 4.) DC also argues that Defendants' opposition to the third claim ran counter to a "right" the Ninth Circuit allegedly recognized in favor of original grantees like DC. (Reply 8); *see also Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036 (9th Cir. 2005). Since the Court approvingly cited *Milne* in its partial-summary-judgment Order, DC asserts that Defendants "had no basis to oppose DC's Third Claim." (Reply 8–9.)

Defendants respond that they always agreed that the 2001 and 2003 Pacific Pictures agreements were invalid and never debated their legality during the litigation. (Opp'n 4; *see also* ECF No. 191, at 8 (conceding that the agreements were void "*ab initio*"); Peary Dep. 225:16–17, June 29, 2011 (ECF No. 305–37, at 227) (Toberoff and the Shuster heirs agreed that the Pacific Pictures agreements were "not the best

1    approach to take").)  Defendants also point to their argument that the September 2004

2    invalidation of the 2001 and 2003 agreements rendered DC's third claim moot.

3    (Adams Decl. Ex. 13.)

4          Instead, Defendants assert that they only argued that DC had no "right" to an

5    exclusive-negotiation period under § 304(c)(6)(D) or standing to sue under that

6    section.   (*Id.* at 11.)   Defendants continually cited to *Bourne Co. v. MPL*

7    *Communications, Inc.*, 675 F. Supp. 859, 865 (S.D.N.Y. 1987), a case in which the

8    district court held that terminated grantees have no statutory first-refusal right under

9    § 304(c)(6)(D).  *Id.* at 865–67.  Defendants also contended throughout the litigation

10   that their position was supported by the plain text of the statute, DC's counsel's

11   arguments in other cases, treatises, and the Magistrate Judge's decision in this case.

12   (Opp'n 11–13.)

13         DC impliedly asks the Court to adopt an after-the-fact style of reasoning, that is,

14   because Defendants did not ultimately prevail, their defense must have been

15   unreasonable.  But it is hardly shocking that Defendants did not stipulate to judgment

16   against them and instead engaged in the adversarial process.  Stipulating to judgment

17   on DC's third claim undoubtedly would have saved both sides time and money.  But

18   stipulating to judgment would have swept much more into the judgment than just the

19   2001 and 2003 agreements' invalidity—Plaintiff also sought a declaratory judgment

20   on two other grounds *and* an injunction.

21         Defendants also had a legal foundation for their argument that DC lacked any

22   exclusivity right or standing to sue under § 304(c)(6)(D).  Though Defendants did not

23   ultimately prevail, their argument rested on several different primary and secondary

24   authorities.  Litigants are given broad latitude to advocate their positions, so long as

25   they comport with Rule 11.  Defendants sought to explore the boundaries of a

26   relatively green area of copyright law and did so without traversing the bounds of

27   reasonableness. As the United States Supreme Court cautioned, "it is important that a

28   district court resist the understandable temptation to engage in *post hoc* reasoning by

concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 421–22 (1978); *Brooks v. Cook*, 938 F.2d 1048, 1055 (9th Cir. 1991). The Court heeds that advice.

DC's argument that Defendants' motions and arguments contributed to the "bloat" of the case is similarly unavailing. (Reply 8); *see also Love v. Assoc'd Newspapers, Ltd.*, 611 F.3d 601, 615 (9th Cir. 2010). Defendants spent a rather slim 10 percent of their briefing space in each of their filings on the third claim—hardly the circumlocution DC claims.

The Court accordingly finds that Defendants' position was neither frivolous nor objectively unreasonable, further counseling against an attorneys'-fees award.

## C. Motivation

In considering whether to award attorneys' fees, courts consider the motivations of both parties in pursuing the litigation. *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1075 (D. Ariz. 2006).

DC does not directly address *Fogerty*'s motivation factor. But Defendants argue that DC improperly seeks attorneys' fees exclusively against Toberoff as the Shuster heirs' attorney. Defendants contend that since they voluntarily terminated the 2001 and 2003 Pacific Pictures agreements, only the 2008 consent agreement remained ripe for judicial evaluation. But Toberoff was not a party to that agreement; he merely signed the agreement "as to form." (Toberoff Dep. 274:4, Sept. 18, 2012 (ECF No. 576-2, at 6).)

Defendants' motivation in defending themselves is hardly astonishing. Just like DC, the Shuster heirs risked losing their multimillion-dollar Superman rights. Most litigants would find Superman's substantial value sufficient motivation to defend their position.

What is surprising is DC's motivation in seeking attorneys' fees solely against one Defendant. DC's entire Motion smacks of animus toward Toberoff. Despite the

fact that the parties spent the vast majority of their briefing on the first claim, arguing extensively over the purported termination's effect, DC does not seek attorneys' fees based on that significant claim.  Instead, DC singles out one Defendant—Toberoff—for a punitive attorneys'-fees award based on an agreement to which he was not a party.  Toberoff only signed the 2008 consent agreement as the Shuster heirs' attorney.  And when a fee-shifting statute does not expressly permit an attorneys'-fees award against the losing party's counsel, "the appropriate inference is that an award against attorneys is not authorized."  *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 624 (2d Cir. 1991), *cited with approval in Heckethorn v. Sunan Corp.*, 992 F.2d 240, 242 (9th Cir. 1993).  DC therefore is not entitled to attorneys' fees from Toberoff simply because he served as the heirs' attorney.

**D.     Compensation and deterrence**

Ordinarily § 505 attorneys'-fees awards "serve the purpose of encouraging private enforcement and deterring infringements."  *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1556 (9th Cir. 1989).  The Ninth Circuit has noted particular concern that copyright holders will not prosecute infringement actions when the amount at stake is low.  *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996).  Indeed, the Seventh Circuit has even gone so far as to establish a presumption of entitlement to attorneys' fees "when the monetary stakes are small."  *Gonzales v. Transfer Techs., Inc.*, 301 F.3d 608, 610 (7th Cir. 2002) (Posner, J.).

In contrast, millions of dollars were at stake here.  There is little concern that potential copyright claimants like DC will lack an incentive to bring suit to assert their rights when such a substantial amount of money is involved.  Even though DC seeks some $500,000 in attorneys' fees, that considerable amount pales in comparison to the Superman rights' value.

There is also no infringement to deter here.  The overwhelming majority of § 505 cases deal with awarding attorneys' fees in infringement cases—and for good reason.  It makes smart public-policy sense to discourage those who trespass on

1    others' property rights.  But it makes less sense to punish those who assert a good-
2    faith claim in a copyright and happen to lose during litigation.  Indeed, when there are
3    two competing copyright claimants in a case, one will always lose.  Such is the
4    adversarial system.

5         Citing to *Milne*, DC argues that § 304(c)(6)(D) exists to deter parties like
6    Toberoff and Pacific Pictures from "trafficking in future [copyright interests]."
7    (Mot. 3); *Milne*, 430 F.3d at 1047.  DC contends that the $500,000 attorneys'-fees
8    award will discourage "traffickers" like Toberoff and reimburse DC for pursuing its
9    third claim.  (Mot. 3.)  DC also argues that the award will compensate it for its
10   inability to freely negotiate with the Shusters.

11        Defendants disagree, arguing that Congress enacted § 304(c)(6)(D) to protect
12   authors and their heirs, not grantees like DC.  (Opp'n 16.)  Defendants further contend
13   that awarding attorneys' fees against an attorney who agreed to litigate a termination
14   case on a contingency basis would discourage other attorneys from taking similar
15   cases in the future.  (*Id.*)

16        Regardless whether Congress enacted § 304(c)(6)(D) to benefit grantees or
17   authors, DC inappositely relies upon the statute's protective purpose.  If Toberoff
18   engaged in any "trafficking," it was with the 2001 and 2003 agreements—both of
19   which Defendants voluntarily rescinded six years before DC filed this case.  It makes
20   little sense to punish someone for agreements that no longer existed, especially
21   considering that Defendants never asserted the validity of the 2001 and 2003
22   agreements during the litigation.

23        If anything, DC would want to protect itself against the 2008 consent
24   agreement, which remained a contested issue up until the Court's partial-summary-
25   judgment Order.  Yet DC did not target any of the parties to that agreement, just their
26   attorney.  Yet as discussed above, attorneys are generally not liable under fee-shifting
27   statutes for their clients' conduct.  *Healey*, 947 F.2d at 624.
28   / / /

**E.      Equitable and public-policy considerations**

The Ninth Circuit has recognized that the most important factor for a court to consider in awarding attorneys' fees is whether the award will further the purposes of the Copyright Act.  *Mattel, Inc v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013); *SOFA Entm't, Inc.*, 2013 WL 1004610, at *5; *see also Fogerty*, 510 U.S. at 524.  The Supreme Court noted that the "primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public."  *Fogerty*, 510 U.S. at 524.

Absent bad faith or other reprehensible conduct by the losing party, a § 505 attorneys'-fees award presents a clash between competing policy goals.  On one hand, § 505 seeks to compensate the prevailing party for successfully vindicating its copyright claim.  On the other end, courts do not want chill legitimate advocacy by defendants.  *Brayton Purcell LLP v. Recordon & Recordon*, 487 F. Supp. 2d 1124, 1129 (N.D. Cal. 2007).  Resolving these dichotomous objectives depends on a case's equitable circumstances.  *Streeter*, 438 F. Supp. 2d at 1074.

The Court finds that the balance of the equities weighs against awarding attorneys' fees to DC.  While the 2001 and 2003 agreements were facially invalid, the issue of what rights, if any, DC had under § 304(c)(6)(D) to bring suit against the Shuster heirs was more nebulous.  As the Supreme Court aptly explained,

> Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims . . . .
> *Fogerty*, 510 U.S. at 527.

Punishing Toberoff and Pacific Pictures with a $500,000 attorneys'-fees award[4] would send a clear message to copyright defendants that litigating a claim with good-faith,

---

[4] Because the Court decides that DC is not entitled to attorneys' fees, the Court expresses no opinion on the reasonableness on DC's requested amount.

supported defenses is wrong.  That is undoubtedly not a message this Court wants to send to Toberoff or others.

## V.   CONCLUSION

For the reasons discussed above, DC's Motion for Attorneys' Fees is **DENIED**.

**IT IS SO ORDERED.**

April 4, 2013

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**